**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| STEVEN WAYNE FISH, RALPH ORTIZ, DONNA BUCCI, CHARLES STRICKER, THOMAS J. BOYNTON, AND DOUGLAS HUTCHINSON on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas; and NICK JORDAN, in his official capacity as Secretary of Revenue for the State of Kansas, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. _____ <br><br> CLASS ACTION COMPLAINT |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, by and through undersigned counsel, for their Complaint for Injunctive and Declaratory Relief, allege upon knowledge as to their own conduct and upon information and belief as to the conduct of others, as follows:

### I.  INTRODUCTION

1.      Named Plaintiffs bring this action for declaratory and injunctive relief, under the National Voter Registration Act of 1993, 52 U.S.C. §§ 20501–20511 (hereinafter the "NVRA"), on behalf of themselves and tens of thousands of Kansas residents who are being prevented from exercising their fundamental right to vote due to Defendants' unlawful policies and practices. Since 2013, Defendants have acted to undermine the NVRA's accessible registration system by

illegally demanding that Kansans who attempt to register to vote while applying for or renewing a driver's license produce documents like a birth certificate or U.S. passport in order to become registered. Over the last three years, Defendants have placed more than 35,000 would-be Kansas voters on a "suspense list," and of these individuals, approximately 22,000 remain in suspense or have been purged altogether from the registration system, solely because they purportedly did not submit documentary proof of citizenship. This requirement has upended the registration of voters in Kansas, such that nearly 14% of all new registrants in Kansas have been stymied as a result of Defendants' policies. One Plaintiff, Ralph Ortiz, is a U.S. military veteran who, after thirteen years of service, sought to make a permanent home in Kansas, only to find himself barred from registering to vote by the Defendants' illegal application of a documentary proof-of-citizenship requirement. Defendants have created a needless, bureaucratic maze of barriers to registration that has already deterred many Kansans from participating as voters, and have implemented these disruptive measures in the face of directly contrary Supreme Court precedent. These actions are unlawful under the NVRA and must be halted.

2.     Two legal provisions are at issue in this case. *First*, this action challenges Defendants' application of Kan. Stat. Ann. § 25-2309(*l*) (hereinafter the "documentary proof-of-citizenship law" or "DPOC law"), which unlawfully requires Kansans who attempt to register to vote in conjunction with a motor vehicle driver's license application to submit documentary proof of United States citizenship. *Second*, this action challenges Defendants' application of Kan. Admin. Regs. § 7-23-15, an administrative rule that improperly purges voters who have duly registered under the NVRA if they fail to provide evidence of citizenship within 90 days of receipt of their registration application (the "90-day purge rule"). The Plaintiffs and tens of thousands of other eligible Kansas voters who submitted valid and complete voter registrations

in accordance with federal law have been effectively disenfranchised by the two challenged provisions.

3.      Section 5 of the NVRA requires that every state driver's license application "serve as an application for voter registration with respect to elections for Federal office." 52 U.S.C. § 20504(a)(1) ("Section 5").  Individuals who apply to register to vote in conjunction with an initial application for or renewal of a driver's license (hereinafter, "motor-voter registrants") may establish their eligibility to vote via a signed attestation, under penalty of perjury, that the applicant meets the citizenship requirement for voting.  *See* 52 U.S.C. § 20504(c)(2)(C).  Section 5 of the NVRA prohibits states from requiring anything beyond "the minimum amount of information necessary to . . . enable State election officials to assess the eligibility of the applicant and to administer voter registration," 52 U.S.C. § 20504(c)(2)(B), and a state may not alter or add to the minimum requirements for registering to vote in conjunction with a driver's license application.  Moreover, Section 5 of the NVRA expressly provides that, other than a signature, a state "may not require any information that duplicates information required in the driver's license portion of the form."  52 U.S.C. § 20504(c)(2)(A).

4.      Notwithstanding the requirements of federal law, Kansas's DPOC law requires that motor-voter registrants submit documentary proof of citizenship in order to become registered to vote.  And, despite the NVRA's prohibition on requiring duplicative information from motor-voter registrants, Kansas has required many motor-voter applicants to submit citizenship documents *twice* in order to become registered: once at the DMV, and again to an elections official.

5.      The DPOC law has had a devastating effect on voter registration in the state. Within months of the effective date of the DPOC law, more than 15,000 Kansans were blocked

from registering to vote because they had purportedly failed to provide documentary proof that they were United States citizens in accordance with the DPOC law.[1]  Their names were placed on a "suspense" list of individuals who had submitted voter registration forms that the State had deemed incomplete.  Upon information and belief, of these more than 15,000 voters, approximately 87 percent had attempted to register at a Kansas driver's license facility.[2]

6.     The problem has only grown worse.  Upon information and belief, as of December 11, 2015, more than 35,000 voters were on the suspense list due to the documentary proof-of-citizenship requirement.  They constituted approximately 14% of all individuals who, as of that date, had attempted to register to vote since the DPOC law went into effect on January 1, 2013.  These voters are disproportionately young: as of December 11, 2015, voters between the ages of 18 and 29 constituted more than 44% of the voters on the suspense list due to purported failure to provide documentary proof of citizenship, a percentage that far outstrips their share among eligible or registered voters.  Most of the suspended voters are also unaffiliated: almost 54% of voters on the suspense list due to purported failure to provide documentary proof of citizenship were unaffiliated with any political party.

7.     In October 2015, an administrative rule promulgated by Defendant Secretary of State Kobach went into effect, which, *inter alia*, removes individuals from the suspense list if they fail to provide documentary evidence of citizenship within 90 days of submitting a registration form, and cancels their registrations.  *See* Kan. Admin. Regs. § 7-23-15.  Upon information and belief, thousands of Kansans who submitted valid voter registration applications in conjunction with a driver's license application or renewal were nevertheless placed on the

---

[1] *See* Brad Cooper, *Would-be Voters Are Exasperated by Kansas's New Registration Law*, Kan. City Star (Sept. 2, 2013), http://www.kansascity.com/news/local/article326552/Would-be-voters-are-exasperated-by-Kansas%E2%80%99-new-registration-law.html.

[2] *See id.*

suspense list for purported failure to submit documentary proof of citizenship, and have now been purged from the voter system.

8.      These actions violate federal law.  Tens of thousands of eligible Kansans have applied to register to vote as prescribed by federal law, only to be stymied by Defendants. Plaintiffs therefore respectfully ask the Court to declare that the documentary proof-of-citizenship law, Kan. Stat. Ann. § 25-2309(*l*), and the 90-day purge rule, Kan. Admin. Regs. § 7-23-15, are invalid with respect to eligible voters who sought to register in conjunction with a driver's license application.  Plaintiffs further respectfully ask that the Court order that they and all other similarly-situated voters be registered to vote in federal elections.  Finally, Plaintiffs respectfully ask the Court to enjoin Defendants and the State of Kansas from the continued enforcement of the DPOC law and the 90-day purge rule with respect to motor-voter registrants, and award all other relief that the Court deems just and proper.

