```
 1                  UNITED STATES DISTRICT COURT
                         DISTRICT OF KANSAS
 2

    CODY KEENER, ET AL.,
 3
         Plaintiffs,
 4
      v.                              Docket No. 15-9300
 5
    KRIS W. KOBACH, ET AL.,
 6
         Defendants.
 7  _____    _____
    STEVEN W. FISH, ET AL.,
 8
         Plaintiffs,
 9
                                      Docket No. 16-2105
      v.
10
    KRIS W. KOBACH, ET AL.,
11                                    Kansas City, Kansas
         Defendants.                  Date: 3/23/2016
12  .........................

13      TRANSCRIPT OF DISCOVERY AND SCHEDULING CONFERENCE
                BEFORE THE HONORABLE JAMES P. O'HARA
14          UNITED STATES CHIEF MAGISTRATE COURT JUDGE

15  APPEARANCES:

16  For Case No. 15-9300 Plaintiffs:

17  Mark P. Johnson                   Paul Treanor Davis
    Dentons US LLP                    William R. Lawrence, IV
18  4520 Main Street                  Fagan Emert & Davis, LLC
    Suite 1100                        730 New Hampshire
19  Kansas City, MO                   Suite 210
                                      Lawrence, KS 66044
20
    For Case No. 16-2105 Plaintiffs:
21
    Dale E. Ho                        Neil A. Steiner
22  R. Orion Danjuma                  Dechert LLP
    American Civil Liberties          1095 Avenue of the
23   Union Foundation                  Americas
    125 Broad Street                  New York, NY 10036
24  New York, NY 10004

25
```

```
 1                        APPEARANCES

 2                       (continued)

 3   For Case No. 16-2105 Plaintiffs:

 4   Stephen D. Bonney              Angela M. Liu
     ACLU Foundation of Kansas      Dechert LLP
 5   6701 W. 64th Street            35 W. Wacher Drive
     Suite 210                      Suite 3400
 6   Overland Park, KS 66202        Chicago, IL 60601

 7   For the Defendant Kobach:

 8   Kris W. Kobach                 Bryan J. Brown
     Garrett R. Roe                 120 SW 10th Street
 9   Kansas Secretary of State      Topeka, KS 66612
     120 S. 10th Avenue
10   Memorial Hall, First Floor
     Topeka, KS 66612
11
     For the Defendant Jamie Shew:
12
     John T. Bullock
13   Bradley R. Finkeldei
     Stevens & Brand, LLP
14   900 Massachusetts
     Suite 500
15   Lawrence, KS 66044

16   For the Defendant Nick Jordan:

17   Joseph Brian Cox              M.J. Willoughby
     Department of Revenue         Attorney General's Office
18   915 SW Harrison               120 SW 10th Avenue
     Suite 230                     2nd Floor
19   Topeka, KS 66612              Topeka, KS 66612

20

21

22

23

24

25
```

```
 1              (Court called to order.)

 2              THE COURT:  Good afternoon.  This is

 3    Judge O'Hara and this is the civil case styled *Steven*

 4    *Wayne Fish and others versus Kris Kobach and others,*

 5    Case No. 16-2105, and the case with which it's

 6    consolidated styled *Cody Keener and others versus Kris*

 7    *Kobach and others,* Case No. 15-9300.  This is Magistrate

 8    Judge James O'Hara and we're convened today, which is

 9    March 23rd, 2016, for a discovery and scheduling

10    conference.

11          As relates to the plaintiffs in the lead case,

12    which is 16-2105, Steven Wayne Fish, Ralph Ortiz, Donna

13    Bucci, Charles Stricker, Thomas Boynton and Douglas

14    Hutchinson, who are sometimes referred to as the Fish

15    plaintiffs, who is lead counsel this afternoon?

16              MR. HO:  Good afternoon, Your Honor.  This

17    is Dale Ho.

18              THE COURT:  Mr. Ho, could you speak up?  I

19    could barely hear you, and more importantly the court

20    reporter can barely hear you.

21              MR. HO:  I'm sorry, Your Honor.  This is

22    Dale Ho on behalf of the *Fish* plaintiffs.  Is that a

23    little better?

24              THE COURT:  Just barely.  Are you on a

25    speakerphone?
```

```
 1              MR. HO:  I am, Your Honor.

 2              THE COURT:  I can barely hear you.  If you

 3    can switch to a different phone or have the --

 4              MR. HO:  I have switched to a regular phone

 5    at this point, Your Honor.

 6              (Conferring with courtroom deputy.)

 7              THE COURT:  Mr. Ho, if you would please hang

 8    up and dial back in, hopefully we can do better.  We'll

 9    hold on for you.

10              MR. HO:  Okay, great.  Thank you.

11              THE COURT:  Mr. Ho, are you there?

12              MR. HO:  Yes, I am, Your Honor.  Can you

13    hear me now?

14              THE COURT:  Much better.  Thank you.

15              MR. HO:  Okay.

16              THE COURT:  Who else do we have on behalf of

17    the plaintiffs in the Fish case?

18              MS. BONNEY:  This is Stephen Douglas Bonney,

19    Your Honor.

20              THE COURT:  And, Mr. Bonney, you're with the

21    ACLU in New York; correct?

22              MR. BONNEY:  I'm with the ACLU of Kansas.

23              THE COURT:  Okay.  Thank you, Mr. Bonney.

24    Who else on behalf of the plaintiffs?

25              MR. STEINER:  Your Honor, Neil Steiner and
```

1   Angela Liu from Dechert.

2           THE COURT:  Okay.  Anybody else on behalf of

3   the plaintiffs in the *Fish* case?

4           MR. DANJUMA:  Your Honor, this is Orion

5   Danjuma on behalf of the *Fish* plaintiffs.

6           THE COURT:  Anybody else on behalf of the

7   plaintiffs in the *Fish* case?

8           Mr. Ho, am I correct, in addition to the

9   individuals, the so-called *Fish* plaintiffs, that you and

10  the other lawyers that have noted their appearances

11  represent the League of Women Voters of Kansas?

12          MR. HO:  Yes, Your Honor, that is correct.

13          THE COURT:  Okay.  In the so-called *Keener*

14  case, 15-9300, for plaintiffs Cody Keener, Alder

15  Cromwell and Parker Bednasek, who is lead counsel this

16  afternoon?

17          MR. JOHNSON:  Judge, Mark Johnson of the

18  Dentons law firm appears as counsel for the *Keener*

19  plaintiffs.

20          THE COURT:  And, Mr. Johnson, do you have

21  partners from your firm with you this afternoon?

22          MR. JOHNSON:  I don't believe anybody else

23  from my firm is on unless I -- is there anybody else

24  from Dentons on the phone?  I guess I'm by my lonesome.

25          THE COURT:  Curtis Woods, Samantha Wenger

```
 1    scheduled to be with us today are not here; true?

 2              MR. JOHNSON:  As far as I know, that's

 3    accurate.

 4              THE COURT:  Do we have local counsel in

 5    addition for the Keener plaintiffs?

 6              MR. JOHNSON:  Well, we don't need local

 7    counsel.  I'm admitted to practice in Kansas.

 8              THE COURT:  Right.  I guess I meant more

 9    local for Kansas.  Do we have Bill Lawrence and Paul

10    Davis from the Fagan Emert firm today?

11              MR. LAWRENCE:  Yes, Your Honor, Bill

12    Lawrence and Paul Davis are here.

13              THE COURT:  Both of you.

14              And for Defendant Secretary of State Kris

15    Kobach, who's the defendant in both of cases, who is

16    appearing as lead counsel?

17              MR. KOBACH:  This is Kris Kobach appearing

18    on behalf of the Secretary of State's Office.  With me

19    is Bryan Brown, and on a separate telephone is Garrett

20    Roe.  We also have with us our Elections Director for

21    the State, Bryan Caskey.

22              THE COURT:  Thank you, Secretary.  Are all

23    of the people that you've mentioned of counsel -- of

24    record in the case?

25              MR. KOBACH:  Garrett Roe -- yes, Garrett Roe
```

1    and Bryan Brown are.  Bryan Caskey is not an attorney.

2    We just brought him along because he's a -- the point

3    man on many of the discovery requests.

4              THE COURT:  Okay.  Sounds like you got a

5    pretty good-sized group.  Anybody else here for

6    Secretary Kobach this afternoon?  Okay.

7          And then finally on behalf -- well, maybe not

8    finally, I guess next on behalf of Kansas Secretary of

9    Revenue Nick Jordan, who is a defendant only in the *Fish*

10   case, who is lead counsel?

11             MR. COX:  Good afternoon, Your Honor.  Lead

12   counsel are two actually, Brian Cox and M.J. Willoughby.

13             THE COURT:  Okay.  Anybody else for

14   Secretary Jordan?

15             MR. COX:  No, Your Honor.

16             THE COURT:  And then batting clean up, in

17   Case No. 15-9300, the *Keener* case, who do we have on

18   behalf of Douglas County, Kansas Clerk Jamie Shew?

19             MR. BULLOCK:  It's John Bullock and Brad

20   Finkeldei.

21             THE COURT:  Is there anybody else that I

22   have missed to this point?

23          Okay.  Counsel, I've reviewed the various

24   submissions with respect to today's conference,

25   including the Rule 26(f) report for scheduling purposes,

1   the joint status report that was required by court

2   order, and then finally the supplemental notice that was

3   filed by the plaintiffs without leave of court, and also

4   the equally unauthorized response by Secretary Jordan.

5   Are there any other filings of a written nature out

6   there of which I ought to be aware?

7                MR. HO:  None from the *Fish* plaintiffs, Your

8   Honor.

9                COURT REPORTER:  And, counsel, if you could

10  identify yourself as you speak, I'd appreciate it.

11               THE COURT:  Right.  Kimberly Greiner, our

12  court reporter, since we are working by telephone,

13  counsel, it would be helpful if you identify yourself

14  each time unless we're in an extended discussion.

15               MR. HO:  Yes, of course, Your Honor.  My

16  apologies.  This is Dale Ho on behalf of *Fish*

17  plaintiffs, and, no, there are no other filings that

18  we're aware of other than the ones that you've

19  mentioned, Your Honor.

20               THE COURT:  Okay.  Without polling anybody

21  -- everybody, does anybody disagree with what was just

22  indicated?

23        Okay.  Counsel, I'm going to go through these

24  things in perhaps not an entirely linear fashion.  I

25  suppose in the -- in the first instance we'll be

1    discussing these things mainly in the order that they

2    tend to be sequenced in the, for want of a better term,

3    standardized scheduling order that our district uses.

4    The first topic of discussion in that order tends to be

5    alternative dispute resolution.  And I guess the bottom

6    line of what I understand from the parties is that,

7    while there's a willingness to keep an open mind, this

8    case probably does not as a practical matter lend itself

9    to the usual procedure that our court uses where we

10   would have a -- a forced demand by the plaintiffs, a

11   forced counter by the defendants, followed by

12   confidential settlement reports to the Court, and then,

13   at least as a default, a mediation deadline at the

14   outside.

15        But if -- if anybody sees some light at the end

16   of the tunnel necessarily on the ADR side, I guess I

17   would like to hear it from them.  Otherwise, it would be

18   my intent to waive that requirement at this time and

19   revisit it later on when there might be more collective

20   interests in that.

21        MR. HO:  This is Dale Ho for the *Fish*

22   plaintiffs, Your Honor.  I think you've stated things

23   accurately, because our position is that certain

24   practices of the defendants violate federal law and

25   their position is that they don't.  I don't think that

1    there's much room for ADR at this time.  But obviously

2    we're happy to revisit that at a later time if it

3    becomes appropriate to do so.

4              MR. COX:  This is Brian Cox for defendant

5    Jordan.  We indicated in the report that no settlement

6    overtures, no proposals for resolution of the issues

7    with respect to Defendant Jordan had been received by

8    us.  We're not adverse to that.  I'm not -- I'm not

9    convinced at this point about a mandatory alternative

10   dispute resolution.  But certainly, if we would hear

11   from the plaintiffs as to what they think Jordan needs

12   to do, we're certainly open to talk and always have

13   been.

14             THE COURT:  Mr. Johnson, what's your take on

15   this with respect to the *Keener* plaintiffs?

16             MR. JOHNSON:  Judge, I agree with you.  I

17   don't believe at this time that ADR is in the cards.  It

18   may be in the future but certainly not -- not now.

19             THE COURT:  Okay.  Mr. Bullock, how about

20   you?

21             MR. BULLOCK:  We agree, Your Honor, that

22   there's no point in pursuing settlement ADR discussions

23   at this point in time.

24             THE COURT:  Okay.  Anybody else want to be

25   heard on this?  Okay.  Well, let me -- let me just say,

1   as we depart that subject, if the dynamics of this case

2   should materially change as we move down field and if

3   all of the parties were to become of the view that it

4   would be beneficial to have a member of our court other

5   than Judge Robinson, who would be deciding the ultimate

6   issues, assist you with ADR or a settlement conference,

7   please let me know.

8          The default arrangement in a case that's being

9   dual-handled by a district and a magistrate judge would

10  be for the magistrate judge to undertake that task.  But

11  I do want to be sensitive to the fact that, as we've

12  already seen up to this point and as I suspect we'll see

13  in the coming weeks, there have been some relatively

14  contentious discovery issues.  And, thus, if -- if the

15  parties wanted a magistrate judge to do a settlement

16  conference and if you would all prefer that it be

17  somebody other than myself, I'm reasonably confident

18  that I could persuade one of my colleagues to step into

19  the breach and help you out.  But unless and until I

20  hear from you, you'll be under no requirement to

21  mediate, participate in a settlement conference, or even

22  exchange formal proposals.

