## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEVEN WAYNE FISH, RALPH ORTIZ, | ) | |
| DONNA BUCCI, CHARLES STRICKER, | ) | |
| THOMAS J. BOYNTON, AND DOUGLAS | ) | |
| HUTCHINSON on behalf of themselves and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case no. 2:16-cv-02105 |
| | ) | |
| KRIS KOBACH, in his official capacity as | ) | |
| Secretary of State for the State of Kansas; and | ) | |
| | ) | |
| NICK JORDAN, in his official capacity as | ) | |
| Secretary of Revenue for the State of Kansas, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT NICK JORDAN'S MEMORANDUM IN
## SUPPORT OF MOTION TO DISMISS COMPLAINT

For his Memorandum in Support of Motion to Dismiss Plaintiff's First Amended

Complaint for Injunctive and Declaratory Relief (hereinafter, "the Complaint"),[1] pursuant to Fed.

R. Civ. P. 12(b)(1) and 12(b)(6) and Local Rule, Kansas Secretary of Revenue Nick Jordan

(hereinafter "Secretary Jordan" or "Revenue Secretary Jordan") states as follows:

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs, six individual voters and the newly-added League of Women Voters, bring this

action claiming that Kansas' Chief Election Officer, Secretary of State Kris Kobach, has violated

and continues to violate the National Voter Registration Act (hereinafter sometimes "NVRA"),

52 U.S.C. §§ 20501, *et seq.*, referred to as the Motor Voter Act.  Kansas Revenue Secretary Nick

---

[1] Doc. 39.

Jordan was not named as a party defendant in the consolidated case regarding the *Keener* Plaintiffs.[2] The NVRA requires a pre-suit Notice to the State's Chief Election Officer and does not expressly authorize a private right of action against anyone else.[3] The *Fish* Plaintiffs have added Revenue Secretary Jordan here, seemingly as an afterthought. However, as amply illustrated by the allegations of the Complaint itself, everything went well when these Plaintiffs attempted to register to vote at Kansas Division of Vehicles Offices ("DOV") (also "DMV") Plaintiffs allege that they asked to register to vote while renewing their Kansas drivers' licenses and Kansas DMV accepted their applications – without requiring any "duplicative" citizenship documents. The issue, if any, arose later in the voter registration process. *In fact, these Plaintiffs could not have been suspended or purged had Kansas DMV not accepted their applications when tendered at Kansas DMVs as per the Motor Voter Act.* As to Secretary Jordan, Plaintiffs have pled themselves out of court, acknowledging they have no claim against him.

To state the obvious and as pled in the Complaint,[4] Secretary Jordan is not a county or state election officer and has no election responsibilities – he and Kansas DMV employees do not register anyone to vote and do not place any voters on any suspension or cancellation lists. As Plaintiffs' Complaint itself pleads, Secretary Jordan has nothing to do with the Kansas statute or Kansas administrative regulation challenged in this action; Secretary of State Kobach "is charged with the general supervision of Kansas election laws and the implementation of the allied DPOC law, Kan. Stat. Ann. 25-2309(l) and promulgated the 90-day purge rule."[5] Even if this Court entered an injunction against Secretary Jordan as Plaintiffs request, it would make absolutely no difference to any Plaintiff's ability to vote in Kansas as Secretary Jordan does not

---

[2] Case No. 15-9300-JAR-JPO.
[3] 52 U.S.C. § 20510.
[4] Doc. 39, at ¶ 25.
[5] Doc. 39, at ¶ 24.

maintain voter registration lists, cannot register any Plaintiff to vote as requested, cannot restore purged registrants, and does not enforce the DPOC law and the 90-day purge rule;[6] therefore, Plaintiffs lack standing to maintain this claim against Revenue Secretary Jordan. Because Secretary Jordan is not a state official charged with enforcing the statute and regulation challenged in this case,[7] and because as to him the relief is merely retrospective declaratory relief, the Court lacks jurisdiction over him under the Eleventh Amendment to the U.S. Constitution. The Complaint which refers to Secretary Jordan only twice, once in the caption and once perfunctorily in paragraph 25, fails to state a claim for which relief could be granted against Jordan under either the NVRA or 42 U.S.C. § 1983.   Revenue Secretary Jordan must be dismissed as per Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[8]

## STATEMENT OF THE FACTS

The facts relevant to Secretary Jordan's Motion to Dismiss are as follows:

1.      The individual *Fish* Plaintiffs, six drivers' license/voter applicants, all renewed or received Kansas drivers' licenses at Kansas DMV stations, asked to register to vote or were asked if they wanted to register to vote, and had their applications accepted by Kansas DMV. DMV did not insist upon proof of citizenship being submitted.[9]

---

[6] Doc. 39, at Request for Relief, pages 37-38.

[7] Doc. 39, at ¶ 24.

[8] Although Plaintiffs filed a motion for class certification (Doc. 3) and a motion for preliminary injunction (Doc. 16), neither document has been properly served upon Secretary Jordan to date.

[9] Doc. 39, at ¶ 11 ("Each of the Individual Plaintiffs submitted a valid and complete voter registration application in conjunction with a driver's license application in conjunction with a driver's license application (including those who applied for renewals) in accordance with the NVRA. . …"); ¶ 12 ("Fish completed the paperwork to register to vote, but did not bring documentary proof of citizenship, which was unnecessary for renewal of his license"); ¶ 13 (Ortiz "sought to register to vote" and "did not provide documentary proof of citizenship at that time, because such documentation is unnecessary for renewal of a Kansas driver's license"), ¶ 14 (Bucci renewed her driver's license and attempted to register to vote at a DMV office and "was subsequently placed on the suspense list. . .."), ¶ 15 (Stricker completed his driver's license application and "by the time he completed that process, he believed he had also been registered to vote"); ¶ 16 (Boynton "applied to register to vote during that same visit [to DMV] and he believed his registration was complete along with his driver's license application."); ¶ 17 "Hutchinson "was not required to show documentary proof of citizenship" at Kansas DMV and on the second trip asked DMV about the requirement and "was advised that he had done all that was necessary to complete his voter registration.").

3.      Sometime later after leaving DMV, Plaintiffs allege they "*were placed* on the suspense list for purportedly failing to submit documentary proof of citizenship."[10]

4.      The Complaint does not allege *who* placed them on the suspense list but does not allege that *Secretary Jordan* placed *any* Plaintiff "on the suspense list."[11]

5.      According to Plaintiffs, the suspense list or K.A.R. 7-23-15 is "an administrative rule that improperly purges voters who have duly registered under the NVRA if they fail to provide evidence of citizenship within 90- days of receipt of their registration application (the "90-day purge rule.")[12]

6.      Secretary Jordan did not promulgate K.A.R. 7-23-15.[13]

7.      K.A.R. 7-23-15 provides: "(a) *If the county election officer* assessing an application for voter registration determines that the application does not contain the information required by law, including satisfactory evidence of United States citizenship, *the county election officer* shall designate the application as incomplete. *Each county election office* shall maintain a list of incomplete applications for voter registration...."

7.      Although Plaintiffs challenge the Kansas statute requiring documentary proof of citizenship before *an election official* can register a Kansas voter, K.S.A. 25-2309(l), the actual experience of the six named plaintiffs, as shown by the recitations in their Complaint[14] do not support and in fact contradict that Kansas DMV asked any of them for documentary proof of citizenship before accepting their applications to register to vote.

8.      By its terms, K.S.A. 25-2309(l) (2015 Supp.) is not a statute Secretary Jordan is charged with enforcing, it provides: "*[t]he county election officer or secretary of state's office*

---

[10] Doc. 39, at ¶ 11.
[11] Doc. 1, at ¶¶ 9, 10, 11, 12, (Fish, Ortiz, Bucci were "*subsequently* placed on the suspense list for voter registration.").
[12] Doc. 39, at ¶ 2.
[13] Doc. 39, at ¶ 24.
[14] Doc. 39, at ¶¶ 11-17; *see also,* Doc. 19, Exhibits 2-7.

shall accept any completed application for registration, but an applicant shall not be *registered* until the applicant has provided satisfactory evidence of United States citizenship….." (emphasis added).

9.    Secretary Jordan is only mentioned by name twice, once in the Caption and once perfunctorily in paragraph 25 as follows: "As Secretary of Revenue of Kansas, Defendant Secretary Jordan is the State's chief election official in the Kansas Department of Revenue, which includes the Division of Motor Vehicles, Kan. Stat. Ann. 75-5110."[15]

## QUESTIONS PRESENTED

1. Does the Complaint, which mentions as to Revenue Secretary Jordan Jordan only twice, once in the caption and again in paragraph 25, state sufficient facts to state a plausible claim for relief against Revenue Secretary Jordan for purposes of a claim under the NVRA, particularly where Plaintiffs admit Kansas DOV accepted their applications without requiring proof of citizenship and where Secretary Jordan does not have specific enforcement responsibilities under the DPOC law or the challenged regulation?

