IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEVEN WAYNE FISH, et al., | |
| Plaintiffs, | |
| v. | Case No. 16-2105-JAR |
| KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas, et al., | |
| Defendants. | |

## MEMORANDUM AND ORDER

On May 17, 2016, the Court issued an extensive Memorandum and Order granting in part Plaintiffs' motion for a preliminary injunction barring enforcement of the Kansas Documentary Proof of Citizenship ("DPOC") law until this case could be decided on the merits.  Given that compliance with the Court's order would require a fair amount of administrative effort by the State, the Court *sua sponte* stayed the effective date of its Order for two weeks—until May 31, 2016—to allow time for the State to either comply, or seek a stay pending appeal.  Before the Court is Defendant Kris Kobach's Motion for a Stay Pending Appeal Under Federal Rule of Appellate Procedure 8(a)(1)(A) (Doc. 137).[1]  Given the time-sensitive nature of this request, the Court rules on this motion without further briefing.  As described more fully below, the Court denies Defendant Kobach's motion to stay, but extends the temporary stay of its order for an additional two weeks.

---

[1] Secretary Kobach filed this motion on May 20, 2016.  On May 23, 2016, he filed his Notice of Interlocutory Appeal.  Doc. 142.

## I.      Background

Before ruling on the instant motion, the Court must set forth a brief but accurate rendition of the state of the record on the underlying motion for preliminary injunction.  The motion for preliminary injunction was filed shortly after Plaintiffs filed the Complaint, on February 26, 2016.  Plaintiffs submitted several exhibits in support of their motion at that time, including the individual Plaintiffs' declarations, and two expert reports.  The Court set a deadline of March 18, 2016 for Defendants to respond to the motion; a hearing was set for April 14, 2016.

Shortly after issuing these deadlines, the Court granted in part a motion by Secretary Kobach to consolidate this case with the case of *Keener v. Kobach*, Case No. 15-9300, another case dealing with the Kansas DPOC law that had been filed several months prior to the instant case.  The Court granted the request for consolidation for purposes of discovery and pretrial management only.[2]

During a telephonic scheduling conference with Magistrate Judge O'Hara, Secretary Kobach requested and was granted an extension of the response deadline until March 29, 2016.  He submitted that response along with several exhibits at that time, including a lengthy declaration from Assistant Secretary of State Brian Caskey that included voting statistics and a general description of the effort that would be required to comply with the requested injunction.

At the hearing on April 14, 2016, the Court encouraged and allowed all parties to submit evidence in support of their respective positions.  Secretary Kobach called Mr. Caskey as a witness, and submitted several additional exhibits that were not submitted at the time his response was filed.  In ruling on Plaintiffs' motion for preliminary injunction, the Court

---

[2]Doc. 29 at 4.

considered all exhibits attached to the briefs, admitted into the record at the hearing, and submitted as supplemental evidence before the Court rendered its decision.[3]

The Court issued its decision approximately one month after the hearing, on May 17, 2016, at 4:45 p.m.  At 4:20 p.m. that same day, Secretary Kobach filed a Notice of Service of Rule 26(b) Expert Report, attaching the report of Hans von Spakovsky.[4]  Attached to that report is a survey of 500 Kansans by CHS & Associates, conducted between May 9 and 11, 2016.  The report itself is dated May 12, 2016.  Secretary Kobach stated in this Notice that "[t]he expert report also includes information relevant to *Fish* Plaintiffs' pending motion for preliminary injunction concerning what is necessary to prevent noncitizens from registering to vote."[5]  A Notice of Service is a discovery notice—it informs the Court that a party has served a discovery document, in this case an expert report, on the opposing party.[6]  This document was also filed as Doc. No. 100 in the *Keener* matter about two minutes later.

