```
 1                UNITED STATES DISTRICT COURT.
                  FOR THE DISTRICT OF KANSAS
 2

    CODY KEENER, et al.,
 3
        Plaintiffs,
 4
    v.                              Docket No. 15-9300
 5

    KRIS W. KOBACH, et al.,
 6
        Defendants.
 7  _____    _____

 8  STEVEN WAYNE FISH, et al.,
                                    Docket No. 16-2105-JAR
 9      Plaintiffs,
                                    Kansas City, Kansas
10  v.                              Date:  06/14/16

11  KRIS KOBACH, et al.,

12      Defendants.
    ...........................................................
13

14                      TRANSCRIPT OF
                  MOTION TO CERTIFY CLASS
15          BEFORE THE HONORABLE JULIE A. ROBINSON
                  UNITED STATES DISTRICT JUDGE
16
    APPEARANCES:
17  For Case No. 15-9300 Plaintiffs:

18  Mr. Mark P. Johnson          Mr. Paul T. Davis
    Mr. Curtis E. Woods          Mr. William R. Lawrence, IV
19  Dentons US LLP               Fagan Emert & Davis, LLC
    4520 Main Street             730 New Hampshire
20  Suite 1100                   Suite 210
    Kansas City, MO 64111        Lawrence, KS 66044
21
    For Case No. 16-2105 Plaintiffs:
22
    Ms. Rebecca Waldman
23  Dechert LLP
    1095 Avenue of the Americas
24  New York, NY 10036-6797

25  (Appearances continued on next page)
```

```
 1    APPEARANCES:

 2    (Continued)

 3    For Case No. 16-2105 Plaintiffs:

 4
      Mr. Dale E. Ho                 Mr. Stephen D. Bonney
 5    Mr. R. Orion Danjuma           ACLU Foundation of Kansas
      Ms. Sophia Lin Lakin           6701 West 64th Street
 6    American Civil Liberties       Suite 210
      Union Foundation - NY          Overland Park, KS 66202
 7    125 Broad Street
      New York, NY 10004
 8

 9    For the Defendant Kris Kobach:

10    Mr. Kris Kobach
      Mr. Garrett R. Roe
11    Kansas Secretary of State
      120 Southwest 10th Avenue
12    Memorial Hall, First Floor
      Topeka, KS 66612
13
      For the Defendant Jamie Shew:
14
      Mr. John T. Bullock
15    Mr. Bradley R. Finkeldei
      Stevens & Brand, LLP
16    900 Massachusetts
      Suite 500
17    Lawrence, KS 66044

18    For the Defendant Nick Jordan:

19    Mr. J. Brian Cox               Ms. M.J. Willoughby
      Kansas Department of Revenue   Office of Attorney General
20    915 Southwest Harrison         120 Southwest 10th Avenue
      Second Floor                   Second Floor
21    Suite 230                      Topeka, KS 66612
      Topeka, KS 66612
22

23
      Court Reporter:      Kelli Stewart, RPR, CRR, RMR
24                         Official Court Reporter
                           259 U.S. Courthouse
25                         500 State Avenue
                           Kansas City, Kansas 66101
```

1                        I N D E X

2

3    ARGUMENT:

4    (In Case No. 15-9300)                          PAGE:

5    By Mr. Woods.................................    6
     By Mr. Kobach...............................   22
6    By Mr. Woods................................   46
     By Mr. Kobach...............................   50

7

8    (In Case No. 16-2105)

9
     By Ms. Waldman..............................   52
10   By Mr. Kobach...............................   65
     By Mr. Cox..................................   85
11   By Ms. Waldman..............................  106

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                (1:30 p.m., proceedings commenced).

 2           THE COURT:  All right.  We're here in two

 3   cases that, of course, have been consolidated for

 4   purposes of discovery and for purposes of this motion

 5   for class certification.  So the cases that we're here

 6   on this afternoon are Fish, et al., versus Kansas

 7   Secretary of State Kris Kobach and Kansas Secretary of

 8   State-- Secretary of Revenue Nick Jordan.  That case

 9   number is 16-2105.  And then Cromwell, et al., versus

10   Kobach, et al., in 15-9300.

11           So starting with the Fish case, your

12   appearances, please.

13           MS. WALDMAN:  Your Honor, Rebecca Waldman on

14   behalf of the plaintiffs.

15           MR. HO:  Good afternoon, Your Honor.  Dale

16   Ho on behalf of plaintiffs.

17           MR. DANJUMA:  Good afternoon.  Orion Danjuma

18   on behalf of the Fish plaintiffs.

19           MR. BONNEY:  Good afternoon, Your Honor.

20   Steven Bonney on behalf of the Fish plaintiffs.

21           MS. LAKIN:  Good afternoon, Your Honor.

22   Sophia Lakin on behalf of the Fish plaintiffs.

23           THE COURT:  All right.  And-- and then who's

24   appearing for the plaintiffs in the Cromwell case?

25           MR. JOHNSON:  May it please the Court.  Mark
```

1    Johnson of the Dentons law firm.

2            MR. WOODS:  Your Honor, good morning-- or

3    good afternoon.  Curtis Woods of the Dentons law firm.

4            MR. LAWRENCE:  Good afternoon, Your Honor.

5    Will Lawrence, Fagan, Emert & Davis.

6            MR. DAVIS:  May it please the Court.  Paul

7    Davis of Fagan, Emert & Davis.

8            THE COURT:  All right.  And then appearing

9    for the defendants in both of these cases.

10           MR. KOBACH:  Your Honor, on behalf of the

11   Secretary of State defendants, Kris Kobach and Garrett

12   Roe.

13           MR. COX:  Good afternoon, Your Honor.  If it

14   please the Court.  In the Fish case for Secretary of

15   Revenue Nick Jordan, Brian Cox and M.J. Willoughby.

16           MR. BULLOCK:  Your Honor, in the Cromwell

17   case for Defendant Jamie Shew, John Bullock and Brad

18   Finkeldei.

19           THE COURT:  All right.  So we are here this

20   afternoon on the plaintiffs' motions for class

21   certification.  And my understanding is that this is

22   oral argument.  There are declarations and perhaps other

23   things on the record that you'll either want to move

24   into admission for purposes of today's hearing or at

25   least point me to to make a part of today's record.

1              And so I thought we would take these up

2      separately because there are some differences obviously

3      between these two cases.  So we can start with the

4      Cromwell case.  And I'll hear from plaintiffs and then

5      defendants and then we'll move on to the Fish case.  Mr.

6      Woods.

7              And I-- one of the things I want to hear

8      from you about at the outset-- well, a couple of things

9      I will want to hone in on during the argument.  And one

10     of those is something I raised with all of you yesterday

11     on the phone; and that is, do we really need to have

12     class certification, given the nature and scope of the

13     relief that the plaintiffs seek in each of these cases.

14             But before you get to that even, what I want

15     to hear from the plaintiffs in each of these cases, and

16     starting in the Cromwell case, is I think it would be

17     helpful if you would walk me through the-- the

18     description of the class.  I have some real basic

19     questions I think about the scope of the class in

20     Cromwell and, in particular, the differences between the

21     class as described in Cromwell and the two classes as

22     described in Fish and how much overlap there is, is it

23     total overlap.  Those are some of the initial things I'd

24     like you to address, Mr. Woods.

25             MR. WOODS:  Okay.  Before I-- before I start

1    my remarks that I had prepared for you this afternoon,

2    let me-- let me address the second question with respect

3    to what the class is that we're seeking to have

4    certified by Your Honor.

5              As stated in the-- in the third amended

6    complaint, the class consists of United States citizens

7    and Kansas residents duly-qualified, but for the

8    operation of K.S.A. 25-2309(l), qualified as electors

9    for local, state, and federal elections in Kansas, and

10   who have been placed in suspense for failure to submit

11   proof of citizenship as required by K.S.A. 25-2309(l)

12   since January 1, 2013, and are subject to removal or

13   have been removed from the Kansas statewide voter

14   registration database pursuant to K.A.R. 7-23-15.

15             I cannot really address the difference

16   between our class and the class in Fish, other than the

17   fact that our class addresses local, state, and federal

18   elections.  And I believe, unless I'm corrected, that

19   the Fish class, which concerns more the National Voter

20   Registration Act, is limited to federal elections.

21             In addressing your first question why--

22             THE COURT:  Well, before you move on.

23             MR. WOODS:  Sure.

24             THE COURT:  So since the-- after the motion

25   for class certification was filed and Mr. Kobach's

1   response was filed, and that was on the basis of the

2   second amended complaint, you've now filed a third

3   amended complaint.  I think it was filed on the same day

4   as the reply was filed.  And your motion refers only to

5   plaintiff, Mr. Bednasek, as the representative of

6   plaintiff.  Is he the only one as to all of the claims

7   that are asserted in the third amended complaint?

8            MR. WOODS:  No, Your Honor.  As I'll

9   explain, we have three--

10            THE COURT:  Okay.  All right.

11            MR. WOODS:  -- class representatives.

12            THE COURT:  Why don't you go ahead and

13   I'll-- I'll try to listen before I ask more questions.

14            MR. WOODS:  Ask any time you want, Your

15   Honor.

16            Your Honor, the Kansas Constitution in

17   Article 5, Section 1, provides that, "Every citizen of

18   the United States who has attained the age of 18 years

19   and who resides in the voting area in which he or she

20   seeks to vote shall be deemed a qualified voter."  It's

21   a fundamental right under both the Kansas and the United

22   States Constitutions that a duly-qualified resident of

23   Kansas has the right to vote.

24            Congress enacted the National Voter

25   Registration Act to ensure this fundamental right to

1    vote.  The Kansas Legislature, however, enacted the Safe

2    and Fair Election Act and therein placed a condition on

3    that right, on that fundamental right, that violates

4    both the Fourteenth Amendment and the National Voter

5    Registration Act.

6              K.S.A. 25-2309(l) of the Safe and Fair

7    Election Act of Kansas, which I'll refer to as the SAFE

8    Act, requires that at the time of registration to vote,

9    that the registrant provide proof of United States

10   citizenship.  And the statute delineates I think 13

11   different documents that can be provided, including a

12   birth certificate, a certified birth certificate.  It

13   also provides other things.

14             But pursuant to the SAFE Act, the Secretary

15   of State issued regulations, specifically K.A.R. 7-23-17

16   that provided that if a registrant at the time of

17   registration did not provide proof of citizenship, that

18   that registrant's registration would be placed in

19   suspense and the registrant would be given 90 days to

20   provide that proof of citizenship.

21             The regulation also provides that if that

22   proof of citizenship is not provided within that 90

23   days, that the-- that the persons on the suspense list,

24   after 90 days, the application is cancelled and the

25   registrant is removed from the voter database in Kansas.

1                    The class that we seek the Court to certify

2     is all of those Kansas residents who have faced this

3     problem; of registering, not providing the required

4     proof of citizenship, being placed on the suspense list

5     as a result, and after 90 days being-- that application,

6     that registration being cancelled and their names

7     removed from the Kansas voter list.  It also includes

8     people who have registered and not provided proof of

9     citizenship who are subject to removal, but perhaps the

10    90 days has not run or for some reason they haven't been

11    removed as of yet.

12                    Now, the second--

13                    THE COURT:  Wouldn't it be more accurate in

14    terms of defining the class to say applicants, not

15    registrants?

16                    MR. WOODS:  Applicants, okay.

17                    THE COURT:  All right.

18                    MR. WOODS:  You're correct, Your Honor.

19    They're technically applicants because they haven't been

20    registered.

21                    The Secretary does not contest the

22    numerosity of this class.  At various times it's

23    numbered as many as 36,000.  And at any given time, it's

24    in the thousands.  So the numerosity requirement is not

25    even at issue here for class action certification.

1          What the Secretary does attack is the three

2     representatives that we've placed as our class

3     representatives for the class.  The first one is Cody

4     Keener.  There's no question that Mr. Keener is a

5     resident of the state of Kansas.  He's a student at the

6     University of Kansas.  And on December 22nd, 2014, he

7     went to the Douglas County DMV office to renew his

8     driver's license.  He was electronically registered as a

9     voter at that time, but he did not provide proof of

10     citizenship and so, therefore, he-- he was placed on the

11     suspense list on December 29, 2014, seven days later.

12          And just like all class members that we ask

13     the Court to certify, he did not provide the requisite

14     proof of citizenship.  He was then placed on the

15     suspense list.  And after 90 days, having not provided

16     the proof of citizenship, his application was cancelled

17     and his name was removed from the voter database of

18     Kansas, precluding him from voting in the state of

19     Kansas, serving on a jury in this court, and other

20     disqualifications.

21          The second representative is Alder Cromwell.

22     There is no question that he is a resident of the state

23     of Kansas.  He happens to be a student at the University

24     of Oregon at the time being.  But on March 27, 2015, he

25     completed his Kansas Voter Registration Form.  He did

1   not provide proof of citizenship and so, therefore, just

2   like Mr. Keener and all the putative members of the

3   class, he was placed on the suspense list about a month

4   later.  And after 90 days, having not provided proof of

5   citizenship, his application was cancelled and his name

6   was removed from the Kansas database.

7           The Secretary in its reply to our motion to

8   certify makes no objection to either Mr. Keener or Mr.

9   Cromwell, other than to argue, as they do in their

10  motion to dismiss, that they lack standing because the

11  Secretary himself, his office, in an effort to avoid

12  this lawsuit and a determination of the validity under

13  the Constitution and the NVRA of the SAFE Act provision

14  and the Kansas regulation, the Secretary's office

15  voluntarily located Mr. Keener's and Mr. Cromwell's

16  birth certificates and, unilaterally, without notice to

17  either one of them, put them back on the voter rolls.

18          The Secretary contends in its motion to

19  dismiss in-- with respect to this motion that Mr. Keener

20  and Mr. Cromwell lack standing as a result of the fact

21  that they've been placed on the voter rolls.  But as the

22  Court knows, standing to bring a lawsuit under Article

23  III is determined at the time of the filing of the

24  lawsuit.  And at the time that this lawsuit was filed,

25  both Mr. Keener and Mr. Cromwell's names had been

1    removed from the Kansas voter database and their

2    applications to register to vote in Kansas had been

3    cancelled.

4            Both Keener and Cromwell have facts common

5    to everybody in the class.  And their claims to seek the

6    declaration of invalidity of the statute and its-- and

7    the statutory provision and the regulations under it,

8    under the Fourteenth Amendment and the NVRA, are shared

9    by everybody in the class since everybody in the class

10   that we propose sought to register, filled out the

11   necessary forms, failed to provide proof of citizenship,

12   were placed in suspense on the voter registration

13   database, and either were removed from the voter

14   database and their applications cancelled after 90 days

15   for failure to provide proof of citizenship or are

16   subject to removal for that reason.

17           THE COURT:  Just one point of clarification.

18   On Mr. Cromwell and Mr. Keener, they both were

19   essentially immediately placed in suspense status by

20   operation of this law.  How long was it before they were

21   cancelled?

22           MR. WOODS:  Well, under the-- we don't have

23   the exact date.  But under the statute, if they didn't

24   provide proof of citizenship within 90 days of their--

25   of being placed on the suspense list, they were-- the

1    applications were automatically cancelled.

2                THE COURT:  Right.

3                MR. WOODS:  And their names removed.

4                THE COURT:  Okay.  You can't-- I mean, you

5    don't know whether it was actually within 90 days or it

6    was longer or shorter?

7                MR. WOODS:  One moment, Your Honor.

8                THE COURT:  All right.  I ask it because

9    apparently the cancellation piece of this wasn't in

10   effect or hadn't been passed at the time that they were

11   first suspended.

12               MR. WOODS:  Right.  And because the law

13   didn't go into effect and they applied before, they

14   actually were not removed from the voter list, but

15   they're subject to removal.

16               THE COURT:  So they-- they are still in

17   suspense, they're not cancelled, is that-- well, they

18   were before the latest action?

19               MR. WOODS:  Well, no.  With respect to

20   Keener and Cromwell, they are now back on-- they're on

21   the rolls because the Secretary of State's Office--

22               THE COURT:  Right.

23               MR. WOODS:  -- on its own--

24               THE COURT:  I understand that.

25               MR. WOODS:  -- obtained their birth

1    certificates.

2            THE COURT:  Before that, were they in

3    cancelled status or suspense status?

4            MR. WOODS:  Well, under the law, they

5    would've been in suspense status.

6            THE COURT:  Okay.  They hadn't actually been

7    moved over to cancellation?

8            MR. WOODS:  Right.

9            THE COURT:  Okay.  I understand.

10           MR. WOODS:  The third class representative

11   is Parker Bednasek, who is a student at KU.  His parents

12   live in the state of Texas and he was-- until

13   approximately December 3, 2015, he was registered to

14   vote in Tarrant County, Texas, where his parents live.

15           On that date, December 3, 2015, he wrote a

16   letter to the election board cancelling his voter

17   registration in Texas.  Thereafter, on approximately

18   December 4th, 2015, he completed a Kansas Voter

19   Registration Form in person but did not provide proof of

20   citizenship, just like the other class members, just

21   like Mr. Keener and Mr. Cromwell.

22           He was placed on the suspense list.  And his

23   application was cancelled and then he was removed from

24   the voter registration database thereafter under the

25   operation of the Kansas regulation.

1          THE COURT:  And he has not been placed back

2    on the voter roll through action of the Secretary of

3    State--

4          MR. WOODS:  That's correct.

5          THE COURT:  -- as the other two plaintiffs?

6          MR. WOODS:  That's correct.

7          THE COURT:  All right.

8          MR. WOODS:  The Secretary asserts that Mr.

9    Parker-- or that Mr. Bednasek lacks standing because

10   he's not a resident of Kansas.  However, under Kansas

11   statute 25-407, residence is defined to mean, "The place

12   adopted by a person as such person's place of habitation

13   and to which whenever such person is absent such person

14   has the intention of returning."

15          In his declaration supporting this motion,

16   which we move into evidence, as well as in his

17   deposition taken by the Secretary's office, he

18   repeatedly stated that his residence is in Lawrence,

19   Kansas, and that he's a resident of the state of Kansas

20   for purposes of voting.  The deposition cites are as to

21   his deposition at Pages 11, 22, and 52.  The Secretary--

22          THE COURT:  And by the way, and this will

23   come up with respect to other depositions, but I may

24   have excerpts, but do I have the entire depositions?

25          MR. WOODS:  Probably not.

1           THE COURT:  No?  Okay.

2           MR. WOODS:  If you'd like it, we'll provide

3    it.

4           THE COURT:  I think with respect to all of

5    the deponents, I'd like to have the entire-- that are

6    relied upon, I'd like to have all of the depositions in

7    both cases.

8           MR. WOODS:  Okay.  We will do that, Your

9    Honor.

10          The Secretary attempts to refute Mr.

11   Bednasek's sworn testimony that he's a-- he intends and

12   is a resident of Kansas by pointing to certain facts;

13   that his driver's license was issued in the state of

14   Texas, that the registration for the automobile he

15   drives is in the state of Texas, the auto insurance for

16   that car was issued in Texas, and that he pays

17   non-resident tuition at the University of Kansas.

18          But each of these are irrelevant and not

19   disqualifying for him to be a class representative or

20   defeat the notion and the fact that he is a resident of

21   the state of Kansas for purposes of voting.

22          By the Secretary's own admission, in his

23   office's voter information document entitled "Kansas

24   Election Standards," published by the Secretary of

25   State's Office, it discusses the rule for determining

1   residence of a voter in states that is-- that it is,

2   quote-- the keyword is intent.  "The registrant is

3   allowed by law to determine his/her place of residence

4   according to their intent.  And it is difficult for

5   another person to disprove it."  It goes on to say, "A

6   registrant's address is determined by the registrant."

7   Mr. Bednasek did this on the Kansas form, and he

8   reiterated it in his deposition and his declaration that

9   his chosen residence is Kansas.

10           The document also-- the Kansas Election

11   Standards document published by the Secretary of State's

12   Office also states, "For voter registration purposes,

13   residency is not related or affected by vehicle

14   registration, tax payment, utility hook-ups, or census

15   enumeration."  So the Secretary himself, his office,

16   acknowledges that the applicant determines his residence

17   for voting purposes.  And such things as where his or

18   her car is registered is of no moment with respect to

19   voter registration.

20           And with respect to the fact that Mr.

21   Bednasek carries a Texas driver's license,

22   interestingly, the SAFE Act itself provides that an

23   out-of-state driver's license is sufficient

24   identification for a Kansas registered voter to vote at

25   the polling place.  That's Section 25-2098(h)(1)(A).

1           If an out-of-state driver's license was

2      disqualifying, the SAFE Act would not provide that you

3      could use it to identify yourself when voting at a

4      Kansas polling location.

5           And with respect to the fact that Mr.

6      Bednasek pays non-residence tuition at the University of

7      Kansas, that too is irrelevant and non-disqualifying,

8      because the requirements under Kansas law for a student

9      to pay in-state tuition as opposed to out-of-state

10     tuition requires factors that have no bearing on voter

11     registration, including the fact that it requires the

12     student to have lived in Kansas for 365 days prior to

13     his admission.  No 365-day requirement applies in Kansas

14     to the right to vote.

15           So for these reasons, Your Honor, the three

16     class representatives that we submit to you are adequate

17     and represent the class.  They share with the members of

18     the class the same disqualifications that the class

19     faces by the operation of the SAFE Act provision

20     requiring proof of United States citizenship, suspense--

21     being placed on a suspense list for failure to do so and

22     cancellation of their registration.

23           THE COURT:  So the scope of the Cromwell

24     class is all those affected otherwise eligible-- Kansas

25     citizens otherwise eligible affected by the DPOC,

1    D-P-O-C requirement, whether it be motor-voter, mail, or

2    in person?

3                MR. WOODS:  Well, it's required by the SAFE

4    Act, 25-2309(l).

5                THE COURT:  Okay.

6                MR. WOODS:  So that's what requires it.  The

7    NVRA does not require it.

8                THE COURT:  Okay.  Irrespective of how they

9    attempt to register, those affected by the operation of

10   the SAFE Act?

11               MR. WOODS:  Exactly.

12               THE COURT:  Okay.

13               MR. WOODS:  The requirement of the proof of

14   citizenship, being placed in suspense for the failure to

15   provide, and ultimate cancellation/removal if they don't

16   provide it within 90 days.

17               THE COURT:  All right.  And then with

18   respect to these three plaintiffs-- Mr. Bednasek, your

19   position is that he is otherwise eligible, that he is a

20   Kansas resident, that he is eligible to register in this

21   state.  With respect to the other two defendants,

22   Cromwell and Keener, your position is that there is

23   standing-- there was standing at the time this lawsuit

24   was filed.

25               MR. WOODS:  That's correct, Your Honor.

```
 1              THE COURT:  They were in suspense status?

 2              MR. WOODS:  That's correct, Your Honor.  In

 3   their motion to dismiss, they-- they have moved their

 4   standing argument to a mootness argument, which is more

 5   proper for a motion to dismiss.  But the fact that the

 6   Secretary, by his voluntary act, located the birth

 7   certificates in Kansas records and allowed them to be

 8   registered as voters comes within the-- the exception to

 9   any mootness argument.  But that's-- that's a matter for

10   the motion to dismiss.

11              THE COURT:  All right.  Let's see.  I think

12   I have a few other questions.  The NVRA notice

13   requirements, my understanding is that none of-- none of

14   these three plaintiffs has provided notice under the

15   NVRA; is that correct?

16              MR. WOODS:  Yes, Your Honor, because it

17   would've been futile because of the Secretary's stated

18   position in various quarters that anybody who doesn't

19   provide a-- a proof of citizenship was not going to be

20   enrolled in the Kansas voter registration database.

21              THE COURT:  All right.  And then one other

22   thing I'd like you to address, and that is the

23   necessity, the need for class certification at all given

24   the relief that you seek.

25              MR. WOODS:  Well, Your Honor, it's-- it's--
```

1   it may be-- it may be adequate enough for these named

2   plaintiffs to act as sole plaintiffs seeking a

3   declaratory judgment and injunction.  But given the fact

4   that there are thousands of people in the same position

5   they are, who deserve ultimately notice of-- of the

6   remedy that's being sought and any remedy that this

7   Court gives, I think it's a-- it's a more adequate, more

8   sufficient way to go about it to adjudicate the validity

9   of the SAFE Act provision and the Kansas regulation

10  provision, to do it by a class so that all class

11  members-- there's no question that everyone affected by

12  this has the relief of this-- that this Court may award.

13          THE COURT:  All right.  All right.  I don't

14  think I have any other questions at this time.  Thank

15  you.

16          MR. WOODS:  Thank you, Your Honor.

17          THE COURT:  All right.  Mr. Kobach.

18          MR. KOBACH:  Thank you, Your Honor.  May it

19  please the Court.  We are somewhat surprised by the

20  arguments made by counsel for the Cromwell/Keener/Fish--

21  Cromwell/Keener plaintiffs this morning.  Several

22  comments that they have made need to be corrected right

23  off the start.

24          The first thing opposing counsel said was

25  that the Kansas reg 7-23-15, to quote him, under that

1    reg the voter is removed from the voter database.  I

2    believe we've already discussed this perhaps at the

3    prior hearing and certainly throughout the briefings.

4    No one is removed from the database, they are simply--

5    it's a database management tool.  Their status goes from

6    suspense to cancelled.  And, of course, their status can

7    be changed back to suspense, or it could be changed to

8    active voter or inactive voter.  So no one is removed

9    from the database.  Just wanted to make sure that the

10   Court recognized that error on-- on the part of the

11   statement made by the counsel opposing.

12          Then we get to this new information that we

13   received this morning.  Opposing counsel says Plaintiff

14   Keener is now being proposed as a class representative.

15   That is not how this case has been pled up until today.

16   And I would direct you to Document 61, plaintiffs'

17   memorandum for class certification, filed, of course, by

18   the Cromwell/Keener plaintiffs.  That was filed on

19   January 25th, 2016.  On Page 8, the only plaintiff that

20   they talk about is Plaintiff Bednasek.  Last paragraph,

21   quoting, "As stated above, Plaintiff Bednasek has the

22   same interest and injury as the members of the putative

23   class."

24          Page 9, "The same legal theory applies to

25   Bednasek as it does to members of the putative class."

1    Further down at the bottom of Page 9, "The

2    representative plaintiff," singular, referring to

3    Bednasek.  Indeed, if you read this entire memorandum in

4    support of their motion for class certification, you

5    will find no references to Cromwell or Keener as class

6    representatives.  Accordingly, taking their pleadings at

7    face value, we, in our response, did not address whether

8    Keener or Cromwell would be class representatives.  And

9    I would-- I would note also that in their first amended

10   complaint--

11            THE COURT:  Can I-- can I get-- let me ask

12   you something just about the timing of this.  And I-- I

13   think you're right, the only plaintiff that was

14   mentioned in the papers was Bednasek.  But when did you

15   place Cromwell and Keener back on the voter rolls?

16            MR. KOBACH:  Okay.  Yeah, and that's exactly

17   where I was going next.  Before I lose this, let me just

18   mention to you, Page 2 of their first amended complaint,

19   Footnote 1, also talks about the addition of a plaintiff

20   to serve as a class representative, singular.  There as

21   well.

22            To your question.  Mr. Keener was fully

23   registered, meaning his proof of citizenship was

24   obtained by the Department of Vital Statistics and

25   certified to the Kansas Secretary of State's Office on

1    October 6th, 2015.  Contrary to the misstatement of

2    opposing counsel, he was never cancelled.  The-- his--

3    his registration was done as part of a batch of-- in the

4    case of people whose birth certificates are confirmed,

5    it's usually thousands of names that are sent over every

6    month to the Department of Vital Statistics.  His name

7    was among those thousands as a regular process.  And

8    it's good government, as we have said in our-- in our

9    pleadings, for one agency that possesses proof of

10   citizenship to share that with another agency, to share

11   the-- to relieve the voter applicant of any need to

12   provide that himself.

13           So he was fully registered - Keener was - on

14   October 6th, 2015, through the process of a birth

15   certificate showing birth in Kansas being certified to

16   the Secretary of State's Office.  The Kansas regulation

17   7-23-15 never applied to him, never resulted in him

18   being cancelled.

19           Cromwell.  You-- we also heard the statement

20   from opposing counsel that Cromwell was cancelled,

21   although you questioned him on that and he subsequently

22   said Cromwell was suspended.  The situation with Mr.

23   Cromwell, again, he was never cancelled.  Mr. Cromwell's

24   birth certificate was already in the possession of the

25   DMV.  His name was included in a batch of names that

1  were sent to the DMV in late September, 2015. And he

2  was fully registered on October 6th, 2015.

3          And I would note that we have informed the

4  Court as-- since this case began, there has been a-- a

5  change in policy-- or not a change but an addition. In

6  that previously the Secretary of State's Office had to

7  send over batches of names and ask DMV personnel to see

8  if you have records, birth certificates or other

9  citizenship records, for these names that we are sending

10 you. And some of the batches would be very large,

11 hundreds or thousands, some of the batches would be a

12 dozen or a smaller size.

13         Since then, we now have-- and this was in

14 one of the notices we provided to the Court recently,

15 there's now a policy where all of the 105 counties have

16 an Internet portal where the county election officers

17 can go in and look at the DMV database themselves and

18 see if a birth certificate or other proof of citizenship

19 is on record. So we are no longer sending batches of

20 names to the DMV and asking them to do the work for us.

21         Now each county, whenever they receive a

22 voter registration application from someone who hasn't

23 yet provided proof of citizenship, the counties are

24 instructed to go ahead and just check the DMV database

25 ourselves. So we're no longer doing the batch, which

 1    was how Mr. Cromwell's birth certificate was confirmed

 2    to be in possession of the DMV.

 3              THE COURT:  Okay.  So I assume what you're

 4    talking about is, so for-- well, so if somebody goes in,

 5    say, to renew a license and they have been registered in

 6    the past and you have their documentary proof of

 7    citizenship documents on file, I wasn't aware that it

 8    would be the DMV that would actually have those

 9    documents or would have record of those documents, but

10    in any event, there's a database in Kansas where the DMV

11    could check to see?

12              MR. KOBACH:  The DMV has its own database.

13    And so even before this proof of citizenship law went

14    into effect, sometimes people used birth certificates or

15    passports or other documents that serve as evidence of

16    U.S. citizenship to meet the requirements of getting a

17    Kansas driver's license.  So the DMV will have records

18    of documents in any person's file.

19              And before this most recent change in

20    policy, we had to give the DMV a list of names we'd like

21    them to check for us in their own database.  Now DMV has

22    taken the workload off of their own people and allowed

23    us to do it county-by-county on a much faster basis.  So

24    as soon as-- so someone comes in, you know, in-- in

25    Coffey County and registers to vote, the clerk's office

 1   in Coffey County, the moment they get that application,

 2   they can do a quick check on their own computer and see

 3   if the DMV happens to have a citizenship document for

 4   that person, regardless of whether the person registered

 5   through the DMV or not.  And so it's a-- a much more

 6   efficient way to look at large numbers of voters with

 7   all 105 counties doing the work, but--

 8              THE COURT:  All right.  So Mr. Keener and

 9   Mr. Cromwell, both born in Kansas, there was documentary

10   proof of that.

11              MR. KOBACH:  Keener was born in Kansas.

12   Cromwell was not born in Kansas.  But Keener, because he

13   was born in Kansas, we-- we caught his name through the

14   systematic monthly checks with Vital Statistics.

15   Cromwell was born in another state, I can't remember

16   which off the top of my head, but his-- but he had,

17   nevertheless, provided proof of citizenship to the DMV

18   at a prior time.

19              THE COURT:  All right.  But then we've got

20   Mr. Bednasek.

21              MR. KOBACH:  Yeah.

22              THE COURT:  I don't know how to say his

23   name.  Obviously-- well, I shouldn't say obviously, but

24   I assume he was not born in Kansas.  At least his

25   parents live in Texas, he's now in Kansas, but-- so he's

1   somebody that didn't provide proof of citizenship at the

2   time he attempted to register to vote and went onto the

3   suspension and then ultimately the cancellation list.

4           MR. KOBACH:  Right.  Now, the-- and I think

5   the-- the deposition of Mr. Bednasek - that's how he

6   told me to pronounce his name, so I didn't-- I didn't

7   pronounce it that way at first either - is very

8   illuminating as to how he became involved in this case.

9   He was approached by someone who knew the attorneys in--

10  in this case, said, "Would you like to become a

11  plaintiff?"  He was already a registered voter in Texas

12  at the time.  He's a non-resident student at KU.  And so

13  he cancels his-- he goes to the Douglas County clerk's

14  office, cancels his Texas voter registration, and

15  registers to vote in Kansas.

16          And opposing counsel says, well, Mr.

17  Bednasek at that time obviously stated his intent to be

18  a Kansas resident.  But what he doesn't mention, and

19  this is the critical fact, is that a month later, a

20  month after allegedly stating his intent to become a

21  Kansas resident, which would've been taken at face value

22  if nothing else had happened, and if he was not a

23  plaintiff in this case, we wouldn't have had occasion to

24  do the investigating.

25          But a month later, in January, 2016, he went

1    to a DMV in Texas and declared his Texas residence and--

2    and obtained a Texas driver's license.  And he declared

3    his Texas residence as ███ Havenside Way, Mansfield,

4    Texas.  And in order to get that Texas driver's license,

5    he had to make such a declaration.  And so his intent

6    evidently changed.  Or if he-- if he did become a Kansas

7    resident for a-- for a very short period of time, one

8    month later, he obtained a Texas driver's license.

9            Now, this is something that normally I

10   suppose someone could get away with and we might not

11   catch it.  But in this particular case, because of the

12   deposition, we were able to tell that Mr. Bednasek is

13   indeed now declaring himself to be a Texas resident.

14           Under Kansas law, you cannot be a resident

15   of two states.  And we-- and to be sure, we're not

16   relying exclusively or even heavily upon in-state

17   tuition status, because in-state tuition is a little bit

18   different.  You have to have-- be living in Kansas for a

19   period of time before the university will recognize it.

20   The universities are sometimes a little bit different in

21   the way they do it.  But the two versions of residency--

22   the two-- two legal recognitions of residency that are

23   tied together and are tied very closely in law and in

24   practice are driver's licenses and voting.  Now--

25           THE COURT:  So is it not possible for

1    someone, say a student, to register to vote in Kansas,

2    even though they retain a driver's license back in their

3    original state?  I mean, a lot of students plan to-- I

4    imagine come here for four years or so and maybe don't

5    know where they're going to go after that.  But while

6    they're here, they want to vote.  But maybe for

7    insurance purposes, their parents are paying the bills,

8    whatever the case may be, they retain their Texas

9    driver's license, Texas insurance, et cetera.

10              MR. KOBACH:  If they choose to retain their

11   Texas driver's license for whatever financial or other

12   incentive reason they have, then they cannot

13   simultaneously declare themselves to be a resident of

14   Kansas for the purpose of voting.  And-- and our

15   statutes make that very clear.  Indeed, the only way you

16   can register online in Kansas is if you have a Kansas

17   driver's license already.

18              And so the-- and opposing counsel made a--

19   an argument that I think is particularly-- maybe not

20   intentionally misleading, but it doesn't really-- it's

21   not relevant at all.  He says, well, Kansas law allows

22   you to provide a license from another state on the day

23   you-- on the day you actually vote, on the photo ID

24   requirement, which is not part of this case.

25              THE COURT:  Well, I understand that that's

 1    assuming the other state has a similar requirement to

 2    Kansas as far as documentary proof of citizenship.

 3              MR. KOBACH:  No, no.

 4              THE COURT:  Isn't there that caveat?

 5              MR. KOBACH:  For photo ID, it's not--

 6    there's no citizenship element to it.  When you actually

 7    show up at the polls and you cast your ballot that day,

 8    you're not proving your citizenship, you're just proving

 9    you are who you say you are.  And so under those

10    circumstances, you can use all kinds of documents.  And

11    if you're over the age of 65, you can even use an

12    expired document.  So you could use a driver's license

13    from Wisconsin that expired 30 years ago, because again,

14    all we're doing--

15              THE COURT:  Okay.

16              MR. KOBACH:  So the fact is--

17              THE COURT:  So in other words-- just so I'm

18    clear.  So in other words, if you want to register in

19    Kansas, one of the documents-- I thought I read that one

20    of the documents you could provide would be say an

21    expired license from another state, assuming that state

22    had-- had determined that you were a U.S. citizen.

23              MR. KOBACH:  Very close.  Good memory.  It's

24    actually slightly different than that.  You can use a

25    driver's license from another state if that state checks

1   citizenship and if U.S. citizenship is represented on

2   the face of the license.

3            There are a couple of states that are moving

4   that direction.  I believe Arizona is-- has either

5   already made that move or is-- is in the process of

6   making that move.  Kansas may make that move in the

7   future so that you have an indicator of citizenship on

8   the face of the license.  So that was included in the

9   list in the SAFE Act, recognizing that some states are

10  going in that direction.

11           THE COURT:  All right.  I understand.  So

12  we're-- you were talking about two different things.

13  One using another state's license, meeting those-- those

14  criteria to register.  The other is using another

15  state's license to just prove who you are when you're--

16  you show up to vote and you're already on the voter

17  rolls, registered to vote.

18           MR. KOBACH:  Right.  Exactly.  Exactly.  And

19  it's conceivable-- for example, under Kansas law, once

20  you become a resident of Kansas and-- and you have

21  legally formed the intent-- opposing counsel got into

22  this definition of intent.  Absolutely intent is part of

23  defining where residence is.  But once Mr. Bednasek

24  stated his-- his intent in January-- that is the latest

25  statement of intent, and it's contrary to his

 1    registration.  But once you have that intent to be a--
 2    you might-- you then have a-- a time limit starts
 3    ticking.
 4              So once you become a Kansas resident, under
 5    Kansas law, the DMV only gives you-- and I might be
 6    wrong here, opposing counsel can correct me, it's either
 7    30 or 60 days to get a Kansas driver's license.  You are
 8    obliged under Kansas law to get that driver's license
 9    within a certain period of time.  And the idea is to
10    keep our residency, our driver's license-- our legal
11    residency, our driver's license state, and our voter
12    registration state in sync so that there's not a
13    difference between those.
14              So opposing counsel's suggestion that it is
15    okay under Kansas law to be registered in Kansas,
16    driver's license is in another state, or vice-versa, is
17    absolutely incorrect.  And we have provided a citation
18    to that in our briefing.
19              So Mr. Bednasek lacks standing to proceed
20    because he's not a resident of Kansas.  He's certainly
21    not typical of Kansas residents seeking to register to
22    vote.  He didn't meet the second and third
23    constitutional requirements of standing because his
24    ineligibility is not traceable to the proof of
25    citizenship law.  His ineligibility is traceable to his

 1   Texas residence.  If the Kansas law did not exist, he

 2   would still be a Texas resident by his own declaration

 3   on-- in January of 2016.

 4            Also, the third requirement of standing,

 5   redressability.  A favorable decision of this Court

 6   would not redress his-- his problem because he is a

 7   resident of Texas.  Now, again, he was recruited and

 8   asked to go register-- according to his deposition, he

 9   was asked to go register in Douglas County.  Don't take

10   your proof of citizenship, see if they allow you to

11   register or not.  So he was recruited as a plaintiff,

12   asked to go do this.

13            Evidently whoever recruited him didn't tell

14   him, "Hey, we need to-- we need you to maintain your

15   standing here.  And by the way, here's what Kansas

16   residence entails."  Because then he goes home to Texas,

17   presumably to visit his parents, and then he renews his

18   Texas driver's license.  And so his situation is

19   certainly not typical, but he also lacks standing.  And

20   that deposition was February 16th, 2016.  And let's see

21   here.

22            THE COURT:  I'm going to look at my

23   questions, too.  You probably have covered most of it.

24            MR. KOBACH:  Okay.  I wanted to address

25   another point that opposing counsel just made.  You

1   asked him a very important question.  And that is:  Did

2   any of the three Cromwell/Keener/Bednasek plaintiffs

3   provide the required letter under the NVRA giving 90

4   days' notice and an opportunity for the state to make

5   any adjustments or cure?  He said no, we didn't do that

6   because we deemed it would be futile, that it would be

7   futile to do so.  That is because of our statements, the

8   statement of my office that we intend to enforce our

9   law.

10           It is absolutely true that we intend to

11   enforce our law unless a-- a court declares that any

12   aspect of the law is in conflict with federal law or the

13   United States Constitution or the Kansas Constitution.

14   However, the point of-- the purpose of the NVRA letter

15   is to allow the state to make adjustments.  And

16   throughout the course of this law, we have made multiple

17   adjustments.

18           For example, the law went into effect in

19   January of 2013.  In August or September of 2013, the

20   policy of check-- sending over batches of thousands of

21   names to the Department of Vital Statistics to look for

22   Kansas birth certificates was done because we discovered

23   that there were people in Kansas who could-- reasonably

24   complained, you know what, one agency already has my

25   birth certificate, why should the Secretary of State's

 1    Office demand that I provide my birth certificate again

 2    to the state of Kansas?  And so that adjustment was made

 3    in response to what we were observing in the public.

 4            Similarly, the DMV, the process of sending

 5    batches of names to the DMV was made because we learned

 6    that some people had - years previously or months

 7    previously - provided a proof of citizenship document to

 8    the DMV for a reason unrelated to voting.  And those

 9    records were not yet being transferred over to the

10    Secretary of State's or the-- office or to the county

11    clerks.  And so, again, we adopted a modification, a

12    policy to accommodate those individuals.

13            So the notion that this would be futile for

14    them to notify the Secretary of State of their situation

15    is, frankly, silly because two of the modifications that

16    we made in 2013 addressed their situation and got them

17    fully registered and their citizenship proven without

18    any effort of their own.  So they are not, therefore,

19    relieved of their burden under the NVRA to provide

20    that-- that notice letter.  And that is a mandatory

21    letter.  And I would again direct the Court to *Scott*

22    *versus Schedler*, the Fifth Circuit case from 2014, 771

23    F.3d 835, which talks about that very issue.  That it is

24    mandatory.

25            The next topic I wanted to address is

1   Cromwell and Keener being moot.  Now, opposing counsel

2   did not mention it in his oral statements a moment ago.

3   But in their briefing, they do address this problem that

4   Cromwell and Keener have, that they are fully

5   registered, they can vote, have been fully registered

6   for quite some time now.  And they say, well, maybe they

7   do or don't have standing, but this is a question of

8   mootness.  Well, at this point we-- and we described the

9   differences between standing and mootness at length in

10   our brief.  But at this point, the-- they certainly

11   lacked the ability to invoke the jurisdiction of this

12   Court because their situation does render their claims

13   moot.

14          The exceptions to mootness include the class

15   action exception.  But, of course, until today, we

16   didn't know they were seeking to become class

17   representatives.

18          The voluntary cessation exception to

19   mootness.  However, under that seemingly broad

20   exception, it remains, "The requisite personal interest

21   that must exist at the commencement of the litigation

22   (standing) must continue through its existence

23   (mootness)."  And that's from the United States Supreme

24   Court, *Arizonans for Official English.*

25          Therefore, the voluntary cessation doctrine

1    is inapplicable in this case because the plaintiffs will

2    not be subject to the complaint of action in the future.

3    They-- the litigant doesn't have any need of judicial

4    protection, and that's another case we quote.  U.S.

5    Supreme Court, *Adarand Constructors, Incorporated.*

6            They also try to find refuge in the other

7    exception to mootness, the capable of repetition yet

8    exceeding-- yet evading judicial review, what I'm sure

9    we're all familiar with.  But that exception only

10   applies, according to the United States Supreme Court,

11   where, one, "The challenged action is, in its duration,

12   too short to be fully litigated prior to the cessation

13   or expiration, and two," and this is the important one,

14   "There is a reasonable exception-- expectation," sorry,

15   "that the same complaining party will be subject to the

16   same action again."  Not that somebody else will be

17   removed from the voter roll or cancelled from the voter

18   rolls, but that the same complaining party will be

19   subject to that again.

20           There is no such expectation here, because

21   these individuals under Kansas-- and here again, I think

22   plaintiffs may not have fully researched the

23   regulations.  Under Kansas regs, they cannot be subject

24   to it again because K.A.R. 7-23-13 [sic] establishes,

25   among other things, in addition to the 90-day time

1    period, there's also-- I'm sorry, not 23-15, 7-23-14(c)

2    says very clearly that once you have proven your

3    citizenship for the purposes of registering to vote in

4    Kansas, you will never have to do it again.

5              So if you move away, you come back,

6    citizenship is still proven.  You move to a different

7    Kansas county, you don't have to prove it again in that

8    county.  So they will never again, those two plaintiffs,

9    be subject to the operation of the statute 25-2309 or

10   the reg 7-23-15, because 7-23-14(c), which was

11   promulgated at approximately the same time, says you

12   don't have to prove your citizenship twice.  You can

13   move away, come back, your record is still going to be

14   there.

15             So they cannot argue that it is capable of

16   repetition as applied to them.  And in order to invoke

17   that exception to the mootness doctrine, they have to

18   show it's capable of repetition as applied to them.  And

19   they have neglected to take into account K.A.R. 7-23-14,

20   Subsection (c).

21             Finally, I'd like to go to the very first

22   question you asked today and the one you asked on the

23   telephone yesterday.  Is class certification even

24   necessary?  I think that the preliminary injunction

25   already issued in the Fish case demonstrates why class

1   certification is not necessary.

2            In the Tenth Circuit-- this is the case

3   Kansas Health Care Association, Incorporated, versus

4   Kansas Department of Social and Rehabilitation Services

5   or Kansas Department of SRS, and that-- the cite for

6   this is 31 F.3d 1548, here's what the Tenth Circuit

7   said.  The Tenth Circuit said a Rule 23(b) class--

8   23(b)(2) class may not be certified if it is

9   unnecessary.  "This Court has recognized the line of

10  authority indicating that a class certification is

11  unnecessary if all the class members will benefit from

12  an injunction issued on behalf of the named plaintiffs."

13           And then the Tenth Circuit quotes other case

14  law, which I won't get into.  But the-- as the

15  preliminary injunction already has effectively done, it

16  suspends the operation at the DMV of the statute for

17  all-- for all people in Kansas.  It doesn't just apply

18  to the five named plaintiffs in the-- in the Fish case.

19           And so under the Tenth Circuit's very clear

20  rule, bright line rule, class certification is not

21  necessary.  And if class certification is not necessary,

22  then the class cannot be certified.  The necessity is

23  not just a convenience thing for the prudential

24  maintaining of resources of the court.  It's actually a

25  requirement.  Class certification has to be necessary

 1   for a variety of reasons to avoid conflicting decisions,

 2   et cetera.  It is not necessary to obtain the results

 3   here.

 4            And plaintiffs' counsel, Mr. Ho, conceded

 5   this not in-- in answer to the same question, but we

 6   quoted his own statement at our last hearing.  He said,

 7   and this is quoting Mr. Ho from the last hearing,

 8   "Regardless of whether we-- whether or not we brought

 9   this case on behalf of our individual clients or bring

10   it as a class action, we would be seeking the exact same

11   relief, which is to enjoin this law.  And whether or not

12   there's a class action, you know, class certification

13   motion pending doesn't really affect the scope of the

14   relief we are seeking."

15            THE COURT:  I-- and I'm aware of that Tenth

16   Circuit decision.  There's a-- there's a Second Circuit

17   decision *Galvan*, I'm trying to find the full name of it,

18   that-- the Second Circuit seems to have a more developed

19   doctrine for this necessity question than the other

20   circuits do.  And they focus on four factors.

21            But one of the things that's suggested is

22   that-- that there be some stipulation by somebody that's

23   in your position that if, in fact, relief is granted to

24   the plaintiffs, that, you know, you would stipulate that

25   that's it, that that means that the state of Kansas

 1   would have to alter its policies to benefit everyone,

 2   whether it's 50,000 people-- I mean, the entire

 3   population-- eligible voting population of Kansas.  And

 4   that's something I think would be important.

 5           Because just so far, both in the Cromwell

 6   case and the Fish case, it does seem that there are

 7   changes in perhaps status of the people.  There's

 8   certainly been changes that you've announced in your

 9   policies and how-- how those are effectuated.  So is

10   that something that you're willing to do to-- in the

11   event the plaintiffs' request for injunctive and

12   declaratory relief, ultimately they prevail on, you

13   would alter-- you would stipulate that you-- that would

14   mean you would have to alter your policies to benefit

15   everyone in Kansas.

16           MR. KOBACH:  Yes.  And I can state it here

17   on the record, we're already altering our policies.

18           By the way, there seemed to have been some

19   confusion between plaintiffs' counsel, although we

20   didn't talk about it, but based on a tweet that we heard

21   from Mr. Ho this morning, he was under the impression

22   that your stay ended I guess at midnight last night.  We

23   are under the impression that your stay ends at midnight

24   coming up.  Your latest voluntary stay of the

25   preliminary injunction said either to June 15th or until

 1    June 15th, I can't remember the preposition, but we

 2    assumed it included June 15th.

 3              So we are in the process today of changing

 4    everything-- it's important that we turn on the light

 5    switch uniformly at once throughout the entire state in

 6    all 105 counties.  So the DMV notification letter that

 7    is given to someone who applies to register to vote at

 8    the DMV, that wording is being changed today.  The

 9    instructions to the counties are all being sent out

10    today.

11              And the new ELVIS category of a person who

12    registers at the DMV but has not yet provided proof of

13    citizenship, that new ELVIS category is being created

14    and turned on today, the modification of the software.

15    And then all of these changes go into effect tomorrow.

16              And so it will obviously affect more than

17    just the five named Fish plaintiffs, but it will affect

18    every Kansan who goes to a DMV and registers to vote

19    starting midnight coming up, midnight in however many

20    hours that is, ten hours.

21              THE COURT:  All right.  Well, my-- my order,

22    I've got it in front of me, it didn't say what time.  It

23    just said it's extended for two additional weeks until

24    June 14th, 2016.  I'm going to interpret that to mean

25    until 11:59 p.m. today.

 1              MR. KOBACH:  Okay.  Thank you, Your Honor.

 2    And we will meet that.  Indeed, many of the changes have

 3    already been made.  So to answer your question, the-- it

 4    is already affecting everyone.  But if opposing counsel

 5    would like us to stipulate what we've already done and

 6    put it in writing, we can certainly do that.

 7              THE COURT:  Well, I think that the intent is

 8    a stipulation proactively-- I mean prospectively, I

 9    should say that, if plaintiffs prevail--

10              MR. KOBACH:  Oh, I see.

11              THE COURT:  -- the Secretary of State

12    stipulates that the relief would be... because there's

13    no need for a--

14              MR. KOBACH:  Okay.  So if they were to

15    prevail on a-- on a summary judgment motion or on a--

16    not just on the preliminary injunction, but at the end.

17              THE COURT:  On the merits.

18              MR. KOBACH:  On the merits.

19              THE COURT:  Whether that be at summary

20    judgment or at trial or both.

21              MR. KOBACH:  Sure.

22              THE COURT:  That the Secretary of State

23    would stipulate that the relief is prospective with

24    respect to everyone that's an eligible-- otherwise

25    eligible voter in Kansas.

1           MR. KOBACH:  We-- we wouldn't-- there would

2    be constitutional problems if we treated five people

3    differently than the rest of the Kansas residents.

4           THE COURT:  All right.  All right.  Thank

5    you, Mr. Kobach.  Mr. Cox, did you want to address any

6    issues concerning the Cromwell case?

7           MR. COX:  No, Your Honor.

8           THE COURT:  Okay.

9           MR. COX:  We're not-- respectfully, we're

10   not in that case.

11          THE COURT:  Okay.  That's right.  And Mr.

12   Bullock?

13          MR. BULLOCK:  Your Honor, we submitted a

14   written response at Document No. 76, and we don't have

15   anything further to add beyond that.

16          THE COURT:  Okay.  All right.  Well, I'm

17   inclined now to move on to the Fish case.  Maybe we

18   could take a break.  But, Mr. Woods, was there anything

19   that you wanted to reply to that Mr. Kobach said?

20          MR. WOODS:  Very briefly, Your Honor.  May

21   I?

22          THE COURT:  Okay.  Go ahead.  And then we'll

23   take a break and we'll turn to Fish.

24          MR. WOODS:  Well, first with respect to the

25   surprise that Mr. Keener and Mr. Cromwell are class

1    representatives, the motion that was filed is

2    plaintiffs', in the plural, memorandum in support of

3    motion for class certification.  And it addresses all

4    the plaintiffs bringing the motion.

5              Keener and Cromwell have been plaintiffs in

6    this case since the very start.  They were plaintiffs in

7    the first amended-- the first-- the initial complaint

8    and the first amended complaint, second amended

9    complaint, and the third amended complaint.  They bring

10   the motion as well.  That cannot be a surprise.

11             The fact that we address Mr. Bednasek alone

12   with respect to his special situation in light of

13   discovery is beside the point.

14             THE COURT:  And you do seek certification on

15   all of the claims in the third amended complaint?

16             MR. WOODS:  Yes, Your Honor.

17             THE COURT:  All right.

18             MR. WOODS:  With respect to the driver's

19   license being used as ID when you vote as provided for

20   in the-- in the SAFE Act, that contemplates that Kansas

21   registered-- duly-qualified and duly-registered Kansas

22   voters have driver's licenses from other states, current

23   driver's licenses.  The SAFE Act doesn't provide you can

24   use an expired driver's license, it says a driver's

25   license from-- from another state.  That contemplates

1  that you can be a Kansas resident for voting purposes,

2  but for your driver's license purpose, it's in another

3  state.

4           And with respect to college students, you

5  can understand how that happens. They don't have--

6  their address is a moving target while they're in

7  college. They move from dorm room to dorm room. They

8  get apartments for one semester and then room with

9  somebody else the next semester. And the next year they

10 get another apartment. So it makes sense that students

11 have driver's licenses from where their parents live for

12 that very reason.

13          So the fact that he has a Texas driver's

14 license, applied for one in Texas, is beside the point.

15 It does not disqualify, it doesn't deprive him of

16 standing. And in any event, in his deposition and his

17 declaration to this Court, he has-- he has repeatedly

18 said that his intent is to be a Kansas resident for

19 voting purposes.

20          The Kansas registration form-- voter

21 registration form does not require you to put a Kansas

22 driver's license number on it. All the form-- all the

23 Secretary of State's form says, that there's a box for

24 driver's license number or last four digits of your

25 Social Security number. So even the registration form

1    itself does not require you to put down a Kansas

2    driver's license number.

3              And just briefly, Your Honor, with respect

4    to-- if we're going to get into mootness here, as

5    opposed to on the merits in their motion to dismiss,

6    this case for these-- these class representatives, these

7    plaintiffs, this is a case where the harm is capable of

8    repetition, yet debating review.  Because under the

9    Kansas regulations, if somebody moves out-of-state, then

10   moves back into Kansas, you have to go through this

11   process again.

12             What-- what the Secretary is addressing is

13   county-to-county, moving around the state of Kansas, you

14   don't have to go through the process twice.  But because

15   if-- especially-- especially a KU student moves

16   out-of-state for a job, decides to come back to the

17   state of Kansas, that person is going to have to go

18   through the same proof of citizenship process again and

19   be subject to being placed in-- in suspense for not

20   providing it.

21             So the-- the Keener-- Keener and Cromwell

22   are class representatives.  They have standing.  And the

23   claims are not moot.  Thank you, Your Honor.

24             THE COURT:  All right.  And again, to the

25   extent you all have pointed to excerpts of depositions

1    for the Cromwell motion, I'd like to have the entire

2    deposition.

3                MR. WOODS:  We will do that, Your Honor.

4                THE COURT:  All right.  Let's--

5                MR. WOODS:  Now, our declaration-- like, for

6    example, Mr. Bednasek's declaration is on file.  But if

7    you want that separately submitted as-- as an exhibit,

8    we can do that.

9                THE COURT:  No, the declarations are-- are

10   complete and they're on file and they're part of the

11   record.  And I will consider them as part of the record

12   for today's hearing.  No.  I was speaking of

13   depositions, which I ordinarily wouldn't have unless you

14   gave to me.  And I don't know if you did-- I can't

15   remember if you did this in Cromwell-- you did do this

16   in Cromwell, I think you referred to excerpts of Mr.

17   Bednasek's deposition.  But I'd like to have the entire

18   deposition with respect to any deponent that's referred

19   to in your briefing in this case.  And I'll say the same

20   thing to the parties in Fish as well.

21               MR. WOODS:  We'll file it promptly, Your

22   Honor.

23               THE COURT:  Okay.

24               MR. KOBACH:  Can I do a very brief surreply,

25   Your Honor, just for less than a minute--

1          THE COURT:  Go ahead.

2          MR. KOBACH:  -- to something he just said?

3    The standard in class certification, as you know, is a

4    strict burden that the plaintiff has to show that each

5    class representative meets the adequacy, typicality, and

6    all of the other elements of class certification.

7          Although the names of all three plaintiffs

8    are included in the caption in the Cromwell case, there

9    is no argument in any of their briefs about why Mr.

10   Cromwell or Mr. Keener would be adequate, would be

11   typical, or otherwise meet it.  So we have heard no

12   argument.  And when a party has provided zero argument,

13   I think it is fair to say they have met-- not met the

14   strict burden.

15         I would also point out that Mr. Cromwell

16   couldn't bring their Fourteenth Amendment claim,

17   assuming their Fourteenth Amendment claim is a

18   privileges and immunities one, because he is-- he was

19   born in Kansas.  Thank you.

20         Sorry, Keener.  Keener was born in Kansas.

21         THE COURT:  All right.  Let's take a break

22   until 2:45 and then we'll hear from the parties in Fish.

23         (Recess).

24         THE COURT:  All right.  You can be seated.

25   All right.  Ms. Waldman.

1             MS. WALDMAN:  Your Honor, Rebecca Waldman

2    from the law firm of Dechert.

3             Just to address one of the procedural issues

4    you raised in terms of the evidence that is relevant to

5    our class certification motion in the Fish matter.  We

6    have submitted certain declarations and news articles

7    and other evidence that were filed with our opening

8    brief at Docket No. 3.  And we've also-- Mr. Kobach in

9    his response submitted complete copies of all the

10   deposition transcripts, which is at Docket No. 131.

11   However, I have copies of all those documents, if it

12   would assist the Court in having--

13             THE COURT:  That would be helpful.  Thank

14   you.

15             MS. WALDMAN:  May I approach?

16             THE COURT:  Yes.  Or you can hand them to

17   Ms. Wiest here.  Thank you.

18             MS. WALDMAN:  And in addition to those

19   documents, we'd just ask the Court also to take judicial

20   notice of the findings in the opinions that you had

21   previously issued on the plaintiffs' preliminary

22   injunction motion.  And that opinion is at Docket 129.

23   And also in the ruling on Defendant Kobach's motion for

24   a stay, which is at Docket 145.

25             THE COURT:  All right.  So noticed.

1          MS. WALDMAN: Thank you. Your Honor, I

2    think it makes sense to turn first to the issue that you

3    had addressed with the parties in connection with the

4    Keener case regarding whether class certification is

5    necessary. And we believe that-- that the points that

6    the parties have already made are all very relevant, as

7    the Keener plaintiffs noted.

8          As the Keener plaintiffs discussed, there

9    are-- there have been opportunities to knock plaintiffs

10   out. And as Your Honor recognized, there are certain

11   changes in circumstances that may occur which would keep

12   plaintiffs from appearing on their own behalf.

13          Once a class is certified, it is possible to

14   substitute plaintiffs from absent class members. And in

15   a scenario where you have plaintiffs appearing only, you

16   know, in their individual capacity or on their own

17   behalf, that's not the case. And we've even seen in our

18   own case that the situations of the plaintiffs can

19   change. Mr. Ortiz has been voluntarily dismissed based

20   on his desire to move out-of-state and his inability to

21   appear in this litigation. And so we are very aware

22   that-- that the-- the circumstances can change.

23          We also would note that although Your-- Your

24   Honor recognized that a stipulation might resolve

25   certain of these issues, here, the-- the defendants have

1   challenged typicality and commonality.  And so without a

2   representation that they would not, you know, assert

3   that there are-- there are any issues with typicality or

4   commonality or some of the other factors that would keep

5   it-- keep the plaintiffs in this litigation from

6   representing all individuals who, for example, were--

7   were impacted by the Court at the preliminary injunction

8   order, that stipulation might not be sufficient to give

9   relief to the entire class that we're seeking relief on

10  behalf of.

11          THE COURT:  I'm going to ask you to do the

12  same thing that I asked Mr. Woods to do.  And that is

13  just to clarify the two classes, the scope of the two

14  classes.

15          MS. WALDMAN:  Sure.

16          THE COURT:  And my understanding-- I'll

17  start with my understanding.  And if that's correct, we

18  can short-circuit this.  But my understanding is the

19  first class are otherwise eligible motor-voter

20  registrants who are not on the active voter registration

21  lists, either suspended or cancelled because of

22  purported failure to submit documentary proof of

23  citizenship.

24          And then the second class are people--

25  everything the same, except also they don't have

1    documentary proof of citizenship records under their

2    current name on file with state agencies in Kansas.

3              MS. WALDMAN:  That's correct, Your Honor.

4              THE COURT:  All right.  So the second class

5    really goes to the privileges and immunities claim.

6              MS. WALDMAN:  Correct, Your Honor.

7              THE COURT:  Okay.  All right.  Anything else

8    you want to clarify as far as the scope of these two

9    classes?

10             MS. WALDMAN:  No, Your Honor.  That's it.

11             THE COURT:  Okay.  All right.  That's fine.

12             MS. WALDMAN:  So, Your Honor, having already

13   ruled on the preliminary injunction and the stay motion

14   in this case, I think Your Honor is-- is intimately

15   familiar with the facts of the case and with the stories

16   behind a number of our plaintiffs.

17             But what-- but what's really important here

18   is that the-- the plaintiffs in the Fish case are

19   everyday citizens who reside in Kansas and seek to

20   become more involved in the electoral process.  Their

21   efforts-- their backgrounds and their efforts to

22   register to vote are indicative of the class members

23   that they seek to represent here, making this the exact

24   type of case we believe that's-- that's ripe for class

25   certification.  Our clients have unquestionably,

1    unquestionably satisfied the requirements of 23(a).

2            I-- I don't think there's any dispute that

3    numerosity exists, and this-- this Court has recognized

4    a significant number of people who will be impacted by

5    the preliminary injunction and-- and who will be

6    registered to vote.

7            Commonality exists because all the class

8    members have suffered the exact same injury.  That

9    despite submitting applications to register to vote,

10   their names are not currently on the-- on the voter

11   registration rolls due to the documentary proof of

12   citizenship requirements.

13           THE COURT:  If I could stop you for a

14   minute.  Talk to me about the overlap with your-- this--

15   this proposed class or classes and the proposed class in

16   Cromwell.

17           MS. WALDMAN:  So there is a significant

18   overlap between the two classes.  I think the-- the

19   biggest distinction, as I understand it, with respect to

20   our class one and their class, is that we are only

21   seeking certification with respect to issues related to

22   federal elections.  My understanding is that their--

23   their claims also relate to state and local elections.

24           THE COURT:  All right.  Thank you.

25           MS. WALDMAN:  Each of our plaintiffs in the

1    Fish case is also typical of absent class members.

2    They're citizens of the United States, currently

3    residing in the state of Kansas, who submitted voter

4    registration applications at the DMV but are not

5    currently eligible to vote in federal elections.  That

6    makes them typical of the thousands of other individuals

7    who have attempted to register, but I guess as of

8    tomorrow the process of-- of registering them pursuant

9    to the preliminary injunction will begin, but otherwise

10   would not be eligible to vote.

11           This Court has recognized that this makes--

12   makes our plaintiffs typical.  In ruling on the

13   preliminary injunction at Page 60, you said, "While the

14   named plaintiffs' individual experiences are slightly

15   different, the Court has explained that they are

16   illustrative of the burdensome enforcement scheme

17   necessitated by the DPOC law.  The injunctive relief in

18   this case does not-- does not require individualized

19   remedies."  And for that reason, our-- our plaintiffs

20   are typical of everyone else.

21           And finally, we believe that our

22   plaintiffs-- believe our proposed lead plaintiffs will

23   adequately represent the interest of the class as a

24   whole.  Adequacy of representation requires that there's

25   no conflict between the lead plaintiffs and-- and any

1    other absent class members and that appointed counsel

2    will adequately represent the class.  There have been

3    some minor challenges to the adequacy of the proposed

4    class, which I'm happy to address if Your Honor would

5    like, but I think the arguments in our papers speak for

6    themselves, as well as the experience Your Honor has had

7    seeing us appear in your courtroom.

8            But we also think that the-- the individual

9    plaintiffs, that there are no direct conflicts between

10   their interests and that of the other class members.

11   They're all, again, individuals who tried to register to

12   vote and have been unable to do so and through their

13   participation in this litigation seek to streamline the

14   voter registration process and make it consistent with

15   the federal laws.

16           And we also, turning back to the issue I

17   started with, believe that the-- the plaintiffs here

18   are-- have met the requirements of Federal Rule 23(b)

19   for-- for two different reasons.  First, they meet the

20   requirements of 23(b)(2) because class-wide relief can

21   be granted to them as a whole.  And we also think that

22   we've demonstrated that class certification is proper

23   under 23(b)(1)(A) because there's a risk of varying

24   adjudications under the case.

25           I'm happy to get into additional details on

1   any one of these points.  If Your Honor has any specific

2   questions, I'd be happy to address them first.

3                THE COURT:  The defendants argue that the

4   *Better* decision by a judge of this court, Judge Vratil,

5   dictates a certain standard in this case on the adequacy

6   of representation element.  I'd like you to address

7   that.

8                MS. WALDMAN:  Sure.  As an initial matter,

9   Your Honor, the *Better* case was a securities class

10  action that involved unique procedures associated with

11  the Private Securities Litigation Reform Act.  There--

12  one of the purposes in enacting the PSLRA was to keep

13  the situation from occurring where you had a small

14  holder of securities commencing a lawsuit and purporting

15  to represent large sophisticated institutional holders

16  who might have a better capacity to serve in the lead

17  plaintiff role and-- and a better understanding of the

18  issues.  Here, that's not relevant.

19               THE COURT:  In other words, there could be

20  conflicts among the various shareholders, depending on

21  their interests and their-- I guess the nature or the

22  extent of their injuries.

23               MS. WALDMAN:  I don't think the-- the Court

24  was as focused on the conflict between the parties as

25  much as the capability in diligently pursuing the

1    action, in-- in having the resources and the

2    understanding in part because of the-- the very

3    different nature of, you know, individual investors

4    and-- and institutional investors.  I guess it's

5    possible that the difference between an individual and

6    an institution can also create a conflict among the

7    class members.  But, you know, I don't-- I don't think

8    that was one of the primary concerns.

9              On the facts of the *Better* case as compared

10   to the case here, it's also-- it was a very different

11   point in the litigation where the Court was asked to

12   look at things, like the number of times people had

13   spoken and whether they had signed certain declarations.

14   There, the Court had already rejected three settlement

15   agreements, finding that the parties hadn't adequately--

16   hadn't adequately addressed the interests of the

17   different proposed classes.  There were a number of

18   sub-classes.  And so the Court was approaching that

19   point in the litigation with significant skepticism and

20   had already noted that there were actual problems in the

21   ability of the-- the plaintiffs to represent the class.

22             And as a result of some of those problems

23   that the Court had previously noted, they actually had

24   to appoint additional lead plaintiffs or class

25   representatives, as they may be called in a securities

1   litigation.  And so I think some of that heightened

2   scrutiny and-- and some of that extra detail was very

3   much fact-specific to that case.

4              THE COURT:  All right.

5              MS. WALDMAN:  I can go through any of the

6   other additional factors if there's anything else Your

7   Honor is interested in hearing.

8              THE COURT:  No.  I mean, there's-- it seems

9   that-- and I'll ask the defense about that, they really

10  focus a lot of argument on the adequacy of

11  representation argument.  In particular, for example,

12  Ms. Bucci not being available for a deposition,

13  ultimately being available for a deposition in Wichita,

14  but what happened leading up to that.  And obviously

15  there was the matter that we heard yesterday and how

16  that factors into their argument that that particular

17  plaintiff is-- cannot adequately represent the class.

18              Anything more specifically you would want to

19  say about that, I can hear about that.  But otherwise, I

20  don't think I have any other questions.

21              MS. WALDMAN:  Yes, Your Honor.  We-- we

22  think that Ms. Bucci's efforts in this litigation have

23  shown that she is willing to do what it takes to-- to

24  represent the class.  She did, once the Court ordered

25  that her deposition had to occur on a specific day, she

1   did come, she came straight from work, and she sat there

2   very tired after a long overnight shift, but-- but she

3   did what she needed to do.

4         And we think her testimony demonstrates that

5   she is-- that her interests are very much in line with

6   that of the other class members.  She testified that she

7   believes the-- the defendants in this case are taking

8   steps that make it more difficult for people to register

9   and doing-- and making individuals do more than they

10  need to do to become registered to vote.  And that's

11  completely consistent with what we've argued in this

12  case, Your Honor.

13        We believe that citizens of Kansas who seek

14  to register to vote should be required to do nothing

15  more than is required under the federal laws, which is

16  sign an attestation under penalty of perjury that an

17  individual is eligible as a U.S. citizen.  And that

18  should be enough.

19            (Phone rings).

20        MS. WALDMAN:  I'm sorry, Your Honor.

21        THE COURT:  Nothing worse than having

22  somebody else try to find your phone and turn it off.  I

23  was once speaking in a ballroom full of about 3 or 400

24  people and somebody's phone went off.  And I know I was

25  acting kind of annoyed, and then I realized it was my

1  phone.

2          All right.  Oh, I also want you to address

3  notice deficiencies.  In some of the later added

4  plaintiffs in Fish I think there's-- I think defendants

5  have said that they failed to send notices.

6          MS. WALDMAN:  Yes, Your Honor.  There was--

7  there was one individual, only one of the five

8  plaintiffs who was not-- who did not sign on to the

9  notice of the NVRA violations that was sent.  We think

10 there's-- Mr. Fish-- it was appropriate for Mr.

11 Hutchinson to be a named plaintiff in this action.  This

12 Court has already recognized that the purpose of the

13 NVRA notice requirements is to provide notice and an

14 opportunity to cure.

15          We-- the other plaintiffs in this litigation

16 already unquestionably provided notice.  No one disputes

17 the fact that they received notice.  This Court has

18 found that the notice letter that was sent out was

19 sufficient to put the Defendant Jordan on notice and no

20 remedies were-- no changes in the-- in the relevant

21 problems were implemented at the time.

22          Even to the extent that this Court were to

23 find that Mr. Hutchinson could not have commenced a

24 lawsuit in his own name, which again, we believe he

25 could have, but even if the Court were to determine that

15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.14.16   64

1   he could not have commenced the action in his own name,

2   he still could serve as a lead plaintiff in a class

3   action lawsuit under the class certification rules and

4   under precedent in-- in this court and in other

5   jurisdictions.

6           A lead plaintiff does not have to be someone

7   who initially commenced the lawsuit.  It's any

8   individual that satisfies the-- the certification

9   requirements.  And therefore, because Mr. Hutchinson

10  satisfies all those requirements, he can be a lead

11  plaintiff in the class action lawsuit, even if he might

12  not be permitted to-- to pursue the action in his own

13  name.

14          THE COURT:  So in other words, the notice

15  requirement has to do with the ability to initiate the

16  lawsuit.  But the lawsuit, having been initiated by

17  others who met that requirement, the precedent would

18  allow for him to be a lead plaintiff in the class?

19          MS. WALDMAN:  Correct, Your Honor.  And that

20  also ties back to some of your initial questions of why

21  a class action-- why class action certification is

22  necessary.

23          Here, to the extent our-- any of our

24  plaintiffs determine they're no longer able to serve in

25  that capacity, the Court is able to certify a new lead

1    plaintiff from one of the absent class members. And so,

2    you know, given the large number of people who are in

3    the class, there will always be people who can serve as

4    lead plaintiffs in-- in this matter.

5             THE COURT: All right. Thank you. I don't

6    think I have any other questions.

7             MS. WALDMAN: Thank you.

8             THE COURT: Mr. Kobach.

9             MR. KOBACH: Thank you. Thank you, Your

10   Honor. A couple of things right off the bat. I'd like

11   to clarify one more, I think, important legal question

12   that was at the very end of our discussion of the

13   Keener/Cromwell case.

14            Opposing counsel said that the K.A.R.

15   7-23-14(c) only applies to county-to-county moving when

16   you don't-- but it does not apply to moving

17   out-of-state. That is incorrect. The-- again, it's

18   K.A.R. 7-23-14(c). I'll read it to you. "A registered

19   voter who has previously provided sufficient evidence of

20   U.S.-- United States citizenship with a voter

21   registration application in this state shall not be

22   required to re-submit evidence of United States

23   citizenship with any subsequent voter registration

24   application."

25            It does not apply to intra-state moves

 1   between counties solely.  It applies to all moves and

 2   all subsequent re-registrations in the state of Kansas.

 3          Next I'd like to go to what opposing counsel

 4   for the Fish plaintiffs has just asserted.  She

 5   maintains that the Tenth Circuit's necessary standard

 6   for class certification applies here because they are

 7   worried that circumstances may change, that they may

 8   have other plaintiffs in their five plaintiff group who

 9   may move out-of-state, that something may happen and

10   they-- they might no longer be representative

11   plaintiffs.  That may be their worry, but that is not

12   how the Tenth Circuit defines "necessary."

13          The Tenth Circuit says the following, this

14   is the case I quoted earlier, it is unnecessary, quote,

15   "if all the class members will benefit from an

16   injunction issued on behalf of named plaintiffs."  They

17   are saying, well, it's necessary for us because the way

18   we see necessary, necessary means desirable, because

19   there's a possibility that more of our plaintiffs might

20   move out of state or something may happen.  Desirable to

21   them in terms of maintaining their case going forward in

22   time is not the same as necessary, as the Tenth Circuit

23   has defined it.

24          And indeed, that's a risk that any group of

25   plaintiffs takes in civil litigation.  If you assemble a

 1   group of plaintiffs, you have to-- and you're not doing

 2   it as a class action, you have to decide if that group

 3   of plaintiffs is big enough that if some of them drop

 4   out, you still have a case going forward.  The class

 5   action does not serve as a-- the fact that you chose not

 6   to-- to get a big enough group of plaintiffs doesn't

 7   mean that you are now entitled to get a class action

 8   certification because you had too small a group of

 9   plaintiffs.  So they clearly don't meet the Tenth

10   Circuit standard.

11            So let's go to the other standard.  And this

12   is the standard set by this very court in the *Better*

13   decision.  Now, our-- our case goes into exacting detail

14   on all of the elements of the *Better* decision and why

15   the *Better* decision does apply in this case.  But I want

16   to look very specifically at the assertion they make

17   that *Better* does not apply if-- if you're talking about

18   a securities case.  And if you'll excuse me for just

19   five seconds, I left my notes on my desk.

20            Okay.  So *Better* is looking overall at this

21   two-part adequacy test.  Part No. 1 is conflicts with

22   other members, and that's really not the issue here.

23   Part No.-- although it is arguably in the case of Bucci

24   and Hutchinson, who say they are not opposed to the

25   proof of citizenship law.

1          But No. 2 is where *Better* focuses and where

2   we are focused principally, and that is whether the

3   plaintiffs and counsel will vigorously prosecute the

4   action on behalf of absent class members.  Now,

5   confronted with this case issued by this Court just few

6   months ago, the plaintiffs say - without any case

7   support - they make the argument that you just heard,

8   that *Better* was a securities case, securities cases are

9   different.  There's a higher standard for securities

10  cases and, therefore, you should disregard this recent

11  precedent from this very court.  They are absolutely

12  wrong for five reasons.

13          First of all, *Better* itself does not rely on

14  securities cases in articulating the standard that the

15  *Better* case goes on to apply.  This indicates that the

16  *Better* standard obviously isn't drawn from securities

17  fraud cases or securities cases more generally, nor is

18  it limited to them.

19          The *Better* decision cites *East Texas Motor*

20  *Freight System versus Rodriguez*, a U.S. Supreme Court

21  decision from 1977, 431 U.S. 395.  That was an

22  employment discrimination case.  The *Better* court also

23  relied on *Rutter versus Wilbanks Corporation versus*

24  *Shell Oil-- Rutter and Wilbanks versus Shell Oil*.  Tenth

25  Circuit 2002, 314 F.3d 1180.  That was a wrongful

1    pricing case in an oil context.

2          The *Better* court also relied on another

3    District of Kansas case, *Robinson versus Gillespie*, 219

4    F.R.D. 179.  That was not a securities fraud case

5    either.  And it was that-- in that case that the Court

6    got the phrase or-- or quoted the phrase repeatedly,

7    that the representatives need to be "vigorous advocates

8    for the class" and not-- that's an end quote.  And then,

9    they should not "simply lend their names to a suit

10   controlled entirely by the class attorney.  The named

11   party must be an adequate representative in addition to

12   having adequate counsel."

13         So those standards come from non-securities

14   cases.  This notion that they have that all of the-- the

15   very significant level of scrutiny established in

16   *Better*-- or not established but applied in *Better*

17   somehow comes from a securities-specific elevated

18   standard is nowhere stated.  And that's my second point.

19   It's nowhere stated in *Better*.

20         If you read the entire *Better* decision by

21   your-- your colleague, you will find no statement that,

22   oh, this is a securities case.  In a securities case we

23   apply this very high standard.  On the contrary, as I

24   just mentioned, the case relies on non-securities cases

25   to-- at the beginning to establish what the standard is

1   in the opinion.

2          Thirdly, the plaintiffs do not cite any

3   District of Kansas cases or Tenth Circuit cases for

4   their theory that there is a higher standard for

5   securities cases.  Indeed, they-- the closest thing to a

6   case that really doesn't say what they claim it does,

7   but you know, is close is a Fifth Circuit case from

8   2001.

9          Fourth, their theory, to the extent they can

10  find any support for it, is based on the fact that a

11  statute was passed by Congress in 1995.  In their

12  briefing they say 2005 and then they later say '95, but

13  it was '95.  It was the Private Securities Litigation

14  Reform Act.  That was enacted by Congress in 1995.

15          The problem with their theory is the

16  vigorous standard that's applied by this Court in

17  *Better*, the cases that are cited predate 1995.  So

18  they-- they claim that Congress passed this law and then

19  somehow the courts gained a signal from this law.  Not--

20  there's nothing in the statute itself-- and, of course,

21  they don't quote the statute itself because there's

22  nothing in the statute that says courts must apply a

23  higher standard for class certification in securities.

24  But they say somehow courts gained a signal and that's

25  why the courts are applying a higher standard, which

1    they are not.

2           But the problem is-- with their analysis, is

3    that this vigorous representation inquiry applied in

4    *Better* was before 1995.  Indeed, one of the cases

5    quoted, *Edgington versus Dickinson & Company* was a

6    District of Kansas case, 1991.  On Page 190-- the full

7    cite is 139 F.R.D. 183.  And on Page 190, this Court

8    said, "Both the class representatives and his or her

9    attorney must have the means and capacity for vigorous

10   prosecution of the class action," and then went on to

11   describe what that is.

12          Furthermore, since the PSLRA was enacted by

13   Congress, no Tenth Circuit case has even intimated that

14   there is some higher standard for class certification

15   created by osmosis I guess through the PSLRA.  In fact,

16   in the case of *In Re:  Universal Services-- In Re:*

17   *Universal Service Fund Billing Practices* Litigation,

18   which plaintiffs attempt to rely on and cite favorably,

19   the Court went through the knowledge of each individual

20   plaintiff of the proposed class, just as we are doing in

21   our briefing, to identify whether the adequacy and

22   vigorous representation standard was met.

23          Indeed, I think plaintiffs somewhat

24   misrepresent in their brief what the *In Re:  Universal*

25   *Service Fund* case was even addressing.  On Page 8 of

 1   their brief, the plaintiffs quote only the defendant's

 2   characterization of the argument.  You know how the

 3   courts will often also say:  Defendants say this,

 4   plaintiffs say that.  What the plaintiffs in this case

 5   quote in their briefing is:  Defendants say blank,

 6   blank, blank.  And so the-- and literally they pull out

 7   this quote out of context.  "Defendants also contend

 8   that many of the class representatives lack personal

 9   knowledge regarding their claims and have essentially

10   abdicated their role as class representatives to their

11   attorneys."  That's on Page 8 of their brief.

12            But then the plaintiffs in this courtroom

13   ignored the detail to which the district court went in

14   doing exactly that in the case, in applying a-- a very

15   exacting standard like that.  And so the plaintiffs are

16   suggesting that the Court did not apply the very high

17   standard that *Better* indicates must be applied in all

18   cases, not just securities cases.

19            So accepting that this Court was correct in

20   *Better*, and that this Court didn't distinguish *Better* as

21   a securities case only, which I think it would have done

22   if *Better* was some sort of high standard created for

23   securities cases only, then let's apply the *Better*

24   standard.  And when you apply the *Better* standard, you

25   see that the five named plaintiffs here do not meet it.

1          And one of the most important respects in

2    which all five failed to meet the *Better* standard is,

3    none of them knew the names of the other class

4    representatives.  None of them had ever met or talked to

5    the other class representatives.  And think about why

6    that's important.  Think about why this Court in *Better*

7    said that was a disqualifier for the plaintiffs there.

8          And if I'm going to control my-- if I'm a

9    group of people and we're controlling our team of

10   attorneys, we have to meet among ourselves and say,

11   yeah, do you agree with what our attorneys are doing

12   here?  Do you agree?  But if we are separated and our

13   attorneys don't even give each other-- give us our

14   respective phone numbers and addresses, how are we going

15   to communicate and as a team say, all right, you know

16   what, here's what I think we should ask for in the

17   preliminary injunction, here's what I think we should

18   tell our attorneys.

19         These five plaintiffs are separated and they

20   are largely ignorant of what's going on.  We presented

21   the briefings in this case to all the plaintiffs during

22   the depositions.  With the exception of I think one,

23   maybe Mr. Stricker, they had never seen them before.

24   This was complete news to them.  Nothing had been

25   presented to them prior to filing.  The counsel had

1  never consulted with them prior to taking any position

2  in this case.

3           In all of the cases, the only significant

4  contact was their declaration. Someone talked to them

5  on the phone, got information to provide in the

6  declaration, and then had them sign their declaration.

7  But there has been no direction of this case from these

8  plaintiffs.

9           So that's why *Better*-- in the *Better* case

10  this Court looked at whether these plaintiffs have

11  actually met each other. Have they ever communicated

12  with each other? And in the present case, that is

13  absolutely no. They have not had that communication.

14  And therefore, then you-- you result-- that results in a

15  situation where the plaintiffs are merely pawns in a

16  case controlled by the attorneys. The attorneys are

17  simply using the plaintiffs as shells to do what they

18  wish to do.

19           THE COURT: The procedural posture of this

20  case is quite different than *Better,* where there had

21  been three failed settlements or negotiations, and it

22  was much later in the case. And obviously Judge Vratil

23  was concerned that there were classes and subclasses and

24  people with varying interests among those classes and at

25  that point, despite, you know, all of the work that had

1    gone into settlement negotiations which, by definition,

2    you have to talk to your clients about, it would seem

3    that there had been no interaction between the

4    plaintiffs.

5            What we're talking about here, of course, is

6    a case that's fairly early in its life.  And essentially

7    at this point there have been legal arguments raised in

8    the context of motions for preliminary injunction and

9    now class certification.  Discovery is just-- I don't

10   know what you all would say, but I mean, it's not

11   complete I assume in terms of the merits of the case.

12   And although there have been some dispositive motions

13   filed, motions to dismiss, I mean in terms of the-- the

14   factual development of this record, it's not there yet.

15   So it's-- it is a different posture, would you not agree

16   with that?

17           MR. KOBACH:  I agree that it's-- it's at a

18   different place in the case.  This isn't really a case

19   that is easily amenable to settlement negotiations, so

20   certainly you don't have that here.  But I-- I would

21   disagree a little bit as far as the complexity of what

22   was going on and all the moving pieces.  I don't think

23   *Better* was necessarily more complex.  I think you could

24   make an argument that this-- this case is considerably

25   more complex.

1            And, again, here, you don't have the

2    communication.  It was discovered in depositions that

3    Bucci and Hutchinson, neither one of them objects to the

4    proof of citizenship law.  And so-- and in Hutchinson's

5    case, he's perfectly okay with it and doesn't seem to

6    have any inclination to have a preliminary injunction

7    come down.  He just wants your citizenship noted on

8    every driver's license.  That's an interesting thing

9    and, indeed, I think that would be great, too.  But it's

10    clear that his objectives are not in line with-- with

11    the course his counsel are pursuing.

12            And so the-- the essence of communicating

13    and directing-- that's the other thing.  The vigorous

14    advocacy standard requires that the plaintiffs be in a

15    position to direct their counsel when they feel

16    necessary.  And it's quite clear that they're not in

17    that position in this case.

18            The other point I want to go to, and I don't

19    know if you want me to belabor the point by going

20    through each of the five plaintiffs, as we do in our

21    brief.

22            THE COURT:  No.  I-- I really-- I wanted to

23    read the entire depositions, and I have them now.

24            MR. KOBACH:  Okay.

25            THE COURT:  Because my sense was that you

1    found things favorable to your position, plaintiffs

2    found things favorable to their position.  And I read

3    those excerpts, but I wanted to read the entire context.

4              MR. KOBACH:  I encourage you to do so,

5    because I think the more you read, the more you will be

6    impressed by the fact that these plaintiffs are not in

7    control of this case at all.  And indeed, every single

8    one of them was recruited by someone more or less out of

9    the blue - in fact, that phrase was used - calling them

10   on the telephone or approaching them, sending them

11   something saying, "Hey, would you like to be a plaintiff

12   in this case?"  None of them-- and while that's not

13   dispositive of the question, it does show the general

14   structure of this case.

15             I do want to address a couple of points made

16   by opposing counsel.  As far as the NVRA notice

17   provision, the *Scott versus Schedler* case in the Fifth

18   Circuit is very clear on this.  It is a mandatory

19   requirement.  And you can't-- and *Scott* specifically

20   said you cannot piggyback the-- the requirement

21   precludes one party that didn't provide notice from

22   piggybacking on notice that was provided by other

23   parties.  And that's at Page 836 of *Scott.*

24             Now, the only case that plaintiffs can try

25   to point to for some support is the Sixth Circuit case

1    of *ACORN versus Miller*.  But the *Scott* case came later,

2    pointed out that *Miller* lacks any basis in the statutory

3    text.  And the-- the other point that Scott makes is

4    that this NVRA requirement is-- is an Article III

5    requirement.  It's not a prudential requirement.

6          And one of the arguments in opposing

7    counsel's brief is that, well, maybe the NVRA notice is

8    just sort of a prudential thing, it's-- it's not really

9    a hard and fast requirement of standing.  But the *Scott*

10   case in the Fifth Circuit goes into detail as to why

11   this is an Article III standing requirement.  If you

12   don't have the notice, you don't have standing.  And of

13   course, if you don't have standing, you can't be a

14   plaintiff at all, much less a class representative

15   plaintiff.

16         So I think Hutchinson has to be knocked out

17   not only as a class representative plaintiff but of the

18   whole case because he did not provide the required NVRA

19   notice.  We concede that the other four plaintiffs did

20   provide the required NVRA notice.

21         The other point that was just made was

22   substitution, and I want to briefly address that.  It is

23   permissible for one plaintiff to substitute - in class

24   action cases generally, of course - for one plaintiff to

25   substitute for another and to join the class

1    representatives.  However, and this is the critical

2    point, the substitute plaintiffs have to have standing

3    themselves.  So if the substitute plaintiffs did not

4    send the NVRA-required letter, they would not have

5    Article III standing.

6            And so while a substitution may be possible

7    at some point in the future, those substitute plaintiffs

8    have to have standing.  They can't piggyback, as the

9    Fifth Circuit put it, and attempt to join as class

10   representatives when they themselves on their own would

11   not be able to do so.

12           And this Court actually addressed that very

13   issue in *Hull versus Viega*.  And that was in this court

14   in 2014, two-- 2014 Westlaw or WL896621.  And I'll just

15   quote briefly.  "In class actions where a named

16   plaintiff's individual claims fail or become moot for a

17   reason that does not affect the viability of the class

18   claims, courts regularly allow or order plaintiffs'

19   counsel to substitute a new representative plaintiff."

20           "However, while Rule 15 is to be liberally

21   applied, it does not extend to cases where plaintiff's

22   only reason for seeking amendment is to cure a standing

23   defect.  If plaintiffs are without standing, then an

24   amendment would not be allowed, as a plaintiff may not

25   create jurisdiction by amendment where none exists.

1   Where the only named plaintiff in a putative class
2   action lacks standing from the outset of the case and a
3   class is yet to be certified, the proper course is
4   dismissal."

5           And so again, the-- the substitution
6   argument-- while it is true they can substitute, they
7   cannot get around the standing requirement there.

8           THE COURT:  But if-- but if there are
9   plaintiffs with standing, one could be substituted for
10  another is I think what their argument is.  In other
11  words, Mr. Hutchinson could be the lead plaintiff
12  because there are-- assuming there were still plaintiffs
13  that had standing.  *Hull*, and I don't remember it,
14  although it's my case, but *Hull* was a situation where
15  there was one plaintiff and you couldn't substitute that
16  one plaintiff with another to-- to create standing that
17  didn't already exist with the one plaintiff.

18          MR. KOBACH:  But what-- what I would argue,
19  and I don't think I'm disagreeing with you, is that in
20  Hutchinson-- in Hutchinson's case, he lacked standing
21  because of his NVRA notice letter.  So he can't-- since
22  he doesn't have standing because he didn't meet that
23  statutory requirement of notice-- of sending that letter
24  and then waiting 90 days, he can't come in as a normal
25  plaintiff or as a class representative plaintiff,

1    because he hasn't met the Article III requirements for

2    getting in the case yet.  And so that's the-- that's the

3    point that I'm trying to make and hopefully making

4    there.

5              THE COURT:  Okay.

6              MR. KOBACH:  I want to finally address one

7    other point that they-- the opposing side made in their

8    briefs, and it goes to the larger standing issue.

9    Opposing counsel makes this argument that the NVRA

10   creates a private right.  And then that by alleging that

11   your NVRA right has been violated, you have suffered

12   injury in fact sufficient to satisfy standing.  And

13   that's not quite right.

14             What the NVRA-- what they're doing is

15   they're confounding a private right of action with

16   standing requirements.  It's absolutely true the NVRA

17   gives you a private right of action.  You send that

18   letter, you wait 90 days, you've got a private right of

19   action.  You can sue under that statute.  And, you know,

20   lots of federal statutes you can't sue under.  You have

21   to be within a-- a named category of people who have a

22   private right of action.

23             They do have a private right of action, but

24   the NVRA does not create injury in fact.  And I think

25   that's the important distinction that needs to be made

1    there.  And the-- again, looking at the *Scott v.*

2    *Schedler* case again shows very clearly, again, the NVRA

3    doesn't create standing, it creates a private right of

4    action.  So I just wanted to quickly touch on that

5    point.

6              And if you have no further questions, I

7    think I've addressed all of the issues that opposing

8    counsel has presented.

9              THE COURT:  Let's see.  I'm not sure.  I

10    think I--

11              MR. KOBACH:  I would mention this, too, Your

12    Honor.  In the case of the-- not the Fish, but the

13    Cromwell plaintiffs, we do have a motion to dismiss

14    that's been-- because of the lack of standing of all

15    three that's been pending since March 31st.  And I don't

16    know if the Court deems it appropriate to rule on that

17    in the context of ruling on the-- the larger issue of

18    class certification.

19              THE COURT:  I do intend to rule on them

20    fairly contemporaneously.

21              MR. KOBACH:  Okay.  And I--

22              THE COURT:  You all have been keeping me so

23    busy, I can't get to it.

24              MR. KOBACH:  Believe me, I know-- I feel

25    your pain.  So anyway, we would-- we'd ask that the

1   Court consider ruling on that motion as well and-- and

2   that may or may not streamline this case further.

3            THE COURT:  All right.  I know that's

4   something that Secretary Jordan wanted me to do before

5   this hearing, and I couldn't get to it.  But I do intend

6   to rule on the motions to dismiss fairly quickly as

7   well.

8            MR. KOBACH:  And while I am at the podium,

9   can I bring up something, a scheduling issue that--

10  before-- that might be worth talking about?  And that

11  is, as you may have-- may or may not know, the Tenth

12  Circuit released their expedited consideration schedule,

13  I think it was yesterday.

14           THE COURT:  August 23 I think is when they

15  set it for hearing.

16           MR. KOBACH:  Yeah.  Yeah, August 23rd is the

17  oral argument and then briefing goes January 1st--

18  sorry.  July 1st, July 21st, July 28th are the three

19  briefs, when they're due.  So it's-- it appears that the

20  Tenth Circuit intends-- well, obviously they have

21  issued-- or they do intend to expedite.  They did not

22  indicate when they would rule by, but I suppose we could

23  guess they might rule by November or somewhere around

24  there.

25           We have a pending deadline for summary

1   judgment briefs of July 15 in this case.  It occurs to

2   me that that might be-- it might be wasteful of the

3   parties' efforts and the Court's resources to brief the

4   issue, brief these merits at the same time that the

5   Tenth Circuit is considering them, when there's probably

6   a pretty good likelihood that the Tenth Circuit is going

7   to reach the merits, we don't know for sure.

8            But it would be a waste of a lot of time and

9   effort if we briefed this issue on the merits and the

10  Tenth Circuit then comes down with a-- its own

11  explanation of the merits in the case.

12           So it-- I would request that the Court

13  consider moving the deadline for summary judgment

14  briefings to December, or maybe you have a floating

15  deadline contingent on when the Tenth Circuit issues its

16  ruling, or something like that, so that we don't end up

17  briefing-- doing two full rounds of briefing when the

18  Tenth Circuit will probably have some effect on--

19  probably have a-- a controlling effect on how we write

20  those briefs.

21           THE COURT:  I agree.  I think in the

22  interest of all of our own efficiency and economy, it

23  would make sense to relax that deadline.  Let me give

24  that some thought.  I might want to-- for now, just know

25  you don't have to file summary judgment motions by

1    July 15th.  I am extending that deadline.  Let me give

2    some thought to whether I want to tie that to the date

3    that the Tenth Circuit rules or just bump it out

4    sometimes in the fall.  And we'll be in-- we might even

5    get you on the phone and be in further conversation

6    about that, too.

7                  MR. KOBACH:  Thank you, Your Honor.

8                  THE COURT:  Okay.  All right.  Mr. Cox.

9                  MR. COX:  If it please the Court.  Judge

10   Robinson, Brian Cox, attorney for co-defendant,

11   Secretary of Revenue Nick Jordan.

12                 Much of what I was going to tell you I think

13   has already been said, and I'll endeavor not to repeat.

14   There were several points I wanted to make, I'll

15   summarize those now.

16                 A class is not necessary.  But in any event,

17   the timing of the requested class certification is

18   premature because of dispositive motions.  You alluded

19   to that moments ago.

20                 We've also raised the point that there are

21   no common questions of law or fact in this case.  We've

22   also raised the point in a very serious way that the

23   class representatives, the purported class

24   representatives in this case, are not qualified and

25   they're not typical.  We've also raised the point that

 1    class counsel in this case has not satisfied the

 2    rigorous analysis the Court is required to shine on

 3    those allegations, sufficient for them to be qualified

 4    as class counsel.

 5            And finally, and-- and respecting the

 6    Court's decision, as we do, on the motion for

 7    preliminary injunction where you did address in-- in

 8    part Secretary Jordan's Eleventh Amendment argument, we

 9    have also raised the argument in the context of the

10    class motion that certifying a class against Secretary

11    Jordan would violate the Eleventh Amendment.

12            With regard to the first point, Your Honor,

13    I'm not sure I have much to add to what Secretary Kobach

14    had to say about class certification not being necessary

15    in this case.  Frankly, I don't really think, although

16    they've-- they've said it to the contrary today, I

17    didn't even think the plaintiffs disagreed too much with

18    that.  Mr. Ho's comment at the preliminary injunction

19    hearing, which is cited in the papers, the last point in

20    their reply brief suggested the case can go ahead even

21    without class certification.

22            We've cited in our papers, as has Secretary

23    Kobach, Tenth Circuit authority that suggests that class

24    certification is not necessary in a case like this.  So

25    I-- I don't really think I have much to add, except to

 1    suggest that adding class certification with all the

 2    duties that I'm guessing would be attendant to that

 3    would serve no purpose other than to increase the

 4    Court's time and that of counsel and the time and

 5    expense, which thus far I can tell you-- and the Court

 6    has said it's been considerable for you, it's been

 7    considerable for counsel as well.

 8              The second point I wanted to make, Your

 9    Honor, is class certification at this point is

10    premature.  And I-- I heard what you said, that you plan

11    to get out a ruling on the remnant of Secretary Jordan's

12    motion to dismiss.  Appreciate that.

13              We have what we consider still to be some

14    important points in that motion to dismiss, not the

15    least of which is, although Magistrate O'Hara - it seems

16    like such a long time ago - during the scheduling

17    conference gave the parties a due date to file any

18    motions to amend.  That time has come and gone.  There

19    is only one pleading that's-- that's here, the first

20    amended complaint.  And Secretary Jordan is still

21    mentioned in that complaint only one-- only twice.  Once

22    in the caption and once in a literally perfunctory

23    statement that he's the head of the Department of

24    Revenue.

25              As I've argued before, and let me just urge

1    very briefly, the use of the word "defendants" is-- is

2    used in that first amended complaint multiple times,

3    dozens of times.  We simply don't know what allegations

4    are being brought against Secretary of Revenue.  And

5    given some amended discovery responses that we received

6    from the plaintiffs, it seems like it's still evolving.

7    And all we're asking for is fair notice.

8              Judge, the-- the argument that we're making

9    on this point, though, goes one step further.  And that

10   is that class certification should not be considered

11   until all dispositive motion are considered.  In this

12   case, you only have a motion to dismiss filed by

13   Secretary Jordan.  The Court has indicated that you're

14   going to rule on that pretty quickly.  There's also--

15   and we just talked about this, moving the summary

16   judgment deadline.  And I'm-- I'm pretty sure that

17   Secretary Jordan, if we're still in the case, is going

18   to file a motion for summary judgment.  And I believe

19   that can be put off as well.

20             We've cited in our papers some best

21   practices.  We've cited the Manual For Complex

22   Litigation, and we've also cited a Pocket Guide For

23   Judges on class actions, which suggest that that's--

24   that's a very good way of proceeding in these cases,

25   suggesting that the Rule 23 caveat-- that class

 1    certification decisions should be made as early as

 2    practicable.  Well, practicability I think needs to take

 3    into account a-- a shining of the light on what are the

 4    true issues in the case and what parties actually need

 5    to be in the case.

 6              The true issue in this case is whether the

 7    DPOC law, K.S.A. 25-2309(l), violates the NVRA.  The

 8    rest of it-- I mean, if that issue is resolved--

 9    certainly if that issue is resolved in favor of the

10    plaintiffs, everything else seems to fall in place.

11    And-- and for that reason, Judge, and the other reasons

12    I've said, I think that all dispositive motions should

13    be considered and ruled upon before class certification

14    decision is made.

15              The third point I wanted to make, Judge, and

16    it's-- it's requisite in-- under Rule 23 that there have

17    to be common questions of fact or law.  And I've-- I've

18    just now alluded to this.  I urge the Court to take the

19    plaintiffs at their word in their reply brief, reply on

20    the class papers.  At Page 15, quoting here, "There's

21    one common question of law that prevails throughout this

22    litigation.  That Defendant Jordan repeatedly fails to

23    acknowledge whether the DPOC law violates the NVRA."

24              Okay.  But I'm afraid that that's not what

25    the plaintiffs have said elsewhere in their papers.  I

1    would note in that regard that the evidence that you

2    already have in this case, as from the preliminary

3    hearing injunction, is that the Department of Revenue

4    does not require documentary proof of citizenship of

5    persons who are registering to vote.  We will require

6    that of citizens when they want to apply for an original

7    license.  But as you heard last time we were here from

8    Mr. Parks, that's not the case.

9           And, in fact, although this may have been on

10   a different point in the Court's preliminary injunction

11   order, the Court did note when you were talking, albeit

12   about a different issue, about the relative burden of

13   your order on Secretary Kobach vis-a-vis Secretary

14   Jordan.  The Court did appear to agree at least to a

15   certain extent by stating, "The injunction appears to

16   require nothing more than the status quo enforcement

17   efforts by DMV employees who currently do not

18   affirmatively request DPOC from motor-voter registration

19   applicants."

20          If we could hold to that course, Judge, that

21   would be great.  And again, I'm-- I'm talking about the

22   lack of common questions.

23          THE COURT:  But that would ignore the claim

24   of lack of coordination under the NVRA, which is one of

25   the NVRA claims plaintiffs bring, which I-- as I read

1    these, is directed at Secretary Jordan as much as

2    Secretary Kobach.

3              In other words, that-- the argument being

4    that the NVRA requires contemporaneous registration with

5    applications for driver's licenses.  And by the DMV not

6    asking for or accepting proof of citizenship at the time

7    somebody applies for a renewal license, that's a lack of

8    coordination under the statute that belies the intent of

9    the statute to allow for contemporaneous registration.

10             MR. COX:  Judge, we don't-- at Revenue, we

11   don't consider we have statutory authority to request

12   documentary proof of citizenship of people who are

13   coming in for renewals.  This may not--

14             THE COURT:  There's a Kansas statute that

15   inasmuch says that the State of Kansas has that

16   authority, that they require it.

17             MR. COX:  It-- it may suggest proof of

18   lawful presence, Judge, which is-- is not the same thing

19   as documentary proof of citizenship.

20             THE COURT:  Well, the law says documentary

21   proof of citizenship, not proof of-- I mean, you're

22   talking about the requirement that was already in place

23   in terms of applying for a driver's license.  But this

24   is, of course, the law that has to do with voter

25   registration.

1          MR. COX:  Of-- of course, Your Honor.  And

2    our obligations under that law are to accept

3    applications to register to vote and send those on to

4    the Secretary of State's Office.  And nobody is making

5    any claim in this case that we're not doing it.  The

6    rest of it is transmission of information and-- and

7    receipt of documentary proof of citizenship.  If it's

8    required on an original or if it's offered up

9    voluntarily on a renewal, I think is something quite

10   different.  And I'm not sure, Judge, that this

11   coordination suggestion that the Court--

12          THE COURT:  It's not a suggestion.  I mean,

13   that's-- I'm just telling you one of the claims under

14   the NVRA that plaintiff is bringing is the lack of

15   coordination but-- between arms of the State of Kansas

16   that would allow for contemporaneous registration at the

17   time somebody is applying for their driver's license,

18   renewal or-- or new.  But in this instance, it's-- it's

19   renewal is the issue.

20          MR. COX:  I meant no disrespect, Judge.  It

21   was just an improper word I used.  I'm not sure I see

22   the lack of coordination being pleaded in this case.  It

23   came out the last time we were here.  They make a duty

24   to ensure argument in their first amended complaint, but

25   I'm-- I'm not sure - and counsel can, of course, correct

1    me if I'm wrong on this - about this-- this duty to

2    coordinate.  I'm not sure that's in their first amended

3    complaint.

4              THE COURT:  So you do-- part of your

5    12(b)(6) motion goes to this argument that they have not

6    stated a claim under that provision of the NVRA?

7              MR. COX:  Yes, Your Honor.

8              THE COURT:  Okay.  All right.  Well, again,

9    I'm going to be ruling on all of that shortly.

10             MR. COX:  Certainly.  Your Honor, in a

11   perfect world perhaps documentary proof of citizenship

12   could be required if-- and again, I urge-- if Revenue,

13   the Department of Revenue, DMV, had statutory authority

14   on renewals, but-- and again, this may not be the

15   Court's concern, but I can tell you if we for some

16   reason instituted that tomorrow and made everybody that

17   came in on a renewal to present documentary proof of

18   citizenship, Secretary Jordan will never get off the

19   phone from people complaining about that, perhaps the

20   governor's office.  We simply don't require that.  And

21   to institute that immediately for purposes of this case,

22   one, I think is not anything that we can do.  And two, I

23   don't believe it's required.

24             I don't believe the NVRA, Your Honor,

25   requires that documentary proof of citizenship be

1    presented during a motor-voter transaction.  In fact,

2    that's somewhat inconsistent with the plaintiffs' claim

3    that-- that-- at least as they've pleaded it, they seem

4    to think that we're requiring DPOC to register to vote

5    or to apply to register to vote during a motor-voter

6    transaction.

7              Judge, I-- I believe I'm correct on that,

8    that we do not have statutory authority to request

9    documentary proof of citizenship as distinguished from

10   proof of lawful presence for a renewal, but I'll

11   certainly check on that.

12             THE COURT:  Well, I guess I just didn't

13   understand how the State of Kansas can require DPOC

14   consistent with the contemporaneous registration-- I

15   think NVRA contemplates contemporaneous registration.

16   And I don't understand how one arm of the State of

17   Kansas-- well, the Kansas Legislature can pass a statute

18   that says you've got to provide proof of documentary

19   citizenship.

20             MR. COX:  For driver's license purposes.

21             THE COURT:  And the DMV to say, "We won't

22   ask for or accept it," that's essentially what you're

23   saying.  We don't have authority, we're not asking for

24   it, we're not accepting it.  Therefore, you can't

25   register--

1            MR. COX:  No.

2            THE COURT:  -- when you come to apply for

3    your driver's license renewal.

4            MR. COX:  Judge, I-- I really think there's

5    a distinction between what you--

6            THE COURT:  I mean, you're one sovereign,

7    are you not?  Secretary Jordan, Secretary Kobach, State

8    of Kansas, one sovereign.  The statute says the state

9    will coordinate its efforts under the-- you know, the

10   Motor-Voter Act, will coordinate its efforts.

11           I just-- I'm having a hard time

12   understanding your argument that this part of the State

13   of Kansas doesn't have to do whatever we have to do to

14   implement a state statute to make sure that it's in

15   compliance with a federal statute that requires

16   contemporaneous registration.

17           MR. COX:  Judge, I-- I don't believe the

18   NVRA and its contained motor-voter provisions requires

19   us to institute a policy to-- to require documentary

20   proof of citizenship.  In fact, that's completely

21   contrary to the plaintiffs' position in this case.  I

22   don't think--

23           THE COURT:  When you say "us," you're only

24   speaking for Secretary Jordan?  You're not speaking for

25   the State of Kansas that's enacted a law?

1            MR. COX:  Your Honor, I come into this Court

2    representing a single defendant, and that's Secretary of

3    Revenue Nick Jordan, albeit in his official capacity.

4    No, I do not speak for anybody else.  And certainly the

5    position we've taken in our papers is Secretary Kobach

6    is the chief election official of the State of Kansas

7    and I believe has the duty to coordinate those

8    activities.

9            THE COURT:  Coordinate with who?

10           MR. COX:  Well, Your Honor, the Department

11   of Revenue is not the only entity that has some duties

12   under the NVRA, as I understand, although I don't

13   profess to be any sort of expert.  There are other ways

14   to register to vote and I believe that there are other

15   agencies that you can go, for example social service

16   agencies, to also register to vote.

17           But, Judge, coordinating duties under the

18   NVRA I think is different than saying that the

19   Department of Revenue now has a duty to require

20   documentary proof of citizenship of motor-voter

21   applicants.  And that's another point I wanted to make,

22   Judge.  At the motor-voter transaction, it's not a

23   registration, it's an application to register.  And I

24   think that comes from the plain language of the NVRA.

25           So, Judge, maybe when real ID comes in, and

1    I'm not an expert on this, maybe the problem will be

2    solved down the line and everybody will be required to

3    do it.  But to-- to suggest that we need to-- to do this

4    tomorrow, to do something that the plaintiffs don't even

5    say we're permitted to do, I-- I don't think is

6    something that's on the table.

7                THE COURT:  Well, you're going to have to

8    figure it out, because as of 11:59 p.m. tonight, you

9    know, that's what's going to happen, I mean,

10   prospectively.  And, you know, in the meantime,

11   Secretary Kobach has represented that there have been

12   policies that have been changed that I think are

13   intended to work prospectively and maybe retrospectively

14   as well to some extent, I don't know.  Not to the full

15   extent that's asked for in this case obviously.

16               MR. COX:  We've-- we've read over the

17   Court's order, and I didn't read in it that it was a

18   requirement that the Department of Revenue was going to

19   be required to require documentary proof of citizenship

20   of renewals.

21               THE COURT:  Well, no, because the law is not

22   going to be effective given the injunction, but--

23               MR. COX:  Absolutely, Your Honor.  If the

24   Court needs additional briefing from me on that point, I

25   can certainly provide it.  But I'm not being persuasive

1   today on that point.  I don't think the law as it's

2   presently written requires us at a motor-voter

3   transaction to require documentary proof of citizenship

4   on a renewal.  These people when they come in on a

5   renewal, Judge, they're already in the system.

6                THE COURT:  Some are not in the system.

7                MR. COX:  Well--

8                THE COURT:  Because they've never registered

9   to vote before or they registered before 2013.

10               MR. COX:  Well, let me use--

11               THE COURT:  Long before--

12               MR. COX:  Let me use myself.

13               THE COURT:  Or maybe they haven't-- I guess,

14   no, they haven't registered before 2013.  Because if

15   they had, they-- they would be grandfathered in, I

16   think.

17               But there are people, at least according to

18   the plaintiffs, there are people that get caught with

19   wanting to contemporaneously register, apply to

20   register, whatever you want to call it, when they apply

21   for a renewal license.  But they are not in the system

22   because either they weren't registered before, this is

23   the first time they've-- they've tried to register to

24   vote, or maybe they've moved out of state or in state.

25   I mean, there may be other circumstances, I don't know.

1          But for sure if they've never registered to

2     vote and they show up at the DMV to get a renewal

3     driver's license and they don't have DPOC and they don't

4     present DPOC, and this is in my last two orders, they

5     are on suspense status.

6          MR. COX:  Well--

7          THE COURT:  They are not registered.  They

8     go immediately into suspense status.  And then after 90

9     days, cancellation.

10          MR. COX:  Okay.  And, Judge, I would be-- if

11     I had never voted before and went in tomorrow if my

12     renewal was coming up, there would not be documentary

13     proof of citizenship on me.  Because when I first got my

14     license 40, 45 years ago, it wasn't required.  And I

15     suppose there are a lot of people that are in that

16     situation.

17          So if I was registering to vote for the

18     first time pursuant to these streams of information, I--

19     I wouldn't be on the suspense list at the Department of

20     Revenue.  It's the Secretary of State that puts people

21     on the suspense list, not the Department of Revenue.

22     But Your Honor is correct about that in the renewals.

23     But there's nothing in the NVRA--

24          THE COURT:  That's a trigger.  They go on

25     the suspense list because they have come in, they've

1    indicated a desire to register to vote.  And no

2    documentation is requested or received from them at

3    that-- at that point.  And then they go on the suspense

4    list.  They've never had a real opportunity to provide

5    proof of documentary citizenship.  It wasn't asked for.

6    And if it had been-- it wasn't.  But if it had been, it

7    wouldn't be received because you-- you're telling me

8    that you have no authority to receive proof of--

9    documentary proof of citizenship at the DMV--

10                   MR. COX:  To require--

11                   THE COURT:  -- for renewal applicants.

12                   MR. COX:  To require it, Your Honor.  We

13   will-- if a person comes in and for whatever reason on a

14   renewal says, "I have been reading about this in the

15   news, I just brought my birth certificate in," we will

16   accept it and scan it.

17                   THE COURT:  That's a new development.  That

18   was not what was happening at the time this case was

19   filed, was it?

20                   MR. COX:  Your Honor, that process,

21   colloquially called "lay it play it," I am led to

22   believe has been in effect for a number of years.

23   That's not a requirement on renewal.  You don't have to

24   present-- at least for the driver's license part of it,

25   certainly not for the voting part of it, you don't have

1  to present this DPOC.  But if a person comes in and for

2  whatever reason produces it, our people are told that's

3  something that you're going to need to scan in and--

4        THE COURT:  Well, that's not what the

5  evidence has been in this record.  The evidence in this

6  record has been that your people don't ask for it.  And

7  I recall there was one particular plaintiff who tried to

8  show his passport and was told, nope, we're not going to

9  take it and we're not going to record it.

10        MR. COX:  Well, Your Honor, the NVRA doesn't

11  dictate that the Department of Revenue is required to

12  open up a motor-voter transaction that has already

13  closed.  I think you may be referring to Mr. Hutchinson.

14  At the time that, for whatever reason, he became aware

15  that he might go back to the DMV office and offer up a

16  passport, there's nothing that requires us to open that

17  transaction back up and receive that.

18        I think what happened in that case was our

19  people took a look at it and they gave him a form for

20  him to use to send.  I don't know whether it was a

21  federal form or a state form.  But, Judge, there's

22  nothing in the NVRA-- the plaintiffs have not cited

23  anything that says that for a completed motor-voter

24  transaction that's closed, if somebody comes in two

25  years later, we've got to open it back up.

1          THE COURT: Well, there were also plaintiffs

2  that weren't closed. They were there to get their

3  renewal applications and the paperwork was not requested

4  of them, and at least one or two of them said they

5  actually had the requisite paperwork. But it wasn't

6  asked for, they weren't on notice to provide it. They

7  left the DMV not registered, believing they were

8  registered. That's why we're here, because there were

9  people in that category. Plaintiffs allege.

10          MR. COX: Your Honor, we-- we believe--

11          THE COURT: So I-- you know, we've-- we've

12  gone back and forth enough. But the point is, there are

13  dispositive motions, there's, you know, qualified

14  immunity raised by Secretary Jordan. I'm just having a

15  hard time with the argument that you have raised

16  consistently, which is this part of the State of Kansas

17  doesn't have to coordinate with this part of the State

18  of Kansas, even though the State of Kansas has

19  implemented a law that requires proof of-- documentary

20  proof of citizenship. But that the, you know, different

21  arms of the state cannot coordinate to effectuate a

22  system that allows people to actually do that when they

23  register-- or when they're applying for driver's

24  licenses. That's a hard sell. And it's still a hard

25  sell.

1           All right.  What else do you need to tell

2    me?

3           MR. COX:  Your Honor, in that regard, we've

4    alleged that plaintiffs are not adequate or typical.

5    The Court has indicated a desire to read all of the

6    depositions.  I'm not going to go very far into that.

7           I agree with what Secretary Kobach had to

8    say about the *Better* decision.  It's from this Court,

9    it's on Rule 23.  The securities aspect of it, as the

10   plaintiffs suggest, I don't believe have anything to do

11   with it.  It's a primmer on what's required for adequate

12   representation.  And we've cited that at length in our

13   papers, as has Secretary Kobach, about the inadequacy of

14   all of the remaining five plaintiffs, none of whom I

15   guess are here today.

16           Judge, there's-- there's a requirement,

17   incentive to litigate the case, knowledge, means, and

18   capability.  The four salient points I wanted to make

19   about that is this:  There's been no contact between the

20   class reps.  They have provided no guidance for their

21   counsel.  They have only very limited knowledge of the

22   matter, including the complaint that's been filed on

23   their behalf.  And they have-- this hasn't been said

24   yet, but they have no knowledge of their fiduciary

25   capacity as representative plaintiffs.  And we think

1    that's very important.

2            Plaintiffs counsel is not adequate, Judge.

3    We've made that argument in our papers.  We thought that

4    that in the reply brief the plaintiffs would-- would

5    provide the Court more authority, more citations to

6    cases they've been involved in.  It's a rigorous

7    analysis.  Conclusory allegations are insufficient.

8    Rule 23 contains very specific requirements as to what

9    class counsel needs to show, and that's simply not been

10   done in this case.

11           Finally, Judge, I again say, as I have

12   before, that we respect the Court's decision on the

13   preliminary injunction order and all of its parts, but

14   the class that is proposed in this case against

15   Secretary Jordan, and there's been no attempt to amend

16   that, the class that has been proposed is of motor-voter

17   registrants who have come and gone.  And I simply don't

18   see against the Eleventh Amendment that a class of that

19   type can be certified against Secretary Jordan because

20   they've come and they're gone.

21           I'm-- I'm sure the Court is not requiring

22   those folks to come back in to the motor-voter arena and

23   do that all over again.  Those are folks that have

24   already gone out the door and they're waiting to be

25   registered to vote or maybe they already have been

1   because of the Court's order.

2            So we urge again on that point in the

3   context of the issue that we're about today, class

4   certification, that certifying that class that the

5   plaintiffs have named would violate the Eleventh

6   Amendment because it would look backwards.

7            Judge, those are the-- the points I wanted

8   to make.  There were other points made about the notice,

9   we-- and I understand you've-- you've ruled on that in

10  part in your-- in your preliminary injunction order, but

11  the purpose of that notice, regardless of who it goes

12  to, is supposed to permit the recipient to attempt to

13  correct the errors that are claimed.

14           And Secretary Jordan, although he's copied

15  on it, there's no mention of deficiencies in the

16  motor-voter process in that notice.  And we've urged and

17  continue to urge that for that reason the notice that--

18  that is claimed here is not sufficient under the NVRA.

19           I don't know whether the Court has any more

20  questions for me or whether I have any more guidance for

21  the Court, or wisdom.  But if you have further

22  questions, Your Honor, I'll certainly stand for those.

23  And I appreciate your-- your questions.

24           If there's some further brief that-- that

25  the Court may need on our authority to-- Revenue's

1   authority to require, as a matter of Kansas law, further

2   documentation on a renewal, I'm going to go back and

3   look on that.  If the Court would care for me to submit

4   a-- a short supplemental brief on that point, I will.

5   And if the plaintiffs think that's-- if that's permitted

6   or required, I'd like to see their authority on that.

7           THE COURT:  Well, this is really subsumed I

8   think in the dispositive motions that are pending in

9   front of me.  I mean, this-- this is part of the

10  argument that you make for your immunity argument, your

11  12(b)(6) argument on the coordination claim.  I don't

12  know that I need any further briefing.  But again, I'm

13  going to get to it pretty quickly.  But if you want to

14  submit something additional in the next five days, you

15  can do that.

16          MR. COX:  Thank you, Your Honor.  I'll

17  certainly do that.  And thank you for your patience

18  today.

19          THE COURT:  Okay.  Thank you.  Mr. Bullock,

20  I think you said nothing?

21          MR. BULLOCK:  Nothing, Your Honor.

22          THE COURT:  Other than your papers.  All

23  right.  And, Ms. Waldman, was there anything else you

24  had?

25          MS. WALDMAN:  Yes.  Yes, Your Honor.

 1    There's a few points I'd like to make in response.

 2         Your Honor, I'd first like to address this

 3    notion of class certification needing to be necessary in

 4    order for the class to be certified.  The plaintiffs are

 5    not asserting that class certification is necessary or

 6    required in this case.  As we argue in our brief and as

 7    they pointed out, the case could move forward with the

 8    individual-- with the individual plaintiffs acting in

 9    their individual capacity.

10         The authority that the defendants cite to

11    for this necessary requirement is not-- does not stand

12    for the proposition that for a class to be certified at

13    the class certification stage, it needs to be necessary.

14    The case that they cite to, the *Kansas Health Care* case,

15    was an appeal of a grant of a preliminary injunction.

16    And there, the issue was whether it would've been

17    necessary for the Court to certify a class before the

18    preliminary injunction was issued, which is where this

19    case was several weeks-- several months ago at this

20    point when the Court had the hearing on the preliminary

21    injunction motion.

22         And the Court on-- the Court on appeal said

23    it was appropriate for the district court to issue a

24    preliminary injunction because it wasn't necessary for

25    the class to be certified because the class-wide relief

1    could be-- could be granted.  And, in fact, Mr. Kobach

2    read to you from that opinion.  And he-- he read the

3    first sentence of a paragraph, which cited to several

4    cases.  And each of those cases also dealt with

5    preliminary injunctions.

6           And the Court went on to say, after the

7    portion that he read, "We think it is clear that that is

8    the case here.  As the district court held, we have no

9    reason to doubt that defendants would apply any changes

10   made to the reimbursement formula uniformly to nursing

11   homes in Kansas.  We, therefore, affirm the district

12   court's conclusion that class certification was

13   unnecessary in this case."  At that time-- it doesn't

14   say this, but it was referring to at the time when it

15   was issuing a preliminary injunction.

16          And so we don't think, Your Honor, that--

17   that this notion of necessity is relevant to the

18   determination of whether or not to-- to certify a class.

19          I would also just point Your Honor to the

20   commentary from the Federal Rules Advisory Committee to

21   Rule 23(b), which notes that-- that civil rights

22   actions, such as this one, are exactly the type of case

23   that are-- are ripe for certification as-- as class

24   actions.

25          Turning back briefly to the *Better* case,

1   which Defendant Kobach spent a significant amount of

2   time on.  Your Honor, we don't dispute the factors that

3   are relevant in a securities class action are similar to

4   the factors that are relevant in certifying a class

5   here.  The four requirements under 23-- under Rule 23(a)

6   and the requirements of 23(b) are similar.

7           What we're-- what we're saying is that when

8   you take the-- the relevant standards and apply them to

9   the facts at hand, there's a different standard to be

10  applied.  And there's a different level of scrutiny that

11  you would give plaintiffs, proposed lead plaintiffs, in

12  a class action of this nature and in the securities

13  class action.  And we think that our plaintiffs are more

14  than adequate to represent the interest of absent class

15  members in a civil rights case such as this one.

16          THE COURT:  Well, I'll read all of the

17  depositions.  It sounds like it's really-- my decision

18  is going to fall on the entirety of what these

19  plaintiffs testified to in their depositions.

20          MS. WALDMAN:  Sure.  And, Your Honor,

21  they've-- they've-- the defendants keep pushing this

22  notion that-- that our plaintiffs are just pawns and

23  that-- that this is somehow demonstrated by the fact

24  that they haven't spoken to each other.  But the fact

25  that our plaintiffs haven't spoken to each other does

1    not mean that they have not expressed to class counsel

2    their views on the-- the voting rights issues, on the

3    issues in this case, and how they believe things-- how

4    the case should go.

5            Mr. Kobach referred to Mr. Hutchinson's

6    testimony.  And-- and I believe a reference that he made

7    to potentially indicating citizenship on driver's

8    licenses.  I think when you read Mr. Hutchinson's

9    testimony as a whole, you'll see that what Mr.

10   Hutchinson is focused on is the fact that he doesn't

11   believe that the regulations and the procedures in the

12   State of Kansas are in line with those of the federal

13   government.  And I believe he testifies to this on

14   Pages 27 to 28 of his deposition and again later at 34

15   and 35 of his deposition.  And he makes clear that,

16   again, Mr. Hutchinson doesn't disagree with-- nor do any

17   of the plaintiffs, that you should be a-- that you're

18   required to be a citizen to register to vote.

19           What's at issue here is the method that you

20   have to prove-- through which you prove your

21   citizenship.  And all of the plaintiffs here uniformly

22   believe that the method you have to use-- that you

23   should be required to use in the state of Kansas is

24   what's required in every other place as being the least

25   burdensome method, which is signing an attestation under

1   penalty of perjury that you're a United States citizen.

2           Turning just briefly to the notice issue,

3   because I know Your Honor has heard a lot about it.  Mr.

4   Kobach made-- discussed the notion of not being able

5   to-- to piggyback on the notice requirement that came

6   out in the *Scott* case.  It just-- this-- it doesn't seem

7   accurate that in a case that can be properly certified

8   as a class action, that plaintiffs can't-- that this

9   notion that if you didn't sign a letter, you can't be a

10  plaintiff.  It's well-settled that cases seeking to

11  invoke rights under the NVRA can be certified as class

12  action and, therefore, all those individuals are

13  benefiting from the notice that was-- that was provided

14  by the named plaintiffs.

15          And we have several citations in our brief,

16  Your Honor, to-- to cases that-- that demonstrated that

17  it's appropriate for a class to be certified.  And I

18  believe one of them is actually from the same-- same

19  court that issued the *Scott v. Schedler* opinion.

20          I think Mr. Kobach also talked about some of

21  the larger standing issues, and he made reference to our

22  arguments regarding statutory standing.  The purpose of

23  including that argument in our brief was directly

24  related to the argument he had made in his opposition to

25  class certification about whether there was-- there was

 1   self-manufactured injury here.  And it didn't

 2   necessarily go to the notice of standing for purposes of

 3   that notice.

 4           If there are any other particular points

 5   Your Honor would like me to respond to from either of

 6   the defendants' arguments, I'd be happy to do so.

 7           THE COURT:  No, I don't believe so.  Thank

 8   you.

 9           MS. WALDMAN:  Thank you.

10           THE COURT:  All right.  I will consider this

11   under submission.  So there's the declarations, I have

12   the depositions.  Is there anything else that you can

13   think of that should be part of this?

14           MS. WALDMAN:  Oh, Your Honor, if-- if

15   Secretary Jordan does put in additional briefing, we'd

16   just ask the Court for an opportunity, maybe ten days,

17   to respond to whatever he puts in.

18           THE COURT:  Today is the-- Secretary Jordan,

19   why don't you submit whatever you're going to submit

20   seven days from today.

21           MR. COX:  Yes, Your Honor.  Seven calendar

22   days?

23           THE COURT:  Yes.  And if you'll submit seven

24   calendar days thereafter, that would be 14 days from

25   today, I can--

15-9300/16-2105  Keener v. Kobach/Fish v. Kobach  06.14.16  113

1          MS. WALDMAN:  Without having a calendar in

2    front of me, Your Honor, I think our seven calendar days

3    might include the 4th of July holiday.

4          THE COURT:  All right.  Eight calendar days.

5          MS. WALDMAN:  Okay.  Thank you.

6          THE COURT:  All right.

7          MR. KOBACH:  And, Your Honor, does the Court

8    have the Bednasek deposition, the entirety of it yet?

9    If not, we can submit it.  I think the Fish plaintiffs

10   may have just given you--

11         MR. WOODS:  I'm going to submit it.  I'll

12   file all depositions.

13         MR. KOBACH:  From your three plaintiffs?

14         MR. WOODS:  Yes.

15         MR. KOBACH:  Okay.

16         THE COURT:  Okay.  These are-- oh, okay.  I

17   thought these were just declarations.

18         MR. JOHNSON:  Your Honor, there aren't three

19   depositions.  The defendants didn't depose Cromwell and

20   Keener.

21         MR. KOBACH:  Sorry.  There's only one.

22         THE COURT:  I'm sorry?

23         MR. JOHNSON:  We will submit the Bednasek

24   deposition.  The defendants did not depose Mr. Cromwell

25   or Mr. Keener.

1           THE COURT:  Okay.  No, I don't have that,

2    but you're going to submit the entire deposition to me.

3    All right.  I have the depositions of Stricker,

4    Hutchinson, Fish, Caskey, Bucci.  And then I have-- and

5    Boynton.  And then I have an affidavit of Caskey and

6    declarations of Boynton, Bucci, Fish, Stricker.  It

7    looks like that's it.  Also Ortiz, but he's no longer in

8    the case.

9           All right.  So do you think I have

10   everything?  Okay.  Thank you.  All right.

11          MR. HO:  Your Honor, if I may.

12          THE COURT:  Yes.

13          MR. HO:  One last item that was raised by

14   Secretary Kobach with respect to the summary judgment

15   deadline.

16          THE COURT:  Oh.

17          MR. HO:  There are other deadlines in July

18   as well, for instance I think some pretrial filings that

19   even though trial isn't set before May, the scheduling

20   order indicates would be due in July.  And it's probably

21   appropriate if we're going to put off the summary

22   judgment--

23          MS. WALDMAN:  June 26th.

24          MR. HO:  Oh, June 26th.  So it's actually

25   this month.  If we're going to put off the summary

15-9300/16-2105  Keener v. Kobach/Fish v. Kobach  06.14.16  115

1    judgment deadlines, it probably makes sense to also put

2    those off as well if the other parties are in agreement

3    with that.

4              MR. KOBACH:  We're in agreement.

5              MR. COX:  Of course.

6              THE COURT:  Let's suspend the remaining

7    deadlines under the scheduling order.  And we'll

8    schedule-- I'll either have Judge O'Hara meet with you

9    or I'll meet with you and we'll-- we'll schedule some

10   new deadlines once we get a better sense of where we're

11   at, once I've ruled on the dispositive motions and

12   probably once we hear from the Tenth Circuit.

13             MR. BONNEY:  Your Honor, that includes the

14   final pretrial conference that is scheduled for

15   July 1st; is that right?

16             THE COURT:  Correct.

17             MR. BONNEY:  All right.  Very good.

18             THE COURT:  I'll let Judge O'Hara know that

19   we're suspending all the deadlines in the scheduling

20   order.

21             MR. HO:  Well, just for a point of

22   clarification, Your Honor.  Are we also suspending the

23   discovery deadlines?  Because we're set to close

24   discovery at the end of-- I think next Monday.  And I

25   think we're fine with that, it's just the future filing

1    deadlines that we--

2              THE COURT:  Yeah, I think you should proceed

3    with discovery.  I wasn't aware the discovery deadline

4    was closing that quickly.  But yeah, I think you should

5    finish discovering the case.  I'm just trying to avoid

6    you all starting to file a lot of things that may

7    ultimately not be a good use of your time or mine.

8              So, yeah, proceed with discovery, but

9    nothing else.  We'll hold the scheduling order in

10   abeyance and then we'll enter a new one.  And I'll talk

11   to Judge O'Hara about it and see if he's going to do it.

12   I'll probably do it, but we'll be back in touch with you

13   about that.

14             MR. HO:  Thank you, Your Honor.

15             THE COURT:  Okay.  Thank you.

16             (4:05 p.m., proceedings recessed).

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4        I, Kelli Stewart, a Certified Shorthand Reporter and

5    the regularly appointed, qualified and acting official

6    reporter of the United States District Court for the

7    District of Kansas, do hereby certify that as such

8    official reporter, I was present at and reported in

9    machine shorthand the above and foregoing proceedings.

10       I further certify that the foregoing transcript,

11   consisting of 116 pages, is a full, true, and correct

12   reproduction of my shorthand notes as reflected by this

13   transcript.

14       SIGNED June 30, 2016.

15

16

17

18            /s/ Kelli Stewart
                                                       _____

19            Kelli Stewart, CSR, RPR, CCR, RMR

20

21

22

23

24

25