## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STEVEN WAYNE FISH, et al., on behalf of themselves and all other similarly situated,** | |
| **Plaintiffs,** | **Case No. 16-2105-JAR-JPO** |
| **v.** | |
| **KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas, et al.,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This case is brought on behalf of a putative class of Plaintiffs challenging the Kansas Documentary Proof of Citizenship ("DPOC") law and a related regulation under the National Voter Registration Act ("NVRA") and the United States Constitution.  On May 17, 2016, the Court issued an extensive Memorandum and Order granting in part Plaintiffs' motion for a preliminary injunction barring enforcement of the DPOC law until this case could be decided on the merits.  The Court's injunction applied classwide.  Now before the Court are Plaintiffs' Motions for Class Certification (Docs. 3, 77).  The Court heard oral argument on June 14, 2016.  Having fully considered the arguments and evidence presented by the parties on the briefs and at the hearing, the Court denies the motion, as explained more fully below.

## I.      Background

Under Kansas law, only United States citizens are eligible to register to vote.[1]  And legally qualified voters must register in order to be eligible to vote.[2]  The Secure and Fair

---

[1]Kansas Constitution art. 5, § 1.

Elections Act ("SAFE Act") became law in 2011.  It requires voter registration applicants to submit documentary proof of citizenship ("DPOC") at the time they apply to register to vote. The statute provides for thirteen different forms of identification to meet the requirement, that must be shown in order to complete an applicant's voter registration.[3]  The DPOC requirement was made effective January 1, 2013.[4]

The Kansas Election Voter Information System ("ELVIS") database contains a statewide list of every registered voter, every voter registration applicant, and everyone who used to be a registered voter but was subsequently cancelled.  If an applicant has not provided DPOC, or if the application is otherwise missing required information, the record is designated as "in suspense" or "incomplete" until the application is completed.

Defendant Kobach promulgated K.A.R. § 7-23-15, which became effective on October 2, 2015.  The regulation applies where individuals whose registration applications have been deemed "incomplete."  Such applications are deemed "cancelled" from the State list of applicants if they do not produce DPOC, or otherwise cure the application, within 90 days of application.  When an application is cancelled due to lack of DPOC, that record is not removed from the ELVIS database.  If an applicant is in either incomplete or cancelled status, that individual is ineligible to vote.

Deputy Assistant Secretary of State Bryan Caskey submitted a declaration, explaining that part of his job responsibility is to verify the citizenship status of incomplete voter

---

[2]K.S.A. § 25-2302.

[3]*Id*. § 25-2309(l). If an applicant is a United States citizen but unable to provide one of the thirteen forms of identification listed in subsection (l), the statute allows that applicant to submit another form of citizenship documentation by directly contacting the Secretary of State's Office.  In these cases, the state election board shall give the applicant an opportunity for a hearing before assessing the evidence of citizenship to determine whether it is satisfactory.  *Id.* § 25-2309(m).

[4]*Id.* § 25-2309(u).

registration applicants.  Approximately once per month, the Secretary provides a list of names to the Department of Vital Statistics ("DVS") to compare to its database of birth certificates on file in Kansas.  The DVS shares its information on any matches with the Secretary of State, which then transmits the information to county election officials.  When the county election officials receive such citizenship information, they are authorized to change the applicants' status to "active," which adds them to the official list of registered voters.  The Secretary of State engages in a similar process with the Department of Motor Vehicles ("DMV"), periodically sending it a list of names to determine whether it possess DPOC for those individuals in its database.

Plaintiffs' Amended Complaint alleges claims under: (1) NVRA § 5 because it preempts the Kansas DPOC law; (2) NVRA § 8 because Defendants fail to ensure that voter registration applicants who completed and submitted a valid voter registration form with their driver's license application are registered to vote; (3) NVRA § 8 because the regulation allowing applicants to be cancelled in the ELVIS system removes otherwise eligible voters from the voting rolls; (4) NVRA § 10 for failure to coordinate the State's responsibilities under the Act; (5) 42 U.S.C. § 1983, based on violations of the Elections Clause in Article I, § 4, cl. 1; and (6) 42 U.S.C. § 1983, based on violations of the Privileges and Immunities Clauses.  Plaintiffs seek the following relief: a declaratory judgment that the DPOC law and K.A.R. § 7-23-15 are invalid with respect to motor-voter registrants and preempted by the NVRA; require Defendants to register the plaintiffs and all similarly situated motor voter registrants who are otherwise eligible to vote but have been either cancelled or held in suspense due to the DPOC law; enjoin Defendants from enforcing the DPOC law and K.A.R. § 7-23-15 with respect to motor voter registrants who are otherwise eligible to vote; order Defendants to verify DPOC on file with

other state agencies in the same manner as they work with the KDHE to confirm citizenship of suspended voters; and attorneys' fees and costs.

Just after filing the original Complaint, Plaintiffs moved to certify a class of individuals of otherwise eligible motor voter applicants, who are either in suspense or cancelled status for failure to provide DPOC.   After amending the Complaint on March 17, 2016, Plaintiffs filed an Amended Motion for Class Certification, seeking certification of a second class of individuals born outside of Kansas who do not have birth records on file with the KDHE or other Kansas agencies, and those who were born within Kansas but subsequently changed their name through marriage or other means while outside the State of Kansas.  This second class pertains to Plaintiffs' claim that the DPOC law and regulation violate the privileges and immunities clause under the Fifth and Fourteenth Amendments.

## II.    Discussion

Plaintiffs move to certify the following classes:

(1)  all eligible Kansas motor-voter registrants who do not currently appear on the active voter registration list due to purported failure to submit documentary proof of citizenship under Kan. Stat. Ann. § 25-2309(l).

(2)  Kansas residents eligible to vote who have submitted a registration application but do not currently appear on the active voter registration list due to purported failure to submit documentary proof of citizenship under Kan. Stat. Ann. § 25-2309(l) and who do not have documentary proof of citizenship records under their current name on file with State agencies in Kansas.

Fed. R. Civ. P. 23 governs class actions in federal court.  The court possesses significant latitude in deciding whether or not to certify a class.[5]  And whether a case should be allowed to proceed as a class action is an intensely fact-based question that is fraught with practical

---

[5]*Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (citing *Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 603 (10th Cir. 2008)).

considerations.[6]   In deciding whether the proposed class meets the requirements of Rule 23, the

Court may accept Plaintiff's substantive allegations as true, but it "need not blindly rely on

conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and

factual issues presented by plaintiff's complaints."[7]  The Court must conduct a "rigorous

analysis" to ensure that Plaintiff's putative class meets the requirements of Rule 23.[8]

    As the party seeking class certification, Plaintiffs must show "under a strict burden of

proof" that their putative class meets the requirements of Rule 23.[9]  Plaintiffs must first satisfy

all four prerequisites of Rule 23(a) by showing that (1) the class is so numerous that joinder of all

members is impracticable, (2) questions of law or fact are common to the class, (3) Plaintiffs'

claims or defenses are typical of the claims or defenses of the class and (4) Plaintiffs will fairly

and adequately protect the interests of the class.[10]  These requirements are more commonly

known as numerosity, commonality, typicality, and adequacy of representation.  If the

requirements of Rule 23(a) are met, Plaintiffs must then show that their case fits within one of

the categories described in Rule 23(b).[11]

    Plaintiffs argue that this case fits within Rule 23(b)(2), which applies where "the party

opposing the class has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole."  Under this provision: (1) Defendants' "actions or inactions must be based on grounds

---

[6]*See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).

[7]*See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999) (citation omitted).

[8]*D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quotations and citations omitted).

[9]*Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citing *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct 1184, 1194 (2013).

[10]Fed. R. Civ. P. 23(a).

[11]*See* Fed. R. Civ. P. 23(b).

generally applicable to all class members";[12] and (2) final injunctive relief must be "appropriate for *the class as a whole*."[13]   The Tenth Circuit interprets this requirement as demanding "a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification."[14]

Another consideration in the Rule 23(b)(2) analysis is whether class certification is necessary.[15]   Defendant Kobach argued at the hearing on this motion that the class certification motion should be denied because all of the putative class members will benefit from the requested injunctive and declaratory relief that is issued on behalf of the named Plaintiffs.  Cases in this circuit suggest that denying class certification on this basis is appropriate: (1) where the nature of the rights asserted require that the injunction run to the benefit of all persons similarly situated;[16] and (2) where there is little risk of the named plaintiffs' claims becoming moot during a live controversy.[17]   The District Court for the District of Columbia has observed that "[c]lass certification is particularly unnecessary where, as here, 'the suit is attacking a statute or regulation as being facially unconstitutional.'"[18]   This is because if the Court declares the statute

---

[12]*Shook*, 543 F.3d at 604.

[13]*Id.*

[14]*Id.*

[15]*Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1994); *see also M.R. v. Sch. of Comm'rs of Mobile Cnty.*, 286 F.R.D. 510, 518–521 (S.D. Ala. 2012) (collecting cases); Charles Wright, Arthur Miller, & Mary Kay Kane, Federal Practice & Procedure § 1785.2 (3d ed.); Newburg § 4:35 ("As of 2012, courts in six circuits have applied some version of necessity analysis," including the Tenth Circuit).

[16]*E.g, Aacen v. San Juan Cnty. Sheriff's Dep't*, 944 F.2d 691, 700 & n.12 (10th Cir. 1991); *Everhart v. Bowen*, 853 F.2d 1532, 1538 n.6 (10th Cir. 1988), *rev'd on other grounds sub nom. Sullivan v. Everhart*, 494 U.S. 83 (1990).

[17]*Jackson v. Ash*, No. 12-CV-2504-EFM, 2014 WL 1230225, at *6–7 (D. Kan. Mar. 25, 2014) (erring on side of class action where claims involved "ever-changing jail or prison population"); *Clay v. Pelle*, No. 10-cv-1840-WYD-BNB, 2011 WL 843920, at 7 (D. Colo. Mar. 8, 2011) (same); *Nieberger v. Hawkins*, 208 F.R.D. 301, 318 (D. Colo. 2002) (finding necessity doctrine does not apply because patient-plaintiffs could be discharged, and "the continuation of the ordered relief should not depend on Plaintiffs finding patients willing to take up the suit.").

[18]*Mills v. District of Columbia*, 266 F.R.D. 20, 22 (D.D.C. 2010) (quoting *Alliance to End Repression v. Rochford*, 565 F.2d 975, 980 (7th Cir. 1977)).

unconstitutional, government officials must discontinue enforcement, which would apply to all potential class members.[19]  Indeed, in his brief and at the class certification hearing, Defendant Kobach stipulated on the record that any injunctive or declaratory relief obtained in this case would apply to all similarly-situated individuals, and not just to the named Plaintiffs.[20]  And Plaintiffs agree that class certification is unnecessary in order for final relief to flow to the proposed class members.

As the parties all concede, the nature of the rights asserted under the United States Constitution and NVRA require that any declaratory or injunctive relief run to all persons similarly situated.  And there has been no showing of a risk that the remaining named Plaintiffs' claims will become moot.  None of the named Plaintiffs were born in Kansas, so it is unlikely that Defendant could verify their citizenship through its coordinated efforts with the DVS.  All of the named Plaintiffs applied to register to vote at the DMV, and the evidence presented at the preliminary injunction hearing showed that all but two failed to present DPOC during the driver's license renewal process.  So the risk that the State could independently verify their citizenship and register these Plaintiffs is low.  This case is distinguishable from the prisoner cases where the risk of mootness is high—there, the named plaintiffs are constantly at risk of changing as prisoners are discharged or moved.[21]  Here, there has been no showing that the named Plaintiffs' claims run the risk of becoming moot.  Defendants have never taken the position in this case, or in the related case of *Keener v. Kobach*, that the requested relief may only apply to the named plaintiffs.  Plaintiffs argued at the hearing that "there have been

---

[19]*Id.*

[20]Doc. 131 at 31.

[21]*See Jackson*,  2014 WL 1230225, at *6 ("Because the practice alleged to be occurring at the Boulder County Jail continues to affect members of the putative class who have a live stake in the controversy, if a class is certified, the claims are not mooted should the named Plaintiffs be transferred or released from the jail." (quoting *Clay*, 2011 WL 843920, at *7)).

opportunities to knock plaintiffs out," but do not point to any evidence of that in this case. Certainly the named Plaintiffs' situations could change, as was the case with former Plaintiff Ortiz, who moved out of the state, but the nature of the class itself is not prone to mootness. In fact, for those applicants cancelled in ELVIS, there is little chance that their claims could become moot unless they move out of state, as with Mr. Ortiz.

Plaintiffs also argued at the hearing that because Defendant challenged the Rule 23(a) requirements of typicality and commonality, Defendant's stipulation that any relief would be class wide is in question. The Court disagrees. First of all, only Defendant Jordan challenged the commonality requirement in Rule 23(a), arguing that Plaintiffs advance a "hodge podge" of claims. But it is readily apparent from the pleadings and the record that all Plaintiffs allege that they are otherwise qualified, and have been prohibited from registering to vote solely based on the DPOC requirement. If the Court grants the requested injunctive and declaratory relief, these individuals should be registered to vote in federal elections. As to typicality, Defendant Kobach challenges all but Plaintiff Bucci's standing to pursue certain claims in this case. The Court declines to rule on these arguments outside of the context of the class certification motion— Defendant has not moved to dismiss on standing grounds. However the Court notes that Defendant Kobach is unlikely to succeed in establishing that Plaintiffs lack standing on the basis that their injuries are self-inflicted. Although Defendant is correct that Plaintiff cannot demonstrate causation for purposes of standing if the injury alleged is self-inflicted,[22] Plaintiffs' suspense or cancelled status was not initiated by their own conduct but by the DPOC requirement alone. The self-inflicted harm cases upon which Defendant relies deny standing where the plaintiff "incurred certain costs as a reasonable reaction to a risk of harm" when the

---

[22] *See Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 177 (D.C. Cir. 2012).

harm itself is not certainly impending.[23]  But the allegations in this case are that Plaintiffs' failure to produce DPOC at the time of application was not intentional; they were not informed at the time of application that it was even required.  And their failure to provide DPOC after being notified of the deficiency does not deprive them of the right to challenge the allegedly unlawful law.[24]  Therefore, the Court does not find that Defendant's arguments on typicality and commonality suggest that this is the type of class for which there is a high risk of the named plaintiffs' claims becoming moot.

Moreover, in weighing the benefits and burdens of Rule 23(b)(2) certification, the Court finds that the benefits of certification are minimal as compared to the burdens.[25]  As discussed, there is no dispute that the benefits of the injunctive and declaratory relief sought by the named Plaintiffs would run to the putative class without class certification.  Plaintiffs conceded this much in their briefs and at the hearing.  Plaintiffs argued at the hearing that because there are thousands of Kansans in a similar position as Plaintiffs—on the suspense list or cancelled for failure to provide DPOC when applying to register to vote—they deserve notice of the proposed classwide remedy.  But the Court disagrees that the benefits of this form of notice outweigh the burdens of the class action vehicle under the circumstances of this case.  First, the Court is mindful that all members of this putative class should be receiving notices from the Secretary of State or the County Clerks about their right to vote in upcoming federal elections based on this

---

[23]*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013); *see also Nova Health Sys. V. Gandy*, 416 F.3d 1149, 1156 n.8 (10th Cir. 2005) (noting injury was self-inflicted where abortion clinic adopted parental consent requirement despite the fact that the challenged statute allowed for a less intrusive parental notification requirement).  Both of these are pre-enforcement cases.  The instant case deals with actual enforcement of the DPOC law and regulation by Defendants.

[24]*See Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[25]*See M.R.*, 286 F.R.D. at 519 (conducting balancing test); *Mills*, 266 F.R.D. 22–23 (same).

Court's May 2016 preliminary injunction ruling.[26]  The Court is also mindful that Plaintiffs in the *Keener* matter seek class certification, which would require further notices on behalf of an even larger class of individuals who have applied to register in person, by mail, and at the DMV, and who wish to vote in federal, state, and local elections.  Sending further notices to putative class members in both cases regarding their rights as members of these class actions may further confuse voters and burden them with even more updates and information about the upcoming election.  The risk of confusion is even higher given that the cases are related; because this proposed class is necessarily a subset of the broader putative class in the *Keener* case, some Plaintiffs would belong to both classes and therefore receive notices with respect to both.

The Court also would be required to revisit its pretrial management of this case to ensure that class wide discovery is accounted for, despite the fact that discovery was to conclude in July. These procedures would add another layer of complexity to this proceeding, and prolong the life of the case, despite Plaintiffs' stated desire to expedite and obtain rulings on the merits as soon as possible.[27]

In sum, the Court finds that any benefit that would flow from class certification is slight as compared to the burdens associated with certifying this case as a class action.  Final injunctive and declaratory relief to the named Plaintiffs in this case will benefit all potential members of the class, yet the burdens associated with class certification are substantial.  Therefore, the Court exercises its discretion against certifying the class and finds that Plaintiff has not met his burden of showing that class certification is necessary under Fed. R. Civ. P. 23(b)(2).

---

[26]*See, e.g.*, Doc. 137-1 at 11–13 (discussing notices to be sent by counties to voters affected by the Court's May 2016 preliminary injunction); Doc. 145 at 9 ("While the preliminary injunction will require another round of noticing that has the potential to confuse voters, the Court is confident that the Secretary will be able to fashion a conspicuous, easily understood notice that will apprise voters of the status of their registrations and their right to vote in federal elections in 2016.").

[27]*See* Doc. 53, Tr. Discovery & Sch. Conf. before Judge O'Hara, at 26 (expressing desire to obtain relief as soon as possible).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motions for Class Certification (Docs. 3, 77) are **denied**.

**IT IS SO ORDERED.**

Dated: July 29, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE