

STATE OF KANSAS
OFFICE OF THE ATTORNEY GENERAL

DEREK SCHMIDT
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

July 6, 2016

**BY EMAIL: dbonney@aclukansas.org**
Stephen Douglas Bonney, ACLU
ACLU of Kansas
6701 W. 64th St.
Overland Park, KS 66202

Re:   *Fish v. Kobach*, 16-2105-JAR
      Meet and Confer regarding 30(b)(6) deposition of League of Women Voters

Dear Doug:

As you know, on June 27, 2016, we emailed you to meet and confer regarding the above matter. In the email, we pointed out that the League of Women Voters' representative, Marge Ahrens, testified under oath that she had looked at no documents and spoken to no other person in preparation for the deposition. We stated that her answers indicated she was not prepared to testify as to the topics posed as required by Fed. R. Civ. P. 30(b)(6) to matters known or reasonably available to the organizational entity, the League of Women Voters.

You responded by email as follows: "I have reviewed the list of "Topics to be Covered" set forth in your Notice of Deposition and have further reviewed the deposition transcript. I believe Marge Ahrens adequately answered all of the questions regarding the topics listed in your deposition notice. Thus, in advance of our call, I would appreciate it if you would give me specifics regarding the areas of testimony that you think were deficient."

Please consider this letter a response to your request for information and as a second and further attempt to meet and confer as required by D. Kan. 37.1 and 37.2 as well as Fed. R. Civ. P. 37(a)(1) with regard to the above referenced deposition.

As you know, the notice of deposition was filed on June 2, 1016 (Doc. 155). As you also know and as a matter of background, Secretary Jordan had been requesting this deposition for a long time, only to receive no response from Plaintiffs as to available dates, etc. Rather than simply notice the matter up, we fully accommodated your schedules and desires before issuing the notice which contained topics we had previously made known to Plaintiffs as of at least May 7, 2016. The topics, which mirror allegations in the Amended Complaint which you filed with the Court and by your signature certified as per Fed. R. Civ. P. 11(b), were set forth in the notice at page 3, as follows:

1

Exhibit B - Secretary Jordan's
July 6, 2016 letter to Plaintiffs' counsel

1. The Kansas League's efforts mirror the NVRA's stated goals of "increas[ing] the number of eligible citizens who register to vote in elections for Federal offices" and implementing procedures at all levels of government to "enhance[] the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501;

2. Consistent with those efforts, the Kansas League was a party-intervenor in related litigation under the NVRA: *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183 (10th Cir. 2014);

3. The DPOC law has adversely impacted both the Kansas League and its members. The DPOC law has directly interfered with the organization's core commitment to conducting voter registration drives and assisting voters in becoming registered. Prospective registrants typically do not have acceptable documentary proof of citizenship (most commonly birth certificates or passports) with them in locations where the Kansas League has historically done voter registration drives, such as college campuses;

4. As a result, the organization has been able to register far fewer individuals at their voter registration drives. The Kansas League is further hindered in its ability to register voters due to the risk of legal liability associated with copying, retaining and disposing of proof of citizenship documents. These concerns have stopped several local affiliates of the Kansas League from conducting voter registration activities altogether, thereby directly frustrating the organization's mission;

5. The Kansas League has also been forced to divert its limited resources toward contacting the tens of thousands of motor-voter registrants on the suspense list and attempting to help them satisfy the DPOC law. The Kansas League has dedicated large amounts of volunteer hours attempting to educate citizens and help them meet the DPOC requirement. The DPOC law makes it take much longer to register voters who previously would have been registered seamlessly when they applied for a driver's license at the DMV;

6. The League has expended substantial funds and resources producing a video and printing thousands of flyers to educate the public regarding registration barriers imposed by the DPOC law. All of these activities have diverted the Kansas League away from its core public policy priorities and required it to expend ever more resources on voter registration. If Defendants had not suspended such large numbers of motor-voter registrants, the Kansas League would be much freer to pursue its central priorities;

7. Any claim by the League that Secretary Jordan is or was involved in any violation of the NVRA;

8. Your claim that Secretary Jordan is or was involved in enforcing K.S.A. 25-2309(l) (the so-called DPOC law)

Contrary to the requirements of Fed. R. Civ. P. 30(b)(6), the witness produced to testify on behalf of the League, Marge Ahrens, did not give adequate testimony on the topics noticed as required. Ms. Ahrens was asked what her understanding of the representative deposition was, to which she stated, "to speak for the League...." Deposition of Marge Ahrens, at 220:20-25. Of note, **Ms. Ahrens testified that she had spoken to no one and had reviewed no documents prior to the representative deposition.** Ahrens Depo., at 221:6-16 (indicated hereafter in page numbers). Ms. Ahrens indicated she had only spoken to you regarding the general nature of a deposition, confirming that she had not been adequately prepared to appear and testify on behalf of the League. Ahrens Depo. at 219:15-18.

While the above admissions alone establish that Plaintiffs failed in their duty to produce a properly prepared 30(b)(6) witness, this lack of preparation showed in her answers which were vague, general, evasive and incomplete.

You asked for examples of the deficiencies, which include:

At 19, Ms. Ahrens was unable to say when the paid intern started work at the League.

At 29:7-33:12, 33:19-20, Ms. Ahrens was not prepared to testify as to the brochure produced by the League.

At pages 35:17-38:14, Ms. Ahrens was unable to answer the questions asked of her.

At 37, Ms. Ahrens doesn't know if the $7,000 contribution was earmarked for a League brochure.

At 38, Ms. Ahrens did not know if the monies for the protect the vote campaign were from funds the League had at that time.

At 39:12-19, Ms. Ahrens was unsure of the recipients of the mailed brochure.

At 43-64 and 68-69, and 141-145 and 222-25, Ms. Ahrens could not testify as to how precisely Secretary Jordan had harmed the League of Women Voters of Kansas or its members, or what its position was.

Ms. Ahrens was unable to answer questions about donations to the League at 75.

Ms. Ahrens was unable to answer financial questions, stating she was "not the Treasurer" or was unable to answer definitively questions about League expenditures. 81-82.

Ms. Ahrens was not able to give a definite answer about whether the organization makes IRS filings. 83:15-17.

At 105, Ms. Ahrens is unsure of the actual content of the policy on copying.

3

Ms. Ahrens stated she was "not able to comment" on a League document (bates 96) as "I was not the president at this time." 121:6-16.

Ms. Ahrens was unable to state the name of the League's accountants. 123:10-12.

Ms. Ahrens did not know the name of the firm which audited the League's books. 123:23-25.

Ms. Ahrens lacked knowledge about the League's expenditures, deferring generally to the Treasurer. 124:5-125:12.

Ms. Ahrens initially did not recall that she had seen portions of Exhibit 6. 129:2-130:1.

Ms. Ahrens stated one document was "prior to my tenure as president." 129:22-23.

Ms. Ahrens did not know who had prepared a document. 132:22-133:4.

Ms. Ahrens was unsure of the answer to questions. 136:8-13 ("I think this is correct. I think it's correct.").

At 142-45, Mrs. Ahrens was unable to explain an answer to an interrogatory.

In answer to questions from Secretary of State Kobach, Ms. Ahrens was not certain of the total cost of the video, agreeing only that the stated amount was correct "to the best of my knowledge." 151:15-17.

Ms. Ahrens was unable to testify about previous brochures produced by the League stating, "I don't believe so, but I couldn't tell you what else they have produced over the years." 157:17-20; 158:18-159:1.

Ms. Ahrens was unable to testify in a complete and definitive fashion as to the sum total of monetary expenditures that the Kansas League has made to inform voters about the citizenship requirement. 163:9-14.

Ms. Ahrens was general in her estimate regarding volunteer time expended. 163:18-21.

Ms. Ahrens was not able to be specific about whether the League continued to hand out voter registration forms in 2013. 187-88.

At 204, you objected to the question as calling for speculation, indicating you believed the witness only needed to testify as to her personal knowledge and not as a 30(b)(6) witness.

Ms. Ahrens gave wholly inconsistent answers concerning the funds from which the League's intern was paid, including first that she did know, then that she did not, including at 224:14-22.

4

Ms. Ahrens could not identify a particular document that demonstrated or recited the alleged diversion of the League's assets, referred to in the Complaint. 225:3-22.

We note as well, that you directed the witness not to answer a question about donations received. 127.

We note as well the League's answers to Secretary Jordan's First Interrogatories to Plaintiffs (with declaration under penalty of perjury by Ms. Ahrens dated June 7, 2016) which answers those interrogatories in a manner inconsistent, in part, with her deposition testimony (in particular no. 1). Those interrogatory responses were "amended" on June 20 again with a declaration under penalty of perjury by Ms. Ahrens (although her signature is missing on our copy). Those answers are again inconsistent, in part, with her deposition testimony (in particular No. 1, 2). *See, e.g., Custom Vehicles, Inc. v. Forest River, Inc.*, No. 3:03-CV-771RM, 2005 WL 3299499, at *2 (N.D. Ind. Dec. 2, 2005), *aff'd*, 476 F.3d 481 (7th Cir. 2007) ("a party may not use an affidavit (or, presumably, written discovery) to contradict the affiant's deposition testimony." (citing *Ineichen v. Ameritech,* 410 F.3d 956 (7th Cir.2005)).

Plaintiffs' failure to properly prepare and produce a 30(b)(6) witness for the Plaintiff League of Women Voters is obvious and indisputable. Plaintiffs did not object to the proposed topics nor seek a protective order regarding the notice so any objections if existing were waived. Plaintiffs also had ample notice of our request for this deposition.

As Courts in this District have held, failure to produce a properly prepared witness is tantamount to failure to appear for deposition at all. Plaintiffs' failure to properly prepare Ms. Ahrens frustrated the purposes of a Rule 30(b)(6) deposition.

*Starlight International, Inc. v. Herlihy,* 186 F.R.D. 626, 638-640 (D. Kan. 1999), discussed the applicable standard for 30(b)(6) witnesses with regard to a similar failure to prepare a witness in that case:

> "Rule 30(b)(6) provides that the person designated to testify on behalf of an entity "shall testify as to matters known or reasonably available to the organization." Foremost among the purposes of the Rule is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." *Rainey v. American Forest & Paper Ass'n,* 26 F.Supp.2d 82, 95 (D.D.C.1998) (quoting Fed.R.Civ.P. 30(b)(6) advisory committee notes (1970 amend.)) "For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters." *United States v. Taylor,* 166 F.R.D. 356, 360 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996). "If the rule is to promote effective discovery regarding corporations the spokesperson must be informed." *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb.1995) (quoting *Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.,* 137 F.R.D. 267, 278 (D.Neb.1989)).
>
> > A notice of deposition made pursuant to Rule 30(b)(6) requires the corporation to produce one or more officers to testify with respect to

5

> matters set out in the deposition notice or subpoena. A party need only designate, with reasonable particularity, the topics for examination. The corporation, then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.

*Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. Civ.A. 94–2395–GTV, 1995 WL 625962, at *13 (D.Kan. Oct. 5, 1995) (quoting *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989)). Although the above cases speak in terms of corporations, the same principles apply to joint ventures and partnerships. *See* Fed.R.Civ.P. 30(b)(6).

Rule 30(b)(6) implicitly requires the designated representative:

> to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the sandbagging of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process. The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate [or other organizational] form in order to conduct business.
>
> [A party] does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available....

*United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996). The United States District Court for the Southern District of Florida has succinctly set forth applicable principles with regard to depositions under Fed.R.Civ.P. 30(b)(6) as follows:

> 1) Rule 30(b)(6) obligates the responding corporation to provide a witness who can answer questions regarding the subject matter listed in the notice.
>
> 2) If the designated deponent cannot answer those questions, then the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions, etc. The corporation has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are "known or reasonably available" to the corporation. Rule 30(b)(6) delineates this affirmative duty.
>
> 3) If the examining party asks questions outside the scope of the matters

described in the notice, the general deposition rules govern (i.e. Fed.R.Civ.P.26(b)(1)), so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6).

4) However, if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem.

*King v. Pratt & Whitney,* 161 F.R.D. 475, 476 (S.D.Fla.1995). These principles apply to partnerships and joint ventures, as well as corporations."

In discussing the issue in that case, well applicable to Ms. Ahrens' here, the *Starlight* Court stated:

"Bruce's deposition reflects inadequate preparation and knowledge as a witness with respect to Topics 6 and 8 of the areas of inquiry set forth in the deposition notice. He failed to make necessary inquiries about relevant topics. He also made no effort to review his own files or those of 21st Century or Miller Group other than those provided to him by counsel. The Miller Group Defendants note that the ruling on the motion for protective order was entered only a few days before the deposition. The timing of that ruling, however, does not justify the substantial lack of preparation exhibited by Bruce. Had defendants been concerned about the time to prepare Bruce, they could have raised the issue at the status conference of August 17, 1998. They did not do so. Instead they allowed plaintiff to travel to London, England, to depose a poorly prepared party representative. The witness remained substantially unprepared, furthermore, when plaintiff deposed him for a second time in October 1998. (*See* Continuing Dep. of Alan John Bruce, attached as Ex. 5 to Reply Mem.Supp., doc. 266.) Bruce testified in October 1998, that his previous answers on Topic 6 "were to the extent of [his] knowledge." He testified no further about Topic 6. (*Id.* at 25.) In addition he had obtained no further information regarding Topic 8, prior to testifying in October. He again testified that his earlier testimony "was the extent of [his] knowledge." (*Id.* at 28.) He also exhibited a lack of knowledge regarding Topic 13, *i.e.* efforts to search for records responsive to requests for discovery. (*Id.* at 34–39.)

Fed.R.Civ.P. 37(d) permits the imposition of sanctions when a party or person designated under Rule 30(b)(6) fails "to appear before the officer who is to take the deposition, after being served with proper notice." "Producing an unprepared witness is tantamount to a failure to appear at a deposition." *United States v. Taylor,* 166 F.R.D. 356, 363 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996). Corporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter. *Cf. Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb.1995) (corporations). If the designated persons "do not possess personal knowledge of the matters set out in the

7

deposition notice, the [entity] is obligated to prepare the designees so that they may give knowledgeable and binding answers for the [organization]." *Taylor,* 166 F.R.D. at 361. "[I]f it becomes obvious during the course of a deposition that the designee is deficient, the [organization] is obligated to provide a substitute." *Dravo,* 164 F.R.D. at 75.

Defendants 21st Century and Miller Group have engaged in sanctionable misconduct by failing to adequately prepare their representative for deposition. The court also finds that Bruce, as a party to this action, engaged in sanctionable misconduct by not preparing himself adequately for deposition. The court may find lack of preparation at a deposition to be a failure to appear. Fed.R.Civ.P. 37(d) provides the court with discretion to "make such orders in regard to the failure [to appear] as are just." Such discretion may include sanctioning an unprepared Rule 30(b)(6) representative, as well as the entity he represents, when he himself is a party to the litigation.

It appears that defendants 21st Century, Miller Group, and Bruce made no good faith effort to adequately prepare him to testify in accordance with Rule 30(b)(6). Plaintiff has incurred prejudice in the form of expense and wasted time. The lack of adequate preparation has disrupted the proceedings. It has prevented plaintiff from obtaining adequate answers to its inquiries. It necessitated a second trip to London to complete the deposition. Even then, Bruce was not adequately prepared to further expound upon Topics 6, 8, and 13. "[I]nadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings." *Taylor,* 166 F.R.D. at 363. The mere fact that a party later has opportunity to again depose the representative does not cure the initial inadequacy of the witness."

As you know, there is a time limit in which we must proceed on a motion for relief under Fed. R. Civ. P. 37. Since we have already spent and wasted considerable time and money on Ms. Ahrens' deposition, and given the expedited time frames in this case and that discovery is now closed, meaningful relief is both necessary and appropriate here.

We would like to discuss this with you on July 7, 2016. Please let us know what time you are available for this purpose on that date.

                              Sincerely,


                              /s/ M.J. Willoughby
                              M.J. Willoughby
                              Assistant Attorney General


cc: Garrett Roe, KS SOS Office