EXHIBIT G

ELECTRONICALLY FILED
2016 Sep 02 AM 10:04
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2016-CV-000550

**IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
THIRD JUDICIAL DISTRICT**

| | | |
|---|---|---|
| Brown, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-550 |
| | ) | |
| KRIS KOBACH, Kansas Secretary of State | ) | Division 6 |
| in his official capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR
TEMPORARY JUDGMENT**

COMES NOW Defendant, by and through the undersigned counsel, and submits the

following Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction.

# TABLE OF CONTENTS

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS .... 4

ADDITIONAL UNCONTROVERTED FACTS ......................................................................... 14

INTRODUCTION .................................................................................................................. 15

ARGUMENT ......................................................................................................................... 18

I.      Plaintiffs Arguments Rely Exclusively on a Nonprecedential Opinion .......................... 18

    A.   Belenky Lacks Persuasive Value Because of the Numerous Legal Errors and Omissions ........ 20

        1.   Judge Theis Never had Jurisdiction to Issue the *Belenky* Memoranda ................................... 20

        2.   The Secretary's Authority Under K.S.A. §§ 25-2352, and 25-2355 were not Before that Court ... 22

    B.   This Court may not take Judicial Notice of Facts in Other Cases ............................................... 23

II.     Kansas Law Prohibits Registration Until After Providing Statutorily Required Satisfactory Proof of Citizenship ........................................................................................... 23

    A.   This Court must follow Legislative Intent and Preserve K.S.A. § 25-2309(l) as to state, county, township and questions submitted elections ....................................................... 24

    B.   Plaintiffs' argument and the Belenky Opinions Reach an Absurd Result ................................. 29

III.    The Secretary has the Authority to Issue the Instructions and the Temporary Regulation at issue in this Case ........................................................................................................ 31

IV.     *Belenky* Provides Plaintiffs with No Help ................................................................... 35

    A.   Kansas Statutes do not List Registration Statuses and Federal Election Only is not a Status .... 35

        1.   Plaintiffs' Misunderstand the Difference Between an ELVIS source code and whether someone is registered ................................................................. 36

        2.   Plaintiffs Misunderstand Kansas Election Ballots ................................................................. 37

        3.   Plaintiffs' Unitary Ballot Theory Does Not Even Address the Relevant Question for this Court ... 43

    B.   Individuals who do not Provide Satisfactory Proof of Citizenship Are Not Registered to Vote ... 43

    C.   Plaintiffs Misunderstand that they are not Qualified to Vote for State Elections and Therefore Their Votes Cannot Be Coutned ................................................................. 48

    D.   Secrecy of the Ballot is Not Compromised Because the Procedures Being Followed are the Same as Provided by the Legislature for all Provisional Ballots ............................... 51

V.      Equal Protection ................................................................................................................ 54

    A.   Plaintiffs Have Not Identified Similarly Situated Individuals and thus Cannot Succeed on their Equal Protection Claim ............................................................................... 54

        1.   Plaintiffs are Not Similarly Situated to Kansans who have Complied with K.S.A. § 25-2309(*l*). ... 54

        2.   Even if Two Similarly Situated Classes Were Created, a Compelling State Interest Exists... 56

    B.   Plaintiffs' Ballot Secrecy Claims Are Irrelevant to Equal Protection ........................................ 57

IV.     The Balance of the Equities Weighs Strongly in Favor of Defendants and a Permanent Injunction is not in the Public Interest ................................................................ 59

CONCLUSION ................................................................................................................................. 61

## DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS

1.      Uncontroverted.

2.      Uncontroverted that the State Rules and Regulation Board were scheduled to meet at 8 a.m. on July 12, 2016.  Controverted to the extent that Plaintiffs imply that a temporary regulation requires statutory notice similar to a permanent regulation.  *See* K.S.A. § 77-422(b).

3.      Uncontroverted.

4.      Uncontroverted that the State Rules and Regulation Board voted to approve the Temporary Regulation at issue in this case.  Controverted to the extent that Plaintiffs imply that a temporary regulation requires or permits any public comment prior to adoption.  *See* K.S.A. § 77-422(b).

5.      Uncontroverted except that the statute does not use the word "immediately" and instead provides that "[a] temporary rule and regulation shall take effect" either "after approval" or "upon filing."  K.S.A. § 77-422(c)(1)(A)-(C).

6.      Uncontroverted.

7.      Uncontroverted.

8.      Controverted.  First, this is argument, not fact, and requires no response.  *See* K.S.A. § 60-256(c)(2), (d)(1), and (e)(1)-(2) (focusing on whether an issue exists not as to law or argument but as to fact); Kansas Supreme Court Rule 141(b)(1)(C)(i) (only "issues of material *fact*" can "*preclude* summary judgment") (emphasis added); *Frick v. City of Salina*, 290 Kan. 869, 891-892, 235 P.3d 1211, 1226 (2010) (finding that unsubstantiated claims and assertions did "not support the [movant]s' arguments" and were "not evidence and do not satisfy Supreme Court Rule 141"); and *Duckworth v. City of Kansas City*, 243 Kan. 386, 386, Syl. ¶ 2, 758 P.2d 201, 201 (1988) ("While a trial court considering a motion to dismiss must accept the factual

allegations contained in the petition as true, it is not required to treat the legal conclusions

contained within the petition as also being true.").  Second, to the extent this Court does deem

this to be a factual statement, it is controverted that the regulation segregates any Kansas voters

into any groups.  Kansas statute precludes an individual from being registered to vote until he or

she provides documentary proof of citizenship.  K.S.A. § 25-2309(*l*).  The *Kobach v. Election*

*Assistance Commission* and *Fish v. Kobach* decisions manufactured distinctions in individual

eligibility to vote in only federal elections pursuant to those courts' interpretation of the National

Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501-20511.  The NVRA only pertains to

registration to vote for federal offices and has no effect on registration to vote for state offices.

*See, e.g.*, 52 U.S.C. § 20501(b)(1)-(2).

       9.      Controverted in that Plaintiffs are making argument, not fact, and requires no

response.  *See* K.S.A. § 60-256(c)(2), (d)(1); (e)(1)-(2), Kansas Supreme Court Rule

141(b)(1)(C)(i), *Frick*, 290 Kan. at 891-892, 235 P.3d at 1226; and *Duckworth*, 243 Kan. at 386,

Syl. ¶ 2, 758 P.2d at 201.  To the extent this Court requires a response, the documents cited

speak for themselves.

      10.      Controverted.  It is uncontroverted that there are two kinds of individuals who are

only eligible to vote for federal elections, but not state elections.  However, it is controverted that

it is Defendant that "treats" these individuals in that manner.  Kansas law precludes an individual

from being registered to vote until he or she provides documentary proof of citizenship.  K.S.A.

§ 25-2309(*l*).   It is interpretations of the NVRA, however, that permit these individuals to vote

in federal elections.  *See, e.g.*, *Fish v. Kobach*, --- F. Supp. 3d ----, No. 16-2105-JAR-JPO, 2016

WL 2866195, at *32 (D. Kan. May 17, 2016).  The Kansas state law nevertheless prohibits those

individuals from being registered.  K.S.A. § 25-2309(*l*).  Plaintiffs are inappropriately attempting to state a legal conclusion as a fact.  *Duckworth*, 243 Kan. at 386, Syl. ¶ 2, 758 P.2d at 201.

11.     Controverted.  No one "register[s] to vote while applying for a driver's license or renewal at the DOV" in Kansas.  Individuals can apply to register to vote at the DOV, and then the DOV transmits the voter registration application to the appropriate election official.  52 U.S.C. § 20504e)(1), K.S.A. § 25-2352(b)(6).  Uncontroverted that the preliminary injunction applies to anyone who applied to register to vote at the DOV after January 1, 2013.  However, it only applies to those individuals who did not (a) provide documentary proof of citizenship while at the DOV, (b) provide documentary proof of citizenship subsequent to their transaction with the DOV, (c) have their proof of citizenship confirmed subsequently by either the Secretary of State or a county election officer by some other means, and (d) did not seek to prove their citizenship under K.S.A. § 25-2309(m).  *Fish*, No. 16-2105-JAR-JPO, 2016 WL 2866195, at *32.  Anyone in those categories are not affected by the preliminary injunction or any decision by this Court because they have complied with all voter registration laws.

12.     Controverted.  The instructions cited by Plaintiffs were as of July 29, 2016.  The number of individuals fluctuates because the database is updated constantly.  Declaration of Bryan Caskey, ¶ 7, Def.'s Ex. A [hereafter "Ex. A"].  Currently, there are only 188 number of individuals in that category.  It is also controverted that Defendant ever stated or estimated that "there will be 'between 17,000 and 50,000' DOV registrants 'by the time of the November 8, 016 presidential election.'"  Plaintiffs are materially misrepresenting what Defendant's brief stated.  Defendant estimated that there would be between 17,000 and 50,000 that would be effected by this order in some way—namely that many people would likely apply to register to vote at the DOV.  *See* Br. of Appellant Kan. Sec'y of State at 56, *Fish v. Kobach*, No. 16-3147

(10th Cir. July 1, 2016).  There are currently approximately 18,611 individuals on that list.  Ex. A, ¶ 7.  The number of those individuals who would be in a suspense status on the date of the election or vote is unknown.  *Id.*

13.   Controverted.  First, the first and third sentences in this paragraph consist of legal arguments to which no response is required.  *See* K.S.A. § 60-256(c)(2), (d)(1); (e)(1)-(2), Kansas Supreme Court Rule 141(b)(1)(C)(i), *Frick*, 290 Kan. at 891-892, 235 P.3d at 1226; and *Duckworth*, 243 Kan. at 386, Syl. ¶ 2, 758 P.2d at 201.  The first sentence contains contested legal argument regarding whether one is an "eligible Kansan" when they have not provided documentary proof of citizenship.  It also contains legal argument as to whether one is "register[ed] to vote" without providing documentary proof of citizenship.  The third sentence is a legal statement as to the Plaintiffs' construction of the holding in *Belenky v. Kobach*, an unpublished, nonprecedential decision.  *See Taco Bell v. City of Mission*, 234 Kan. 879, 892, 678 P.2d 133, 143 (1984), and *In Interest of Sawyer,* 234 Kan. 436, 441-42, 672 P.2d 1093, 1097 (1983).  The second sentence is uncontroverted.  To the extent this Court deems these statements facts, Defendant responds as follows:  In Kansas, one may not be registered to vote until he or she provides documentary proof of citizenship.  K.S.A. § 25-2309(*l*).  Therefore, this group does not include any individuals who "register[ed] to vote."  It is uncontroverted that individuals who applied to register by using the national Mail Voter Registration form between January 1, 2013 and January 31, 2016, and did not provide documentary proof of citizenship are permitted to vote in federal elections as a result of the Supreme Court's interpretation of 52 U.S.C. § 20505(a)(1)'s requirement that "[e]ach State shall accept and use the mail voter registration form[.]"  *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247, 2257-60.  That form only applies to elections for federal offices because that is the limit of the federal government's

power; the federal government lacks any authority, beyond that within the Thirteenth, Fourteenth, Fifteenth, Nineteenth, and Twenty-sixth Amendments to the United States Constitution to infringe on elections for state offices. *See* 52 U.S.C. §§ 20501(b)(1) and 20505(a)(1)-(2).

14.     Controverted.  On July 29, 2016, there were 188 individuals who had applied to register to vote using the Federal Form between January 1, 2013 and January 31, 2016 and did not provide documentary proof of citizenship. Ex. A, ¶ 7.  It is unclear whether there were less than that number on August 2, 2016 given how the ELVIS system operates.  It is also unknown how many of those individuals still were Kansas residents at that time.

15.     Controverted.  Whether someone is "officially registered to vote" is a legal conclusion, not a statement of fact, so no response is required.  *See* K.S.A. § 60-256(c)(2), (d)(1); (e)(1)-(2), Kansas Supreme Court Rule 141(b)(1)(C)(i), *Frick*, 290 Kan. at 891-892, 235 P.3d at 1226; and *Duckworth*, 243 Kan. at 386, Syl. ¶ 2, 758 P.2d at 201.  If this is deemed to be a fact, it is controverted.   Page 38 of the transcript, which is cited by Plaintiffs, states that the individuals referred to by Plaintiffs are "register[ed]...for [elections] federal only" given the requirements of Federal law and Kansas state law.  Pls.' Ex. B, Temp. In. Hr'g Tr. ("TI Hr'g Tr.") at 38:15-19. The pages of the transcript cited by Plaintiffs address the "poll book," even though their claims under paragraph fifteen purport to discuss voter registration and voter rolls.  Furthermore, to the extent that the statements cited in the instructions by Mr. Caskey are relied upon, they are legal conclusions and thus cannot be relied upon as "facts."  *See* K.S.A. § 60-256(c)(2), (d)(1); (e)(1)- (2), Kansas Supreme Court Rule 141(b)(1)(C)(i), *Frick*, 290 Kan. at 891-892, 235 P.3d at 1226; and *Duckworth*, 243 Kan. at 386, Syl. ¶ 2, 758 P.2d at 201.  *See also Lewis v. Indep. Hotels Co.*, 153 Kan. 678, Syl. ¶ 3, 113 P.2d 149, 149 (1941) ("Arguments and conclusions of law in a

pleading should be treated as surplusage and do not state an issue of fact."); *Gafney v. Wilson Cty. Hosp.*, 152 Kan. 1, 102 P.2d 893, 893 (1940) (striking paragraphs of plaintiff's petition that were, inter alia, "argumentative and [we]re not allegations of fact")..

16.     Uncontroverted but with clarification.  It is uncontroverted that individuals who are eligible to vote for only federal elections pursuant to Kansas and federal law are maintained with a specific designation.  However, Plaintiffs' conflate their facts with argument by using the term "status."  Although individuals are permitted to vote for federal elections under the NVRA, *see* 52 U.S.C. §§ 20501(b)(1)-(2), 20504(a)(1), and 20507 (a)(1)(A), they are not registered to vote for state and local offices under Kansas statute.  K.S.A. § 25-2309(*l*).  Thus, they are tracked within the State's Electronic Voter Information System ("ELVIS") under what Plaintiffs refer to as a "status."  That statement is legally inaccurate.  Plaintiffs here refer to ELVIS source codes.  Ex. A, ¶ 5.  The word "suspense" is merely an ELVIS code term.  ELVIS only permits categories of "active," "inactive," "suspense," and "canceled."  *Id*.  In reality, these individuals' applications are "incomplete" because they have not completed the registration process pursuant to K.S.A. § 25-2309(*l*).  Ex. A, ¶ 5.

17.     Controverted.  Nothing in the authorities cited by Plaintiffs purports to claim that the provisional ballot is not a "regular" ballot.  Defendants do not even understand this statement.  These individuals are given the same ballots as every other individual that votes a provisional ballot in the precinct in which they vote and the offices listed on the ballots are the same as the offices listed on the ballots not being voted provisionally.  *See* K.A.R. § 7-23-16.

18.     Uncontroverted that these voters are instructed to follow the same process as described in K.S.A. § 25-414.  Controverted to the extent that Plaintiffs are implying that anyone can discover how an individual voter actually marks the ballot.  *See* Def.'s Ex. B, Declaration of

Tabitha Lehman, ¶¶ 5-31 [hereafter "Ex. B"], and Def.'s Ex. C, Sedgwick County 2016 Primary Election Canvass Board Procedures [hereafter "Ex. C"].

19.     Controverted.  Nothing that Plaintiffs cite in the preliminary injunction transcript states what they assert as an uncontroverted fact.  The pages of the preliminary injunction hearing describe the general provisional ballot process.  Nothing in Plaintiffs' Exhibit G, which implements this Court's temporary restraining order, states what Plaintiffs purport.  The procedures followed are those described in K.S.A. §§ 25-409, -414, and -3002 and substantially the same as described in the Sedgwick County document.  *See* Ex. C.

20.     Controverted.  The board of canvassers is not directed to recommend anything. The instructions cited by Plaintiffs, as well as the Kansas provisions of law, provide that the county election officers recommend ballot counting procedures to the county board of canvassers.  The county board of canvassers then directs how the ballots should be counted. Uncontroverted that the county election officer makes the stated recommendations to the county board of canvassers.

21.     Controverted only to the extent that Plaintiffs imply that the counting board is not following the same procedures required for counting all provisional ballots.  *See* K.S.A. §§ 25-409 and- 414; Ex. C; and Kansas Elections Standards, II-61, III-3-17.

22.     Uncontroverted.

23.     It is uncontroverted that the Kansas ELVIS records show that Plaintiff Charles Stricker applied to register to vote in October of 2014 but did not provide documentary proof of citizenship. Ex. A, ¶ 10; ELVIS Record of Charles Stricker.[1]  However, it is controverted that Mr. Stricker "registered to vote in Kansas by attesting under penalty of perjury to his eligibility"

---

[1] Mr. Stricker's ELVIS records are admissible under K.S.A. § 60-460(m)(business records).

or that he registered to vote "at the DOV." First, nobody "register[s] to vote" at the DOV. Registration does not occur until after the application has been transmitted to the county election officer. 52 U.S.C. §§ 20504(e), 20507(a)(1)(A) and (2), and 20509; K.S.A. § 25-2352(b)(6). Second, Mr. Stricker did not "register to vote" by attesting to his eligibility. He never registered to vote because he did not submit documentary proof of citizenship. *See* K.S.A. § 25-2309(*l*). However, it is uncontroverted that Mr. Stricker applied to register to vote at the DOV and attested to his eligibility.

24.     Uncontroverted.

25.     Defendant lacks knowledge to controvert this assertion.

26.     Uncontroverted, however, Plaintiffs omit the following important language contained in the notice: "However, under Kansas law, you are not considered a registered voter until you submit an acceptable form of proof of citizenship. This means that you are currently not eligible to vote in state or local elections. To become eligible to vote in all elections, please submit an acceptable form of proof of citizenship (see gotvoterid.com for a complete list) to this office." Pls.' Ex. K-1, Stricker Notice.

27.     Uncontroverted.

28.     Controverted. It is uncontroverted that Kansas ELVIS records show that Plaintiff Marvin Brown applied to register to vote by submitting the Federal Form on January 28, 2016, without providing documentary proof of citizenship. Pls.' Ex. I, ¶ 17; Ex. A, ¶ 11; ELVIS Record of Marvin Brown.[2] However, it is controverted that Mr. Brown "registered to vote in Kansas by using a Federal Form on which he attested under penalty of perjury to his eligibility." Mr. Brown never registered to vote because he did not submit documentary proof of citizenship.

---

[2] Mr. Brown's ELVIS records are admissible under K.S.A. § 60-460(m)(business records).

*See* K.S.A. § 25-2309(*l*).  However, it is uncontroverted that Mr. Brown applied to register to

vote in federal elections via the Federal Form and attested to his eligibility.

      29.     Uncontroverted.

      30.     Uncontroverted.

      31.     Uncontroverted only to the extent that Plaintiff Marvin Brown received the notice

marked as Plaintiffs' Exhibit L-1.  The Secretary, however, lacks knowledge as to when Mr.

Brown received the notice.  Further, the notice speaks for itself and says nothing other than what

the language contained therein says.

      32.     Controverted to the extent that Plaintiffs argue, assert, or imply that the notice

says anything other than what the language contained therein says.

      33.     Uncontroverted

      34.     Controverted.  It is uncontroverted that Kansas ELVIS records show that Plaintiff

JoAnn Brown applied to register to vote on January 28, 2016, by submitting the Federal Form

without providing documentary proof of citizenship.  Pls.' Ex. I, ¶ 18; Ex. A, ¶ 12; ELVIS

Record of JoAnn Brown.[3]  However, it is controverted that Mrs. Brown "registered to vote in

Kansas by using a Federal Form on which she attested under penalty of perjury to her

eligibility."  Mrs. Brown never registered to vote in Kansas elections because she did not submit

documentary proof of citizenship.  K.S.A. § 25-2309(*l*).  However, it is uncontroverted that Mrs.

Brown applied to register to vote in federal elections via the Federal Form and attested to her

eligibility, to the extent those are Plaintiffs' contentions.

      35.     Uncontroverted.

      36.     Uncontroverted.

---

[3] Mrs. Brown's ELVIS records are admissible under K.S.A. § 60-460(m)(business records).

37.     Uncontroverted only to the extent that Plaintiff JoAnn Brown received the notice marked as Plaintiffs' Exhibit M-1.  The Secretary, however, lacks knowledge as to when Mr. Brown received the notice.  Further, the notice speaks for itself and says nothing other than what the language contained therein says.

38.     Controverted to the extent that Plaintiffs argue, assert, or imply that the notice says anything other than what the language contained therein says.  The notice speaks for itself.

39.     Uncontroverted.

40.     Controverted.  The temporary regulation will not be effective beyond November 5, 2016.  *See* K.S.A. § 77-422(c)(3) and Pls.' Ex. C.  Additionally, nothing in the authorities cited by Plaintiffs purports to claim that the provisional ballot is not a "regular" ballot. Defendants do not understand this statement.  These individuals are given the same ballots as every other individual that votes a provisional ballot in the precinct in which they vote and the ballots contain the same offices as all ballots.  *See* K.S.A. §§ 25-409 and -414; Ex. A, ¶ 14. Plaintiffs furthermore incorrectly and inappropriately imply that the counting board is not following the Legislature's provisional ballot procedures.  *See* K.S.A. § 25-409 and -414; Ex. C; Pls.' Ex. A, 51:-01-25 to 62:01-25.  Plaintiffs have provided no evidence for this to overcome the presumption of regularity.  *Burke v. State Bd. Of Canvassers*, 107 P.2d 773, 773 (194); *see also Murphy v. Nelson*, 260 Kan. 589, 595 (1996) ("There is a strong presumption of regularity in administrative proceedings and actions.").  Further, it is entirely unknown what will happen in the future.  For instance, if the DOV begins requiring proof of citizenship on driver's license renewals, *see* K.S.A. § 8-240(b)(3)(D), all three Plaintiffs will be required to submit documentary proof of citizenship to the state to renew their driver's licenses.  Under a current interoffice agreement with the DOV, this office or the relevant county election officer would

receive notice of that document and those Plaintiffs would be eligible to vote in state and local elections as well.  *See* Ex. A, ¶ 17.  Finally, it is unknown whether any of these Plaintiffs will vote in future elections.

## ADDITIONAL UNCONTROVERTED FACTS

1.      In 2011, Kansas enacted the "Secure and Fair Elections Act" ("SAFE Act"), which amended various Kansas statutes concerning elections.  The House vote was 111-11; the Senate vote was 36-3.  *See* 2011 Permanent Journal of the Kansas House at 788, available at: http://www.kslegislature.org/li_2012/b2011_12/chamber/documents/final_calendar_house_2011. pdf, and 2011 Permanent Journal of the Kansas Senate at 474, available at: http://www.kslegislature.org/li_2012/b2011_12/chamber/documents/permanent_journal_senate_ 2011.pdf.

2.      One provision of that Act provides:  "The county election officer or secretary of state's office shall accept any completed application for registration, but an applicant shall not be registered until the applicant has provided satisfactory evidence of United States citizenship." K.S.A. § 25-2309(*l*).

3.      The Act enumerates thirteen different documents that constitute satisfactory evidence of citizenship, enabling Kansas election officials to assess the eligibility of voter registration applicants.  *Id.*  If a citizen is unable to produce one of the thirteen documents, the individual may establish citizenship by providing other evidence (e.g., affidavits from relatives, school records) to the State Elections Board.  K.S.A. 25-2309(m).  Additionally, if another Kansas agency already possesses such a document, the Secretary of State may obtain documentary proof of citizenship on the registrant's behalf, such as by obtaining evidence of birth certificates possessed by the Kansas OVS.  *Id.* at (t).

4.      If a person does not provide adequate proof of citizenship at the time he applies to register to vote, he is placed on a list of incomplete voter registration applicants and is sent notices informing him that proof of citizenship must be provided to complete his voter registration.  Ex. A, ¶¶ 4, 5.

5.      When the SAFE Act was enacted, Kansas identified numerous instances of noncitizens registering to vote.  Ex. A, ¶ 16.  The Kansas Legislature also received testimony from the Seward County clerk regarding a concerted attempt by more than fifty noncitizens to register and vote in one election.  *Id.*

6.      Additionally, in the past few years, the Sedgwick County Election Office has identified 25 noncitizens who successfully registered to vote before the law was implemented (including aliens who applied at the DMV), or who attempted to register and were *prevented* from doing so as a result of the SAFE Act.  Ex. 1-B.

7.      Mr. Stricker has a birth certificate in his possession and could become registered to vote for all elections today, if he so choose.  Ex. D.


## INTRODUCTION

In Kansas, a voter "registration applicant shall not be registered until the applicant has provided satisfactory evidence of United States citizenship."  K.S.A. § 25-2309(*l*).  Instead, a county election officer is required to "accept" one's application that has been completed, and hold that application, for 90 days, until the documentary proof of citizenship requirement is complied with.  *Id.*; K.A.R. § 7-23-15.  It is "of statewide importance and concern" that a person provide satisfactory proof of citizenship prior to registering to vote.  K.S.A. § 25-2301.  A

Kansas citizen has a "duty" to provide such evidence, and until he or she does, the individual is not "entitle[d]…to vote.  K.S.A. § 25-2302.

Satisfactory evidence consists of one of thirteen documents, either presented by the registration applicant or obtained by the Secretary of State's office or a county election officer. *Id.* at (l), (t).  The Secretary of State's office obtains such proof on behalf of many applicants through agreements with the Kansas Department of Health and Environment ("KDHE") and through the Kansas Division of Vehicles ("DOV").  Ex. A, ¶ 17.  If an applicant does not have any such a document, the applicant can satisfy the requirement under a simple hearing process. *Id.* at (m).  Ex. A, ¶ 18.

To be eligible to vote in Kansas, one must not only meet certain eligibility requirements, but must also do two additional things.  The person must complete some form of an application and provide satisfactory proof of citizenship.  K.S.A. § 25-2309(a), (*l*), and -2352.  There are numerous ways to apply to register in Kansas.  The two ways at issue in this case involve applications through the mail using the National mail Voter Registration Form between the dates of January 1, 2013 and January 31, 2016 ("Federal Form")[4] and applications at the DOV between January 1, 2013, through the present.  K.S.A. §§ 25-2309(a)(1), 25-2352; 52 U.S.C. §§ 20504, 20505, 20508.

Plaintiffs allege that they have complied with part of the registration process in K.S.A. §§ 25-2309(a)(2) or 25-2352, by physically completing an application form, but have not complied with the other part of the process by providing satisfactory evidence of citizenship.[5]  No Plaintiff

---

[4] To register to vote by mail, a person can either use the Federal Form or a state-created form.  52 U.S.C. § 20505; K.S.A. § 25-2309(a).
[5] The Browns claim to have applied to register to vote utilizing the Federal Form in late January of 2016.  Mr. Stricker alleges he applied to register to vote at the DOV in 2013.

claims to lack satisfactory proof of citizenship and no Plaintiff claims that they cannot comply with the statutory requirement.

In this action, Plaintiffs essentially seek two remedies that are entirely dependent on the first remedy being granted. First, they ask this Court to require Defendants to violate Kansas law and register (or instruct the county election officers to violate Kansas law and register) them, plus other individuals not before this Court, who have never completed the registration process by complying with K.S.A. § 25-2309(*l*). Plaintiffs request this remedy despite the statutory *prohibition* against such registration and without claiming that that K.S.A. § 25-2309(*l*) is itself unconstitutional. Second, Plaintiffs ask this Court to permanently enjoin a temporary regulation and instructions that Defendants have in place to ensure compliance with two federal court opinions interpreting the National Voter Registration Act. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247 (2013); *Fish v. Kobach*, 2016 WL 2866195 (D. Kan. 2016).[6] These involve direct challenges to the Secretary's authority to issue instructions on how to comply with federal and state law, K.S.A. § 25-124, and the Secretary's regulatory authority to administer the registration process at the DOV and to ensure compliance with the NVRA. K.S.A. §§ 25-2352, 25-2355. To date, no precedential opinion has interpreted the Secretary's instruction authority and no court has had a promulgated regulation to examine the Secretary's authority under K.S.A. §§ 25-2352 or 25-2355. If this Court determines that the plain language of Kansas

---

[6] Plaintiffs also ask this Court to "order[] Defendant to ensure that all affected voters are provided notice that they are fully registered voters" and "direct[] Defendant to update all instructions to local election officials in accordance with this injunction. Plaintiff provides no authority as to how this Court could direct the Constitutional officer tasked with conducting elections and registration *how* to manage such registration and election in this manner. There is no question that this Court has the authority to issue injunctions prohibiting implementation of a regulation or an instruction, if they are not in accordance with Kansas law. But, this Court does not have the authority to issue a permanent injunction with requests (3) and (4) on page two of Plaintiffs' memorandum.

law applies which prohibits registration of individuals who have not provided satisfactory proof

of citizenship, Plaintiffs' claims for a permanent injunction are effectively precluded.  In other

words, Plaintiffs' entire case hinges on this Court determining that the language in K.S.A. § 25-

2309(*l*) "shall not be registered until the applicant has provided satisfactory evidence of United

States citizenship," should be given zero effect.


## ARGUMENT

### I.      Plaintiffs Arguments Rely Exclusively on a Nonprecedential Opinion

Throughout their brief, Plaintiffs' rely almost exclusively on three memorandum opinions

from Judge Theiss in the case of *Belenky v. Kobach*, *Belenky v. Kobach*. *See Belenky v. Kobach*,

No. 2013-CV-1331 (Shawnee Cty. Dist. Ct. June 14, 2016) ("*Belenky* Order June 2016"),

*Belenky v. Kobach*, No. 2013-CV-1331 (Shawnee Cty. Dist. Ct. Jan. 15, 2016) ("*Belenky* Order

Jan. 2016"), and *Belenky v. Kobach*, No. 2013-CV-1331 (Shawnee Cty. Dist. Ct. Aug. 21, 2015)

("*Belenky* Order Aug. 2015") (also collectively "*Belenky* Memoranda").  However, this is an

unpublished district court opinion.  While the Kansas Supreme Court is committed to stare

decisis, *see, e.g.*, *Wiechman v. Huddleston*, __ Kan. __, 370 P.3d 1194, 1198 (2016), the Court

has been clear that district court decisions themselves are not precedent.  *Taco Bell v. City of

Mission*, 234 Kan. 879, 892, 678 P.2d 133, 143 (1984) ("An unpublished decision of a district

court has no binding effect on this action except for its persuasive value."), *In re Sawyer*, 234

Kan. 436, 441-42, 672 P.2d 1093, 1097 (1983) ("*White* is a district court decision *and as such* is

*not* precedent.") (emphasis added); *see also* Kan. Const. art. III, §§ 1 and 6(a) and (b), K.S.A. §§

20-101, -301a, and -3001.  Judge Theis himself acknowledged that his memorandum opinions

had no precedential value beyond that case.  *Belenky* Order June 2016 at 2 ("[D]istrict court judgments have no binding reach beyond the case in which the particular judgment is issued.").

Additionally, that the *Belenky* memoranda have no precedential value is further demonstrated by the fact that the court issued only a declaratory judgment, and not an injunction. *See Belenky* Order Jan. 2016 at 26 ("[D]eclaratory relief is all that is accorded here . . . ."). *Compare* K.S.A. §§ 60-901 and -906 (injunctions restrain conduct and are binding in nature) *with* K.S.A. § 60-1701 (declaratory judgments only "declare . . . rights, status, and other legal relations").  *See also Nat'l Compressed Steel Corp. v. Unified Gov't of Wyandotte Cty./Kansas City*, 272 Kan. 1239, 1245-46, 38 P.3d 723, 729 (2002) ("An injunction is an equitable remedy designed to prevent irreparable injury by prohibiting or commanding certain acts."), *Bd. of Cty. Comm'rs of Reno Cty. v. Asset Mgmt. & Mktg. L.L.C.*, 28 Kan. App. 2d 501, 504, 18 P.3d 286, 289 (2001) ("The function of a declaratory judgment action pursuant to K.S.A. 60–1701 is to provide a speedy and flexible method for determining the rights and obligations of parties in cases of actual controversy where there is actual antagonistic assertion and denial of right."), *Kaul v. State Dep't of Revenue*, 266 Kan. 464, 475, 970 P.2d 60, 67 (1998) ("An injunction is an order to do or refrain from doing a particular act" that "may be used to restrain certain conduct . . . ."), *Dep't of Revenue v. Dow Chem. Co.*, 231 Kan. 37, 41, 642 P.2d 104, 108 (1982) ("'An action for declaratory judgment may be maintained only for the purpose of determining and declaring fixed legal rights where it will accomplish some useful purpose.'"), *Witschner v. City of Atchison*, 154 Kan. 212, 117 P.2d 570, 573 (1941) (holding that declaratory judgment law could not be utilized to enjoin or restrain a criminal prosecution), *City of Wichita v. Home Cab Co.*, 151 Kan. 679, 101 P.2d 219, 222-25 (1940) (comparing an injunction to a restraining order and describing how an injunction enjoined or "restrained the city from enforcing its ordinances .

. . ."), *State v. Porter*, 76 Kan. 411, 91 P. 1073, 1074 (1907) (describing the effect of the disputed injunction as a burden, encumbrance, limitation and restriction), and Black's Law Dictionary (9th ed. 2009) (defining "injunction" and "declaratory judgment").  Thus, to the extent that *Belenky* is considered by this Court, it can only be for its persuasive value.[7]

Plaintiffs do not alert this Court of the limited effect that *Belenky* has.  Instead, Plaintiffs, in a footnote, simply assert that an injunction was not issued because Judge Theis determined he could not issue one.  Pls.' Brief 11, n.9 (citing Jan. 15 Order at 26).  That is inaccurate.  Judge Theis offered the plaintiffs the opportunity to amend their pleadings and seek additional relief; they declined.  *Belenky* Jan. Order 15 at 26.[8]  As such, *Belenky* has no value.

A.   *Belenky Lacks Persuasive Value Because of the Numerous Legal Errors and Omissions*

In addition to lacking any precedential value, *Belenky* also has limited persuasive valude due to its numerous omissions and errors and because of the new authority in this case that was not at issue in *Belenky*.

1.   Judge Theis Never had Jurisdiction to Issue the *Belenky* Memoranda

The *Belenky* Memoranda lack persuasive value because Judge Theis never had jurisdiction to issue them in the first place.  Prior to Defendants' filing a motion for summary

---

[7] Judge Theis did not *enjoin* the Kansas Secretary of State from enforcing K.S.A. 25-2309(*l*) in the way Plaintiffs describe here, *see Belenky* Order June 2016 at 4-5, *Belenky* Order Jan. 2016 at 26-27, and *Belenky* Order Aug. 2015 at 66-67, and the Secretary would have immediately appealed an injunction. *See* K.S.A. §§ 60-901 ("Injunction is an order to do or refrain from doing a particular act.") and -906 ("Every order granting an injunction" is "binding . . . ."). *See also State ex rel. Harley v. Cline*, 151 Kan. 764, Syl. 1, 100 P.2d 637, 638 (1940) (holding that an injunction against the sale of liquor on real property was an encumbrance running with the land), and *State v. Porter*, 76 Kan. 411, 91 P. 1073, 1074 (1907) (holding that an injunction against a prior residential occupant applies to a subsequent residential occupant).
[8] Many of the same counsel in *Belenky* are counsel for Plaintiffs in this case as well.

judgment in that case, Plaintiffs Belenky and Jones were both fully registered to vote.  There was no possibility that they would ever suffer any injury as to the upcoming state elections.  *Id.* While Judge Theis believed that this should not require him to dismiss the case for lack of jurisdiction, *Belenky* Order Jan. 2016 at 2 and *Belenky* Order Aug. 2015 at 66, that conclusion is clearly wrong.  "[I]t is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matter in issue before the court." *Thompson v. Kansas City Power & Light Co.*, 208 Kan. 869, 871, 494 P.2d 1092, 1093 (1972) (citations omitted).  "The mootness doctrine is one of court policy which recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive." *Bd. of Cty. Comm'rs of Johnson Cty. v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716, 719 (1996).  The rule that mootness terminates a "judicial action" is "applicable to actions . . . under [the Kansas] declaratory judgment statute," *id.* at 871, 494 P.2d at 1094 (citations and internal quotation marks omitted), and it "operates[] even though questions of great public interest are involved." *State ex rel. Anderson v. Engler*, 181 Kan. 1040, 1042, 317 P.2d 432, 434 (1957) (citation omitted).

Furthermore, in Judge Theis's August 15 opinion, he admitted that the case would be moot if the Federal Form were changed.  *Belenky* Order Aug. 2015 at 22.  The Federal Form was changed on February 1, 2016.  However, Judge Theis even after that modification refused to dismiss the case and vacate his opinions.  *Belenky* Order June 14 at 2-4.  The *Belenky* Memoranda are thus not based on a "real controvers[y]," *Duffy*, 259 Kan. at 504, 912 P.2d at

719, but on hypothetical questions, and thus a legal nullity.  *See Thompson*, 208 Kan. at 871, 494

P.2d at 1093-94.  They should not even be given persuasive effect.

> 2.     The Secretary's Authority Under K.S.A. §§ 25-2352, and 25-2355 were
>        not Before that Court

Throughout their brief, Plaintiffs quote portions of *Belenky dicta* related to the

"authority" of the Secretary of State and what the election laws permit.  Yet, the only issue

related to the Secretary's authority actually before Judge Theis involved the Secretary's authority

under K.S.A. § 25-124 to issue instructions on how to comply with federal and state law

subsequent to *ITCA*.  *See Belenky* Aug. 15 Order at 34-37.

Plaintiffs do not alert the Court of the limited issue before Judge Theis.  Instead,

Plaintiffs attempt to obscure this fact by repeatedly relying on *Belenky* as addressing more than it

actually did.  Plaintiffs want this Court to simply accept *Belenky*'s sweeping language and not

independently investigate whether independent authority outside of his instructions authority

actually exists for the Secretary's temporary regulation.  Thus, *Belenky* is at most mere *dicta* to

the core arguments made by Plaintiffs in this case, and "[n]obody is bound by dictum."  *Law v.*

*Law Co. Bldg. Associates*, 295 Kan. 551, 564, 289 P.3d 1066, 1074 (2012) (citation and internal

quotation marks omitted).   Any discussion of the Secretary's authority outside of K.S.A. § 25-

124, namely K.S.A. § 25-2355, was not at issue in that case.  Additionally, that case involved

K.S.A. § 25-2309(a)(2); the Secretary has independent and broad regulatory authority under

K.S.A. § 25-2352 to "administer[]" that section.  This is an entirely different source of authority

not contemplated in *Belenky*.  This Court should reject Plaintiffs' invitation to overlook the

differences in asserted authority between the instructions power and his regulatory authority and not inappropriately adopt irrelevant *dicta* from *Belenky*.[9]

       B.     *This Court may not take Judicial Notice of Facts in Other Cases*

       A Court may take judicial notice of the preliminary outcome in the *Fish* case, but cannot take judicial notice of any of the factual findings.  *Jones v. Bordman*, 243 Kan. 444, 459 (1988).  Thus, this Court must disregard the repeated references throughout Plaintiffs' brief related to facts in the *Fish* preliminary injunction.  *See* Pls.' Br. at 23, 25 and n. 19, 27-28.


**II.**    <u>**Kansas Law Prohibits Registration Until After Providing Statutorily Required Satisfactory Proof of Citizenship**</u>

       It is undisputed that Kansas law prohibits the registration of individuals until they have provided satisfactory proof of citizenship.  K.S.A. § 25-2309(*l*).  It is also undisputed that no case holds that this prohibition is preempted in its application to state, county, city, township and questions submitted elections.  The Congress has the authority to alter the time, place, and manner for elections for federal office only.  U.S. Const. Art. 1, Sec. 2, Cl. 2?  Thus, the NVRA is limited to altering registration procedures only for elections for federal office.  *See* 52 U.S.C. § 20501 *et. seq.*  Both *ITCA* and *Fish* acknowledge this limitation.  *ITCA*, 133 S. C.t at 2251; *Fish*, 2016 WL 2866195, at *1.  *Belenky* also recognizes that the NVRA provisions are limited to elections for federal office.  *Belenky* Aug. Order at 23.

---

[9] Additionally, whether Kansas requires a "unitary ballot" was not at issue in that case.  Any individual who utilized the Federal Form but did not provide satisfactory proof of citizenship was given the same ballot as everyone else.  The unitary ballot discussion was entirely superfluous to the issue in that case and was based on a previous *consideration* of providing a ballot which only listed federal offices.  The discussion was nothing more than an advisory opinion to a hypothetical question.

What this means is that states are mandated to "accept and use" the Federal Form, as written, for elections for federal office only. *ITCA*, 133 S. Ct. at 2251. Prior to February 1, 2016, that meant accepting a Federal Form and permitting the individual to vote in federal elections in Kansas, even if the individual does not comply with K.S.A. § 25-2309(*l*). And, under *Fish*, Kansas is required to permit an individual to vote in federal elections when he or she applies to register to vote at the DOV but does not comply with K.S.A. § 25-2309(*l*). *Fish*, 2016 WL 2866195, at *24. Thus, to the extent that Kansas law would have permitted "reject[ing]" a pre-February 1, 2016 Federal Form unaccompanied by proof of citizenship or not permitting an individual who applied to register to vote at the DOV who did not provide satisfactory proof of citizenship, it is preempted—but it is only preempted as to elections for federal office.

But, that does not end the inquiry for this Court. It is undisputed that the NVRA does not preempt Kansas from prohibiting someone from being registered to vote in *state* elections, if they have not provided satisfactory proof of citizenship. Thus, this prohibition to registration absent proof of citizenship remains in effect. K.S.A. § 25-2309(*l*). While Plaintiffs claim that "there is no partial, half, or 'Federal Election Only' registration" in Kansas statutes, they do not explain how their position reconciles with K.S.A. § 25-2309(*l*). Pls.' Br. 16. Plaintiffs are effectively ignoring this prohibition in statute, rather than giving it the effect that the Supreme Court of Kansas requires. Multiple reasons exist for rejecting Plaintiffs' position.

> A.   *This Court must follow Legislative Intent and Preserve K.S.A. § 25-2309(l) as to state, county, township and questions submitted elections*

"It is the duty of this court to uphold legislation rather than defeat it." *State v. Next Door Cinema Corp.*, 225 Kan. 112, 114 (1978) quoting *Parker v. Continental Casualty Co.*, 191 Kan. 674, 680 (1963)). And when construing a statute, "the most fundamental rule of statutory

construction" is that the "intent of the legislature governs."  *State v. Spencer Gifts, LLC*, 374

P.3d 680, 686 (2016) (citation omitted).  "Reliance on the plain and unambiguous language of a

statute is the best and only safe rule for determining the intent of the creators of a written law."

*Id.* (citation and internal quotations omitted).  Indeed, despite Plaintiffs' exclusive reliance upon

*Belenky*, the Supreme Court directs that "The plain language selected by the legislature, when it

does not conflict with constitutional mandates, *trumps both judicial decisions and the policies*

*advocated by parties*."  *Id.* (citations omitted).  Here, the legislative intent is clear by the

unambiguous provision of the statute:  no registration is permitted unless satisfactory proof of

citizenship is presented.  K.S.A. § 25-2309(*l*).

It is not as if the Legislature believes that this provision is minimal.  Instead, this

provision is "of statewide importance and concern."  *See* K.S.A. § 25-2301.  The only reason that

individuals are permitted to vote in *federal* elections without providing satisfactory proof of

citizenship is due to intervening federal court decisions.  Kansas must permit individuals to vote

in federal elections individuals who have completed the Federal Form prior to February 1, 2016

or who have applied to register to vote at the DMV after January 1, 2013, even though they have

not provided satisfactory proof of citizenship.  But Kansas can refuse to register individuals for

state elections who have not provided satisfactory proof of citizenship.  This gives effect to the

Legislature's intent in securing state elections.

If that intent is not clear enough, a broad savings clause in the Kansas registration statutes

provides "an additional reason" to enforce K.S.A. § 25-2309(*l*).  *Next Door Cinema Corp.*, 225

Kan. at 118.  "Occasionally, the legislature expressly states its will that the valid provisions of a

statute be enforced in spite of any judicial determination that certain sections of the act are

unconstitutional."  *Next Door Cinema Corp.*, 225 Kan. at 118.  The Kansas registration statutes

have a broad savings clause, illustrating the intent of the legislature to give effect to the

prohibition in K.S.A. § 25-2309(*l*).  "If any provision of this act or the application thereof to any

person or circumstances is held invalid, the invalidity shall not affect other provisions or

applications of the act which can be given effect without the invalid provisions or applications

and, to this end, the provisions of this act are severable."  K.S.A. § 25-2316e.  Courts are

required to give effect to savings clauses found in statute, if possible.  "'Where parts of a statute

or section thereof can be readily separated, that part which is constitutional may stand while that

which is unconstitutional will be rejected."  *State ex rel. Jordan v. City of Overland Park*, 215

Kan. 700, 711 (1974) (quoting *Voran v. Wright*, 129 Kan. 601 (1930)).  "[T]he statute as a whole

must fall" only when "the void and valid parts of a statute are so interconnected that they cannot

be separated without doing violence to the legislative intent, the statute as a whole must fall."

*State ex rel. Jordan*, 215 Kan. at 711 (citations omitted).  While the Kansas Supreme Court

would require this Court to construe the statute to effectuate the Legislature's intent even without

the savings clause, this clause gives additional proof of their intent.

　　　*Belenky* does not address how its view is giving effect to the Legislature's intent to

preclude registration pursuant to a mere attestation under K.S.A. § 25-2309(*l*) and none of the

opinions mention K.S.A. § 25-2316e.  Neither does Plaintiffs' brief.  Instead, each appears to

simply treat K.S.A. § 25-2309(a) as the extent of the Legislature's discussion on registration—

namely that filling out a Federal Form under K.S.A. § 25-2309(a)(1) ends the registration

process.  *See Belenky* Aug. 15 Order at 44-45; *see* Pls.' Br. at 20-21 (claiming that under both

state and federal law, someone who fills out a federal form without proof of citizenship are

registered to vote).  Statutory construction principles require a rejection of Plaintiffs' analysis.

Accepting Plaintiffs' theory would treat two separate provisions in Kansas law, K.S.A. §§ 25-2309(*l*) and 25-2316e, as being superfluous by failing to give them any effect.  This is not permitted.  *State v. Sedillos*, 279 Kan. 777, 784 (2005) (A reading that renders a portion of a statute "superfluous or meaningless [is] a result sought to be avoided by the rules of statutory construction[.]"); *State v. Burhans*, 277 Kan. 858, 871 (2004) ("if reasonably possible, this court is to avoid statutory constructions that make part of a statute surplusage.") (citation and internal quotation marks omitted).  "There is a presumption that the legislature does not intend to enact useless or meaning legislation…Effect must be given, if possible, to the entire act and *every part thereof*."  *State v. Brown*, 272 Kan. 843, 847 (2001) (emphasis added).  As discussed previously, prohibiting registration for state elections for those who have not complied with K.S.A. § 25-2309(*l*) would effectuate the legislature's intent—it would not render the section entirely superfluous to DOV and pre-February 1, 2016 applicants.  And, reading the statute in this manner also gives meaning to K.S.A. § 25-2316e as well. This reading would be the most consistent with the asserted legislative intent of the statute.  *Brown*, 272 Kan. at 848 ("The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted.") (citation omitted).

Indeed, the construction which Plaintiffs' argue this Court should take, would effectively nullify the changes to the law in 2011—changes that were approved with overwhelming support.  Prior to 2011, one could register to vote without providing satisfactory proof of citizenship, but instead by mere attestation.  To accept Plaintiffs' argument would be to ignore that recent change in statute and effectively go back to the status quo that existed prior to 2011.  While Plaintiffs may prefer this policy choice, the Legislature has rejected it.  This Court must follow the

Legislature's intent here.  Had the Legislature intended that individuals register to vote without providing satisfactory proof of citizenship, it would not have amended the law.

Similarly, the *Belenky* opinions does not attempt to effectuate the Legislature's intent in K.S.A. § 25-2309(*l*).  Instead, in his August opinion, Judge Theis asserts, "The *Inter Tribal* case made null and void Kansas's K.S.A. 25-2309(*l*)'s second step-proof of citizenship requiring extrinsic documentation for Federal Form registrants."  *Belenky* Aug. Order at 43.  Judge Theis follows that observation by leaping to the conclusion that because one is registered for *federal elections* using the Federal Form, that one must necessarily be registered for *state* elections using that form.  *Id.*  *Belenky* provides no case law to support this theory and does not explain how K.S.A. § 25-2309(*l*) is given meaning.

Instead, the opinion merely quotes a portion of K.S.A. § 25-2302 which provides that when someone follows the *Kansas* registration laws, one is entitled to vote.  *Id.*  But that statement does not address the issue of the effect K.S.A. § 25-2309(*l*) has.  Instead, K.S.A. § 25-2302 provides that one is not entitled to vote until one does so "as provided in this act."  K.S.A. § 25-2302.  The Kansas Legislature made it a mandatory precondition that one provide satisfactory proof of citizenship before one can be registered.  Thus, reading K.S.A. § 25-2302 with that prohibition in mind—one is only entitled to vote *after* one provides satisfactory proof of citizenship in compliance with K.S.A. § 25-2309(*l*).  In this sense, Judge Theis's opinion reads the prohibition out of K.S.A. § 25-2302 as well.

The January opinion fares no better.  In that opinion, Judge Theis attempts to address the prohibition in K.S.A. § 25-2309(*l*), but again, does so in a way that ignores the savings clause and the prohibitory nature of K.S.A. § 25-2309(*l*).  In his order, Judge Theis theorizes that because the Federal Form did not require proof of citizenship for *federal* elections, this fact

invalidates the provision for *state* elections and even believed that because satisfactory proof of

citizenship is not required for federal elections, "K.S.A. 25-2309(a)'s authorization for the use

and acceptance of the 'Federal Form' as a valid, recognized means of registration should

therefore stand as unfettered…" *Belenky* Jan. Order at 18.  As in his previous order, Judge Theis

cites no case law to support his opinion and again fails to even attempt to read the law in a way

to avoid invalidating the entirety of K.S.A. § 25-2309(*l*).[10]

Simply put, this Court must follow the intent of the legislature as stated in K.S.A. § 25-

2309(*l*).  That intent is that one "shall not be registered" until satisfactory proof of citizenship is

presented.  *Id.*  Neither Plaintiffs nor *Belenky* attempt to follow legislative intent.

### B.    Plaintiffs' argument and the Belenky Opinions Reach an Absurd Result

This Court should also not follow Plaintiffs' arguments or the conclusions reached in the

*Belenky* opinions because they reach two absurd results.  *Tompkins v. Bise*, 259 Kan. 39, 43

(1996) (citing *Todd v. Kelly*, 251 Kan. 512, 520 (1992) ("The legislature is presumed to intend

that a statute be given a reasonable construction so as to avoid unreasonable or absurd results.")).

The first absurd result is that their reading gives no deference to the Legislature's prohibition

against registration in K.S.A. § 25-2309(*l*) which was *added* to existing law.  To accept

Plaintiffs' conclusion that the these individuals are registered to vote in Kansas state elections by

merely attesting to their citizenship would ignore that the legislature just *rejected* that form of

proof five years ago.  If Plaintiffs' theory were correct, the Legislature simply not have amended

the law to prohibit registration until after satisfactory proof of citizenship was provided, but

---

[10] Not only do Plaintiffs avoid addressing the statutory prohibition in K.S.A. § 25-2309(*l*), they
only cite the provision *once* in their entire brief—in a footnote.  *See* Pls.' Br. at 21, n.17.  And
that citation is based in their equal protection arguments where they seem to concede that
individuals who do not provide satisfactory proof of citizenship are *not* similarly situated with
those who do, despite their arguments to the contrary.  *Id.*

instead kept the status quo.  Essentially, to adopt Plaintiffs' reasoning would mean that the Legislature prefers an attestation of citizenship (for some methods of registration) to suffice for registration, despite codifying a rejection of that attestation.

The more "reasonable" construction of the statute is that the Legislature intends to apply the prohibition as extensively as possible—here, that would be to all methods of registration and to all offices, to the extent possible.  In that regards, it would mean that all individuals applying to register to vote would be required to provide satisfactory proof of citizenship prior to registration, and only a minimal number would be exempt from such requirement for federal elections do to two federal court cases—something entirely beyond the control of the Kansas legislature.

The second resulting absurdity is that despite the universal prohibition found in K.S.A. § 25-2309(*l*), it would not be given effect to *any* individuals who applied to register to vote under two registration methods, K.S.A. § 25-2309(a)(2) (Federal Form) prior to February 1, 2016 and 25-2352 (DOV), but it would be given full effect to those individuals who registered to vote utilizing a state form under K.S.A. § 25-2309(a)(1).  Approximately 30% of individuals apply to register to vote at the DOV.  Ex. A, ¶ 9.  Accordingly, to accept Plaintiffs' position, this Court must accept that the Legislature actually intended that the prohibition to registration not apply, at all, to approximately half of all registration applications in Kansas.  Nothing in the unambiguous language of K.S.A. § 25-2309(*l*) permits this Court to reach that conclusion.  Again, the more reasonable interpretation is that the Legislature intends to give the statutory prohibition to registration to the extent permissible.  That means, continuing to give it effect where not preempted by *Fish* or *ITCA*.

**III.    The Secretary has the Authority to Issue the Instructions and the Temporary Regulation at issue in this Case**

Given that this Court must follow the Legislature's intent that one provide satisfactory proof of citizenship prior to registration, the issue is how to implement that requirement.  The Legislature has provided the Secretary of State with multiple tools in which he could address this issue.  The Legislature has provided that the Secretary has the authority to issue instructions on how to "comply[] with federal and state laws and regulations."  K.S.A. § 25-124.  The Legislature has provided the Secretary of State with extraordinarily broad regulatory authority as well.  The Secretary has authority to "adopt such rules and regulations in the manner prescribed by law *as may be necessary for the administration* of the provisions of this section."  K.S.A. § 25-2352(g).  The Secretary also has even broader authority when related to the NVRA.  The Legislature granted him authority to "adopt rules and regulations *to comply with* the national voter registration act."  *Id.* at 25-2355.  The Secretary is also given authority to prescribe the ballot format for elections.  *Id.* at 25-601.  The Secretary could also have simply instructed election officials to instruct these voters to only vote for elections for federal office, but would have had no mechanism for ensuring compliance with K.S.A. § 25-2309(*l*) in the process.  The Secretary chose to utilize two separate powers given the types of applicants that are being addressed.

Regarding the 188 Federal Form applicants (of which two of those are the Browns), the Secretary utilized his authority to issue instructions to county election officers "relating to their duties in conducting official elections, *including procedures for complying with federal and state laws and regulations*."  K.S.A. § 25-124 (emphasis added).  The Secretary has used this authority to ensure that individuals are permitted to vote for only the offices for which they are eligible—federal offices.  Given that the number of individuals was so few and that the Federal Form was

modified by the Election Assistance Commission, meaning that no more of such individuals would be added to the rolls, instructions related to these individuals seemed like the most appropriate action. *See id.* ("The form and content of the instruction shall be determined by the secretary of state."). In fact, given this instruction authority, the Secretary does not even need to issue rules and regulations in administering elections. Nearly all elections in Kansas proceed through the Secretary's instructions powers rather than by rule and regulation.

The Secretary constantly uses this authority in administering elections and counting votes. For example, the Office has issued the Kansas Election Standards pursuant to this instructions authority. That booklet is over 200 pages and addresses numerous areas of election administration, including areas of voter registration and the counting of provisional ballots. Ex. C, (pages I-1—I-25, III-9—III-12). Additionally, the elections director sends out e-mails and holds numerous conference calls to update the 105 county election officers on how to administer elections in conformance with federal and state law. Ex. A. Indeed, the Secretary of State's office utilized this instruction authority when sending an e-mail to implement *this Court's* temporary injunction. *Id*.

Regarding the DOV individuals (approximately 18,000 individuals) affected by the *Fish* decision, the Secretary took issued a temporary regulation, K.A.R. § 7-23-16—although he could have proceeded with his instruction authority.[11] The Secretary has two separate sources of authority for this regulation, both of which are broad in scope.

---

[11] The preliminary injunction in the *Fish* case was issued on May 17, 2016. *See Fish v. Kobach*, No. 16-2105, Doc. No. 129 (D. Kan. May 17, 2016). The district court denied the Secretary's motion to stay implementation of the order on May 25, 2016. *Id.*, Doc. No. 145 (D. Kan. May 25, 2016). The Tenth Circuit denied the Secretary's motion to stay on June 10, 2016. *See Fish v. Kobach*, No. 16-3147, Doc. No. 01019636534 (10th Cir., June 10, 2016). The primary election began on July 13, 2016, twenty days before August 2nd. K.S.A. § 77-421(a)(1) requires

The first, and most important, conferral of authority is found at K.S.A. § 25-2355 which authorizes the Secretary to adopt "rules and regulations to comply with the national voter registration act."  K.S.A. § 25-2355.  The NVRA, 52 U.S.C. §§ 20501-20511, directs states to "designate a . . . chief [s]tate election official to be responsible for coordination of [s]tate responsibilities under" the NVRA.  52 U.S.C. § 20509.  This state official is "responsible for implementing the state's function under the [NVRA]."  S. Rep. No. 103–6, at 39 (1993).  *See also* Voluntary Guidance on Implementation of Statewide Voter Registration Lists, 70 Fed. Reg. 44,593, 44,594, at II(G) (Aug. 3, 2005) ("The chief State election official is the highest ranking State official who has, as a primary duty, the responsibility to ensure the lawful administration of voter registration in Federal elections.").  The Kansas Legislature complied with this federal requirement by designating broad authority to the Kansas Secretary of State to issue regulations insuring that Kansas is in "compl[iance]" with the NVRA.  K.S.A. § 25-2355.  When the Kansas Legislature provides a state agency regulatory authority to ensure compliance with a law, it is considered the broadest authority that the legislature can bestow.  *See, e.g.*, *Teper v. Miller*, 82 F.3d 989, 998 (11th Cir. 1996) ("An agency like the FEC, to which Congress has delegated broad discretion in interpreting and administering a complex federal regulatory regime, is entitled to significant latitude when acting within its statutory authority . . . ."), and *ITCA*, 133 S. Ct. 2247, 2251 (2013) (stating that "Congress has erected a complex superstructure of federal regulation atop state voter-registration systems" and immediately thereafter referring to the NVRA).

---

60 days' notice and comment.  In contrast, a temporary regulation requires no notice or comment.  K.S.A. § 77-422(b).

At the same time, the Secretary of State is also required to follow the laws enacted by the Kansas Legislature.  The Kansas Legislature has clearly *forbidden* the registration of individuals who do not provide documentary proof of citizenship.  K.S.A. § 25-2309(*l*).  Thus, the Secretary must enforce the laws enacted by the Kansas legislature while simultaneously, and often on short notice, ensuring compliance with the NVRA.  Under this legislatively conferred authority, the Secretary lawfully promulgated K.A.R. § 7-23-16 in response to a federal district judge ruling that Kansas was not currently in compliance with the NVRA and requiring the Secretary to register individuals to vote for federal offices in Kansas under the NVRA.  *Fish v. Kobach*, No. 16-2105-JAR-JPO, 2016 WL 2866195, at *32 (D. Kan. May 17, 2016).  The Secretary's promulgation of K.A.R. § 7-23-16 allowed the State to fully comply with the federal district court ruling (which only extended to federal elections) while at the same time obeying Kansas law at K.S.A. § 25-2309(*l*), which forbids the registration of a voter who has not provided documentary proof of citizenship.

The second source of authority, K.S.A. § 25-2352, employs broad language substantially similar to K.S.A. § 25-2355.  That statute provides the Secretary with the authority to adopt such rules and regulations "as may be necessary for the administration of the provisions of this section."  K.S.A. § 25-2352(g).  Providing regulatory authority to a state agency to administer a section of law as he deems necessary is another very broad grant of authority.  This conferral provides additional evidence that the Kansas Legislature intended to endow the Secretary with broad authority to promulgate regulations, not merely to comply with the NVRA, but particularly to compliance with the DOV voter registration provisions mandated by it.

**IV.    *Belenky* Provides Plaintiffs with No Help**

Plaintiffs do not contest that the Legislature has provided this broad authority to the Secretary regarding voter registration. Pls.' Br. 14-15. Instead, Plaintiffs' theorize that the Secretary has managed to go beyond these grants of authority.   In doing so, Plaintiffs have *not* attempted to separate out the Secretary's instruction authority from his regulatory authority. Plaintiffs also never attempt to refute the broad conferrals upon the Secretary.  Instead, Plaintiffs provide four conclusory paragraphs in which they entirely rely upon the unpublished August and January *Belenky* opinions.  Beyond the non-precedential nature of the *Belenky* opinions upon which they rely, in many instances, the parts of the opinions Plaintiffs cite conflict with the plain text of Kansas statutes.  As the Supreme Court recently held, "The plain language selected by the legislature, when it does not conflict with constitutional mandates, *trumps both judicial decisions and the policies advocated by parties*."  *Spencer*, 374 P.3d at 686 (citations omitted).

A.    *Kansas Statutes do not List Registration Statuses and Federal Election Only is not a Status*

First, Plaintiffs argue that the Secretary lacks authority because "'Federal Election Only'" is not a "registration status" found in Kansas statutes.  Pls.' Br. at 15 ("Kansas statutes make no mention of a 'Federal Election Only' registration status…").  Plaintiffs' argument appears to be based on two assumptions.  First, they are operating under the flawed assumption that "Federal Election Only" is a "registration status" and that Kansas statutes themselves do not define registration *statuses*.  Second, they are operating under a flawed assumption that the ballot format language in article six of chapter 25 is somehow relevant in this case.  Both assumptions are incorrect.

1.      Plaintiffs' Misunderstand the Difference Between an ELVIS source code
        and whether someone is registered

The "Federal election only" language on which Plaintiffs rely, comes from a sourcing

code in the state's Electronic Voter Information Database ("ELVIS").  Ex. A, ¶ 5.  Kansas law

requires the secretary of state to "establish a centralized voter registration database" which

"include[s] all necessary voter registration information from every county[.]"  K.S.A. § 25-

2304(b).  The ELVIS system complies with this mandate.  The ELVIS system maintains a list of

every individual who has applied to register to vote—either successfully or unsuccessfully—

since X DATE.  To keep track of these individuals, the system contains source codes such as

"active," "inactive," "suspense," and "canceled."  Many of those codes are pared down based on

why an individual is in that particular category.  Relevant here are those within the category of

"suspense."

Individuals fall into this "suspense" category for a number of reasons and all involve

individuals who have not completed their registration application in some way.  *Id*.  Individual

records are marked with these codes to allow election officers to process and administer voter

registration and elections.  Any person that has submitted a registration application since January

1, 2006, date, whether it was completed, not completed, or canceled, should have a record in the

database with some form of code.  Ex. A, ¶ 4.  Importantly, terms such as "inactive," "suspense,"

"incomplete," and "canceled" are not found in Kansas statute, yet these categories exist as part of

the ELVIS system to ensure that it contains all of the "necessary voter registration information

from every county within the state of Kansas."  K.S.A. § 25-2304(b).  If Plaintiffs' view is

correct, then the ELVIS system has been operating unconstitutionally for years because the

Legislature did not explicitly prescribe each source code used in ELVIS.  The status of the

Plaintiffs is that two federal court opinions have interpreted the NVRA to permit them to vote in

federal elections.  But, they are not registered to vote in state, county, township, and question submitted elections because the Legislature has forbidden such registration absent compliance with K.S.A. § 25-2309(*l*).

As part of their argument that one cannot be registered for only state and local elections, Plaintiffs cite to four inapposite statutes.  Pls.' Br. at 16, n.11.  Plaintiffs provide no explanation why these statutes are relevant.  However, to the extent Plaintiffs believe they demonstrate that someone cannot be eligible to vote in only federal elections, Plaintiffs misconstrue the statutes.

Plaintiffs quote K.S.A. § 25-2318 and emphasize the letter "a" before "registration book." Pls.' Br. at 16, n.11.  But this statute offers them no support.  Plaintiffs overlook the fact that the Secretary of State has been charged with setting the "form" of "registration books" and even authorizes the Secretary to create "any one or more…types of registration books."  K.S.A. § 25-2304(a).  Thus, to the extent it is relevant, this statute supports Defendant's position.

Next Plaintiffs cite two different provisions in K.S.A. § 25-2304.  Pls.' Br. at 16, n.11 (citing K.S.A. § 25-2304(b), (d)).  That provision discusses the central database that the secretary is tasked with maintaining.  Again, Plaintiffs offer no explanation as to how these provisions support them or are relevant.  In reality, the text again supports Defendant.  As discussed previously, as part of the Secretary's duty in maintaining this database, the ELVIS system contains "all necessary voter registration information," *id.* at (b), which includes information beyond merely who is fully registered to vote as Plaintiffs imply.  Ex. A, ¶ 4, 5.  The sources Plaintiffs cite simply do not offer them any support for their theory.

### 2.    Plaintiffs Misunderstand Kansas Election Ballots

Additionally in support of their theory that one cannot be registered to vote solely in federal elections, Plaintiffs provide the following conclusory sentence:  "That Kansas law does

not contemplate a 'Federal Election Only' registration status in particular is reflected in the creation of a unitary ballot for both state and federal elections." Pls.' Br. at 16.  In support of this supped statutory mandate, Plaintiffs quote two statutes (although they misleadingly cite to five)[12] and then rely exclusively on the nonprecedential opinion from *Belenky*.  Plaintiffs provide no explanation how Kansas law only requires what they claim.  In fact, Plaintiffs can point to *no* provision in Kansas law which explicitly requires a unitary ballot.  Instead, Plaintiffs rely upon emphasizing the word "the" three times in two statutes as their sole source of support.  *Id.* Plaintiffs overlook key, unambiguous provisions of Kansas law which preclude their preferred reading of these statutes.  *Spencer*, 374 P.3d at 686.

First, Plaintiffs misread these statutes into believe that the Legislature through the use of the phrase "the official general ballot" is mandating that all ballots be combined into one, "unitary ballot."  Pls.' Br. at 16.  In Plaintiffs' mind, that means a ballot format which contains all federal, state, local and questions submitted on one form.  The statutes cited by Plaintiffs do not require this result.  Instead, the statutes relied upon by Plaintiffs merely describe the general order of the candidates on the ballots.  *See* K.S.A. § 25-4607 ("The ballot information shall be in the order of arrangement provided for in article 6, chapter 25…"); K.S.A. § 25-4409(a) ("The ballot information, shall, as far as practicable, be in the order of arrangement provided for paper ballots . . ."); *see also* K.S.A. § 25-601 (The ballots "shall contain the information required by this section and be substantially in the form set out in this section.").  The Legislature leaves it to the Secretary to "prescribe the ballot format," so long as it is "substantially in the form" described.  K.S.A. § 25-601.

---

[12] For example, Plaintiffs quote one sentence from K.S.A. § 25-617, but cite to three statutes which they believe in some way support them.

In fact, the Legislature has repeatedly clarified in statute that the unitary ballot format which Plaintiffs envision is not required by Kansas law.  K.S.A. § 25-601 ("The official general ballot for national, state, county and township offices *may* be printed upon one ballot.") (emphasis added); K.S.A. § 25-4607 ("Such information may be printed on…more than one ballot.  Nothing in this act shall be construed as prohibiting the use of multiple ballots when the information for any election exceeds the capacity of a single ballot."); K.S.A. § 25-4409 ("The ballot information…may be…in a number of separate pages.").  Had the Legislature intended the unitary ballot that Plaintiffs envision, the Legislature would not have repeatedly specified that a unitary ballot was not required.  Instead, Plaintiffs' reading of the statutes would have required K.S.A. § 25-601 would to state that the offices "shall" be on printed on one ballot, as opposed to the permissive language that multiple ballots may be used.  *See Hill v. Kansas Dept. of Labor, Div. of Workers Compensation*, 292 Kan. 17, 20 (2011) (If a provision "was intended to be mandatory, the legislature could have used directory language such as 'shall' or 'must' rather than the permissive word 'may.'").

Second, Plaintiffs gloss over the fact that their unitary ballot theory is proven incorrect when one examines the statutes describing the ballot formats for elections for local offices and for questions submitted.  K.S.A. §§ 25-618, -620.  In describing their theory, Plaintiffs' are wholly dependent upon emphasizing the word "the" before the phrase "official general ballot." *See* Pls. Br. at 16 (quoting K.S.A. § 25-617).  Yet, K.S.A. § 25-618(a), which addresses the ballot format for county and township offices, contains similar language.  It describes the format for "*the* official general ballot for county and township offices." K.S.A. § 25-618(a).  Additionally, this statute clarifies that county and township offices do not need to combined into the unitary ballot that Plaintiffs claim exist, but instead may be "separate." *Id.*  The statute

describing the ballot format for questions submitted elections is even more clear that Plaintniffs' position is wrong. "[W]hen a proposition or question is to be submitted…a separate ballot shall be provided by the county election officers except…such proposition may be printed on the ballot for the election" of officers if the election occurs at the same time. K.S.A. § 25-620. In other words, Kansas statutes expressly *reject* Plaintiffs' unitary ballot theory when it comes to elections for county and township offices and for questions submitted.

Rather than notify the Court of this major hole in their theory, Plaintiffs simply omit it. They first cite to statutes describing the ballot format for the general election, Pls.' Br. at 16 (citing K.S.A. § 25-617), but then cite language for primary elections so that they can find some statute where national and state offices are contained in the same statute. Pls. Br. at 16 (*quoting* K.S.A. § 25-205(a)). Even *Belenky* conceded that there is no way to support the unitary ballot theory being pushed by Plaintiffs due to the fact that the statutes expressly state that a separate ballot *is* permissible for county and township offices. *Belenky* Aug. 15 Order at 44-45.[13] Instead, *Belenky* came to the illogical conclusion that one could receive a federal and state ballot, but be precluded from receiving a county and township ballot to maintain its "unitary ballot" theory. *Belenky* Aug 15 Order at 24-25. Plaintiffs and *Belenky* misunderstand that these statutes

---

[13] *Belenky* hypothesized that the Secretary of State would need to issue a rule and regulation prior to permitting a registration book permitting votes for only local offices and questions submitted. Aug. Order at 44-45 (citing K.S.A. §§ 25-2304, -2305). That is an incorrect statement of law. K.S.A. § 25-2304 grants authority to the Secretary to issue rules and regulations "to assure the reasonable safety and reliability of registration books and applications for registration." *Id.* at (a). It also permits the Secretary to make specific provisions relating to any one or more types of registration books. *Id.* However, the secretary generally retains the authority to designate the "form" of "registration books." *Id.* at (a). Furthermore, the secretary of state only needs to provide "written approval" as to the registration books used at polling locations. K.S.A. § 25-2318(c). There is no requirement that he issue a regulation to prescribe the form of the books.

are merely describing the order in which offices should be listed and leave to the secretary to "prescribe the ballot format" substantially in conformance with article 6.  K.S.A. § 25-601.

A third problem for Plaintiffs' theory of no "partial registration" and "unitary ballot" is that it ignores that question submitted elections do not always occur during a national election. *See* K.S.A. § 25-620 ("[W]hen such proposition or question is to be submitted at an election conducted at the time of the holding of an election of officers…").  Indeed, it is the question submitted statutory provision combined with the provisions for recall elections for statewide office holders which conclusively illustrates that Plaintiffs' unitary ballot theory is incorrect.

Kansas statutes permit the recall of a "state officer" through a procedure which includes filing a petition and obtaining a certain number of signatures.  K.S.A. §§ 25-4304 and -4308.  Importantly, the recall election itself does *not* necessarily occur when elections for federal offices occur.  Instead, a state officer recall election occurs between sixty and ninety days after the proper filing of a recall petition, a date that could, but likely would not, fall on one of the two federal election dates that occur every other year.  K.S.A. § 25-4314.  Yet, Plaintiffs' "unitary ballot" theory is dependent upon a mistaken assumption that elections involving state officers must occur simultaneously with offices for federal elections because Plaintiffs' theory has no meaning if an election involving a state office is separate from an election for a federal office. *See* Pls.' Br. at 16 (hypothesizing that there is a "unitary ballot for both state and federal elections").  The fact that an election involving statewide office could occur at a separate time from a federal office severely undermines Plaintiffs' "unitary ballot" theory.

But, if that were not enough to dispel their theory, an absurd result occurs if a recall election occurs at the same time as an election for federal office. *Tompkins*, 259 Kan. at 43.  As noted earlier, Kansas law permits question submitted elections to be on a separate ballot from "the

official general ballot" that Plaintiffs describe.  K.S.A. § 25-620.  And, the statutes governing the elections for recall of state officers are governed by question submitted election statutes.  K.S.A. § 25-4314. Thus, during the *same election*, a state officer could be found on the "official general election ballot" while simultaneously a state official subject to recall could be a ballot wholly separate from that supposed "unitary ballot."  Thus, under *Belenky*'s theory, this would permit an individual to be registered to vote for the state office but be precluded from voting for the recall of a state officer, as that is governed by the question submitted provisions of Kansas law.  This is the level of absurdity one reaches to accept the unitary ballot theory described by Plaintiffs and *Belenky*.

Finally, Plaintiffs ignore that Kansas statute actually *does* contemplate situations in which individuals are registered to vote for federal elections, but not for state elections.  K.S.A. § 25-2356 states, "Any person registered to vote for federal elections during the period from January 1, 1995, through the effective date of this act shall be deemed to be registered to vote in all elections in Kansas, if otherwise qualified, upon the effective date of this act."  Plaintiffs' theory that partial registration is not permitted is undermined by this statutory provision because the Kansas legislature has recognized that, at times, it is hypothetically possible for one to be registered to vote in federal elections but not state elections.  The Legislature addressed that problem previously.  If the Legislature now believes that individuals should be permitted to be registered without providing satisfactory proof of citizenship (as some individuals are able to do for federal elections), the Legislature can modify the state statutes to reflect that judgment.  However, it is not appropriate for this Court to invalidate the express statutory prohibition and then claim that if the Legislature did not intend for that result, the Legislature should yet again amend the same statute as Plaintiffs claim.

3.      Plaintiffs' Unitary Ballot Theory Does Not Even Address the Relevant
        Question for this Court

Even if one accepts Plaintiffs' flawed unitary ballot theory, their does not answer the

question before this Court:  what to do about the non-preempted registration prohibition in

K.S.A. § 25-2309(*l*).  As explained *supra*, the legislature has delegated to the Secretary the

authority to issue instructions on how to comply with federal and state election laws, to

administer the registration process, and to ensure Kansas is in compliance with the NVRA.

K.S.A. §§ 25-124, -2352, and -2355.  Thus, while Kansas has enacted these statutes, it has left it

to the the discretion of the Secretary on how to "fill in the details."  *Kansas One-Call System,*

*Inc.*, 294 Kan. at 230.  The Secretary has utilized this authority to provide these voters a single

ballot with all offices which Plaintiffs claim is required.  But even if a unitary ballot format is

required, it does not necessarily follow that an individual who has neglected to follow a

registration requirement is qualified to vote for every office.  Indeed, a person who does not

comply with *any* registration requirement is still given a provisional ballot and permitted to vote.

His votes are just not counted because he is not qualified to cast them.  Existing statutes account

for other situations in which a person would not be permitted to vote for all offices on a ballot.

*See* K.S.A. § 25-3002.  The only votes that are counted are the ones for those offices which the

individual is eligible.  Similarly here, even if one accepts Plaintiffs' unitary ballot theory,

Plaintiffs have not explained how that *requires* and automatically qualifies someone to vote in all

elections, when K.S.A. § 25-2309(*l*) expressly precludes Plaintiffs' statutory interpretation.


   B.      *Individuals who do not Provide Satisfactory Proof of Citizenship Are Not*
           *Registered to Vote*

Plaintiffs' second argument involves a flawed belief that when a person fills out an application under K.S.A. §§ 25-2309(a)(2) or -2352, the person is registered to vote without providing satisfactory proof of citizenship. Pls.' Br. at 16. That is incorrect. *See supra*. As a result, Plaintiffs argue that an election judge is precluded from challenging their vote is entirely based on a misunderstanding of the law. Their belief is contradicted by the statutes they cite.

When an individual has not complied with K.S.A. § 25-2309(*l*), Kansas law precludes registration. Thus, even if the individual is eligible to vote under the NVRA for *federal elections*, until he has undertaken his "duty" to perform the necessary registration acts *"as provided in [Kansas law]*," K.S.A. § 25-2302, he is not eligible to vote under Kansas law. This has significant consequences for an election judge.

The Kansas Legislature has set up a mandatory process requiring election judges to challenge voters who may not meet all of the qualifications to vote in that election. "It shall be the duty of each judge of election to challenge any person offering to vote, whom the judge shall know or suspect not to be qualified as an elector." K.S.A. § 25-414. Thus, if an election judge "know[s] or suspect[s]" that an individual is not eligible to vote, the election judge is *required* to issue a challenge. *Id.* This mandate is not limited to those individuals who are not registered to vote, as Plaintiffs believe. For example, an election judge must issue a challenge if, although the potential voter is in the poll book, the election judge has knowledge the person is ineligible to vote for some other reason. *See, e.g.*, *id.* at (b)(2) (a person who "has not moved [from the address in the registration list] shall be challenged and entitled to cast only a provisional ballot . . ."). Similarly, an election judge must challenge any voter the election judge knows is not requesting to vote in the correct county, even if the person was properly registered to vote in a different county.

In fact, Kansas law makes it a *felony* for an election judge to *not* challenge an individual who has not complied with K.S.A. § 25-2309(*l*), like the plaintiffs in this case. An election judge that permits a voter to cast "any vote" that the individual is not qualified to cast has committed a felony.  K.S.A. § 25-2420(a) (felony to "receiv[e] *any* vote offered by any person who is not a registered voter or otherwise qualified.").  Thus, if an election judge knows that a person has not complied with K.S.A. § 25-2309(*l*), a prerequisite to registration and being qualified to vote, and does not challenge him, the election judge has committed a felony.

Additionally, challenges to Plaintiffs' votes at the polling location are required for another reason—individuals who have not complied with K.S.A. § 25-2309(*l*) are not included in the Election Day poll books.  Under Kansas law, individuals who are not registered voters should not be included in the poll book and even those individuals who have registered, may be excluded from the book if they are not "otherwise a qualified voter."  K.S.A. § 25-2318(a).  As explained *supra*, a county election officer is prohibited from registering an individual to vote who has not provided satisfactory proof of citizenship. Resultantly, K.S.A. § 25-2318(a) prohibits their name from being entered into the poll book.  A person's name *not* being in the poll book is *prima facie* evidence that the person, for some reason, is not eligible to vote in all of the elections on a ballot.  K.S.A. § 25-2908(e).  The election judge's mandatory challenge duty and Kansas felony provisions are then triggered. K.S.A. §§ 25-414(a) and -2420(a).  Thus, far from Plaintiffs' incorrect statement that an individual who has not complied with K.S.A. § 25-2309(*l*) cannot be challenged, it is actually the duty of the election judge to so challenge.  It is not based on one's "method of registration" that triggers this challenge.  It is one's failure to comply with K.S.A. § 25-2309(*l*) and thus the person is not registered "as provided in [Kansas law]," *id.* at § 25-2302.

Essentially, Plaintiffs' argument is based on a *Belenky*'s statement that "K.S.A. § 25-2302 declares [filling out a Federal Form] 'shall entitle such voters to vote' and 'shall [be] prima facie evidence held in the voting district where such voter resides[,]'" *Belenky* Aug. 15 Order, at 43, and there mistaken belief that there is "no basis by statute for a challenge to be exercised against" someone who has not provided satisfactory proof of citizenship in accordance with Kansas law.  Pls.' Br. at 17 (citation omitted).  The problem with the *Belenky* statement is that it omits the key phrases which cause the statement to be inconstant with the plain and unambiguous language of that statute.  *Spencer Gifts, LLC*, 374 P.3d at 686.  The statute actually states, "It is the duty of all legally qualified voters to register to vote.  Such registration, *when made as provided in this act*, shall entitle such voters to vote[.]"  K.S.A. 25-2302 (emphasis added).  Under K.S.A. § 25-2309(*l*) someone "shall not be registered" to vote until they have provided satisfactory proof of citizenship.  Thus, K.S.A. § 25-2302 actually imports a "duty" on the registrants to provide documentary proof of citizenship before one will be "entitle[d]…to vote" in Kansas elections.[14]  Failure to comply with that duty requires a challenge by an election judge if the person presents himself or herself at the polls.  As to not having a valid basis to challenge these individuals, Plaintiffs' argument simply ignores that a challenge is *required* for someone who does not register in accordance with Kansas statutes, *see* K.S.A. §§ 25-409 and -414, because he is not "entitled…to vote" under Kansas law.  K.S.A. § 25-2302.

The instructions and the temporary regulation being challenged simply reaffirms the statutory requirements that election judges must follow anyway.  The challenge does not prohibit

---

[14] Incredibly, the Theis opinion is interally inconsistent on this matter.  Theis accepts that registration is not under K.S.A. § 25-2309(a) is not completed until the individual has provided documentary proof of citizenship.  *See Belenky* Aug. 15 Order, at 23.  Yet, he then finds that registration *is* fully completed without the individual completing that final step of the process.

the voter from having his votes counted; it simply ensures that the provisional ballot process is used so that only the votes that the voter is qualified to cast are counted.  As with their first argument, Plaintiffs' theory that these individuals may not be challenged is entirely dependent upon this Court giving no effect to K.S.A. § 25-2309(*l*), on which they cannot succeed.

Furthermore, Plaintiffs' theory and the Theis Opinion overlooks that the Supreme Court *rejects* that one is a qualified elector prior to complying with State registration laws.  "It is well settled in this state that the legislature may require registration as a prerequisite to the right to vote." *Dunn v. Board of Com'rs of Morton County*, 165 Kan. 314, 327-28 (1948)(citing *State v. Butts*, 31 Kan. 537 (1884)).  Qualified electors means "persons who have the constitutional (Const., art. 5, §§ 1, 4) qualifications of an elector *and who are duly and properly registered*." *Id*. at 328 (emphasis added).  One is not entitled to vote under Kansas law until one is a qualified elector; and becoming a qualified elector entails not only being a Unites States citizen, but also completing the registration process.  Plaintiffs and the Theis opinion do not even mention this requirement.  Because the Supreme Court has already declared these individuals to *not* be qualified electors, Plaintiffs theory that they are eligible to vote without complying with the state registration procedures, lacks merit.

Finally, the last conclusory sentence in Plaintiffs' brief on this subject appears to argue that Kansas statute must expressly state that a challenge can be made to "Federal Form and DOV registrants" before any challenge is permissible.  Pls.' Br. at 17.  But that argument ignores statutory text and the Secretary's asserted authority.  Kansas statute expressly requires an election judge to challenge a voter "whom the judge shall know *or suspect* not to be a qualified elector."  K.S.A. § 25-414(a) (emphasis added).  The judge certainly would "suspect" that an individual who has not registered in accordance with Kansas law or is not in the poll book, is not

qualified as an elector and thus subject to challenge. *Id.*; *see also id. at* § 25-2302. Furthermore, as discussed *supra*, the Kansas Legislature has tasked the Secretary with administering registration and complying with the NVRA. The Secretary is utilizing that authority to "fill in the details" and ensuring that K.S.A. § 25-2309(*l*) is being given effect in light of the federal court decisions. *Kansas One-Call System, Inc.*, 294 Kan. at 230. The statutory text does not have to explicitly state that a challenge can be made to "Federal Form and DOV registrants" before a challenge can be made. It is enough that the legislature stated how one may be registered to vote and tasked the Secretary with administering registration and compliance.

C.   *Plaintiffs Misunderstand that they are not Qualified to Vote for State Elections and Therefore Their Votes Cannot Be Counted*

Plaintiffs' third argument is that Kansas law does not permit the partial counting of ballot "based on a qualified elector's method of registration." Pls.' Br. at 17. Again, Plaintiffs' argument fails because they refuse to give effect to K.S.A. § 25-2309(*l*).

"The county board of canvassers shall do what is necessary to obtain an accurate and just canvass of the election…." K.S.A. § 25-3107(a). In following that duty, the canvassers are bound by the Kansas registration laws—particularly the one that establishes whether a person is eligible to cast the vote that is to be counted. There is a compelling state interest to ensure that only properly elected individuals are elected and that only eligible votes are cast. *Matter of Levens*, 237 Kan. 614, 169 (1985). As noted previously, Kansas law prohibits one from being registered to vote until one provides satisfactory proof of citizenship. K.S.A. §§ 25-2302 and -2309(*l*). Until such proof has been provided, the individual is not qualified to vote under Kansas law. *Id.*; *see also Butts*, 31 Kan. 537, 2 P. 618, 622 (1884) (The Legislature "may…provide that one not registered [to vote in accordance with Kansas law] shall not be allowed to vote[.]"),. *Dunn*, 165 Kan. at 328 (A qualified elector is one "who ha[s] the constitutional (Const., art. 5, §§

1, 4) qualifications of an elector, *and* who [is] duly and properly registered.")(emphasis added).  .  But at the same time, two federal court decisions have determined that the Congress permits these individuals to be registered to vote in *federal* elections.  Thus, to ensure an "accurate and just canvass," the county board of canvassers necessarily have to count the votes for which federal law requires and not count the votes which Kansas law prohibits.

Plaintiffs' theory appears to be that the *only* way that a vote can be *not* counted, is if K.S.A. § 25-3002 expressly so states.  Pls.' Br. at 17.  But that view ignores the canvassing process.  Votes are rejected even when K.S.A. § 25-3002 does not explicitly so authorize.  For instance, K.S.A. § 25-3002 does not prohibit the counting of ballots for an individual who is not registered for federal or state elections, yet the canvassers would not count that vote.  The reason is that the person was not authorized to cast the vote.  *See* K.S.A. §§ 25-215, 2302.  It would not ensure an "accurate and just canvass" to count unlawful votes.  Similarly, Plaintiffs' argument ignores that some votes are rejected or counted even when no statute addresses the exact situation, as demonstrated in a chart in the Kansas Elections Standards, which was created pursuant to the Secretary's "instruction" authority.  *See* Ex. C, pp. III 9-13.[15]

Additionally, Plaintiffs' statement that "partial acceptance of a ballot is allowed only in two instances, both of which are 'based on voter error, not registration" contains no explanation.  Pls.' Br. 17.  Presumably, Plaintiffs are referring to Judge Theis's paragraph where he purports to construe K.S.A. § 25-3002 and find that only under the limited circumstances identified in K.S.A. § 25-3002 can a ballot only be partially counted.  *Belenky* Jan. 16 Order at 23.  Judge Theis does not explain how counting illegal votes would result in a "just canvass," would be consistent with the Supreme Court's admonishment regarding permitting only those who are

---

[15] All county election offices should follow the Kansas Election Standards.

properly elected into office, or consistent with the Legislature's prohibition on registration absent

satisfactory proof of citizenship.  Simply stated, it would not result in a "just and accurate"

canvass, if votes of individuals are counted who the Legislature has declared are not eligible to

vote.

But plaintiffs' argument that because the statutes of Kansas do not specifically describe

the use of a partial provisional ballot to accommodate voters who are eligible to vote in federal

elections only, the Secretary does not possess that authority suffers a bigger infirmity.  This

argument misunderstands the very purpose of agency regulatory authority.  Generally speaking,

regulatory authority is the authority an agency possesses to carry the law into effect.  *See, e.g.*,

*Tew v. City of Topeka Police & Fire Civil Serv. Comm'n*, 237 Kan. 96, 100, 697 P.2d 1279, 1282

(1985).  In the instant case, KAR § 7-23-16 serves this purpose.  Moreover, an agency possesses

regulatory authority to implement a law in a variety of contexts, including ones that may not

have been specifically described by the legislature.  *See Kansas One-Call Sys., Inc. v. State*, 294

Kan. 220, 230, 274 P.3d 625, 634 (2012) ("But the legislature can delegate the power to fill in

the details of an enacted statute."), and *State ex rel. Tomasic v. Unified Gov't of Wyandotte*

*Cty./Kansas City, Kan.*, 264 Kan. 293, 304, 955 P.2d 1136, 1148 (1998) ("In other words, the

legislature may enact general provisions and delegate to an administrative body the discretion to

fill in the details if the legislature establishes reasonable and definite standards to govern the

exercise of such authority.") (citations and internal punctuation omitted).  *See also Kaufman v.*

*State Dep't of Soc. & Rehab. Servs.*, 248 Kan. 951, 956-57, 811 P.2d 876, 881 (1991) ("Where

the legislature enacts general provisions for regulation and grants a particular state agency the

discretion to fill in the details, we will not strike down the legislation as constitutionally

impermissible unless such provisions fail to fix reasonable and definite standards to govern the

exercise of such authority.") (citation omitted); *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589, 594, 808 P.2d 1355, 1360 (1991) ("The legislature can enact general provisions to regulate and can grant state agencies discretion to fill in details if the legislature establishes reasonable and definite standards to govern the exercise of this authority.").[16]  That is exactly what KAR § 7-23-16 does.  The Secretary possesses the authority to "adopt rules and regulations to comply with the [NVRA]."  K.S.A. § 25-2355.  The secretary also possesses the authority to adopt rules and regulations to administer the DOV registration process.  *Id.* at § 25-2352.  The U.S. District Court for the District of Kansas has issued an interpretation of the NVRA that was not foreseen by the legislature.  It is now the Secretary's duty and prerogative to promulgate a rule to give effect to the NVRA, as reinterpreted by the U.S. District Court.

The plaintiffs' argument also suffers from a more fundamental problem.  It renders administrative regulations largely pointless.  They argue that the Secretary cannot promulgate a regulation unless the content of that regulation is already found in Kansas law.  If that were true, then regulations would serve no purpose whatsoever.  By its very nature, a regulation expands upon or adds to the law that authorizes the regulatory authority.  *See* K.S.A. § 77-415(c)(4), *Kansas One-Call Sys., Inc.*, 294 Kan. at 230, 274 P.3d at 633-34; *Tomasic*, 264 Kan. at 303-04, 955 P.2d 1136, 1147-48; *Kaufman*, 248 Kan. at 956-57, 811 P.2d at 881; *Vakas*, 248 Kan. at 594, 808 P.2d at 1360.

> D.    *Secrecy of the Ballot is Not Compromised Because the Procedures Being Followed are the Same as Provided by the Legislature for all Provisional Ballots*

The Kansas Supreme Court has determined that the Kansas Constitution guarantees a secret ballot, and that the legislature is tasked with how to maintain that secrecy. *Sawyer v. Chapman*, 240 Kan. 409, 412 (1986). The Legislature has exercised its authority in securing the secret of the ballot by creating the provisional ballot process. *See* K.S.A. §§ 25-409, -414, -3002. And that process has been implemented in the 105 counties. *See, e.g.*, Ex. B. There is simply no basis for Plaintiffs to claim that the secrecy of the ballot is not maintained by following the Legislature's decision on how to secure a ballot's secrecy.

There is a strong prohibition of assumption in election law which prohibits a court from speculating that an election administrator will not comply with his duties. *Burke v. State Bd. Of Canvassers*, 107 P.2d 773, 773 (194); *see also Murphy v. Nelson*, 260 Kan. 589, 595 (1996) ("There is a strong presumption of regularity in administrative proceedings and actions."). Thus, this Court must presume that the county election officers are complying with the statute and that the secrecy of the ballot is maintained under the provisional ballot process created by the Legislature. Plaintiffs have not presented any evidence that secrecy is not maintained. And, Judge Theis simply omitted from his memorandum any explanation regarding the counting process and it appears Judge Theis was unaware that the process being followed was the one mandated by the Legislature to protect ballot secrecy. *See Belenky* Order Jan. 2016 at 1-28. Indeed, to find that the secrecy of the ballot is compromised by this process, would require finding that the partial provisional ballot process itself unconstitutionally permits invasion of the ballot given that is the process being followed.[17]

---

[17] Furthermore, it is a *felony* for an election worker to disclose how someone voted. K.S.A. § 25-2422.

Additionally, Plaintiffs are simply incorrect in claiming that it is a violation of the secrecy of the ballot because some votes are not counted.  Pls.' Br. at 17.  Secrecy of the ballot addresses knowing how a particular vote was cast by a particular person.  *See Matter of Levens*, 237 Kan. 614, 619 (1985) ("[A] legal voter cannot be compelled to disclose for which candidate he voted[.]").  However, it does not violated simply because a ballot is looked at when counted, as Plaintiffs claim.  *All* provisional ballots go through the same counting process.  And, prior to electromechanical and electronic voting, every ballot was hand-counted.  The secrecy of the ballot is not violated simply because a ballot is counted.

But, even assuming that Plaintiffs were correct and the secrecy of the ballot was not maintained by following the process that the Legislature expressly provided, a compelling state interest exists to invade the ballot secrecy.  It is a compelling state interest to ensure that only lawful votes are counted.  *See Matter of Levens*, 237 Kan. at 619 ("[T[he public policy which protects the secrecy of the ballot may yield to the greater public policy to have in office individuals who were properly and legally elected…[T]he law does not protect those who violate the election laws.").  Plaintiffs are not eligible to vote in Kansas elections because they have not complied with K.S.A. § 25-2309(*l*).  Thus, even if the secrecy of the ballot were compromised, which it is not, a compelling state interest exists.  *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189-90 (2008).  Although there is evidence of noncitizens compromising the voting process, the Supreme Court has held that the Legislature can take precautionary measures to prevent unlawful voting, even absent any evidence.  *Id.*

<u>**V.**</u>     <u>**Equal Protection**</u>

   A.     *Plaintiffs Have Not Identified Similarly Situated Individuals and thus Cannot Succeed on their Equal Protection Claim*

To succeed on an equal protection claim, Plaintiffs must present two classes of individuals who are similarly situated but treated differently.  *Miami Cty. Bd. of Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 315, 255 P.3d 1186, 1207 (2011) (citations omitted).  Plaintiffs claim this occurs in two ways.  First, Plaintiffs claim that all individuals are "qualified electors" and therefore should not be treated differently by being only allowed to vote for federal offices.  Pls.' Br. at 20-21.  Second, Plaintiffs claim that, because, in their view, they are qualified electors, they are eligible to vote in all elections and should not be subjected to having only their federal votes counted.  *Id.* at 21-22.  In reality, these are really the same arguments that Plaintiffs made regarding the Secretary's authority.  Plaintiffs' entire equal protection claim is dependent upon them succeeding in arguing that K.S.A. § 25-2309(*l*) can be given no meaning.  If this Court gives meaning to that provision, as it must, their claims necessarily fail because these individuals would not be similarly situated.

   1.     <u>Plaintiffs are Not Similarly Situated to Kansans who have Complied with K.S.A. § 25-2309(*l*).</u>

The Kansas Equal Protection Clauses are implicated only when a legislative classification "result[s] in arguably indistinguishable classes of individuals being treated differently" or "differing treatment of similarly situated individuals[.]"  *Miami Cty. Bd. of Comm'rs v. Kanza Rail-Trails Conservancy*, Inc., 292 Kan. 285, 315, 255 P.3d 1186, 1207 (2011).  However, voter registration applicants who do not comply with K.S.A. § 25-2309(*l*) are neither indistinguishable from nor similarly situated to voter registration applicants who comply with K.S.A. § 25-2309(*l*). In Kansas, a U.S. citizen eighteen years of age who resides "in the voting area in which he or she seeks to vote," Kansas Constitution article V, § 1, and *who is registered to vote under Kansas*

*law* is a qualified elector.  *Dunn v. Bd. of Comm'rs of Morton Cty.*, 165 Kan. 314, 328, 194 P.2d

924, 934 (1948) (A qualified elector is one "who ha[s] the constitutional (Const., art. 5, §§ 1, 4)

qualifications of an elector, ***and*** who [is] duly and properly registered.")(emphasis added).

Furthermore, the Legislature "may . . . provide that one not registered [to vote in accordance with

Kansas law] shall not be allowed to vote," *State v. Butts*, 31 Kan. 537, 2 P. 618, 622 (1884), and

the Legislature has done so: voter registration applicants, regardless of registration method used,

"shall not be registered until [such] applicant[s] ha[ve] provided satisfactory evidence of United

States citizenship."  K.S.A. § 25-2309(*l*); *see also* K.S.A. § 25-2302 ("It is the duty of all legally

qualified voters to register to vote. Such registration, when made as provided in this act, shall

entitle such voters to vote[.]").

       It cannot be disputed that the Kansas Legislature has the Constitutional authority to

require "proofs," Art. V, § 4, and can preclude from voting an individual who does not comply

with the registration laws.  *Butts*, 31 Kan. 537, 2 P. at 622.  Any voter registration applicant,

regardless of the application method used, that does not comply with K.S.A. § 25-2309(*l*) is not

to be registered to vote and is neither a qualified Kansas elector nor entitled to vote under Kansas

law.  K.S.A. § 25-2302; *see also* Kan. Const. art. V, § 4; *Dunn*, 165 Kan. at 328, 194 P.2d at 934;

*Butts*, 31 Kan. 537, 2 P. at 622.  Plaintiffs' theory based on Judge Theis's opinion that one can

vote without being registered under Kansas law, *see, e.g.*, *Belenky* Jan. 2016 Order at 19, is

precluded by *Dunn*, 165 Kan. at 328, 194 P.2d at 934, *Butts*, 31 Kan. 537, 2 P. at 622, and

K.S.A. § 25-2302.

       Both of Plaintiffs' equal protection arguments are founded on the mistaken notion that

one actually *is* eligible to vote and must be registered without providing satisfactory proof of

citizenship.  That is simply an incorrect interpretation of law.  *See supra*.  Decisions rendered in

the *ITCA* decision and *Fish* cases are the *only* reason that Plaintiffs are even eligible to vote for federal elections without submitting satisfactory evidence of U.S. citizenship.  Plaintiffs' hypothesized dual system of registration or election administration exists, if at all, only as the result of the combination of decisions rendered in the two aforementioned cases and the continuing application of K.S.A. § 25-2309(*l*).  Plaintiffs' failure to comply with Kansas's voter registration requirement does not cause them to be similarly situated to those that have complied.

> 2.    Even if Two Similarly Situated Classes Were Created, a Compelling State Interest Exists

Ensuring integrity in the election process is a compelling state interest.  *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)("A State indisputably has a compelling interest in preserving the integrity of its election process.")(citation and internal quotation marks omitted).  K.S.A. § 25-2309(*l*) is merely an "evenhanded restriction[]" meant to "protect the integrity and reliability of [Kansas's] electoral process."  *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189-90 (2008)(citations and internal quotation marks omitted).  Despite the fact that evidence exists that noncitizens have registered to vote and voted, and that this law has precluded some noncitizens from registering to vote, *see* Ex. 1-B attached to Def.'s Ex. B, such evidence is not actually required.  "There is no question about the legitimacy or importance of the State's interest in county only the votes of eligible voters" and the Legislature can protect that interest even if "no evidence" of the ills that the law seeks to protect against even are shown.  *Crawford*, 553 U.S. at 194.  Correspondingly, temporary regulation K.A.R. § 7-23-16 and the Secretary's corresponding instructions are an appropriate means to effectuate Kansas's compelling interest.

Furthermore, the Legislature has provided the Secretary with broad authority to instruct election officers on how to comply with both state and federal law, to administer the registration process, and to ensure that Kansas is in compliance with the NVRA.  K.S.A. §§ 25-124, -2352,

and -2355.  The Secretary is merely utilizing his conferred authority to give effect to the

Legislature's choice in how to secure the election process.  *See* K.S.A. §§ 25-124, -2352(g), and

-2355; *Olathe Cmty. Hosp. v. Kansas Corp. Comm'n*, 232 Kan. 161, 161, Syl. ¶ 4, 652 P.2d 726,

727 (1982) (administrative agencies may act within the power conferred upon them by the

Legislature); *State v. Missouri Pac. Ry. Co.*, 76 Kan. 467, 92 P. 606, 609 (1907) (quoting with

approval the Illinois Supreme Court's finding that, with respect to legislatively created railroad

commissions, "[t]he doctrine of the cases is that . . .  a grant of legislative power to do a certain

thing carries with it the power to use all proper and necessary means to accomplish the end," and

"the Legislature may authorize others to do things which it might properly, but cannot

conveniently or advantageously, do itself."), *aff'd sub nom. Missouri Pac. Ry. Co. v. State of

Kansas ex rel. Taylor*, 216 U.S. 262 (1910);

B.      *Plaintiffs' Ballot Secrecy Claims Are Irrelevant to Equal Protection*

        Plaintiffs' second argument is simply confused.  Plaintiffs purport under their "equal

protection" analysis that they will suffer a violation of "ballot secrecy."  Pls.' Br. at 21.  They do

this apparently in order to ask this Court to apply a higher-than-warranted standard of scrutiny—

claiming there must be a compelling state interest to supposedly violate the secrecy of their

ballots, as opposed to discriminating against them on the basis of their choice in how they

applied to register to vote.  *Id.*  Regardless, Plaintiffs' claim fails under established Supreme

Court precedent.

        Plaintiffs' claim appears to be simply a rehash of their earlier argument regarding the

Secretary's authority.  As discussed *supra*, the Legislature is charged with protecting ballot

secrecy and has done so through a provisional ballot process which the Secretary and the county

election officers are following.  Under the presumption of regularity, the secrecy of the ballot is

maintained.  *Burke v. State Bd. of Canvassers*, 152 Kan. 826, Syl., 107 P.2d 773, 773 (1940).

Although confused, Plaintiffs also ask this Court to invalidate K.A.R. § 7-23-16 and the

Secretary's instructions under the theory that no compelling state interest justifies it.  Pls.' Br. at

22.  However, "[a] State indisputably has a compelling interest in preserving the integrity of its

election process," *Purcell*, 549 U.S. at 4 (citation and internal quotation marks omitted), and the

Kansas Legislature conditioned voter registration on the submission of satisfactory evidence of

citizenship, *see* K.S.A. §§ 25-2302 and -2309(*l*), to insure election integrity.  As noted above, the

Legislature considered evidence that noncitizens registered to vote, and the Secretary presented

to this Court additional evidence of noncitizens registering to vote.  *See* Ex. B, ¶¶ 32-35.  This is

in spite of the fact that no evidence is needed to justify protecting that interest.  *Crawford*, 553

U.S. at 185, 194-204.  Ensuring the integrity of the election process is a compelling state interest

regardless of whether proof of voter irregularity even exists.  *Purcell*, 549 U.S. at 4, and

*Crawford*, 553 U.S. at 185, 194-204.

Finally, contrary to Plaintiffs' and Judge Theis's assertions, *see* Pls.' Br. at 21-22 and

*e.g.*, *Belenky* Aug. 2015 Order at 14, 27, and 33, the ballots of DOV and Federal Form registrants

who do not comply with K.S.A. § 25-2309(*l*) are not edited.  "Edit" in the context in which

Judge Thies uses that word contemplates revision or, inter alia, altering, cutting, rearranging, or

splicing.  Webster's New World Dictionary of the American Language at 443 (2d Ed. 1980).  To

edit is thus to alter or change.  *Id*. at 237 and 443.  Although, again, these individuals are not

similarly situated to those individuals who have complied with K.S.A. § 25-2309(*l*), it is legally

inaccurate to state that these individuals' ballots are in any way altered or changed.  Counting

only certain selections does not alter or change the selections made by the voter.  It only ensures

that valid votes are being cast.  *See Matter of Levens*, 237 Kan. at 619 (There is a "great[] public

policy to have in office individuals who were properly and legally elected."); *Crawford*, 553 U.S.

at 194 ("There is no question about the legitimacy or importance of the State's interest in county

only the votes of eligible voters[.]")

      For all of these reasons, Plaintiffs cannot prevail on the merits of their equal protection

claim.

## IV.    The Balance of the Equities Weighs Strongly in Favor of Defendants and a Permanent Injunction is not in the Public Interest

      Plaintiffs also are not entitled to a permanent injunction because the balancing of the

equities favor Defendants.  *Jones v. Noblit*, 260 P.3d 1249 (Kan. Ct. App. 2011); *see also Borgen*

*v. Wiglesworth,* 189 Kan. 261, 265–67, 369 P.2d 360 (1962). (In assessing whether to issue a

permanent injunction, the court must "balance[] the respective interests of the parties and, to

some extent, the public interest in redressing an injury for which no adequate remedy at law

lies.").  Additionally, a permanent injunction is not permitted because issuing one would not be

in the public interest.  *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287, 290

(1986)(a Plaintiff must also demonstrate that an injunction is in the public interest).

      In this case, the equities and the public interest are somewhat combined.  The Secretary

has a strong interest in ensuring that the Kansas registration laws, which he is tasked with

implementing and administering, are effectuated, as does the public. "The public interest values

enforcement of democratically enacted laws."*Marie v. Moser,* 65 F. Supp. 3d 1175, 1205 (D.

Kan. Nov. 4, 2014); *see also Comprehensive Health of Planned Parenthood of Kansas and Mid-*

*Missouri, Inc. v. Templeton,* 954 F. Supp.2d 1205, 1218 (D. Kan. 2013) ("[T]he State has an

interest in the enforcement of any statute."). Plaintiffs improperly ask this Court to order the

Secretary to *violate* Kansas law and register individuals whom the Kansas Legislature have prohibited from becoming registered.  K.S.A. § 25-2309(*l*).

Second, there is a strong public interest in ensuring that only qualified individuals cast votes. "It is clear that preservation of the integrity of the electoral process is a legitimate and valid state goal." *Rosario v. Rockefeller*, 410 U.S. 752, 759 (1973). *See Crawford*, 553 U.S. at 195 ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters.") The Legislature has required satisfactory proof of citizenship to be presented prior to one being eligible to cast a vote.  K.S.A. § 25-2309(*l*).  Plaintiffs have provided no evidence that anyone *cannot* comply with K.S.A. § 25-2309(*l*) or (*m*).  The Browns have not claimed they lack satisfactory evidence of citizenship or that they are otherwise unable to comply with K.S.A. § 25-2309(*m*).  Mr. Stricker actually *has* satisfactory proof of citizenship in his possession, he simply chooses to effectively invalidate a statute which was duly passed by large majorities of the Kansas legislature.  Furthermore, while Plaintiffs cite to a number of individuals who have not complied with the statute, none of them are before this Court.

Indeed, the recent primary shows how weak the balance of the equities are.  Plaintiffs cling to the fact that "between 17,000 and 50,000" individuals will be affected by the *Fish* decision as a basis for claiming that these individuals are being "disenfranchised."  Pls.' Br. at 26-27.  That is simply inaccurate.  After this Court's temporary injunction, there were a total of 73 individuals that actually voted in the primary election in the entire State of Kansas. Ex. A, ¶ 8.  Plaintiffs have presented no evidence that any of these individuals could not have complied with K.S.A. § 25-2309(*l*) at some point.  In contrast, Defendant knows that since the law has gone into effect, at least 25 noncitizens in just *one county* have been prevented from registering to vote. Ex. 1-B.  While it is unknown how many noncitizens actually have attempted to register

to vote throughout the state of Kansas since the law's implementation, the number does not

matter.  Kansas has a compelling state interest in securing its elections and ensuring that only

citizens vote even without *any* evidence of noncitizens voting or registering to vote.  *Crawford*,

553 U.S. at 194-97. Through their injunction, Plaintiffs ask this Court to effectively overrule the

policy decision of the Kansas legislature and return to the unsecure system that it rejected.  That

is something Plaintiffs should ask of the Legislature, not of this Court. "Public policy decisions

[are] best handled by the legislature." *Bland v. Scott*, 279 Kan. 962, 974, 112 P.3d 941, 950

(2005); *see also Swallow v. United States*, 325 F. 2d 97, 98 (10th Cir. 1963).

## CONCLUSION

Kansas has a strong interest in ensuring that only citizens are registered to vote.  The

Kansas SAFE Act protects that right by prohibiting registration until one proves that he or she is

a United States citizen.  Plaintiffs' improperly ask this Court to reject the Legislature's choice

and return to a system the Legislature rejected just five years ago.  For the foregoing reasons,

Plaintiffs' Motion for a Permanent Injunction should be DENIED.


Respectfully submitted this 1st day
of September, 2016.


/s/ Garrett Roe
Garrett R. Roe, Kansas No. 26867
Kris W. Kobach, Kansas Bar No. 17280
KANSAS SECRETARY OF STATE'S OFFICE
Memorial Hall, 1st Floor
120 S.W. 10th Avenue
Topeka, KS  66612
Tel. (785) 296-4564
Fax. (785) 368-8032
Email: garrett.roe@sos.ks.gov
Email: kris.kobach@sos.ks.gov

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that, on the 1st day of September, 2016, I caused a copy of the foregoing to be hand-delivered to the chambers of the Honorable Larry D. Hendricks, and I further certify that I caused a copy to be served on opposing counsel via e-mail

/s/ Garrett Roe_____

Garrett Roe, Kansas No. 26867

***Attorney for Defendant***