IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEVEN WAYNE FISH, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas,<br><br>  Defendant. | Case No. 16-2105-JAR |

ORDER

Plaintiffs in this voting-rights case challenge the Kansas documentary proof-of-citizenship ("DPOC") requirement and a related regulation promulgated by the defendant, Kansas Secretary of State Kris Kobach.  Plaintiffs allege violations of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511, and 42 U.S.C. § 1983 (under the Elections Clause and Privileges and Immunities Clause of the U.S. Constitution).  During discovery, plaintiffs issued a subpoena duces tecum to Tabitha Lehman, Election Commissioner for Sedgwick County, Kansas.  Lehman produced some documents, but withheld other documents under assertions of attorney-client privilege and work-product protection.  Plaintiffs have filed a motion to compel production of the withheld documents (ECF doc. 233).  Because the undersigned U.S. Magistrate Judge, James P. O'Hara, finds Lehman was acting as an agent of the Kansas Secretary of State's Office ("SSO") in her legal communications with SSO attorneys, those communications were protected by the attorney-client privilege and the motion to compel is denied.

O:\ORDERS\16-2105-JAR-233.docx

At issue are twenty-four e-mail exchanges (some with attachments) between Lehman in her capacity as the Sedgwick County election commissioner and attorneys in the SSO, mainly Kobach and Garrett Roe, Deputy Assistant Secretary of State. The documents relate to three topics: (1) an exhibit to be used in litigation; (2) Lehman's affidavit to be submitted in litigation; and (3) preparation for Lehman's deposition in this case.[1]

The parties agree that the attorney-client privilege protects from disclosure confidential communications between a client and its counsel related to the rendition of legal advice and services.[2] The parties also agree such communications between an *agent* of the client and the attorney are protected by the privilege.[3] But the parties disagree whether Lehman was acting as an agent for the SSO when communicating with SSO attorneys (Kobach's position) or whether Lehman was a third party with no attorney-client relationship with SSO attorneys (plaintiffs' position). If the first scenario is true, the e-mail communications were properly withheld as protected by the attorney-client

---

[1] ECF doc. 234-6 (privilege log).

[2] *See Sprague v. Thorn Ams., Inc.,* 129 F.3d 1355, 1370 (10th Cir. 1997); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009).

[3] *See High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2012 WL 234024, at *13 (D. Kan. Jan. 25, 2012) ("The presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses 'a commonality of interest with the client.'" (internal citation omitted)); *Williams v. Sprint/United Mgmt.Co.*, No. 03-2200-JWL, 2006 WL 266599, at *2–3 (D. Kan. Feb. 1, 2006); *A.H. ex rel. Hadjih v. Evenflo Co.,* No. 10-CV-02435-RBJ-KMT, 2012 WL 1957302, at *2 (D. Colo. May 31, 2012) ("The presence of a third party in an email transmission, for instance, will not destroy the attorney-client privilege if the third party is the attorney's or client's agent or possesses commonality of interest with the client.").

privilege; if the second scenario is true, no privilege attached to the e-mails and they should be produced.

The court finds that Lehman, acting in her official capacity as the Sedgwick County election commissioner, was acting as an agent of the SSO. Hallmarks of an agency relationship include the principal's authority to control the agent's actions, and the agent's obligation to act on the principal's behalf.[4] In Kansas, the secretary of state exercises significant control over election commissioners, particularly in the state's four largest counties–Sedgwick, Johnson, Shawnee, and Wyandotte. This is the result of both statutory and practical considerations.

First, K.S.A. § 19-3419 mandates that election commissioners in counties with populations exceeding 130,000–which includes Sedgwick County–"shall be appointed by the secretary of state." The secretary of state also has the authority to remove such election commissioners for misconduct or the authority to re-appoint such election commissioners at the end of their term, presumably if the secretary is satisfied with their performance.[5] Second, K.S.A. § 25-124 requires the secretary of state to determine the "form and content" of instruction that county election commissioners are required to receive, "including procedures for complying with federal and state laws and regulations."[6] Thus, under Kansas law, Kobach has the ability to control Lehman's

---

[4] *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2666 (2013) (discussing Restatement (Third) of Agency § 1.01 (2006)).

[5] K.S.A. § 19-3419.

[6] K.S.A. § 25-124 (cross-referencing K.S.A. § 25-2504).

actions by nature of the fact that he may remove her from office for misconduct or simply choose not to reappoint her if Lehman does not follow his directions, and by the fact that the SSO dictates the procedures Lehman must follow to comply with election laws and regulations.

Second, the NVRA itself implicitly recognizes the agency relationship between a state's chief election official (in Kansas, the secretary of state) and county election officials charged with carrying out the act. The NVRA's civil-enforcement procedure requires notice to the chief election official of any perceived violation of the act by a county election official.[7] The chief election official than has a set number of days to ensure the violation is corrected or the aggrieved person may file a civil action.

Finally, as a practical matter, Sedgwick County election commissioners have long conducted elections under procedures devised or plans approved by the SSO.[8]

As Kobach notes, this court already has effectively recognized that Lehman (along with other county election officers) is an agent of the SSO, obligated to act at the secretary of state's direction. For example, at an October 5, 2016 status conference, the presiding U.S. District Judge, Julie A. Robinson, informed Kobach that she will hold him responsible for ensuring the county elections officers comply with the court's preliminary

---

[7] 52 U.S.C. § 20510(b).

[8] *See Sawyer v. Chapman*, 729 P.2d 1220, 1221 (Kan. 1986) (discussing election "conducted by . . . the Sedgwick County Election Commissioner, under a plan approved by . . . the Kansas Secretary of State").

4

injunction ruling.[9] Although Kobach initially stated that the SSO does not control county websites, he then conceded that the counties do comply with instructions from the SSO, but "some counties are faster than others."[10] Judge Robinson stated,

> Well, I'm holding you responsible for directing [county elections offices] to [comply with court orders] and mandating them to, because you're the Secretary of State. And you are the -- you are the No. 1 authority and -- and it is your responsibility to manage elections in Kansas. So I know a lot of it is administered at the county level, but I think you have the authority to mandate that they do it. . . . I know you can't physically go perhaps to the county election office and do it yourself, but you certainly can direct and mandate them to do it.[11]

Plaintiffs, of course, have accepted this characterization (for they have not sued the election commissioners separately). For example, plaintiffs entered into, and submitted to the court, a joint agreement with Kobach, which requires Kobach to "instruct the county election officials to send out a new [right-to-vote] notice" to covered voters and which further requires Kobach to "direct county election officials to send the approved notice to covered voters on or before October 12, 2016."[12] If Lehman were not an agent of the SSO subject to control by the secretary of state, this agreement, as well as many of the court's orders, would be ineffectual.

---

[9] ECF doc. 243-2 at 4.

[10] *Id.*

[11] *Id. See also*, ECF doc. 129 at 13, 67 (preliminary injunction order) (ordering the secretary of state to register applicants for federal elections without DPOC, all the while recognizing that it is county election offices that input voter registration records, mail notices to applicants, and accept documentary proof of citizenship).

[12] ECF doc. 225 at 2.

5

Plaintiffs assert that Lehman could not have been seeking legal advice from SSO attorneys because she was represented by Michael L. North, Assistant County Counselor for Sedgwick County, at the time of the communications in question. The court disagrees. Here, it's clear the SSO and the Sedgwick County Elections Office were working in tandem to apply and enforce Kansas election law. It should come as no surprise that both the county attorney and the SSO would give a county elections official legal advice. For this same reason, the court gives no weight to the fact that Lehman was a county employee, rather than a state employee. This employment arrangement, set by Kansas law, does not destroy the agency relationship between the Sedgwick County elections commissioner and the SSO.

The court has found that Lehman was acting as an agent of the SSO when communicating with SSO attorneys. To be clear, the court counts Kobach as an SSO attorney–although he is also the present secretary of state, he is a licensed attorney acting as such for the SSO in the communications at issue. Thus, the attorney-client privilege protects from disclosure the confidential communications, provided that they related to the rendition of legal advice and services.[13]

Kobach represents in his brief that the twenty-four items listed on the privilege log all relate to Lehman's pursuit of legal advice. But plaintiffs assert that Kobach has not demonstrated that the communications relate to the giving of legal advice, as opposed to business advice. The court is satisfied that the privilege log demonstrates that the

---

[13] *See Sprague*, 129 F.3d at 1370*; New Jersey v. Sprint*, 258 F.R.D. at 425.

withheld documents involve then-imminent or current litigation. Unlike the case cited by plaintiffs, there is no indication here that Kobach's advice was given as a "business advisor," rather than as a legal advisor.[14]  The log indicates that all but one of the withheld communications were drafts of documents (or discussions thereabout) ultimately *used in this or related litigation*–including an affidavit, brief, and exhibit.  The remaining document is listed as a communication discussing Lehman's deposition in this case, which is clearly a legal matter.

Finally, plaintiffs make a cursory, single-sentence argument that attorney-client protection was waived because Lehman and Kobach waited a month after Lehman's deposition to notify plaintiffs that they had withheld the documents, and even longer to produce a privilege log describing the withheld documents.  As plaintiffs raised this argument "in a perfunctory manner" and in a footnote, however, the court deems the argument waived.[15]  In any event, the court would find waiver of the privilege "too harsh a sanction for untimely submission of the privilege log" because plaintiff has not demonstrated the delay was "excessive or unreasonable."[16]

---

[14] ECF doc. 234 at 6–7 (citing *In re Rospatch Sec. Litig.,* No. 1:90-CV-805, 1991 WL 574963, at *7 (W.D. Mich. Mar. 14, 1991)).

[15] *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."); *United States v. Judd*, 42 F. App'x 140, 144 (10th Cir. 2002) ("Arguments made in a perfunctory manner, such as in a footnote, are waived."); *Utahns for Better Transp. v. U.S. Dept. of Treasury*, 305 F.3d 1152, 1169 (10th Cir. 2002) (holding argument consisting of a single sentence was "waived for failure to brief").

[16] *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.,* 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008) (citing cases).

IT IS THEREFORE ORDERED that plaintiffs' motion to compel the production of documents is denied. Lehman was acting as an agent for the SSO when engaging in confidential communications with SSO attorneys. The privilege log adequately demonstrates that the communications related to the giving of legal advice. Thus, the documents at issue were properly withheld as subject to the attorney-client privilege

Dated October 20, 2016, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge