# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, ET AL,

    Plaintiffs,

    v.

KRIS KOBACH, SECRETARY OF STATE
FOR THE STATE OF KANSAS,

    Defendant.

Case No. 16-2105-JAR-JPO

## MEMORANDUM AND ORDER

On May 17, 2016, the Court issued a Memorandum and Order granting in part Plaintiffs' motion for a preliminary injunction barring enforcement of the Kansas documentary proof of citizenship ("DPOC") law until this case could be decided on the merits. Defendant Secretary of State Kobach filed an interlocutory appeal. In the meantime, the parties proceeded to conduct discovery under deadlines established in a March Scheduling Order issued by Judge James P. O'Hara. Discovery closed in June 2016. On October 19, 2016, the day before the scheduled Pretrial Conference with Judge O'Hara, the Tenth Circuit Court of Appeals issued its 85-page decision affirming the Court's preliminary injunction ruling. Less than an hour before the Pretrial Conference was to begin, Secretary Kobach filed a Motion to Amend the Scheduling Order and Reopen Discovery (Doc. 248), arguing that the standard set forth in the Tenth Circuit's opinion was not foreseeable and required additional discovery. Judge O'Hara discussed the motion with the parties during the telephonic hearing, and determined that additional time was necessary in order to allow the parties to revise their proposed pretrial order in light of the Tenth Circuit's opinion, and to allow a ruling on the motion to reopen discovery

after expedited briefing.  The motion to reopen discovery is fully briefed and the Court is prepared to rule.  As described more fully below, the Court grants Secretary Kobach's motion.

It is within the Court's sound discretion whether to reopen discovery.[1]  The parties agree that the following factors guide the Court's determination of whether discovery should be reopened:

> (1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.[2]

In this case, these factors come down to balancing whether the discovery sought by Secretary Kobach was foreseeable against the prejudice to Plaintiffs in delaying adjudication of this matter.

One of the factors the Court should consider is whether the need for the additional discovery sought was foreseeable given the time allowed.  This case proceeded on a relatively fast track in order to obtain expedited rulings prior to the 2016 primary and general elections.  Discovery was completed in June 2016, after the Court issued its preliminary injunction order, but before the appeal had been decided.  All parties must agree that the decision clarified the standards that apply to Plaintiffs' claim under section 5 of the National Voter Registration Act ("NVRA") by providing a governing statutory interpretation that did not previously exist.  The Court explained:

> We believe that construing section 5 to permit states to rebut the presumptive sufficiency of the attestation requirement is in keeping with *Inter Tribal* and our precedent.  In *Inter Tribal*, the Court reasoned that if the NVRA prevented a state from acquiring the information necessary to enforce its qualifications to vote—notably, citizenship—it would raise a serious constitutional concern.  133 S.Ct. at 2258–59.  But the Court also observed that

---

[1] *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).
[2] *Id.*

states have the opportunity to petition the EAC to add state-specific instructions requiring DPOC and—in the event of an EAC refusal—the opportunity to "establish in a reviewing court that a mere oath will not suffice to effectuate its citizenship requirement and that the EAC is therefore under a nondiscretionary duty to include [DPOC]." *Id*. at 2259–60. Of course, Congress did not entrust an administrative agency like the EAC with the interpretation of the requisite content for state motor voter forms. However, the provisions governing the content of the Federal Form (i.e., section 9 of the NVRA) and state motor voter forms are analogous. And thus just as the *Inter Tribal* Court construed the requirements of section 9 to avoid constitutional doubt by giving states the opportunity—after failing to obtain relief from the EAC—to obtain state-specific, DPOC instructions by making a factual showing to a court that the attestation requirement ("a mere oath") is not sufficient, 133 S. Ct. at 2260, we construe the analogous provisions of section 5 as also permitting states to rebut the presumption that the attestation requirement of subparagraph (C) satisfies the minimum-information principle in a particular case.

     More specifically, in order to rebut the presumption as it relates to the citizenship criterion, we interpret the NVRA as obliging a state to show that "a substantial number of noncitizens have successfully registered" notwithstanding the attestation requirement. *EAC*, 772 F.3d at 1198. In *EAC*, we held that the EAC was not under a nondiscretionary duty to add state-specific DPOC instructions to the Federal Form at two states' behest. 772 F.3d at 1196. We reached this conclusion because "[t]he states have failed to meet their evidentiary burden of proving that they cannot enforce their voter qualifications because a substantial number of noncitizens have successfully registered using the Federal Form." *Id*. at 1197–98. The failure to make such an evidentiary showing was seemingly dispositive there of Secretary Kobach's Qualifications Clause challenge.

. . .

     Thus, we hold that to overcome the presumption that attestation constitutes the minimum amount of information necessary for a state to carry out its eligibility-assessment and registration duties, the state must show that a substantial number of noncitizens have successfully registered to vote under the attestation requirement. This results in the preemption analysis here being quite straightforward: if Kansas fails to rebut this presumption that attends the attestation regime, then DPOC necessarily requires more information than federal law presumes necessary for state officials to meet their eligibility-assessment and registration duties (that is, the attestation requirement). Consequently, Kansas's DPOC law would be preempted.[3]

---

[3] *Fish v. Kobach*, –F.3d–, 2016 WL 6093990, at *19–20 (10th Cir. Oct. 19, 2016) (footnote omitted).

3

In terms of applying the Circuit's decision to the facts of this case, it is now clear that Secretary Kobach must rebut a presumption that attestation of citizenship is the minimum amount of information necessary for Kansas to carry out its assessment of eligibility and its registration duties, and that he must do so by showing that "a substantial number of noncitizens have successfully registered to vote under the attestation requirement." Although this standard was previously applied in a case evaluating the DPOC law as applied to the Federal Form under a different but analogous NVRA provision,[4] it was not clear before the Tenth Circuit ruled in this case whether the standard applied under § 5, or that it applied in the context of a rebuttable presumption.

While it is true that Plaintiffs maintained since their first complaint that there is no evidence of a substantial problem of noncitizen registration or voting in the State of Kansas, the legal import of this factual position was not made clear until last week. Indeed, based on the factual findings by this Court at the preliminary injunction stage, the Tenth Circuit determined that Secretary Kobach's "numbers fall well short of the showing necessary to rebut the presumption that attestation constitutes the minimum amount of information necessary for Kansas to carry out its eligibility-assessment and registration duties."[5] However, the court further observed that its ruling was only based on the record as it stood at an early stage of the proceedings. "Further discovery will presumably ensue."[6] The court indicated that if the Secretary could produce evidence to rebut the attestation presumption, an inquiry "into whether DPOC is the minimum amount of information necessary for Kansas to carry out its eligibility-

---

[4] *See Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1198 (10th Cir. 2014).

[5] *Fish*, 2016 WL 6093990, at *26.

[6] *Id.* at *29.

assessment and registration duties would then be appropriate."[7]  The Court finds that the statutory interpretation provided by the Tenth Circuit's opinion was not reasonably foreseeable to Secretary Kobach before the discovery period closed in June.

On the other side of the scale, the Court balances the necessary delay associated with reopening discovery and the prejudice it may cause Plaintiffs, who ask to proceed on the current schedule.  Although it is true that trial is not "imminent," it will not be possible to keep the May 2017 trial date if discovery is reopened.  The Secretary requests a 90-day extension in order to retain an expert to provide a statistical analysis of voting records.  Of course, allowing this extension would also require granting Plaintiffs a period of time to prepare a rebuttal expert report.  These deadlines alone would push this case into mid-March 2017.  This Court endeavors to provide parties with a summary judgment ruling approximately 60 days before trial.  Obviously, this would be impossible to achieve given the Secretary's proposed discovery extension.  The dispositive motions deadline is currently set for November 16, 2016, and Plaintiffs argue that the delay associated with pushing out this deadline, along with a trial date, causes them prejudice by prolonging the uncertainty and possible confusion surrounding the DPOC law.

Although reopening discovery will cause certain delay of the existing dispositive motion and trial schedule, the Court is mindful that a preliminary injunction is in place until this case can be decided on the merits.  That decision has now been affirmed, and the parties have worked through noticing and compliance issues to ensure that all effected applicants in Kansas are registered to vote, and understand their registration status.  The Court finds the preliminary

---

[7]*Id.*

injunction sufficiently mitigates against the delay and voter confusion associated with the requested 90-day extension.

In sum, the Court finds that the standards announced by the Tenth Circuit in its recent opinion affirming the preliminary injunction order provide the parties and the Court further clarity on the NVRA § 5 claim alleged by Plaintiffs in this case.  Discovery was expedited and closed several months before this decision—a mere six months after the case was filed.  Given that the preliminary injunction prohibits application of the DPOC requirement as to motor voter applicants until a decision can be reached on the merits, fairness dictates that Secretary Kobach be permitted some additional time to marshal evidence that could rebut the attestation presumption under § 5.  The Court therefore grants the parties an additional period of 90 days to complete discovery.

**IT IS THEREFORE ORDERED BY THE COURT** that Secretary Kobach's Motion to Amend the Scheduling Order and Reopen Discovery (Doc. 248) is **granted**.

**IT IS SO ORDERED.**

Dated: October 28, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE