IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al.,

                    Plaintiffs,

v.                                                    Case No. 16-2105-JAR

KRIS KOBACH, in his official capacity
as Secretary of State for the State of Kansas,

                    Defendant.

## **ORDER**

This voting-rights case challenging the Kansas documentary proof of citizenship ("DPOC") law is before the court on plaintiffs' motion to compel defendant, Kansas Secretary of State Kris Kobach, to produce two documents allegedly responsive to plaintiffs' Sixth Request for Production of Documents (ECF No. 272). As discussed below, the court overrules defendant's objection to the request on the ground that it seeks information beyond the *scope* of the limited additional discovery the court has permitted. But the court orders defendant to submit the documents for *in camera* review so that the court may adequately evaluate defendant's objection that the documents do not contain information *relevant* to the reopened discovery categories. After reviewing the submitted documents, the court will issue a subsequent order addressing the remainder of plaintiffs' motion to compel and defendant's *privilege* objections to production.

O:\ORDERS\16-2105-JAR-272.wpd

As relevant to the instant dispute, plaintiffs allege that the National Voter Registration Act ("NVRA") preempts Kansas's DPOC requirement[1] as applied to the federally mandated voter-registration form that is a required part of any driver's license application or renewal.[2] Section 5 of the NVRA provides that the voter-registration form "may require only the minimum amount of information necessary to (i) prevent duplicate voter registrations; and (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process."[3]  Section 5 further mandates that the form include an attestation, signed under penalty of perjury, that the applicant meets "each eligibility requirement (including citizenship)."[4]

On May 17, 2016, the presiding U.S. District Judge, Julie A. Robinson, entered a preliminary injunction barring enforcement of Kansas's DPOC requirement until this case can be decided on the merits.[5]  Judge Robinson found plaintiffs had made a strong showing that the Kansas DPOC law, as enforced, did not meet § 5's provision that a voter-registration form require only the "minimum amount of information necessary" to enable state officials

---

[1]Kan. Stat. Ann. § 25-2309(l) (requiring voter applicants to provide proof of United States citizenship when they simultaneously apply for or renew a driver's license).

[2]52 U.S.C. § 20504.

[3]52 U.S.C. § 20504(c).

[4]*Id.*  This provision is frequently referred to as the "attestation requirement."

[5]ECF No. 129.

to assess an applicant's citizenship (as a criteria for voting eligibility).[6]

Defendant filed an interlocutory appeal of Judge Robinson's opinion to the Tenth Circuit Court of Appeals. While the appeal was pending, discovery in the case closed under a deadline set in the scheduling order issued by the undersigned U.S. Magistrate Judge, James P. O'Hara, on March 24, 2016.[7]

On October 19, 2016, the Tenth Circuit issued a decision affirming Judge Robinson's preliminary injunction ruling and clarifying the standards that apply to claims under § 5.[8] The Tenth Circuit ruled that § 5's attestation requirement

> is the presumptive minimum amount of information necessary for state election officials to carry out their eligibility-assessment and registration duties. As it pertains to the citizenship requirement, the presumption ordinarily can be rebutted (i.e., overcome) only by a factual showing that substantial numbers of noncitizens have successfully registered to vote under the NVRA's attestation requirement.[9]

Thus, the Circuit recognized a presumption under the NVRA that the attestation requirement satisfies the minimum-information principle, but permitted states to rebut the presumption by showing that "a substantial number of noncitizens have successfully registered"[10] notwithstanding the requirement, such "that attestation falls below the minimum necessary

---

[6]*Id.* at 51, 66.

[7]ECF No. 49.

[8]*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016).

[9]*Id.* at 717.

[10]*Id.* at 738-39.

to carry out [the state's] eligibility-assessment and registration duties."[11]

Under this clarified standard, the question arose as to what happens if a state like Kansas is able to rebut the presumption: Is a DPOC regime definitively deemed adequate to satisfy the minimum-information principle?  In a footnote ("Footnote 14"), the Tenth Circuit stated that the question remains open, but suggested that the state likely would have to satisfy a second step by showing "that nothing less than DPOC is sufficient to meet [the eligibility-assessment and registration] duties."[12]  The Circuit concluded that because defendant had failed (at least at the preliminary-injunction stage) to satisfy the first step of showing a substantial number of noncitizens had registered to vote when only the attestation requirement was in place, "the DPOC required by Kansas law is more than the minimum amount of information necessary and, therefore, is preempted by the NVRA."[13]

Based on the Tenth Circuit's opinion, defendant moved the court to reopen discovery "for the limited purpose of allowing the State to attempt to rebut [the] newly created presumption."[14]  In considering the motion, Judge Robinson recognized, "it is now clear that Secretary Kobach must rebut a presumption that attestation of citizenship is the minimum amount of information necessary for Kansas to carry out its assessment of eligibility and its

---

[11]*Id.* at 738 n.14.

[12]*Id.*

[13]*Id.*

[14]ECF No. 249 at 6.

registration duties, and that he must do so by showing that 'a substantial number of noncitizens have successfully registered to vote under the attestation requirement.'"[15] Judge Robinson further stated that if defendant could meet the first step of producing "evidence to rebut the attestation presumption," then "an inquiry 'into whether DPOC is the minimum amount of information necessary for Kansas to carry out its eligibility-assessment and registration duties would . . . be appropriate.'"[16] Judge Robinson concluded that "fairness dictates that Secretary Kobach be permitted some additional time to marshal evidence that could rebut the attestation presumption under § 5," and then she reopened discovery for both parties.[17]

A few days later, the undersigned conducted a scheduling and discovery conference,[18] and issued an amended scheduling order setting deadlines for additional "discovery as contemplated and limited by Judge Robinson's recent order."[19] During the conference, the undersigned and parties discussed the "two-step analysis" contemplated (but not definitively set) by the Tenth Circuit in Footnote 14 for determining a state's compliance with § 5 of the

---

[15]ECF No. 254 at 4.

[16]*Id*. at 4-5 (quoting *Fish*, 840 F.3d at 750–51).

[17]*Id.* at 6.

[18]ECF No. 257.

[19]ECF No. 258 at 2 (emphasis in original).

NVRA.[20]  With the agreement of the parties, the undersigned ruled that the additional discovery could be "conducted by both plaintiffs and defendant with regard to *both* aspects of the two-part analysis described in footnote 14 [of] the Tenth Circuit's October 19, 2016 decision."[21]  In other words, under both Judge Robinson's and the undersigned's orders, the scope of additional discovery was limited to the following two issues:

> (1) whether a substantial number of noncitizens have successfully registered to vote in Kansas under the NVRA's attestation-of-citizenship requirement (showing that attestation falls below the minimum necessary for Kansas to carry out its eligibility-assessment and registration duties); and

> (2) whether DPOC is the minimum amount of information necessary for Kansas to carry out its eligibility-assessment and registration duties.

On November 15, 2016, plaintiffs served their Fifth Request for Production of Documents, containing thirteen individual document requests.[22]  Then on November 22, 2016, plaintiffs served their Sixth Request for Production of Documents, which contained one additional individual request.[23]  It is this Sixth Request that is now before the court. After modification resulting from counsel's meet-and-confer discussions, the Sixth Request now seeks "*all documents and communications regarding potential amendments or changes to the National Voter Registration Act affecting how officials may assess the eligibility of a*

---

[20]*See Fish*, 840 F.3d at 738, n.14.

[21]ECF No. 258 at 2-3.

[22]ECF No. 289-5.

[23]ECF No. 273-2.

*voter registration applicant.*"[24]

The parties have identified two documents arguably responsive to this request: (1) a draft of a possible future amendment to the NVRA that was created by Secretary Kobach and shared only with counsel in defendant's office ("the draft amendment"); and (2) a document created by Secretary Kobach to share with then President-elect Trump referencing a possible amendment to the NVRA, which was photographed by the Associated Press in late November 2016 as Secretary Kobach was walking into a meeting with Mr. Trump ("the photographed document"). Defendant has refused to produce the documents and objects to the Sixth Request on multiple grounds, including that the request is beyond the scope of the limited additional discovery permitted by the court, does not seek relevant information, and is overbroad.[25] Defendant further asserts that the documents are privileged, asserting the draft amendment is protected by the attorney-client and deliberative-process privileges, and the photographed document is protected by the executive privilege.

Fed. R. Civ. P. 26(b)(1) sets broad parameters for discovery. "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery

---

[24]ECF No. 273 at 4; ECF No. 273-6 at 2 (emphasis added). The request as originally written sought, "All documents and communications related to draft amendments to the NVRA, including but not limited to any amendments related to the purported purposes of preventing, deterring and/or identifying noncitizen registrations and/or attempted registrations, registration fraud, and/or voter fraud." ECF No. 273-2.

[25]Defendant's objection that the Sixth Request is overbroad is no longer applicable, given that the request has been limited by the parties' meet-and-confer discussions. *See supra* note 24 and accompanying text. In any event, the court would be hard-pressed to deem a request that generates only two responsive documents "overbroad."

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable."[26]  As noted above, the court has limited the scope of this second round of discovery to information relevant to the two-pronged analysis contemplated by the Tenth Circuit's opinion.  Information is relevant if it "'bears on, or . . . reasonably could lead to other matter that could bear on,' any party's claim or defense," here, plaintiffs' preemption claim.[27]

Whether plaintiffs' Sixth Request falls within the limited scope for which discovery was reopened is a very close call.  At first glance, the request appears to be beyond the scope. Defendant's communications regarding potential future amendments to the NVRA that would change how state officials may assess voter eligibility do not immediately appear to have a bearing on (1) whether a substantial number of noncitizens have successfully registered to vote in Kansas under the current attestation requirement, or (2) whether nothing less than DPOC is sufficient for Kansas to carry out its eligibility-assessment duties.

However, as plaintiffs point out, a responsive document indicating defendant has

---

[26]Fed. R. Civ. P. 26(b)(1).  The court gives no weight to  defendant's argument that draft amendments to a law are not "facts" admissible as evidence, as Rule 26(b)(1) makes clear that information "need not be admissible in evidence to be discoverable."

[27]*Duffy v. Lawrence Mem'l Hosp.*, No. 14-2256, 2017 WL 495980, at *3 (D. Kan. Feb. 7, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting *Oppenheimer* and ruling the *Oppenheimer* standard still applicable after the 2015 Amendment to Rule 26(b)(1)).

lobbied or attempted to change the eligibility-assessment standards or procedures mandated by the NVRA "in the wake of an adverse preliminary injunction ruling may constitute evidence that there is no current problem of substantial noncitizen registration in Kansas" (the first part of the two-step analysis).[28]  Such evidence would support plaintiffs' claim that defendant cannot rebut the current attestation presumption and thus has sought to change the legal standard.  Although, as defendant notes, estimates of the number of noncitizens who have registered to vote in Kansas likely constitute the *most* direct evidence under the Tenth Circuit's "substantial number" test, Rule 26 discovery is permitted as to *all* relevant (and proportional) information; it is not limited to the *most* relevant information or *most* direct evidence.  Similarly, defendant is correct that information showing defendant believes the NVRA's eligibility assessment provision should be amended would not "*ipso facto*" demonstrate that there are not substantial numbers of noncitizens on Kansas voter rolls,[29] but relevance at the discovery stage is not judged by such a narrow criteria.  Although such information may not be conclusive of plaintiffs' preemption claim, it may nevertheless be relevant.

Plaintiffs also make a convincing argument that if a responsive document shows defendant suggested an alternative means for assessing voter qualifications, such information would bear on whether DPOC is the least restrictive method for evaluating voter eligibility

---

[28]ECF No. 273 at 6-7.

[29]ECF No. 288 at 16.

9

(the second part of the two-step analysis).  Material related to a potential NVRA amendment could bear on DPOC's effectiveness when compared to other potential means of assessment. And if the documents indicate defendant proposed amending the NVRA to require DPOC as the only method for demonstrating voter eligibility, such information would bear on whether defendant can satisfy the current standard for demonstrating DPOC is the least burdensome method of preventing substantial numbers of noncitizens from registering to vote.

Under the broad discovery rules, plaintiffs have met their burden of demonstrating that the Sixth Request seeks information within the scope of the reopened discovery.  If, as discussed above, either identified responsive document indicates defendant (1) may have sought to change the eligibility-assessment standards or procedures mandated by the NVRA or (2) may have suggested an alternative means for assessing voter qualifications, such information is relevant to plaintiffs' preemption claim to which the reopened discovery pertains and, therefore, is discoverable (assuming, of course, no asserted privilege applies). Significantly, however, defendant suggests that the two documents, though falling under the Sixth Request, do *not* contain information falling in either of these two categories, and, accordingly, do not contain relevant information.  Specifically, defendant states that the draft amendment "does not propose to 'amend or alter' an [sic] 'eligibility-assessment procedures mandated by the NVRA.'"[30] Defendant also states "no such document exists" showing

---

[30]ECF No. 288 at 18.

defendant sought an alternative means of assessing voter qualification by amending the NVRA.[31]

Rather than determine the relevance of the identified responsive documents in a vacuum, the undersigned orders defendant to produce the two documents for *in camera* review.  The court will review the documents to determine whether either bears on, or reasonably could lead to other matter that could bear on, the two-pronged analysis contemplated by the Tenth Circuit and the subject of reopened discovery for plaintiffs' preemption claim.  If the documents do not contain relevant information, the undersigned will not ordered them produced and plaintiffs' motion will be denied.  On the other hand, if the documents do contain relevant information under the standards set forth above, the court will go on to analyze defendant's arguments that the documents are privileged.  The court soon will issue a subsequent order addressing the remainder of plaintiffs' motion to compel and, if necessary, defendant's privilege objections to production.

IT IS THEREFORE ORDERED: Defendant's objection based on the scope of the Sixth Request is overruled.  Defendant shall submit the two identified documents to the chambers of the undersigned by **5:00 p.m. on April 6, 2017.**  The submission may be made by e-mail, in person, or by a certified mail service.

Dated April 5, 2017, at Kansas City, Kansas.

---

[31]*Id.* at 17.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge