IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al.,

           Plaintiffs,

v.                                                                                 Case No. 16-2105-JAR

KRIS KOBACH, in his official capacity
as Secretary of State for the State of Kansas,

           Defendant.

## **ORDER**

This voting-rights case, which challenges the Kansas documentary proof of citizenship ("DPOC") law,[1] is before the court on plaintiffs' motion to compel defendant Kansas Secretary of State Kris Kobach to produce two documents responsive to their Sixth Request for Production of Documents (ECF No. 272). Defendant objected to producing the documents on three bases: (1) the Sixth Request is beyond the scope of the limited additional discovery permitted by the court on plaintiffs' preemption claim; (2) the information in the documents, even if responsive to the request, is not relevant to plaintiffs' preemption claim; and (3) the documents are protected from production by certain privileges. On April 5, 2017, the undersigned U.S. Magistrate Judge, James P. O'Hara, issued an order overruling defendant's scope objection and ordering defendant to submit the two documents for *in*

---

[1] Kan. Stat. Ann. § 25-2309(l) (requiring voter applicants to provide proof of United States citizenship when they simultaneously apply for or renew a driver's license).

*camera* review.² The undersigned has reviewed the documents and is now prepared to rule on defendant's relevance objection and privilege assertions. Because parts of the two documents are unquestionably relevant, and because defendant has not demonstrated a privilege protects them from disclosure, plaintiffs' motion to compel is granted.

I.   Background

Plaintiffs allege the National Voter Registration Act ("NVRA") preempts Kansas's DPOC requirement as applied to the federally mandated voter-registration form that's a required part of any driver's license application or renewal.³ Section 5 of the NVRA provides the voter-registration form "may require only the minimum amount of information necessary to . . . enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process."⁴ Section 5 further mandates the form include an attestation, signed under penalty of perjury, that the applicant meets "each eligibility requirement (including citizenship)."⁵

In May 2016, the presiding U.S. District Judge, Julie A. Robinson, entered a preliminary injunction temporarily barring defendant's enforcement of Kansas's DPOC

---

²ECF No. 318.

³52 U.S.C. § 20504.

⁴52 U.S.C. § 20504(c).

⁵*Id.* This provision is frequently referred to as the "attestation requirement."

requirement.[6] Judge Robinson found plaintiffs had made a strong showing that the Kansas DPOC law, as enforced, did not meet § 5's provision that a voter-registration form require only the "minimum amount of information necessary" to enable state officials to assess an applicant's citizenship (as criteria for voting eligibility).[7] Defendant filed an interlocutory appeal of Judge Robinson's opinion to the Tenth Circuit Court of Appeals.

On October 19, 2016, the Tenth Circuit affirmed Judge Robinson's preliminary injunction ruling and clarified the standards that apply to § 5 claims.[8] The Tenth Circuit ruled that § 5's attestation requirement

> is the presumptive minimum amount of information necessary for state election officials to carry out their eligibility-assessment and registration duties. As it pertains to the citizenship requirement, the presumption ordinarily can be rebutted (i.e., overcome) only by a factual showing that substantial numbers of noncitizens have successfully registered to vote under the NVRA's attestation requirement.[9]

Thus, the Circuit recognized a presumption under the NVRA that the attestation requirement satisfies the minimum-information principle, but permitted states to rebut the presumption by showing that "a substantial number of noncitizens have successfully registered"[10] notwithstanding the requirement, such "that attestation falls below the minimum necessary

---

[6]ECF No. 129.

[7]*Id.* at 51, 66.

[8]*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016).

[9]*Id.* at 717.

[10]*Id.* at 738-39.

to carry out [the state's] eligibility-assessment and registration duties."[11] The question then arose as to what happens if a state like Kansas is able to rebut the presumption: Is a DPOC regime definitively deemed adequate to satisfy the minimum-information principle? In a footnote ("Footnote 14"), the Tenth Circuit stated that the question remains open, but suggested that the state likely would have to satisfy a second step by showing "that nothing less than DPOC is sufficient to meet [the eligibility-assessment and registration] duties."[12]

Based on the Tenth Circuit's opinion, defendant asked the court to reopen discovery[13] "for the limited purpose of allowing the State to attempt to rebut [the] newly created presumption."[14] Judge Robinson granted that request, reasoning, "it is now clear that Secretary Kobach must rebut a presumption that attestation of citizenship is the minimum amount of information necessary for Kansas to carry out its assessment of eligibility and its registration duties, and that he must do so by showing that 'a substantial number of noncitizens have successfully registered to vote under the attestation requirement.'"[15] Judge Robinson further stated that if defendant could meet this first step, then "an inquiry 'into whether DPOC is the minimum amount of information necessary for Kansas to carry out its

---

[11]*Id.* at 738 n.14.

[12]*Id.*

[13]While the interlocutory appeal was pending, discovery had closed under a deadline set in this court's March 24, 2016 scheduling order. ECF No. 49.

[14]ECF No. 249 at 6.

[15]ECF No. 254 at 4.

eligibility-assessment and registration duties would . . . be appropriate.'"[16]

As discussed in the undersigned's April 5, 2017 order, the court then reopened discovery on both prongs of the § 5 analysis discussed in Footnote 14 of the Circuit's opinion:

> (1) whether a substantial number of noncitizens have successfully registered to vote in Kansas under the NVRA's attestation-of-citizenship requirement (showing that attestation falls below the minimum necessary for Kansas to carry out its eligibility-assessment and registration duties); and

> (2) whether DPOC is the minimum amount of information necessary for Kansas to carry out its eligibility-assessment and registration duties.[17]

As part of this limited, reopened discovery, plaintiffs served the Sixth Request, which seeks "all documents and communications regarding potential amendments or changes to the National Voter Registration Act affecting how officials may assess the eligibility of a voter registration applicant."[18] The parties identified two documents arguably responsive to this request: (1) a draft of a possible future amendment to the NVRA that was created by Secretary Kobach and shared by him with Garrett Roe, an attorney in the Office of the Kansas Secretary of State and co-counsel in this case, and Bryan Caskey, head of the

---

[16]*Id*. at 4-5 (quoting *Fish*, 840 F.3d at 750–51).

[17]ECF No. 318 at 6.

[18]ECF No. 273 at 4; ECF No. 273-6 at 2. The request as originally written sought, "All documents and communications related to draft amendments to the NVRA, including but not limited to any amendments related to the purported purposes of preventing, deterring and/or identifying noncitizen registrations and/or attempted registrations, registration fraud, and/or voter fraud." ECF No. 273-2. But the request was modified in the course of counsel's meet-and-confer discussions.

elections division in the Office of the Kansas Secretary of State ("the draft amendment"); and (2) a document created by Secretary Kobach to share with then President-elect Trump referencing a possible amendment to the NVRA, which was photographed by the Associated Press in late November 2016 as Secretary Kobach was walking into a meeting with Mr. Trump ("the photographed document").

As noted above, defendant objected to producing the documents on scope and relevance grounds, and further asserted the documents are privileged. Specifically, defendant argues the draft amendment is protected by the attorney-client and deliberative-process privileges, and the photographed document is protected by the executive privilege. The court overruled defendant's scope objection in the April 5, 2017 order. The court now considers defendant's relevance objection and privilege claims.

## II. Relevance Objection

The court set forth the relevance standards it would apply to the instant discovery dispute, considering the limited scope of reopened discovery, in its earlier order. The court explained that Fed. R. Civ. P. 26(b)(1) sets broad parameters for discovery and ruled the court would deem relevant any information that "'bears on, or . . . reasonably could lead to other matter that could bear on,'" either of the two prongs of the § 5 analysis determinative of plaintiffs' preemption claim.[19] The court specifically noted that if a document suggests

---

[19]ECF No. 318 at 8-10 (quoting *Duffy v. Lawrence Mem'l Hosp.*, No. 14-2256, 2017 WL 495980, at *3 (D. Kan. Feb. 7, 2017), which in turn quoted *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

defendant may have sought to change the eligibility-assessment standards or procedures mandated by the NVRA or, relatedly, suggested a means other than attestation (such as DPOC) to assess voter eligibility, the document would be deemed relevant. Such information would bear on—or could lead to other information that could bear on—whether defendant can meet his burden under the NVRA's current standards of demonstrating that a substantial number of noncitizens registered to vote in Kansas or whether, instead, defendant cannot meet that standard so is attempting to change it.[20] Similarly, such information would bear on—or could lead to other information that could bear on—whether defendant can meet his burden under the Tenth Circuit's contemplated second-step of demonstrating DPOC is the least-restrictive method for evaluating voter eligibility, or whether, again, defendant cannot meet that standard so is attempting to change it.[21]

The court has conducted an *in camera* review of the two responsive documents. Despite defendant's representations to the contrary,[22] the court concludes both documents

---

[20]*Id.* at 8-9.

[21]*Id.* at 9-10.

[22]Defendant stated in his response to the motion to compel that the draft amendment "does not propose to 'amend or alter' an [sic] 'eligibility-assessment procedures mandated by the NVRA.'" ECF No. 288 at 18. Defendant also stated "no such document exists" that shows defendant sought an alternative means of assessing voter qualification by amending the NVRA. *Id.* at 17. These statements, most charitably, can be construed as word-play meant to present a materially inaccurate picture of the documents. After plaintiffs review the documents to be provided under this order, the court leaves it to them to decide whether to seek sanctions against defendant in this regard. But whether plaintiffs elect to file a sanctions motion misses the larger point. As mentioned earlier, Secretary Kobach is both a defendant and counsel of record, and in the latter capacity is an officer of the court with a

contain exactly the type of information contemplated by the court as relevant. To be clear, neither of these documents *conclusively* proves defendant sought to amend the NVRA to alleviate defendant's burdens under § 5 as interpreted by the Tenth Circuit in October 2016. But, at a minimum, both "bear on" (and reasonably could lead to other information bearing on) that question and, therefore, on whether defendant can meet the *current* standards that will be determinative of plaintiffs' preemption claim in this case. Defendant's relevance objection to the Sixth Request therefore is overruled.[23]

### III. Attorney-Client Privilege Assertion Over the Draft Amendment

Of course, even if relevant, a document need not be produced in discovery if it's protected by a privilege.[24] Defendant asserts the attorney-client privilege applies to the draft document showing possible proposed amendments to the NVRA. The document was created by Secretary Kobach and shared by him only with two members of the Secretary of State's Office—Mr. Roe, an attorney in the office and co-counsel in this case, and Mr. Caskey, the

---

duty of candor and a duty not to assert frivolous arguments. At the risk of stating what should be obvious, when any lawyer takes an unsupportable position in a simple matter such as this, it hurts his or her credibility when the court considers arguments on much more complex and nuanced matters such as attorney-client privilege, deliberative-process privilege, executive privilege, and indeed, the ultimate issue of whether Kansas's DPOC law is preempted by the NVRA.

[23]Because the court deems, at least in part, the photographed document relevant, the court flatly rejects defendant's argument that "given the clear irrelevancy of the document sought, the purpose of the request for production can only be to harass defendant." ECF No. 288 at 26.

[24]Fed. R. Civ. P. 26(b)(1) limits discovery to "nonprivileged matters."

head of the office's elections division.

Because this litigation arises out of a federal statutory scheme, federal law governs the application of the attorney-client privilege.[25] Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[26] Although this description suggests that the privilege only operates to protect a client's communications to a lawyer, the Tenth Circuit recognizes that a lawyer's communication to a client is also protected if it is "related to the rendition of legal services and advice."[27] "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed."[28]

The court has reviewed the draft amendment *in camera*. On its face, the document

---

[25]Fed. R. Evid. 501; *New Jersey v. Sprint Corp.,* 258 F.R.D. 421, 425 (D. Kan. 2009).

[26]*New Jersey v. Sprint*, 258 F.R.D. at 425.

[27]*Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (rejecting narrower view that only communications that reveal confidences from the client are protected); *see also id.* (holding that the Tenth Circuit's view "protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice"); *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093, 06-2360, 06-2359, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008) ("The privilege also protects advice given by the lawyer in the course of representing the client.").

[28]*United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016) (quoting *Foster v. Hill*, 188 F.3d 1259, 1264 (10th Cir. 1999)).

doesn't evidence a request for, or the giving of, legal advice. Nor does defendant's privilege log indicate the document contains or requests legal advice.[29] Turning then to defendant's response brief, he doesn't directly address whether the document contains or seeks legal advice, but only makes the general statement: "When seeking input on hypothetical, future draft alterations to the NVRA, which necessarily include input on the legal effect of those changes, the appropriate individuals *would be* . . . Garrett Roe, attorney of the Office of the Kansas Secretary of State, and Bryan Caskey, the head of the Elections Division of the Office of the Kansas Secretary of State."[30]

This statement is insufficient to satisfy defendant's burden of demonstrating the document was disclosed for the purpose of imparting, or receiving, legal advice. Giving the statement its broadest interpretation, defendant could be asserting that Secretary Kobach (as a client) was seeking legal advice on the legal effect of his draft hypothetical amendments to the NVRA from Mr. Roe (his attorney) and Mr. Caskey (who is not an attorney). But the court isn't required to guess at defendant's privilege assertions. And even were defendant's vague statement read this broadly, defendant doesn't explain why he was seeking legal advice from Mr. Caskey, a non-lawyer. Defendant cites caselaw holding that the attorney-client privilege isn't waived by the presence of a non-attorney agent of either the client or

---

[29]*See* ECF No. 273-4. The privilege-log description of the document states simply, "Preliminary, non-final, draft language to the National Voter Registration Act shared only with Brian Caskey and Garrett Roe."

[30]ECF No. 288 at 23 (emphasis added).

attorney, but defendant makes no argument that Mr. Caskey is an agent of either client or attorney in this instance. Unlike in *High Point SARL v. Sprint Nextel Corp.*, a case cited by defendant, he hasn't asserted the confidential document was shared with a non-attorney for the purpose of facilitating an attorney's legal analysis.[31] In the end, given the content and limited context provided for the draft amendment, the court is left with insufficient information to determine that it is protected by the attorney-client privilege. Defendant hasn't satisfied his burden of proving the attorney-client privilege applies, and thus his objection on that basis is overruled.

### IV. Deliberative-Process Privilege Assertion Over the Draft Amendment

Next, defendant argues the draft amendment is protected by the deliberative-process privilege. The deliberative-process privilege shields from production "documents reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated" by federal government agencies.[32] Defendant notes the deliberative-process privilege has been codified at 5 U.S.C. § 552(b)(5), as an exemption to the Freedom of Information Act. The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the

---

[31]No. 09-2269-CM-DJW, 2012 WL 234024, at *13 (D. Kan. Jan. 25, 2012) (finding documents prepared or transmitted by "high level members" of intellectual-property division, who were working at the direction of attorneys, to be privileged).

[32]*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

quality of agency decisions by protecting open and frank discussion among those who make them within the Government."[33] "It further serves to prevent the premature disclosure of proposed policies, and avoids 'misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.'"[34]

Defendant asserts that, as the state official charged by the NVRA with administering that federal statute in Kansas, the "Secretary of State and his deputies have an interest in suggesting future amendments to the NVRA."[35] Thus, defendant argues, their internal discussions about amending the NVRA are protected by the deliberative-process privilege.

The court respectfully disagrees. The obvious problem with defendant's argument is that the deliberative-process privilege he asserts protects the pre-decisional deliberations of *federal* government *agencies*.[36] Defendant hasn't cited a case in which the privilege was accorded to *state* agencies or officials. To the contrary, caselaw indicates that the privilege is "limited to authorities 'of the Government of the United States.'"[37] Thus, only the "head

---

[33]*Id.* at 8-9 (internal quotations and citations omitted).

[34]*Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) (quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980)).

[35]ECF No. 288 at 25.

[36]*See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

[37]*Kerr v. U.S. Dist. Court*, 511 F.2d 192, 197 (9th Cir. 1975) (quoting 5 U.S.C. § 551(1)). *See also St. Michael's Convalescent Hosp. v. California*, 643 F.2d 1369, 1373-74 (9th Cir. 1981) (rejecting FOIA privilege assertion as to documents held by state agencies

of the relevant federal agency . . . [or] [t]he government official to whom authority is delegated may assert the privilege."[38] Defendant hasn't suggested that the Office of the Kansas Secretary of State is a federal agency, or a delegate of a federal agency, tasked with proposing congressional amendments to the NVRA. The court acknowledges defendant may have a legitimate interest in the language of the NVRA because he is tasked with administering it in Kansas. But he hasn't demonstrated such an interest entitles him to assert this privilege applicable to federal agencies. Thus, defendant hasn't satisfied his burden of demonstrating the deliberative-process privilege applies.[39] His objection on that basis therefore is overruled.

## V. Executive-Privilege Assertion Over the Photographed Document

Secretary Kobach asserts the photographed document that he presented to then President-elect Trump is protected by the executive (or "presidential") privilege. In *United*

---

acting pursuant to federal Medicaid regulations, because the definition of "agency" "does not encompass state agencies or bodies," and also because the federal government did not exercise the supervision "needed to characterize the state bodies as federal agencies"); *Buford v. Holladay*, 133 F.R.D. 487, 494 (S.D. Miss. 1990) ("[T]his Court concludes that the deliberative process privilege should not be extended to include state governmental agencies. . . .").

[38]*Fairholme Funds, Inc. v. United States*, 128 Fed. Cl. 410, 432 (2016) (vacated in part on other grounds, *In re: United States*, Nos. 2017-104, 2017-1122, 2017 WL 406243 (Fed. Cir. Jan. 30, 2017)).

[39]To be clear, the court is <u>not</u> ruling that some manner of deliberative-process privilege can never apply to state agencies. But defendant's privilege assertion was based on the privilege accorded federal agencies. Defendant never directly asserted a state-agency privilege.

*States v. Nixon*,[40] the Supreme Court recognized "the presumptive confidentiality of Presidential communications"[41] as a qualified privilege. This "privilege of confidentiality of Presidential communications derives from the supremacy of the Executive Branch within its assigned area of constitutional responsibilities."[42] The Supreme Court stated the privilege is necessary because a "President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately."[43]

Defendant states that, though <u>not</u> acting in his capacity as Kansas Secretary of State, he presented the photographed document to President-elect Trump as a member of the "transition team" that "aids the President-elect in preparing policies and assuming his official duties as President as efficiently as possible."[44] Defendant asserts communications between a President-elect and his transition team are entitled to protection because "[a]llowing this document to be discoverable would jeopardize the right of the President-elect to have confidential and frank communications within his transition team."[45]

---

[40] 418 U.S. 683 (1974).

[41] *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 440 (1977).

[42] *Id.* at 447.

[43] *United States v. Nixon*, 418 U.S. at 708.

[44] ECF No. 288 at 28.

[45] *Id.*

Defendant's argument for withholding the photographed document under the executive privilege is unpersuasive. First, Secretary Kobach's communication was made to a president-elect, not to a sitting president. Although a president-elect by *statute* and policy may be accorded security briefings and other transitional prerogatives, he or she has no *constitutional* power to make any decisions on behalf of the Executive Branch. No court has recognized the applicability of the executive privilege to communications made before a president takes office. If that were the law, it would mean that potentially almost everything communicated to a president-elect by the hundreds of persons seeking appointments in the new administration would be shielded by privilege.

In *Nixon v. Administrator of General Services*, the Supreme Court did recognize that *former* presidents may assert privilege over certain communications made during their terms in office.[46] But the reasoning given by the Court for its decision doesn't directly translate to communications with president-elects. There, the Court adopted the view of the Solicitor General, who reasoned,

> the privilege is necessary to provide the confidentiality required for the President's conduct of office. Unless he can give his advisers some assurance of confidentiality, a President could not expect to receive the full and frank submissions of facts and opinions upon which effective *discharge of his duties* depends. The confidentiality necessary to this exchange cannot be measured by the few months or years between the submission of the information and the end of the President's tenure; the privilege is not for the benefit of the President as an individual, but for the benefit of the Republic. Therefore the

---

[46] 433 U.S. at 439.

privilege survives the individual President's tenure.[47]

The Court concluded the executive privilege could be asserted by a former president, but only as to materials whose content falls within the scope of "communications in performance of *a President's responsibilities of his office*, and made in the process of shaping policies and making decisions."[48] Defendant offers no persuasive argument for how the holding in *Nixon v. Administrator of General Services* might apply to president-elects.

Second, even adopting defendant's view that the executive privilege may be asserted by a president over communications made before he takes office, defendant doesn't address the fact that now-President Trump conspicuously has <u>not</u> asserted the privilege over the photographed document; if indeed Secretary Kobach was a member of the "transition team" for *President-elect* Trump, then it's reasonable to infer that Secretary Kobach would have notified *President* Trump and given him an opportunity to weigh in on this dispute. Nor has defendant made a persuasive case for allowing Secretary Kobach, who may have sought a high-level position in the Executive Branch but who is not a member of the Executive Branch, to assert the privilege himself. At least one court has recognized that whether the executive privilege must be invoked by a president personally is an open question.[49]

---

[47]*Id.* at 448-49 (emphasis added).

[48]*Id.* at 449 (internal quotations, modifications, and citations omitted) (emphasis added).

[49]*In re Sealed Case*, 121 F.3d 729, 744 n.16 (D.C. Cir. 1997); *Judicial Watch, Inc. v. Dept. of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004).

Defendant does not attempt to persuade the court that the question should be answered in the negative.

Finally, and perhaps most importantly, defendant hasn't addressed whether communication about proposed amendments to voting laws are applicable to the discharge of presidential "duties"[50] or a president's "assigned area of constitutional responsibilities."[51] As discussed above, the privilege only protects "communications in performance of a President's responsibilities of his office;" it does not protect *every* communication with a president.[52] The Supreme Court recognized in *Arizona v. Inter Tribal Council of Arizona, Inc.,* a case addressing the NVRA in relation to Arizona's mail-in voter application, that the Elections Clause of the United States Constitution[53] assigns the power to regulate voter-registration to Congress, working with the states.[54] Defendant hasn't clearly articulated what

---

[50]*Nixon v. Adm'r of Gen. Servs.,* 433 U.S. at 448-49.

[51]*Id.* at 447.

[52]*See id.* at 449 ("The appellant may legitimately assert the Presidential privilege, of course, only as to those materials whose contents fall within the scope of the privilege recognized in United States v. Nixon, supra. In that case the Court held that the privilege is limited to communications 'in performance of (a President's) responsibilities,' 418 U.S., at 711, 94 S.Ct., at 3109, 'of his office,' id., at 713, and made 'in the process of shaping policies and making decisions,' id., at 708, 94 S.Ct., at 3107.") (quoting *United States v. Nixon*, 418 U.S. at 708, 711, 713).

[53]Art. I, § 4, cl.1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of chusing Senators.").

[54]133 S. Ct. 2247, 2251–53 (2013).

duty President Trump has in regulating voter-registration.

In the end, defendant simply hasn't presented sufficient argument or evidence to persuade the court that the executive privilege protects the photographed document from discovery.[55] His objection on that basis therefore is overruled.

**VI.  Redaction**

Because the court has found both the draft amendment and photographed document relevant and not protected by any asserted privilege, the documents must be produced to plaintiffs in discovery. The parties have raised the question, however, of whether, before production, defendant may redact those portions of the documents not relevant to the reopened discovery issues. Opposing redaction, plaintiffs cite cases applying the general rule in this district that a party responding to a Fed. R. Civ. P. 34 document request may not unilaterally "scrub responsive documents for non-responsive information."[56] The court has stated that allowing such unilateral redaction, and thereby inserting "another step in the process," would invite additional discovery disputes and undermine Fed. R. Civ. P. 1's directive to construe the Rules to advance the just, speedy, and inexpensive determination

---

[55]Defendant's argument for application of the privilege to the facts in this case consists of only five sentences. ECF No. 288 at 28.

[56]*HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2010 WL 4792388, at *5-6 (D. Kan. Nov. 17, 2010) (quoting *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301, at *1-2 (W.D. Pa. Sept. 30, 2008)); *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC, 2015 WL 7078796, at *4 (D. Kan. Nov. 13, 2015).

of cases.[57] The instant situation, however, is quite different. Here, the court has conducted an *in camera* review of the documents. So the usual concerns accompanying unilateral redaction by a party are absent.

The court appreciates there may be great curiosity by plaintiffs (and, indeed, the general public) about the contents of the photographed document, transcending far beyond the technical NVRA issues involved in this litigation. By the same token, defendant has asserted national-security concerns over release of some of the information in the document. Regardless of whether the asserted national-security concerns are justified, and regardless of whether Secretary Kobach's national-security recommendations in the photographed documents are wise or unwise (which would involve a largely political assessment), the court sees no reason to jeopardize these stated concerns by production of information the court's review has indicated is completely irrelevant and unresponsive to the very narrow issues involved in the Sixth Request.[58]

---

[57] HR Tech., 2010 WL 4792388, at *5-6 (quoting *Orion Power*, 2008 WL 4462301, at *1-2); *Neonatal Prod. Grp.*, 2015 WL 7078796, at *4.

[58] The parts of the documents the court is ordering defendant to produce to plaintiffs do not implicate any national-security concerns, i.e., they only deal with the voting-rights issues involved in this lawsuit. The court acknowledges the public generally has a right of access to judicial records. *See Eugene S. v. Horizon Blue Cross Blue Shield*, 663 F.3d 1124, 1135 (10th Cir. 2011); *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007); *United States v. Apperson*, 642 F. App'x 892, 898 (10th Cir. 2016). In this instance, however, no party has sought to <u>file</u> the disputed documents on the judicial record for use in this case. Rather, at this point, plaintiffs have simply requested the documents in discovery and defendant has asserted a discovery objection. As in many federal lawsuits, a protective order permitted by Fed. R. Civ. P. 26(c) was entered in this case. ECF No. 55. The protective order governs the parties' production of documents in discovery.

Accordingly, defendant may redact portions of the documents that are neither relevant nor responsive to the Sixth Request. Specifically, this is limited to redaction of numbered paragraphs 4 and 5 in the draft amendment, and all language in the photographed document except the document's heading, sub-heading V, and numbered paragraph 23.

IT IS THEREFORE ORDERED that plaintiffs' motion to compel is granted. Defendant is ordered to produce the two identified documents, redacted as noted above, by **April 19, 2017**.

Dated April 17, 2017, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge
