# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, ET AL.,

    **Plaintiff,**

v.

KRIS KOBACH, KANSAS SECRETARY OF STATE,

    **Defendant.**

Case No. 16-2105-JAR-JPO

## MEMORANDUM AND ORDER

This case is before the Court on a Motion for Review of the Magistrate's Rule [sic] Order Compelling Disclosure Under Rule 72(a) and Local Rule 72.1(a) (Doc. 326), filed on April 26, 2017. The briefing deadlines for this motion were expedited to facilitate a prompt ruling before the parties' proposed pretrial order submission is due. The matter is now fully briefed and the Court is prepared to rule. As described more fully below, Defendant's motion for review is denied. Defendant shall produce the redacted documents identified by Magistrate Judge O'Hara in his April 17, 2017 Order by May 12, 2017.

**I.     Background**

The individual Plaintiffs in this case are United States citizens who attempted to register to vote at the time they applied for a Kansas driver's license. Under a 2011 Kansas Documentary Proof of Citizenship ("DPOC") law, Plaintiffs' voter registration applications were deemed "incomplete," and under a 2015 regulation passed by Kansas Secretary of State Kris Kobach, some of these applications were cancelled in the Kansas voter registration database. These Plaintiffs, along with the Kansas League of Women Voters, bring several claims against Secretary Kobach for constitutional violations under 42 U.S.C. § 1983, and for statutory

violations of the National Voter Registration Act ("NVRA").  On May 17, 2016, the Court issued an extensive Memorandum and Order granting in part Plaintiffs' motion for a preliminary injunction barring enforcement of the Kansas DPOC law until this case could be decided on the merits.[1]  It was effective on June 14, 2016.[2]  The Tenth Circuit affirmed that ruling on October 19, 2016, in an extensive opinion.[3]

Discovery had completed in June 2016, but because the Tenth Circuit's comprehensive opinion clarified the standards that apply to Plaintiffs' claim under § 5 of the NVRA, this Court granted Defendant's motion to reopen discovery.  Based on the Tenth Circuit's opinion, the undersigned and presiding United States Magistrate Judge James P. O'Hara permitted additional discovery on two issues:

> (1) whether a substantial number of noncitizens have successfully registered to vote in Kansas under the NVRA's attestation-of-citizenship requirement (showing that attestation falls below the minimum necessary for Kansas to carry out its eligibility-assessment and registration duties); and
>
> (2) whether DPOC is the minimum amount of information necessary for Kansas to carry out its eligibility-assessment and registration duties.[4]

On November 22, 2016, Plaintiffs served their Sixth Request for Production of Documents.[5]  This request, as modified during counsel's meet-and-confer discussion, seeks: "all documents and communications regarding potential amendments or changes to the National Voter Registration Act affecting how officials may assess the eligibility of a voter registration applicant" ("Sixth Request").[6]  Plaintiffs moved to compel production of two documents that

---

[1] 189 F. Supp. 3d 1107 (D. Kan. 2016).
[2] Doc. 145.
[3] 840 F.3d 710 (10th Cir. 2016).
[4] Docs. 258 at 2–3, 254 at 2–4; *Fish*, 840 F.3d at 737–40 & n.14.
[5] Doc. 273-2.
[6] *Id.*; Doc. 273-6 at 2.

they argued were responsive to this request: (1) a draft of a possible future amendment to the NVRA that was created by Defendant and shared only with counsel in Defendant's office and Bryan Caskey, who is the head of the Elections Division of the Secretary of State's office ("the draft amendment") ; and (2) a document created by Defendant to share with then President-elect Donald Trump referencing a possible amendment to the NVRA, which was photographed by the Associated Press in late November 2016 as Defendant was walking into a meeting with President-elect Trump ("the photographed document").  Defendant refused to produce these documents, asserting that they are beyond the scope of discovery, do not seek relevant information, and are protected by the attorney-client, deliberative-process, and executive privileges.

On April 5, 2017, Judge O'Hara issued an Order ruling that the Sixth Request was within the scope of discovery, as limited by this Court's order reopening discovery.[7]  Judge O'Hara acknowledged that the scope objection was a very close call, but concluded that Plaintiffs' request could be relevant to the issues for which discovery was reopened.  First, they could be relevant because "a responsive document indicating defendant has lobbied or attempted to change the eligibility-assessment standards or procedures mandated by the NVRA 'in the wake of an adverse preliminary injunction ruling may constitute evidence that there is no current problem of substantial noncitizen registration in Kansas.'"[8]  Second, "if a responsive document shows defendant suggested an alternative means for assessing voter qualifications, such information would bear on whether DPOC is the least restrictive method for evaluating voter eligibility."[9]  These materials could relate to "whether defendant can satisfy the current standard

---

[7]Doc. 318.

[8]*Id.* at 9 (quoting Doc. 273 at 6–7).

[9]*Id.* at 9–10.

3

for demonstrating DPOC is the least burdensome method of preventing substantial numbers of noncitizens from registering to vote."[10] Judge O'Hara rejected Defendant's argument that the documents did not in fact demonstrate either component of the Tenth Circuit's standard for demonstrating that the DPOC requirement satisfies § 5's minimum amount of information requirement—a relevance objection. Instead, the court ordered Defendant to produce both of the documents to him for *in camera* review before he ruled on the remainder of Plaintiffs' motion to compel.

After reviewing the two documents *in camera*, Judge O'Hara issued a second Order on April 17, 2017.[11] The April 17 Order explained that the documents (in redacted form) are relevant to the issues for which discovery was reopened. He further ruled on Defendant's assertions of privilege, finding none of the asserted privileges apply to these documents. Judge O'Hara ordered Defendant to produce redacted versions of the draft amendment and the photographed document to Plaintiffs by April 19, 2017.

On April 19, 2017, Defendant moved for a stay of Judge O'Hara's Order pending review of the April 17 decision by the undersigned. The motion to stay was denied on April 23, 2017, and Judge O'Hara expedited deadlines for filing the motion to review in order to facilitate a ruling by this Court before the parties' scheduled pretrial conference. On April 26, 2017, Defendant filed his motion to review and twenty-eight page memorandum in support, asking this Court to review both of Judge O'Hara's orders regarding the two subject documents.

## II.     Discussion

Fed. R. Civ. P. 72 allows a party to provide specific, written objections to a magistrate judge's order. With respect to a magistrate judge's order relating to nondispositive pretrial

---

[10]*Id.* at 10.

[11]Doc. 320.

matters, the district court does not conduct a *de novo* review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate judge's order is "clearly erroneous or contrary to the law."[12] "The clearly erroneous standard 'requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"[13] The district judge is only required to consider timely objections under Rule 72.[14] Defendant objects to Judge O'Hara's rulings that the two documents at issue are within the scope of discovery, are relevant, and are not privileged. The Court addresses each in turn.

**A. Scope**

As to scope of discovery, the Court overrules and denies Defendant's motion for review, primarily because his objection is untimely. Judge O'Hara ruled in an April 5, 2017 Order that Plaintiff's document request was within the scope of the limited discovery ordered by the Court after Tenth Circuit's ruling. Defendant's April 26 motion for review was filed outside of the fourteen-day time limit for filing objections to this earlier order. This Court is not required to consider untimely objections under Rule 72.

The Court also denies the objection because Judge O'Hara's decision as to scope was not clearly erroneous or contrary to the law. He carefully considered the issues for which this Court reopened discovery in the wake of the Tenth Circuit's order affirming the Court's preliminary injunction order, and concluded that Plaintiff's request for production, although "a very close call," falls within those parameters. The Court agrees that the request is within the scope of

---

[12]*First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988); 28 U.S.C. § 636(b)(1)(A);Fed. R. Civ. P. 72(a)).

[13]*U.S. Fire Ins. Co. v. Bunge N.A., Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007) (quoting *Ocelot Oil*, 847 F.2d at 1464).

[14]Fed. R. Civ. P. 72(a).

discovery because (1) a responsive document may be able to demonstrate that Defendant sought to change the eligibility-assessment standards or procedures mandated by the NVRA in response to the Tenth Circuit's ruling; and (2) a responsive document may be able to demonstrate whether DPOC is the least restrictive means of evaluating voter eligibility. Such documents would be well within the scope of discovery, as discussed in this Court's ruling reopening discovery, and under the broad discovery rules applied by Judge O'Hara.[15]

### B. Relevance

Next, Defendant objects to Judge O'Hara's finding that Plaintiff's Sixth Request is not relevant. Under Rule 26(b)(1), Plaintiffs "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." A document is relevant if it "'bears on, or . . . reasonably could lead to other matter that could bear on' any party's claim or defense."[16] The evidence need not be admissible to be discoverable.[17]

Defendant repeatedly characterizes the sought-after discovery as relating to a "hypothetical amendment" or "hypothetical future law," and contends that because such a draft could have no preclusive effect, it could not be relevant to Plaintiffs' claim that the NVRA preempts the DPOC law in this case. He further argues over several pages that a hypothetical

---

[15]*See, e.g.*, Fed. R. Civ. P. 26(b)(1) (providing for scope and limits of discovery based on several factors including proportionality). Defendant's complaint that Judge O'Hara conflated the issues of scope and relevance is not well taken. Under Rule 26(b)(1), scope is determined in part based on whether the documents are relevant to any claim or defense asserted by the parties. In this case, rather than "any claim or defense," the scope of discovery is limited to any document relevant to the two issues for which discovery was reopened. In other words, the issue of scope looks at whether responsive documents would be relevant to the issues for which discovery was reopened. The relevance objection addressed in the second order looks at whether the documents sought to be compelled are in fact relevant to the issues for which discovery was reopened. Judge O'Hara carefully considered both questions. Indeed, he issued separate opinions for just that reason.

[16]*Duffy v. Lawrence Mem. Hosp.*, No.14-2256-SAC-TJJ, 2017 WL 495980, at *3 (D. Kan. Feb. 7, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

[17]Fed. R. Civ. P. 26(b)(1).

6

amendment could not support the argument that Defendant is unable to meet the standards set forth by the Tenth Circuit for rebutting the presumption in favor of attestation under the NVRA. Defendant's arguments misapply the relevance standard. The question before Judge O'Hara was not about the weight of the evidence before him under the formula set forth by the Tenth Circuit. The question before Judge O'Hara was not whether the proposed NVRA changes referenced in the subject documents would preempt the DPOC law. The question for Judge O'Hara was simply whether the documents bear on or could reasonably lead to other information that bears on whether attestation is the minimum amount of information necessary for Defendant to assess voter registration applicants' citizenship eligibility. Judge O'Hara, after reviewing the subject documents *in camera*, concluded they are "exactly the type of information contemplated by the court as relevant."[18] This Court has also reviewed the two subject documents *in camera* and finds no factual or legal error in Judge O'Hara's relevance determination.

### C. Attorney-Client Privilege

Defendant seeks review of Judge O'Hara's determination that the attorney client privilege does not apply to the draft amendment because: (1) Defendant did not meet his burden of showing that the document was disclosed for the purpose of imparting or receiving legal advice; and (2) Defendant failed to argue that Bryan Caskey, head of the Elections Division in the Secretary of State's office, was an agent of either client or attorney.

The draft amendment was described on Defendant's privilege log as follows: "Preliminary, non-final, draft language to the National Voter Registration Act shared only with Brian Caskey and Garrett Roe."[19] In order for the attorney-client privilege to apply to this document, Defendant bears the burden of demonstrating, among other things, that it was a

---

[18] Doc. 320 at 8.
[19] Doc. 273-4.

communication relating to imparting or receiving legal advice.[20]  First, Judge O'Hara found that the draft amendment itself does not evidence a request for, or the giving of, legal advice.  The Court has reviewed this document *in camera* and finds that Judge O'Hara's conclusion is not clearly erroneous.

Second, the privilege log description of the document does not denote that it was communicated for the purpose of seeking or imparting legal advice.  Defendant suggests that because the privilege log indicates that he shared this document only with his lawyer, Garrett Roe, and Caskey, his agent, the court should have inferred that he was seeking legal advice that was intended to be kept confidential.  But the mere fact that Defendant produced this document to Roe does not render it privileged,[21] and Defendant points to no other argument or evidence before Judge O'Hara that would have caused him to draw this inference.  Defendant asserts for the first time in his motion for review that the document "was only presented for the purpose of discussing the legal impact of what changes might hypothetically be made to the NVRA in the future—an inherently legal question that also requires input from the individual charged with making those changes."[22]  To the extent Defendant raises new arguments in his motion for review that were not articulated in his response to the motion to compel, they are waived.[23]  This Court does not conduct a *de novo* review under Rule 72(a).

Third, Judge O'Hara found that Defendant failed to demonstrate in his response brief that the document relates to legal advice.  Defendant made one general statement in the response

---

[20]*See, e.g.*, *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016); *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2012 WL 234024, at *11 (D. Kan. Jan. 25, 2012).

[21]*See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995); *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997).

[22]Doc. 327 at 18.

[23]*Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996); *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184–85 (10th Cir. 2011); *see also Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 n.3 (D. Kan. 1997).

about how, when seeking input about draft alterations to the NVRA, "the appropriate individuals would be" Roe and Caskey.[24] Defendant did not assert that he was seeking legal advice from Roe, nor did he assert that Caskey was an agent of either the client or attorney. And Defendant did not assert that he shared the document with Caskey for the purpose of obtaining an attorney's legal advice. The Court has reviewed Defendant's response to the motion to compel and finds that Judge O'Hara's conclusion was not clearly erroneous.

Defendant suggests that Judge O'Hara should have found that Caskey was his agent based on a prior ruling that another, more attenuated State employee was his agent. But Judge O'Hara never made a finding that Caskey was not an agent of the Secretary of State. Instead, he distinguished case law cited by Defendant on the basis that (a) <u>Defendant did not argue</u> that Caskey was an agent of either the client or the attorney in this instance; and (b) Defendant did not assert that the document was shared with Caskey for the purpose of facilitating an attorney's legal advice. Judge O'Hara's ruling turned on the burden of proof on this issue. Judge O'Hara was not required to infer or surmise how the draft amendment was disclosed and for what purpose. It was neither clear error nor contrary to law for Judge O'Hara to conclude that Defendant failed to meet his burden of establishing that he disclosed the draft amendment for the purpose of imparting or receiving legal advice. Therefore, the Court denies review on the basis of the attorney-client privilege.

**D.     Deliberative-Process Privilege**

Defendant argues that Judge O'Hara's determination that the deliberative-process privilege does not apply to the draft amendment is contrary to law. Judge O'Hara ruled that because the deliberative-process privilege claimed by Defendant only applies to federal agencies,

---

[24]Doc. 320 at 10 (quoting Doc. 288 at 23).

Defendant is not entitled to assert it.[25] Defendant objects on the basis that as Secretary of State for the State of Kansas, he is designated under the NVRA as the official in charge of implementing the statute in Kansas, and may be sued for failure to comply.[26] Judge O'Hara addressed and rejected this argument, citing several cases for the proposition that the deliberative-process privilege asserted by Defendant in this case applies only to federal agencies.[27] He also noted Defendant's lack of authority for the proposition that this privilege extends to state agencies that coordinate federal law. The Court has reviewed the cases cited by Judge O'Hara and finds that his interpretation of the deliberative-process privilege is not contrary to law.[28]

Defendant suggests that the lack of authority that state agencies can claim the deliberative-process privilege is due to the fact that federal common law, as opposed to state law, governs the attorney-client privilege inquiry in this case.[29] The Court is not persuaded. If

---

[25]The deliberate-process privilege asserted by Defendant accorded to federal agencies is codified in the Freedom of Information Act. 5 U.S.C. § 552(b)(5) ("This section does not apply to matters that are . . . (5) inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."); § 551(1) (defining "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency.").

[26]*See* 52 U.S.C. §§ 20506–20510.

[27]*See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *Kerr v. U.S. Dist. Court*, 511 F.2d 192, 197 (9th Cir. 1975) (quoting 5 U.S.C. § 551(1)); *St. Michael's Convalescent Hosp. v. California*, 643 F.2d 1369, 1373–74 (9th Cir. 1981); *Buford v. Holladay*, 133 F.R.D. 487, 494 (S.D. Miss. 1990); *Fairholme Funds, Inc. v. United States*, 128 Fed. Cl. 410, 432 (2016), *vacated in part on other grounds by In re United States*, Nos. 2017-104, 2017-1122, 2017 WL 406243 (Fed. Cir. 2017).

[28]The Court has also reviewed the cases cited by Defendant in his motion review, where he again invokes 5 U.S.C. § 552(b)(5). Doc. 327 at 18. None of these cases support his position that the deliberative-process privilege he asserts in this case applies to state agencies charged with implementing or enforcing a federal mandate. *Schwartz v. Jefferson Cty. Dep't of Human Servs.*, No. 09-CV-00915-WJM-KMT, 2013 WL 3713640, at *3–5 (D. Colo. July 15, 2013) (applying Colorado statute that protects confidentiality and privacy of child victims during the review process for unexplained fatalities of children); *see also Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (applying 5 U.S.C. § 552(b)(5) to federal agency); *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1244–45 (10th Cir. 2009) (same); *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007) (same); *Rodgers v. Hyatt*, 91 F.R.D. 399, 405–06 (D. Colo. 1980) (same); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (same).

[29]*See* Fed. R. Evid. 501.

Defendant's interpretation of the law is correct, any state agency charged with implementation authority under a federal statute would be able to claim this federal privilege when it has internal discussions about that law. If this were true, certainly Defendant could identify some authority for this proposition. But tellingly, Defendant again fails to present any authority to support this position, or that Defendant is entitled to this assert some other deliberative-process privilege under Kansas law. Because the Court finds no legal error in Judge O'Hara's ruling that the deliberative-process privilege, as codified by 5 U.S.C. § 552(b)(5), only applies to federal agencies, Defendant's motion to review on this point is denied.

### E. Executive Privilege

Finally, Defendant argues that Judge O'Hara erred in finding that the executive privilege does not apply to the photographed document, which references proposed amendments to the NVRA. Judge O'Hara concluded that the executive privilege did not apply for three reasons: (1) the privilege does not extend to a president-elect; (2) assuming the privilege applies to a president-elect, now-President Trump has not asserted the privilege over the photographed document; and (3) Defendant failed to address whether the photographed document is within the scope of a "communication in performance of a President's responsibilities of his office, and made in the process of shaping policies and making decisions."[30]

Judge O'Hara's ruling is not contrary to law. First, Defendant argues that Judge O'Hara should have extended the privilege to presidents-elect under the Supreme Court's decision in *Nixon v. Administrator of General Services*, which Defendant contends "extended" the privilege to former presidents.[31] But this Court agrees with Judge O'Hara's reading of *Nixon*, that although the privilege can be asserted by a former president, it only applies to "materials whose

---

[30] *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977).

[31] Doc. 327 at 22.

contents fall within the scope of the privilege recognized in *United States v. Nixon*," which means "communications 'in performance of (a President's) responsibilities' 'of his office' and 'made in the process of shaping policies and making decisions.'"[32] By its terms, *Nixon* does not extend the privilege to presidents-elect. And, as Judge O'Hara noted, no court has ever recognized that this privilege applies before a president takes office. Judge O'Hara's decision not to extend the privilege under these circumstances is not contrary to law.

Next, Defendant argues that President Trump is not required to personally intervene and claim the privilege, citing executive privilege cases where the communications at issue involve the President's advisors and not the President himself.[33] Judge O'Hara acknowledged these cases suggesting that whether the President must personally assert the privilege is an open question, but Defendant failed to persuade him to excuse this requirement, particularly here where Defendant is not, nor has ever been part of the Executive Branch under this President. This Court is similarly unpersuaded that Defendant may invoke the executive privilege on behalf of President Trump under these circumstances.[34]

Finally, Defendant argues that Judge O'Hara construed the scope of the privilege too narrowly. Before the Court considers Defendant's argument on this point, it quotes below the five-sentence argument he presented to Judge O'Hara:

---

[32]433 U.S. at 449 (quoting *United States v. Nixon*, 418 U.S. 683, 708, 711, 713 (1974)) (citations omitted).

[33]*See In re Sealed Case*, 121 F.3d 729, 744 n.16 (D.C. Cir. 1997) (accepting affidavit of White House Counsel that President Clinton authorized him to invoke the privilege); *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004) (declining to address whether the privilege was properly invoked because the argument was waived before the district court); *see also Dairyland Power Co-op. v. United States*, 79 Fed. Cl. 659, 669 (2007).

[34]*See Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 386 (2004) (explaining basis for weighing privilege in civil discovery dispute including "the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications" (emphasis added)); c*f. Ill. Inst. for Continuing Legal Educ. v. U.S. Dep't of Labor*, 545 F. Supp. 1229, 1332 (N.D. Ill. 1982) (explaining that under the Transition Act, a president-elect's transition team is not part of the executive branch).

> Kris Kobach (not acting in his official capacity as the Secretary of State) was a member of the transition team for President-elect Trump. The transition team aids the President-elect in preparing policies and assuming his official duties as President as efficiently as possible. The document in question, which this Court can partially view due to inadvertent disclosure, is thus subject to that privilege. The President-elect and his transition team are entitled to a protection of communications during their meetings. Allowing this document to be discoverable would jeopardize the right of the President-elect to have confidential and frank communications within his transition team.[35]

Now, in his motion for review Defendant asserts that the document in question was shared with the President-elect by a transition-team advisor for the purpose of giving advice, which thus brings it within the scope of executive privilege. But while it may be true that the executive privilege extends to "'documents solicited and received' by the President,"[36] Defendant failed to proffer or establish that the photographed document in this case was solicited and received by President-elect Trump. He also failed to proffer or establish that the photographed document reflects "presidential decisionmaking and deliberations."[37]

Defendant argues that the privilege is not limited to issues over which the Executive exercises express constitutional duties, and asserts that the President has a role to play in the process of enacting statutes. This argument was not raised before Judge O'Hara, and is therefore waived.[38] The Court must confine itself on a motion for review to whether Judge O'Hara's determinations, given the information before him, were clearly erroneous or contrary to law. Under this standard of review, Judge O'Hara did not commit clear error in finding that "Defendant hasn't clearly articulated what duty President Trump has in regulating voter-

---

[35] Doc. 288 at 28.

[36] *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Judicial Watch*, 365 F.3d at 1112).

[37] *Id.* (quoting *In re Sealed Case*, 121 F.3d at 744–45).

[38] *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996); *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184–85 (10th Cir. 2011); *see also Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 n.3 (D. Kan. 1997).

registration."[39]  Indeed, Defendant did not assert below that he provided the photographed document to President-elect Trump, nor that it was used to advise the President-elect on a matter related to his performance of the responsibilities of his office.  Judge O'Hara thus did not err in declining to infer that the document falls within the scope of the executive privilege, particularly in light of authority that the Constitution assigns the power to regulate voter-registration laws to Congress and the States.[40]

In sum, the Court has reviewed Judge O'Hara's Orders and is not "left with the definite and firm conviction that a mistake has been committed."  Accordingly, the motion for review is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Review (Doc. 326) is **denied**.  Defendant shall produce the two documents, redacted in conformity with Judge O'Hara's April 17 Order, by May 12, 2017.

**IT IS SO ORDERED.**

Dated: May 10, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[39] Doc. 320 at 18.

[40] U.S. Const. art. I, § 4, cl. 1; *see Arizona v. Inter Tribal Council of Az., Inc.*, 133 S. Ct. 2247, 2251–53 (2013); *Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes.").