1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CODY KEENER, et al.,

    Plaintiffs,

v.                         Docket No. 15-9300-JAR

KRIS W. KOBACH, et al.,

    Defendants.

_____    _____

STEVEN WAYNE FISH, et al.,

    Plaintiffs,            Docket No. 16-2105-JAR

                           Kansas City, Kansas

v.                         Date:  06/05/17

KRIS KOBACH, et al.,

    Defendants.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TRANSCRIPT OF
PRETRIAL CONFERENCE
BEFORE THE HONORABLE JAMES P. O'HARA
MAGISTRATE JUDGE

APPEARANCES:

For Case No. 15-9300 Plaintiffs:

(No appearance.)


For Case No. 16-2105 Plaintiffs:

Mr. Dale E. Ho              Mr. Stephen D. Bonney
Ms. Sophia Lin Lakin      ACLU Foundation of Kansas
American Civil Liberties   6701 West 64th Street
Union Foundation - NY     Suite 210
125 Broad Street         Overland Park, KS 66202
New York, NY 10004

                                                                          2

1    APPEARANCES (continued):

2

3    For the Defendant Kris Kobach:

4    Mr. Garrett R. Roe
     Ms. Bethany J. Lee
5    Kansas Secretary of State
     120 Southwest 10th Avenue
6    Memorial Hall, First Floor
     Topeka, KS 66612
7

8
     Court Reporter:          Jean Crawford, RDR, CRR
9                             Official Court Reporter
                              400 East Ninth Street Avenue, #8420
10                            Kansas City, Missouri 64106

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 3 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.05.17

3

1          (Proceedings commenced at 2:03 p.m.)

2          THE COURT:  At this time, the Court calls the civil

3    action styled Stephen Wayne Fish and others on behalf of

4    themselves and all others similarly situated versus Kris Kobach

5    in his official capacity as Secretary of State with the State

6    of Kansas.  May I please have the appearances starting with the

7    plaintiffs.

8          MR. HO:  Good afternoon, Your Honor.  Dale Ho on

9    behalf of the plaintiffs.  I'm joined by Sophia Lin Lakin and

10   Doug Bonney.  Ms. Angela Liu, who is mentioned in the pretrial

11   order, was unfortunately unable to join us this afternoon.

12         THE COURT:  On behalf of the defendant, please.

13         MR. ROE:  Garrett Roe.  And with me is Bethany Lee.

14   And Secretary Kobach unfortunately could not come today either,

15   although he's mentioned in the trial order.

16         THE COURT:  Why is Secretary Kobach not here?

17         MR. ROE:  Secretary Kobach is out of the country.

18   He was trying to get a flight back on Friday when the Court

19   rearranged the -- or scheduled -- the Secretary is out of the

20   country right now.  He's on a -- he's flying back currently,

21   was trying to get a flight back but could not get a flight.

22   He's flying -- I'm not sure exactly.  He's out of the country.

23   He's flying -- he -- I know he lands I think in Minnesota

24   tonight at 7:00.

25         THE COURT:  When was he scheduled to leave from out

1   of the country to return to the country?  And the reason I ask

2   is we moved this pretrial conference to today at his request to

3   accommodate his schedule.

4          MR. ROE:  I know, Your Honor.  I do not know the

5   answer to that.

6          THE COURT:  Let me ask this, Mr. Roe, who will be

7   first chair trial counsel at the trial of this case?

8          MR. ROE:  I think it was going to be Secretary

9   Kobach, but I guess at this point, it's probably me.

10         THE COURT:  I mean, are you and Ms. Lee in a

11  position to make decisions with respect to how this case can

12  most efficiently be tried at this point without consulting with

13  Secretary Kobach?

14         MR. ROE:  Yes, Your Honor.

15         THE COURT:  Okay.  We'll see how far we get with

16  that.

17         MR. ROE:  Okay.

18         THE COURT:  I would, at the risk of stating the

19  obvious, respectfully remind you point out to the Secretary our

20  local rule 16.2.  I'm presuming he's aware of this since he's a

21  former federal law clerk.  But under rule 16.2(c), should

22  counsel or a pro se litigant fail to appear at the pretrial

23  conference or fail to comply with the provisions of this rule,

24  the Court may, in its discretion, enter a judgment of dismissal

25  or default.  Alternatively, or in addition thereto, the Court

1  may impose any sanctions provided for in Federal Rules of Civil

2  Procedure 16(f) or District of Kansas Rule 11.1.

3       So at a minimum, I do expect by the close of

4  business today an email from your office confirming when

5  Secretary Kobach was scheduled to return to the country and

6  explaining in more detail why he's not here as opposed to just

7  saying he's out of the country and couldn't be here.  Do you

8  get my drift?

9       MR. ROE:  Yes, Your Honor.

10       THE COURT:  Okay.  Thank you.  Mr. Roe, I apologize

11  for chewing on you since it's tantamount to preaching to the

12  choir, but this sort of conduct by the Secretary, particularly

13  with a separate motion for sanctions pending, just, in my view,

14  doesn't reflect terribly good judgment.

15       Well, counsel, I've looked over the proposed

16  pretrial order, and as a very general proposition, I do think

17  it's well written.  I think it does a good job of capturing the

18  claims and defenses as they now stand.  I have made a number of

19  what I think are stylistic changes to try to tighten up the

20  document and to eliminate needless repetition of the same

21  material over and over again.  I'm not going to slug through

22  any of that this afternoon.

23       By no later than Monday of next week, and hopefully

24  much sooner, I will circulate a revised form of the pretrial

25  order that picks up those purely stylistic changes as well as

1    the more substantive things that we talk about this afternoon.

2    And then I'll give you a reasonable amount of time to review

3    that document and then to propose any further changes or to

4    lodge any objections that might be appropriate.

5              Although this may seem a bit counterintuitive, I

6    would respectfully remind all of you to review the first page

7    of the email that you'll get as opposed to -- I guess review

8    the last page of the email first is what I meant to say.  If

9    you have changes that you want to make to the pretrial order,

10   and I'm confident that some of you will, which is fine, keep in

11   mind there is in effect a duty to confer similar to a discovery

12   dispute.

13             So I don't want to get an email from plaintiffs'

14   counsel with a long litany of my typographical and substantive

15   sins and then an equally long email from defense counsel and

16   then put my law clerk in a position of having to chase down

17   everybody to find out what the other thinks about that.  So

18   hopefully, we can get one email on behalf of the group that

19   kind of lines out the things that need to be tightened up

20   before the pretrial order is filed and we move on to the next

21   step of the case.

22             MR. ROE:  Your Honor.

23             THE COURT:  Yes, sir.

24             MR. ROE:  I wanted to let you know that plaintiffs'

25   counsel and I spoke this morning.  There were a few changes

1   that needed to be made in the defendant's factual contentions

2   and legal contentions.  So I wanted to alert -- I have redlined

3   copies here, which I've also already provided to plaintiffs'

4   counsel, if you'd like them, or I can submit them via email

5   later.

6           THE COURT:  Let me see what you've got.  I probably

7   won't have time to read it on the fly.  I've already spent more

8   hours than I care to admit with the earlier draft, so I'm not

9   terribly inclined to read another draft on the fly.

10          MR. ROE:  Let me look for the -- can I approach?

11          THE COURT:  Please.

12          MR. ROE:  I'm looking for the page, Your Honor.

13          THE COURT:  Is it just in the defendant's factual

14  contentions?

15          MR. ROE:  Factual/legal contentions.  But, yes,

16  here, starting right -- it's just -- here, Your Honor.

17          THE COURT:  Thank you.

18          MR. ROE:  And some of these issues, the reason is

19  they've already essentially been decided in the motion for

20  summary judgment previously on -- the partial motion for

21  summary judgment.

22          THE COURT:  Right.  I did have a question.

23          MR. ROE:  Okay.  It was oversight.  I apologize.

24          THE COURT:  No, that's fine.  I appreciate your

25  replying with well intention.

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 8 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.05.17

8

1              Okay.  Let's start with the factual stipulations

2    that are in paragraph 2A of the draft pretrial order.  I

3    commend all of you for making this list as fulsome as possible.

4    This stands in stark contrast to what I see in most cases.  But

5    in proposed stipulation No. 55, there are quote marks around

6    the language.  It was unclear to me where that language came

7    from.  I guess more importantly, it was unclear to me whether

8    those quotation marks were significant in some way.

9              MR. ROE:  Those quotation marks should be deleted.

10   They were -- it was a direct quote from a -- I think it was a

11   deposition, if I remember correctly, or -- but, yeah, I

12   intended to leave those quotation marks.

13             THE COURT:  Do you agree, Mr. Ho?

14             MR. HO:  Yes, Your Honor.

15             THE COURT:  And, likewise, in stipulation No. 60,

16   can we take out the quotation marks that appear toward the

17   latter portion of the stip?

18             MR. ROE:  That's fine, Your Honor.

19             MR. HO:  Yes, Your Honor.

20             THE COURT:  Likewise, in stipulation No. 102?

21             MR. ROE:  Yes, Your Honor.  Again, this is a direct

22   quote from the EEV website, but, yes.

23             THE COURT:  Okay.  After the 115 stipulations that

24   you did reach, I see there's a lot of other material in here

25   about both factual stipulations and then in the ensuing

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 9 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.05.17

9

1  paragraph 2B, as in boy, I guess a recapitulation of

2  stipulations that were proposed but ultimately not arrived at.

3  I'm just curious, is there anything to be gained by slugging

4  through any of the unresolved stipulations today, or is it just

5  we have to agree that we disagree on those points?

6          MR. ROE:  I don't think so, Your Honor.

7          THE COURT:  Don't think so what?

8          MR. ROE:  I'm sorry.  I don't think there's a reason

9  to go through these today, Your Honor.

10          THE COURT:  Mr. Ho, how about you?

11          MR. HO:  We tried our best, Your Honor.  I think the

12  hundred or so that we got are the only ones we're going to get.

13          THE COURT:  Great.  Okay.  I'll delete all that, I

14  guess, aspirational material.

15          MR. HO:  Thank you, Your Honor.

16          THE COURT:  Turning I guess more specifically to

17  paragraph 2B on the document relating to stipulations as

18  relates to foundation, this pretrial order indicates that it

19  only applies to summary judgment.  It would not apply in the

20  event that summary judgment were denied and the case proceeded

21  to trial.  And I wasn't sure if that was intentional or -- but

22  in any event thought it might be beneficial to revisit that.

23  If this case is tried, is there any reason these stipulations

24  wouldn't be equally useful for purposes of the trial?

25          MR. HO:  Your Honor, if I recall correctly, the

1   plaintiffs were willing to stipulate to the admissibility of

2   these documents for trial, but I think defendant wasn't ready

3   to do so.

4          THE COURT:  But in any event, the stipulation as

5   crafted only goes so far as waiving foundation.  It doesn't

6   purport to deal with admissibility.  But Mr. Ho by agreeing,

7   you're saying you'd want them to apply to trial as well as

8   summary judgment?

9          MR. HO:  Yes, Your Honor.  I'm sorry.  I misspoke.

10  We have no objections to these documents for the stipulation to

11  apply to trial as well as summary judgment.

12         THE COURT:  Mr. Roe, what do you think about that?

13         MR. ROE:  Defendant has no objection to that either

14  at this point.

15         THE COURT:  Well, I intended to take this up

16  sequentially.  I guess this point does suggest maybe we talk

17  about summary judgment versus trial presently.  The draft

18  pretrial order indicates that both sides are considering and

19  indeed intending to file motions for summary judgment.  Mr. Ho,

20  I'm just curious, with the four people who have been actively

21  working this case, including the three at the counsel table

22  today, what's your best judgment as the number of attorney

23  hours that you would incur in preparing a motion for summary

24  judgment and a supporting brief, putting aside reviewing the

25  response to that motion and putting aside the reply to that --

1  or I guess the reply in support of your motion?  What's your

2  best guess as you sit here today?

3       MR. HO:  So if I may ask, Your Honor, is Your

4  Honor's question related specifically to the opening brief?

5       THE COURT:  Yes, sir.

6       MR. HO:  Okay.

7       THE COURT:  And I'm just looking for a ballpark

8  guess in, let's say, round hundred hour increments of attorney

9  time.

10       MR. HO:  A decent amount of hours have already been

11  put into our opening brief, Your Honor.  I don't have those

12  time records, nor have I reviewed them.  And I'd be a little

13  reluctant to guess.  There are some junior associates at the

14  law firm Dechert, who is our cocounsel, but not represented

15  here unfortunately, and my best guess is that they've probably

16  already put in about a hundred hours.  My best guess would be

17  that it might take about another hundred hours of attorney time

18  to complete an opening summary judgment brief.

19       THE COURT:  Okay.  And I'm 17 years removed from

20  this in terms of the last time I managed a law firm or billed a

21  client, but would you agree with me by the time -- the budget

22  goes by the wayside by the time you finalize your opening

23  brief, analyze the responsive brief, and prepare your reply

24  brief, and deal with the inevitable motions that come from the

25  other side with the same set of three briefs that you're going

1   to blow through at least 250, 300 hours?

2           MR. HO: I think that's a safe assumption.

3           THE COURT: Okay. And am I correct that the

4   pretrial order indicates it would take five days to try this

5   case that you proposed?

6           MR. HO: That's correct, Your Honor.

7           THE COURT: Okay. And fair to say that it would

8   probably take at least two attorney days for each day in trial

9   to get ready for that trial?

10          MR. HO: I think that's right, Your Honor.

11          THE COURT: Okay. So mindful this is a bench trial

12   that we're heading for, explain to me from your side of things

13   why it would make sense to proceed on summary judgment motions

14   as opposed to just teeing this case up for trial and calling

15   witnesses in the context of rule 1 in terms of just and speedy

16   and inexpensive? And keeping in mind that if you win this

17   case, I anticipate you'll be filing a motion for attorneys'

18   fees.

19          MR. HO: I think that's right, Your Honor. We may

20   be underestimating how much the trial preparation will take,

21   Your Honor.

22          THE COURT: Let's say three or four days per trial

23   day in terms of prep, does it still make any sense? And why?

24          MR. HO: Well, I actually think it's going to take a

25   little bit longer for trial prep, Your Honor. There are some

1   experts who may end up testifying at trial.  And I think that

2   preparation will take a substantial amount of time.  There will

3   be Daubert motions associated with the trial preparation.

4           I really do think, though, that it will be possible

5   to resolve this case on summary judgment, even taking the

6   defendant's factual contentions sort of at face value as to the

7   number of noncitizens they've been able to detect on the

8   registration rolls in Kansas and their estimates as to the

9   numbers of noncitizens who may have attempted to register to

10  vote in the -- in the state.

11          So, you know, I went to law school because I'm not

12  that good at math.  And maybe I'm not doing the math correctly

13  here, Your Honor, but I actually do think that it will be more

14  expeditious to resolve the case on summary judgment than at

15  trial.

16          THE COURT:  Are you convinced of that?

17          MR. HO:  I'd say I'm pretty convinced of that, Your

18  Honor.

19          THE COURT:  Okay.  What if, for instance, Judge

20  Robinson concludes that Daubert motions may not be a good use

21  of time in a bench case, or let's assume that she ultimately

22  does a full Daubert analysis but still has some concerns about

23  the credibility of your experts and those retained by Secretary

24  Kobach, I mean, doesn't she have to slug through all of that

25  same material again at trial?

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 14 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.05.17

14

1      MR. HO:  She may.  I think we would still like to

2  exercise our right to file Daubert motions to exclude the

3  defendant's proffered experts to the extent that they're going

4  to rely on them.  We haven't -- you know, we obviously don't

5  know right now at this point whether or not the defendant will,

6  but to the extent they do, we think that they do not -- their

7  testimony will not satisfy the Daubert standard.

8      THE COURT:  While I'm picking on you, and I guess

9  before I pick on Mr. Roe, let me ask an additional question.

10  This goes back to, I guess, the timing of summary judgment and

11  trial.  In the motion practice section of the draft pretrial

12  order, paragraph 8B, right after the recitation of the existing

13  July 7 dispositive motion deadline, it states, and I quote,

14  Defendant's motion to amend the scheduling order and to reopen

15  discovery requires the moving of the dispositive motion

16  deadline to next year, period, end quote.  Did that language

17  come from your side of the aisle or from the defendant's?

18      MR. HO:  I don't believe that language came from us,

19  Your Honor.  And my best guess is that that's left over -- a

20  leftover sentence from a previous iteration of this pretrial

21  order, which for whatever reason wasn't deleted.

22      THE COURT:  Mr. Roe, what light can you shed on that

23  issue?

24      MR. ROE:  That's correct, Your Honor.  That is a

25  typo that should have been deleted.

1             THE COURT:  Okay.  Great.  Mystery solved.

2             MR. HO:  If I may, Your Honor, just address your

3    question about summary judgment one last time.  I guess the

4    other thing that I would say is that notwithstanding the fact

5    that we do have a number of stipulations in this case, it may

6    be possible even if summary judgment is not granted that

7    summary judgment could be granted on several issues in the case

8    which could narrow the scope of trial and potentially shorten

9    it.

10            For instance, if there were, you know, issues with

11   respect to the standing of our plaintiffs or with respect to

12   the number of noncitizens who have registered to vote, it's

13   possible that summary judgment briefing would be helpful even

14   if summary judgment is not granted in terms of narrowing and

15   shortening trial.

16            THE COURT:  Okay.  Thank you.  Mr. Roe, what do you

17   think about the -- I guess just the economics of proceeding

18   with summary judgment motions in a case that has been heavily

19   litigated, including an appeal to the circuit and which is

20   ultimately going to be heading toward a bench trial.

21            MR. ROE:  I agree with plaintiffs.  I think summary

22   judgment -- it's likely this case has issues that can be

23   resolved at summary judgment.

24            THE COURT:  I'm sorry.  Say it again.

25            MR. ROE:  I agree with plaintiffs' counsel that it's

1   likely these issues will be resolved on summary judgment.

2          THE COURT:  Is it -- explain to me why you think

3   that will happen.

4          MR. ROE:  I mean, I don't think there's a lot of

5   facts in dispute at this point.  I mean, as plaintiffs said

6   even -- you know, taking our -- our numbers at face value, you

7   know, I don't think -- I don't think there's a lot of facts in

8   dispute that would merit going beyond summary judgment.  I

9   mean, I don't have the facts in front of me at this point that

10  might be in dispute, but from what I can tell in the

11  litigation, there aren't a lot of facts in dispute at this

12  point.  I also agree that there are certain issues that could

13  be resolved at summary judgment --

14         THE COURT:  Well, how about the three and a half

15  pages of single spaced proposed stipulations that were not

16  agreed to by the parties?  I mean, how does that weigh into

17  this calculus of whether the facts, the genuine -- whether the

18  material facts are going to be deemed uncontroverted by Judge

19  Robinson for summary judgment?

20         MR. ROE:  I mean, a number of those facts -- part of

21  the problem is they weren't actually facts, they were issues of

22  law that I didn't want to stipulate to.

23         THE COURT:  As far as like what the statutes said?

24         MR. ROE:  Correct.  Things like that.  So that's

25  what a lot of those stipulations are.

1          THE COURT:  In fairness, a few of the 20 that were

2    proposed by the signant are statutory citations, the balance

3    actually are factual.  Would you agree to that?

4          MR. ROE:  Sorry, Your Honor.

5          THE COURT:  And I guess, just thinking out loud,

6    what I'm driving at, whether it might make sense if you all are

7    committed to this course of summary judgment motion practice --

8    which I guess I remain unpersuaded that that's the best way to

9    go, but I guess the good news for me is I'm not going to have

10   to read all that stuff, Judge Robinson will -- but is there any

11   interest in everybody just stipulating to everything that was

12   deleted a few moments ago, just for purposes of summary

13   judgment, just to smoke out whether you all agree that the

14   facts truly are uncontroverted here?

15         MR. ROE:  Are you asking if I agree to stipulate to

16   the issues that I've agreed not to stipulate to at this point?

17         THE COURT:  Right.  Just for summary judgment.

18         MR. ROE:  I'm not prepared to do that today, Your

19   Honor.  Sorry.

20         THE COURT:  I guess what I see coming down the train

21   track here is we're going to get cross-motions for summary

22   judgment.  We're going to have two statements of uncontroverted

23   fact.  Hopefully, we'll in a single sentence incorporate

24   everything from the pretrial order that's already stipulated

25   without having to recast all that stuff.  But that's two sets

1   of facts.  And then based on what I've just heard here, we're

2   likely to have responses to each of those statements of

3   uncontroverted fact.  So then we're going to have four.

4            And then we'll have the ubiquitous reply brief, and

5   we'll have needling over the statements of fact by the movant.

6   So we'll have six statements of uncontroverted fact.  And then

7   you all are going to be expecting Judge Robinson to say all of

8   the material facts in this case are uncontroverted and summary

9   judgment is appropriate.  I just think that's a big ask.

10           And I -- I'm not going to order this, but

11  respectfully, counsel, I would suggest that during the period

12  that we have to review the next draft of the pretrial order and

13  before it's actually filed that -- that each team maybe think

14  about this in more detail, then confer and see if there's a

15  shorter way around the block to give both sides an opportunity

16  to be fully heard on the merits and live with the decision on a

17  very fully developed record.

18           I mean, the other thing -- I mean, if people are

19  interested in a decision that's -- that's not going to

20  unnecessarily and avoidably lead to further litigation, I would

21  keep in mind the standard that's going to apply on review for

22  summary judgment.  So if you win, the Court of Appeals can be

23  looking at that win in the context of all the facts being taken

24  in the context most favorable to your opponent, within the

25  context of well-established summary judgment standards.  And it

Case 2:16-cv-02105-JAR Document 348 Filed 06/08/17 Page 19 of 37
15-9300/16-2105 Keener v. Kobach/Fish v. Kobach 06.05.17

19

1  seems to me whoever's going to win this case is better off if

2  they've got a trial record establishing those facts than a

3  summary judgment record.  So I would suggest you think about

4  that.  If you decide that I'm nuts, I'll live with that.

5          As relates to the statement of the legal claims of

6  the plaintiffs, in paragraph 4A, there's a bullet point

7  discussion of the claims in counts I, IV, and VI of the

8  plaintiffs' first amended complaint.  Counsel, refresh my

9  memory, what happened to counts II, III and V?  Have those been

10  adjudicated or have they simply been abandoned?

11          MR. HO:  They haven't been adjudicated, Your Honor.

12  I think we're not planning on pressing those at trials.

13          THE COURT:  I want to make sure the record's clear.

14  Are the plaintiffs forever abandoning the claims in counts II,

15  III and V?  Yes or no?  If the answer is no, why aren't they in

16  the pretrial order?

17          MR. HO:  If I could, Your Honor, just have a moment

18  to confer with my team.

19          THE COURT:  Sure.

20          MR. HO:  Thank you.  Apologize for that, Your Honor.

21  It's been a while since we drafted this section of the pretrial

22  order.  My recollection is that based on Judge Robinson's

23  preliminary injunction ruling, we thought that those claims

24  weren't ones that we could pursue successfully at trial.

25          THE COURT:  Okay.  So the answer to my question is

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 20 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.05.17

20

1  yes?

2           MR. HO:  Yes.  The answer is yes.

3           THE COURT:  You are abandoning those claims forever?

4           MR. HO:  Yes.

5           THE COURT:  Okay.  Thank you.

6           Okay.  As relates to count VI in the first amended

7  complaint -- and I think maybe this is what Mr. Roe was

8  touching upon a moment ago with the deadline draft -- how does

9  that claim go forward in light of Judge Robinson's ruling

10 denying the plaintiffs' motion for partial summary judgment on

11 the claim?  I mean, didn't she address the merits as opposed to

12 saying it was a factual issue?

13          MR. HO:  She did, Your Honor.  She didn't grant a

14 cross-motion from defendants upon it, but she did rule -- or

15 she did deny our motion for partial summary judgment on the

16 basis of this claim.

17          THE COURT:  Do you wish to preserve that claim for

18 purposes of appeal?

19          MR. HO:  Correct, Your Honor.

20          THE COURT:  Okay.  So am I correct that we're down

21 to only the claims in counts I and IV of the first amended

22 complaint that will be presented on summary judgment or trial

23 or both?

24          MR. HO:  That's correct, Your Honor.

25          THE COURT:  Mr. Roe, does that square with your

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 21 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.05.17

21

1 understanding of the pleadings?

2          MR. ROE:  Yes, Your Honor.

3          THE COURT:  As relates to the articulation of the

4 Secretary's defenses in paragraph 4B, as in boy, of the draft

5 pretrial order, and specifically as relates to the defenses

6 pertaining to count I, Mr. Roe, help me out here.  I wasn't

7 sure what was intended by the defendant's objections to the

8 effect that the plaintiffs were attempting to amend the

9 complaint without leave of Court in the pretrial order.

10          MR. ROE:  This was the redline that I submitted

11 earlier, Your Honor.  It was a mistake on my part.  I -- those

12 paragraphs starting at defendant objects on page 28, so, one,

13 two, three -- the final four paragraphs are all now deleted and

14 replaced with a single sentence.

15          THE COURT:  Great.  Okay.  Thank you.

16          MR. ROE:  Yes.

17          THE COURT:  Incidentally, are there other changes in

18 the redline draft other than the ones you just highlighted?

19          MR. ROE:  There's a change on page 25.

20          THE COURT:  I'm sorry, 25?

21          MR. ROE:  Yes, 25.  Again, a lot of these issues

22 have already been addressed.  And I -- if Your Honor would so

23 please, I'd like to make sure to check the -- look at the

24 summary judgment decision by Judge Robinson, but the reason I

25 deleted those is, my understanding, they had already been

1  addressed in that motion.

2         THE COURT:  Okay.  Thank you.

3         MR. ROE:  But plaintiffs did point out that she did

4  not actually grant us summary judgment, only denied their

5  motion.  So I may have to go back to that.

6         THE COURT:  Let me -- this question is directed to

7  the group.  Let's assume that the defendants were to make an

8  oral motion for summary judgment in front of Judge Robinson.

9  How would that not be granted given the state of the record?

10        MR. ROE:  And I agree with Your Honor on that.

11 Honestly, I probably should have filed a motion by now at this

12 point, and that's my fault.  I should have filed a motion by

13 now to clear up the record on that.

14        THE COURT:  And you're free to do that prior to July

15 7th.

16        MR. ROE:  Right.  Yes, Your Honor.

17        THE COURT:  At the very end of the discussion of the

18 defendant's defenses pertaining to count IV, the draft pretrial

19 order states, and I quote, Finally, to the extent that

20 plaintiffs are presenting a new claim or seeking additional

21 relief that was not pled in their first amended complaint, it

22 is untimely, period, end quote.  I guess to what extent does

23 the defendant contend that the plaintiffs are asserting a new

24 claim that wasn't in the first amended complained?

25        MR. ROE:  Again, Your Honor, this was -- I deleted

1  this in that copy I provided to you today as well.  If it's not

2  deleted, I apologize.  I intended to delete that sentence as

3  well.

4             Yes.

5             THE COURT:  Okay.  I see it now.  In terms of

6  paragraph 5, the standard pretrial order form says damages and

7  other nonmonetary relief requested.  Query, am I correct that

8  the plaintiffs seek no damages?

9             MR. HO:  That's correct, Your Honor.

10            THE COURT:  And at the very end of the section in

11 terms of the relief sought, there's a reference to the

12 plaintiffs seeking attorneys' fees under section 1983 and title

13 42 of the US code.  Did you mean to say 1988?

14            MR. HO:  Yes, Your Honor.

15            THE COURT:  With respect to motions, am I correct

16 that the only pending motion is that for sanctions by the

17 plaintiffs filed on May 22nd?

18            MR. HO:  That's our only pending motion, Your Honor.

19            THE COURT:  Okay.  Mr. Roe, do you believe you have

20 any motions that are pending?

21            MR. ROE:  Not to my knowledge, Your Honor.

22            THE COURT:  Okay.  And you'll be filing a response

23 to that motion today I take it?

24            MR. ROE:  I was actually going to ask Your Honor if

25 you would give me a one-day extension to file tomorrow.  I

1   consulted with opposing counsel earlier today, and they don't

2   oppose.

3            THE COURT:  Okay.  Any objection?

4            MR. HO:  No objection, Your Honor.

5            THE COURT:  Granted.

6            MR. ROE:  Thank you.

7            THE COURT:  With respect to the summary judgment and

8   Daubert motions that we've already touched upon briefly, in the

9   context of paragraph 8B, it indicates that the plaintiffs may

10  file Daubert motions.  How many experts does the defendant have

11  disclosed in the case?

12           MR. ROE:  The defendant has three experts, Your

13  Honor.  Correct?

14           THE COURT:  And how many do the plaintiffs have?

15           MR. HO:  Five, Your Honor.

16           THE COURT:  Does the -- do the plaintiffs intend to

17  challenge all three of the defendant's experts under Daubert?

18           MR. HO:  It depends on obviously whether or not the

19  defendants rely on them.  We don't think that any of them

20  satisfy the Daubert standards, Your Honor.

21           THE COURT:  Okay.  And does the defendant intend to

22  challenge all five of the plaintiffs' experts?

23           MR. ROE:  To the extent they rely upon them, yes,

24  Your Honor.  Again, without seeing what they're relying on

25  specifically, it's hard to say at this point.  I would note in

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 25 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach  06.05.17

25

1  the original summary judgment, I don't think they relied on

2  experts at all.  They're also indicating they may not rely on

3  experts here.

4         THE COURT:  The plaintiffs indicated in the draft

5  pretrial your present intent is not to use experts in support

6  of your motion, correct?

7         MR. HO:  That's correct, Your Honor.

8         THE COURT:  Has there been any discussion among your

9  group about the timing or the setting of the deadline for

10  Daubert motions that concern experts relied upon for summary

11  judgment?

12         MR. HO:  I believe the scheduling order in this

13  case, Your Honor, sets the timing for Daubert motions a party

14  relies on in support of summary judgment to be due at the same

15  time as oppositions to motions for summary judgment.

16         THE COURT:  Is that correct, Mr. Roe?

17         MR. ROE:  That's correct.

18         THE COURT:  Okay.  That does make sense.  Okay.

19         In the interest of -- sound like a broken record

20  here, but since you all seem wedded to this motion practice as

21  opposed to just trying a lawsuit, is there any interest in

22  imposing limitations on the length of briefs on Daubert motions

23  if they're filed in the case, or does everyone want the right

24  to blather on for 30 pages?

25         MR. HO:  I think, Your Honor, it's a little

1    difficult to sort of waive our ability to fulsomely respond

2    when we don't know exactly what the defendants are going to do

3    in terms of relying on their experts for purposes of moving for

4    summary judgment.

5           I think, you know, our view is that if we have to

6    rely on our experts for summary judgment, then that's

7    probably -- you know, we're probably not likely to obtain

8    summary judgment, which is why we're not going to be relying on

9    our experts for the purposes of moving for summary judgment.

10   If the defendants don't want to use experts for theirs, then we

11   can, I think, make everyone's life easier.

12          THE COURT:  Mr. Roe, just practically, what do you

13   believe as you sit here today is the probability of relying on

14   expert testimony for your motion to summary judgment?

15          MR. ROE:  I would -- I would assume it's likely at

16   this point.

17          THE COURT:  All three?

18          MR. ROE:  Probably -- probably not all three.

19          THE COURT:  So let's just kind of line this out.

20   Plaintiffs presently don't intend to use experts in support of

21   their motion.  Defendants evidently will be doing that.

22   Plaintiffs will be opposing the motion for summary judgment and

23   filing a Daubert motion in response.  What is the likelihood of

24   the plaintiffs in response to the defendant's summary judgment

25   motion wanting to rely on expert testimony that the plaintiffs

1  have developed?

2         MR. HO:  Again, Your Honor, it's a little difficult

3  until we know exactly which of the experts the defendants are

4  going to be relying on in their summary judgment brief.  Some

5  of our five experts are there only for purposes of rebutting

6  some of their expert testimony.  Two of them, in fact, sort of

7  don't offer any sort of affirmative opinion on their own but

8  are there only to respond to one of their experts about the

9  incidence of noncitizen registration and attempted registration

10  in the state.  And they have various opinions about

11  methodological flaws in their expert's approach.  To the extent

12  they want to rely on that expert, it's possible that we would

13  rely on ours either in support of our Daubert motions or in

14  opposing their motion for summary judgment.

15         I will say that I think our motion for summary

16  judgment -- and I should have said this earlier, Your Honor --

17  I think will be very simple.  And I may be overestimating the

18  amount of time that we need in order to finish it.  We actually

19  already have a draft of it ready to go.  You know, the facts

20  with respect to our client's standing have been largely

21  stipulated to now in the pretrial order.  We simply apply those

22  facts to the law pretty quickly.  And to the extent that the

23  Court rules on nothing else, I think it would be at least

24  useful to get a partial summary judgment ruling with respect to

25  the standing, that way we don't have to bring everyone in to

1   court for trial.  It would certainly knock at least a day off

2   of trial.

3              But with respect to the other issues in the case,

4   it's -- the number of noncitizens who defendants have cataloged

5   who are registered to vote in the state, we take those numbers

6   at face value and argue they're insufficient under the Tenth

7   Circuit's standard.  The defendant's estimates, separate and

8   apart from the specific cases they've identified -- they have

9   an expert with statistical estimates.  Our argument there again

10  will be even if you take their expert's number at face value,

11  it's insufficient to meet substantiality under the Tenth

12  Circuit's ruling.

13             And then the third thing that we're going to address

14  in our motion, Your Honor, is that there are other means of

15  identifying noncitizens that the defendants either already rely

16  on or simply have not yet availed themselves of the opportunity

17  to.  I don't think there are actually going to be much in the

18  way of factual disputes with respect to that.  So I know it

19  sounds like a lot, but I actually do think there are enough --

20  maybe not every fact that we assert on summary judgment, but I

21  think there are enough facts that it would be possible to rule

22  on all the issues in the case on summary judgment.

23             THE COURT:  So, Mr. Ho, when you say the motion's

24  going to be simple -- and you've got a draft of this brief

25  already worked up, true?  How long is it right now?

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 29 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.05.17

29

1        MR. HO:  I think it's about 20 pages, Your Honor.

2        THE COURT:  With the facts and the argument?

3        MR. HO:  With the argument, Your Honor.  The facts

4   are probably about another 20 or so.  Many of them though are

5   the stipulations from the brief trial order.  They're double

6   spaced instead of single spaced, and they have some citations

7   for them, which just makes the pagination a little bit longer.

8        THE COURT:  Okay.  So if the plaintiffs rely on one

9   of their experts in opposition to the defendant's summary

10  judgment motion, is there any reason that the defendant's

11  Daubert motion wouldn't be due concurrent with the reply brief?

12  And to make it the same going both ways.

13       MR. HO:  I suppose that would be the inevitable

14  result there if -- you know, I think from our perspective, Your

15  Honor, our experts, to the extent that they're responding to

16  theirs, that they're purely for the purpose of rebuttal, I

17  mean, their opinions are pretty narrow.  And I don't think

18  there's really any dispute about their qualifications.  Their

19  own expert has said that they're perfectly qualified, in fact,

20  relies upon data that one of our experts compiled.  I'm

21  actually at a loss for how they could even file a Daubert

22  motion.

23       THE COURT:  I'm not suggesting they should.  I hate

24  to be the carrier of the doomsday scenario, but I just want to

25  find out how quickly all the briefs are going to be in and all

1 the motions are going to be filed by all the parties so we can

2 get them teed up and either decided on that basis or get the

3 case tried.

4 　　　　MR. HO: I understand.

5 　　　　THE COURT: But, Mr. Roe, any reason under the

6 scenario that I've described that any experts that are used in

7 opposition to the summary judgment motion wouldn't result in a

8 Daubert motion being due with the reply? And the reason I ask

9 is the time periods are a little bit different, so there's

10 going to be 21 days on a responsive brief and 14 days on a

11 reply brief.

12 　　　　MR. ROE: I was just trying to contemplate, I think

13 the rules state that 14 days would be the proper response date

14 to a Daubert motion since it's not dispositive so -- and the

15 reply brief is a 14-day reply brief. So should be

16 approximately the same date.

17 　　　　THE COURT: Okay. You know, I would feel a lot

18 better about the summary judgment course if you would all

19 agree -- and again, this is something you might want to think

20 about if everyone is so confident in their respective

21 positions is have one agreed statement of facts for purposes of

22 summary judgment without limitation of what would happen at

23 trial and avoid the situation where we've got the dueling

24 statements of uncontroverted fact and having six different

25 submissions, which lead very often to the judge saying there's

Case 2:16-cv-02105-JAR  Document 348  Filed 06/08/17  Page 31 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach  06.05.17

31

1  got to be a genuine issue of material fact in there someplace.

2  It's either easier or at least more efficient to just try the

3  case and deny the summary judgment motions.

4  MR. HO:  We'd be happy to try to work with the

5  defendants to agree upon one set of facts for summary judgment,

6  Your Honor.

7  THE COURT:  If the case survives summary judgment,

8  then we will include in the pretrial order that any trial

9  Daubert motions would be due 45 days before trial.  But I do

10  not anticipate, and I'm confident that Judge Robinson would not

11  anticipate, that you're going to be replowing the same ground

12  taking a second whack at the piñata on Daubert.  Make your best

13  arguments the first time.

14  Counsel, I'm curious with regard to the way in which

15  these cases would be tried what your understanding is.  I have

16  reviewed Judge Robinson's minute order or minute sheet from her

17  May 10 telephone conference with all of you about trying this

18  and the related Bednasek case seriatim, but just in terms of

19  logistics, as the cases are currently configured, how do the

20  plaintiffs and the defendant each see trial being handled?

21  MR. HO:  If our motion for summary judgment is

22  denied, Your Honor, I think the easiest way to handle trial

23  would be for both sets of plaintiffs to go first and then for

24  the defendant to present a consolidated defense case for both

25  defense -- for -- in both cases, and then any rebuttal

1    witnesses from both sets of plaintiffs afterwards.  That way

2    we're not doing plaintiff in case one, then defendant, then

3    rebuttal in case one, then plaintiff in case two, then

4    defendant, then rebuttal in case two.  I think since there are

5    going to be witnesses who testify at issues that are relevant

6    to both cases, it makes sense to just put all the plaintiffs'

7    witnesses in both cases up once, all the defendant's witnesses

8    in both cases up, and then any rebuttal, if necessary.

9             THE COURT:  So essentially cases consolidated for

10   trial?

11            MR. HO:  Essentially, Your Honor.

12            THE COURT:  Mr. Roe, what's your understanding of

13   Judge Robinson's order?

14            MR. ROE:  I remember during the phone conversation

15   when this was brought up, Your Honor.  And I at the time was

16   confused on how this would work, and I'm still today confused

17   on how this would work.  And the reason is is because the

18   Bednasek plaintiffs only have one claim, and it has to deal

19   with -- it cites a 1983 claim under, you know, right to vote,

20   which is not in their -- they have not asserted in their

21   complaint.

22            THE COURT:  The Fish plaintiffs you mean?

23            MR. ROE:  Sorry.  The Fish plaintiffs.  So I've been

24   trying to figure out since that time period how we were going

25   to do a joint trial.  I mean, I -- there may be some

Case 2:16-cv-02105-JAR   Document 348   Filed 06/08/17   Page 33 of 37
15-9300/16-2105   Keener v. Kobach/Fish v. Kobach   06.05.17

33

1   plaintiff -- some parties that are -- or some individuals that

2   would overlap, I assume.  But to me, it's -- I'm honestly

3   having a hard time understanding how we would do a trial

4   together.

5            THE COURT:  So this will ultimately be decided by

6   Judge Robinson after post summary judgment if issues remain to

7   be adjudicated.  But, Mr. Roe, let me ask you this.  Assuming

8   summary judgment is denied in this case in line with summary

9   judgment that has already been denied in Bednasek, how would

10  you contemplate these cases would be most efficiently tried?

11           MR. ROE:  Well, for instance, there's -- I mean, I

12  could see seeing both sets of plaintiffs putting on -- you

13  know, assuming that they needed to present their own plaintiffs

14  together.  I'm not sure that's going to be required based on

15  the stipulations, but if that was required, the challenging

16  part I think would be separating the experts out as the

17  different experts -- you know, some experts are only in the

18  Fish case and some experts are only in the Bednasek case.

19           So I think it's conceivable to do the plaintiffs

20  themselves and any witnesses supporting their claims together.

21  But again, it's hard for me to envision how -- if nothing else,

22  from a relevancy standpoint, how certain witnesses would be

23  relevant in both cases considering they're completely different

24  claims.

25           THE COURT:  Are there -- I mean, is it your view

1   that there are no witnesses that overlap the two cases?

2           MR. ROE:  I mean, certainly our -- one of our

3   experts overlaps, Mr. von Spakovsky.

4           THE COURT:  Would it make sense to have him testify

5   in both cases?

6           MR. ROE:  I mean, I think he would have to.

7           THE COURT:  Why in a bench trial?

8           MR. ROE:  Well, no, I'm sorry, I mean I think he

9   would need to be -- it would be a combined trial for purposes

10  of Mr. -- Mr. von Spakovsky.  But again, the issue I have, I'm

11  just having a hard time understanding is how you do a -- you

12  know, a bench trial with two completely different claims

13  essentially, one involving the burden on the right to vote and

14  then a separate case at the same time on preemption issues.

15          THE COURT:  Mr. Ho.

16          MR. HO:  If I may, Your Honor.

17          THE COURT:  Sure.

18          MR. HO:  I think the answer to that is relatively

19  simple.  The legal claims are different, but the factual issues

20  are virtually identical with respect to both sets of

21  plaintiffs.  And the Bednasek plaintiffs obviously aren't here

22  today.  But the questions are sort of how does the documentary

23  proof of citizenship actually work -- requirement actually work

24  in terms of when people try to register to vote.  Is it

25  burdensome for them.  Do they -- is there a record of

1   noncitizens registering to vote absent such a requirement.  Has

2   the state other means at their disposal to identify and prevent

3   noncitizens from registering to vote.  These factual issues

4   are, I think, common across both sets of claims, even if the

5   legal analysis is different.  So it's hard for me to even

6   conceive of one witness who would be relevant only to one case.

7   I think they're all relevant to both.

8          THE COURT:  Counsel, I think what I'm going to do is

9   include language in the pretrial order that would state

10  something to this effect that within five days of any summary

11  judgment ruling by Judge Robinson in the Fish case that leaves

12  issues for trial that you all would meet, confer, and submit a

13  joint status report to Judge Robinson outlining your respective

14  positions or possibly a joint position as to how most

15  efficiently to try the issues that remain in Fish along with

16  the issues that presently remain in Bednasek.  And then she'll

17  convene and conference and she'll tell you what she's going to

18  do.  But I'd like you to have the opportunity for input on that

19  in advance of that.

20         Okay.  Mr. Ho, that covers the items about which I

21  was concerned.  And I appreciate you and Mr. Roe kind of

22  walking me through this.

23         Is there anything else that you can think of that we

24  should address today on behalf of the plaintiffs to make sure

25  this case at least has the highest chance of going smoothly and

1  inexpensively?

2          MR. HO:  There's nothing else that I can think of

3  right now, Your Honor.  Thank you.

4          THE COURT:  Okay.  Mr. Roe, how about on behalf of

5  the defendant, anything else that you can think of that we need

6  to address today?

7          MR. ROE:  No, Your Honor.

8          THE COURT:  Okay.  Thank you all for coming in.

9  We're adjourned.

10          I will, as I said, get this pretrial order back out

11  to you at the latest by next Monday.  I have to be out of the

12  office several days this week.  I'm going to try to get it out

13  to you before I leave.  It may be Monday.  And I'll give you a

14  week from that time to review my handiwork, confer and get back

15  to me on any further changes that need to be made in the order.

16  You all have a good day.

17          MR. ROE:  Your Honor, I'm sorry, do you want me to

18  send you a Word document of what I just provided?  Would that

19  be easier?

20          THE COURT:  If you would send that to me with a copy

21  to Mr. Ho and his team.  I think I've got enough to start

22  drafting right now, but if you could send an electronic copy as

23  well, I would appreciate it.

24          MR. ROE:  I will forward you the copy that I sent to

25  them earlier.

37

1          THE COURT:  If you've even got it on your phone, if

2    you could send it presently.

3          MR. ROE:  I do not actually, Your Honor.

4          THE COURT:  Okay.  If there's nothing else, we're

5    adjourned.  Thank you all.

6               (Proceedings adjourned at 2:58 p.m.)

7

8

9

10                    CERTIFICATE

11          I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled matter.

13

14    June 7, 2017

15

16                        /s/_____
                          Jean M. Crawford, RDR, CRR
17                        U.S. Court Reporter

18

19

20

21

22

23

24

25