IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al., on behalf )
of themselves and all others similarly )
situated, )
     )
        Plaintiffs, )
     )     Case No. 16-2105-JAR
v. )
     )
KRIS KOBACH, in his official capacity as )
Secretary of State for the State of Kansas, )
     )
        Defendant.

## **PRETRIAL ORDER**

A pretrial conference was conducted in this case on June 5, 2017, by U.S. Magistrate Judge James P. O'Hara.  The plaintiffs, Steven Wayne Fish, Donna Bucci, Charles Stricker, Thomas J. Boynton, Douglas Hutchinson, and the League of Women Voters of Kansas ("LWVK"), appeared through counsel, Dale E. Ho, Douglas D. Bonney, and Sophia Lin Lakin. The defendant, Secretary of State Kris Kobach, appeared through counsel, Garrett R. Roe and Bethany J. Lee.  Mr. Kobach, who's lead defense counsel, failed to appear, even though the pretrial conference was re-scheduled from May 31, 2017 to accommodate his travel schedule.

This pretrial order supersedes all pleadings and controls the subsequent course of this case.  It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice.  Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(b).

1.   **PRELIMINARY MATTERS.**

    a.    **Subject-Matter Jurisdiction.**  This action is brought pursuant to the private right of action provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20510, and 42 U.S.C. § 1983.  Subject-matter jurisdiction is invoked under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, and pursuant to 52 U.S.C. § 20510 which provides for jurisdiction of actions brought under the NVRA.  Defendant continues to assert plaintiffs lack standing which can be raised at any time, even on appeal, and cannot be waived.

    b.    **Personal Jurisdiction.**  The court's personal jurisdiction over the parties is not disputed.

    c.    **Venue.**  Venue in this court is not disputed.

    d.    **Governing Law.**  Subject to the court's determination of the law that applies to the case, the parties believe and agree the substantive issues in this case are governed by the following law:  52 U.S.C. §§ 20504, 20507, 20509, 20510; U.S. Const. Art. I, § 2, cl. 2; U.S. Const. Art. I, § 4, cl. 1; U.S. Const. Art. IV, § 2, cl.1; U.S. Const. Amend. XIV, § 1.  Defendant also believes that U.S. Const. Art. VI, cl. 2 and U.S. Const. Amend. XVII are applicable.

2.   **STIPULATIONS.**

    a.    The following facts are stipulated:

1.  Defendant Kansas Secretary of State Kris Kobach does business in and is an elected official of the State of Kansas.

2.  Defendant is the Chief Election Officer for the State of Kansas.

3.  On January 24, 2011, House Bill No. 2067 ("HB 2067") was formally introduced in the Kansas Legislature.

4.  Among other things, HB 2067 contained a provision that would become K.S.A. § 25-2309(l).

5.  After the amendment process, HB 2067 gained final passage in the Kansas Senate on March 23, 2011, and in the House on March 29, 2011.

6.  Governor Sam Brownback signed the bill into law on April 18, 2011.

7.  K.S.A. § 25-2309(l) among other provisions took effect on January 1, 2013.

8.  On June 25, 2015, defendant proposed an administrative rule that would become Kansas Administration Regulation ("K.A.R.") § 7-23-15, which went into effect on October 2, 2015.

9.  Between July 1, 2015, and October 13, 2016, defendant has not brought charges against a noncitizen for illegal registration and/or voting.

10. Plaintiff Steven Wayne Fish is a U.S. citizen, a resident of Kansas, and over eighteen years old.

11. Plaintiff Fish applied to register to vote while renewing a Kansas driver's license at the Division of Vehicles ("DOV").

12. The Electronic Voter Information System ("ELVIS"), which is maintained by the Kansas Secretary of State ("SOS"), indicates that plaintiff Fish has not provided satisfactory evidence of citizenship.

13. Plaintiff Fish was given a code of "suspense" in ELVIS for failure to provide documentary proof of citizenship ("DPOC").

14. Plaintiff Fish provided a copy of his birth certificate during discovery in this case.

15. Plaintiff Fish has not sought a hearing under K.S.A. § 25-2309(m).

16. Plaintiff Donna Bucci is a resident of Kansas and over eighteen years old.

17. Plaintiff Bucci applied to register to vote while renewing a Kansas driver's license at the DOV.

18. ELVIS indicates that plaintiff Bucci has not provided satisfactory evidence of citizenship.

19. Plaintiff Bucci was given a code of "suspense" in ELVIS for failure to provide DPOC.

20. Plaintiff Bucci has not sought a hearing under K.S.A. § 25-2309(m).

21. Plaintiff Charles Stricker is a U.S. citizen, a resident of Kansas, and over eighteen years old.

22. Plaintiff Stricker applied to register to vote while renewing a Kansas driver's license at the DOV.

23. Plaintiff Stricker was given a code of "suspense" in ELVIS for failure to provide satisfactory evidence of citizenship.

24. Plaintiff Stricker provided a copy of his birth certificate during discovery in this case.

25. Plaintiff Stricker has not sought a hearing under K.S.A. § 25-2309(m).

26. Plaintiff Thomas Boynton is a U.S. citizen, a resident of Kansas, and over eighteen years old.

27. Plaintiff Boynton was given a code of "suspense" in ELVIS for failure to provide DPOC.

28. Plaintiff Boynton provided a copy of his birth certificate during discovery in this case.

29. Plaintiff Boynton has not sought a hearing under K.S.A. § 25-2309(m).

30. Plaintiff Douglas Hutchinson is a U.S. citizen, a resident of Kansas, and over eighteen years old.

31. Plaintiff Hutchinson applied to register to vote while renewing a Kansas driver's license.

32. Plaintiff Hutchinson was given a code of "suspense" in ELVIS for failure to provide DPOC.

33. The SOS' Office does not currently check with any agencies outside of Kansas to verify citizenship of voter registration applicants.

34. Between January 1, 2006 and March 23, 2016, 43.7% of Kansas voters applied to register to vote at the DOV.

35. As of March 28, 2016, there were 14,770 applicants on the "suspense list" for failure to provide DPOC.

36. As of March 28, 2016, there were 5,655 applicants on the "suspense list" who had applied to register at the DOV.

37. As of March 28, 2016, there were 16,319 applicants whose applications were canceled under K.A.R. § 7-23-15 due to lack of DPOC.

38. As of March 23, 2016, there were 11,147 applicants who applied to register at the DOV whose applications were canceled under K.A.R. § 7-23-15 due to lack of DPOC.

39. ELVIS reflects that at one time plaintiff Fish's voter registration was canceled.

40. On October 27, 2016, ELVIS did not reflect plaintiff Fish's registration status as canceled.

41. ELVIS reflects that at one time plaintiff Boynton's voter registration was canceled.

42. On October 27, 2016, ELVIS did not reflect plaintiff Boynton's registration status as canceled.

43. ELVIS reflects that at one time plaintiff Bucci's voter registration was canceled.

44. On October 27, 2016, ELVIS did not reflect plaintiff Bucci's registration status as canceled.

45. ELVIS reflects that at one time plaintiff Stricker's voter registration was canceled.

46. On October 27, 2016, ELVIS did not reflect plaintiff Stricker's registration status as canceled.

47. ELVIS reflects that at one time plaintiff Hutchinson's voter registration was canceled.

48. On October 27, 2016, ELVIS did not reflect plaintiff Hutchinson's registration status as canceled.

49. Hutchinson is recorded in ELVIS as not having submitted DPOC at the time he applied to register to vote at the DOV in May 2013.

50. There were more than 1.8 million registered voters in Kansas as of the 2016 general election.

51. ELVIS is a statewide voter registration database.

52. ELVIS is maintained by the SOS.

53. Each county election officer has responsibility maintaining the voter lists for their own counties. The central database reflects data that is entered by the counties.

54. ELVIS assigns a unique identification number for all voters.

55. When a voter registration application is received by the relevant county election office, a record is created in the ELVIS database.

56. County election officers have been instructed to enter into ELVIS system all people who submit voter registration applications regardless of whether they provided proof of citizenship.

57. ELVIS contains codes that demonstrate whether a person has registered successfully.

58. "CITZ" is the code recorded in ELVIS to indicate that an applicant has failed to provide documentary proof of citizenship.

59. "MV" is the code recorded in ELVIS to indicate that an applicant has applied to register to vote at the DOV.

60. Non-citizens who apply for a driver's license may receive a temporary driver's license ("TDL"), the duration of which is tied to the length of time that the documentation they provided to DOV permits their presence in the U.S.

61. Non-citizen legal permanent residents who apply for a driver's license receive a regular driver's license.

62. Mr. Bryan Caskey, the Director of Elections in the SOS' Office, stated that he believes that green card holders apply for regular driver's licenses using their green cards as legal presence documents.

63. After reviewing an applicant's documentation, a DOV employee enters the applicant's name and date of birth into the DOV database and takes the applicant's photo as well as captures their signature.

64. Documentation is scanned into the DOV database.

65. DOV employees also enter an applicant's Social Security Number, if applicable, height, weight, eye color, address, the type of license applied for (e.g., commercial

driver's license or motorcycle driver's license), organ donor status, and the results of applicant's vision test.

66. Only after all of the foregoing information is entered is an applicant asked if they would like to register to vote.

67. If an applicant does wish to register to vote, they begin the process for voter registration.

68. If driver's license applicants (first-time or renewal) verbally confirm  they would like to register to vote, the DOV employee prompts them to read a voter oath located on the DOV counter in front of them and to verbally indicate if they agree.

69. Applicants are then asked several questions including: "Are you a U.S. citizen?"

70. After a motor-voter applicant answers these questions, a voter registration receipt is printed, the applicant pays the appropriate fees, and gets his/her photo taken.  At this point, they have finished the voter registration application process at the DOV.

71. DOV employees do not ask for DPOC during a renewal, but will accept and scan DPOC if it is offered on a renewal.

72. Motor-voter registration applications are sent from the DOV computer system into ELVIS on a nightly basis, and ELVIS then batches that information to county election officials in the applicant's county.

73. Mr. Caskey stated that he believes DOV policy is to not offer voter registration services to TDL applicants.

74. Mr. Caskey stated that he believes DOV policy is to not offer voter registration applications to driver's license applicants who show a green card (i.e., legal permanent residents) in their course of applying for a regular license.

75. DOV employees have sometimes mistakenly offered non-citizens voter registration applications.

76. Driver's license clerks in Kansas receive, on average, no more than thirty minutes of training regarding motor voter registration laws during their two-day in classroom training.

77. Between February 2015 and June 2016, the Office of the SOS did not provide any new written training materials to the DOV concerning motor voter registration laws.

78. Bryan Caskey is the Director of Elections at the Kansas SOS' office.

79. Mr. Caskey is not a DOV employee.

80. Bryan Caskey submitted a declaration dated March 24, 2017, which identifies 125 individuals who were non-citizens and who "either attempted to register to vote or successfully registered to vote prior to the proof-of-citizenship requirement's implementation, or attempted to register after the requirement was implemented."

81. The number of non-citizens Mr. Caskey specifically identified in his declaration as registered or attempted to register, and not including the non-citizens that were not identified in his declaration, is equal to approximately .0007% of registered voters in Kansas.

82. Tabitha Lehman is the County Election Officer of Sedgwick County.

83. In addition to the 125 individuals identified by Bryan Caskey, a spreadsheet from Tabitha Lehman identifies an additional 2 non-citizens who registered to vote.

84. Collectively, Mr. Caskey and Ms. Lehman have identified a total of 127 individuals who were non-citizens at the time that they registered to vote or attempted to register to vote.

85. Of the 127 individuals identified by Mr. Caskey and Ms. Lehman, 43 successfully registered to vote in Kansas.

86. Of the 127 individuals identified by Mr. Caskey and Ms. Lehman, 47 individuals currently have or have had the "CITZ" code in their ELVIS record at one point.

87. Of the 127 individuals identified by Mr. Caskey and Ms. Lehman, 11 have voted in Kansas.

88. Of the 127 individuals identified by Mr. Caskey and Ms. Lehman, 88 are motor-voter applicants.

89. Of the 127 individuals identified by Mr. Caskey and Ms. Lehman, 25 are motor-voter applicants that have successfully registered to vote in Kansas.

90. Of the 127 individuals identified by Mr. Caskey and Ms. Lehman, 32 are motor-voter applicants that have or have had the "CITZ" code in their ELVIS records at one point.

91. Of the 127 individuals identified by Mr. Caskey and Ms. Lehman, 5 are motor-voter applicants who have voted in Kansas.

92. The Office of the SOS has identified possible non-citizens who had registered to vote by comparing the TDL list with the ELVIS database.

93. The SOS compared the TDL to the voter registration list in 2009, 2010, 2011, and 2017.

94. As of January 30, 2017, Kansas had identified 79 TDL holders on the voter rolls.

95. Several of those identified by TDL comparisons were referred for prosecution.

96. The DOV has compared the list of individuals on the suspense list to information in the driver's licenses database concerning driver's license holders who presented proof of permanent residency (or "green cards") in the course of applying for a driver's license, and identified possible non-citizens.

97. In Kansas, people who are called for jury service are sent jury duty questionnaires that include a question about U.S. citizenship.

98. District Courts send to the SOS on an at least monthly basis the lists of individuals who requested to be excused from jury service based on their claims that they are not citizens.

99. The SOS Office has compared lists of individuals who had answered on their jury questionnaires indicating that they were not citizens to voter registration rolls.

100.    In 2013, through a comparison of the voter rolls with the lists of individuals who requested to be excused from jury service based on their claims that they are not citizens, the SOS' Office identified at least 5 individuals who were potentially non-citizens.

101.    The Electronic Verification of Vital Events ("EVVE") database is operated by the National Associations for Public Health Statistics and Information Systems ("NAPHSIS").

102.    EVVE provides customers with the ability to quickly, reliably, and securely verify and certify birth and death information. Electronic inquiries from authorized users can be matched against over 250 million birth and death records from state and jurisdiction owned vital record databases nationwide.

103.    In order to conduct an EVVE database search, it is the Kansas SOS' understanding that an individual's state of origin and mother's maiden name are required.

104.    The Systematic Alien Verification for Entitlements ("SAVE") program is overseen by United States Department of Homeland Security ("DHS").

105.    "A-numbers" or Alien Verification Numbers ("AVNs") are required to run SAVE searches.

106.    In a letter dated August 20, 2012, and signed by Alexander Mayorkas, the DHS notified Kansas that "States will be able to access SAVE to verify the citizenship

status of individuals who are registered to vote in that state provided that the requesting state has a signed information sharing agreement with the Department of Homeland Security and that each state be able to supply for each individual it seeks to verify (1) a specific type of unique identifier like an alien number or certificate number that appears on immigration-related documentation, and (2) a copy of the immigration-related documentation in question to complete the verification process."

107.    Since July 1, 2015, defendant has had the independent authority to prosecute any person who has committed or attempted to commit any act that constitutes a Kansas elections crime.

108.    Since July 1, 2015, defendant has brought prosecutions for acts that constituted Kansas elections crimes.

109.    Since July 1, 2015, the Office of the SOS has become aware of multiple instances of non-citizens registering to vote in Kansas.

110.    Since obtaining prosecutorial authority over Kansas elections crimes, the Office of the SOS has filed zero criminal complaints against a non-citizen for allegedly registering to vote.

111.    Since obtaining prosecutorial authority has filed one criminal complaint against an individual who voted while being a noncitizen.

112.    Since obtaining prosecutorial authority over Kansas elections crimes, the Office of the SOS has obtained zero convictions against non-citizens for registering to vote.

113.    In 2017, defendant filed a criminal action against an individual who registered to vote and voted while being a noncitizen.

114.    In 2017, defendant obtained a conviction against that individual for voting as a noncitizen.

115.    Only noncitizens called for jury duty can be identified by comparing ELVIS records with jury questionnaires.

116.    The DOV website identifies five documents that purportedly "show your date of birth, identity, and lawful status as a U.S. citizen" when applying for an original Kansas Driver's License or Non-Driver Identification card:  a certified U.S. birth certificate, an unexpired United States Passport or Passport Card, a U.S. Consular Report of Birth Abroad, a Certificate of Naturalization, a Certificate of Citizenship.

117.    The DOV website identifies four documents that purportedly "show your date of birth, identity and lawful status or presence as a non-U.S. citizen" when applying for an original Kansas Driver's License or Non-Driver identification card: a valid

11

Permanent Resident Card, a valid Employment Authorization Card, a valid I-94, or an unexpired foreign Passport with valid U.S. entry marking and/or documentation.

118.    The DOV website states that, "For non-U.S. citizen applicants, the Examiner will need documentation sufficient to initiate and complete a SAVE verification."

119.    Mr. Caskey became Elections Director in 2015.

120.    KSOS has not promulgated training manuals about voter registration to DOV personnel since Mr. Caskey became Elections Director in 2015.

121.    KSOS has not drafted in written form an instruction to DOV clerks to not offer voter registration applications to noncitizens in any written guidance since Mr. Caskey became Elections Director in 2015.

122.    Mr. Caskey believes there is a DMV policy to not offer voter registration to those applying for a TDL.

123.    KSOS does not assess or evaluate individual frontline DMV employees with respect to their day-to-day voter registration duties.

124.    KSOS helped draft the bill that resulted in KSA § 43-174.

125.    In November 2013, KSOS referred five individuals who had self-identified as noncitizens on jury questionnaires to a local county police department for investigation and possibly prosecution.

126.    In 2017, as of March 24, 2017, KSOS identified three individuals who were on the voter rolls but who had self-identified as non-citizens on their jury questionnaires.

127.    An investigator employed by KSOS provided the full names and dates of birth of the three individuals who had self-identified as non-citizens on their jury questionnaires to the U.S. Department of Homeland Security ("DHS") via email.

128.    After receiving the full names and dates of birth of the three individuals who had self-identified as non-citizens on their jury questionnaires from the investigator, DHS responded with an email describing information known to DHS about the immigration and citizenship status of these three individuals.

129.    The response from DHS was the first time in Mr. Caskey's experience that DHS has provided assistance to KSOS, despite seeking assistance in the past.

130.    Neither DHS nor employees or agents of DHS are controlled by KSOS.

131.    KSOS does not have oversight over DHS or its employees or agents.

132.    KSOS was involved in the drafting of and advocacy in favor of the bill that

granted KSOS the independent prosecutorial authority to prosecute non-citizens for registering to vote and for voting.

133.   Bryan Caskey has had conversations with DMV officials related to their training.

**b.**   The parties have stipulated to the foundation (but not the admissibility) of the following exhibits for purposes of summary judgment and trial:

- Untitled Chart regarding noncitizens voting in Kansas, Exhibit 4 to Lehman Dep., FOBSBH000327-332.
- Kansas Election Standards, FOBSBH001309-1510 and FISH 5TH RFP 019762-019961.
- Untitled excel spreadsheet containing a summary of known reported incidents of election crimes from 1997 to 2012, FOBSBH001512.
- Multiple driver's licenses (Nevada and Kansas DL - issued 3-30-2010 & 8-14-2013), work IDs, and social security card for plaintiff Donna Jean Bucci, Bucci000001.
- Birth certificate, Kansas driver's license issued 10-14-14 and social security card for plaintiff Charles Stricker, Stricker000001-3.
- Birth certificates, billing statement, Kansas driver's license issued 12-30-15, residential lease agreement, provisional ballot receipt, employee ID, social security card, and Cox Westar Energy billing statement for plaintiff Thomas Boynton, Boynton000001-17.
- Birth certificates, Kansas driver's license issued 5-24-13, U.S. passport for plaintiff Douglas Hutchinson, Hutchinson00001-12.
- Birth Certificate, Kansas driver's license issued 8-15-2014 for plaintiff Fish, Fish000001-2.
- E-mail correspondence, 5TH RFP 000035-000036
- Memorandum of Agreement, FISH 5TH RFP 000038-000047
- Letter from Secretary Kobach to Secretary Janet Napolitano, FISH 5TH RFP 000265-000266
- Letter from Director Alejnadro Mayorkas to Secretary Kobach, FISH 5TH RFP 000471
- Memorandum of Ryan Kriegshauser, FISH 5TH RFP 000696-000697

Affidavits/Declarations
- Affidavit of Bryan Caskey, dated March 29, 2016, FOBSBH000185-190.
- Affidavit of Bryan Caskey, dated May 18, 2016, ECF No. 134-2.
- Affidavit of Bryan Caskey, dated May 20, 2016, ECF No. 137-4.
- Affidavit of Bryan Caskey, dated June 9, 2016, ECF No. 163-1.
- Affidavit of Bryan Caskey, filed in *League of Women Voters v. Newby*, No. 16-cv-236 (D.D.C. Feb. 21, 2016), ECF No. 27-1.

- Affidavit of Bryan Caskey, filed in *League of Women Voters v. Newby*, No. 16-cv-236 (D.D.C. Aug. 19, 2016).
- Affidavit of Bryan Caskey, filed in *Brown v. Kobach*, No. 2016-CV-550 (Shawnee Dist. Ct. Kan. Sept. 1, 2016).
- Affidavit of Bryan Caskey, dated January 30, 2017.
- Affidavit of Bryan Caskey, dated March 24, 2017.
- Declaration of Tabitha Lehman, dated April 13, 2016, Prelim. Inj. Hr'g. Ex. 8.
- Affidavit of Tabitha Lehman, dated March 29, 2016, FOBSBH000196-199.
- Declaration of Tabitha Lehman, filed in *Brown v. Kobach*, No. 2016-CV-550 (Shawnee Dist. Ct. Kan. July 29, 2016).

Depositions

- Excerpts of the 30(b)(6) deposition of Bryan Caskey, which took place on April 6, 2016.
- Excerpts of the deposition of Bryan Caskey, which took place on June 15, 2016
- Excerpts of the deposition of Tabitha Lehman, which took place on April 6, 2016.
- Excerpts of the 30(b)(6) deposition of Julie Earnest, which took place on June 6, 2016.
- Excerpts of the 30(b)(6) deposition of Lisa Kaspar, which took place on June 6, 2016.
- Excerpts of the 30(b)(6) deposition of Michaela Butterworth, which took place on June 6, 2016.
- Excerpts of the 30(b)(6) deposition of Nick Jordan, which took place on June 6, 2016.
- Excerpts of the 30(b)(6) deposition of Douglas Appenfeller, which took place on June 6, 2016.
- Excerpts of the 30(b)(6) deposition of Gail Haid, which took place on June 6, 2016.
- Excerpts of the 30(b)(6) deposition of Scott Abbott, which took place on June 6, 2016.

Transcripts

- Excerpts of the transcript of the discovery and scheduling conference that took place before Judge O'Hara on March 23, 2016.
- Excerpts of the transcript of the preliminary injunction hearing that took place before Judge Robinson on April 14, 2016.
- Excerpts of the transcript of the class certification hearing that took place before Judge Robinson on June 14, 2016.
- Excerpts of the transcript of the status conference that took place before Judge Robinson on October 5, 2016.

- Excerpts of the transcript of a February 22, 2016 hearing on the plaintiffs' motion for temporary restraining order and preliminary injunction in *League of Women Voters v. Newby*, No. 1:16-cv-00236 (D.D.C.).
- Excerpts of the transcript of the July 29, 2016 hearing on the plaintiffs' motion for a temporary restraining order and temporary injunction in *Brown v, Kobach*, No. 2016-CV-550 (Shawnee Dist. Ct., Kan.)
- Excerpts of the transcript of the September 21, 2016 hearing on the plaintiffs' motion for permanent injunction in injunction in *Brown v, Kobach*, No. 2016-CV-550 (Shawnee Dist. Ct., Kan.).

Other
- Alice P. Miller, U.S. Election Assistance Commission, *Memorandum of Decision Concerning State Requests to Include Additional Proof-of-Citizenship Instructions on the National Mail Voter Registration Form*, January 17, 2014.

3.     **FACTUAL CONTENTIONS.**

a.     **Contentions of plaintiffs.**

Each of the individual plaintiffs, Steven Wayne Fish, Donna Bucci, Charles "Tad" Stricker, Thomas J. "T.J." Boynton, and Douglas Hutchinson, is over 18 years old, a citizen of the United States, and a resident of Kansas, and thus eligible to vote in local, state, and federal elections in Kansas. Each of the individual plaintiffs submitted a valid and complete voter registration application in conjunction with a driver's license application (including those who applied for renewals) in accordance with the NVRA but was placed on the suspense list for purportedly failing to submit documentary proof of citizenship.

The organizational plaintiff, LWVK, is a nonpartisan, volunteer, community-based organization that, for more than 90 years, has encouraged informed and active participation of citizens in government and worked to influence public policy through education and advocacy. The LWVK has a long history of supporting voter registration and voter education efforts. The

LWVK's efforts mirror the NVRA's stated goals of "increas[ing] the number of eligible citizens who register to vote in elections for Federal offices" and implementing procedures at all levels of government to "enhance the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501. The DPOC law, K.S.A. § 25-2309(l), has adversely impacted both the LWVK and its members by directly interfering with the LWVK's core commitment to conducting voter registration drives and assisting voters in becoming registered in a number of ways:

Because prospective registrants typically do not have acceptable documentary proof of citizenship with them in locations where the LWVK has historically done voter registration drives, the organization has been able to register far fewer individuals at their voter registration drives.

The LWVK has also been forced to divert its limited resources toward contacting the thousands of motor-voter registrants on the suspense list and attempting to help them satisfy the DPOC law. The LWVK has dedicated large amounts of volunteer hours attempting to educate citizens and help them meet the DPOC requirement and researching and developing a policy to mitigate the risk of legal liability associated with copying, retaining, and disposing of proof of citizenship documents that had stopped several local affiliates of the LWVK from conducting voter registration activities altogether. The LWVK has also expended substantial funds and resources producing a video and printing thousands of flyers to educate the public regarding registration barriers imposed by the DPOC law. All of these activities have diverted the LWVK away from its core public policy priorities and required it to expend ever more resources on voter registration. If defendant had not suspended such large numbers of motor-voter registrants, the LWVK would be much freer to pursue its central priorities.

16

Defendant Secretary of State Kris Kobach is, in his capacity as SOS of Kansas, the State's chief election official responsible for overseeing all Kansas elections.

Defendant   is charged with the general supervision of Kansas election laws, including the implementation of the DPOC law as well as compliance with the NVRA.

Pursuant to Section 5 of the NVRA, "[e]ach State motor vehicle driver's license application (including any renewal application) . . . shall serve as an application for voter registration with respect to elections for Federal office." 52 U.S.C. § 20504(a)(1). The statute requires "[e]ach State [to] include a voter registration application form for elections for Federal office as part of an application for a State motor vehicle driver's license." 52 U.S.C. § 20504(c)(1). The statute further provides that each state "shall . . . ensure that any eligible applicant is registered to vote in an election" so long as a "valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority" within a specified timeframe – i.e., "the lesser of 30 days" before the election, or the deadline "provided by State law [for registration] before the date of the election." 52 U.S.C. § 20507(a)(1)(A).

Section 5 of the NVRA delineates information a motor-voter application must include: the "voter registration application portion of an application"

> (C) shall include a statement that--
> (i) states each eligibility requirement (including citizenship);
> (ii) contains an attestation that the applicant meets each such requirement; and
> (iii) requires the signature of the applicant, under penalty of perjury.

52 U.S.C. § 20504(c)(2)(C).

Section 5 of the NVRA further states that: "[t]he voter registration application portion of an application for a State motor vehicle drivers license"

(B) may require only the minimum amount of information necessary to
      (i) prevent duplicate voter registrations; and
      (ii) enable State election officials to assess the eligibility of the applicant
      and to administer voter registration and other parts of the election
      process[.]

52 U.S.C. § 20504(c)(2)(B).

Prior to January 1, 2013, the effective date of the DPOC law, this attestation as to eligibility signed by the applicant under penalty of perjury was all that Kansas required of voter registration applicants, including motor voter applicants. Since January 1, 2013, a person applying to register to vote in Kansas must, under the DPOC law, provide DPOC on top of this attestation in order to be registered. *See* K.S.A. § 25-2309(l). The applicant can satisfy this requirement by providing the DPOC either when filing a registration form in person, or by submitting a photocopy of DPOC along with a completed registration application in the mail. *Id.* The statute lists thirteen documents that constitute satisfactory proof of citizenship. If an applicant is unable to produce one of those documents, there is an alternative hearing procedure, during which the applicant may submit other evidence of U.S. citizenship at a hearing before the state election board, which is comprised of the Secretary of State, Lieutenant Governor, and the Attorney General. This procedure is not publicized, and as of June 15, 2016, there have been only 3 such hearings.

The SOS' Office also coordinates with the Kansas Department of Health & Environment ("KDHE") to obtain evidence of birth certificates on behalf of Kansas-born applicants who did not provide documentary proof of citizenship. The SOS' Office, however, does not currently check with any agencies outside of Kansas to verify citizenship of voter applicants.

Under the DPOC law, any applicant who does not provide DPOC at the time her or she applies to register is not registered to vote and is instead placed on a list of incomplete voter

registration applicants, i.e., the "suspense list." If the applicant fails to provide "satisfactory evidence of United States citizenship" within 90 days or receipt of the incomplete application, then, under K.A.R. § 7-23-15, promulgated by defendant, the "application shall be deemed insufficient . . . and the voter registration application [shall be] canceled." After cancellation, a person must restart the Kansas voter registration application.

Since the DPOC law became effective, it has prevented tens of thousands of qualified voters from being registered and ultimately from voting.

- Approximately 18,000 would-be Kansas voters who applied to register to vote at the DOV have been placed on a "suspense list" or were purged or canceled solely because they purportedly did not submit DPOC.

- The individuals on the "suspense list" are disproportionately young and unaffiliated with a political party. This is unsurprising because the DPOC law increases the cost of political participation.

The barriers to political participation erected by the DPOC law have been imposed despite the lack of any showing that the DPOC is necessary to evaluate voter eligibility in Kansas. There is at best only nominal evidence of non-citizens getting registered or actual non-citizen voter or registration fraud in Kansas:

- Defendant's repeated public statements characterizing the threat of noncitizens voting as "massive" and pervasive" are unsubstantiated, relying on anecdotal reports and innuendo.

- Defendant sought and obtained extraordinary authority from the Kansas Legislature to prosecute cases of voter fraud directly but has not, as of this date, prosecuted a single noncitizen in Kansas for unlawful registration.

Defendant's other evidence of noncitizens who got registered to vote or were allegedly prevented from registering by the DPOC law shows at best a handful of noncitizens in Kansas over more than a decade who got on the rolls under the attestation regime or who submitted registration applications. According to defendant's evidence, moreover, these incidences are a result of applicant confusion and/or mistake or negligence by state and county officials.

The evidence at trial will also show that there are multiple alternatives to a DPOC requirement for identifying and preventing noncitizen registration, including various methods employed by Defendant, as well as other methods that Defendant has not yet meaningfully attempted to implement.

**b.      Contentions of defendant.**

Kansas law requires an individual seeking to register to vote to complete a voter registration application form and provide certain information evidencing United States citizenship to either the Kansas SOS' Office or a county election office. *See,* e.g. K.S.A. § 25-2309.  An individual has 90 days after submitting an application to provide this evidence. K.A.R. § 7-23-15  After the 90-day period has expired, the individual may re-apply and thereby restart the 90-day clock. *See id.*

An individual is permitted provide the required citizenship information in a number of ways, including by text, by e-mail, or by hard copy to either the SOS' Office or a Kansas county election office.  If a person lacks any of the enumerated documents, a citizen can alternatively demonstrate U.S. citizenship sufficient to satisfy K.S.A. § 25-2309(l) through an informal administrative process described in K.S.A. § 25-2309(m).

Additionally, agreements exist between the SOS' office and other Kansas agencies allow those agencies to provide confirmation that a document that meets the requirements of K.S.A. §

25-2309(l) is in their possession for a given registration applicant.  Whether an applicant's information is verified with a Kansas agency is not dependent upon where the individual was born.  Indeed, the SOS has no information indicating where an applicant is born when verifications are made.  The SOS merely sends names and certain identifying information of individuals who have applied to register to vote but who have not yet provided satisfactory evidence of citizenship to the KDHE and to the DOV.  Those agencies then verify whether a citizenship document is on file.  Additionally, the SOS and the county election officers manually check names with the DOV as well.  In making these verifications, it is unknown where an applicant was born.  These checks are done for all names on the list of applicants who have not yet provided proof of citizenship, and they are not limited to individuals who are born in in Kansas.

The Kansas Legislature enacted the law requiring evidence of citizenship, in part, because noncitizens were registering to vote despite existing laws that prohibited noncitizen registration and despite the attestation of citizenship that is included in voter registration applications.  Evidence exists that noncitizens registered to vote in numerous counties in Kansas prior to the implementation of the proof-of-citizenship requirement.  Indeed, in just one of Kansas's 105 counties—Sedgwick County--numerous noncitizens have registered to vote and have voted despite having attested under penalty of perjury to being United States citizens.  The Sedgwick County Election Office has provided evidence that additional noncitizens applied to register to vote, but were prevented from completing their registrations due to the proof-of-citizenship requirement.  Those noncitizens would have become registered to vote, but for Kansas's Safe and Fair Elections ("SAFE") Act.  The law successfully prevents noncitizens from registering to vote, whereas a mere attestation of citizenship has been demonstrated to be

insufficient to prevent noncitizens from registering to vote.   Additionally, other methods attempted by the State to prevent noncitizens from registering to vote have not been successful.

As required by the Tenth Circuit's opinion of October 19, 2016, affirming the preliminary injunction in this case, defendant will demonstrate that a substantial number of noncitizens successfully registered to vote in the State of Kansas prior to the implementation of the proof-of-citizenship requirement on January 1, 2013.  This substantial number is sufficient to rebut the "presumption" established by the Tenth Circuit that an attestation requirement is the minimum information necessary for a state to carry out its assessment of applicants' eligibility and its registration process.  *See Fish v. Kobach*, No. 16-3147 (10th Cir. 2016), slip op. at 48-52.

**4.   LEGAL CLAIMS AND DEFENSES.**

**a.   Legal claims of plaintiffs.**

During the pretrial conference, plaintiffs abandoned the claims previously pleaded in Counts 2, 3, and 5 of their first amended complaint (ECF No, 39).

In Count 6 of the first amended complaint, plaintiffs alleged that, when a Kansas registrant purportedly fails to provide DPOC, defendant takes affirmative steps to register voters born in Kansas by checking birth and marriage records retained by the KDHE; that defendant does not typically verify suspended registrants' citizenship with agencies outside of Kansas; and that defendant's discriminatory application of the DPOC law violates the right to travel protected under the Privileges and Immunities Clauses in Article IV and the Fourteenth Amendment to the U.S. Constitution.  During the pretrial conference, plaintiffs acknowledged that, as a practical matter, this claim already has been fully adjudicated by the presiding U.S. District Judge, Julie A. Robinson, in her memorandum and order dated May 4, 2017(ECF No. 334), denying plaintiffs' motion for partial summary judgment; plaintiffs, however, have expressly preserved

this claim for purposes of appeal.  Prior to the dispositive motion deadline, defendant has indicated he may file a short motion for partial summary judgment simply to confirm his entitlement to affirmative relief on the claim in Count 6.

Moving forward, plaintiffs assert they are entitled to recover upon the following alternative theories, as pleaded in Counts 1 and 4 of the first amended complaint:

**<u>Count 1</u>:** 52 U.S.C. § 20504 requires that every motor vehicle driver's license application serve as a simultaneous application to register to vote. The "motor-voter" registration form "may not require any information that duplicates information required in the driver's license portion of the form" other than a signature, and "may require only the minimum amount of information necessary to . . . enable State election officials to assess the eligibility of the applicant." 52 U.S.C. § 20504(c)(2)(B)(ii). Section 5 further mandates that motor-voter forms include the following: a statement of the criteria for eligibility, "including citizenship"; an attestation that the applicant meets those criteria; and the applicant's signature "under penalty of perjury." 52 U.S.C. § 20504(c)(2)(C). This signed attestation under penalty of perjury that the applicant meets the state's eligibility criteria, including citizenship, "is the *presumptive* minimum amount of information necessary for state election officials to carry out their eligibility-assessment and registration duties." *Fish v. Kobach*, No. 16-3147, slip op. at 5 (Oct. 19, 2016 10th Cir.). "As it pertains to the citizenship requirement, the presumption ordinarily can be rebutted (i.e., overcome) only by a factual showing that substantial numbers of noncitizens have successfully registered to vote under the NVRA's attestation requirement." *Id.* at 5-6. Because defendant fails to make this showing, Kansas' DPOC

requirement conflicts with the NVRA by requiring "more than the minimum amount of information necessary and, therefore, is preempted by the NVRA." *Id.* at 6.1.

**Count 4:** Defendant is the chief election officer of the State of Kansas, and is "responsible for coordination of State responsibilities" under 52 U.S.C. § 20509. Defendant fails in this duty.

**b.      Defenses of defendant.**

Some or all plaintiffs lack standing to bring a claim under Counts 1 and 4, because they lack an injury in fact, their claims are not traceable to the challenged action, and an order by this court would not redress their asserted injuries.  Additionally, some or all plaintiffs' claims are moot.

More specifically, defendant asserts:

**Count 1:**

Plaintiffs are not entitled to relief under Count 1 because the challenged statute is not preempted by 52 U.S.C. § 20504.  52 U.S.C. § 20504 provides that an "application" must be provided as part of an application for a State motor vehicle driver's license."  Additionally, 52 U.S.C. § 20504(b) provides that the "application portion" of the State motor vehicle driver's license application (A) may not require any information that duplicates information required in the driver's license portion of the form (other than a second signature or other information necessary under subparagraph (C)); (B) may require only the minimum amount of information necessary to--(i) prevent duplicate voter registrations; and (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process."  Kansas law complies with 52 U.S.C. § 20504 and thus is not preempted by

these provisions or any other provisions of the NVRA.  The information described by the NVRA is information provided by the applicant on the face of the form, not other documentation that a state may require the applicant to provide in addition to a completed application form.  The NVRA's reference to "minimum" information concerns the state's purpose of preventing duplicate registrations, not the purposes of assessing eligibility or effectuating the state's registration requirements.  If proof of citizenship is required by state law, then it is necessary that an applicant provide it in order for the state to "administer voter registration . . . parts of the election process."  52 U.S.C. § 20504(c)(2).

Plaintiffs' attempt to find preemption of proof-of-citizenship requirements in the NVRA is defeated by the fact that the NVRA does not expressly mention any such preemption.  The plain statement rule requires that any preemption occur by a plain statement in federal law.  The text of the NVRA does not indicate that preempting proof-of-citizenship requirements was the unmistakable intent of Congress.  Moreover, preemption is not a fact-bound inquiry that is dependent upon the specific facts of particular states.  Certain states or regulations in all states are either preempted by federal law or they are not preempted, irrespective of particular facts in those states.  To the extent that the Tenth Circuit has made preemption under the NVRA dependent upon factual findings in the State of Kansas, the Tenth Circuit's test is erroneous as a matter of law.  Assuming *arguendo* that preemption is averted by a state's factual showing that a substantial number of noncitizens have successfully registered to vote under a regime of mere attestation, Kansas will make that showing and satisfy the Tenth Circuit's test.

Plaintiffs' preemption theories are inconsistent with Supreme Court precedent.  The Supreme Court has made clear that the NVRA does not restrict other information that a state may request of applicants outside of the information written by the applicant on the application form.

The Supreme Court has also made clear that a state may deem proof of citizenship "necessary" for the state either to assess the eligibility applicants or to effectuate the requirements of its voter registration process.  Further, plaintiffs' interpretation of the NVRA would render the NVRA unconstitutional.  Article I, § 2 of the United States Constitution grants the states the authority to set and enforce voter qualifications.  Additionally, Article I, § 2 requires that the same individuals vote in both state and federal elections.  The Seventeenth Amendment likewise provides the same for elections for Senators.  Thus, plaintiffs' position violates United States Constitution because the federal government, not the State, would be setting and enforcing voter qualifications and their interpretation would cause different sets of voters to exist for state and federal elections.  Moreover, in Kansas, completing the registration process is itself a qualification for voting.  Count I also fails for the other reasons set out in the pleadings and the memoranda filed up to this point in this case in both this court and in the Tenth Circuit.

Substantial numbers of noncitizens have registered or attempted to register to vote and means less burdensome than requiring proof of citizenship have not been successful in preventing such registration.

Plaintiffs are seeking to modify their requests for relief which are not included in their Amended Complaint through the Pretrial Order.  This is improper.  Additionally, Plaintiffs are seeking relief which this Court lacks jurisdiction to grant.

**<u>Count 4:</u>**

Plaintiffs are not entitled to relief under Count 4.  52 U.S.C. § 20509 only requires a State to designate an officer or employee as the chief State election official.  The statute provides no avenue for relief against defendant.  The statute does not create any duty that plaintiffs envision.  To the extent that 52 U.S.C. § 20509 can be read as providing some form of relief to recovery

under the NVRA or creates a duty that plaintiffs envision, defendant has complied with his responsibilities under the statute.  To the extent that plaintiffs are asserting purported violations by the defendant, they were required to assert those violations in a mandatory letter under 52 U.S.C.  § 20510.  Their failure to do so deprives them of standing to now raise those issues.  Finally, to the extent that plaintiffs are presenting a new claim or seeking additional relief that was not plead in their first amended complaint, it is untimely.

Plaintiffs are seeking to modify their requests for relief which are not included in their Amended Complaint through the Pretrial Order.  This is improper.  Additionally, Plaintiffs are seeking relief which this Court lacks jurisdiction to grant.

## 5.      DAMAGES AND NON-MONETARY RELIEF REQUESTED.

Plaintiffs don't seek any damages.  Instead, plaintiffs only seek the following declaratory and injunctive relief pursuant to 52 U.S.C. § 20510(b):

- A declaration that the DPOC law and K.A.R. § 7-23-15 are invalid with respect to motor-voter registrants who have validly registered to vote in accordance with Section 5 of the NVRA and preempted by the NVRA;

- An order enjoining Defendant from enforcing the DPOC law and K.A.R. § 7-23-15 with respect to motor-voter registrants who have validly registered to vote in accordance with Section 5 of the NVRA, regardless of whether they have submitted documentary proof of citizenship;

- An order directing Defendant, pursuant to the NVRA, to register to vote and to treat as validly registered voters plaintiffs and all other similarly situated motor-voter registrants who, apart from compliance with the DPOC law, submitted a completed

and valid voter registration form, and to restore any such registrants who have been purged pursuant to K.A.R. § 7-23-15, including all people who apply to register to vote through an NVRA-covered driver's license transaction, regardless of whether it is conducted in-person or online. *See Stringer v. Pablos*, 16-cv-257-olg, ECF No. 52, at *11 (W.D. Tex. March 31, 2017).An order directing defendant to provide adequate notice to plaintiffs and all similarly situated motor-voter registrants informing them unequivocally that they are fully registered voters and need not provide any additional information in order to complete their voter registration applications, and updating all instructions to local elections workers and public education materials (printed and online) accordingly. *See* Joint Status Report 2, Sep. 29, 2016, ECF No. 225; Order, Sep. 29, 2016, ECF No. 226.

- An order directing Defendant to maintain the "Voter View" website "so that motor voter [registrants] are listed as registered to vote in the same way that other registered voters are displayed." Joint Status Report, Sep. 29, 2016, ECF No. 225; Order, Sep. 29, 2016, ECF No. 226.

- An order directing that, in counties that use paper poll books, motor voter registrants should appear in the same manner and in the same list as all other registered voters' names. *See* Joint Status Report, Sep. 29, 2016, ECF No. 225; Order, Sep. 29, 2016, ECF No. 226.

- An order directing that all motor voter registrants should be "entitled to vote using standard ballots rather than provisional ballots at polling places on Election Day or when they request advance mail-in ballots." Joint Status Report, Sep. 29, 2016, ECF No. 225; Order, Sep. 29, 2016, ECF No. 226.

- An order declaring the DPOC law invalid under the Privilege and Immunities clauses of the U.S. Constitution or, in the alternative, directing defendant to take steps to verify citizenship status for all Kansas voter registration applicants whose applications are placed on the suspense list due to the DPOC requirement, including all applicants born outside of Kansas, in the same manner that defendant Kobach works with KDHE to confirm the citizenship of suspended voters born in Kansas.

- Any other relief the court deems proper.

Plaintiffs also seek attorneys' fees and costs pursuant to 52 U.S.C. § 20510 and 42 U.S.C. § 1988.


**6.      AMENDMENTS TO PLEADINGS.**

None.

**7.      DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have completed by April 26, 2017 (see ECF No. 258).  Discovery is complete.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions or other pretrial preparations.  Although discovery may be conducted beyond the deadline for completion of discovery if all parties are in agreement to do so, under these circumstances the court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8.      MOTIONS.**

**a.      Pending Motions.**

Plaintiffs' motion for sanctions, filed May 22, 2017 (ECF No. 343).

### b.      Additional Pretrial Motions.

After the pretrial conference, plaintiffs as well as defendant intend to file motions for summary judgment, and may also file motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **July 7, 2017**.

Consistent with the current scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda must not exceed 30 pages, absent an order of the court.

### c.      Motions Regarding Expert Testimony.

Plaintiffs don't intend to rely on expert testimony for their summary judgment motion. But if defendant relies on the testimony of his expert witnesses in any summary judgment motion that he files (or in his opposition to plaintiffs' motion for summary judgment), plaintiffs intend to file *Daubert* motions to exclude the testimony of those witnesses.  If defendant relies on testimony of his expert witnesses at trial, plaintiffs may file *Daubert* motions to exclude the testimony of those witnesses.

Defendant doesn't yet know whether he'll rely on expert testimony for his motion for summary judgment.  However, to the extent plaintiffs rely on expert testimony either for summary judgment or for trial, defendant may file *Daubert* motions to exclude the testimony of those witnesses pursuant to Fed. R. Evid. 702-705.

As discussed during the pretrial conference, all *Daubert* motions pertinent to summary

judgment must be filed no later than concurrent with that party's response to the opposing party's summary judgment motion; and, if expert testimony is relied upon for the first time in a brief opposing summary judgment, then any *Daubert* motions related to same must be filed concurrent with the summary judgment movant's reply brief.  All trial-related *Daubert* motions must be filed no later than 45 days before trial, as set forth in Judge Robinson's September 14, 2016 scheduling order (ECF No. 216).

9.    **TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **March 6, 2018, at 9:00 a.m., in Kansas City, Kansas.**  This case will be tried by the court sitting without a jury.  Trial is expected to take approximately 5 days.  The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial.  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge will convene another pretrial conference (or enter a separate order) to address, among other things, the setting of deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, and proposed findings of fact and conclusions of law.

During Judge Robinson's May 10, 2017 telephone status conference with counsel, she indicated this case would be tried by seriatim with the action styled *Bednasek v. Kobach*, D. Kan. Case No. 15-9300-JAR only to the extent there is overlap, with the details of consolidation to be worked out at a later pretrial conference closer to trial (*see* ECF No. 339).  As discussed during the pretrial conference, within 5 business days of the filing of Judge Robinson's rulings on the parties' anticipated cross-motions for summary judgment, if issues remain for trial in this case,

counsel must confer and then jointly file a status report outlining their respective positions concerning how to most efficiently try *Bednasek* and this case.

IT IS SO ORDERED.

Dated June 13, 2017, at Kansas City, Kansas.


<u>James P. O'Hara</u>
James P. O'Hara
U.S. Magistrate Judge

## CERTIFICATE OF SERVICE

Counsel are hereby notified that, unless the undersigned Magistrate Judge receives objections, corrections, or revisions to the foregoing proposed pretrial order by **June 12, 2017,** it will be signed and filed.  If revisions are requested, counsel shall state in writing on a separate document in letter form the requested revision, identifying the paragraph number and the reason for such revision, and serve on opposing counsel and to the Magistrate Judge.  Counsel shall confer about all such revisions <u>before</u> communicating them to the Magistrate Judge.  Counsel are encouraged (but not required) to submit jointly any requests for revisions.  At a minimum, written requests for revisions shall state whether opposing counsel consents or objects, and summarize the bases of all objections.  All such requests for revisions shall be submitted via e-mail to:

*ksd_ohara_chambers@ksd.uscourts.gov*

This proposed pretrial order was served on June 5, 2017, on the following:

| | |
|---|---|
| Dale E. Ho | dale.ho@aclu.org |
| Douglas D. Bonney | dbonney@aclukansas.org |
| Sophia Lin Lakin | slakin@aclu.org |
| Angela M. Liu | angela.liu@dechert.com |
| Garrett R. Roe | garrett.robert.roe@gmail.com |
| Kris Kobach | kris.kobach@ks.gov |
| Bethany J. Lee | bethany.lee@sos.ks.gov |

<u>s/ James P. O'Hara</u>
James P. O'Hara
U.S. Magistrate Judge