IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al.,

Plaintiffs,

v.                                                          Case No. 16-2105-JAR

KRIS KOBACH, in his official capacity
as Secretary of State for the State of Kansas,

Defendant.

## ORDER

In this voting-rights case challenging the Kansas documentary proof of citizenship

("DPOC") law,[1] plaintiffs have moved for the entry of sanctions against defendant, Kansas

Secretary of State Kris Kobach, for his conduct surrounding a dispute over the production

of two documents (ECF No. 343). Plaintiffs seek three specific forms of relief: (1) their

attorneys' fees incurred in connection with filing a motion to compel the documents, (2)

removal of defendant's "confidential" designation on the documents, and (3) the re-opening

of discovery for the limited purpose of deposing defendant about the documents. For the

reasons discussed herein, the court grants plaintiffs' request for sanctions, albeit not in the

form plaintiffs seek, grants the request for a limited deposition of defendant, and denies the

request to remove the confidentiality designations.

---

[1]Kan. Stat. Ann. § 25-2309(l) (requiring voter applicants to provide proof of United
States citizenship when they simultaneously apply for or renew a driver's license).

## I. Background

Plaintiffs allege Kansas's DPOC law, as enforced, violates § 5 of the National Voter Registration Act ("NVRA").[2] In May 2016, the presiding U.S. District Judge, Julie A. Robinson, entered a preliminary injunction barring defendant's enforcement of the law until this case can be decided on the merits.[3] Defendant challenged the injunction in an interlocutory appeal to the Court of Appeals for the Tenth Circuit. In an opinion affirming Judge Robinson's ruling, the Tenth Circuit clarified the standards applicable to § 5 claims.[4] This clarification led the court to permit limited additional discovery.[5]

Plaintiffs then served a discovery request for "all documents and communications regarding potential amendments or changes to the National Voter Registration Act affecting how officials may assess the eligibility of a voter registration applicant."[6] The parties identified two documents arguably responsive to the request: (1) a draft of a possible future amendment to the NVRA that was created by defendant and shared by him with members

---

[2]52 U.S.C. § 20504.

[3]*Fish v. Kobach*, 189 F. Supp. 3d 1107 (D. Kan. 2016).

[4]*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016).

[5]ECF Nos. 254 at 2-4; 258 at 2-3.

[6]ECF No. 273 at 4; ECF No. 273-6 at 2. The request as originally written sought, "All documents and communications related to draft amendments to the NVRA, including but not limited to any amendments related to the purported purposes of preventing, deterring and/or identifying noncitizen registrations and/or attempted registrations, registration fraud, and/or voter fraud." ECF No. 273-2. But the request was modified in the course of counsel's meet-and-confer discussions.

of the Office of the Kansas Secretary of State ("the draft amendment"); and (2) a document created by defendant to share with then President-Elect Donald Trump, referencing a possible amendment to the NVRA, which was photographed by the Associated Press as defendant was walking into a meeting with Mr. Trump ("the photographed document"). Defendant refused to produce these documents, asserting that they are beyond the scope of re-opened discovery, do not seek relevant information, and are protected by the attorney-client, deliberative-process, and executive privileges. Plaintiffs filed a motion to compel.[7]

On April 5, 2017, the undersigned U.S. Magistrate Judge, James P. O'Hara, issued an order overruling defendant's scope-based objection and requiring *in camera* submission of the documents to facilitate the court's rulings on the remaining objections.[8] After reviewing the documents, the undersigned issued a second order on April 17, 2017, ruling that parts of the documents are unquestionably relevant and that defendant had not demonstrated a privilege protects their disclosure.[9] Defendant was directed to produce redacted versions of the draft amendment and the photographed document to plaintiffs.

Defendant filed a motion to stay production of the documents pending review of the undersigned's order by Judge Robinson. On April 23, 2017, the undersigned granted the stay request.[10] Thereafter, Judge Robinson denied defendant's motion for review and ordered

---

[7]ECF No. 272.

[8]ECF No. 318.

[9]ECF No. 320.

[10]ECF No. 325.

defendant produce the documents in compliance with the undersigned's order.[11]  When

defendant produced the documents to plaintiffs, the documents bore the designation

"CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."  Plaintiffs requested

defendant reproduce the documents with the designation removed, but defendant refused.

In the instant motion, plaintiffs argue defendant should be sanctioned "for his failure

to comply with his discovery obligations."[12]  Plaintiffs assert defendant delayed production

of the documents by asserting frivolous arguments and taking unsupportable positions.  They

seek their attorneys' fees underlying their motion to compel and related filings.  They also

ask the court to order defendant to produce the documents without the confidentiality

designation.  Finally, they seek the reopening of discovery so that they may depose defendant

about the two documents.

## II.     Monetary Sanctions

Plaintiffs ask the court to sanction defendant for his conduct in challenging production

of the two documents that were the subject of plaintiffs' motion to compel.  Plaintiffs argue,

"Defendant's misleading conduct has not only unnecessarily prolonged this discovery dispute

past the close of discovery, [] it has raised basic questions about the integrity of Defendant's

representations to Plaintiffs and to the Court, and merits sanctions."[13]  The court agrees that

defendant's deceptive conduct and lack of candor warrant the imposition of sanctions.

---

[11]ECF No. 338.

[12]ECF No. 343 at 1.

[13]*Id.* at 8.

As plaintiffs note, the court has the "inherent power to impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter frivolous filings."[14] "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'"[15] Under this authority, a court may assess a sanction "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[16] The court's "inherent power to impose sanctions for . . . bad-faith conduct" exists even when that conduct could also be sanctioned by the Federal Rules of Civil Procedure, and it further exists "to fill in the interstices" left by those rules.[17]

As mentioned above, plaintiffs served defendant a discovery request for "all documents and communications regarding potential amendments or changes to the National

---

[14]*Resolution Trust Co. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995), citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991) (recognizing the inherent power of courts to sanction conduct abusive of the judicial process and rejecting arguments that statutory sanctioning powers displace this inherent power); *see also Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015) ("In the words of Justice Scalia, '[s]ome elements of [an Article III court's] inherent authority are so essential to the judicial Power ... that they are indefeasible, among which is a court's ability to enter orders protecting the integrity of its proceedings.'" (internal citations omitted)); *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) ("To deter frivolous and abusive litigation and promote justice and judicial efficiency, the federal courts are empowered to impose monetary sanctions, by statutes and the rules of civil and appellate procedure as well as their inherent right to manage their own proceedings.").

[15]*Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (quoting *Chambers,* 501 U.S. at 44-45).

[16]*Chambers,* 501 U.S. at 45 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)).

[17]*Id.* at 46-47.

Voter Registration Act affecting how officials may assess the eligibility of a voter registration applicant."[18]  In an email accompanying the request, plaintiffs' counsel noted, "a document is responsive whether or not it is connected with an actual draft NVRA amendment.  Documents that simply discuss the option or possibility of amending the NVRA should be produced."[19]  In multiple meet-and-confer discussions, the parties identified both the draft amendment and the photographed document, and discussed plaintiffs' demand that defendant produce them in response to this request.  Defendant ultimately informed plaintiffs that he would not produce the documents because the request was beyond the scope of re-opened discovery and, with respect to the photographed document, was "designed to harass" rather than obtain relevant documents.[20]  Defendant further asserted the photographed document was subject to the executive privilege, and not in the custody or control of the Office of the Kansas Secretary of State.[21]

Up to this point, the court finds nothing unscrupulous in defendant's positions.[22] Indeed, the court has recognized that whether the request was within the scope of reopened

---

[18]ECF No. 273-6 at 2.

[19]*Id.*

[20]ECF No. 273-7 at 2.

[21]*Id.*

[22]The court rejects plaintiffs' suggestion that defendant should have added the photographed document to his privilege log.  This would have been an unnecessary technical step when both sides were well aware of the document being withheld and the circumstances surrounding it.

discovery was a "very close call."[23] And, although the court ultimately rejected defendant's relevance and privilege arguments, defendant's objections on those grounds were substantially justified.[24] A discovery response or objection is "substantially justified" "if it is 'justified to a degree that could satisfy a reasonable person' or if 'reasonable people could differ as to [its] appropriateness'"[25] Here, defendant had a reasonable basis in law and fact to object that the documents were not relevant to the limited issues for which discovery was reopened, a question related to the issue of scope. Likewise, defendant raised plausible privilege arguments that the court did not dismiss out of hand, but instead spent ten pages analyzing.[26] Because defendant's objections were substantially justified, the court will not (and may not) impose sanctions under Fed. R. Civ. P. 37(a)(5).[27]

Defendant's positions began to go awry, however, after plaintiffs filed a motion to compel production of the two documents.[28] In response to the motion, defendant made patently misleading representations to the court about the documents, which at the time had

---

[23]ECF No. 318 at 8.

[24]Plaintiffs' statement in their motion that the court found the objections "were not substantially justified" is materially inaccurate. ECF No. 343 at 9.

[25]*Linnebur v. United Tele. Ass'n*, No. 10-1379, 2012 WL 1183073, at *1 (D. Kan. Apr. 9, 2012) (citing cases); *see also Hamner v. Assoc. Wholesale Grocers, Inc.*, No. 07-2314, 2008 WL 917900, at *2 (D. Kan. March 31, 2008) (internal citations omitted).

[26]Plaintiffs concede, "Defendant may have been entitled to object to producing documents on the grounds of relevance and privilege." ECF No. 343 at 10.

[27]Plaintiffs mentioned Rule 37 as one basis for sanctions.

[28]ECF No. 272.

not been produced to either the court or plaintiffs, such that the court was required to take

defendant at his word. For example, in discussing the text of the draft amendment, defendant

stated, "that text does not propose to 'amend or alter' an 'eligibility-assessment procedures

[sic] mandated by the NVRA.'"[29] A review of the draft amendment, however, indicates that

the text proposed amending the NVRA's provisions governing the type of information a state

could require voter-registration applicants provide to enable the state to assess the applicant's

eligibility.

> In another example, defendant's response brief states,

> Plaintiffs theorize that '[A]ny alternative methods proposed by Defendant to
> alter the assessment of voter eligibility under the NVRA go directly to the
> second prong of the Tenth Circuit's analysis.' Pls. Memo. at 7. Plaintiffs
> suppose that, 'efforts by Defendant to seek alternative means of assessing
> voter qualifications by amending the NVRA would suggest that a DPOC
> requirement is not the least restrictive method of verifying eligibility.' Pls.
> Memo. at 7. First, had Plaintiffs actually sought the documents that they now
> claim they are seeking, Defendant would have responded that *no such
> documents exist.*[30]

This paragraph gives the strong impression that neither of the two at-issue documents relate

to proposals by defendant to amend the NVRA's eligibility-assessment provisions. Upon *in

camera* review of the documents, the undersigned learned this is clearly not the case.

> The court cannot say that defendant flat-out lied in representing the content of the

disputed documents. In his response to the motion for sanctions, defendant attempts to

---

[29]ECF doc. 288 at 18.

[30]*Id.* at 17 (emphasis added).

defend his representations by thinly parsing the wording plaintiffs allegedly used. He states that the NVRA did not "mandate" attestation (but, actually, plaintiffs never said it did) and that he did not make "efforts" to amend the NVRA (which is certainly debatable). The fact remains, however, as the court noted in its order granting plaintiffs' motion to compel, that defendant's statements "can be construed as word-play meant to present a materially inaccurate picture of the documents."[31] The court agrees with plaintiffs that it would have been obvious to any reasonable attorney that a request for "all documents and communications regarding potential amendments or changes to the [NVRA] affecting how officials may assess the eligibility of a voter registration applicant" would encompass draft language intended to alter core provisions of the NVRA and bear on defendant's efforts to alter those provisions.

As officers of the court, defense counsel have a duty of candor to the court and to opposing counsel. Justice requires that all involved in our legal system work to ensure that a true and accurate picture of the facts is presented to the court. This means that parties and their attorneys must respond to discovery fairly and accurately, and that counsel assert only arguments that are supported by facts. "Most attorneys, of course, try to convey evidence in the best possible light for their clients. But there is a difference between putting evidence in the best possible light and blatantly misstating the evidence."[32] When counsel's false

---

[31]ECF No. 320 at 7 n.22.

[32]*Maiteki v. Marten Transp., Ltd.*, No. 12-cv-2021, 2016 WL 3878502, at *4 (D. Colo. July 18, 2016) (awarding sanctions against attorney under 28 U.S.C. § 1927).

references in a brief indicate "that he has been either cavalier in regard to his approach to this case or bent upon misleading the court," sanctions are appropriate.[33]

To deter defense counsel and other members of the bar from deliberately attempting to mislead the court in the future, and to somewhat compensate the court for the "costs imposed on the judicial system" through the undersigned's time spent discovering defendant's misrepresentations and bringing the same to light,[34] the court fines defendant $1,000, to be payable to the court.[35]  Defense counsel shall submit the fine by **July 21, 2017**.

On a final note, the undersigned reiterates the sentiment expressed in his April 17, 2017 order.  Although conduct resulting in the imposition of sanctions typically has a negative, but short-term, financial impact on counsel or his client, it usually has a much more sustained impact on the reputation of counsel—both among judicial officers and the practicing bar.  The court urges defense counsel to garner good reputations for themselves by taking care in the future to act honestly and graciously towards the court and opposing

---

[33]*Herzfeld & Stern v. Blair*, 769 F.2d 645, 647 (10th Cir. 1985).

[34]*Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995) (upholding sanction of fine paid to the court for "time [court] spent on the discovery dispute, . . . under the court's inherent power to impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter frivolous filings").

[35]*See Mellot v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 889 (10th Cir. 2012) (ruling, "an inherent-power sanction may be payable to the court, and it may take account of the court's inconvenience and the waste of judicial resources"); *In re Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984) (en banc) ("As a sanction message to the lawyers involved, as well as to the bar generally, $175 imposed on each lawyer is certainly modest enough to fall well within the realm of the trial court's broad discretion.").  When defendant submits this payment to the Clerk's Office, any check shall be made payable to "Clerk, U.S. District Court."

counsel.

## III.    Confidentiality Designation

Next, plaintiffs object that defendant designated the two produced documents "confidential" under the protective order, and ask the court to order defendant to re-produce the documents with the designation removed.  The protective order states, in relevant part,

> **2.    Definition of Confidential Information.**  As used in this Order, "Confidential Information" is defined as information that the producing party designated in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use is *restricted by statute or could potentially cause harm to the interests of the disclosing party or nonparties*.  For purposes of this Order, [] the Parties will limit their designation of "Confidential Information" to the following categories of information or documents . . .

>> (c) Information that is exempt from disclosure under the Kansas Open Records Act.[36]

Thus, to support his confidentiality designation on each document, defendant must prove[37] the document's disclosure is either restricted by statute or could potentially cause harm, and, in this instance, that the document is exempt from disclosure under the Kansas Open Records Act ("KORA").[38]  Because defendant has satisfied this burden, the court finds the documents subject to the protective order and denies plaintiffs' request to order the confidentiality

---

[36]ECF No. 55 at 2-3 (emphasis added).

[37]*See id.* at 7-8 ("The burden of proving the necessity of a confidentiality designation remains with the party asserting confidentiality.").

[38]Plaintiffs do not dispute the documents were maintained in a confidential manner, as required by the main paragraph; and defendant does not suggest the documents fall under any sub-section other than (c).

designation removed.[39]

Defendant asserts disclosure of the two documents is restricted by Kansas statute because they are exempt from disclosure under KORA.  KORA provides that records in the possession of a public agency, such as the Office of the Kansas Secretary of State,[40] are subject to public disclosure unless they fall under an exception set forth in the Act.[41]

_____

[39]The court squarely rejects plaintiffs' assertion that the undersigned already deemed the documents not protected by the protective order when the undersigned issued a short stay of his order granting plaintiffs' motion to compel while review of that order was pending before Judge Robinson.  ECF No. 343 at 12-13 (citing ECF No. 325 at 3).  In the stay order, the undersigned found that immediate disclosure of the documents to plaintiffs would effectively waive defendant's privilege arguments pending review because, "Unlike in *In re Syngenta*, a case plaintiffs cite, there is no protective order in this case that would limit disclosure of defendant's documents to plaintiffs' 'outside legal counsel only.'" ECF No. 325 at 3.  The undersigned did not, as plaintiffs state, rule that there was no protective order in this case under which the documents could be produced to plaintiffs with a confidentiality designation to protect them from disclosure beyond the parties in this case.  This separate issue has not previously been litigated or decided by the court, and plaintiffs' argument that it is "law of the case" is frivolous.

[40]The court rejects any attempt by plaintiffs to argue the photographed document is not in the possession of the Office of the Kansas Secretary of State.  Plaintiffs sought, and obtained, the photographed document from that office; they did not subpoena the photographed document directly from Secretary Kobach in his capacity as something other than a party to this case and a representative of the Office.  In any event, at this juncture, the document certainly is in the possession of the Office if the Kansas Secretary of State, as that office produced it to the court for *in camera* review.

[41]*See* Kan. Stat. Ann. 45-216(a) ("It is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act, and this act shall be liberally construed and applied to promote such policy."); Kan. Stat. Ann. 45-217(f)(1) ("'Public agency' means the state or any political or taxing subdivision of the state or any office, agency or instrumentality thereof, or any other entity receiving or expending and supported in whole or in part by the public funds appropriated by the state or by public funds of any political or taxing subdivision of the state."); Kan. Stat. Ann. 45-217(g)(1) ("'Public record' means any recorded information, regardless of form, characteristics or location, which is made, maintained or kept by or is in the possession of:

KORA's exceptions are to be "narrowly interpreted," with the public agency opposing disclosure bearing the burden of proving the applicability of an exception.[42] But where an exception is not ambiguous, courts should not "resort to the rule of liberal construction."[43]

Defendant contends the documents fall under the "preliminary working papers exception,"[44] KORA section (a)(20), which exempts from disclosure "[n]otes, preliminary drafts, research data in the process of analysis, unfunded grant proposals, memoranda, recommendations or other records in which opinions are expressed or policies or actions are proposed."[45] The Supreme Court of Kansas has described this exception as "self-explanatory."[46] Under it, "records expressing opinions or containing proposed policies or actions need not be disclosed."[47]

Defendant aptly proves the applicability of the section (a)(20) exception to the two

---

(A) Any public agency.").

[42]*Telegram Publ'g Co. v. Kan. Dep't of Transp.*, 69 P.3d 578, 583 (Kan. 2003).

[43]*Salina Journal v. Brownback*, 394 P.3d 134, 144 (Kan. Ct. App. 2017).

[44]*See id.* at 138 (referring to Kan. Stat. Ann. 45-221(a)(20) as the "preliminary working papers exception").

[45]Kan. Stat. Ann. 45-221(a)(20) ("Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose: . . . Notes, preliminary drafts, research data in the process of analysis, unfunded grant proposals, memoranda, recommendations or other records in which opinions are expressed or policies or actions are proposed, except that this exemption shall not apply when such records are publicly cited or identified in an open meeting or in an agenda of an open meeting.").

[46]*Wichita Eagle and Beacon Pub. Co. v. Simmons*, 50 P.3d 66, 83 (Kan. 2002).

[47]*Id.*

documents at issue. First, the draft amendment has been shown to be a preliminary, non-final draft of amendments the Office of the Secretary of State was discussing internally with the intent of potentially suggesting the changes to Congress.[48]   As such, it falls under the "preliminary draft" or "recommendations" language of section (a)(20).   Second, the photographed document is similarly a memorandum containing a proposed policy or action, and it likewise falls under the plain language of section (a)(20).   It is of no matter that the document was created by Secretary of State Kobach in his capacity as an advisor to the President-Elect and was not created by the Office of the Kansas Secretary of State because, as noted above, it falls under KORA's reach as "information . . . in the possession of" a state agency.[49]

The court rejects plaintiffs' argument that the documents cannot meet the section (a)(20) exception because defendant does not have authority to introduce legislation as a member of Congress.   Quite simply, section (a)(20), by its terms, encompasses records beyond those involved in the formal "legislative process."[50]   The court also flatly rejects plaintiffs' statement that the undersigned "confirmed" in the orders ruling on plaintiffs'

---

[48]*See* ECF No. 320 at 12-13.

[49]*Supra* notes 40 & 41.

[50]ECF No. 343 at 16.  *See* Kan Att'y Gen. Op. 2013-5, 2013 WL 633937 (2013) (advising draft minutes of agency meetings fall under the section (a)(20) exception). Plaintiffs' argument, improperly raised for the first time in their reply brief, that the section (a)(2) exception applies *only* to internal agency discussions of policy that "pertain to the agency's core function," ECF No. 354 at 16, is not supported by the language of the statute or the attorney general opinions plaintiffs cite, and the court declines to adopt that position.

motion to compel that the two documents are not "predecisional or deliberative."[51] The orders did nothing of the sort. Rather, the court held defendant failed to meet his burden of demonstrating the applicability of the *federal* deliberative process privilege, and expressly noted the court was "<u>not</u> ruling that some manner of deliberative-process privilege" did not apply, as "[d]efendant never directly asserted a state-agency privilege."[52]

Plaintiffs next argue that even if the two documents are exempt from disclosure under KORA, defendant may not designate them "confidential" unless he also makes a particularized showing that public disclosure of the documents, now in their redacted form, would harm the interests of the disclosing party or nonparties as required by paragraph 2 of the protective order.[53] But plaintiffs misstate the order's standard. Paragraph 2 actually states that the producing party may designate a document confidential "because its disclosure and use . . . *could potentially cause harm to the interests* of the disclosing party or nonparties."[54] And, as noted above, this basis for asserting confidentiality is in the *alternative* to showing that disclosure is restricted by statute, which the court has found satisfied. Were defendant required to satisfy this additional standard, however, the court would find he met his burden. The court accepts defendant's reasoning that his interests could potentially be harmed by the "chilling effect" public disclosure of the documents could

---

[51]ECF No. 343 at 15.

[52]ECF No. 320 at 13 n.39 (emphasis in original).

[53]ECF No. 343 at 16–17.

[54]ECF No. 55 at 2–3.

bring. Specifically, their public disclosure would make it less likely that defendant would, in the future, seek or give candid advice on matters of public importance.[55]

Finally, plaintiffs argue that even if the documents are exempt from disclosure under Kansas *state* law, "that would not render them confidential for purposes of the Protective Order" in this *federal question* case. This argument is odd for two reasons. First, in support, plaintiffs quote caselaw discussing *privilege* assertions in federal courts—an issue that considers whether a document is discoverable at all, not the wholly separate issue of whether a discoverable document is shielded by a protective order from disclosure beyond the confines of the litigation. Second, the protective order in this case specifically looks to Kansas state law in defining the limits on confidentiality. Plaintiffs' argument in this regard is rejected.

The court concludes that the protective order governs the dissemination of the documents at issue. The protective order appears to have been fairly negotiated by the parties over multiple discussions.[56] Plaintiffs do not suggest otherwise. Nor do plaintiffs suggest any prejudice they would suffer if the protective order is enforced. The court will not now permit plaintiffs to change the terms to which they agreed, simply to satisfy

---

[55]For this reason, the court also rejects plaintiffs' argument, inappropriately advanced for the first time in their reply brief, that the Fed. R. Civ. P. 26(c) "good cause" standard has not been met.

[56]*See* ECF Nos. 52 at 1, 53 at 46-53, 55.

whatever political interests plaintiffs may have in broad dissemination of the documents.[57]

To be clear, however, as the undersigned explained in detail at the status conference on the protective order, documents designated confidential under the protective order are <u>not</u> necessarily (or even likely) subject to filing under seal when a party relies upon them in support of a motion (such as the upcoming summary judgment motions the parties anticipate filing).[58] "The fact that the exhibits are 'confidential' within the meaning of the parties' protective order has no bearing on whether those exhibits should be sealed in the record."[59] The disclosure analysis applicable to protective orders "generally balances the need for discovery against the need for confidentiality. But once such discovery material is filed with the court, it becomes a judicial record and the standard that applies when a party wants to keep such material under seal is much higher."[60] "Courts have long recognized a

---

[57]*See* ECF No. 53 at 90 ("First, the basic purpose of entering a protective order is to facilitate, not hinder, discovery. So it would allow folks who may have legitimate concerns about the sensitivity or confidentiality of certain documents to designate them as confidential and still produce them to the other side under the order, mindful that they're not going to be widely disseminated later on.").

[58]*See id.* at 91 ("[O]ur general operating premise is that anything that is relevant to a filing with the court is open to the public. The public has a right to see this stuff absent somebody being able to clearly demonstrate why it shouldn't be in public view and why the public's right to know is outweighed. And, hence, stipulations to seal or conclusory statements about the need to seal are not going to cut it. So be mindful of that as you stamp things as confidential and certainly when you seek to submit something to the Court under seal."); *see also* ECF No. 60 (ruling that marking documents "confidential" under the protective order is "insufficient" to justify filing them under seal).

[59]*New Jersey v. Sprint Corp.*, No. 03-2071, 2010 WL 5416837, at *2 (D. Kan. Dec. 17, 2010).

[60]*Id.* (internal quotations omitted).

common-law right of access to judicial records."[61]  "This right derives from the public's interest in understanding disputes that are presented to a public forum for resolution and is intended to assure that the courts are fairly run and judges are honest."[62]  Thus, a "strong presumption" exists that judicial records will not be sealed.[63]  A party seeking to overcome this presumption "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process."[64]  In weighing the interests, the court "works from the premise that the public's interests 'are presumptively paramount against those advanced by the parties.'"[65]  The parties are urged to keep these standards in mind should they seek to file a one of the documents at issue (or, for that matter, any document) under seal as an exhibit to the upcoming dispositive-motion briefings.

## IV.    Deposing Defendant

Finally, plaintiffs ask the court to reopen discovery for the limited purpose of allowing them to depose defendant about the draft amendment and the photographed document. Specifically, plaintiffs  state they would like to depose Secretary Kobach about "when and

---

[61]*Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citations omitted).

[62]*Gambrell v. Weber Carpet, Inc.*, No. 10-2131, 2011 WL 3518172, at *1 (D. Kan. Aug. 11, 2011) (quotations and citations omitted).

[63]*Mann*, 477 F.3d at 1149.

[64]*Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011).

[65]*Alewel v. Dex One Serv., Inc.*, No. 13-2312, 2013 WL 6858504, at *4 (D. Kan. Dec. 30, 2013) (quoting *Helm*, 656 F.3d at 1292); *see also* ECF No. 60 at 1 ("In exercising this discretion, the court weighs the interests of the public, which are presumptively paramount, against those advanced by the parties." (internal modifications and citations omitted)).

why these documents were created, and by whom; the process that led to their creation; with whom they were shared, if anyone; how they were used or what information they relied upon; and other issues related to the responsive documents."[66]  Under the scheduling order, the discovery period ended April 26, 2017.[67]  The court, however, may reopen discovery in its sound discretion.[68]

Defendant does not oppose reopening discovery for the limited purpose of allowing plaintiffs to gain information about the draft amendment and the photographed document through *written* interrogatories or requests for admission, but asserts deposing defendant is inappropriate for two separate reasons: he is counsel of record and is a high-ranking government official.  Because the court finds defendant is the only person with direct knowledge to answer certain questions about the documents and that a short deposition would be less intrusive than written discovery in this particular instance, plaintiffs' request is granted.

Defendant correctly notes that, as a general matter, courts disfavor permitting the deposition of opposing counsel.  "This district . . . has recognized the potential for abuse in deposing an opponent's attorney by inviting 'delay, disruption of the case, harassment, and

---

[66]ECF No. 343 at 18.

[67]ECF No. 353 at 29 (citing Amended Scheduling Order, ECF No. 258).

[68]*Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

unnecessary distractions into collateral matters.'"[69] As a result, courts have applied a

heightened standard, set forth in *Shelton v. American Motors Corp.*,[70] in evaluating requests

to depose an opposing party's attorney.[71] Significantly, however, when the attorney whose

deposition is sought is a named party in the lawsuit with personal knowledge of relevant facts

underlying the case, courts have found the *Shelton* criteria inapplicable and permit the

deposition to go forward on that basis.[72] The rationale for the heightened standard simply

does not apply to deposition topics regarding the attorney's role as a fact witness, rather than

---

[69]*Fugett v. Sec. Transp. Servs., Inc.*, No. 14-2291, 2015 WL 419716, at *4 (D. Kan. Feb. 2, 2015) (quoting *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996)).

[70]805 F.2d 1323 (8th Cir. 1986). "The *Shelton* court held that depositions of opposing counsel should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Boughton v. Cotter Corp.*, 65 F.3d 823, 829-30 (10th Cir. 1995).

[71]*See DeWitt v. SW Bell Tel. Co.*, No. 12-2605, 2014 WL 695744, at *6 (D. Kan. Feb. 24, 2014); *Buth v. AAA Allied Grp., Inc.,* No. 12-1223, 2013 WL 1308543, at *1 (D. Kan. Mar. 28, 2013).

[72]*Perez v. Alegria*, No. 15-mc-401, 2015 WL 4744487, at * 4 (D. Kan. June 24, 2015) (rejecting blanket attorney-client privilege objection to deposition of opposing counsel who was also a member of the LLC operating two restaurants that were the subject of the wage-and-hour case); *Fugett*, 2015 WL 419716, at *4 (permitting deposition of counsel of record listed as a witness on initial disclosures where description of proposed testimony listed factual occurrences and not legal advice); *Kannaday v. Ball*, No 12–2742, 2013 WL 3820013, at *3 (D. Kan. July 24, 2013) (same); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249-50 (D. Kan. 1995) (refusing to limit scope of counsel's deposition where counsel had "personal knowledge of the underlying facts which are related to the action," was "directly involved in events" relevant to the issues in dispute, and who, "but for his status as an attorney in th[e] action, would in all respects be considered as a witness from whom discovery would be appropriate").

the attorney's role in representing the client.[73]

Here, the information plaintiffs seek about the documents relates to Secretary Kobach's actions as a *party* to this case, not to his role as an *attorney* of record. The record indicates Secretary Kobach is the creator of the documents. Only he can explain his thought processes concerning their creation and his subsequent related actions—such as with whom he shared them and why. The factual information sought, then, is not why defendant took certain steps as counsel of record in this case, but rather as the state's chief election official (as pertains to the draft document) and as an advisor to the President-Elect (as pertains to the photographed document). It cannot be disputed that the information Secretary Kobach may have about the documents could reasonably lead to the discovery of admissible evidence, such as evidence bearing on whether defendant "sought to amend the NVRA to alleviate defendant's burdens under § 5."[74] Further, plaintiffs have affirmatively represented that they do not intend to inquire about matters protected by attorney-client privilege or work product. "The court is unwilling to preclude plaintiff[s] from discovery of facts which may be relevant

_____

[73]*Fugett*, 2015 WL 419716, at *4; *Kannaday*, 2013 WL 3820013, at *3. *See also U.S. v. Philip Morris Inc.*, 209 F.R.D. 13, 16-18 (D.D.C. 2002) (holding *Shelton* did not bar the deposition of general counsel regarding non-legal, business decisions because such topics were not privileged and would not reveal litigation strategy in the pending case).

[74]ECF doc. 320 at 7-8 ("[B]oth documents contain exactly the type of information contemplated by the court as relevant. To be clear, neither of these documents conclusively proves defendant sought to amend the NVRA to alleviate defendant's burdens under § 5 as interpreted by the Tenth Circuit in October 2016. But, at a minimum, both "bear on" (and reasonably could lead to other information bearing on) that question and, therefore, on whether defendant can meet the current standards that will be determinative of plaintiffs' preemption claim in this case.").

in this case simply because defendant has chosen [Secretary Kobach] to represent it as counsel in this matter notwithstanding his personal knowledge of the underlying facts which are related to the action."[75]  The court declines to protect defendant from the limited deposition requested  based on his status as attorney of record.

Courts also limit the circumstances under which senior government officials may be deposed.[76]  "[A]s a general rule, courts have held that depositions of high-ranking government officials should not be a routine part of litigation unless the party seeking the deposition can demonstrate that there is some reason to believe that it will produce or lead to admissible evidence."[77]  When the official is shown to have exclusive first-hand knowledge directly relevant to the claims being litigated, this standard is met.[78]  As noted directly above, plaintiffs have satisfied this standard with respect to Secretary Kobach and the two particular documents currently at issue.

The next consideration is whether a deposition, rather than written discovery, about

---

[75]*United Phosphorus*, 164 F.R.D. at 250.

[76]Plaintiffs "acknowledge that Defendant is a senior state official and that depositions of agency heads are typically disfavored."  ECF No. 354 at 19.

[77]*Estate of Turnbow v. Ogden City*, No. 1:07CV114, 2008 WL: 2004328, at *2 (D. Utah May 9, 2008) (citing *Oliveri v. Rodriguez*, 122 F.3d 406, 409-10 (7th Cir. 1997) and *In re Office of Inspector Gen. R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991)).

[78]*See id.*; *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated . . . where it is shown that other persons cannot provide the necessary information.").

the two documents is the most appropriate course of action. Given the posture[79] and history of this litigation, the undersigned concludes that a deposition is the most effective and efficient means of allowing plaintiffs to get the answers they seek. As opposed to the time that would be required for the parties to draft and respond to interrogatories, and the potential motion practice that could arise from the parsing of language and over the validity of objections, the court believes proceeding with a short deposition of Secretary Kobach is most consistent with the mandate of Fed. R. Civ. P. 1 that the rules of procedure be construed in a way that leads to the "just, speedy, and inexpensive determination of every action." A deposition also has the advantage of allowing for immediate follow-up questions by plaintiffs' counsel.

Accordingly, plaintiffs are permitted to take the deposition of Secretary Kobach with respect to non-privileged information and evidence pertaining to the draft amendment and the photographed document. The deposition will be held on **July 5, 2017, at 10:00 a.m.** in Room 211 of the United States Court House, 500 State Avenue, Kansas City, Kansas.[80] The undersigned will preside over the deposition and contemporaneously resolve any disputes that arise. The deposition is limited to sixty minutes of testimony on direct examination. As agreed to by plaintiffs,[81] all testimony at the deposition will be subject to the confidentiality

---

[79]Plaintiffs' deadline to file a motion for summary judgment is July 7, 2017. ECF Nos. 350 & 352.

[80]A court reporter will not be provided by the court. The responsibility for ensuring the recording of the deposition remains with plaintiffs.

[81]ECF No. 354 at 22.

23

provisions of the protective order (i.e., the deposition will not be open to the public).[82]

IT IS THEREFORE ORDERED that plaintiffs' motion for sanctions and other forms of relief is granted in part and denied in part.

Dated June 23, 2017, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[82]As discussed above, this protection doesn't indicate that the testimony is likely to be sealed if any party later seeks to file it in support of a dispositive motion.