IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al.,

     Plaintiffs,

     v.                                   Case No. 16-2105-JAR-JPO

KRIS KOBACH, Kansas Secretary of State,

     Defendant.

MEMORANDUM AND ORDER

This case is before the Court on Defendant Kris Kobach's Rule 72(a) Motion of Judge

O'Hara's June 23, 2017, Order (Doc. 362),[1] filed on July 5, 2017.  The briefing deadlines for this

motion were expedited to facilitate a prompt ruling before the scheduled deposition of Secretary

Kobach on August 3, 2017.  The matter is now fully briefed and the Court is prepared to rule.

As described more fully below, Defendant's motion for review is denied.

I.      Background

The individual Plaintiffs in this case are United States citizens who attempted to register

to vote at the time they applied for a Kansas driver's license.  Under a 2011 Kansas

Documentary Proof of Citizenship ("DPOC") law, Plaintiffs' voter registration applications were

deemed "incomplete," and under a 2015 regulation passed by Kansas Secretary of State Kris

Kobach, some of these applications were cancelled in the Kansas voter registration database.  On

May 17, 2016, the Court issued an extensive Memorandum and Order granting in part Plaintiffs'

motion for a preliminary injunction barring enforcement of the Kansas DPOC law until this case

---

[1] Although the title of Defendant's motion only references the June 23 Order, the body of the motion, and the title of the memorandum in support make clear that Defendant also objects to Judge O'Hara's July 5, 2017 Order denying his motion for reconsideration (Doc. 361).

could be decided on the merits.[2]  The order was effective on June 14, 2016.[3]  The Tenth Circuit

affirmed that ruling on October 19, 2016, in an extensive opinion.[4]

Discovery had completed in June 2016, but because the Tenth Circuit's comprehensive

opinion clarified the standards that apply to Plaintiffs' claim under § 5 of the National Voter

Registration Act ("NVRA"), this Court granted Defendant's motion to reopen discovery.  Based

on the Tenth Circuit's opinion, the undersigned and presiding United States Magistrate Judge

James P. O'Hara permitted additional discovery on two issues:

> (1) whether a substantial number of noncitizens have successfully
> registered to vote in Kansas under the NVRA's attestation-of-
> citizenship requirement (showing that attestation falls below the
> minimum necessary for Kansas to carry out its eligibility-
> assessment and registration duties); and

> (2) whether DPOC is the minimum amount of information
> necessary for Kansas to carry out its eligibility-assessment and
> registration duties.[5]

On November 22, 2016, Plaintiffs served their Sixth Request for Production of

Documents.[6]  This request, as modified during counsel's meet-and-confer discussion, seeks: "all

documents and communications regarding potential amendments or changes to the National

Voter Registration Act affecting how officials may assess the eligibility of a voter registration

applicant" ("Sixth Request").[7]  Plaintiffs moved to compel production of two documents that

they argued were responsive to this request: (1) a draft of a possible future amendment to the

NVRA that was created by Defendant and shared only with counsel in Defendant's office and

---

[2]189 F. Supp. 3d 1107 (D. Kan. 2016).

[3]Doc. 145.

[4]840 F.3d 710 (10th Cir. 2016).

[5]Docs. 258 at 2–3, 254 at 2–4; *Fish*, 840 F.3d at 737–40 & n.14.

[6]Doc. 273-2.

[7]*Id.*; Doc. 273-6 at 2.

Bryan Caskey, who is the head of the Elections Division of the Secretary of State's office ("the draft amendment") ; and (2) a document created by Defendant to share with then President-elect Donald Trump referencing a possible amendment to the NVRA, which was photographed by the Associated Press in late November 2016 as Defendant was walking into a meeting with President-elect Trump ("the photographed document").  Defendant refused to produce these documents, asserting that they are beyond the scope of discovery, do not seek relevant information, and are protected by the attorney-client, deliberative-process, and executive privileges.

On April 5, 2017, Judge O'Hara issued an Order ruling that the Sixth Request was within the scope of discovery, as limited by this Court's order reopening discovery.[8]  He ordered the documents be produced for *in camera* review before ruling on the relevance and privilege arguments.  After reviewing the two documents *in camera*, Judge O'Hara issued a second Order on April 17, 2017.[9]  The April 17 Order explained that the documents (in redacted form) are relevant to the issues for which discovery was reopened.  He further ruled on Defendant's assertions of privilege, finding none of the asserted privileges apply to these documents.  In a footnote, Judge O'Hara pointed to two statements in Defendant's response brief on the motion to compel that "most charitably, can be construed as word-play meant to present a materially inaccurate picture of the documents."[10]  Judge O'Hara reminded Secretary Kobach that in his capacity as counsel of record in this case, he is "an officer of the Court with a duty of candor and a duty not to assert frivolous arguments."[11]  Judge O'Hara ordered Defendant to produce the two

---

[8] Doc. 318.

[9] Doc. 320.

[10] *Id.* at 7 n.22.

[11] *Id.*

documents at issue and left it to Plaintiffs "to decide whether to seek sanctions against defendant."

On May 22, 2017, Plaintiffs filed a motion for sanctions based on the misstatements discussed by Judge O'Hara in his April 17 Order.  In that motion, Plaintiffs also sought to remove the "confidential" designation from the two documents at issue, and asked the court to order a deposition of Secretary Kobach to answer questions limited to the creation and purpose of the two documents because Plaintiffs did not possess those documents during his earlier depositions.  Judge O'Hara granted in part and denied in part Plaintiffs' motion on June 23, 2017.[12]  Although Judge O'Hara found that Defendant's misstatements in the earlier brief did not justify sanctions under Fed. R. Civ. P. 37(a)(5), he did exercise his discretion to impose "inherent power" sanctions, and fined Secretary Kobach $1000, to be made payable to the court.  Further, Judge O'Hara found that the documents at issue were properly deemed "confidential" under the protective order.  Finally, Judge O'Hara granted Plaintiffs' request to reopen discovery for a limited deposition of Secretary Kobach.  The deposition is limited to

> non-privileged information and evidence pertaining to the draft amendment and the photographed document.  The deposition will be held . . . in Room 211 of the United States Court House, 500 State Avenue, Kansas City, Kansas.  The undersigned will preside over the deposition and contemporaneously resolve any disputes that arise.  The deposition is limited to sixty minutes of testimony on direct examination.  As agreed to by plaintiffs, all testimony at the deposition will be subject to the confidentiality provisions of the protective order (i.e., the deposition will not be open to the public).[13]

Defendant filed a motion to reconsider the imposition of sanctions, arguing that his "lack of clarity" was an unintentional mistake, and the result of a rushed editing process between co-

---

[12]Doc. 355.

[13]*Id.* at 23–24 (footnotes omitted).

counsel.  He also argued that deposing him could pose an ethical problem under Kansas Rule of

Professional Conduct 3.7 by potentially disqualifying him from testifying at trial.  Judge O'Hara

denied the motion, finding that both arguments were inappropriate attempts to raise new

arguments on a motion to reconsider that could have been but were not presented in the first

instance.[14]

## II.    Discussion

Secretary Kobach now objects to Judge O'Hara's June 23 and July 5, 2017 Orders under

Fed. R. Civ. P. 72(a), on two grounds: (1) ordering sanctions based on unintentional

misstatements caused by last-minute editing mistakes was erroneous; and (2) permitting his

deposition is contrary to law under Tenth Circuit precedent.

Fed. R. Civ. P. 72 allows a party to provide specific, written objections to a magistrate

judge's order.  With respect to a magistrate judge's order relating to nondispositive pretrial

matters, the district court does not conduct a *de novo* review; rather, the court applies a more

deferential standard by which the moving party must show that the magistrate judge's order is

"clearly erroneous or contrary to the law."[15]  "The clearly erroneous standard 'requires that the

reviewing court affirm unless it on the entire evidence is left with the definite and firm

conviction that a mistake has been committed.'"[16]  To the extent Defendant raises new

arguments in his motion for review that were not articulated in his response to the motion for

sanctions, they are waived.[17]

---

[14]Doc. 361.

[15]28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

[16]*U.S. Fire Ins. Co. v. Bunge N.A., Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)).

[17]*ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184–85 (10th Cir. 2011); *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996); *see also Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 n.3 (D. Kan. 1997).

A.      **Sanctions**

In Judge O'Hara's Order granting the original motion to compel, he cited two examples of misstatements by Secretary Kobach in his response to the motion to compel.[18]  The first was Defendant's statement that the draft amendment "does not propose to 'amend or alter' an [sic] 'eligibility-assessment procedures mandated by the NVRA.'"[19]  The second was his statement that "no such document exists," demonstrating that Defendant sought an "alternative means of assessing voter qualifications by amending the NVRA."[20]

Defendant's response to the motion for sanctions states that "the problem was the result of counsel's apparently inarticulate phrasing, not the result of an intent to mislead or obfuscate. In both sentences, counsel for Defendant was attempting to *correct* misstatements by Plaintiffs' [sic] in their motion to compel."[21]  Defendant went on to explain how in each instance he was attempting to correct misstatements of fact or law by Plaintiffs, and admitted he "was not as clear as he could have been."  Defendant denied any lack of candor with the Court, and insisted that he was attempting to correct mischaracterizations by Plaintiffs.[22]  He stated: "Defendant's counsel can possibly be faulted for a lack of clarity, but not for a lack of candor."[23]

Judge O'Hara was not persuaded by Defendant's explanation.  As to the first problematic statement, Judge O'Hara observed that the text of the proposed draft amendment in fact would amend the type of information required by the states to assess voter registration applicants' eligibility.  As to the second example, Judge O'Hara found that it "gives the strong impression

---

[18]Doc. 320 at 8 n.22.

[19]Doc. 288 at 18.

[20]*Id.* at 17.

[21]Doc. 346 at 25 (emphasis in original).

[22]Defendant repeated this argument in his reply brief to the motion for review under Rule 72(a) of Judge O'Hara's Order compelling production of documents.  Doc. 335 at 14–15.

[23]Doc. 346 at 28.

that neither of the two at-issue documents relate to proposals by defendant to amend the NVRA's eligibility-assessment provisions.  Upon *in camera* review of the documents, the undersigned learned this is clearly not the case."[24]  Judge O'Hara would not go so far as to say Defendant "flat-out lied in representing the content of the disputed documents," but did find that his justifications for these statements were based on "thinly parsing the wording plaintiffs allegedly used."  He found that "it would have been obvious to any reasonable attorney" that the document request would encompass the documents at issue.

In his motion for reconsideration, and now in his motion for review, Defendant asserts that his "lack of clarity" in the response to the motion to compel does not rise to the level of sanctionable conduct, and provides a new explanation for this lack of clarity: last-minute editing mistakes.  Defendant did not mention editing, page-limitations, or issues with deadlines in his thirty-three page response brief to the motion for sanctions, so his assertion that this is an "expanded explanation" is not well taken.  This basis for Defendant's objection is thus waived.

Even if not waived, the Court does not find that Judge O'Hara committed clear error in imposing a $1000 fine on Defendant for misleading the court.  An inherent-power sanction may be appropriate where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[25]  In imposing such sanctions, the court must exercise caution, and comply with due process requirements.[26]  Defendant argues that he should not be sanctioned for "an honest mistake," that he claims was not intentionally misleading.  But Judge O'Hara carefully explained the basis for his finding that Defendant's statements were not merely honest mistakes, but effectively misled the Court about the contents of the documents at issue on the motion to

---

[24]Doc. 355 at 8.

[25]*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *see also Mellett v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 889–90 (10th Cir. 2012) (approving making inherent-power sanction payable to the court).

[26]*Chambers*, 501 U.S. at 50.

compel—documents that had not yet been submitted to him for *in camera* review at the time Defendant submitted his brief.[27]  Judge O'Hara's finding that Defendant's misstatements are not adequately explained by his assertion that he was merely attempting to correct Plaintiffs' mischaracterizations and did so unclearly, is not clearly erroneous.  Judge O'Hara carefully compared the statements, in context, with the documents at issue, and concluded that they were misleading.

Furthermore, Judge O'Hara's decision on reconsideration was not clearly erroneous. Defendant's insistence that he merely provided an "expanded explanation" for his misleading statements does not persuade the Court that Judge O'Hara erred in declining to consider them. Defendant's original explanation for his misstatements did not mention the editing process.  In his thirty-three-page response to the motion for sanctions, he took the position that he was merely responding to Plaintiffs' mischaracterizations.  To be sure, he claimed that his statements were not intentional misrepresentations, but honest mistakes.  But he did not place Judge O'Hara on notice of the basis for this claim, newly set forth in the motion for reconsideration:

> Defendant hopes that with <u>additional</u> context, this Court would see that the issue involved last-minute editing to meet page limitations; which led to the deletion of language that more fully explained the point Defendant was making.

---

[27]The undersigned echoes Judge O'Hara's warning in the Order compelling production that "when any lawyer takes an unsupportable position in a simple matter such as this, it hurts his or her credibility when the court considers arguments on much more complex and nuanced matters."  Doc. 320 at 8 n.22.  These are not the only two statements made or positions taken by Secretary Kobach that have called his credibility into question.  *See* Doc. 338 at 18–19 & n.59 (discussing contradictions between position taken in response to class certification, and later on mootness issues); Doc. 145 at 2–4 (discussing Defendant's misleading recitation of the record before this Court at the time it ruled on the preliminary injunction motion in his motion for stay pending appeal); *see also Bednasek v. Kobach*, Case No. 15-9300, Doc. 165 at 12 n.23 (documenting Defendant's mischaracterization of summary judgment exhibit).  Indeed, his assertion in this motion for review that his editing explanation was fairly raised before Judge O'Hara in the first instance is precipitously close to unsupportable.  While these examples do not form the basis for any sanctions award imposed by Judge O'Hara, they do demonstrate a pattern, which gives further credence to Judge O'Hara's conclusion that a sanctions award is necessary to deter defense counsel in this case from misleading the Court about the facts and record in the future.

> The <u>additional context</u> is as follows.  The primary author of
> the brief was Mr. Garrett Roe. Mr. Roe was working on this brief
> into the evening on its due date, Tuesday, February 7, 2017.  Mr.
> Roe had spent Sunday, Monday, and Tuesday essentially re-
> writing an earlier draft, while also being consumed with other
> discovery issues.  Mr. Roe sent the brief to Secretary Kobach to
> review at approximately 6:30 p.m. on February 7.  The draft was
> approximately 34 pages long at that time, four pages overlength.
> Secretary Kobach reviewed the draft in order to assist Mr. Roe by
> suggesting cuts that would reduce the brief in size to the
> permissible page limits.  Mr. Roe was simultaneously preparing
> exhibits, further reviewing case law on certain arguments, and
> finishing citations.  The brief was e-mailed back to Mr. Roe at just
> before 10:30 p.m., when Mr. Roe was still working on exhibits and
> citations.  At that point, Mr. Roe lacked the time to thoroughly
> review the edits and did not realize that the shortened brief did not
> explain the arguments at issue here as fully as in the original
> draft.[28]

None of this information was included in the response to the motion for sanctions.  The language

Defendant employed to explain this new editing defense concedes as much.  The response to the

motion for sanctions, while admitting a lack of clarity, almost solely places responsibility for the

misstatements on Plaintiffs.  A motion for reconsideration is not an opportunity for a party to

raise arguments that could have been raised in the first instances, when those facts were

previously available. [29]  The new facts presented on reconsideration were clearly available to

Defendant at the time he responded to the motion for sanctions, therefore Judge O'Hara did not

err in concluding that there was no basis for reconsideration.  The Court further finds that Judge

O'Hara's observation that this new explanation lacks credibility given its late assertion and lack

of documentation is not clearly erroneous.

---

[28]Doc. 359 at 4–5 (emphasis added) (footnote deleted indicating that "Mr. Roe wishes he would have sought a two-day extension.").

[29]*See, e.g.*, *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (explaining that a motion to reconsider is an "inappropriate vehicle[]to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.").

The Court is not left with the definite and firm conviction that a mistake has been committed as to Judge O'Hara's sanctions ruling, or his ruling denying reconsideration. Defendant's objection to his sanctions rulings are therefore overruled and denied.

### B.   Deposition

Defendant argues that Judge O'Hara's ruling requiring him to appear for deposition was erroneous because (1) Tenth Circuit precedent forecloses the deposition of opposing counsel; (2) Judge O'Hara failed to consider his argument that the deposition was sought merely to embarrass, annoy, or harass him.

Defendant relies on Tenth Circuit precedent adopting the Eighth Circuit's decision in *Shelton v. American Motors Corp.*,[30] which held that

> depositions of opposing counsel should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.[31]

Judge O'Hara determined that this rule does not apply where opposing counsel is also a party to the case, only he can answer questions about the creation of the documents and his subsequent related actions, <u>and</u> the deposition is being sought to obtain information from the Defendant as a fact witness on these issues, and not in his capacity as opposing counsel. This ruling is not contrary to law. It is supported by ample case law in this district declining to apply the rule in *Shelton* on similar distinguishing facts.[32]

---

[30]*Boughton v. Cotter Corp.*, 65 F.3d 823, 829–30 (10th Cir. 1995) (applying criteria set forth in *Shelton*, 805 F.2d 1323, 1327 (8th Cir. 1986)); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1112 n.15 (10th Cir. 2001).

[31]*Boughton*, 65 F.3d at 829.

[32]*See, e.g.*, *Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) ("This district has allowed the depositions of counsel of record in pending cases when the deposition relates to the attorney's role as a fact witness rather than the attorney's role in representing a client." (footnote omitted)); *Fugett v. Sec. Transport Servs., Inc.*, No. 14-2291-JAR-KGS, 2015 WL 419716, at *4 (D. Kan. Feb. 2, 2015) (declining to

Defendant points out that these cases have not been taken up on appeal, and until they do, this Court is bound to apply the *Shelton* rule.  Defendant's position relies entirely on one sentence in a footnote by the Tenth Circuit in *Thiessen v. General Electric Capital Corp.*: "*Shelton* was adopted by this court in *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995)."[33]   The Court disagrees that this statement foreclosed Judge O'Hara from distinguishing *Shelton* in this case.  In *Thiessen*, the plaintiff sought to depose the defendants' corporate counsel about an internal investigation regarding a company policy, and the corporations' alleged purging of related documents.[34]   The parties agreed in that case that *Shelton* controlled the analysis, and the court's single sentence footnote indicated that it had "adopted" *Shelton* in its earlier *Boughton* decision.[35]   Importantly, Defendant has not pointed to any case where the Court has prohibited opposing counsel's deposition when opposing counsel is also the named party and the deposition seeks information about his actions as a party, rather than counsel.  Here, Defendant, in his capacity as Secretary of State, created the documents at issue.  Under these circumstances, it was not contrary to law for Judge O'Hara to decline "to protect defendant from the limited deposition requested based on his status as attorney of record."[36]

Defendant suggests that Judge O'Hara's decision not to apply *Shelton* turned on the fact that the deposition questions would not address his "role" has counsel, as opposed to his role as a fact witness, and that such an exception would swallow the *Shelton* rule.  The Court disagrees with this characterization of Judge O'Hara's ruling.  Judge O'Hara considered Mr. Kobach's role

---

apply *Shelton* rule where the client identified its attorney as a potential witness and the plaintiff sought information relating to events giving rise to the cause of action, and not about legal advice); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249–50 (D. Kan. 1995) (declining to apply *Shelton* to limit scope of deposition where the parties had agreed to take the deposition in the first instance).

[33] *Thiessen.*, 267 F.3d at 1112 n.15.

[34] *Id.* at 1112.

[35] *Id.*.

[36] Doc. 355 at 22.

in creating these documents, but he also weighed heavily the fact that Mr. Kobach is the named defendant in this matter.  Defendant argues that his status as a named defendant is a mere formality necessitated by the NVRA.  But as Defendant states in the reply, he has chosen to represent himself in this and other cases challenging the DPOC law, presumably due to his intimate familiarity with the law and issues involved in these cases.[37]  Nonetheless, that is his choice, and Judge O'Hara's conclusion that this choice does not immunize him from deposition on issues that affect his role as a party and not as an attorney is not contrary to *Thiessen*. Moreover, the narrow deposition topic at issue on this motion involves documents that were created and disseminated by Mr. Kobach.  No other witness could answer questions about these topics.  Judge O'Hara concluded that under Rule 1, the most efficient method of obtaining these answers is through a controlled and limited deposition, over which he would preside.  The Court has reviewed the cases cited by both parties and concludes that Judge O'Hara's decision distinguishing this case from those applying *Shelton* is not contrary to law.

Finally, Defendant argues that Judge O'Hara failed to consider his argument that Plaintiffs seek this deposition merely to annoy and harass him, citing tweets by counsel for Plaintiffs.  First, the Court finds that Defendant waived this argument by not raising it in response to Plaintiffs' original motion.  To be sure, Defendant made this argument in response to Plaintiffs request to remove the "Confidential" designations from the documents at issue, but that is a wholly separate issue that is not within the scope of Defendant's motion for review.  The only arguments Defendant made in opposition to Plaintiffs' request to depose him about the documents at issue were that he could not be deposed based on his status as attorney of record,

---

[37]In other cases naming the Secretary of State in his official capacity in the District of Kansas, the Kansas Attorney General's Office, and sometimes outside counsel have represented the Secretary.  *See, e.g.*, *Briscoe v. Biggs*, No. 10-2488-EFM, 2011 WL 1594948 (D. Kan. Apr. 27, 2011); *Canfield v. Office of the Sec'y of State for the State of Kan.*, 209 F. Supp. 3d 1219 (D. Kan. 2016).

and as a public official.  Moreover, the limitations imposed on this deposition by the court belie any contention that it is being sought to annoy, embarrass or harass.  Judge O'Hara ordered that the deposition will be limited in scope to questions concerning the draft amendment and the photographed document.  He limited the deposition to one hour, and he ruled that the deposition would be subject to the confidentiality provisions of the protective order—it will not be open to the public.  Under the deferential standard that applies under Rule 72(a), the Court overrules and denies Defendant's objection.

The Court declines to take up Plaintiffs' request in the response brief that Defendant be required to review its process for reviewing responsive documents.  It is not appropriately before the Court on this motion under Rule 72(a).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Rule 72(a) Motion of Judge O'Hara's June 23, 2017, Order (Doc. 362) is **denied**.

**IT IS SO ORDERED.**

Dated: July 25, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE