# EXHIBIT L

.

**Report on Temporary Driver License Holders and Self-Reported Non-Citizens Who May Appear in Kansas Voter Registration Databases**

***Fish v. Kobach***, No. No. 2:16-cv-02105
**United States Court for the District of Kansas**

_____

**Eitan D. Hersh**
**Assistant Professor**
**Department of Political Science**
**Yale University**
**New Haven, CT**

**March 15, 2017**

## I.      Statement of Inquiry

1.  I have been asked to assess findings presented in declarations by Bryan Caskey and Jesse Richman about non-citizens and temporary driver's license (TDL) holders appearing on the voter registration databases. I have also been asked to perform an original assessment of possibly ineligible individuals appearing in voter registration databases, including an examination of the voting history and method of registration for certain individuals purported to be non-citizens. The tasks require familiarity with state databases and expertise in linkage techniques in order to identify records from different databases that represent the same individual.

## II.     Background and Qualifications

2.  I am an assistant professor of political science and a resident fellow of the Institution for Social and Policy Studies at Yale University in New Haven, Connecticut. I joined the faculty at Yale in 2011. I received my PhD in government from Harvard University in 2011.

3.  My scholarly research focuses on the topic of U.S. elections, specifically on voter behavior, election administration, and political campaigns. My methodological focus is in using individual-level data such as digitized voter registration records to study politics. Peer-reviewed articles such as "The Primacy of Race in the Geography of Income-Based Voting" (*American Journal of Political Science*, 2016), "Democratic and Republican Physicians Provide Different Care on Politicized Health Issues" (*Proceedings of the National Academy of Sciences,* 2016), "The Dynamic Election: Patterns of Early Voting Across Time, State, Party, and Age," (*Election Law Journal*,

2016), "Movers, Stayers, and Registration: Why Age is Correlated with Registration in the US" (*Quarterly Journal of Political Science*, 2012), and others all utilize voter registration records to study politics. In addition, I have written about the quality of records in state voter systems ("Voter Registration: The Process and Quality of Lists," in *The Measure of American Elections*, 2014) and the use of voter registration databases in campaign politics (*Hacking the Electorate*, 2015).

4. I have been deposed as an expert witness is *Judicial Watch, et al. v. King, et al.,* an NVRA case involving the state of Indiana. I have also served as an expert consultant in *Texas v. Holder* and *Veasey v. Perry*, two cases involving a voter identification law in the state of Texas.

5. I am compensated for my work at a rate of $250 per hour.

6. A copy of my current CV is attached as Exhibit A to this Report.

## III.   Method of Linking Records

7. Little information is provided in reports by Dr. Richman and Mr. Caskey about their methodology of linking records of purported non-citizens to voter registration databases. Other than the fields used, there is no information provided about how Mr. Caskey performed his matches. There is no information provided about how the Kansas Division of Vehicle office performed its matches, which are referenced in Dr. Richman's report. Dr. Richman provides a limited set of information about how he linked the TDL records to the Suspense List of registered voters who have not provided proof of citizenship. Dr. Richman linked individuals based on those who match on three combinations of fields: Last Name + Date of Birth, First Name + Last

Name, and First Name + Date of Birth. Dr. Richman reports that he also visually inspected the records following these matches.

8. Several observations are worth noting about a matching procedure such as the one utilized by Dr. Richman. First, all three of the linkage combinations that Dr. Richman uses are highly vulnerable to generating false positive matches (i.e. two different individuals who have the same identifiers). The combinations last name + date of birth, first name + date of birth, and first name + last name are not unique identifiers for many people within the state of Kansas. For instance, the combination of first name + last name is only unique for 65% of currently registered voters in the state of Kansas (active and inactive). Just among currently registered voters, for example, there are 215 Michael Smiths, 205 Robert Smiths, and 179 James Smiths. I determined this by searching for duplicates on the statewide voter file that was shared with me as part of this case. Given that the presence of noncitizens on voting rolls is likely to be a very low-incidence phenomenon, a technique such as Dr. Richman's could lead to a substantial number of false positive matches relative to the number of correct matches.

9. One way to deal with the problem of false positive matches is to improve the linkage methodology. As I describe below, I not only looked for matches between the two databases based on name and birthdate, but also on address. Including address limits the chance of two people sharing identifiers being considered matches. But it is important to note that even when linking records by name, address, and date of birth, the problem of false positive matches is essentially unavoidable. There may very well be two different people who share some or all of their identifiers who are actually

4

different people. For example, there are two sets of Robert Smiths in the list of registered voters who do not have unique birthdays. They live at different addresses. Given their common name, it is likely that they are different people. But it is also possible they represent single individuals registered twice.

10. A separate problem with any kind of record linkage question is administrative error. A person may be on the TDL file and voter file because they are non-citizens who purposefully tried to register to vote.  Or, a person may be on both lists because they accidentally did so. Or, a person may also be on both lists because a government official accidentally placed them on one of the lists. Government record-keeping is not perfect. If one is hunting for low-incidence idiosyncrasies in public databases that may affect 5, 10, even 100 records, they are not hard to find.

    A. Consider some examples. Among currently registered voters in Kansas, 104 are listed with birthdays of January 1, 1801. Did 100 people register with this birthday or did a government official, for some reason, key in 010101, which may be stored as Jan 1, 1801? There are also currently registered voters in Kansas with birth years of 1892, 1896, and 1898. Unbeknownst to record-keepers, are the three oldest people in the world actually registered voters in Kansas? Or are these records obsolete?

    B. Similarly, close to 400 Kansans currently registered to vote have dates of registration listed prior to the year they were born. Did parents pre-register their children, in some cases decades before their births? Or are these administrative errors?

    C.  The point of these examples is to illustrate that there are low-incidence errors in government records. Below, I will report that 14 out of 21,000 TDL holders may be on a list of active registered voters. This low rate is consistent with the rate of idiosyncrasies, often attributable to errors that can occur with public records.

11. To assess Dr. Richman's work and Mr. Caskey's work, and to provide an independent assessment of the number of individuals who appear both on the TDL list and the Suspense list, allow me to summarize my basic linkage methodology in this case.

    A.  First, in linking two databases, I pre-process the fields on both databases to ensure that they are stored in the same way. For date of birth, I converted the field into a MMDDYYYY string.

    B.  For first and last name fields, I removed spaces, periods, apostrophes, and dashes, and converted all letters to uppercase. This ensures that, for example, even if a person is listed as Jane McDonald-Smith on one file and Jane MCDONALD SMITH on another file, they would still produce a match.

    C.  I use two components of address fields: street number and five-digit zipcode. For example, if an address is "77 Prospect Street, New Haven, CT, 06520," the string of text that I use in linkage is "7706250." The reason for utilizing only these numeric components of an address is that they are less likely to contain typos and inconsistencies across databases as compared to street names and other letter-based fields. If either of these numeric fields are blank, I utilize the street number and zipcode that appear in the mailing address fields.

D.  After preprocessing the name, birthdate, and address fields to ensure they are stored in the same way between two databases, I create three identifiers that combine these fields. The first is a combination of Address, Date of Birth, and Name (first and last). I refer to this as ADN. The second is Date of Birth and Name (DN). The third is Address and Date of Birth (AD). Unlike Dr. Richman's combinations, these combinations are extremely likely to be unique to individuals in Kansas. Of all inactive and active registered voters, AD is unique to 99.6% of records, DN is unique to 99.9% of records, and ADN is unique to 99.99% of records. Furthermore, the AD combination will match individuals who may have inconsistent names listed on two databases but since they have the same birthdate and address are likely to be the same individual.

E.  To match the TDL list to voter registration records, I perform one-to-many matches on each combination. For each identifier in the TDL list, I link to one or more matches on the voter file. This matching technique accommodates the fact that there are duplicative records on the voter file. Additionally, for a small number of records on the TDL list, there are non-unique identifiers. For example, suppose there are multiple records on TDL for the same person. However, the records differ in that there is a typo in the first name of one of the records. These two records will be unique on ADN and DN, but duplicative on AD. All versions of these records are attempted to be linked to the voter registration database.

7

F.  After performing the matches, I visually inspect records that matched on only
one identifier. For example, suppose a TDL record links to a voter registration
record on name and birthdate but not address. This is may be a match (where
the person has moved residences), but this could also be a false positive match
(wherein two different people living in Kansas share a name and birthday).
Similarly, a person may match on address and date of birth but not name. For
example, two roommates or spouses who happen to share a birthday and live
together could be a false positive match here. Or, this could be a true match
but because of a typo or naming convention, the records did not match
successfully on first and last name. In practice, visual inspection can best aid
in deciphering a true match from a false positive match when a record
matches on date of birth and address but not name. Visual inspection can help
identify a case where a typo in a first name or a partial last name stored as a
middle name caused someone not to match on name when they actually are a
match. Visual inspection is not viable in all linkage settings. However, in the
present study, because there are so few cases that are even potential matches,
any record that matches can be scrutinized on a case-by-case basis.

IV.  **Dr. Richman's Report**

12. Professor Jesse Richman performed three sets of analysis that I have been asked to
review. In the first analysis I am able to review, Dr. Richman linked the TDL
database to the Suspense List. In the second analysis, Dr. Richman identified seven
other individuals who reported in a survey that they were non-citizens and who

appeared on the Suspense List. In the third analysis, Dr. Richman identified respondents from a survey of TDL holders who reported they were registered voters.

**A.  Dr. Richman's TDL / Suspense List Match**

13. I first used my methodology to replicate Dr. Richman's analysis of the link between TDL and the Suspense List. The automated components of Dr. Richman's procedure are much more likely than my procedure to produce false positive matches. However, it is unclear how Dr. Richman used visual inspection to aid his search.

14. As with Dr. Richman, I identified sixteen TDL records on the Suspense List. One of the matches that I identified was not identified by Dr. Richman. Additionally, one record that Dr. Richman counted as a match did not produce a match in my algorithm.

    A.  The match that I found, but which Dr. Richman failed to find, is someone whose last name is listed as a single last name on one file but a double last name on another file. This person did not match on Dr. Richman's first name + date of birth combination because the individual also has either a typo or an alternate name spelling for her first name on one of the files. I counted this person as a match, while Dr. Richman apparently did not.

    B.  The record that Dr. Richman classified as a match but I did not belongs to an individual who is also listed as a single name on one file but a double name on the other file. But the two records are at different addresses. The combination of different last names and different addresses suggests to me that this might be a false positive match.

15. Of the 17 TDL records that appear on the Suspense List, according to either my own assessment or Dr. Richman's assessment, or both, none of them has any history of

voting recorded in the voter registration record.  That is, none of these individuals are recorded as ever casting a vote in Kansas

16. Of the 17 TDL records, 10 of them are listed in the voter file with an "MV" in the field of how they registered to vote. I understand this to mean that they were registered at a motor vehicle office.  A list of relevant codes is attached to this Report as Exhibit B.

17.  Of the 17 individuals, 4 are listed with a code of "CITZ", defined as "proof of citizenship not submitted." One of these four is listed as having registered at the DMV.

18. None of the 17 potential matches here are listed with a code of "FO", defined as representing a federal form applicant.

19. While Dr. Richman and I both found 16 individuals on the TDL list that also appeared on the Suspense List, please note two points of caution. First, the timing of the two lists is not apparent to me. I am an unable to assess if some of the individuals on TDL list became US citizens before appearing on the Suspense List. Second, it is possible that one or more of these 16 individuals is a false positive match – a person who appears on the TDL list and has the same name and birthdate of another person on the voter registration record.

20. Below is a table summarizing my findings with respect to Dr. Richman's TDL / Suspense List Match:

| Dr. Richman's TDL / Suspense List Match: Summary of Findings | |
| --- | --- |
| Number of Matches Found by Dr. Richman | 16 |
| Number of Matches Found By Dr. Hersh | 16 |
| Combined Number of Matches | 17 |
| Number with "CITZ" (Proof of Citizenship) Code | 4 |
| Number who Voted | 0 |
| Number with "MV" (Motor Voter) Code | 10 |
| Number with "MV" (Motor Voter) and "CITZ" (Proof of Citizenship) Codes | 1 |
| Number with "FO" (Federal Form) Code | 0 |

### B.    Dr. Richman's Survey of Suspense Records Self-Reporting as Non-Citizens

21. Separate from matching TDL records to Suspense records, Dr. Richman identified 7 individuals on the Suspense List who reported on a survey that they were non-citizens. I used name and birthdate information to identify these records in the full database of voters.

22. Of these 7 individuals, six have no record of election participation. The one remaining individual is listed as having voted in the 2016 general election but in no elections prior.

23. Of these 7 individuals, 4 are listed with a code of CITZ, defined as "proof of citizenship not submitted."

24. Of these 7 individuals, 3 are listed with the "MV" code, i.e., as having registered at the department of motor vehicles. None of these 3 individuals are listed with the "CITZ" code.  None of these three individuals are listed as having voted in any election.

25. None of these 7 individuals are listed with a code of "FO", defined as representing a federal form applicant.

26. Below is a table summarizing my findings with respect to Dr. Richman's Survey of Suspense Records Self-Reporting an Non-Citizens:

| Dr. Richman's Survey of Suspense Records Self-Reporting an Non-Citizens: Summary of Findings | |
| --- | --- |
| Number Self-Reporting as Non-Citizens | 7 |
| Number with "CITZ" (Proof of Citizenship) Code | 4 |
| Number who Voted | 1 |
| Number with "MV" (Motor Voter) Code | 3 |
| Number with "MV" (Motor Voter) and "CITZ" (Proof of Citizenship) Codes | 0 |
| Number with "FO" (Federal Form) Code | 0 |

**C.  Dr. Richman's Survey of TDL Holder who are Self-Reported Non-Citizens**

27. I was given a list of six individuals who may have been TDL holders who apparently self-reported in a survey that they were registered to vote. Based on only their first and last name, I attempted to identify these individuals in the voter file. It does not appear than any of these individuals are listed on the voter file as someone who is a registered voter, was a registered voter, or who attempted to be a registered voter.

V.    **Mr. Caskey's Declaration**

    A.  **Mr. Caskey's TDL / Voter Registration List Match**

28. Mr. Caskey's declaration refers to 80 records that purportedly match in the TDL list and Kansas's voter registration list.

29. A description of Mr. Caskey's matching methodology was given to me in the form of a forwarded email from the Kansas Secretary of State's office, which is attached to this Report as Exhibit C. This email does not describe the record linkage procedure, but it does report on the fields used to link records. The fields include first name, last name, date of birth, and driver's license number.

30. As with Dr. Richman's method, Mr. Caskey did not utilize address fields in matching. Mr. Caskey did use the drivers' license number, which I do not use in matching. I do not use the drivers' license number in part because the field is missing for approximately 1.2 million records out of 2.7 million listed on voter file. More importantly, I have found the field to be unreliable in that it produces false positive matches, as I describe below.

31.  Using my linkage method, I linked records from the TDL file (a file containing 21,090 records) to the full voter registration file (containing 2,738,641 records).

32. Whereas Mr. Caskey identified 80 matches, my algorithm suggests only 62 matches. Without having more detailed information about Mr. Caskey's methodology, I do not know the exact cause of the discrepancy. However, Mr. Caskey failed to use address fields. Using only first name, last name, and date of birth, his algorithm might be considering false positive matches as actual matches. There are individuals who might match on first and last name, first name and date of birth, or last name and date

of birth, but who are not the same individual. As mentioned above, many individuals in the state of Kansas share these combinations of identifiers with others in the state.

33. The Kansas Secretary of State's office reports that Mr. Caskey's linkage was also based on drivers' license number. After performing my own algorithm, I separately matched the full TDL file to the voter file based on drivers' license number. In 11 cases, records matched on driver's license number that did not match on my combinations of name, birthdate and address. When I investigated these records, most of them appear associated with entirely different people – different name, address, birthdate. These appear to be false positive matches attributable to administrative error in assigning drivers' license numbers to multiple people or typos in the files. Because most of these individuals who matched only on driver's license number appear clearly to be non-matches, I believe that the driver's license number is not an appropriate method of linking records for this purpose.

34. Even among my set of 62 potential matches based on name, birthdate, and address, it is important to point out that some might be false positive matches. Of the 62, only 24 matched on first name, last name, date of birth, and address. Seventeen matched on first name, last name and date of birth, but not address. These might be movers and they might be false positives. Twenty-one individuals matched on address and date of birth but not name. These might be individuals who have different naming conventions on different databases, or they too might be false positive matches. In any case, not only would a less rigorous matching procedure than the one I used likely generate additional false positive matches, but some of the matches I found may also be false positives.

35. On March 14, 2017, I received a list of eighty registration identification numbers. I was informed that these correspond to the records of the 80 individuals holding a temporary driver's license who were identified by Mr. Caskey's office as appearing on the voter registration file. I linked the registration ID numbers to the voter file and found matching records for only 52 of the 80 cases. I am unable to determine why 28 of Mr. Caskey's records are not on the voter file that was supplied to me.

36. Comparing the 52 cases to my own 62 cases analyzed above, 47 are on both sets, 15 are only on my set, and 5 are only on Mr. Caskey's set.

   A. I reviewed the five cases that are considered matches by Mr. Caskey but not by me. One case is someone who actually does appear on my own list of matches but with a different registration number. This person is listed with three different registration numbers on the voter file. I count his record as one match.

   B. A second case that appears on Mr. Caskey's list of matches but not my own is a person who has the same first and last name as someone on the TDL list, but a different birthdate, address, and driver's license number. Mr. Caskey counts this as a match, but given all the discrepancies, particularly in birthdate, this is much more likely to be a false positive match.

   C. Finally, there are three cases that Mr. Caskey considers a match that have different last names and addresses, but the same first name, date of birth, and license number as someone on the TDL file. Because of the inconsistent listings in last name and address, my algorithm does not treat these as matches.

15

37. Focusing on the 52 cases that appear on Mr. Caskey's list and match to a voter file record, 11 are active voters, 3 are inactive voters, 23 are cancelled voters, and 15 are suspense voters.

38. Of the 52 cases, 13 have a code of CITZ.

39. Of the 52 cases, one is listed as having voted in the 2000 general election but no other election. The remaining 51 cases have no history of voting at all.

40. Of the 52 cases, 24 are listed as having registered at the DMV.

    A.  Among these 24, 8 are active registrants, one is an inactive registrant, five are listed as cancelled, and 10 are on the suspense list.

    B.  Of the 24, two are listed as CITZ.

    C.  Of the 24, one is listed as having voted in the 2000 general election. No others have any history of voting.

41. Of the 52 cases, none are listed has having registered using the federal form.

42. Below is a table summarizing my findings with respect to Mr. Caskey's match of the TDL and Voter Registration Lists:

| Mr. Caskey's TDL / Voter Registration List Match: Summary of Findings | |
|---|---|
| Number of Matches Reported By Mr. Caskey | 80 |
| Number of that Can Be Linked to the Voter File | 52 |
| Number with "A" (Active) Code | 11 |
| Number with "I" (Inactive) Code | 3 |
| Number with "S" (Suspense) Code | 15 |
| Number with "R" (Canceled) Code | 23 |
| Number with "CITZ" (Proof of Citizenship) Code | 13 |
| Number who Voted | 1 |
| Number with "MV" (Motor Voter) Code | 24 |
| Number with "MV" (Motor Voter) "A" (Active) Codes | 8 |
| Number with "MV" (Motor Voter) and "I" (Inactive) Codes | 1 |
| Number with "MV" (Motor Voter) and "S" (Suspense) Codes | 10 |
| Number with "MV" (Motor Voter) and "R" (Canceled) Codes | 5 |
| Number with "MV" (Motor Voter) and "CITZ" (Proof of Citizenship) Codes | 2 |
| Number with "MV" (Motor Voter) Code who Voted | 1 |
| Number with "FO" (Federal Form) Code | 0 |

17

**B.    Mr. Caskey's TDL / Voter Registration List Match**

43. As noted above, I performed my own match of the TDL and the Kansas voter registration lists, and found 62 matches. Of the 62 matches that I found, 14 are listed as active voters, 4 as inactive, 20 as suspense voters, and 24 as cancelled voters.

44. Of the 62 matches, 17 are listed with a code of "CITZ", defined as "proof of citizenship not submitted." The other 45 do not have this code.

45. While 62 TDL records (0.29% of all TDL records) match to a voter file record, and while 14 TDL records (0.07% of all TDL records) match to an active registered voter, this does not inform me of whether the matched individuals were citizens at the time of registration, whether the listed individuals on the TDL file all match to the same individuals on the voter file or whether some are false positive matches, and whether some or all of the matched records are the result of clerical errors rather than purposeful registrations.

46. Of the 62 matches, 59 are listed with no vote history at all.  Three have vote records. Two of these are listed as having voted in the 2016 general election but no other election, and one is listed as having voted in the 2000 general election but no other election.

47. Of the 62 matches, in terms of their method of registration, 25 are listed as having registered at the DMV, 24 are listed with no code, and the remaining 13 have codes of BM, FA, and IP.

48. Among the 25 who are listed as registering at the DMV, 3 have a code of "CITZ" defined as "proof of citizenship not submitted." The other 22 do not have this code.

49. Among the 14 active registered voters who matched to the TDL list, 8 are listed as registering at the DMV. Among the 4 inactive voters, one is listed as having registered at the DMV.

50. Of the 25 who are listed as registering at the DMV, 5 are cancelled voters and 11 are suspense voters.

51. Of the 25 individuals who are listed as registering at the DMV, one is listed as having voted in the 2000 general election but no other election. The remaining 24 individuals are not listed as having voted in an election.

52. Of the 62 matches, none are listed with a code of "FO", defined as representing a federal form applicant.

53. Below is a table summarizing my findings with respect to my own match of the TDL and Voter Registration Lists:

| My TDL / Voter Registration List Match: Summary of Findings | |
|---|---|
| Number of Matches Found | 62 |
| Number with "A" (Active) Code | 14 |
| Number with "I" (Inactive) Code | 4 |
| Number with "S" (Suspense) Code | 20 |
| Number with "R" (Canceled) Code | 24 |
| Number with "CITZ" (Proof of Citizenship) Code | 17 |
| Number who Voted | 3 |
| Number with "MV" (Motor Voter) Code | 25 |
| Number with "MV" (Motor Voter) "A" (Active) Codes | 8 |
| Number with "MV" (Motor Voter) and "I" (Inactive) Codes | 1 |
| Number with "MV" (Motor Voter) and "S" (Suspense) Codes | 11 |
| Number with "MV" (Motor Voter) and "R" (Canceled) Codes | 5 |
| Number with "MV" (Motor Voter) and "CITZ" (Proof of Citizenship) Codes | 3 |
| Number with "MV" (Motor Voter) Code who Voted | 1 |
| Number with "FO" (Federal Form) Code | 0 |

C.    **Sedgwick County Spreadsheet Referenced by Mr. Caskey**

54. Separately, I was provided with a spreadsheet of 31 non-citizens in Sedgwick County who, according to Mr. Caskey's declaration, registered to vote or attempted to register to vote without documenting proof-of-citizenship.  Each of the individuals was listed with a registration identification number.

55. I was also provided with what appears to be an updated version of the spreadsheet from February 2017, with 32 individuals who, according to the spreadsheet, registered to vote or attempted to register to vote without documenting proof-of-citizenship.  As with the earlier version of the spreadsheet, each of the individuals was listed with a registration identification number. I used this number to find these 32 individuals in the voter registration database.

56. Of these 32 records, 22 are listed as active registrants, 1 as an inactive registrant, 8 as cancelled voters and 1 as a suspense voter.

57. In the field designating a voter registration reason, only one is listed as "CITZ," indicating that the proof of citizenship was not submitted.

58. Seventeen of the individuals have histories of voter turnout.  Five of the seventeen individuals have histories of voter turnout prior to the date of the naturalization, as listed in the spreadsheet I reviewed.

59. Seven of the 32 individuals are listed as having registered at the department of motor vehicles. Of these seven, three are active voters, three are cancelled voters, and one is a suspense voter. Of the seven, none is listed with CITZ as their registration reason. Of the seven, none voted prior to their date of naturalization. The other four have no history of voting.

60. Of the thirty-two voters in this list, none are listed as having applied using the federal form.

61. Below is a table summarizing my findings with respect to the 32 purported cases of non-citizen registration and attempted registration in Sedgwick County referenced in Mr. Caskey's declaration:

| **Sedgwick County Spreadsheet Referenced by Mr. Caskey: Summary of Findings** | |
|---|---|
| Number Reported By Mr. Caskey | 32 |
| Number with "A" (Active) Code | 22 |
| Number with "I" (Inactive) Code | 1 |
| Number with "S" (Suspense) Code | 1 |
| Number with "R" (Canceled) Code | 8 |
| Number with "CITZ" (Proof of Citizenship) Code | 1 |
| Number who Voted | 17 |
| Number who Voted Prior to Date of Naturalization | 5 |
| Number with "MV" (Motor Voter) Code | 7 |
| Number with "MV" (Motor Voter) "A" (Active) Codes | 3 |
| Number with "MV" (Motor Voter) and "I" (Inactive) Codes | 0 |
| Number with "MV" (Motor Voter) and "S" (Suspense) Codes | 1 |
| Number with "MV" (Motor Voter) and "R" (Canceled) Codes | 4 |
| Number with "MV" (Motor Voter) and "CITZ" (Proof of Citizenship) Codes | 0 |
| Number with "MV" (Motor Voter) Code who Voted | 1 |
| Number with "MV" (Motor Voter) Code who Voted Prior to Naturalization | 0 |
| Number with "FO" (Federal Form) Code | 0 |

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct to the best of my knowledge.

DATED this 15th Day of March, 2017

_____

Eitan Hersh

EXHIBIT A

## Eitan D. Hersh

Department of Political Science
Yale University
77 Prospect Street, Room C120
New Haven, CT 06511
Tel: 203-436-9061
Email: eitan.hersh@yale.edu
Web: www.eitanhersh.com

**EMPLOYMENT**    Assistant Professor, Political Science
Resident Fellow, Institution for Social and Policy Studies
Yale University, 2011-Present

**EDUCATION**    Ph.D. in Political Science, Harvard University (2011)
M.A. in Political Science, Harvard University (2010)
B.A. in Philosophy, Tufts University, *summa cum laude* (2005)

**BOOK**    Eitan Hersh. 2015. *Hacking the Electorate: How Campaigns Perceive Voters.*
Cambridge: Cambridge University Press.
— **Winner**, Best Book in Information, Technology, and Politics, APSA 2016

**ARTICLES**    Eitan Hersh and Matthew Goldenberg. 2016. "Democratic and Republican Physicians Provide Different Care on Politicized Health Issues," *Proceedings of the National Academy of Sciences.* 113 (42): 11811-11816.

Vivekinan Ashok, Daniel Feder, Mary McGrath, and Eitan Hersh. Forthcoming. "Dynamic Voting in a Dynamic Campaign: Three Theories of Early Voting." *Election Law Journal.*

Ryan Enos and Eitan Hersh. Forthcoming. "Campaign Perceptions of Electoral Closeness: Uncertainty, Fear, and Over-Confidence." *British Journal of Political Science.*

Eitan Hersh and Clayton Nall. 2016. "The Primacy of Race in the Geography of Income-Based Voting: New Evidence from Public Voting Records." *American Journal of Political Science.* 60 (2): 289-303.
— **Winner**, Pi Sigma Alpha award for best paper presented at MPSA (2013)
— **Winner**, MPSA Emerging Scholar award (2013)

Ryan Enos and Eitan Hersh. 2015. "Party Activists as Campaign Advertisers: The Ground Campaign as a Principal-Agent Problem." *American Political Science Review.* 109 (2): 252-278.

Stephen Ansolabehere and Eitan Hersh. 2013. "Gender, Race, Age and Voting: A Research Note." *Politics and Governance.* 1 (2): 132-137.

Eitan Hersh. 2013. "The Long-Term Effect of September 11 on the Political Be-

havior of Victims' Families and Neighbors." *Proceedings of the National Academy of Sciences*. 110 (52): 20959-20963.

Eitan Hersh and Brian F. Schaffner. 2013. "Targeted Campaign Appeals and the Value of Ambiguity." *Journal of Politics*. 75 (2): 520-534.

Stephen Ansolabehere and Eitan Hersh. 2012. "Validation: What Big Data Reveal About Survey Misreporting and the Real Electorate." *Political Analysis* 20(4): 437-459.

Stephen Ansolabehere, Eitan Hersh, and Kenneth Shepsle. 2012. "Movers, Stayers, and Registration: Why Age is Correlated with Registration in the U.S." *Quarterly Journal of Political Science* 7(4): 333-363.

Eitan Hersh. 2012. "Primary Voters Versus Caucus Goers and the Peripheral Motivations of Political Participation. *Political Behavior*. 34(4): 689-718.

Bernard Fraga and Eitan Hersh. 2011. "Voting Costs and Voter Turnout in Competitive Elections." *Quarterly Journal of Political Science* 5(4): 339-356.

**WORKS IN PROGRESS & UNDER REVIEW**

*Poli-Hobbyism: A Theory of Mass Politics*

"The Political Engagement, Representation, and Leadership of U.S. Clergy" (co-authored with Gabrielle Malina)

"Post-Materialist Particularism: What Petitions Can Tell Us about Biases in the American Policy Agenda" (co-authored with Brian Schaffner)

"Why is There So Much Competition in U.S. Elections?" (co-authored with Bernard Fraga)

"Mixed-Partisan Households and Electoral Participation in the United States" (co-authored with Yair Ghitza)

**OTHER WRITING**

Justin Grimmer, Brian Feinstein, Eitan Hersh, and Daniel Carpenter, "Are Close Elections Random?" Working Paper.

Stephen Ansolabehere and Eitan Hersh. 2014. "Voter Registration: The Process and Quality of Lists." In *The Measure of American Elections*, eds. Barry C. Burden and Charles Stewart III. Cambridge: Cambridge University Press.

Stephen Ansolabehere and Eitan Hersh. 2011. "Who *Really* Votes?" In *Facing the Challenge of Democracy*, eds. Paul M. Sniderman and Benjamin Highton. Princeton: Princeton University Press.

Stephen Ansolabehere, David Doherty, Eitan Hersh, and Alan Gerber, "Voter Registration List Quality Pilot Studies," Caltech/MIT Voting Technology Project Report, June 8, 2010.

Eitan Hersh, "A Caucus-Goer's Community," *Reuters*. January 3, 2012.

Eitan Hersh, "What Makes Field Organizers Effective? Being Like the People They Want to Persuade," Monkey Cage, *Washington Post*, May 21, 2015.

Eitan Hersh, "Data Availability Determines Whether Campaigns Focus on the Middle or the Base," *FiveThirtyEight*, August 10, 2015.

Eitan Hersh, "How Democrats Suppress the Vote" *FiveThirtyEight*, November 3, 2015.

Eitan Hersh, "With Trump in the Race, The Battleground is Everywhere." *FiveThiryEight*, June 21, 2016.

Eitan Hersh, "How Many Republicans Marry Democrats?" *FiveThirtyEight*, June 28, 2016.

Eitan Hersh, "What the Yankees-Red Sox Rivalry Can Teach Us about Political Polarization," *FiveThirtyEight*, August 11, 2016.

Eitan Hersh, "The GOP's Jewish Donors are Abandoning Trump," *FiveThirtyEight*, September 21, 2016.

Eitan Hersh, "The Most Dangerous Hobby," *Boston Globe*, May 3, 2016.

**TEACHING**   PLSC 232: "Information, Technology, and Politics" (Yale)
PLSC 229: "Election Rules and Campaign Strategy" (Yale)
PLSC 217/853: "U.S. National Elections" (Yale)

**REFEREE SERVICE**   *American Journal of Political Science American Political Science Review, American Politics Research, British Journal of Political Science, Economics and Politics Election Law Journal, Electoral Studies, International Journal of Public Opinion Research, Journal of Politics, Journal of Urban Affairs Legislative Studies Quarterly, Political Analysis, Political Behavior, Political Psychology, Political Research Quarterly, Political Science Research and Methods, Politics and Governance, Public Opinion Quarterly, Research and Politics, Review of Economics and Statistics, State Politics and Policy Quarterly.*

**INVITED TALKS**   I have given presentations at annual meetings of the American Political Science Association, Midwest Political Science Association, and Society for Political Methodology.

I have given invited talks at Boston University, Columbia, Dartmouth, Harvard, Harvard Kennedy School, Harvard Medical School, MIT, NYU, UCLA, University of Massachusetts-Amherst, Michigan, UNC, UPenn Annenberg School, Princeton, Stanford, Stanford Law School, Washington University-St. Louis, and Yale Law School.

**CONSULTING**   Statistical Consultant, *Texas v. Holder* (Voter ID case)
Statistical Consultant, *Veasey v. Perry* (Voter ID case)
Expert, *Judicial Watch, et al v. King, et al*, (Indiana Voter Registration Case)
Commissioner, Commission on Youth Voting and Civic Knowledge, CIRCLE, 2012-14

EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al.,     )
                                          )
       Plaintiffs,          )
                                          )
v.                                   )     Case No. 16-2105-JAR-JPO
                                          )
KRIS KOBACH, in his official capacity as )
Secretary of State for the State of Kansas, et )
al.,                                   )
                                          )
       Defendants.      )
_____ )
                                          )
CODY KEENER, et al.,      )
                                          )
       Plaintiffs,          )
                                          )
v.                                   )     Case No. 15-9300-JAR-JPO
                                          )
KRIS KOBACH, in his official capacity as )
Secretary of State for the State of Kansas, et )     CASES CONSOLIDATED FOR
al.,                                   )             DISCOVERY
_____ )

## DEFENDANT KOBACH'S SECOND SUPPLEMENTATION TO PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS
## <u>CODES IN ADDENDUM</u>

Defendant Kansas Secretary of State Kris W. Kobach hereby communicates codes used in the documents previously tendered incident to plaintiffs' expedite discovery.  These codes transmitted in response to the following request:

      **From:** Orion Danjuma [mailto:odanjuma@aclu.org]

      **Sent:** Monday, April 04, 2016 10:33 AM

      **Subject:** RE: Follow Up on Discovery Requests in Fish v. Kobach, No. 16-2105

      Counsel,

      Thank you for sending us these materials.

      Please send us as soon as possible a key for the codes listed in the cde_source_of_info, cde_registrant_reason, cde_registrant_status fields on the

spreadsheets you've provided.  Obviously we can infer what some of the codes represent.  Others we cannot infer and it would be preferable to have confirmation from you regardless.  Apologies if you have already provided this information and I missed it.

Sincerely,

**R. Orion Danjuma**
Staff Attorney, Equality Center


DEFENDANT KOBACH'S RESPONSE TO ABOVE REQUEST IS AS FOLLOWS:


**SOURCE OF INFORMATION DESCRIPTION:**

> AF – Armed Forces Recruitment Offices
> BM – By Mail
> CM – Confirmation Mailing
> DB – State funded Disability Offices
> DO – Deputized outposts
> EPOL – ES&S Electronic PollBook Interface
> FS – First and Second Class City Offices
> IP – In Person
> MV – Motor Vehicle Offices
> MVC – DMV On-line Address Change (Internet voter registration)
> MVO – Motor Vehicle On-line Registration (Internet voter registration)
> OM – All Other Means
> PA – Mandated Public Assistance Agencies
> VD – Voter Registration Drives


**REGISTRANT STATUS –**

> A – Active
> R – Cancelled
> I – Inactive
> N – Not eligible
> NR – Not registered
> S – Suspense

**VOTER REGISTRATION REASON –**

A – Active
AGE – Under Age
CITZ – Proof of citizenship not submitted
CONF – Confirmation Mailing Process
DEAD – Deceased
DUPE – Duplicate
FEL – Felony Conviction
FO – Federal Form Applicant
INC – Incomplete Application
MENT – Mental Incompetence
MOCK – Mock Election
MOVE – Moved Out of County
NE – Not Eligible
NR – Not Registered
OTHE – Other
REQU- Vote Request
SAFE – Safe At Home
SPSD – Suspended
UDM – UOCAVA – Domestic Military
UOC – UOCAVA – Overseas Civilian
UOM – UOCAVA – Overseas Military

Respectfully submitted this 4th day of April, 2016,

/s/  GARRETT ROE
Garrett Roe*
Kansas Secretary of State's Office
Memorial Hall, 1st Floor
120 S.W. 10th Avenue
Topeka, KS 66612
(785) 296-4575 – Business
(785) 368-8032 – Facsimile
garrett.roe@sos.ks.gov
*Issued Temporary license by the Kansas Supreme Court;
Admitted to practice in the Kansas District Court*

Kris W. Kobach
Kansas Secretary of State's Office
Memorial Hall, 1st Floor
120 S.W. 10th Avenue
Topeka, KS 66612
(785) 296-2034 – Business
 (785) 368-8032 – Facsimile
kris.kobach@sos.ks.gov

*For Defendant Secretary of State Kris Kobach*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on April 4, 2016, I served Defendant Kobach's Responses to Plaintiffs' Second Supplemental Document Requests, via electronic mail to the following:

Mark P. Johnson
Curtis E. Woods
Samantha J. Wenger
Dentons US LLP
4520 Main Street
Suite 1100
Kansas City, MO  64111
Phone: (816) 460-2400
Fax:  (816) 531-7545
Mark.johnson@dentons.com
Curtis.woods@dentons.com
Samantha.wenger@dentons.com

William R. Lawrence, IV
Paul T. Davis
730 New Hampshire Street, Suite 210
Lawrence, KS  66044
Phone:  (785) 331-0300
Fax:  (785) 331-0303
wlawrence@fed-firm.com
***Counsel for the Keener Plaintiffs***

Stephen Douglas Bonney
ACLU Foundation of Kansas
6701 W. 64th Street, Suite 210
Overland Park, KS 66202
Phone:  (913) 490-4102
Fax:  (913) 490-4119
dbonney@aclukansas.org

NEIL A. STEINER
REBECCA KAHAN WALDMAN
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Phone:  (212) 698-3822
Fax:  (212) 698-3599
neil.steiner@dechert.com
rebecca.waldman@dechert.com

ANGELA M. LIU
Dechert LLP
35 W. Wacker Drive
Suite 3400
Chicago, Illinois 60601-1608
Phone: (312) 646-5816
Fax:  (312) 646-5858
Angela.liu@dechert.com

DALE E. HO
ORION DANJUMA
SOPHIA LIN LAKIN
American Civil Liberties Union Foundation,
125 Broad Street
New York, NY  10004
Phone:  (212) 549-2693
Dale.ho@aclu.org
odanjuma@aclu.org
slakin@aclu.org

***Counsel for Fish Plaintiffs***

John T. Bullock
STEVENS & BRAND, LLP
900 Massachusetts, Suite 500
P.O Box 189
Lawrence, Kansas 66044
Phone:  (785) 843-0811
Fax:  (785) 843-0341
jbullock@stevensbrand.com

***Counsel for Defendant Shew***

M.J. Willoughby
Assistant Attorney General
Office of Kansas Attorney General
Derek Schmidt
120 SW 10th Avenue, 2nd Floor
Topeka, KS  66612
Phone:  (785) 296-4085

J. Brian Cox
Deputy General Counsel
Legal Services Bureau,
Kansas Department of Revenue
2nd Floor, Docking State Office Building
915 SW Harrison Street
Topeka, KS  66612
Telephone (785) 296-2381
Fax (785) 296-5213
brian.cox@kdor.ks.gov

***Counsel for Defendant Jordan***

by:
BJBROWN
Staff Attorney
Office of Secretary of State

EXHIBIT C

## Dale Ho

| | |
|---|---|
| **From:** | Roe, Garrett [KSOS] <Garrett.Roe@ks.gov> |
| **Sent:** | Wednesday, February 22, 2017 5:55 PM |
| **To:** | Sophia Lakin; Lee, Bethany [KSOS]; Liu, Angela |
| **Cc:** | Dale Ho |
| **Subject:** | RE: Dropbox |
| **Attachments:** | Temporary Drivers License List 20161214.xlsx |

Sophia,

Regarding your first paragraph.  I am not representing that Mr. Caskey was the one who performed the actual cross referencing between the TDL and the ELVIS system.  Someone in our IT department did that cross-referencing of TDLs vs Registration List.  Our elections division then reviewed those results and reviewed ELVIS to verify.  Our IT department does the cross reference of those two data sets.  I am not aware of any other TDL list than the one that I provided to you.  However, I have attached the TDL list that our IT department used, just to be safe.  I believe it is the same document that I sent you previously which was the list I was given by Revenue subsequent to the Court's order.  I am also representing to you that the matches were done as stated.  The IT department cross-referenced the four criteria (Last name, First name, DOB, Driver's license number), then performed additional checks from there using some of the data points.  Regarding the next point, it is my understanding, that Jameson downloaded the entirety of the ELVIS system, including registered, suspense, and cancelled records as of the date it was provided to you.  It is my understanding that is every record that exists in ELVIS as of that date.  The IT department used the same data, albeit from a slightly earlier date.  They access the information in a slightly different way because they access the ELVIS system itself, whereas we can't really do anything other than provide you with the same data in the format we provided it.   I would also remind you, that those records fall under the Court's original protective order and should not be shared outside of those permitted in this litigation.

Regarding Tabitha Lehman, it is my understanding that you were given all of the underlying ELVIS documents already (many, if not all of the documents, twice as per the original subpoena duces tecum).  Who are the "several individuals" that you do not yet have?  If you would identify them, we will provide them.


2(b)  It is my understanding that you were provided these as well.  Please let me know who you do not yet have.

I would also again note the same thing I have repeatedly requested clarification on, whether it is your assertion discovery requests you submit have no temporal scope in time and are unending.

6.  I have provided you the information upon which Professor Richman relied in submitting his report.  That is what is required under Rule 26.  I believe there is one e-mail from this office to DHS with the list of individuals that were checked.  The e-mail you received was the response.  I will verify that tomorrow.  I do not have that e-mail.  However, it is not clear to me that this e-mail is currently subject to any request.  It is not responsive to the eleventh category.  And, regarding the thirteenth category, I am frankly not clear at this point now what you believe falls within that request.  You seem to cite to it every time you want any document from our office, without explanation.  It is also in reference to something stated on July 1, 2016.

7(a).  I can provide that.  However, it is not pursuant to any pending request.
7(b).  I can provide that.  However, it is not pursuant to any pending request.
7(c).  I have not heard back from Professor Richman on this point.

I would point out here, again, this is not subject to a pending request as noted by Ms. Lee, but it can be provided.

8(a).  I have not received any further response from Division of Vehicles since last week.  I have contacted them again.  However, now that I re-read your e-mail, can you please clarify, are you asking us to provide you with the actual Kansas Driver's License database?  I'm fairly confident that this would take a court order before Revenue would provide you with that.  We do not have access to that.  There are numerous federal and state privacy law issues involved there.  I am also not sure whether you are claiming that this falls under Rule 26 given that Professor Richman gave you what he was provided by this office.  Furthermore, from a proportionality stand point, are you really seeking the entire state driver's license database?  I am a little confused by this request.

8(b).  Again, I have not heard back from Department of Revenue, I have contacted them again.

8(c).  Again, I have not received a response.  I have contacted them again.

8(d).  Again, I have not received a response.  I have contacted them again.

8(e).  I am looking to see what documents are responsive to this request currently.  I do not believe it is subject to any current discovery request, as again noted regarding reasonable temporal scopes of requests, but I am looking to see what this office has.

I am not sure how any of these documents are "necessary to assess Professor Richman's report" as you claim, but I am trying to obtain them.  Again, I strongly disagree that these are all subject to some existing request or are required under Rule 26 expert disclosure requirements.  However, we are providing them to you regardless.

Garrett Roe
Deputy Assistant Secretary of State, Legal Services
785-296-8473

---

**From:** Sophia Lakin [mailto:slakin@aclu.org]
**Sent:** Wednesday, February 22, 2017 9:48 AM
**To:** Roe, Garrett [KSOS] <Garrett.Roe@ks.gov>; Lee, Bethany [KSOS] <Bethany.Lee@ks.gov>; Liu, Angela <Angela.Liu@dechert.com>
**Cc:** Dale Ho <dho@aclu.org>
**Subject:** RE: Dropbox

Garrett:

You've represented that the Mr. Caskey identified as a match individuals who had the same driver's license numbers, dates of birth, first names, and last names--or a subset of these matching criteria--on each list. You have also represented that the TDL list that you provided on the Box is the TDL list used by Mr. Caskey to perform this match, and Bethany represented that the VRlist document uploaded to the Box on Friday was the full registration list, including suspended and cancelled voters. If our understanding is correct about these three items, that is all the information that we need with respect to request 1 at this time.

We are, however,  still waiting for the following items, which we had asked to be produced by yesterday. Please produce these items as soon as possible:

2.  **Materials supporting the instances on noncitizen registration or attempted registration described by Bryan Caskey** in paragraphs 4 and 5 of his January 30, 2017 Declaration, including:

a.  Underlying voter files reviewed by Tabitha Lehman for each of the 31 noncitizen registrants or attempted registrants identified by the Sedgwick County Election office described in paragraph 3 that were not produced at the time of her deposition on April 6, 2016. There are several individuals for whom no ELVIS record has been provided. Please confirm that these individuals do not have an ELVIS record or provide those ELVIS records.

b.  Underlying voter files for the 3 instances of alleged noncitizen registration described in paragraph 5 Please confirm that the individuals from Johnson County and Finney County do not have an ELVIS record or provide those ELVIS records.

All of this information is subject to outstanding discovery request. *See* Plaintiffs' First Request for Production, Request Number 7, dated March 9, 2016 ; Plaintiffs' Request for Documents, attached as Exhibit A to the Notice of Deposition of Tabitha Lehman, Request Number 6, dated March 18, 2016.

6.  **Communications with DHS regarding purported "self-reported citizens on the suspense list."** (pg. 9 of Richman Report).  Professor Richman states that, with respect to 32 individuals on the suspense list, "the Kansas Secretary of State office requested that the Department of Homeland Security … match these individuals against their files."  Footnote 10 in Professor Richman's report asserts that this information is of "limited use to a state attempting to determine whether or not the person is a U.S. citizen."

Please produce any communications between the Kansas SOS and U.S. DHS regarding these individuals, or any other individuals referenced in Professor Richman's report.  These underlying materials are obviously necessary to assess Professor Richman's report.  Please confirm that the email forward by Secretary Kobach to Professor Richman is the **only** communication between DHS and the Secretary of State's office concerting "self reported citizens on the suspense list" and any other individuals referenced in Professor's Richman's report. If it is not, please provide outstanding communications responsive to this request. Again, these communications are subject to several outstanding discovery requests.  *See* Plaintiffs' Fifth Request for Production, Request Number 1, dated November 15, 2016; Request Number 11; and Request Number 13.

7.  **Any complete ELVIS files for the various individuals purportedly identified as non-citizens who are registered or who have attempted to register to vote** in Professor Richman's report, including:
    a.  The 16 individuals Professor Richman indicates he is "confident" are on both the TDL and suspense lists (pg. 7 of report); While Professor Richman has provided the names of the 16 individuals (attached as "2-4"), we have not received the ELVIS files for these individuals. Please provide the outstanding documents responsive to this request
    b.  The 7 individuals from the suspense list survey who purportedly self-identified as non-citizens (pgs. 8-9 of report); While Professor Richman has provided the names of the 7 individuals (attached as "2-5"), we have not received the ELVIS files for these individuals. Please provide the outstanding documents responsive to this request
    c.  The 6 individuals from the TDL survey who purportedly self-identified as registered to vote  (pg. 9 of report); Our understanding is that Professor Richman is unable to provide fully identifying information for the 6 individuals referenced. Please confirm that this is correct.

These underlying materials are obviously necessary to assess Professor Richman's report.  They are also subject to an outstanding discovery request.  *See* Plaintiffs' First Request for Production, Request Number 7, dated March 9, 2016.

8.  **Materials underlying the Match of Driver's License Databases and  Voter Registration Lists performed by DOV** (pg. 6, Exhibit 1 in Richman report)
    a.  The driver's license list(s) used by DOV for this match You indicated in your last email that you may have requested this information from the DOV. Please confirm and provide an estimated ETA for this information.
    b.  The voter registration list(s) used by DOV for this match, with all voter information fields, including method of registration You indicated in your last email that you may have requested this information from the DOV. Please confirm and provide an estimated ETA for this information.
    c.  Documentation of criteria used by DOV for matching names on the driver's license and the voter registration lists You indicated in your last email that you may have requested this information from the DOV. Please confirm and provide an estimated ETA for this information.
    d.  Any software code used by DOV for the matching process You indicated in your last email that you may have requested this information from the DOV. Please confirm and provide an estimated ETA for this information.
    e.  Any and all communications between the Secretary of State's office and KDOR/KDOV regarding the information in Exhibit 1. **Please provide documents responsive to this request.** This information is necessary to assess Professor Richman's report and is subject to a number of continuing discovery requests, and in

3

particular: Plaintiffs' Second Request for Production, Request Number 1, dated March 9, 2016; Plaintiffs' Fifth Request for Production, Request Number 10, dated November 15, 2016.

Again, these underlying materials are obviously necessary to assess Professor Richman's report.  They are also subject to several outstanding discovery requests.  *See* Plaintiffs' First Request for Production, Request Number 7, dated March 9, 2016; Plaintiffs' Fifth Request for Production, Request Number 10, dated November 15, 2016.

As noted, all of these materials are properly a part of required expert disclosures in this case and are subject to at least one outstanding discovery request.  Delay in production will compromise our ability to prepare and serve expert rebuttal reports in accordance with the scheduling order in this case.   Please let me know if you have any questions or concerns, and we can set up a time to discuss.


Regards,
Sophia


**From:** Roe, Garrett [KSOS] [mailto:Garrett.Roe@ks.gov]
**Sent:** Tuesday, February 21, 2017 6:49 PM
**To:** Sophia Lakin; Lee, Bethany [KSOS]; Liu, Angela
**Cc:** Dale Ho
**Subject:** RE: Dropbox

Sophia,

I am still slightly confused.  Obviously, we run a computer match of the TDL list against the registration data.  We have provided you with the TDL list and the registration list (which includes registered, canceled and suspense).  The matches included checking driver's license numbers, dates of birth, first names, and last names.  Combinations of those numbers were also used to identify individuals where, for instance, the ELVIS file or the TDL file was missing one of the numbers (like missing driver's license for some reason).

Thus, you have the capability to do that check yourself and verify the information with the spreadsheets that you have.  You can obviously see what fields are in the voter registration list and what fields are in the TDL list  As a result, I am not sure what you are now asking for.   What don't you have that you are claiming to be entitled to?

I would also point out, that if I understand correctly what you are seeking, it is information regarding Bryan Caskey's affidavit, not information related to Professor Richman's report, is that correct?

Garrett Roe
Deputy Assistant Secretary of State, Legal Services
785-296-8473


**From:** Sophia Lakin [mailto:slakin@aclu.org]
**Sent:** Tuesday, February 21, 2017 10:33 AM
**To:** Lee, Bethany [KSOS] <Bethany.Lee@ks.gov>; Liu, Angela <Angela.Liu@dechert.com>
**Cc:** Roe, Garrett [KSOS] <Garrett.Roe@ks.gov>; Dale Ho <dho@aclu.org>
**Subject:** Re: Dropbox

Thanks, Bethany.

With respect to your question concerning software code under 1d, this request is related to request 1(c) in that we are requesting documentation of the criteria and methodology used by Mr. Caskey to perform his

TDL-ELVIS match. If there is some kind of formula or function that was run through the TDL list and ELVIS records to match entries, that information is within the scope of 1(d).

We look forward to receiving the outstanding materials that we requested on February 10th sometime today.

Regards,
Sophia

---

**From:** Lee, Bethany [KSOS] <Bethany.Lee@ks.gov>
**Sent:** Friday, February 17, 2017 6:41:32 PM
**To:** Sophia Lakin; Liu, Angela
**Cc:** Roe, Garrett [KSOS]
**Subject:** Dropbox

Angela and Sophia,

I've uploaded the registration list, suspense list, and cancelled list as one file. I think this is what you were requesting in your e-mail, but I'm not entirely sure. Bryan Caskey is at NASS in DC this week, but will be back on Monday.

Can you describe what you mean by software code under 1d? We have been talking to our IT people and they didn't seem to know what you mean by that.

Moreover, as we have stated before, our office still believes that you put a reasonable temporal scope on your requests, which we previously complied with. For instance, in your first RDP, request 2 – it states "as of September 30, 2015."  We've complied with that request. We gave you the information we had at that time. In your second RFP – request 9 asks for all voters currently registered in the State of Kansas. Again, we complied with that. In your first RFP, request 7 – you asked for documents "identified in the Caskey letter." Again, we complied with the documents identified in that letter. Those are just 3 of the many examples that show we've complied.

Have a good weekend.

Thanks,
**Bethany Lee** | Staff Attorney
Kansas Secretary of State | (785) 296-4559 P | (785) 291-3051 F | www.sos.ks.gov
Memorial Hall, 1st Floor | 120 S.W. 10th Avenue | Topeka, KS 66612-1594