```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF KANSAS
 2

 3   STEVEN WAYNE FISH, ET AL.,

 4     Plaintiffs,                      Docket No. 16-2105

 5     v.

 6   KRIS W. KOBACH, in his            Kansas City, Kansas
     official capacity as             Date:  8/3/2017
 7   Secretary of State for the
     State of Kansas,
 8
       Defendants.
 9   .........................

10              TRANSCRIPT OF DEPOSITION OBJECTIONS
                BEFORE THE HONORABLE JAMES P. O'HARA
11              UNITED STATES CHIEF MAGISTRATE JUDGE

12   APPEARANCES:

13   For the plaintiff:

14   Dale E. Ho                       Doug Bonney
     R. Orion Danjuma                 American Civil Liberties.
15   American Civil Liberties          Union Foundation - KS
       Union Foundation - NY          3601 Main Street
16   125 Broad Street                 Kansas City, MO 64111
     New York, NY 10004
17
     For the Defendant:
18
     Susan Becker
19   Garrett R. Roe
     Office of Secretary of State
20   Memorial Hall, First Floor
     120 S. 10th Avenue
21   Topeka, KS 66612

22   Also Appearing:

23   Kris W. Kobach

24   _____
25           Proceedings recorded by digital recording,
     transcript produced by computer-aided transcription.
```

2

```
1                    (Court called to order.)
2               THE COURT:  At this time the court calls the
3      civil action styled Steven Wayne Fish and others versus
4      Kris Kobach, in his official capacity as Secretary of
5      State for the State of Kansas, Case No. 16-2105.  May I
6      please have the appearances starting with the
7      plaintiffs.
8               MR. HO:  Good morning, Your Honor, Dale Ho
9      for the plaintiffs.
10              MR. DANJUMA:  Good morning, Orion Danjuma on
11     behalf of plaintiffs.
12              MR. BONNEY:  Stephen Bonney.
13              THE COURT:  And for the defendant, please.
14              MS. BECKER:  Sue Becker on behalf of
15     Defendant Kobach.
16              MR. ROE:  Garrett Roe on behalf of Defendant
17     Kobach.
18              MR. KOBACH:  Secretary Kobach on behalf the
19     -- well, not as an attorney today, so...
20              THE COURT:  Okay.  Counsel, we're here today
21     I understand to -- at least on the record in open court
22     to sort out what I understand to be a dispute between
23     the parties relative to the manner of recording of
24     Secretary Kobach's deposition which has been ordered by
25     the court.  Miss Becker, it's my understanding the
```

1   objection comes from the defense side of the aisle; is

2   that correct?

3            MS. BECKER:  That's correct, Your Honor.

4            THE COURT:  Okay.  Could you articulate the

5   objection, please.

6            MS. BECKER:  Yes.  Your Honor, Defendant

7   Kobach objects because it was not contained in your --

8   in your order.  It was not contained in either

9   Judge Robinson's order or your own as far as the manner.

10  I believe it was left with plaintiffs' counsel to

11  arrange for the deposition and the defendant was not --

12  we have not been given a subpoena.  There is no

13  deposition notice.  And normally, you know, if Your

14  Honor hadn't ordered the deposition in the manner that

15  you did, there's simply no basis for a videotape without

16  notice.

17           THE COURT:  Miss Becker, is the defendant

18  suggesting that a subpoena of any kind was necessary

19  given the court's order?

20           MS. BECKER:  Oh, of course not.

21           THE COURT:  Are you contending that a notice

22  was necessary in addition to the court order?

23           MS. BECKER:  No.  I am contending that the

24  parameter of the videotape was not included and so it's

25  vague.  And without notice it just -- it's just -- we

Case 2:16-cv-02105-JAR   Document 398   Filed 09/11/17   Page 4 of 21

16-2105  Fish, et al. v Kobach  8/3/17                          4

1   weren't expecting it and it doesn't seem that -- that it

2   can be done.  The plaintiffs themselves this morning

3   said that they did not order a videotape.  So I'm not

4   really sure where that's (inaudible).

5           THE COURT:  Mr. Ho, do you wish to respond?

6           MR. HO:  Yes, Your Honor.  I believe

7   Miss Becker is mistaken.  I don't recall any of us

8   saying to her that we didn't order a videographer.  I

9   believe a member of our team contacted chambers to ask

10  whether videography was permitted, if we could arrange

11  it for -- if we could -- if we could ourselves arrange

12  it, and we were told that we could.  I believe the

13  manner that a deposition is taken and the manner of

14  reporting is up to the discretion of the party taking

15  the deposition.  And, in fact, this is the first that

16  I've heard of this objection, Your Honor.

17          MS. BECKER:  Well, equally so this is the

18  first that we've heard of the videotape.  And I would

19  object to the ex parte communications about videotaping

20  without even the courtesy of informing defendants.

21      And Mr. Bonney I believe this morning said that

22  he was unaware of it, that a videographer had been

23  ordered.  But in addition, Your Honor --

24          MR. BONNEY:  That's not what I said, Your

25  Honor.

1           THE COURT:  I'm sorry, I can't hear you,

2    Mr. Bonney.

3           MR. BONNEY:  I'm sorry, that's not what I

4    said, Your Honor.  I -- we were trying to figure out

5    whether the court reporter was here, the regular

6    stenographer, and it was said that the videographer was

7    here.  I thought that was odd that one was here and not

8    the other.  Anyway...

9           MS. BECKER:  Your Honor, I'd like to suggest

10   two more points as you consider this.

11          THE COURT:  Sure.  Go ahead.

12          MS. BECKER:  The points being that as you're

13   well aware one of the main reasons that we're even here

14   today is that one of these documents, or if not both of

15   them, were photographed by the media as -- as Secretary

16   Kobach was about to meet with president-elect.  And the

17   media then, you know, magnified it and it became an

18   issue.

19          We don't think that we'd be able to effectively

20   discuss the documents without having them in front of

21   the secretary obviously.  And if there is a videographer

22   going on that this is a third party who's obviously not

23   under the protective order at this point, we would have

24   him sign obviously.

25          But we also would like to prevent the abuses of a

1   videotape deposition.  And we do know that the -- in

2   this very case an expert witness was deposed including

3   the videographer and then that videotape was used in

4   fundraising and ads and national commercials well beyond

5   the scope of the protective order without any -- any

6   agreement by the parties.

7          And so we want to prevent this very short

8   deposition which is limited in scope to -- it's a good

9   idea so that we can actually do the legal work here

10  without worrying about the publicity side of the

11  secretary's business.

12             THE COURT:  Well, Miss Becker, how would the

13  videotape of the deposition be any more accessible under

14  the existing protective order than the stenographic

15  transcript of the deposition?

16             MS. BECKER:  Well, my -- my understanding is

17  the stenographic transcript is under protective order

18  and cannot be shared with the public.  Yet that was the

19  same standing protective order as to all the other

20  depositions in the case.  And we don't know how the --

21  or why the videotape deposition of Dr. Richman was sent

22  to the media but it was.  We didn't obviously.

23          So we're just concerned.  And I just think since

24  this is a short deposition and you want to be able to

25  get to the bottom of the issues that you limited it to,

1    that was -- that was our thought.

2              THE COURT:  Well, to clarify the record and

3    looking back at the order that was filed on June 23rd,

4    2017 as Document 355 and specifically on page 23

5    Footnote 80, it states, and I quote, "A court reporter

6    will not be provided by the court.  The responsibility

7    for ensuring the recording of the deposition remains

8    with plaintiffs."

9         There's nothing in my order that talks about the

10   means of recording Secretary Kobach's deposition.  I did

11   not presume to suggest that it be recorded by audio, by

12   stenographic, or by videotape.  I left that to the

13   parties.  And thus it comes as no surprise to me that

14   somebody on either side of the aisle for a deposition

15   that's scheduled in the courthouse would have contacted

16   chambers in order to try to facilitate the logistics of

17   getting a court reporter or a videographer through

18   security back to the room where the deposition would

19   occur.  So I think it a bit inaccurate for anyone to

20   suggest that there's been any ex parte communication in

21   this case.  I've had zero communication with anybody

22   about this case of that nature.

23        Additionally, I guess just as a practical matter,

24   I would ask you to speak at least a little bit more

25   directly to the governing rule, specifically

1   Rule 30(b)(3)(A) of the Federal Rules of Civil

2   Procedure.  And it speaks more to the situation where a

3   party is noticing a deposition.  I think to your point,

4   Miss Becker, that you would be right were this

5   deposition being taken pursuant to a notice by the

6   plaintiffs.  They would need to tell you in advance that

7   it's going to be recorded by tape-recorder, by

8   stenographic means, or by videotape.  But that wouldn't

9   apply to the court by its express terms.

10          But then more pertinently the rule goes on to

11  state, and I quote, "Unless the court orders otherwise,

12  testimony may be recorded by audio, audio visual, or

13  stenographic means."  And it goes on to talk about the

14  fact that the plaintiffs can bear the expense of doing

15  it however they want to do it.  But so I think

16  plaintiffs' counsel are correct that it's ultimately

17  discretionary in this situation.

18          But aside from the -- just kind of a generalized

19  fear that the protective order might be violated in this

20  case, I mean, articulate a little bit better for me if

21  you can how the secretary would be prejudiced by having

22  his deposition videotaped with the understanding that it

23  is under the protective order, it would not be able to

24  be filed by anybody until relief from the protective

25  order is granted.

1           MS. BECKER:  Okay.  Thank you, Your Honor.

2    Well, I do want to point out that -- that we don't

3    obviously object to a regular, you know, court reporter,

4    stenographic recording.  We do think that a written

5    transcript is -- is perfectly fine and adequate.

6           I would point out I -- in looking at Rule 30,

7    Your Honor, that is assuming that there is a normal

8    deposition notice.  And then you mentioned that you left

9    it up to the discretion of the parties.  And I would --

10    I'll just maintain that, you know, since we were not

11    consulted and there is no notice, we think that it would

12    be improper, especially since it was not contained in

13    the order.

14           As to prejudice, you know, it -- the generalized

15    fear, Your Honor, it's actually not generalized.  It's a

16    very specific because we do have evidence, you know,

17    even on -- on iPhone this morning showing how clips of

18    videos have been used.  The protective order has been

19    violated already.  That's the problem.

20           And then, in addition, entire transcripts of

21    depositions -- the entire transcripts of depositions

22    have been attached as exhibits to summary judgment

23    motions.  So I don't think that it has -- it has been

24    particularly clear and that is why we don't want to risk

25    a violation as far as this particular deposition that's

1   very limited.

2        Prejudice, Your Honor, is just -- it's just --

3   it's just notice.  It's just preparing a witness as you

4   would know.  You know, you consider different things.

5   Yeah, I would have told him to wear a different tie, not

6   that it really matters but --

7             THE COURT:  The record should reflect that

8   he's dressed in a smoking hot tie and a great looking

9   suit.

10            MS. BECKER:  Just one (inaudible).  I'm

11  sorry, counsel would like me to clarify.  We don't -- we

12  don't think the protective order was violated in the

13  videotaping of the -- of her deposition.  It was rather

14  just the use of that going into fundraising for the

15  plaintiffs' counsel.

16            THE COURT:  Miss Becker, have there -- has

17  there ever been any adjudication in this case that

18  either side of the aisle has run afoul of the protective

19  order?

20            MS. BECKER:  I don't believe so but I would

21  have to defer to counsel who has been on the case longer

22  than I have, Your Honor, if you don't mind.

23            MR. ROE:  Your Honor, I can speak to that.

24  We do not think that the protective order was violated.

25  And as far as policing the deposition videotape of

1   Professor Richman, I think -- I think Miss Becker's

2   misunderstanding what I was saying.

3        The point was is that they're using his

4   videotapes, for instance, the Richman -- Professor

5   Richman one, for purposes of fundraising and to continue

6   an ongoing personal attack against both the defendant

7   and anybody essentially on defendants' side in this

8   case.

9        The only depositions they've done by video that I

10  can remember is Professor Richman's and I think

11  Expert Hans Von Spakowsky.  There's been no need for

12  deposition -- for video depositions for the other -- I'm

13  not even sure.  I think I've lost count on how many

14  depositions are in this case.

15       There's -- at this point the only reason that we

16  can come up with that a video deposition is necessary or

17  is required or requested or whatever is because they

18  want to take the after -- first they want to attach it

19  to the summary judgment motion as they have done

20  previously.  And then if they get the court to lift the

21  protective order, then slice it up for purposes of

22  fundraising on an ongoing national campaign.  It's not

23  -- the court I think is well within its discretion to

24  keep that sort of harassment out of this case.

25            THE COURT:  But, Mr. Roe, isn't it equally

1   plausible and indeed even more likely that the tree of

2   purpose for wanting to videotape the key deposition of a

3   party opponent is for particularly effective cross

4   examination of that witness at trial, albeit a bench

5   trial?

6           MR. ROE:  I think you could make that

7   argument occasionally.  But given the history -- track

8   record of the number of tweets alone in this case, the

9   number of, you know, multiple instances of simply

10  attacking opposing counsel, it's simply not -- I don't

11  think that's an accurate view of what's going on in this

12  case at this point.

13      I mean, this -- I mean, I can give you a tweet

14  just this morning from ACLU National which was, you know

15  -- I don't have it in front of me -- essentially stating

16  that they can't wait to ask questions under oath of --

17  of Kris Kobach and how he plans to -- I could find the

18  tweet for Your Honor.  The point is that this whole

19  requesting of deposition by videotape is not for

20  purposes of furthering their -- their arguments in this

21  case but it's for using it outside of this case.

22          THE COURT:  Mr. Roe, you're not suggesting

23  that both sides of the aisle have refrained from making,

24  shall we say, uncharitable remarks about the other?

25          MR. ROE:  I'll -- I -- I know I have not,

1   Your Honor.

2              THE COURT:  How about your client?

3              MR. ROE:  I -- to my knowledge, I know that

4   he isn't making personal attacks that I'm aware of to

5   Mr. Ho or any of the other plaintiffs' counsel.

6         Your Honor -- the answer, Your Honor, is I have

7   not found any.

8              THE COURT:  Okay.  Well, I've not heard any

9   persuasive argument of prejudice here.  I think

10  Secretary Kobach here, as I mentioned, is well dressed.

11  It's acknowledged that he's a good looking individual.

12  He's comfortable with speaking in public.  And it just

13  strikes me as a bit odd to think that this particular

14  sort of individual would be harmed by a videotape

15  deposition, which to be clear just like the transcript

16  is subject to the protective order.

17        Now, moving down field at some point where

18  somebody tries to attach that to a deposition -- or

19  excuse me, to a motion or other filing and seek to have

20  it under seal, that's a separate analysis for

21  Judge Robinson to make.  If somebody wants to file a

22  motion to lift the designation of confidentiality under

23  the protective order, then that's for Judge Robinson

24  unless she kicks it back to me.

25             But it seems to me at -- despite the lack of

1    advance notice by the plaintiffs, which to be -- to be

2    frank could be regarded as discourteous, I don't see it

3    as -- as improper under the rules and I don't think it

4    prejudicial to the defendant.  So the deposition will

5    proceed by both videography and stenographic means.

6         I'm going to have my courtroom deputy print off

7    for all you, to the extent that you're not already

8    familiar with them, our district's very detailed

9    guidelines that deal with videotape depositions to make

10   sure that things proceed, among other things, in a very

11   neutral way.  I mean, in other words, even though the

12   plaintiffs may have retained the videographer, there

13   shall not be any inappropriate coaching of the

14   videographer to zoom in at particular times.  There

15   ought to be a static head shot throughout and there are

16   posted other guidelines.  So the objection is

17   respectfully overruled.

18        Is there anything else that we need to take up

19   before we retire to the conference room behind the

20   courtroom for the deposition itself?

21             MR. ROE:  Can I say one more thing, Your

22   Honor?

23             THE COURT:  Sure, Mr. Roe, go ahead.

24             MR. ROE:  Just going back to your last

25   question about whether defendant said anything to be

1   discourteous.  I just want to make sure it's clear, I

2   have looked and responded to the motion previously and I

3   have not found anything in the media about it or I know

4   he's not sending tweets or anything about opposing

5   counsel or anything like that.  So I just want to make

6   sure it's clear on that point.

7            THE COURT:  Does the secretary typically

8   refer to the ACLU in his radio show in a positive way?

9            MR. KOBACH:  Your Honor, I have referred to

10  the ACLU in a negative way.  I have specifically avoided

11  mentioning any person by name in this case.  I don't

12  believe it's appropriate for an attorney to make

13  negative comments about opposing counsel in a case.  And

14  despite the fact that I have been personally attacked by

15  opposing counsel in multiple forms of media, I have

16  never returned any attack against any member of opposing

17  counsel's team or against the plaintiffs.  Yes, I have

18  said negative things about the ACLU as an organization,

19  absolutely.

20           THE COURT:  I mean --

21           UNIDENTIFIED SPEAKER:  Things like --

22           THE COURT:  --  I've seen some literature to

23  the effect of, you know, you regard yourself as the

24  ACLU's worst nightmare, something to that effect?

25           MR. KOBACH:  On a radio show that I used to

1   host, that was part of the intro line that the voiceover

2   did.  But I've never attacked anyone personally and I

3   think it's very inappropriate for counsel to attack each

4   other personally.  I assume that he agreed.

5           THE COURT:  Well, I do agree with regard to

6   individual attacks on individuals and lawyers.  But I

7   think this is -- and I think you would acknowledge this,

8   Mr. Kobach, your situation is different because you're

9   here not as an individual.  You're here in your official

10  capacity as a public official of the State of Kansas.

11  And whether people want to make negative comments about

12  democrats or republicans, putting aside whether that's

13  civil, but putting aside whether that's productive,

14  putting aside whether I think that's a good thing, it is

15  constitutionally protected to be sure.

16      I guess the point I was trying to make at -- here

17  is that I think, at least based on what I've seen in the

18  written record, neither side in this case can

19  persuasively claim the high morale ground on these

20  issues of attacks.  And I understand the distinction

21  between individuals and organizations, but I just -- I

22  think that's a distinction without a material

23  difference.

24          MR. KOBACH:  Just to clarify, Your Honor.

25  The -- the ACLU general comments have not been made --

1   that audio for the radio was I think recorded in 2008

2   perhaps.  I mean, not in respect to this.  With respect

3   to this case, I have tried to -- I have succeeded in

4   treating opposing counsel with the utmost decorum and

5   never making any negative comment about them.  So --

6                 THE COURT:  And to be clear, I -- I -- I've

7   witnessed that.  I'm not disagreeing with you on that

8   point.

9                 MR. KOBACH:  And we -- we -- we receive

10  continuous tweets from Mr. Ho about me and about this

11  case and we never respond.  That has been my policy not

12  to respond at all costs and never -- because I think

13  it's inappropriate for attorneys to do that.

14                THE COURT:  I understand your position and I

15  appreciate it.  Okay.  Anything else, Miss Becker?

16                MS. BECKER:  Yes, Your Honor.  We do have a

17  few preliminary things with regard to deposition.

18                THE COURT:  Okay.

19                MS. BECKER:  The first being -- with Your

20  Honor's permission at the onset of the deposition I

21  would like to basically read your order as to the scope

22  of the deposition into the record.

23                Secondly, I'm wondering, I notice that we've got

24  60 minutes of Secretary Kobach's examination by the ACLU

25  allowed and I -- as you may expect, I may want to

1    reserve time for more of a redirect or rebuttal with

2    your permission.

3              THE COURT:  Definitely.  Well, and to be

4    clear, this is how this is going to work, because, you

5    know, I've not forgotten how depositions actually work.

6    If we have a situation -- and I'm hopeful that we won't

7    get here -- I mean, my fondest hope is that the scope of

8    the deposition will proceed as I outlined in my order

9    with respect to these two specific documents; that we

10   will have laser-focused questions; that we will have

11   responsive non-filibuster answers and that we won't have

12   a series of objections.  If we have that, we'll be out

13   of here in 60 minutes.

14        If we have filibustering, if we have objections,

15   if we have improper scope questions, it's going to take

16   a lot longer.  But I don't want anybody thinking that

17   it's necessarily going to be exactly 60 minutes because

18   I'm going to -- I'm going to police this in a way that

19   gives both sides an opportunity to get the facts out.

20        And to be clear, if you -- you want as much as

21   30 minutes of cross examination of your own client to

22   clarify the record, putting aside that that might be

23   imprudent, I'm going to give you whatever time you want

24   to do.  And then if you do that, I will allow an

25   appropriate amount of time for redirect examination.

1            MS. BECKER:  Certainly.  Thank you, Your

2    Honor.

3            The only other two issues I'd like to address,

4    actually going back to what you just commented, I -- I

5    would like the court to note that we have -- opposing

6    counsel has brought in an entire box of it looks like

7    potential exhibits.  So I do appreciate what you said as

8    far as enforcing the scope because I'm -- as to the two

9    exhibits -- or the two documents that we have, I'll let

10   them show me why it's relevant, but --

11           THE COURT:  I expect they will.

12           MS. BECKER:  Yes.  The last two things are I

13   would like to have the court reporter and any other

14   staff in there sign an acknowledgement of the agreement

15   unless you don't think it's necessary as far as the

16   protective order in this case.

17           And then last, and this is kind of an unusual

18   request, but we -- we work for the State of Kansas and

19   we have some budget issues and I was wondering if the

20   court would -- would have the court reporter give us a

21   free copy of the video because otherwise we won't have

22   it and opposing side will.  And I think that that would

23   be equitable given the fact that we didn't have any

24   notice at all that there would be a videotape.

25           MR. HO:  I mean, Your Honor, we are fine

1    with paying for our copy and making a copy for the

2    defendants.  I don't object to that.

3               THE COURT:  Problem solved.  We're making

4    progress.

5               MS. BECKER:  Okay.

6               THE COURT:  Again, that's just on the

7    videographer's copy; correct?  I mean, you knew you were

8    going to -- this was going to be recorded by

9    stenographic means?

10              MS. BECKER:  Oh, sure, yeah.  No, I just

11    didn't -- I just know that the actual videotapes are

12    kind of expensive.  So, thank you.

13              THE COURT:  Okay.  Fair enough.  Okay.  Does

14    that conclude everything you have, Miss Becker?

15              MS. BECKER:  I believe so.

16              THE COURT:  Okay.  Mr. Ho, anything else?

17              MR. HO:  Oh, just one item in response to

18    the comment I heard from Miss Becker.  I heard

19    Miss Becker refer to two documents in this deposition.

20    But after Your Honor's order was issued, I believe the

21    defendants produced to us a third document that they

22    believed was -- they indicated was responsive to the

23    same document request, and I just wanted to clarify on

24    the record that the defendants don't have any objection

25    to us asking questions about that third document, an

```
 1    e-mail exchange.
 2              MS. BECKER:  No objection to that -- that
 3    one -- that one particular e-mail.  That's fine.  Yeah,
 4    obviously within the scope.
 5              THE COURT:  Okay.  Anything else?
 6              MR. HO:  Nothing from us, Your Honor.
 7              THE COURT:  Okay.  That will close the
 8    public record.  Why don't you all take a short comfort
 9    break, then we'll reconvene in Room 211 for the
10    deposition of Secretary Kobach.  Thank you.
11              (Proceedings adjourned.)
12
13                      CERTIFICATE
14        I certify that the foregoing is a correct
15    transcript from the digital record of proceedings in the
16    above-entitled matter.
17
18    DATE:  September 8, 2017
19
20                   /s/Kimberly R. Greiner
                     KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
21                   United States Court Reporter
22
23
24
25
```