# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEVEN WAYNE FISH, *et al.*, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas, *et al.*,<br><br>  Defendants. | Case No. 16-2105-JAR-JPO |

## PLAINTIFFS' MEMORANDUM OF LAW AND FACTS IN SUPPORT OF THEIR MOTION TO ENFORCE COURT ORDERS AND FOR ORDER TO SHOW CAUSE WHY DEFENDANT KOBACH SHOULD NOT BE HELD IN CONTEMPT

### INTRODUCTION AND NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs Steven Wayne Fish, Donna Bucci, Charles Stricker, Thomas J. Boynton, Douglas Hutchinson, and the League of Women Voters Kansas ("LWVK," and collectively with Fish, Bucci, Stricker, Boynton, and Hutchinson, "Plaintiffs") seek relief to address Defendant Kris Kobach's ("Defendant") continuing and repeated refusal to comply with multiple orders of this Court—in the form of an order to show cause why Defendant should not be held in contempt or, in the alternative, an order to amend court order.

In its Preliminary Injunction Order (the "PI Order"), this Court "directed [Defendant Kobach] to register for federal elections all otherwise eligible motor voter registration applicants that have been cancelled or are in suspense due solely to their failure to provide DPOC." *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1152 (D. Kan. 2016), *aff'd*, 840 F.3d 710 (10th Cir. 2016). Recognizing that effectuation of this relief would require that Defendant provide accurate

1

information to voters, this Court subsequently ordered Defendant to "provid[e] [voters] with *consistent* information about the law as it stands now, with the caveat that it would be subject to further official notice" and to correct erroneous and misleading information given to voters when they register to vote and/or that is publicized online.  *See* Mem. and Order dated Oct. 14, 2016 (Doc. 241) (the "Public Notice Order") at 4 (emphasis added).

Defendant, however, refuses to follow these orders.  Specifically:

1. Defendant refuses to treat Plaintiffs—and other Kansans who registered to vote at the Kansas Department of Motor Vehicles ("DMV") in conformity with the PI Order—as registered voters, by refusing to ensure that they receive a certificate of registration, which contains important voter information such as a voter's polling location.  These certificates of registration are sent to all other registered voters in Kansas after they have successfully registered to vote, and thereby fall within the ambit of the "consistent information" that the Public Notice Order required Defendant to provide to all voters in Kansas.  *See* Public Notice Order at 4.

2. Defendant refuses to correct erroneous information in his *State of Kansas: County Election Manual* ("County Election Manual") (relevant excerpts attached hereto as Exhibit A), the online and official reference guide for local elections workers.  The County Election Manual incorrectly instructs local elections officials that "[a]ny" voter registration applicant—which appears to include those covered by the PI Order—must submit documentary proof of citizenship ("DPOC") in order to become registered to vote.  Ex. A County Election Manual at 12-13.

These violations could be cured easily.  Defendant could simply: (1) instruct local elections officials to treat covered voters like all other registered voters in the state by sending them certificates of registration; and (2) add two to three sentences in the County Election

Manual explaining that, at this time, certain voter registration applicants are exempt from the DPOC requirement.

Yet, despite numerous efforts by Plaintiffs over the past six months to obtain Defendant's compliance, Defendant has refused, and has stated that he will not take corrective action *even if final judgment is rendered against him after trial*.  *See* Ex. B December 7, 2017 Email from D. Ho to S. Becker ("December 7, 2017 Ho Email").  Relief cannot wait until all appeals have been exhausted.  This year (2018) is a federal election year, and Kansans are applying to register to vote every day.  Plaintiffs are therefore left with no choice but to seek immediate relief from this Court.

To the extent that the Court finds that such relief is not covered by the PI Order and the Public Notice Order, Plaintiffs respectfully request that the Public Notice Order be amended to state explicitly that Defendant must:

1. Instruct local elections officials to send certificates of registration to covered voters; and

2. Update the County Election Manual immediately to make clear that, at this time, covered voters are exempt from the DPOC requirement.

## STATEMENT OF FACTS

**I. THE OCTOBER 14, 2016 PUBLIC NOTICE ORDER**

1. On September 23, 2016, Plaintiffs filed a Motion to Enforce Preliminary Injunction; for Order to Show Cause Why Defendant Kobach Should Not be Held in Contempt; and for Expedited Briefing and Hearing.  *See* Doc. 221.

2. In response to Plaintiffs' Motion to Enforce Preliminary Injunction; for Order to Show Cause Why Defendant Kobach Should Not be Held in Contempt; and for Expedited

Briefing and Hearing, *see* Doc. 221, this Court on October 14, 2016 issued the Public Notice Order.  *See* Public Notice Order.

  3. In the Public Notice Order, the Court explained that Defendant is responsible for "providing [voters] with *consistent* information about the law as it stands now, with the caveat that it would be subject to further official notice." *Id.* at 4 (emphasis added).

  4. The Public Notice Order also noted that the Court had "made clear" during an October 5, 2016 telephone conference that Defendant "was responsible for correcting the information on the State's website to provide clear guidance to Kansas citizens seeking registration information, and that the notices at the DMV given to new motor voter registrants also must be modified." *Id.* at 3.

  5. The Public Notice Order further set forth the specific language that Defendant was to employ on the KSOS website and on the DMV Receipts. *Id.* at 4-5.

## II. THE JULY 19, 2017 BONNEY LETTER

  6. On July 19, 2017, Plaintiffs' counsel sent Defendant a letter asking Defendant to, *inter alia*, "immediately remove" misleading language from the KSOS website instructing motor-voter applicants covered by the PI Order that, "[f]or elections that take place after the November 8, 2016 general elections, it is at this time unknown whether you will be registered to vote…" Ex. C July 19, 2017 Letter from D. Bonney to K. Kobach ("Bonney Letter").  The Bonney Letter explained that this language on the KSOS website violated the Public Notice Order and should be removed.

  7. On July 27, 2017, Defendant acknowledged receipt of the Bonney Letter, *see* Ex. D July 27, 2017 Confirmation of Receipt Email from S. Becker.  Defendant did not indicate that he would take any of the steps that Plaintiffs' counsel had requested.  *Id.*

4

8.	More than one month later, on August 31, 2017, Plaintiffs' counsel sent Defendant a follow-up email regarding the same issues, to which Defendant never responded. *See* Ex. E August 31, 2017 Follow-Up Email from D. Bonney.

### III.	THE NOVEMBER 10, 2017 HO LETTER

9.	On November 10, 2017, Plaintiffs' counsel sent another letter to Defendant to provide another opportunity to comply with the PI Order and the Public Notice Order. Ex. F November 10, 2017 Letter from D. Ho to G. Roe ("First Ho Letter").

10.	The First Ho Letter also informed Defendant of his failure to comply with this Court's orders in several respects. *Id.*

11.	In addition to noting inaccuracies on the KSOS website identified in the August Bonney Letter, the First Ho Letter noted that Defendant had failed to ensure that certificates of registration are sent to motor-voter applicants who, pursuant to this Court's PI Order, must be registered to vote. *See Fish*, 189 F. Supp. 3d at 1152.

12.	A certificate of registration is a notice document mailed to voters who successfully register to vote in Kansas, and which contains information including the voter's voting precinct, party affiliation, polling location, and the voter's districts for various offices, including for the United States House of Representatives. *See* Ex. G Sample Certificate of Registration.

13.	The First Ho Letter noted that Defendant is under multiple court orders to register certain voter registration applicants whose applications are complete but who do not provide DPOC—namely, motor-voter applicants covered by this Court's PI Order, *see Fish*, 189 F. Supp. 3d at 1152; and Federal Form applicants pursuant to a ruling by the U.S. Court of Appeals for the D.C. Circuit, *see League of Women Voters of the United States v. Newby*, 838 F.3d 1, 14-15

(D.C. Cir. 2016). The letter therefore asked Defendant to "instruct all local elections authorities to send certificates of registration to all voters registered pursuant to th[o]se court orders immediately." Ex. F First Ho Letter.

14. The First Ho Letter also explained that the County Election Manual provides incorrect instructions to county elections officials, in contravention of the PI Order. The chapter on voter registration in the County Election Manual incorrectly states that "*[a]ny person*" who registers to vote for the first time in Kansas must provide DPOC:

> **Any person registering to vote in Kansas for the first time is required to provide satisfactory evidence of United States citizenship** … Individuals registered in Kansas before January 1, 2013 are deemed to have submitted satisfactory evidence of citizenship and are exempt from this requirement … Any office, person or organization conducting voter registration must be made aware of this citizenship verification requirement.

Ex. A County Election Manual at 12-13 (emphasis added); Ex. F First Ho Letter.

15. Despite noting that one class of voters is exempt from the DPOC requirement—namely, those who registered before 2013—the County Election Manual omits the fact that, under this Court's PI Order and the D.C. Circuit's ruling in *Newby*, motor-voter applicants and Federal Form users do not need to provide DPOC in order to become registered. *See* Ex. A County Election Manual at 12-13; *see also Newby*, 838 F.3d at 14-15.

16. The County Election Manual is publicly available on the KSOS website at https://www.kssos.org/forms/elections/County%20Election%20Manual%20(Combined).pdf.

17. The First Ho Letter asked Defendant to "revise [the County Election Manual] immediately." Ex. F First Ho Letter.

**IV. THE NOVEMBER 21, 2017 BECKER RESPONSE**

18. On November 21, 2017, Defendant's counsel responded to the First Ho Letter. *See* Ex. H November 21, 2017 Letter from S. Becker to D. Ho ("Becker Response").

6

19. In the Becker Response, Defendant acknowledged that the language found on the KSOS website was "poorly worded" and agreed to partially modify it. *Id.*

20. Defendant did not agree to instruct local elections authorities to send certificates of registration to covered motor-voter applicants or to Federal Form users. *See id.* Defendant's counsel asserted that certificates of registration are unnecessary because "those who register to vote using the federal form or the motor-voter form but do not provide DPOC receive the court-ordered notices." *Id.* Defendant offered no explanation as to why all other registered voters receive these supposedly "unnecessary" notices, while covered voters do not. *See id.*

21. Defendant also did not agree to correct the County Election Manual to reflect current law—*i.e.*, that motor-applicants and Federal Form users do not have to provide DPOC to become registered to vote. *See id.* Defendant's counsel claimed that, although the County Election Manual is publicly-available online, it is "for internal use in election administration" and that it "is currently scheduled to be revised next year to incorporate any changes since its last revision in 2014." *Id.* Defendant's counsel further contended that changes in election law are communicated to (unnamed and unidentified) county officials in "real time email or telephonic communications." *Id.*

## V. THE NOVEMBER 30, 2017 HO REPLY

22. On November 30, 2017, Plaintiffs' counsel responded to the Becker Letter. *See* Ex. I November 30, 2017 Letter from D. Ho to S. Becker ("Second Ho Letter").

23. In the Second Ho Letter, Plaintiffs' counsel reiterated the requests that were made in the First Ho Letter by asking Defendant to:

- "Instruct local elections authorities to send certificates of registration to *all* covered voters;" and

- Update the publicly available County Election Manual "to reflect the current state of the law."

*Id.*

## VI. THE DECEMBER 7, 2017 MEET-AND-CONFER

24. Defendant's counsel and Plaintiffs' counsel held a meet-and-confer on December 7, 2017 to discuss the issues raised in the Second Ho Letter.

25. During the meet-and-confer, Defendant's counsel stated that Defendant would not instruct local elections authorities to send certificates of registration to individuals who registered to vote at the DMV or who registered to vote using the Federal Form, but who failed to provide DPOC.

26. Defendant's counsel claimed that these certificates are "unnecessary," because covered voters receive other notices that this Court has approved.

27. Defendant's counsel also refused to make modifications to the County Election Manual—which Defendant's counsel described as a "reference" guide for all local election workers that states what the law currently is.

28. Defendant's counsel stated that the County Election Manual is scheduled to be revised by June 2018.

29. Defendant's counsel explained that even if this Court were to issue final judgment against Defendant, KSOS would not modify the language in the County Elections Manual to reflect such a judgment. To the contrary, Defendant's counsel stated that KSOS would only modify the language in SOF ¶14 if either:

- The Tenth Circuit upheld this Court's final judgment against Defendant, and the Supreme Court denied Defendant's petition for *certiorari*; or

8

- The Supreme Court ruled against Defendant on the merits.

*See* Ex. B December 7, 2017 Ho Email.

30. Following the meet-and-confer, Plaintiffs' counsel and Defendant's counsel exchanged emails confirming that further discussion on these issues would not be productive. *See id.*

## VII. THE DECEMBER 11, 2017 BECKER LETTER

31. On December 11, 2017, Defendant's counsel sent Plaintiffs' counsel a letter. Ex. J December 11, 2017 Letter from S. Becker to D. Ho ("Second Becker Letter").

32. Reiterating her position from the meet-and-confer, Defendant's counsel stated that "covered individuals"—individuals who register to vote at the DMV but do not provide DPOC—will not receive certificates of registration. *Id.*[1]

33. Defendant's counsel also stated: "The [County Election Manual] will not be changed until there is a final change in the law." *Id.*

## ARGUMENT

### I. LEGAL STANDARD

This Court "has broad discretion to use its contempt powers to ensure adherence to its orders." *Retiree, Inc. v. Anspach*, No. 12-2079-JAR, 2014 WL 2986654, at *11 (D. Kan. July 2, 2014) (Robinson, J.), *aff'd in part*, *rev'd in part on separate grounds*, No. 15-3101, 2016 WL 4401578 (10th Cir. Aug. 17, 2016). "Civil contempt occurs when a party fails to comply with a court order," regardless of intent. *Universal Motor Oils, Co. v. Amoco Oil Co.*, 743 F. Supp. 1484, 1487 (D. Kan. 1990). Specifically, in a motion for civil contempt, the movant bears the

---

[1] The Second Becker Letter also confirmed—four months after Plaintiffs' counsel first asked—that Secretary Kobach had searched his personal Gmail account for documents responsive to each of Plaintiffs' requests. *See* Ex. J Second Becker Letter.

9

initial burden of establishing by clear and convincing evidence that: "(1) a valid court order existed, (2) [the opposing party] had knowledge of the order and (3) [the opposing party] disobeyed the order." *Premium Nutritional Prods., Inc. v. Ducote*, 571 F. Supp. 2d 1216, 1217 (D. Kan. 2008) (internal citations omitted). Once the movant has "made [a] prima facie case," the burden shifts to the defendant who "must prove plainly and unmistakably his inability to comply with the order of the court." *Donovan v. Burgett Greenhouses, Inc.*, 759 F.2d 1483, 1486 (10th Cir. 1985) (internal quotation marks and alteration omitted). Further, this Court has the discretion to award attorneys' fees "incurred in bringing and prosecuting [a] contempt motion." *Premium Nutritional Prods., Inc.*, 571 F. Supp 2d at 1220.

## II. DEFENDANT HAS REPEATEDLY REFUSED TO COMPLY WITH THE ORDERS OF THIS COURT AND IS THEREFORE IN CONTEMPT

There is no dispute that valid court orders—namely, the PI Order and the Public Notice Order—exist in this case, and that Defendant is aware of those orders. *See id.* at 1217. As explained below, Defendant has violated those orders in at least two respects, meriting an order finding him in contempt.

### A. Defendant Refuses to Provide Covered Voters with the Same Voter Information Provided to Other Registrants in Kansas

*First*, Defendant refuses to instruct local elections authorities to send certificates of registration to Plaintiffs and other voters who registered to vote through the motor-voter registration process or using the Federal Form, unless such a registrant submitted DPOC. *See* SOF ¶¶ 20, 25, 32.

This failure is a violation of both the PI Order and the Public Notice Order. In the PI Order, this Court "directed [Defendant Kobach] to *register* for federal elections all otherwise eligible motor voter registration applicants that have been cancelled or are in suspense due solely to their failure to provide DPOC." *Fish*, 189 F. Supp. 3d at 1152 (emphasis added). All other

10

registered voters in Kansas receive certificates of registration, which confirm that a voter registration applicant's registration is officially complete, and contain important information for voters, including their voting precinct, party affiliation, polling location, and districts for various offices, including for the United States House of Representatives.  SOF ¶ 12.  And yet, Defendant treats covered voters as second-class voters by depriving them of the same documents and voting information that all other registered voters receive.

Moreover, in the Public Notice Order, this Court directed Defendant to "provid[e] [voters] with *consistent* information about the law as it stands now."  Public Notice Order at 4 (emphasis added).  The Public Notice Order also reiterated that it was not the first time that the Court had "made clear" to Defendant that he "was responsible for … provid[ing] clear guidance to Kansas citizens seeking registration information."  *Id.* at 3.  But notwithstanding this Court's clear directive that all voters are to receive "consistent information," Public Notice Order at 4, Defendant continues to deprive covered voters of important information that all other Kansas registrants receive—namely, the certificates of registration.  *See* SOF ¶¶ 20, 25, 32.

During a meet-and-confer with Plaintiffs' counsel, Defendant's counsel claimed that these certificates are "unnecessary" because covered voters receive other notices that this Court has approved.  SOF ¶ 26.  This contention is inapposite.  As this Court explained in the Public Notice Order, "[i]t is not a matter of providing more instead of less information to voters. It is a matter of providing them with *consistent* information."  Public Notice Order at 4 (emphasis added).  Defendant has chosen to disregard that directive, which itself was necessitated by Defendant's failure to comply with the PI Order.  *See* SOF ¶ 2.  Indeed, Defendant's refusal to

provide covered voters with the same information can only be understood as an effort to undermine the effectiveness of the PI Order.[2]

This is contempt of court.  Plaintiffs have no choice but to request that this Court issue an order to enforce its prior orders, pursuant to which Defendant will be required to instruct local elections authorities to send certificates of registration to all individuals who registered to vote through the motor-voter registration process or with the Federal Form, regardless of whether such registrants have submitted DPOC.

      **B.**      **Defendant Incorrectly Instructs Local Elections Officials that "Any Person Registering to Vote in Kansas" Must Provide DPOC**

*Second*, Defendant has failed to correct the County Election Manual to ensure that county elections officials receive instructions consistent with the PI Order.  SOF ¶¶ 21, 27, 33.  This failure, much like Defendant's refusal to send certificates of registration to covered voters, is a violation of the Public Notice Order's directive that Defendant is to "provid[e] [voters] with *consistent* information about the law as it stands now."  Public Notice Order at 4 (emphasis added).  Further, the Public Notice Order also specifically stated that Defendant "[i]s responsible for correcting the information on the State's website to provide clear guidance to Kansas citizens seeking registration information."  *Id.* at 3.

---

[2]    While it is true that the Public Notice Order did not explicitly address certificates of registration, Defendant should not be permitted to ignore the Public Notice Order's directive that all voters are to receive "consistent information" simply because the Court did not spell out in detail—as it did with respect to the language found on the KSOS website and the DMV receipts, *see* SOF ¶ 5—that the certificates of registration fall within the ambit of the "consistent information" that all voters are to receive.  *See* Public Notice Order at 4.  To find otherwise would require the Court to address explicitly each individual type of communication between KSOS and voters—a clearly untenable proposition.

12

Notwithstanding these clear directives, the chapter on voter registration in the County Election Manual—which is available on the KSOS website, SOF ¶ 16—does not even acknowledge the effect of the PI Order, let alone provide the local elections officials who rely upon it for instructions on how to comply with the PI Order with accurate guidance. To the contrary, it incorrectly states:

> **Any person registering to vote in Kansas for the first time is required to provide satisfactory evidence of United States citizenship** … Individuals registered in Kansas before January 1, 2013 are deemed to have submitted satisfactory evidence of citizenship and are exempt from this requirement … **Any** office, person or organization conducting voter registration must be made aware of this citizenship verification requirement.

*See* SOF ¶ 14 (emphasis added).[3] Notably, despite clarifying that voters who applied to register before 2013 are exempt from the DPOC requirement, the County Election Manual omits that motor-voter applicants and Federal Form users are similarly exempt. SOF ¶ 15. The implication of this text is therefore to instruct local elections workers that motor-voter applicants are in fact currently subject to the DPOC requirement, and may not be registered unless they provide DPOC—in direct contravention of this Court's PI Order.

Both of Defendant's justifications for failing to correct the County Election Manual are unavailing. Defendant first states that the County Election Manual will not be updated because it is intended only "for internal use in election administration." *See* SOF ¶ 21. But that is irrelevant; the County Election Manual is publicly available on the KSOS website, SOF ¶ 16, meaning that members of the public can easily discover it and become confused by its voter

---

[3]  Likewise, the County Election Manual fails to inform the local elections officials who rely upon it that individuals who register to vote using the Federal Form also do not need to provide DPOC. *See Newby*, 838 F.3d at 14-15 (enjoining Elections Assistance Commission from allowing Kansas to require Federal Form registrants to produce DPOC as a condition of voter registration); *see also* SOF ¶ 15.

registration instructions, which plainly contravene the PI Order. *See* SOF ¶ 14. Further, even if the County Election Manual were truly only for "internal use," *see* SOF ¶ 21, there is no justification for memorializing incorrect information that contradicts the PI Order within the definitive reference resource guide used by the local elections officials who must administer voter registration in Kansas. *See* SOF ¶¶ 14, 21, 27, 33.

Defendant next claims that the County Election Manual does not need to be updated because changes in election law are supposedly communicated to some unidentified county officials in "real time email or telephonic communications." *See* SOF ¶ 21. Even if it were true that such communications are taking place—and Defendant has not offered any evidence of such communications—such communications do not absolve Defendant from his obligation to provide voters "with consistent information about the law as it stands now, with the caveat that that it would be subject to further official notice." Public Notice Order at 4. One-off verbal communications with some unnamed county employees are insufficient to meet this burden and to counteract incorrect written instructions contained in the "reference" guide upon which local elections officials rely whenever they are faced with a question about applicable law. *See* SOF ¶ 27. In the face of contrary written instructions, such verbal instructions do not ensure that all local elections officials—and by extension Kansas citizens—receive "consistent information about the law as it stands now" as required by the Public Notice Order. Public Notice Order at 4. At best, it is extremely confusing to receive written instructions from KSOS that are contradictory to verbal ones. At worst, covered Kansas citizens will be denied their right to

register to vote by local elections workers who misunderstand the law thanks to Defendant's erroneous instructions.

Once again, this is contempt of court, and an order to enforce court orders from this Court is needed to enforce the PI Order and the Public Notice Order. In particular, Defendant should therefore be ordered to immediately update the County Election Manual to make clear that, at present, certain classes of voter registration applicants are exempt from the DPOC requirement.

### III. THIS COURT SHOULD ENTER RELIEF NOW RATHER THAN WAIT UNTIL FINAL JUDGMENT IS ENTERED

These issues should be resolved now, rather than after final judgment. As is clear from the above, Defendant is once again in willful and continuing violation of this Court's orders. This year is a federal election year, and Kansans are applying to register to vote every day. Defendant's ongoing defiance of the Court risks misinformation and disenfranchisement of these voters. Trial is still approximately two months away in March, and final judgment will not follow for some time thereafter. Every day that these violations go uncorrected is another day closer to the August primary elections. There is no reason why the Public Notice Order and the PI Order should not be fully enforced immediately, pending a determination of final judgment.

In any event, waiting until final judgment will not resolve these issues, as Defendant's counsel has made clear that Defendant will not change the County Election Manual *even upon entry of a final judgment from this Court*. SOF ¶ 29. Defendant's counsel instead specifically stated that KSOS would not change the County Election Manual unless either: (i) the Tenth Circuit rules against Defendant on the merits, and the Supreme Court denies a petition for *certiorari* or (ii) the Supreme Court rules against Defendant on the merits. *Id.*

In other words, absent immediate intervention from the Court, Defendant has made clear his intention to disregard this Court's orders, potentially for *several years* to come. Given his

15

intransigence, and the fact that Kansans are registering to vote in anticipation of the federal elections to be held later this year, immediate relief is appropriate.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD AMEND THE PUBLIC NOTICE ORDER

To the extent that the Court finds that the relief sought by Plaintiffs is not covered by the PI Order and the Public Notice Order, we respectfully request that the Court amend its Public Notice Order to explicitly direct Defendant to:

1. Instruct local elections officials to send covered voters certificates of registration; and

2. Update the County Election Manual immediately to make clear that, at this time, covered voters are exempt from the DPOC requirement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court judge Defendant in civil contempt. Plaintiffs further request this Court to issue an order enforcing its previously issued PI Order and Public Notice Order. Specifically, Plaintiffs request that such an order to enforce court orders directs Defendant to:

1. Instruct local elections authorities to send certificates of registration to individuals who registered to vote at the DMV or using the Federal Form, regardless of whether such registrants have submitted DPOC; and

2. Correct the County Election Manual to make clear that individuals who apply to register to vote through the DMV or using the Federal Form need not submit DPOC.

Further, because of the flagrant manner in which Defendant has violated multiple court orders, Plaintiffs believe that an appropriate remedial sanction to impose upon Defendant is the attorneys' fees incurred in connection with the preparation of this motion.

In the alternative, Plaintiffs respectfully request the Court to modify its Public Notice Order to explicitly direct Defendant to:

1. Instruct local elections officials to send covered voters certificates of registration; and

2. Update the County Election Manual immediately to make clear that, at this time, covered voters are exempt from the DPOC requirement.

DATED this 8th day of January, 2018.

Respectfully submitted,

| | |
|---|---|
| /s/ Stephen Douglas Bonney | /s/ Dale E. Ho |
| STEPHEN DOUGLAS BONNEY (#12322) | DALE E. HO* |
| American Civil Liberties Union of Kansas | R. ORION DANJUMA* |
| 6701 W 64th St., Suite 210 | SOPHIA LIN LAKIN* |
| Overland Park, KS 66202 | American Civil Liberties Union Foundation, |
| Phone: (913) 490-4100 | 125 Broad St. |
| Fax: (913) 490-4119 | New York, NY 10004 |
| dbonney@aclukansas.org | Phone: (212) 549-2693 |
| | dale.ho@aclu.org |
| | odanjuma@aclu.org |
| | slakin@aclu.org |
| | |
| NEIL A. STEINER* | ANGELA M. LIU* |
| REBECCA KAHAN WALDMAN* | Dechert LLP |
| DAPHNE T. HA* | 35 West Wacker Drive |
| Dechert LLP | Suite 3400 |
| 1095 Avenue of the Americas | Chicago, Illinois 60601-1608 |
| New York, NY 10036 | Phone: (312) 646 5816 |
| T: (212) 698-3822 | Fax: (312) 646 5858 |
| F: (212) 698-3599 | angela.liu@dechert.com |
| neil.steiner@dechert.com | |
| rebecca.waldman@dechert.com | |
| daphne.ha@dechert.com | |

*Counsel for Plaintiffs*

* admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 8th day of January, 2018, I electronically filed the foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ *Stephen Douglas Bonney*
STEPHEN DOUGLAS BONNEY (#12322)

*Attorney for Plaintiffs*