## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEVEN WAYNE FISH, et al.,     ) | |
|                         ) | |
|     Plaintiffs,       ) | |
|                         ) | |
| v.                         ) | Case No. 16-2105-JAR-JPO |
|                         ) | |
| KRIS KOBACH, in his official capacity as  ) | |
| Secretary of State for the State of Kansas,  ) | |
|                         ) | |
|     Defendant.       ) | |
| _____  ) | |

## DEFENDANT KRIS KOBACH'S FINAL WITNESS DISCLOSURES

Comes now Defendant Kris Kobach, by and through his attorneys, and hereby identifies

the following witnesses for trial:

Experts (live):

1.      Dr. Jesse Richman

Dr. Richman will testify consistent with his expert reports and deposition given in this case on 4/21/17.  Dr. Richman's testimony can be briefly summarized as being that evidence exists that a substantial number of noncitizens have registered or attempted to register to vote in Kansas. Pursuant to Federal Rule of Civil Procedure 26(e)(2) and this Court's Order (Document 425), Defendant supplements Dr. Richman's expert opinions based on new data that became available in July, 2017 and January, 2018.  Dr. Richman's additional opinions are consistent with his previous testimony and reports, and are attached to this disclosure as Exhibit 1.

2.      Hans von Spakovsky

Mr. von Spakovsky will testify consistent with his expert reports and deposition given in this case on 6/01/16.  Mr. von Spakovsky's testimony can be briefly summarized as addressing the existence of noncitizen registration and voting in Kansas and in the United States. Additionally, Spakovsky will testify about the alternatives to requiring documentary proof of citizenship as being insufficient.  Spakovsky will also testify that the Kansas law is not a burden.

3.      Dr. Steven A. Camarota

Dr. Camarota will testify consistent with his expert reports and deposition given in this case on 10/17/16.  Dr. Camarota's testimony can be briefly summarized as he finds no evidence that the Kansas law adversely impacted voter registration or participation rates of US citizens in Kansas, rebutting Plaintiffs' expert witness testimony and the effect of the Kansas law.

Fact witnesses (live):

4.      Bryan Caskey, Kansas Elections Director

Mr. Caskey is expected to testify regarding Secretary of State policies and procedures in the conduct of Kansas elections and voter registration. Mr. Caskey will further testify regarding noncitizen voting and registration, and other testimony consistent with other subject matters addressed in his depositions given in these cases on 12/01/15, 4/06/16, 6/15/16 and 3/28/17.

5.      Tabitha Lehman, Sedgwick Co. Elections Commissioner

Ms. Lehman is expected to testify regarding her knowledge and experience with noncitizens attempting to register to vote in Sedgwick County, her knowledge of Sedgwick County and consistent with other subject matters addressed in her depositions given in this case on 4/06/16 and 4/21/17.

Fact witnesses (by written deposition):

6.      Jameson Beckner, Assistant Kansas Elections Director

Mr. Beckner is expected testify regarding his knowledge of voter registration and noncitizens attempting to register to vote.  Mr. Beckner will further testify consistent with other subject matters addressed in his deposition given in this case on 3/29/17.

7.      Brad Bryant, Former Kansas Elections Director. 785-296-3483. 120 SW 10 Ave., Topeka, Kansas 66612.

Mr. Bryant is expected to testify regarding his knowledge of voter registration and noncitizens attempting to register to vote.  Mr. Bryant will further testify consistent with other subject matters addressed in his deposition given in this case on 3/29/17.

8.      Pat McFerron, President, CHS Associates, 511 Couch Dr., Oklahoma City, OK.  405-415-3017.

Mr. McFerron is expected to testify regarding the survey he designed and conducted of Kansans in May of 2016.  Mr. McFerron will testify consistent with other subject matters addressed in his deposition given in this case on 6/07/16 including how the study was conducted and its results.

Mr. McFerron will testify that after controlling for gender, age, and geographic region in order to replicate US Census information, the study revealed that requiring proof of citizenship in order to register to vote is not a concern for residents and is not hampering voter registration.  Among those not registered to vote, only one (who later acknowledged having access to a birth certificate) mentioned documentation as a reason for not being registered to vote.  This was far outdistanced by those who said they had no interest in voting, those with felony convictions and those who for personal reasons (having moved, just turned of age, or had not made time) had not registered to vote.  Fully 96% of the respondents with legal status indicated they had ready access to a birth certificate showing them being born in the United States or on a US territory.  When just including a US Passport option, this percentage grows to 98% having one of these two documents.  This increases to 99% when including other hospital records or military records.  Access to a birth certificate is nearly universal with all age and income groups reporting 95% having access. Similarly, those of Hispanic descent are just as likely to have access to a birth certificate showing US birth (96%) as are those not of Hispanic descent (96%). Not only does this law not provide an obstacle to legal residents voting, it is embraced by them. Fully 77% of all respondents favor the law and only 14% oppose it.  Even among those not registered to vote, 77% are supportive of the

law.  This group is actually less opposed (10%) than are those who are registered to vote (1 5%).

9.      Michaela Butterworth, Ks. Dept. of Revenue, Topeka, Kansas 66612. 785-296-1069.
Ms. Butterworth is expected to testify about training and procedures that DMV employees receive
to learn how to process motor-voter applications.  Ms. Butterworth will further testify consistent
with her deposition given on 6/10/16.

10.      Julie Earnest, Driver's License Manager, Ks. Dept. of Revenue, 225 S. Walnut, Ottawa, KS
66076. 785-242-1276.
Ms. Earnest is expected to testify regarding KDR procedures and process for driver's license
issuance and handling motor-voter responsibilities.  Ms. Earnest will further testify consistent with
her deposition given in this case on 6/10/16.

11.      Doug Appenfeller, Application Programmer for Kansas Dept. of Revenue.  Topeka, Kansas
66612. 785-296-2381.  Mr. Appenfeller is expected to testify regarding the transfer of information
from the KDR to election officials.  Mr. Appenfeller will further testify consistent with his
deposition given in this case on 6/10/16.

12.      Scott Abbott, KDR Information Services Manager, Topeka, Kansas 66612. 785-296-2381.
Mr. Abbott will testify regarding differences in processing licenses for temporary noncitizen
residents and permanent residents, consistent with his deposition given in this case on 6/10/16.

13.      Doug Hutchinson, plaintiff

14.      Steven Fish, plaintiff

15.      Tom Boynton, plaintiff

16.      Charles Stricker, plaintiff

17.      Donna Bucci, plaintiff

18.      Marge Ahrens, plaintiff


Date:  January 30, 2018                          Respectfully submitted,


                                                 /s/ *Sue Becker*
                                                 Kris W. Kobach, Kansas Bar No. 17280
                                                 Sue Becker, Kansas Bar No. 27806
                                                 Garrett Roe, Kansas Bar No. 26867
                                                 **KANSAS SECRETARY OF STATE'S OFFICE**
                                                 120 S.W. 10th Ave.
                                                 Topeka, KS 66612
                                                 Telephone: (785) 296-4575
                                                 Facsimile: (785) 368-8033

Email: kris.kobach@ks.gov
sue.becker@ks.gov
garrett.roe@ks.gov

*Attorneys for Defendant Kobach*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 30th day of January, 2018, I electronically

filed the above and foregoing document using the CM/ECF system, which automatically sends

notice and a copy of the filing to all counsel of record.

/s/ Sue Becker
Sue Becker
*Attorney for Defendant Kobach*

# EXHIBIT 1

STEVEN WAYNE FISH, et al., V. KRIS KOBACH, U.S. District Court for the District of
Kansas, Case No. 16-2105

PARKER BEDNASEK V.  KRIS KOBACH, U.S. District Court for the District of Kansas, Case
No. 2: 15-CV-9300

*Additional Disclosures*
*Jesse T. Richman PhD*

Jesse T. Richman

_____*1/30/2018*_____
*Date*

1

## Summary

1. The availability of additional data during the time since my expert report has made it possible to perform several additional analyses.  This report briefly summarizes additional analyses that have helped inform my opinion.  This report has three sections. The first discusses updates to my analysis of the national Cooperative Congressional Election Study (CCES) using data that became available in July 2017.  The second discusses my analysis of Kansas respondents to the CCES using this data and a dataset that was made available on January 24, 2018.  The third section is based upon the availability to me of data I had requested previously but not received until 1/29/2018 which allowed me to construct an extrapolation from the match of the TDL and voter file lists performed by Caskey to the broader Kansas non-citizen population.

## Analysis of 2016 National CCES

2. The release of data from the 2016 CCES survey in July 2017 allowed me to extend my analysis of the national CCES to include additional data, and also allowed me to expand my analysis of the Kansas CCES, increasing the sample size of the Kansas analysis from 18 to 27.  I also endeavored to address in my analysis many of the concerns raised in the rebuttal reports concerning weighting and survey response errors.

3. The 2016 CCES data was weighted to match national non-citizen demographics in terms of age, race and Hispanic origin, gender, education, and marital status using the iterative procedure known as "raking."

4.  With the resulting weights applied, I analyzed the percentage of individuals who said that they were non-citizens and said that they were registered to vote and/or had validated registration status.  This replicates but with weights and for 2016 the analysis in Table 1 of my rebuttal report.

5.  Table 1 of that report had analyzed an "Estimate that 19.8 percent of non-citizens gave at least one indication of being registered to vote (either said they were registered to vote or validated registration status).  Confidence Intervals for 488 individual sample with p = 0.198 (19.8%)."  This can be updated using the 2016 CCES.  The revised estimate is that 19.9 percent of non-citizens gave at least one indication of being registered to vote (either said they were registered to vote or had validated registration status.  The confidence intervals for a 1368 individual sample with p = 0.199 (19.9%) are as follows for different methods of calculating confidence intervals: Binomial 17.9% to 22.2%, Wald 17.8% to 22.1%, Agresti 17.9% to 22.2%, Jeffreys 17.9% to 22.1% and Willson, 17.9 to 22.2%.

6.  As before, I also examined the percentage of all non-citizens in the survey who simultaneously indicated that they were registered to vote and had a validated voter registration record.  Overall, a weighted total of 28 or 2.1 percent of non-citizens fell into this category.  The confidence intervals for a 1368 individual sample with p = 0.208 (2.1%) are as follows for different methods of calculating confidence intervals: Binomial 1.4% to 2.9%, Wald 1.3% to 2.8 %, Agresti 1.4% to 3.0%, Jeffreys 1.4% to 2.9% and Willson, 1.4 to 2.9%.

7.  Ansolabehere et. al. 2015 had raised the concern that some citizens might accidentally
    state that they were non-citizens, thereby biasing the measures.  Using the error rate
    calculated in Richman, Earnest, and Chattha (2017) which was attached to my initial
    report, I have responded to this concern by estimating how many citizens might have
    inaccurately stated that they were non-citizens and been registered to vote from a sample
    the size of the CCES 2016 sample of citizens.  For the more restrictive measure of
    registration (said registered and had validated registration status) this estimate is that
    approximately 14 self-reported non-citizens were in fact citizens.  For the less restrictive
    measure of registration (said registered and/or validated registration status) I estimate that
    approximately 21 self-reported non-citizens were in fact citizens. These estimates allow
    me to create updated estimates that are responsive to this concern, yet demonstrate
    continued evidence of non-citizen registration.

8.  The analysis in the previous paragraph makes it possible to construct updated estimates
    that account for potential bias resulting from citizens misstating their citizenship status.
    Taking the more restrictive criterion (said registered and validated registration) first I find
    a conservative final adjusted estimate which indicates that 1.04 percent of actual non-
    citizens nationwide both said they were registered to vote and had a validated registration
    status.   Translating this directly to the Kansas context would imply roughly
    $1.04*115,550 = 1202$ non-citizens registered to vote in the state of Kansas.

9.  To calculate confidence intervals I use a bootstrap method involving repeatedly drawing
    samples of two quantities: 1. of the number of citizens who misstated their citizenship
    status, said they were registered to vote and had validated registration, and 2. samples of

4

all individuals who indicated that they were non-citizens, said they were registered and

had validated registration status.  I then subtract the citizen "non-citizen" sample from the

overall "non-citizen" sample to estimate the number of actual non-citizens with validated

registration status who said they were registered to vote.  After drawing 10000 such

simulations, I examined the 95 percent confidence interval for the estimate of the number

of actual non-citizens.  The resulting 95 percent confidence interval runs from 0.15

percent at the low end to 2.0 percent at the high end.   At the high end this is an estimate

that implies 2281 non-citizens registered to vote in Kansas, while at the low end the

implication is 169.

10. The other revised estimate is that 18.4 percent of actual non-citizens provided at least

some indication of being registered to vote.  This value is only marginally less and hardly

qualitatively different from the value originally estimated.  With confidence intervals

bootstrapped as above, the confidence interval for this estimate is 16.2 percent to 20.6

percent.  The relevant numbers of non-citizens if extrapolated to Kansas would be 18752

to 23819.

Update of Kansas CCES analysis.

11. In my initial and rebuttal reports I discussed estimates based upon the set of Kansas

respondents to the CCES.  The availability of additional data has created the opportunity

to update these estimates as well through the addition of added survey responses from the

2016 CCES.  Specifically, in 2016 9 individuals responded to the KS CCES survey that

they were non-citizens.  Of these, 2 said that they were registered to vote (and one had a

validated voter registration status as well).

12. I now proceed to update the estimate discussed in Table 2 of my rebuttal report as

   "Estimate that 4 of 18 KS CCES respondents from 2006 through 2014 reported that they

   were non-citizens and that they were registered to vote. Confidence Intervals for 18

   individual sample with p = 0.222 (22.2%)."

13. One update involves fixing two data analysis errors for the 2014 survey that were made

   by an expert for the plaintiffs.  Ansolabehere had asserted in his report that no Kansas

   non-citizens in 2014 indicated that they were registered to vote, and in my rebuttal report

   I took his word for it.  I have since checked that value and realized that two of the four

   Kansas CCES respondents who identified themselves as non-citizens in 2014 did in fact

   indicate that they were registered to vote.  I have consequently revised the count of KS

   non-citizens who indicated that they were registered to vote to correct this error.

14. The revised estimate of the unweighted overall percentage of Kansas self-reported non-

   citizens who indicated that they were registered to vote is 8 of 27 or 29.6 percent.  The

   additional sample also tightens the confidence intervals somewhat.  The revised

   confidence interval using the Wald method is 12.4 percent to 46.9 percent, for the

   Agresti-Coull method 15.7 to 48.7 percent, for the Jefferies method 15.1 to 48.3 percent,

   for the Wilson method 15.9 to 48.5, and for the exact method 13.8 to 50.2 percent.

15. This estimate remains significantly above zero when I adjust for simulated errors by

   citizens who misstate that they are non-citizens using the methodology described above.

   The lower confidence bound is 7.4 percent, and the upper bound is 44.4 percent.

16. In all survey research, a potential challenge involves collecting a sample that does not
match the demographics of the target population, and many survey researchers attempt to
address this challenge through weighting.  In order to improve the quality of these
inferences, I next weighted the sample of CCES Kansas individuals who indicated that
they were non-citizens to match the demographics of the Kansas non-citizen population
as estimated by the Census Bureau in the American Community Survey 5-year estimate
using weights for gender, age, Hispanic origin, and Asian origin.

17. After weighting, I recalculated the proportion of non-citizens who indicated on the pre-
or-post election survey that they were registered to vote.  The revised estimate is that 16.0
percent of Kansas non-citizens report being registered to vote.  The confidence interval
for this estimate based upon Stata's *svy linearized : proportion* command ranges from 5.4
percent to 38.7 percent.

Updated Analysis of TDL – Caskey Matches

18. When I drafted my previous report I did not yet have available the information required
to put Caskey's matches of the TDL list with the voter registration list into full context.
However, in late January of 2017 I was given access to the information required to
identify the individuals matched by Caskey in the TDL list.   As reported in Table 1 I
used this information combined with the age categories of the overall TDL list to estimate
the percentage of TDL members in each age category who were matched by Caskey.  I

then used these estimates to extrapolate to the percentage of non-citizens who would have

been matched at the state level.

19. Table: Extrapolation from Caskey TDL Match to Kansas Non-Citizen Population

| Age category | Probability of being matched as registered | Wilson LCB | Wilson UCB | Number of KS non-citizens in category | Extrapolation: number matched as registered | Extrapolation LCB | Extrapolation UCB |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| 18 to 24 | 0.003444 | 0.002 | 0.005 | 19619 | 68 | 45 | 101 |
| 25 to 44 | 0.003456 | 0.003 | 0.005 | 66502 | 230 | 172 | 306 |
| 45 to 54 | 0.008074 | 0.004 | 0.017 | 17326 | 140 | 68 | 287 |
| 55 to 64 | 0.014851 | 0.005 | 0.043 | 7771 | 115 | 39 | 332 |
| 65 + | 0 | 0.000 | 0.110 | 4459 | 0 | 0 | 492 |
| | | | | | | | |
| Total | | | | 115550 | 553 | 325 | 1519 |

20. The extrapolation from Caskey's match of the voter file and TDL shown in the table

above indicates that once the relative age demographics of the TDL are accounted for, an

extrapolation to the overall non-citizen adult population of Kansas suggests that 553 are

registered to vote, with the confidence interval (based upon the Wilson method as

discussed in my earlier reports) spanning from 325 to 1519 individuals.

21. A similar extrapolation could readily be done with the Hersh matches to the TDL list,

however, Hersh does not appear to have been working with a full voter file initially, and I

was not able to obtain a fully updated analysis by Hersh based upon the full voter file in

time to include it in this report. Since Hersh appears to have identified a somewhat larger

number of matches overall, the resulting estimate would likely be larger than the one

provided here.

8

Conclusion

22. The three updates to my previous analyses discussed here use additional data not
available to me at the time of my previous reports to add to and refine my previous
estimates of non-citizen voter registration rates. I have added a new extrapolation from
the TDL list to the broader non-citizen population in Kansas based on the list match
provided by Brian Caskey, and have extended my analysis of the CCES to include 2016
data. These analyses speak to the robustness of my previous analyses as they add
additional information that reinforces the basic conclusions drawn in those analyses
concerning the incidence of non-citizen voter registration.

List of Attachments

1.  Richman Updated Disclosures.pdf (this document).
2.  Richman CV.pdf
3.  CaskeyData.xlsx – used to calculate demographics of matched individuals.
4.  CCES16_Common_Output_Jul2017_VV Noncitizens.dta – all 2016 responses from noncitizens.
5.  Confidence intervals for KS CCES sample.do – Stata do file to calculate confidence intervals
6.  KS_noncit_cumulative_2006_2016_WMerge.dta – CCES responses from all Kansas non-citizens.
7.  ResponseErrorSimulationResultsKS.xlsm – results of 10000 random draws of response error simulation to calculate confidence interval.
8.  ResponseErrorSimulationResultsUS.xlsm – results of 10000 random draws of response error simulation to calculate confidence interval.
9.  TDL_ages as of 12_14_2016.dta -- used to calculate demographics of TDL denominators.
10. weightssetupKSdemos2.do – Stata do file to calculate raked weights.
11. weightssetupUSnoncitizens.do -- – Stata do file to calculate raked weights.