## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, *et al.*, on behalf of themselves and all others similarly situated,

   Plaintiffs,

v.

KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas, *et al.*,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 16-2105-JAR-JPO**

## PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY, STRIKE DEPOSITION DESIGNATIONS, AND EXCLUDE SURVEY OF PATRICK MCFERRON

Plaintiffs Steven Wayne Fish, Donna Bucci, Charles Stricker, Thomas J. Boynton, Douglas Hutchinson, and the League of Women Voters Kansas (collectively, "Plaintiffs") respectfully move the Court to exclude the testimony of Patrick McFerron; strike and exclude from trial the deposition designations of Mr. McFerron; and to exclude from evidence a survey conducted by Mr. McFerron (the "McFerron Survey," Def.'s Ex. 863 and attachment to Def.'s Ex. 865 of Def.'s Feb. 12, 2018 Revised Ex. List).  Plaintiffs respectfully request a ruling on this issue as soon as possible because it will implicate Plaintiffs' witness list and trial preparations.

### INTRODUCTION

In response to this Court's ruling precluding Defendant's proffered expert, Mr. Hans von Spakovsky, from testifying about a survey designed and conducted by Mr. McFerron, Defendant now seeks to backdoor the details of the McFerron Survey into trial under the guise of Mr. McFerron's testimony as a purported lay witness.  The survey, "A Survey of 500 Adults Living

in Kansas," purports to show that requiring proof of citizenship to register to vote is not a concern for residents and is not hampering voter registration.

Defendant's attempt to offer Mr. McFerron's testimony is improper for two reasons. *First*, Defendant inappropriately identified Mr. McFerron as a "fact witness" who will testify via deposition on the methods and results of the McFerron Survey. Defendant's description of Mr. McFerron's testimony, however, reveals that Mr. McFerron is improperly cloaked as a lay witness when he is, in fact, being proffered for expert testimony. Defendant paid Mr. McFerron to design a survey, conduct the survey, interpret the data from the responses to the survey, and render an opinion on an issue in this case. Despite this, Defendant never properly disclosed Mr. McFerron as an expert pursuant to Rule 26(a)(2), or provided Plaintiffs with a written report that comports with the requirements of Rule 26(a)(2)(B). Mr. McFerron's testimony and deposition designations should therefore be excluded in its entirety.

*Second*, even if Mr. McFerron's testimony is permitted to come in, he should not be permitted to testify via deposition. Defendant improperly marked more than 100 pages of Mr. McFerron's 200-page deposition as deposition designations for trial, rather than designating him as a live witness; but Defendant has no colorable basis for relying on Mr. McFerron's deposition testimony instead of calling him live. Defendant merely hopes to hide behind a cold record so that Plaintiffs are robbed of their opportunity to challenge his credibility and demeanor before the Court. Accordingly, the deposition designations of Mr. McFerron are wholly improper.

Both of these stunts are in direct violation of the Federal Rules of Evidence and the Federal Rules of Civil Procedure. With Defendant's tactics coming just weeks before trial is set to begin, a ruling on this issue is time-sensitive and imperative as it will directly affect the parties' trial preparations. Mr. McFerron's testimony and his deposition designations should be

excluded entirely.   But even if this Court is inclined to permit his testimony, his deposition designations should be stricken and excluded from trial, and he should be required to testify live. And, in any event, the McFerron Survey should be excluded as hearsay.

**ARGUMENT**

**I.     MR. MCFERRON'S TESTIMONY SHOULD BE EXCLUDED BECAUSE DEFENDANT INAPPROPRIATELY DESIGNATED HIM AS A FACT WITNESS.**

The Federal Rules of Evidence and the Federal Rules of Civil Procedure require that testimony along the lines of what Defendant seeks to adduce from Mr. McFerron be offered in the form of expert testimony, and thus, must be properly disclosed under Rule 26.   Defendant cannot evade those requirements by inappropriately characterizing Mr. McFerron as a "fact witness."

**A.     Notwithstanding Defendant's Designation of Mr. McFerron as a "Fact Witness," He Is Being Proffered to Provide Expert Testimony.**

When a witness, like Mr. McFerron, is being proffered for testimony based on his "scientific, technical, or other specialized knowledge," the witness is an expert witness and must be disclosed as such under Rule 26.   *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (citing Fed. R. Evid. 702).   "[T]he rule expressly prohibits the admission of testimony as lay witness opinion if it is based on 'specialized knowledge.'"   *Id.*

Defendant improperly designated Mr. McFerron as a "fact witness" who will testify by written deposition about the survey "he designed and conducted of Kansans in May of 2016." *See* Final Witness Disclosures at 2, ECF No. 444.   Specifically, Defendant represents that Mr. McFerron "will testify that after controlling for gender, age, and geographic region in order to replicate US Census information, the study revealed that requiring proof of citizenship in order to register to vote is <u>not</u> a concern for residents and is <u>not</u> hampering voter registration."   *Id.*   The

description for Mr. McFerron extends to the following page, with specific statistics and interpretations of his survey data.

This type of survey testimony is quintessentially expert opinion testimony. This Court has held that the "admissibility of [a] survey turns on its reliability." *Univ. of Kansas v. Sinks*, No. 06-2341-JAR, 2008 WL 755065, at *5 (D. Kan. Mar. 19, 2008). Defendant cannot establish the reliability—and thus the admissibility—of the McFerron Survey without relying on expert testimony. Indeed, this Court, in a previous *Daubert* opinion, specifically discussed the McFerron Survey, and criticized Mr. von Spakovsky's lack of expertise in survey research as a basis for precluding him from testifying about the Survey. *See* Mem. and Order at 12-13, ECF No. 421. The Court concluded: "It is clear that von Spakovsky is not qualified to testify as an expert about this survey." *Id.* at 13. This Court further held that someone who "possesses [some] special skill or experience [would be] required to testify about the survey results." *Id.* "[T]he persons conducting the survey *must be experts*." *Id.* (emphasis added) (citation omitted).[1] Thus, while Defendant now purports to proffer Mr. McFerron as a lay witness to testify about his Survey, his testimony can only form the basis for the survey's reliability if Mr. McFerron is qualified to testify as an expert. Indeed, if the McFerron Survey were the proper subject of lay

---

[1] Defendant briefly touches on the admissibility of the McFerron Survey in his Response to Plaintiffs' Renewed Motion to Exclude Defendant's Expert Hans von Spakovsky ("Response"). Resp. at 3, ECF No. 452. However, the case Defendant cites in support for his argument that the McFerron Survey is admissible ***actually stands for the opposite proposition***. The Tenth Circuit in *Brunswick Corp. v. Spirit Reel Co.* held that there was adequate foundation to admit the survey where the opposing party's expert witness testified to the survey's guarantees of trustworthiness. 832 F.2d 513, 522-23 (10th Cir. 1987). Defendant inaccurately states that "the Tenth Circuit was persuaded by the witness's own testimony that, in retrospect, he would not have made any significant changes to the survey." Resp. at 3. Rather, it was the expert witness for the party who *opposed* the survey who testified that he would not have conducted the survey much differently. *Brunswick Corp.*, 832 F.2d at 523.

testimony, there would have been no reason for the Court to consider (and reject) Mr. von Spakovsky's qualifications to testify about it.

The record reveals that Defendant treats Mr. McFerron not as a lay witness, but as an expert. Indeed, Mr. McFerron holds himself out as such. Mr. McFerron first learned about this case in May of 2016 when Defendant contacted him about conducting a study, and ***paid him for his services*** in conjunction with interpreting the study. McFerron Dep. 8:7-19; 15:22-25. Defendant hired Mr. McFerron at a fee of $9,000. *Id.* at 15:22-25. Mr. McFerron stated that he considers himself an "expert in surveying," *id.* 11:4-6, and that his understanding of his role in this case was "to use the expertise [and] years of experience in surveying the public to evaluate the prevalence of documentation attainable by residents of Kansas." *Id.* 10:21-11:3.

A cursory look at Mr. McFerron's anticipated testimony makes clear that it is precisely the sort of testimony that must be offered in the form of expert testimony. Defendant identified several deposition designations for Mr. McFerron, covering the gamut of subject matters from his background and education, to his general experience as a pollster, to the design and results of the McFerron Survey. *See, e.g.*, *id.* 9:8-19; 24:14-25:24; 82:25-83:25. His background and education would be irrelevant if he were being offered merely as a lay witness, and not as an expert whose testimony was intended to establish the reliability of his survey. Furthermore, in his deposition, Mr. McFerron used his purported experience in survey research to make determinations about the design of his study and to interpret its results. *Id*. 61:24-62:15; *see also id.* 62:16-24 (describing how he purports to account for things like sample size and representativeness of his sample by controlling for factors such as age and gender).

During his deposition, Mr. McFerron also offered opinion testimony about the reliability of surveys and other hypothetical questions on fact scenarios that might lead to different survey

structure.  *See, e.g.*, *id.* 110:17-111:23; *see also id.* 50:2-11, 75:3-13 (explaining the meanings of technical terms required to analyze survey data).  Regarding weighting a survey, Mr. McFerron testified that he takes the approach of using quotas as opposed to survey weighting, which he asserted may be considered unconventional to "lay people."[2]  *Id.* 75:17-76:7.  He also claimed that he considered the importance of outliers and overall response rate to the survey in formulating the margin of error.  *Id.* 83:18-84:9.  This falls far from the type of testimony that is "rationally based on the witness's perception … and not based on scientific, technical, or other specialized knowledge" that is required to qualify as lay testimony.  Fed. R. Evid. 701; *see, e.g.*, *LifeWise*, 374 F.3d at 929 (holding that lay witness "could not testify about these technical, specialized subjects"); *see also Morton v. Progressive N. Ins. Co.*, 498 F. App'x 835, 839 (10th Cir. 2012) (rejecting argument that boat mechanics were lay witnesses testifying as mere observers of the cause of damage in a breach of insurance contract claim); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011) (holding that district court abused its discretion in allowing valuation testimony, which was based on technical and specialized knowledge from witness' experience in real estate, to come in as lay opinion).  Because Mr. McFerron is plainly being offered to provide expert testimony, his testimony should be excluded.

### B.   Mr. McFerron Was Never Properly Disclosed and Should Therefore Be Excluded.

Under the Federal Rules of Civil Procedure, a party must disclose expert testimony "sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."

---

[2] Another important aspect of the survey design was including both landline and cell phone.  *Id.* 77:5-9.  To determine how many should be landline versus mobile, Mr. McFerron had "gone through and done some research in consultation with the scientific telephone samples about what that … mix should look like for residents there."  *Id.* 80:7-16.

*Mounger v. Goodyear Tire & Rubber Co.*, No. 99-2230-JWL, 2000 WL 1466198, at *2 (D. Kan. 2000) (citations omitted); *see also* Fed. R. Civ. P. 26(a)(2).  This disclosure must comport with the requirements of Rule 26(a)(2).  Where a party fails to make the proper disclosures, "the party is not allowed to use that information or witness to supply evidence … unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002).

Here, Defendant failed to properly disclose Mr. McFerron as an expert witness under Rule 26(a)(2).  Defendant never identified McFerron as a potential expert witness through a formal disclosure under Rule 26 to Plaintiffs.  And while Defendant gave Plaintiffs a copy of the McFerron Survey (improperly attached as an exhibit to the proffered expert report of someone else, Mr. Hans von Spakovsky), Defendant never provided Plaintiffs with a formal written report from Mr. McFerron containing all of the information required under Rule 26(a)(2)(B), such as "a list of all publications authored [by McFerron] in the previous 10 years," or "a statement of the compensation to be paid for the study and testimony in the case."   Fed. R. Civ. P. 26(a)(2)(B)(iv), (v).  That failure alone merits exclusion of McFerron's testimony.

Ultimately, under Rule 37, courts can impose various sanctions, including exclusion of the witness' testimony unless the failure to disclose was substantially justified or is harmless.  *Mounger*, 2000 WL 1466198, at *4.  Though no "explicit finding" of substantial justification or harmlessness is required, courts may consider four factors in making this determination: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability to cure any prejudice; (3) the potential for trial disruption if the testimony is allowed; and (4) the moving party's bad faith or willfulness.  *Jacobsen*, 287 F.3d at 953.  The party who failed to make the

required disclosure bears the burden of demonstrating substantial justification and lack of harm. *Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 639 (D. Kan. 2001).

Here, Defendant cannot meet his burden of showing that his failure to properly designate Mr. McFerron was substantially justified or is harmless—indeed, Defendant's omission misleadingly induced Plaintiffs to forgo their opportunity to file a *Daubert* motion to exclude McFerron's testimony. In order to facilitate the filing of *Daubert* motions, the parties, at defense counsel's suggestion, engaged in a "good faith" exchange of possible expert witnesses on January 16, 2018. *See* Ex. A, Email from Ho to Becker re: Fish Pls.' Tentative Expert Disclosures for Trial; Ex. B, Email from Becker to Ho *et al.*, re: Confirmation of Live Defense Experts. Notably, Defendant omitted Mr. McFerron from this list, which induced Plaintiffs to refrain from filing a *Daubert* motion to exclude Mr. McFerron's testimony (and the time for *Daubert* motions has now passed). Because of Defendant's omission, Plaintiffs excluded Dr. Matthew Barreto, an expert rebuttal witness to Mr. McFerron, from their initial Witness List filed with the Court on January 30, 2018. *See* ECF No. 438.[3]

Defendant only informed Plaintiffs of his intent to rely on Mr. McFerron's testimony through his Final Witness Disclosures, also filed on January 30, 2018—more than a week after *Daubert* motions were due. Defendant's omission of Mr. McFerron therefore not only interfered with Plaintiffs' pretrial preparations, but also factored into Plaintiffs' composition of their own witness list—requiring Plaintiffs to file their Amended Witness List the next day to add Dr. Barreto as a rebuttal expert. *See* ECF No. 446. While counsel for Plaintiffs have repeatedly attempted to coordinate pretrial filings to avoid precisely such a surprise disclosure, counsel for

---

[3] Plaintiffs had previously disclosed Dr. Barreto to Defendant as an expert rebuttal witness in 2016 (with a formal report in accordance with the requirements of Rule 26), and also disclosed him as a "may call, if necessary" witness on Plaintiffs' January 16 good faith expert witness list shared with Defendant.

Defendant have been uncooperative, and in some cases, completely nonresponsive.[4] Accordingly, Defendant cannot show that his failure to properly designate and disclose Mr. McFerron was substantially justified or is harmless, and as a result, this Court should exclude the testimony of Mr. McFerron.  *See, e.g.*, *Mounger*, 2000 WL 1466198, at \*4 (excluding expert testimony where party failed to comply with disclosure requirements and could not establish substantial justification for failure to make the required disclosures).

## II.   DEFENDANT HAS NOT SHOWN THAT MR. MCFERRON'S DEPOSITION MAY BE USED AT TRIAL.

Even if this Court is inclined to permit Mr. McFerron's testimony—and it should not—he should be required to testify live rather than via deposition.  The Federal Rules of Civil Procedure provide five scenarios in which a party may use the deposition of a witness at trial— none of those situations apply here.  Under Rule 32, the deposition of a witness may be used if the court finds that (1) the witness is dead; (2) the witness is more than 100 miles from trial; (3) the witness cannot attend due to age, illness, infirmity, or imprisonment; (4) the party offering the deposition cannot procure the witness by subpoena; or (5) an exceptional circumstance exists. Fed. R. Civ. P. 32(a)(4); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 963 (10th Cir. 1993).  "Although Rule 32 provides a mechanism for presentation of deposition testimony, the rule does not alter the judicial preference for direct and cross-examination of a witness at trial." *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 720 F. Supp. 1493, 1501 (D. Colo. 1989) (citing *Salsman v. Witt*, 466 F.2d 76, 79 (10th Cir. 1972)). And a court is not "automatically required" to admit deposition testimony "just because [a]

---

[4] Prior to filing this motion, counsel for Plaintiffs requested that Defendant withdraw Mr. McFerron and stated the reasons why his depositions designations were improper.  Counsel further stated that Plaintiffs would file a motion to exclude Mr. McFerron's testimony if Defendant did not withdraw him.  Counsel for Defendant gave no reply.

witness [is] more than 100 miles away," particularly when the court needs to "consider and evaluate the witness's credibility." *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1410 (10th Cir. 1991) (citing *In re Air Crash*, 720 F. Supp. at 1502).

The *In re Air Crash* court set out a test to question the admissibility of deposition testimony over live testimony at trial: "Because of the judicial preference for personal testimony in court, the court must balance various factors toward the ends of fairness: (1) offeror's need for the evidence to be presented through the deposition, (2) opportunity provided the opponent to cross-examine the deposition witness on those issues, (3) nature of the evidence to be presented, (4) jury's need to observe the demeanor and credibility of the witness, and (5) actual unavailability of the witness, as distinguished from mere geographic distance from the courthouse." *In re Air Crash*, 720 F. Supp. at 1502.

Here, Defendant has made no showing that Mr. McFerron is unavailable to testify live at trial within the meaning of Rule 32(a)(4).  While, upon information and belief, Mr. McFerron currently resides in Oklahoma City, over 100 miles from the courthouse, a full inspection of the facts and issues here compels a finding that he should be required to testify live.  As an expert witness, Mr. McFerron's mere distance from the courthouse is not a basis for deeming him "unavailable" within the meaning of Rule 32.  *See Angelo*, 11 F.3d at 963 (holding district court did not abuse its discretion in rejecting deposition testimony where party "apparent[ly] lack[ed] diligence in getting [expert witness] to appear").  Defendant has designated over half of Mr. McFerron's 200-page deposition transcript—including, as noted, on topics such as his education and experience with survey research, which are the hallmarks of proffered expert, rather than lay, testimony.  Given this Court's preference for receiving deposition testimony orally in open court during trial, admission of these lengthy deposition excerpts would not save the Court or the

parties any time—it would only serve to deprive Plaintiffs of an opportunity to conduct a live cross-examination, as well as the Court to observe the demeanor and credibility of the witness. *See, e.g.*, *Polys*, 941 F.2d at 1410 (affirming decision rejecting deposition testimonies even though witnesses were more than 100 miles away because "trial judge appropriately considered surprise to opposing counsel" and gave importance to "consider[ing] and evalut[ing] the witness's credibility").   As a result, Defendant should not be permitted to rely on Mr. McFerron's deposition designations at trial.[5]

**III.      THE MCFERRON SURVEY SHOULD BE EXCLUDED AS HEARSAY.**

Finally, regardless of whether Mr. McFerron is permitted to testify in any form (as an expert or lay witness; live or via deposition), the entirety of the McFerron Survey is hearsay and should be excluded.  *See Crumpacker v. Kansas Dep't of Human Res.*, No. 0-4044-RDR, 2004 WL 1846146, at *4 (D. Kan. June 10, 2004) (the court was "at a loss" to see how a survey could be admitted over hearsay objections).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion and exclude the testimony and strike the deposition designations of Patrick McFerron, or, in the alternative strike and exclude from trial the deposition designations of Mr. McFerron and require him to testify live.   Plaintiffs also respectfully request that the Court exclude the McFerron Survey (Def.'s Ex. 863 and attachment to Def.'s Ex. 865 of Def.'s Feb. 12, 2018 Revised Ex. List) as hearsay.

---

[5] While the entirety of Mr. McFerron's testimony and deposition designations should be stricken and excluded from trial, Plaintiffs have separately lodged line-by-line objections and counter-designations to Defendant's deposition designations, which are being filed concurrently with this Motion.  *See* Pls.' Objs. and Counter-Designations to Def.'s Dep. Designations.

DATED this 13th day of February, 2018.

Respectfully submitted,

/s/ Stephen Douglas Bonney
STEPHEN DOUGLAS BONNEY (#12322)
American Civil Liberties Union of Kansas
6701 W 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4100
Fax: (913) 490-4119
dbonney@aclukansas.org

/s/ Dale E. Ho
DALE E. HO*
R. ORION DANJUMA*
SOPHIA LIN LAKIN*
American Civil Liberties Union Foundation,
125 Broad St.
New York, NY 10004
Phone: (212) 549-2693
dale.ho@aclu.org
odanjuma@aclu.org
slakin@aclu.org

NEIL A. STEINER*
REBECCA KAHAN WALDMAN*
DAPHNE T. HA*
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
T: (212) 698-3822
F: (212) 698-3599
neil.steiner@dechert.com
rebecca.waldman@dechert.com
daphne.ha@dechert.com

ANGELA M. LIU*
Dechert LLP
35 West Wacker Drive
Suite 3400
Chicago, Illinois 60601-1608
Phone: (312) 646 5816
Fax: (312) 646 5858
angela.liu@dechert.com

*Counsel for Plaintiffs*

* admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 13th day of February, 2018, I electronically

filed the foregoing document using the CM/ECF system, which automatically sends notice and a

copy of the filing to all counsel of record.

<u>/s/ *Stephen Douglas Bonney*</u>
STEPHEN DOUGLAS BONNEY (#12322)

*Attorney for Plaintiffs*