```
 1              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF KANSAS
 2

 3    PARKER BEDNASEK,

 4         Plaintiff,

 5    v.                        Docket No. 15-9300-JAR

 6    KRIS W. KOBACH,

 7         Defendant.
      _____    _____
 8
      STEVEN WAYNE FISH, et al.,
 9
           Plaintiffs,
10
      v.                        Docket No. 16-2105-JAR
11
                                Kansas City, Kansas
12    KRIS W. KOBACH,           Date:  02/08/18

13         Defendant.
      ...................................................
14

15                    TRANSCRIPT OF
      TELEPHONIC STATUS/FINAL PRETRIAL CONFERENCE
16       BEFORE THE HONORABLE JULIE A. ROBINSON
             UNITED STATES DISTRICT JUDGE
17

18    APPEARANCES:

19    For Case No. 15-9300 Plaintiffs:

20    Mr. Mark P. Johnson
      Mr. Curtis E. Woods
21    Ms. Samantha Wenger
      Dentons US LLP
22    4520 Main Street
      Suite 1100
23    Kansas City, MO 64111

24

25    (Appearances continued on next page)
```

1   APPEARANCES:

2   (Continued)

3   For Case No. 16-2105 Plaintiffs:

4   Mr. Dale E. Ho          Mr. Stephen D. Bonney
    Mr. R. Orion Danjuma    ACLU Foundation of Kansas
5   Ms. Sophia Lin Lakin    6701 West 64th Street
    Ms. Angela Liu          Suite 210
6   Ms. Emily Zhang        Overland Park, KS 66202
    American Civil Liberties
7   Union Foundation - NY
    125 Broad Street
8   New York, NY 10004

9

    For the Defendant Kris W. Kobach:
10

    Ms. Susan Becker
11   Kansas Secretary of State
    120 Southwest 10th Avenue
12   Memorial Hall, First Floor
    Topeka, KS 66612

13

14

15

16

17

18

19

20

21

22

23   _____

      Kelli Stewart, CSR-KS, CCR-MO, RPR, CRR, RMR
24           Official Court Reporter
      259 U.S. Courthouse, 500 State Avenue
25         Kansas City, Kansas 66101

1              (12:16 p.m., proceedings commenced).

2              THE COURT:  All right.  So we will put this

3   on the record.  It's Bednasek versus Kobach, that's

4   15-9300.  And then Fish, et al., versus Kobach, that's

5   16-2105.  This is on the record.  And appearing on the

6   line for Plaintiff Bednasek, Mr. Johnson?

7              MR. JOHNSON:  Yes, Your Honor.

8              THE COURT:  And Mr. Woods?

9              MR. WOODS:  Yes, and Ms. Wenger.

10             MS. WENGER:  Yes.

11             THE COURT:  And Ms. Wenger.  And who will be

12  speaking on behalf of plaintiff today, Plaintiff

13  Benasek?

14             MR. JOHNSON:  Mark Johnson will be until

15  about ten of 1:00, if it goes that long, and then I have

16  to go teach-- teach my First Amendment class at KU.

17             THE COURT:  Okay.  And then on the line for

18  Plaintiff Fish, Mr. Ho?

19             MR. HO:  Yes, Your Honor.

20             THE COURT:  And who else?  Mr. Danjuma, Mr.

21  Bonney, and Ms. Liu, is that correct, as well as Ms.

22  Lakin and Emily Zhang; is that correct?

23             MR. HO:  Yes, Your Honor.

24             THE COURT:  And who will be speaking for

25  Plaintiff Fish, Mr. Ho?

1          MR. HO:  Yes, Your Honor.  I will be.

2          THE COURT:  Okay.  And then finally on the

3  line for Defendant Kobach is Ms. Becker.  And, Ms.

4  Becker, you will be speaking for the defendant; is that

5  correct?

6          MS. BECKER:  Yes, Your Honor.

7          THE COURT:  Okay.  All right.  So we are

8  rapidly approaching the trial date.  And we're treating

9  this as the final pretrial conference.  I had already

10  entered a trial deadlines order establishing deadlines

11  for various pretrial filings.

12          So just to tell you what I intend to do at

13  today's conference, first I'm just going to briefly

14  review with you trial procedures and then I'd like to

15  talk to you about the order of proof that Judge O'Hara

16  had you all meet and confer and file a joint status

17  report about.

18          Then I'd like to touch on pending motions

19  and *Daubert* motions, so-- and how I intend to take those

20  up, as well as how I intend to handle any *limine* motions

21  that may be filed.  The deadline for those hasn't--

22  hasn't happened yet.  I think *limine* motions are due

23  February 13th.

24          But just to start, let's quickly review

25  trial procedures.  I don't know that I've had any of you

1  in trial before.  As I understand it, the anticipated

2  length of trial, these two trials together and with the

3  order of proof that we'll talk about in a minute, the

4  estimate is seven days.  Do you still think that's a

5  good estimate, Mr. Ho?

6           MR. HO:  I think it's possible, Your Honor,

7  that trial could be shorter than that.  I'm reluctant to

8  let go of a few days-- I know you're quite busy.  I'm a

9  little reluctant to let go of a few days because it's

10 not totally clear to me how the other parties are going

11 to proceed.

12          You know, I think we could be finished with

13 our case-in-chief in two days, but I think it-- you

14 know, obviously that depends on the length of cross

15 examination and, again, not entirely sure about the

16 other parties' plans.  We would probably have some

17 time-- want to have some time for rebuttal.  So, you

18 know, for our case and rebuttal, I-- I think three days

19 would be sufficient.

20          I would say that I think it's also possible

21 to shorten that further, and we have tried to work with

22 the defendants on maybe getting some factual

23 stipulations that would either obviate the need for

24 certain witnesses or potentially shorten the length of

25 certain witness examinations, we just haven't gotten any

1  feedback from the defendants as to whether or not

2  they're willing to work with us on that.

3          THE COURT:  Okay.  How about you, Mr.

4  Johnson?

5          MR. JOHNSON:  Well, I-- I'm at-- somewhat at

6  the mercy of the other parties.  But, you know, my case

7  would be very short.  I mean, I have at most two

8  witnesses and, you know, my-- my individual witness,

9  Parker Bednasek, my guess would be maybe half an hour,

10  maybe an hour, depending on what cross examination the

11  defendant has for him.

12          So I think the length of the trial is going

13  to depend more on Fish plaintiffs and the defendant.

14          THE COURT:  Okay.  And, Ms. Becker, how

15  about Mr. Kobach's case?

16          MS. BECKER:  Your Honor, I think, you know,

17  probably just an equal amount to-- to whatever the

18  plaintiffs put on.  I do agree with Mr. Ho that, you

19  know, a lot of it will depend on- on our cross

20  examination of the experts.  There are six plaintiff

21  experts and three defense experts.  And so we-- we think

22  the bulk of the time will be spent with the experts as

23  opposed to-- well, as well as a couple of fact

24  witnesses, employees of the Secretary.

25          But I would think that the defense would

1    take, you know, probably two or three days as well.  So

2    I think your estimate of about seven days is-- is pretty

3    on point.

4              THE COURT:  All right.  And when do you plan

5    to respond to plaintiffs' proposal for certain fact

6    stipulations?

7              MS. BECKER:  We've been working with them.

8    They just wanted-- we've been working with them.  I

9    don't disagree that we didn't-- we've not exchanged

10   anything, I've not received anything from them.  We

11   discussed going through exhibit lists to try to identify

12   joint exhibits as well as areas that we could agree to.

13             For example, you know, we wouldn't need to

14   list like driver records of 127 plaintiffs if we're

15   going to stipulate to those.  So I think it's in process

16   and I actually think we have been working on it.

17             MR. HO:  I'll just say, this is Mr. Ho, I--

18   we sent a document with a list of proposed stipulated

19   facts to the defendants on January 22nd via e-mail.  I

20   followed up several times and asked for a response about

21   that and I haven't heard anything back on this specific

22   issue.

23             THE COURT:  Ms. Becker.

24             MS. BECKER:  I actually have not seen that

25   e-mail.  So I thought you had-- you actually--- we've

1    been sort of talking about whether we could exchange

2    copies of exhibits in advance of the deadlines, and

3    that's what we've been working on.  And we've tried to

4    pare down our exhibit list and I-- I have not seen

5    suggested factual stipulations, so I apologize.

6              THE COURT:  Well, it seems like all of the

7    above needs to happen.  Who was that e-mail directed to,

8    Mr. Ho?

9              MR. HO:  It was directed to Ms. Becker and

10   it was sent - I'm looking at it right now - on

11   January 22nd.  I followed up two days later on

12   January 24th.  We had also talked about exchanging fact

13   and witness lists-- draft fact and witness lists prior

14   to them being filed with the Court to see if we could

15   have conversations about whether or not we could

16   stipulate in advance to the admissibility of certain

17   exhibits.

18              And we had, I thought, reached a tentative

19   agreement to exchange those draft lists more than a week

20   before they were supposed to be filed with the court.

21   But on the day that we were going to exchange those

22   lists I received an e-mail from Ms. Becker saying that

23   they weren't ready to do that, telling us not to send

24   the lists, so we didn't.

25              But I-- we've been trying hard, Your Honor,

1    to get some cooperation with the defendants on, you

2    know, narrowing the issues by stipulating to certain

3    facts.  That could've I think also obviated a lot of the

4    deposition designations that went in on agreeing on

5    exhibits and-- and maybe on witnesses, a plan for what

6    to do about witnesses that are on both of our witness

7    lists, because I don't think it makes a lot of sense

8    from the Court's perspective in terms of judicial

9    economy to have these people come twice into court, both

10   on the plaintiff's case-in-chief and then on the

11   defendant's case-in-chief.  And we just haven't gotten

12   responses from the defendants on any of this.

13            MR. JOHNSON:  And, Your Honor, this is Mark

14   Johnson.  To corroborate Mr. Ho, I actually sent my

15   draft witness and exhibit list on the day that I thought

16   it had been agreed before it was-- it became apparent

17   that we weren't going to get anything from the

18   defendant.

19            THE COURT:  All right.  I'm going to set a

20   deadline for the-- you all to reach an agreement on

21   witness and exhibit lists.  And that would include

22   stipulated exhibits.  I'm going to set a deadline of

23   February 16th.  And I'm also going to set the deadline

24   of February 16th for nailing down factual stipulations.

25            It does-- it just doesn't make sense to do

1    this on the eve of trial.  People need to know who to

2    subpoena and what documents to prepare for trial.  And I

3    think this helps everybody pare down what they need to

4    be doing in those last couple of weeks before we start

5    trial.

6              So I'm going to set February 16th as a

7    deadline for all of those-- those submissions back and

8    forth.  That does not mean that you start the process on

9    the 16th, I think the process should end on the 16th is

10   what I'm saying.

11             Okay.  So seven days of trial thereabouts.

12   We're going to start on March 6th.  We'll have those

13   four full days of that week, the 6th is a Tuesday.  We

14   will have Monday the 12th, we'll have that full day.  We

15   will have the 13th, almost the entire day.  If we're not

16   finished by then, we will be in recess March 14th

17   through 16th.  And then we will have to reconvene on the

18   19th and the 20th to finish the trial.  So we will be

19   having a three-day recess if we're not-- if we don't

20   have all the evidence in by the 13th, which would be six

21   days in to trial.

22             And I-- it's a bench trial, so I think we'll

23   probably be more efficient with our time than we would

24   be otherwise, but generally I run the trial days from

25   9:00 to 5:00.  Since we're a little bit in a crunch as

1  far as time, we could-- we could start at 8:30 or 8:45

2  and go until, you know, 5:00, 5:30.  So keep that in

3  mind and you can let me know about that.

4          I'll ask you to overbook witnesses so we

5  don't have any, you know, short days because you've run

6  out of witnesses.  Sometimes people are very judicious

7  in their use of cross examination and things go faster,

8  sometimes just the opposite and things slow down, but

9  just be ready for either-- either scenario.

10         I was thinking-- I'll hear from you, but I

11 was thinking as far as opening statements 20 minutes per

12 side and we'd leave open the question on how long you

13 want for closings.  You may have a better sense after

14 the evidence comes in.  But let's start with this, is

15 20-- 20 minutes may not be enough, that's why I'm

16 asking.

17         Mr. Ho, what's your view of that, of the

18 time for openings?

19         MR. HO:  Just as a point of clarification,

20 Your Honor, do you mean 20 minutes total amongst the

21 plaintiffs or 20 minutes per plaintiff group?

22         THE COURT:  I meant 20 minutes per plaintiff

23 and, thus, I would allow defendant more time than 20

24 minutes obviously.

25         MR. HO:  Right.  In that case, Your Honor, I

1   think 20 minutes is probably going to be more than

2   sufficient.  I'm-- I don't know if I would suggest

3   something even shorter I think.  I certainly don't feel

4   like I'm going to need 20 minutes for an opening

5   statement.  I think ten to 15 would be adequate.

6            THE COURT:  So if we did--

7            MR. JOHNSON:  Well, this is Mark Johnson.  I

8   think that's-- that would be fine.  You know, for sake

9   of economy, I'd be willing to forego opening statement.

10  I think everybody knows what the case is about.

11           THE COURT:  Okay.  What's your view, Ms.

12  Becker?

13           MS. BECKER:  You know, I-- I don't think

14  that we'd necessarily want to forego an opening, but I--

15  I think we could probably limit the opening to ten or 15

16  minutes.

17           THE COURT:  Okay.  Well, why don't I give

18  everyone 15 minutes as they see fit to use for opening.

19           All right.  Just some trial procedure

20  things.  We're in federal court, of course, so remember

21  you should always stand when addressing the Court,

22  whether that is to raise an objection or to question

23  witnesses or argue.

24           My rule of thumb is if you're going to

25  approach the witness box, ask the first time.  But you

1    don't have to ask every time thereafter, just the first

2    time if you're needing to hand up documents, et cetera.

3              I want to remind everyone that nationally

4    the federal courts have a privacy and redaction policy

5    since we're-- essentially all our records are electronic

6    and available to the public.  So I ask that you be

7    mindful in-- with your exhibits as well as with

8    testimony to avoid the record including Social Security

9    numbers, tax ID numbers, financial account numbers,

10   names of minor children, and dates of birth.

11             I think in this case probably the Social

12   Security numbers are going to be-- and perhaps the date

13   of birth are going to be the ones that may cause some

14   work for you, but just mindful of that.

15             Now I'd like to know your views on whether

16   we should sequester witnesses.  If anybody wants

17   witnesses sequestered, I will grant that request.  But,

18   Mr. Ho, do you want witnesses sequestered?

19             And, of course, the exceptions to the

20   sequestration rule are the parties.  So, for example,

21   Mr. Kobach and Mr. Bednasek and-- and Plaintiff Fish and

22   other named plaintiffs would not be sequestered even if

23   they're witnesses, nor would expert witnesses be

24   sequestered.

25             So, Mr. Ho, what is your view of that?

1           MR. HO:  I think as long-- I hadn't--

2   candidly, I hadn't considered that question before

3   today, Your Honor.  And I think we'd be fine with

4   sequestering non-named parties and non-expert witnesses.

5   So that-- that I think would work on our end.

6           THE COURT:  All right.  And certainly if you

7   all would like to wait and give me your final answer on

8   the morning of trial, excuse me, we can do that as well.

9           Mr. Johnson.

10          MR. JOHNSON:  I really don't have a position

11  on it, Your Honor.  I-- I would defer to the defendant

12  and Fish plaintiffs on whether they feel strongly about

13  it.

14          THE COURT:  All right.  And Ms. Becker?

15          MS. BECKER:  Your Honor, defendant does not

16  feel strongly about invoking the rule one way or the

17  other.

18          THE COURT:  Okay.  Well, I'm not-- I'm

19  hearing maybe we won't then unless somebody really wants

20  to.

21          MS. BECKER:  That's fine with the defendant,

22  Your Honor.

23          THE COURT:  Okay.  We won't sequester

24  witnesses, but you can always ask for it on the morning

25  of trial and I'll grant it at that time.  Okay?

```
 1              MR. HO:  Okay.  Thank you, Your Honor.  I--
 2   I appreciate your flexibility on that.
 3              THE COURT:  Okay.  You just need to invoke
 4   it before the evidence actually starts, so before the
 5   first witness is called.
 6              Okay.  So you all filed a joint status
 7   report consistent with what Judge O'Hara had you do and
 8   you attached a proposed order of proof to start with
 9   Fish plaintiffs' case, then followed by the Bednasek
10   case.
11              And then after that defendant will present
12   its defense in Fish and then followed by its defense in
13   Bednasek and then followed by overlapping defenses.  And
14   then after that, should there be rebuttal, the Fish
15   plaintiffs would go first, followed by Bednasek
16   rebuttal, followed by responsive rebuttal.
17              Do you all agree with that?
18              MR. JOHNSON:  Your Honor, this is Mark
19   Johnson.  With one exception.  I've spoken with Parker.
20   He's a senior at KU now and with his class schedule,
21   Wednesday would be about the best day for him to be
22   there, otherwise it would be difficult for him to be at
23   the trial.  So we would like to have him testify on
24   Wednesday.
25              THE COURT:  All right.  I think we can
```

1    accommodate that.  That would be-- that would be

2    Wednesday, March 7th.

3         MR. JOHNSON:  Thank you.

4         THE COURT:  Okay.  Okay.  Now, we need to

5    address where the *Daubert* motions fit into this.  There

6    are a number of *Daubert* motions that are pending.  And

7    let me look at this real quick.  So there is a motion to

8    exclude Jesse Richman, that's plaintiff's motion.  And

9    Hans von Spakovsky, that's plaintiff's motion.  And

10   Steven Camarota, that's plaintiff's motion.  And there's

11   also a motion to exclude-- I don't know, that's Lorraine

12   Minnite-- Minnite, that's Mr. Kobach's motion.  And then

13   finally there's a-- a motion to exclude additional

14   opinions by Doctor Richman as untimely.  And, oh, I'm

15   sorry, and then there's also Mr. Kobach's motion to

16   exclude Michael Smith.

17        So typically in a bench trial like this one,

18   I'm-- I don't get too exercised about deciding *Daubert*

19   motions ahead of time.  But there are a lot of them and

20   in my experience often it's-- you know, when there are

21   challenges to methodology and, you know, it would

22   require an evidentiary hearing, in a bench trial it

23   would just make sense to-- to proceed by way of proffer,

24   I take it under advisement and then decide after I've

25   heard the evidence anyway, but I would like to get your

 1    views on that.

 2              And the one exception being, of course,

 3    there is one motion to exclude as untimely.  It seems

 4    like that at least I probably ought to decide before

 5    trial, it's not dependent on the testimony I don't

 6    think.

 7              But let me hear your views on how we should

 8    proceed with those.  Mr. Ho.

 9              MR. HO:  Yes, Your Honor.  Thank you.  And,

10    you know, I-- as a general matter, I think we're fine

11    with the substance of the *Daubert* motions being taken

12    under advisement.  We don't necessarily need pretrial

13    guidance on them.

14              But with respect to the timeliness of the

15    additional testimony or additional analysis of Jesse

16    Richman, we need guidance on that sooner rather than

17    later.  The defendants have attached an entirely new

18    expert report to their witness list.  That's

19    Document 444 on ECF.  And it contains new analysis of

20    two forms of data.  Some of that is material that has

21    been in the defendant's possession for at least a year.

22    And others are survey responses that have been available

23    at least since July 2017.  In some cases years earlier.

24              And this new expert analysis in our view

25    really threatens to upend the trial date.  The

1    defendant's deadline for rebuttal reports was April of

2    last year.  It's not only improper to file an expert

3    report with the Court under local Rule 26.3, but it's

4    obviously untimely.  There's no justification for doing

5    this new expert analysis.

6            And if it's going to be permitted, we

7    actually I think need to know that rather soon because I

8    think, at a minimum, we're entitled-- we would be

9    entitled to depose Doctor Richmond on this new analysis.

10   And we would be entitled I think to update all of our

11   expert reports.  We would need some data from the

12   defendants to do some of that work.  And obviously I

13   would expect defendants would probably want to depose

14   any of our experts.

15           So we think that this should just be

16   excluded as untimely.  It's really not I think

17   appropriate and it's quite prejudicial to do this so

18   close to the trial date.

19           THE COURT:  All right.  Ms. Becker, your

20   response deadline is February 16th, you haven't

21   responded yet.  I think we'll hold with that response

22   deadline and I will rule on this particular motion as

23   soon as I can.  I don't know how soon that will be, but

24   it will be before trial.

25           Now, *limine* motions.  Who anticipates filing

1   *limine* motions?  Mr. Ho, do you?

2          MR. HO:  We do anticipate filing a few

3   motions *in limine*.  So, for example, we just got the--

4   an updated exhibit list from the defendant's yesterday.

5   Defendants have represented to us that they haven't

6   added anything to it, but the witness list-- I'm sorry,

7   the exhibit list that they filed with the court, some of

8   the-- some of the exhibits were illegible, many of them

9   we couldn't identify.

10          And just taking a quick look at what they

11  sent yesterday, there are at least still 30 exhibits on

12  there that they-- that we can't identify.  We don't know

13  what they are, we don't even know if they've been

14  produced to us yet.  So we certainly can't waive

15  objection to those exhibits.

16          We tried to facilitate an exchange here, we

17  sent the defendants a link to an electronic box that has

18  all of our exhibits in it, but we haven't gotten an

19  agreement from the defendants to do something similar

20  for us yet.

21          MR. JOHNSON:  Yeah, this is Mark Johnson.

22  I'm-- I'm in agreement with Mr. Ho.  I might have some--

23  for example, I think last evening I received an e-mail

24  from Ms. Becker and it's encrypted.  Am I supposed to be

25  able to figure out how to open it?

1           THE COURT:  All right.  Ms. Becker.

2           MS. BECKER:  You know what, I'm not an IT

3    person, I thought I was sending you a Word document so--

4           MR. JOHNSON:  It-- it came encrypted.

5           MS. BECKER:  Okay.

6           MR. JOHNSON:  I'll call you later on today,

7    we'll figure it out.

8           MS. BECKER:  Yeah, that would be really

9    helpful because you certainly didn't respond and tell me

10   that after I sent it.  And I would also point out--

11          MR. JOHNSON:  Well, I got it like late

12   yesterday and I was trying to figure out how to open it

13   and then I have to prepare my lectures for today.  You

14   know, we've got other things to do.

15          MS. BECKER:  Exactly.  Well, and with

16   regards to what Mr. Ho said, I did receive an e-mail

17   last night with the box of images.  And I would like to

18   also point out that I-- I explained to opposing counsel

19   that my co-counsel, Mr. Roe, had a death in the family

20   and my only assistant is also out of town with a sick

21   child in St. Louis being tested.  And that was why I

22   couldn't meet the earlier agreed upon, you know, hey,

23   let's try to do this.

24          But we are still working on it and we did--

25   we did completely re-format the exhibit list and send it

```
 1   out.  And we are still cutting it down, so I think we
 2   are doing our best.  And I-- I would disagree with the
 3   characterization as being-- that's being made, but...
 4              THE COURT:  Well, I think you should do your
 5   best.  And where is Mr. Kobach?  I mean, he's
 6   representing himself as well.  He's counsel on this
 7   case.
 8              MS. BECKER:  Yes.  Well, he is-- he is
 9   running a lot of the other agency things, Your Honor,
10   but he definitely-- as we get closer to trial, he will
11   be hands-on and-- as he wants to be.
12              THE COURT:  Well, you might convey to him
13   that I said that he needs to be hands-on now because the
14   way this operates is all these deadlines hit and-- and
15   the Court really expects the parties to confer and to
16   try to streamline the case and to stipulate to exhibits
17   when they can and stipulate to facts when they can so
18   that everybody-- you know, so everybody's time is used
19   efficiently during trial.  Not just the Court, but all
20   of you.  You all are busy.  You all have other cases and
21   other obligations and other hats you wear in Mr.
22   Kobach's case, for example.
23              So anyway, now is the time for everybody to
24   be hands-on.  Believe me, it pays off when you get to
25   trial.  So please convey that to him.
```

1          MS. BECKER:  Certainly.

2          THE COURT:  Because it sounds like you're--

3    you know, you've got-- you're really struggling without

4    Mr. Roe at least in the immediate-- in the near few

5    days.  And I can appreciate that, but we still need to

6    get this case in shape for trial.

7          MS. BECKER:  Absolutely, Your Honor.  And we

8    have not-- we've not missed any deadlines.  We've not

9    asked for any extensions.  I think we're on target to

10   meet everything.  And we're just definitely, you know--

11   we'll try to just communicate more.  Now that we've

12   gotten our list in a better format, I think we're--

13   we're on track.

14         THE COURT:  Okay.  Well, I have imposed a

15   new deadline for the stipulations in March-- I'm sorry,

16   February.  I'm looking at the wrong month here.

17   February 16th.  So you're going to need-- you're going

18   to need some support and some help, so you need to let

19   co-counsel know that.

20         MS. BECKER:  Your Honor?

21         THE COURT:  Yes.

22         MS. BECKER:  I'm sorry, this is Ms. Becker

23   again.  I actually-- I do know that our agency is

24   involved with the National Association of Secretaries

25   meetings on the 16th, which is the Friday that-- the

1   deadline you've given us.  And if it's-- if it doesn't

2   make a difference to you or to any of the other parties,

3   I was wondering if we could move that to Monday the

4   19th?

5          THE COURT:  Does anybody object to that?

6          MR. HO:  This is Dale Ho.  We don't object,

7   Your Honor.

8          MR. JOHNSON:  Mark Johnson.  No objection.

9          THE COURT:  Okay.  We'll make it Monday the

10   19th.  That is a federal holiday, but I'm sure you're

11   all working, so...

12          Okay.  I think I've covered everything

13   except there is a pending motion for contempt.  And I

14   wanted to talk to you all about that.  I-- again, time

15   is very limited.  As I've just said, I really want you

16   all to focus on getting this case ready for trial.

17          So I think in lieu of trying to have an

18   evidentiary hearing on this before trial, we ought to

19   wait.  Either-- and I don't know if there will be time

20   during trial or I should schedule it after the trial or

21   carve out some time or something, so I just want to hear

22   your-- your views on that.

23          Mr. Ho.

24          MR. HO:  Yes, Your Honor.  We certainly

25   appreciate how busy the Court is and we're happy to

1   accommodate scheduling however the Court sees fit.  If

2   it makes sense to have some kind of proceeding along the

3   contempt motion during trial, any evidentiary

4   submissions we think we've already put in on the papers

5   that-- are sufficient to sustain a finding in that

6   regard.

7            But if Your Honor wants to hear anything

8   from us, either in terms of argument or live evidence

9   about that, we'd be happy to do it while we're there for

10  trial.  We-- we just felt like we needed to file the

11  motion, Your Honor, because the representation we've

12  gotten from the defendants is that these issues won't be

13  addressed even if we received a final judgment after

14  trial.

15            THE COURT:  Ms. Becker.

16            MS. BECKER:  Your Honor, I think that we

17  would-- we feel that this is a little bit of a

18  distraction and we disagree with-- obviously with the

19  motion.  We would prefer to handle it probably after

20  trial.  You know, I mean obviously you don't want to

21  have a hearing-- or you don't want to hear the arguments

22  today, but we-- we would rather just get ready for

23  trial.

24            THE COURT:  All right.  I think what I will

25  do is at some point during the trial while I have you

1    here, while Mr. Kobach is here, because I think-- not

2    that we're necessarily going to need an evidentiary

3    hearing, maybe defendant wants an evidentiary hearing, I

4    don't know.

5              But I'll at least want to have a discussion

6    while everyone is here, and particularly while Mr.

7    Kobach is here.  So I'll bring it up at some point

8    during trial and then we'll decide where to go, whether

9    to at the end of the trial carve out another however

10   long, hour, half day or-- or set it out.

11             But there is some urgency in deciding this

12   obviously.  The election season is approaching.  Because

13   of that, you know, we're trying this case in March.  You

14   know, Mr. Kobach wanted it tried no later than March,

15   I'm accommodating that.

16             This motion really goes to some matters I

17   think that need to be decided with some urgency if-- if

18   plaintiff's position is right.  And I'm not saying that

19   it is, but-- all right.  So we'll-- we'll talk about

20   that at some point during the trial while everyone is

21   there-- here I should say.

22             Okay.  What else, if anything?  Do you have

23   any questions about trial process, procedure, anything

24   else that we've talked about?

25             Mr. Ho.

 1          MR. HO:  I had two quick questions, Your

 2    Honor, if I may.  One is about the proposed findings of

 3    fact and conclusions of law.  And our question is about

 4    whether Your Honor prefers receiving those filings

 5    before trial only or if you also would like to receive

 6    some form of either post-trial briefing or proposed

 7    findings of fact and conclusions of law after trial.

 8          We're really just trying to get a sense of

 9    whether Your Honor wants a single filing that is as

10    comprehensive as possible prior to trial or if you're

11    looking for something more of a schematic that will give

12    you kind of a guide for what we're doing at trial that

13    we would then fill in after all the evidence is actually

14    in.

15          THE COURT:  That would be helpful.  A

16    schematic would be helpful.  It's always-- to me it's

17    more helpful to get proposed findings and conclusions

18    and briefing, whatever, after the trial.  But anything

19    that you would like to give me ahead of then in order--

20    whether it's, you know, your order of proof or some

21    schematic as to how you're going to present your case,

22    that would be helpful.  Demonstrative exhibits are

23    always welcome.  I probably think and process

24    information just like most jurors do, so that would be

25    helpful.

1           Okay.  Does that answer both of your

2   questions or is that just one question?

3           MR. HO:  That was just one question.  But I

4   if I understand Your Honor correctly, we should proceed

5   under the assumption that there will be some sort of

6   post-trial briefing or proposed findings of fact and

7   conclusions of law after trial?

8           THE COURT:  Correct.

9           MR. HO:  Great.  Thank you, Your Honor.  And

10  the second question I had, and maybe this is something

11  that we can work out with the defendants, is-- but if

12  you have a preference for how we handle witnesses that

13  are on both sides' witness lists.

14          There are two witnesses whom both sides have

15  designated for live testimony.  And what we proposed to

16  the defendant but hadn't heard back was an idea that we

17  would just have these witnesses come once.  That we

18  would call them since we're going first during our

19  case-in-chief, do our direct examination.

20          The defendants could then do a direct that

21  wouldn't be limited to the scope of our direct plus any

22  cross that they have related to our direct examination.

23  We'd then do a cross and-- slash redirect.  And then

24  they could do any redirect that they wanted to after

25  that.

1           We thought that that might-- even though
2   it's taking the witnesses in some sense technically
3   speaking a little bit out of order, would streamline
4   things a little bit so that we don't have to bring the
5   witness once, do a direct, cross, redirect and then
6   bring them back again during the defendant's
7   case-in-chief.
8           THE COURT:  Okay.  Ms. Becker, what's your
9   view of that?
10          MR. JOHNSON:  Your Honor, this is Mark
11  Johnson.  I'm sorry to interrupt, I have to leave to go
12  to class.
13          THE COURT:  Okay.
14          MR. JOHNSON:  So Mr. Woods and Ms. Wenger
15  will take over for me.  Thank you.
16          THE COURT:  Okay.
17          MR. JOHNSON:  I'm sorry.
18          THE COURT:  No problem.  Thank you.  Ms.
19  Becker, do you-- what's your view of that?  I do--
20  that's typically what I do if the parties agree to it,
21  but what's your view?
22          MS. BECKER:  Our view is - and I did-- I did
23  talk to Mr. Roe about this over the telephone - is that
24  definitely we don't want to have to bring witnesses back
25  twice.  So whether I missed responding to an e-mail, I

1    apologize.  But we've already decided that we will try

2    to streamline that.  And I think that when we give you

3    something in writing on the-- on the 19th, if you would

4    like, as to what our, you know, stipulations are and

5    maybe we can get a little more detailed.

6              When I originally reached out to plaintiffs

7    about the joint status report, I thought it was going to

8    be a lot more detailed.  And then they said that they

9    didn't have time to put that much detail into it and so

10   that's why we ended up filing sort of a real generic

11   thing.

12             But with regards to witnesses, I-- I agree

13   that we really only want to inconvenience them and have

14   them come down once.  So however that works out.  And I

15   think the parties can discuss that and have it sorted

16   out towards the-- by the deadline.

17             THE COURT:  Okay.  So let's proceed that

18   way.  And we do that pretty often around here.  So

19   plaintiff would direct that person, you both have them

20   on your witness list, and then you would cross examine.

21   But I would allow your cross examination to exceed the

22   scope of direct because you would also be wanting to

23   direct examine that person.  So, you know, give you some

24   latitude there.

25             And then, you know, plaintiff would be able

1  to then cross on what you've-- you know, the new

2  information-- well, actually just cross altogether and

3  be sort of a slash redirect slash cross.  But we do that

4  all the time and that's fine.

5          Okay.  On behalf of Plaintiff Benasek, Mr.

6  Woods or Ms. Wenger, do you have any questions?

7          MR. WOODS:  No, Your Honor.  Thank you.

8          THE COURT:  Okay.  And then finally, Ms.

9  Becker, do you have any questions?

10          MS. BECKER:  I do, Your Honor.  I do have a

11  few things.  First I had also mentioned to Mr. Ho about

12  the-- the deposition designations, and each party has

13  filed various designations.  And I don't know, Your

14  Honor, since it is a bench trial if you have a

15  preference on whether-- like normally in front of a jury

16  we would be obviously reading the depositions in sort of

17  a role play.

18          But I didn't know if you expected us to-- to

19  read the deposition portions into the record in front of

20  you or if you as-- as an effort to streamline whether

21  you would just want to take them and read them.  I'm not

22  really sure if you have a preference.  That would be my

23  first question.  I have four.

24          THE COURT:  Okay.  Well, the answer to

25  Question No. 1, it really depends on how extensive the

1    deposition designations are.  I mean, you all I assume

2    at this point know who you're calling live and who

3    you're calling only by deposition.  So I mean, how many

4    depositions do you think we're talking about from your

5    standpoint, Ms. Becker?

6                MS. BECKER:  Oh, probably maybe five.  I

7    mean, compared to other cases there aren't that many I

8    don't think.

9                THE COURT:  Okay.  Lengthy depositions?

10               MS. BECKER:  I'm sorry?  I didn't hear you.

11               THE COURT:  Lengthy depositions?

12               MS. BECKER:  Well, the depositions are but

13   the portions designated are-- are not.  I could try to

14   get a better idea.  We filed it all, so they're in the--

15   they're in the court file.

16               THE COURT:  Okay.

17               MS. BECKER:  I don't think it would take

18   more than an hour or so I would think to-- to read them

19   all, if that's what the Court would prefer.

20               THE COURT:  I'm going to err on the side

21   of-- or lean I guess I should say, lean on the side of

22   having you all read them aloud to me, only because I

23   know I'm going to be hearing expert testimony and it

24   might be better if I've already had a chance to hear

25   that, if the experts are going to be relying on that

```
1    testimony at all.
2              But why don't we-- when we get to the start
3    of the trial, let's talk about this again because
4    sometimes your case winnows down by the time of trial
5    and your depositions may get even narrower and it might
6    be easier for me to just read them, you know, the first
7    evening after trial.  So let's talk about it again.
8    Okay?
9              MS. BECKER:  Okay.  Thank you.
10             THE COURT:  All right.
11             MS. BECKER:  My-- my other question, Your
12   Honor, is-- this is a simple one.  And do you prefer
13   that the attorneys use the podium and remain behind the
14   podium or are you okay with attorneys as we're
15   questioning the witnesses sort of moving around a
16   little?
17             THE COURT:  I like you to use the
18   microphone, it just makes it easier for everyone.  But
19   certainly if you need to show the witness something,
20   that's fine.  We've got this electronic evidence
21   presentation system, though, so-- and Ms. Wiest can
22   train you all on it if you make arrangements with her,
23   where the witness can-- you can point to things on the
24   exhibit staying where you're at and the witness can do
25   the same, which kind of alleviates some of the need to
```

```
 1   walk around.
 2                So my preference would be to stay with the
 3   microphone as much as you can, but I'm not going to kill
 4   you if you get away from the lectern a little bit.
 5                MS. BECKER:  Okay.  Thank you.  And then
 6   also, Your Honor, you had mentioned that your daily
 7   schedule is typically from 9:00 to 5:00.  And I may have
 8   missed it, but does that include like an hour lunch
 9   break or a half hour or what do you prefer there?
10                THE COURT:  You know, usually I do a
11   mid-morning break of 15 minutes, about an hour for lunch
12   and about a 15-minute mid-afternoon break.
13                MS. BECKER:  All right.  Thank you.  Then
14   two more questions.  Do you have an opinion on any sort
15   of trial publicity or courtroom attendance by
16   newspapers, reporters, that kind of thing?
17                THE COURT:  I imagine there's been-- you
18   know, there's been media and public interest in this
19   case.  I don't know if we've had any information that
20   tells us what to expect.  I was planning to do this
21   trial--
22                (The Court and courtroom deputy confer).
23                THE COURT:  Okay.  Well, it sounds like my
24   courtroom has been booked for a military trial of some
25   sort, which probably means we're going to move up to the
```

1    sixth floor and have a much larger courtroom anyway.  So

2    that should be able to accommodate whoever shows up

3    within reason.

4              MS. BECKER:  Okay.  Well, I-- you know, the

5    only concern, Your Honor, is that if this becomes sort

6    of a sensational thing and-- well, I'm not going to

7    re-hash what's happened already between the parties.

8    But there is a local rule about just limiting-- limiting

9    that sort of for purposes of, you know, not distracting

10   what we're trying to do as far as presenting evidence

11   and so forth.

12             So I don't-- I don't know if you would be

13   amenable or if you just sort of want to play it by ear,

14   but I just don't want any kind of, you know, sort of a

15   circus with lots and lots of people.  And I think it's

16   83.2.3 about perhaps limiting under the Court's, you

17   know, discernment.

18             THE COURT:  I need to look at that rule.

19   Tell me what your concern is.

20             MS. BECKER:  Just that if we have like loads

21   of-- of press and, you know, I know they can't bring

22   cameras in and whatnot in-- and video things into the

23   courtroom.  But I just don't think we should have like

24   multiple reporters from one organization or-- I just

25   want to try to make it not like a circus, because it's

1   going to be sort of-- I know we don't have a jury, but

2   I-- I still want to be able to keep the parties and the

3   witnesses focused without an over-abundance of press and

4   interested groups.

5           THE COURT:  Well, in the past I've had-- and

6   the Court certainly has had a few occasions where there

7   has been a high-profile trial and a lot of media

8   interest.  And I-- frankly, I haven't really thought

9   this through because we have not had that many show up

10  during pretrial hearings, I mean, not of the-- you know,

11  not of that nature.

12          But we can make available an overflow room

13  so if there's not enough seating for everyone in the

14  courtroom.  This is going to be a big courtroom I think

15  so we probably won't need to worry about that.  We don't

16  have a policy of limiting a news organization to one

17  representative.

18          We don't have a policy of even defining who

19  a news organization is because in this day and age, the

20  media is everywhere.  You have bloggers.  I mean, I know

21  there are courts that have tried to establish those

22  limits, but I-- I really have concerns about, you know,

23  making judgments about who can come in and who can't and

24  who's media and who is not, frankly.  Hopefully we won't

25  have this issue, but-- you're right, electronic

1    communication devices cannot come into the courtroom.

2         But Rule 83.2.3 says-- it's called "Special

3    Orders in Sensational Cases."

4         "In a widely-publicized or sensational

5    criminal or civil case, the court may enter a special

6    order governing such matters as:  extrajudicial

7    statements by attorneys, parties, or witnesses; the

8    seating and conduct of spectators and news media

9    representatives; the management and sequestration of

10   jurors and witnesses; and other matters the court finds

11   necessary to ensure a fair trial."

12        As far as seating and conduct of spectators

13   and news media representatives, I'll be mindful of that.

14   That unless I think there's a problem, I'm not-- I don't

15   see any reason to enter an order prospectively because,

16   again, I'm not sure we're going to get that kind of

17   turnout.  If we end up getting way more people than we

18   can accommodate in the courtroom and/or the overflow

19   room, we'll figure out something.  We've done that

20   before.

21        Extrajudicial statements by attorneys,

22   parties or witnesses I think is really designed for, you

23   know, being concerned about tainting the jury pool.  But

24   there is no jury pool, it's just me, so I'm not that

25   concerned about that either.

 1            But I-- I appreciate your raising this, Ms.

 2   Becker, and I think I should keep my eye on the ball

 3   because, you know, sometimes things turn out to have

 4   much more public interest and media interest than you

 5   anticipate.  So I will keep my eye on the ball.  If you

 6   are concerned about something, certainly bring it up to

 7   me before trial or when trial starts and we'll deal with

 8   it at that time.

 9            MS. BECKER:  Thank you, Your Honor.  My

10   final-- my final question then is in regards to the

11   proposed findings of fact, and I know Mr. Ho touched on

12   it briefly.  I have sort of a different question with

13   regard to that.  I notice that they are due-- I believe

14   they're due from the parties on the same date, which is

15   February 20th.

16            And my question is, in looking at the-- the

17   rule, it appears that we are supposed to be responding

18   to the other party's proposals.  And since we're filing

19   it on the same date, I-- I just wanted to make sure

20   that-- kind of what Mr. Ho was asking, that we can file

21   maybe a second-- a second set that would include those

22   responses.  So I don't know how we would do that on that

23   one deadline where we're, you know, filing them at the

24   same time.

25            THE COURT:  Correct.  Now, I-- if you want--

1    and I'm making this-- I'm not mandating it, but if you

2    want to file before trial proposed findings and

3    conclusions, those would be due on the 20th without

4    responding to the other side.  The trial will sort of be

5    the response.  And, you know, frankly, pre-trial

6    submissions aren't as helpful as post-trial because

7    post-trial is based on how the evidence really rolls in

8    or at least the party thinks it rolls in.  Pre-trial is

9    somewhat predictive, so...

10               But, yeah, February 20th would be the

11   deadline for simultaneous submissions.  Don't worry

12   about responding.  And then after trial I'll be calling

13   on you for proposed findings and conclusions.  And I--

14   frankly, I don't set response deadlines always for those

15   either because, you know, I'm in this case the trier of

16   fact and I'll look at the evidence and I'll consider

17   your submissions and decide which to adopt or maybe I

18   won't adopt anybody's and come out with my own findings

19   somewhere in between.  So that's how we'll proceed

20   there.

21               MS. BECKER:  Thank you, Your Honor.  And

22   actually I have-- I'm sorry, I have one more question.

23               THE COURT:  Okay.

24               MS. BECKER:  You had mentioned that you

25   would be amenable to receiving schematic sort of

 1   demonstratives from the parties and I was wondering if
 2   you wanted those actually filed or just we bring those--
 3   they don't get offered into evidence, but we bring
 4   copies for the other side.  And I'm just trying to get--
 5   judge your level of how you prefer us to handle that.
 6              THE COURT:  Sure.  No, they-- they wouldn't
 7   be filed, but I would ask that you exchange them with
 8   the other party at least 24 hours in advance so they--
 9   you know, like, for example, if it's a graph or a table
10   or there are calculations or something, so they have a
11   chance to check it and, you know, raise an objection if
12   they think it's inaccurate or something.
13              So just exchange them ahead of time.  But
14   otherwise, no, you won't need to file them and then you
15   can just display them to me, you know, during opening,
16   during evidence, whatever.
17              MS. BECKER:  All right.  Thank you.
18              THE COURT:  Okay.
19              MR. WOODS:  Judge, this is-- this is Curtis
20   Woods.  I take it then that on the first day of trial we
21   report to the sixth floor courtroom?
22              THE COURT:  Bonnie will let you know.  We--
23   we're a little bit up in the air on that.
24              MR. WOODS:  Okay.
25              THE COURT:  Because we have promised my

1  courtroom away, but at least at some point we'll be

2  moving up to the sixth floor.  And we may start that,

3  especially since we don't know how much of a crowd will

4  come.  But she'll be in touch with you about that.

5           MR. WOODS:  All right.

6           THE COURT:  Okay.  Anything else?  All

7  right.  Well, I-- I'm sorry?

8           MR. HO:  Oh, no, this is Dale Ho.  I was

9  saying no, Your Honor, nothing else from us.

10          THE COURT:  Okay.  Well, I thank everyone

11 for being available over the lunch hour, I appreciate

12 that.  And we will look forward to seeing you on

13 March 6th.  Thank you.

14          MS. BECKER:  Thank you.

15          MR. HO:  Thank you, Your Honor.

16          MR. WOODS:  Thank you.

17          (1:05 p.m., proceedings recessed).

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3

4        I, Kelli Stewart, a Certified Shorthand Reporter and

5    the regularly appointed, qualified and acting official

6    reporter of the United States District Court for the

7    District of Kansas, do hereby certify that as such

8    official reporter, I was present at and reported in

9    machine shorthand the above and foregoing proceedings.

10       I further certify that the foregoing transcript,

11   consisting of 40 pages, is a full, true, and correct

12   reproduction of my shorthand notes as reflected by this

13   transcript.

14       SIGNED February 15, 2018.

15

16

17

18            /s/ Kelli Stewart

19            Kelli Stewart, CSR, RPR, CCR, RMR

20

21

22

23

24

25