## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STEVEN WAYNE FISH, ET AL.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 16-2105-JAR** |
| **KRIS KOBACH, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF KANSAS,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Before the Court are two pretrial motions seeking to strike or limit testimony offered by Defendant Kris Kobach: Plaintiffs' Motion to Exclude Testimony, Strike Deposition Designations, and Exclude Survey of Patrick McFerron (Doc. 460); and Plaintiffs' Motion to Strike and Exclude Untimely "Additional" Expert Opinions From Dr. Jesse Richman (Doc. 448). The motions are fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants in part, denies in part, and takes under advisement in part the motion to exclude and limit McFerron's testimony and survey. The Court grants Plaintiffs' motion to exclude Richman's supplemental expert opinion and denies the motion to strike.

### I.      Patrick McFerron

On May 17, 2016, Defendant filed a Notice of Service of Rule 26(b) Expert Report, attaching the report of Hans von Spakovsky.[1] Attached to that report is a survey of 500 Kansans by CHS & Associates, conducted between May 9 and 11, 2016. Pat McFerron drafted the survey

---

[1]Doc. 128. Defendant improperly attached von Spakovsky's expert report to this notice. *See* Fed. R. Civ. P. 26(a)(2); D. Kan. R. 26.3 (providing that disclosures under Rule 26(a)(2) are not to be filed, but instead a certificate of service should be filed stating the type of disclosure or discovery served, the date and type of service, and the party served).

results relied on by von Spakovsky in his expert report.  McFerron is listed on the CHS report as the President of CHS & Associates, which is in Oklahoma City, Oklahoma.  On May 31, 2016, Plaintiffs filed a notice of deposition for McFerron, scheduled for June 7, 2016.  According to Defendant's brief, this deposition lasted for about six hours.  Plaintiffs' counsel asked McFerron whether he purported to testify as an expert in this case, and he testified that he did not believe so.  He testified about the survey, its methodology, and its results.  McFerron was never disclosed as an expert witness under Fed. R. Civ. P. 26(a)(2); he has not prepared an expert report in this matter.  The Court assumes that McFerron was disclosed as a fact witness, although neither party makes clear whether he was initially disclosed as a fact witness under Rule 26(a)(1).

    Neither party relied on McFerron's deposition testimony on summary judgment, but Defendant submitted the von Spakovsky expert report, along with the attached McFerron survey, in support of his motion for summary judgment.  Plaintiffs filed a motion to exclude this report and the attached survey under Fed. R. Evid. 702 and *Daubert.*  In a January 3, 2018 ruling, the Court excluded the survey for purposes of summary judgment, finding that von Spakovsky was not qualified to opine about the McFerron survey results and methodology.

    On January 30, 2018, Defendant filed his final witness disclosures,[2] in advance of the March 6, 2018 trial date.  McFerron is listed as a fact witness by written deposition.  Also on that date, Defendant filed his deposition designations, which include a significant portion of McFerron's deposition.[3]  Plaintiffs now move *in limine* to exclude McFerron's testimony, strike and exclude from trial his deposition designations, and exclude his survey.  They argue that his

---

[2]Doc. 444.

[3]Doc. 443.

testimony is inadmissible lay opinion, that it should be excluded as expert opinion because it was not disclosed under Rule 26(a)(2), and Defendant's failure to disclose was neither harmless nor substantially justified.  Moreover, if the Court is inclined to allow McFerron's opinion testimony, Plaintiffs ask that Defendant be required to produced him as a live witness.  Finally, Plaintiffs seek to exclude the survey as inadmissible hearsay.

### A.      Lay versus Expert Opinion Testimony

Plaintiffs' requested relief depends in part on whether McFerron's proposed testimony about the 2016 survey constitutes lay or expert opinion.   Fed. R. Evid. 701 governs lay opinion testimony:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Tenth Circuit has explained that "Rule 701 'does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.'"[4]  Examples of lay opinion evidence are "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences."[5]

First, Defendant maintains that McFarron's proposed testimony qualifies as lay opinion testimony because it does not involve specialized skill or knowledge, but instead merely relays

---

[4] *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)).

[5] *Id.* (quoting *Asplunch Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995)).

the survey's questions and results.  His final witness disclosure describes McFarron's testimony

as follows:

> Mr. McFerron is expected to testify regarding the survey he
> designed and conducted of Kansans in May of 2016.  Mr.
> McFerron will testify consistent with other subject matters
> addressed in his deposition given in this case on 6/07/16 including
> how the study was conducted and its results.
>
> Mr. McFerron will testify that after controlling for gender, age, and
> geographic region in order to replicate US Census information, the
> study revealed that requiring proof of citizenship in order to
> register to vote is not a concern for residents and is not hampering
> voter registration.  Among those not registered to vote, only one
> (who later acknowledged having access to a birth certificate)
> mentioned documentation as a reason for not being registered to
> vote.  This was far outdistanced by those who said they had no
> interest in voting, those with felony convictions and those who for
> personal reasons (having moved, just turned of age, or had not
> made time) had not registered to vote.  Fully 96% of the
> respondents with legal status indicated they had ready access to a
> birth certificate showing them being born in the United States or
> on a US territory.  When just including a US Passport option, this
> percentage grows to 98% having one of these two documents.
> This increases to 99% when including other hospital records or
> military records.  Access to a birth certificate is nearly universal
> with all age and income groups reporting 95% having access.
> Similarly, those of Hispanic descent are just as likely to have
> access to a birth certificate showing US birth (96%) as are those
> not of Hispanic descent (96%).  Not only does this law not provide
> an obstacle to legal residents voting, it is embraced by them.  Fully
> 77% of all respondents favor the law and only 14% oppose it.
> Even among those not registered to vote, 77% are supportive of the
> law.  This group is actually less opposed (10%) than are those who
> are registered to vote (15%).[6]

Plaintiffs respond that the described testimony is based on specialized knowledge in survey

design and methodology, which is beyond the realm of common experience.  The Court agrees.

---

[6]Doc. 444 at 2–3.

While it is true that McFerron has firsthand knowledge of the survey's questions and results, Rule 701 applies where the witness offers "observations that are common enough and require . . . a limited amount of expertise, if any."[7]  McFerron plainly offers testimony that requires expertise in survey design and methodology.  For example, he plans to testify about the survey's attempts to control for gender, age, and geographic region based on census data.  The description submitted by Defendant in paragraph 2 of McFerron's final witness disclosure plainly includes an interpretation of the survey's results.  And his deposition testimony includes a recitation of his past survey experience, educational background, expertise in surveying, and an explanation of the methodology behind his survey results.

Defendant characterizes the survey's methodology as basic math.  In *Bryant v. Farmers Insurance Exchange*, the Tenth Circuit allowed lay opinion testimony about "a simple average of 103 numbers," explaining that basic mathematical calculations, "well within the ability of anyone with a grade-school education is, in our opinion, more aptly characterized as a lay opinion under Fed. R. Evid. 701."[8]  The Tenth Circuit has also approved of accountant testimony on lost profits under Rule 701 where the accountant prepares such valuations based on personal experience with the company, uses "basic arithmetic," and "no outside expert reports."[9]

The Court finds that McFerron's survey results go beyond the simple math previously allowed under Rule 701 in this circuit.  Defendant hired a professional research firm to conduct this survey; his office did not conduct the survey.  This witness relies on his extensive polling experience and educational background in testifying about the survey's methodology and results.  McFerron's testimony, as described in the final witness disclosure, will be offered by Defendant

---

[7]*James River*, 658 F.3d at 1214 (quoting *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995)).

[8]*Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2011).

[9]*Ryan Dev. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013).

to show that this survey is reliable and helpful to the trier of fact.  The Court cannot determine admissibility of this survey without such expert testimony.[10]  Because the Court finds that McFerron's testimony does not satisfy Rule 701, Defendant's prior designation of McFerron as a fact witness was insufficient under Rule 26(a)(2).

### B.      Failure to Disclose

Under Fed. R. Civ. P. 37(c)(1), when a party fails to designate a witness as required by Fed. R. Civ. P. 26(a),

> the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[11]

In determining whether a failure to disclose is harmless or substantially justified, the Court looks to several factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such

---

[10]*See, e.g.*, *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1544–46 (10th Cir. 1996) (explaining that a survey is admissible as an exception to the hearsay rule if it has guarantees of trustworthiness, which will be the case where "it is shown to have been conducted according to generally accepted survey principles." (quoting *Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 522 (10th Cir. 1987)); *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005) (rejecting survey because its creator did not qualify as an expert); *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 457 (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) (explaining that survey is properly excluded where witness did not qualify as an expert); *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 521 (S.D.N.Y. 2009) (excluding "ad hoc survey" where the proponent did not submit an expert and the survey was found to be fundamentally flawed).  *But cf. Scott v. City of New York*, 591 F. Supp. 2d 554, 559–60 (S.D.N.Y. 2008) (allowing survey evidence despite failure to designate expert where survey was jointly developed by the parties and administered by neutral third-party survey firm).

[11]Fed. R. Civ. P. 37(c)(1).

testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[12]  The

burden to demonstrate that the failure to disclose is harmless or substantially justified is on the

party who failed to properly disclose.[13]

  In his response brief, Defendant suggests that Plaintiffs were on notice that McFerron

was to be a lay witness, not an expert witness, and therefore any error in designation was

harmless.  But the Court has rejected Defendant's argument that McFerron's testimony qualifies

as lay testimony, and Plaintiffs' perception in June 2016 about whether McFerron would testify

as a lay or expert witness does not dictate the prejudice inquiry.  Instead, this Court must

determine whether Defendant's failure to properly designate McFerron *as an expert witness* was

harmless or substantially justified.

  The parties dispute the prejudice and surprise factor given Plaintiffs' extensive deposition

of McFerron in June 2016, during which Plaintiffs examined McFerron about his educational

background, prior survey experience, and survey methodology.  As Plaintiffs have explained, the

prejudice and surprise here does not necessarily stem from Plaintiffs' inability to depose the

witness.  Rather, the prejudice and surprise stems from Defendant's failure to follow the dictates

for expert designations set forth in Rule 26(a)(2) and the Court's scheduling orders.[14]  Failure to

follow these rules allowed Defendant to circumvent his disclosure obligations that better allow

Plaintiffs to prepare for dispositive motions, and retain a rebuttal witness.  Moreover, because

Defendant never designated McFerron as an expert, nor informally identified him as such prior

to the pretrial *Daubert* motion deadline, Plaintiffs lost their opportunity to file a motion to

---

[12]*Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

[13]*Paliwoda v. Showman*, No. 12-2740-KGS, 2014 WL 3925508, at *5 (D. Kan. Aug. 12, 2014).

[14]*See* Fed. R. Civ. P. 26(a)(2) (requiring written expert reports or disclosures and providing separate disclosure deadlines); Docs. 258, 349; *Bednasek v. Kobach*, Doc. 91.

exclude under Rule 702 and *Daubert* by the deadline set forth in the pretrial deadlines order. This most certainly caused Plaintiffs prejudice and surprise.

Nonetheless, the Court agrees that Plaintiffs' deposition, coupled with their retention of a rebuttal expert that has submitted an opinion about the reliability of the study, undercuts the degree of prejudice and surprise associated with McFerron's testimony about the survey's results, and its reliability. Plaintiffs explored McFerron's qualifications and the survey's methodology during that deposition. And, importantly, they filed a motion to exclude prior to summary judgment, that raised several reliability challenges to the survey in the context of von Spakovsky's expert report, to which the survey was attached.[15] The Court did not reach Plaintiffs' reliability argument in ruling on that motion because it found that von Spakovsky was not qualified to testify about it. Plaintiffs recently renewed their motion to exclude von Spakovsky's expert testimony, and this survey.[16] These facts demonstrate that Plaintiffs have had some opportunity to cure the prejudice associated with Defendant's failure to designate this expert witness. The Court further finds that introducing this testimony would not disrupt the trial, and that Plaintiffs have not shown bad faith or willfulness by Defendant.

While Plaintiffs have been able to cure some of the prejudice associated with Defendant's failure to properly designate this expert witness, prejudice and surprise remain because no expert report was filed, and Plaintiffs were not afforded an opportunity to present a timely motion to exclude this witness.[17] Therefore, the Court determines Defendant may not present McFerron's

---

[15]Doc. 392.

[16]Doc. 428.

[17]Plaintiffs attach their informal communications with defense counsel before the motion to exclude deadline, in which Defendant identified his experts as Richman, von Spakovsky, and Camarota. Plaintiffs filed motions to exclude all three of these witnesses by the deadline.

testimony at trial by deposition.  Under Fed. R. Civ. P. 32(a), a deposition may be used against a

party if:

> (A) the party was present or represented at the taking of the
> deposition or had reasonable notice of it;
> (B) it is used to the extent it would be admissible under the Federal
> Rules of Evidence if the deponent were present and testifying; and
> (C) the use is allowed by Rule 32(a)(2) through (8).

Under Rule 32(a)(4), a party may use a deposition if the Court finds that the witness is

unavailable, which includes when the witness is located more than 100 miles from the place of

trial.

Although the Tenth Circuit has not recognized a distinction between fact and expert

witnesses for purposes of Rule 32(a), several courts in this circuit have recognized important

considerations that may counsel in favor of requiring such testimony be presented live.[18]  The

Court is not automatically required to allow a witness to testify by deposition when they are

located more than 100 miles away, especially when the trier of fact is required to evaluate the

witness's credibility, and where there is unfair surprise.[19]

Although the Court agrees with Plaintiffs that the factors set forth by Judge Finesilver of the

District of Colorado in the *In re Aircrash* decision should guide this Court's inquiry:

> Because of the judicial preference for personal testimony in court,
> the court must balance various factors toward the ends of fairness:
> (1) offeror's need for the evidence to be presented through the

---

[18] *See Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1410 (10th Cir. 1991) (recognizing that expert may be able to testify by deposition but finding no error when district court refused to admit based on unfair surprise); *In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1493, 1501–02 (D. Colo. 1987) ("the admission of deposition testimony in lieu of oral testimony lies in the sound discretion of the trial court"); *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-1468-WJM-BNB, 2014 WL 1319361, * (D. Kan. Apr. 2, 2014) ("whether to admit expert deposition testimony under Rule 32(a) appears to be within the discretion of the district court."); *Nichols v. Am. Risk Mgmt. Inc.*, No. 89Civ.2999(JSM)(AJP), 2000 WL 97282, at * (S.D.N.Y. Jan. 28, 2000) ("The paucity of case law is easily explained. In most cases, the party who hired the expert wants that expert to testify live at trial before the trier of fact, and so either hires a local expert or insures that its expert is willing to come to trial.").

[19] *See Polys*, 941 F.2d at 1410; *In re Air Crash*, 720 F.2d at 1502.

> deposition, (2) opportunity provided the opponent to cross-examine the deposition witness on those issues, (3) nature of the evidence to be presented, (4) jury's need to observe the demeanor and credibility of the witness, and (5) actual unavailability of the witness, as distinguished from mere geographic distance from the courthouse.[20]

Defendant does not address Plaintiffs' request that McFerron be required to testify live and not by deposition.  Therefore, the Court gives no weight to his need for this evidence to be presented by deposition.   The Court presumes, given McFerron's location in Oklahoma, that the basis for designating him to testify by deposition is his distance from the place of trial.  But there is no indication that actual unavailability, beyond mere distance from the courthouse, is the reason for Defendant's deposition designation.

While it is true that Plaintiffs had an opportunity in June 2016 to depose this witness, the Court finds that the nature of the evidence to be presented, in addition to this Court's need to observe the demeanor and credibility of the witness, counsels in favor of live testimony as an alternative sanction to excluding McFerron altogether.  As already explained, Defendant offers expert testimony through this witness despite failing to properly designate him or produce an expert report.  The Court may allow Plaintiffs an opportunity to move for exclusion under Rule 702 and *Daubert* out of time.  Moreover, Plaintiffs move to exclude the survey as hearsay, which will require the Court to determine its trustworthiness.[21]   These inquiries require the Court to evaluate credibility and demeanor of this expert witness in its gatekeeping role.  Therefore, while the Court will not wholly exclude this witness under Rule 37 for failure to designate under Rule 26(a)(2), it will require him to be called live and allow Plaintiffs a full and fair opportunity to seek exclusion of his untimely expert opinion.

---

[20]*In re Air Crash*, 720 F. Supp at 1502.

[21]*Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1545 (10th Cir. 1996).

### C.     Hearsay

Finally, Plaintiffs argue that McFerron's survey evidence and testimony is inadmissible hearsay.  Survey evidence is admissible in this circuit as an exception to the hearsay rule "if the survey is material, more probative on the issue than other evidence and if it has guarantees of trustworthiness."[22]  The Court will find a survey trustworthy "if it is shown to have been conducted according to generally accepted survey principles."[23]  The Court takes this objection under advisement, and will rule after hearing McFerron's live testimony at trial.

## II.   Dr. Jesse Richman's Supplemental Report

Defendant timely designated Dr. Jesse Richman as an expert who will testify about the number of noncitizens that have registered or attempted to register to vote in Kansas.[24]  Dr. Richman's timely expert Report was completed on January 30, 2017.  In it, he points to four types of data from which he extrapolates statewide estimates: (1) an internet-based 2014 Cooperative Congressional Elections Study ("CCES");[25] (2) pre-existing registration by newly naturalized citizens;[26] (3) matching of temporary driver's license ("TDL") holders and voter registration lists; [27] and (4) a January 2017 telephone survey commissioned by the State of Kansas, and conducted by a national polling firm, of TDL holders, individuals on the suspense list, registered voters in Ford, Seward, Finney, and Grant counties, and "incidentally contacted" individuals.[28]  He considered the strengths and weaknesses of each piece of data in determining

---

[22]*Id.* (quoting *Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 522 (10th Cir. 1987)).

[23]*Id.*

[24]Doc. 390-2.

[25]*Id.* at 5.

[26]*Id.* at 45–46.

[27]*Id.* at 6–7.

[28]*Id.* at 7–12.

rates of noncitizen registration, and he extrapolated the data to estimate statewide noncitizen registration rates.  He also included a "meta-analysis" of four of his estimates in his rebuttal report to support his opinion that a substantial number of registrants in Kansas are noncitizens. On April 17, 2017, Dr. Richman timely designated a rebuttal expert report, which responds to March 2017 expert reports by Plaintiffs' experts, including one by Stephen Ansolabehere.[29]  He was deposed on April 21, 2017.  Discovery closed at the end of April 2017.

In his final witness disclosure, Defendant "supplements Dr. Richman's expert opinions based on new data that became available in July, 2017 and January, 2018.  Dr. Richman's additional opinions are consistent with his previous testimony and reports, and are attached to this disclosure as Exhibit 1."[30]  Dr. Richman summarizes this new report as follows:

> The availability of additional data during the time since my expert report has made it possible to perform several additional analyses. This report briefly summarizes additional analyses that have helped inform my opinion. This report has three sections. The first discusses updates to my analysis of the national Cooperative Congressional Election Study (CCES) using data that became available in July 2017. The second discusses my analysis of Kansas respondents to the CCES using this data and a dataset that was made available on January 24, 2018. The third section is based upon the availability to me of data I had requested previously but not received until 1/29/2018 which allowed me to construct an extrapolation from the match of the TDL and voter file lists performed by Caskey to the broader Kansas non-citizen population.[31]

Defendant concedes in a footnote of the response brief that Dr. Richman's third section that includes a new extrapolation of TDL and voter file lists is a new opinion, and agrees to omit that portion of the report.  The Court therefore considers Plaintiffs' motion to exclude the first

---

[29]Doc. 390-3.

[30]Doc. 444 ¶ 1.

[31]Doc. 444-1 at 2.

two sections of this report.  Defendant argues that the CCES data in the report is appropriate

under Fed. R. Civ. P. 26(e).  Rule 26(e) places a duty on parties to supplement expert witness

reports:

> (1) In General. A party who has made a disclosure under Rule
> 26(a)--or who has responded to an interrogatory, request for
> production, or request for admission--must supplement or correct
> its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material
> respect the disclosure or response is incomplete or incorrect, and if
> the additional or corrective information has not otherwise been
> made known to the other parties during the discovery process or in
> writing; or
> (B) as ordered by the court.
>
> (2) Expert Witness.  For an expert whose report must be disclosed
> under Rule 26(a)(2)(B), the party's duty to supplement extends
> both to information included in the report and to information given
> during the expert's deposition.  Any additions or changes to this
> information must be disclosed by the time the party's pretrial
> disclosures under Rule 26(a)(3) are due.

Plaintiff argues that Dr. Richman's supplemental opinions are unjustified because the

underlying information has long been available to Defendant, and because the additional

information in the report is not based on "additional or corrective information [that] has not

otherwise been made known."  Moreover, Plaintiffs argue that allowing these supplements would

trigger additional demands for written discovery, depositions, and a reciprocal opportunity for

Plaintiffs to similarly update their own experts' analyses, potentially disrupting the March 6 trial

date.

The Court agrees that Richman's supplemental report was not disclosed in a timely

manner, even though it was provided with Defendant's pretrial disclosures under Rule 26(a)(3).

Defendant claims that the updated information considered in the report includes "2016 data from

CCES that became available after his deposition, and a CCES summary that became available in

January 2018."[32]  According to Richman's supplemental report, the 2016 CCES survey data was released in July 2017,[33] prior to the motion to exclude expert testimony deadline for experts submitted in support of summary judgment.   He states that the CCES summary discussed in the second section of his report was made available to him on January 24, 2018.  However, there is no record about when this information was made available to Defendant, or the reason for the lengthy delay between the release of the July 2017 CCES data, and the Kansas survey responses. "Rule 26 does not . . . bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline, even if the rule's pretrial time limit is satisfied."[34]  Defendant has offered no basis for waiting more than six months to update Dr. Richman's report with information that was available in July 2017, before the first motion to exclude was filed.

Moreover, Defendant failed to disclose that Dr. Richman would be issuing a supplemental report when the parties informally exchanged their expert witness lists in January to determine whether to file pretrial *Daubert* motions.  Defendant could have sought leave to supplement Dr. Richman's expert report last summer when the 2016 CCES data became available but declined to do so.  Instead, Defendant waited until after summary judgment was decided on the basis of the initial expert testimony, and then sandbagged Plaintiffs and the Court five weeks before trial.  The supplement filed on January 30, 2018, therefore was not made in a timely manner, as required by Rule 26(e)(1).

Defendant appears to recognize the untimeliness of his supplemental expert report because he argues that under Rule 37(c)(1) it should not be excluded because the failure to

---

[32]Doc. 467 at 4.

[33]Doc. 444-1 ¶ 2.

[34]*Aid for Women v. Foulston*, No. 03-1353-JTM, 2005 WL 6964192, at *3 (D. Kan. July 14, 2016) (quoting *Reid v. Lockheed Martin Aero. Co.*, 205 F.R.D. 655, 662 (D. Ga. 2001)).

disclose was harmless or substantially justified.  Defendant argues that there is no prejudice to admitting this supplemental opinion since the new data does not "drastically alter his opinion."[35] But this is not the standard.  The Court agrees with Plaintiffs that this new data would entitle them to supplement their rebuttal witnesses' opinions, which would derail the trial date. Potentially, it would also require Plaintiffs to be allowed additional time to file an amended motion to exclude under Rule 702 and *Daubert*.[36]  Therefore, the unfair surprise and trial disruption factors weigh in favor of exclusion of this evidence.  Again, the Court is unwilling to allow this untimely supplementation on the eve of trial, particularly given the paltry showing that Defendant made reasonable efforts to supplement when the new data became available. Defendant has failed to demonstrate that his untimely disclosure is harmless or substantially justified.

Finally, the Court considers Plaintiffs' request to strike the supplemental report attached to Defendant's final witness disclosures.  While Plaintiffs are correct that this is not the preferred method for submitting a supplemental expert report, it is not technically violative of the federal or local rules.[37]  The Court therefore declines to strike the supplemental report from the record.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion to Exclude Testimony, Strike Deposition Designations, and Exclude Survey of Patrick McFerron (Doc. 460) is **granted in part, denied in part, and taken under advisement in part**.  The Court denies Plaintiffs' motion to exclude, grants the motion to strike McFerron's deposition designation, and takes under advisement Plaintiffs' objection to the admissibility of the survey.

---

[35]Doc. 467 at 4.

[36]On January 22, 2018, one week before Defendant's untimely supplemental disclosure, Plaintiffs filed a renewed motion to exclude Dr. Richman's testimony (Doc. 427).  It did not raise this issue.

[37]*See* Fed. R. Civ. P. 26(e) (providing for disclosures); D. Kan. R. 26.3 (providing that discovery under Rule 26(a)(1) & (2) should not be filed).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike and Exclude Untimely "Additional" Expert Opinions From Dr. Jesse Richman (Doc. 448) is **granted in part and denied in part**.  The motion to exclude is granted and the motion to strike is denied.

**IT IS SO ORDERED.**

Dated: February 27, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE