## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEVEN WAYNE FISH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Case No. 16-2105-JAR-JPO** |
| v. | ) | |
| | ) | |
| KRIS KOBACH, in his official capacity as | ) | |
| Secretary of State for the State of Kansas, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES IN CONNECTION WITH THEIR MOTION FOR CONTEMPT

Pursuant to this Court's Order granting Plaintiffs' motion for contempt, Plaintiffs are now entitled to seek attorneys' fees and non-taxable costs in connection with that motion.  *See* Mem. and Order dated April 18, 2008 ("Contempt Order"), Doc. 520.  For the reasons that follow, this Court should award Plaintiffs' attorneys' fees and non-taxable expenses in the total of $51,646.16.

### I.        Computation of the Lodestar

The general principles governing the award of attorneys' fees are well-settled.  First, the number of hours reasonably expended are multiplied by the attorneys' reasonable hourly rates to determine the product or "lodestar" figure.  *Hensley, v. Eckerhart*, 461 U.S. 424, 433 (1983).  The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled."  *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotation marks omitted); *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984).  In this regard, the Supreme Court stated: "We . . . take as our starting point the self-evident proposition

that the 'reasonable attorney's fee' provided by [§ 1988] should compensate" for "the work product of an attorney." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). "[T]here is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

### A.  Hours

Litigating the underlying contempt motion required the investment of a significant number of attorney and paralegal hours.  Plaintiffs' attorneys spent 133.5 actual hours on the underlying contempt motion and related correspondence, in addition to 19.41 hours contributed by paralegals.  This is not surprising given the complexity of this type of case.  However, the number of hours was exacerbated by the Defendant's repeated refusals to cooperate on, and instead choosing to litigate, the relatively simple matters underlying the contempt motion.  *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff[s] in response.") (internal quotation marks and citation omitted); *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985) ("While [defendant] is entitled to contest vigorously '[plaintiffs'] claims, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended.").

Indeed, the hours expended prosecuting this motion were largely due to Defendant's unnecessary recalcitrance, which is exactly why this Court found it appropriate to hold Defendant responsible for Plaintiffs' fees.  The issue of Defendant's non-compliance with the Preliminary Injunction in this case was addressed by this Court almost two years ago, in September 2016.  Since that time, Plaintiffs have continued to receive reports of non-compliance

by Defendant that they have had to investigate, monitor, and work to resolve.  Plaintiffs first

notified Defendant of the specific issues underlying the contempt motion—*i.e.* the failure of

Defendant to ensure that covered voters receive a postcard informing them of their polling

location—by letter on November 10, 2017; but rather than address this issue, defense counsel

repeatedly responded by taking the position that sending these postcards was unnecessary.  *See*

Contempt Order, Doc. 520, at 6-7.  Defendant maintained that position after Plaintiffs filed the

underlying contempt motion.  *See id.* at 8.

It was not until the contempt hearing on March 20, 2018 that "Defendant changed

course," *id.* at 17, and claimed that he in fact directed that such postcards be mailed—which, if

true, would mean that Defendant had "waited until Plaintiffs exhausted informal channels to

remedy the problem, and allowed Plaintiffs to fully brief a contempt motion and prepare for a

show cause hearing," before coming forward with purported material evidence about his

compliance with the Preliminary Injunction.  *Id.* at 20.  And, at the contempt hearing on March

20, Defendant made multiple "disingenuous[]" arguments; elicited testimony that the Court

determined was "not . . . credible," and "strains credulity"; and "fail[ed] to take responsibility for

violating this Court's orders. . . ."  *Id.* at 15, 18, 19.  As set forth in the Contempt Order, had

Defendant been more cooperative, "Plaintiffs (and the Court) could have avoided significant

time and expense in litigating this motion."  *Id.* at 24.

In sum, Defendant displayed a willful defiance of this Court's authority, and has

unnecessarily multiplied proceedings.  He should be assessed for of the total attorney time for

which Plaintiffs seek fees.

By contrast, Plaintiffs' counsel attempted to keep its hours working on this issue to a minimum.  *See* Ho Decl., attached hereto as Ex. A, at 9.  As the Ninth Circuit has explained, there is no incentive to over-lawyer an issue like this:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee.  It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.  By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

The hours for which Plaintiffs seek fees are as follows:

|  | Hours |
|---|---|
| Neil Steiner | 8.40 |
| Dale Ho | 32.76 |
| Doug Bonney | 8.50 |
| Angela Liu | 5.10 |
| R. Orion Danjuma | 8.90 |
| Sophia Lin Lakin | 14.03 |
| Tharuni Jayaraman | 55.80 |
| Lila Carpenter | 11.31 |
| Delaney Berman | 8.10 |

As set forth in the declarations of Mr. Ho and Mr. Steiner, the hours set forth above represent various reductions and exclusions, in an exercise of billing judgment.  These exclusions include work performed by attorneys in connection with the underlying contempt motion if they performed very little work on the motion (*i.e.*, worked fewer than two hours on the motion).

### B. Hourly Rates

In setting reasonable attorneys' fees, the general touchstone is whether the rate is in line with those prevailing in the community for comparable services by lawyers of reasonably comparable skill, experience, and reputation. *See, e.g.*, *Lippoldt v. Cole*, 468 F.3d 1204, 1224-1225 (10th Cir. 2006) (considering the "'prevailing market rate in the relevant community'" in determining what constitutes reasonable rate) (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)). "The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation." *Id.* (internal quotation marks and citation omitted). Various factors can justify a departure from market rates, including "[t]he novelty and difficulty of the questions"; "[t]he skill requisite to perform the legal service properly"; "[w]hether the fee is fixed or contingent"; "[t]he amount involved and the results obtained"; and "[t]he experience, reputation, and ability of the attorneys." *Mkt. Ctr. E. Retail Prop., Inc. v. Barak Lurie, Lurie & Park*, 730 F.3d 1239, 1247 (10th Cir. 2013) (describing the 12 "*Johnson* factors" regarding fee determinations, as set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).

The hourly rates requested for the attorneys and paralegals who performed work on the underlying contempt motion are as follows:

| Attorneys | Rate |
| --- | --- |
| Neil Steiner, Dale Ho, Doug Bonney | $450.00 |
| Angela Liu, R. Orion Danjuma, Sophia Lin Lakin | $350.00 |
| Tharuni Jayaraman | $275.00 |
| Lila Carpenter, Delaney Berman (Paralegals) | $110.00 |

As set forth below, these requested rates are reasonable for complex civil litigation in the Kansas City market.  *See* Hallquist Decl., hereto attached as Ex. B, at 3; *cf. Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1264 (D. Kan. 2017) (finding, for employment litigation before this Court, that "the relevant market is the Kansas City metropolitan area, which includes Missouri and Kansas").

But, to the extent that this Court determines that these rates exceed or are at the high range for the Kansas City market, an upward departure and consideration of the higher home market rates of Plaintiffs' attorneys would be appropriate given the presence of numerous *Johnson* factors here.  Generally speaking, voting rights litigation is highly specialized. According to a district court time study conducted by the Federal Judicial Center measuring the complexity and time needed to handle matters by the district courts, voting rights cases were among the top five most complex cases and were given a weight of 3.86 compared to 1.0 for an "average" case.  Federal Judicial Center, *2003-2004 District Court Case-Weighting Study*, at 5 tbl.1 (2005), https://www.fjc.gov/sites/default/files/2012/CaseWts0.pdf ("hereinafter "Case-Weighting Study:").

Accordingly, Plaintiffs relied on out-of-state counsel with civil rights and voting rights experience, and specifically, substantial experience with litigating cases under the NVRA.  *See* Bonney Decl., hereto attached as Ex. C, at 2-3 (describing need for out-of-state counsel); Ex. A, Ho Decl. at 3-9 (describing qualifications and background of ACLU counsel); Steiner Decl., hereto attached as Ex. D, at 2-5 (describing qualifications and background of Dechert counsel). Indeed, while various courts have addressed issues that relate to matters in this litigation, *see, e.g.*, *Arizona v. Inter-Tribal Council of Ariz.*, 570 U.S. 1 (2013); *Kobach v. U.S. Election Assistance Comm'n.*, 772 F.3d 1183 (10th Cir. 2014), no court had previously considered the

precise question underlying this case, *i.e.*, whether Section 5 of the NVRA prohibits a

documentary proof of citizenship requirement for voter registration during the motor-voter

process.  And no court in this District has ever adjudicated an NVRA case prior to this litigation.

In sum, the participation of out-of-state counsel with substantial voting rights and NVRA

experience were critical for the prosecution of this matter generally, and for the underlying

contempt motion specifically.  Under these circumstances, it is appropriate for the Court, in

calculating the lodestar, to consider the home rates of Plaintiffs' attorneys.  *See Jeffboat, LLC v.*

*Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) ("[O]ur cases have

consistently recognized that an attorney's actual billing rate for comparable work is

presumptively appropriate for use as a market rate when making a lodestar calculation.").

Specifically, the four tiers of rates requested by Plaintiffs for their counsel are reasonable

for the following reasons:

First, the rate of $450 per hour is a reasonable rate for Mr. Steiner, Mr. Ho, and Mr.

Bonney.  Mr. Steiner is a partner at the law firm Dechert, LLP; Mr. Ho is the Director of the

ACLU Voting Rights Project, a position akin to partner at a private law firm; and Mr. Bonney is

the former Legal Director of the Kansas ACLU, also a position akin to a law firm partner.  *See*

Ex. A, Ho Decl. at 3-5.  Each of them has more than 10 years of experience as an attorney.  *See*

*id.*; Ex. D, Steiner Decl. at 2-3, 8; Ex. C, Bonney Decl. at 1-2 (21 years for Mr. Steiner, 13 years

for Mr. Ho, and 33 years for Mr. Bonney).  Mr. Steiner and Mr. Ho have substantial experience

litigating voting rights matters and cases under the NVRA in particular, and Mr. Bonney has

substantial general civil rights experience.  *See id.*

A rate of $450 per hour is reasonable for attorneys of their experience and skill working

on complex civil litigation in the Kansas City area.  *See* Ex. B, Hallquist Decl. at 3.  This Court

has approved a rate of $450 for plaintiffs' attorneys working on civil rights matters.  *See Riordan v. ASAP Expert Counseling, LLC*, No. 16-CV-2011-JAR-TJJ, 2017 WL 2225223, at *2, n.11 (D. Kan. May 19, 2017) (approving rate of $450.00 for plaintiffs' lawyer in Kansas employment matter).[1]  And it is within the range of what Mr. Bonney has been awarded for civil rights work in the District of Kansas.  *See* Bonney Decl., *Marie v. Mosier*, No. 14-cv-2518, (D. Kan. Sept. 9, 2016), Doc. 148-1 at 2 (requesting fees at a rate of $400 per hour for Doug Bonney); Order, *Marie v. Mosier*, No. 14-cv-2518, (D. Kan. Sept. 27, 2016**), D**oc. 150 (granting attorney's fees, in the total amount of $295,000.00).

The requested rate is also a reasonable rate for civil rights work in Mr. Steiner and Mr. Ho's home market of New York.  *See* Saylor Decl., attached hereto as Ex. E, at 2-3.  Indeed, it is less than what ACLU attorneys with comparable skills and experience have been awarded.  *Simonds v. N.Y. City Dep't of Corrections*, No. 06 Civ. 5298(NRB), 2008 WL 4303474, at *1 n.2, *10 (S.D.N.Y. Sept. 16, 2008) (July 2008 decision awarding attorney's fees at a rate of $425/hour to the Director of the ACLU Women's Rights Project, which would translate into approximately $482.17 per hour in March 2018 dollars[2])  This rate is substantially less than

---

[1] Notably, the Federal Judicial Center rated employment cases as 1.67 in terms of complexity and time, which is more than the average federal matter (1.0), but substantially less than the rating given to voting rights cases (3.86).  *See* Case-Weighting Study, at 5 tbl.1, *available at* https://www.fjc.gov/sites/default/files/2012/CaseWts0.pdf.

[2] *Cf. Bruce v. Colvin*, Civ. Action No. 14-1166-JWL, 2015 WL 7078939, at *4 (D. Kan. Nov. 13, 2015) (Court "used the Bureau of Labor Statistics CPI Inflation Calculator" to calculate appropriate rate for attorney's fees); *Culler v. Massanari*, No. 96-4164-SAC, 2001 WL 1718033, at *2 (D. Kan. Dec. 20, 2001) ("District courts have been determining the cost-of-living adjustment by multiplying the basic EAJA rate by the current consumer price index . . .") (internal quotation marks and citation omitted).  Here, the CPI indicates that $425, which was awarded to an ACLU Project Director in 2008, translates to $476.42 in 2018.  *See* U.S. Dep't of Labor, *Bureau of Labor Statistics, Databases, Tables, & Calculators by Subject, CPI Inflation Calculator* (hereinafter, "U.S. Dep't of Labor, CPI Inflation Calculator," https://www.bls.gov/data/inflation_calculator.htm.

what is set forth in the Laffey Matrix—which this Court has cited favorably.[3]  *See* Laffey

Matrix[4] (setting rates of $864 per hour for attorneys with 20+ years of experience, and $717 per

hour for attorneys with 11-19 years of experience).  This rate is also less than half of what

Dechert customarily charges its for-profit clients.  *See* Ex. D, Steiner Decl. at 6-7 (Dechert's

customary rate for Mr. Steiner is $1,140.00 per hour, and would bill a partner with Mr. Ho's

experience at $915 per hour).

 Second, the rate of $350 per hour is a reasonable rate for Ms. Liu, Mr. Danjuma, and Ms.

Lakin.  Ms. Liu is a senior associate at Dechert, while Mr. Danjuma and Ms. Lakin are staff

attorneys at the ACLU.  *See* Ex. A, Ho Decl. at 5-9; Ex. D, Steiner Decl. at 4.  All have between

6 and 10 years of experience as attorneys.  *See* Ex. A, Ho Decl. at 5-9 (8 years for Mr. Danjuma,

and 6 years for Ms. Lakin) ; Ex. D, Steiner Decl. at 4 (9 years for Ms. Liu).  All have substantial

experience in voting rights and/or civil rights matters.  *See* Ex. A, Ho Decl. at 5-9; Ex. D, Steiner

Decl. at 4.

 A rate of $350 per hour is reasonable for attorneys of their experience and skill working

on complex civil litigation in the Kansas City area.  *See* Ex. B, Hallquist Decl. 3.  The requested

rate is also close to, but slightly below market-level for civil rights work in the context of Mr.

Danjuma and Ms. Lakin's home market of New York.  *See* Ex. E, Saylor Decl. at 3-4; *Simonds*,

2008 WL 4303474, at *1 n.2, *10 (July 2008 decision awarding attorney's fees at a rate of

$325/hour to an ACLU attorney with 10 years of experience (Emily Martin), which would

translate into approximately $368.72 per hour in 2018 dollars[5]).  This rate is substantially less

---

[3] *See* Appointment Order, *United States v. Black*, No. 16-cr-20032, Doc. 146 at 11-12 (D. Kan. Oct. 11, 2016) (awarding $500 per hour to special master).

[4] *Available at* http://www.laffeymatrix.com/see.html.

[5]  *See* U.S. Dep't of Labor, CPI Inflation Calculator, *available at* https://www.bls.gov/data/inflation_calculator.htm.

than the rates set forth in the Laffey Matrix ($636 per hour for attorneys with 8-10 years of experience, and $440 per hour for attorneys with 4-7 years of experience).[6]  It is also substantially less than what Dechert customarily charges its for-profit clients.  *See* Ex. D, Steiner Decl. at 6-7 (Dechert customarily bills Ms. Liu at $850.00 per hour, and would bill Mr. Danjuma and Ms. Lakin at $840 and $795 per hour, respectively).

Third, the rate of $275 per hour is a reasonable rate for Ms. Jayaraman.  Ms. Jayaraman is a junior associate at the law firm Dechert, with significant background in the area of voting rights.  *See* Ex. D, Steiner Decl. at 4-5.  A rate of $275 per hour is a reasonable fee for a second-year attorney of her experience and skill working on complex civil litigation in the Kansas City area.  *See* Ex. B, Hallquist Decl. at 3.  It is less than the rate set forth for attorneys of her experience under the Laffey Matrix ($359 per hour),[7] and less than half of what Dechert customarily bills ($565 per hour) for Ms. Jayaraman's time.  *See* Ex. D, Steiner Decl. at 6-7.

Fourth, the rate of $110 per hour is reasonable for paralegal time.  The term "attorney's fees" encompasses paralegal time as well as attorney time.  *Cf. Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580 (2008) (attorney's fees under 42 U.S.C. § 1988 "embrace[s] the fees of paralegals as well as attorneys") (citing *Jenkins,* 491 U.S.).  $110 per hour is a reasonable fee for a paralegal.  *See* Ex. B, Hallquist Decl. at 3; Ex. E, Saylor Decl. at 2-3; *Simonds*, 2008 WL 4303474, at *1, *10 (July 2008 decision awarding attorney's fees at a rate of $100/hour to an ACLU paralegal, which would translate into approximately $113.45 per hour in 2018 dollars[8]).

---

[6] *See* Laffey Matrix, *available at* http://www.laffeymatrix.com/see.html.

[7] *See id.*, n. 6.

[8]    *See* U.S. Dep't of Labor, CPI Inflation Calculator, *available at* https://www.bls.gov/data/inflation_calculator.htm.

It is substantially less than what Dechert customarily bills for-profit clients ($160 per hour) for paralegal time.  *See* Ex. D, Steiner Decl. at 6-7.

The lodestar and presumptive attorneys' fee is $49,637.04, as set forth in the table below:

|  | Hours | Rate | Total |
|---|---|---|---|
| Neil Steiner | 8.40 | $450.00 | $3,780.00 |
| Dale Ho | 32.76 | $450.00 | $14,740.00 |
| Doug Bonney | 8.50 | $450.00 | $3,825.00 |
| Angela Liu | 5.10 | $350.00 | $1,785.00 |
| R. Orion Danjuma | 8.90 | $350.00 | $3,115.00 |
| Sophia Lin Lakin | 14.03 | $350.00 | $4,911.67 |
| Tharuni Jayaraman | 55.80 | $275.00 | $15,345.00 |
| Lila Carpenter | 11.31 | $110.00 | $1,244.38 |
| Delaney Berman | 8.10 | $110.00 | $891.00 |
|  |  | **Total:** | **$49,637.04** |

## II.      Non-Taxable Expenses

This court's Contempt Order also entitles Plaintiffs to recover costs incurred in prosecuting their motion for contempt.  The ACLU incurred costs totaling $454.95, *see* Ex. A, Ho Decl. at 14; while Dechert incurred costs totaling $1,554.17, *see* Ex. D, Steiner Decl. at 8-9. Plaintiffs therefore request collective non-taxable expenses in the total of $2,009.12.

## III.     Additional Circumstances

"[T]he general theme of Defendant's [non-]compliance with the preliminary injunction order—that this Court's order is not 'the law.'"  Contempt Order, Doc. 520, at 21.  That theme has continued, even with this Court's issuance of its Contempt Order.  Since that time, Defendant

has continued to deny responsibility for his underlying actions giving rise to the contempt

motion, and has displayed disregard for this Court's authority.

For example, on an interview on April 22, Defendant described this Court's Contempt

Order as "just ridiculous."[9]  And, in a letter dated April 28, Defendant—through his counsel Sue

Becker—again misrepresented the record, by claiming that, "in the weeks preceding the

November 2016 Election," "[t]he Secretary of State's Office instructed the counties" to send

postcards to voters covered by the preliminary injunction.[10]  That representation flies in the face

of Ms. Becker's past repeated assertions "that the postcards are unnecessary."  Contempt Order,

Doc. 520, at 6; *see also id.* at 7.  In the same letter, Ms. Becker also represented that this Court's

contempt ruling was "based on [the Court's] incorrect understanding that the Secretary of State's

Office has the legal authority to compel the counties to act."[11]  She further argued that the

premise of the contempt ruling was only that Defendant "was found to be in noncompliance,"

rather than any "disrespectful behavior on the part of the Secretary of his legal team"[12]—which

directly contradicts this Court's determinations that Defendant made "disingenuous[]" arguments

and "fail[ed] to take responsibility for violating this Court's orders. . . ."  Contempt Order, Doc.

520, at 15, 19.

In light of the foregoing, this Court should award Plaintiffs' requested attorney's fees and

costs without any further reductions.  Defendant's failure to take responsibility for his actions

---

[9] John Binder, *Exclusive: Kris Kobach on Being Held in Contempt During Fight Against Voter Fraud: It's Just Ridiculous*, Breitbart.com (April 22, 2018), http://www.breitbart.com/big-government/2018/04/22/kris-kobach-contempt-of-court-ridiculous/ (quoting Defendant Kobach as stating "[a]nd **so the judge is holding my office in contempt for the failure of counties to follow the instructions that we gave them. It's just ridiculous**.") (emphasis in original).

[10] Letter from Sue Becker to Kansas Senate President Sue Wagle at 2, April 28, 2018, *available at* http://media.kansascity.com/livegraphics/2018/pdf/ContemptLetter.pdf.

[11] *Id.*

[12] *Id.*

and his continued disrespect for the Court's authority suggest that significant monetary sanctions are necessary to deter future non-compliance.  Defendant's conduct should also be a factor considered by the Court when it considers whether "[a]ny further remedial measures" are necessary upon deciding the final merits of the case.  *Id.* at 24.

## IV.     Conclusion

For the foregoing reasons, Plaintiffs request this Court award them a total of $51,646.16, consisting of attorneys' fees in the amount of $49,637.04, and non-taxable expenses in the amount of $2,009.12.

DATED this 7th day of May, 2018.

Respectfully submitted,

/s/ Stephen Douglas Bonney

STEPHEN DOUGLAS BONNEY (#12322)
American Civil Liberties Union of Kansas
6701 W 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4100
Fax: (913) 490-4119
dbonney@aclukansas.org

/s/ Dale E. Ho

DALE HO*
R. ORION DANJUMA*
SOPHIA LIN LAKIN*
EMILY R. ZHANG*
American Civil Liberties Union Foundation,
125 Broad St.
New York, NY 10004
Phone: (212) 549-2693
dale.ho@aclu.org
odanjuma@aclu.org
slakin@aclu.org
ezhang@aclu.org

NEIL A. STEINER*
REBECCA KAHAN WALDMAN*
DAPHNE T. HA*
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
T: (212) 698-3822
F: (212) 698-3599
neil.steiner@dechert.com

ANGELA M. LIU*
Dechert LLP
35 West Wacker Drive
Suite 3400
Chicago, Illinois 60601-1608
Phone: (312) 646 5816
Fax: (312) 646 5858
angela.liu@dechert.com

13

rebecca.waldman@dechert.com
daphne.ha@dechert.com

*Counsel for Plaintiffs*                    * admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on this 7th day of May, 2018, I electronically filed the foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Stephen Douglas Bonney
STEPHEN DOUGLAS BONNEY (#12322)

*Attorney for Plaintiffs*

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS**

| | | |
|---|---|---|
| STEVEN WAYNE FISH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Case No. 16-2105-JAR-JPO** |
| v. | ) | |
| | ) | |
| KRIS KOBACH, in his official capacity as | ) | |
| Secretary of State for the State of Kansas, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF DALE E. HO IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES
IN CONNECTION WITH THEIR MOTION FOR CONTEMPT**

I, Dale E. Ho, declare under penalty of perjury that the following is true and correct:

1.     The national American Civil Liberties Union ("ACLU"), the ACLU of Kansas

("Kansas ACLU"), and Dechert LLP, were retained in 2015 to represent Plaintiffs in the above-

captioned matter.

2.     The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit,

nonpartisan organization with over 1,600,000 members dedicated to defending the principles

embodied in the Constitution and our nation's civil rights laws.  The ACLU Foundation is a

national nonprofit organization under section 501(c)(3) of the Internal Revenue Code and

educates the public about civil liberties and employs lawyers who provide legal representation

free of charge in cases involving civil liberties.  The ACLU Voting Rights Project was

established in 1965 – the same year that the historic Voting Rights Act (VRA) was enacted – and

has litigated more than 300 cases since that time, including numerous voting rights cases in the

U.S. Supreme Court, including: *Ohio A Philip Randolph Institute v. Husted*, No. 16-980 (U.S.

argued Jan 10, 2018); *Shelby County, Ala. v. Holder*, 570 U.S. 529 (2013); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013); *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008); and *Abrams v. Johnson*, 521 U.S. 74 (1997).

3.   Over the years, the ACLU Voting Rights Project has represented plaintiffs in jurisdictions around the country bringing lawsuits to enforce the National Voter Registration Act, 52 U.S.C. 20501 *et seq.* ("NVRA"), the statute governing this case, including *Arizona v. Inter Tribal Council of Arizona*, *supra*; *Ohio A. Philip Randolph Institute v. Husted*, *supra*; *League of Women Voters of California v. Kelly*, No. 17-cv-02665-LB, 2017 WL 3670786 (N.D. Cal. Aug. 25, 2017); and *Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F. Supp. 2d 1320 (N.D. Ga. 2012).

4.      The Kansas ACLU is the national ACLU's statewide affiliate in Kansas.  The Kansas ACLU, based in Overland Park, KS, has a local presence in the state, with over 30,000 members statewide. Kansas ACLU attorneys have extensive experience practicing in Kansas federal and state courts on a range of constitutional issues, including voting rights litigation.

**Qualifications of ACLU Staff Working on the Case**

5.      In this section I will describe the qualifications and expertise of the staff of the ACLU Voting Rights Project for whose time we seek to collect fees.

6.      I am, and have been since May 2013, the director of the ACLU Voting Rights Project.

a.  I obtained a Bachelors of Arts degree from Princeton University in 1999, and a Juris Doctor from Yale Law School in 2005.

b.  I was admitted to the practice of law in the State of New York in 2006.  I have been continuously engaged in the practice of law on a full-time basis since 2006. I am admitted to the following federal courts:

i.  U.S. District Courts for the Southern District of New York (2008); Eastern District of New York (2008); Eastern District of Wisconsin (2013).

ii.  U.S. Court of Appeals for the First Circuit (2016), U.S. Court of Appeals for the Second Circuit (2008), U.S. Court of Appeals for the Fourth Circuit (2014), U.S. Court of Appeals for the Fifth Circuit (2013), U.S. Court of Appeals for the Sixth Circuit (2014), U.S. Court of Appeals for the Seventh Circuit (2014), U.S. Court of Appeals for the Eighth Circuit (2016), U.S. Court of Appeals for the Ninth Circuit (2010), U.S. Court of Appeals for the Tenth Circuit (2016) and the U.S. Court of Appeals for the District of Columbia Circuit (2010).

iii.  The United States Supreme Court (2010).

c.  From 2005 to 2006, I worked as a law clerk for the Honorable Barbara S. Jones in the U.S. District Court for the Southern District of New York.  From 2006 to

2007, I worked as a law clerk for the Honorable Robert S. Smith in the New York Court of Appeals.

d.  From 2007 to 2009, I was an associate at the law firm, Fried, Frank, Harris, Shriver, & Jacobson LLP ("Fried Frank") in New York.  At Fried Frank, I litigated complex commercial matters and federal civil rights cases, including work under the federal Voting Rights Act ("VRA").  In particular, I assisted in drafting an *amicus* brief in *Bartlett v. Strickland*, 556 U.S. 1 (2009), a voting rights case before the United States Supreme Court.  That brief was cited in the dissenting opinion of Justice Breyer, 556 U.S. at 45.

e.  From 2009 to April 2013, I worked as Assistant Counsel in the Political Participation Group at the NAACP Legal Defense and Education Fund, Inc. ("LDF").  At LDF, my practice was devoted almost exclusively to voting rights litigation in federal court.  Among my voting rights matters at LDF included *Shelby County v. Holder*, 133 S. Ct. 2612 (2013).  With respect to litigation under the NVRA, I served as trial counsel in a successful case under Section 7 of the NVRA, *Scott v. Schedler*, No. CIV.A. 11-926, 2013 WL 264603, at *1 (E.D. La. Jan. 23, 2013).

f.  From May 2013 to present, I have been the Director of the Voting Rights Project at the American Civil Liberties Union ("ACLU").  In this capacity, I supervise and directly participate in the ACLU's docket of voting rights litigation throughout the country, including: *Ohio A Philip Randolph Institute v. Husted*, No. 16-980 (U.S. argued Jan 10, 2018) (NVRA case); *North Carolina NAACP v. North Carolina*, 831 F.3d 204 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 1399

4

(2017); *Frank v. Walker*, 819 F.3d 384 (7th Cir. 2016); *Ohio State Conference of N.A.A.C.P. v. Husted*, 768 F.3d 524, 533 (6th Cir. 2014), *vacated sub nom.*, No. 14-3877, 2014 WL 10384647 (6th Cir. Oct. 1, 2014).

g.  I have lectured and written extensively on issues of voting rights and election law. I am currently an adjunct professor of law at NYU Law School, where I co-teach the Racial Justice Clinic, and at Brooklyn Law School, where I teach a course on Election Law. I have published articles on election law topics in several law reviews, including the *Yale Law Journal Forum*; the *Harvard Civil Rights-Civil Liberties Law Review*; the *Stanford Law & Policy Review*; and the *NYU Journal of Law and Public Policy*. I have spoken on voting rights issues at various law schools, including Yale Law School, Harvard Law School, Stanford Law School, Columbia Law School, and NYU School of Law.

h.  I have served on the faculty for redistricting seminars for state legislators in Louisiana and Texas, and have testified in state legislatures around the country on election law issues, including in California, Connecticut, Kentucky, and New York.

i.  I am also a member of the Election Law Committee of the American Bar Association; and for three years, from 2009 through 2012, I served as a member of the Election Law Committee of the New York City Bar Association.

j.  In 2017, I was named one of the Best Asian Pacific American lawyers Under the Age of 40 by the National Asian Pacific American Bar Association.

7.  **R. Orion Danjuma** is a staff attorney at ACLU, and has served in that capacity since 2015.

a. Mr. Danjuma obtained a Bachelors of Art degree from Yale University in 2000 and a Juris Doctor from Stanford Law School in 2010.

b. He has been admitted to the practice of law in the State of New York since 2011 and in the State of California since 2013.

c. Mr. Danjuma is admitted to practice in the following federal courts:

    i. U.S. District Courts for the Eastern District of Michigan (2013); Central District of California (2013); Southern District of New York (2015).

    ii. U.S. Court of Appeals for the First Circuit (2014), U.S. Court of Appeals for the Seventh Circuit (2012), U.S. Court of Appeals for the Ninth Circuit (2013), and the U.S. Court of Appeals for the Tenth Circuit (2016) Circuits.

    iii. The United States Supreme Court (2018).

d. He has also been admitted *pro hac vice* in various federal and state courts.

e. From 2010 to 2011, Mr. Danjuma worked as a law clerk for the Honorable Myron H. Thompson in the U.S. District Court for the Middle District of Alabama.  From 2011 to 2012, he worked as a law clerk for the Honorable Ann Claire Williams in the U.S. Court of Appeals for the Seventh Circuit.

f. From 2012 to 2014, Mr. Danjuma was a Skadden Fellow with the ACLU Immigrants' Rights Project where his work focused on litigation to protect the civil rights of immigrants in the United States.

g. From 2014 to 2015, Mr. Danjuma was an associate with the law firm, Emery Celli Brinckerhoff & Abady LLP ("Emery Celli") in New York City. At Emery Celli, he

litigated commercial and civil rights cases, including cases involving wrongful conviction and violations of the fair housing act.

h. From 2015 to the present, Mr. Danjuma has worked as a staff attorney with the ACLU Centers for Equality and Justice.

i. Mr. Danjuma has experience litigating a range of civil rights cases in state and federal court.  His litigation involving the NVRA includes *League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016), a related case concerning Kansas's documentary proof of citizenship requirement.  His broader litigation experience includes: *S.R. v. Kenton Cty. Sheriff's Office*, No. 215CV143, 2017 WL 4545231 (E.D. Ky. Oct. 11, 2017) (disability rights and excessive force); *Dade v. City of Sherwood, Arkansas*, No. 4:16-CV-602 (E.D. Ark. Aug. 23, 2016) (debtors' prisons); *Fair Housing Justice Center v. M&T Bank*, No. 1:15-cv-00779 (S.D.N.Y. Feb. 3, 2015) (fair housing); *Cosme v. City of New York*, No. 1:14-cv-01653 (S.D.N.Y. Mar. 11, 2014) (wrongful conviction and malicious prosecution); *Morales v. Chadbourne*, 793 F.3d 208, 211 (1st Cir. 2015) (immigration detainer of U.S. citizen); *Roy v. Cty. of Los Angeles*, 114 F. Supp. 3d 1030, 1033 (C.D. Cal. 2015) (immigration detainers); *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1058 (9th Cir. 2014) (immigrant civil rights); *Hernandez v. Heineman*, No. CI13-2124 (Neb. Dist. Ct. June 10, 2013) (immigrant civil rights).

j. Mr. Danjuma has given presentations and webinars on civil rights work for entities including the Skadden Fellowship Foundation, the Immigrant Defense Project, and the Southern Poverty Law Center.

7

8.    **Sophia Lin Lakin** is a staff attorney with the ACLU and has been in this position since 2016.  Prior to becoming a staff attorney, she was a legal fellow with the ACLU.

    a.  Ms. Lakin obtained a Bachelor of Arts degree and Master of Science degree in Engineering from Stanford University in 2004.  She earned a Juris Doctor degree from Stanford Law School in 2012.

    b.  From August 2013 to October 2014, Ms. Lakin served as a law clerk to the Honorable Carol Bagley Amon of the Eastern District of New York.  From January 2014 to January 2015, she served as a law clerk to the Honorable Raymond J. Lohier, Jr., of the Second Circuit Court of Appeals.  For the three months in between these clerkships, she worked as a volunteer staff attorney with the ACLU Voting Rights Project.

    c.  Ms. Lakin was admitted to the practice of law in the State of New York in 2013.

    d.  She is admitted to practice in the following federal courts:

        i.  U.S. District Court for the Eastern District of Wisconsin (2015).

        ii.  U.S. Court of Appeals for the Fourth Circuits (2016), U.S. Court of Appeals for the Tenth Circuit Court of Appeals (2016); U.S. Court of Appeals for the Eighth Circuit (2016), U.S. Court of Appeals for the Eleventh Circuit (2017).

        iii.  The United States Supreme Court (2017).

    e.  She has also been admitted *pro hac vice* in several other U.S. District Courts and state courts.

    f.  From February 2015 until present, Ms. Lakin has worked full-time with the ACLU Voting Rights Project, first as a legal fellow and, since February 2016, as a

staff attorney.  She exclusively litigates voting rights and election law cases,
including the following cases under the NVRA: *APRI v. Husted*, No. 16-980
(U.S., argued Jan 10, 2018); and *Common Cause v. Lawson*, No. 1:17-cv-3936
(S.D. Ind. Oct. 27, 2017).  Her other voting rights matters include: *ACLU v.
Trump*, No. 1:17-cv-01351 (D.D.C. July 10, 2017); *Missouri NAACP v. Missouri*,
No. 17AC-CC00399 (Mo. Cir. Ct, June 8, 2017), *appeal filed*, Feb. 2, 2018;
*Missouri State Conference of the NAACP v. Ferguson-Florissant School District*,
201 F. Supp. 3d 1006 (E.D. Mo, Aug. 22, 2016), *appeal heard*, Dec. 13, 2017 (8th
Cir.); *Brown v. Kobach*, No. 2016-CV-550 (Kan. Dist. Ct., Nov. 4, 2016), *appeal
filed*, Dec. 5, 2016; *Frank v. Walker*, 819 F.3d 384 (7th Cir. 2016).  Ms. Lakin has
also drafted multiple amicus briefs, including Supreme Court briefs.

g.  Ms. Lakin has given presentations and continuing legal education classes
concerning voting rights for various organizations, including the Kansas City
Metropolitan Bar Association, Creating Change, and the U.S. Human Rights
Network National Convening, and at universities and law schools, including
Harvard Law School, Loyola University in New Orleans and Stanford Law
School.

9.      In an exercise of billing judgment, Plaintiffs do not seek recovery of time
expended in connection with the underlying contempt motion by ACLU legal fellow **Emily
Zhang**, a member of the trial team in this matter and a recent graduate of Stanford Law School.
Ms. Zhang contributed a total of three hours of work on the underlying contempt motion.

10.     The number of attorneys' hours spent on this case was minimized because of the
assistance of ACLU support staff, including paralegals and law clerks.

9

a. Plaintiffs seek reimbursement for time spent on this case by ACLU paralegal **Lila Carpenter** at a rate of $110.00 per hour.

b. Plaintiffs do not seek reimbursement for the time spent on this case by legal administrative assistant **Juan Diaz**.

## Qualifications of Kansas ACLU Staff Working on the Case

11.     The Kansas ACLU is the national ACLU's statewide affiliate in Kansas.  The Kansas ACLU, based in Overland Park, KS, has a local presence in the state, with over 7700 members statewide. Stephen D. Bonney, the Kansas ACLU attorney who worked on this case, has extensive experience practicing in Kansas federal and state courts on a range of constitutional issues, including voting rights litigation.

12.     Mr. Bonney's qualifications and expertise are as follows:

a. Mr. Bonney obtained a Juris Doctor degree from the University of Kansas School of Law in 1985.

b. He has been admitted to the practice of law in the State of Kansas since 1985 and in the State of Missouri since 1986.

c. He is admitted to practice in the following federal courts:

i. U.S. District Courts for District of Kansas (1985) and the Western District of Missouri (1986).

ii. U.S. Courts of Appeals for the Eighth Circuit (1987) and the Tenth Circuit (2011).

iii. The United States Supreme Court (2013).

d. From 1985 to 1986, Mr. Bonney worked as an Assistant Regional Attorney for the U.S. Department of Health & Human Services, Region VII.

e.   From 1986 to 1991, Mr. Bonney was an associate with Jolley, Walsh, Hager & Gordon in Kansas City, Missouri, where his primary area of practice was union-side labor law.

f.   From 1992 to 2008, Mr. Bonney was a sole practitioner and his primary area of practice was union-side labor law and civil rights litigation.

g.   From 1992 and 2008, Mr. Bonney served as a volunteer member of the Legal Panel of the American Civil Liberties Union of Kansas & Western Missouri.  In that capacity, he reviewed complaints about possible constitutional violations, advised the Board of Directors about possible litigation, and litigated many civil liberties issues.

h.   Some of the civil liberties cases Mr. Bonney litigated while he was a sole practitioner include: *Gay & Lesbian Services Network v. Bishop*, 832 F. Supp. 270 (W. D. Mo. 1993) (First Amendment challenge to police department's parade policy); *Goodman v. City of Kansas City*, 906 F. Supp. 537 (W.D. Mo. 1995) (First Amendment challenge to city's Little Hatch Act); *Webb v. City of Republic*, 55 F. Supp. 993 (W.D. Mo. 1999) (First Amendment challenge to city seal containing the Christian fish symbol); *Beach v. City of Olathe*, 185 F. Supp. 2d 1229 (D. Kan. 2002) (First Amendment retaliation in employment); *Quinly v. City of Prairie Village*, 446 F. Supp. 2d 1233 (D. Kan. 2006) (First Amendment challenge to city's sign ordinance).

i.   From September 1, 2008 until September 25, 2017, Mr. Bonney was the Chief Counsel and Legal Director of the American Civil Liberties Union Foundation of Kansas (previously known as the ACLU of Kansas & Western Missouri).  Since

September 25, 2017, he has been the Legal Director Emeritus of the Kansas

ACLU.  While working for the Kansas ACLU, he has litigated numerous civil

rights and civil liberties cases in Kansas's federal and state courts.

j.   Mr. Bonney has also spoken and written extensively on civil liberties and voting

rights issues. *See, e.g.,*  "The University Campus as Public Forum: The Legacy of

Widmar v. Vincent," 81 UMKC L. Rev. 545 (2012); "Democracy's Rainbow: The

Long Ascent and Rapid Descent of Voting Rights in Kansas," 25 Kan. J.L. & Pub.

Pol'y 347 (2016).

**Requested Attorneys' Fees**

13.   Below is a table summarizing all the time for which the Plaintiffs are seeking fees

in connection with their underlying contempt motion:

**Billable Hours for Underlying Contempt Motion**

| Name (position) | Time Spent | Hourly Rate* | Billable Amount |
|---|---|---|---|
| Dale Ho (attorney) | 32.76 | $450.00 | $14,740.00 |
| Doug Bonney (attorney) | 8.50 | $450.00 | $3,825.00 |
| R. Orion Danjuma (attorney) | 8.90 | $350.00 | $3,115.00 |
| Sophia Lin Lakin (attorney) | 14.03 | $350.00 | $4,911.67 |
| Lila Carpenter (paralegal) | 11.31 | $110.00 | $1,244.38 |

SUM:   **$27,836.04**

14.   The hours and rates being claimed by ACLU timekeepers, with billing judgement

exercised, are reasonable for successfully prosecuting the underlying contempt motion.

15.   ACLU attorneys' and paralegal's time records were kept contemporaneously with

the work performed.  The claimed amount for litigation work summarized in the chart above is

the total lodestar amount—determined by multiplying the rate per hour by the hours each

attorney or paralegal reasonably and necessarily worked on this litigation.  As detailed in

12

Plaintiffs' Application for Attorneys' Fees and Litigation Expenses in Connection with Their Motion for Contempt, the rates reflects the usual and customary rate for attorneys with a comparable experience level and specialized skill in each of the attorneys respective home states.

16.     I have attached the detailed time records for each ACLU timekeeper as Attachment 1.

17.     Each attorney seeking fees possesses the requisite understanding of relevant evidence to prosecute claims under the NVRA.  Plaintiffs request these rates given ACLU attorneys' experience and expertise in voting rights litigation.  In ACLU attorneys' experience, this reflects the usual and customary rate for an attorney of comparable experience and skill.

18.     In addition to the lodestar methodology described in the Plaintiffs' Application for Attorneys' Fees and Litigation Expenses, this Court is authorized to consider the additional factors outlined in that Application in concluding that our requested awards are appropriate.  The underlying motion involved a thorough factual investigation, multiple efforts to resolve this issue outside of litigation, and ultimately, briefing and live testimony at a hearing before the Court.

19.     One of the steps ACLU attorneys took to keep costs low was to ensure that as much work as possible on the underlying contempt motion was performed by qualified attorneys with lower hourly billing rates, instead of more experienced attorneys who charge higher fees.

20.     A second step I took to exercise billing judgment was to exclude the hours of a legal fellow who worked on the case, a legal administrative assistant and legal interns.  When possible, we used support staff, legal interns to help in the successful conduct of every aspect of litigation. Where those timekeepers either engaged in entirely supportive or duplicative work, I excluded those timekeepers.

**B.**     <u>**Reasonable Litigation Expenses and Costs**</u>

21.     Plaintiffs are also claiming $454.95 in costs and expenses for ACLU attorneys' travel costs associated with the contempt motion and hearing.  A table summarizing the claimed taxable and non-taxable costs is attached as Attachment 2 to this declaration.

22.     These expenses were reasonably incurred in the course of providing effective representation to the Plaintiffs, and Plaintiffs' counsel made appropriate efforts throughout the litigation to reduce unnecessary expenses.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 7, 2018.

/s/ Dale E. Ho
DALE E. HO

ATTACHMENT 1

*Fish v. Kobach* , No. 16-2105
Dale E. Ho: Contempt-Related Hours

| Project/Time entry | Start date | Time (h) | Time (decimal) |
|---|---|---|---|
| Correspondence with Defendants | 11/10/2017 | 2:26:00 | 2.433 |
| Correspondence w/ Defendants | 11/29/2017 | 0:56:04 | 0.934 |
| Correspondence w/ Defendants | 11/30/2017 | 0:33:02 | 0.551 |
| Correspondence w/ Defendants | 12/07/2017 | 1:00:15 | 1.004 |
| Revise Contempt Motion | 12/22/2017 | 3:24:00 | 3.400 |
| Edits to Motion for Contempt | 01/07/2018 | 14:03:26 | 14.057 |
| Revise Contempt Reply | 01/23/2018 | 0:30:00 | 0.500 |
| Draft Contempt Reply | 01/23/2018 | 1:22:34 | 1.376 |
| Outline Contempt Reply | 01/23/2018 | 0:41:00 | 0.683 |
| Contempt Hearing | 03/20/2018 | 3:00:00 | 3.000 |
| Contempt Fees Brief | 04/25/2018 | 2:44:59 | 2.750 |
| Contempt Fees Brief | 04/26/2018 | 1:28:00 | 1.467 |
| Contempt Fees Brief | 05/02/2018 | 0:36:00 | 0.600 |
| **Total** | | **32:45:20** | **32.756** |

*Fish v. Kobach*, No. 16-2105
R. Orion Danjuma: Contempt-Related Hours

| Project/Time entry | Start date | Time (decimal) |
|---|---|---|
| Contempt Hearing | 03/20/2018 | 3.000 |
| | | |
| Correspondence with team re: contempt reply brief | 01/23/2018 | 0.400 |
| Review/edit reply brief | 01/23/2018 | 0.900 |
| Review transcript of 10.5.16 hearing with Judge Robinson | 01/23/2018 | 0.400 |
| Correspondence with team re: contempt motion | 01/09/2018 | 0.300 |
| Correspondence with D. Ho re: contempt motion | 01/08/2018 | 0.100 |
| Correspondence with T. Jayaraman re: contempt brief | 01/04/2018 | 0.400 |
| Correspondence with T. Jayaraman re: synchronizing contempt motion with 2016 motion | 01/03/2018 | 0.300 |
| Review draft contempt brief | 01/03/2018 | 0.700 |
| | | |
| Review outstanding issues from contempt meet and confer with Defendant, correpondence with D.Ho | 12/08/2017 | 0.300 |
| Correspondence with S. Lakin re: contempt letter | 11/09/2017 | 0.500 |
| Review/edit revised letter from S. Lakin | 11/09/2017 | 0.700 |
| Review/edit draft of November letter to Garrett Roe | 11/08/2017 | 0.900 |
| **Total** | | **8.900** |

*Fish v. Kobach*, No. 16-2105
Sophia Lin Lakin: Contempt-Related Hours

| Project/Time entry | Start date | Time (h) | Time (decimal) |
|---|---|---|---|
| Investigate rpts compliance issues re notice and postcards | 07/12/2017 | 0:25:04 | 0.417 |
| Investigate rpts compliance issues re notice and postcards | 09/18/2017 | 0:22:35 | 0.373 |
| Investigate rpts compliance issues re notice and postcards | 09/20/2017 | 0:14:20 | 0.237 |
| Call with Marge re notice and postcards issues | 09/20/2017 | 0:23:04 | 0.384 |
| Draft emails to team re postcards issues | 09/21/2017 | 0:15:14 | 0.252 |
| Draft emails to team re postcards issues | 09/22/2017 | 0:06:56 | 0.109 |
| Review draft letter re compliance issues | 10/16/2017 | 0:10:20 | 0.170 |
| Call with Marge and J. Brater re postcard issues | 10/26/2017 | 0:30:00 | 0.333 |
| Draft letter to KSOS re compliance issues | 10/29/2017 | 0:17:10 | 0.285 |
| Draft compliance letter & investigation & emails with Marge | 10/29/2017 | 0:35:30 | 0.588 |
| Draft emails to team re compliance letter | 10/29/2017 | 0:26:40 | 0.440 |
| Call with Marge re compliance issues & aff. | 10/29/2017 | 1:10:27 | 1.171 |
| Draft/review letter to KSOS re compliance issues | 11/08/2017 | 0:42:40 | 0.707 |
| Draft/review letter to KSOS re compliance issues | 11/09/2017 | 0:25:00 | 0.417 |
| F/up on compliance questions | 11/27/2017 | 0:21:43 | 0.357 |
| Review compliance follow up letter | 11/29/2017 | 0:29:50 | 0.492 |
| Emails with LWVK re compliance follow up | 12/08/2017 | 0:15:46 | 0.258 |
| Review contempt motion | 01/03/2018 | 0:21:12 | 0.352 |
| Call with Marge re compliance issues | 01/09/2018 | 0:50:43 | 0.841 |
| Review contempt reply | 01/23/2018 | 0:22:55 | 0.376 |
| Meeting with Marge re current status of postcards issue | 02/15/2018 | 0:35:04 | 0.584 |
| Emails with Marge & team re postcards issue | 03/13/2018 | 0:15:04 | 0.251 |
| Emails with LWVK & team re evidence for contempt hr'g | 03/16/2018 | 0:15:04 | 0.251 |
| Research, emails re contempt hr'g/contempt hr'g | 03/20/2018 | 2:03:00 | 2.051 |
| Compile hours for contempt fees petition | 04/24/2018 | 0:05:18 | 0.086 |
| Compile hrs, review rates and decl & brief | 04/25/2018 | 2:15:18 | 2.253 |
| **Total** | | **14:15:57** | **14.033** |

*Fish v. Kobach*, No. 16-2105
Stephen Douglas Bonney: Contempt-Related Hours

| Date<br>*Hours* | Task | Rate | Total Fee |
|---|---|---|---|
| 11/9/2017<br>*0.30* | Reviewed & revised draft letter from D. Ho to defendant Kobach re: compliance with preliminary injunction & other court orders. | $450.00 | $135.00 |
| 11/30/2017<br>*0.20* | Reviewed & revised letter from D. Ho to S. Becker re compliance issues | $450.00 | $90.00 |
| 1/8/2018<br>*0.50* | Reviewed plaintiffs' motion to enforce court orders & for contempt hearing for substance, form, & general compliance with D. Kan. rules | $450.00 | $225.00 |
| 1/23/2018<br>*0.50* | Reviewed reply brief for substance & compliance with local rules. | $450.00 | $225.00 |
| 3/20/2018<br>*3.00* | Appeared at contempt hearing. | $450.00 | $1,350.00 |
| 4/24/2018<br>*1.00* | Preparation and assembly of declarations in support of plaintiffs' attorneys' fees petition in compliance with contempt ruling (Doc. 520). | $450.00 | $450.00 |
| 4/24/2018<br>*1.00* | Prepared time records for contempt proceeding attorney's fees filing & drafted declaration of S.D. Bonney in support of attorney's fees petition on contempt. | $450.00 | $450.00 |
| 4/25/2018<br>*0.50* | Reviewed & replied to emails from co-counsel re | $450.00 | $225.00 |

*Fish v. Kobach*, No. 16-2105
Stephen Douglas Bonney: Contempt-Related Hours

| | | | |
|---|---|---|---|
| | attorneys' fees issues. | | |
| 5/2/2018 *0.80* | Drafted email to Allan Hallquist re declaration regarding market rates for attorneys' fees & prepared draft declaration for Mr. Hallquist. | $450.00 | $360.00 |
| 5/4/2018 *0.70* | Reviewed & finalized Hallquist declaration (.3); Reviewed & replied to email from A. Hallquist (.1); Preparation and assembly of Bonney time records (.3). | $450.00 | $315.00 |
| **8.50 Billable Hours** | | $450.00 | **$3,8250.00** |

*Fish v. Kobach*, No. 16-2105
Lila R. Carpenter: Contempt-Related Hours

| Project/Time entry | Start date | Time (h) | Time (decimal) |
|---|---|---|---|
| Reviewing contempt fees brief | 05/04/2018 | 4:38:21 | 111:20:24 |
| Reviewing contempt fees brief | 05/03/2018 | 0:12:06 | 0.202 |
| Contempt Hearing | 03/20/2018 | 3:00:00 | 3.000 |
| Drafting Decl. for Contempt Reply | 01/24/2018 | 0:30:14 | 0.504 |
| Citechecking, proofing Contempt Reply | 01/24/2018 | 2:08:04 | 51:13:36 |
| Filing Mot. for Contempt | 01/08/2018 | 0:50:00 | 0.833 |
| **Total** | | **11:18:45** | **11.313** |

ATTACHMENT 2

*Fish v. Kobach*, 16-2105

**Contempt Motion Related Travel Expenses Incurred by ACLU Staff (including support staff)**

**HOTEL**

| Date | Memo | Amount |
|------|------|--------|
| 3/19/2018 | Dale Ho - Hotel in Kansas City during Contempt Hearing | $135.80 |
| 3/19/2018 | Lila Carpenter - Hotel in Kansas City during Contempt Hearing | $135.80 |
| 3/19/2018 | Emily Zhang - Hotel in Kansas City during Contempt Hearing | $135.80 |
| 3/19/2018 | Orion Danjuma - Hotel in Kansas City during Contempt Hearing | $135.80 |

**PER DIEM**

| | | |
|------|------|--------|
| 3/20/2018 | Dale Ho - Lunch on March 20, 2018 | $15.17 |
| 3/20/2018 | Lila Carpenter - Lunch on March 20, 2018 | $14.22 |
| 3/20/2018 | Orion Danjuma - Lunch on March 20, 2018 | $18.16 |

| | |
|------|------|
| **Total** | $590.75 |
| **Emily** | $135.80 |
| **Total Minus Emily** | $454.95 |

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

STEVEN WAYNE FISH, *et al.*, on behalf          )
of themselves and all others similarly situ-    )
ated,                                            )
                                                 )
Plaintiffs,                                      )
                                                 )
v.                                               )          Case No. 16-2105-JAR-JPO
                                                 )
KRIS KOBACH, in his official capacity as        )
Secretary of State for the State of Kansas, *et* )
*al.*,                                           )
                                                 )
Defendants.                                      )
                                                 )

DECLARATION OF ALLAN V. HALLQUIST IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

I, Allan V. Hallquist, declare and state the following in support of Plaintiffs' motion for

attorneys' fees:

1.   I am an attorney with Hallquist Law Firm, LLC in Kansas City, Missouri.  I respect-

fully make this declaration in support of Plaintiffs' Motion for Statutory Attorney Fees in con-

junction with the Court's contempt order (Doc. 520).

2.   I am an attorney admitted to practice in the State of Missouri since 1980. I am admit-

ted to the United States District Court for the District of Kansas, the United States District Court

for the Western District of Missouri, the United States District Court for the Eastern District of

Michigan, the United States Court of Appeals for the Eighth Circuit, the United States Court of

Appeals for the Tenth Circuit, and the U.S. Tax Court.

3.   I graduated from the University of Iowa College of Law in 1980. Upon graduation I

was employed by the law firm of Blackwell Sanders Matheny Weary & Lombardi as an associ-

ate, and I became a partner in that firm on January 1, 1985. I was a partner in that firm, now known as Husch Blackwell LLP, until February 28, 2018, when I formed Hallquist Law Firm, LLC.

4.  Since 1980 my practice has focused almost entirely on handling litigation matters in state and federal courts. Presently, I am lead counsel on three cases pending in the United States District Court for the District of Kansas.

5.  As a trial attorney who practices primarily in Missouri and Kansas, I am familiar with the range of hourly rates charged by skilled and accomplished attorneys in the community. I have handled cases and trials in which attorneys' fees were recoverable pursuant to statutes or contractual provisions. Also, I am familiar with the annual Missouri attorney billing rates information published by *Missouri Lawyers Weekly*.

6.  It has been my experience that attorneys in the Kansas City area are reluctant to accept civil rights and voting rights cases on a contingent-fee basis.  The risk associated with litigating these cases is very great, and few, if any, civil rights litigants can afford to pay attorneys' fees or out-of-pocket expenses.  Thus, when the cases are won, the rewards are not commensurate with the risks unless an attorney can expect to obtain a substantial and fully compensable hourly rate.

7.  Stephen Douglas Bonney is an experienced attorney and is well-respected in the Kansas City legal community. I have known Mr. Bonney professionally for many years.  He obtained his law degree from the University of Kansas in 1985, and he has practiced in Kansas City since then.  He has dedicated a substantial portion of his practice to defending constitutional and civil rights throughout his career and has participated as counsel in cases before this Court, the Eighth Circuit Court of Appeals, the Tenth Circuit Court of Appeals, and the United States Supreme

Court, in addition to other federal courts.  I reviewed the Declaration that Mr. Bonney prepared in

support of Plaintiffs' Motion for Attorneys' Fees in this case.  The hourly rate of $450 per hour

requested by Mr. Bonney is a reasonable hourly rate and is consistent with hourly rates charged

by litigators with Mr. Bonney's experience and credentials who handle civil rights cases in the

Kansas City area.

8.  I also reviewed the Declarations that Dale Ho and Neil Steiner prepared in support of

Plaintiffs' Motion for Attorneys' Fees in this case.  Although I am not personally acquainted with

Mr. Ho, Mr. Steiner, or the other lawyers on Plaintiffs' litigation team, I believe that the $450 per

hour rate claimed by Mr. Steiner and Mr. Ho, the $350 per hour rate claimed by Angela Liu, So-

phia Lakin, and R. Orion Danjuma, and the rate of $275 per hour claimed by Tharuni Jayaraman

are eminently reasonable and consistent with rates charged by similarly experienced attorneys in

the Kansas City area.  In fact, I believe that the hourly rates for attorneys with their education,

qualifications, and experience would have been higher at my prior law firm, Husch Blackwell

LLP. In addition, I believe the paralegal rate of $110 per hour is consistent with rates charged for

litigation-related work by paralegals in the Kansas City area.

I declare under penalty of perjury that all the foregoing statements are true and correct.

Executed on May 4, 2018.

Allan V. Hallquist

EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS**

STEVEN WAYNE FISH, *et al.*,     )
                               )
           Plaintiffs,     )
                               )     **Case No. 16-2105-JAR-JPO**
v.                         )
                               )
KRIS KOBACH, in his official capacity as     )
Secretary of State for the State of Kansas,     )
                               )
          Defendant.     )
                               )

<u>DECLARATION OF STEPHEN DOUGLAS BONNEY</u>

I, Stephen Douglas Bonney, declare and state the following in support of Plaintiffs' Application for Attorneys' Fees in connection with the Court's contempt ruling (Doc. 520):

1.  I am an attorney admitted to practice before the state courts of Kansas and Missouri, the United States Supreme Court, the United States Courts of Appeals for the Eighth and Tenth Circuits, and the United States District Courts for the Western District of Missouri and the District of Kansas. I graduated from the University of Kansas School of Law in 1985. I have practiced law in the Kansas City Metropolitan Area since 1985. After graduating from law school, I was an Assistant Regional Attorney for the U.S. Department of Health & Human Services for a little over a year. From 1986 to 2008, I maintained a civil litigation practice in the areas of labor, employment, and civil rights law, primarily representing labor unions in law firms and as a sole practitioner. Between 1992 and 2008, I served as a volunteer member of the Legal Panel of the American Civil Liberties Union of Kansas & Western Missouri. In that capacity, I reviewed complaints about possible constitutional violations, advised the Board of Directors about possible litigation, and litigated many civil liberties issues. Since September 1, 2008, I have been em-

ployed as the Chief Counsel and Legal Director of the American Civil Liberties Union Foundation of Kansas (previously known as the ACLU of Kansas & Western Missouri).

2.   Since my admission to the bar, I have had substantial experience in civil litigation with a concentration in labor, employment, and civil rights cases.  I have been a contributing author to *Employee Benefits Law* (BNA) and the *Fair Labor Standards Act Treatise* (BNA), and I am a published author of several articles on labor law, civil rights, and civil liberties. *See, e.g.,* "Opening Statement: To Reserve or Not to Reserve – That is the Question," 18 Lab. & Emp. L. Notes 11 (Mich. Bar Summer 2008); "The University Campus as Public Forum: The Legacy of Widmar v. Vincent," 81 UMKC L. Rev. 545 (2012); "Democracy's Rainbow: The Long Ascent and Rapid Descent of Voting Rights in Kansas," 25 Kan. J.L. & Pub. Pol'y 347 (2016).  In my practice, moreover, I have successfully litigated many cases raising constitutional issues. *See, e.g., Quinly v. City of Prairie Village*, 446 F. Supp. 2d 1233 (D. Kan. 2006); *Beach v. City of Olathe*, 185 F. Supp.2d 1229 (D. Kan. 2002); *Webb v. City of Republic*, 55 F. Supp. 2d 994 (W.D. Mo. 1999); *Goodman v. City of Kansas City*, 906 F. Supp. 537 (W.D. Mo. 1995); *Gay & Lesbian Services Network v. Bishop*, 832 F. Supp. 270 (W.D. Mo. 1993).

3.   Despite my experience litigating civil rights and civil liberties cases, I have very little experience with voting rights issues and had never previously been involved in a case involving the National Voter Registration Act (NVRA).  In order to provide adequate representation to our clients in this NVRA case, I associated with experienced co-counsel with expertise in voting rights law generally and NVRA cases specifically.  I am not aware of any previous NVRA cases that have been litigated in Kansas, and I am not aware of any lawyers in Kansas or Missouri who have experience in NVRA litigation.  In this case, the involvement of out-of-state lawyers from

the ACLU's Voting Rights Project and the Dechert law firm saved immeasurable time on legal

research and made it possible for the Kansas ACLU to litigate this important case.  Without such

help, the Kansas ACLU would have been unable to litigate this case.

I declare under penalty of perjury that all of the foregoing statements are true and correct.

Executed on May 7, 2018.

s/ Stephen Douglas Bonney
Stephen Douglas Bonney
Attorney for Plaintiff

EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS**

| | |
|---|---|
| STEVEN WAYNE FISH, *et al.*, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 16-2105-JAR-JPO

**DECLARATION OF NEIL A. STEINER IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND LITIGATION
<u>EXPENSES IN CONNECTION WITH THEIR MOTION FOR CONTEMPT</u>**

I, Neil A. Steiner, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Rules 37.2 and 54.2 of the District of Kansas Local Rules, hereby declare as follows:

1.     I am a member of the law firm Dechert LLP ("Dechert") and have been admitted *pro hac vice* in this Court to represent Plaintiffs in this action.  I respectfully submit this Declaration in support of Plaintiffs' Application for Attorneys' Fees and Litigation Expenses in Connection with their Motion for Contempt.  I have personal knowledge of the subject matter in this Declaration and, if called upon, I would competently testify to the facts set forth below.

2.     The American Civil Liberties Union ("ACLU"), the ACLU of Kansas ("Kansas ACLU") and Dechert were retained in 2015 to represent Steven Wayne Fish, Donna Bucci, Charles Stricker, Thomas J. Boynton, Douglas Hutchinson and the League of Women Voters of Kansas (collectively, "Plaintiffs").  I have been involved in this litigation since its inception as the lead partner with overall responsibility for Dechert's representation of Plaintiffs and as co-lead counsel for Plaintiffs.  In that regard, I drafted or reviewed and approved virtually all of the

substantive pleadings and briefs filed by Plaintiffs in this action in both this Court and before the Tenth Circuit.

**A.  Qualifications of Dechert Attorneys**

3.      I joined Dechert in January 2005 as an associate and became a partner on January 1, 2006.  Prior to joining Dechert, I was an associate with the New York firm Shereff, Friedman, Hoffman & Goodman, LLP and subsequently in the New York office of Swidler Berlin Shereff Friedman, LLP.

4.      I obtained an Artium Baccalaureus, *magna cum laude*, from Duke University in 1994.  I obtained a Juris Doctor, *magna cum laude*, from Harvard Law School in 1997.  I have been admitted to practice in the State of New York since 1998.  I am a member in good standing of the bars of the United States Courts of Appeals for the Second, Sixth, Seventh, Ninth, and Tenth Circuits, and the bars of the United States District Courts for the Southern, Eastern, and Northern Districts of New York, the Eastern District of Michigan and Eastern District of Wisconsin.

5.      I have spent the entirety of my legal career litigating complex, high-stakes cases in federal and state courts and before arbitral tribunals throughout the United States and defending companies and individuals in governmental and regulatory investigations.  I have published ten articles on topics relating to securities litigation and investigations, am the co-author of two chapters in treatises on litigation in federal and New York state courts, and taught a course entitled *Basic Skills for the New Litigating Attorney* for recent graduates of Cardozo Law School.

6.      I am also active in *pro bono* matters, particularly in cases protecting the right to vote.  In addition to this action, I am currently the lead partner at Dechert representing plaintiffs:

(i) in a challenge of the Wisconsin voter identification statute, which I successfully tried with the ACLU and the ACLU of Wisconsin in November 2013 and is currently on appeal (for the third time) to the Seventh Circuit Court of Appeals; (ii) in a challenge to the Texas voter identification statute, which a now-retired Dechert partner (Ezra Rosenberg, now with the Lawyers' Committee for Civil Rights Under Law) tried with multiple public interest organizations in 2014 and has since been to the Fifth Circuit Court of Appeals twice, including an *en banc* finding that the voter identification law had a discriminatory effect in violation of Section 2 of the Voting Rights Act; (iii) in a claim under Section 2 of the Voting Rights Act challenging the election of judges to the Texas Supreme Court and the Court of Criminal Appeals, which I tried with the Lawyers' Committee for Civil Rights Under Law in February 2018; and (iv) in an NVRA claim against the Commissioners of the New York State Board of Elections and the Executive Directors of the New York State Board of Elections.  In addition, with the public interest organization Demos, I represent proposed intervenors seeking to intervene as defendants and prevent the unnecessary purges of registered voters in an NVRA action brought by Judicial Watch, Inc. against the California Secretary of State and the Los Angeles County Register.  My prior *pro bono* matters included representing plaintiffs and obtaining favorable settlements in NVRA claims against the states of Ohio (which included arguing *Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008), a first-impression case in the Sixth Circuit Court of Appeals), Nevada (which included arguing *National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) in the Ninth Circuit Court of Appeals) and Georgia, and the Board of Elections of the City of New York, and obtaining a satellite location for in-person absentee voting on the tribal reservation for Native American residents of Jackson County, South Dakota as a result of a claim under Section 2 of the Voting Rights Act.

7.     **Angela Liu** is an associate in the firm's litigation practice group.  She obtained a

Bachelor of Arts, highest honors, Phi Beta Kappa, from The University of North Carolina at

Chapel Hill in 2004, where she was also a Morehead Scholar.  She obtained a Juris Doctor from

the University of North Carolina School of Law in 2009.

8.     Following law school, Ms. Liu clerked for the Honorable John R. Gibson of the

United States Court of Appeals for the Eighth Circuit, and then was an associate in the Chicago

office of Katten Muchin Rosenman LLP, before joining Dechert in 2012.

9.     Ms. Liu has been admitted to practice in the State of Illinois since 2009 and the

State of Missouri since 2010.  She is a member in good standing of the bars of the United States

Supreme Court, the United States Courts of Appeals for the Seventh, Eighth, and Tenth Circuits,

and the bars of the United States District Courts for the Eastern District of Wisconsin and the

Northern District of Illinois.

10.     Ms. Liu's practice focuses on the defense of publicly-traded companies and their

directors and officers in securities class action litigation, derivative litigation, SEC

investigations, merger litigation, corporate governance disputes, and other complex commercial

litigation.  She also has an active *pro bono* practice.  In addition to this case, she worked with me

extensively on the challenge to the Wisconsin voter identification statute both at trial and in the

Seventh Circuit.

11.     **Tharuni Jayaraman** is an associate in the firm's litigation practice group.  Ms.

Jayaraman obtained a Bachelor of Arts, *summa cum laude*, Phi Beta Kappa, from The University

of Pennsylvania in 2011 and a Master in Public Policy from the Harvard Kennedy School in

2016.  She obtained a Juris Doctor, *cum laude*, from Harvard Law School in 2016.  Her JD/MPP

capstone/thesis was entitled, "Protecting the Right to Vote: A Toolkit for Lawyer-Organizers Working to Protect the Right to Vote of Native Americans."

12.     While in law school, Ms. Jayaraman was a legal intern at the Voting Rights Project of the Lawyers' Committee for Civil Rights Under Law, where she worked on the National Commission on Voting Rights' 2014 report on voting discrimination entitled, "Protecting Minority Voters: Our Work is Not Done."

13.     Ms. Jayaraman has been admitted to practice in the State of New York since 2017 and the District of Columbia since 2018.

14.     As part of her *pro bono* practice, Ms. Jayaraman is working with me on the NVRA claim against the Commissioners of the New York State Board of Elections and the Executive Directors of the New York State Board of Elections.  She has also assisted on the challenge to the Wisconsin voter identification statute.

15.     Plaintiffs are also claiming fees for the time spent by paralegal Delaney Berman who assisted in the preparation of the motion for contempt and related papers.

**B.  Requested Attorneys' Fees**

16.     In accordance with Dechert's standard practices, I contemporaneously recorded all of the time I spent on this action, which my assistant or other members of the administrative staff entered into Dechert's electronic billing system.  Other lawyers, paralegals, summer associates and non-lawyer timekeepers at Dechert are likewise required to record their time spent on client matters contemporaneously and to enter or cause their assistants or the administrative staff to enter accurate time records and descriptions of work performed in the Dechert billing system.

5

17.     In accordance with this Court's April 18, 2018 Memorandum and Order, Doc. 520,

Table 1 below summarizes all the time for which Plaintiffs are seeking fees in connection with:

      a.   Drafting the November 11, 2017 letter to Defendant, *see* Doc. 424, Ex. F;

      b.   Drafting the November 30, 2017 letter to Defendant, *see* Doc. 424, Ex. I;

      c.   Participating in the December 7, 2017 meet and confer with Defendant's counsel;

      d.   Drafting Plaintiffs' Memorandum of Law And Facts in Support of Their Motion to Enforce Court Orders and for Order to Show Cause Why Defendant Kobach Should Not be Held in Contempt, *see* Doc. 424;

      e.   Drafting Plaintiffs' Reply in Support of Their Motion to Enforce Court Orders and For Order to Show Cause Why Defendant Kobach Should Not be Held in Contempt, *see* Doc. 437; and

      f.   Participating in the March 30, 2018 hearing on Plaintiffs' Motion to Enforce Court Orders and for Order to Show Cause Why Defendant Kobach Should Not be Held in Contempt, *see* Doc. 516.

18.     Table 1 sets forth Dechert LLP's customary hourly rate for each attorney, in

accordance with their experience level.

| Person | Title | Law School Year | Hours | Hourly Rate | Total |
|--------|-------|-----------------|-------|-------------|-------|
| Neil Steiner | Partner | 1997 | 8.40 | $1,140.00 | $9,576.00 |
| Angela Liu | Associate | 2009 | 5.10 | $850.00 | $4,335.00 |
| Tharuni Jayaraman | Associate | 2016 | 55.80 | $565.00 | $31,527.00 |
| Delaney Berman | Paralegal | N/A | 8.10 | $160.00 | $1,296.00 |
| TOTAL | | | | | $46,734.00 |

Table 1: Attorneys' Fees at Dechert LLP's Customary Rates

19.     For purposes of this application, Plaintiffs' requested rates for each attorney are set forth in Table 2, as follows:

| Person | Title | Law School Year | Hours | Hourly Rate | Total |
|---|---|---|---|---|---|
| Neil Steiner | Partner | 1997 | 8.40 | $450.00 | $3,780.00 |
| Angela Liu | Associate | 2009 | 5.10 | $350.00 | $1,785.00 |
| Tharuni Jayaraman | Associate | 2016 | 55.80 | $275.00 | $15,345.00 |
| Delaney Berman | Paralegal | N/A | 8.10 | $110.00 | $891.00 |
| TOTAL | | | | | $21,801.00 |

Table 2: Requested Attorneys' Fees

20.     I have limited the request for reimbursement to the time spent by the core team of Dechert attorneys who worked on the underlying contempt motion and related papers and the March 20, 2018 evidentiary hearing, and am not seeking reimbursement for time spent by other Dechert attorneys, notably time spent by such other attorneys participating in conference calls and other strategic decision-making, and reviewing and editing the papers.  Further, to keep costs low and as reflected in Table 1, as much work as possible on the underlying contempt motion and related papers was performed by qualified attorneys with lower hourly billing rates, primarily Ms. Jayaraman, instead of more experienced attorneys who charge higher hourly rates.

21.     Likewise, we have reviewed time records and have not claimed time that I believed to be either redundant or duplicative.  Where more than one attorney is claiming time for a given task, it is because, in my judgment, that additional attorney's time was necessary to the successful completion of the task.  Where it was not necessary, that time was removed from the time records.

22.     In addition to the lodestar methodology described in Plaintiffs' Application for Attorneys' Fees and Expenses, this Court is authorized to consider the additional factors outlined in that Application in concluding that our requested awards are appropriate.  The underlying

motion involved a thorough factual investigation, multiple efforts to resolve this issue outside of litigation, and ultimately, briefing and live testimony at an evidentiary hearing before the Court.

23.     I have reviewed the background and experience of the ACLU attorneys who performed work in connection with the underlying contempt motion.  Table 3 sets forth the customary hourly rates for these attorneys if they were Dechert attorneys or paralegals with the same level of experience (with Mr. Ho comparable to a Dechert partner and Mr. Danjuma and Ms. Lakin comparable to a Dechert senior litigation associate):

| Person | Title | Law School Year | Hourly Rate |
|---|---|---|---|
| **Dale Ho** | Partner | 2005 | $915.00 |
| **R. Orion Danjuma** | Associate | 2010 | $840.00 |
| **Sophia Lin Lakin** | Associate | 2012 | $795.00 |
| **Lila Carpenter** | Paralegal | N/A | $160.00 |

**Table 3: ACLU Attorneys at Dechert LLP's Customary Rates**

24.     As is shown in Table 4 below, Plaintiffs are also claiming $434.17 in costs and expenses for Dechert LLP's attorneys' travel costs associated with the contempt motion and hearing.

| Person | Title | Hotel | Travel | Total |
|---|---|---|---|---|
| **Neil Steiner** | Partner | $135.80 | $0.00 | $135.80 |
| **Angela Liu** | Associate | $135.80 | $15.09 | $150.89 |
| **Tharuni Jayaraman** | Associate | $135.80 | $11.68 | $147.48 |
| **TOTAL** | | **$407.40** | **$26.77** | **$434.17** |

**Table 4: Reasonable Litigation Expenses and Costs**

25.     Plaintiffs are also claiming $1,120 in connection with the trial support services – namely the creation of demonstrative exhibits, use of courtroom technology, and electronic presentation of those demonstratives – provided by Mr. Stephen N. Najarian of the firm Legal Horizons during the March 30, 2018 hearing on Plaintiffs' Motion to Enforce Court Orders and for Order to Show Cause Why Defendant Kobach Should Not be Held in Contempt, *see* Doc. 516.

Mr. Najarian provided 8 hours of trial support at a rate of $140.00/hour.  Legal Horizon's fees and expenses have been paid by Dechert.

26.     These expenses, totaling $1,554.17 were reasonably incurred in the course of providing effective representation to the Plaintiffs, and Plaintiffs' counsel made appropriate efforts throughout the litigation to reduce unnecessary expenses.

27.     In sum, Plaintiffs are claiming $23,355.17 in fees and out-of-pocket expenses incurred by Dechert in connection with the contempt motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 7th day of May, 2018, in New York, NY.

/s/ Neil A. Steiner
NEIL STEINER*
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212) 698-3500
Fax: (212) 698-3599
neil.steiner@dechert.com

*Counsel for Plaintiffs*

* admitted *pro hac vice*

ATTACHMENT 1



DATE _____ May 7, 2018

INVOICE NO. _____ 144245

FED. ID. 23-1425587

---

### DECHERT LLP

1095 AVENUE OF THE AMERICAS

NEW YORK, NY 10036-6797

---

League of Women Voters of Kansas

FOR PROFESSIONAL SERVICES RENDERED through March 31, 2018:

**TOTAL FEES:** **$46,734.00**

**TOTAL AMOUNT DUE:** **$46,734.00**

---

**PLEASE INCLUDE REFERENCE  NUMBER AND REMIT TO THE ATTENTION OF   ISABEL CAMPOS   AT:**

**DECHERT LLP**
**1095 AVENUE OF THE AMERICAS**
**NEW YORK, NY 10036-6797**

---

**THE AMOUNT INCLUDED FOR COSTS INCLUDES ALL EXPENSES WHICH HAVE BEEN RECEIVED AND RECORDED THROUGH THE END OF THE MONTH PRECEDING THE DATE OF THIS STATEMENT.  ANY ADDITIONAL EXPENSES RECEIVED AFTER THAT DATE WILL BE BILLED IN THE FUTURE. PAYMENT DUE IN U.S. DOLLARS UPON RECEIPT OF INVOICE. AFTER 30 DAYS A LATE CHARGE OF 1% PER MONTH (OR SUCH LOWER RATE AS REQUIRED BY APPLICABLE LAW) WILL BE DUE.**

# DECHERT LLP
DESCRIPTION OF LEGAL SERVICES
March 31, 2018

| TIMEKEEPER | | RATE | HOURS | FEES |
|---|---|---|---|---|
| N. Steiner | Partner | 1,140.00 | 8.40 | 9,576.00 |
| A. Liu | Associate | 850.00 | 5.10 | 4,335.00 |
| T. Jayaraman | Associate | 565.00 | 55.80 | 31,527.00 |
| D. Berman | Paralegal | 160.00 | 8.10 | 1,296.00 |
| | **TOTALS** | | **77.40** | **$46,734.00** |

**DECHERT LLP**
DESCRIPTION OF LEGAL SERVICES
March 31, 2017

| <u>DATE</u> | <u>ATTY</u> | <u>HOURS</u> | <u>DESCRIPTION</u> |
|---|---|---|---|
| 09/20/17 | TAJ | 1.40 | Drafted letter to defendant. |
| 09/21/17 | TAJ | 3.00 | Drafted letter to defendants. |
| 09/27/17 | TAJ | 3.30 | Edited letter to defendant's counsel regarding notice and discovery issues. |
| 09/28/17 | TAJ | 1.00 | Edited letter to defense counsel. |
| 09/29/17 | DB | 0.30 | Assisted T. Jayaraman with proofreading letter. |
| 10/03/17 | TAJ | 1.50 | Edited letter to defendant. |
| 11/13/17 | TAJ | 4.80 | Drafted motion to compel. |
| 11/14/17 | TAJ | 1.00 | Edited motion to compel. |
| 11/15/17 | TAJ | 4.40 | Edited motion to compel and motion for sanctions. |
| 11/16/17 | TAJ | 4.90 | Edited motion to compel and motion for contempt. |
| 11/27/17 | TAJ | 2.40 | Drafted response letter to opposing counsel. |
| 11/28/17 | TAJ | 1.40 | Edited response letter to opposing counsel. |
| 11/29/17 | TAJ | 0.80 | Edited response letter to opposing counsel. |
| 11/30/17 | TAJ | 1.30 | Edited response letter to opposing counsel. |
| 12/06/17 | TAJ | 2.40 | Edited motion for contempt. |
| 12/07/17 | TAJ | 3.00 | Meet and confer with defendant; drafted follow-up email. |
| 12/11/17 | TAJ | 0.60 | Edited motion for contempt. |
| 12/12/17 | AML | 0.50 | Review motion for contempt |

| **DATE** | **ATTY** | **HOURS** | **DESCRIPTION** |
|----------|----------|-----------|-----------------|
| 12/12/17 | DB | 0.60 | Assist T. Jayaraman with proofreading. |
| 12/12/17 | TAJ | 2.40 | Edited motion for contempt |
| 12/20/17 | AML | 1.00 | Attend conference call; review motion for sanctions. |
| 12/20/17 | TAJ | 1.70 | Edited motion for contempt. |
| 12/21/17 | DB | 0.80 | Assist T. Jayaraman with proofreading. |
| 12/21/17 | TAJ | 2.50 | Edited motion for contempt. |
| 12/22/17 | NAS | 0.40 | Review draft motion for contempt and email correspondence with DH regarding same. |
| 12/22/17 | TAJ | 1.20 | Edited motion for contempt. |
| 01/04/18 | TAJ | 2.00 | Updated motion for contempt. |
| 01/04/18 | DB | 0.10 | Confer with T. Jayaraman regarding preparation of Motion for Contempt |
| 01/05/18 | TAJ | 3.30 | Edited motion for contempt. |
| 01/05/18 | DB | 1.30 | Assist T. Jayaraman with proofreading Motion for Contempt. |
| 01/07/18 | TAJ | 1.60 | Edited motion for contempt. |
| 01/08/18 | TAJ | 3.90 | Edited motion to compel; prepared corresponding exhibits. |
| 01/08/18 | DB | 5.00 | Continue to assist T. Jayaraman with preparation of Memorandum in Support of Motion to Enforce Court Orders and for Order to Show Cause. |
| 01/22/18 | NAS | 0.50 | Review opposition to contempt. |
| 01/23/18 | NAS | 0.50 | Review and revise reply brief on contempt; email correspondence with co-counsel. |
| 03/19/18 | NAS | 2.00 | Prep for contempt hearing. |
| 03/20/18 | NAS | 5.00 | Contempt hearing |

| DATE | ATTY | HOURS | DESCRIPTION |
|------|------|-------|-------------|
| 03/20/18 | AML | 3.6 | Prepare for and attend contempt hearing. |

**TOTAL HOURS:** **77.40**  **AMOUNT:** **$46,734.00**



# REMITTANCE TRANSMITTAL FORM

PLEASE MAKE YOUR CHECK PAYABLE TO

## DECHERT LLP

| | |
|---|---|
| PLEASE COMPLETE THE TOP PORTION AND RETURN THIS FORM WITH YOUR PAYMENT TO: | STATEMENT DATE: _____ May 7, 2018 |
| | STATEMENT REFERENCE NO: _____ 144245 |
| DECHERT LLP | AMOUNT  PAID: _____ |
| 1095 AVENUE OF THE AMERICAS | |
| NEW YORK, NY 10036-6797 | CHECK #: _____ |

| | |
|---|---|
| **FOR DECHERT USE ONLY** | **FOR FINANCE USE ONLY** |
| ATTORNEY NAME: _____ | TOTAL AMOUNT: _____ |
| PREPARED BY: _____ Icampos _____ | CHECK#: _____ |
| CLIENT & MATTER NO: _____ 144245 _____ | DATE DEPOSITED: _____ |
| CLIENT  NAME: ___ League of Women Voters of Kansas ___ | |
| | (WSPB) |

**Comments:**

**PLEASE RETURN THIS FORM WITH YOUR PAYMENT**

Exhibit E

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, *et al.*,                )
                                            )
                    Plaintiffs,             )
                                            )        Case No. 16-2105-JAR-JPO
v.                                          )
                                            )
KRIS KOBACH, in his official capacity as    )
Secretary of State for the State of Kansas, )
                                            )
                    Defendant.              )
                                            )
_____)

## DECLARATION OF ELIZABETH S. SAYLOR

1.      I am a graduate of Amherst College (B.A. 1997) and the Harvard Law School (J.D. 2001).

2.      I am a member of the bars of the following jurisdictions: New York; New Jersey; the United States District Court for the District of New Jersey; the United State District Court for the Districts of Northern, Southern, and Eastern New York; the United States Court of Appeals for the Second Circuit; and the United States Supreme Court.

3.      Upon my graduation from law school, I worked at the Legal Aid Society as a Skadden Arps public interest fellow and as a clerk for the Honorable Robert D. Sack on the Second Circuit Court of Appeals. I joined the firm of Emery Celli Brinckerhoff & Abady LLP in 2006. I am now a partner of the firm.

4.      I have over 15 years of litigation experience in federal and state courts. My practice has consisted of representing clients in commercial and civil rights matters. My civil rights practice has included: constitutional litigation; class actions; police misconduct; prisoners' rights; election law; wage and hour litigation; and employment and housing cases

1

alleging discrimination on the basis of race, sex, age, familial status, pregnancy, disability, and source of income. My commercial practice includes contract and tort disputes, as well as constitutional challenges to government regulations.

5.      As a practicing attorney and also as a partner of Emery Celli Brinckerhoff & Abady LLP, I am familiar with current and historical hourly billing rates of New York attorneys, including those who prosecute and defend civil rights cases and other complex litigation.

6.      I have reviewed the educational background, qualifications, and professional achievements of Dale E. Ho, R. Orion, Danjuma, Sophia Lin Lakin, and Doug Bonney attorneys from the American Civil Liberties Union ("ACLU") and the ACLU of Kansas, as well as Lila Carpenter, an ACLU paralegal whose time is included in the fees sought in this action. In addition, I have worked with attorneys from the ACLU and specifically with R. Orion Danjuma, who was my former colleague at Emery Celli Brinckerhoff & Abady LLP. I have seen seen firsthand, the professional commitment and abilities of the ACLU's attorneys.  The reputations of these attorneys for competence and integrity are of the highest order in the New York legal community and beyond.

| Name | Attorney JD Year | Hourly Rate |
|---|---|---|
| Doug Bonney | 1985 | $450 |
| Dale Ho | 2005 | $450 |
| R. Orion Danjuma | 2010 | $350 |
| Sophia Lin Lakin | 2012 | $350 |
| Lila Carpenter | Paralegal | $110 |

7.      In my opinion, these hourly rates are well within the range of reasonableness of current market rates for hourly paid litigation by attorneys of comparable ability, experience, and reputation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on May 4, 2018.

Elizabeth S. Saylor