EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS**

STEVEN WAYNE FISH, *et al.*,    )
                                )
        Plaintiffs,             )
                                )        **Case No. 16-2105-JAR-JPO**
v.                              )
                                )
KRIS KOBACH, in his official capacity as   )
Secretary of State for the State of Kansas,   )
                                )
        Defendant.              )
                                )
_____   )

**DECLARATION OF DALE E. HO IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES
IN CONNECTION WITH THEIR MOTION FOR CONTEMPT**

I, Dale E. Ho, declare under penalty of perjury that the following is true and correct:

1.      The national American Civil Liberties Union ("ACLU"), the ACLU of Kansas

("Kansas ACLU"), and Dechert LLP, were retained in 2015 to represent Plaintiffs in the above-

captioned matter.

2.      The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit,

nonpartisan organization with over 1,600,000 members dedicated to defending the principles

embodied in the Constitution and our nation's civil rights laws.  The ACLU Foundation is a

national nonprofit organization under section 501(c)(3) of the Internal Revenue Code and

educates the public about civil liberties and employs lawyers who provide legal representation

free of charge in cases involving civil liberties.  The ACLU Voting Rights Project was

established in 1965 – the same year that the historic Voting Rights Act (VRA) was enacted – and

has litigated more than 300 cases since that time, including numerous voting rights cases in the

U.S. Supreme Court, including: *Ohio A Philip Randolph Institute v. Husted*, No. 16-980 (U.S.

argued Jan 10, 2018); *Shelby County, Ala. v. Holder*, 570 U.S. 529 (2013); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013); *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008); and *Abrams v. Johnson*, 521 U.S. 74 (1997).

3.   Over the years, the ACLU Voting Rights Project has represented plaintiffs in jurisdictions around the country bringing lawsuits to enforce the National Voter Registration Act, 52 U.S.C. 20501 *et seq.* ("NVRA"), the statute governing this case, including *Arizona v. Inter Tribal Council of Arizona*, *supra*; *Ohio A. Philip Randolph Institute v. Husted*, *supra*; *League of Women Voters of California v. Kelly*, No. 17-cv-02665-LB, 2017 WL 3670786 (N.D. Cal. Aug. 25, 2017); and *Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F. Supp. 2d 1320 (N.D. Ga. 2012).

4.   The Kansas ACLU is the national ACLU's statewide affiliate in Kansas.  The Kansas ACLU, based in Overland Park, KS, has a local presence in the state, with over 30,000 members statewide. Kansas ACLU attorneys have extensive experience practicing in Kansas federal and state courts on a range of constitutional issues, including voting rights litigation.

**Qualifications of ACLU Staff Working on the Case**

5. In this section I will describe the qualifications and expertise of the staff of the ACLU Voting Rights Project for whose time we seek to collect fees.

6. I am, and have been since May 2013, the director of the ACLU Voting Rights Project.

 a. I obtained a Bachelors of Arts degree from Princeton University in 1999, and a Juris Doctor from Yale Law School in 2005.

 b. I was admitted to the practice of law in the State of New York in 2006. I have been continuously engaged in the practice of law on a full-time basis since 2006. I am admitted to the following federal courts:

  i. U.S. District Courts for the Southern District of New York (2008); Eastern District of New York (2008); Eastern District of Wisconsin (2013).

  ii. U.S. Court of Appeals for the First Circuit (2016), U.S. Court of Appeals for the Second Circuit (2008), U.S. Court of Appeals for the Fourth Circuit (2014), U.S. Court of Appeals for the Fifth Circuit (2013), U.S. Court of Appeals for the Sixth Circuit (2014), U.S. Court of Appeals for the Seventh Circuit (2014), U.S. Court of Appeals for the Eighth Circuit (2016), U.S. Court of Appeals for the Ninth Circuit (2010), U.S. Court of Appeals for the Tenth Circuit (2016) and the U.S. Court of Appeals for the District of Columbia Circuit (2010).

  iii. The United States Supreme Court (2010).

 c. From 2005 to 2006, I worked as a law clerk for the Honorable Barbara S. Jones in the U.S. District Court for the Southern District of New York. From 2006 to

2007, I worked as a law clerk for the Honorable Robert S. Smith in the New York Court of Appeals.

d.  From 2007 to 2009, I was an associate at the law firm, Fried, Frank, Harris, Shriver, & Jacobson LLP ("Fried Frank") in New York.  At Fried Frank, I litigated complex commercial matters and federal civil rights cases, including work under the federal Voting Rights Act ("VRA").  In particular, I assisted in drafting an *amicus* brief in *Bartlett v. Strickland*, 556 U.S. 1 (2009), a voting rights case before the United States Supreme Court.  That brief was cited in the dissenting opinion of Justice Breyer, 556 U.S. at 45.

e.  From 2009 to April 2013, I worked as Assistant Counsel in the Political Participation Group at the NAACP Legal Defense and Education Fund, Inc. ("LDF").  At LDF, my practice was devoted almost exclusively to voting rights litigation in federal court.  Among my voting rights matters at LDF included *Shelby County v. Holder*, 133 S. Ct. 2612 (2013).  With respect to litigation under the NVRA, I served as trial counsel in a successful case under Section 7 of the NVRA, *Scott v. Schedler*, No. CIV.A. 11-926, 2013 WL 264603, at *1 (E.D. La. Jan. 23, 2013).

f.  From May 2013 to present, I have been the Director of the Voting Rights Project at the American Civil Liberties Union ("ACLU").  In this capacity, I supervise and directly participate in the ACLU's docket of voting rights litigation throughout the country, including: *Ohio A Philip Randolph Institute v. Husted*, No. 16-980 (U.S. argued Jan 10, 2018) (NVRA case); *North Carolina NAACP v. North Carolina*, 831 F.3d 204 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 1399

4

(2017); *Frank v. Walker*, 819 F.3d 384 (7th Cir. 2016); *Ohio State Conference of N.A.A.C.P. v. Husted*, 768 F.3d 524, 533 (6th Cir. 2014), *vacated sub nom.*, No. 14-3877, 2014 WL 10384647 (6th Cir. Oct. 1, 2014).

g.  I have lectured and written extensively on issues of voting rights and election law. I am currently an adjunct professor of law at NYU Law School, where I co-teach the Racial Justice Clinic, and at Brooklyn Law School, where I teach a course on Election Law.  I have published articles on election law topics in several law reviews, including the *Yale Law Journal Forum*; the *Harvard Civil Rights-Civil Liberties Law Review*; the *Stanford Law & Policy Review*; and the *NYU Journal of Law and Public Policy*.  I have spoken on voting rights issues at various law schools, including Yale Law School, Harvard Law School, Stanford Law School, Columbia Law School, and NYU School of Law.

h.  I have served on the faculty for redistricting seminars for state legislators in Louisiana and Texas, and have testified in state legislatures around the country on election law issues, including in California, Connecticut, Kentucky, and New York.

i.  I am also a member of the Election Law Committee of the American Bar Association; and for three years, from 2009 through 2012, I served as a member of the Election Law Committee of the New York City Bar Association.

j.  In 2017, I was named one of the Best Asian Pacific American lawyers Under the Age of 40 by the National Asian Pacific American Bar Association.

7.  **R. Orion Danjuma** is a staff attorney at ACLU, and has served in that capacity since 2015.

5

a. Mr. Danjuma obtained a Bachelors of Art degree from Yale University in 2000 and a Juris Doctor from Stanford Law School in 2010.

b. He has been admitted to the practice of law in the State of New York since 2011 and in the State of California since 2013.

c. Mr. Danjuma is admitted to practice in the following federal courts:

   i. U.S. District Courts for the Eastern District of Michigan (2013); Central District of California (2013); Southern District of New York (2015).

   ii. U.S. Court of Appeals for the First Circuit (2014), U.S. Court of Appeals for the Seventh Circuit (2012), U.S. Court of Appeals for the Ninth Circuit (2013), and the U.S. Court of Appeals for the Tenth Circuit (2016) Circuits.

   iii. The United States Supreme Court (2018).

d. He has also been admitted *pro hac vice* in various federal and state courts.

e. From 2010 to 2011, Mr. Danjuma worked as a law clerk for the Honorable Myron H. Thompson in the U.S. District Court for the Middle District of Alabama. From 2011 to 2012, he worked as a law clerk for the Honorable Ann Claire Williams in the U.S. Court of Appeals for the Seventh Circuit.

f. From 2012 to 2014, Mr. Danjuma was a Skadden Fellow with the ACLU Immigrants' Rights Project where his work focused on litigation to protect the civil rights of immigrants in the United States.

g. From 2014 to 2015, Mr. Danjuma was an associate with the law firm, Emery Celli Brinckerhoff & Abady LLP ("Emery Celli") in New York City. At Emery Celli, he

litigated commercial and civil rights cases, including cases involving wrongful conviction and violations of the fair housing act.

h.  From 2015 to the present, Mr. Danjuma has worked as a staff attorney with the ACLU Centers for Equality and Justice.

i.  Mr. Danjuma has experience litigating a range of civil rights cases in state and federal court.  His litigation involving the NVRA includes *League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016), a related case concerning Kansas's documentary proof of citizenship requirement.  His broader litigation experience includes: *S.R. v. Kenton Cty. Sheriff's Office*, No. 215CV143, 2017 WL 4545231 (E.D. Ky. Oct. 11, 2017) (disability rights and excessive force); *Dade v. City of Sherwood, Arkansas*, No. 4:16-CV-602 (E.D. Ark. Aug. 23, 2016) (debtors' prisons); *Fair Housing Justice Center v. M&T Bank*, No. 1:15-cv-00779 (S.D.N.Y. Feb. 3, 2015) (fair housing); *Cosme v. City of New York*, No. 1:14-cv-01653 (S.D.N.Y. Mar. 11, 2014) (wrongful conviction and malicious prosecution); *Morales v. Chadbourne*, 793 F.3d 208, 211 (1st Cir. 2015) (immigration detainer of U.S. citizen); *Roy v. Cty. of Los Angeles*, 114 F. Supp. 3d 1030, 1033 (C.D. Cal. 2015) (immigration detainers); *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1058 (9th Cir. 2014) (immigrant civil rights); *Hernandez v. Heineman*, No. CI13-2124 (Neb. Dist. Ct. June 10, 2013) (immigrant civil rights).

j.  Mr. Danjuma has given presentations and webinars on civil rights work for entities including the Skadden Fellowship Foundation, the Immigrant Defense Project, and the Southern Poverty Law Center.

8.      **Sophia Lin Lakin** is a staff attorney with the ACLU and has been in this position since 2016.  Prior to becoming a staff attorney, she was a legal fellow with the ACLU.

a.   Ms. Lakin obtained a Bachelor of Arts degree and Master of Science degree in Engineering from Stanford University in 2004.  She earned a Juris Doctor degree from Stanford Law School in 2012.

b.   From August 2013 to October 2014, Ms. Lakin served as a law clerk to the Honorable Carol Bagley Amon of the Eastern District of New York.  From January 2014 to January 2015, she served as a law clerk to the Honorable Raymond J. Lohier, Jr., of the Second Circuit Court of Appeals.  For the three months in between these clerkships, she worked as a volunteer staff attorney with the ACLU Voting Rights Project.

c.   Ms. Lakin was admitted to the practice of law in the State of New York in 2013.

d.   She is admitted to practice in the following federal courts:

i.   U.S. District Court for the Eastern District of Wisconsin (2015).

ii.   U.S. Court of Appeals for the Fourth Circuits (2016), U.S. Court of Appeals for the Tenth Circuit Court of Appeals (2016); U.S. Court of Appeals for the Eighth Circuit (2016), U.S. Court of Appeals for the Eleventh Circuit (2017).

iii.   The United States Supreme Court (2017).

e.   She has also been admitted *pro hac vice* in several other U.S. District Courts and state courts.

f.   From February 2015 until present, Ms. Lakin has worked full-time with the ACLU Voting Rights Project, first as a legal fellow and, since February 2016, as a

staff attorney. She exclusively litigates voting rights and election law cases, including the following cases under the NVRA: *APRI v. Husted*, No. 16-980 (U.S., argued Jan 10, 2018); and *Common Cause v. Lawson*, No. 1:17-cv-3936 (S.D. Ind. Oct. 27, 2017). Her other voting rights matters include: *ACLU v. Trump*, No. 1:17-cv-01351 (D.D.C. July 10, 2017); *Missouri NAACP v. Missouri*, No. 17AC-CC00399 (Mo. Cir. Ct, June 8, 2017), *appeal filed*, Feb. 2, 2018; *Missouri State Conference of the NAACP v. Ferguson-Florissant School District*, 201 F. Supp. 3d 1006 (E.D. Mo, Aug. 22, 2016), *appeal heard*, Dec. 13, 2017 (8th Cir.); *Brown v. Kobach*, No. 2016-CV-550 (Kan. Dist. Ct., Nov. 4, 2016), *appeal filed*, Dec. 5, 2016; *Frank v. Walker*, 819 F.3d 384 (7th Cir. 2016). Ms. Lakin has also drafted multiple amicus briefs, including Supreme Court briefs.

g.  Ms. Lakin has given presentations and continuing legal education classes concerning voting rights for various organizations, including the Kansas City Metropolitan Bar Association, Creating Change, and the U.S. Human Rights Network National Convening, and at universities and law schools, including Harvard Law School, Loyola University in New Orleans and Stanford Law School.

9.     In an exercise of billing judgment, Plaintiffs do not seek recovery of time expended in connection with the underlying contempt motion by ACLU legal fellow **Emily Zhang**, a member of the trial team in this matter and a recent graduate of Stanford Law School. Ms. Zhang contributed a total of three hours of work on the underlying contempt motion.

10.     The number of attorneys' hours spent on this case was minimized because of the assistance of ACLU support staff, including paralegals and law clerks.

    a.   Plaintiffs seek reimbursement for time spent on this case by ACLU paralegal **Lila Carpenter** at a rate of $110.00 per hour.

    b.   Plaintiffs do not seek reimbursement for the time spent on this case by legal administrative assistant **Juan Diaz**.

## Qualifications of Kansas ACLU Staff Working on the Case

11.    The Kansas ACLU is the national ACLU's statewide affiliate in Kansas.  The Kansas ACLU, based in Overland Park, KS, has a local presence in the state, with over 7700 members statewide. Stephen D. Bonney, the Kansas ACLU attorney who worked on this case, has extensive experience practicing in Kansas federal and state courts on a range of constitutional issues, including voting rights litigation.

12.    Mr. Bonney's qualifications and expertise are as follows:

    a.   Mr. Bonney obtained a Juris Doctor degree from the University of Kansas School of Law in 1985.

    b.   He has been admitted to the practice of law in the State of Kansas since 1985 and in the State of Missouri since 1986.

    c.   He is admitted to practice in the following federal courts:

        i.   U.S. District Courts for District of Kansas (1985) and the Western District of Missouri (1986).

        ii.   U.S. Courts of Appeals for the Eighth Circuit (1987) and the Tenth Circuit (2011).

        iii.   The United States Supreme Court (2013).

    d.   From 1985 to 1986, Mr. Bonney worked as an Assistant Regional Attorney for the U.S. Department of Health & Human Services, Region VII.

e.   From 1986 to 1991, Mr. Bonney was an associate with Jolley, Walsh, Hager & Gordon in Kansas City, Missouri, where his primary area of practice was union-side labor law.

f.   From 1992 to 2008, Mr. Bonney was a sole practitioner and his primary area of practice was union-side labor law and civil rights litigation.

g.   From 1992 and 2008, Mr. Bonney served as a volunteer member of the Legal Panel of the American Civil Liberties Union of Kansas & Western Missouri.  In that capacity, he reviewed complaints about possible constitutional violations, advised the Board of Directors about possible litigation, and litigated many civil liberties issues.

h.   Some of the civil liberties cases Mr. Bonney litigated while he was a sole practitioner include: *Gay & Lesbian Services Network v. Bishop*, 832 F. Supp. 270 (W. D. Mo. 1993) (First Amendment challenge to police department's parade policy); *Goodman v. City of Kansas City*, 906 F. Supp. 537 (W.D. Mo. 1995) (First Amendment challenge to city's Little Hatch Act); *Webb v. City of Republic*, 55 F. Supp. 993 (W.D. Mo. 1999) (First Amendment challenge to city seal containing the Christian fish symbol); *Beach v. City of Olathe*, 185 F. Supp. 2d 1229 (D. Kan. 2002) (First Amendment retaliation in employment); *Quinly v. City of Prairie Village*, 446 F. Supp. 2d 1233 (D. Kan. 2006) (First Amendment challenge to city's sign ordinance).

i.   From September 1, 2008 until September 25, 2017, Mr. Bonney was the Chief Counsel and Legal Director of the American Civil Liberties Union Foundation of Kansas (previously known as the ACLU of Kansas & Western Missouri).  Since

September 25, 2017, he has been the Legal Director Emeritus of the Kansas

ACLU.  While working for the Kansas ACLU, he has litigated numerous civil

rights and civil liberties cases in Kansas's federal and state courts.

j. Mr. Bonney has also spoken and written extensively on civil liberties and voting

rights issues. *See, e.g.,* "The University Campus as Public Forum: The Legacy of

Widmar v. Vincent," 81 UMKC L. Rev. 545 (2012); "Democracy's Rainbow: The

Long Ascent and Rapid Descent of Voting Rights in Kansas," 25 Kan. J.L. & Pub.

Pol'y 347 (2016).

**Requested Attorneys' Fees**

13. Below is a table summarizing all the time for which the Plaintiffs are seeking fees

in connection with their underlying contempt motion:

**Billable Hours for Underlying Contempt Motion**

| Name (position) | Time Spent | Hourly Rate* | Billable Amount |
|---|---|---|---|
| Dale Ho (attorney) | 32.76 | $450.00 | $14,740.00 |
| Doug Bonney (attorney) | 8.50 | $450.00 | $3,825.00 |
| R. Orion Danjuma (attorney) | 8.90 | $350.00 | $3,115.00 |
| Sophia Lin Lakin (attorney) | 14.03 | $350.00 | $4,911.67 |
| Lila Carpenter (paralegal) | 11.31 | $110.00 | $1,244.38 |

**SUM:    $27,836.04**

14. The hours and rates being claimed by ACLU timekeepers, with billing judgement

exercised, are reasonable for successfully prosecuting the underlying contempt motion.

15. ACLU attorneys' and paralegal's time records were kept contemporaneously with

the work performed.  The claimed amount for litigation work summarized in the chart above is

the total lodestar amount—determined by multiplying the rate per hour by the hours each

attorney or paralegal reasonably and necessarily worked on this litigation.  As detailed in

Plaintiffs' Application for Attorneys' Fees and Litigation Expenses in Connection with Their Motion for Contempt, the rates reflects the usual and customary rate for attorneys with a comparable experience level and specialized skill in each of the attorneys respective home states.

16.     I have attached the detailed time records for each ACLU timekeeper as Attachment 1.

17.     Each attorney seeking fees possesses the requisite understanding of relevant evidence to prosecute claims under the NVRA.  Plaintiffs request these rates given ACLU attorneys' experience and expertise in voting rights litigation.  In ACLU attorneys' experience, this reflects the usual and customary rate for an attorney of comparable experience and skill.

18.     In addition to the lodestar methodology described in the Plaintiffs' Application for Attorneys' Fees and Litigation Expenses, this Court is authorized to consider the additional factors outlined in that Application in concluding that our requested awards are appropriate.  The underlying motion involved a thorough factual investigation, multiple efforts to resolve this issue outside of litigation, and ultimately, briefing and live testimony at a hearing before the Court.

19.     One of the steps ACLU attorneys took to keep costs low was to ensure that as much work as possible on the underlying contempt motion was performed by qualified attorneys with lower hourly billing rates, instead of more experienced attorneys who charge higher fees.

20.     A second step I took to exercise billing judgment was to exclude the hours of a legal fellow who worked on the case, a legal administrative assistant and legal interns.  When possible, we used support staff, legal interns to help in the successful conduct of every aspect of litigation. Where those timekeepers either engaged in entirely supportive or duplicative work, I excluded those timekeepers.

**B.**     <u>**Reasonable Litigation Expenses and Costs**</u>

21.     Plaintiffs are also claiming $454.95 in costs and expenses for ACLU attorneys' travel costs associated with the contempt motion and hearing.  A table summarizing the claimed taxable and non-taxable costs is attached as Attachment 2 to this declaration.

22.     These expenses were reasonably incurred in the course of providing effective representation to the Plaintiffs, and Plaintiffs' counsel made appropriate efforts throughout the litigation to reduce unnecessary expenses.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated: May 7, 2018.

/s/ Dale E. Ho
DALE E. HO

ATTACHMENT 1

*Fish v. Kobach*, No. 16-2105
Dale E. Ho: Contempt-Related Hours

| Project/Time entry | Start date | Time (h) | Time (decimal) |
|---|---|---|---|
| Correspondence with Defendants | 11/10/2017 | 2:26:00 | 2.433 |
| Correspondence w/ Defendants | 11/29/2017 | 0:56:04 | 0.934 |
| Correspondence w/ Defendants | 11/30/2017 | 0:33:02 | 0.551 |
| Correspondence w/ Defendants | 12/07/2017 | 1:00:15 | 1.004 |
| Revise Contempt Motion | 12/22/2017 | 3:24:00 | 3.400 |
| Edits to Motion for Contempt | 01/07/2018 | 14:03:26 | 14.057 |
| Revise Contempt Reply | 01/23/2018 | 0:30:00 | 0.500 |
| Draft Contempt Reply | 01/23/2018 | 1:22:34 | 1.376 |
| Outline Contempt Reply | 01/23/2018 | 0:41:00 | 0.683 |
| Contempt Hearing | 03/20/2018 | 3:00:00 | 3.000 |
| Contempt Fees Brief | 04/25/2018 | 2:44:59 | 2.750 |
| Contempt Fees Brief | 04/26/2018 | 1:28:00 | 1.467 |
| Contempt Fees Brief | 05/02/2018 | 0:36:00 | 0.600 |
| **Total** | | **32:45:20** | **32.756** |

*Fish v. Kobach*, No. 16-2105
R. Orion Danjuma: Contempt-Related Hours

| Project/Time entry | Start date | Time (decimal) |
| --- | --- | --- |
| Contempt Hearing | 03/20/2018 | 3.000 |
| | | |
| Correspondence with team re: contempt reply brief | 01/23/2018 | 0.400 |
| Review/edit reply brief | 01/23/2018 | 0.900 |
| Review transcript of 10.5.16 hearing with Judge Robinson | 01/23/2018 | 0.400 |
| Correspondence with team re: contempt motion | 01/09/2018 | 0.300 |
| Correspondence with D. Ho re: contempt motion | 01/08/2018 | 0.100 |
| Correspondence with T. Jayaraman re: contempt brief | 01/04/2018 | 0.400 |
| Correspondence with T. Jayaraman re: synchronizing contempt motion with 2016 motion | 01/03/2018 | 0.300 |
| Review draft contempt brief | 01/03/2018 | 0.700 |
| | | |
| Review outstanding issues from contempt meet and confer with Defendant, correpondence with D.Ho | 12/08/2017 | 0.300 |
| Correspondence with S. Lakin re: contempt letter | 11/09/2017 | 0.500 |
| Review/edit revised letter from S. Lakin | 11/09/2017 | 0.700 |
| Review/edit draft of November letter to Garrett Roe | 11/08/2017 | 0.900 |
| **Total** | | **8.900** |

*Fish v. Kobach*, No. 16-2105
Sophia Lin Lakin: Contempt-Related Hours

| Project/Time entry | Start date | Time (h) | Time (decimal) |
|---|---|---|---|
| Investigate rpts compliance issues re notice and postcards | 07/12/2017 | 0:25:04 | 0.417 |
| Investigate rpts compliance issues re notice and postcards | 09/18/2017 | 0:22:35 | 0.373 |
| Investigate rpts compliance issues re notice and postcards | 09/20/2017 | 0:14:20 | 0.237 |
| Call with Marge re notice and postcards issues | 09/20/2017 | 0:23:04 | 0.384 |
| Draft emails to team re postcards issues | 09/21/2017 | 0:15:14 | 0.252 |
| Draft emails to team re postcards issues | 09/22/2017 | 0:06:56 | 0.109 |
| Review draft letter re compliance issues | 10/16/2017 | 0:10:20 | 0.170 |
| Call with Marge and J. Brater re postcard issues | 10/26/2017 | 0:30:00 | 0.333 |
| Draft letter to KSOS re compliance issues | 10/29/2017 | 0:17:10 | 0.285 |
| Draft compliance letter & investigation & emails with Marge | 10/29/2017 | 0:35:30 | 0.588 |
| Draft emails to team re compliance letter | 10/29/2017 | 0:26:40 | 0.440 |
| Call with Marge re compliance issues & aff. | 10/29/2017 | 1:10:27 | 1.171 |
| Draft/review letter to KSOS re compliance issues | 11/08/2017 | 0:42:40 | 0.707 |
| Draft/review letter to KSOS re compliance issues | 11/09/2017 | 0:25:00 | 0.417 |
| F/up on compliance questions | 11/27/2017 | 0:21:43 | 0.357 |
| Review compliance follow up letter | 11/29/2017 | 0:29:50 | 0.492 |
| Emails with LWVK re compliance follow up | 12/08/2017 | 0:15:46 | 0.258 |
| Review contempt motion | 01/03/2018 | 0:21:12 | 0.352 |
| Call with Marge re compliance issues | 01/09/2018 | 0:50:43 | 0.841 |
| Review contempt reply | 01/23/2018 | 0:22:55 | 0.376 |
| Meeting with Marge re current status of postcards issue | 02/15/2018 | 0:35:04 | 0.584 |
| Emails with Marge & team re postcards issue | 03/13/2018 | 0:15:04 | 0.251 |
| Emails with LWVK & team re evidence for contempt hr'g | 03/16/2018 | 0:15:04 | 0.251 |
| Research, emails re contempt hr'g/contempt hr'g | 03/20/2018 | 2:03:00 | 2.051 |
| Compile hours for contempt fees petition | 04/24/2018 | 0:05:18 | 0.086 |
| Compile hrs, review rates and decl & brief | 04/25/2018 | 2:15:18 | 2.253 |
| **Total** | | **14:15:57** | **14.033** |

*Fish v. Kobach*, No. 16-2105
Stephen Douglas Bonney: Contempt-Related Hours

| Date *Hours* | Task | Rate | Total Fee |
|---|---|---|---|
| 11/9/2017 *0.30* | Reviewed & revised draft letter from D. Ho to defendant Kobach re: compliance with preliminary injunction & other court orders. | $450.00 | $135.00 |
| 11/30/2017 *0.20* | Reviewed & revised letter from D. Ho to S. Becker re compliance issues | $450.00 | $90.00 |
| 1/8/2018 *0.50* | Reviewed plaintiffs' motion to enforce court orders & for contempt hearing for substance, form, & general compliance with D. Kan. rules | $450.00 | $225.00 |
| 1/23/2018 *0.50* | Reviewed reply brief for substance & compliance with local rules. | $450.00 | $225.00 |
| 3/20/2018 *3.00* | Appeared at contempt hearing. | $450.00 | $1,350.00 |
| 4/24/2018 *1.00* | Preparation and assembly of declarations in support of plaintiffs' attorneys' fees petition in compliance with contempt ruling (Doc. 520). | $450.00 | $450.00 |
| 4/24/2018 *1.00* | Prepared time records for contempt proceeding attorney's fees filing & drafted declaration of S.D. Bonney in support of attorney's fees petition on contempt. | $450.00 | $450.00 |
| 4/25/2018 *0.50* | Reviewed & replied to emails from co-counsel re | $450.00 | $225.00 |

*Fish v. Kobach*, No. 16-2105
Stephen Douglas Bonney: Contempt-Related Hours

| | | | |
|---|---|---|---|
| | attorneys' fees issues. | | |
| 5/2/2018<br>*0.80* | Drafted email to Allan Hallquist re declaration regarding market rates for attorneys' fees & prepared draft declaration for Mr. Hallquist. | $450.00 | $360.00 |
| 5/4/2018<br>*0.70* | Reviewed & finalized Hallquist declaration (.3); Reviewed & replied to   email from A. Hallquist (.1); Preparation and assembly of Bonney time records (.3). | $450.00 | $315.00 |
| **8.50 Billable Hours** | | $450.00 | **$3,8250.00** |

*Fish v. Kobach*, No. 16-2105
Lila R. Carpenter: Contempt-Related Hours

| Project/Time entry | Start date | Time (h) | Time (decimal) |
|---|---|---|---|
| Reviewing contempt fees brief | 05/04/2018 | 4:38:21 | 111:20:24 |
| Reviewing contempt fees brief | 05/03/2018 | 0:12:06 | 0.202 |
| Contempt Hearing | 03/20/2018 | 3:00:00 | 3.000 |
| Drafting Decl. for Contempt Reply | 01/24/2018 | 0:30:14 | 0.504 |
| Citechecking, proofing Contempt Reply | 01/24/2018 | 2:08:04 | 51:13:36 |
| Filing Mot. for Contempt | 01/08/2018 | 0:50:00 | 0.833 |
| **Total** | | **11:18:45** | **11.313** |

ATTACHMENT 2

*Fish v. Kobach*, 16-2105

**Contempt Motion Related Travel Expenses Incurred by ACLU Staff (including support staff)**

**HOTEL**

| Date | Memo | Amount |
|---|---|---|
| 3/19/2018 | Dale Ho - Hotel in Kansas City during Contempt Hearing | $135.80 |
| 3/19/2018 | Lila Carpenter - Hotel in Kansas City during Contempt Hearing | $135.80 |
| 3/19/2018 | Emily Zhang - Hotel in Kansas City during Contempt Hearing | $135.80 |
| 3/19/2018 | Orion Danjuma - Hotel in Kansas City during Contempt Hearing | $135.80 |

**PER DIEM**

| | | |
|---|---|---|
| 3/20/2018 | Dale Ho - Lunch on March 20, 2018 | $15.17 |
| 3/20/2018 | Lila Carpenter - Lunch on March 20, 2018 | $14.22 |
| 3/20/2018 | Orion Danjuma - Lunch on March 20, 2018 | $18.16 |

| | |
|---|---|
| **Total** | $590.75 |
| **Emily** | $135.80 |
| **Total Minus Emily** | $454.95 |