## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al.,    )
      )
    Plaintiffs,    )
      )
v.    )    Case No. 16-2105-JAR-JPO
      )
KRIS KOBACH, in his official capacity as  )
Secretary of State for the State of Kansas, et )
al.,    )
      )
    Defendants.    )
_____ )

## DEFENDANT'S RESPONSE TO PLAINTIFFS' APPLICATION FOR
## ATTORNEY FEES ORDERED AS A SANCTION FOR CIVIL CONTEMPT

Pursuant to the Tenth Circuit's ruling on May 22, 2018 that this Court's civil contempt order dated May 7, 2018 (Doc. 529) was not a final appealable order, Defendant reserves his right to fully argue against both the finding of civil contempt, as well as any sanction the court ultimately orders once the sanction award becomes final. This response objects solely to the amount of fees that Plaintiffs' counsel claims, which are in excess of $50,000 for one motion. The fees are redundant, excessive, not representative of the local market rates and not detailed enough to substantiate them.  Additionally, a civil contempt compensatory sanction is limited to "actual costs" incurred by the plaintiffs themselves, and no evidence whatsoever was submitted as to plaintiffs' actual costs. *Allied Materials Corp. v. Superior Products Co.,* 620 F.2d 224, 227 (10th Cir.1980). For these and other reasons argued below, the Court should eliminate its sanction or, in the alternative, reduce it.

## I.    Attorney Fees Lodestar Analysis

Lodestar attorney fees are calculated pursuant to *Hensley v. Eckerhart,* 461 U.S. 424, (1983).  The lodestar is the "the number of hours reasonably expended on the litigation multiplied

by a reasonable hourly rate." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010). "Once the court has adequate time records before it, it must determine whether Plaintiff's counsel has exercised billing judgment with respect to the number of hours worked and billed." *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1261–62 (D. Kan. 2017). "Billing judgment consists of winnowing hours actually expended down to hours reasonably expended." *Id.* "Hours that an attorney would not bill to his or her client cannot reasonably be billed to the adverse party." *Id.* For example, billing for doing "background research" should not be included. *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). Billing time for more than one attorney to participate in a hearing when one would suffice requires a denial of that excess time as well. *Id.* In addition, hours that are "unnecessary, irrelevant and duplicative" should be reduced. *Id.* (citing *Carter v. Sedgwick Cty., Kan.*, 36 F.3d 952, 956 (10th Cir. 1994)).

    A.    Lack of Billing Judgment- Duplicative and Unnecessary Time

    Plaintiffs' submission includes unnecessary and duplicative time and should be stricken or reduced substantially. On March 20, six plaintiff attorneys billed 3 hours to attend the contempt hearing, including a Dechert attorney, Mr. Steiner, who billed 5 hours. In all, six attorneys billed 20 hours to attend the hearing, with hourly rates of $450-Steiner x 5, Liu- $350 x 3, Ho- $450 x 3, Bonney-$450 x 3, Lakin- $350 x 3 and Danjuma- $350 x 3 totaling $8,100 for one hearing. (Doc. 529 exhibits). This doesn't include "prep time," also billed by all six attorneys. Two attorneys should be allowed to bill for attendance at the hearing- Ho and Steiner, because they are the only two who spoke or played a role.

    In *QC Holdings Inc. v. Diedrich*, the court limited the time to the attorneys who actually participated in the hearing: "[t]he Tenth Circuit suggested that 'the presence of more than two

lawyers during trial or the presence of more than one lawyer at depositions and hearings must be justified to the court.'" *QC Holdings Inc. v. Diedrich*, 2003 WL 21518154, No. 2-2338-KHV (D. Kan. June 30, 2003) (citation omitted).  Duplicative and unnecessary time entries for more than two attorneys at the hearing should be stricken.

B.     Vague Time Entries Must Be Stricken

Other entries are deplete with duplicative time entries that lack any precise descriptions of the activities billed for including the following, all of which should be stricken for lack of reviewable detail:

Entries by Ho:

"Correspondence with defendants"  x 4—too vague and redundant

"Contempt fees brief"  x 3—vague and redundant

"Revise contempt motion" x 2 totaling 17.5 hours of "partner" time

These are too vague to award any fees.  *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (holding that "draft outline" was not enough detail to award fee).  Other attorneys suffer from the same defect:

Entries by Dechert firm:

"Draft letter to defendant" – no detail, no subject, and "drafting" and "editing" letters to Defendant took a Dechert attorney over 17 hours to prepare.  These various letters cover at least 6 separate issues, with only two actually disputed issues raised in the motion.  All such entries should be stricken for lack of detail.

"Drafted motion, edited motion, reviewed motion" – no detail—again, there were only TWO allegations at issue in the motion, yet it appears that Attorney Jayaraman spent over 30 hours drafting, editing and reviewing the motion.  (Doc. 529-4).  When compared to the entries of the

ACLU lawyers, the two firms were double-billing for the same review and drafting efforts.  For example, ACLU attorney Ho also spent 17.5 hours "revising" and "editing" the same motion. (Doc. 529-1).

The only time entries with acceptable detailed descriptions are Ms. Lakin and Mr. Bonney. But while their entries are better explained, those that predate the November 10th date for issues first raised must be stricken as irrelevant and unrelated to the motion.

C.      Lack of Billing Judgment - Too Many Hours for One Motion

Contrary to counsel's assertions, the hours submitted for preparing one motion are not only surprising, they are shocking – 133.5 hours spent on one motion.  Further, there is nothing complex about a motion to show cause that a party violated an express, written order, which is the standard for contempt ("this is not surprising given the complexity of this type of case." Doc. 424, p. 2). The reason it became complex was because Plaintiffs could not cite to a single signed order that was violated.  Consequently, they spent time "investigating" the issue as their voluminous time entries beginning seven months prior to filing their motion indicate (Doc. 529-1).  Tellingly, plaintiffs essentially admitted in their motion that there is not a signed order they can point to that the Defendant violated so they requested an amended order:

> To the extent that the Court finds that such relief is not covered by the PI Order and the Public Notice Order, Plaintiffs respectfully request that the Public Notice Order be amended to state explicitly that Defendant must: 1. Instruct local officials to send certificates of registration to covered voters; and 2. Update the County Election Manual immediately to make clear that, at this time, covered voters are exempt from the DPOC requirement. (Doc. 424, p.2).

As this Court recently found in *Rogers v. Bank of Am., N.A.*, No. CIV.A. 13-1333-CM, 2014 WL 6632944, at *4 (D. Kan. Nov. 21, 2014), "the Court cannot allow duplicative time for counsel to confer or for major revisions or re-writing of the motion or briefs."  *Id.*  In *Rogers*, the court excluded in its entirety the time spent "in conferences with other counsel and revisions to briefing"

due to concerns over duplicative, possibly unreasonable fees. *Id. Rogers v. Bank of Am., N.A.*, No. CIV.A. 13-1333-CM, 2014 WL 6632944, at *4 (D. Kan. Nov. 21, 2014). The same should be excluded here.

D.       Time Entries Contain Unnecessary and Irrelevant Entries

"The applicant should exercise 'billing judgment' with respect to hours worked, see *supra*, at 1939–1940, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983). The distinct claims associated with the motion to show cause include all of the various accusations lodged at Defendant over the course of the seven months leading up to the filing of a motion on January 8, 2018. That is because Plaintiffs' billable time entries go back to July 12, 2017 and cover numerous other issues beyond the only TWO issues ultimately raised in the contempt motion: the certificates of registration and the county employee manual.

A brief of review of when the various issues were raised follows. Time spent on anything other than the two issues raised in the motion should be stricken as irrelevant and unnecessary. The time entries billed for include all of the following issues, most of which were resolved long before the filing of the contempt motion:

1. July 17, 2017 Bonney Letter:

- Website notice contains extra phrase "subject to subsequent official notice"

- Delete reference to Nov. 2016 election in letters to covered registrants;

  (Doc. 424-4). The current language was exactly what the Court's order instructed. There was no modification by the Court for after the November 2016 election, so it remained in the letters until the meet and confer on December 7, 2017.

2. November 10, 2017 Ho Letter:

- Website notice contains extra phrase "subject to subsequent official notice"

- Delete reference to Nov. 2016 election in letters to covered registrants;

- Send certificates of registration;

- Discovery issue raised in deposition;

- List of voters due under KORA. (Doc. 424-7).

Notably, the only support for the request to send certificates of registration is the following:

> As a result of these court orders, eligible Kansans who have used the federal form or the motor-voter process to register to vote are, as duly registered voters, <u>entitled to receive</u> the certificate of registration sent to all other registered voters informing them of critical voting information regardless of whether they have submitted DPOC. We ask that you instruct all local elections authorities to send certificates of registration to all voters registered pursuant to these court orders immediately. (Doc. 424-7, p. 4).

The Court's orders direct Defendant to "register to vote those applicants whose only infirmity was not having the opportunity to produce DPOC…" (Doc. 129). Defendant registered all covered voters as directed. There is absolutely no evidence that anyone was not registered and no evidence that Defendant did not register all covered voters (those who did not provide DPOC). The allegation then, turned into that Defendant was "not treating them the same," which was not in a written order and was in fact requested as an amendment to the Court's orders in Plaintiffs' motion.

<u>3. November 30, 2017 Ho Letter:</u>

- Website notice contains extra phrase "subject to subsequent official notice";

- Delete reference to Nov. 2016 election in letters to covered registrants;

- Update employee manual on elections;

- Send certificates of registration;

- Discovery issue raised in deposition;

- KORA request for list of voters.

(Doc. 424-10).

<u>4. December 7 2017 Ho Email</u>:

Following the meet and confer on December 7, the only remaining allegations that Defendant was in violation of a court order were just TWO:

- Update employee manual on elections; (requested of Defendant just one week prior)

- Send certificates of registration. In support of the allegation that Defendant was violating an order to "treat covered voters as registered," Plaintiffs failed to produce a single person who was not registered to vote. Thus, Plaintiffs conflated their demands with the filed orders: "There is no reasonable justification for treating covered voters as second-class voters who do not receive the same documents and voting information that all other registered voters receive from the state."  Bear in mind, Plaintiffs' counsel crafted and approved all of the court-ordered communications sent to the covered voters. (Doc. 424-3).

<u>5.  January 8, 2018 Motion to Show Cause Why Defendant Should Not Be Found in Contempt of Court</u>:

After the meet and confer on December 7, Plaintiffs filed their motion alleging contempt for just TWO violations:

- Send certificates of registration (<u>first requested on November 10, 2017</u>)

- Update the employee manual on elections (<u>first requested on November 30, 2017</u>). (Doc. 423-424).

Significantly, the only two violation allegations in the contempt motion were first raised in November 2017- just weeks before the meet and confer.  As a result, <u>all time entries prior to</u>

November 10, 2017 must be stricken as they do not relate to the violations alleged in the contempt motion.

### E.      Submitted Rates Are Not Representative of the Local Market Rates

The general rule is that the "relevant market" for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed.  *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1261–62 (D. Kan. 2017).  If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims. *ACLU of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (finding district court where plaintiffs failed to carry their burden to show there were no attorneys in the area who were willing or able to handle the case).

Here, evidence of the market of Kansas City is found in the Kansas Bar Association 2017 Economic Survey, attached as Exhibit 1. The survey indicates that the median hourly rates for Plaintiffs' attorneys in the Kansas City market should be as follows based on their number of years in practice:

Steiner – 21 years= $259
Ho – 13 years = $240
Bonney- 33 years but now solo practice in mediation= $264 if still practicing
Liu-9 years-=$240
Lakin- 7 years= $212
Danjuma- 6 years= $212

Exhibit 1, p. 17.

A cursory glance at the rates of Kansas City MO found on page 16 of Exhibit 1 proves that the New York rates are well beyond those of the local market and should be reduced to the median because filing a basic motion to show cause based on just two issues does not require an attorney billing at the 95th percentile within the local market.  Further, while Plaintiffs claim they needed

the expertise of the New York attorneys, only two were identified as having actual experience with the NVRA- Steiner and Ho.  Thus, other attorneys time should be stricken as unnecessary. Additionally, the paralegal time is too high for Kansas City and should be reduced to the proper local rates for paralegals.  See Exhibit 1.

      F.     Limited Success

The most critical factor in awarding fees is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  Hours spent on unsuccessful claims or issues should be excluded in considering the amount of a reasonable fee.  *Id.*  Here, all of the time entries regarding issues either dropped or resolved prior as a result of the meet and confer must be stricken. Otherwise a meet and confer is meaningless.  Thus, entries for any issue other than 1) certificates of registration not being sent out, and 2) the county employee manual, should be stricken.  *Id.*

## II.    A Civil Contempt Sanction Can Only Be for Actual Costs Incurred

A compensatory fine for civil contempt must be based upon the complainant's actual loss. *Entech Sys., Inc. v. Bhaskar*, 72 F. Supp. 2d 1272, 1276 (D. Kan. 1999) (citing *Allied Materials Corp. v. Superior Products Co.,* 620 F.2d 224, 227 (10th Cir.1980)). The fees submitted are not paid by anyone; thus they are not actual costs.  The attorneys who submitted these fees do not bill their time and certainly do not bill at these rates.  Indeed it is well established that "[a]n attorney may not bill to opposing counsel for fees it would not be able to bill to its client." *Rogers v. Bank of Am., N.A.*, No. CIV.A. 13-1333-CM, 2014 WL 6632944, at *2 (D. Kan. Nov. 21, 2014).  Here, the clients include Steven Fish, Donna Bucci, Thomas Boynton, and Charles Stricker, none of whom are being billed $450 per hour or received an invoice for their share of $52,000.  Instead, these "fees" are considered costs to their employers in the form of the salaries each is paid.  At most, the rates should be the hourly rate actually paid the employees by their employer, otherwise

they are not actual costs incurred by anyone.  The printed invoice addressed to the League of Women Voters attached to Plaintiffs' motion is not sufficient evidence that the League is responsible for paying the $46,734.00 invoice supposedly ready to be sent to the Kansas non-profit community league.  See. Doc. 529-4.

## III.    Conclusion

In sum, the submitted time entries are vague, duplicative, unnecessary and not priced for the local market.  For all of these reasons, the Court should eliminate any monetary sanction, or in the alternative, award the actual costs incurred by the ACLU and Dechert which should be reasonably calculated by: 1) using local market rates; 2) striking entries appearing only after November 10, 2017, the date when the first of two issues in the contempt motion were raised; 3) striking double billing by attorneys for filing one straightforward motion; 4) striking vague entries; and 5) striking time for more than two attorneys to attend the contempt hearings.  Further, because the Plaintiffs failed to prove that ANY of their time was actually billed to the plaintiffs themselves and became "actual costs," no amount can be awarded as a sanction.

Dated: June 4, 2018                                  Respectfully submitted,

                                                                  /s/ *Sue Becker*
                                                                  Sue Becker, Kansas Bar No. 27806
                                                                  KANSAS SECRETARY OF STATE'S OFFICE
                                                                  120 S.W. 10th Ave.
                                                                  Topeka, KS 66612
                                                                  Telephone: (785) 296-4575
                                                                  Facsimile: (785) 368-8033
                                                                  Email: sue.becker@ks.gov

                                                                  *Attorneys for Defendant Kobach*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 4th day of June, 2018, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Sue Becker
Sue Becker
*Attorney for Defendant Kobach*

# EXHIBIT 1

# *A Flash Report on the 2017 Economics of Law Practice Survey in Kansas*

## Summary of Key Findings

**September, 2017**

**INTRODUCTION**

During the spring of 2017, The Kansas Bar Association surveyed the legal community on the economics of law practice considering similar studies undertaken in 2012, 2005 and 1997. The objectives of all studies were to derive and report the following:

- Demographics of practicing attorneys, including views on economic sentiment

- Attorney 2016 taxable income arrayed by practice class, gender, field of law, office location, full- vs. part-time status, years in practice and firm size

- Associate, legal assistant, and secretary 2017 annual compensation by years of experience (tenure) and office location

- Prevailing average 2017 hourly billing rates for attorneys arrayed by a variety of indicators, and for legal assistants by years of experience, firm size and office location

- Attorney time allocated to billable and non-billable professional activities in 2017

- Fixed expense and gross revenues per attorney and overhead rates associated with maintaining a private law practice by office location and firm size in 2016

## *Methods and Measures*

Results are based on two confidential survey instruments (questionnaires) e-mailed to approximately 10,000 active, in-state attorneys, regardless of KBA membership status.

The two targeted groups of attorneys are private practitioners (PPs) and non-private practitioners (NPPs). The data obtained from approximately 935 usable returned questionnaires were analyzed and this report produced by the Applied Statistics Laboratory of Ann Arbor, Michigan. Please contact Dr. Lawrence Stiffman at (734) 417-5151 or e-mail him at aslinfo@aol.com for assistance in interpreting findings. There is no charge for this service.

To help practitioners interpret the information provided in many exhibits in this report, here is a brief discussion of measures of central tendency (mean and median) and dispersion (spread).

## Measures of Central Tendency

The mean (also called the average or arithmetic average) is calculated by adding the values of all responses, then dividing by the number of responses.

*Example*: Three responses – 1, 2 and 3 – are reported. The average is calculated by adding their values (1 + 2 + 3 = 6), then dividing by the number of responses (3). Thus, the average is 6 ÷ 3 = 2.

The median is the middle value of a series (distribution) of values, which is initially rank- ordered (from low to high or *vice versa*). By definition, half the numbers are greater and half are less than the median. Both mean and median values are used throughout this survey report to denote the measure of central tendency. Use of the median as a statistic for central tendency reduces the effect of "outliers" (extremely high or low values, such as 30), while the average does not.

*Example*: Three responses – 1, 2 and 30 – are reported. The a*verage* of this same distribution is 33 divided by 3 = 11. The *median* is the middle number of the order of distribution (1, 2, and 30) or 2.

## Measures of Dispersion (Spread)

The dispersion of data around the median (the 50th percentile) generally is based on 3 values:

25th percentile (lower quartile) One-fourth of the values are less and three-fourths are more than this value

75th percentile (upper quartile) Three-fourths of the values are less and one-fourth is more than this value

95th percentile Ninety-five percent of the values are less and five percent are more than this value

## An Example

**Exhibit 1** summarizes distributions of 2016 taxable incomes of Kansas private practitioners by nine practice classes reported by 482 survey respondents (denoted by *Valid N*). By convention, this and many subsequent exhibits provide percentile information offering five data points – the 25th, 50th (Median), the mean, the 75th and 95th percentiles – on the variable of interest (taxable income in this case). For example, 25% of all associates report earning less than $54,000, half earn less than $66,500, while half earn more than $66,500 and 25% earn more than $85,000. Observe that the median values are less than the mean values due to the influence of high income outliers influencing mean (average) values.

EXHIBIT 1
DISTRIBUTION OF 2016 PRIVATE PRACTITIONER TAXABLE INCOME BY PRACTICE CLASSIFICATION, KANSAS

| Practice Classification | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Associate | 58 | $54,000 | $66,500 | $73,325 | $85,000 | $136,000 |
| Equity Partner/Shareholder | 114 | $115,000 | $179,500 | $237,653 | $275,000 | $600,000 |
| Managing Partner | 51 | $83,000 | $166,000 | $199,941 | $235,000 | $600,000 |
| Non-Equity Partner | 14 | $100,000 | $156,000 | $174,857 | $215,000 | $450,000 |
| Of Counsel | 20 | $62,000 | $90,500 | $100,681 | $137,500 | $225,000 |
| Senior Associate | 22 | $61,000 | $81,250 | $81,614 | $100,000 | $130,000 |
| Sole Practitioner sharing space | 22 | $60,000 | $80,000 | $135,682 | $157,000 | $300,000 |
| Sole Practitioner, with office outside of home | 123 | $60,000 | $100,000 | $155,075 | $140,000 | $400,000 |
| Sole Practitioner, working out of home office | 44 | $20,000 | $37,250 | $51,674 | $65,000 | $150,000 |
| **Total** | **482** | **$60,000** | **$100,000** | **$152,746** | **$175,000** | **$379,890** |

To denote the "gender gap" of reported attorney incomes, the term "gap" is used as a proportion calculated as the *median value of one group divided by another group*. For example, a reported income of $75,000 for a group of hypothetical female attorneys divided by $100,000 for a like group of male attorneys yields the proportion of .75. This could be interpreted in plain English as: *This group of females earns "75 cents on the dollar" compared with their male counterparts.*

This report should be considered and used in its entirety only in order to avoid misconstruing the meaning of individual exhibits. Personnel planning and decision-making include many factors not covered in surveys of this scope or nature. However, this report provides ranges of values that can help in developing sound and equitable hiring and compensation policies

# AN OVERVIEW OF KEY FINDINGS

## Demographics of Survey Respondents

The typical **private practitioner** is 49 years of age and the typical **non-private practitioner** is 47 years old. The average **male** attorney is 53 years of age while the average **female** attorney is 47 years of age. Females represent 33% of private practice respondents while representing 51% of all non-private practitioners. About 86% of private practitioners work full-time, compared with 95% of all non-private practitioners. Private practitioners have been in practice for 23 years and non-private practitioners, 20 years. See **Exhibits 2 and 3**.

**EXHIBIT 2**
**MEDIAN AND MEAN (AVERAGE) AGE OF KANSAS SURVEY RESPONDENTS BY GENDER   AND WORK-STATUS, 2017**

| Category | Private Practitioners | | | | Non- Private Practitioners | | | |
|---|---|---|---|---|---|---|---|---|
| | Valid N | % of Total | Median Age | Mean Age | Valid N | % of Total | Median Age | Mean Age |
| Female, working full-time (>31 hours/week) | 138 | 27.1% | 45 | 45 | 198 | 47.6% | 46 | 46 |
| Female, working part-time (<32 hours/week) | 29 | 5.7% | 58 | 57 | 13 | 3.1% | 53 | 54 |
| Male, working full-time (>31 hours/week) | 302 | 59.3% | 53 | 51 | 194 | 46.6% | 50 | 50 |
| Male, working part-time (<32 hours/week) | 40 | 7.9% | 69 | 65 | 10 | 2.4% | 55 | 55 |
| All Females | 167 | 32.8% | 46 | 47 | 211 | 50.8% | 46 | 45 |
| All Males | 342 | 67.2% | 55 | 53 | 204 | 49.2% | 50 | 50 |
| All Full-time Only | 440 | 86.44% | 49 | 49 | 392 | 94.5% | 48 | 47 |
| All Part-time Only | 69 | 13.56% | 65 | 62 | 23 | 5.5% | 54 | 54 |
| **All Attorneys** | **509** | **100%** | **51** | **51** | **415** | **100.0%** | **48** | **48** |

**EXHIBIT 3**

**MEDIAN AND MEAN (AVERAGE) YEARS IN PRACTICE OF KANSAS SURVEY RESPONDENTS** BY **GENDER AND WORK-STATUS, 2017**

| Category | Private Practitioners | | | | Non- Private Practitioners | | | |
|---|---|---|---|---|---|---|---|---|
| | Valid N | % of Total | Median | Mean | Valid N | % of Total | Median | Mean |
| Female, working full-time (>31 hours | 137 | 26.7% | 14 | 16 | 198 | 47.6% | 17 | 16 |
| Female, working part-time (<32 hour | 28 | 5.4% | 27 | 24 | 13 | 3.1% | 25 | 28 |
| Male, working full-time (>31 hours/w | 301 | 58.6% | 25 | 24 | 194 | 46.6% | 22 | 22 |
| Male, working part-time (<32 hours/ | 40 | 7.8% | 41 | 37 | 10 | 2.4% | 29 | 31 |
| | | | | | | | | |
| All Females | 165 | 32.6% | 17 | 17 | 211 | 50.8% | 18 | 16 |
| All Males | 341 | 67.4% | 27 | 26 | 204 | 49.2% | 22 | 22 |
| | | | | | | | | |
| All Full-time Only | 438 | 86.6% | 22 | 22 | 392 | 94.5% | 20 | 19 |
| All Part-time Only | 68 | 13.4% | 34 | 34 | 23 | 5.5% | 27 | 26 |
| **All Attorneys** | **506** | **100.0%** | **23** | **23** | **415** | **100.0%** | **20** | **19** |

**Exhibits 4 and 5** distribute survey respondents by firm size groups, measured by number of attorneys. Half of all respondents work as solos or in two-person firms. About 32% of private practitioners and 38% of non-private practitioners work in organizations with 6 or more attorneys.

**Exhibit 4**



Distribution of Responses by Firm Size,
Private Practitioners, Kansas, 2017

>25 11%
1 38%
10 to 25 14%
6 to 9 7%
3 to 5 16%
2 14%

**Exhibit 5**



Distribution of Responses by Firm Size,
Non-Private Practitioners, Kansas, 2017

26 or > 8%
10 to 25 15%
1 21%
2 17%
6 to 9 15%
3 to 5 24%

**Summary of Changes between 2017/2016 and the 2004/2005  Reporting  Periods**

The 2017 survey replicates many questions addressed in previous surveys, facilitating analyses of change over time. Reporting periods are represented by two intervals: 2004/2005 to 2011/2012 and 2011/2012 to 2016/2017. Different attorneys responded to the questionnaires for each of the time periods. **Exhibit 6** summarizes changes over time.

### Demographics

The attorney population aged slightly between reporting periods, reflected by both age and years-in-practice statistics. More attorneys, primarily males, are delaying retirement even though more young attorneys are entering the field. The proportion of the Bar that is female slowed to 3% during the second period compared with a 10% in the first period.

### Hours, Income and Billing Rates

Both total and billable reported hours worked per week decreased during the initial reporting periods, with no change in billable hours /week in the second period. Total hours did increase slightly (4.3%).

Initially, Incomes increased because of an increase in hourly billing rates, not time billed. Considering the first period, for both attorney net income (up 4% per annum) and average hourly billing rates (up 5% per annum), annual percent increases were slightly higher than inflation. In the second period, income dropped considerable to (0.6% per annum) and billing rates to 3% per annum. Associate and legal assistant billing rate increases also ranged from 3.3% to 5% per annum, depending on tenure in the first period and all dropped in the second period, reflecting less pricing power.

### Revenues and Expenses

Overhead basically remained constant, With respect to labor expenditures, even as associate, legal assistant and secretary unit labor costs decreased. Prices reflect relative scarcity as both skilled and unskilled support staff are becoming more mobile and can participate in more than one service sector (legal services, financial services, accounting, consulting, etc.) Other fixed expenses dropped in the second period.

**EXHIBIT 6**

**CHANGES IN ECONOMIC INDICATORS, KANSAS PRIVATE PRACTITIONERS, 1996- 2017**

| | 2016/17 | 2011/12 | 2004/5 | % Change 2004-2011 | Annual % chg. 2004-2011 | % Change 2011-2016 | Annual % chg. 2011-2016 |
|---|---|---|---|---|---|---|---|
| **Respondent Demographics** | | | | | | | |
| Age | 52 | 49 | 48 | 2.1% | 0.3% | 6% | 1% |
| Years in Practice | 23 | 20 | 18 | 11.1% | 1.6% | 15% | 3% |
| % Female | 33 | 32 | 29 | 10.3% | 1.5% | 3% | 1% |
| Attorney Net Income | $100,000 | $90,000 | $84,000 | 7.1% | 1.0% | 11% | 2% |
| **Hours Worked** | | | | | | | |
| Billable Hours | 35 | 35 | 35 | 0.0% | 0.0% | 0% | 0% |
| Toital Hours | 47 | 48 | 46 | 4.3% | 0.6% | -2% | 0% |
| CLE Hours/Year | 15 | 15 | 15 | 0.0% | 0.0% | 0% | 0% |
| Pro Bono Hours/Year | 20 | 30 | 40 | -25.0% | -3.6% | -33% | -7% |
| | | | | | | | 0% |
| **Hourly Billing Rate** | $225 | $200 | $150 | 33.3% | 4.8% | 13% | 3% |
| | | | | | | | |
| **Fixed Expenses & Gross Revenews/attorney** | | | | | | | |
| Labor Costs | $50,000 | $44,500 | $30,000 | 48.3% | 6.9% | 12% | 2% |
| Occupancy Costs | $13,150 | $11,000 | $11,000 | 0.0% | | 20% | 4% |
| Other Fixed Costs | $15,000 | $14,000 | $20,000 | -30.0% | -4.3% | 7% | 1% |
| Total Expenses | $63,500 | $60,000 | $59,250 | 1.3% | 0.2% | 6% | 1% |
| Gross Revenues | $190,000 | $180,000 | $150,000 | 20.0% | 2.9% | 6% | 1% |
| Overhead Rate ( in %) | 40% | 40% | 40% | 0.0% | | 0% | 0% |
| | | | | | | | |
| **Private Firm Annual Salaries** | | | | | | | |
| Associates, no Exp | $56,000 | $55,500 | $45,000 | 23.3% | 3.3% | 1% | 1% |
| Associates, 3 yrs | $70,000 | $68,000 | $55,000 | 23.6% | 3.4% | 3% | 0% |
| Associates, 5 yrs | $76,000 | $75,000 | $65,000 | 15.4% | 2.2% | 1% | -3% |
| Associates, 10 yrs | $85,000 | $97,500 | $78,500 | 24.2% | 3.5% | -13% | 1% |
| Legal Assistants,  no exp | $30,000 | $28,500 | $25,000 | 14.0% | 2.0% | 5% | 2% |
| Legal Assistants, 3 yrs | $35,000 | $32,250 | $32,000 | 0.8% | 0.1% | 9% | 3% |
| Legal Assistants, 5 yrs | $40,000 | $35,000 | $35,000 | 0.0% | 0.0% | 14% | 2% |
| Legal Assistants, 10 yrs | $48,000 | $43,000 | $40,000 | 7.5% | 1.1% | 12% | 3% |
| Secretaries, no Exp | $25,000 | $22,000 | $21,000 | 4.8% | 0.7% | 14% | 3% |
| Secretaries, 3 yrs | $30,000 | $26,000 | $25,000 | 4.0% | 0.6% | 15% | 3% |
| Secretaries, 5 yrs | $35,000 | $30,000 | $28,800 | 4.2% | 0.6% | 17% | 3% |
| Secretaries,10 yrs | $40,000 | $35,000 | $30,000 | 16.7% | 2.4% | 14% | 0% |
| | | | | | | | |
| **Assoc. & LA Billing Rates** | | | | | | | |
| Associates, no Exp | $160 | $150 | $125 | 20.0% | 2.9% | 7% | 1% |
| Associates, 3 yrs | $180 | $175 | $150 | 16.7% | 2.4% | 3% | 1% |
| Associates, 5 yrs | $200 | $180 | $165 | 9.1% | 1.3% | 11% | 2% |
| Associates, 10 yrs | $200 | $200 | $160 | 25.0% | 3.6% | 0% | 0% |
| Legal Assistants, no exp | $75 | $75 | $55 | 36.4% | 5.2% | 0% | 0% |
| Legal Assistants, 3 yrs | $85 | $75 | $65 | 15.4% | 2.2% | 13% | 3% |
| Legal Assistants, 5 yrs | $90 | $85 | $65 | 30.8% | 4.4% | 6% | 1% |
| Legal Assistants, 10 yrs | $90 | $85 | $75 | 13.3% | 1.9% | 6% | 1% |

# 2016 Taxable Income of Kansas Attorneys

While many factors affect attorney income, clues to explain variation at a given point in time can be derived from combinations of these seven factors addressed in the survey and summarized in this section of the report:

- Practice classification (class)
- Field of law
- Years in practice
- Gender

- Firm size (number of attorneys in firm/organization)
- Office location
- Work status (full-time vs. part-time)

Selected factors are summarized below. See full report for remaining displays.

**EXHIBIT 7**
**DISTRIBUTION OF 2016 TAXABLE INCOME, FULL-TIME KANSAS PRIVATE PRACTITIONERS**

|  | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Associate | 57 | $55,000 | $67,000 | $73,874 | $85,000 | $136,000 |
| Equity Partner/Shareholder | 110 | $120,000 | $185,000 | $241,841 | $290,000 | $600,000 |
| Managing Partner | 47 | $83,000 | $165,000 | $197,297 | $235,000 | $600,000 |
| Non-Equity Partner | 11 | $100,000 | $180,000 | $191,182 | $270,000 | $450,000 |
| Of Counsel | 13 | $75,000 | $130,000 | $125,231 | $162,000 | $250,000 |
| Senior Associate | 19 | $66,000 | $82,500 | $83,921 | $100,000 | $160,000 |
| Sole Practitioner sharing space | 19 | $60,000 | $80,000 | $150,158 | $165,000 | $900,000 |
| Sole Practitioner, with office outside of home | 103 | $65,000 | $105,000 | $166,604 | $150,000 | $400,000 |
| Sole Practitioner, working out of home office | 17 | $38,000 | $54,000 | $65,647 | $75,000 | $210,000 |
| **Total** | **396** | **$68,375** | **$110,000** | **$166,599** | **$185,000** | **$400,000** |

**Exhibit 8**
**DISTRIBUTION OF 2016 TAXABLE INCOME, FULL-TIME KANSAS NON-PRIVATE PRACTITIONERS**

|  | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| In-House  Counsel (For-profit organizaiton) | 117 | $88,000 | $145,000 | $160,494 | $200,000 | $338,000 |
| Corporate Counsel ( Not for profit org.) | 24 | $58,500 | $90,500 | $123,570 | $158,000 | $300,000 |
| City/County Agency | 56 | $60,000 | $70,000 | $80,895 | $92,500 | $147,000 |
| State Agency | 58 | $60,000 | $68,000 | $71,468 | $80,000 | $120,000 |
| Federal Agency | 35 | $100,000 | $125,000 | $124,081 | $155,000 | $187,000 |
| Legal Services Agency | 13 | $45,000 | $47,500 | $63,731 | $60,000 | $155,000 |
| Court System | 22 | $65,000 | $88,500 | $92,818 | $120,000 | $136,000 |
| Not in Practice, but Working | 11 | $0 | $5,000 | $37,273 | $80,000 | $125,000 |
| Law Clerk | 16 | $53,000 | $79,234 | $83,529 | $105,000 | $150,000 |
| **Total** | **352** | **$62,000** | **$87,300** | **$110,263** | **$136,000** | **$240,285** |

## Taxable Income by Field of Law

**EXHIBIT 9**
## DISTRIBUTION OF 2016 PRIVATE PRACTITIONER TAXABLE INCOME BY PRIMARY FIELD OF LAW, RANKED BY FREQUENCY

| Primary Field of Law | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Family Law | 72 | $60,000 | $90,000 | $105,283 | $130,000 | $275,000 |
| Wills, Estates and Probate | 57 | $50,000 | $100,000 | $176,888 | $160,000 | $350,000 |
| Personal Injury (Plaintiff) | 29 | $100,000 | $175,000 | $312,583 | $445,000 | $997,654 |
| Corporate/Business Law | 28 | $68,375 | $117,500 | $189,920 | $172,000 | $350,000 |
| General Practice | 27 | $49,000 | $62,000 | $77,737 | $82,000 | $200,000 |
| Criminal (Private Defendant) | 23 | $55,000 | $85,000 | $106,000 | $150,000 | $250,000 |
| Other Trial Practice (Gen./Civil) | 22 | $100,000 | $168,500 | $219,545 | $250,000 | $500,000 |
| Other Trial Practice (Commercial) | 19 | $100,000 | $168,000 | $177,526 | $250,000 | $370,000 |
| Criminal (Public Defendant) | 16 | $43,500 | $65,000 | $62,813 | $70,000 | $130,000 |
| Labor & emp. (Management) | 15 | $95,000 | $119,000 | $146,600 | $225,000 | $315,000 |
| Real Estate | 14 | $80,000 | $120,000 | $138,893 | $150,000 | $375,000 |
| Elder Law | 13 | $54,000 | $75,000 | $103,817 | $165,000 | $250,000 |
| Collections, Creditor | 12 | $53,500 | $71,000 | $111,750 | $126,500 | $408,000 |
| Taxation | 11 | $60,000 | $100,000 | $133,205 | $160,000 | $480,000 |
| Personal Injury (Defendant) | 10 | $80,000 | $90,000 | $96,025 | $100,000 | $180,000 |
| Bankruptcy, Debtor | 8 | $34,000 | $66,000 | $74,375 | $92,500 | $180,000 |
| Intellectual Property/Trade Secrets | 7 | $80,000 | $140,000 | $158,571 | $215,000 | $308,000 |
| Workers' Compensation, Employer | 7 | $91,000 | $190,000 | $171,571 | $225,000 | $300,000 |
| Governmental Law | 6 | $100,000 | $160,000 | $162,500 | $190,000 | $325,000 |
| Immigration | 6 | $30,000 | $100,000 | $136,500 | $170,000 | $395,000 |
| Labor & emp. (Labor) | 6 | $70,000 | $207,500 | $299,167 | $600,000 | $700,000 |
| Oil and Gas | 6 | $35,000 | $113,000 | $158,500 | $275,000 | $400,000 |
| Alternative Dispute Resolution | 5 | $30,000 | $75,000 | $130,375 | $250,000 | $284,875 |
| Health and Hospital Law | 5 | $68,000 | $120,000 | $148,200 | $160,000 | $340,000 |
| Insurance | 5 | $100,000 | $110,000 | $174,000 | $300,000 | $300,000 |
| Workers' Compensation, Employee | 5 | $100,000 | $185,000 | $182,000 | $240,000 | $300,000 |
| Construction Law | 4 | $204,000 | $294,000 | $376,750 | $549,500 | $744,000 |
| Consumer Law | 4 | $69,000 | $131,411 | $152,205 | $235,411 | $323,000 |
| Criminal (Prosecution) | 4 | $28,000 | $55,000 | $45,250 | $62,500 | $65,000 |
| Medical Malpractice (Defendant) | 4 | $93,500 | $205,000 | $271,750 | $450,000 | $600,000 |
| **Total** | **450** | **$60,000** | **$100,000** | **$152,746** | **$175,000** | **$379,890** |

| | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| | | | **Consolidated Private Practitioners** | | | |
| Sole Practitioners | 190 | $43,000 | $76,500 | $128,068 | $130,000 | $325,000 |
| Associates | 81 | $55,000 | $70,000 | $76,831 | $93,000 | $136,000 |
| Partners | 198 | $100,000 | $168,000 | $209,980 | $250,000 | $500,000 |
| **Total** | **469** | **$60,000** | **$100,000** | **$153,800** | **$175,000** | **$395,000** |

**EXHIBIT 10**
**DISTRIBUTION OF 2016 NON-PRIVATE PRACTITIONER TAXABLE INCOME BY PRIMARY FIELD OF LAW, RANKED BY FREQUENCY**

| | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Governmental Law | 53 | $63,000 | $80,000 | $90,088 | $114,000 | $174,000 |
| Corporate/Business Law | 48 | $80,000 | $118,500 | $146,526 | $198,000 | $325,000 |
| Criminal (Prosecution) | 37 | $56,000 | $65,000 | $75,502 | $88,000 | $150,000 |
| Unspecified | 35 | $52,000 | $115,000 | $110,886 | $150,000 | $300,000 |
| Administrative Law | 33 | $57,200 | $67,000 | $93,837 | $102,000 | $240,000 |
| Insurance | 24 | $75,000 | $121,500 | $125,348 | $182,500 | $225,000 |
| Appellate Law | 15 | $52,000 | $60,000 | $70,439 | $80,000 | $137,123 |
| Family Law | 15 | $43,000 | $50,000 | $53,846 | $65,000 | $92,000 |
| Labor & emp. (Management) | 13 | $80,000 | $125,000 | $114,997 | $137,000 | $200,000 |
| General Practice | 12 | $66,734 | $135,500 | $172,539 | $188,000 | $700,000 |
| Taxation | 11 | $70,000 | $120,000 | $108,364 | $150,000 | $200,000 |
| Criminal (Public Defendant) | 10 | $54,000 | $64,000 | $68,200 | $80,000 | $110,000 |
| Real Estate | 10 | $125,000 | $181,500 | $197,600 | $300,000 | $338,000 |
| Health and Hospital Law | 9 | $70,000 | $158,153 | $175,461 | $230,000 | $530,000 |
| Collections, Creditor | 6 | $61,000 | $68,500 | $68,167 | $75,000 | $75,000 |
| Civil Rights | 5 | $87,000 | $90,000 | $95,100 | $106,000 | $110,000 |
| Other Civil Law | 5 | $56,000 | $60,000 | $65,600 | $100,000 | $112,000 |
| Other Trial Practice (Gen./Civil) | 5 | $80,000 | $85,000 | $74,200 | $100,000 | $106,000 |
| Construction Law | 4 | $100,000 | $147,500 | $137,500 | $175,000 | $180,000 |
| Oil & Gas | 4 | $75,000 | $120,000 | $147,000 | $219,000 | $288,000 |
| Securities | 4 | $32,500 | $147,500 | $136,250 | $240,000 | $250,000 |
| Wills, Estates and Probate | 4 | $67,000 | $78,500 | $80,116 | $93,233 | $103,465 |
| **Total** | **362** | **$60,000** | **$85,000** | **$108,220** | **$135,000** | **$250,000** |

**Consolidated Groups of Non-Private P:ractitioners**

| | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| City/County Agency | 59 | $60,000 | $69,000 | $78,709 | $92,000 | $147,000 |
| State Agency | 61 | $59,000 | $67,000 | $69,560 | $80,000 | $116,000 |
| Federal Agency | 35 | $100,000 | $125,000 | $124,081 | $155,000 | $187,000 |
| In-house Counsel | 143 | $78,000 | $128,000 | $153,080 | $200,000 | $325,000 |
| Legal Services Agency | 13 | $45,000 | $47,500 | $63,731 | $60,000 | $155,000 |
| Law Clerk | 17 | $52,000 | $73,468 | $81,557 | $100,000 | $150,000 |
| Court System | 22 | $65,000 | $88,500 | $92,818 | $120,000 | $136,000 |
| Other, unemployed, retired | 22 | $0 | $12,500 | $54,364 | $80,000 | $160,000 |
| **Total** | **372** | **$60,000** | **$85,500** | **$109,068** | **$135,500** | **$250,000** |

## Taxable Income by Office Location

**Exhibits 11** and **12** display 2016 taxable income of Kansas private and non-private practitioners by office location.

EXHIBIT 11
**DISTRIBUTION OF 2016 PRIVATE PRACTITIONER TAXABLE INCOME BY OFFICE LOCATION**

| Office Location | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Central & North Central, KS | 32 | $42,500 | $70,000 | $95,375 | $120,000 | $350,000 |
| Kansas City, KS | 124 | $69,000 | $112,500 | $168,191 | $158,500 | $375,000 |
| Kansas City, MO | 74 | $80,000 | $150,000 | $199,699 | $250,000 | $600,000 |
| Lawrence/Douglas County | 22 | $60,000 | $120,000 | $128,557 | $190,000 | $260,000 |
| Northeast KS | 16 | $47,500 | $79,000 | $93,500 | $135,000 | $200,000 |
| Out of state licensed in KS | 30 | $50,000 | $76,500 | $196,667 | $162,000 | $900,000 |
| Southcentral KS | 26 | $40,000 | $67,500 | $100,899 | $175,000 | $240,000 |
| Southeast KS | 15 | $72,000 | $85,000 | $136,667 | $175,000 | $400,000 |
| Topeka/Shawnee County | 50 | $61,000 | $97,500 | $149,343 | $130,000 | $450,000 |
| West KS | 14 | $54,000 | $70,000 | $102,429 | $125,000 | $275,000 |
| Wichita/Sedgwick County | 78 | $65,000 | $100,000 | $142,045 | $190,000 | $350,000 |
| **Total** | **482** | **$60,000** | **$100,000** | **$152,746** | **$175,000** | **$379,890** |

EXHIBIT 12
**Distribution of 2016 Non-Private Practitioner Taxable Income by Office Location**

| Office Location | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Central KS | 28 | $66,000 | $80,000 | $92,956 | $113,888 | $144,000 |
| Kansas City, KS | 63 | $72,000 | $115,000 | $122,585 | $172,000 | $240,285 |
| Kansas City, Mo | 36 | $67,714 | $118,432 | $127,958 | $169,000 | $288,000 |
| Lawrence/Douglas County | 11 | $56,000 | $80,000 | $86,574 | $120,000 | $210,000 |
| Northeast KS | 19 | $55,000 | $76,000 | $89,474 | $120,000 | $185,000 |
| Out of state licensed in Kansas | 43 | $75,000 | $120,000 | $124,702 | $187,000 | $300,000 |
| Southeast KS | 7 | $26,000 | $62,000 | $80,269 | $64,500 | $275,000 |
| Topeka/Shawnee County | 108 | $58,450 | $71,000 | $84,923 | $94,500 | $175,000 |
| West KS | 6 | $55,000 | $60,000 | $61,833 | $61,000 | $90,000 |
| Wichita/Sedgwick County | 63 | $60,000 | $92,000 | $132,500 | $150,000 | $450,000 |
| **Total** | **387** | **$60,000** | **$85,000** | **$108,220** | **$135,000** | **$250,000** |

## Gender Variations in 2016 Taxable Income

When considering the practice classification of the survey respondents, median income for Male attorney incomes exceed female attorney income. Gaps are narrow for associates (Exhibit 13) and among local and state government workers and the judiciary (Exhibit 14).

**EXHIBIT 13**



**EXHIBIT 14**



**FULL-TIME PRACTITIONERS BY YEARS IN PRACTICE**

EXHIBIT 15



EXHIBIT 16



As shown on **Exhibit 17**, the 2016 median net income for female private practitioners ($75,000) is 63% of the 2016 median net income for male attorneys ($120,000). **Exhibit 18** reflects the "gap" for full-time private practitioners (65% or $130,000 for males versus $85,000 for females).

**EXHIBIT 17**

**2016 MEDIAN TAXABLE INCOME BY YEARS IN PRACTICE AND GENDER AND RESULTANT "GENDER GAP", KANSAS PRIVATE PRACTITIONERS**

| Years in Practice | Valid N | Female | Valid N | Male | Gap |
|---|---|---|---|---|---|
| <6 | 28 | $67,000 | 38 | $62,500 | 1.07 |
| 6 to 9 | 18 | $89,500 | 25 | $85,000 | 1.05 |
| 10 to 14 | 22 | $67,500 | 26 | $127,500 | 0.53 |
| 15 to 19 | 15 | $101,000 | 24 | $150,000 | 0.67 |
| 20 to 29 | 40 | $94,100 | 66 | $195,000 | 0.48 |
| 30 to 39 | 23 | $54,000 | 77 | $150,000 | 0.36 |
| **Total** | **149** | **$75,000** | **320** | **$120,000** | **0.63** |

**EXHIBIT 18**
**2016 MEDIAN TAXABLE INCOME BY YEARS IN PRACTICE AND GENDER AND RESULTANT "GENDER GAP", KANSAS FULL-TIME PRIVATE PRACTITIONERS**

| Years in Practice | Valid N | Female | Valid N | Male | Gap |
|---|---|---|---|---|---|
| <6 | 27 | $68,000 | 36 | $65,000 | 1.05 |
| 6 to 9 | 17 | $90,000 | 24 | $87,500 | 1.03 |
| 10 to 14 | 18 | $80,000 | 25 | $125,000 | 0.64 |
| 15 to 19 | 13 | $119,000 | 24 | $150,000 | 0.79 |
| 20 to 29 | 33 | $120,000 | 57 | $200,000 | 0.60 |
| 30 to 39 | 16 | $87,500 | 72 | $150,000 | 0.58 |
| **Total** | **124** | **$85,000** | **280** | **$130,000** | **0.65** |

As shown on **Exhibit 19**, the 2016 median net income for female non-private practitioners ($73,468) is 67% of the 2016 median net income for male non-private ($109,000). **Exhibit 20** reflects the "gap" for full-time non-private practitioners (69% or $108,000 for males versus $75,000 for females).

**EXHIBIT 19**
**2016 MEDIAN TAXABLE INCOME BY YEARS IN PRACTICE GROUP AND GENDER AND RESULTANT "GENDER GAP", KANSAS NON-PRIVATE PRACTITIONERS**

| Years in Practice | Valid N | Female | Valid N | Male | Gap |
|---|---|---|---|---|---|
| <6 | 34 | $53,500 | 30 | $60,000 | 0.89 |
| 6 to 9 | 20 | $66,500 | 15 | $125,000 | 0.53 |
| 10 to 14 | 32 | $75,500 | 19 | $125,000 | 0.60 |
| 15 to 19 | 25 | $73,468 | 21 | $105,000 | 0.70 |
| 20 to 29 | 47 | $85,000 | 39 | $125,000 | 0.68 |
| 30 to 39 | 30 | $99,000 | 44 | $114,500 | 0.86 |
| **Total** | **191** | **$73,468** | **192** | **$109,000** | **0.67** |

**EXHIBIT 20**
**2016 MEDIAN TAXABLE INCOME BY YEARS IN PRACTICE GROUP AND GENDER AND RESULTANT "GENDER GAP", KANSAS FULL-TIME NON-PRIVATE PRACTITIONERS**

| Years in Practice | Valid N | Female | Valid N | Male | Gap |
|---|---|---|---|---|---|
| <6 | 33 | $54,000 | 29 | $60,000 | 0.90 |
| 6 to 9 | 20 | $66,500 | 15 | $125,000 | 0.53 |
| 10 to 14 | 31 | $76,000 | 17 | $130,000 | 0.58 |
| 15 to 19 | 22 | $75,000 | 21 | $105,000 | 0.71 |
| 20 to 29 | 45 | $87,600 | 38 | $130,568 | 0.67 |
| 30 to 39 | 27 | $100,000 | 43 | $116,000 | 0.86 |
| **Total** | **179** | **$75,000** | **184** | **$108,000** | **0.69** |

# 2017 Law Firm Hours Worked and Billing Rates

## Hours worked in Average Work Week

Attorneys in private practice report a varied workweek as to billable hours and other activities comprising their professional time. **Exhibit 21** shows the range of time spent on nine activities.

**EXHIBIT 21**
**DISTRIBUTION OF HOURS IN AVERAGE WORKWEEK & CLE AND PRO BONO WORK (ESTIMATED) IN YEAR, PRIVATE PRACTITIONERS, 2017**

| Hours in Average Workweek and Workyear | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Hours Based on Hourly Rate | 441 | 15 | 25 | 24 | 35 | 45 |
| Hours Based on Flat Rates | 257 | 5 | 10 | 13 | 20 | 40 |
| Hours Based on Contingent Fees | 184 | 5 | 10 | 17 | 30 | 49 |
| **Total Compensable Hours** | **438** | **25** | **35** | **34** | **40** | **55** |
|  |  |  |  |  |  |  |
| Office Administration | 426 | 3 | 5 | 6 | 10 | 15 |
| Marketing | 259 | 1 | 2 | 3 | 5 | 10 |
| Unbilled Public Service | 334 | 2 | 4 | 5 | 5 | 10 |
| Non-legal Employment | 71 | 2 | 5 | 8 | 10 | 25 |
| **Total Hours** | **465** | **40** | **47** | **46** | **55** | **69** |
|  |  |  |  |  |  |  |
| Pro Bono Hours per Year | 450 | 5 | 20 | 40 | 40 | 150 |
| CLE Hours per Year | 458 | 14 | 15 | 19 | 20 | 40 |

## 2017 Attorney Hourly Billing Rates

The reported 2017 median hourly billing rate is $225. The mean or average rate is $244. While several interacting factors affect the setting of hourly billing rates, **Exhibit 22** considers office location. **Exhibit 23** includes three discrete factors: respondents' firm size, years in practice, and practice category, while **Exhibit 24** identifies respondents' primary field of law.

EXHIBIT 22

### DISTRIBUTION OF 2017 HOURLY BILLING RATES BY OFFICE LOCATION, KANSAS

|  | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Kansas City, KS | 126 | $200 | $250 | $261 | $300 | $425 |
| Wichita/Sedgwick County | 79 | $190 | $250 | $240 | $295 | $360 |
| Kansas City, MO | 73 | $200 | $265 | $291 | $350 | $500 |
| Topeka/Shawnee County | 47 | $200 | $225 | $236 | $250 | $500 |
| Central & North Central, KS | 34 | $150 | $183 | $195 | $250 | $350 |
| Out of state licensed in KS | 30 | $200 | $255 | $282 | $365 | $475 |
| Southcentral KS | 29 | $135 | $185 | $176 | $225 | $250 |
| Lawrence/Douglas County | 25 | $200 | $225 | $232 | $280 | $305 |
| West KS | 16 | $150 | $200 | $212 | $250 | $550 |
| Northeast KS | 15 | $175 | $200 | $187 | $220 | $260 |
| Southeast KS | 14 | $150 | $193 | $186 | $250 | $300 |
| **Total** | **489** | **$190** | **$225** | **$244** | **$290** | **$445** |

**EXHIBIT 23**
**DISTRIBUTION OF 2017 HOURLY BILLING RATES BY SIZE OF FIRM, YEARS IN PRACTICE, AND PRACTICE CLASSIFICATION, KANSAS**

| | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| 1 | 179 | $150 | $200 | $209 | $250 | $350 |
| 2 to 5 | 146 | $195 | $225 | $257 | $275 | $500 |
| 6 to 14 | 69 | $175 | $240 | $237 | $280 | $350 |
| 15 or more | 88 | $228 | $288 | $296 | $350 | $475 |
| **Total** | **482** | **$185** | **$225** | **$243** | **$285** | **$445** |

| Years in Practice | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| <6 | 64 | $150 | $198 | $192 | $240 | $275 |
| 6 to 9 | 40 | $175 | $200 | $212 | $250 | $345 |
| 10 to 14 | 52 | $190 | $225 | $240 | $275 | $400 |
| 15 to 19 | 42 | $200 | $250 | $247 | $300 | $380 |
| 20 to 29 | 112 | $200 | $250 | $259 | $300 | $475 |
| 30 to 39 | 105 | $200 | $250 | $264 | $300 | $500 |
| 40 or > | 69 | $200 | $250 | $259 | $300 | $500 |
| **Total** | **484** | **$188** | **$225** | **$244** | **$293** | **$445** |

| Practice Class | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Associate | 58 | $150 | $198 | $201 | $225 | $300 |
| Equity Partner/Shareholder | 117 | $215 | $260 | $289 | $325 | $500 |
| Managing Partner | 54 | $200 | $250 | $269 | $300 | $500 |
| Non-Equity Partner | 13 | $250 | $300 | $295 | $310 | $475 |
| Of Counsel | 23 | $240 | $270 | $284 | $325 | $450 |
| Senior Associate | 21 | $200 | $220 | $239 | $260 | $365 |
| Sole Practitioner sharing space | 22 | $175 | $200 | $217 | $250 | $500 |
| Sole Practitioner, outside of home | 124 | $175 | $205 | $218 | $250 | $350 |
| Sole Practitioner, working at home | 47 | $150 | $200 | $196 | $250 | $400 |
| **Total** | **489** | **$190** | **$225** | **$244** | **$290** | **$445** |

| Consolidated Practice Class | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Sole Practitioners | 194 | $175 | $200 | $212 | $250 | $400 |
| Associates | 80 | $160 | $200 | $213 | $250 | $358 |
| Partners | 206 | $215 | $260 | $283 | $315 | $475 |
| **Total** | **480** | **$185** | **$225** | **$243** | **$285** | **$448** |

**Exhibit 24**
**DISTRIBUTION OF 2017 HOURLY BILLING RATES BY PRIMARY FIELD OF LAW, KANSAS**

| Primary Field of Law | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Family Law | 79 | $185 | $200 | $220 | $250 | $350 |
| Wills, Estates and Probate | 56 | $195 | $228 | $233 | $263 | $345 |
| Corporate/Business Law | 31 | $215 | $250 | $267 | $300 | $475 |
| General Practice | 29 | $175 | $200 | $208 | $250 | $300 |
| Personal Injury (Plaintiff) | 27 | $200 | $300 | $368 | $500 | $650 |
| Criminal (Private Defendant) | 25 | $200 | $250 | $239 | $275 | $325 |
| Other Trial Practice (Gen./Civ | 25 | $250 | $285 | $297 | $395 | $450 |
| Other Trial Practice (Commer | 19 | $250 | $295 | $327 | $400 | $550 |
| Criminal (Public Defendant) | 17 | $70 | $70 | $81 | $77 | $200 |
| Labor & emp. (Management) | 15 | $215 | $250 | $250 | $295 | $375 |
| Real Estate | 14 | $230 | $250 | $240 | $250 | $300 |
| Elder Law | 13 | $200 | $225 | $236 | $300 | $400 |
| Personal Injury (Defendant) | 11 | $150 | $175 | $180 | $195 | $310 |
| Taxation | 11 | $225 | $290 | $298 | $365 | $450 |
| Bankruptcy, Debtor | 9 | $200 | $225 | $237 | $300 | $310 |
| Collections, Creditor | 9 | $150 | $200 | $178 | $200 | $250 |
| Oil and Gas | 7 | $190 | $250 | $253 | $300 | $360 |
| Workers' Compensation, Emp | 7 | $130 | $135 | $138 | $150 | $155 |
| Governmental Law | 6 | $120 | $168 | $179 | $225 | $300 |
| Insurance | 6 | $150 | $190 | $195 | $225 | $275 |
| Labor & emp. (Labor) | 6 | $250 | $388 | $404 | $500 | $700 |
| Alternative Dispute Resolutio | 5 | $150 | $250 | $255 | $350 | $400 |
| Immigration | 5 | $200 | $275 | $279 | $375 | $395 |
| Intellectual Property/Trade Se | 5 | $260 | $310 | $279 | $325 | $445 |
| Workers' Compensation, Emp | 5 | $200 | $250 | $209 | $250 | $300 |
| Construction Law | 4 | $233 | $295 | $288 | $343 | $360 |
| Consumer Law | 4 | $150 | $225 | $225 | $300 | $350 |
| Criminal (Prosecution) | 4 | $93 | $143 | $129 | $165 | $180 |
| Health and Hospital Law | 4 | $243 | $285 | $329 | $415 | $520 |
| Medical Malpractice (Defenda | 4 | $170 | $185 | $183 | $195 | $200 |
| **Total** | **489** | **$190** | **$225** | **$244** | **$290** | **$445** |

## Hourly Billing Rates for Associates and Legal Assistants

Hourly billing rates for associates and legal assistants are summarized by tenure in **Exhibit 25**.

EXHIBIT 25

**2017 HOURLY BILLING RATES FOR ASSOCIATES AND LEGAL ASSISTANTS BY TENURE**

| Position and Tenure | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| **Associates** | | | | | | |
| New | 64 | $135 | $160 | $162 | $193 | $245 |
| 3 yrs exp. | 71 | $150 | $180 | $186 | $215 | $275 |
| 5 yrs exp. | 73 | $175 | $200 | $200 | $233 | $300 |
| 10 yrs exp. | 66 | $175 | $200 | $215 | $250 | $347 |
| **Legal Assistants** | | | | | | |
| New | 53 | $50 | $75 | $76 | $95 | $150 |
| 3 yrs exp. | 65 | $65 | $85 | $83 | $100 | $150 |
| 5 yrs exp. | 78 | $75 | $90 | $92 | $103 | $175 |
| 10 yrs exp. | 103 | $75 | $90 | $102 | $120 | $200 |

## Attorney and Legal Assistant Billing Rates by Firm Size and Office Location

Firm size and office location are associated with variations in associate billing rates, with tenure dominating that influence. See **Exhibit 26**.

EXHIBIT 26

**2017 MEDIAN HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND OFFICE LOCATION BY YEARS OF EXPERIENCE**

| Size of Firm | New | | 3 yrs exp. | | 5 yrs exp. | | 10 yrs exp. | |
|---|---|---|---|---|---|---|---|---|
| | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median |
| 1 | | | | | | | 5 | $175 |
| 2 to 5 | 18 | $150 | 27 | $200 | 27 | $200 | 24 | $200 |
| 6 to 14 | 22 | $150 | 19 | $160 | 30 | $183 | 18 | $200 |
| 15 or more | 23 | $165 | 24 | $185 | 26 | $200 | 19 | $225 |
| **All Firms** | **64** | **$160** | **70** | **$178** | **73** | **$200** | **65** | **$200** |

| Office Location | New | | 3 yrs exp. | | 5 yrs exp. | | 10 yrs exp. | |
|---|---|---|---|---|---|---|---|---|
| | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median |
| Central & North Central, KS | 4 | $173 | 2 | $198 | 3 | $215 | 5 | $200 |
| Kansas City, KS | 13 | $175 | 13 | $200 | 13 | $210 | 15 | $232 |
| Kansas City, MO | 9 | $195 | 11 | $215 | 14 | $233 | 8 | $263 |
| Lawrence/Douglas County | | | 4 | $185 | 5 | $185 | 3 | $240 |
| Northeast KS | 3 | $150 | 3 | $165 | 3 | $185 | 3 | $185 |
| Out of state licensed in KS | 6 | $170 | 8 | $210 | 10 | $223 | 6 | $223 |
| Topeka/Shawnee County | 8 | $150 | 9 | $175 | 7 | $200 | 11 | $200 |
| Wichita/Sedgwick County | 16 | $143 | 18 | $175 | 14 | $175 | 11 | $200 |
| **Total** | **64** | **$160** | **71** | **$180** | **73** | **$200** | **66** | **$200** |

Similarly, firm size and office location are associated with variations in legal assistant hourly billing rates. (**Exhibit 27**)

© 2017 Kansas Bar Association. All rights

EXHIBIT 27

**2017 MEDIAN HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND OFFICE LOCATION BY YEARS OF EXPERIENCE**

| | New | | 3 yrs exp. | | 5 yrs exp. | | 10 yrs exp. | |
|---|---|---|---|---|---|---|---|---|
| Size of Firm | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median |
| 1 | 3 | $40 | 4 | $108 | 6 | $93 | 14 | $95 |
| 2 to 5 | 18 | $63 | 27 | $75 | 30 | $75 | 38 | $83 |
| 6 to 14 | 15 | $75 | 18 | $78 | 23 | $90 | 27 | $100 |
| 15 or more | 17 | $90 | 16 | $93 | 19 | $95 | 23 | $95 |
| **Total** | **53** | **$75** | **65** | **$85** | **78** | **$90** | **102** | **$93** |

| | New | | 3 yrs exp. | | 5 yrs exp. | | 10 yrs exp. | |
|---|---|---|---|---|---|---|---|---|
| Office Location | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median |
| Kansas City, MO | 10 | $98 | 7 | $100 | 11 | $101 | 16 | $107 |
| Lawrence/Douglas County | 2 | $58 | 5 | $40 | 7 | $75 | 6 | $78 |
| Northeast KS | 3 | $40 | 3 | $50 | 3 | $75 | 3 | $75 |
| Out of state licensed in KS | 6 | $68 | 10 | $70 | 8 | $75 | 6 | $75 |
| Southcentral KS | | | | | 5 | $90 | 6 | $90 |
| Topeka/Shawnee County | 6 | $65 | 5 | $75 | 6 | $80 | 11 | $80 |
| Wichita/Sedgwick County | 11 | $75 | 14 | $90 | 16 | $90 | 21 | $100 |
| **Total** | **53** | **$75** | **65** | **$85** | **78** | **$90** | **103** | **$90** |

## 2016 Overhead Expenses and Gross Revenues on a *Per Attorney* Basis

Between 253-300 respondents, representing sole practitioners and firms, provided firm- or practice-level financial information on 2016 operating expenses and gross revenues per attorney.

**Exhibits 28 and 29** summarize four categories of overhead expenses against gross income by office location and firm size. Overhead components are differentially reported; thus, "total expenses" is not the exact sum of components.

Personnel expenses generally correlate directly with firm size, while total expenses are most sensitive to the "all other cost" category, which includes taxes and insurance. Reporting of overhead data is skewed toward smaller firms and solo practitioners.

**EXHIBIT 28**

## 2016 FIXED EXPENSES AND GROSS RECEIPTS PER ATTORNEY & OVERHEAD RATE BY OFFICE LOCATION

| | Kansas City, KS | | Kansas City, MO | | Topeka/ Shaw. Cty. | | Wichita/ Sedgwick Cty. | | Lawrence/ Douglas Cty. | | Out of state lic. in KS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median |
| Labor | 40 | $45,300 | 16 | $55,250 | 16 | $78,000 | 17 | $50,000 | 7 | $54,000 | 6 | $106,950 |
| Occupancy | 53 | $15,000 | 24 | $15,500 | 22 | $18,000 | 20 | $12,000 | 12 | $11,700 | 11 | $10,200 |
| Library | 42 | $1,225 | 18 | $1,500 | 14 | $4,750 | 15 | $2,000 | 7 | $500 | 9 | $1,344 |
| Insurance | 53 | $3,800 | 23 | $2,500 | 20 | $3,500 | 19 | $4,000 | 11 | $3,000 | 10 | $3,250 |
| Tech | 54 | $2,000 | 22 | $2,000 | 21 | $3,000 | 18 | $2,000 | 12 | $2,200 | 10 | $1,600 |
| Marketing | 44 | $5,000 | 21 | $3,000 | 16 | $7,500 | 17 | $7,500 | 7 | $2,000 | 9 | $2,400 |
| Total Fixed Expenses/Att. | 67 | $53,900 | 25 | $74,000 | 32 | $92,000 | 37 | $86,000 | 16 | $48,813 | 14 | $30,150 |
| Gross Revenues/Att. | 74 | $183,000 | 33 | $200,000 | 32 | $217,500 | 48 | $250,000 | 18 | $217,850 | 15 | $100,000 |
| Office Overhead Rate | 71 | 38% | 41 | 40% | 31 | 40% | 46 | 36% | 14 | 43% | 14 | 27% |

| | Northeast KS | | Southeast KS | | Southcen- tral KS | | North Cent, KS | | West KS | | All Locations | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median |
| Labor | 6 | $80,000 | 8 | $52,500 | 13 | $37,000 | 9 | $34,000 | 5 | $40,000 | 143 | $50,000 |
| Occupancy | 7 | $10,000 | 10 | $13,500 | 17 | $7,000 | 9 | $9,500 | 7 | $13,200 | 192 | $13,150 |
| Library | 7 | $300 | 9 | $5,000 | 11 | $1,000 | 6 | $1,100 | 4 | $5,000 | 142 | $1,450 |
| Insurance | 6 | $7,500 | 9 | $4,400 | 16 | $3,400 | 9 | $2,500 | 7 | $3,600 | 183 | $3,600 |
| Tech | 6 | $6,750 | 8 | $3,500 | 15 | $2,000 | 11 | $2,000 | 5 | $4,500 | 182 | $2,000 |
| Marketing | 5 | $2,500 | 6 | $2,650 | 14 | $1,100 | 9 | $2,000 | 5 | $4,000 | 153 | $3,000 |
| Total Fixed Expenses/Att. | 9 | $57,300 | 12 | $65,700 | 19 | $42,400 | 14 | $37,300 | 8 | $63,250 | 253 | $63,500 |
| Gross Revenues/Attorney | 9 | $180,000 | 12 | $171,500 | 22 | $150,000 | 19 | $153,845 | 9 | $200,000 | 291 | $190,000 |
| Office Overhead Rate | 10 | 50% | 8 | 46% | 11 | 30% | 20 | 40% | 12 | 40% | 278 | 40% |

© 2017 Kansas Bar Association. All rights

**EXHIBIT 29**

## 2016 FIXED EXPENSES AND GROSS RECEIPTS PER ATTORNEY & OVERHEAD RATE BY FIRM SIZE

| | | | | | Size of Firm | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **1** | | **2 to 5** | | **6 to 14** | | **15 or more** | | **All Firms** | |
| Line item Category | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median | Valid N | Median |
| Salaries | 61 | $35,000 | 59 | $65,000 | 13 | $55,000 | 9 | $50,000 | 143 | $50,000 |
| Occupancy | 101 | $10,000 | 65 | $18,000 | 14 | $16,500 | 10 | $18,750 | 192 | $13,150 |
| Library | 66 | $1,000 | 51 | $2,300 | 14 | $2,500 | 10 | $2,250 | 142 | $1,450 |
| Insurance | 95 | $2,500 | 64 | $4,000 | 12 | $5,652 | 10 | $5,000 | 183 | $3,600 |
| Tech | 95 | $2,000 | 63 | $4,000 | 12 | $3,000 | 10 | $5,000 | 182 | $2,000 |
| Marketing | 72 | $2,500 | 56 | $5,000 | 13 | $2,000 | 10 | $1,000 | 153 | $3,000 |
| Total Fixed Expenses/Att. | 122 | $30,155 | 83 | $75,000 | 27 | $100,000 | 20 | $105,500 | 253 | $63,500 |
| | | | | | | | | | | |
| Gross Revenues/Att. | 134 | $141,000 | 91 | $214,000 | 33 | $250,000 | 31 | $350,000 | 291 | $190,000 |
| | | | | | | | | | | |
| Office Overhead Rate | 100 | 40% | 91% | 36% | 36% | 35% | 45% | 40% | 278 | 40% |

**Exhibit 30** distributes ranges of 2012 annual salary levels for four categories of associates, legal assistants and secretaries by years of experience.

**EXHIBIT 30**

## 2016 ANNUAL SALARIES OF ASSOCIATES, LEGAL ASSISTANTS AND SECRETARIES

| Position and Tenure | Valid N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| New Associates | 96 | $45,000 | $56,000 | $59,604 | $70,000 | $120,000 |
| Junior Associates ( 3 yrs. Exp.) | 92 | $60,000 | $70,000 | $73,525 | $85,000 | $130,000 |
| Senior Associates (5 yrs. Exp.) | 78 | $65,000 | $76,000 | $83,764 | $95,000 | $155,000 |
| Senior Attorney ( 10 yrs. Exp.) | 54 | $65,000 | $85,000 | $101,102 | $125,000 | $200,000 |
| | | | | | | |
| New Legal Assistant | 69 | $24,000 | $30,000 | $30,016 | $35,000 | $50,000 |
| Legal Assistant ( 3 yrs. Exp.) | 72 | $30,000 | $35,000 | $38,605 | $41,500 | $65,000 |
| Legal Assistant ( 5 yrs. Exp.) | 79 | $35,000 | $40,000 | $41,972 | $45,000 | $65,000 |
| Legal Assistant ( 10 yrs. Exp.) | 111 | $42,000 | $48,000 | $49,800 | $56,000 | $75,000 |
| | | | | | | |
| New Secretary | 78 | $22,000 | $25,000 | $26,295 | $30,000 | $40,000 |
| Secretary ( 3 yrs. Exp.) | 80 | $25,000 | $30,000 | $30,080 | $34,750 | $43,750 |
| Secretary ( 5 yrs. Exp.) | 81 | $30,000 | $35,000 | $34,030 | $40,000 | $50,000 |
| Secretary ( 10 yrs. Exp.) | 103 | $32,000 | $40,000 | $39,428 | $45,000 | $60,000 |