**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS**

STEVEN WAYNE FISH, *et al.*,           )
                                       )
                    Plaintiffs,        )
                                       )     **Case No. 16-2105-JAR-JPO**
v.                                     )
                                       )
KRIS KOBACH, in his official capacity as   )
Secretary of State for the State of Kansas,   )
                                       )
                    Defendant.         )
                                       )
_____)

**REPLY IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES
IN CONNECTION WITH THEIR MOTION FOR CONTEMPT**

Pursuant to D. Kan. Rule 7.1(c), Plaintiffs submit this Reply Memorandum of Law in

support of their application for attorneys' fees and costs in connection with their motion for

contempt.  Defendant's overarching contention is that, because Plaintiffs in this matter are

represented *pro bono*, they have not suffered any actual loss as a result of Defendant's contempt

of court, and therefore, categorically cannot recover attorney's fees for the underlying contempt

motion.  That argument is meritless.  Compensatory sanctions are measured in terms of a

reasonable attorneys' fee, regardless of the actual nature of a movant's fee relationship with their

counsel.  And, as demonstrated below, the hours and rates requested by Plaintiffs are eminently

reasonable under the circumstances here.

**I.      Defendant's Argument that Sanctions Should Be Limited to "Actual Costs"
         Personally Incurred by the Plaintiffs Is Meritless**

At the conclusion of his brief, Defendant takes the sweeping position that, here, "no

amount can be awarded as a sanction," Defendant's Resp. in Opp'n (Def.'s Br.) at 10, Doc. 538,

because Plaintiffs' counsel represents Plaintiffs *pro bono*, and thus, their fees "are not actual

costs incurred by anyone." *Id.* at 9-10.  The implication of Defendant's argument is that, if a party is being represented *pro bono*, that party can never recover attorneys' fees for an act of civil contempt committed by the opposing party.

There is no basis in law for Defendant's categorical proposition, which would immunize parties from civil contempt sanctions whenever the opposing party is represented *pro bono*.  As the Tenth Circuit has explained, generally speaking, when a court awards compensatory sanctions in the form of the attorneys' fees incurred by a movant, "courts construe the term attorney fees to mean, *not the amount actually paid* or owed by the party to its attorney, *but the value of attorney services* provided to the party." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012) (emphasis added) (explaining that, in the context of compensatory Rule 27 sanctions, the nature of a party's actual fee arrangement—*pro bono*, flat fee, or hourly—is irrelevant in calculating "reasonable" attorney's fee).  The nature of the party's fee arrangement is irrelevant; in determining the value of the legal services provided to the party seeking sanctions, all that is required is that the party demonstrate "some basis for determining not only the amount, but the reasonableness of costs claimed." *Allied Materials Corp. v. Superior Prod. Co.*, 620 F.2d 224, 227 (10th Cir. 1980).  Thus, this Court appropriately held that, here, Plaintiffs' "actual loss can be measured by assessing Defendant the reasonable attorney fees expended by Plaintiffs' counsel on th[e] matters" underlying their motion for contempt. Contempt Order ("Contempt Order"), Doc. 520, at 24.

Indeed, the purpose of sanctions "would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse, as when the fee arrangement is a contingency fee or . . . a flat rate." *Centennial Archaeology, Inc*, 688 F.3d at 680.  Ultimately, if Defendant were correct that sanctions for civil contempt must be limited to

costs actually paid by a moving party, then defendants in a wide range of civil rights actions—where plaintiffs are typically represented by counsel working on a contingency or *pro bono* basis—would have little disincentive to commit civil contempt.  That is not the law.  *Cf. Blum v. Stenson*, 465 U.S. 886, 894 (1984) (affirming award of attorney's fees at market rates to prevailing plaintiff's attorneys, the Legal Aid Society of New York, and rejecting the argument that this would create an unjust windfall for plaintiff's counsel, on the grounds that a calculation of a fee award should not "vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization").

## II.      Plaintiffs' Computation of the Lodestar Is Appropriate

The hours and rates sought by Plaintiffs are appropriate.

### A.  Hours

Defendant raises a host of arguments concerning the number of hours expended by Plaintiffs' counsel in successfully prosecuting the underlying motion for contempt.  However, the attorney time required to obtain Defendant's compliance with the Preliminary Injunction was the direct result of Defendant's continuing intransigence and gamesmanship.  As explained in more detail below, each of Defendant's arguments as to the amount of time expended by Plaintiffs' counsel on the underlying contempt motion is meritless.

***"Too many hours for one motion."***  Defendant's principal argument appears to be that the amount of time expended on the underlying contempt motion is excessive.  *See* Def.'s Br. at 4 (describing hours expended on motion as "shocking").  But as this Court found, "Plaintiffs (and the Court) could have avoided significant time and expense in litigating this motion" if Defendant and his counsel had simply been forthcoming with Plaintiffs about basic facts, and complied with the Preliminary Injunction's mandate that Defendant register affected voters.  Contempt Order at 24.  This Court has made several findings that Defendant has needlessly

multiplied proceedings, including by making disingenuous arguments, and reversing representations as to basic facts, such as whether his office instructed counties to send Certificates of Registration to voters covered by the Court's Preliminary Injunction.  *See id.* at 6, 7, 15, 19, and 21; *See also* Contempt Hr'g Tr. at 128:5-21, attached hereto as Ex. F ("The Court: But we've had to police this . . . over and over again. . . . . The real question here is why the Secretary of State repeatedly has not complied with [The Preliminary Injunction order] until he's called on it . . . .").  Indeed, in his Opposition, Defendant does not deny the fact that the hours expended by Plaintiffs' counsel to enforce the Court's Preliminary Injunction order were due entirely to "Defendant's repeated refusals to cooperate on, and instead choosing to litigate, the relatively simple matters underlying the contempt motion."  Pls.' Application for Fees & Expenses ("Pls.' Opening Br.") at 2, Doc. 529.

Under these circumstances, Defendant cannot "complain about the time necessarily spent by the Plaintiffs" to litigate the underlying motion.  *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986).  What was truly "shocking" here was Defendant's continuing defiance of this Court's orders.  Plaintiffs expended the time necessary to ensure that Defendant complied with his basic legal obligations.  Defendant should not be rewarded with discounts given his own recalcitrance and efforts to evade responsibility.

In any event, Defendant does not identify with specificity which attorney hours he believes should have been avoided by Plaintiffs' counsel.  His generalized assertion that Plaintiffs' counsel spent too much time on the underlying contempt motion is insufficient to justify reducing Plaintiffs' fee request.  And, as noted, in an exercise of billing judgment, Plaintiffs have in fact excluded from their Application unnecessary or duplicative time, as well as time expended by attorneys who had limited roles throughout the contempt proceedings.  *See*

Ho Decl., at 9, Doc. 529-1 (noting exclusion of time expended by legal fellow Emily Zhang);

Steiner Decl. at 7, Doc. 529-4 (noting exclusion of time that was unnecessary or duplicative and

by other attorneys participating in conference calls and other strategic decision-making, and

reviewing and editing the papers).

   ***"Duplicative and Unnecessary Time."***  Defendant also contends that "Plaintiffs'

submission includes duplicative and unnecessary time," because: (1) more than two Plaintiffs'

attorneys attended the March 20 contempt hearing, *see* Def.'s Br. at 2; and (2) two attorneys (Ms.

Jayaraman from Dechert and Mr. Ho from the ACLU) both submitted time for drafting and

revising the underlying contempt motion., *see id.* at 4.  Neither contention is availing.

   First, with respect to Defendant's contention that only "[t]wo attorneys should be allowed

to bill for attendance at the hearing- Ho and Steiner," *id.* at 2, Defendant's position is belied by

his own conduct.  Indeed, Defendant himself was represented by three attorneys and an assistant

at the March 20 contempt hearing (Mr. Kobach, Ms. Becker, Mr. Roe, and Ms. Taliaferro), and,

as this Court has held, "[t]he court can look to how many lawyers the other side utilized . . . as an

indication of the effort required." *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1257

(D.  Kan. 2017).

   Regardless, the time billed for the March 20 contempt hearing by four attorneys in

addition to Mr. Ho and Mr. Steiner—namely, Mr. Bonney, Ms. Liu, Mr. Danjuma, and Ms.

Lakin—was appropriate.[1]  This Court has observed that "[t]here is no law [that an attorney]

should not bill for time spent at the courthouse when [co-counsel] was conducting trial," because

"[i]t is not uncommon for an attorney to have several other attorneys at trial to take notes, listen

_____

[1] Notably, in an exercise of billing judgment, Plaintiffs did not seek recovery for the time of
ACLU legal fellow Emily Zhang, who also attended the contempt hearing. *See* Ho Decl. at 9,
Doc. 529-1.

closely to witness testimony, and help with exhibits." *Id.* at 1258.  Here, each attorney who

billed time for attendance at the hearing had played an active role in seeking Defendant's

compliance with the Preliminary Injunction order, and was familiar with aspects of Defendant's

noncompliance that rendered their participation at the contempt hearing important for Plaintiffs.

As indicated in the time records submitted by Plaintiffs with their Application for fees, all four of

these attorneys played a role in investigating the underlying issues, corresponding with

Defendant and his counsel about them, and/or drafting or revising the contempt motion.  *See* Ho

Decl., attachment 1, Doc. 529-1; Steiner Decl., attachment 1, Doc. 529-4.  All four played an

active role during the hearing in terms of helping with strategy, describing the history of prior

communications with Defendant's counsel regarding compliance problems, and taking notes.

Their participation in the March 20 contempt hearing was valuable from a client representation

standpoint, and billing for their time is therefore appropriate.  Even though "only one counsel

[can be] questioning or arguing at a given time," this Court has held that "[t]here is no reason

[all] counsel should not be compensated for time spent in the courtroom as the time was

productive and beneficial to the client."  *Fox*, 258 F. Supp. 3d at 1260-1.

Second, with respect to Defendant's contention that Plaintiffs' counsel engaged in

"double-billing" for drafting and revising the same motion, *see* Def.'s Br. at 4, that assertion is

incorrect.  Defendant objects to the fact that Mr. Ho included multiple time entries for working

on the same task as "redundant."  *See id.* at 3.  But there is no requirement that an attorney finish

working on a particular task in one sitting.  There is nothing unusual about the fact that, for

example, Mr. Ho performed work revising Plaintiffs' brief in support of their contempt motion

on two different days.  Defendant also points to the fact that both Mr. Ho and Ms. Jayaraman

worked on the brief in support of Plaintiffs' motion for contempt, *see id.* at 3-4.  But that fact is

irrelevant.  There is no rule prohibiting multiple attorneys from working on the same document. Indeed, it is more efficient and economical for a junior attorney to draft pleadings while a senior attorney revises and finalizes the document.

     ***"Vague time entries."***  Next, Defendant, argues that various time entries by Plaintiffs, such as "Revise contempt motion," are "too vague to award any fees."  Def.'s Br. at 3.  But greater precision is not necessary.  As this Court has observed, "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended," so long as counsel identifies "the general subject matter of his time expenditures."  *Fox*, 258 F. Supp. 3d at 1255 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).

     The various time entries criticized by Defendant satisfy this standard, and are not too vague to support an award of attorneys' fees.  For example, a time entry for "Correspondence with defendants" on 11/10/17 clearly refers to drafting and revising a letter to Defendant's counsel on the same date regarding the issues underlying Plaintiffs' contempt motion, which was submitted as an exhibit in support of the motion.  *See* 11/10/17 Letter to Def.'s Counsel, Doc. 424-7.  Time entries for additional correspondence with Defendant on 11/29/17, 11/30/17, and 12/7/17 similarly refer to a subsequent letter on 11/30/17, and an email to Defendant on 12/7/17, regarding the same issues, which were also attached as exhibits to Plaintiffs' motion. *See* 11/30/17 Letter to Def.'s Counsel, Doc. 424-10; and 12/7/17 Email to Def.'s Counsel, Doc. 424-3.  These entries are not impermissibly vague.  *See Fox*, 258 F. Supp. 3d at 1255 ("Defendant objects to [counsel's] entry of working on the exhibit list as vague.  This is not vague, as the entry undoubtedly refers to the exhibit list presented to the Court.").

     Defendant's objections to time entries titled "revise contempt motion"—which clearly refers to editing and revising Plaintiffs' motion for contempt—and "contempt fees brief"—which

clearly refers to drafting and revising Plaintiffs' Application for fees—are similarly misplaced. *See Fox*, 258 F. Supp. 3d at 1256 ("[E]ntries stating that [counsel] worked on an opposition to Defendant's motion in limine and prepared for the hearing on the motion in limine are also not vague.").[2]

*"Unnecessary and Irrelevant Entries" and "Limited Success."* Finally, Defendant makes a hodge-podge of arguments that essentially boil down to the notion that, because Plaintiffs' correspondence with Defendant raised multiple issues of noncompliance, but Plaintiffs' contempt motion focused on only two issues in particular, this Court should only allot Plaintiffs some unidentified subcategory of fees. *See* Def.'s Br. at 5-8, 9. Defendant suggests that attorneys' fees should not be recoverable for any work performed prior to the November 10, 2017 letter from Plaintiffs' counsel to Defendant's counsel, which identified the two precise issues that became the subject of Plaintiffs' motion for contempt (*i.e.*, certificates of registration and the county elections manual).

Even taking Defendant's views at face value, his argument for a temporal limitation on Plaintiffs' fee request is meritless. Plaintiffs, of course, needed to investigate and identify these two issues (along with other compliance problems) *prior to* sending the November 10, 2017 letter to Defendant's counsel. There is no basis for excluding that time from recovery. *See* Ex. F, Contempt Hr'g Tr. at 128:5-21 ("The Court: But we've had to police this . . . over and

---

[2] Defendant relies on *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998), to argue that greater precision is necessary for an attorney's time entries. But *Case* is inapposite. There, the Tenth Circuit held that "*[i]f an attorney is consulting on a case*, the assistance provided must be *actually necessary or essential* to proper representation," and denied fees because the consulting attorney's time entries were too vague to determine if her work was "actually necessary or essential." *Id.* at 1252 (emphasis added). Here, where the relevant counsel are all counsel of record for Plaintiffs, there is no such heightened requirement for precision sufficient to demonstrate that the work in each entry was "essential" to the representation.

over again. . . .").  More fundamentally, however, is the fact that all of the issues identified in

Plaintiffs' letters to Defendant stem from the same basic nucleus of fact: *i.e.*, Defendant's failure

to actually register voters covered by the Preliminary Injunction by affording them the same

treatment that all other registered voters in Kansas receive.  Given that fact, all of the time

expended by Plaintiffs' counsel to investigate compliance and prepare their demand letters

should be deemed recoverable, even the parties were able to resolve some of these issues without

court intervention.  As this Court has explained,

> [I]f the plaintiff presents multiple related claims, "failure on some claims should
> not preclude full recovery [of attorney's fees] if [the] plaintiff achieves success on
> a significant, interrelated claim."  Where a lawsuit consists of related claims, "a
> plaintiff who has won substantial relief should not have his attorney's fee reduced
> simply because the district court did not adopt each contention raised."

*Fox*, 258 F. Supp. 3d at1252-53 (quoting *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d

1173, 1177 (10th Cir. 2010).  Here, because Plaintiffs achieved success on their underlying

motion for contempt, they should recover counsel time on any compliance issues related to that

motion.

### B.  Hourly Rates

Contrary to Defendant's suggestions, the hourly rates requested by Plaintiffs for their

attorneys are eminently reasonable for the Kansas City area, and are consistent with fee awards

by this Court and other courts in the District of Kansas.

First, $450 is a reasonable hourly rate in the Kansas City area for the senior attorneys on

this matter—Dale Ho, Neil Steiner, and Doug Bonney.  *See* Hallquist Decl. at 2-3, Doc. 529-2.

It is entirely consistent with this Court's decision last year approving a rate of $450 per hour to

the lead attorney in an employment matter.  *See Riordan v. ASAP Expert Counseling, LLC*, No.

16-CV-2011-JAR-TJJ, 2017 WL 2225223, at *2 n.11 (D. Kan. May 19, 2017) (approving rate of

$450.00 for lead plaintiffs' lawyer in Kansas employment matter); *see also Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017) (approving rate as high as $600 per hour in employment matter); *Bailes v. Lineage Logistics, LLC*, No. 15-2457-DDC-TJJ, 2017 WL 4758927, at *8 (D. Kan. Oct. 20, 2017) (approving rate of $450 per hour for lead counsel in case brought under Fair Credit Reporting Act); *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *5 (D. Kan. July 13, 2016) (approving rate of $400 per hour for lead attorney in employment matter); *Tripp v. Berman & Rabin P.A.*, No. 14-CV-2646-DDC-GEB, 2017 WL 2289500, at *5 (D. Kan. May 25, 2017) (approving rate of $400 per hour for senior attorneys in case brought under Federal Debt Collection Practices Act)

Second, $350 is a reasonable rate for the mid-level attorneys who worked on this matter Angela Liu (9 years of experience); Orion Danjuma (8 years); and Sophia Lakin (6 years). *See* Hallquist Decl. at 2-3, Doc. 529-2. Plaintiffs' request is entirely consistent with this Court's decision last year in an employment matter awarding the same rate of $350 an hour to an attorney who had 6 years of experience at the time. *See Riordan*, 2017 WL 2225223, at *2 n.11 (approving rate of $325.00 for plaintiffs' lawyer Ms. Mannion, who, at the time of fees award in 2017, had 6 years of experience[3]).

Third, a rate of $275 is reasonable for junior attorney Tharuni Jayaraman (2 years of experience). *See* Ex. B, Hallquist Decl. at 2-3, Doc. 529-2. It is also consistent with this Court's decision last year in an employment matter awarding the exact same rate of $275 an hour to an attorney who had 3 years of experience at the time. *See Riordan*, 2017 WL 2225223, at *2 n.11

---

[3] *See Kathleen E. Mannion*, Holman Schiavone, LLC, https://www.kdh-law.com/Attorneys/Kathleen-E-Mannion.shtml (last visited June 11, 2018) (indicating that Ms. Mannion graduated from law school in 2011, and became a member of the Missouri bar that year).

(approving rate of $275.00 for plaintiffs' lawyer Ms. Grace who, at the time of fees award in 2017, had 3 years of experience[4]).

Finally, a rate of $110 is reasonable for paralegal time.  *See* Hallquist Decl. at 2-3, Doc. 529-2.  It is less than courts in this district have awarded for paralegals and legal assistants.  *See Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan. 2016) (finding that $125 per hour was a reasonable rate for a paralegal); *Koehler*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *5 (determining that $125 is a reasonable rate for legal assistant's time).

Defendant's first response is to cite a Kansas Bar Association (KBA) Survey, noting that the average rates as set forth in the survey are less than the rates requested by Plaintiffs here.  *See* Def.'s Br. at 8.  But the fact that Plaintiffs' requested rates are higher than the average for the State of Kansas as a whole does not render them unreasonable either for the local Kansas City market, *see Fox*, 258 F. Supp. 3d at 1264 (finding, for employment litigation before this Court, that "the relevant market is the Kansas City metropolitan area"), or for the State of Kansas generally.  As noted, Plaintiffs' requested rates are consistent with recent fee awards by this Court for Kansas City-area litigation, and by other courts in the District of Kansas.  *See supra*.

In any event, even if this Court were to rely on the KBA Survey, the rates requested by Plaintiffs are still within the range set forth in it, *see* Kansas Bar Association 2017 Economic Survey at 17 (ex. 23), Doc. 538-1.  Moreover, in his Opposition Brief, Defendant does not dispute that voting litigation is quite complex and highly specialized, *see* Pls.' Opening Br. at 6, and that out-of-state counsel with voting rights experience was necessary for Plaintiffs'

---

[4] *See Ashley S. Grace*, Holman Schiavone, LLC, https://www.kdh-law.com/Attorneys/Ashley-S-Grace.shtml (last visited June 11, 2018) (indicating that Ms. Grace graduated from law school in 2014, and became a member of the Florida bar that year).

representation in this matter, *see id.* at 6-7 (citing Bonney Decl. at 2-3, Doc. 529-3).  Under these

circumstances, it is appropriate for this Court to award fees at rates at the higher end of the KBA

survey.  *See Hoffman*, 2017 WL 25386, at \*7-\*8 (determining that fees "on the high end of the

approvable range" are "reasonable" given various factors, including the fact that case presented

"significant and novel challenges requiring considerable skill and experience," and "the

experience, reputation, and ability of the attorneys"); *Koehler*, 2016 WL 3743098, at \*5

(awarding fee "on the high end").  Plaintiffs' requested rates are reasonable particularly given the

similar rates awarded by courts in this District in employment cases, which Defendant does not

dispute are comparatively much simpler than voting rights litigation.  *See* Pls.' Opening Br. at 8

n.1.[5]

Defendant's next argument is that although voting rights litigation may be complex, the

underlying contempt motion here was "basic" and "d[id] not require" attorneys with specialized

knowledge of voting rights.  *See* Def.'s Br. at 8.  That is incorrect.  The underlying contempt

motion concerned Defendant's violations of this Court's Preliminary Injunction *under the*

*National Voter Registration Act*.  There can be no reasonable dispute that knowledge of voting

rights law was important to the successful prosecution of that motion.  And, in any event,

litigating the merits of the *Fish* case itself—which indisputably required knowledge of voting

---

[5] Indeed, under these circumstances, it would be appropriate for this Court to award fees at rates
from the home markets of Plaintiffs' attorneys.  *See Jeffboat, LLC v. Dir., Office of Workers'*
*Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) ("[O]ur cases have consistently recognized
that an attorney's actual billing rate for comparable work is presumptively appropriate for use as
a market rate when making a lodestar calculation.").  And there is no dispute that the rates sought
by Plaintiffs in this case are far below the rates that Dechert customarily bills for its attorneys'
time and the rates and that it would bill for lawyers with experience comparable to that of the
ACLU attorneys.  *See* Pls.' Opening Br. at 9-11 (citing Steiner Decl. at 6-7, Doc. 529-4).  And
there is also no dispute that the rates sought here are below or are consistent with the rates that
ACLU attorneys have been awarded in their home market of New York (adjusted for inflation).
*See* Pls.' Opening Br. at 8-10 (citing *Simmonds v. N.Y. City Dep't of Corrections*, No. 06 Civ.
5298(NRB), 2008 WL 4303474, at \*1 n.2, \*10 (S.D.N.Y. Sept. 16, 2008)).

rights law—was a precondition for the successful prosecution of the underlying contempt motion.  It is therefore appropriate for this Court to consider counsel's experience in voting rights litigation when determining the appropriate rate for purposes of this fees application.

Finally, Defendant asserts that no attorneys other than Mr. Ho and Mr. Steiner have experience with the NVRA.  With respect to Ms. Lakin and Mr. Danjuma, that assertion is false. *See* Ho Decl. at 8-9, Doc. 529-1 (describing Ms. Lakin's experience, including with NVRA litigation); *id.* at 5-7 (describing Mr. Danjuma's experience, including litigation concerning documentary proof of citizenship requirements for voter registration specifically).  Moreover, Ms. Liu and Ms. Jayaraman have extensive experience with respect to voting rights litigation and elections, *see* Steiner Decl. at 4-5, Doc. 529-4 (describing Ms. Liu's and Ms. Jayaraman's experience, including with voting rights litigation and elections), which is the general subject matter expertise required for this case.

### III.   Additional Time Spent on this Reply Brief

Plaintiffs' counsel has expended additional time associated with this Reply Brief.  That time includes a total of 5.8 hours expended by Mr. Ho, as follows:

| Fish v. Kobach | Date | Hours | Hourly rate | Amount |
|---|---|---|---|---|
| Revise Contempt Fees Reply Brief | 8-June | 0.2 | $450.00 | $90.00 |
| Draft Contempt Fees Reply Brief | 5-June | 4.8 | $450.00 | $2,160.00 |
| Research for Contempt Fees Reply Brief | 5-June | 0.8 | $450.00 | $360.00 |
| **Total** | | **5.8** | | **$2,610.00** |

In an exercise of billing judgment, Plaintiffs do not seek recovery for time spent revising this Reply Brief by attorneys including Ms. Lakin, Ms. Danjuma, and Dechert partner Rebecca Waldman.  Plaintiffs also do not seek recovery of paralegal time associated with this Reply Brief.

Plaintiffs therefore amend their requested fee award to include Mr. Ho's time listed above, increasing their total fee request by $2,610, or from $49,637.04 to an amended total of $52,247.04.

### IV.      Non-Taxable Expenses

Defendant does not dispute that, in prosecuting the underlying contempt motion, Plaintiffs' counsel incurred expenses in the amount of $2,009.12, or that these costs were reasonable.  There is therefore no basis for denying costs in that amount.

### V.      Conclusion

For the foregoing reasons, Plaintiffs request this Court grant their Application for fees and costs, as amended in his Reply Brief, in the full amount of $54,256.16.

DATED this 12th day of June, 2018.

Respectfully submitted,

/s/ Stephen Douglas Bonney
STEPHEN DOUGLAS BONNEY (#12322)
PO Box 32102
Kansas City, Missouri 64171
Cell: (816) 550-4374
sdbonney@outlook.com

/s/ Dale E. Ho
DALE HO*
R. ORION DANJUMA*
SOPHIA LIN LAKIN*
EMILY R. ZHANG*
American Civil Liberties Union Foundation,
125 Broad St.
New York, NY 10004
Phone: (212) 549-2693
dale.ho@aclu.org
odanjuma@aclu.org
slakin@aclu.org
ezhang@aclu.org

NEIL A. STEINER*
REBECCA KAHAN WALDMAN*
DAPHNE T. HA*
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
T: (212) 698-3822
F: (212) 698-3599
neil.steiner@dechert.com
rebecca.waldman@dechert.com
daphne.ha@dechert.com

ANGELA M. LIU*
Dechert LLP
35 West Wacker Drive
Suite 3400
Chicago, Illinois 60601-1608
Phone: (312) 646 5816
Fax: (312) 646 5858
angela.liu@dechert.com

LAUREN BONDS
American Civil Liberties Union of Kansas
6701 W 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4100
Fax: (913) 490-4119
lbonds@aclukansas.org
*Counsel for Plaintiffs*

* admitted *pro hac vice*

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on this 12th day of June, 2018, I electronically

filed the foregoing document using the CM/ECF system, which automatically sends notice and a

copy of the filing to all counsel of record.

/s/ Stephen Douglas Bonney
STEPHEN DOUGLAS BONNEY (#12322)

*Attorney for Plaintiffs*

EXHIBIT F

```
 1                    UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF KANSAS
 2


 3
       STEVEN WAYNE FISH, et al.,
 4

           Plaintiffs,
 5

       v.                            Docket No. 16-2105-JAR
 6
                                     Kansas City, Kansas
 7     KRIS W. KOBACH,               Date:  03/20/2018

 8        Defendant.
       ...............................................
 9


10               TRANSCRIPT OF MOTIONS HEARING
             BEFORE THE HONORABLE JULIE A. ROBINSON
11               UNITED STATES DISTRICT JUDGE

12
       APPEARANCES:
13

       Mr. Dale E. Ho              Mr. Stephen D. Bonney
14     Mr. R. Orion Danjuma        ACLU Foundation of Kansas
       Ms. Sophia Lin Lakin        6701 West 64th Street
15     Ms. Emily Zhang             Suite 200
       American Civil Liberties    Overland Park, KS 66202
16     Union Foundation - NY
       125 Broad Street
17     New York, NY 10004

18     Ms. Angela Liu
       Mr. Neal A. Steiner
19     Dechert, LLP - NY
       1095 Avenue of the Americas
20     New York NY 10036

21     For the Defendant Kris W. Kobach:

22     Mr. Garrett Roe
       Mr. Kris Kobach
23     Ms. Susan Becker
       Kansas Secretary of State
24     120 Southwest 10th Avenue
       Memorial Hall, First Floor
25     Topeka, KS 66612
```

```
 1                    I N D E X

 2     Argument by Mr. Ho                              3
       Argument by Ms. Becker                         12
 3

 4     Defendant's Witnesses:                        Page

 5     BRYAN CASKEY
         Direct Examination By Mr. Kobach            24
 6       Cross Examination By Mr. Steiner            69
         Redirect Examination By Mr. Kobach         103
 7

 8     Argument by Mr. HO                            113
       Argument by Mr. Kobach                        119
 9
                    E X H I B I T S
10
       Plaintiffs Fish, et al.
11     Exhibits              Offered        Received

12          A                  113             113
            B                  113             113
13          C                  113             113
            D                  113             113
14          E                  113             113
            F                  113             113
15          G                  113             113
            H                  108         108, 113
16          I                  108         108, 113
            J                  108         108, 113
17

18     Defendant's
       Exhibits              Offered        Received
19
            1                   40              41
20          2               55, 63              63

21

22

23     _____

24          Kimberly R. Greiner, CRR, RMR, RDR, CRC
                    Official Court Reporter
25          259 U.S. Courthouse, 500 State Avenue
                    Kansas City, Kansas 66101
```

1   new change in policy rather than just saying, okay,

2   here's version 25 of our manual, you know, please, see

3   page 13 for the -- for the revisions.

4            But if the court wishes us to more

5   frequently update the manuals, we can certainly pass

6   that direction -- the manual, singular, I should say not

7   manuals -- we can pass that direction on to Mr. Caskey

8   as well.

9            We are willing to do whatever the court

10  orders us to do in all these regards and we have the

11  luxury now of five months before the next federal

12  election to do that.  So if you want the manuals put

13  back on the website -- the manual put back on the

14  website --

15            THE COURT:  I certainly didn't order them to

16  come down.  It's news to me they came down.  Just

17  repeatedly it's been news to me things that you have

18  done and things that you haven't done.

19            I tell you that I want these special notices

20  to go out to tell people guess what, you are registered.

21  Because of the judge's preliminary injunction you are

22  registered.  So what you do is you draft a notice that

23  says you are registered for 2016 but going forward not.

24  I never told you that.

25            So when you talk about, oh, you know, it's

1    been hard to keep up with all the different rules that

2    change, there have been no rules that have changed.  My

3    preliminary injunction has not changed.  The

4    interpretation of that preliminary injunction has not

5    changed.

6              In my view, you have chosen to interpret it

7    in a way to avoid, for whatever reason, being fully

8    compliant with the preliminary injunction order.  You

9    never should have put that language in there.  We

10   shouldn't have had to have a hearing where I told you

11   take it out, or I told you in e-mails to take it out

12   because it just introduced confusion.

13             Then we have a telephone conference.  We had

14   others, but we had a phone conference.  And I'm

15   concerned because I don't want these people to just get

16   the special notice.  I want the people to get the same

17   thing everybody else does because they're fully

18   registered.  And that's been another thing that

19   repeatedly you all have pushed back against the concept

20   that because of my preliminary injunction these folks

21   are not second class registered voters.  They are fully

22   registered voters to be treated the same as everyone

23   else.  That means they get the same postcards.

24             So I asked you that and you said -- you

25   assured me that they had or they would get the

1    postcards.  So it didn't find its way into the order

2    correcting the language that should be going out to them

3    as a special notice because these are a class of people

4    that have showed up at the polling place or they've been

5    given some sort of notice saying you're not registered.

6    We know you might have -- you know, maybe they thought,

7    when they left DMV, they were but now they get something

8    in the mail goes you're not registered.  So they're

9    confused.  They don't understand what happens.

10            So I had directed a special notice to cure

11    that problem but also I'd made it clear they're fully

12    registered voters.  And so when you start talking about,

13    oh, the rules have changed, we can't keep up with the

14    rules that come out of this court because they're just

15    dynamic and they are fluid, that is not true.

16            Every action that I've taken since the

17    preliminary injunction has been in response to

18    plaintiffs filing a motion with me to say the

19    Secretary's not fully compliant with your preliminary

20    injunction, now we found something else on the website,

21    now we found a different notice.

22            As Mr. Ho said, it's not plaintiffs' job to

23    figure out every one of your communications and every

24    one of your websites and every one of your notices.

25    It's your job to be fully compliant with the court's

1   order.  It's not my job to go rooting around trying to

2   figure out have you fully complied, changed the language

3   of something everyone might see out in the voting

4   public.

5             But we've had to police this.  I've had to

6   police this over and over again.  As things come to

7   plaintiffs' attention, they bring it to my attention.

8   And the pattern has been, oh, we'll fix it, we'll fix

9   it.  But we don't know what we don't know, Mr. Kobach.

10            So I just want the record to be clear this

11  isn't a situation where the Secretary of State has been

12  at a disadvantage because you're not clear on what the

13  rules are, I keep changing the rules.  I haven't changed

14  any rules.  The preliminary injunction says the same

15  thing today as it said back then.  It's still operative.

16            The real question here is why the Secretary

17  of State repeatedly has not complied with it until he's

18  called on it and then he fixes it and then finally we're

19  here today for a hearing about two other -- two more

20  components of something that seems like it hasn't been

21  fixed.  So I just want that to be clear.  There has been

22  no change of rules.  There's been no confusion and

23  there's been no ambiguity.

24            MR. KOBACH:  Your Honor, I do want to

25  clarify something.  I did not say that our office cannot

EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS**

| | | |
|---|---|---|
| STEVEN WAYNE FISH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Case No. 16-2105-JAR-JPO** |
| v. | ) | |
| | ) | |
| KRIS KOBACH, in his official capacity as | ) | |
| Secretary of State for the State of Kansas, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF DALE E. HO IN SUPPORT OF PLAINTIFFS'
REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR
ATTORNEYS' FEES AND LITIGATION EXPENSES
IN CONNECTION WITH THEIR MOTION FOR CONTEMPT**

I, Dale E. Ho, declare under penalty of perjury that the following is true and correct:

1.      The national American Civil Liberties Union ("ACLU"), the ACLU of Kansas

("Kansas ACLU"), and Dechert LLP, were retained in 2015 to represent Plaintiffs in the above-

captioned matter.

**Requested Additional Attorneys' Fees**

2.      Plaintiffs' counsel has expended additional time associated with the Reply Brief.

That time includes a total of 5.8 hours expended by myself, as follows:

| 3.  **Fish v. Kobach** | Date | Hours | Hourly rate | Amount |
|---|---|---|---|---|
| Revise Contempt Fees Reply Brief | 8-June | 0.2 | $450.00 | $90.00 |
| Draft Contempt Fees Reply Brief | 5-June | 4.8 | $450.00 | $2,160.00 |
| Research for Contempt Fees Reply Brief | 5-June | 0.8 | $450.00 | $360.00 |
| **Total** | | **5.8** | | **$2,610.00** |

4.      The time listed above does not include time spent revising or editing the Reply Brief by attorneys including Ms. Lakin, Ms. Danjuma, and Dechert partner Rebecca Waldman, or by ACLU paralegal Lila Carpenter.

5.      The hours and rates being claimed by ACLU timekeepers, with billing judgement exercised, are reasonable for successfully prosecuting the underlying contempt motion.

6.      ACLU attorneys' and paralegal's time records were kept contemporaneously with the work performed.  The claimed amount for litigation work summarized in the chart above is the total lodestar amount—determined by multiplying the rate per hour by the hours each attorney or paralegal reasonably and necessarily worked on this litigation.  As detailed in Plaintiffs' Application for Attorneys' Fees and Litigation Expenses in Connection with Their Motion for Contempt, Doc. 529, the rates reflects the usual and customary rate for attorneys with a comparable experience level and specialized skill in each of the attorneys' respective home states.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: June 12, 2018.

/s/ Dale E. Ho
DALE E. HO