## II.  PARTIES

### A.  Plaintiffs

9.      The Plaintiffs named in this Complaint are Steven Wayne Fish, Ralph Ortiz, Donna Bucci, Charles "Tad" Stricker, Thomas J. "T.J." Boynton, and Douglas Hutchinson.  Each of the named Plaintiffs is a citizen of the United States, a resident of Kansas, and a qualified elector eligible to vote in local, state, and federal elections in Kansas.  Each of the Plaintiffs submitted a valid and complete voter registration application in conjunction with a driver's license application (including those who applied for renewals) in accordance with the NVRA but was placed on the suspense list for purportedly failing to submit documentary proof of citizenship.

10.     Plaintiff Steven Wayne Fish is a United States citizen and satisfies all of the eligibility requirements for voting in Kansas.  Mr. Fish is 36 years old and lives in Lawrence.  He was born on a U.S. military base in Illinois that has since closed, and moved to Kansas as a young child.  In 2014, he sought to register to vote at a DMV office while renewing his driver's license, and brought with him his valid but expiring license.  Mr. Fish completed the paperwork to register to vote, but did not bring documentary proof of citizenship, which was unnecessary for renewal of his license.  He was subsequently placed on the suspense list for voter registration.  Mr. Fish looked for his birth certificate but has not been able to locate it.  Because he does not have and does not know how to obtain his birth certificate, Mr. Fish did not submit documentary proof of citizenship to the State within 90 days of applying to register to vote, but remains on the suspense list.  As a result, Mr. Fish did not attempt to vote in the November 2014 midterm election because he understood that his voter registration would not be deemed complete without documentary proof of citizenship, which he cannot produce.

11.     Plaintiff Ralph Ortiz is a United States citizen and satisfies all of the eligibility requirements for voting in Kansas.  Mr. Ortiz is 35 years old and lives in Wichita.  He is a veteran of the United States Air Force, in which he served for 13 years.  Mr. Ortiz was born in New York State, and has lived in several different states during his service in the Air Force.  In 2006, he was stationed in Kansas and obtained a Kansas driver's license thereafter.  He left the service in 2013, at which time he chose to remain in Kansas, and has resided in Kansas ever since.  In 2014, he went to a DMV office to renew his driver's license, and, because he had decided to remain living in Kansas, he sought to register to vote as a Kansas voter.  He did not provide documentary proof of citizenship at that time, because such documentation is unnecessary for renewal of a Kansas driver's license.  He was subsequently placed on the

suspense list for failure to provide documentary proof of citizenship, making him ineligible to vote.  He did not submit documentary proof of citizenship to the State within 90 days of applying to register to vote, and has been purged from the voter registration system.

12.     Plaintiff Donna Bucci is a United States citizen and satisfies all of the eligibility requirements for voting in Kansas.  Ms. Bucci is 57 years old and lives in Wichita.  Ms. Bucci was born in Maryland.  She has resided in Kansas for approximately five years.  In 2013, she renewed her driver's license and attempted to register to vote at a DMV office.  Ms. Bucci was subsequently placed on the suspense list for failure to provide documentary proof of citizenship.  She received a notice in the mail and a phone call notifying her that she would need to provide documentary proof of citizenship to complete her voter registration application.  Ms. Bucci, however, does not possess a copy of her birth certificate, and the fee of more than $20 required to retrieve a new birth certificate from the state of Maryland poses a significant financial burden for her.  Ms. Bucci did not submit documentary proof of citizenship to the State within 90 days of applying to register to vote, and she has yet to do so, because she continues to lack such documentation.  As a result, Ms. Bucci was unable to vote in the November 2014 midterm election.  She has now been purged from the voter registration system.

13.     Plaintiff Charles "Tad" Stricker is a United States citizen and satisfies all of the eligibility requirements for voting in Kansas.  Mr. Stricker is 37 years old and lives in Wichita. He was born in Missouri and moved to Kansas because he and his wife wanted to live closer to her family.  In 2014, he went to a DMV office to obtain a Kansas license and to register to vote in Kansas in time for the midterm elections.  Because of the various documentation requirements for a driver's license, Mr. Stricker had to go to the DMV office twice to complete his driver's license application, and by the time he had completed that process, he believed he had also been

registered to vote.  But when Mr. Stricker went to vote in the November 2014 midterm election, he discovered that he was not on the rolls and was forced to cast a provisional ballot.  His vote was not counted in that election.  Only after the election did he receive a notice from the State indicating that he needed to submit proof-of-citizenship documentation.  Thus, although Mr. Stricker has already submitted documents sufficient to establish his citizenship while applying for his driver's license, the State refused to register him to vote unless he provided such documentation a second time, to an elections official.  Mr. Stricker did not submit such additional citizenship documentation to the State within 90 days of applying to register to vote, and has now been purged from the voter registration system.

14.     Plaintiff Thomas J. "T.J." Boynton is a United States citizen and satisfies all of the eligibility requirements for voting in Kansas.  He is 35 years old and lives in Wichita.  He was born in Illinois and moved to Kansas in 2014.  That year, he went to the DMV to apply for a Kansas driver's license.  He also applied to register to vote during the same visit, and he believed his registration was complete along with his driver's license application.  But when he attempted to vote in the November 2014 midterm election, the poll workers could not find him on the rolls and forced him to cast a provisional ballot, which was not counted.  Mr. Boynton subsequently learned that his name was on the suspense list, even though he had provided documentary proof of citizenship when he initially applied for a Kansas driver's license, and that he would not be registered to vote unless he submitted documentary proof of citizenship a second time, this time to a Kansas elections official.  He has now been purged from the Kansas registration system.

15.     Plaintiff Douglas Hutchinson is a United States citizen and satisfies all of the eligibility requirements for voting in Kansas.  Mr. Hutchinson is 46 years old.  He was born in Colorado Springs, Colorado, but has lived in Kansas for nearly his entire life.  In the spring of

2013, he went to the DMV in Mission, Kansas, to renew his Kansas driver's license. At that time, he also indicated that he wanted to register to vote. He was not required to show documentary proof of citizenship (or proof of legal presence) at that time. He never received any notice from the Johnson County Elections Office or any other government office advising him that his voter registration was incomplete or in suspense status. After learning of the documentary proof-of-citizenship requirement, he went back to the DMV office in Mission, Kansas in the summer of 2015 and produced his U.S. passport. Mr. Hutchinson was advised that he had done all that was necessary to complete his voter registration. Nevertheless, he subsequently remained on the suspense list for purported failure to provide documentary proof of citizenship.

**B.  Defendants**

16.     The Defendants named herein are named only in their official capacities and are named as the State and local officials responsible for the implementation and enforcement of the DPOC law and the 90-day purge rule.

17.     Defendant Secretary of State Kris Kobach (hereinafter "Defendant Secretary Kobach," "Defendant Kobach," or "Secretary Kobach"), is the Secretary of State of Kansas, and in that capacity is the State's chief election official responsible for overseeing all Kansas elections. Defendant Secretary Kobach is charged with the general supervision of Kansas election laws and the implementation of DPOC law, Kan. Stat. Ann. § 25-2309(*l*), and promulgated the 90-day purge rule, Kan. Admin. Regs. § 7-23-15.

18.     Defendant Nick Jordan is the Kansas Secretary of Revenue (hereinafter "Defendant Secretary Jordan," "Defendant Jordan," or "Secretary Jordan"). As Secretary of

Revenue of Kansas, Defendant Secretary Jordan is the State's chief official in the Department of

Revenue, which includes the Division of Motor Vehicles.  Kan. Stat. Ann. § 75-5110.

## III.  CLASS ALLEGATIONS

19.     Plaintiffs seek class certification under Federal Rules of Civil Procedure 23(a),

23(b)(1), and 23(b)(2).

20.     The class is defined as: all eligible Kansas motor-voter registrants who do not

currently appear on the active voter registration list due to purported failure to submit

documentary proof of citizenship under Kan. Stat. Ann. § 25-2309(*l*).  Members of the proposed

class include some individuals placed on the suspense list even though they in fact provided

documentary proof of citizenship in conjunction with their driver's license applications, as well

as individuals who have been removed from the suspense list due to the 90-day purge rule.

21.     The requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) are

easily satisfied here:

      a.   The class is sufficiently numerous such that joinder of all members is

impracticable. Indeed, an estimated 22,000 Kansans are currently on the

suspense list or have been purged from the voter registration lists due to the

documentary proof-of-citizenship requirement.

      b.   There are questions of law and questions of fact common to the class

members, including whether Defendants' application of the DPOC law

violates the NVRA and is preempted by the Elections Clause of the

Constitution, U.S. Const. Art. I, § 4, cl. 1, and whether Defendants' removal

of suspended motor-voter registrants from the voter list due to a purported

failure to provide documentary proof of citizenship violates NVRA protections against registration purges.

c. The claims of the named Plaintiffs are typical of the claims of the class. They have each been placed on the suspense list and not duly registered to vote for failure to produce documentary proof of citizenship.

d. The named Plaintiffs will fairly and adequately protect the interests of all members of the proposed class and seek relief on behalf of the class as a whole, and have no interests antagonistic to other members of the class.  The individual Plaintiffs are all represented by *pro bono* counsel, including the American Civil Liberties Union ("ACLU") Foundation's Voting Rights Project and Dechert LLP who collectively have substantial experience in class action litigation generally, including litigation regarding voting rights and constitutional law, and litigation under the NVRA in particular.

e. Prosecuting separate actions by individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  Additionally, by denying the right to vote to eligible Kansas motor-voter registrants who submitted a valid and complete voter registration form under Section 5 of the NVRA, due to purported failure to comply with the documentary proof-of-

citizenship requirement under Kan. Stat. Ann. § 25-2309(*l*), Defendants have

acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate

respecting the class as a whole.

## IV.  BACKGROUND AND FACTUAL ALLEGATIONS

### A.  The National Voter Registration Act of 1993

22.      In enacting the NVRA in 1993, Congress found that the right to vote "is a fundamental right"; that the state governments have a "duty . . . to promote the exercise of that right"; and that "unfair registration laws and procedures can have a direct and damaging effect on voter participation."  52 U.S.C. § 20501(a).  Congress therefore enacted the NVRA to, *inter alia*, "increase the number of eligible citizens who register to vote in elections for Federal office" and "enhance[] the participation of eligible citizens as voters in elections for Federal office."  52 U.S.C. § 20501(b).

23.      The NVRA is sometimes referred to as the "Motor-Voter Law" because of its well-known provision requiring states to provide voter registration services in conjunction with driver's license applications.  The statute requires that states provide and maintain at least three separate channels for voter registration: (1) by application "made simultaneously with an application for a motor vehicle driver's license"; (2) by mail with through a federally-promulgated voter registration form; and (3) through various state offices designated as voter registration agencies, including those offices that provide public assistance.  *See* 52 U.S.C. § 20503(a); §§ 20504–20506.

### i.  Section 5 of the NVRA: Voter Registration in Conjunction with Application for a Driver's License

24.     Section 5 of the NVRA governs voter registration in conjunction with driver's licenses and is titled "Simultaneous application for voter registration and application for motor vehicle driver's license."  52 U.S.C. § 20504.  It requires that "[e]ach State motor vehicle driver's license application (including any renewal application) . . . shall serve as an application for voter registration with respect to elections for Federal office."  52 U.S.C. § 20504(a)(1).  The statute requires "[e]ach State [to] include a voter registration application form for elections for Federal office as part of an application for a State motor vehicle driver's license."  52 U.S.C. § 20504(c)(1).  The statute further provides that each state "shall . . . ensure that any eligible applicant is registered to vote in an election" so long as a "valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority" within a specified timeframe – *i.e.*, "the lesser of 30 days" before the election, or the deadline "provided by State law [for registration] before the date of the election."  52 U.S.C. § 20507(a)(1)(A).

25.     Section 5 sets forth various requirements for the contents of the form that a state must use for voter registration in conjunction with a driver's license application.  For example, the statute prohibits requiring duplicative information: the voter registration component for driver's license applicants "may not require any information that duplicates information required in the driver's license portion of the form" other than a signature.  52 U.S.C. § 20504(c)(2)(A).  The statute also limits the information that may be required on a motor-voter application to "only the minimum amount of information necessary to . . . enable State election officials to assess the eligibility of the applicant and to administer voter registration." 52 U.S.C. § 20504(c)(2)(B).

26.     Section 5 of the NVRA delineates information a motor-voter application must include: the "voter registration application portion of an application"

> (C) shall include a statement that--
>     (i) states each eligibility requirement (including citizenship);
>     (ii) contains an attestation that the applicant meets each such requirement; and
>     (iii) requires the signature of the applicant, under penalty of perjury.

52 U.S.C. § 20504(c)(2)(C).

27.     Congress considered these safeguards sufficient to prevent unlawful voter registration.  The Senate Report to the NVRA specifically declared that the Senate was "confident that this Act provides sufficient safeguards to prevent noncitizens from registering to vote."  S. Rep. No. 103-6, at 11 (1993).  Indeed, Congress specifically rejected allowing individual states to require documentary proof of citizenship from motor-voter registrants.  The conference committee considering the NVRA decided that granting states discretion to require documentary proof of citizenship with respect to the modes of registration provided under the NVRA was "not necessary or consistent with the purposes of this Act."  H.R. Conf. Rep. No. 103-66, at 23 (1993).  The committee also stated that allowing documentary proof-of-citizenship requirements "could effectively eliminate, or seriously interfere with, the mail registration program of the Act . . . [and] adversely affect the administration of the other registration programs as well."  *Id.*

28.     The motor-voter provisions of the NVRA have a Kansas state statutory analogue, codified at Kan. Stat. Ann. § 25-2352.  The NVRA's provision prescribing that the citizenship status of motor-voter registrants be verified through a sworn attestation has a Kansas state statutory analogue, codified at Kan. Stat. Ann. § 25-2352(b)(1).

### ii. Section 8 of the NVRA: List Maintenance

29.      Section 8 of the NVRA contains various provisions concerning the maintenance of voter registration rolls.  With respect to "[c]onfirmation of voter registration," Section 8 provides that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965."  52 U.S.C. § 20507(b)(1).

30.      With respect to removing registrants from the list of voters, Section 8 provides "that the name of a registrant may not be removed from the official list of eligible voters except" under limited  circumstances set forth by the statute, including: "(A) at the request of the registrant; (B) as provided by State law, by reason of criminal conviction or mental incapacity;" and through a general program that makes a reasonable effort to remove ineligible voters by reason of "(A) death of the registrant; or (B) a change in the residence of the registrant."  52 U.S.C. § 20507(a)(3)–(4).  Section 8 does not authorize the removal of qualified voters due to failure to provide documentary proof of citizenship.

### iii. Section 10 of the NVRA: Responsibilities of Chief State Election Official

31.      Section 10 of the NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under [the NVRA]." 52 U.S.C. § 20509.

32.      In Kansas, the Secretary of State is the chief State election official and bears responsibility for coordination of the State's responsibilities under the NVRA.  Kansas statutes vest authority with the Secretary of State and Deputy Assistant Secretaries of State to register voters on a statewide basis, Kan. Stat. Ann. § 25-2323, and authorize the Secretary of State to

adopt rules and regulations necessary for the administration of the registration of voters as a part

of the driver's license application process, Kan. Stat. Ann. § 25-2352(g).

### B. Kansas's Documentary Proof-of-Citizenship Law

33.    Despite the clear prohibitions of the NVRA, Kansas has adopted and continues to

enforce its DPOC law in a manner that deems motor-voter registrants as not registered to vote

unless they submit documentary proof of citizenship to an elections official.  Moreover, the

DPOC law is enforced in such a manner that even some motor-voter registrants who present

documentary proof of citizenship at the time of applying for a driver's license are still not treated

as registered until they submit documentary proof of citizenship a *second* time.

#### i. Legislative History of Kansas's Documentary Proof of Citizenship Law

34.    Shortly after taking office, Defendant Secretary Kobach held a press conference

on January 18, 2011, to announce plans for the "Secure and Fair Elections (SAFE) Act."[3]

Among other things, the bill contained provisions that would become the DPOC law.  It was

formally introduced in the Kansas Legislature as House Bill No. 2067 (hereinafter "HB 2067"),

on January 24, 2011.

35.    During legislative deliberations over the SAFE Act, Defendant Secretary

Kobach's office released a report in February 2011 that showed sixteen alleged instances of

noncitizens registering to vote, and five alleged cases of noncitizen voting between 1997 and

2010.[4]  Upon information and belief, none of these allegations of noncitizen registration or

---

[3] *See* Press Release, Kris W. Kobach, Secretary of State, *Kansas House of Representatives Passes the SAFE Act* (Feb. 24, 2011),
http://www.kssos.org/other/news_releases/PR_2011/House_Votes_on_HB2067.pdf**.**

[4] Office of the Kansas Secretary of State, *Known Reported Incidents of Election Crimes, 1997 – 2010* (Feb. 9, 2011), http://www.aclu.org/files/votingrights/kselection_crimes_reporting.pdf. Defendant Secretary Kobach has cited to this report at this website in his own published work.

voting resulted in a criminal prosecution, let alone a finding by a court of unlawful activity. There is no indication as to whether any of these incidents even led to the cancellation of an improper voter registration.

36.     While the Kansas House passed HB 2067 to take effect in 2012, the Senate Ethics and Elections Committee amended the bill to push back the effective date of the documentary proof-of-citizenship requirement by one year, to January 1, 2013. *See* Kan. Stat. Ann. § 25-2309(u).  The Senate did so specifically to provide time for the Division of Vehicles (the "DMV") to upgrade the technological systems in its offices, to enable them to copy citizenship documents submitted in connection with a driver's license application, and to transmit those copies to elections officials for driver's license applicants who seek to register to vote.  As the *Kansas City Star* reported:

> Sen. Kelly Kultala, D-Kansas City, said she proposed the amendment [pushing back the proof-of-citizenship requirement to 2013] to give the Department of Motor Vehicles time to implement its plan to begin collecting and imaging license applicants' citizenship documents — before the agency has to start sharing that information with voter registration.[5]

37.     In voting against the proof-of-citizenship bill, Sen. Roger Reitz (R-Manhattan) said, "I don't think there is voter fraud in the State of Kansas" and cited his belief that the bill would decrease voter turnout and make voting too difficult.[6]

---

*See* Kris W. Kobach, "Why Opponents Are Destined to Lose the Debate on Photo ID and Proof of Citizenship Laws: Simply Put—People Want Secure and Fair Elections," 62 *Syracuse L. Rev.* 1, 5 n.27 (2012).

[5] Dion Lefler, *Senate Panel Weakens, But Passes, Kobach Voter ID Plan*, Kan. City Star (Mar. 17, 2011), http://www.kansascity.com/news/local/article298056/Senate-panel-weakens-but-passes-Kobach-voter-ID-plan.html.

[6] *Id.*

38.     After the amendment process, HB 2067 gained final passage in the Kansas Senate on March 23, 2011, and in the House on March 29, 2011.[7]  Governor Sam Brownback signed the bill into law on April 18, 2011.[8]

### ii.  The Requirements of the Documentary Proof-of-Citizenship Law

39.     The DPOC law is codified at Kan. Stat. Ann. § 25-2309(*l*).  The DPOC law took effect on January 1, 2013, Kan. Stat. Ann. § 25-2309(u), and applies only to those who apply to register to vote in Kansas for the first time after that date, Kan. Stat. Ann. § 25-2309(n).

40.     Under the DPOC law, a person applying to register to vote must provide documentary proof of citizenship either when filing a registration form in person, or by submitting a photocopy of proof of citizenship along with a completed registration application in the mail. Kan. Stat. Ann. § 25-2309(*l*).[9]

41.     The only forms of documentary proof of citizenship that are acceptable under the DPOC law are:

    1)  a driver's license or nondriver's license issued by the Kansas DMV or by another state if the license indicates that the person has proven their citizenship;
    2)  a birth certificate;
    3)  a United States valid or expired passport;

---

[7] Kan. Legislature, *HB 2067*, http://www.kslegislature.org/li_2012/b2011_12/measures/hb2067/.

[8] *See id.*

[9] An applicant, however, may also submit documentary proof of citizenship at a different time from the registration form, so long as it meets all other requirements of the law and the registration form is submitted by the registration deadline.  Kan. Stat. Ann. § 25-2309(t).  In that case, an applicant must submit documentary proof of citizenship to the county election office by mail or in person by close of business on the day before a scheduled election, or by "electronic means" (email, fax, or website) by midnight the day before the election.  Kan. Admin. Regs. § 7-23-14(b).  If the voter provides this information in time, the election official must add the voter to the rolls for election day.  However, if poll books have already been printed, and the county election official fails to communicate the new registrant's name to the polling place, the voter will only be allowed to cast a provisional ballot.  Kan. Admin. Regs. § 7-23-14(b)(3).

4)  United States naturalization documents;[10]
5)  documents provided by the United States government pursuant to the Immigration and Nationality Act of 1952 that show U.S. citizenship;
6)  a Bureau of Indian Affairs card number, tribal treaty card number, or tribal enrollment number;
7)  a consular report of birth abroad of an American citizen;
8)  a certificate of citizenship issued by U.S. Citizenship and Immigration Services;
9)  certification of report of birth by the United States Department of State;
10) an American Indian Card, with KIC classification, issued by the United States Department of Homeland Security;
11) a final adoption decree showing applicant's name and U.S. birthplace;
12) a military service record showing U.S. birthplace; or
13) a U.S. hospital record showing the person to have been born in the United States.

Kan. Stat. Ann. § 25-2309(*l*).  The DPOC law does not allow voter registration in other states to fulfill the proof-of-citizenship requirement.  Kan. Stat. Ann. § 25-2309(o).

## V.     KANSAS'S ONGOING VIOLATIONS OF THE NVRA

### A.     Enforcement of the Documentary Proof-of-Citizenship Law With Respect to Motor-Voter Registrants

42.     Notwithstanding the federal statutes and proceedings described above, Kansas continues to require documentary proof of citizenship from most voter registration applicants, including motor-voter registrants.  Upon information and belief, tens of thousands of Kansans have been prevented from registering to vote as a result.

43.     Within months of the effective date of the DPOC law, reports surfaced that well over 10,000 Kansas voter registration applications were being held in suspense – meaning that their voter registration forms had been deemed incomplete – due to purported failure to prove

---

[10] If only the naturalization number is provided, the person will not be registered until the county election officer or the Secretary of State verifies the number with the U.S. Bureau of Citizenship and Immigration Services.  Kan. Stat. Ann. § 25-2309(*l*)(4).

citizenship.[11]  Upon information and belief, approximately 87 percent of these individuals had tried to register to vote at driver's license facilities.[12]

44.    Defendant Secretary Kobach was unconcerned about this state of affairs; when asked about the thousands of voters on the suspense list during the summer of 2013, Defendant Secretary Kobach stated in the media, "I don't think it's a major problem."[13]

45.    According to media reports, Kansas election officials initially stated that many of the people on the suspense list filled out registration forms at a driver's license office but did not have the papers to prove their citizenship.[14]  This appears to be inaccurate, because a first-time driver's license applicant in Kansas is required to submit proof of legal presence in order to obtain a license, and any of the documents that a U.S. citizen can use to establish legal presence for purposes of obtaining a driver's license are also sufficient to establish U.S. citizenship for purpose of the DPOC law.[15]  The documents that a U.S. citizen can use to satisfy the proof of "lawful status" requirement for purposes of obtaining a driver's license are:

- a Certified U.S. Birth Certificate;
- an unexpired U.S. Passport or Passport Card;
- a U.S. Consular Report of Birth Abroad;

---

[11] *See* Cooper, *Would-be Voters*, *supra* note 1.

[12] *Id.*

[13] Brent D. Wistrom, *12,000 Kansas Voters Still in Limbo Over Proof of Citizenship*, Kan. City Star (July 16, 2013), http://www.kansascity.com/news/local/article323173/12000-Kansas-voters-still-in-limbo-over-proof-of-citizenship.html.

[14] *See* John Hanna, *Kansas Proof-Of-Citizenship Law Blocks Many From Voting*, Huffington Post (Aug. 15, 2013), http://www.huffingtonpost.com/2013/08/15/kansas-citizenship-voting_n_3760601.html.

[15] Documentary proof of legal presence is just one of the safeguards in place in the driver's license application process in Kansas.  A Kansas resident applying for the first time for a driver's license must, *inter alia*, submit a range of documents, including: (i) acceptable proof of identity; (ii) acceptable proof of lawful status; (iii) acceptable proof of residence; and (iv) a Social Security number.  *See* Kan. Department of Revenue, *Driver's License Proof of Identity*, http://ksrevenue.org/dmvproof.html.

- a Certificate of Naturalization; or
- a Certificate of Citizenship.[16]

Each of these documents constitutes acceptable proof of citizenship for purposes of voter registration under the DPOC law.  *See* Kan. Stat. Ann. § 25-2309(*l*).

46.     Thus, any U.S. citizen who applies for a Kansas driver's license for the first time may only obtain a license by submitting documents that are also sufficient for purposes of establishing citizenship under the DPOC law.  And yet, it appears that thousands of citizens who were first-time driver's license applicants are on the suspense list.  This includes Plaintiffs Stricker and Boynton, who were first-time driver's license applicants under Kansas law when they registered to vote.  Plaintiffs Stricker, Boynton, and Hutchinson all showed documentary proof of citizenship at the time that they registered to vote in conjunction with a driver's license application.  Plaintiff Hutchinson returned to the DMV after renewing his driver's license to produce documentary proof of citizenship and was advised that his voter registration was complete.  And yet, all three still ended up on the suspense list.

47.     Like many other first-time driver's license applicants, Plaintiffs Stricker, Boynton, and Hutchinson are victims of bureaucratic inertia.  Beginning in 2009, the Division of Vehicles embarked on a three-year, $40 million DMV modernization project that was supposed to have enabled DMV offices to scan and store electronic copies of documents such as birth certificates and passports, and then transfer copies of those documents to election officials as needed.[17]  This process is not working effectively, as copies of the citizenship documents of many first-time driver's license applicants have not been transferred to the appropriate elections

---

[16] *Id.*; *see also* Kan. Stat. Ann § 8-240(b)(1)–(b)(3).

[17] *One-third of Kansas Voter Registration Applications Held Up*, Kan. City Star (June 25, 2013), http://www.kansascity.com/news/local/article321959/One-third-of-Kansas-voter-registration-applications-held-up.html.

offices.  Defendants have attempted, on an *ad hoc* basis, to verify whether certain voters on the suspense list may have provided citizenship documents in the course of applying for a driver's license.[18]  But rather than correct these problems systematically to assist all affected voters, Defendants have simply left many voters who have complied with all federal *and state* requirements unregistered, and have refused to register these voters unless the voters themselves provide documentary proof of citizenship a second time, directly to an elections official.

48.    This situation is not an accident, but rather a product of design: the Kansas state statute implementing the NVRA expressly purports to authorize the State to request such duplicative information.  *See* Kan. Stat. Ann. § 25-2352(b)(1) (stating that the voter registration portion of a Kansas driver's license application "[m]ay require . . . information that duplicates, or is in addition to, information in the driver's license or nondriver's identification card section of the application . . . to enable Kansas election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process.").

49.    Kansas law and Defendants' practices with respect to duplicative information are directly contrary to the NVRA's prohibition against requiring "any information that duplicates information required in the driver's license portion of the form."  52 U.S.C. § 20504(c)(2).

50.    In addition to first-time driver's license applicants, many eligible Kansans who applied to register to vote while renewing their driver's licenses have ended up on the suspense list.  In or around September 2013, the Department of Revenue, of which the Division of Vehicles is a part, announced a policy under which all individuals applying to renew a driver's

---

[18] In some cases, Defendants' *ad hoc* efforts to verify an applicant's citizenship status appear to have been initiated by the State in direct response to an individual suing Secretary Kobach over the invalidity of his voter registration practices.  *See* Samantha Lachman, *Want to Get Out of 'Voter Purgatory' in Kansas? Try Suing*, Huffington Post (Nov. 23, 2015), http://www.huffingtonpost.com/entry/kansas-voter-registration_us_56536600e4b0258edb326a06.

license would be exempted from any requirement of showing documentary proof of legal presence in order to obtain a renewed license.  Thus, since that time, the State no longer requires documentary proof of legal presence for driver's license renewals.[19]

51.     Most Kansans who renew their driver's licenses do not show documentary proof of citizenship while applying to renew their licenses, and many of them have *never* shown documentary proof of citizenship to the State.  Plaintiffs Fish, Ortiz, and Bucci applied to register to vote when they applied to renew their driver's licenses and were not required to show proof of citizenship at that time.  They ended up on the suspense list for failure to provide documentary proof of citizenship.

52.      As of December 11, 2015, more than 35,000 voters have at some point been placed on the suspense list due to the documentary proof-of-citizenship requirement.  This number constitutes more than 14% of those who tried to register to vote since the DPOC law went into effect in January 2013.

53.     The individuals on the suspense list are not a random cross-section of voters in Kansas.  They are disproportionately young and unaffiliated.  As of December 11, 2015, voters between the ages of 18 and 29 make up approximately 15% of all registered voters in Kansas, but more than 44% of voters on the suspense list due to purported failure to provide documentary proof of citizenship.  And unaffiliated voters, who are approximately 31% of registered voters in Kansas, comprise more than 53% of voters on the suspense list due to purported failure to provide documentary proof of citizenship.

---

[19] *See* John Hanna, *Kansas Won't Require Proof of Legal Residency for Driver's License Renewals*," Kan. City Star (Sept. 16, 2013), http://www.kansascity.com/news/local/article327552/Kansas-won%E2%80%99t-require-proof-of-legal-residency-for-driver%E2%80%99s-license-renewals.html.

B.      The 90-Day Purge Rule

54.     The number of voters on the suspense list, which had become a growing source of embarrassment for the State, has shrunk dramatically since September 2015.  This is due in part to the fact that the State removed large numbers of registrants from the suspense list altogether and canceled their registrations pursuant to a new administrative rule.

55.     On June 25, 2015, Defendant Secretary Kobach proposed an administrative rule that would become Kan. Admin. Regs. § 7-23-15.  This rule provided that, if an applicant fails to provide "satisfactory evidence of United States citizenship" within 90 days of receipt of the incomplete application, then the "application shall be deemed insufficient . . . and the voter registration application [shall be] canceled."

56.     The 90-day purge rule went into effect on October 2, 2015.  *Id.*  Upon information and belief, more than 12,000 individuals who were on the suspense list due to purported failure to submit documentary proof of citizenship have now been purged from the voter registration system, including Plaintiffs Ortiz, Bucci, Stricker, and Boynton.

57.     On November 20, 2015, Plaintiffs Fish, Ortiz, Bucci, Stricker, and Boynton, through their counsel, sent a letter to Defendant Secretary of State Kobach notifying him of the legal violations described in this Complaint.  The letter advised Defendant Secretary Kobach that Plaintiffs were prepared to initiate litigation if these violations were not remedied within 90 days of the date of the letter.  A copy of the notice letter is annexed hereto as Exhibit A.  Ninety days have now passed, and Defendant Kobach has not responded to the letter, much less corrected the violations.

58.     As of December 22, 2015, there are more than 14,000 voters on the suspense list due to purported failure to provide documentary proof of citizenship. This pool of voters remains disproportionately young (more than 44%) and unaffiliated (more than 53%).

## VI.   THE ABSENCE OF JUSTIFICATION FOR THE DOCUMENTARY PROOF-OF-CITIZENSHIP LAW

59.     There is no evidence of a substantial problem of noncitizen registration or voting in the State of Kansas.  In 2011, at the time that the DPOC law was being considered in the legislature, Defendant Secretary Kobach's office issued a report asserting that there was a total of sixteen potential noncitizen voter registrations and five votes allegedly cast by noncitizens in the fourteen-year period from 1997 through 2010; none of those resulted in a criminal prosecution, much less a finding by a court of unlawful activity.  There are approximately 1.7 million registered voters in Kansas.[20]  Taking the total number of alleged cases of noncitizen registration or voting reported by the Secretary of State in 2011 at face value, the percentage of illegal, noncitizen registrations would account for 0.0009 percent of the total number of registered voters in Kansas.  By contrast, approximately 22,000 individuals are in suspense or have been purged altogether from the voter registration system for purported failure to provide documentary proof of citizenship.

60.     In a letter dated November 17, 2015, Bryan Caskey, the Election Director in Defendant Kobach's office, sent a request to the federal Election Assistance Commission (EAC) to change the instructions to the federal voter registration form to include a documentary proof-

---

[20] *See* Julie Bosman, *Voter ID Battle Shifts to Kansas*, N.Y. Times (Oct. 15, 2015), http://www.nytimes.com/2015/10/16/us/politics/kansas-voter-id-law-sets-off-a-new-battle-over-registration.html?_r=0.

of-citizenship requirement.[21]  Mr. Caskey claimed that such a requirement was necessary to prevent noncitizens from registering to vote, and alleged that three noncitizens have registered to vote at motor vehicle offices in Sedgwick County: one in 2003 and two in 2010.  None of these alleged noncitizen registrations has resulted in a criminal prosecution, or an actual finding by a court of unlawful activity.[22]

61.     In 2015, the Kansas Legislature passed and the governor signed into law SB 34, a bill granting the Secretary of State criminal prosecutorial authority in elections-related cases. *See* Kan. Stat. Ann. § 25-2435(a)(3) ("Independent authority to prosecute any person who has committed any act that constitutes a Kansas elections crime . . . shall be vested in . . . the Kansas secretary of state.").  Kansas is the only state in the United States that has extended this kind of prosecutorial authority to the Secretary of State.[23]  As of February 2016, Secretary Kobach has

---

[21] Letter from Bryan Caskey to Brian Newby (Nov. 17, 2015), http://www.eac.gov/assets/1/Documents/Newby%20Ltr%2011-19-2015.pdf.

[22] On February 1, 2016, Brian Newby, the current Executive Director of the EAC and a former Elections Commissioner of Johnson County (who was appointed to that role by Secretary Kobach), abruptly and unilaterally changed the instructions to the federal voter registration form for Kansas to incorporate a documentary proof-of-citizenship requirement.  In a published statement, EAC Commissioner Tom Hicks noted  that this "unilateral[]" move by Mr. Newby exceeds his delegated authority, violates federal administrative procedural requirements for "a notice and public comment period," and arbitrarily reverses prior EAC determinations without any basis.  Statement by Vice-Chair Tom Hicks (Feb. 2, 2016), http://www.eac.gov/assets/1/Documents/Statement%20by%20Commissioner%20Hicks%20NVR A%20Form%20(2-2-16)-1.pdf.  *See also Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1198 (10th Cir. 2014) (holding that changing the federal form to incorporate a documentary proof-of-citizenship requirement "would have risked arbitrariness, because Kobach and [Arizona Secretary of State] Bennett offered little evidence that was not already offered in Arizona's 2005 request, which the EAC rejected.").  Mr. Newby's unilateral and unlawful actions are currently the subject of separate litigation and a motion for a temporary restraining order and a preliminary injunction in the U.S. District Court for the District of Columbia.  *See* Mot. for TRO & Prelim. Inj., *League of Women Voters v. Newby*, No. 1:16-cv-00236 (D.D.C. Feb. 17, 2016), ECF No. 11.

[23] *See* John Hanna, *Kansas Unusual in Giving Kris Kobach Power to Prosecute*, Topeka Capital-Journal (Oct. 18, 2015), http://cjonline.com/news/2015-10-18/kansas-unusual-giving-kris-kobach-power-prosecute.

used this authority to bring a total of six criminal prosecutions, none of which is for noncitizen registration or voting.[24]

62.     Finally, even if there were a problem of noncitizen registration or voting in Kansas, the DPOC law is entirely unnecessary to ferret out such illicit registrations.  Kansas has ample other methods for verifying the citizenship status of voter registration applicants.  These methods include (1) criminal prosecution in cases of perjury about citizenship status; (2) coordination with driver's license bureaus; (3) comparison of responses from jury selection; (4) the Systematic Alien Verification for Entitlements ("SAVE") database (a database listing citizenship status compiled by the United States Citizenship and Immigration Services agency); and (5) verifying birth data via the Electronic Verification of Vital Events system promulgated by the National Association for Public Health Statistics and Information Systems.

## VI.     JURISDICTION AND VENUE

63.     This action is brought pursuant to the NVRA's private right of action, 52 U.S.C. § 20510, and 42 U.S.C. § 1983.

64.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, and pursuant to 52 U.S.C. § 20510, which provides for jurisdiction of actions brought under the NVRA.

---

[24] *See* Bryan Lowry, *Kobach's Voter Prosecutions Draw Scrutiny to Proof-of-Citizenship Requirement*, Wichita Eagle (Oct. 18, 2015) (concerning the first three prosecutions announced), http://www.kansas.com/news/politics-government/article39670275.html; Jonathan Shorman, *Kris Kobach Files New Round of Voter Fraud Cases in 3 Kansas Counties, Proposes Election Auditing*, Topeka Capital-Journal (Jan. 25, 2016), http://cjonline.com/news/2016-01-25/kris-kobach-files-new-round-voter-fraud-cases-3-kansas-counties-proposes-election#gsc.tab=0. These prosecutions are against individuals alleged to have voted in multiple jurisdictions in the same election cycle; none involve noncitizen registration or voting. One of the cases has resulted in a guilty plea; the individual will pay a $500 fine and court costs. Edward M. Eveld, *Former Olathe Man Pleads Guilty in Unlawful-Voting Case*, Kan. City Star (Dec. 2, 2015), http://www.kansascity.com/news/government-politics/article47634575.html.

65.     This Court has personal jurisdiction over the Defendant because he does business in, and is an elected officer of, the State of Kansas.

66.     Venue is proper in this district pursuant to 52 U.S.C. § 20510 because the violations took place in this district and the Defendants reside in this district.

## CAUSES OF ACTION

### COUNT 1: Violations of Sections 5 of the NVRA –
### Simultaneous Registration for Voter Registration and Application for
### Motor Vehicle Driver's License

67.     Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

68.     Section 5 of the NVRA requires that every application for a driver's license, including license renewals, must serve as a "[s]imultaneous" application to register to vote in federal elections.  52 U.S.C. § 20504(a)(1).  The voter registration form associated with driver's license applications "may not require any information that duplicates information required in the driver's license portion of the form" other than a signature, and "may require only the minimum amount of information necessary to . . . enable State election officials to assess the eligibility of the applicant."  52 U.S.C. § 20504(c)(2).  The NVRA specifies that the form must include "a statement that . . . states each eligibility requirement (including citizenship)" and "contains an attestation that the applicant meets each such requirement . . . under penalty of perjury."  52 U.S.C. § 20504(c)(2)(C).

69.     Because Kansas's DPOC law, Kan. Stat. Ann. § 25-2309(*l*), requires more than the minimum amount of information necessary to assess the eligibility of a motor-voter applicant (*i.e.*, the sworn attestation of eligibility as provided under the NVRA), requires information that duplicates information in a Kansas driver's license application, and instructs state election

officials not to register Plaintiffs and all those similarly situated who fail to provide documentary proof of citizenship, the DPOC law conflicts with the NVRA.  The NVRA preempts Kansas's law and prohibits Kansas from requiring that motor-voter registrants – including Plaintiffs and all similarly situated voters – submit documentary proof of citizenship for purposes of registering to vote, absent a showing by the State that such a requirement is necessary to assess the eligibility of motor-voter applicants.

### COUNT 2: Violations of Section 8 of the NVRA – Duty to Ensure Registration of Eligible Applicants

70.    Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

71.    Section 8 of the NVRA requires that "each State shall . . . ensure that any eligible applicant is registered to vote in an election" if, while registering in conjunction with a driver's license application, "the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority" within the specified timeframe.  52 U.S.C. § 20507(a)(1)(A).

72.    Defendants fail to "ensure" that Plaintiffs and all others who completed and submitted a "valid voter registration form" in conjunction with a driver's license application "[are] registered to vote" in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(a)(1)(A).

### COUNT 3: Violations of Section 8 of the NVRA – Voter Registration List Maintenance

73.    Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

74.    Section 8 of the NVRA provides an exclusive list of reasons for removing registrants from voter rolls:

- the registrant requests it;
- if State law provides that criminal convictions or mental incapacity makes a registrant ineligible; or
- under a general program where a state makes reasonable efforts to remove ineligible voters for reason of:
  - death of the registrant; or
  - change in residence of registrant.

52 U.S.C. § 20507(a)(3)–(4).  Section 8 is the exclusive means of removing registrants and does not permit registrants to be removed for purported failure to provide documentary proof of citizenship.

75.     Kan. Admin. Regs. § 7-23-15 unlawfully requires the purging of voter registrants for purported failure to provide documentary proof of citizenship.  Kan. Admin. Regs. § 7-23-15 permits that such voters may be removed without compliance with the notice requirements set forth under Section 8 of the NVRA.

76.     Motor-voter registrants who, apart from compliance with the DPOC law, submit a completed and valid voter registration form – including Plaintiffs and all those similarly situated – are lawfully registered voters under the NVRA, regardless of whether they provided documentary proof of citizenship or whether such proof was transmitted to an elections official. Because the 90-day rule in Kan. Admin. Regs. § 7-23-15 removes such voters from the voter registration rolls without complying with the list maintenance requirements under Section 8, it violates the NVRA.

### COUNT 4: Violations of Section 10 of the NVRA – Duty to Coordinate State's Compliance with the NVRA

77.     Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

78.     Defendant Kobach is the chief election officer of the State of Kansas, and is "responsible for coordination of State responsibilities" under the statute.  52 U.S.C. § 20509.

79.     In light of the various violations described, Defendant Secretary Kobach has violated and continues to violate Section 10 of the NVRA by failing to coordinate the State of Kansas's responsibilities under the statute.

**COUNT 5: Violations of Elections Clause, U.S. Const. Art. I, § 4, cl. 1;**
**42 U.S.C. § 1983 Federal Preemption**

80.     Plaintiffs re-allege and incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

81.     The Elections Clause of the U.S. Constitution mandates that federal law preempts state law in any area where Congress has taken action to "make or alter" the "Times, Places and Manner of holding Elections" for federal office.  U.S. Const. Art. I, § 4, cl. 1.

82.     Kansas's DPOC law, Kan. Stat. Ann. § 25-2309(*l*), conflicts with the text, purpose, and intent of the NVRA by requiring motor-voter registrants to produce documentary proof of citizenship in order to register to vote.

83.     The NVRA permits State officials to require only a sworn attestation of citizenship – "the minimum amount of information necessary" to assess an applicant's eligibility. 52 U.S.C.A. § 20504(c)(2).  The NVRA's federal mandate on the manner of verifying citizenship eligibility preempts conflicting requirements imposed under Kansas law.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Enter judgment in their favor on their Complaint in its entirety and against Defendants;

B.  Declare the DPOC law and 90-day purge rule invalid with respect to motor-voter registrants and preempted by the NVRA;

C.  Order Defendants, pursuant to the NVRA, to register to vote the Plaintiffs and all other similarly situated motor-voter registrants who, apart from compliance with the DPOC

law, submitted a completed and valid voter registration form, and to restore any such

registrants who have been purged pursuant to the 90-day purge rule;

D.   Enjoin Defendants from enforcing the DPOC law and the 90-day purge rule with respect

to motor-voter registrants who have validly registered to vote in accordance with Section

5 of the NVRA, regardless of whether they have submitted documentary proof of

citizenship;

E.   Award Plaintiffs attorneys' fees and costs pursuant to 52 U.S.C. § 20510 and 42 U.S.C. §

1983; and

F.   Award any other relief the Court deems proper.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Pursuant to D. Kan. Rule 40.2, plaintiff designates Kansas City as the place for trial.

DATED this 18th day of February, 2016.

Respectfully submitted,

/s/ Stephen Douglas Bonney
STEPHEN DOUGLAS BONNEY (#12322)
ACLU Foundation of Kansas
6701 W. 64th Street, Suite 210
Overland Park, Kansas 66202
(913) 490-4102
dbonney@aclukansas.org

DALE E. HO*
R. ORION DANJUMA*
SOPHIA LIN LAKIN*
American Civil Liberties Union Foundation, Inc.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2693
dale.ho@aclu.org
odanjuma@aclu.org
slakin@aclu.org

NEIL A. STEINER*
REBECCA KAHAN WALDMAN*
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212) 698-3500
Fax: (212) 698-3599
neil.steiner@dechert.com
rebecca.waldman@dechert.com

ANGELA M. LIU*
Dechert LLP
35 West Wacker Drive
Suite 3400
Chicago, IL 60601-1608
Phone: (312) 646-5800
Fax: (312) 646-5858
angela.liu@dechert.com

*Attorneys for Plaintiffs*

*motions for admission *pro hac vice* forthcoming