23         But particularly with Secretary Jordan expressing

24  an interest in hearing from the plaintiffs as to what he

25  might do to get the matter resolved, I would say I would

1    encourage you all to do that without formally ordering

2    it.

3          With respect to the various aspects of discovery

4    management and case management in general, although I

5    don't want to get sidetracked too much or for too long

6    on this issue, I did want to address at the outset the

7    positions that have been articulated by Secretary

8    Jordan, which, you know, stripped of all the legal

9    niceties seems to be a complaint that they weren't in

10   the case when decisions were made about how fast the

11   case would move and therefore they shouldn't have to

12   move as fast as everybody else.

13         Mr. Cox and Miss Willoughby, query:  Is there any

14   dispute about the date on which Secretary Jordan was

15   personally served with process in the case?

16              MR. COX:  No, Your Honor, I don't believe

17   so.

18              THE COURT:  And you would agree that he was

19   personally served on February 18, 2016?

20              MR. COX:  That's correct, Your Honor.

21              THE COURT:  Just out of curiosity, since

22   this may bear on the practicalities of how we address

23   things going forward, when did you all learn of

24   Secretary Jordan's being served?

25              MR. COX:  I think I learned that date, Your

1  Honor.

2           THE COURT:  With respect to Secretary

3  Jordan's anticipated positions in the case, once he

4  answers or files a motion to dismiss, I guess I just

5  want to have a better understanding of where he's going

6  and the basis on which he might be going there.  As I

7  understand it, one of the arguments he anticipates

8  making most likely by a motion would be that he's immune

9  from suit and that as a result all discovery ought to be

10  stayed as to him until further order.  Would that be a

11  fair statement?

12           MR. COX:  Judge, excuse me, I missed the

13  first part of that.  Was that directed at Jordan's

14  counsel?

15           THE COURT:  Yes, sir.

16           MR. COX:  Yes, sir, we do -- we do take that

17  position, Judge.

18           THE COURT:  Do you read the complaints in

19  these cases -- or I guess in the *Fish* case, Mr. Cox, as

20  seeking more than prospective injunctive relief against

21  Secretary Jordan in his official capacity?

22           MR. COX:  There is one reference in there to

23  retroactive declaratory relief.  That if the question is

24  whether they're seeking damages; no, we don't see that

25  in this case.

1          THE COURT:  To the extent that the complaint

2    in the *Fish* matter seeks prospective declaratory relief

3    against both Secretary Jordan and Secretary Kobach in

4    their respective official capacities, do you believe

5    that either or both are immune from suit?  And if so,

6    why?

7          MR. COX:  Well, with respect to Secretary

8    Jordan, Judge, we do, based upon the research we've

9    done, because we don't believe that Secretary Jordan has

10   the power to give the plaintiffs the relief -- the

11   relief they're apparently seeking.  And, therefore, on

12   conventional theories of Ex Parte Young, that would be

13   barred by the 11th Amendment as well as the standing of

14   the plaintiffs in this particular case to bring that.

15         THE COURT:  And, as I understand it, you

16   anticipate presenting that by way of motion at the end

17   of this month; is that correct?

18         MR. COX:  Judge, at the planning meeting of

19   the parties, we were proceeding on the basis that there

20   was a single pleading that had been tendered.  After

21   that, apparently maybe the day after that, there was a

22   new first amended complaint that was filed adding a new

23   plaintiff and adding a new count which alters our -- our

24   due date, which we have calendared, and we do anticipate

25   planning to file a motion to dismiss premised on what

1    I've indicated and other grounds.

2              THE COURT:  By when?

3              MR. COX:  I think we -- I think we figured

4    that due date to be March 31, Your Honor, based upon our

5    understanding of I believe it's Federal Rule 15 relating

6    to response time when there's been an amendment.  I hope

7    we calculated that correctly.  The 31st is what we've

8    noted.

9              THE COURT:  And am I correct that you

10   anticipate filing concurrently with that motion to

11   dismiss a separate motion to stay pending resolution of

12   the former motion?

13             MR. COX:  We do intend to file a motion to

14   stay, Your Honor.

15             THE COURT:  Do you intend to file it

16   concurrently with the motion to dismiss?

17             MR. COX:  I'm sorry, Your Honor, we do.

18             THE COURT:  Mr. Cox, relative to the motion

19   for preliminary injunction that Judge Robinson has

20   scheduled for mid-April in the *Fish* case in which your

21   client is among the defendants, I seem to recall having

22   come across a reference in your late filed response that

23   came in over the lunch hour to the -- something to the

24   effect that Rule 65 of the Rules of Civil Procedure

25   would not allow any discovery prior to the hearing on

1    the motion.  Did I read that correctly?

2              MR. COX:  I think what that may have said,

3    Judge, was that Rule 65 did not appear to contemplate

4    discovery.  And I think we also took the position in

5    that response that the motion for preliminary injunction

6    was filed with extensive attachment, over 200 pages by

7    my count, on the assumption that it had a -- a good

8    faith basis in the fact -- the facts and the law and

9    therefore additional discovery was going to be needed.

10   But to answer your question, Judge, that's the position

11   we took that on its face Rule 65 doesn't contemplate

12   that.

13             THE COURT:  Are you aware of any statute,

14   rule, or a case law, Mr. Cox, that would suggest that

15   the -- this Court lacks the discretion to permit the

16   plaintiffs to take discovery prior to the preliminary

17   injunction hearing?

18             MR. COX:  No, Your Honor, other than what

19   we've indicated.  That -- that response was drafted

20   principally by my co-counsel and I wouldn't want to

21   jettison any of the numerous reasons that she's

22   articulated in there, which was our attempt to tell the

23   Court what we thought in good faith was going on in this

24   case with regard to discovery.  But to answer your

25   question, Judge, no, I'm not aware of that.

1              THE COURT:  Miss Willoughby, since Mr. Cox

2      has thrown you under the bus on this issue, are you

3      aware of any statute, rule, or case decision that would

4      impede this Court's ability to permit discovery prior to

5      the preliminary injunction hearing?

6              MS. WILLOUGHBY:  Well, I haven't had the

7      opportunity to extensively research the matter,

8      including I would normally go to Wright-Miller and dig

9      around.  But I would say at this point, no.  I think the

10     point we were trying to make is, at least as to the

11     initial request, we weren't in the case.  We weren't

12     properly served.  We weren't heard.  And normally the

13     presumption is we have the normals under Rules of

14     Procedure.  And if someone wants to vary from that, the

15     Court does have discretion, but usually that -- that

16     relief should be sought by written motion and served on

17     everyone, heard by everyone, verified if possible

18     evidentiary reasons why you're going to deviate from the

19     normal requirements of the federal rules.

20          Yeah, it's -- in this case we're not doing

21     anything in the normal way.  And -- and especially with

22     the number of plaintiffs we have and number of

23     defendants, its -- and its consolidation, it's extremely

24     confusing to not be following the normal deadlines and

25     procedures and federal rules and the local rules.  So

1    that was -- that was essentially the point of that.

2            THE COURT:  I want to come back to something

3    you said just a moment ago, Miss Willoughby, with

4    respect to Secretary Jordan not being properly served.

5    Do you contend that he was not properly served with the

6    complaint or are you saying he was not properly served

7    with a motion to expedite discovery prior to the

8    preliminary injunction hearing?

9            MS. WILLOUGHBY:  The latter.

10            THE COURT:  Would you agree with me as a

11    practical matter with the 11-page submission today that

12    Secretary Jordan has had ample opportunity to weigh in

13    on the procedural niceties that ought to obtain between

14    now and the preliminary injunction hearing?

15            MS. WILLOUGHBY:  You know, I don't think so,

16    Your Honor.  I mean, in terms of -- I guess the question

17    depends on what relief is being requested as to us.  If

18    you're asking me today if we were to press the reset

19    button and as to today say should they get this

20    discovery or not or let's argue it today, that would be

21    one thing.  As to the motion to compel, which was the

22    relief requested, that certainly isn't ripe.

23            THE COURT:  But, I mean, I guess let's strip

24    aside the procedural vehicle that we use to decide the

25    matter.  At this point we've got a motion for

1    preliminary injunction on the table in the case in which

2    your client is a defendant.  We have the plaintiffs'

3    discovery requests in that case on the table.  I mean,

4    we're now in a position where we can talk about what

5    discovery, if any, ought to be allowed and when it ought

6    to be conducted between now and the injunction relief

7    hearing; true?

8             MR. COX:  Yes, Your Honor.

9             MS. WILLOUGHBY:  I will say, Your Honor,

10   Defendant Kobach has been cooperating with these

11   requests for discovery that were served on him.  He is

12   the primary defendant against whom relief is sought.

13   And that does appear to be more than ample in terms of

14   where plaintiffs appear to be going with this.

15           And then our other problem, Your Honor, is we've

16   been trying to accommodate the Court and the Court's

17   schedule and orders that were entered prior to us even

18   being in the case.  But on the one hand we can't waive

19   our client's constitutional rights.  So we have to, you

20   know, try to preserve our rights and objections.  So

21   that's kind of the box we're in when -- when everything

22   proceeds in this expedited fashion.

23            THE COURT:  And that's a fair point.  And to

24   be clear, I do not construe anything that has happened

25   to-date or anything that will happen during today's

1   conference as in any way waiving or giving up any of

2   Secretary Jordan's right to argue immunity defenses or

3   immunity from discovery if papers are timely filed.

4          But, you know, Miss Willoughby, I --

5   notwithstanding that, I do have some concerns about the

6   -- I don't want to say hypertechnical but the extremely

7   technical positions being taken on multiple fronts by --

8   by Secretary Jordan and how that would line out in a

9   practical way in terms of putting the Court in a

10  position to make a ruling in favor of somebody, whether

11  it be the plaintiffs or the defendants, on the motion

12  for preliminary injunction.

13         I mean, as I read your papers filed by you and

14  Mr. Cox, what -- what Jordan seems to be suggesting is

15  that at the end of this month he will file a motion to

16  dismiss and a motion to stay discovery, and that that

17  would then take presumably five to six weeks before it's

18  even ripe for decision by Judge Robinson and myself.

19  And that only assuming that the motion to dismiss and

20  the motion to stay are denied would we then re-group and

21  do any discovery.

22         And it seems to me that -- that's problematic if,

23  under your view of the case, there's really no need to

24  do anything until the August 2016 primaries.  And I

25  guess that's why I'm having some discomfort with the

1   case management plan that implicitly has been suggested

2   by Secretary Jordan and how that could be accommodated

3   given the timing considerations.

4        If you can help me better understand, I guess,

5   how we could handle this case and address all of the

6   arguments that you're going to make and still make a

7   decision prior to the -- sufficiently in advance of the

8   August 2016 primaries, I guess I'd like to hear it.

9        MR. COX:  Well, one thing I would add,

10  Judge, is we do plan on filing a response to the motion

11  for preliminary injunction and plan to attend the

12  hearing date on, I believe, April 14th.

13       THE COURT:  Okay.  So, Mr. Cox, I just want

14  to make sure I'm understanding correctly.  So you would

15  anticipate fully participating in that hearing even

16  though Judge Robinson would have under advisement at

17  that time the motion to dismiss; correct?

18       MR. COX:  Well, I think that's what we

19  presently plan to do, Judge.  I think it might be --

20  yeah, I think the prudent thing for us to do is to -- to

21  follow Judge Robinson's orders on that and to attend

22  that hearing and to make known our objections to the

23  entry of injunctive relief as against Jordan.  And I

24  think we have good reasons for that.  We don't, however,

25  intend to waive any other defense we presently have by

1    doing that.

2              THE COURT:  I'm sorry, say that again,

3    Mr. Cox.  I'm not sure if I caught everything you said.

4              MR. COX:  Forgive me.  Judge, I think -- I

5    think we do plan on, as you've asked me, attending that

6    and filing a -- a response to the motion for preliminary

7    injunction.  We think we have good grounds to oppose

8    that, but we don't really intend to do -- by that to

9    waive any other defense that we have.

10             THE COURT:  Okay.

11             MR. COX:  Okay.  All right.

12             THE COURT:  I just want to make sure I -- I

13   wasn't sure if you said waive or delay other defenses.

14   I just wanted to make sure I correctly understood what

15   you were saying.

16        With respect to Secretary Jordan -- well, let me

17   back up a little bit.  As I understand the joint report

18   that was submitted by both sets of plaintiffs by

19   Secretary Kobach and by Mr. Shew, despite the order that

20   I had entered that technically required everyone to

21   serve initial disclosures by March 17, putting that

22   aside, all of those parties were in agreement that those

23   disclosures should be served by March 31st.

24        Mr. Cox and Mr. Willoughby, mindful that you'll

25   be going forward with the preliminary injunction hearing

1    in mid-April before Judge Robinson, is there any reason

2    that Secretary Jordan shouldn't serve initial

3    disclosures with respect to the witnesses and exhibits

4    upon which he intends to rely at that hearing?

5              MR. COX:  I'm sorry, I didn't catch the

6    latter part of that, Your Honor.

7              THE COURT:  Is there any reason that

8    Secretary Jordan shouldn't serve initial disclosures on

9    witnesses and exhibits by March 31st along with all the

10   other parties in these two cases?

11             MR. COX:  I don't think they're going to be

12   extensive, Judge.  That would be subject to our motion

13   to stay.  But if we make the decision that we need to

14   file those, we will by March 31st, yes, Your Honor.

15             THE COURT:  Okay.  Well, I'm not sure if

16   that's entirely responsive to the question I asked you.

17   But the order of the Court is that all parties,

18   including Jordan, must serve disclosures by March 31st.

19   However, if this assuages your waiver concerns, you may

20   include in the preamble of that submission that you're

21   not waiving your right to seek a stay of discovery.

22             But so the record's clear as to why I'm ordering

23   this, it seems to me just fundamentally fair that if

24   Secretary Jordan is going to participate in the

25   mid-April preliminary injunction hearing, he ought to

1    disclose, consistent with Rule 26(a), all the witnesses

2    and exhibits upon which he intends to rely on just like

3    everybody else is going to participate in that hearing.

4         With respect to the close of discovery in the

5    joint report that was submitted by everybody, save

6    Secretary Jordan, it seemed like there was agreement

7    that discovery should be wrapped up by June 17.

8    Secretary Jordan evidently was of the view, at least as

9    indicated by that report, that if discovery is not

10   completely stayed, it ought to be extended or at least

11   due to be completed in mid-September.  I think the date

12   that was proposed was September 17, which was a weekend,

13   if memory serves.

14        But I'm just curious, and I'd like to hear from

15   all of the lawyers here.  If Judge Robinson's going to

16   make a decision on the motion for a preliminary

17   injunction in the *Fish* case some time after mid-April

18   but presumably before the August primaries, I guess is

19   there any pressing need to get discovery on all of the

20   other issues that are bound up in this case done by

21   mid-June?  Because it seems to me that if we -- just by

22   way of explanation of my question, if we order discovery

23   completed by mid-June, the case is going to be on a

24   track -- or the cases would be on a track to be tried

25   some time in the Spring of 2017.

1          If we move the discovery back two or three

2     months, it would move the trial date back

3     correspondingly.  But I just wanted to -- in terms of

4     the elections that are scheduled in 2017, what

5     difference this is going to make if we move the

6     discovery deadline back.

7          So, Mr. Ho, do you have any comment on the

8     question I've posed?

9          MR. HO:  Yes.  Excuse me, yes, Your Honor.

10    The *Keener* case was filed before ours and when the --

11    when the Secretary of State filed a motion to

12    consolidate the matters, you know, we were largely

13    amenable to that.  But our view was that we should

14    proceed along a track that is as similar as possible to

15    the existing case management order in the *Keener* case.

16    Now, we understand obviously that that order has been

17    vacated.

18         But what we started from, in preparing the 26(f)

19    report, was something that was similar to what had

20    previously been ordered in the *Keener* case.  And my

21    understanding from our 26(f) conference with the parties

22    a week and a half ago was that the *Keener* plaintiffs had

23    -- and I'll let them speak for themselves here -- but

24    they had wanted a schedule that would make it possible

25    for dispositive motions to be filed and resolved in

1    advance of the November election; that we obviously have

2    our preliminary injunction motion in our case but there

3    isn't a motion of a preliminary nature in theirs.  And I

4    think even if -- you know, irrespective of how the

5    preliminary injunction motion gets resolved, we think it

6    would also be preferable to have dispositive motions

7    before the November election.

8              THE COURT:  But I don't even think in the

9    *Keener* case -- well, refresh my memory.  Before it was

10   vacated, Mr. Ho, what was the dispositive motion

11   deadline in the *Keener*?

12             MR. HO:  Let's see, Your Honor, the

13   dispositive motion deadline in the *Keener* case I believe

14   was July 15th, 2016.  But if I have that incorrect, I'm

15   sure the --

16             THE COURT:  I think that's right.  I just

17   wanted to verify it.

18             MR. HO:  Sure.  From our perspective, this

19   is a case that requires some discovery but not a

20   tremendous amount.  There's already been some discovery

21   in the *Keener* case.  And in the interests of moving

22   things along when we filed our case, we didn't want to

23   slow down any other litigation that was already pending

24   before the Court and we thought that we could get our --

25   whatever discovery was necessary in our case done in

1    relatively short order.

2              THE COURT:  Well, let me throw out a little

3    bit more information.  Mr. Ho, I'd like you to respond

4    to this and then the others as well.

5              You know, I -- I can't speak for Judge Robinson,

6    but it is certainly possible, if dispositive motions are

7    filed in these consolidated cases by the July 15

8    deadline that was operative in *Keener*, it's possible

9    that those motions, upon being fully briefed shortly

10   before Labor Day, would be able to be ruled prior to

11   election day but that's not a certainty, I don't

12   believe.

13             And indeed typically -- and I'm not sure if Judge

14   Rushfelt covered this with the *Keener* parties when he

15   did the scheduling conference, but our court's norm or

16   suggested target is to have timely filed dispositive

17   motions, assuming they're timely briefed as well, ruled

18   60 days prior to trial.  And the trial setting I think

19   that was granted in *Keener* was in March, mid-March.  So

20   the target date to get those motions ruled within Judge

21   Robinson's chambers as opposed to being keyed to the

22   November 2016 elections I imagine would be more like

23   mid-January 2017.

24             Additionally, in anticipation of today's

25   conference, I did check with Judge Robinson's office

1   about available trial settings, particularly given the

2   number of out-of-town people that are involved in this

3   case, not to mention busy local people.  And if these

4   cases remain or were to be placed on a mid-March 2017

5   trial docket, they would be very likely not the first

6   civil case on the docket.  At this point we're talking

7   about two separate trials.

8         Now, regardless of which docket these cases are

9   placed on for trial, they will, by virtue of legal

10   requirements under the Speedy Trial Act, be placed

11   behind any case on the criminal side that requires

12   trial.  But it's my understanding that if we were to

13   slide the trial setting back to May 16 and May 23, 2017,

14   for the two cases that we're dealing with here, the

15   parties would at least be able to obtain first-up civil

16   settings.  Still subject, of course, to criminal cases

17   on Judge Robinson's docket.

18         If the cases were moved from March 2017 to May of

19   that year, that would allow the parties, if they were

20   desirous of using it, a little bit more leeway in terms

21   of getting their discovery done or getting their motions

22   filed or both.

23         So I guess, Mr. Ho, does that change your view as

24   to how important it is to adhere to the July 15

25   discovery cutoff that was agreed to by everybody, save

1    Secretary Jordan?

2           MR. HO:  I think I understand what you're

3    saying -- what you're saying, Your Honor.  Our principal

4    reason for proposing the July 15th deadline was to

5    propose something that was consistent with what was

6    already in the *Keener* case.  At this point I can't see

7    an independent reason for wanting such a short discovery

8    cutoff.  But I would, I think, defer to the parties in

9    the *Keener* case.  They might have some reasons for

10   wanting that July 15th date for dispositive motions that

11   I'm not privy to.

12          THE COURT:  Mr. Johnson, I guess we could

13   look to you for responsibility for starting this whole

14   mess.  How -- how interested are you in getting

15   discovery done by mid-July as opposed to maybe a little

16   bit further out?

17          MR. JOHNSON:  Your Honor, okay, this is Mark

18   Johnson.  We continue to be quite interested in that

19   discovery deadline.  If it's moved, first we lose any

20   possibility of relief for the primary, and I think we --

21   we probably also lose any possibility of relief for the

22   general election 2016.  And, you know, based on our

23   understanding of the law, a significant number of

24   Kansans will be denied the right to vote in all

25   elections, both the primary and the general election.

15-9300/16-2105 Keener v Kobach/Fish v Kobach 3.23.16          30

```
 1              In addition to that --

 2              THE COURT:  Well, before you -- before you

 3    leave that, Mr. Johnson, I want to make sure --

 4              MR. JOHNSON:  Sure.

 5              THE COURT:  -- I'm understanding what you

 6    mean by that.  Am I correct that you did file but then

 7    later withdrew a motion for preliminary injunction in

 8    your case?

 9              MR. JOHNSON:  That's correct because the --

10    the two individuals we represented at the time, this is

11    the Keener and Cromwell, were against their will

12    registered as voters by the Secretary of State's action.

13    And so the relief that we would have sought at a

14    preliminary injunction hearing was granted by action of

15    the defendants without our knowledge.

16              THE COURT:  So, I mean --

17              MR. JOHNSON:  Which is something they had

18    done previously in the Belenky case in Topeka which

19    Judge Theis had a few interesting things to say about.

20              THE COURT:  Well, I won't get into that

21    but --

22              MR. JOHNSON:  Another point, Your Honor --

23              THE COURT:  Just a second.  Let me ask you,

24    am I correct in understanding that it's your position

25    that irrespective of whatever relief the Fish plaintiffs
```

1   might obtain on their motion for preliminary injunction,

2   absent us moving more quickly, your clients lose the

3   chance to get any relief prior to at least the Fall 2016

4   election?

5          MR. JOHNSON:  Certainly the class.  You

6   know, the -- the two plaintiffs that -- the two of the

7   three plaintiffs are registered -- are now registered

8   voters, so they will be allowed to -- to vote in both

9   the primary and the general election.  We believe that

10   the Secretary has taken the position that Mr. Bednasek

11   is not eligible to vote in Kansas and so he will be

12   denied the right to vote.

13          However, another point on the need for an early

14   discovery cutoff is that the Secretary has on a number

15   of occasions said that the two months or so prior to

16   both the primary election and the general election are

17   so busy that they would simply be unable to participate

18   in any -- in any activities related to litigation.

19          MR. COX:  You're talking about Secretary

20   Kobach?

21          MR. JOHNSON:  Yes, the Secretary, yes, the

22   Secretary's office.  We've been told, when we were

23   talking about discovery cutoff and other scheduling

24   issues, that the Secretary's office is -- is very busy

25   with election-related activities on the two months or so

1   prior to the general -- pardon me, the primary and the

2   general election; that they simply would not have time

3   to turn their attention to any matters involved in the

4   litigation.

5          THE COURT:  Mr. Roe, do you wish to speak to

6   that at all?

7          MR. ROE:  Yeah.  I thought Secretary Kobach

8   was actually on the phone.

9          THE COURT:  He is.  Secretary Kobach, do you

10  wish to speak to it --

11         MR. KOBACH:  Yeah.  Yeah, I do.

12         THE COURT:  -- since you're both party and

13  lawyer?

14         MR. KOBACH:  I'm sorry, Your Honor.  This is

15  Kris Kobach.  A couple of points:  One is the -- with

16  regard to the office's ability, we have only six people

17  in our elections division.  We're really one of the

18  smallest agencies in the state government.  So they are

19  very busy in the period -- I wouldn't say two months

20  before, but military voting begins 45 days, overseas

21  military voting 45 days before the actual election date,

22  so roughly a month and a half.  That said -- and of

23  course the elections division staff is -- they are the

24  ones who are compiling the data that is the source of

25  much of these discovery requests.  That said, our legal

1    staff and our attorneys can certainly be proceeding with

2    briefing and other aspects of the case during those

3    45 days up to election.

4          I would also note something, however, Mr. Johnson

5    said.  I don't -- I'm not sure if he's calculating

6    things correctly.  He said that, you know, that he

7    wanted a mid-July discovery deadline in the hopes of

8    possibly getting a -- some sort of relief before the

9    August 2nd primary.  I would note that -- he may not be

10   aware of this, but advanced voting for the August 2nd

11   primary begins on July 13th two days before the existing

12   discovery deadline.  So it's pretty much impossible even

13   under the existing schedule for him to obtain relief if

14   he were to prevail on his theories before the August 2nd

15   primaries which will already have begun before the

16   existing deadline.

17         I think, you know, to the extent plaintiffs have

18   a hope of getting some sort of injunction in place

19   before the August 2nd primary, then their only realistic

20   hope would be if Judge Robinson grant their preliminary

21   injunction request.  I don't think the case in chief

22   could be, you know, resolved at a subsequent injunction

23   before -- under any circumstances before that July 13th

24   beginning the voting date for August 2nd primary.

25         So our position is that what you have suggested

1   makes sense.  If we were to move things back two months,

2   you could also move the discovery deadline back a couple

3   of months correspondingly.

4                THE COURT:  But, Mr. Kobach, wouldn't that

5   -- if we moved it back, let's say if the discovery moves

6   back to -- let's say if the discovery cutoff moved back

7   to two months or even the three months that has been

8   suggested by Secretary Jordan, that would put -- well,

9   let me back up.  Let me ask a practical question.  I

10  want to make sure I'm understanding kind of how this

11  would all map out.  If -- let's assume that the

12  plaintiffs -- well, strike that.

13      I guess if we do move the deadline back as

14  relates to Mr. Johnson's clients in the *Keener* case, it

15  would as a practical matter prevent those plaintiffs

16  from getting any relief on a summary judgment motion

17  prior to the general election in November 2016.  Would

18  you agree with that, Mr. Kobach?

19               MR. KOBACH:  I think that's probably

20  correct.  I'm trying to map out in my mind the time.  So

21  the dispositive motions were filed July 15.  Right now I

22  guess you -- you say -- I think you said it would be

23  roughly a six-week track from responses and replies.  So

24  then we're looking at --

25               THE COURT:  It's actually -- it's actually

1   five I think.  Twenty-one days for a response and

2   14 days for a reply.  So it would be late August before

3   they're briefed.

4           MR. KOBACH:  Right.  And so we're looking --

5   and then I don't know how much time you would assume

6   before Judge Robinson could render a decision.  So --

7           THE COURT:  No, I guess my point was,

8   although I don't think it likely or at least certain

9   that she would get them ruled, there would at least

10  be -- if we adhere to the schedule that was originally

11  discussed, it would at least give the *Keener* plaintiffs

12  a chance of getting summary judgment prior to the

13  November election.  Whereas if we move it back as

14  suggested by Secretary Jordan, there would be zero

15  chance of a favorable result for the *Keener* plaintiffs

16  prior to that general election.

17          MR. KOBACH:  Your Honor, just one thing to

18  remember though that -- that the voting actually

19  begins -- the advance voting begins on October 19th for

20  the November election.  So, as a practical matter,

21  that's the date by which the -- you know, any injunction

22  would have to be issued.

23          MR. JOHNSON:  But, Judge -- this is Mark

24  Johnson on behalf of the *Keener* plaintiffs --

25  registration for the general election continues up to --

1    and I think the Secretary can correct me -- is it

2    21 days before the general?

3              MR. KOBACH:   The registration continues up

4    to 21 days and then the proof of citizenship can be

5    submitted up until the day before the election.   So you

6    can start your registration by filling out a form up to

7    21 days before and then you can send in your proof of

8    citizenship or e-mail or fax it in to the day before the

9    election.

10             MR. JOHNSON:   So just because somebody isn't

11   on the voting -- the voter rolls as of the time the

12   advanced voting opens doesn't mean that they would not

13   be able to vote in the general election?

14             MR. KOBACH:   That's correct.

15             THE COURT:   Okay.   Well, counsel, I

16   appreciate your -- your candor on this issue.   I think

17   I'm going to retain the June 17 discovery cutoff and

18   apply that for both cases since that would at least

19   preserve a chance for all parties to get complete relief

20   prior to the 2016 general election.

21             With respect to the anticipated motion to stay

22   discovery by Secretary Jordan, I am going to impose a

23   deadline for any motion of that sort that is going to be

24   filed March 31.   In other words, I don't want to have

25   Secretary Jordan filing a motion to dismiss and then

1    simply saying we might file a motion to stay later on.

2    So if a motion to stay discovery is going to be filed,

3    it's due March 31 concurrent with any motion to dismiss.

4          MR. COX:  Understood, Your Honor.

5          THE COURT:  That the brief in support of

6    that motion will be limited to five double-spaced pages.

7    The response to that motion by anyone that cares to

8    weigh in, presumably just the *Fish* plaintiffs, would be

9    due or expedited to April 5th and likewise that will be

10   limited to five double-spaced pages.  Any reply brief

11   will be due two days thereafter which will be April 7

12   and limited to two pages.  And I will endeavor, even

13   though I'm going to be out of town in the first part of

14   April on other matters, to get that ruled within days as

15   opposed to weeks or months.

16         Unless and until a favorable ruling is obtained

17   by Secretary Jordan on that motion, the discovery

18   deadlines that we're setting today and that will be

19   captured in a scheduling order for both cases will be

20   operative for all parties, including, but not limited

21   to, Secretary Jordan.

22         MR. COX:  Very good, Your Honor.

23         THE COURT:  And, again, that's without

24   waiver of the motion to stay that will be filed.

25         MR. COX:  Appreciate that.

```
 1                THE COURT:  Now, even though we're going to

 2   get the discovery done and get the summary judgment

 3   motions in both cases due as proposed in the joint

 4   report by July 15, I do want to come back to this

 5   question of when it would make the most sense to try the

 6   cases.

 7           If you all want to go to trial sooner and go with

 8   March, albeit with a back-up setting behind both

 9   criminal and civil cases that are on Judge Robinson's

10   docket, I'm fine with that.  If, for quality of life

11   reasons or otherwise, you would prefer to move back to

12   the May 16 and May 23 dockets of next year with a

13   first-up civil setting in each case, you can have that

14   as well.

15           But, Mr. Ho, what's your preference?

16                MR. HO:  I think our preference right now,

17   Your Honor, is to have the case adjudicated as soon as

18   possible.  So our preference would be for March at this

19   time.

20                THE COURT:  I want to make sure you know

21   what you're getting into.  You might -- you might get

22   24 hours notice that the case ahead of you has completed

23   trial and you need to be here to try the case.  Are you

24   prepared to do that?

25                MR. HO:  We'll make do with what we have to
```

1   do, Your Honor.

2          MR. JOHNSON:  Dale, let me step in here.

3   This is Mark Johnson.  I've been through this, this tap

4   dance.  If we can get -- would we get special settings

5   on the 16th and 23rd of May?

6          THE COURT:  You'd get first-up civil

7   settings.

8          MR. JOHNSON:  Okay.  We're number one civil

9   settings.  Would -- there's always a criminal docket?

10  There's nothing we can do about that?

11         THE COURT:  True.

12         MR. JOHNSON:  These days, Your Honor, I

13  haven't checked lately, how -- how long is the civil

14  docket when we get -- we used to call these accelerated

15  dockets.  How long is the -- would the civil docket be

16  for the -- for the March setting?

17         THE COURT:  Hold on a minute.  Let me -- we

18  don't use the term accelerated docket in our district.

19  I think that's a nomenclature in the Western District of

20  Missouri.  Just a minute.  Hold on.

21         MR. JOHNSON:  Yeah.

22         (Conferring.)

23         THE COURT:  Okay.  I'm back.  Don't talk ill

24  of me.  I -- actually, just in the interest of

25  disclosure, I do have a representative from Judge

1   Robinson's office in my chambers.  Every one of our

2   judges manages his or her dockets a little bit

3   differently.  But I'm told that if you go back on the --

4   the mid-March docket, and I think this was set before

5   for March 14 of '17, you would at a minimum be on call

6   for both cases for the balance of that month and

7   potentially running into the first part of April of

8   2017.  Whereas, if you go to May, subject to any

9   criminal cases needing to be tried ahead of you, you

10  would have -- you could be guaranteed -- whether it be

11  two or four days for the first case and whether it be

12  two or four days for the second case guaranteed.

13          MR. JOHNSON:  Judge, this is Mark Johnson on

14  behalf of *Keener* plaintiffs.  I believe we prefer the

15  May settings.

16          MR. HO:  Your Honor, this is Dale Ho on

17  behalf of *Fish* plaintiffs.  Thank you for that

18  clarification.  With a better understanding, I think we

19  would also prefer the May setting.

20          THE COURT:  Okay.  Secretary Kobach, do you

21  have any preference?

22          MR. KOBACH:  Your Honor, we'd prefer the May

23  settings as well.

24          THE COURT:  Okay.  On behalf of Secretary

25  Jordan, what's the preference, if any?

1          MR. COX:  We're okay with May of 2017,

2     Judge.

3          THE COURT:  Okay.  And for Mr. Shew?

4          MR. LAWRENCE:  We prefer May as well, Your

5     Honor.

6          THE COURT:  Okay.  Without polling

7     everybody, if there's anyone that disagrees with the

8     notion that the first filed case by the *Keener*

9     plaintiffs should go first and the *Fish* case second,

10    please speak up or forever hold your peace.  Okay.  I'll

11    reflect those settings in the scheduling order.

12         MR. COX:  Judge, just so I'm clear on that,

13    *Keener* first and *Fish* second?

14         THE COURT:  Yes, Mr. Cox.

15         MR. COX:  Yes, sir, thank you.

16         MR. JOHNSON:  Your Honor, this is Mark

17    Johnson.  Just as a matter of information, perhaps the

18    Secretary can tell us, I'd just like to ask, Kris, what

19    elections are scheduled in 2017?  Are there -- is it

20    just municipal elections?

21         MR. KOBACH:  That's correct, there are

22    municipal elections.  But pursuant to a recently enacted

23    state law, all of the municipal elections have been

24    moved to the fall.

25         MR. JOHNSON:  That's right, okay, they have

1     been moved to the fall.  Okay.  So the -- Your Honor,

2     the May settings are fine for the -- for us.

3              THE COURT:  Okay.  With respect to the

4     expedited discovery that was ordered by Judge Robinson

5     relative to the motion filed by the *Fish* plaintiffs, I

6     just want to make sure I'm understanding the

7     nomenclature that was used.  As I understand your

8     report, she had ordered that discovery to be served by

9     March 9, any objections by at least Secretary Kobach

10    served by March 16, that the joint motion to resolve the

11    disputes be filed by March 22nd and we'd address those

12    today.  But the -- the report also indicates that there

13    would be -- this is your nomenclature -- a return date

14    of March 23rd on that expedited written discovery.  What

15    did you all mean by "return date"?  Is that the date for

16    producing documents?

17             MR. HO:  Your Honor, this is Dale Ho on

18    behalf of the *Fish* plaintiffs.  Yes, we requested that

19    documents and responses to a few interrogatories be

20    produced by March 23rd, certainly with respect to

21    anything that the parties did not have any disputes

22    over.

23             THE COURT:  So all responses, save

24    objections, plus production of the unobjected to

25    documents would occur on -- today basically; is that

1    correct?

2              MR. HO:  That's -- well, our understanding

3    was objections -- all of -- objections were due on the

4    16th a week ago and that responses would come in for

5    unobjected to requests today, and that we would resolve

6    any other objections today with some reasonable period

7    of time for production of any additional materials

8    thereafter.

9              THE COURT:  Okay.  Secretary Kobach, did you

10   understand that any differently?

11             MR. KOBACH:  No, Your Honor, that's how we

12   understood it.

13             THE COURT:  Okay.

14             MR. KOBACH:  We -- the only caveat is we

15   didn't realize until we reread the schedule that we --

16   that plaintiffs were hoping for us to produce things by

17   10:00 a.m. today.  We do have the interrogatories

18   responses finished and can deliver those after the end

19   of this teleconference.  And the RFP docs should be

20   ready by the close of business today.  But, yeah, we are

21   -- there are still some things outstanding that we

22   probably will need to resolve.

23             THE COURT:  Well, let's then turn to the

24   discovery requests that were served by the plaintiffs on

25   Secretary Jordan.  And I'm not sure whether it be Mr. Ho

1   or Mr. Johnson that would speak to this most directly.

2   I suppose it would be Mr. Ho.  Sir, do you dispute the

3   -- the argument made on behalf of Secretary Jordan that

4   that order allowing expedited discovery was not

5   requested or made specifically applicable to him?

6                MR. HO:  This is Dale Ho for the *Fish*

7   plaintiffs, Your Honor.  Our reading of the -- of Judge

8   Robinson's order from March 8th is that it permits

9   plaintiffs to serve expedited discovery in this case

10  generally and that it was not limited to Secretary

11  Kobach.

12               THE COURT:  But is it correct that Secretary

13  Kobach -- or, excuse me, Secretary Jordan was not

14  formally of record, aside from whether he'd been served,

15  as of when Judge Robinson conducted her discovery

16  conference?

17               MR. HO:  The discovery conference was on

18  March 7th and our understanding is that Secretary Jordan

19  hadn't entered an appearance in the case at that time.

20  But as Your Honor noted earlier, there's no dispute that

21  Secretary Jordan was personally served on February 18th.

22               THE COURT:  Okay.  Well, I think

23  procedurally, although I have -- I have some concerns

24  practically about how this game is being played, if you

25  will, I think procedurally some of the points made by

1   Secretary Jordan are technically correct.  However, I'm

2   going to treat the record on my own motion as a motion

3   by the plaintiffs at this point for expedited discovery

4   from both Secretary Kobach and Secretary Jordan.  I will

5   allow the plaintiffs to pursue this expedited discovery

6   against Jordan.

7       Any responses -- excuse me, any specific

8   objections to the requests served on Jordan will be due

9   by 4:00 p.m. tomorrow.  And then, if the parties cannot

10  resolve their disputes through a meet and confer, I want

11  a joint motion by the *Fish* plaintiffs and Secretary

12  Jordan by 4:00 p.m. on Friday, the 25th.  And that joint

13  motion will be limited to five double-spaced pages.

14      I would encourage, without ordering it at this

15  point, to -- that the plaintiffs and that Secretary

16  Jordan attempt to resolve any disputes with respect to

17  the written discovery much in the same way that it

18  appears as though the plaintiffs and Secretary Kobach

19  have.

20      Mr. -- or, Secretary Kobach, let me come back to

21  you.  With respect to the interrogatory responses that

22  will be served today and the documents that will be sent

23  out, will those be sent out notwithstanding, at least as

24  of this precise instance, the lack of a protective order

25  being on file?

1          MR. KOBACH:  Your Honor, the ones where a

2    protective order would not apply would be sent out.

3    We're still in negotiation with plaintiffs on the terms

4    of a protective order.  So it would not be a complete

5    response.

6          MR. ROE:  Actually, Your Honor, this is

7    Garrett Roe.  We discussed this -- I discussed this last

8    night with Mr. Ho via e-mail.  We have the documents

9    that they're requesting that are not -- that are -- will

10   be subject to the protective order but with the relevant

11   information not included, and then we were -- we decided

12   to go ahead and give them the documents with the

13   relevant information after the protective order was

14   entered.

15          THE COURT:  Okay.  Well --

16          MR. ROE:  That was my understanding last

17   night, Dale.  Was that your understanding?

18          MR. HO:  That is my understanding, Garrett,

19   thank you for saying that.  But if I may, one other

20   option I think that I can suggest here is that, you

21   know, to the extent that there are certain -- you know,

22   those -- I think we're just talking about two documents

23   here and a little bit of information in those two

24   documents which the Secretary's position is that that

25   information is confidential.  We'd be willing, if it's

1    going to take some time to hammer out the terms of a

2    protective order, to accept production of those

3    documents subject to a limitation of for attorneys' and

4    experts' eyes only until the contours of a full

5    protective order can be hammered out because I know that

6    that may take some time.  But what I want to make sure

7    is that we have enough of an opportunity to look at

8    those materials in advance of the preliminary injunction

9    hearing.

10            THE COURT:  Okay.  Well, I'll leave that to

11   you and Mr. Roe.  Although -- and I think and we'll come

12   back to this in a little bit more detail in a moment.

13   There aren't going to be many suns setting before we

14   have a protective order on file in this case.

15        I guess with respect to experts and, Mr. Ho, you

16   may have dealt with this, but is it the plaintiffs'

17   intent to serve expert reports by the proposed April 1

18   deadline?

19            MR. HO:  Your Honor, we have attached expert

20   reports in support of our motion for preliminary

21   injunction.  And to the extent that we intend to -- if

22   we intend to rely on any additional experts for purposes

23   of final judgment, we will disclose those in accordance

24   with the deadlines in the 26(f) report if that's what

25   this Court orders.

1          THE COURT:  Mr. Ho, are those reports that

2   you already have attached to your preliminary injunction

3   motion, are those fully compliant Rule 26(a)(2) reports?

4          MR. HO:  Yes, Your Honor.

5          THE COURT:  With respect to -- well, this

6   may serve as somewhat of an incentive to maybe get these

7   issues resolved through discussion today, but I want to

8   come out of today's conference at a minimum with a very

9   expedited, tight schedule for the parties to either

10  submit to my chambers an entirely agreed protective

11  order or, failing that, a joint motion of a very short

12  nature for the Court to resolve any disputed specific

13  provisions of an otherwise agreed to protective order so

14  that we're not holding up any discovery between now and

15  the preliminary injunction hearing.

16         You know, we've already set some aggressive

17  deadlines because of the time issues in this case and I

18  want to be sensitive to the fact that many folks

19  involved in this case may be observing holy week.  But I

20  am curious as to how much more time each of the parties

21  believe would be necessary to try to negotiate a

22  protective order and failing that get in a position to

23  file the sort of motion that I indicated.

24         Mr. Ho, given the discussions that have occurred

25  to-date and the disputes that are lined out in the

1   submissions that have been made, what do you think would

2   be an appropriate deadline for filing or submitting an

3   agreed protective order or a contested motion?

4            MR. HO:  Your Honor, I would hope that we

5   could do this in relatively short order.  I believe at

6   this point that we have agreement from three of the five

7   parties here about -- on a draft protective order

8   subject to two disputes with respect to the scope of

9   confidential information covered by the order.

10       We've endeavored to incorporate efforts from the

11  Secretary of Revenue, Mr. Jordan.  You know, whether or

12  not they have additional suggestions isn't something I

13  know at this point.  Ms. Willoughby or Mr. Cox could

14  probably speak to that.

15       I don't know anything about the Secretary of

16  State's position on the existing protective order.

17  We've tried to have some conversations about it but have

18  been unsuccessful so far.

19       So, you know, from our perspective, we think this

20  is something that can be wrapped up within 48 hours.

21  But I don't know the extent of issues or concerns that

22  the defendants may have with respect to the draft

23  because we haven't heard from them about it.

24            THE COURT:  Okay.  Mr. Johnson, what do you

25  think?  Mr. Johnson?

 1                    MR. JOHNSON:  Yes, Your Honor.

 2                    THE COURT:  What do you think?

 3                    MR. JOHNSON:  I'm sorry, I got distracted

 4      for a second.

 5                    THE COURT:  That happens to me all the time.

 6                    MR. JOHNSON:  Excuse me?

 7                    THE COURT:  It happens to me all the time.

 8      Go ahead.

 9                    MR. JOHNSON:  I -- it's -- I had to step out

10      for a second.  I knew we were talking about the

11      protective order.  I am -- if Mr. Ho represented we're

12      in sync on that, he is accurate.

13                    THE COURT:  Secretary Kobach, how about you,

14      do you think, for example, if we were to set a deadline

15      of the 29th of March to file a contested motion in the

16      event that an agreed order can't be submitted, is that

17      acceptable to you?

18                    MR. KOBACH:  Your Honor, you know, I

19      actually think that I agree with what Mr. Ho said.  I

20      think, you know, within 48 hours by the close of

21      business Friday we could probably hammer out a

22      protective order if we are allowed to devote our

23      attention to that, and I'll explain what I mean by that

24      in a minute.  But the protective order does have some

25      meatier issues in it with regard to the reasons why we

 1   are seeking to avoid disclosing voters' identity.  The

 2   National Voter Registration Act, the federal law, has a

 3   couple of provisions that prohibit us releasing the

 4   identity of the voter in connection with where he

 5   registered or the reason why he might be on a suspense

 6   list, and there are some additional privacy concerns.

 7        I think if we can, you know, have some

 8   communication with plaintiffs in a regular fashion in

 9   the next two days, we could probably get something done

10   by Friday.  I -- I don't anticipate that there would be

11   opposing motions.  I know Mr. Ho has been very

12   reasonable and so has Mr. Johnson.  But I would ask, if

13   we did that, if the Court and the opposing parties would

14   be okay with us moving our preliminary injunction, which

15   is current -- our preliminary injunction response which

16   is currently due Friday perhaps maybe the next Wednesday

17   which would still give the other side their full two

18   weeks to respond before the PI hearing.  Then we can at

19   least -- we have such a small legal team of three people

20   here.  We can only focus on one task and focus on the

21   other task afterwards.

22        THE COURT:  Mr. Ho, what do you think about

23   that?

24        MR. HO:  I think, Your Honor, if Secretary

25   Kobach needs more time for hammering out the protective

1   order, we'd be fine with that.  But I think we would

2   oppose at this point any move in the opposition to the

3   preliminary injunction motion.  As things currently

4   stand, we've already consented to a week-long extension

5   for their opposition.  If we push it back any further,

6   then our reply will be due right up against when the

7   preliminary injunction hearing is.  And, you know, my

8   concern is that Judge Robinson wouldn't have sufficient

9   time at that point to review the papers.  So if

10  something's got to give, we're happy to be reasonable

11  about, you know, working on the protective order early

12  next week.

13          MR. KOBACH:  One other option, Your Honor,

14  might be to just give us four -- four extra days and

15  then we could -- if Mr. Ho is worried that the judge

16  won't read it until the night before, if you get four

17  extra days, that will take us out until next Tuesday for

18  the preliminary injunction response and then they would

19  have Tuesday before the Thursday hearing to submit their

20  reply.

21          THE COURT:  Okay.  I'm going to -- I'm going

22  to grant Secretary Kobach's suggestion.  I'm going to

23  move the deadline for filing a response to the motion

24  for preliminary injunction in the *Fish* case to Tuesday

25  the 29thth of March.  That will move the -- I'm going to

1    move the deadline for any reply brief by the *Fish*

2    plaintiffs to April 12.  And I am confident that Judge

3    Robinson and her staff will have plenty of time to read

4    all the papers prior to the April 14 PI hearing.

5             MR. HO:  If I may, Your Honor, there was one

6    other issue we've -- and we haven't addressed this yet,

7    but we have noticed a few depositions for the week of

8    March 28th on Thursday the 31st of Mr. Caskey and --

9             THE COURT:  Hold on.  We'll come back to

10   that in a moment.  I want to get this protective order

11   issue tied down.  I'm going to accept the suggestion

12   that was made a moment ago and we will -- I'm going to

13   impose a deadline of 4:00 p.m. on March 25th to submit

14   an agreed protective order if you can arrive at one.  If

15   you can, great.  If you can't, then I'm going to set a

16   deadline of 4:00 p.m. on Monday, March 28 for any

17   contested motion.

18             That's a joint motion by all the parties.  All

19   the parties' respective positions would need to be

20   reflected with an appropriate citation to specific

21   authority from case decisions where disputed provisions

22   were involved as opposed to simply an order that some

23   other judge signed.  And then I want attached to that

24   joint motion a redlined copy of your protective order so

25   I know exactly what you're fussing about and what you're

 1   not.  And then, if you would please, in addition to that

 2   filing, e-mail in Word format a copy of the redlined

 3   document to chambers so that we can use that more

 4   readily, I would appreciate it.

 5           Okay.  Let's go back to the issue of depositions.

 6   Mr. Ho, I think you were talking about scheduling of

 7   certain depos.

 8                 MR. HO:  The reason I raised that, Your

 9   Honor, is we wanted to have the benefit of, you know,

10   the production of defendants' documents and their

11   opposition prior to the depositions which we have

12   scheduled for the 31st and the 1st.  We understand

13   there's an objection to those depositions from Secretary

14   Kobach, and I understand that, but I did want to note

15   that with respect to the timing for their opposition.

16                 THE COURT:  So noted.

17                 MR. HO:  If I may, Your Honor, the two

18   depositions that we've noticed are of Mr. Caskey on the

19   31st.  As Secretary Kobach mentioned, he's the Director

20   of Elections, among other things within the Secretary of

21   State's Office, and on the 1st of Tabitha Lehman, the

22   Sedgwick County Elections Commissioner.  And we are

23   seeking to conduct short depositions of these two people

24   limited to issues raised in advance of the preliminary

25   injunction hearing.

1           Our understanding is that Secretary Kobach

2    intends to rely on a statement from Mr. Caskey in

3    opposition to our PI motion and we would seek to depose

4    Mr. Caskey with respect to the contents of that

5    declaration.

6           We also understand the Secretary has relied in

7    the past on elections data from Sedgwick County.  And to

8    the extent that he intends to do so in opposition at the

9    preliminary injunction motion, we would seek to depose

10   Ms. Lehman.

11          Again, you know, what we're asking for here, Your

12   Honor, are limited depositions for the purposes of the

13   preliminary injunction hearing with the ability to

14   re-depose these individuals subsequently after

15   production of documents for purposes of final judgment.

16               THE COURT:  Mr. Ho, am I correct that the

17   problem you're concerned about is the initial

18   disclosures by the parties and the production of

19   documents that were objected to by Secretary Kobach

20   won't roll out until March 31st even under a protective

21   order?

22               MR. HO:  So that is a -- a concern that we

23   have.  But to the extent that the Secretary's going to

24   produce -- I think -- I think there's a limited range at

25   this point of information that's subject to the

1   protective order that we've asked for on an expedited

2   basis from the Secretary of State.  And to the extent

3   we're going to get responses to all of our other

4   discovery requests today, which I think was represented

5   earlier today, I think that's fine for purposes of the

6   deposition.  What I think the issue is, is I think the

7   Secretary's objecting to holding these depositions at

8   all at this point.

9          THE COURT:  But before we ask Secretary

10  Kobach about what his position is on that, Mr. Ho, am I

11  correct that, if things play out the way you anticipate,

12  do you believe you will have in hand any documents that

13  you need in order to effectively depose Mr. Caskey and

14  Miss Lehman?

15         MR. HO:  Yes, Your Honor.

16         THE COURT:  Okay.  Mr. Kobach, what is the

17  basis or bases for objecting to these two requested

18  depositions?

19         MR. KOBACH:  Your Honor, first of all, they

20  have not sought leave of the Court for these

21  depositions.  This is a preliminary injunction.  And the

22  judge, Judge Robinson, granted -- she described it

23  limited discovery.  And at no point during conversation

24  with the judge did plaintiffs bring up the possibility

25  of depositions.  Indeed I don't think the term

1    deposition was even used during that phone call.  So

2    Judge Robinson never agreed to depositions.  We think

3    that that would -- again, this is a preliminary

4    injunction.  Going to depositions at this stage is

5    entirely unnecessary.

6          Now, he has -- Mr. Ho's position is, well, you

7    know, we may rely on a couple of factual statements made

8    by the Kansas Director of Elections in our responses so

9    therefore he wants the full opportunity to depose the

10   Director of Elections.  Well, that's -- that's all well

11   and good, but the plaintiffs are relying on all kinds of

12   things that they assert, both assertions made by their

13   plaintiffs themselves, factual assertions, and factual

14   assertions and expert opinions offered by their experts.

15         We're not asking to depose all the plaintiffs and

16   depose their experts prior to a PI hearing.  I mean,

17   this is just way beyond the scope of the very limited

18   discovery that Judge Robinson allowed.  If they're going

19   to want to start deposing us, then we want to start

20   deposing them.  And from all their assertions, we don't

21   think that is necessary before a preliminary injunction

22   hearing.

23               THE COURT:  Well, but, Secretary Kobach, do

24   you believe, regardless of whether a motion for

25   preliminary injunction is filed, that any party, whether

1    it be Mr. Ho's clients or others, would even need leave

2    of the Court to conduct any discovery at all?  I mean,

3    in other words, my reading of the rules is that once the

4    parties conduct their 26(f) conference, the doors are

5    open and any discovery that's within the ambit of Rule

6    26(b)(1) is fair game.  But do you read that

7    differently?

8              MR. KOBACH:  Well, Your Honor, I guess if a

9    26(f) conference has occurred, then at that point it is

10   -- it is fair game.  But we would -- they're seeking

11   discovery on a very expedited schedule to have that

12   discovery prior to the PI hearing.  I think it would be

13   highly unusual.

14         When I said leave of the Court, I meant the

15   Court, when we had the conference call with Judge

16   Robinson a few weeks ago, they never brought -- she --

17   she asked what discovery would be necessary prior to the

18   PI hearing and they never brought up depositions at that

19   time.  And we would certainly have opposed them at that

20   time just because, you know, we -- we're talking about,

21   you know, what could be very long and expensive

22   depositions.

23         And if they're going to want to probe every

24   statement made by Mr. Caskey in his declarations, then,

25   you know, at that point it would be fair for us to probe

1   everything made by their plaintiffs.  So we just don't

2   see the need for these depositions before a PI hearing.

3   Certainly before a trial for dispositive motions but not

4   before the PI hearing.

5            THE COURT:  Well, I mean, it seems to me the

6   reading of the motion that was filed and at least the

7   transcript of the hearing that was held was the issue of

8   expediting the response time for responding to written

9   discovery.

10           Well, respectfully, the objection by Secretary

11   Kobach to the *Fish* plaintiffs taking deposition

12   discovery of Mr. Caskey and Miss Lehman is overruled.  I

13   do think that both sides at this point procedurally are

14   entitled to take discovery of any form from any witness

15   that would be germane to the issues presented on the

16   merits.

17           Now, as a practical matter, I would encourage you

18   to continue focusing on that which is necessary to get

19   ready for the preliminary injunction hearing.  But I'm

20   unaware of any basis that would allow Secretary Kobach

21   to impede the right of the plaintiffs to take these

22   depositions.  So assuming they've been properly noticed

23   or will be properly noticed, it seems to me that the

24   depositions should go forward.

25           MR. KOBACH:  Your Honor -- sorry, I don't

1    mean to interrupt.

2              THE COURT:  Well, one thing I was going to

3    say is but to be -- I think it's in everybody's

4    interests to discuss -- and I'm not going to rule it

5    today -- is to have an understanding as to whether this

6    will necessarily be a -- a focused deposition such as

7    would allow the plaintiffs to come back and take a more

8    fulsome deposition of these people later.  In other

9    words, I wouldn't assume, if I were the plaintiffs, that

10   they would necessarily be granted permission to second

11   -- take a second deposition of either of these witness

12   later on.

13        Okay.  Secretary Kobach, I think I cut you off

14   unintentionally.  Go ahead.

15             MR. KOBACH:  That -- no problem, Your Honor.

16   Also we have not been consulted by the plaintiffs, you

17   know, as to time and when a deposition might be

18   convened.  If the Court is going to allow the plaintiffs

19   to do these depositions before the 14th of April, then

20   we at least would like to be consulted so that we can

21   make sure that the attorneys are available and that the

22   witnesses are available at the -- they just noticed up

23   some subpoenas -- sent some subpoenas, you know,

24   specifying the time and place and without consulting it

25   to whether we can make it happen.  We will cooperate

 1    with them in finding times and places, but it just -- it

 2    may at this point be just sort of picked up the ball and

 3    run with it and we weren't even notified.

 4              THE COURT:  Are there any notices

 5    outstanding at this point?

 6              MR. HO:  This is Dale Ho for the *Fish*

 7    plaintiffs, Your Honor.  If I may, the notices are --

 8    are out.  They have been served along with subpoenas.

 9    And we were on a conversation with Mr. Roe.  I think

10    Secretary Kobach may not -- he wasn't on this particular

11    phone call.  We were talking about dates.  I don't think

12    Mr. Roe committed to a particular date but, you know, I

13    suggested the 31st as a particular date for Mr. Caskey.

14    Mr. Caskey was on the phone at that time.  Neither of

15    them objected.  Mr. Roe, and he can tell you himself

16    said, or my understanding was anyway, that he would need

17    to check Secretary Kobach's schedule but that we should

18    just go ahead and issue notices.

19         So we've done what we understood the -- the

20    counsel for the Secretary of State to, you know, be

21    asking of us to do.  If that date doesn't work and they

22    want to talk about a different date, we're perfectly

23    open to having that conversation.  But we haven't sort

24    of bulldozed ahead without consulting with them.

25              MR. ROE:  Your Honor, this is Garrett Roe.

1   We had a conversation during our meet and confer on the

2   -- on the discovery objections on Friday the 18th maybe.

3   Sorry, I'm not sure of the date.  But at that point we

4   were told on the phone that he had contacted Tabitha

5   Lehman; that they were going to have a deposition April

6   1st and she was available April 1st, and that they also

7   wanted to depose Brian Caskey.  And I said that we

8   needed to check our schedule, the Secretary's schedule,

9   because we didn't know at that point whether we were

10   available.  That's my recollection of the phone call.

11            THE COURT:  So what -- have you ever -- have

12   you gotten back to Mr. Ho on that?

13            MR. ROE:  We have not -- we have not

14   discussed that because we were focusing on discovery and

15   on the -- on the preliminary injunction response.

16            THE COURT:  Well, let's knock at least one

17   of these out right now.  Secretary Kobach, are you

18   available, if you want to participate in that deposition

19   of Mr. Caskey, on March 31st?

20            MR. KOBACH:  One moment, Your Honor.  Just

21   checking.  Yeah, the 21st would work for Caskey.

22            THE COURT:  The 31st.

23            MR. KOBACH:  31st.  31st.  Sorry.

24            THE COURT:  Okay.  Both you and Mr. Caskey

25   are available, is that correct, Mr. Kobach?

1         MR. KOBACH:  Yes, it is, Your Honor.

2         THE COURT:  Okay.  And, Mr. Roe, are you

3   going to participate in that deposition as well?

4         MR. ROE:  I will be there too, Your Honor.

5         THE COURT:  Okay.  Your calendar is free

6   that day?

7         MR. ROE:  Yes, April 1st I think is the

8   concern date, but you'll have to check with the

9   Secretary.

10        THE COURT:  Okay.  Secretary Kobach, are you

11  available on April Fool's Day to go to Wichita for

12  Miss Lehman's deposition?

13        MR. KOBACH:  No, I'm not available on that

14  date, Your Honor.

15        THE COURT:  Okay.

16        MR. KOBACH:  And that's not an April Fool's

17  joke either.

18        THE COURT:  Okay.  Well, I'll leave it to

19  you and Mr. Ho to -- after we adjourn this conference,

20  to reach agreement on a new date for Lehman's deposition

21  but I want that agreement reached before the sun set's

22  today.  I'm not tied to April 1st, but it seems to me we

23  need to get moving with these things and because

24  presumably someone's going to want to look at a

25  transcript from these depositions before the PI hearing.

1          MR. COX:  Judge, this is Brian Cox for

2     Jordan.  Some -- some of these depositions, perhaps one

3     that's been noticed thus far, may not be closely related

4     to our defense in the case but we -- we, at present,

5     plan to attend these depositions and we were not

6     consulted at all about these dates.  And I do note,

7     Judge, the date that has been scheduled apparently for

8     the deposition of Mr. Caskey, March 31st at 10:00 a.m.,

9     we have three things due already that day by way of

10    filings in the court that very day.

11         THE COURT:  Well, I would think that between

12    you and Miss Willoughby you can get those obligations

13    covered.  But to the larger point to the extent that

14    there are other depositions scheduled in this case, I

15    would anticipate that all counsel for all parties in

16    both cases be consulted when dates are circulated as

17    opposed to simply the lawyer who is going to take the

18    deposition and that who's going to defend it.

19         Bear with me a moment.  With respect to some of

20    the discovery issues that are raised in the report and

21    we, I suspect today, may not -- as a practical matter,

22    may not have time to go through all of them, but I did

23    notice a couple things that were -- struck me as odd or

24    at least meritorious of further discussion.  I saw in

25    the report a statement to the effect that Defendants

1    Kobach and Jordan propose that any information protected

2    by attorney-client privilege as well as work product

3    information need not be disclosed -- and I'm not sure if

4    anyone would quarrel with that necessarily -- that it

5    need not be identified in any privilege log.

6          But I guess I was curious, Secretary Kobach, to

7    the extent that the plaintiffs request information of

8    you in this litigation, and to the extent that you

9    believe it ought not be produced because of

10   attorney-client privilege or work product protection,

11   what would be the basis of your view that a privilege

12   log would not be required?

13         MR. KOBACH:  Your Honor, I'm going to hand

14   the ball to Mr. Roe.  I think he was wanting to submit

15   it.  But I would note that producing the privilege log

16   itself might be pretty time-consuming but I'll -- I'll

17   let Mr. Roe explain what his thought was on that.

18         MR. ROE:  Your Honor, this is Garrett Roe.

19   My understanding was simply we can identify the

20   documents as far as there are "x" number of documents

21   left that are subject to privilege as opposed to writing

22   out an entire privilege log.  That may not have been

23   clear in the -- in our proposal but that's what the

24   intent was.

25         THE COURT:  I'm sorry.  I'm not sure if you

1   cut out a little bit.  Could you repeat that please,

2   Mr. Roe?

3              MR. ROE:  Instead of producing an entire

4   time-consuming privileged log, simply identify the

5   documents, you know, like we have "x" number of

6   documents that are of general subject matter versus the

7   actual time-consuming process of a privilege log.  We

8   don't have an -- we don't have an objection to doing a

9   privilege log.  That was just a way to try to alleviate

10  some of the time-consuming -- it can be extremely

11  time-consuming.  And if the Court wants a privilege log,

12  we don't oppose it.  That was a just a suggestion.

13             THE COURT:  How much -- just practically,

14  how many documents are we talking about that would need

15  to be logged?

16             MR. ROE:  Well, at this point, for purposes

17  of what we're responding to today, there's none.  We do

18  not know at this point for what -- what other documents

19  that they may request in the future.

20             THE COURT:  Okay.  Mr. Cox and

21  Miss Willoughby, what's your view on this issue in terms

22  of why a privilege log wouldn't be required to the

23  extent that anything's claimed as privileged?

24             MR. COX:  Well, we -- we have a small staff

25  that is available to be able to handle this case much

1    less, frankly, than the attorneys at the Secretary of

2    State's Office have identified as -- as are working on

3    this case today.  I -- the number of privileged

4    documents that I am presently aware of involves,

5    frankly, between our office our lawyers and Secretary of

6    State's lawyers.  And I -- it is beyond me to understand

7    -- and that's -- that's part and parcel of what's been

8    requested.

9         One of the requests for production of documents

10   submitted to us by -- the plaintiffs' request all

11   correspondence between the Department of Revenue and the

12   Secretary of State's Office.  It can conceivably be just

13   a letter from one of our people over to a friend over at

14   the Secretary of State's Office saying how are you doing

15   today.

16        But, Judge, I guess the point of that was because

17   we don't believe that any point is going to be served

18   except to create what we respectfully discourage as

19   unnecessary work to identify those in a privilege log,

20   and this -- Judge, especially in view of the fact that

21   what we've been through in this case, the case is -- is

22   barely a month old.  There's been, you know, complaints

23   filed, the first amended complaint, motion for

24   preliminary injunction, motion for class action

25   certification, discovery planning conference, conference

1    with the Court, two depositions, none of which was

2    coordinated with us.  And in addition to everything else

3    we need to do to defend the case, which involves

4    responses to the sundry motions and motions to dismiss,

5    there were five counts, the amended complaint brought in

6    a completely new party and completely new count.

7          I just suggest respectfully, Judge, that I wanted

8    us to get to the matters that are really at issue in

9    this case, and it doesn't strike me that the sort of

10   privilege documents that I was readily aware of really

11   make a whole lot of difference in the grander scheme of

12   things.  That was the point of that, Your Honor.

13          THE COURT:  How many documents, Mr. Roe, do

14   you believe would generally fall under this category of

15   correspondence between Secretary Jordan's office legal

16   counsel and counterparts in secretary Kobach's?

17          MR. ROE:  Was that directed at me, Judge?

18          THE COURT:  It was.

19          MR. ROE:  I have just started collecting

20   these recently.  If you give me just one moment.  At

21   least 40 is what my co-counsel is suggesting and these

22   are all -- these are all discussions about the case and

23   the issues in the case.  There are nothing that are of

24   any evidentiary value to the plaintiff and I can't

25   imagine Mr. Ho would want those.

 1            THE COURT:  Oh, I think you're

 2    underestimating Mr. Ho.  Well, okay --

 3            MR. ROE:  Well, maybe, Judge, if he would

 4    tell us about whether that sort of stuff is -- is

 5    necessary or not.  I mean, there's -- there's been a

 6    tremendous amount of work that has been put into this

 7    case thus far with a fairly finite legal staff and more

 8    work in the office.  And I'm not suggesting that we seek

 9    to shirk our responsibilities, but I think there is

10    certainly a limit to how much time can be spent on

11    matters like this which I don't believe are great

12    matters of great moment in the grander scheme of things.

13    That's all I'm trying to say, Judge.

14            THE COURT:  Well, let me make some comments.

15    I'm not going to rule this definitively, but I want to

16    make clear again what this Court's view is on these

17    issues.  In an effort, and apparently failed effort I

18    suspect, to head these issues off at the pass, I entered

19    an order back on March 8th outlining, for want of a

20    better description, a primer on discovery in federal

21    court in the District of Kansas, not only with respect

22    to scope of discovery but what I thought were overly

23    aggressive assertions by counsel of what would

24    constitute attorney-client or work product material.

25            And certainly every piece of correspondence

1    between lawyers is not privileged.  I also outlined in

2    that order the requirements under Rule 26(b)(5)(A) that

3    are imposed on a party who wishes to protect that

4    privilege.  And, finally, I outlined that if a party

5    elects not to provide a privilege log that complies with

6    that rule, that they may suffer a waiver.

7         So today is the second warning.  If -- if the

8    defendants, because of alleged overburden or otherwise,

9    decline to provide the material that is plainly required

10   by the rule, then I'll let the chips fall where they may

11   later on.  But I do not want to hear later in this case

12   from either Secretary Kobach or Secretary Jordan that

13   they were surprised about a possible waiver or feel like

14   they've been put upon unfairly late in the game if the

15   Court concludes that protections have been waived by

16   virtue of failure to comply with the rule.

17        Now, having said that, I would encourage the

18   experienced lawyers on this call to have a practical

19   discussion about categorically those documents that

20   might be excepted from the requirement of a privilege

21   log.  I mean, theoretically and technically I suppose

22   communications between Mr. Ho and the local lawyers

23   would be subject to a discovery request and

24   theoretically would have to be subject to a privilege

25   log, and I suspect they don't want to do that either.

1          So there may be a way that the lawyers in here

2     can map out rules of engagement that would give them

3     some protection.  But failing the lawyers doing that, if

4     somebody asks for a document and there isn't a proper

5     objection with a privilege log, and if comes before me

6     on a motion to compel, I will enforce the rule as

7     written.  If that requires a waiver of attorney-client

8     privilege later on or work product, so be it.

9          Does anybody have any questions about how that's

10    going to work now that I've covered it twice in the case

11    in less than a couple of weeks?

12               MR. COX:  No, Judge.  Brian Cox here.  I do

13    have one question backed up a little bit.  You've

14    ordered by -- objections to be served by 4:00 p.m.

15    tomorrow on the plaintiffs' discovery.  This may involve

16    some hardship on us to get that done at that time if

17    that would include a privilege log as well as all the

18    objections we would make.  I would ask -- I would ask

19    for a little more time on that.

20               THE COURT:  Yeah --

21               MR. COX:  I also notice the plaintiff has

22    served -- plaintiffs have served two requests for

23    production.  The return date, as has been described on

24    one of them, was the 23rd but the other one was not

25    until April 8th.  So I guess I would just ask for some

1   clarification on that.  Does that make any sense, Judge,

2   what I'm asking?

3             THE COURT:  It -- the first part does.  I

4   think the return dates, as they've been defined in this

5   hearing, remain as they were stated earlier or as you

6   just stated.

7        To the burden associated with the privilege log

8   question that you raised, Mr. Cox, I think that's a fair

9   point.  I do not believe the rule states that one must

10  prove or provide a privilege log along with the

11  objection.  But I think at a minimum your response ought

12  to say here's what we're producing, here's what we're

13  objecting to producing by category, we will provide you

14  a privilege log.  And I'm going to leave it to you and

15  Mr. Ho to negotiate how long it should take to put that

16  log together.  If it's, you know, 40 or 50 documents,

17  that's something that I would think can be carried out

18  in a few days, but I don't think it's due tomorrow to

19  your point.

20            MR. COX:  Okay.  But, Judge, just so I'm

21  clear and, forgive me, I do want to be clear on this.

22  I'm not trying to quibble.  The -- the objections are

23  due to both of the plaintiffs' first and second requests

24  for production by 4:00 p.m. tomorrow?

25            THE COURT:  I believe you said that the

1   return date on the first was the 23rd of March and the

2   return date on the second was April 8th.

3          MR. COX:  That's correct, Your Honor.  I

4   just wanted to make sure I understood -- understood your

5   order.

6          THE COURT:  I haven't changed the return

7   date on the second, if that's your question.

8          MR. COX:  I would ask respectfully, Judge,

9   if you would change that date on the second.  The

10  plaintiffs didn't even ask for that.  Their return date

11  on that was April 8th.

12         THE COURT:  I said I am not changing that.

13  It's still April 8th.

14         MR. COX:  I'm sorry, forgive me, April 8th.

15  Forgive me, Judge.

16         THE COURT:  That's fine.  With respect to

17  the limits on interrogatories, in the report it

18  indicated that the plaintiffs were proposing 25 served

19  on any party, and that the *Keener* plaintiffs would be

20  treated as a single party and the *Fish* plaintiffs as a

21  single party, and that Kobach was proposing that both

22  sets of plaintiffs be limited to 25 since they're

23  allegedly united in interest.

24         Secretary Kobach, do you intend to serve any

25  written discovery on either group of plaintiffs in this

1   case?

2            MR. KOBACH:  Your Honor, at this point we

3   do.  We may not be able to -- we don't believe it will

4   be dispositive in the PI hearing but we do anticipate

5   that we will after the PI hearing.

6            THE COURT:  So, I mean, I want to make sure

7   I'm understanding what your position would be on this

8   interrogatory limit.  Would this -- if your proposal

9   were accepted, would this limit both sets of plaintiffs

10  to a total of 25 interrogatories served on you; correct?

11           MR. KOBACH:  That's -- that's our

12  understanding of it, Your Honor.

13           THE COURT:  And would it limit you to --

14           MR. JOHNSON:  On behalf of *Keener*

15  plaintiffs, that's our understanding as well.

16           THE COURT:  Secretary Kobach, would your

17  proposal limit you to serving a total of 25

18  interrogatories on the plaintiffs collectively?  That is

19  25 divided by however many plaintiffs we have in the two

20  cases, or are you suggesting that you get to serve 25

21  interrogatories on each of the plaintiffs in each of the

22  cases?

23           MR. KOBACH:  I think we can do with 25

24  total, Your Honor.

25           THE COURT:  And then, Mr. Cox, as relates to

1    Secretary Jordan, you want to serve 25 interrogatories

2    on each plaintiff; correct?

3              MR. COX:  Maybe a little bit generous, Your

4    Honor, but we don't know but that the individual

5    circumstances of the plaintiffs may be different and,

6    frankly, the -- the plaintiffs' pleadings which have

7    been filed against our client, Secretary Jordan, are a

8    little bit -- not just a little bit, they're entirely

9    unclear as to what role Secretary Jordan plays in this

10   whole thing.  So I don't really know what the plaintiffs

11   have in mind in terms of what Jordan's -- Secretary

12   Jordan's role is in the claim that they've been denied

13   the right to vote.

14             THE COURT:  So with respect to the six

15   plaintiffs in the *Fish* case, since their situation's

16   allegedly different in your view, if your proposal were

17   accepted, would each of those six plaintiffs be able to

18   serve 25 interrogatories on Secretary Jordan?

19             MR. COX:  I don't believe.  I think they're

20   united in interest, Judge.  No, I wouldn't -- I wouldn't

21   propose that, no.  You just got one -- one party here,

22   Secretary Jordan, whereas you got six separate

23   plaintiffs, all of whom -- in fact, Judge, they are --

24   they are of record in this case as describing their

25   discrete factual circumstances, none of which is

1    identical.

2              THE COURT:  Well, and I -- I appreciate that

3    that might be a rationale for allowing Secretary Jordan

4    to serve separate interrogatories on each of those six

5    individuals.  But if we go that route, why wouldn't it

6    allow each of those separately-situated individuals to

7    serve 25 interrogatories going the other direction

8    towards your client?

9              MR. COX:  Because there's only one client

10   rather than six, Your Honor, that's -- that's my answer

11   to that.  There's just one as opposed to six.  I don't

12   think -- I don't think it works both ways, at least

13   logically speaking.

14             THE COURT:  Okay.  Well, I'm going to think

15   about these limitations a little bit.  I think at a

16   minimum I'm going to make them consistent.  By the same

17   token, I want to be guided by the notion that

18   interrogatories are not fun for anybody to answer and

19   tend to be merely fertile ground for lawyers to fight.

20   So I'm -- I'm inclined to think that this is a case

21   that's going to rest or depend more on documents and

22   witness testimony than carefully parsed answers to

23   interrogatories.  But I will make my ruling in the

24   scheduling order that we'll issue later on today.

25             With respect to the return date of April 8 for

1  the second set of discovery, we will impose a -- an

2  expedited discovery schedule for any ensuing motions to

3  compel, and I'll fashion that in the scheduling order.

4  Again, we're going to move quickly and make sure all the

5  discovery is done in time to give both sides a fair shot

6  not only at the preliminary injunction hearing but also

7  at trial.

8          MR. COX:  Judge, in that regard -- this is

9  Brian Cox again and forgive me for jumping in the -- the

10  return placed on both of the requests for production of

11  documents to us was stated by the plaintiffs to be at

12  their offices at Chicago, Illinois.  I guess, although

13  there's no motion present before you in that regard, I

14  don't know why copying and mailing or electronically

15  serving responses wouldn't be sufficient in that regard.

16          THE COURT:  Well, I don't either but I think

17  Rule 34 provides you a procedure to follow on that.  I

18  mean, if this is more complicated than sending it down

19  the hall for someone to copy it and pdf it to opposing

20  counsel, then -- I'm not going to micromanage that sort

21  of diddly little stuff, frankly.

22          MR. COX:  Yes, sir.  Thank you, Judge.

23          THE COURT:  With respect to additional

24  motion practice, the report indicated that Secretary

25  Kobach was going to file a motion to dismiss arguing

1    lack of standing and failure to state a claim.

2         Secretary, will that be in both cases or just one

3    of them?

4              MR. KOBACH:  Your Honor, I think that's --

5    well, let me turn that over to Mr. Roe.  I'm not sure if

6    we're doing it in both or just one.  Garrett.

7              MR. ROE:  Garrett Roe.  Lack of standing at

8    this point is -- would be in the *Fish* case -- or, I'm

9    sorry, in the *Keener* case for sure.  We're still working

10   on whether or not lack of standing is appropriate in the

11   *Fish* case.  And as for a motion to dismiss, we're still

12   reviewing it, but likely a motion to dismiss at least

13   some count in the *Fish* case.  I don't think we're filing

14   a motion to dismiss at this point in the *Keener* case but

15   I'm not certain.

16             THE COURT:  Okay.  And as I understand it

17   from the status report, the parties are suggesting the

18   deadline for that motion or motions would be March 31;

19   is that correct?

20             MR. ROE:  Your Honor -- well, I think this

21   was addressed earlier and I don't know the exact date

22   when the amended complaints were filed, but I would say

23   14 days after each amended complaint -- the most recent

24   amended complaint.  So I think the -- the *Fish*

25   plaintiffs filed an amended complaint on the 17th or the

1   18th and the *Keener* plaintiffs filed one on the

2   following Monday.  So I think that 14 days after each of

3   those would be the requirement under Rule 15.

4          THE COURT:  Okay.  I'm going to set a

5   deadline, just to keep track of these things more

6   easily, in both cases will be the 31st.  And that will

7   be not only for your motions to dismiss but also those

8   by Secretary Jordan.

9          MR. ROE:  And, Your Honor, can I -- Your

10  Honor, can I clarify one thing as well?

11         THE COURT:  Yes, go ahead, Mr. Roe.

12         MR. ROE:  Sorry.  Under the rules, there is

13  no deadline for filing a motion to dismiss for lack of

14  standing or lack of -- for failure to state a claim,

15  unless I'm misunderstanding Rule 12.

16         THE COURT:  No, you're not.  But our orders

17  do set a deadline just so we can get those on the table.

18  I think technically if push comes to shove those may be

19  raised even on appeal.  But our view is that if you've

20  got issues to raise, let's not screw around, let's not

21  lay in the weeds, let's get them on the table and get

22  them ruled.

23         MR. ROE:  Okay.  All right.  Thank you.

24         THE COURT:  Okay.  Mr. Bullock, on behalf of

25  Defendant Shew in the *Keener* case, do you intend to file

1   any early dispositive motions?

2                 MR. BULLOCK:  At this time, Your Honor, we

3   do not.

4                 THE COURT:  Okay.  If there -- if you later,

5   you know, tumble to some good argument, those would be

6   due with the same March 31 deadline.

7                 MR. BULLOCK:  Understood, Your Honor.  Thank

8   you.

9                 THE COURT:  Counsel, one of the absolute

10  requirements of the scheduling order is that we set a

11  deadline for filing motions to amend.  We've obviously

12  had a series of amended complaints already, but we

13  probably still need to set a deadline.  My question --

14  I'd like to hear from each of you on this -- is whether

15  it makes sense to set that shortly after these motions

16  to dismiss are due so that, if we have an *Iqbal* or

17  *Twombly* issue, we can get that all briefed in connection

18  with the motion to dismiss, or whether it might make

19  more sense to defer a deadline for filing motions to

20  amend until after the PI hearing in April.

21        Mr. Ho, what do you think?

22                 MR. HO:  I think that makes sense to us,

23  Your Honor.

24                 THE COURT:  The latter or the former?

25                 MR. HO:  I'm sorry?

1          THE COURT:  Well, let me back up before you

2    and the others respond.  Typically -- and I think this

3    is outlined in the form of planning report that you were

4    using -- our Court will set an early deadline for filing

5    any motions to dismiss.  So here it will be March 31.

6          MR. HO:  Yes.

7          THE COURT:  You would then typically set a

8    deadline of about a week thereafter for filing any

9    motions to amend so that, if a defendant comes out with

10   an *Iqbal or Twombly* type of argument on a motion to

11   dismiss, the plaintiff has an opportunity to file a

12   responsive or curative motion to amend so that both

13   issues are taken up in the same -- in the same way at

14   the same time as opposed to dribbling them out later on.

15       So I guess my question is whether you'd prefer to

16   have a deadline of April 7, for instance, to file

17   motions to amend or whether it might make more sense

18   after all of you have appeared before Judge Robinson to

19   set a deadline either in late April or maybe keyed to

20   "x" number of days after she rules on the PI motion.

21          MR. HO:  Yes, Your Honor, and I apologize if

22   my answer wasn't clear.  I meant to degree with the

23   latter of your two options.

24          THE COURT:  Okay.  Mr. Johnson, what do you

25   think?

1          MR. JOHNSON:  I think the latter date makes

2    sense, Your Honor.

3          THE COURT:  Okay.  Mr. Roe?

4          MR. ROE:  The latter date makes sense to me,

5    too.

6          THE COURT:  Okay.  Mr. Cox?

7          MR. COX:  You know, I -- this really

8    probably swings to the fences, but the planning report

9    submitted by the parties does say that everyone is

10   agreeing that any motions to amending the pleadings

11   would be filed by March 17th which has come and gone.

12          THE COURT:  Okay.  I understand your

13   position.  Mr. Cox?

14          MR. COX:  Yes, Your Honor, that was mine.

15          THE COURT:  Okay.  Mr. Bullock?

16          MR. BULLOCK:  The latter date is fine with

17   us, Your Honor.

18          THE COURT:  Okay.  I'm going to respectfully

19   disagree with Mr. Cox and I'm going to set the deadline

20   at June 10.  I'm not inviting more amendments, but that

21   would be the absolute outside deadline.

22        When we get to any summary judgment motions in

23   the case, please be mindful of the language that will

24   include in the scheduling order about the need to comply

25   with our court's summary judgment guidelines.  Those are

1    there to help you as opposed to hurt you.  It's a pretty

2    good checklist of the sorts of things that our judges,

3    and just as importantly our law clerks, see even good

4    lawyers routinely stub their toe on in summary judgment

5    motion practice.  So if you want to improve your odds, I

6    would commend those guidelines to you.  They are on the

7    website.  Indeed I would even suggest you look at them

8    as you round out your discovery record to make sure you

9    have all of your ducks in a row before you even outline

10   your summary judgment papers.

11        The report had indicated agreement that any

12   *Daubert* motions would be due 45 days before trial and

13   that's neither unusual nor objectionable to me.  I

14   simply wanted to raise the issue of whether in this case

15   if those dispositive motions that are going to be filed

16   in the case might depend in some material measure on

17   experts whose testimony is being challenged, whether it

18   might make sense in this case to set the *Daubert* motion

19   concurrently with the summary judgment deadline.  I'm

20   not going to order it if you're all in agreement.  But

21   does anybody want to revisit the issue of 45 days before

22   trial?  Okay.  I'll take the silence as we'll stay with

23   the 45-day deadline.

24        One other feature that I think most of you are

25   probably aware of, in terms of our court's scheduling

1  order, but I wanted to remind you of it particularly

2  because some of the time pressures in the case.  In the

3  District of Kansas, unlike the Western District of

4  Missouri, we do not have a local rule that says you must

5  call me before filing a discovery motion but you are

6  strongly encouraged to consider doing so.

7        So if you have a dispute about one or two

8  interrogatories and if you are desirous of a relatively

9  quick read from the Court as to what is likely to happen

10 if formal motion practice ensues, I'd encourage you to

11 send me a short e-mail jointly.  I mean, one or two

12 paragraphs that say you want to talk and then we'll

13 convene a telephone status conference.  That's without

14 prejudice or limitation of your right to file formal

15 papers.  But at a minimum it will allow us to get the

16 issues better focused so that, when papers do get filed,

17 they're more efficiently ruled.

18       With respect to the pretrial conference that our

19 court typically conducts between the close of discovery

20 and the filing of dispositive motions, that will be July

21 1st at nine o'clock in my courtroom in Kansas City.  The

22 parties' proposed pretrial order, the form of which is

23 on the website, is due in to my chambers by June 24th.

24       Bear with me, counsel.  Let me check a couple

25 things here.  As relates to the joint report that was

1   filed on March 22nd as ECF Document 41, the introductory

2   sentence of it says it's filed on behalf of various

3   parties including Secretary Kobach.  But then in the

4   footnote to that very same sentence it says Secretary

5   Kobach does not join in this filing.  So which is true?

6            MR. HO:  This is Dale Ho for the *Fish*

7   plaintiffs, Your Honor.  This was a typo on our part and

8   I -- I take responsibility for that.  There are some --

9   I think there was some last-minute changes that were

10  happening.  But I'll let them, you know, the Secretary

11  or counsel for the Secretary speak for themselves.  But

12  I believe that they join and I apologize for that

13  because I'm the one that prepared it.

14            THE COURT:  Okay.  This question is directed

15  to Secretary Kobach, or his choosing counsel, Mr. Roe.

16  In Section (1)(a) on pages 2 and 3 of the report, it

17  talks about objections that had been lodged by the

18  Secretary but then a resolution of those.  Am I correct

19  that there are not any objections that require ruling at

20  this point?  In other words, it seems like the only

21  issue is the protective order.

22            MR. KOBACH:  Your Honor, let me ask Mr. Roe

23  if he knows of any.

24            MR. ROE:  This is Garrett Roe.  Yes, Your

25  Honor, that's my understanding is that we resolved the

1    issues on Friday.  The only remaining issues which we --

2    I don't know if they were only remaining but we

3    discussed them on Friday on the phone call is some of

4    the requests for production are almost impossible to

5    respond to.  We explained it on the phone and we'll

6    explain it more when we produce our documents today.  So

7    to my knowledge, yes, there's nothing really to resolve

8    on the phone today.

9             THE COURT:  I mean, save the protective

10   order that would deal with those documents that are

11   being produced; correct?

12            MR. ROE:  Correct.

13            MR. KOBACH:  There's two issues, Your Honor.

14   This is Kris Kobach.  One issue is the -- the

15   impossibility or near impossibility, without an

16   extraordinary number of people being mobilized to do it,

17   of getting the specific information they're asking from

18   the Elvis voter registration databases.  We can't just

19   press a button and get it.  The second issue concerning

20   the protective order is confidentiality concerns we have

21   with respect to information about the specific voters.

22   So there are two different impediments.

23            THE COURT:  Secretary, with respect to

24   the -- you know, the "pushing of button" aspect of this

25   thing, would I be fair in assuming that your office has

1   administrative support from elsewhere in the

2   administration on IT issues?

3          MR. KOBACH:  Yes, we do, Your Honor.

4   However, the -- we do have general administrative

5   support.  However, the Elvis voter registration

6   databases is not something that the rest of the

7   administration of the executive branch has access to or

8   operate.

9          THE COURT:  I guess my question's a little

10  bit different.  Are there people -- is there still a

11  Department of Administration for the State of Kansas?

12         MR. KOBACH:  There is but they have no

13  access to our Elvis voter registration databases.

14         THE COURT:  So is the Elvis motor -- motor

15  registration databases -- or voter registration

16  databases, excuse me, maintained exclusively by your

17  office?

18         MR. KOBACH:  Yes, it is.  And then access

19  points are at all 105 counties.  So each county has at

20  least one person who has authorized access to it as

21  well.

22         THE COURT:  I mean, is there -- you know,

23  our court and I suspect all the law firms involved here

24  have a IT guy or gal.  But who does that for you?

25         MR. KOBACH:  We have an IT department, a

1  small one of just a handful of people and they help --

2  we also have -- if we have IT issues, we also consult

3  the vendor who created the software and helps maintain

4  the databases.

5          THE COURT:  I mean, have there -- any

6  efforts been made to engage IT employees or the vendor

7  or anybody of that sort to try to, you know, either push

8  the right buttons on the existing program or reprogram

9  it in order to quickly access information that the

10 plaintiffs have asked for?

11         MR. KOBACH:  Your Honor, let me allow Bryan

12 Caskey, our Director of Elections, to explain the issue

13 in greater detail.  I think that will be responsive to

14 your question.

15         THE COURT:  Thank you.  Go ahead,

16 Mr. Caskey.

17         MR. CASKEY:  Thank you, Your Honor.  I

18 probably know as much about the administration of that

19 system as anyone in our office.  I think the hang-up, I

20 explained it to Mr. Ho previously, is the system is a

21 living, breathing system.  In the time it takes me to

22 finish this sentence, the system database has already

23 changed because it's constantly being updated across all

24 105 counties.

25         I think the issue at hand is they are requesting

1  some information from last September.  On that date, I

2  ran a report that produced some information.  The

3  request is for additional information to append to that

4  report.  We don't archive the system because of the

5  inherent update -- the inherent nature of updating it.

6          So the only way to add today's information -- I

7  mean, the only way to add the information to the report

8  I already ran nine months ago is to individually look at

9  every record and see what the information was at that

10  point in time.  Because today's information may not be

11  what existed nine months ago because each of these

12  records people have had the chance to update it since

13  that time.  What was true then is not true now.

14          I don't know of any IT programmer that could go

15  in and write a program inherent enough to look at this

16  exact point in time and what did this field say then, if

17  that makes sense.

18          THE COURT:  It does.  I mean, is the system

19  backed up periodically?

20          MR. CASKEY:  Constantly, yes.

21          THE COURT:  Are backup tapes saved?

22          MR. CASKEY:  Yes but they're constantly

23  overwritten because of the inherent large volume of data

24  that we have.  We don't archive specific dates and time.

25  We constantly run backups and we even have a backup

1   system in case the primary system fails.  But I can't go

2   back to that point in time because we've already

3   overwritten it with a fresher backup.

4                THE COURT:  How often is that done?

5                MR. CASKEY:  I'd have to check.  I would say

6   off the top of my head at least weekly if not more

7   frequently.  I can get an exact answer from that.

8                THE COURT:  Okay.  Okay.  Well, I suspect

9   you may have additional questions that Mr. Ho will have

10  next week on that, but I appreciate the background.

11          One moment, please.  You know, on this protective

12  order, we have set deadlines for that to be negotiated.

13  And I'm -- I'm a glass half full kind of guy, so I'm

14  going to be optimistic you'll get that resolved.  I

15  guess one thing I would ask that everyone be mindful of,

16  as you negotiate the terms of that order, are as

17  follows:

18          First, the basic purpose of entering a protective

19  order is to facilitate, not hinder, discovery.  So it

20  would allow folks who may have legitimate concerns about

21  the sensitivity or confidentiality of certain documents

22  to designate them as confidential and still produce them

23  to the other side under the order mindful that they're

24  not going to be widely disseminated later on.

25          But having said that, I don't want anybody on

1   this call laboring under the misimpression that merely

2   because a document has been stamped as confidential by

3   some lawyer or some overeager paralegal, that that will

4   likely entitle that document to be filed under seal when

5   it's used in a court proceeding.

6        I mean, there -- hopefully all of you are aware

7   of -- and if you haven't, I would urge you to look at

8   cases out of our court, and indeed I think I've issued

9   at least one opinion on this issue -- but, you know, the

10  -- our general operating premise is that anything that

11  is relevant to a filing with the court is open to the

12  public.  The public has a right to see this stuff absent

13  somebody being able to clearly demonstrate why it

14  shouldn't be in public view and why the public's right

15  to know is outweighed.  And, hence, stipulations to seal

16  or conclusionary statements about the need to seal are

17  not going to cut it.  So be mindful of that as you stamp

18  things as confidential and certainly when you seek to

19  submit something to the Court under seal.

20       For example, I've seen some discussion in the

21  written submissions to the effect that certain documents

22  that either Secretary Kobach or Secretary Jordan wants

23  to have treated as confidential are already public

24  record.  You know, so what that would mean is, if

25  somebody still designates that as confidential under our

1    court's standard protective order, any opposing party,

2    if they want to, can challenge it.  And if it turns out

3    that material is indeed public record, the chance of

4    that remaining confidential is low.

5         Now, I would rather not get sidetracked with

6    motion practice about these kind of designations.  So I

7    would urge you to be precise and selective about what

8    you describe as qualifying for confidential treatment

9    categorically in your proposed protective order.  And I

10   would urge you to be similarly selective and exercise

11   good judgment about that which you stamp as confidential

12   so we don't create just opportunities for people to

13   fight with each other later on.

14        Well, counsel, that I believe covers the matters

15   that -- that were bound up in the various submissions

16   that reasonably lend themselves to being decided today.

17   There may be other issues that I've inadvertently

18   skipped over and that one of you think would be

19   productive for us to talk about.

20        But, Mr. Ho, mindful that I'll endeavor to

21   fashion a fairly detailed scheduling order that will get

22   filed early tomorrow, is there anything else that you

23   believe we all ought to talk about today to make sure

24   this case has at least the best chance of moving

25   smoothly from this point?

1          MR. HO:  No, thank you, Your Honor.  Nothing

2   further from the *Fish* plaintiffs.

3          THE COURT:  Okay.  Mr. Johnson, on behalf of

4   the *Keener* plaintiffs?

5          MR. JOHNSON:  Nothing further, Your Honor.

6   Thank you.

7          THE COURT:  Okay.  Secretary Kobach or

8   Mr. Roe, anything else either of you can think of?

9          MR. KOBACH:  Nothing further, Your Honor.

10  Secretary Kobach speaking.

11         THE COURT:  Okay.  Mr. Cox and

12  Miss Willoughby, on behalf of Secretary Jordan, anything

13  else either of you can think of?

14         MR. COX:  No, I just might -- although this

15  might be a discovery issue, I just wonder in the

16  interest of anything that the plaintiffs plan to use

17  that's not of record at this point at the preliminary

18  injunction hearing that we be provided a copy of that.

19         THE COURT:  I mean, I think that would be

20  due with their initial disclosures that are due March

21  31st.

22         MR. COX:  Okay.

23         THE COURT:  Keeping in mind that anybody who

24  doesn't disclose material that they intend to use, if

25  there's a proper objection under Rule 37, they're not

```
 1    going to be able to use it at the hearing.

 2              MR. COX:  Okay.

 3              THE COURT:  So -- okay.  Miss Willoughby,

 4    anything else that Mr. Cox has missed that you want to

 5    take up?

 6              MS. WILLOUGHBY:  No, I better not, Your

 7    Honor.  Thank you.

 8              THE COURT:  Okay.  Mr. Bullock or

 9    Mr. Finkeldei, anything else that either of you can

10    think of on behalf of Defendant Shew?

11              MR. BULLOCK:  Nothing, Your Honor.  Thank

12    you.

13              THE COURT:  Counsel, I want to thank all of

14    you.  I know this is not a fun exercise, but I

15    appreciate your efforts to get me educated.  And I'll

16    look forward to working with you in this case not only

17    through the preliminary injunction stage but also close

18    of discovery and the final pretrial conference.  With

19    that, we'll stand adjourned.  You all have a good

20    evening.

21              (Proceedings adjourned.)

22

23

24

25
```

```
 1                    CERTIFICATE

 2

 3   STATE OF KANSAS        |

 4                          |   ss

 5   COUNTY OF WYANDOTTE    |

 6

 7        I, Kimberly R. Greiner, CSR, RMR, CRR, a

 8   Certified Shorthand Reporter for the State of Kansas and

 9   official reporter for the United States District Court,

10   do hereby certify that as such reporter I was present at

11   and reported in machine shorthand the above and

12   foregoing proceedings.

13        I further certify that a transcript of my

14   shorthand notes was prepared and that the foregoing

15   transcript, consisting of 95 pages, is a true and

16   correct transcript of my shorthand notes in said case to

17   the best of my knowledge and ability.

18      SIGNED March 29, 2016.

19

20                 /s/KIMBERLY R. GREINER
                   KIMBERLY R. GREINER, CSR, RMR, CRR

21

22

23

24

25
```