2. Does the NRVA expressly authorize a private cause of action against anyone other than the State's Chief Election Officer, who is "the State" for purposes of that law, and is an action against other state officials barred by Eleventh Amendment immunity?

3. Is Plaintiffs' pre-suit notice of claimed NVRA violations sufficient to confer standing on the Plaintiffs for each of the claims alleged as to Defendant Revenue Secretary Jordan where Jordan was only "cc'd" on the Notice which also did not detail specific violations of the NVRA by Kansas DOV?

4. Does Count 5, alleging violation of the Election Clause, U.S. Const., art. I, cl. 4, state a separate claim actionable under 42 U.S.C. § 1983 or are Plaintiffs limited to the remedy available under the NVRA, and, if actionable under 1983, does this Count state a claim that as to Revenue Secretary Jordan personally participated in any deliberate and intentional act to violate any Plaintiffs' rights (which Plaintiffs admit DOV did not do in accepting their applications without proof of citizenship)?

5. Does Count VI, alleging a violation of U.S. Const., art. I, cl. 4, section 2, state a claim as to Revenue Secretary Jordan?

---

[15] Doc. 39.

6.  Have these Plaintiffs alleged a basis for Article III standing or a justiciable case or controversy as to Revenue Secretary Jordan?

7.  Is this action against Revenue Secretary Jordan barred by the Eleventh Amendment?

8.  Must Revenue Secretary Jordan be dismissed as a defendant because as a matter of state law, he lacks capacity in law to be sued?

9.  Should this action be dismissed where Plaintiffs have failed to join indispensable parties for the relief being sought, including but not limited to county election officers who are responsible for and the only persons with legal authority to accomplish the actual voter registrations Plaintiffs are requesting in this action?

## ARGUMENTS and AUTHORITIES

**Standard for Motions to Dismiss**

As this Court has stated, the standard on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is as follows:

> To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that raise a right to relief above a speculative level and must contain enough facts to state a claim for relief that is plausible on its face. The complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims. The plausibility standard does not require a showing of probability that a defendant as acted unlawfully, but requires more than a sheer possibility. Mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim.…. For purposes of a motion to dismiss, the court must take all the factual allegations in the complaint as true, but we are not bound to accept as true a legal conclusion couched as a factual allegation. Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth. Second, the court must determine whether the factual allegations, when assumed true, plausibly give rise to an entitlement to relief. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [16]

---

[16] *Shahmaleki v. Kansas State Univ.*, No. 15-7766-JAR, 2015 WL 7451175, at *1 (D. Kan. Nov. 23, 2015) (internal cites, quotes, and modifications omitted).

"The *Twombly* standard may have a greater bite" in the context of a § 1983 claim against individual government actors … It is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."[17] "In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."[18]

On a Fed. R. Civ. P. 12(b)(1) motion asserting a lack of jurisdiction, this Court stated the standard as follows:

> [f]ederal courts are courts of limited jurisdiction, and as such, must have a statutory or Constitutional basis to exercise jurisdiction. A court lacking jurisdiction must dismiss the case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking. The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper, here, Plaintiff bears the burden of showing why the case should not be dismissed. Mere conclusory allegations of jurisdiction are not enough. . . When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[19]

### Plaintiffs' Allegations Against Revenue Secretary Jordan Fail to State a Claim or Establish a Basis for Jurisdiction or Overcome Eleventh Amendment Immunity

No matter how you look at it, this deficient Complaint against Secretary Jordan is barred. Revenue Secretary Jordan is only mentioned twice by name, once in the caption and once perfunctorily in paragraph 25.[20] Secretary Jordan does not enforce the statute or

---

[17] *Lee v. Shanklin,* No. 12-CV-2638, 2014 WL 4167442, at *8 (D. Kan. Aug. 20, 2014) (quoting *Kan. Penn. Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008)).

[18] *Id.* (quoting *Kan. Penn Gaming*, at 1221 (quoting *Trujillo v. Williams,* 465 F.3d 1210, 1227 (10th Cir. 2006)).

[19] *Lee v. Kansas State Univ.*, No. 12-2638-JAR-DJW, 2013 WL 2476702, at *1 (D. Kan. June 7, 2013) (citations omitted).

[20] Doc. 39.

regulation at issue here. None of the Plaintiffs claim to have been specifically harmed by any act or omission by Revenue Secretary Jordan or that Secretary Jordan has the power to register them to vote in Kansas. In fact, the Complaint establishes the opposite, pleading: "[e]ach of the Individual Plaintiffs submitted a valid and complete voter registration application in conjunction with a driver's license application (including those who applied for renewals) in accordance with the NVRA …."[21]

Specifically, Plaintiff Fish alleges that, "[i]n 2014, he sought to register to vote at a DMV office while renewing his driver's license, and brought with him his valid but expiring license. Mr. Fish completed the paperwork to register to vote, but did not bring documentary proof of citizenship, which was unnecessary for renewal of his license. He was subsequently placed on the suspense list for voter registration."[22] Fish alleges no action by the DMV or Revenue Secretary Jordan affecting his right to vote. Similarly, in his Declaration in Support of the Preliminary Injunction, Fish declares under penalty of perjury: "The clerk at the driver's license office **did not ask me to provide any proof of citizenship documents when I registered to vote**…."[23]

Plaintiff Ortiz alleges that, "[i]n 2014, he went to a DMV office to renew his driver's license, and, because he had decided to remain living in Kansas, he sought to register to vote as a Kansas voter. **He did not provide documentary proof of citizenship at that time**, **because such documentation is unnecessary for renewal of a Kansas driver's license.** He was subsequently placed on the suspense list for failure to provide documentary proof of citizenship,

---

[21] Doc. 39, at ¶ 11.

[22] Doc. 39, at ¶ 12.

[23] Fish Declaration at ¶¶ 6-7 (Doc. 20-2). When deciding a 12(b)(6) motion, the Court "may consider documents that are "integral" to the plaintiff's claims, even if not explicitly incorporated by reference …." *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)); *see also Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215-16 (10th Cir. 2007).

making him ineligible to vote," and he has now been purged.[24] Ortiz alleges no action by the DMV or Revenue Secretary Jordan affecting his right to vote. Similarly, in his Declaration submitted under penalty of perjury, Ortiz states: "**The [DOV] clerk did not ask me to provide any proof of citizenship documents in order to complete my voter registration application. I left the driver's license office assuming that I had been registered to vote.**"[25]

Plaintiff Bucci alleges that, "[i]n 2013, she renewed her driver's license and attempted to register to vote at a DMV office. Ms. Bucci was subsequently placed on the suspense list for failure to provide documentary proof of citizenship. She received a notice in the mail and a phone call notifying her that she would need to provide documentary proof of citizenship to complete her voter registration application," but she never did so and has now been purged from the rolls.[26] Bucci alleges no action by the DMV or Revenue Secretary Jordan affecting her right to vote. Similarly in her Declaration submitted under penalty of perjury in support of the motion for preliminary injunction Bucci swears: "At that time, I was asked by a clerk at the DMV if I would like to register to vote, and I confirmed that I wished to register. **The clerk at the DMV did not ask me to provide any additional documentation, beyond what I had already provided to obtain my driver's license [*i.e.* "my Kansas driver's license and a proof of residence document, which I recall being a bill with my name and address"], when I registered to vote and did not tell me that I lacked any appropriate documentation.**"[27]

Plaintiff Stricker alleges that, "[i]n 2014, he went to a DMV office to obtain a Kansas license and to register to vote in Kansas in time for the midterm elections. Because of the various documentation requirements for a driver's license, Mr. Stricker had to go to the DMV office

---

[24] Doc. 39, at ¶ 11.
[25] Doc. 20-3, at ¶ 10.
[26] Doc. 39, at ¶ 14.
[27] Doc. 20-4, at ¶ 6.

twice to complete his driver's license application, **and by the time he had completed that process, he believed he had also been registered to vote**. But when Mr. Stricker went to vote in the November 2014 midterm election, he discovered that he was not on the rolls ...."[28] Stricker alleges no action by the DOV/DMV or Revenue Secretary Jordan affecting his right to vote. In his Declaration offered under penalty of perjury, Stricker swears "I was asked by a clerk at the DMV if I would like to register to vote, and confirmed that I wished to register. **The clerk at the DMV did not ask me to provide any additional documentation when I registered to vote**."[29]

Plaintiff Boynton alleges that he went to the DMV, and also "applied to register to vote during the same visit, and **he believed his registration was complete along with his driver's license application**."[30] Boynton alleges no action by the DMV or Secretary of Revenue Jordan affecting his right to vote. In his sworn Declaration offered under penalty of perjury Boynton states: "I provided the [DMV] clerk with each document that she requested, and **she did not indicate that there would be any additional documentation required to register to vote before informing me that the voter registration process was complete** ...."[31]

Plaintiff Hutchinson alleges that on visiting Kansas DMV he indicated he wanted to register to vote and "[h]e was **not required to show documentary proof of citizenship** (or proof of legal presence)."[32] On a return visit to DMV, he produced his passport and "was advised that he had done all that was necessary to complete his voter registration."[33] Hutchinson does not allege that any DMV personnel advised him of any need to prove citizenship to prove his voter status or that he was required to do so and alleges no action by the DMV or Revenue Secretary Jordan affecting his right to vote. In his Declaration submitted under penalty of perjury,

---

[28] Doc. 39, at ¶ 15.
[29] Doc. 20-5, at ¶ 8.
[30] Doc. 39, at ¶ 16.
[31] Doc. 20-6, at ¶ 6.
[32] Doc. 39, at ¶ 17.
[33] *Id.*

Hutchinson swears: "Because I was renewing my driver's license, **I was not required [by the DOV clerk] to show documentary proof of citizenship (or proof of legal presence) when I renewed my license.**"[34]

As to the League of Women Voters, there are no allegations as to Revenue Secretary Jordan specifically or of any actions by Revenue Secretary Jordan harming the League.[35] The sole reference to "Defendants" *suspending voters* is inapplicable to Revenue Secretary Jordan given there is no plausible factual basis for any claim that Secretary Jordan placed any voter "on the suspense list."

As stated above, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, plaintiffs must have stated a claim which has facial plausibility. The Tenth Circuit recently reiterated that, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The complaint must offer sufficient factual allegations to raise a right to relief above the speculative level. Although specific facts are not necessary to comply with Rule 8(a)(2), the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests."[36] Here, it is obvious that Plaintiffs have failed to meet their burden.

Plaintiffs apparently hope that the Court will either speculate as to what happened after they left the DMV Office or will supply allegations necessary to bridge that substantial gap. The Court is permitted to do neither.[37] As noted, by the Plaintiffs' own Complaint and their own further admissions contained in sworn statements filed of record in this case, it is clear that no

---

[34] Doc. 20-7, at ¶ 10.

[35] Doc. 39, at ¶ 22.

[36] *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (internal cites, quotes, and modifications omitted); *Khalik v. United Air Lines, Inc.*, 671 F.3d 1188, 1193 (10th Cir. 2012); *see also Van Zandt v. Oklahoma Dep't of Soc. Serv.*, 276 Fed. App'x 843, 849 (10th Cir. 2008); *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008).

[37] *E.g., Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court will not supply additional factual allegations to round out plaintiff's complaint); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (Court will not speculate as to nature of plaintiff's claims).

Kansas DMV personnel required documentary proof of citizenship from them to apply to register to vote. In short, Plaintiffs have no claim against Revenue Secretary Jordan.

Absent sufficient allegations of personal participation in the matters alleged in the Plaintiffs' Complaint, Revenue Secretary Jordan has no liability under Section 1983 or otherwise.[38] Secretary Jordan is mentioned in the Plaintiffs' Complaint by name only twice: once, in the caption at p. 1 then, again perfunctorily at p. 12, ¶ 24 describing him generally (and without any reference to any responsibilities under federal or other voting laws). Otherwise, Plaintiffs refer only generally and vaguely to the "*defendants*."[39] Compounding the uncertainty, Plaintiffs also refer generally to "the State," or "Kansas," or "the State of Kansas," an unjoined, and Eleventh Amendment-immune entity,[40] "the DPOC law" and other unjoined "election officials" or "State officials" as well.[41] "When a plaintiff fails to isolate the allegedly unconstitutional acts of each defendant, adequate notice is not provided to each defendant."[42] The Court in *Robbins v. Oklahoma*,[43] stated plainly:

> [T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants. Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.

Despite the length of the Complaint and the opportunity for amendment, the allegations against Revenue Secretary Jordan are insufficient because Secretary Jordan is left to guess as to what the

---

[38] *Lee v. Shanklin,* No. 12-CV-2638-JAR, 2014 WL 4167442, *8 (D. Kan. Aug. 20, 2014) (citation omitted); *see, e.g., Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996).

[39] *See, e.g.,* Doc. 39, at ¶¶ 1, 2, 7, 9, 10, 22, 23, 29(b), 29(e), 55 and p.25, n.18, 57, 77, 83, 97, and Request for Relief (A,B,D, and E) (referring generally to "Defendants" without factual support).

[40] *See, e.g.,* Doc. 39, at ¶ 4; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (internal cites and quotes omitted).

[41] *See, e.g.,* Doc. 39, at ¶¶ 3, 4, 5, 33, 53, 55, 56, 79, 94.

[42] *VanZandt v. Oklahoma Dep't of Human Servs.*, 276 F. App'x 843, 849 (10th Cir. 2008) (internal quote omitted) (applying Fed. R. Civ. P.'s Rule 8 pleading standard).

[43] 519 F.3d 1242, 1250 (10th Cir. 2008).

Plaintiffs claim that he – as opposed to defendant Secretary of State Kobach, or the unnamed "State of Kansas," or the unnamed county election officials or other unidentified persons – has supposedly done or failed to do that allegedly violated any Plaintiff's voting rights.Pleading generally as Plaintiffs have done here that the collective "defendants" did this or did that, is insufficient under Fed. R. Civ. P. 8 standards.[44]

### Plaintiffs' Count 1: Claim Based Upon K.S.A. 25-2309(l)

Plaintiffs' Count 1 claims a violation of  52 U.S.C. § 20504(c)(2), "[b]ecause **Kansas's DPOC (documentary proof of citizenship) law**, Kan. Stat. Ann. § 25-2309(1), requires more than the minimum amount of information necessary to assess the eligibility of a motor-voter applicant *(i.e.,* the sworn attestation of eligibility as provided under the NVRA), requires information that duplicates information in a Kansas driver's license application, **and instructs state election officials not to register Plaintiffs** and all those similarly situated who fail to provide documentary proof of citizenship, the DPOC law conflicts with the NVRA.[45]

Plaintiffs' Count 1 facially does not apply to Revenue Secretary Jordan.

In Count I, Plaintiffs *expressly* premise their claim of unlawful action on K.S.A. 25-2309(l) which provides as follows: "[t]he *county election officer* or *secretary of state's office* shall accept any completed application for registration, but an applicant shall not be registered until the applicant has provided satisfactory evidence of United States citizenship . . .." K.S.A. 25-2309(l) (2015 Supp.) (emphasis added).

Neither the Kansas Department of Revenue nor the Division of Vehicles (nor the Revenue Secretary Jordan for that matter) are part of the Kansas Secretary of State's Office (a

---

[44] *VanZandt,* 276 Fed. App'x at 849; *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).
[45] Doc. 38, at Count I, ¶ 80 (emphasis added).

matter which the Court can judicially notice as per Fed. R. Evid. 201(b)).[46] Further, as defined, Secretary Jordan also does not constitute a "county election officer." The latter is defined in K.S.A. 25-2303(a) as "the election commissioner in counties having an election commissioner, and the county clerk in counties which do not have an election commissioner." Defendant Revenue Secretary Jordan is none of these and has no role under Kansas law in registering Kansas voters.

Plaintiffs' Count 1 fails to state a claim against Revenue Secretary Jordan and should be dismissed as to him.

### Plaintiffs' Count 2:  Claim Based Upon "Duty to Ensure" Registration

Plaintiffs' Count 2 claims a violation of the NVRA's § 8, which requires that: "each *State* shall … ensure that any eligible applicant is registered to vote in an election" if, while registering in conjunction with a driver's license application, "the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority" within the specified timeframe. 52 U.S.C. § 20507(a)(l)(A).[47]

Plaintiffs' Count 2 facially does not apply to Revenue Secretary Jordan for several reasons, and there are no detailed factual allegations to support any plausible claim as required under *Twombly/Iqbal* that Revenue Secretary Jordan is "the State" or has the duty referenced in 52 U.S.C. § 20507(a)(1)(A), assuming that this general duty is even actionable by a private person. It is doubtful that the NVRA Section 8's *general* "ensure" requirement operates to permit a private right of action for a claimed violation separate from some underlying *specific* violation

---

[46] *Compare* K.S.A. 75-5101(a) ("There is hereby created a department of revenue, the head of which shall be the secretary of revenue. The governor shall appoint the secretary of revenue ….") *with* Kan. Constitution Art. 1, § 1 ("The constitutional officers of the executive department shall be the governor, lieutenant governor, secretary of state, and attorney general …. Such officers shall be chosen by the electors of this state ….").

[47] Doc. 39, at ¶ 82.

of the NVRA, and such language appears merely prefatory. This Count also seems duplicative of Count 4 which is directed solely at Secretary of State Kobach.[48]

Assuming there is a private right of action under Section 8, "the State" for purposes of the duty imposed by NVRA § 8 is the officer designated by the State pursuant to the NVRA as the chief election official pursuant to NVRA § 9: the NVRA also requires that "each state '**designate a State officer . . . as the chief State election official to be responsible for coordination of State responsibilities under this subchapter**."[49]   Thus, the NVRA itself answers the question of who is "the State" for purposes of the duty imposed by NVRA § 8. Plaintiffs agree that these responsibilities reside with the Chief State Election Official, whom they identify as Secretary of State Kobach.[50]

The conclusion that one designated State official is the proper defendant under Section 8, if anyone, is also consistent with and supported by the structure of the Act, including for example, 52 U.S.C. § 20510(b)(1), requiring that pre-suit Notice be given on the chief election officer.[51]   As one Court noted in finding that the Louisiana Secretary of State, Louisiana's chief election officer, was the proper party for purposes of NVRA compliance, the NVRA's concern for centralization of responsibility for NVRA compliance in the chief election officer represents a policy judgment of Congress.[52] Allowing Plaintiffs to willy-nilly sue other state officials, particularly on an alleged violation of the "duty to ensure" requirement, is contrary to the plain language of the NVRA and undercuts Congress' policy concerns for centralization of responsibility.

---

[48] Doc. 39, at 35-36, ¶¶ 89-90.
[49] 52 U.S.C. § 20509.
[50] Doc. 39, at ¶¶ 39-40.
[51] 52 U.S.C. § 201510(b)(1) ("A person who is aggrieved by a violation of this chapter may provide written notice to the chief election officer of the state involved.").
[52] *Scott v. Schedler*, 771 F.3d 831, 838-39 (5th Cir. 2014).

Plaintiffs' Complaint also characterizes Section 8 of the NVRA as "List Maintenance," meaning voter registration rolls.[53]   There is no allegation in the Complaint, and no basis in state law, for claiming that Revenue Secretary Jordan maintains voter lists.  Revenue Secretary Jordan is not an elections official under Kansas law. Under K.S.A. 25-2303, county election officers are primarily responsible for administering Article 23 of Title 25 of the Kansas Statutes Annotated, having to do with voter registration. Further, "[t]he secretary of state and deputy assistant secretaries of state may register voters on a statewide basis." K.S.A.  25-2323. In addition, "[t]he secretary of state may adopt rules and regulations to comply with the national voter registration act." K.S.A. 25-2355. Additionally, "[t]he secretary of state is hereby authorized to adopt such rules and regulations in the manner prescribed by law as may be necessary for the administration of the provisions of this section." K.S.A. 25-2352(g).  Both federal and state law confirm that the Chief Elections Officer is the Kansas official responsible for "ensuring" the State's compliance with the NVRA, and the Plaintiffs agree. That responsible official is not Revenue Secretary Jordan and no allegation in the Plaintiffs' Complaint remotely makes that claim.

Plaintiffs themselves took that position by their November 20, 2015, pre-suit letter to Secretary of State Kobach. That Notice letter, addressed to Secretary Kobach and included as Exhibit A, is entitled "National Voter Registration Act Non-Compliance," stated, "[w]e urge **you** as Kansas's Secretary of State to take immediate steps to bring the state into compliance with federal law."[54] (emphasis added). The pre-suit Notice letter further urged Secretary Kobach that, in "[m]oving forward, we hope **you will ensure that**, consistent with Kansas's obligations under federal law, all Kansas citizens have an opportunity to register to vote without having to navigate

---

[53] Doc. 39, at 18, ¶ 37.
[54] Doc. 39-1, at 2.

unnecessary bureaucratic hurdles."[55] (emphasis added). Plaintiff's own Complaint states: "In Kansas, the Secretary of State is the chief State election official and bears responsibility for coordination of the State's responsibilities under the NVRA." [56]

Revenue Secretary Jordan's duty or DOV's duty under the NVRA is a limited one, concerning his particular function with regard to the NVRA which has to do with applications. As stated in Kansas statute, K.S.A. 75-5110 and acknowledged in the Complaint,[57] Revenue Secretary Jordan's duty is limited to Kansas DOV. As to DOV, the NVRA provides merely that potential voters make *application* for voting registration at the DMV. As to DOV's function, the NVRA, 52 U.S.C. § 20504(a)(1), specifically provides: "[e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an *application* for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." (emphasis added). Thereafter, DMV merely *transmits* to the "appropriate *State election official*" – here the Kansas Secretary of State's Office – "a completed voter registration portion of an application for a State motor vehicle driver's license accepted at a State motor vehicle authority."[58] Thereafter, under the NVRA, it is the appropriate election official – the Kansas Secretary of State's office – who makes the call on the voter's ultimate eligibility. 52 U.S.C. § 20504(c)(2)(B)(ii) provides: "The voter registration application portion of an application for a State motor vehicle driver's license …may require only the minimum amount of information necessary to … *enable State election officials to assess the eligibility of the applicant and to administer voter registration* and other parts of the election process ….") (emphasis added).

---

[55] Doc. 39-1, at 6.
[56] Doc. 39, at ¶ 40.
[57] Doc. 39, at ¶ 25.
[58] 52 U.S.C. § 20504(e)(1).

Plaintiffs agree.[59] As such, what happens when the person's voter registration application is forwarded to the latter, or when election officials make contact with the person, is no part of DOV's or Revenue Secretary Jordan's responsibilities, and Plaintiffs make no claim to the contrary.

Importantly, nothing in the NVRA restricts the DOV's ability to require, to complete a *driver's license* application – as distinguished from a *voter* application – appropriate supporting documentation.[60] And the "suspense list" complained of by Plaintiffs is nothing created or maintained by Revenue Secretary Jordan. K.A.R. 7-23-15 was not promulgated by Secretary Jordan nor does it by its terms apply to him. Plaintiffs make no factual allegation to the contrary.

Beyond this, Revenue Secretary Jordan and the DMV have complied with the latter's duties imposed by the NVRA by dint of K.S.A. 25-2352, which mirrors the NVRA in stating:

> Each Kansas division of motor vehicles driver's license application and nondriver identification card application (including any renewal application) submitted to a division of motor vehicles office in Kansas *shall serve as an application for voter registration* unless the applicant fails to sign the voter registration application. *An individual who completes the application for voter registration and is otherwise eligible shall be registered to vote in accordance with the information supplied by the individual*.

K.S.A. 25-2352(a)(1) (2015 Supp.) (emphasis added).

The Plaintiffs recognize as much in their Complaint referring to K.S.A. 25-2352 as the "state statutory analogue" to the NVRA.[61] Plaintiffs fail to plead any facts showing that Revenue Jordan failed in this specified and limited duty under the NVRA and fail to plead facts showing that he has any broader duty under the NVRA such as the duty to actually register Kansas voters or to ensure the State is NVRA-compliant.

---

[59] *See* Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction (Doc. 19-1) at 4.
[60] Although not clear in the Complaint, in the Memorandum in support of the preliminary injunction plaintiffs acknowledge that U.S. citizens who are initial applicants must provide documentary proof of citizenship in order to obtain a Kansas driver's license. (Doc. 19-1, at 22-23).
[61] Doc. 39, at ¶ 36.

Rather, as Plaintiffs are aware and have themselves argued, the NVRA places State compliance responsibility on a Chief Election Officer. When Plaintiffs indiscriminately use the word, "State," as they tend to do, they are in this instance referring to Secretary of State Kobach if anyone.  As to "the State" itself, as this Court is well aware, the Eleventh Amendment to the United States Constitution clearly raises an impenetrable wall. As the Supreme Court has indicated, the Amendment is a jurisdictional bar to suits against a State in federal court:

> This Court's decisions thus establish that an unconsenting **State is immune from suits brought in federal courts by her own citizens** as well as by citizens of another state. There may be a question, however, whether a particular suit in fact is a suit against a State. It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. **This jurisdictional bar applies regardless of the nature of the relief sought.**[62]

### Plaintiffs' Count 3: Voter Registration List Maintenance

Plaintiffs' Count 3, labeled "Voter Registration List Maintenance," refers to no actions or inactions by Revenue Secretary Jordan.[63] This Count focuses solely on the claimed effect of K.A.R. 7-23-15, a Kansas Secretary of State's regulation dealing with incomplete voter registrations, which refers to the county election officer and has nothing to do with Jordan.

At the least, the cited regulation refers to contemplated action by "county election officer[s]" who are neither employed nor controlled by Revenue Secretary Jordan. *See, e.g.,* K.S.A. 25-2303(a) ("County election officer" means the election commissioner in counties having an election commissioner, and the county clerk in counties which do not have an election commissioner.). As established previously, Revenue Secretary Jordan does not maintain voter registration lists; Plaintiffs do not plead to the contrary.

---

[62] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (internal cites and quotes omitted).
[63] Doc. 39, at 34-35.

The Complaint fails to plead any facts that would support a plausible claim against Revenue Secretary Jordan under the NVRA.  Because this Count does not reference action or inaction by Revenue Secretary Jordan, it should be dismissed as against him.

### Plaintiffs' Count 4:  Inapplicable to Secretary Jordan

Plaintiffs' Count 4 by its terms relates solely to Defendant Secretary Kobach.[64] The Complaint alleges that "Defendant Kobach is the chief election officer of the State of Kansas, and is 'responsible for coordination of State responsibilities' under the statute. 52 U.S.C. § 20509."[65] For once, Paragraph 90 clarifies that this Count is directed solely at "Defendant Secretary Kobach." Because this Count does not reference action or inaction by Revenue Secretary Jordan, it should be dismissed as against him.

### No Cause of Action Lies for Violation of the National Voter Registration Act as Against any Defendant except the State's Chief Election Officer

In addition to the above, Counts 1-4 of the Complaint premised on the NVRA fail to state a claim against Revenue Secretary Jordan for additional reasons. By the plain terms of the NVRA, Secretary of Revenue Jordan is not a proper defendant in Plaintiffs' NVRA suit. The NVRA's 52 U.S.C. § 20510(b)(2) contains the substantive provisions permitting a private right of action:  "the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." But "[a] person who is aggrieved by a violation of this chapter may provide written notice of the violation *to the chief election official* of the State involved." *Id.* at (b)(1) (emphasis added). Further, such person may bring an action only, "If the violation is not corrected within 90 days after *receipt of a notice under paragraph (1),* or within 20 days after *receipt of the notice* if the violation occurred within 120 days before the date of an election for Federal office …." *Id.* at (b)(2) (emphasis added). Further,

---

[64] Doc. 39, at page 35-36, ¶¶ 89-90.
[65] Doc. 39, at ¶ 89.

"If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide *notice to the chief election official of the State* under paragraph (1) before bringing a civil action under paragraph (2)." *Id.* at (b)(3) (emphasis added).

Plainly, the notices of claimed violations are all made to the relevant chief election official of the State involved, here the Defendant Secretary of State Kobach, not Revenue Secretary Jordan.[66] Following accepted rules of statutory construction, the right to sue provisions must be construed according to the surrounding language, and here that language relates solely to the chief election official.[67] Moreover, in the context of Plaintiffs' Complaint, Counts 2, 4, claiming a violation of NVRA's § 8 duty to "ensure," the cited language is that "*each State* shall ... ensure." This language strongly confirms that individual state officials are not proper party defendants because no such duty to ensure is imposed on them, as distinguished from "the State" generally, and in the context of the NVRA, "the State" is the chief election officer, consistent with the statutory duty imposed by the NVRA to designate an official responsible for State compliance with the NVRA. 52 U.S.C. § 20509.

In *Scott v. Schedler*,[68] the Fifth Circuit Court of Appeals strongly suggested that the only proper party defendant in such a suit is the State's chief election official: "The NVRA centralizes responsibility in the state and in *the chief elections officer, who is the state's stand-in*." The decision also confirms that it is such chief election official who has NVRA enforcement power over other entities who might have roles to play in the NVRA process under the policy rationale that "requiring states to assign enforcement power to a single person increases the likelihood of

---

[66] Doc. 39-1 (addressed to Secretary of State Kobach).
[67] *E.g., Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247, 2254 (2013) ("Words that can have more than one meaning are given content, however, by their surroundings.") (citing *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 466 (2001)).
[68] 771 F.3d 831, 839 (5th Cir. 2014) (emphasis added).

NVRA compliance."[69] Given the detailed remedial scheme created by the NVRA, any action against any other state official is barred by the Eleventh Amendment and not allowed by *Ex parte Young.*[70] As Courts have recognized, Revenue Secretary Jordan should be dismissed as an improper defendant as to Counts 1-4 involving the NVRA, which is also barred by Eleventh Amendment immunity, argued further elsewhere herein.

**Plaintiffs' Pre-Suit Notice of Claimed NVRA Violations is
Deficient and Does Not Confer Standing on the Plaintiffs**

Presuming for the sake of argument that Plaintiffs could sue anyone other than the Chief Election Officer given the plain language of the NVRA and Eleventh Amendment immunity, addressed herein,Plaintiffs' purported pre-suit notice of claimed NVRA violations is deficient and does not confer standing on the Plaintiffs as to Revenue Secretary Jordan. The relevant section of the NVRA, 52 U.S.C. § 20510(b), provides as follows:

> Private right of action

>> (1) A person who is aggrieved by a violation of this chapter may provide *written notice of the violation* to the *chief election official* of the State involved.

>> (2) If *the violation* is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if *the violation* occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to *the violation*.

>> (3) If *the violation* occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the

---

[69] *Id.; see also Nat'l Coal. For Students With Disabilities Educ. And Legal Def. Fund v. Bob Taft,* No. C2-00-1300, 2001 WL 1681115, at *8 (S.D. Ohio Sept. 24, 2001) (dismissing state governor on basis inter alia that he had no duty to enforce the NVRA; "Ohio's Secretary of State and not its Governor has the duty and authority to implement and enforce the provisions of the NVRA.").

[70] *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 74 (1996); *National Coalition for Students with Disabilities Educ. & Legal Def. Fund v. Taft,* No. C2-00-1300, 2001 WL 1681116, ** 3-4 (S.D. Ohio Sept. 24, 2001) (NVRA action against State Governor barred by Eleventh Amendment and not within *Ex parte Young* where Ohio Secretary of State, not Governor, was responsible party for NVRA compliance).

> *chief election official* of the State under paragraph (1) before bringing a
> civil action under paragraph (2).

(Emphasis added). Plaintiffs' pre-suit notice(s) are attached as to Plaintiffs' Complaint.[71]

In *Scott v. Schedler*,[72] the Court discussed the pre-suit notice requirement, noting preliminarily that such notice is a mandatory, standing requirement:

> An aggrieved party "may provide written notice of the violation to the chief
> election official of the state involved." NVRA § 11(b)(1). Although notice is
> framed here as permissive rather than mandatory, other NVRA provisions
> indicate that notice is mandatory. For instance, the NVRA provides that "[i]f the
> violation is not corrected within 90 days after receipt of [the] notice ... the
> aggrieved person may bring a civil action in an appropriate district court for
> declaratory or injunctive relief with respect to the violation." *Id.* at § 11(b)(2).
> "No standing is therefore conferred if no proper notice is given, since the 90–day
> period never runs." *Ga. State Conference of NAACP v. Kemp*, 841 F. Supp. 2d
> 1320, 1335 (N.D. Ga.2012).[73]

There were two named plaintiffs in *Scott*, Scott and the NAACP, the former provided no notice although the latter did. The Court rejected the claim that the notice of the NAACP covered him as well.[74] In addition to stating that a Plaintiff cannot "piggyback" on another's notice, the *Scott* Court also suggested that the specificity, or lack of specificity, in the notice was also to be considered, the ultimate goal being to put the chief election officer on notice of the specific claimed violation and the persons to whom such related.[75]

The pre-suit notice here is deficient as to Secretary Jordan for a number of reasons, including without limitation the following:

1. Both the November 20, 2015 and December 17, 2015 Notices were
   directed at Secretary of State Kobach not Secretary of Revenue Jordan;[76]

2. Neither Notice expressly claims that Revenue Secretary Jordan committed
   any violations of the NVRA[77];

---

[71] Doc. 39-1; 39-2.
[72] 771 F.3d 831 (5th Cir. 2014).
[73] 771 F.3d at 835 (footnote omitted).
[74] *Id.*, at 836.
[75] *Id.*
[76] Doc. 39, at ¶ 65 (plaintiffs sent a "letter to Secretary of State Kobach"); Doc. 39-1, 39-2.

3. The November 20, 2014 Notice and the December 17, 2015 Notice expressly state that Ortiz, Fish, Bucci and Stricker were all able to register to vote at DMV Offices;[78]

4. While referencing *some* named Plaintiffs, both Notices wholly failed to mention *all* the named Plaintiffs including Plaintiff Douglas Hutchinson;[79]

5. No notice was given in behalf of any *class* of plaintiffs such as the Plaintiffs here seek by their purported Class Action Complaint;

6. Plaintiffs included no claim that any defendant had failed to "ensure" voting registrations as alleged by the plaintiffs in their Complaint, Count 2;

7. Plaintiffs made no claim of alleged bureaucratic inertia;[80]

8. While the Notices make the general claim that persons applying for driver's licenses are improperly asked for documentary proof of citizenship, the actual experiences offered (*i.e.,* of Plaintiffs Ortiz, Fish, Bucci, and Stricker) all reflect that they all went to the DMV Office and received the driver's license or renewal thereof sought, and that all there registered to vote; none claims that such office requested documentary proof of citizenship to register to vote; as such, Plaintiffs failed to allege in their Notices precisely that or how it was that Revenue Secretary Jordan or Kansas DMV prevented their ability to vote.[81]

The Plaintiffs' pre-suit notice here is plainly deficient, certainly as against Revenue Secretary Jordan and as such confers no standing on the Plaintiffs to maintain this action against him. To allow an NVRA lawsuit against Secretary Jordan to proceed based upon the defective Notices issued is contrary to the express language of the statute, 52 U.S.C. § 201510, and undermines Congress' purposes of ensuring compliance, not enabling lawsuits.

---

[77] Jordan was merely copied on the letters as a "cc", as was the State Attorney General, Derek Schmidt.

[78] Doc. 39-1, at p.5 (Ortiz "went to the DMV to renew his license and registered to vote at that time"; Fish "visited a DMV to renew his driver's license. He decided to register that day. . . After his trip to the DMV, he learned about the proof of citizenship law;" Bucci "went to renew her license at the DMV and registered to vote;" Stricker "visited a DMV to obtain a Kansas driver's license. . . asked to register to vote at that time . . . and assumed he had also been registered to vote."); *accord* Doc. 39-2.

[79] Doc. 39-1, Doc. 39-2.

[80] *Compare* Doc. 39, at ¶ 55 *with* Doc. 39-1, 39-2.

[81] Doc. 39-1, at 5, Doc .39-2, at 5.

**Plaintiffs' Count 5: No 42 U.S.C. § 1983 Action**
**Lies for Violation of the NVRA**

Although Count 5 fails to state against whom specifically it is directed and the Complaint contains no plausible claim that Revenue Secretary Jordan has anything to do with the "times, places and manner of holding elections" for federal office, Count 5 fails to state a claim as a matter of law.  Plaintiffs' Count 5 seeks to assert a separate claim under 42 U.S.C. § 1983 for alleged violation of the NVRA. However, no 42 U.S.C. § 1983 action lies for violation of the NVRA.  In *Ass'n of Cmty. Organizations for Reform Now v. Fowler*,[82] the Fifth Circuit Court of Appeals turned away a claim under § 1983 for violation of the NVRA, determining, "section 1983 is not an available remedy for deprivation of a statutory right when the statute, itself, provides an exclusive remedy for violations of its own terms."[83] Other cases are in accord.[84]

In enacting the NVRA, 52 U.S.C. § 20510(b); Congress provided for a detailed remedial scheme, including a private judicial right of action and explicit remedies, provided that statutory notice requirements were met. Thus, not only is no separate remedy necessary, it is precluded, as allowing a parallel and concurrent 1983 claim would give a Plaintiff the opportunity to circumvent Congress' carefully tailored scheme.[85]

There is no indication that the language of the Elections Clause, U.S. Const., art. I, § 4, applies in this circumstance or that the Constitutional Framers intended to create any right or remedy enforceable by a private person. This provision, included under the Constitutional

---

[82] 178 F.3d 350 (5th Cir. 1999).

[83] 178 F.3d at 367 n. 11 (internal modifications and quotes omitted) (citing *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1574 (5th Cir.1989)).

[84] *Accord Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 961 F. Supp. 129, 132 (E.D. Va. 1997), *rev'd on other grounds*, 152 F.3d 283 (4th Cir. 1998).

[85] *See Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 252-56 (2009) (while allowing a Section 1983 action for a Title IX violation distinguishing other precedents disallowing a separate 1983 action where other statutory schemes provided for an express private means of redress in the statute and a notice provision, including *Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005); *Smith v. Robinson*, 468 U.S. 992 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.*, 453 U.S. 1 (1981)).

section regarding Legislative powers (not under the Bill of Rights), merely provides: "**Elections of Senators and Representatives; sessions of Congress.** The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing [sic] Senators. The Congress shall assemble at least once in every year, and such Meeting shall be on the first Monday in December, unless they shall by Law appoint a different day."   There is no indication that the language of this provision applies to any action or inaction by Revenue Secretary Jordan or that this Constitutional provision creates a personal or individual right enforceable under 42 U.S.C. § 1983, which applies to "rights, privileges or  immunities" intended to benefit a putative plaintiff rather than a mere allegation that federal law was violated.[86]   Rather, the Clause itself merely provides a basis for preemption: "the power the Election Clause confers is none other than the power to pre-empt."[87]   The United States Supreme Court has made clear that the Supremacy Clause does not by its own force create rights enforceable under Section 1983 --  "it would obviously be incorrect to assume that a federal right of action pursuant to 1983 exists every time a federal rule of law preempts state regulatory authority."[88]

Even assuming, *arguendo,* a Section 1983 claim existed given the exclusive remedy provided by the NVRA, there are no facts creating a plausible claim that Revenue Secretary Jordan personally participated in any alleged violations of Plaintiffs' rights under the Elections Clause. "The plaintiff must show the defendant personally participated in the alleged violation,

---

[86] *See, e.g., Gonzaga University v. Doe,* 536 U.S. 273 (2002) (FERPA did not create an individual entitlement enforceable under § 1983); *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 105-108 (1989) (the Supremacy Clause does not a source of federal rights actionable under 1983).
[87] *Arizona v. Inter Tribal Council of Arizona,* 113 S. Ct. 2247, 2257 (2013).
[88] *Golden State,* 493 U.S. at 107-08.

and conclusory allegations are not sufficient to state a constitutional violation."[89] Further, "[t]o establish a violation of § 1983 … the plaintiff must establish *a deliberate, intentional act* on the part of the defendant to violate the plaintiff's legal rights."[90]

The allegations of the Complaint and the sworn Declarations submitted in support of the preliminary injunction show that Kansas DOV did not require additional information from these Plaintiffs who all left DOV believing themselves to be registered.  There is no allegation that Revenue Secretary Jordan was personally involved in any of the claimed NVRA violations claimed, much less that this was a "deliberate and intentional act on the part of [this] defendant."[91]  To the extent Plaintiffs seek to use their § 1983 claim to vindicate those claims, such are barred.  To the extent that Plaintiffs seek to premise liability upon some theory of negligence (*i.e.*, their general reference to alleged computer system problems in 2009),[92]  Section 1983 obviously is not implicated by mere negligent conduct.[93]

### Plaintiff's Count 6 Fails to State a Claim Against Revenue Secretary Jordan

For similar reasons to those stated in connection with Count 5, lack of allegations of personal participation in any violation of a right to travel, as to Revenue Secretary Jordan, Count 6 should be dismissed. The sloppy reference to "defendants" in this Count is wholly conclusory, failing to state a claim against Revenue Secretary Jordan.[94]

---

[89] *Jenkins v. Wood,* 81F.3d 988, 994 (10th Cir. 1996)
[90] *Porro v. Barnes,* 624 F.3d 1322, 1327-28 (10th Cir. 2010) (emphasis added); Dodds *v. Richardson,* 614 F.3d 1185, 1195 (10th Cir. 2010).
[91] *Barnes,* at 1327-28.
[92] Doc. 39, at ¶ 55.
[93] *Johnson v. Martin,* 195 F.3d 1208, 1219 (10th Cir. 1999) ("Neither simple nor gross negligence implies an intentional and deliberative violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983.") (internal quotes omitted) (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)).
[94] *Van Zandt v. Oklahoma Dep't of Soc. Serv.,* 276 Fed. App'x 843, 849 (10th Cir. 2008); *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008); *Shahmaleki v. Kansas State Univ.*, No. 15-7766-JAR, 2015 WL 7451175 (D. Kan. Nov. 23, 2015) ("conclusory statements are not entitled to the assumption of truth" (citing *Khalik v. United Air Lines,* 671 F.3d 1188, 1193 (10th Cir. 2012)).

Further, while Plaintiffs base this Count on the allegation that "[w]hen a Kansas registrant purportedly fails to provide documentary proof of citizenship Defendants take affirmative steps to register voters born in Kansas by checking birth and marriage records retained by KDHE. Defendants do not typically verify suspended registrants' citizenship with agencies outside of Kansas."[95] No factual or statutory basis is pled that Revenue Secretary Jordan registers voters – he doesn't. In fact, the Complaint itself pleads that only Secretary of State Kobach performs these functions, stating specifically that "Defendant Secretary Kobach has taken steps to verify independently the citizenship of a fraction of suspended voters. But Defendant Secretary Kobach has done so on a discriminatory basis, limiting efforts to verify citizenship primarily to registrants born in Kansas."[96] Similarly, Secretary of State Kobach is mentioned repeatedly in section VI of the Complaint, paragraphs 67-69, with no reference whatsoever to Secretary Jordan. As to Secretary Jordan, Count 6 must be dismissed.

### Additional Arguments Applicable to All Counts

In addition to the above arguments regarding the NVRA Counts as to Revenue Secretary Jordan, Counts 1-4, Secretary Jordan raises the following additional arguments, which apply to all counts asserted against him and require dismissal.

### Plaintiffs Have Alleged No  Basis for Standing and No Justiciable Case or Controversy as Against Revenue Secretary Jordan

Plaintiffs have alleged no justiciable case or controversy as against Revenue Secretary Jordan and no basis for standing as to a claim against him. Article III standing "requires that the plaintiff demonstrate that he or she has suffered injury in fact, that the injury is fairly traceable to **the actions of the defendant**, and that the injury will likely be redressed by a favorable

---

[95] Doc. 39, at ¶ 97.
[96] Doc. 39, at ¶ 67.

decision."[97] Recently, the Supreme Court has stated that "[t]o establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[98] The injury may not be speculative, but must be "certainly impending to constitute injury in fact."[99] Generalized grievances are insufficient to confer standing.[100] Plaintiffs' Complaint fails to show that Revenue Secretary Jordan injured them or that any Order from this Court (*e.g.,* ordering him to register them as voters, something he is powerless to do), would redress any alleged injury. Plaintiffs have no standing.

In *Bishop v. Oklahoma,*[101] the Tenth Circuit reversed the district court, finding that the plaintiffs there (two gay couples), lacked standing to sue the Governor and Attorney General, as neither were sufficiently connected with the statute in question regarding issuance of marriage licenses to either cause any injury to the couples or to be able to grant them any relief. In reaching this conclusion, the Circuit cited *Bronson v. Swensen,* where the Court found plaintiffs could not show causation or redressability in their suit against the County Clerk where "[e]njoining this defendant from enforcing Utah's criminal prohibition of polygamy would be a meaningless gesture."[102] Similarly, in *Bishop v. Smith,* the Circuit held that the plaintiffs lacked standing to sue the clerk on their claim that the court clerk should have recognized their out-of-state marriage given that there was nothing in the record or in Oklahoma law to support that the clerk "will have any specific involvement" in recognizing the marriage in question.[103]

Although Plaintiffs complain of nothing that happened at Kansas DOV (they all left thinking themselves registered to vote), anything that happened at DOV is in the past and not

---

[97] *Scott v. Schedler,* 771 F.3d 831, 836-37 (5th Cir. 2014) (internal quotes and citation omitted) (emphasis added).
[98] *Clapper v. Amnesty Internat'l USA,* 133 S. Ct. 1138, 1147 (2013).
[99] *Id.*, at 1147; *see also Summers v. Earth Island Instit.,* 555 U.S. 488 (2009); *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992).
[100] *Hollingsworth v. Perry,* 113 S. Ct. 2652, 2662 (2013).
[101] 333 Fed. Appx. 361, 365 (10th Cir. 2009).
[102] *Id.*, at 364 (citing 500 U.S. 1099, 1110-12 (10th Cir. 2007)).
[103] 760 F.3d 1070, 1092 (10th Cir. 2014).

sufficient to create a present case or controversy as to Secretary Jordan. In the seminal case of *City of Los Angeles v. Lyons*,[104] a police-applied choke hold claimant sought injunctive relief against such force in the future. The Court, recognizing the Article III actual case or controversy requirement for federal courts, turned away the claim, summarizing, "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional."[105]

Here, the six (6) named Plaintiffs make no allegation that they will be wronged again *by Revenue Secretary Nick Jordan* (if wronged at all by him) – as distinguished from election officials – and indeed, having applied for or renewed their driver's licenses, as they have described it, and having their application for voting registration sent over to the Kansas Secretary of State's Office, they will no longer have any occasion to visit a DOV office again to do anything relating to their voting status. And given that the claims of the six (6) named Plaintiffs are claimed to be "typical" of the purported class, the class odds are not improved.[106] The newly-added organizational Plaintiff, League of Women Voters, makes no claim against Revenue Secretary Jordan. As to Secretary Jordan, an injunction would redress no injury and a declaratory judgment would serve no purpose; dismissal for lack of jurisdiction is required.[107]

---

[104]  461 U.S. 95 (1983).

[105]  *Id.*, at 111; *see also Dobrovolny v. Nebraska*, 100 F. Supp. 2d 1012, 1036-37 (D. Neb. 2000) (dismissing Plaintiffs' NVRA claims for reasons including lack of a live case or controversy where allegations concerned past conduct).

[106]  Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Doc. 3-1) at pp. at 11-12.

[107]  *Southern Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 729-30 (10th Cir. 1997); *see Arizonans for Official English v. Arizona,* 520 U.S. 43, 48-49 (1997).

30

### As to Revenue Secretary Jordan, the Eleventh Amendment Bars This Action

The Eleventh Amendment is a jurisdictional bar to suit in federal court against a state official in that official's official capacity.[108] As alleged in the Complaint, Secretary Jordan, as Secretary of the Kansas Department of Revenue,[109] is an arm of the State of Kansas and thus takes on the State's Eleventh Amendment immunity.[110] Neither Revenue Secretary Jordan nor the State of Kansas has consented to this suit and Plaintiffs have not pled otherwise. Congress did not abrogate States' Eleventh Amendment immunity when it enacted 42 U.S.C. §1983.[111] Nor is 52 U.S.C. § 20510(b)(1)'s language permitting "the aggrieved person [to] bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation," an unmistakable Congressional abrogation of the State's Eleventh Amendment immunity from suit, which, even when clearly expressed and intended, may not be accomplished through Article I enactments.[112] Eleventh Amendment immunity applies regardless of the relief sought: "it serves to avoid the 'indignity of subjecting a State to the coercive process of judicial tribunals at the instance of the private parties.'"[113]

Nor is relief under the *Ex parte Young* exception otherwise available under these facts. In *Klein v. Univ. of Kansas Med. Ctr.*,[114] this Court held that, "[t]he continuing violation exception to Eleventh Amendment immunity is not without limitations. In *Ex Parte Young,* the Supreme Court noted that the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment." As the Circuit has stated it, when

---

[108] *E.g., Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).
[109] Doc. 39, at ¶ 25.
[110] *E.g., Arnold v. McClain*, 926 F.2d 963, 966 (10th Cir. 1991).
[111] *Ruiz,* at 1181 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).
[112] *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55-56, 72-73 (1996); *e.g., Mojsilovic v. Oklahoma ex rel. Bd. of Regents for the Univ. of Oklahoma*, 101 F. Supp. 3d 1137, 1139-42 (W.D. Okla. 2015) (dismissing a federal statutory claim against a University where the statute failed to make any express reference to the Eleventh Amendment to demonstrate with unmistakable clarity an intent to abrogate State sovereign immunity.).
[113] *Seminole Tribe,* 517 U.S. at 58.
[114] 975 F. Supp. 1408, 1417 (D. Kan. 1997).

a claim for injunctive relief is brought against a state official who is not involved in the enforcement of the allegedly unconstitutional statute, here the DPOC law, Eleventh Amendment immunity applies and requires dismissal of the claim.[115]

More to the point, the Court in *Nat'l Coal. For Students With Disabilities Educ. And Legal Def. Fund v. Bob Taft*,[116] held that the Eleventh Amendment and *Ex parte Young* barred suit against the Governor who had no connection to enforcement of the NVRA. The same result obtains here as to Revenue Secretary Jordan.

Plaintiffs' Complaint is void of any allegations that Secretary Jordan is the appropriate official with the power to make the things happen which Plaintiffs here urge, including their Count 2 claim that Secretary Jordan failed to "ensure" compliance by the State of Kansas. Pleading generally that the "defendants" did this or did that, is insufficient under Fed. R. Civ. P. 8 standards, as noted above, because it fails to put each defendant, including Jordan, on fair notice of what the Plaintiffs' claim actually is. Certainly, all the relief requested by the Plaintiffs, including prospective injunctive relief, involves matters over which Secretary Jordan is either not involved in or has no authority whatsoever for or in.[117]

None of the Plaintiffs has alleged facts creating a plausible claim that Revenue Secretary Jordan had anything to do with their apparent failure to be registered to vote and, insofar as they have alleged it, that result lies entirely at the door of election officials, including county election officials who are not even named defendants herein. As such, as there is no on-going violation of

---

[115] *Peterson v. Martinez,* 707 F.3d 1197, 1205-06 (10th Cir. 2013) (state officials must have a particular duty to enforce the statute and question and a demonstrated willingness to exercise that duty); *Bishop v. Oklahoma,* 333 Fed. Appx. 361, 364-65 (10th Cir. 2009) (citing cases for the proposition that a public official defendant must have specific enforcement responsibility for the statute in question to be a proper defendant).

[116] No. C2-00-1300, 2001 WL 1681115, at *3-4 (S.D. Ohio Sept. 24, 2001).

[117] Doc. 39, at p.37.

federal law, at least as against Secretary Jordan, the Eleventh Amendment thereby bars this action.[118]

As to the retrospective relief requested in the Complaint as to persons "who sought to register in conjunction with a driver's license application,"[119] even under a theory of *Ex parte Young*, "[i]t is well established that official capacity "claims for back pay, monetary damages, and **retroactive declaratory relief** are barred by the Eleventh Amendment."[120] Plaintiffs' claims for retroactive declaratory relief or notice relief as to any prior conduct by Secretary Jordan (assuming there were any such allegations), is barred by the Eleventh Amendment.[121]

At best, Plaintiffs seem to be proceeding on the basis of some alternative theory, based upon a newspaper article, that perhaps DMV's computers have not worked perfectly in the past, citing a 2009 computer project that was criticized in the press, or that somehow DMV has violated DPOC by not requiring proof of citizenship papers and forwarding them to election officials (something the NVRA does not itself require).  However, allegations of past violations of state law, if that is even alleged here, do not fall within *Ex parte Young,* nor the NVRA, nor Article III.[122]

### Defendant Secretary Jordan Lacks Capacity in Law to be Sued

Defendant Revenue Secretary Jordan lacks capacity under state law to sue or be sued. Capacity is a state law question.[123] No provision under Kansas or federal law accords him such

---

[118] *See, e.g, Green v. Mansour,* 474 U.S. 64 (1985).
[119] Doc. 39, at ¶ 10.
[120] *Moore v. Univ. of Kansas,* 118 F. Supp. 3d 1242, 1250 (D. Kan. 2015) (citing *Meiners v. University of Kansas,* 359 F.3d 1222, 1232 (10th Cir. 2004)) ("retrospective declaratory relief"); *see Pennhurst,* 465 U.S. at 102-03.
[121] *Green v. Mansour,* 474 U.S. 64, 73-74 (1985).
[122] *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984); *Green Party of Penn. v. Aichele,* 89 F. Supp. 3d 723, 752-53 (E.D. Pa. 2015); *Dobrovolny v. Nebraska,* 100 F. Supp. 2d 1012, 1036-37 (D. Neb. 2000).
[123] Fed. R. Civ. P. 17(b) (indicating a party's capacity to sue or be sued in federal court is determined by state law).

capacity, and Plaintiffs have cited none.[124] There is no statutory authorization permitting Secretary Jordan, in his official capacity, to be sued for declaratory or injunctive relief or otherwise in a non-administrative appeal setting. Secretary Jordan simply has no capacity in law to be sued for the matters claimed here and as such, he must be dismissed. The lack of capacity question is a separate question from that of a State defendant's Eleventh Amendment immunity and requires separate consideration by the Court.[125]

### Plaintiffs Failed to Join Required and Indispensable Parties – County Election Officials – and Absent Joinder of the Same, this Action Must Be ismissed

If Plaintiffs want to register to vote in Kansas, Kansas county election/county clerks' offices are essential to that process and to the relief sought here.[126] K.S.A. 25-2309, referenced repeatedly in the Plaintiffs' Complaint, refers repeatedly to the county election officer in subsections (a), (e), (g), (l), and (t). Although Plaintiffs' Complaint repeatedly (and apparently intentionally), uses the passive voice so as not to indicate specifically who placed them on the suspense list or who notified them of that action,[127] several of the specifically named Plaintiffs have articulated that Kansas county officers had a seminal role in allegedly denying them their voting rights.[128] However, absent joinder of the county election officers for each of the Plaintiffs

---

[124] Doc. 39, at ¶ 25;  *See generally Fugate v. Unified Gov't of Wyandotte Cty./Kansas City, KS*., 161 F. Supp. 2d 1261, 1266 (D. Kan. 2001) ("Absent a specific statute, subordinate governmental agencies do not have the capacity to sue or be sued."); *Corder v. Kansas Board of Healing Arts*, 256 Kan. 638, 662-67, 889 P.2d 1127 (1994); *Hopkins v. State*, 237 Kan. 601, 606, 702 P.2d 311 (1985); *Mid American Credit Union v. Board of Sedgwick County Comm'rs*, 15 Kan. App. 2d 216, 224, 805 P.2d 1244, *rev. denied* (1991). *Cf. Thomas v. Pierce*, 662 F. Supp. 519, 525 (D. Kan. 1987) (noting statutory provision permitting Secretary of HUD "to sue and be sued in any court of competent jurisdiction"); *St. Mary of the Plains Coll. v. Higher Educ. Loan Program of Kansas, Inc.*, 724 F. Supp. 803, 807 (D. Kan. 1989) (recognizing statutory authority of Secretary of Education to "sue and be sued").

[125] *Arbogast v. Kansas, Dept. of Labor*, 789 F.3d 1174, 1179-81 (10th Cir. 2015).

[126] Doc. 39, at p.37, ¶ C.

[127] Doc. 39, at ¶¶ 11 ("Each of the Individual Plaintiffs submitted a valid and complete voter registration application in conjunction with a driver's license application (including those who applied for renewals) in accordance with the NVRA but *was placed on the suspense list* for purportedly failing to submit documentary proof of citizenship."); 12, 13, 14, 15, 16, 17.

[128] *See, e.g.,* Plaintiffs' Motion for Preliminary Injunction (doc. 16), Exhibit 2, at p. 2 (Fish Declaration) (received notice from County Clerk that his name had not been entered in voting rolls); Exhibit 3, at p. 3 (Ortiz Declaration (received notice from County election clerk); Exhibit 4 at p. 2 (Bucci Declaration) (received call from voting board that she needed to provide documents).

for whom relief is sought, complete relief cannot be afforded to those who are already parties. For example, if the Court enjoins Defendants Revenue Secretary Jordan and Secretary of State Kobach but the local offices continue to deny Plaintiffs' voting privileges, the latter have plainly not gotten the complete relief that they seek. As such, absent their joinder, this action should be dismissed.

Applying the three-part analysis applied by the Tenth Circuit regarding Rule 19[129] here, the county election officers are "required to be joined" under Fed. R. Civ. P. 19(a) because in their absence, the court cannot afford complete relief among existing parties. To date, the county election officers for the individual Plaintiffs have not been joined. Absent joinder, this action cannot and should not proceed "in equity and good conscience."[130] The preliminary injunction hearing scheduled for April 14 should not proceed without these necessary parties and the case should be dismissed.

## CONCLUSION

For all the reasons stated above, which are substantial, Plaintiffs' Complaint must be dismissed as against Kansas Department of Revenue Secretary Nick Jordan because it fails to state a claim for which relief may be granted as to him and is barred for lack of jurisdiction under Article III, as well as barred by Eleventh Amendment immunity, and other substantial reasons stated herein.

---

[129] *Northern Arapaho Tribe v. Harnsberger,* 697 F.3d 1272, 1278 (10th Cir. 2012).

[130] *Id.*

Respectfully submitted:


*/s/ J. Brian Cox*
J. Brian Cox, #11089
Deputy General Counsel
Special Assistant Attorney General
Legal Services Bureau, KDR
Docking State Office Building
915 SW Harrison
Topeka, KS  66612-1588
Phone  (785) 296-2381
FAX    (785) 296-5213
Email   brian.cox@kdor.ks.gov


*/s/ M.J. Willoughby*
M.J. Willoughby, #14059
Assistant Attorney General
Office of Attorney General
Derek Schmidt
Memorial Hall
120 SW 10th, 2nd Floor
Topeka, KS 66612
Phone (785) 296-2215
FAX (785) 291-3767
Email MJ.Willoughby@ag.ks.gov

*Attorneys for Defendant Secretary of
Revenue Nick Jordan*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2016, I electronically filed the foregoing Memorandum with the Clerk of the Court by using the CM/ECF system, which will generate a copy to all participants in the Court's CM/ECF system, including:

Stephen Douglas Bonney
ACLU Foundation of Kansas
670 l W. 64th Street, Suite 21 0
Overland Park, Kansas 66202
(913) 490-4102
dbonney@aclukansas.org

NEIL A. STEINER
REBECCA KAHAN WALDMAN

Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212) 698-3500
Fax: (212) 698-3599
neil.steiner@dechert.com
rebecca.waldman@dechett.com

DALEE HO
R. ORION DANJUMA
SOPHIA LIN LAKIN
American Civil Liberties Union Foundation, Inc.
125 Broad Street, 18th Floor
New York, NY 1 0004
(212) 549-2693
dale.ho@aclu.org
odanjuma@aclu.org
slakin@aclu.org

ANGELA M. LIU*
Dechert LLP
35 West Wacker Drive
Suite 3400
Chicago, IL 60601-1608
Phone: (312) 646-5800
Fax: (312) 646-5858
angela.liu@dechert.com

*Attorneys for Plaintiffs*

Kris Kobach
Bryan J. Brown
Garrett Roe
Secretary of State
Memorial Hall, 1st Floor
120 SW 10th Avenue
Topeka, KS 66612
785-296-2034
sos@sos.ks.gov
bryanjbrownlaw@gmail.com
garrett.roe@sos.ks.gov

*Attorneys for Secretary of State Kobach*

_/s/ J. Brian Cox_____
J. Brian Cox, #11089