The day after the Court's decision, Secretary Kobach filed a "Notice of Changes in Interagency Policy Regarding Verification of Documentary Proof of Citizenship."[7]  In this three page document, with accompanying exhibits, Secretary Kobach outlines two policy changes "recently" implemented by the Secretary of State's Office and the Division of Motor Vehicles at the Department of Revenue ("DMV").  First, the DMV now accepts and scans any DPOC provided by a driver's license applicant at any time.  Second, the Secretary of State's Office and the 105 county clerks have been given access to the DMV database so that they may check to see

---

[3] *See* Doc. 121.  The Court also considered a notice of supplemental authority submitted by Secretary Kobach.  *See* Doc. 118.

[4] Doc. 128 (filed May 17, 2016).

[5] *Id.* at 1.

[6] *See* Fed. R. Civ. P. 26(a)(2); D. Kan. R. 26.3 (providing that disclosures under Rule 26(a)(2) are not to be filed, but instead a certificate of service should be filed stating the type of disclosure or discovery served, the date and type of service, and the party served).

[7] Doc. 134 (filed May 18, 2016).

if a person presented DPOC to the DMV.  Secretary Kobach states in this Notice that "[a]lthough this notice comes the day after the Court's recent preliminary injunction ruling, these policies were already being implemented prior to the ruling."[8]  But Secretary Kobach did not provide any notice to the Court prior to its ruling that these policy changes were in progress, despite the more than one-month period of time between the hearing and the Court's ruling.

To summarize, Secretary Kobach was provided more than one month to respond to Plaintiffs' motion, another two weeks to compile his record prior to the preliminary injunction hearing, and one month after the hearing to supplement the record if necessary prior to the Court's ruling.  Neither the von Spakovsky report, nor the notice of interagency changes, nor the new evidence and statistics referred to in Mr. Caskey and Ms. Lehman's latest declarations attached to the pending motion, were properly submitted to the Court before it rendered its decision on the motion for preliminary injunction.[9]

## II.    Discussion

When deciding whether to issue a stay pending appeal, the Court considers whether the moving party establishes: (1) a substantial likelihood of success on the merits, (2) that it will suffer irreparable harm without the relief sought, (3) threatened injury that outweighs any harm the relief would cause the opposing party, and (4) that the relief would not be contrary to the public interest.[10]  If the moving party establishes that the balance of harms and public interest factors "tip decidedly in its favor,"[11] then Defendant "will be deemed to have satisfied the

---

[8]*Id.* at 1.

[9]*See Verlo v. Martinez*, No. 15-1319, 2016 WL 395205, at *7 (10th Cir. Apr. 8, 2016)  ("this evidence relates to events occurring after the preliminary injunction issued, and therefore none of it was presented to the district court at the hearing. We will not hold that the district court abused its discretion based on evidence not before it when it ruled.").

[10]*Wyandotte Nation v. Sebelius,* 443 F.3d 1247, 1254–55 (10th Cir.2006).

[11]*FTC v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003).

likelihood of success on appeal element if [he] show[s] 'questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.'"[12]

### A.   Irreparable Harm to Defendant Without a Stay

Secretary Kobach argues that the administrative burdens of complying with the injunction "in less than two weeks while still complying with all of the other aspects of the NVRA and Kansas election procedures" will cause irreparable harm,[13] and that these changes will be magnified if the Court's decision is reversed on appeal and the State is required to return to the status quo. The Court disagrees that the administrative burdens on the State constitute irreparable harm. First, in an effort to acknowledge that there is some administrative burden to the State in implementing the preliminary injunction, the Court *sua sponte* issued a stay of its decision for exactly two weeks from the date of the Order. Secretary Kobach chose to wait almost one full week after the decision was issued to file his Notice of Appeal. Second, the Court does not consider the Secretary's other obligations under federal and state law particularly burdensome. There is no indication that federal law has changed; the State must continue to comply as it always has with the NVRA. And to the extent State regulations or internal policies have changed, those are entirely within the control of the Secretary.

Secretary Kobach takes issue with the Court's finding in the preliminary injunction order that changing the registration records for applicants held in suspense or cancelled in the ELVIS system is "a wholly automated process," arguing that the process of actually changing the voter

---

[12]*McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (quoting *Walmer v. U.S. Dep't of Defense*, 52 F.3d 851, 854 (10th Cir. 1995) (footnote omitted)).

[13]At one point in his motion, Secretary Kobach references "three ways" the State will be irreparably harmed. But outside of his public interest argument—a separate factor in the stay analysis—the administrative burden involved is the only harm identified and discussed. The Court confines its analysis to this argument.

records in the system would be a manual process that will burden county elections officials. He points to new evidence—the third declaration now submitted by Sedgwick County Election Commissioner Tabitha Lehman,[14] citing the time and money that her office must spend to comply with the Court's Order. She attests that her staff will be required to manually review each of 7025 records and modify them, estimating 17,562 minutes of office time. She believes that the extra noticing efforts involved with compliance will cost her office $3590. Ms. Lehman now estimates it will take approximately fifteen hours to send notices out to these individuals. These figures were not part of the record submitted to the Court along with the motion for preliminary injunction.[15]

Mr. Caskey testified that identifying the universe of motor voter applicants who have been held in suspense or cancelled for failure to provide DPOC would take about one hour; he can run automated reports that would generate this information. While the record reflects that there is a manual component to the process in the sense that a county election official must open each electronic voter record in order to change the status to active for federal elections—that process is entirely electronic. The records are all part of the ELVIS system. Indeed, Secretary Kobach has repeatedly argued that voter records are never "purged" under K.S.A. § 7-23-15 because they are maintained in the ELVIS database and "designation of the record is simply changed from 'suspense' to 'cancelled' . . . . If a court were to so order, it would be possible to . . . change the . . . the record from 'cancelled' to 'active' (a designation that reflects a fully registered voter)."[16]

---

[14]Doc. 137, Ex. E (May 20, 2016 Lehman Decl.).

[15]To be sure, Mr. Caskey stated in his affidavit and during his deposition that an election worker must manually change each record from cancelled, or incomplete, to active. He stated that it would involve "thousands of hours of work, collectively, by county and state officers." Kobach Ex. 1 ¶ 19. But there was no specific evidence from the counties in the record attempting to quantify the time needed to change the records.

[16]Kobach Ex. 1 ¶¶ 11–12.

The reason Ms. Lehman cites for spending approximately 2.5 minutes on each and every record Sedgwick County has identified is that some of the individuals who first applied to register to vote at the DMV will have later submitted a different voter registration application, and some may be incomplete for additional reasons that would not remove them from incomplete status. She attests that her staff must "manually research each record" in order to make these determinations. The Court has reviewed the ELVIS records submitted by the Secretary as exhibits during the preliminary injunction hearing. There were several that involved multiple applications, which are part of the electronic record. The electronic record contains notations about any problems with the applications. County elections office workers will be required to open each record, and then scan the record to confirm that there is no additional infirmity that would prohibit registration for federal elections. Even assuming that this will take 2.5 minutes on each and every voter record, it is possible for Sedgwick County's five employees to accomplish this task, as well as generate a batch of identical notices, well before the August primary election. Moreover, the Court cannot find that the $3590 required to send out notices to those individuals who will become registered for federal elections is so burdensome as to be irreparable. After all, the procedure employed to enforce the DPOC requirement was relatively burdensome—refusing to ask for or accept DPOC at the DMV, and then sending out three written notices and one attempted phone call to every motor voter applicant on the suspense list, that is, every person who attempted to register to vote at the time they applied to renew their driver's license.

As to prospective enforcement efforts, the Court likewise does not find that Secretary Kobach's evidence demonstrates irreparable harm. Giving credence to the new policy changes announced in Secretary Kobach's Notice filed after the Court's Order, he has instituted changes

to mitigate the lack of interagency cooperation with the DMV cited by the Court in its Order.  At the time of the preliminary injunction hearing, the State of Kansas admittedly did not ask for nor accept DPOC from driver's license renewal applicants at the DMV.  If, as Secretary Kobach states in the "Notice of Changes in Interagency Policy Regarding Verification of Documentary Proof of Citizenship," the DMV now actually accepts DPOC from those citizens who try to produce it for both initial and renewal applications, it will help mitigate the very confusing status quo process for complying with the DPOC law at the DMV and potentially reduce the number of citizens that must be identified, have their designations changed, and be sent notices after they unsuccessfully attempt to register at the DMV.

Secretary Kobach again cites voter confusion as an irreparable harm to the State.  But as the Court explained in its preliminary injunction Order, the DPOC law as currently enforced is extremely confusing.  As the Court noted, there is no evidence in the record of any efforts made by the State to educate and inform citizens of their duties and options for complying with the DPOC law when they complete motor voter registration.  The record conclusively showed at the time of the hearing that the DMV and Secretary of State did not coordinate enforcing the DPOC requirements at the time of application, at least with regard to renewal applications.  In fact, the evidence showed that as a matter of policy, all renewal applicants were automatically placed on the suspense list because the DMV did not request DPOC from those applicants at the time of application. All renewal applicants were therefore required to separately submit DPOC to the counties after receiving notices that their applications were held in suspense.  The only notice given to applicants about their responsibilities under the DPOC law at the time of motor voter application was allegedly on a receipt—another item that was never made part of the record. Now, in the aftermath of this Court's preliminary injunction decision, the State has apparently

changed its policy again, and once again there is no evidence in the record about the State's efforts to advertise and educate its citizens of their rights and responsibilities under the law.

The record also showed that after an applicant was placed on the suspense list, the State's attempts to provide Plaintiffs with notice were inconsistent and ineffective.  All of the individual Plaintiffs left the DMV believing they had registered to vote, but found out later they had not. Two Plaintiffs tried to vote in the 2014 election and did not have their ballots counted.  Some Plaintiffs were surprised to learn from third parties that they were on the suspense list.  In some cases, two years passed between notices mailed to Plaintiffs on the suspense list.  One day after the Court issued its Order documenting these many problems, Secretary Kobach filed his Notice in this case setting forth changes that attempt to address lack of coordination between the Secretary of State's office, county election officials, and the DMV.  But the process is already terribly confusing for average citizens who simply wish to apply to register to vote when they apply for a driver's license.  While the preliminary injunction will require another round of noticing that has the potential to confuse voters, the Court is confident that the Secretary will be able to fashion a conspicuous, easily understood notice that will apprise voters of the status of their registrations and their right to vote in federal elections in 2016.

Secretary Kobach suggests that a stay pending appeal may result in a decision within days of the November general election—a timeframe that he finds acceptable.  If the Secretary claims to be unable to comply with the Court's Order without undue hardship before the August primary, it is difficult to understand how the State could comply in a matter of days or hours before the November general election.  Importantly, based on the evidence and arguments advanced in the motion to stay, the Court is convinced that a stay pending appeal would not ultimately allow the State adequate time to comply with the Court's preliminary injunction if it is

upheld on appeal.  Given the administrative issues identified in the motion to stay, the Court will extend the temporary stay for a short period of time to allow Secretary Kobach to submit a motion to stay with the Tenth Circuit, or comply with the order.  This will allow Secretary Kobach a full month to comply with the Order well before the August primary, further mitigating the administrative harm claimed by the State if a stay pending appeal is not issued.

**B.      Balance of Harms to the Opposing Party**

Balanced against the administrative burden to the State in implementing the preliminary injunction is the harm to Plaintiffs and those similarly situated who have been unable to register to vote in federal elections because of the DPOC law.  The Court has already determined that Plaintiffs would suffer irreparable injury if they are denied the right to register and thus vote in federal elections scheduled for August and November 2016.  The Court would be unable to remedy this injury after a final determination on the merits.  The dispositive motions deadline is in July 2016, and the trial date is set for approximately one year from now, in May 2017.   There is no chance that this case will be decided on the merits before the August 2016 primary, and it is doubtful that a decision would be reached before the general election.  Therefore, without injunctive relief, motor voter applicants who are citizens and otherwise qualified, and who have been placed in incomplete or cancelled status in ELVIS, will not be able to vote in the upcoming federal elections. Those votes cannot be recast in the event that the Plaintiffs later prevail on the merits. The Court also noted evidence that the DPOC law has caused a chilling effect, dissuading those who try and fail at navigating the unduly confusing and complex motor voter registration process from reapplying in the future.

Secretary Kobach urges that neither the named Plaintiffs, nor other applicants held in suspense or cancelled due to the DPOC law will suffer irreparable harm if a stay is issued.  First,

he argues that all but one of the named Plaintiffs possesses DPOC, but they chose not to cure their deficient applications.  He argues that Ms. Bucci could avail herself of the option to provide "an affidavit explaining certain information that would likely establish she is a citizen and explaining why she does not currently possess documentary proof of citizenship," and that she indicated her willingness to do so during her deposition when advised of the option.  The Court previously addressed these contentions in its preliminary injunction Order.  The Court found strong evidence that several Plaintiffs were precluded from voting in 2014, and would be precluded again from voting in 2016.  Several of these Plaintiffs' applications have been cancelled, which means they must start the registration process anew, and they have lost the ability to simultaneously apply for a driver's license and voter registration.  Moreover, part of the irreparable harm cited by this Court was the administrative burden on the Plaintiffs to both obtaining a birth certificate or other form of DPOC, and complying with subsection (m) of the DPOC law.[17]  Ms. Bucci's deposition testimony in fact illustrates that citizens are not aware of this option, nor what is required of them to meet the DPOC law under this alternative provision—it took Ms. Bucci filing a lawsuit and being educated by the Secretary of State during a deposition for her to understand the process and what she could do to meet the DPOC law in the absence of a birth certificate.

Secretary Kobach also argues that very few Kansas citizens are actually prevented from voting because they lack DPOC, citing a survey of 500 Kansans that was not before the Court when it decided the preliminary injunction motion,[18] suggesting that those who are not registered do not intend to vote.  Secretary Kobach misrepresents the record when he states that this study

---

[17]K.S.A. § 25-2309(m) (providing alternative procedure for citizens who lack one of the thirteen forms of DPOC identified in subsection (l)).

[18]*See* Doc. 128-1.

was "[c]onducted prior to this Court's decision and filed with this Court as part of Defendant's expert report."[19]  This piece of evidence was not submitted as part of the preliminary injunction record and was not before the Court when it rendered its decision.  It was filed as an attachment to a Notice of Service—a discovery notice that would not and does not alert the Court to matters to be considered as part of a pending motion—filed in this case twenty-five minutes before the Court's Order was filed.  To make matters worse, he repeatedly provides the incorrect citation to this expert report throughout the motion to stay, apparently referring to the docket number for the same filing in the *Keener* matter.  Plaintiffs were provided no opportunity to challenge or respond to this evidence and it was not relied upon by Secretary Kobach at the hearing nor in his response brief.

Even assuming that this survey evidence was properly submitted, the Court cannot find that it controverts the fact that over 18,000 Kansans' motor voter applications have been denied for failure to provide DPOC.  These are all applicants who affirmatively represented during the driver's license application process that they wished to register to vote, and that they were United States citizens.  The study cited by Secretary Kobach indicates that 83% of those surveyed were already registered to vote.  Of those 13% who were not registered, the number one reason provided as to why they are not registered is "Hasn't Registered."  Another 22% stated that they "Do Not Know."  The survey results tell the Court nothing about the individuals on the suspense and cancellation lists, or about those who may be completely unaware that they are not registered to vote, as was the case with many of the named Plaintiffs in this case.  There are no survey questions or results that controvert the clear statistics revealed by the State's ELVIS database that thousands of individuals in Kansas have applied to register to vote when applying for or

---

[19]Doc. 137-1 at 8.

renewing a driver's license, and would be registered but for the DPOC requirement and its

flawed execution.  There is absolutely no evidence that this universe of applicants do not intend

to vote in the 2016 election.

Secretary Kobach holds up the case of *Kobach v. EAC*, as a precedent for issuing a stay

"at a similar point on the election calendar."  Secretary Kobach represents in his motion:

> The timetable was remarkably similar to that in the instant case. A stay was
> requested by the federal defendants pending appeal to the Tenth Circuit. That stay
> was granted by the Tenth Circuit on May 19, 2014.  The case was placed on an
> expedited briefing schedule and orally argued before the Tenth Circuit on that
> summer.  The Tenth Circuit rendered its opinion on November 7, 2014. In like
> manner, Defendant would request expedited briefing in the instant case as well;
> and there is every likelihood that the Tenth Circuit could *again* render an opinion
> before November 8—the date of the 2016 general election.[20]

First, Secretary Kobach disingenuously insinuates in this passage that the *Kobach* decision was

rendered before the 2014 general election.  He omits the date of the 2014 general election, which

was November 4, 2014.  The Tenth Circuit's decision in *Kobach* was *not* issued prior to Election

Day.

Second, Secretary Kobach takes a different position in this case than he took in the 2014

*Kobach* case: in the 2014 case, it was the EAC and its codefendants that sought a stay of the

district court's judgment.[21]  Secretary Kobach argued against a stay, based in part on the

administrative burden of implementing a bifurcated registration system.[22]  Although the district

court denied the stay in the first instance, the Tenth Circuit panel summarily granted the

defendants' request for a stay pending appeal and for expedited review.[23]  Thus, the Tenth

Circuit's stay in that case ensured that federal form registrants would not be disenfranchised in

---

[20]Doc. 137-1 at 10 (emphasis added).

[21]*See Kobach v. EAC*, Case No. 13-4095-EFM-TJJ, Doc. 186 at 19,

[22]*Id.*, Doc. 186 at 19 (Pl. Opp. To Mtn. to Stay).

[23]Ex. 137-8.

the 2014 election cycle because it put on hold the district court's judgment directing the EAC to immediately amend the state-specific instructions on the federal form until the appeal could be decided.  Secretary Kobach is asking for the opposite result here—he is asking for a stay that may disenfranchise qualified citizens who have attempted to register through the motor voter process.  Therefore, the Court does not find that the 2014 *Kobach* case supports this request for a stay pending appeal, nor does it present a timeline that would address the irreparable harm to Plaintiffs that will occur in the absence of an injunction.  As noted in the Court's Order, early voting for the August primary begins in less than 2 months, on July 13.  Even if the appeal was decided in November before the general election, the stay would still irreparably harm those applicants who seek to vote in the August primary.

In sum, while the Court acknowledges the administrative challenges involved in complying with the Court's preliminary injunction Order, it cannot find that they outweigh the irreparable harm to Plaintiffs that will certainly occur if the preliminary injunction is stayed pending appeal.

### C.    Public Interest

As previously decided, the Court finds that the public interest is best served by allowing qualified voters to register to vote, and to have their votes counted.  Given the record submitted to the Court that during the ten year period prior to the January 1, 2013 effective date of the DPOC law, only thirty noncitizens registered to vote and three noncitizens actually cast votes, the Court cannot find that the public interest in enforcing the State's citizenship requirement is strong enough to counterbalance the public's strong interest in ensuring that thousands of qualified voters can successfully exercise their right to register to vote and cast a ballot in federal elections.

D.      **Likelihood of Success on the Merits**

The relaxed standard for considering Secretary Kobach's likelihood of success on the merits only applies if the other three harm factors "tip decidedly" in his favor.  As discussed, the Court has found that Secretary Kobach has not made this showing.  Given that the more relaxed standard does not apply, the Court need not separately address each of the arguments identified by Secretary Kobach in his motion challenging the likelihood of success on the merits of Plaintiffs' NVRA claim.  For the same reasons already considered and discussed in the Court's Order granting the preliminary injunction, the Court is not convinced that Secretary Kobach has demonstrated a strong likelihood of success on appeal.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Kris Kobach's Motion for a Stay Pending Appeal Under Federal Rule of Appellate Procedure 8(a)(1)(A) (Doc. 137) is **denied**.  The temporary stay granted in the Court's May 17, 2016 Memorandum and Order is extended for two additional weeks until June 14, 2016.

**IT IS SO ORDERED.**

Dated: May 25, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE