# UNITED STATES DISTRICT COURT
## OFFICE OF THE CLERK
## DISTRICT OF KANSAS

TIMOTHY M. O'BRIEN
CLERK OF COURT

INGRID A. CAMPBELL
CHIEF DEPUTY CLERK

259 U.S. COURTHOUSE
500 STATE AVENUE
KANSAS CITY, KANSAS 66101
(913) 735-2200

204 U.S. COURTHOUSE
401 N. MARKET
WICHITA, KANSAS 67202
(316) 315-4200

490 U.S. COURTHOUSE
444 S.E. QUINCY
TOPEKA, KANSAS 66683
(785) 338-5400

Kansas City, Kansas

July 3, 2018

**SEE NOTICE OF ELECTRONIC FILING**

Retained Counsel Appeal

Re:  Steven Wayne Fish et al v. Kris W. Kobach et al
District Court Case No:  2:16-cv-02105-JAR
Notice of Appeal filed by:  Defendant, Kris W. Kobach
Fee Status: Paid

     The following documents are for the parties in connection with the Notice of Appeal: Notice of Appeal and Copy of the Docket Sheet.

     **RETAINED** Counsel for the appellant is instructed to download the "**Initial Appeal Documents and Instructions**" for this appeal from www.ca10.uscourts.gov.   Please follow the instructions for Transcript Order Form (for appellant only) and Docketing Statement (for appellant only) regarding counsel's responsibility for compliance.  For specific requirements concerning transcripts, records on appeal, briefs and appendices to briefs, please refer to the Federal Rules of Appellate Procedure and the Rules of the Tenth Circuit Court of Appeals. Rules of the Tenth Circuit are available at www.ca10.uscourts.gov.

     If you have any questions, please contact the office of the Clerk of the U.S. Court of Appeals in Denver, Colorado at 303.844.3157.

Sincerely,
TIMOTHY M. O'BRIEN
CLERK OF COURT

By:  s/ Charles Van Ness
     Deputy Clerk

cc: Clerk, U.S. Court of Appeals
    (Notice of Appeal, Docket Sheet & Preliminary Record)

# U.S. District Court
# DISTRICT OF KANSAS (Kansas City)
# CIVIL DOCKET FOR CASE #: 2:16–cv–02105–JAR

Fish et al v. Kobach et al

Assigned to: District Judge Julie A. Robinson

Case in other court:   10CCA, 16–03147

        10CCA, 16–03175

        10CCA, 17–03161

        10CCA, 18–03094

Cause: 42:1983 Civil Rights Act

Date Filed: 02/18/2016

Date Terminated: 06/19/2018

Jury Demand: None

Nature of Suit: 441 Civil Rights: Voting

Jurisdiction: Federal Question

**Consol Interested Pltf**

| | | |
|---|---|---|
| **Cody Keener**<br>*TERMINATED: 10/19/2016* | represented by | **Curtis E. Woods**<br>Dentons US, LLP – KC<br>4520 Main Street, Suite 1100<br>Kansas City, MO 64111–7700<br>816–460–2425<br>Fax: 816–531–7545<br>Alternative Phone:<br>Cell Phone:<br>Email: curtis.woods@dentons.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Number:*<br>*Bar Status: Phv* |
| | | **Mark P. Johnson**<br>Dentons US, LLP – KC<br>4520 Main Street, Suite 1100<br>Kansas City, MO 64111–7700<br>816–460–2400 ext 24502<br>Fax: 816–531–7545<br>Alternative Phone:<br>Cell Phone:<br>Email: mark.johnson@dentons.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Number: 22289*<br>*Bar Status: Active* |
| | | **Paul Treanor Davis**<br>Fagan Emert & Davis LLC<br>730 New Hampshire, Suite 210<br>Lawrence, KS 66044<br>785–331–0300<br>Fax: 785–331–0303<br>Alternative Phone: |

Cell Phone:
Email: pdavis@fed—firm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 18550*
*Bar Status: Active*

**Samantha Jo Wenger**
Dentons US, LLP – KC
4520 Main Street, Suite 1100
Kansas City, MO 64111—7700
816—460—2454
Fax: 816—531—7545
Alternative Phone:
Cell Phone:
Email: samantha.wenger@dentons.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 25322*
*Bar Status: Active*

**William R. Lawrence , IV**
Law Office of William R. Lawrence IV
1405 George Court, #7
Lawrence, KS 66044
785—580—7090
Alternative Phone:
Cell Phone: 785—580—7090
Email: will@law—assoc.com
*TERMINATED: 01/06/2017*
*LEAD ATTORNEY*
*Bar Number: 26021*
*Bar Status: Active*

**Consol Interested Pltf**

**Alder Cromwell**
*TERMINATED: 10/19/2016*

represented by   **Curtis E. Woods**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Mark P. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 22289*
*Bar Status: Active*

**Paul Treanor Davis**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 18550*
*Bar Status: Active*

**Samantha Jo Wenger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 25322*
*Bar Status: Active*

**William R. Lawrence , IV**
(See above for address)
 ***TERMINATED: 01/06/2017***
*LEAD ATTORNEY*
*Bar Number: 26021*
*Bar Status: Active*

**Consol Interested Pltf**

**Parker Bednasek**                  represented by  **Curtis E. Woods**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Mark P. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 22289*
*Bar Status: Active*

**Paul Treanor Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 18550*
*Bar Status: Active*

**Samantha Jo Wenger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 25322*
*Bar Status: Active*

**William R. Lawrence , IV**
(See above for address)
 ***TERMINATED: 01/06/2017***

*LEAD ATTORNEY*
*Bar Number: 26021*
*Bar Status: Active*

**Plaintiff**

**Steven Wayne Fish**                    represented by    **Angela M. Liu**
*on behalf of themself and all others*                    Dechert LLP – IL
*similarly situated*                                      35 W. Wacker Drive, Suite 3400
                                                         Chicago, IL 60601
                                                         312–646–5800
                                                         Fax: 312–646–5858
                                                         Alternative Phone:
                                                         Cell Phone:
                                                         Email: angela.liu@dechert.com
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Number:*
                                                         *Bar Status: Phv*

                                                         **Anne A. Gruner**
                                                         Duane Morris LLP – Philadelphia
                                                         30 S. 17th St.
                                                         Philadelphia, PA 19103
                                                         215–979–1165
                                                         Fax: 212–689–4953
                                                         Alternative Phone:
                                                         Cell Phone:
                                                         Email: AAGruner@duanemorris.com
                                                         *TERMINATED: 03/30/2017*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *Bar Number:*
                                                         *Bar Status: Phv*

                                                         **Dale E. Ho**
                                                         American Civil Liberties Union
                                                         Foundation – NY
                                                         125 Broad Street
                                                         New York, NY 10004
                                                         212–549–2693
                                                         Fax: 212–549–2649
                                                         Alternative Phone:
                                                         Cell Phone:
                                                         Email: dale.ho@aclu.org
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Number:*
                                                         *Bar Status: Phv*

                                                         **Daphne T. Ha**

Dechert, LLP – NY
1095 Avenue of the Americas
New York, NY 10036
212–698–3615
Fax: 212–698–3599
Alternative Phone:
Cell Phone:
Email: daphne.ha@dechert.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

**Emily Rong Zhang**
American Civil Liberties Union, Voting
Rights Project
125 Broad Street, 18/F
New York, NY 10004
212–284–7396
Alternative Phone: 650–387–2866
Cell Phone:
Email: erzhang@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Lauren Bonds**
American Civil Liberties Union of Kansas
6701 West 64th Street
Suite 210
Overland Park, KS 66202
913–490–4114
Alternative Phone:
Cell Phone:
Email: lbonds@aclukansas.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27807*
*Bar Status: Active*

**Neal A. Steiner**
Dechert, LLP – NY
1095 Avenue of the Americas
New York, NY 10036
212–698–3500
Alternative Phone:
Cell Phone:
Email: neil.steiner@dechert.com
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**R. Orion Danjuma**
American Civil Liberties Union
Foundation – NY
125 Broad Street
New York, NY 10004
212–549–2593
Fax: 212–549–2649
Alternative Phone:
Cell Phone:
Email: odanjuma@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Rebecca Kahan Waldman**
Dechert, LLP – NY
1095 Avenue of the Americas
New York, NY 10036
212–698–3500
Fax: 212–698–3599
Alternative Phone:
Cell Phone:
Email: rebecca.waldman@dechert.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Sophia Lin Lakin**
American Civil Liberties Union
Foundation – NY
125 Broad Street
New York, NY 10004
212–519–7836
Fax: 212–549–2649
Alternative Phone:
Cell Phone:
Email: slakin@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
Bonney Arbitration & Mediation

PO Box 32102
Kansas City, MO 64171
816–550–4374
Alternative Phone:
Cell Phone: 816–550–4374
Email: sdbonney@outlook.com
*TERMINATED: 06/28/2018*
*LEAD ATTORNEY*
*Bar Number: 12322*
*Bar Status: Active*

**Plaintiff**

**Ralph Ortiz**                          represented by   **Angela M. Liu**
*on behalf of themself and all others*                    (See above for address)
*similarly situated*                                       *LEAD ATTORNEY*
*TERMINATED: 05/05/2016*                                   *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number:*
                                                          *Bar Status: Phv*

                                                          **Dale E. Ho**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number:*
                                                          *Bar Status: Phv*

                                                          **Lauren Bonds**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number: 27807*
                                                          *Bar Status: Active*

                                                          **Neal A. Steiner**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number:*
                                                          *Bar Status: Phv*

                                                          **R. Orion Danjuma**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number:*
                                                          *Bar Status: Phv*

                                                          **Rebecca Kahan Waldman**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
(See above for address)
 *TERMINATED: 06/28/2018*
*LEAD ATTORNEY*
*Bar Number: 12322*
*Bar Status: Active*

**Plaintiff**

**Donna Bucci**                          represented by   **Angela M. Liu**
*on behalf of themself and all others*                   (See above for address)
*similarly situated*                                     *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Number:*
                                                         *Bar Status: Phv*

                                                         **Anne A. Gruner**
                                                         (See above for address)
                                                          *TERMINATED: 03/30/2017*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *Bar Number:*
                                                         *Bar Status: Phv*

                                                         **Dale E. Ho**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Number:*
                                                         *Bar Status: Phv*

                                                         **Daphne T. Ha**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *Bar Number:*
                                                         *Bar Status: Phv*

**Emily Rong Zhang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Lauren Bonds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27807*
*Bar Status: Active*

**Neal A. Steiner**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**R. Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Rebecca Kahan Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
(See above for address)
 *TERMINATED: 06/28/2018*
*LEAD ATTORNEY*
*Bar Number: 12322*

*Bar Status: Active*

**Plaintiff**

| | |
|---|---|
| **Charles Stricker** | represented by |
| *on behalf of themself and all others similarly situated* | |

**Angela M. Liu**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Anne A. Gruner**
(See above for address)
 *TERMINATED: 03/30/2017*
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

**Dale E. Ho**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Daphne T. Ha**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

**Emily Rong Zhang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Lauren Bonds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27807*
*Bar Status: Active*

**Neal A. Steiner**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**R. Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Rebecca Kahan Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
(See above for address)
 *TERMINATED: 06/28/2018*
*LEAD ATTORNEY*
*Bar Number: 12322*
*Bar Status: Active*

**Plaintiff**

**Thomas J. Boynton**                    represented by   **Angela M. Liu**
*on behalf of themself and all others*                    (See above for address)
*similarly situated*                                      *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number:*
                                                          *Bar Status: Phv*

                                                          **Anne A. Gruner**
                                                          (See above for address)
                                                           *TERMINATED: 03/30/2017*
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *Bar Number:*
                                                          *Bar Status: Phv*

**Dale E. Ho**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Daphne T. Ha**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

**Emily Rong Zhang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Lauren Bonds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27807*
*Bar Status: Active*

**Neal A. Steiner**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**R. Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Rebecca Kahan Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
(See above for address)
 *TERMINATED: 06/28/2018*
*LEAD ATTORNEY*
*Bar Number: 12322*
*Bar Status: Active*

**Plaintiff**

**Douglas Hutchinson**                    represented by    **Angela M. Liu**
*on behalf of themself and all others*                      (See above for address)
*similarly situated*                                        *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Bar Number:*
                                                            *Bar Status: Phv*

**Anne A. Gruner**
(See above for address)
 *TERMINATED: 03/30/2017*
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

**Dale E. Ho**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Daphne T. Ha**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

**Emily Rong Zhang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Lauren Bonds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27807*
*Bar Status: Active*

**Neal A. Steiner**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**R. Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Rebecca Kahan Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
(See above for address)
 *TERMINATED: 06/28/2018*
*LEAD ATTORNEY*
*Bar Number: 12322*
*Bar Status: Active*

**Plaintiff**

**The League of Women Voters of Kansas**                    represented by   **Angela M. Liu**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Anne A. Gruner**
(See above for address)
*TERMINATED: 03/30/2017*
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

**Dale E. Ho**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Daphne T. Ha**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

**Emily Rong Zhang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Lauren Bonds**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27807*
*Bar Status: Active*

**Neal A. Steiner**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**R. Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Rebecca Kahan Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
(See above for address)
 *TERMINATED: 06/28/2018*
*LEAD ATTORNEY*
*Bar Number: 12322*
*Bar Status: Active*

V.

**Consol Interested Dft**

**Kris W. Kobach**                    represented by   **Bethany J. Lee**
Shawnee County District Attorney's Office
200 SE 7th Street, Room 214
Topeka, KS 66603–3971
785–251–4330
Fax: 785–251–4909
Alternative Phone:
Cell Phone:
Email: bethany.lee@snco.us
 *TERMINATED: 10/24/2017*
*LEAD ATTORNEY*
*Bar Number: 25793*
*Bar Status: Active*

**Bryan J. Brown**
Bryan Brown
3940 SW Chelmsford Road
Topeka, KS 66610

785–925–9029
Alternative Phone:
Cell Phone:
Email: bryanjbrownlaw@gmail.com
*TERMINATED: 10/14/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17634*
*Bar Status: Justice Judge Magist*

**Garrett Robert Roe**
Kansas Secretary of State
120 S 10th Avenue
Memorial Hall, 1st Floor
Topeka, KS 66612–1594
785–296–8473
Fax: 785–368–8032
Alternative Phone: 816–719–4213
Cell Phone:
Email: garrett.roe@ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 26867*
*Bar Status: Active*

**Kris Kobach**
PO Box 155
Lecompton, KS 66612
785–296–2034
Fax: 785–368–8033
Alternative Phone:
Cell Phone:
Email: kkobach@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17280*
*Bar Status: Active*

**Susan Becker**
Ksos
Legal Division
120 SW 10 Ave
Topeka, KS 66612
816–914–7169
Alternative Phone:
Cell Phone:
Email: sue.becker@ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 78697*
*Bar Status: WDMO Active*

**Consol Interested Dft**

**Jamie Shew**
*TERMINATED: 10/24/2016*

represented by **Bradley R. Finkeldei**
Stevens & Brand, LLP – Mass. –
Lawrence
900 Massachusetts Street, Suite 500
PO Box 189
Lawrence, KS 66044
785–843–0811
Fax: 785–843–0341
Alternative Phone:
Cell Phone: 785–550–9699
Email: bradfink@stevensbrand.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 19470*
*Bar Status: Active*

**John T. Bullock**
Stevens & Brand, LLP – Mass. –
Lawrence
900 Massachusetts Street, Suite 500
PO Box 189
Lawrence, KS 66044
785–843–0811
Alternative Phone:
Cell Phone:
Email: jbullock@stevensbrand.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 15119*
*Bar Status: Active*

**Defendant**

**Kris W. Kobach**
*in his official capacity as Secretary of*
*State for the State of Kansas*

represented by **Bethany J. Lee**
(See above for address)
 *TERMINATED: 10/24/2017*
*LEAD ATTORNEY*
*Bar Number: 25793*
*Bar Status: Active*

**Bryan J. Brown**
(See above for address)
 *TERMINATED: 10/14/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17634*
*Bar Status: Justice Judge Magist*

**Garrett Robert Roe**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Bar Number: 26867*
*Bar Status: Active*

**Kris Kobach**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17280*
*Bar Status: Active*

**Susan Becker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 78697*
*Bar Status: WDMO Active*

**Toby Crouse**
Crouse, LLC
11184 Antioch, No. 253
Overland Park, KS 66210
913–957–6832
Alternative Phone:
Cell Phone:
Email: tcrouse@crousellc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 20030*
*Bar Status: Active*

**Defendant**

**Nick Jordan**
*in his official capacity as Secretary of*
*Revenue for the State of Kansas*
*TERMINATED: 08/29/2016*

represented by   **Christopher M. Ray**
The Law Office of Christopher Ray
9809 West 100th Street
Overland Park, KS 66212
913–735–3728
Alternative Phone:
Cell Phone:
Email: c.ray@cmraylegal.com
 *TERMINATED: 03/20/2017*
*LEAD ATTORNEY*
*Bar Number: 26916*
*Bar Status: Termed 83.5.3*

**Joseph Brian Cox**
4439 SW Colly Creek Drive
Topeka, KS 66610
785–231–9134
Alternative Phone:
Cell Phone:
Email: jobcox@sbcglobal.net

*TERMINATED: 12/15/2017*
*LEAD ATTORNEY*
*Bar Number: 11089*
*Bar Status: Active*

**M. J. Willoughby**
Office of Attorney General – Kansas
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612–1597
785–296–4085
Fax: 785–291–3767
Alternative Phone:
Cell Phone:
Email: MJ.Willoughby@ag.ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14059*
*Bar Status: Active*

**Interested Party**

**Tabitha M Lehman**                    represented by   **Michael L. North**
Office of County Counselor – Sedgwick
Sedgwick County Courthouse
525 N. Main, Suite 359
Wichita, KS 67203
316–660–9340
Fax: 316–383–7007
Alternative Phone:
Cell Phone:
Email: Michael.North@sedgwick.gov
*TERMINATED: 04/11/2016*
*LEAD ATTORNEY*
*Bar Number: 09656*
*Bar Status: Active*

V.

**Amicus**

**Public Interest Legal Foundation, Inc.,**   represented by   **Bradley Joseph Schlozman**
**The**                                                        Hinkle Law Firm LLC – East Wichita
Office
1617 North Waterfront Parkway, Suite 400
Wichita, KS 67206–6639
316–267–2000
Fax: 316–660–6596
Alternative Phone: 316–660–6296
Cell Phone: 316–214–0015
Email: bschlozman@hinklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17621*

*Bar Status: Active*

**J. Christian Adams**
Public Interest Legal Foundation – VA
300 N. Washington Street, Suite 405
Alexandria, VA 22314
703–963–8611
Fax: 703–740–1779
Alternative Phone:
Cell Phone:
Email: adams@publicinterestlegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Kaylan Phillips**
Public Interest Legal Foundation–IN
32 E. Washington Street
Suite 1675
Indianapolis, IN 46204
317–203–5599
Fax: 888–815–5641
Alternative Phone:
Cell Phone:
Email: kphillips@publicinterestlegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/18/2016 | 1 | | COMPLAINT with trial location of Kansas City ( Filing fee $400, Internet Payment Receipt Number AKSDC–3689053.), filed by Douglas Hutchinson, Charles Stricker, Steven Wayne Fish, Donna Bucci, Ralph Ortiz, Thomas J. Boynton. (Attachments: # 1 Exhibit A – Notice Letter)(Bonney, Stephen) (Entered: 02/18/2016) |
| 02/18/2016 | 2 | | CIVIL COVER SHEET by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker. (Bonney, Stephen) (Entered: 02/18/2016) |
| 02/18/2016 | 3 | | MOTION to Certify Class by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker. (Attachments: # 1 Memorandum in Support)(Bonney, Stephen) (Entered: 02/18/2016) |

| 02/18/2016 | | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge John W. Lungstrum and Magistrate Judge James P. O'Hara for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ydm) (Entered: 02/18/2016) |
|---|---|---|---|
| 02/18/2016 | | | SUMMONS ISSUED as to Nick Jordan, Kris W. Kobach. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (ydm) (Entered: 02/18/2016) |
| 02/18/2016 | 4 | | MOTION for attorney Dale E. Ho to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–3689619.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit in Support, # 2 ECF Registration Form)(Bonney, Stephen) (Additional attachment(s) added on 2/18/2016: # 3 Ink Signed Affidavit) (mg)) (Entered: 02/18/2016) |
| 02/18/2016 | 5 | | MOTION for attorney R. Orion Danjuma to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–3689729.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit in Support, # 2 ECF Registration Form)(Bonney, Stephen) (Additional attachment(s) added on 2/18/2016: # 3 Ink Signed Affidavit) (mg)) (Entered: 02/18/2016) |
| 02/18/2016 | 6 | | MOTION for attorney Sophia Lin Lakin to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–3689739.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit in Support, # 2 ECF Registration Form)(Bonney, Stephen) (Additional attachment(s) added on 2/18/2016: # 3 Ink Signed Affidavit) (mg)) (Entered: 02/18/2016) |
| 02/18/2016 | 7 | | ORDER REASSIGNING CASE. Case reassigned to District Judge Julie A. Robinson for all further proceedings. District Judge John W. Lungstrum no longer assigned to case Signed by District Judge John W. Lungstrum on 02/18/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ses) (Entered: 02/18/2016) |
| 02/19/2016 | 8 | | ORDER granting 6 Motion to Appear Pro Hac Vice of Sophia Lin Lakin for Thomas J. Boynton,Sophia Lin Lakin for Donna Bucci,Sophia Lin Lakin for Steven Wayne Fish,Sophia Lin Lakin for Douglas Hutchinson,Sophia Lin Lakin for Ralph Ortiz,Sophia Lin Lakin for Charles Stricker pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Unless already registered, pro hac vice counsel should register for electronic notification pursuant to the court's Administrative Procedures by completing a CM/ECF Electronic Filing Registration Form at http://www.ksd.uscourts.gov/. Signed by Magistrate Judge James P. O'Hara on 2/19/16. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mm) (Entered: 02/19/2016) |
| 02/19/2016 | 9 | | ORDER granting 4 Motion to Appear Pro Hac Vice of Dale E. Ho for Thomas J. Boynton,Dale E. Ho for Donna Bucci,Dale E. Ho for Steven Wayne Fish,Dale E. Ho for Douglas Hutchinson,Dale E. Ho for Ralph Ortiz,Dale E. Ho for Charles Stricker pursuant to D. Kan. Rule 83.5.4 for purposes of this |

| | | | |
|---|---|---|---|
| | | | case only. Unless already registered, pro hac vice counsel should register for electronic notification pursuant to the court's Administrative Procedures by completing a CM/ECF Electronic Filing Registration Form at http://www.ksd.uscourts.gov/. Signed by Magistrate Judge James P. O'Hara on 2/19/16. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mm) (Entered: 02/19/2016) |
| 02/19/2016 | 10 | | ORDER granting 5 Motion to Appear Pro Hac Vice of R. Orion Danjuma for Thomas J. Boynton,R. Orion Danjuma for Donna Bucci,R. Orion Danjuma for Steven Wayne Fish,R. Orion Danjuma for Douglas Hutchinson,R. Orion Danjuma for Ralph Ortiz,R. Orion Danjuma for Charles Stricker pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Unless already registered, pro hac vice counsel should register for electronic notification pursuant to the court's Administrative Procedures by completing a CM/ECF Electronic Filing Registration Form at http://www.ksd.uscourts.gov/. Signed by Magistrate Judge James P. O'Hara on 2/19/16. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mm) (Entered: 02/19/2016) |
| 02/19/2016 | 11 | | MOTION for attorney Angela M. Liu to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−3690754.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit in Support, # 2 ECF Registration Form)(Bonney, Stephen) (Entered: 02/19/2016) |
| 02/19/2016 | 12 | | ORDER granting 11 Motion to Appear Pro Hac Vice of Angela M. Liu for Thomas J. Boynton,Angela M. Liu for Donna Bucci,Angela M. Liu for Steven Wayne Fish,Angela M. Liu for Douglas Hutchinson,Angela M. Liu for Ralph Ortiz,Angela M. Liu for Charles Stricker pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Unless already registered, pro hac vice counsel should register for electronic notification pursuant to the court's Administrative Procedures by completing a CM/ECF Electronic Filing Registration Form at http://www.ksd.uscourts.gov/. Signed by Magistrate Judge James P. O'Hara on 2/19/16. (mm) (Entered: 02/19/2016) |
| 02/19/2016 | 13 | | ENTRY OF APPEARANCE by Kris W. Kobach on behalf of Kris W. Kobach. (Kobach, Kris) (Entered: 02/19/2016) |
| 02/19/2016 | 14 | | MOTION to Consolidate Cases by Defendant Kris W. Kobach. (Kobach, Kris) (Entered: 02/19/2016) |
| 02/22/2016 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 3 MOTION to Certify Class . The motion will be resolved by the District Judge.(ah) (Entered: 02/22/2016)** |
| 02/22/2016 | 15 | | MOTION for attorney Rebecca Kahan Waldman to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−3692432.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit in Support, # 2 ECF Registration Form)(Bonney, Stephen) (Entered: 02/22/2016) |
| 02/23/2016 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 14 MOTION to Consolidate Cases . The motion will be resolved by the District Judge.(ah) (Entered: 02/23/2016)** |

| 02/23/2016 | 16 | | ORDER granting 15 Motion to Appear Pro Hac Vice of Rebecca Kahan Waldman for Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, and Charles Stricker pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge James P. O'Hara on 2/23/16. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (kao) (Entered: 02/23/2016) |
| 02/24/2016 | 17 | | MOTION for attorney Neil A. Steiner to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−3694725.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit in Support, # 2 ECF Registration Form)(Bonney, Stephen) (Entered: 02/24/2016) |
| 02/24/2016 | 18 | | ORDER granting 17 Motion to Appear Pro Hac Vice of Neal A. Steiner for Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, and Charles Stricker pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge James P. O'Hara on 2/24/16. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kao) (Entered: 02/24/2016) |
| 02/26/2016 | 19 | | MOTION for Preliminary Injunction by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker (Attachments: # 1 Memorandum in Support)(Bonney, Stephen) (Entered: 02/26/2016) |
| 02/26/2016 | 20 | | AFFIDAVIT of Attorney R. Orion Danjuma re 19 MOTION for Preliminary Injunction by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker (Attachments: # 1 Exhibit 1 – McDonald Report, # 2 Exhibit 2 – Fish Declaration, # 3 Exhibit 3 – Ortiz Declaration, # 4 Exhibit 4 – Bucci Declaration, # 5 Exhibit 5 – Stricker Declaration, # 6 Exhibit 6 – Boynton Declaration, # 7 Exhibit 7 – Hutchinson Declaration, # 8 Exhibit 8 – Miller Memo, # 9 Exhibit 9 – Minnite Report, # 10 Exhibit 10 – LWV v. Newby Hearing Transcript)(Bonney, Stephen) Exhibits 2–7 blocked from public view due to violation of privacy policy; redacted versions added 2/26/16: # 11 Exhibit 2 – Redacted, # 12 Exhibit 3 – Redacted, # 13 Exhibit 4 – Redacted, # 14 Exhibit 5 – Redacted, # 15 Exhibit 6 – Redacted, # 16 Exhibit 7 – Redacted) (kao). (Entered: 02/26/2016) |
| 02/29/2016 | 21 | | ORDER – This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction (Doc. 19), filed on February 26, 2016. The following schedule shall apply to this motion: Defendants' Memorandum in Opposition is due no later than March 18, 2016. Plaintiffs' Reply Memorandum is due no later than April 1, 2016. The Court sets this matter for hearing on April 14, 2016, at 9:00 a.m. in Kansas City, Kansas Courtroom 427. Signed by District Judge Julie A. Robinson on 2/29/16. (kao) (Entered: 02/29/2016) |
| 03/01/2016 | 22 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 19 MOTION for Preliminary Injunction : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Parties are notified that this proceeding will be recorded under the Cameras in Courts pilot unless one or more parties objects. To object to recording, complete the form provided at this link (http://www.ksd.uscourts.gov/cameras−in−courts/) and return it to ksd_robinson_chambers@ksd.uscourts.gov at least five days |

| | | | prior to the proceeding unless otherwise ordered by the judge. Motion Hearing set for 4/14/2016 at 09:00 AM in KC Courtroom 476 (KHV) before District Judge Julie A. Robinson. (bw) (Entered: 03/01/2016) |
|---|---|---|---|
| 03/02/2016 | 23 | | MOTION for Extension of Time to File Response as to 3 MOTION to Certify Class *until March 18, 2016* by Defendant Kris W. Kobach. (Brown, Bryan) (Entered: 03/02/2016) |
| 03/03/2016 | 24 | | CLERKS ORDER EXTENDING TIME until March 25, 2016 for Defendants Kris W. Kobach, Nick Jordan to answer or otherwise plead Signed by deputy clerk on March 3, 2016. (ydm) (Entered: 03/03/2016) |
| 03/03/2016 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 23 MOTION for Extension of Time to File Response as to 3 MOTION to Certify Class *until March 18, 2016*. The motion will be resolved by the District Judge.(ah)** (Entered: 03/03/2016) |
| 03/03/2016 | 25 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker re 23 MOTION for Extension of Time to File Response as to 3 MOTION to Certify Class *until March 18, 2016*. (Attachments: # 1 Exhibit E–mail)(Bonney, Stephen) (Entered: 03/03/2016) |
| 03/03/2016 | 26 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 23 MOTION for Extension of Time to File Response as to 3 MOTION to Certify Class *until March 18, 2016* : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) TELEPHONE Motion Hearing set for 3/7/2016 at 01:00 PM via telephone conference before District Judge Julie A. Robinson. All counsel who wish to participate in this telephone pretrial conference are instructed to dial into the conference line. The CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE is 4697748#. (bw) (Entered: 03/03/2016) |
| 03/03/2016 | 27 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker re 14 MOTION to Consolidate Cases. (Bonney, Stephen) (Entered: 03/03/2016) |
| 03/04/2016 | | | NOTICE TO COUNSEL: On 03/04/2016 a Response to the 14 Motion to Consolidate Cases was filed in related case #15–9300, document #79, by Defendant Jamie Shew. (mg) (Entered: 03/07/2016) |
| 03/07/2016 | | | SUMMONS ISSUED as to Nick Jordan. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (mm) (Entered: 03/07/2016) |
| 03/07/2016 | 28 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: granting 23 Motion for Extension of Time to File Response/Reply. An order will follow. TELEPHONE CONFERENCE held on 3/7/2016. (Court Reporter Kelli Stewart.) (bw) (Entered: 03/07/2016) |
| 03/08/2016 | 29 | | MEMORANDUM AND ORDER granting in part and denying in part 14 Motion to Consolidate Cases. Case No. 15–9300 shall be consolidated for pretrial management and discovery with Case No. 16–2105. Case No. 16–2105 is designated as the lead case. See Order for additional deadlines and hearings. Signed by District Judge Julie A. Robinson on 3/8/16. (kao) |

| | | | |
|---|---|---|---|
| | | | (Entered: 03/08/2016) |
| 03/08/2016 | | | DOCKET ANNOTATION: Per 29 Order Case No. 15–9300 shall be consolidated for pretrial management and discovery with Case No. 16– 2105. Case No. 16–2105 is designated as the lead case. All future discovery– related filings shall bear the consolidated caption on this Order and shall be filed in only the lead case. Class certification pleadings, dispositive motions, and other filings related to same shall be filed in the specific case without a consolidated caption. (kao) (Entered: 03/08/2016) |
| 03/08/2016 | 30 | | ORDER GOVERNING DISCOVERY. Signed by Magistrate Judge James P. O'Hara on 3/8/2016. (ah) (Entered: 03/08/2016) |
| 03/08/2016 | 31 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING:  Telephone Conference set for 3/23/2016 at 02:00 PM before Magistrate Judge James P. O'Hara. See DE # 29 – Memorandum & Order for details. All counsel who wish to participate in this telephone conference are instructed to dial into the conference line. The CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE is 8914911#. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kao) (Entered: 03/08/2016) |
| 03/09/2016 | 32 | | SUMMONS RETURNED EXECUTED –– Personal Service by Douglas Hutchinson, Donna Bucci, Ralph Ortiz, Steven Wayne Fish, Charles Stricker, Thomas J. Boynton upon Kris W. Kobach served on 2/19/2016, answer due 3/25/2016. (Bonney, Stephen) (Entered: 03/09/2016) |
| 03/09/2016 | 33 | | SUMMONS RETURNED EXECUTED –– Personal Service by Douglas Hutchinson, Donna Bucci, Ralph Ortiz, Steven Wayne Fish, Charles Stricker, Thomas J. Boynton upon Nick Jordan served on 2/18/2016, answer due 3/25/2016. (Bonney, Stephen) (Entered: 03/09/2016) |
| 03/09/2016 | 34 | | SUMMONS RETURNED EXECUTED –– Personal Service by Douglas Hutchinson, Donna Bucci, Ralph Ortiz, Steven Wayne Fish, Charles Stricker, Thomas J. Boynton upon Nick Jordan served on 3/8/2016, answer due 3/29/2016. (Bonney, Stephen) (Entered: 03/09/2016) |
| 03/09/2016 | 35 | | CERTIFICATE OF SERVICE of Discovery Requests by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker. (Bonney, Stephen) (Entered: 03/09/2016) |
| 03/10/2016 | 36 | | ORDER SETTING SCHEDULING CONFERENCE: Scheduling Conference set for 3/23/2016 at 02:00 PM by Telephone before Magistrate Judge James P. O'Hara. Report of Parties Planning Meeting deadline 3/17/2016. Rule 26 Initial Disclosure Deadline set for 3/17/2016. Signed by Magistrate Judge James P. O'Hara on 3/10/2016. (ah) (Entered: 03/10/2016) |
| 03/10/2016 | 37 | | CLERKS ORDER EXTENDING TIME until 3/24/16 for Defendant Nick Jordan to answer or otherwise plead. Signed by deputy clerk on 3/10/16. (hw) (Entered: 03/10/2016) |
| 03/16/2016 | 38 | | CERTIFICATE OF SERVICE of Objections to Fish Expedited Discovery by Kris W. Kobach, Kris W. Kobach re 35 Certificate of Service. (Roe, Garrett) (Entered: 03/16/2016) |
| 03/17/2016 | 39 | | |

| | | | |
|---|---|---|---|
| | | | AMENDED COMPLAINT against Nick Jordan, Kris W. Kobach, filed by Douglas Hutchinson, Donna Bucci, The League of Women Voters of Kansas, Ralph Ortiz, Steven Wayne Fish, Charles Stricker, Thomas J. Boynton. (Attachments: # 1 Exhibit A – Notice Letter, Nov. 20, 2015, # 2 Exhibit B – Notice Letter, Dec. 17, 2015)(Bonney, Stephen) (Entered: 03/17/2016) |
| 03/18/2016 | 40 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Tabitha Lehman on April 1, 2016. (Bonney, Stephen) (Entered: 03/18/2016) |
| 03/22/2016 | 41 | | Joint MOTION for Discovery *(Status Report and Motion to Resolve Discovery Issues)* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit A – 1st Interrogatories to Def. Kobach, # 2 Exhibit B – 1st RFPs to Def. Kobach, # 3 Exhibit C – 1st RFPs to Def. Jordan, # 4 Exhibit D – Def. Kobach's Objections)(Bonney, Stephen) (Entered: 03/22/2016) |
| 03/22/2016 | 42 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Bryan Caskey on March 31, 2016. (Bonney, Stephen) (Entered: 03/22/2016) |
| 03/22/2016 | 43 | | TRANSCRIPT of Telephone Status Conference (21 pgs) held 03/07/2016 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Garrett Roe. **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/20/2016. (ks) (Entered: 03/22/2016) |
| 03/23/2016 | 44 | | SUPPLEMENTAL NOTICE of Discovery Disputes by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # 1 Protective Order Draft)(Bonney, Stephen) (Entered: 03/23/2016) |
| 03/23/2016 | 45 | | RESPONSE by Defendant Nick Jordan re 41 Joint MOTION for Discovery *Status Report and Motion to Resolve Discovery Issues* (Willoughby, M.) (Entered: 03/23/2016) |
| 03/23/2016 | 46 | | ORDER granting 41 joint motion for resolution of discovery disputes. The court addressed the issues raised in the motion at the telephone conference held on March 23, 2016. The court's rulings made at that conference will be |

|  |  |  | set forth in a separate scheduling order. Signed by Magistrate Judge James P. O'Hara on 3/23/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 03/23/2016) |
| --- | --- | --- | --- |
| 03/24/2016 | 47 |  | NOTICE OF SERVICE by Kris W. Kobach of Expedited Discovery *Responses on March 23, 2016.* (Brown, Bryan) (Entered: 03/24/2016) |
| 03/24/2016 | 48 |  | NOTICE of Hearing: **THIS IS AN OFFICIAL NOTICE FOR THIS HEARING** 3 MOTION to Certify Class : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for 6/14/2016 at 01:30 PM in KC Courtroom 427 (JAR) before District Judge Julie A. Robinson. (bw) (Entered: 03/24/2016) |
| 03/24/2016 | 49 |  | SCHEDULING ORDER: regarding 3 Motion to Certify Class and 19 Motion for Preliminary Injunction in 16–2105 and (60) Motion to Certify Class in 15–9300. Discovery deadline 6/17/2016. Dispositive motion deadline 7/15/2016. Proposed Pretrial Order due by 6/24/2016. Final Pretrial Conference set for 7/1/2016 at 9:00 AM in KC Courtroom 223 before Magistrate Judge James P. O'Hara. Jury Trial set for 5/16/2017 at 9:00 AM in KC Courtroom 427 in Case No. 15–9300; and in Case No. 16–2105 for 5/23/2017 at 9:00 AM in KC Courtroom 427 before District Judge Julie A. Robinson; estimated trial time 2–4 days. SEE ORDER FOR ALL ADDITIONAL SCHEDULED DEADLINES AND HEARINGS. Signed by Magistrate Judge James P. O'Hara on 3/24/2016. (kg) Modified on 3/24/2016 (mm). (Entered: 03/24/2016) |
| 03/24/2016 | 50 |  | NOTICE OF SERVICE by Nick Jordan of Responses and Objections to Plaintiffs' (Fish Plaintiffs) First Request for Production (Willoughby, M.) (Entered: 03/24/2016) |
| 03/24/2016 | 51 |  | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Representative of Kansas Secretary of State's Office on April 6, 2016 (Bonney, Stephen) (Entered: 03/24/2016) |
| 03/28/2016 | 52 |  | JOINT MOTION for Protective Order by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit Ex. A – Redlined Draft Protective Order, # 2 Exhibit Ex. B. Def. Kobach Resps. to Interrogatories)(Bonney, Stephen) (Entered: 03/28/2016) |
| 03/29/2016 | 53 |  | TRANSCRIPT of Discovery and Status Conference held March 23, 2016 before Judge James P. O'Hara, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: American Civil Liberties Union.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/27/2016. (kg) (Entered: 03/29/2016) |
|---|---|---|---|
| 03/29/2016 | 54 | | ORDER granting 52 joint motion for protective order. Signed by Magistrate Judge James P. O'Hara on 3/29/2016. (ah) (Entered: 03/29/2016) |
| 03/29/2016 | 55 | | PROTECTIVE ORDER. Signed by Magistrate Judge James P. O'Hara on 3/29/2016. (ah) (Entered: 03/29/2016) |
| 03/29/2016 | 56 | | NOTICE OF SERVICE by Nick Jordan of response to discovery. (Cox, Joseph) (Entered: 03/29/2016) |
| 03/29/2016 | 57 | | RESPONSE by Defendant Nick Jordan re 19 MOTION for Preliminary Injunction. (Willoughby, M.) (Entered: 03/29/2016) |
| 03/29/2016 | 58 | | SEALED MOTION for Leave to File Under Seal *Brief and Exhibit* by Defendant Kris W. Kobach. (Attachments: # 1 Proposed Sealed Document Brief with confidential information, # 2 Exhibit Index, # 3 Proposed Sealed Document Exhibits)(Roe, Garrett) (Entered: 03/29/2016) |
| 03/29/2016 | 59 | | MOTION for Leave to File Excess Pages *Response to Plaintiff's Motion for Preliminary Injunction* by Defendant Kris W. Kobach. (Attachments: # 1 Over length Brief_Redacted, # 2 Exhibit Index # 3 Exhibits_Redacted)(Roe, Garrett) (Entered: 03/29/2016) |
| 03/30/2016 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 59 MOTION for Leave to File Excess Pages *Response to Pls Mtn for Preliminary Injunction*, 58 SEALED MOTION for Leave to File Under Seal *Brief and Exhibit*. The motion will be resolved by the District Judge.(ah)** (Entered: 03/30/2016) |
| 03/30/2016 | 60 | | MEMORANDUM AND ORDER denying without prejudice 58 Motion for Leave to File Under Seal. See Order for details. Signed by District Judge Julie A. Robinson on 3/30/16. (kao) (Entered: 03/30/2016) |
| 03/30/2016 | 61 | | ORDER granting as unopposed 59 Motion for Leave to File Excess Pages. Signed by District Judge Julie A. Robinson on 3/30/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 03/30/2016) |
| 03/31/2016 | 62 | | CERTIFICATE OF SERVICE of Initial Disclosures by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker. (Bonney, Stephen) (kao). (Entered: 03/31/2016) |
| 03/31/2016 | 63 | | NOTICE OF SERVICE by Nick Jordan of Initial Disclosures. (Cox, Joseph) (Entered: 03/31/2016) |
| 03/31/2016 | 64 | | MOTION to Dismiss by Defendant Nick Jordan. (Cox, Joseph) (Entered: 03/31/2016) |
| 03/31/2016 | 65 | | MEMORANDUM IN SUPPORT of 64 MOTION to Dismiss by Defendant Nick Jordan. (Cox, Joseph) (Entered: 03/31/2016) |
| 03/31/2016 | 66 | | MOTION to Stay Discovery *And Other Pretrial Activities* by Defendant Nick Jordan. (referred to Magistrate Judge James P. O'Hara) (Willoughby, M.) |

| | | | |
|---|---|---|---|
| | | | (Entered: 03/31/2016) |
| 04/01/2016 | 67 | | MOTION for Leave to Permit Limited Entry of Appearance by Interested Party Tabitha M Lehman. (referred to Magistrate Judge James P. O'Hara) (Attachment: # 1 Exhibit)(North, Michael) (Entered: 04/01/2016) |
| 04/01/2016 | 68 | | NOTICE OF SERVICE by Kris W. Kobach of Initial Disclosures. (Roe, Garrett) (Entered: 04/01/2016) |
| 04/01/2016 | 69 | | ORDER granting 67 unopposed motion for limited entry of appearance in this case by Michael North to represent interested party Tabitha M. Lehman at her deposition and in related filings. Signed by Magistrate Judge James P. O'Hara on 4/1/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 04/01/2016) |
| 04/01/2016 | 70 | | NOTICE OF SERVICE by Parker Bednasek, Alder Cromwell, Cody Keener of Expert Disclosures. (Lawrence, William) (Entered: 04/01/2016) |
| 04/04/2016 | 71 | | CERTIFICATE OF SERVICE of Expert Disclosures by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker. (Bonney, Stephen) (Entered: 04/04/2016) |
| 04/04/2016 | 72 | | ORDER regarding 66 Motion to Stay Discovery. Before the Court is Kansas Secretary of Revenue Nick Jordan's request for an expedited ruling on his Motion to Dismiss, filed March 31, 2016. This request is included in Secretary Jordan's Motion to Stay Discovery and Other Pretrial Activities (Doc. 66), which is not yet fully briefed. Secretary Jordan's request is denied. The relief sought in the motion to stay is otherwise referred to Magistrate Judge James P. O'Hara for disposition. Signed by District Judge Julie A. Robinson on 4/4/16. (kao) (Entered: 04/04/2016) |
| 04/04/2016 | 73 | | SUPPLEMENTAL NOTICE of Supplemental discovery resonses by Kris W. Kobach re 47 Notice of Service *per Plaintiffs' requests*. (Brown, Bryan) (Entered: 04/04/2016) |
| 04/05/2016 | 74 | | NOTICE OF SERVICE by Nick Jordan of First Request for Production. (Cox, Joseph) (Entered: 04/05/2016) |
| 04/05/2016 | 75 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re 66 MOTION to Stay Discovery *And Other Pretrial Activities*. (Bonney, Stephen) (Entered: 04/05/2016) |
| 04/05/2016 | 76 | | UNOPPOSED MOTION to File Amicus Brief by Amicus Public Interest Legal Foundation, Inc., The. (Schlozman, Bradley) (Entered: 04/05/2016) |
| 04/05/2016 | 77 | | AMENDED MOTION to Certify Class by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Supplemental Memorandum of Law in Support of Motion, # 2 Declaration Listing Enclosed Exhibits, # 3 Exhibit Caskey Affidavit, # 4 Exhibit Article regarding KS birth records, # 5 Exhibit Article regarding suspended voters, # 6 Exhibit Editorial, # 7 Exhibit Fish Declaration, # 8 Exhibit Ortiz Declaration, # 9 Exhibit Bucci Declaration, # 10 Exhibit Stricker Declaration, # 11 Exhibit Boynton Declaration, # 12 Exhibit Hutchinson Declaration)(Bonney, Stephen) (Attachments 7–12 blocked from public view due to violation of privacy |

| | | |
|---|---|---|
| | | policy; redacted versions added on 4/6/16: # <u>13</u> Exhibit E – Redacted, # <u>14</u> Exhibit F – Redacted, # <u>15</u> Exhibit G – Redacted, # <u>16</u> Exhibit H – Redacted, # <u>17</u> Exhibit I – Redacted, # <u>18</u> Exhibit J – Redacted) (kao). (Entered: 04/05/2016) |
| 04/05/2016 | <u>78</u> | MEMORANDUM IN SUPPORT of <u>76</u> UNOPPOSED MOTION to File Amicus Brief by Amicus Public Interest Legal Foundation, Inc., The. (Attachments: # <u>1</u> Appendix (Proposed Amicus Brief), # <u>2</u> Exhibit A to Proposed Amicus Brief)(Schlozman, Bradley) (Entered: 04/05/2016) |
| 04/05/2016 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: <u>76</u> Unopposed MOTION to File Amicus Brief . The motion will be resolved by the District Judge.**(ah) (Entered: 04/05/2016) |
| 04/06/2016 | 79 | ORDER granting <u>76</u> Unopposed Motion to File Amicus Brief. Public Interest Legal Foundation shall file the proposed Amicus Curiae brief forthwith. Signed by District Judge Julie A. Robinson on 4/6/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 04/06/2016) |
| 04/06/2016 | <u>80</u> | AMICUS BRIEF by Amicus Public Interest Legal Foundation, Inc., The. (Attachments: # <u>1</u> Exhibit A)(Schlozman, Bradley) (Entered: 04/06/2016) |
| 04/07/2016 | <u>81</u> | NOTICE OF SERVICE by Nick Jordan of First Interrogatories. (Cox, Joseph) (Entered: 04/07/2016) |
| 04/07/2016 | <u>82</u> | REPLY to Response to Motion by Defendant Nick Jordan re: <u>66</u> MOTION to Stay Discovery *And Other Pretrial Activities*. (Cox, Joseph) (Entered: 04/07/2016) |
| 04/08/2016 | <u>83</u> | NOTICE OF SERVICE by Nick Jordan of Objections, Amended Objections. (Cox, Joseph) (Entered: 04/08/2016) |
| 04/08/2016 | <u>84</u> | ORDER denying <u>66</u> Motion to Stay Discovery. Secretary Jordan's motion to stay discovery and pretrial activities is denied. However, until Judge Robinson decides the immunity issue, all discovery served on Secretary Jordan shall be narrowly restricted as discussed herein. Signed by Magistrate Judge James P. O'Hara on 4/8/2016. (ah) (Entered: 04/08/2016) |
| 04/11/2016 | <u>85</u> | MOTION to Withdraw Limited Entry of Appearance by Interested Party Tabitha M Lehman. (referred to Magistrate Judge James P. O'Hara) (North, Michael) (Entered: 04/11/2016) |
| 04/11/2016 | 86 | ORDER granting <u>85</u> motion to withdraw limited entry of appearance. The Clerk is directed to remove Mr. North from the CM/ECF electronic notification system. Signed by Magistrate Judge James P. O'Hara on 4/11/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 04/11/2016) |
| 04/11/2016 | <u>87</u> | NOTICE OF SERVICE by Nick Jordan of Request for Admissions. (Cox, Joseph) (Entered: 04/11/2016) |
| 04/12/2016 | <u>88</u> | UNOPPOSED MOTION for Leave to File Excess Pages *for Consolidated Reply in Support of Motion for Preliminary Injunction* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # <u>1</u> |

| | | |
|---|---|---|
| | | Consolidated Reply Brief, # 2 Exhibit Index, # 3 Exhibit 11 – Def. Kobach Resp. to Pls.' 1st Interrogs., # 4 Exhibit 12 – Def. Kobach 2d Suppl. to Pls.' 1st RFP, # 5 Exhibit 13 – March 23 Transcript Excerpts, # 6 Exhibit 14 – Caskey Dep. Excerpts, # 7 Exhibit 15 – McDonald Suppl. Rep., # 8 Exhibit 16 – Minnite Suppl. Rep., # 9 Exhibit 17 – Lehman Dep. Excerpts, # 10 Exhibit 18 – Caskey. Aff. (LWV v. Newby))(Bonney, Stephen) (Attachment 10 blocked from public view due to violation of privacy policy; redacted version added on 4/13/2016: # 11 Exhibit 18 – Redacted) (kao). (Entered: 04/12/2016) |
| 04/13/2016 | 89 | ORDER granting as unopposed 88 Motion for Leave to File Excess Pages. Signed by District Judge Julie A. Robinson on 4/13/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 04/13/2016) |
| 04/14/2016 | 90 | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: taking under advisement 19 Motion for Preliminary Injunction; MOTION HEARING held on 4/14/2016 re 19 MOTION for Preliminary Injunction filed by Thomas J. Boynton, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Ralph Ortiz, Donna Bucci. (Court Reporter Kelli Stewart.) (bw) (Entered: 04/14/2016) |
| 04/15/2016 | 91 | RECEIPT of acknowledgement of return of exhibits used at the PI hearing on 4/14/2016 as to Steven Wayne Fish, Nick Jordan, Kris W. Kobach (bw) (Entered: 04/15/2016) |
| 04/21/2016 | 92 | SURREPLY by Defendant Nick Jordan re: 88 Unopposed MOTION for Leave to File Excess Pages *for Consolidated Reply in Support of 19 Motion for Preliminary Injunction.* (Cox, Joseph) (Entered: 04/21/2016) |
| 04/21/2016 | 93 | NOTICE OF SERVICE by Nick Jordan of First Request for Production. (Cox, Joseph) (Entered: 04/21/2016) |
| 04/21/2016 | 94 | REPLY to Response to Motion by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re: 19 MOTION for Preliminary Injunction. (Attachments: # 1 Exhibit Index, # 2 Exhibit 11 – Def. Kobach Resp. to Pls.' 1st Interrogs., # 3 Exhibit 12 – Def. Kobach 2d Suppl. to Pls.' 1st RFP, # 4 Exhibit 13 – March 23 Transcript Excerpts, # 5 Exhibit 14 – Caskey Dep. Excerpts, # 6 Exhibit 15 – McDonald Suppl. Rep., # 7 Exhibit 16 – Minnite Suppl. Rep., # 8 Exhibit 17 – Lehman Dep. Excerpts, # 9 Exhibit 18 – Caskey. Aff. (LWV v. Newby))(Bonney, Stephen) (Entered: 04/21/2016) |
| 04/21/2016 | 95 | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re 64 MOTION to Dismiss. (Attachments: # 1 Exhibit Index, # 2 Exhibit A – County Election Manual, # 3 Exhibit B – Caskey Decl., # 4 Exhibit C – Caskey Dep. Excerpts, # 5 Exhibit D – Lehman Decl. (Kobach v. EAC))(Bonney, Stephen) (Entered: 04/21/2016) |
| 04/21/2016 | 96 | MOTION for extension of time to Respond to Motions for Class Certification by Defendant Nick Jordan. (Cox, Joseph) (Entered: 04/21/2016) |
| 04/21/2016 | 97 | RESPONSE by Defendant Kris W. Kobach re 19 MOTION for Preliminary Injunction. (Attachments: # 1 Exhibit List Declaration Regarding Exhibits, # 2 Exhibit Exhibits for Resp to PI)(Roe, Garrett) (Entered: 04/21/2016) |

| 04/22/2016 | 98 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re 96 MOTION for extension of time. (Bonney, Stephen) (Entered: 04/22/2016) |
|---|---|---|---|
| 04/22/2016 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 96 MOTION for extension of time . The motion will be resolved by the District Judge.(ah)** (Entered: 04/22/2016) |
| 04/27/2016 | 99 | | NOTICE by Defendants Nick Jordan, Kris W. Kobach of taking deposition of Ortiz, Boynton,Stricker, Bucci on May 4, 2016 (Cox, Joseph) (Entered: 04/27/2016) |
| 04/28/2016 | 100 | | NOTICE OF SERVICE by Nick Jordan of responses to plaintiffs second Request for Production. (Cox, Joseph) (Entered: 04/28/2016) |
| 04/29/2016 | 101 | | NOTICE OF SERVICE by Nick Jordan of notice of intent to issue subpoena. (Cox, Joseph) (Entered: 04/29/2016) |
| 04/29/2016 | 102 | | ORDER granting in part 96 Motion for Extension of Time. Defendants' Response deadline 5/17/2016. Plaintiffs' Reply deadline 6/7/2016. There will be no further extensions of time on the class certification briefs and this motion shall proceed to hearing on June 14, 2016, as scheduled. Signed by District Judge Julie A. Robinson on 4/29/16. (mm) (Entered: 04/29/2016) |
| 05/01/2016 | 103 | | NOTICE by Defendants Nick Jordan, Kris W. Kobach of taking deposition of Hutchinson, Fish on May 10, 2016. (Cox, Joseph) (Entered: 05/01/2016) |
| 05/02/2016 | 104 | | MOTION for Protective Order *Regarding Scheduling of Depositions of Plaintiffs Bucci and Stricker* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit Index, # 2 Exhibit 1 – Waldman Decl., # 3 Exhibit 1A – Waldman–Cox Emails, 4/28, # 4 Exhibit 1B – Waldman–Cox Emails, 4/29, # 5 Exhibit 1C – Waldman–Cox Emails, 4/29 – 5/1, # 6 Exhibit 2 – Ho Decl., # 7 Exhibit 2A – Cox–Ho Email, 4/18, # 8 Exhibit 2B – Ho–Cox Email, 4/18, # 9 Exhibit 2C – Roe–Ho Email, 4/21, # 10 Exhibit 2D – Ho–Roe Email, 4/26, # 11 Exhibit 2E – Ho–Roe Email, 4/27)(Bonney, Stephen) (Entered: 05/02/2016) |
| 05/02/2016 | 105 | | ORDER SETTING TELEPHONE CONFERENCE AND EXPEDITING BRIEFING DEADLINES regarding 104 Motion for Protective Order. The court will hold a telephone conference to address the motion at 10:30 a.m. on May 3, 2016. Counsel are instructed to dial into the conference line. The CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE is 8914911#. Any response to the motion shall be filed by 2:00 p.m. today, May 2, 2016. Any reply shall be filed by 5:00 p.m. today. Signed by Magistrate Judge James P. O'Hara on 5/2/16. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 05/02/2016) |
| 05/02/2016 | 106 | | RESPONSE by Defendant Nick Jordan re 104 MOTION for Protective Order *Regarding Scheduling of Depositions of Plaintiffs Bucci and Stricker* (Willoughby, M.) (Entered: 05/02/2016) |
| 05/02/2016 | 107 | | |

| | | |
|---|---|---|
| | | EXHIBIT(S) IN SUPPORT of 106 Response to Motion . (Willoughby, M.) (Entered: 05/02/2016) |
| 05/02/2016 | 108 | REPLY to Response to Motion by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re: 104 MOTION for Protective Order *Regarding Scheduling of Depositions of Plaintiffs Bucci and Stricker* (Bonney, Stephen) (Entered: 05/02/2016) |
| 05/02/2016 | 109 | MOTION for extension of time *to file an expert report and modify discovery deadlines* by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 05/02/2016) |
| 05/03/2016 | 110 | ORDER granting in part 109 unopposed motion for extension of deadlines set in the scheduling order (ECF doc. 49). The motion is granted to the extent that the deadline for defendants to file expert reports is extended to May 16, 2016. However, in order to keep the current pretrial conference date of July 1, 2016 (and related June 24, 2016 deadline for submission of a proposed pretrial order), extensions of other deadlines are shorter than requested. Specifically, the deadline for rebuttal expert reports is extended to June 10, 2016, and the deadline for the close of discovery is extended to June 20, 2016. Signed by Magistrate Judge James P. O'Hara on 5/3/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 05/03/2016) |
| 05/03/2016 | 111 | ORDER denying 104 Motion for Protective Order. Signed by Magistrate Judge James P. O'Hara on 5/3/2016. (ah) (Entered: 05/03/2016) |
| 05/04/2016 | 112 | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker of Responses and Objections to Defendant Jordan's First Requests for Production (Bonney, Stephen) (Entered: 05/04/2016) |
| 05/05/2016 | 113 | NOTICE OF VOLUNTARY DISMISSAL by All Plaintiffs *of Plaintiff Ralph Ortiz* (Bonney, Stephen) (Entered: 05/05/2016) |
| 05/05/2016 | 114 | REPLY to Response to Motion by Defendant Nick Jordan re: 64 MOTION to Dismiss (Cox, Joseph) (Entered: 05/05/2016) |
| 05/06/2016 | 115 | TRANSCRIPT of Motion for Preliminary Injunction Hearing (196 pgs) held 04/14/2016 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. J. Brian Cox. <br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of |

| | | | |
|---|---|---|---|
| | | | Transcript Restriction set for 8/4/2016. (ks) (Entered: 05/06/2016) |
| 05/09/2016 | 116 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas of Answers and Objections to Defendant Jordan's First Interrogatories to Plaintiffs Fish, Bucci, Stricker, Boynton, and Hutchinson (Bonney, Stephen) (Entered: 05/09/2016) |
| 05/09/2016 | 117 | | ENTRY OF APPEARANCE by Christopher M. Ray on behalf of Nick Jordan. (Ray, Christopher) (Entered: 05/09/2016) |
| 05/09/2016 | 118 | | NOTICE OF SUPPLEMENTAL AUTHORITY by Kris W. Kobach re: MOTION for Preliminary Injunction 19 filed by Plaintiff Thomas J. Boynton, Plaintiff Charles Stricker, Plaintiff Douglas Hutchinson, Plaintiff Steven Wayne Fish, Plaintiff Ralph Ortiz, Plaintiff Donna Bucci (Attachments: # 1 Exhibit)(Kobach, Kris) (Entered: 05/09/2016) |
| 05/10/2016 | 119 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Responses and Objections to Defendant Nick Jordan's First Request for Admissions (Bonney, Stephen) (Entered: 05/10/2016) |
| 05/10/2016 | 120 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiffs' Third Request for Production of Documents to Defendant Kris Kobach (Bonney, Stephen) (Entered: 05/10/2016) |
| 05/11/2016 | 121 | | SUPPLEMENT to 20 Affidavit in Support of Motion,,, *Supplemental Declaration of Steven Wayne Fish* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 05/11/2016) |
| 05/11/2016 | 122 | | NOTICE OF SERVICE by Parker Bednasek, Alder Cromwell, Cody Keener of Rule 26 Disclosures (Lawrence, William) (Entered: 05/11/2016) |
| 05/11/2016 | 123 | | NOTICE OF SERVICE by Kris W. Kobach of 26(a) Supplemental Disclosures (Roe, Garrett) (Entered: 05/11/2016) |
| 05/12/2016 | 124 | | NOTICE OF SERVICE by Nick Jordan of Supplemental disclosures (Cox, Joseph) (Entered: 05/12/2016) |
| 05/16/2016 | 125 | | RETURN OF SERVICE of subpoena filed by Defendant Nick Jordan executed upon Doug Bonney on May 2, 2016 by Personal Service. (Willoughby, M.) (Entered: 05/16/2016) |
| 05/16/2016 | 126 | | RESPONSE to 118 Notice of Supplemental Authority, by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 05/16/2016) |
| 05/16/2016 | 127 | | NOTICE OF SERVICE by Nick Jordan of First Request for Admissions to Plaintiff The League of Women Voters of Kansas. (Cox, Joseph) (Entered: 05/16/2016) |
| 05/17/2016 | 128 | | NOTICE OF SERVICE by Kris W. Kobach of Rule 26(b) Expert Report (Attachments: # 1 Hans von Spakovsky Expert Report)(Roe, Garrett) (Entered: |

| | | | |
|---|---|---|---|
| | | | 05/17/2016) |
| 05/17/2016 | 129 | | MEMORANDUM AND ORDER: Plaintiffs' Motion for Preliminary Injunction (Doc. 19) is granted in part and denied in part. Plaintiff's motion to enjoin enforcement of K.A.R. § 7–23–15 is denied. (See this Memorandum and Order for further information and details.) Signed by District Judge Julie A. Robinson on 5/17/2016. (bw) (Additional attachment added on 5/17/2016: # 1 Incorrect Document – Redacted) (bw). (Attachment 1 replaced on 5/20/2016 with correct redacted version per chambers) (mm). : # 2 Main Document – Sealed) (kao). (Entered: 05/17/2016) |
| 05/17/2016 | 130 | | RESPONSE by Defendant Nick Jordan re 77 Amended MOTION to Certify Class , 3 MOTION to Certify Class (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Willoughby, M.) (Entered: 05/17/2016) |
| 05/17/2016 | 131 | | MEMORANDUM IN OPPOSITION by Defendant Kris W. Kobach re 77 Amended MOTION to Certify Class , 3 MOTION to Certify Class , RESPONSE by Defendant Kris W. Kobach re 77 Amended MOTION to Certify Class , 3 MOTION to Certify Class (Attachments: # 1 Exhibit Index, # 2 Exhibit Ex F, # 3 Affidavit Ex G, # 4 Exhibit Ex H, # 5 Excerpts of Deposition Ex I)(Roe, Garrett) (Entered: 05/17/2016) |
| 05/18/2016 | 132 | | NOTICE OF SERVICE by Nick Jordan of Second Interrogatories (Cox, Joseph) (Entered: 05/18/2016) |
| 05/18/2016 | 133 | | EXHIBITS to Defendant Kobach's Response to Class Certification by Kris W. Kobach 131 Memorandum in Opposition re 77 Amended MOTION to Certify Class , 3 MOTION to Certify Class . (Attachments: # 1 Ex A to Resp to Class Cert, # 2 Ex B to Resp to Class Cert, # 3 Ex C to Resp to Class Cert, # 4 Ex D to Resp to Class Cert, # 5 Ex E to Resp to Class Cert)(Roe, Garrett) (Entered: 05/18/2016) |
| 05/18/2016 | 134 | | NOTICE of Interoffice policy change by Kris W. Kobach (Attachments: # 1 Exhibit Index Exhibit Index, # 2 Declaration Ex A–Caskey Declaration, # 3 Excerpts of Deposition Ex B–Stricker Deposition excerpts, # 4 Excerpts of Deposition Ex C–Hutchinson Deposition excerpts)(Roe, Garrett) (Entered: 05/18/2016) |
| 05/19/2016 | 135 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Discovery Requests (Bonney, Stephen) (Entered: 05/19/2016) |
| 05/19/2016 | 136 | | NOTICE of deposition of Hans von Spakovsky on May 26, 2016 by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonney, Stephen) (Entered: 05/19/2016) |
| 05/20/2016 | 137 | | MOTION for Order *to Stay Preliminary Injunction Pending Appeal pursuant to FRAP 8.1(a)(1)* by Defendant Kris W. Kobach. (Attachments: # 1 Memorandum Supporting Motion, # 2 Exhibit Index, # 3 Ex A–Excerpts of PI Hearing, # 4 Ex B–Caskey Aff, # 5 Ex C–Caskey Aff (previous), # 6 Ex. D––Excerpts of 30(b)(6) Deposition of SOS, # 7 Ex. E––Lehman Affidavit, # 8 Order granting Stay in Kobach v EAC)(Roe, Garrett) (Entered: 05/20/2016) |

| 05/23/2016 | 138 | | AMENDED NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Hans von Spakovsky on June 1, 2016. (Bonney, Stephen) (Entered: 05/23/2016) |
|---|---|---|---|
| 05/23/2016 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 137 MOTION for Order *to Stay Preliminary Injunction Pending Appeal pursuant to FRAP 8.1(a)(1)*. The motion will be resolved by the District Judge.(ah)** (Entered: 05/23/2016) |
| 05/23/2016 | 139 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Bryan Caskey on June 15, 2016 (Bonney, Stephen) (Entered: 05/23/2016) |
| 05/23/2016 | 140 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Responses to Defendant Jordan's First Request for Production to the Plaintiff League of Women Voters of Kansas (Bonney, Stephen) (Entered: 05/23/2016) |
| 05/23/2016 | 141 | | ANSWER to 39 Amended Complaint, by Kris W. Kobach.(Roe, Garrett) (Entered: 05/23/2016) |
| 05/23/2016 | 142 | | NOTICE OF INTERLOCUTORY APPEAL as to 129 Memorandum & Order, by Defendant Kris W. Kobach. Filing fee $ 505, Internet Payment Receipt Number AKSDC−3825305. (Roe, Garrett) (Entered: 05/23/2016) |
| 05/24/2016 | 143 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 142 Notice of Interlocutory Appeal. (Attachment: # 1 Preliminary Record)(kao) (Entered: 05/24/2016) |
| 05/24/2016 | 144 | | APPEAL DOCKETED in 10CCA on 5/24/16 and assigned Appeal No. 16−3147 re 142 Notice of Interlocutory Appeal filed by Kris W. Kobach. (kao) (Entered: 05/24/2016) |
| 05/25/2016 | 145 | | MEMORANDUM AND ORDER – IT IS THEREFORE ORDERED BY THE COURT that Defendant Kris Kobach's Motion for a Stay Pending Appeal Under Federal Rule of Appellate Procedure 8(a)(1)(A) (Doc. 137) is denied. The temporary stay granted in the Court's May 17, 2016 Memorandum and Order is extended for two additional weeks until June 14, 2016. Signed by District Judge Julie A. Robinson on 5/25/16. (kao) (Entered: 05/25/2016) |
| 05/26/2016 | 146 | | NOTICE by Defendant Kris W. Kobach of taking deposition of Lorraine C Minnite on June 2, 2016 (Roe, Garrett) (Entered: 05/26/2016) |
| 05/26/2016 | 147 | | NOTICE by Defendant Kris W. Kobach of taking deposition of Michael McDonald on June 3, 2016 (Roe, Garrett) (Entered: 05/26/2016) |
| 05/26/2016 | 148 | | NOTICE by Plaintiffs Cody Keener, Parker Bednasek, Alder Cromwell of taking deposition of Hans Von Spakovsky on 06/01/2016. (Johnson, Mark) Modified filer name on 5/27/2016. (kao) (Entered: 05/26/2016) |
| 05/26/2016 | 149 | | NOTICE by Plaintiffs Cody Keener, Parker Bednasek, Alder Cromwell of taking deposition of Bryan Caskey on 06/15/2016. (Johnson, Mark) Modified filer name on 5/27/2016 (kao). (Entered: 05/26/2016) |

| 05/27/2016 | 150 | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Responses and Objections to Defendant Jordan's Request for Production of Documents (Bonney, Stephen) (Entered: 05/27/2016) |
| --- | --- | --- |
| 05/31/2016 | 151 | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker of Amended Responses and Objections to Defendant Jordan's First Request for Admissions. (Bonney, Stephen) Modified filer name on 5/31/2016. (kao) (Entered: 05/31/2016) |
| 05/31/2016 | 152 | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Pat McFerron on June 7, 2016 (Bonney, Stephen) (Entered: 05/31/2016) |
| 06/01/2016 | 153 | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Rule 30(b)(6) Designee of the Department of Vehicles on June 10, 2016 (Bonney, Stephen) (Entered: 06/01/2016) |
| 06/01/2016 | 154 | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Defendant Nick Jordan on June 10, 2016 (Bonney, Stephen) (Entered: 06/01/2016) |
| 06/02/2016 | 155 | NOTICE by Defendant Nick Jordan of taking deposition on June 8, 2016 of representative of the Plaintiff League of Women Voters of Kansas, and Marge Ahrens and Dolores Furtado. (Cox, Joseph) (Entered: 06/02/2016) |
| 06/02/2016 | 156 | CERTIFICATE OF SERVICE re 155 NOTICE by Defendant Nick Jordan of taking deposition. (Cox, Joseph) (Entered: 06/02/2016) |
| 06/03/2016 | 157 | NOTICE OF SERVICE by Parker Bednasek, Alder Cromwell, Cody Keener of first Interrogatories to Defendant Shew (Lawrence, William) (Entered: 06/03/2016) |
| 06/06/2016 | 158 | NOTICE OF SERVICE by Nick Jordan of responses to 2nd request for production (Cox, Joseph) (Entered: 06/06/2016) |
| 06/07/2016 | 159 | REPLY to Response to Motion by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 77 Amended MOTION to Certify Class (Bonney, Stephen) (Entered: 06/07/2016) |
| 06/07/2016 | 160 | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Answers and Objections to Defendant Nick Jordan's First Interrogatories to the Plaintiff League of Women Voters of Kansas (Bonney, Stephen) (Entered: 06/07/2016) |
| 06/07/2016 | 161 | TRANSCRIPT ORDER FORM: Transcript Already on File filed by Kris W. Kobach re 142 Notice of Interlocutory Appeal (Kobach, Kris) (Entered: 06/07/2016) |
| 06/08/2016 | 162 | LETTER TO 10CCA stating record is complete re 142 Notice of Interlocutory Appeal. (Appeal No. 16–3147) (kao) (Entered: 06/08/2016) |

| 06/09/2016 | 163 | | AMENDED NOTICE of Amended Interoffice Policy by Kris W. Kobach re 134 Notice of Interoffice policy change. (Attachments: # 1 Affidavit)(Roe, Garrett) (Entered: 06/09/2016) |
|---|---|---|---|
| 06/12/2016 | 164 | | MOTION to Quash *of Donna Bucci and Suggestions in Support* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas. (Attachment: # 1 Declaration of Angela Lui, # 2 Unsigned Declaration of Donna Bucci)(Bonney, Stephen) (Entered: 06/12/2016) |
| 06/13/2016 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 164 MOTION to Quash *of Donna Bucci and Suggestions in Support*. The motion will be resolved by the District Judge.(ah)** (Entered: 06/13/2016) |
| 06/13/2016 | 165 | | ORDER expediting the deadline for Defendant to respond re MOTION to Quash *of Donna Bucci and Suggestions in Support* 164 . Defendant Kobach shall respond today, 6/13/2016, by 3:00 p.m. CDT. The Court will set the motion for telephonic hearing at 4:00 p.m. Signed by District Judge Julie A. Robinson on 6/13/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(as) (Entered: 06/13/2016) |
| 06/13/2016 | 166 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Telephone Conference set for 6/13/2016 at 04:00 PM before District Judge Julie A. Robinson. All counsel who wish to participate in this telephone hearing are instructed to dial into the conference line. The CONFERENCE LINE is 1−888−363−4749 and the ACCESS CODE is 4697748#.(bw) (Entered: 06/13/2016) |
| 06/13/2016 | 167 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Rebuttal Expert Designation and Reports (Bonney, Stephen) (Entered: 06/13/2016) |
| 06/13/2016 | 168 | | ORDER of 10CCA denying motion for stay pending appeal and denying the request for an administrative stay as moot. (Appeal No. 16−3147) (kao) (Entered: 06/13/2016) |
| 06/13/2016 | 169 | | RESPONSE by Defendant Kris W. Kobach re 164 MOTION to Quash *of Donna Bucci and Suggestions in Support* (Roe, Garrett) (Entered: 06/13/2016) |
| 06/13/2016 | 170 | | OBJECTION(S) to *Defendant Kobach's Designation of Rebuttal Expert Witness (Joint)* by Parker Bednasek, Alder Cromwell, Cody Keener. (Johnson, Mark) (Entered: 06/13/2016) |
| 06/13/2016 | 171 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: granting 164 MOTION to Quash *of Donna Bucci and Suggestions in Support* filed by Thomas J. Boynton, The League of Women Voters of Kansas, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Ralph Ortiz, Donna Bucci. (Court Reporter Kelli Stewart.) (bw) (Entered: 06/13/2016) |
| 06/14/2016 | 177 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: taking under advisement 3 Motion to Certify Class; taking under advisement 77 Motion to Certify Class; MOTION HEARING held on |

| | | | |
|---|---|---|---|
| | | | 6/16/2016 re 3 MOTION to Certify Class filed by Thomas J. Boynton, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Ralph Ortiz, Donna Bucci, 77 Amended MOTION to Certify Class filed by Thomas J. Boynton, The League of Women Voters of Kansas, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Ralph Ortiz, Donna Bucci. (Court Reporter Kelli Stewart.) (bw) Modified on 7/5/2016 to correct file date of minute entry(bw). (Entered: 06/16/2016) |
| 06/15/2016 | 172 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiff League of Women Voters of Kansas's Responses to Defendant Nick Jordan's First Request for Admissions to Plaintiff League of Women Voters of Kansas (Bonney, Stephen) (Entered: 06/15/2016) |
| 06/15/2016 | 173 | | NOTICE OF INTERLOCUTORY APPEAL as to 129 Memorandum & Order, by Defendant Nick Jordan. Filing fee $ 505, Internet Payment Receipt Number AKSDC–3850523. (Willoughby, M.) Modified title on 6/16/2016. (kao) (Entered: 06/15/2016) |
| 06/16/2016 | 174 | | NOTICE OF SERVICE by Kris W. Kobach of Rebuttal Expert Report *of Dr. Steven Camarota* (Roe, Garrett) (Entered: 06/16/2016) |
| 06/16/2016 | 175 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 173 Notice of Appeal. (Attachment: # 1 Preliminary Record)(kao) (Entered: 06/16/2016) |
| 06/16/2016 | 176 | | APPEAL DOCKETED in 10CCA on 6/16/16 and assigned Appeal No. 16–3175 re 173 Notice of Appeal. (kao) (Entered: 06/16/2016) |
| 06/20/2016 | 178 | | TRANSCRIPT ORDER FORM: Transcript Already on File by Nick Jordan re 173 Notice of Appeal. (Recvd from 10CCA). (kao) (Entered: 06/20/2016) |
| 06/20/2016 | 179 | | LETTER TO 10CCA stating record is complete re 173 Notice of Appeal. (Appeal No. 16–3175) (kao) (Entered: 06/20/2016) |
| 06/20/2016 | 180 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiff League of Women Voters of Kansas's Answers and Objections to Defendant Jordan's Second Interrogatories to Plaintiff League of Women Voters of Kansas (Bonney, Stephen) (Entered: 06/20/2016) |
| 06/20/2016 | 181 | | NOTICE OF SERVICE by Nick Jordan of responses to Plaintiffs' First Request for Admissions (Cox, Joseph) (Entered: 06/20/2016) |
| 06/21/2016 | 182 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker of Amended Answers and Objections to Defendant Nick Jordan's First Interrogatories to Plaintiffs Fish, Bucci, Stricker, Boynton, and Hutchinson. (Bonney, Stephen) (Entered: 06/21/2016) |
| 06/21/2016 | 183 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of all Plaintiffs' Answers and Objections to Defendant Kobach's First Interrogatories, as well as Plaintiff League of Women Voters of Kansas's Amended Answers and Objections to Defendant Jordan's First Interrogatories (Bonney, Stephen) (Entered: 06/21/2016) |

| 06/21/2016 | 184 | | SUPPLEMENT by Defendant Nick Jordan. (Cox, Joseph) (Entered: 06/21/2016) |
|---|---|---|---|
| 06/21/2016 | 185 | | AMENDED SUPPLEMENTAL SUBMISSION by Nick Jordan. (Cox, Joseph) (Entered: 06/21/2016) |
| 06/22/2016 | 186 | | NOTICE OF SERVICE by Nick Jordan of responses and obj's to 3d Req for Production (Cox, Joseph) (Entered: 06/22/2016) |
| 06/22/2016 | 187 | | MOTION for extension of time by Defendant Nick Jordan (referred to Magistrate Judge James P. O'Hara) (Cox, Joseph) (Entered: 06/22/2016) |
| 06/23/2016 | 188 | | ORDER granting 187 motion for extension of time until July 1, 2016, for defendant Jordan to file a motion to compel. The court finds good cause for the short extension based on the stated difficulty accessing the produced documents. Defendant Jordan is cautioned, however, that his interpretation of the timing rules is incorrect. Both the Scheduling Order (ECF doc. 49 at 12) and D. Kan. Rule 37.1(b) require motions to compel to be filed within 30 days of the default or service of the response that is the subject of the motion ––– neither allows for the addition of "an extra three (3) days" to this deadline. Signed by Magistrate Judge James P. O'Hara on 6/23/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 06/23/2016) |
| 06/24/2016 | 189 | | RESPONSE to 170 Objection(s) *(i.e. Plaintiffs' Motion to Strike Defendant's rebuttal expert)* by Defendant Kris W. Kobach. (Roe, Garrett) (Entered: 06/24/2016) |
| 06/28/2016 | 190 | | RESPONSE to 185 Amended Supplemental Submission, 184 Supplement by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 06/28/2016) |
| 06/30/2016 | 191 | | TRANSCRIPT of Motion to Certify Class Hearing (117 pgs) held 06/14/2016 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Juan Diaz.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 9/28/2016. (ks) (Entered: 06/30/2016) |
| 07/01/2016 | 192 | | NOTICE of Filing of Exhibits 7–10 Introduced at the 4/14/2016 Preliminary Injunction Hearing by Kris W. Kobach (Attachments: # 1 Ex 7_Congressional Record, # 2 Ex 8_Lehman Declaration and Updated Sedgwick County Spreadsheet, # 3 Ex 9_ELVIS Screenshots, # 4 Rule 30(b)(6) Deposition of Secretary of State Representative Caskey)(Roe, Garrett) (Entered: 07/01/2016) |

| 07/08/2016 | 193 | | MOTION for extension of time *to File Discovery Related Rule 37 Motion* by Defendant Nick Jordan (referred to Magistrate Judge James P. O'Hara) (Willoughby, M.) (Entered: 07/08/2016) |
| 07/08/2016 | 194 | | ORDER granting 193 unopposed motion for extension of time up to July 18, 2016, in which to file discovery–related Rule 37 motion regarding the deposition of the League of Women Voters of Kansas. Signed by Magistrate Judge James P. O'Hara on 7/8/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ac) (Entered: 07/08/2016) |
| 07/15/2016 | 195 | | Unopposed MOTION for extension of time *to File Motion to Compel* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Bonney, Stephen) (Entered: 07/15/2016) |
| 07/18/2016 | 196 | | ORDER granting 195 unopposed motion for extension of time until July 27, 2016, for plaintiff to bring a motion related to defendant Secretary Jordan's responses to plaintiffs' third request for production of documents. Signed by Magistrate Judge James P. O'Hara on 7/18/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ac) (Entered: 07/18/2016) |
| 07/18/2016 | 197 | | MOTION for extension of time by Defendant Nick Jordan (referred to Magistrate Judge James P. O'Hara) (Willoughby, M.) (Entered: 07/18/2016) |
| 07/18/2016 | 198 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re 197 MOTION for extension of time (Bonney, Stephen) (Entered: 07/18/2016) |
| 07/19/2016 | 199 | | ORDER granting 197 motion for extension of time to file motions to compel discovery. Any motion by plaintiffs to compel Jordan's responses to plaintiffs' third request for production of documents, and any motion by Jordan to compel related to the Rule 30(b)(6) deposition of the League of Women Voters shall be filed by August 3, 2016. Signed by Magistrate Judge James P. O'Hara on 7/19/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 07/19/2016) |
| 07/29/2016 | 200 | | MEMORANDUM AND ORDER denying 3 Motion to Certify Class; denying 77 Motion to Certify Class. See Order for details. Signed by District Judge Julie A. Robinson on 7/29/16. (kao) (Entered: 07/29/2016) |
| 08/01/2016 | 201 | | MOTION to Compel *Production of Documents* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Declaration Rebecca Waldman, # 2 Exhibit Plaintiffs' Document Requests, # 3 Exhibit Defendants' Response to Document Request, # 4 Exhibit Index)(Bonney, Stephen) (Entered: 08/01/2016) |
| 08/03/2016 | 202 | | MOTION for Sanctions *Under Rule 37* by Defendant Nick Jordan (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit Certification)(Willoughby, M.) (Entered: 08/03/2016) |

| 08/03/2016 | 203 | | MEMORANDUM IN SUPPORT of 202 MOTION for Sanctions *Under Rule 37* by Defendant Nick Jordan (Attachments: # 1 Exhibit Index, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Willoughby, M.) (Entered: 08/03/2016) |
|---|---|---|---|
| 08/03/2016 | 204 | | EXHIBIT(S) IN SUPPORT of 202 MOTION for Sanctions *Under Rule 37* by Defendant Nick Jordan *Exhibit A Amended Certification of Conferring with Counsel* (Cox, Joseph) (Entered: 08/03/2016) |
| 08/11/2016 | 205 | | UNOPPOSED MOTION for Extension of Time to File Response as to 202 MOTION for Sanctions *Under Rule 37* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas. (referred to Magistrate Judge James P. O'Hara) (Bonney, Stephen) (Entered: 08/11/2016) |
| 08/11/2016 | 206 | | ORDER granting 205 unopposed motion for extension of time until August 31, 2016, for plaintiffs to file a response to 202 motion for sanctions. Signed by Magistrate Judge James P. O'Hara on 8/11/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (srj) (Entered: 08/11/2016) |
| 08/12/2016 | 207 | | NOTICE of Hearing:   **THIS IS AN OFFICIAL NOTICE FOR THIS HEARING** (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Telephone Scheduling Conference set for 9/14/2016 at 09:30 AM before District Judge Julie A. Robinson. All counsel who wish to participate in this telephone scheduling conference are instructed to dial into the conference line. The CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE is 4697748#(bw) (Entered: 08/12/2016) |
| 08/12/2016 | 208 | | Unopposed MOTION for Extension of Time to File Response as to 201 MOTION to Compel *Production of Documents* by Defendant Nick Jordan (referred to Magistrate Judge James P. O'Hara) (Willoughby, M.) (Entered: 08/12/2016) |
| 08/12/2016 | 209 | | ORDER granting 208 unopposed motion for extension of time until August 29, 2016, for Secretary Jordan to respond to the motion to compel (ECF doc. 201). Signed by Magistrate Judge James P. O'Hara on 8/12/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 08/12/2016) |
| 08/17/2016 | 210 | | NOTICE OF SERVICE by Nick Jordan of Supplemental Responses to Plaintiffs' Third Request for Production (Cox, Joseph) (Entered: 08/17/2016) |
| 08/29/2016 | 211 | | MEMORANDUM AND ORDER granting Defendant Jordan's 64 Motion to Dismiss. All claims against Defendant Jordan are hereby dismissed. Signed by District Judge Julie A. Robinson on 8/29/16. (kao) (Entered: 08/29/2016) |
| 08/29/2016 | 212 | | ORDER finding as moot 201 plaintiffs' motion to compel Secretary Jordan to produce documents, and 202 Secretary Jordan's motion for sanctions. The two motions are moot in light of Judge Robinson's order granting Secretary Jordan's motion to dismiss (ECF doc. 211). Signed by Magistrate Judge James P. O'Hara on 8/29/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 08/29/2016) |

| 09/09/2016 | 213 | | DISREGARD – FILED IN THIS CASE IN ERROR – NOTICE OF CANCELLED HEARING: Modified on 9/9/2016 (bw). (Entered: 09/09/2016) |
|---|---|---|---|
| 09/09/2016 | 214 | | DOCKET ANNOTATION: PLEASE DISREGARD 213 Notice of Cancelled Hearing – filed in this case in error. (bw) (Entered: 09/09/2016) |
| 09/12/2016 | 215 | | ORDER of 10CCA abating appeal as to 173 Notice of Appeal. (Appeal No. 16−3175) (kao) (Entered: 09/12/2016) |
| 09/14/2016 | 216 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: TELEPHONE SCHEDULING CONFERENCE held on 9/14/2016. (Court Reporter Kelli Stewart.) (bw) (Entered: 09/14/2016) |
| 09/14/2016 | 217 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Pretrial Conference (in person) set for 10/20/2016 at 01:00 PM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. (bw) (Entered: 09/14/2016) |
| 09/15/2016 | 218 | | ORDER: Although the related cases of Fish v. Kobach, 16−2105, and Bednasek v. Kobach, 15−9300, were consolidated for discovery and pretrial purposes (ECF doc. 29 in Case No. 16−2105), they will be tried separately. Accordingly, as set out in the original scheduling order (ECF doc. 49 at 13, in Case No. 16−2105 ), counsel must submit separate proposed pretrial orders for each case. Signed by Magistrate Judge James P. O'Hara on 9/15/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ah) (Entered: 09/15/2016) |
| 09/16/2016 | 219 | | Letter from John Ellis dated 8/18/2016 (Attachments: # 1 Court's Response) (bw) (Entered: 09/16/2016) |
| 09/23/2016 | 220 | | MOTION to Enforce Preliminary Injunction (Response deadline 10/7/2016), MOTION for Contempt (Response deadline 10/7/2016), MOTION to Expedite by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 09/23/2016) |
| 09/23/2016 | 221 | | MEMORANDUM IN SUPPORT of 220 MOTION to Enforce *Preliminary Injunction* MOTION for Contempt MOTION to Expedite by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Exhibit Index, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit B−1, # 5 Exhibit B−2, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K)(Bonney, Stephen) (Entered: 09/23/2016) |
| 09/23/2016 | | | MOTION REFERRAL to Magistrate Judge REMOVED as to: 220 MOTION to Enforce *Preliminary Injunction* MOTION for Contempt MOTION to Expedite . The motion will be resolved by the District Judge.(ah) (Entered: 09/23/2016) |
| 09/26/2016 | 222 | | ORDER TO SHOW CAUSE Show Cause Hearing set for 9/30/2016 at 09:00 AM in KC Courtroom 427 (JAR) before District Judge Julie A. Robinson. Signed by District Judge Julie A. Robinson on 9/26/2016. (bw) (Entered: 09/26/2016) |

| 09/28/2016 | 223 | | NOTICE of Hearing (COURTROOM CHANGE – ROOM #643): THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Show Cause Hearing set for 9/30/2016 at 09:00 AM in KC Room 643 before District Judge Julie A. Robinson. (bw) (Entered: 09/28/2016) |
|---|---|---|---|
| 09/28/2016 | 224 | | ORDER – Defendant Kobach is hereby ordered to produce to this Court a draft of the notice required by Judge Hendricks' Order when he appears this Friday for the Show Cause hearing. Signed by District Judge Julie A. Robinson on 9/28/16. (Attachment: # 1 Shawnee County Order)(kao) (Entered: 09/28/2016) |
| 09/29/2016 | 225 | | STATUS REPORT *Jointly submitted by the Parties Regarding Order to Show Cause* by Kris W. Kobach. (Roe, Garrett) (Entered: 09/29/2016) |
| 09/29/2016 | 226 | | ORDER finding as moot 220 Motion to Enforce, Motion for Contempt, Motion to Expedite. The Show Cause Hearing set for 9/30/2016 is CANCELLED. The Court further directs the parties to FILE A STATUS REPORT regarding compliance with these steps by 10/12/2016. Signed by District Judge Julie A. Robinson on 9/29/2016. (bw) (Entered: 09/29/2016) |
| 09/29/2016 | 227 | | NOTICE OF CANCELLED HEARING: Show Cause Heairng set for 9/30/2016 cancelled. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 09/29/2016) |
| 09/30/2016 | 228 | | MOTION for attorney Anne A. Gruner to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–3971152.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit in Support, # 2 ECF Registration Form )(Bonney, Stephen) (Entered: 09/30/2016) |
| 09/30/2016 | 229 | | ORDER – The Court orders the parties to prepare and submit to the Court for review a draft joint notice by Monday, October 3, 2016, at noon CDT. The Court will conduct a telephonic status conference with the parties on Wednesday, October 5, 2016, at noon CDT, to discuss the notice and any revisions thereto. Signed by District Judge Julie A. Robinson on 9/30/16. (kao) (Entered: 09/30/2016) |
| 09/30/2016 | 230 | | NOTICE OF TELEPHONE STATUS CONFERENCE: A Telephone Status Conference is scheduled for Wednesday, October 5, 2016 at noon CDT before District Judge Julie A. Robinson. This telephone conference will be available to the public and any interested individual may dial into the conference to listen in. All counsel and any interested individual wishing to join in the conference are instructed to dial into the conference line. The CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE is 4697748# (ses) (Entered: 09/30/2016) |
| 10/03/2016 | 231 | | ORDER granting 228 Motion to Appear Pro Hac Vice of Anne A. Gruner for Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Unless already registered, pro hac vice counsel should register for electronic notification pursuant to the court's Administrative Procedures by completing a CM/ECF Electronic Filing Registration Form at http://www.ksd.uscourts.gov/. Signed by Magistrate |

| | | | |
|---|---|---|---|
| | | | Judge James P. O'Hara on 10/3/16. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kao) (Entered: 10/03/2016) |
| 10/05/2016 | 236 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: STATUS CONFERENCE held on 10/5/2016. (Court Reporter Kelli Stewart.) (bw) (Entered: 10/07/2016) |
| 10/07/2016 | 232 | | TRANSCRIPT of Telephone Status Conference (24 pgs) held 10/05/2016 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Orion Danjuma.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 1/5/2017. (ks) (Entered: 10/07/2016) |
| 10/07/2016 | 233 | | MOTION to Compel *Production of Documents* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Bonney, Stephen) (Entered: 10/07/2016) |
| 10/07/2016 | 234 | | MEMORANDUM IN SUPPORT of 233 MOTION to Compel *Production of Documents* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Declaration of Mary H. Kim, # 2 Declaration of Angela M. Liu, # 3 Exhibit Ex. A Lehman Subpoena, # 4 Exhibit Ex. B Lehman Transcript Excerpts, # 5 Exhibit Ex. C North Email, # 6 Exhibit Ex. D Privilege Log, # 7 Exhibit Ex. E Caskey Transcript Excerpts)(Bonney, Stephen) (Entered: 10/07/2016) |
| 10/07/2016 | 235 | | EXHIBIT IN SUPPORT of 234 Memorandum in Support of Motion, *(Ex. F Status Conf. Transcript Excerpts)*. (Bonney, Stephen) (Entered: 10/07/2016) |
| 10/07/2016 | 237 | | ORDER EXPEDITING BRIEFING DEADLINES regarding 233 motion to compel production of documents. In light of the upcoming October 20, 2016 pretrial conference and the November 16, 2016 dispositive motions deadline, the response and reply deadlines are expedited to October 14, 2016, and October 18, 2016, respectively. The response shall be limited to twelve, double–spaced pages and should address the authorities in plaintiffs' opening brief, as well as the privilege and work–product principles that were included in the general discovery order entered on March 8, 2016 (ECF doc. 30). The reply shall be limited to four double–spaced pages. Signed by Magistrate Judge James P. O'Hara on 10/7/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 10/07/2016) |

| 10/10/2016 | 238 | | MOTION for extension of time *to file a Pretrial Order* by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 10/10/2016) |
|---|---|---|---|
| 10/11/2016 | 239 | | ORDER granting, in part, 238 joint motion for extension of time to submit proposed pretrial order. The proposed pretrial order is now due by 4:00 p.m. on October 13, 2016. Signed by Magistrate Judge James P. O'Hara on 10/11/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 10/11/2016) |
| 10/13/2016 | 240 | | STATUS REPORT *Jointly Submitted Pursuant to Court Order* by Kris W. Kobach. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C – Plaintiffs revisions to original notices, # 4 Exhibit D – Defendants subsequent revisions to DMV, # 5 Exhibit E – Defendants subsequent revisions to website)(Roe, Garrett) (Entered: 10/13/2016) |
| 10/14/2016 | 241 | | MEMORANDUM AND ORDER: See Order for details. Signed by District Judge Julie A. Robinson on 10/14/16. (hw) (Entered: 10/14/2016) |
| 10/14/2016 | 242 | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Bryan J. Brown as to Kris W. Kobach (Brown, Bryan) (Entered: 10/14/2016) |
| 10/14/2016 | 243 | | RESPONSE by Defendant Kris W. Kobach re 233 MOTION to Compel *Production of Documents* (Attachments: # 1 Exhibit Index, # 2 Ex. A––Excerpt of Telephone Status Conference, # 3 Ex. B–Excerpt of Lehman Deposition)(Roe, Garrett) (Entered: 10/14/2016) |
| 10/16/2016 | 244 | | ENTRY OF APPEARANCE by Bethany J. Lee on behalf of Kris W. Kobach. (Roe, Garrett) Modified attorney name on 10/17/2016. (kao) (Entered: 10/16/2016) |
| 10/18/2016 | 245 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING CHANGE. The final pretrial conference set for 10/20/2016 at 1:00 PM will be conducted by telephone before Magistrate Judge James P. O'Hara. All counsel participating in this phone conference are directed to dial the conference center line 888–363–4749, using access code 8914911 to join the conference. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kg) (Entered: 10/18/2016) |
| 10/18/2016 | 246 | | REPLY to Response to Motion by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 233 MOTION to Compel *Production of Documents* (Bonney, Stephen) (Entered: 10/18/2016) |
| 10/20/2016 | 247 | | ORDER denying 233 Motion to Compel. Signed by Magistrate Judge James P. O'Hara on 10/20/2016. (ah) (Entered: 10/20/2016) |
| 10/20/2016 | 248 | | MOTION to Amend Scheduling Order by Defendant Kris W. Kobach. (Roe, Garrett) (Entered: 10/20/2016) |
| 10/20/2016 | 249 | | MEMORANDUM IN SUPPORT of 248 MOTION to Amend Scheduling Order by Defendant Kris W. Kobach(Roe, Garrett) (Entered: 10/20/2016) |
| 10/20/2016 | 250 | | ORDER SETTING DEADLINES. Signed by Magistrate Judge James P. O'Hara on 10/20/2016. (ah) (Entered: 10/20/2016) |

| 10/20/2016 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 248 MOTION to Amend Scheduling Order . The motion will be resolved by the District Judge.(ah)** (Entered: 10/20/2016) |
|---|---|---|---|
| 10/20/2016 | 251 | | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: TELEPHONE STATUS CONFERENCE held on 10/20/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kg) (Entered: 10/20/2016) |
| 10/25/2016 | 252 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 248 MOTION to Amend Scheduling Order and to Reopen Discovery. (Attachments: # 1 Ex. A, Fish Pls.' First RFP to Def. Kobach, # 2 Ex. B, Fish Pls.' First Interrogs. to Def. Kobach, # 3 Ex. C, Fish Pls.' First RFA to Def. Kobach, # 4 Ex. D, Expert Report of Steven Camarota, # 5 Ex. E, Excerpts from LWV v. Newby Oct. 13, 2016 Mots. Hr'g Tr.)(Bonney, Stephen) (Entered: 10/25/2016) |
| 10/27/2016 | 253 | | REPLY TO RESPONSE TO MOTION by Defendant Kris W. Kobach re: 248 MOTION to Amend Scheduling Order (Roe, Garrett) (Entered: 10/27/2016) |
| 10/28/2016 | 254 | | MEMORANDUM AND ORDER granting 248 Motion to Amend Scheduling Order and Reopen Discovery. Signed by District Judge Julie A. Robinson on 10/28/16. (kao) (Entered: 10/28/2016) |
| 10/31/2016 | 255 | | ORDER SETTING SCHEDULING CONFERENCE: the pretrial conference scheduled for November 3, 2016, at 1:00 p.m. is hereby converted to a telephone status and scheduling conference in light of Judge Robinson's order (ECF doc. 254) granting defendant's request to reopen discovery. All counsel participating in this phone conference are directed to dial the conference center line 888−363−4749, using access code 8914911 to join the conference. Signed by Magistrate Judge James P. O'Hara on 10/31/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ah) (Entered: 10/31/2016) |
| 11/03/2016 | 256 | | ORDER: Because these cases are no longer on the same discovery or pretrial track, the benefits to case consolidation have ended. Accordingly, the Clerk is directed to unconsolidate the cases. All future filings shall be made in the individual cases to which they apply. Signed by Magistrate Judge James P. O'Hara on 11/3/16. (hw) (Entered: 11/03/2016) |
| 11/03/2016 | 257 | | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: TELEPHONE SCHEDULING CONFERENCE held on 11/3/2016. (Court Reporter Kelli Stewart) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kg) (Entered: 11/03/2016) |
| 11/03/2016 | 258 | | AMENDED SCHEDULING ORDER: Discovery deadline 4/26/2017. Dispositive motion deadline 7/7/2017. Proposed Pretrial Order due by 5/5/2017. Final Pretrial Conference set for 5/12/2017 at 10:30 AM in KC Courtroom 223 before Magistrate Judge James P. O'Hara. Court Trial set for 3/6/2018 at 9:30 AM in KC Courtroom 427 before District Judge Julie A. Robinson; estimated trial time 2–4 days. SEE ORDER FOR ANY ADDITIONAL SCHEDULED DEADLINES AND HEARINGS. Signed by Magistrate Judge James P. O'Hara on 11/3/2016. (kg) (Entered: 11/03/2016) |

| 11/10/2016 | 259 | | APPEAL MANDATE from 10CCA: AFFIRMING and REMANDING for further proceedings. (Appeal No. 16–3147) (Attachments: # 1 Order and Judgment of September 30, 2016, # 2 Transmittal Letter)(kao) (Entered: 11/10/2016) |
| --- | --- | --- | --- |
| 11/10/2016 | 260 | | TRANSCRIPT of Final Pretrial Conference (15–9300) and Scheduling and Status Conference (16–2105) (45 pgs) held 11/03/2016 before Judge James P. O'Hara, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale Ho. **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 2/8/2017. (ks) (Entered: 11/10/2016) |
| 11/15/2016 | 261 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiffs' Fifth Request for Production of Documents from Defendant Kris Kobach (Bonney, Stephen) (Entered: 11/15/2016) |
| 11/22/2016 | 262 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiffs' Sixth Request for Production of Documents from Defendant Kris Kobach. (Bonney, Stephen) (Entered: 11/22/2016) |
| 12/15/2016 | 263 | | MOTION to Compel by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 12/15/2016) |
| 12/15/2016 | 264 | | MOTION for extension of time *to Respond or Object to Plaintiffs' Fifth Request for Documents* by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 12/15/2016) |
| 12/15/2016 | 265 | | ORDER granting 264 unopposed motion for extension of time until December 30, 2016, for defendant to respond to plaintiffs' fifth set of requests for production of documents. Signed by Magistrate Judge James P. O'Hara on 12/15/2016. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ah) (Entered: 12/15/2016) |
| 12/21/2016 | 266 | | ORDER granting 263 Motion to Compel. Signed by Magistrate Judge James P. O'Hara on 12/21/2016. (srj) (Entered: 12/21/2016) |
| 12/22/2016 | 267 | | MOTION for Partial Summary Judgment by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonney, Stephen) (Entered: 12/22/2016) |
| 12/22/2016 | 268 | | MEMORANDUM IN SUPPORT of 267 MOTION for Partial Summary Judgment by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, |

| | | | |
|---|---|---|---|
| | | | Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas(Bonney, Stephen) (Entered: 12/22/2016) |
| 12/22/2016 | 269 | | AFFIDAVIT of R. Orion Danjuma re 267 MOTION for Partial Summary Judgment by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Exhibit A – Kansas Voter Reg Form, # 2 Exhibit B – SOS KDHE MOU, # 3 Exhibit C1 – Kobach Testimony Jan 2014, # 4 Exhibit C2 – Kobach Testimony Feb 2015, # 5 Exhibit D1 – Trans. Prelim Inj. Hearing, # 6 Exhibit D2 – Trans. Brown Perm Inj. Hearing, # 7 Exhibit E1– Caskey Aff. Mar 29 2016, # 8 Exhibit E2 – Caskey Aff. May 18 2016, # 9 Exhibit F1 – Caskey Dep. June 15 2016, # 10 Exhibit F2 – Caskey Dep. Apr. 6 2016, # 11 Exhibit F3 – Lehman Dep. Apr. 6 2016, # 12 Exhibit – Redacted G1 – Fish Decl, # 13 Exhibit G2 – Fish Supp. Decl, # 14 Exhibit – Redacted G3 – Bucci Decl, # 15 Exhibit – Redacted G4 – Stricker Decl., # 16 Exhibit – Redacted G5 – Boynton Decl., # 17 Exhibit – Redacted G6 – Hutchinson Decl., # 18 Exhibit – Redacted H1 – Fish DMV rec, # 19 Exhibit – Redacted H2 – Bucci DMV rec, # 20 Exhibit – Redacted H3 – Stricker DMV rec, # 21 Exhibit – Redacted H4 – Boynton DMV rec, # 22 Exhibit – Redacted H5 – Hutchinson DMV rec, # 23 Exhibit – Redacted I1 – Fish Dep., # 24 Exhibit I2 – Bucci Dep., # 25 Exhibit – Redacted I3 – Stricker Dep., # 26 Exhibit – Redacted I4 – Boynton Dep., # 27 Exhibit I5 – Hutchinson Dep., # 28 Exhibit J – Ahrens Dep., # 29 Exhibit K1 – CEO Instr., # 30 Exhibit K2 – Implementation Guide, # 31 Exhibit L1 – Kobach Resp. RFAs, # 32 Exhibit L2 – Kobach Resp RFPs, # 33 Exhibit M1, # 34 Exhibit M2 – Lehman Spreadsheet, # 35 Exhibit M3 – 2015 Voter reg, # 36 Exhibit M4 – 2013 Voter reg, # 37 Exhibit M5 – Miller Memo, # 38 Exhibit N – Ahrens index, # 39 Exhibit N1, # 40 Exhibit N2, # 41 Exhibit N3, # 42 Exhibit N4, # 43 Exhibit N5, # 44 Exhibit N6, # 45 Exhibit N7, # 46 Exhibit N8, # 47 Exhibit N9, # 48 Exhibit N10, # 49 Exhibit N11, # 50 Exhibit N12, # 51 Exhibit O – League Resp. to Jordan)(Bonney, Stephen) (Entered: 12/22/2016) |
| 01/09/2017 | 270 | | MOTION for extension of time to File Response re 267 MOTION for Partial Summary Judgment by Defendant Kris W. Kobach. (Roe, Garrett) (Entered: 01/09/2017) |
| 01/10/2017 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 270 MOTION for extension of time . The motion will be resolved by the District Judge.(ah)** (Entered: 01/10/2017) |
| 01/10/2017 | 271 | | ORDER granting 270 Motion for Extension of Time to File Response to Plaintiff's Motion for Partial Summary Judgment. The response deadline is extended to 1/27/2017. Signed by District Judge Julie A. Robinson on 1/10/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 01/10/2017) |
| 01/23/2017 | 272 | | MOTION to Compel *Production of Documents* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Bonney, Stephen) (Entered: 01/23/2017) |
| 01/23/2017 | 273 | | MEMORANDUM IN SUPPORT of 272 MOTION to Compel *Production of Documents* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of |

|  |  |  | Kansas (Attachments: # 1 Affidavit of Angela Liu, # 2 Ex. A – Pls.' 6th RFP, # 3 Ex. B – Def.'s Response, # 4 Ex. C – Privilege Log, # 5 Ex. D – CJOnline article, # 6 Ex. E – Danjuma email, # 7 Ex. F – Roe email, # 8 Ex. G – 3.34.16 Tr. Excerpts, # 9 Ex. H – 11.03.16 Tr. Excerpts)(Bonney, Stephen) (Entered: 01/23/2017) |
|---|---|---|---|
| 01/24/2017 | 274 |  | MOTION for attorney Daphne T. Ha to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–4073340.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit in Support of Motion, # 2 ECF Registration Form)(Bonney, Stephen) (Entered: 01/24/2017) |
| 01/24/2017 | 275 |  | ORDER granting 274 Motion to Appear Pro Hac Vice of Daphne T. Ha for Thomas J. Boynton,Daphne T. Ha for Donna Bucci,Daphne T. Ha for Steven Wayne Fish,Daphne T. Ha for Douglas Hutchinson,Daphne T. Ha for Charles Stricker,Daphne T. Ha for The League of Women Voters of Kansas pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Unless already registered, pro hac vice counsel should register for electronic notification pursuant to the court's Administrative Procedures by completing a CM/ECF Electronic Filing Registration Form at http://www.ksd.uscourts.gov/. Signed by Magistrate Judge James P. O'Hara on 1/24/17. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (hw) (Entered: 01/24/2017) |
| 01/25/2017 | 276 |  | Joint MOTION for Hearing re 267 MOTION for Partial Summary Judgment , Unopposed MOTION to Consolidate Cases *for Hearing on Summary Judgment Only* ( Response deadline 2/8/2017) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/25/2017) |
| 01/25/2017 |  |  | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 276 Joint MOTION for Hearing re 267 MOTION for Partial Summary Judgment Unopposed MOTION to Consolidate Cases *for Hearing on Summary Judgment Only*. The motion will be resolved by the District Judge.(ah)** (Entered: 01/25/2017) |
| 01/26/2017 | 277 |  | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiffs' Seventh Request for Production of Documents from Defendant Kris Kobach (Bonney, Stephen) (Entered: 01/26/2017) |
| 01/26/2017 | 278 |  | Unopposed MOTION for extension of time *to file Motion to Compel Production of Documents* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Bonney, Stephen) (Entered: 01/26/2017) |
| 01/26/2017 | 279 |  | ORDER granting 278 unopposed motion for extension of time until February 20, 2017, for plaintiffs to file a motion to compel related to plaintiffs' fifth request for production of documents. Signed by Magistrate Judge James P. O'Hara on 1/26/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (srj) (Entered: 01/26/2017) |

| 01/27/2017 | 280 | | MEMORANDUM IN OPPOSITION by Defendant Kris W. Kobach re 267 MOTION for Partial Summary Judgment (Roe, Garrett) (Entered: 01/27/2017) |
|---|---|---|---|
| 01/27/2017 | 281 | | INDEX OF EXHIBITS by Defendant Kris W. Kobach to 280 *Response Memorandum* re 267 MOTION for Partial Summary Judgment. (Attachments: # 1 Ex A–Fish Depo, # 2 Ex B, # 3 Ex B–1–Voter Reg Receipt, # 4 Ex C––Depo of Caskey (4/6/16), # 5 Ex D–Caskey Affidavit, # 6 Exhibit – Redacted D–1–Redacted Fish ELVIS, # 7 Exhibit – Redacted D–2 Redacted Bucci ELVIS, # 8 Exhibit – Redacted D–3 Redacted copy of Hutchinson ELVIS, # 9 Exhibit – Redacted D–4 Redacted copy of Stricker ELVIS, # 10 Exhibit – Redacted D–5 Redacted Boyton ELVIS, # 11 Ex E–Chart to KS Legislature, # 12 Ex F–Lehman Affidavit, # 13 Exhibit – Redacted F–1 Redacted Alkhalifa ELVIS, # 14 Exhibit – Redacted F–2 Redacted Wagner ELVIS, # 15 Exhibit – Redacted F–3 Redacted Bidzimou ELVIS, # 16 Ex F–4 Sedgwick County Chart, # 17 Ex G–Caskey Depo (12/1/2015), # 18 Ex H–KDHE/SOS MOU, # 19 Ex I–Caskey Depo (6/16/2016), # 20 Ex J–Lehman Depo, # 21 Ex K–Bucci Depo, # 22 Ex L–Hutchinson Depo, # 23 Ex M–Boynton Depo, # 24 Ex N–Stricker Depo, # 25 Ex O–Notice of Interagency Policy Changes, # 26 Ex P–KS Voter Registration Form, # 27 Ex Q–National Voter Registration Form, # 28 Ex R–Ahrens Depo, # 29 Ex S–Kobach Testimony, # 30 Exhibit – Redacted T–Parks Declaration Redacted, # 31 Ex U–Form RCD, # 32 Ex V–Notice of Interagency Policy Change, # 33 Ex W–Amended Notice of Interagency Policy Change, # 34 Ex X–SAVE Correspondence, # 35 Ex Y–Teaching Module for Voter Registration Printout, # 36 Ex Z–2010 General Election Turnout, # 37 Ex AA–2010 Primary Turnout, # 38 Ex BB–2008 General Turnout, # 39 Ex CC–2008 Primary Turnout, # 40 Ex DD–2006 General Turnout, # 41 Ex EE–2006 Primary Turnout)(Roe, Garrett) (Entered: 01/28/2017) |
| 01/30/2017 | 282 | | ORDER granting 276 Joint Motion for Consolidated Oral Argument Hearing. Oral argument set for 3/3/2017 at 01:30 PM in KC Courtroom 427 (JAR) before District Judge Julie A. Robinson. Signed by District Judge Julie A. Robinson on 1/30/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 01/30/2017) |
| 01/30/2017 | 283 | | NOTICE of Expert Report by Kris W. Kobach (Roe, Garrett) (Entered: 01/30/2017) |
| 02/06/2017 | 284 | | MOTION for extension of time *to Respond to Plainitffs' 272 Motion to Compel* by Defendant Kris W. Kobach. (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 02/06/2017) |
| 02/07/2017 | 285 | | ORDER granting 284 unopposed motion for extension of time until February 7, 2017, for defendant to respond to plaintiffs' motion to compel (ECF No. 272). Signed by Magistrate Judge James P. O'Hara on 2/07/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (srj) (Entered: 02/07/2017) |
| 02/07/2017 | 286 | | UNOPPOSED MOTION for Extension of Time to File Reply as to 280 Memorandum in Opposition to Motion re 267 MOTION for Partial Summary Judgment by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 02/07/2017) |

| | | |
|---|---|---|
| 02/07/2017 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 286 Unopposed MOTION for Extension of Time to File Reply as to 280 Memorandum in Opposition to Motion, 267 MOTION for Partial Summary Judgment . The motion will be resolved by the District Judge.(ss)** (Entered: 02/07/2017) |
| 02/07/2017 | 287 | ORDER granting 286 Motion for Extension of Time to File Reply re 267 MOTION for Partial Summary Judgment. Plaintiffs' Reply deadline is extended to 2/15/2017. Signed by District Judge Julie A. Robinson on 2/7/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 02/07/2017) |
| 02/07/2017 | 288 | MEMORANDUM IN OPPOSITION by Defendant Kris W. Kobach re 272 MOTION to Compel *Production of Documents* (Roe, Garrett) (Entered: 02/07/2017) |
| 02/07/2017 | 289 | INDEX OF EXHIBITS by Defendant Kris W. Kobach re 288 MEMORANDUM IN OPPOSITION to 272 MOTION to Compel *Production of Documents.* (Attachments: # 1 Ex A–Plaintiffs' Sixth Request for Production, # 2 Ex B–Plaintiffs' Seventh Request for Production, # 3 Ex C–Plaintiffs' First Request for Production, # 4 Ex D–Plaintiffs' Third Request for Production, # 5 Ex E–Plaintiffs' Fifth Request for Production, # 6 Ex F–Plaintiffs' Sixth Request for Production, # 7 Ex G–Excerpts of this Court's, # 8 Affidavit H–Declaration of Garrett Roe)(Roe, Garrett) (Entered: 02/07/2017) |
| 02/15/2017 | 290 | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 267 MOTION for Partial Summary Judgment (Bonney, Stephen) (Entered: 02/15/2017) |
| 02/15/2017 | 291 | AFFIDAVIT of R. Orion Danjuma re 290 REPLY by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # 1 Ex. P – Fish Dep. p. 33, # 2 Ex. Q – Ahrens Dep. Excerpts, # 3 Ex. R – PI Hr'g Tr., # 4 Ex. S – Class Cert. Hr'g Tr., # 5 Ex. T – Jackson Cty, Free ID Guide, # 6 Ex. U – Wisc. Prop. Ord., # 7 Ex. V – Oregon Initiative, # 8 Ex. W – Oregon Webpage)(Bonney, Stephen) (Entered: 02/15/2017) |
| 02/17/2017 | 292 | Unopposed MOTION for extension of time *to File Motion to Compel Production of Documents* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Bonney, Stephen) (Entered: 02/17/2017) |
| 02/21/2017 | 293 | ORDER granting 292 unopposed motion for extension of time until March 6, 2017, for plaintiffs to file a motion to compel related to plaintiffs' fifth request for production of documents. Signed by Magistrate Judge James P. O'Hara on 2/21/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (srj) (Entered: 02/21/2017) |
| 02/21/2017 | 294 | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 272 MOTION to Compel *Production of Documents* (Bonney, Stephen) (Entered: 02/21/2017) |

| 03/01/2017 | 295 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Kelly Baker on April 4, 2017 (Bonney, Stephen) (Entered: 03/01/2017) |
|---|---|---|---|
| 03/01/2017 | 296 | | Unopposed MOTION for extension of time *to file Motion to Compel Production of Documents* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Bonney, Stephen) (Entered: 03/01/2017) |
| 03/02/2017 | 297 | | ORDER granting 296 unopposed motion for extension of time until March 22, 2017, for plaintiffs to file a motion to compel related to their fifth document requests. Signed by Magistrate Judge James P. O'Hara on 3/2/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 03/02/2017) |
| 03/02/2017 | 298 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Jameson Beckner on March 29, 2017 (Bonney, Stephen) (Entered: 03/02/2017) |
| 03/02/2017 | 299 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Brad Bryant on March 28, 2017 (Bonney, Stephen) (Entered: 03/02/2017) |
| 03/02/2017 | 300 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Bryan Caskey on March 29, 2017 (Bonney, Stephen) (Entered: 03/02/2017) |
| 03/02/2017 | 301 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Eric Rucker on March 28, 2017 (Bonney, Stephen) (Entered: 03/02/2017) |
| 03/03/2017 | 303 | | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: Oral Arugment held on 3/3/2017 taking under advisement 267 MOTION for Partial Summary Judgment filed by Thomas J. Boynton, The League of Women Voters of Kansas, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Donna Bucci. (Court Reporter Kelli Stewart.) (bw) (Entered: 03/07/2017) |
| 03/06/2017 | 302 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiffs' Third Set of Interrogatories to Defendant (Bonney, Stephen) (Entered: 03/06/2017) |
| 03/16/2017 | 304 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiffs' Rebuttal Expert Designation and Reports (Bonney, Stephen) (Entered: 03/16/2017) |
| 03/17/2017 | 305 | | |

TRANSCRIPT of Motions for Summary Judgment Hearing (134 pgs) held 03/03/2017 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Ms. Sophia Lakin.

**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**

Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/15/2017. (ks) (Entered: 03/17/2017)

| 03/20/2017 | 306 | | NOTICE OF WITHDRAWAL OF APPEARANCE by Christopher Ray as counsel for Nick Jordan, terminated defendant. (daw) (Entered: 03/20/2017) |
| 03/20/2017 | 307 | | NOTICE of Hearing CHANGE: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) The Final Pretrial Conference HAS BEEN RESCHEDULED FOR 5/11/2017 at 09:00 AM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. The proposed pretrial order remains due May 5, 2017.(ss) (Entered: 03/20/2017) |
| 03/23/2017 | 308 | | NOTICE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of taking deposition of Jesse T. Richman on April 21, 2017 (Bonney, Stephen) (Entered: 03/23/2017) |
| 03/27/2017 | 309 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Amended Third Set of Interrogatories to Defendant (Bonney, Stephen) (Entered: 03/27/2017) |
| 03/27/2017 | 310 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiffs' Second Request for Admissions from Defendant Kris Kobach (Bonney, Stephen) (Entered: 03/27/2017) |
| 03/28/2017 | 311 | | NOTICE OF SERVICE by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas of Plaintiffs' Amended Second Request for Admissions from Defendant Kris Kobach (Bonney, Stephen) (Entered: 03/28/2017) |
| 03/28/2017 | 312 | | MOTION for extension of time *to File a rebuttal Expert Report* by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Ex A––Excerpt of Transcript)(Roe, Garrett) (Entered: 03/28/2017) |
| 03/28/2017 | 313 | | ORDER granting 312 unopposed motion for extension of time until April 12, 2017, for defendant Kobach to serve rebuttal expert reports. Signed by Magistrate Judge James P. O'Hara on 3/28/2017. (This is a TEXT ENTRY |

| | | | |
|---|---|---|---|
| | | | ONLY. There is no.pdf document associated with this entry.) (srj) (Entered: 03/28/2017) |
| 03/28/2017 | 314 | | NOTICE by Defendant Kris W. Kobach of taking deposition of Stephen Ansolabehere on April 3, 2017 (Roe, Garrett) (Entered: 03/28/2017) |
| 03/28/2017 | 315 | | NOTICE by Defendant Kris W. Kobach of taking deposition of Eitan Hersh on April 4, 2017 (Roe, Garrett) (Entered: 03/28/2017) |
| 03/28/2017 | 316 | | NOTICE by Defendant Kris W. Kobach of taking deposition of Lorraine Minnite on March 31, 2017 (Roe, Garrett) (Entered: 03/28/2017) |
| 03/30/2017 | 317 | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Anne A. Gruner as to Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonney, Stephen) (Entered: 03/30/2017) |
| 04/05/2017 | 318 | | ORDER regarding 272 plaintiffs' motion to compel production of documents. Defendant ordered to submit documents for in camera review by 5:00 PM on April 6, 2017. Signed by Magistrate Judge James P. O'Hara on 4/5/2017. (amh) (Entered: 04/05/2017) |
| 04/12/2017 | 319 | | NOTICE of Disclosure of Rebuttal Expert by Kris W. Kobach (Roe, Garrett) (Entered: 04/12/2017) |
| 04/17/2017 | 320 | | ORDER granting 272 Motion to Compel. Signed by Magistrate Judge James P. O'Hara on 4/17/2017. (amh) (Entered: 04/17/2017) |
| 04/19/2017 | 321 | | MOTION for Order *to Stay Magistrate O'Hara's Enforcement Pending Review to Judge Robinson* by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 04/19/2017) |
| 04/19/2017 | 322 | | MEMORANDUM IN SUPPORT of 321 MOTION for Order *to Stay Magistrate O'Hara's Enforcement Pending Review to Judge Robinson* by Defendant Kris W. Kobach(Roe, Garrett) (Entered: 04/19/2017) |
| 04/19/2017 | 323 | | ORDER EXPEDITING BRIEFING DEADLINES regarding 321 Motion to Stay Order. The response deadline is April 21, 2017. The reply deadline is April 24, 2017. Signed by Magistrate Judge James P. O'Hara on 4/19/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 04/19/2017) |
| 04/21/2017 | 324 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re 321 MOTION for Order *to Stay Magistrate O'Hara's Enforcement Pending Review to Judge Robinson* (Bonney, Stephen) (Entered: 04/21/2017) |
| 04/23/2017 | 325 | | ORDER granting 321 Motion to Stay, and expediting deadlines related to Fed. R. Civ. P. 72(a) objections. Signed by Magistrate Judge James P. O'Hara on 4/23/2017. (amh) (Entered: 04/23/2017) |
| 04/26/2017 | 326 | | MOTION for Review *under 72(a)* by Defendant Kris W. Kobach (Roe, Garrett) (Entered: 04/26/2017) |
| 04/26/2017 | 327 | | MEMORANDUM IN SUPPORT of 326 MOTION for Review *under 72(a)* by Defendant Kris W. Kobach(Roe, Garrett) (Entered: 04/26/2017) |

| 04/28/2017 | 328 |  | UNOPPOSED MOTION for Extension of Time to File Response as to 326 MOTION for Review *under 72(a)* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 04/28/2017) |
| 04/28/2017 |  |  | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 328 Unopposed MOTION for Extension of Time to File Response as to 326 MOTION for Review *under 72(a)* . The motion will be resolved by the District Judge.(amh)** (Entered: 04/28/2017) |
| 04/28/2017 | 329 |  | ORDER granting 328 Motion for Extension of Time to File Response/Reply re 326 MOTION for Review *under 72(a)*. The response deadline is extended to 5/1/2017; the reply deadline is extended to 5/4/2017. Signed by District Judge Julie A. Robinson on 4/28/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 04/28/2017) |
| 05/01/2017 | 331 |  | NOTICE OF HEARING CHANGE: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. The Final Pretrial Conference scheduled for May 11, 2017, HAS BEEN RESCHEDULED FOR May 31, 2017, at 10:30 AM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. The proposed pretrial order shall now be due by May 22, 2017. Signed by Magistrate Judge James P. O'Hara on 4/28/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(amh) (Entered: 05/01/2017) |
| 05/01/2017 | 332 |  | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re 326 MOTION for Review *under 72(a)* (Bonney, Stephen) (Entered: 05/01/2017) |
| 05/02/2017 | 333 |  | NOTICE of HEARING CHANGE:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING at the informal request of the parties, the Final Pretrial Conference scheduled for May 31, 2017, has been rescheduled for June 5, 2017 at 02:00 PM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. The proposed pretrial order shall now be due by May 25, 2017.(This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 05/02/2017) |
| 05/04/2017 | 334 |  | MEMORANDUM AND ORDER denying 267 Motion for Partial Summary Judgment. See Order for details. Signed by Chief Judge Julie A. Robinson on 5/4/17. (kao) (Entered: 05/04/2017) |
| 05/04/2017 | 335 |  | REPLY TO RESPONSE TO MOTION by Defendant Kris W. Kobach re: 326 MOTION for Review *under 72(a)* (Roe, Garrett) (Entered: 05/04/2017) |
| 05/05/2017 | 336 |  | DISREGARD THIS ENTRY – THIS WAS A DUPLICATE ENTRY – See Document 337 (Entered: 05/05/2017) |
| 05/05/2017 | 337 |  | NOTICE OF TELEPHONE CONFERENCE: Telephone Conference set for 5/10/2017 at 02:30 PM before Chief Judge Julie A. Robinson. All counsel who wish to participate in this telephone conference are instructed to dial into the conference line. The CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE is 4697748#.(bw) (Entered: 05/05/2017) |
| 05/10/2017 | 338 |  | MEMORANDUM AND ORDER denying 326 Motion for Review. See Order for details. Signed by Chief District Judge Julie A Robinson on 5/10/17. (kao) |

| | | | |
|---|---|---|---|
| | | | (Entered: 05/10/2017) |
| 05/10/2017 | 339 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: TELEPHONE STATUS CONFERENCE held on 5/10/2017. (Court Reporter Kelli Stewart.) (bw) (Entered: 05/10/2017) |
| 05/15/2017 | 340 | | ORDER of 10CCA continuing abatement as to 173 Notice of Appeal. (Appeal No. 16−3175) (kao) (Entered: 05/15/2017) |
| 05/19/2017 | 341 | | MOTION for extension of time *to submit a proposed pretrial order* by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 05/19/2017) |
| 05/21/2017 | 342 | | ORDER granting 341 unopposed Motion for Extension of Time. Despite the lack of good−cause showing, the court will extend the deadline for submission of the Proposed Pretrial Order to NOON on 5/31/2017. No further extensions of this deadline will be granted, even if unopposed, to preserve the court's time to review the proposed order before the pretrial conference. Signed by Magistrate Judge James P. O'Hara on 5/21/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 05/21/2017) |
| 05/22/2017 | 343 | | MOTION for Sanctions *and Suggestions in Support* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit A – Email Exchange, May 12, 2017, # 2 Exhibit B – Email Exchange, May 22, 2017)(Bonney, Stephen) (Entered: 05/22/2017) |
| 06/05/2017 | 344 | | ORDER regarding 343 plaintiffs' motion for sanctions. As discussed during today's pretrial conference, without objection by plaintiffs, the deadline for defendant to file his response to this motion is extended by one day, i.e., to 6/6/17. Signed by Magistrate Judge James P. O'Hara on 6/5/17. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (O'Hara, James) (Entered: 06/05/2017) |
| 06/05/2017 | 345 | | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: FINAL PRETRIAL CONFERENCE held on 6/5/2017. Dale E. Ho, Sophia Lin Lakin, and Stephen D. Bonney appear for plaintiff. Garrett R. Roe and Bethany J. Lee appear for defendant. (Court Reporter Jean Crawford.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 06/05/2017) |
| 06/06/2017 | 346 | | RESPONSE by Defendant Kris W. Kobach re 343 MOTION for Sanctions *and Suggestions in Support* (Roe, Garrett) (Entered: 06/06/2017) |
| 06/06/2017 | 347 | | INDEX OF EXHIBITS by Defendant Kris W. Kobach re 346 Response to Motion *for Sanctions*. (Attachments: # 1 Ex A. Ho twitter, # 2 Ex B. Danjuma email, # 3 Ex C. NY Times Article, # 4 Ex D. Newspaper article, # 5 Ex E. Ho Q&A, # 6 Ex. F. Groups fume, # 7 Ex G. Fraud squad, # 8 Ex H. Voter ID Hawk, # 9 Ex I. Salon article, # 10 Ex J. Bipartisan Report article, # 11 Ex K. Advocate for Tough Voting Rules)(Roe, Garrett) (Entered: 06/06/2017) |
| 06/08/2017 | 348 | | TRANSCRIPT of Pretrial Conference held June 5, 2017 before Judge James P. O'Hara, Court Reporter Jean Crawford. Transcript purchased by: Garrett |

| | | | |
|---|---|---|---|
| | | | Roe.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter, Jean Crawford, Jean_Crawford@mow.uscourts.gov, 816–512–5642 before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 9/6/2017. (kg) (Entered: 06/08/2017) |
| 06/13/2017 | 349 | | PRETRIAL ORDER ENTERED Dispositive motion deadline 7/7/2017. Court Trial set for 3/6/2018 at 09:00 AM in KC Courtroom 427 (JAR) before Chief District Judge Julie A Robinson. Estimated trial time 5 days. Signed by Magistrate Judge James P. O'Hara on 6/13/17. (ss) (Entered: 06/13/2017) |
| 06/16/2017 | 350 | | JOINT MOTION to Amend Scheduling Order *with Respect to Dispositive Motions and Related Filings* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 06/16/2017) |
| 06/19/2017 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 350 Joint MOTION to Amend Scheduling Order *with Respect to Dispositive Motions and Related Filings*. The motion will be resolved by the District Judge.**(ss) (Entered: 06/19/2017) |
| 06/19/2017 | 351 | | UNOPPOSED MOTION to Amend/Correct 349 Pretrial Order, by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Ex A – Clean Proposed Pretrial Order, # 2 Ex. B – Redlined Proposed Pretrial Order)(Bonney, Stephen) (Entered: 06/19/2017) |
| 06/20/2017 | 352 | | ORDER granting 350 Motion to Amend Scheduling Order. The Court grants the parties' joint request to amend the deadlines and page limits for summary judgment and Daubert briefs as described in the proposed briefing schedule set forth in their motion. Signed by Chief District Judge Julie A Robinson on 6/20/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 06/20/2017) |
| 06/20/2017 | 353 | | ORDER granting 351 unopposed motion to amend pretrial order and AMENDED PRETRIAL ORDER. Signed by Magistrate Judge James P. O'Hara on 6/20/2017. (amh) (Entered: 06/20/2017) |
| 06/20/2017 | 354 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 343 MOTION for Sanctions *and Suggestions in Support* (Attachments: # 1 Ex. A. Excerpt from 3/23/16 Conf. Tr.)(Bonney, Stephen) (Entered: 06/20/2017) |

| 06/23/2017 | 355 | | ORDER granting in part and denying in part 343 Motion for Sanctions. Signed by Magistrate Judge James P. O'Hara on 6/23/2017. (amh) (Entered: 06/23/2017) |
|---|---|---|---|
| 06/28/2017 | 356 | | MOTION to Amend Scheduling Order *and Reschedule Deposition Date* by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 06/28/2017) |
| 06/29/2017 | 357 | | ORDER granting 356 unopposed motion to amend scheduling order and reschedule deposition date. The deposition of Secretary Kobach is rescheduled for August 3, 2017, at 10:00 a.m. With the consent of the presiding U.S. District Judge, Julie A. Robinson, the deadlines for summary judgment and Daubert briefs are amended as described in the proposed briefing schedule set forth in the motion. However, the parties are cautioned that no further extensions of the summary judgment and/or Daubert deadlines will be granted absent extraordinary circumstances. Finally, because defendant has advised the court that the anticipated motion for reconsideration and objections to the undersigned's June 23, 2017 order (ECF No. 355) will challenge the taking of Secretary Kobach's deposition, the briefing schedule surrounding any such challenge is expedited as follows: any motion for reconsideration is due today, June 29, 2017, and any response is due June 30, 2017. No reply shall be filed, and the briefs shall be limited to five pages. Any objections to the June 23, 2017 order (ECF No. 355) shall be filed by July 5, 2017, with any response due July 12, 2017, and any reply due July 14, 2017; all briefing of the objections shall be limited to three pages. Signed by Magistrate Judge James P. O'Hara on 6/29/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (srj) (Entered: 06/29/2017) |
| 06/29/2017 | 358 | | MOTION for Reconsideration re 355 Order on Motion for Sanctions by Defendant Kris W. Kobach (referred to Magistrate Judge James P. O'Hara) (Roe, Garrett) (Entered: 06/29/2017) |
| 06/29/2017 | 359 | | MEMORANDUM IN SUPPORT of 358 MOTION for Reconsideration re 355 Order on Motion for Sanctions by Defendant Kris W. Kobach(Roe, Garrett) (Entered: 06/29/2017) |
| 06/30/2017 | 360 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re 358 MOTION for Reconsideration re 355 Order on Motion for Sanctions (Bonney, Stephen) (Entered: 06/30/2017) |
| 07/05/2017 | 361 | | ORDER denying 358 defendant's motion for reconsideration of June 23, 2017 order (ECF No. 355). Signed by Magistrate Judge James P. O'Hara on 7/5/2017. (amh) (Entered: 07/05/2017) |
| 07/05/2017 | 362 | | Objection to Order of Magistrate Judge re 361 Order on Motion for Reconsideration, 355 Order on Motion for Sanctions by Defendant Kris W. Kobach(Roe, Garrett) (Entered: 07/05/2017) |
| 07/05/2017 | 363 | | MEMORANDUM IN SUPPORT of 362 Objection to Order of Magistrate Judge re 361 Order on Motion for Reconsideration, 355 Order on Motion for Sanctions by Defendant Kris W. Kobach by Defendant Kris W. Kobach(Roe, Garrett) (Entered: 07/05/2017) |
| 07/05/2017 | 364 | | |

| | | | |
|---|---|---|---|
| | | | INDEX OF EXHIBITS by Defendant Kris W. Kobach re 363 Memorandum in Support of Motion, 362 Objection to Order of Magistrate Judge re 361 Order on Motion for Reconsideration, 355 Order on Motion for Sanctions by Defendant Kris W. Kobach . (Attachments: # 1 Ex A. June 23 Order, # 2 Ex B. Def Resp to Mtn for Sanction, # 3 Ex C. Pretrial Transcript excertp, # 4 Ex D. Tweets by counsel, # 5 Ex E. Def's Mtn for Reconsideration, # 6 Ex F. Denial of Mtn for Reconsideration)(Roe, Garrett) (Entered: 07/05/2017) |
| 07/11/2017 | 365 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re 362 Objection to Order of Magistrate Judge re 361 Order on Motion for Reconsideration, 355 Order on Motion for Sanctions by Defendant Kris W. Kobach (Attachments: # 1 Exhibit Emails between counsel)(Bonney, Stephen) (Entered: 07/11/2017) |
| 07/14/2017 | 366 | | MOTION for Summary Judgment by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonney, Stephen) (Entered: 07/14/2017) |
| 07/14/2017 | 367 | | MEMORANDUM IN SUPPORT of 366 MOTION for Summary Judgment by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Affidavit of Dale Ho, # 2 Ex. A Amended PTO, # 3 Ex. B Caskey Decl. 3/24/17, # 4 Ex. C Earnest Transcript, # 5 Ex. D Caskey Transcript 6/15/16, # 6 Ex. E PI Hr'g Transcript, # 7 Ex. F Richman Report, # 8 Ex. G Richman Transcript, # 9 Ex. H Richman Rebuttal, # 10 Ex. I Richman Dep. Ex. 13, # 11 Ex. J Caskey Transcript 3/28/2017, # 12 Ex. K Bryant Transcript, # 13 Ex. L von Spakovsky Dep. Ex. 10, # 14 Ex. M Caskey Dep. Ex. 11, # 15 Ex. N Caskey Dep. Ex. 38, # 16 Ex. O Caskey Dep. Ex. 39, # 17 Ex. P von Spakovsky Transcript, # 18 Ex. Q von Spakovsky Dep. Ex. 6, # 19 Ex. R AZ Election Proc. Manual, # 20 Exhibit – Redacted S, # 21 Ex. T Kobach–Hamilton email, # 22 Exhibit – Redacted U, # 23 Ex. V Wichita Eagle Art., # 24 Ex. W 2016 Election Turnout, # 25 Ex. X EAC Miller Memo, # 26 Ex. Y Kansas DOR Webpage, # 27 Ex. Z Rucker Dep. Ex. 2, # 28 Ex. AA Lehman Transcript, # 29 Exhibit – Redacted BB Lehman Dep. Ex. 6, # 30 Ex. CC Washington Times Art.)(Bonney, Stephen) (Entered: 07/14/2017) |
| 07/14/2017 | 368 | | Unopposed SEALED MOTION for Leave to File Under Seal by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # 1 Proposed Sealed Document Pls.' Br. in Supp. of SJ, # 2 Proposed Sealed Document Ho Affidavit, # 3 Proposed Sealed Document Ex. S NVRA Amendments, # 4 Proposed Sealed Document Ex. U Trump Memo Cover Page)(Bonney, Stephen) (Entered: 07/14/2017) |
| 07/14/2017 | 369 | | MOTION to Unseal Document 368 Unopposed SEALED MOTION for Leave to File Under Seal filed by Thomas J. Boynton, The League of Women Voters of Kansas, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Donna Bucci by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 07/14/2017) |
| 07/14/2017 | 370 | | REPLY TO RESPONSE TO MOTION by Defendant Kris W. Kobach re: 362 Objection to Order of Magistrate Judge re 361 Order on Motion for |

| | | | |
|---|---|---|---|
| | | | Reconsideration, <u>355</u> Order on Motion for Sanctions by Defendant Kris W. Kobach (Roe, Garrett) (Entered: 07/14/2017) |
| 07/17/2017 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: <u>369</u> MOTION to Unseal Document and <u>368</u> Unopposed SEALED MOTION for Leave to File Under Seal. The motions will be resolved by the District Judge. (amh)** (Entered: 07/17/2017) |
| 07/24/2017 | 371 | | FINANCIAL RECEIPT re: <u>355</u> Order on Motion for Sanctions received by Finance on July 21, 2017, paid on July 21, 2017. Receipt # T4631011024 in the amount of $1000.00. (hw) (Entered: 07/24/2017) |
| 07/24/2017 | 372 | | ORDER granting <u>368</u> Motion for Leave to File Under Seal, in order for the Court to resolve the matter of public filing. Counsel directed to file forthwith requested document(s) with an event from the SEALED DOCUMENTS category. The clerk shall grant access to sealed document(s) to counsel of record. Pro hac vice attorneys must obtain sealed document(s) from local counsel. Signed by Chief District Judge Julie A Robinson on 7/24/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 07/24/2017) |
| 07/24/2017 | <u>373</u> | | SEALED MEMORANDUM IN SUPPORT of <u>366</u> MOTION for Summary Judgment by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # <u>1</u> Affidavit of Dale Ho, # <u>2</u> Ex. S, # <u>3</u> Ex. U)(Bonney, Stephen) Modified on 10/5/2017 to unseal 373-2, 373-3 per <u>405</u> MEMORANDUM AND ORDER. (kao) Modified on 10/26/2017 to unseal 373 main document per <u>416</u> Minute Entry. (kao) (Entered: 07/24/2017) |
| 07/25/2017 | <u>374</u> | | MEMORANDUM AND ORDER denying <u>362</u> Objection to Order of Magistrate Judge. See Order for details. Signed by Chief District Judge Julie A Robinson on 7/25/17. (kao) (Entered: 07/25/2017) |
| 07/25/2017 | <u>375</u> | | ENTRY OF APPEARANCE by Sue Becker on behalf of Kris W. Kobach (Becker, Sue) (Entered: 07/25/2017) |
| 07/28/2017 | <u>376</u> | | RESPONSE by Defendant Kris W. Kobach re <u>369</u> MOTION to Unseal Document <u>368</u> Unopposed SEALED MOTION for Leave to File Under Seal filed by Thomas J. Boynton, The League of Women Voters of Kansas, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Donna Bucci (Roe, Garrett) (Entered: 07/28/2017) |
| 07/31/2017 | <u>377</u> | | NOTICE OF INTERLOCUTORY APPEAL as to <u>374</u> Order on Objection to Order of Magistrate Judge by Defendant Kris W. Kobach Filing fee $ 505, Internet Payment Receipt Number AKSDC–4235924. (Becker, Sue) (Entered: 07/31/2017) |
| 08/01/2017 | <u>378</u> | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re <u>377</u> Notice of Interlocutory Appeal ( Appeal No. 17–3161). (Attachments: # <u>1</u> Preliminary Record)(cv) (Entered: 08/01/2017) |
| 08/01/2017 | <u>379</u> | | APPEAL DOCKETED in 10CCA on 07/31/2017 and assigned Appeal No. 17–3161 re <u>377</u> Notice of Interlocutory Appeal filed by Kris W. Kobach. (cv) (Entered: 08/01/2017) |
| 08/02/2017 | <u>380</u> | | |

| | | |
|---|---|---|
| | | ORDER of 10CCA: The emergency motion for a stay pending appeal is denied (Appeal No. 17–3161). (cv) (Entered: 08/02/2017) |
| 08/03/2017 | 381 | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: Partial In Court Hearing and Deposition held in courthouse conference room on 8/3/2017. (FTR 10:04.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 08/03/2017) |
| 08/04/2017 | 382 | MOTION for Summary Judgment by Defendant Kris W. Kobach and RESPONSE re 366 MOTION for Summary Judgment. (Roe, Garrett) (Entered: 08/04/2017) |
| 08/04/2017 | 383 | MEMORANDUM IN SUPPORT of 382 MOTION for Summary Judgment *and in Opposition to Plaintiffs' Motion for Summary Judgment* by Defendant Kris W. Kobach(Roe, Garrett) (Entered: 08/04/2017) |
| 08/04/2017 | 384 | INDEX OF EXHIBITS by Defendant Kris W. Kobach re 382 MOTION for Summary Judgment (Attachments: # 1 Ex A Caskey Depo, # 2 Ex B Caskey Depo, # 3 Ex C Caskey Depo, # 4 Ex D Earnest Depo, # 5 Ex E Amended Notice of Intraagency policy, # 6 Ex F Bryant Deposition, # 7 Ex G Minnite Deposition, # 8 Ex H Barreto Deposition, # 9 Ex I Caskey Declaration, # 10 Ex J Caskey Declartion, # 11 Ex K Mayorkas Letter, # 12 Ex L Richman Depo, # 13 Ex M Richman Report, # 14 Ex N Richman Rebuttal, # 15 Ex O Caskey Declaration, # 16 Ex P Caskey Declaration, # 17 Ex Q Caskey Declartion, # 18 Ex R Lehman Declaration, # 19 Ex S Chart, # 20 Ex T Chart, # 21 Ex U Chart, # 22 Ex V Declaration, # 23 Ex W Declaration, # 24 Ex X Declaration, # 25 Ex Y Declaration, # 26 Ex Z Election Spreadsheet, # 27 Ex AA Letter from Napolitano, # 28 Ex BB Lehman Deposition, # 29 Ex CC PILF Amicus Brief, # 30 Ex DD Von Spakowsky Depo, # 31 Ex EE Von Spaowsky Report, # 32 Exhibit FF Amended Pretrial Order, # 33 Ex GG Registration Receipt, # 34 Ex HH Butterworth Deposition, # 35 Ex II Congressional Records Excerpts, # 36 Ex JJ Chart, # 37 Ex KK Arizona SAVE website, # 38 Ex. LL From RCD, # 39 Ex MM Testimony, # 40 Ex NN Seward County Letter, # 41 Ex. OO Intraagency Agreement, # 42 Ex PP Notice of Changes, # 43 Ex QQ Elections Crimes Spreadsheet, # 44 Ex TT Bucci Depo, # 45 Ex UU Caskey Declaration)(Roe, Garrett) (Entered: 08/05/2017) |
| 08/11/2017 | 385 | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 369 MOTION to Unseal Document 368 Unopposed SEALED MOTION for Leave to File Under Seal filed by Thomas J. Boynton, The League of Women Voters of Kansas, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Donna Bucci (Attachments: # 1 Exhibit – Redacted)(Bonney, Stephen) (Entered: 08/11/2017) |
| 08/11/2017 | 386 | UNOPPOSED SEALED MOTION for Leave to File Under Seal *Plaintiffs' Reply in Support of Motion to Unseal and Exhibit* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # 1 Proposed Sealed Document Plaintiffs' Reply in Support of Motion to Unseal, # 2 Proposed Amended Complaint Exhibit A)(Bonney, Stephen) (Entered: |

| | | | |
|---|---|---|---|
| | | | 08/11/2017) |
| 08/14/2017 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 386 Unopposed SEALED MOTION for Leave to File Under Seal** *Plaintiffs' Reply in Support of Motion to Unseal and Exhibit.* **The motion will be resolved by the District Judge.(ss)** (Entered: 08/14/2017) |
| 08/14/2017 | 387 | | ORDER granting 386 Motion for Leave to File Under Seal. Counsel directed to file forthwith requested document(s) with an event from the SEALED DOCUMENTS category. The clerk shall grant access to sealed document(s) to counsel of record. Pro hac vice attorneys must obtain sealed document(s) from local counsel. Signed by Chief District Judge Julie A Robinson on 8/14/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 08/14/2017) |
| 08/15/2017 | 388 | | SEALED REPLY to Response to Motion by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 369 MOTION to Unseal Document 368 Unopposed SEALED MOTION for Leave to File Under Seal filed by Thomas J. Boynton, The League of Women Voters of Kansas, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Donna Bucci (Attachments: # 1 Ex. A)(Bonney, Stephen) (Entered: 08/15/2017) |
| 08/25/2017 | 389 | | MOTION to Exclude *the Testimony and Report of Jesse T. Richman* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 08/25/2017) |
| 08/25/2017 | 390 | | MEMORANDUM IN SUPPORT of 389 MOTION to Exclude *the Testimony and Report of Jesse T. Richman* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Affidavit of Daphne T. Ha, # 2 Ex. A Richman Report, # 3 Ex. B Richman Rebuttal Report, # 4 Ex. C Richman Dep. Tr., # 5 Ex. D Ansolabehere Election Studies Art., # 6 Ex. E WaPo Methodological Challenges, # 7 Ex. F WaPo What Can We Learn, # 8 Ex. G WaPo Non–citizens Following Laws, # 9 Ex. H Open Letter to Richman, # 10 Ex. I Ansolabehere and Hersh Article, # 11 Ex. J Ansolabehere Report, # 12 Ex. K Richman Electoral Studies Article, # 13 Ex. L Hersh Expert Report, # 14 Ex. M Hersh Second Suppl. Report, # 15 Ex. N Ex. 14 to Richman Depo., # 16 Ex. O Think Progress Article, # 17 Ex. P Ex. 18 to Richman Depo.)(Bonney, Stephen) (Entered: 08/25/2017) |
| 08/25/2017 | 391 | | MOTION to Exclude *the Testimony and Report of Hans von Spakovsky* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonney, Stephen) (Entered: 08/25/2017) |
| 08/25/2017 | 392 | | MEMORANDUM IN SUPPORT of 391 MOTION to Exclude *the Testimony and Report of Hans von Spakovsky* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Affidavit of Daphne T. Ha, # 2 Ex. A Expert Report of von Spakovsky, # 3 Ex. B von Spakovsky Depo. Tr., # 4 Ex. C Ex. 23 Feinstein Letters, # 5 Ex. D Ex. 24 Feinstein Letter, # 6 Ex. E Barreto Rebuttal Rep., # 7 Ex. F GAO Report)(Bonney, Stephen) (Entered: |

| | | | |
|---|---|---|---|
| | | | 08/25/2017) |
| 08/25/2017 | 393 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re 366 MOTION for Summary Judgment , 382 MOTION for Summary Judgment (Attachments: # 1 Affidavit of Dale Ho, # 2 Exhibit – Redacted DD, # 3 Exhibit – Redacted EE, # 4 Ex. FF Fish Depo., # 5 Ex. GG Rucker Depo., # 6 Ex. HH SAVE – Agency Search Tool, # 7 Ex. II Nov. 20 Notice Letter, # 8 Ex. JJ Dec. 17 Notice Letter, # 9 Ex. KK Partial Summ. J. Tr., # 10 Ex. LL Bucci Decl., # 11 Ex. MM Boynton Decl., # 12 Ex. NN Stricker Decl., # 13 Ex. OO Fish Decl., # 14 Ex. PP Close Elections Spreadsheet)(Bonney, Stephen) (Entered: 08/25/2017) |
| 08/25/2017 | 394 | | Unopposed SEALED MOTION for Leave to File Under Seal by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Proposed Sealed Document Pls. Consolidated SJ Resp. and Repl. Br., # 2 Proposed Sealed Document Declaration of Dale Ho, # 3 Proposed Sealed Document Ex. DD, # 4 Proposed Sealed Document Ex. EE)(Bonney, Stephen) (Entered: 08/25/2017) |
| 08/28/2017 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 394 Unopposed SEALED MOTION for Leave to File Under Seal . The motion will be resolved by the District Judge.(amh)** (Entered: 08/28/2017) |
| 08/28/2017 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 391 MOTION to Exclude *the Testimony and Report of Hans von Spakovsky*, 389 MOTION to Exclude *the Testimony and Report of Jesse T. Richman*. The motion will be resolved by the District Judge.(amh)** (Entered: 08/28/2017) |
| 08/28/2017 | 395 | | ORDER granting 394 Motion for Leave to File Under Seal. Counsel directed to file forthwith requested document(s) with an event from the SEALED DOCUMENTS category. The clerk shall grant access to sealed document(s) to counsel of record. Pro hac vice attorneys must obtain sealed document(s) from local counsel. Signed by Chief District Judge Julie A Robinson on 8/28/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 08/28/2017) |
| 08/30/2017 | 396 | | SEALED RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re 366 MOTION for Summary Judgment , 382 MOTION for Summary Judgment (Attachments: # 1 Affidavit of Dale Ho, # 2 Ex. DD, # 3 Ex. EE)(Bonney, Stephen) Modified on 10/5/2017 to unseal 396–3 per 405 MEMORANDUM AND ORDER.(kao) Modified on 10/26/2017 to unseal main doc 396 per 416 Minute Entry. (kao) (Entered: 08/30/2017) |
| 08/31/2017 | 397 | | APPEAL MANDATE from 10CCA: DISMISSING appeal. (Appeal No. 17–3161) (Attachments: # 1 Transmittal Letter)(kao) (Entered: 08/31/2017) |
| 09/11/2017 | 398 | | TRANSCRIPT of Deposition Objections held August 3, 2017 before Judge James P. O'Hara, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: American Civil Liberties Union. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 12/11/2017. (kg) (Entered: 09/11/2017) |
| 09/14/2017 | 399 | RESPONSE by Defendant Kris W. Kobach re 389 MOTION to Exclude *the Testimony and Report of Jesse T. Richman* (Attachments: # 1 Exhibit List Exhibit LIst, # 2 Exhibit Richman Expert Report, # 3 Exhibit Richman Rebuttal Report, # 4 Exhibit Deposition of Richman, # 5 Exhibit Do Noncitizens vote in US elections, # 6 Exhibit working paper, # 7 Exhibit ODU Research Center Brochure, # 8 Exhibit Richman CV, # 9 Exhibit Open Letter Blog Post, # 10 Exhibit Email bw Richman and Schaffner, # 11 Exhibit Call Log, # 12 Exhibit Response Rate Calculator, # 13 Exhibit AAPOR Standard Definitions, # 14 Exhibit Richman/Andrews Paper, # 15 Exhibit Expert Witness List – Lee, # 16 Exhibit Lee case – testimony scheduling, # 17 Exhibit weak statistical power quote, # 18 Exhibit Telephone survey questions, # 19 Exhibit Ansolabehere article)(Lee, Bethany) (Entered: 09/14/2017) |
| 09/14/2017 | 400 | RESPONSE by Defendant Kris W. Kobach re 391 MOTION to Exclude *the Testimony and Report of Hans von Spakovsky* (Attachments: # 1 Exhibit LIst, # 2 CV, # 3 Deposition, # 4 Barreto biography, # 5 Docking Ins. Survey List, # 6 Testimony of ACLU, # 7 2012 Kansas Speaks Survey, # 8 2011 Kansas Speaks Survey, # 9 2015 Kansas Speaks Survey, # 10 Latino Decisions Survey, # 11 Barreto Expert Report in Applewhite, # 12 Latino Decisions Pre–Election Survey Nov 2016, # 13 NBC News Report, # 14 Latino Decisions Survey for, # 15 Latino Decisions for NALEO, # 16 2017 Kansas Speaks, # 17 Survey Practice Publishing Guide, # 18 Latino Decisions Blog)(Lee, Bethany) (Entered: 09/14/2017) |
| 09/15/2017 | 401 | SEALED MOTION for Leave to File Under Seal *Defendant's Reply for MSJ* by Defendant Kris W. Kobach (Attachments: # 1 Unredacted Version of Brief for Court)(Roe, Garrett) (Entered: 09/15/2017) |
| 09/15/2017 | 402 | REPLY TO RESPONSE TO MOTION by Defendant Kris W. Kobach re: 394 Unopposed SEALED MOTION for Leave to File Under Seal , 366 MOTION for Summary Judgment , 382 MOTION for Summary Judgment (Roe, Garrett) (Entered: 09/15/2017) |
| 09/15/2017 | 403 | INDEX OF EXHIBITS by Defendant Kris W. Kobach re 382 MOTION for Summary Judgment (Attachments: # 1 Ex SS Hersch Supplement)(Roe, Garrett) (Entered: 09/15/2017) |
| 09/18/2017 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 401 SEALED MOTION for Leave to File Under Seal *Defendant's Reply for MSJ*. The motion will be resolved by the District Judge.(ss) (Entered: 09/18/2017)** |

| 09/18/2017 | 404 | | ORDER granting 401 Motion for Leave to File Under Seal. Counsel directed to file forthwith the requested unredacted document(s) with an event from the SEALED DOCUMENTS category, subject to review when the Court rules on Plaintiffs' motion to unseal. The clerk shall grant access to sealed document(s) to counsel of record. Pro hac vice attorneys must obtain sealed document(s) from local counsel. Signed by Chief District Judge Julie A Robinson on 9/18/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (as) (Entered: 09/18/2017) |
|---|---|---|---|
| 10/05/2017 | 405 | | MEMORANDUM AND ORDER granting 369 Motion to Unseal Document. See Order for additional deadlines. Signed by Chief District Judge Julie A Robinson on 10/5/17. (kao) (Entered: 10/05/2017) |
| 10/05/2017 | 406 | | SEALED MEMORANDUM AND ORDER as to 369 Motion to Unseal. **Note: This is a sealed/unredacted version of 405 Memorandum & Order. Signed by Chief District Judge Julie A Robinson on 10/5/17. (kao) Modified on 10/26/2017 to unseal per 416 Minute Entry. (kao) (Entered: 10/05/2017) |
| 10/06/2017 | 407 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 389 MOTION to Exclude *the Testimony and Report of Jesse T. Richman* (Bonney, Stephen) (Entered: 10/06/2017) |
| 10/06/2017 | 408 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 391 MOTION to Exclude *the Testimony and Report of Hans von Spakovsky* (Attachments: # 1 Affidavit of Dale Ho, # 2 Ex. G Latino Policy Coal. Survey Questions, # 3 Ex. H Latino Policy Coal. 2006 Midterm Survey, # 4 Ex. I NALEO Cross Tabulation)(Bonney, Stephen) (Entered: 10/06/2017) |
| 10/11/2017 | 409 | | NOTICE of Filing Regarding Unsealed Materials by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonney, Stephen) (Entered: 10/11/2017) |
| 10/11/2017 | 410 | | SEALED REPLY to Response to Motion by Defendant Kris W. Kobach re: 382 MOTION for Summary Judgment (Roe, Garrett) (Entered: 10/11/2017) |
| 10/12/2017 | 411 | | NOTICE of Already Filed Redacted Brief by Kris W. Kobach re 406 Document Sealed, Memorandum & Order, 405 Order on Motion to Unseal Document, 402 Reply to Response to Motion (Roe, Garrett) (Entered: 10/12/2017) |
| 10/16/2017 | 412 | | NOTICE of Telephonic Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Notice of Telephonic Conference Re: redactions to summary judgment briefs per the Court's October 5, 2017 Memorandum and Order (Doc. 405). The parties shall be prepared to discuss whether they have resolved the issue of unsealing limited portions of Defendant Kobach's deposition testimony as referenced in Defendant's October 12 Notice (Doc. 411), and how any such agreement impacts redactions of the summary judgment briefs. To the extent the parties continue to disagree about this issue, they may submit briefs to the Court not to exceed 3 pages in length no later than Thursday, October 19, 2017 by 5:00 p.m. The telephone status conference |

| | | | |
|---|---|---|---|
| | | | is set for <u>10/25/2017 at 02:30 PM before Chief District Judge Julie A Robinson. All counsel who wish to participate in this telephone conference are instructed to dial into the conference line. The CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE 4697748#</u> (bw) (Entered: 10/16/2017) |
| 10/19/2017 | <u>413</u> | | RESPONSE by Defendant Kris W. Kobach, Consol Interested Dft Kris W. Kobach re <u>405</u> Order on Motion to Unseal Document *(Brief on Unsealing Limited Portions of Deposition)* (Becker, Susan) (Entered: 10/19/2017) |
| 10/19/2017 | <u>414</u> | | RESPONSE to 412 Notice of Hearing *(Brief in Support of Unsealing)* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # <u>1</u> Affidavit of R. Orion Danjuma, # <u>2</u> Ex. A Class Cert Tr. Excerpt, # <u>3</u> Ex. B Emails 9.13.17, # <u>4</u> Ex. C Emails 10.11.17, # <u>5</u> Ex. D Emails 10.13.17, # <u>6</u> Ex. E Emails 10.17.17)(Bonney, Stephen) (Entered: 10/19/2017) |
| 10/24/2017 | <u>415</u> | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Bethany J. Lee as to Kris W. Kobach (Lee, Bethany) (Entered: 10/24/2017) |
| 10/25/2017 | <u>416</u> | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: STATUS CONFERENCE held on 10/25/2017. The Court orders that: (1) the Clerk shall unseal Plaintiffs' unredacted summary judgment briefs (Docs. 373 and 396); (2) the Clerk shall unseal the Court's unredacted October 5, 2017 Memorandum and Order (Doc. 406); (3) Defendant shall file an amended redacted reply brief that omits all redactions except for footnote 2; (4) Ex. DD attached to Doc. 396 (the full deposition testimony) shall remain under seal; and (5) Plaintiffs shall file the excerpts from Ex. DD referenced in their brief, along with content that provides necessary context. The parties shall file these documents forthwith.(Court Reporter Kelli Stewart.) (bw) (Entered: 10/26/2017) |
| 10/26/2017 | <u>417</u> | | EXHIBIT DD EXCERPTS IN SUPPORT of <u>396</u> SEALED Response to Motion, *(Deposition of Kris Kobach)* by Plaintiffs. (Bonney, Stephen) (Additional attachment(s) added on 10/26/2017: # <u>1</u> Exhibit DD Redacted per the Court's Order 419 ) (bw). (Entered: 10/26/2017) |
| 10/26/2017 | <u>418</u> | | REPLY TO RESPONSE TO MOTION by Defendant Kris W. Kobach re: <u>382</u> MOTION for Summary Judgment (Roe, Garrett) (Entered: 10/26/2017) |
| 10/26/2017 | 419 | | ORDER: The Court has reviewed the deposition excerpts in Doc. 417, filed by Plaintiffs today in response to the Court's oral ruling at the October 25, 2017 telephonic conference. Most of the attached pages are allowable under the Court's ruling. However, the Court finds that several pages included in this filing go beyond the scope of the Court's ruling that Plaintiff could file deposition transcript excerpts that were specifically referenced in its summary judgment brief, and necessary context for those cited–to pages. The Clerk is therefore instructed to redact the following pages in Doc. 417: pages 37 through 40, and 62 through 71. Signed by Chief District Judge Julie A Robinson on 10/26/2017. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ams) (Entered: 10/26/2017) |
| 12/15/2017 | <u>420</u> | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney J. Brian Cox as to Nick Jordan. (Cox, Joseph) (Entered: 12/15/2017) |

| 01/03/2018 | 421 | | MEMORANDUM AND ORDER denying 366 Plaintiff's Motion for Summary Judgment; granting in part and denying in part 382 Defendant's Motion for Summary Judgment. The motion is granted as to Counts 4 and 6. It is otherwise denied. Granting in part and denying in part 389 and 391 Motion to Exclude the testimony and reports of Jesse T. Richman. Signed by Chief District Judge Julie A Robinson on 1/3/18. (hw) (Entered: 01/03/2018) |
| 01/08/2018 | 422 | | STATUS REPORT *regarding Trial Procedures* by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/08/2018) |
| 01/08/2018 | 423 | | MOTION for Contempt by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/08/2018) |
| 01/08/2018 | 424 | | MEMORANDUM IN SUPPORT of 423 MOTION for Contempt by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Affidavit of Dale Ho, # 2 Ex. A – Excerpts from County Election Manual, # 3 Ex. B – 12.7.2017 Email from Dale Ho, # 4 Ex. C – 7.19.2017 Letter from Doug Bonney, # 5 Ex. D – 7.27.2017 Email from Sue Becker, # 6 Ex. E – 8.31.2017 Email from Doug Bonney, # 7 Ex. F – 11.10.2017 Letter from Dale Ho, # 8 Ex. G – Sample Cert. of Registration, # 9 Ex. H – 11.21.2017 Letter from Sue Becker, # 10 Ex. I – 11.30.2017 Letter from Dale Ho, # 11 Ex. J – 12.11.2017 Letter from Sue Becker)(Bonney, Stephen) (Entered: 01/08/2018) |
| 01/09/2018 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 423 MOTION for Contempt . The motion will be resolved by the District Judge.(srj)** (Entered: 01/09/2018) |
| 01/10/2018 | 425 | | ORDER SETTING PRETRIAL FILING DEADLINES: The parties shall file all motions in limine no later than February 13, 2018. Bench Trial set for 3/6/2018 at 09:00 AM in KC Courtroom 427 (JAR) before Chief District Judge Julie A Robinson. See Order for additional deadlines and details. Signed by Chief District Judge Julie A Robinson on 1/10/18. (kao) (Entered: 01/10/2018) |
| 01/18/2018 | 426 | | NOTICE of Telephone Status Conference:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Telephone Status Conference set for 2/6/2018 at 01:00 PM – before Chief District Judge Julie A Robinson. All counsel who wish to participate in this telephone status conference are instructed to dial into the conference line. THE CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE is 4697748#.(bw) (Entered: 01/18/2018) |
| 01/22/2018 | 427 | | MOTION to Exclude *the Testimony and Report of Jesse T. Richman and Suggestions in Support* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/22/2018) |
| 01/22/2018 | 428 | | MOTION to Exclude *the Testimony and Report of Hans von Spakovsky and Suggestions in Support* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women |

| | | | Voters of Kansas. (Bonney, Stephen) (Entered: 01/22/2018) |
|---|---|---|---|
| 01/22/2018 | 429 | | MOTION to Exclude *the Testimony and Report of Steven A. Camarota* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/22/2018) |
| 01/22/2018 | 430 | | MEMORANDUM IN SUPPORT of 429 MOTION to Exclude *the Testimony and Report of Steven A. Camarota* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # 1 Affidavit of Daphne Ha, # 2 Ex. A Camarota Expert Report, # 3 Ex. B Camarota 10.17.16 Dep. Tr., # 4 Ex. C SPLC Profile, # 5 Ex. D Keeping America Empty Article, # 6 Ex. E Why is CIS Publishing an Alt Right Article, # 7 Ex. F CIS Spokesman Lashes out Article, # 8 Ex. G 01.13.2017 Roe–Liu Email, # 9 Ex. H McDonald Supplemental Report, # 10 Ex. I 05.25.2016 Caskey–Camarota Email, # 11 Ex. J 05.26.2016 Camarota–Caskey Email)(Bonney, Stephen) (Entered: 01/22/2018) |
| 01/22/2018 | 431 | | MOTION to Exclude *Testimony of Lorraine Minnite* by Defendant Kris W. Kobach. (Becker, Susan) (Entered: 01/22/2018) |
| 01/22/2018 | 432 | | MEMORANDUM IN SUPPORT of 431 MOTION to Exclude *Testimony of Lorraine Minnite* by Defendant Kris W. Kobach. (Becker, Susan) (Entered: 01/22/2018) |
| 01/22/2018 | 433 | | (DISREGARD ENTRY – INCORRECT/INCOMPLETE DOCUMENTS ATTACHED; TO BE RE–FILED CORRECTLY)EXHIBITS IN SUPPORT of 431 MOTION to Exclude *Testimony of Lorraine Minnite* by Defendant Kris W. Kobach. (Attachments: # 1 Exhibit, # 2 Exhibit)(Becker, Susan) Modified on 1/23/2018 (kao). (Entered: 01/22/2018) |
| 01/22/2018 | 434 | | (DISREGARD ENTRY – INCORRECT ECF EVENT SELECTED; TO BE RE–FILED CORRECTLY) MOTION to Disqualify *Minnite* by Defendant Kris W. Kobach (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Becker, Susan) Modified on 1/23/2018 (kao). (Entered: 01/22/2018) |
| 01/22/2018 | 435 | | RESPONSE by Defendant Kris W. Kobach re 423 MOTION for Contempt. (Becker, Susan) (Entered: 01/22/2018) |
| 01/23/2018 | | | DOCKET ANNOTATION:Per chambers, docket entries 434 MOTION and 433 Exhibits have been blocked from public view and are to be re–filed using the correct ECF event. See #436 for correct filing. (kao) (Entered: 01/23/2018) |
| 01/23/2018 | 436 | | INDEX OF EXHIBITS by Defendant Kris W. Kobach re 431 MOTION to Exclude *Testimony of Lorraine Minnite*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Becker, Susan) (Entered: 01/23/2018) |
| 01/24/2018 | 437 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 423 MOTION for Contempt. (Attachments: # 1 Affidavit of Dale Ho, # 2 Ex. K 10.05.2016 Status Conference Transcript)(Bonney, Stephen) (Entered: 01/24/2018) |

| 01/30/2018 | 438 | | WITNESS LIST by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas.(Bonney, Stephen) (Entered: 01/30/2018) |
| 01/30/2018 | 439 | | DESIGNATION OF DEPOSITION (Eric Rucker) by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/30/2018) |
| 01/30/2018 | 440 | | DESIGNATION OF DEPOSITION (Kris Kobach) by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/30/2018) |
| 01/30/2018 | 441 | | DESIGNATION OF DEPOSITION (Bradley Bryant) by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/30/2018) |
| 01/30/2018 | 442 | | EXHIBIT LIST by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas.(Bonney, Stephen) (Entered: 01/30/2018) |
| 01/30/2018 | 443 | | DESIGNATION OF DEPOSITIONS by Kris W. Kobach. (Becker, Susan) (Entered: 01/30/2018) |
| 01/30/2018 | 444 | | WITNESS LIST by Kris W. Kobach. (Attachments: # 1 Exhibit)(Becker, Susan) (Entered: 01/30/2018) |
| 01/30/2018 | 445 | | EXHIBIT LIST by Kris W. Kobach.(Becker, Susan) (Entered: 01/30/2018) |
| 01/31/2018 | 446 | | AMENDED WITNESS LIST by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/31/2018) |
| 01/31/2018 | 447 | | AMENDED EXHIBIT LIST by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 01/31/2018) |
| 02/02/2018 | 448 | | MOTION to Exclude *and Strike Untimely "Additional" Expert Opinions from Dr. Jesse Richman* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 02/02/2018) |
| 02/05/2018 | 449 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 2/8/2018 at 12:15 PM before Chief District Judge Julie A Robinson. All counsel who wish to participate in this telephone status conference are instructed to dial into the conference line. The CONFERENCE LINE is 1–888–363–4749 and the ACCESS CODE is 4697748#.(bw) (Entered: 02/05/2018) |
| 02/05/2018 | 450 | | NOTICE OF CANCELLED HEARING: Telephone conference set for 2/6/2018 at 1:00 p.m. is cancelled. The Court reset telephone status conference to 2/8/2018 at 12:15 p.m. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) Modified on 2/5/2018 to correct |

| | | | |
|---|---|---|---|
| | | | date of cancelled hearing. (kao) (Entered: 02/05/2018) |
| 02/05/2018 | 451 | | RESPONSE by Defendant Kris W. Kobach re 427 MOTION to Exclude *the Testimony and Report of Jesse T. Richman and Suggestions in Support.* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Becker, Susan) (Entered: 02/05/2018) |
| 02/05/2018 | 452 | | RESPONSE by Defendant Kris W. Kobach re 428 MOTION to Exclude *the Testimony and Report of Hans von Spakovsky and Suggestions in Support.* (Becker, Susan) (Entered: 02/05/2018) |
| 02/05/2018 | 453 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re 431 MOTION to Exclude *Testimony of Lorraine Minnite.* (Attachments: # 1 Affidavit of Sophia Lin Lakin, # 2 Ex. A Minnite CV (3/2017), # 3 Ex. B Minnite Dep. Excerpts (6/2/2016), # 4 Ex. C Minnite Affidavit (2/5/2018), # 5 Ex. C–1 McGrandy Letter, # 6 Ex. D Minnite Rebuttal Report, # 7 Ex. E Pls.' Rebuttal Expert Disclosures, # 8 Ex. F Minnite Dep. Excerpt (3/31/2017))(Bonney, Stephen) (Entered: 02/05/2018) |
| 02/05/2018 | 454 | | RESPONSE by Defendant Kris W. Kobach re 429 MOTION to Exclude *the Testimony and Report of Steven A. Camarota.* (Roe, Garrett) (Entered: 02/05/2018) |
| 02/05/2018 | 455 | | INDEX OF EXHIBITS by Defendant Kris W. Kobach to Response re 429 MOTION to Exclude *the Testimony and Report of Steven A. Camarota.* (Attachments: # 1 Ex A Camarota Report, # 2 Ex B Camarota Depo, # 3 Ex C McDonald Report, # 4 Ex D McDonald Depo, # 5 Ex E McArdle Article, # 6 Ex F insidious, # 7 Ex G National Review, # 8 Ex I Minnite Report, # 9 Ex J Kansas statistics)(Roe, Garrett) (Entered: 02/05/2018) |
| 02/07/2018 | 456 | | MOTION for attorney Emily Rong Zhang to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–4400120.) by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # 1 Affidavit of Emily Rong Zhang, # 2 ECF Registration Form)(Bonney, Stephen) (Entered: 02/07/2018) |
| 02/08/2018 | 457 | | ORDER granting 456 Motion to Appear Pro Hac Vice of Emily Rong Zhang for Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Unless already registered, pro hac vice counsel should register for electronic notification pursuant to the court's Administrative Procedures by completing a CM/ECF Electronic Filing Registration Form at http://www.ksd.uscourts.gov/. Signed by Magistrate Judge James P. O'Hara on 2/8/18. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kao) (Entered: 02/08/2018) |
| 02/08/2018 | 458 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: FINAL PRETRIAL CONFERENCE held on 2/8/2018. The Court sets deadline of 2/19/2018 for parties to reach an agreement on stipulated exhibits and factual stipulations. Response to Plaintiffs' Motion to Exclude and Strike Untimely "Additional" Expert Opinions from Dr. Jesse Richman (Doc. 488) is due February 16, 2018. Proposed findings of fact and conclusions of |

| | | | law are not mandatory, but may be filed by February 20, 2018. The Court will set a deadline for post–trial proposed findings of fact and conclusions of law at the conclusion of trial. (Court Reporter Kelli Stewart.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 02/09/2018) |
|---|---|---|---|
| 02/09/2018 | | | **Set Additional Court Trial Days: Bench trial set for <u>3/7/2018 at 09:00 AM</u>, <u>3/8/2018 at 09:00 AM</u>, <u>3/9/2018 at 09:00 AM</u>, <u>3/12/2018 at 09:00 AM</u>, <u>3/13/2018 at 09:00 AM</u>, <u>3/19/2018 at 09:00 AM</u>, <u>3/20/2018 at 09:00 AM</u> in KC Room 643 before Chief District Judge Julie A Robinson. This bench trial begins on 3/6/2018 at 9:00 a.m. and will be held in Courtroom 643.**(bw) (Entered: 02/09/2018) |
| 02/13/2018 | <u>459</u> | | MOTION in Limine *for Court to Take Judicial Notice of Adjudicative Facts* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonney, Stephen) (Entered: 02/13/2018) |
| 02/13/2018 | <u>460</u> | | MOTION in Limine *to Exclude Testimony, Strike Deposition Designations, and Exclude Survey of Patrick McFerron* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # <u>1</u> Ex. A Pls.' Tentative Expert Disclosures Email, # <u>2</u> Ex. B Confirmation of Live Defense Experts Email)(Bonney, Stephen) (Entered: 02/13/2018) |
| 02/13/2018 | <u>461</u> | | OBJECTIONS to <u>443</u> Designation of Depositions *and Counter–Designations* by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # <u>1</u> Ex. A Pls.' Objections & Counter–Designations)(Bonney, Stephen) (Entered: 02/13/2018) |
| 02/13/2018 | <u>462</u> | | OBJECTIONS to <u>445</u> Exhibit List *, as Revised by Defendant,* by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Attachments: # <u>1</u> Ex. A 2018.02.07 Revised Def. Exhibit List, # <u>2</u> Ex. B 2018.02.12 Revised Def. Exhibit List)(Bonney, Stephen) (Entered: 02/13/2018) |
| 02/13/2018 | <u>463</u> | | MOTION in Limine by Defendant Kris W. Kobach (Attachments: # <u>1</u> Exhibit)(Becker, Susan) (Entered: 02/13/2018) |
| 02/13/2018 | <u>464</u> | | OBJECTIONS to *Plaintiffs' Deposition Designations* by Kris W. Kobach. (Becker, Susan) (Entered: 02/13/2018) |
| 02/13/2018 | <u>465</u> | | OBJECTIONS to *Plaintiffs' Exhibit List* by Kris W. Kobach. (Roe, Garrett) (Entered: 02/13/2018) |
| 02/15/2018 | <u>466</u> | | TRANSCRIPT of Telephonic Status/Final Pretrial Conference (41 pgs) held 02/08/2018 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our** |

| | | | |
|---|---|---|---|
| | | | **website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 5/16/2018. (ks) (Entered: 02/15/2018) |
| 02/16/2018 | 467 | | RESPONSE by Defendant Kris W. Kobach re 448 MOTION to Exclude *and Strike Untimely "Additional" Expert Opinions from Dr. Jesse Richman* (Attachments: # 1 Exhibit)(Becker, Susan) (Entered: 02/16/2018) |
| 02/18/2018 | 468 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Ralph Ortiz, Charles Stricker, The League of Women Voters of Kansas re: 448 MOTION to Exclude *and Strike Untimely "Additional" Expert Opinions from Dr. Jesse Richman* (Bonney, Stephen) (Entered: 02/18/2018) |
| 02/19/2018 | 469 | | NOTICE of Joint Pretrial Stipulations by Kris W. Kobach (Becker, Susan) (Modified on 2/20/2018 to correct title of document in docket text. (hl)) (Entered: 02/19/2018) |
| 02/20/2018 | 470 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 428 MOTION to Exclude *the Testimony and Report of Hans von Spakovsky and Suggestions in Support* (Bonney, Stephen) (Entered: 02/20/2018) |
| 02/20/2018 | 471 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 427 MOTION to Exclude *the Testimony and Report of Jesse T. Richman and Suggestions in Support* (Bonney, Stephen) (Entered: 02/20/2018) |
| 02/20/2018 | 472 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 429 MOTION to Exclude *the Testimony and Report of Steven A. Camarota* (Attachments: # 1 Affidavit of Daphne Ha, # 2 Ex. A Camarota Deposition Excerpt)(Bonney, Stephen) (Entered: 02/20/2018) |
| 02/20/2018 | 473 | | OBJECTION(S) to 464 Objection(s) *and Counter Deposition Designations of Defendant* by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 02/20/2018) |
| 02/20/2018 | 474 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re 463 MOTION in Limine *and re Defendant's Objection to Designation of His Deposition* (Bonney, Stephen) (Entered: 02/20/2018) |
| 02/20/2018 | 475 | | PROPOSED FINDINGS OF FACT by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas.(Bonney, Stephen) (Entered: 02/20/2018) |

| 02/20/2018 | 476 | | OBJECTION(S) to 461 Objection(s), *to Plaintiffs Counter Designations* by Kris W. Kobach. (Roe, Garrett) (Entered: 02/20/2018) |
|---|---|---|---|
| 02/20/2018 | 477 | | RESPONSE by Defendant Kris W. Kobach re 460 MOTION in Limine *to Exclude Testimony, Strike Deposition Designations, and Exclude Survey of Patrick McFerron* (Attachments: # 1 Exhibit)(Becker, Susan) (Entered: 02/20/2018) |
| 02/21/2018 | 478 | | RESPONSE by Defendant Kris W. Kobach re 459 MOTION in Limine *for Court to Take Judicial Notice of Adjudicative Facts* (Becker, Susan) (Entered: 02/21/2018) |
| 02/23/2018 | 479 | | EXHIBIT C IN SUPPORT of 460 MOTION in Limine *to Exclude Testimony, Strike Deposition Designations, and Exclude Survey of Patrick McFerron* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonney, Stephen) (Entered: 02/23/2018) |
| 02/27/2018 | 480 | | MEMORANDUM AND ORDER granting in part and denying in part 448 Motion to Strike and Exclude Untimely "Additional" Expert Opinions From Dr. Jesse Richman. The motion to exclude is granted and the motion to strike is denied. IT IS FURTHER ORDERED that Plaintiffs' 460 Motion to Exclude Testimony, Strike Deposition Designations, and Exclude Survey of Patrick McFerron is granted in part, denied in part, and taken under advisement in part. The Court denies Plaintiffs' motion to exclude, grants the motion to strike McFerron's deposition designation, and takes under advisement Plaintiffs' objection to the admissibility of the survey. Signed by Chief District Judge Julie A Robinson on 2/27/18. (kao) (Entered: 02/27/2018) |
| 02/27/2018 | 481 | | MOTION for Leave to file Reply *in Support of Defendant's Motion in Limine* by Defendant Kris W. Kobach (Attachments: # 1 Exhibit)(Becker, Susan) (Entered: 02/27/2018) |
| 02/28/2018 | 482 | | ORDER granting 481 Motion for Leave to File Reply. Defendant shall file the attached reply forthwith. Signed by Chief District Judge Julie A Robinson on 2/28/2018. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 02/28/2018) |
| 02/28/2018 | 483 | | REPLY TO RESPONSE TO MOTION by Defendant Kris W. Kobach re: 463 MOTION in Limine *to Exclude References to Amending NVRA* (Becker, Susan) (Entered: 02/28/2018) |
| 03/06/2018 | 484 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: BENCH TRIAL held on 3/6/2018. Opening statements by the parties. Plaintiff begins presentation of evidence. Court adjourns at 5:38 p.m. and will resume on Wednesday, March 7, 2018 at 9:00 a.m. (Court Reporter Kelli Stewart, Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 03/07/2018) |
| 03/07/2018 | 485 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: BENCH TRIAL held on 3/7/2018. Plaintiffs continue with presentation of evidence. Court adjourns at 5:16 p.m. and will resume on Thursday, March 8, 2018 at 9:00 a.m. (Court Reporter Kelli Stewart, Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 03/08/2018) |

| 03/08/2018 | 487 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: BENCH TRIAL held on 3/8/2018. The plaintiffs continue with presentation of evidence. The Court adjourns at 5:15 p.m. and will resume on Friday, March 9, 2018 at 9:00 a.m. (Court Reporter Kelli Stewart, Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 03/09/2018) |
|---|---|---|---|
| 03/09/2018 | 486 | | MOTION in Limine *for Court to take Judicial Notice of Adjudicative Facts* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Affidavit of Daphne Ha, # 2 Ex. 1 2004 General Turnout, # 3 Ex. 2 2006 Primary Turnout, # 4 Ex. 3 2006 General Turnout, # 5 Ex. 4 2008 Primary Turnout, # 6 Ex. 5 2008 General Turnout, # 7 Ex. 6 2010 Primary Turnout, # 8 Ex. 7 2010 General Turnout, # 9 Ex. 8 2012 Primary Turnout, # 10 Ex. 9 2012 General Turnout, # 11 Ex. 10 2014 Primary Turnout, # 12 Ex. 11 2014 General Turnout, # 13 Ex. 12 2016 General Turnout)(Bonney, Stephen) (Entered: 03/09/2018) |
| 03/09/2018 | 488 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: BENCH TRIAL held on 3/9/2018. The plaintiffs continue with presentation of evidence. The Court adjourns at 5:49 p.m. and will resume on Monday, March 12, 2018 at 9:00 a.m. (Court Reporter Kelli Stewart, Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 03/12/2018) |
| 03/12/2018 | 489 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: BENCH TRIAL held on 3/12/2018. The plaintiffs rest. Defendant begins presentation of evidence. Court adjourns at 5:13 p.m. and will resume on Tuesday, March 13, 2018. (Court Reporter Kelli Stewart, Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 03/13/2018) |
| 03/13/2018 | 497 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: BENCH TRIAL held on 3/13/2018. Defendant continues with his presentation of evidence. Plaintiffs presented rebuttal witnesses. Court adjourns at 6:47 p.m. and will resume on Monday, 3/19/2018 at 9:30 a.m. (Court Reporter Kelli Stewart, Kim Greiner.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 03/19/2018) |
| 03/14/2018 | 490 | | ORDER granting in part and denying in part 427 Motion to Exclude the Testimony and Report of Jesse T. Richman; granting in part and denying in part 428 Motion to Exclude the Testimony and Report of Hans von Spakovsky; denying 431 Motion to Exclude Testimony of Lorraine Minnite; granting 459 Motion in Limine for Court to Take Judicial Notice of Adjudicative Facts; denying 463 Motion in Limine to Exclude Evidence Regarding Alleged Efforts to Amend the NVRA. See Order for details. Signed by Chief District Judge Julie A Robinson on 3/14/18. (kao) (Entered: 03/14/2018) |
| 03/16/2018 | 491 | | DESIGNATION OF DEPOSITION (of Kris Kobach) by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 03/16/2018) |

| 03/16/2018 | 492 | | DESIGNATION OF DEPOSITION (of Eric Rucker) by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 03/16/2018) |
|---|---|---|---|
| 03/16/2018 | 493 | | DESIGNATION OF DEPOSITION (of Bradley Bryant) by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 03/16/2018) |
| 03/18/2018 | 494 | | STIPULATION *regarding DOV Facts* by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 03/18/2018) |
| 03/18/2018 | 495 | | NOTICE of Joint Stipulations by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 03/18/2018) |
| 03/19/2018 | 496 | | NOTICE of Joint Stipulations by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Ex. A–C Census Tables)(Bonney, Stephen) (Entered: 03/19/2018) |
| 03/19/2018 | 498 | | ORDER finding as moot 486 Motion in Limine, asking the Court to take judicial notice of the official voter turnout in certain elections in Sedgwick County, Kansas. In light of the parties' stipulations filed on March 18, 2018 (Doc. 495 at 2), the Court need not take judicial notice of these facts. Signed by Chief District Judge Julie A Robinson on 3/19/2018. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 03/19/2018) |
| 03/19/2018 | 500 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: BENCH TRIAL completed on 3/19/2018. The Court sets deadline of April 16, 2018 for parties to file simultaneous proposed findings of fact and conclusions of law. The Court considers the record closed on the trial and will take the matter under advisement on April 16. The Court will issue a written decision. Hearing is set for Tuesday, March 20 at 9:15 a.m. on plaintiffs' Motion for Contempt (Doc. 423). Court adjourns at 6:07 p.m.(Court Reporter Kelli Stewart, Kim Greiner.) (Attachments: # 1 Plaintiff Fish Exhibit List, # 2 Plaintiff Bednasek Exhibit List, # 3 Defendant Exhibit List, # 4 Witness List) (bw) (Entered: 03/23/2018) |
| 03/20/2018 | 501 | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A Robinson: MOTION HEARING held on 3/20/2018 re 423 MOTION for Contempt filed by Thomas J. Boynton, The League of Women Voters of Kansas, Charles Stricker, Douglas Hutchinson, Steven Wayne Fish, Donna Bucci. Court takes matter under advisement and will issue an order. (Court Reporter Kim Greiner.) (Attachments: # 1 Witness List, # 2 Plaintiffs Exhibit List, # 3 Defendant's Exhibit List) (bw) Modified on 4/2/2018 to correct date of hearing (bw). (Entered: 03/23/2018) |
| 03/22/2018 | 499 | | RESPONSE by Defendant Kris W. Kobach re 423 MOTION for Contempt *(Supplemental Response)* (Attachments: # 1 Exhibit Exhibit)(Becker, Susan) (Entered: 03/22/2018) |

| 03/30/2018 | 502 | | TRANSCRIPT of Bench Trial, Volume 1, AM Session (Pgs 1–129) held 03/06/2018 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (ks) (Entered: 03/30/2018) |
| 03/30/2018 | 503 | | TRANSCRIPT of Bench Trial, Volume 1, PM Session (Pgs 130–307) held 03/06/2018 before Judge Julie A. Robinson, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (kg) (Entered: 03/30/2018) |
| 03/30/2018 | 504 | | TRANSCRIPT of Bench Trial, Volume 2, AM Session (Pgs 308–437) held 03/07/2018 before Judge Julie A. Robinson, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of |

| | | | |
|---|---|---|---|
| | | | Transcript Restriction set for 6/28/2018. (kg) (Entered: 03/30/2018) |
| 03/30/2018 | <u>505</u> | | TRANSCRIPT of Bench Trial, Volume 2, PM Session (Pgs 438–617) held 03/07/2018 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (ks) (Entered: 03/30/2018) |
| 03/30/2018 | <u>506</u> | | TRANSCRIPT of Bench Trial, Volume 3, AM Session (Pgs 618–722) held 03/08/2018 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (ks) (Entered: 03/30/2018) |
| 03/30/2018 | <u>507</u> | | TRANSCRIPT of Bench Trial, Volume 3, PM Session (Pgs 723–912) held 03/08/2018 before Judge Julie A. Robinson, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript |

| | | | Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (kg) (Entered: 03/30/2018) |
|---|---|---|---|
| 03/30/2018 | 508 | | TRANSCRIPT of Bench Trial, Volume 4, AM Session (Pgs 913–1038) held 03/09/2018 before Judge Julie A. Robinson, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (kg) (Entered: 03/30/2018) |
| 03/30/2018 | 509 | | TRANSCRIPT of Bench Trial, Volume 4, PM Session (Pgs 1039–1212) held 03/09/2018 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (ks) (Entered: 03/30/2018) |
| 03/30/2018 | 510 | | TRANSCRIPT of Bench Trial, Volume 5, AM Session (Pgs 1213–1348) held 03/12/2018 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | |
|---|---|---|---|
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (ks) (Entered: 03/30/2018) |
| 03/30/2018 | 511 | | TRANSCRIPT of Bench Trial, Volume 5, PM Session (Pgs 1349–1502) held 03/12/2018 before Judge Julie A. Robinson, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Mr. Dale Ho. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (kg) (Entered: 03/30/2018) |
| 03/30/2018 | 512 | | TRANSCRIPT of Bench Trial, Volume 6, AM Session (Pgs 1503–1649) held 03/13/2018 before Judge Julie A. Robinson, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** <br><br> Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (kg) (Entered: 03/30/2018) |
| 03/30/2018 | 513 | | TRANSCRIPT of Bench Trial, Volume 6, PM Session held 03/13/2018 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | |
|---|---|---|---|
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (ks) (Entered: 03/30/2018) |
| 03/30/2018 | 514 | | TRANSCRIPT of Bench Trial, Volume 7, AM Session (Pgs 1879–1991) held 03/19/2018 before Judge Julie A. Robinson, Court Reporter Kelli Stewart, 913–735–2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (ks) (Entered: 03/30/2018) |
| 03/30/2018 | 515 | | TRANSCRIPT of Bench Trial, Volume 7, PM Session (Pgs 1992–2197) held 03/19/2018 before Judge Julie A. Robinson, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (kg) (Entered: 03/30/2018) |
| 03/30/2018 | 516 | | TRANSCRIPT of Motions Hearing held 03/20/2018 before Judge Julie A. Robinson, Court Reporter Kim Greiner, 913–735–2314, kim_greiner@ksd.uscourts.gov. Transcript purchased by: Mr. Dale E. Ho.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 6/28/2018. (kg) (Entered: 03/30/2018) |
|---|---|---|---|
| 04/03/2018 | 517 | | AFFIDAVIT of Bryan Caskey re 499 Response to Motion by Kris W. Kobach. (Attachments: # 1 Affidavit)(Becker, Susan) (Entered: 04/03/2018) |
| 04/11/2018 | 518 | | MOTION for extension of time *to file Proposed Findings of Fact and Conclusions of Law* by Defendant Kris W. Kobach. (Roe, Garrett) (Entered: 04/11/2018) |
| 04/12/2018 | 519 | | ORDER granting 518 Motion for Extension of Time to File. The parties' proposed findings of fact and conclusions of law are due April 23, 2018. Signed by Chief District Judge Julie A Robinson on 4/12/2018. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 04/12/2018) |
| 04/18/2018 | 520 | | MEMORANDUM AND ORDER granting 423 Motion to Enforce Court Orders and for Order to Show Cause Why Defendant Kobach Should Not be Held in Contempt. See Order for additional deadlines and details. Signed by Chief District Judge Julie A Robinson on 4/18/18. (kao) (Entered: 04/18/2018) |
| 04/23/2018 | 521 | | PROPOSED FINDINGS OF FACT by Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas.(Bonney, Stephen) (Entered: 04/23/2018) |
| 04/24/2018 | 522 | | PROPOSED FINDINGS OF FACT by Kris W. Kobach.(Roe, Garrett) (Entered: 04/24/2018) |
| 04/24/2018 | 523 | | AMENDED PROPOSED FINDINGS OF FACT by Kris W. Kobach.(Becker, Susan) Modified title on 4/24/2018. (kao) (Entered: 04/24/2018) |
| 04/27/2018 | 524 | | UNOPPOSED MOTION for extension of time *to File Application for Contempt–Related Attorney's Fees and Costs* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 04/27/2018) |
| 04/30/2018 | 525 | | ORDER granting 524 Motion for Extension of Time to File. The deadline for Plaintiffs' Application for Contempt–Related Attorney Fees and Costs is extended to May 7, 2018. Signed by Chief District Judge Julie A Robinson on 4/30/2018. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 04/30/2018) |
| 05/02/2018 | 526 | | NOTICE OF APPEAL by Defendant Kris W. Kobach. Filing fee $ 505, Internet Payment Receipt Number AKSDC–4470668. (Becker, Susan) (Entered: 05/02/2018) |
| 05/03/2018 | 527 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 526 Notice of Appeal. (Attachment: # 1 Preliminary Record)(kao) (Entered: 05/03/2018) |
| 05/03/2018 | 528 | | APPEAL DOCKETED in 10CCA on 5/3/18 and assigned Appeal No. 18–3094 re 526 Notice of Appeal. (kao) (Entered: 05/03/2018) |
| 05/07/2018 | 529 | | |

| | | | MOTION for Attorney Fees *and Litigation Expenses in Connection with Plaintiffs' Motion for Contempt* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Attachments: # 1 Ex. A, Ho Declaration, # 2 Ex. B, Hallquist Declaration, # 3 Ex. C, Bonney Declaration, # 4 Ex. D, Steiner Declaration, # 5 Ex. E, Saylor Declaration)(Bonney, Stephen) (Entered: 05/07/2018) |
|---|---|---|---|
| 05/16/2018 | 530 | | STATEMENT *of Compliance with Local Rule 54.2 Regarding Plaintiffs' Application for Attorneys' Fees* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 05/16/2018) |
| 05/17/2018 | 533 | | TRANSCRIPT ORDER FORM: Transcript Already on File re 526 Notice of Appeal – Final Judgment (Received from 10CCA). (tvn) (Entered: 05/21/2018) |
| 05/18/2018 | 531 | | LETTER TO 10CCA stating record is complete re 526 Notice of Appeal – Final Judgment ( Appeal No. 18–3094). (tvn) (Entered: 05/18/2018) |
| 05/20/2018 | 532 | | MOTION to Stay Deadlines re 529 MOTION for Attorney Fees *and Litigation Expenses in Connection with Plaintiffs' Motion for Contempt* by Defendant Kris W. Kobach. (Becker, Susan) (Entered: 05/20/2018) |
| 05/21/2018 | 534 | | RESPONSE by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re 532 MOTION to Stay Deadlines re 529 MOTION for Attorney Fees *and Litigation Expenses in Connection with Plaintiffs' Motion for Contempt* , 529 MOTION for Attorney Fees *and Litigation Expenses in Connection with Plaintiffs' Motion for Contempt*. (Bonney, Stephen) (Entered: 05/21/2018) |
| 05/22/2018 | 535 | | ORDER of 10CCA DISMISSING APPEAL as to 526 Notice of Appeal filed by Kris W. Kobach. (Appeal No. 18–3094) (kao) (Entered: 05/22/2018) |
| 05/23/2018 | 536 | | ENTRY OF APPEARANCE by Lauren Bonds on behalf of All Plaintiffs. (Bonds, Lauren) (Entered: 05/23/2018) |
| 05/23/2018 | 537 | | ORDER granting in part and denying in part 532 Defendant's Motion for a Stay, or in the Alternative, an Extension of Time to File Response re 529 MOTION for Attorney Fees *and Litigation Expenses in Connection with Plaintiffs' Motion for Contempt*. In light of the Tenth Circuit Court of Appeals' dismissal of the appeal, Defendant's motion for stay is denied. The Court grants in part his alternative request for an extension of time of 14 days as unopposed, and extends the response deadline to 6/4/2018. To the extent Defendant requires more time to respond, he shall file another motion on or before June 4, 2018, in compliance with D. Kan. Rule 6.1(a). The motion shall include a statement of prior, meaningful consultation with Plaintiffs, and a greater showing of cause for the extension. Signed by Chief District Judge Julie A Robinson on 5/23/2018. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (as) (Entered: 05/23/2018) |
| 06/04/2018 | 538 | | RESPONSE by Defendant Kris W. Kobach re 529 MOTION for Attorney Fees *and Litigation Expenses in Connection with Plaintiffs' Motion for Contempt*. (Attachments: # 1 Exhibit KBA Survey)(Becker, Susan) (Entered: 06/04/2018) |

| 06/12/2018 | 539 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas re: 529 MOTION for Attorney Fees *and Litigation Expenses in Connection with Plaintiffs' Motion for Contempt* (Attachments: # 1 Ex. F Contempt Hr'g Tr. Excerpt, # 2 Ex. G Ho Declaration)(Bonney, Stephen) (Entered: 06/12/2018) |
|------------|-----|--|---|
| 06/13/2018 | 540 | | NOTICE of Supplemental Authority by Kris W. Kobach (Becker, Susan) (Entered: 06/13/2018) |
| 06/14/2018 | 541 | | RESPONSE to 540 Notice of Supplemental Authority by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas. (Bonney, Stephen) (Entered: 06/14/2018) |
| 06/18/2018 | 542 | | FINDINGS OF FACT AND CONCLUSIONS OF LAW. Signed by Chief District Judge Julie A Robinson on 6/18/2018. (bw) (Main Document 542 replaced and regenerated on 6/19/2018 due to typographical error.) (hl). (Entered: 06/18/2018) |
| 06/19/2018 | 543 | | JUDGMENT. Signed by deputy clerk on 6/18/2018. (hl) (Entered: 06/19/2018) |
| 06/28/2018 | 544 | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Stephen D. Bonney as to All Plaintiffs (Bonney, Stephen) (Entered: 06/28/2018) |
| 06/29/2018 | 545 | | Joint MOTION for Order *Holding in Abeyance Proceedings Regarding Attorneys' Fees & Expenses* by Plaintiffs Thomas J. Boynton, Donna Bucci, Steven Wayne Fish, Douglas Hutchinson, Charles Stricker, The League of Women Voters of Kansas (Bonds, Lauren) (Entered: 06/29/2018) |
| 07/02/2018 | 546 | | ORDER granting 545 Joint Motion for an Order Holding in Abeyance Proceedings Regarding Attorneys' Fees and Expenses. Signed by Chief District Judge Julie A Robinson on 7/2/2018. (hl) (Entered: 07/02/2018) |
| 07/02/2018 | 547 | | ENTRY OF APPEARANCE by Toby Crouse on behalf of Kris W. Kobach. (Crouse, Toby) (Entered: 07/02/2018) |
| 07/02/2018 | 548 | | NOTICE OF APPEAL as to 543 Judgment, 542 Findings of Fact & Conclusions of Law by Defendant Kris W. Kobach. Filing fee $ 505, Internet Payment Receipt Number AKSDC–4522808. (Crouse, Toby) (Entered: 07/02/2018) |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEVEN WAYNE FISH, et al., | |
|       Plaintiffs, | |
|       v. | Case No. 16-2105-JAR-JPO |
| KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas, | |
|       Defendant. | |

| | |
|---|---|
| PARKER BEDNASEK, | |
|       Plaintiff, | |
|       v. | Case No. 15-9300-JAR-JPO |
| KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas, | |
|       Defendant. | CASES CONSOLIDATED FOR TRIAL |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

To register to vote, one must be a United States citizen.  The Kansas legislature passed the Secure and Fair Elections ("SAFE") Act in 2011, which included a new requirement that Kansans must produce documentary proof of citizenship ("DPOC") when applying to register to vote.  These cases were consolidated for trial because they both challenge the DPOC law as a method for enforcing the citizenship qualification.  In Case No. 16-2105, the *Fish* Plaintiffs challenge the law as it applies to "motor voter" applicants—individuals who apply to register to vote at the same time they apply for or renew their driver's license online or at a Division of Motor Vehicles ("DOV") office.  Plaintiffs include the Kansas League of Women Voters, as well

as several Kansas residents who applied to register to vote when applying for a driver's license, but were denied voter registration for failure to submit DPOC. One claim remained for trial in that case alleging that under the Election Clause in Article 1 of the United States Constitution, the Kansas DPOC law is preempted by § 5 of the National Voter Registration Act ("NVRA"), which provides that voter registration applications may only require the minimum amount of information necessary for a State to determine applicants' eligibility to register to vote, and to perform its registration duties.

In Case No. 15-9300, Plaintiff Parker Bednasek challenges the DPOC law on constitutional grounds. His remaining claim for trial is brought under 42 U.S.C. § 1983, based on a violation of the right to vote under the Fourteenth Amendment's Equal Protection Clause.[1] Mr. Bednasek's claim is not limited to motor-voter applicants.

The seven-day bench trial in these matters concluded on March 19, 2018. After hearing and carefully considering the evidence presented by the parties at trial, this Court first resolves the remaining motions by Plaintiffs to exclude expert testimony, and next issues its Findings of Fact and Conclusions of Law under Fed. R. Civ. P. 52(a). As explained more fully below, the Court grants in part and denies in part the motion to exclude Dr. Steven Camarota, and grants the motion to exclude Patrick McFerron. Under the test set forth by the Tenth Circuit Court of Appeals that governs whether the DPOC law violates § 5 of the NVRA, the Court finds in favor of Plaintiffs in the *Fish* case. The Court further finds in favor of Plaintiff Bednasek on his constitutional challenge to the law. Declaratory and injunctive relief is granted in both matters as set forth in this opinion. Further, the Court imposes specific compliance measures given

---

[1]The docket numbers referenced throughout this opinion are to the *Fish* matter, Case. No. 16-2105. References to documents filed in the *Bednasek* case will be preceded by that Plaintiff's last name.

Defendant's history of non-compliance with this Court's orders. And, the Court imposes sanctions responsive to Defendant's repeated and flagrant violations of discovery and disclosure rules.

## I. Motions to Exclude Defense Experts Camarota and McFerron

The parties filed several motions to exclude expert testimony before trial. The Court orally ruled on all but two: Plaintiffs' written Motion to Exclude the Testimony and Report of Steven A. Camarota,[2] and Plaintiffs' oral and written motion to exclude the expert testimony of Patrick McFerron under Rule 702, *Daubert*, and the rule against hearsay.[3] These experts were offered by Defendant in both cases. The Court discusses each in turn after setting forth the appropriate legal standards.

### A. *Standards*

The Court has broad discretion in deciding whether to admit expert testimony.[4] The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation."[5] First, the Court must determine whether the expert is "qualified by 'knowledge, skill, experience, training, or education' to render an opinion."[6] "[A] district court must [next] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his

---

[2]Doc. 429.

[3]Doc. 460; Bednasek Doc. 183.

[4]*Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (quoting *Orth v. Emerson Elec. Co., White Rodgers Div.*, 980 F.2d 632, 637 (10th Cir. 1992)).

[5]*Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999).

[6]*Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)).

discipline.'"[7]  To determine reliability, the court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid."[8]  The district court must further inquire into whether the proposed testimony is sufficiently "relevant to the task at hand."[9]

It is within the discretion of the trial court to determine how to perform its gatekeeping function under *Daubert*.[10]  The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated.[11]  In this case, the parties proffered each experts' testimony, which the Court provisionally admitted subject to later review under Rule 702 and *Daubert*.

**B.      Steven A. Camarota**

Defendant called Dr. Camarota to testify about the impact of the Kansas DPOC law on voter registration and participation rates.  Specifically, Defendant offered Dr. Camarota "as an expert . . . in the fields of demography, census data, voter registration statistics, and voter participation statistics."[12]  Dr. Camarota earned a Ph.D. in American Government with a focus on policy analysis from the University of Virginia.  He is currently the Director of Research at the Center for Immigration Studies ("CIS"), where his primary responsibility for the last nineteen years has been to analyze United States Census Bureau data.  In this position, he helped construct the American Community Survey, which is a large annual survey conducted by the Census Bureau that includes questions about citizenship and voting.  Dr. Camarota has also published

---

[7]*Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

[8]*BG Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 703 (10th Cir. 2012).

[9]*Daubert*, 509 U.S. at 597.

[10]*Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

[11]*Id.*

[12]Doc. 510, Trial Tr. at 1264:5–8.

peer-reviewed articles and book chapters about census data relating to immigration issues, but not on any issue related to voting. He has served as a peer reviewer for several scholarly journals. Dr. Camarota has published many non-peer-reviewed conference papers and reports for the Census Bureau and CIS, and he has testified before Congress several times about Census Bureau Data, mostly as it relates to immigration issues.

In his report and testimony, Dr. Camarota looked at Kansas administrative data provided by the SOS's Office, and data from the Current Population Survey ("CPS"), a large Census Bureau survey that asks about registration and voting in November of every other year when federal elections are held. Dr. Camarota observed that the administrative data showed an increase in registration and turnout between October 2010 and October 2014. Dr. Camarota then compared registration and voting rates in Kansas between November 2010 and November 2014, before and after the effective date of the DPOC law, based on the CPS data. Dr. Camarota also compared the Kansas registration and turnout rates to those rates nationally, and in neighboring states without DPOC laws, and found that there was no significant deviation. Dr. Camarota opined that because registration and turnout rates in Kansas increased between 2010 and 2014, the DPOC law did not unduly burden Kansans' ability to register and vote.

The Court finds that Dr. Camarota is qualified to testify as an expert in this case about Census Bureau data, including the CPS. His education and work experience qualify him to explain and present this Census data. However, the Court does not find him qualified to interpret these survey results as they relate to the DPOC law, particularly to the extent he challenges Professor Michael McDonald, whose expertise and scholarship in election law is extensive, and who more closely evaluated the administrative data. Dr. Camarota's experience at CIS is limited to scholarship and reports that generally deal with immigration and citizenship issues, not

5

election issues such as voter registration. He has never published peer-reviewed research on the subjects relevant to this litigation, nor do his non-peer-reviewed articles contain analysis of the issues relevant to this case. To the extent Defendant offers Dr. Camarota as an expert on "voter registration statistics, and voter participation rates" beyond presenting Census Bureau data, that opinion is excluded. Dr. Camarota is qualified as an expert to explain the results of CPS data showing voter registration and turnout changes in Kansas between 2010 and 2014. And he is certainly qualified to explain how the CPS data was collected and whether it is reliable. But Dr. Camarota is not qualified to explain the reasons for the change in data between 2010 and 2014, or to insert assumptions into the record based on studies or academic literature regarding voter registration and turnout. These are not his areas of expertise.

The limitations of Dr. Camarota's expertise in this field were similarly evident in the recent NVRA case of *Bellitto v. Snipes*.[13] There, the district court initially limited his testimony because he was not qualified to "offer testimony as to the degree of accuracy of . . . rates [of voter registration from the Census Bureau's American Community Survey]."[14] That case went to trial and the district court issued its findings of fact and conclusions of law after this trial concluded, on March 30, 2018. In that order, the court found Dr. Camarota's population analysis to be misleading and inaccurate by comparing mismatched data.[15]

Plaintiffs further challenge the reliability of Dr. Camarota's opinions in this matter on several grounds: (1) he fails to control for confounding factors, such as general interest in the election, whether an advocacy group took an interest in the election, get-out-the vote efforts, competitiveness of the election, laws governing registration, education levels, ethnicity, age, and

---

[13]Case No. –F. Supp. 3d–, 2017 WL 2972837, at *9 (S.D. Fla. July 12, 2017).

[14]*Id.*

[15]Case. No. 16-61474, slip. op. at 18–20 (S.D. Fla. Mar. 30, 2018), ECF No. 244.

natural population growth; (2) the choice to compare non-presidential election year data fails to account for any change that may be due to the DPOC law as opposed to other factors; (3) he relied on and cherry-picked flawed statistical data from the SOS's Office; and (4) he relied on conclusory assumptions, such as that some noncitizens mistakenly believe they are citizens when they register to vote.[16]  Plaintiffs also point to evidence of Dr. Camarota's bias based on public positions taken by CIS, and based on statements made by executives at CIS.  Defendant maintains that these issues go to the weight and not the admissibility of the evidence.

The Court agrees with Defendant that Plaintiffs' reliability challenges largely go to the weight and not the admissibility of Dr. Camarota's report and testimony, to the extent the testimony relates to his area of expertise.  As described below in its findings of fact and conclusions of law, the Court does not credit Dr. Camarota's opinion that: (1) CPS data about registration and turnout is a better measure of registration and turnout than the actual numbers maintained by the SOS's Office; (2) comparing election years 2010 and 2014 is an accurate measure for determining how the SAFE Act impacted registration  and voting rates; (3) that election years 2010 and 2014 in Kansas are comparable to one another, or to other states; and (4) registration rates and voter turnout is the best measure of how burdensome the DPOC law is. The Court therefore grants in part and denies in part Plaintiffs' motion to exclude Dr. Camarota's testimony.  As to the Census Bureau data described in Dr. Camarota's report, the Court gives it little weight in determining the overall burdensomeness of the DPOC law, as described in the Court's findings of fact and conclusions of law.

## C.      *Patrick McFerron*

---

[16]Dr. Stephen Ansolabehere, Plaintiffs' rebuttal expert whose opinions are discussed in the Court's findings of fact, found that some citizens mistakenly report that they are noncitizens on another survey, the CCES. In contrast to Dr. Camarota's conclusory assumption, this opinion was supported by empirical research, and rendered by the chief architect of the CCES survey.

In May 2016, Patrick McFerron conducted a telephone survey of 500 Kansans by CHS & Associates to help determine the rates of possession of DPOC. The survey purports to control "for gender, age, and geographic region in order to replicate US Census information."[17] The executive summary of the survey concludes that it "reveals requiring proof of citizenship in order to register to vote is <u>not</u> a concern for residents and is <u>not</u> hampering voter registration."[18] The study surveyed a sample of 500 Kansans, and found 83% are registered to vote. Of those not registered, only one reported that lack of DPOC was the reason.

Mr. McFerron drafted the survey results, but did not complete his own expert report, nor was he ever designated as an expert in this case. Instead, Hans von Spakovsky, one of Defendant's other experts, attached it to his expert report. Mr. McFerron is listed on the executive summary as the President of CHS & Associates, which is in Oklahoma City, Oklahoma. Plaintiffs deposed him on June 7, 2016, during which Plaintiffs' counsel asked him whether he purported to testify as an expert in this case, and he testified that he did not believe so. Mr. McFerron testified about the survey, its methodology, and its results. On January 30, 2018, Defendant filed his final witness disclosures,[19] listing Mr. McFerron as a fact witness by written deposition.

Plaintiffs moved *in limine* to exclude McFerron's testimony, strike and exclude from trial his deposition designations, and exclude his survey. They argued that his testimony is inadmissible lay opinion, that it should be excluded as expert opinion because it was not disclosed under Rule 26(a)(2), and Defendant's failure to disclose was neither harmless nor substantially justified. The Court ruled that McFerron's testimony was not lay opinion, and as a

---

[17]Ex. 863 at 1.

[18]*Id.*

[19]Docs. 443–44.

sanction for failing to designate him as an expert witness, the Court required him to testify at trial as a live witness instead of by deposition. The Court took under advisement Plaintiffs' motion to exclude as inadmissible hearsay, and at trial, Plaintiffs also moved to exclude the survey under Rule 702 and *Daubert*. The Court provisionally admitted his testimony, subject to a later admissibility ruling.[20]

Defendant vacillated at trial between offering Mr. McFerron as a fact and expert witness, despite the Court's ruling that his testimony was not admissible lay opinion. Mr. McFerron testified for the first time on cross-examination that he was paid an hourly rate of $100 per hour for research, and $150 per hour for his testimony based on an agreement reached with Defendant two weeks before trial that was not previously disclosed to Plaintiffs.[21] This fact, in conjunction with the nature of Mr. McFerron's substantive testimony, reinforces this Court's previous ruling that he is clearly offered as an expert witness.[22] He testified not only about the methodology of his survey, but about its accuracy and conclusions, including that the DPOC law is not burdensome because most Kansans possess DPOC, or can obtain it easily. Mr. McFerron's testimony illustrates the prejudice involved in allowing an expert to testify without first meeting the requirements of Rule 26(a)(2)(B). Mr. McFerron's "Report" contains a two-page summary of the survey's results; it does not contain a statement of his compensation, qualifications, or a list of all publications he has either authored or co-authored in the last ten years. He did not sign the report. In fact, Mr. McFerron admitted during his testimony that he was not sure whether he was being paid to testify as a fact or expert witness.

---

[20] Doc. 480.

[21] Defendant previously disclosed only the $9,000 fee for conducting the survey.

[22] *See* Doc. 480.

The Court has already excluded Mr. McFerron's testimony to the extent Defendant offers it as lay opinion.  With respect to the admissibility of Mr. McFerron's expert testimony, the Court grants Plaintiffs' motion to exclude because he is not qualified to render the opinion contained in the report's summary, and because his survey is unreliable and not relevant.  Also, because it fails to adhere to generally accepted survey principles, the survey lacks the indicia of trustworthiness required for survey evidence to meet an exception to the hearsay rule.

### 1.    Qualifications

Plaintiffs argue that Mr. McFerron is not qualified to provide expert testimony on the subject matter of his survey because he is a pollster, and not a trained statistician.  The Court agrees.  It is true that McFerron's qualifications are based on his experience, and not an academic background in statistics.  It is also true that Mr. McFerron has spoken to numerous university classes regarding polling, and that the firm he works for conducts approximately 50 to 70 public opinion surveys in any given year.  Mr. McFerron has conducted approximately 15 to 20 polls in Kansas since 1993.   But, as Plaintiffs point out, Mr. McFerron only took one statistics course as an undergraduate and one while he was studying for his master's degree, though he cannot recall the name of the graduate statistics course.  Mr. McFerron has never written a peer-reviewed article, nor has he ever served as a peer reviewer for a journal.  Mr. McFerron has not published anything on survey methodology or polling methodology.  At the time of deposition, Mr. McFerron was not familiar with the American Association of Public Opinion Research, nor other standard survey research principles described by Dr. Matthew Barreto, Plaintiffs' rebuttal expert. He is unfamiliar with the basic concept of social desirability bias leading to overreporting in survey research, a concept that applies to surveys concerning voter registration and voting, or

that asks if one possesses an underlying document deemed socially important.[23]  Notably, Mr. McFerron has never previously testified as an expert witness.

While an academic background is not required to testify as an expert witness, the expert testimony in this case requires a background in survey methodology that Mr. McFerron does not have.  In sum, while the Court finds that Mr. McFerron obviously is an experienced pollster, particularly in the Midwest, he is not qualified to render an expert opinion about the accuracy of the results of this study about DPOC possession under well-accepted survey principles.

2.      Reliability and Trustworthiness

Survey evidence is admissible in this circuit as an exception to the hearsay rule "if the survey is material, more probative on the issue than other evidence and if it has guarantees of trustworthiness."[24]  The Court will find a survey trustworthy "if it is shown to have been conducted according to generally accepted survey principles."[25]  Therefore, the survey standards for reliability under *Daubert* and trustworthiness under the hearsay exception are parallel.  Assuming Mr. McFerron is qualified to render an expert opinion about the survey's methodology and the accuracy of the conclusions stated in the report's summary, the survey must be excluded because Plaintiffs established during Mr. McFerron's cross-examination, and with their rebuttal

---

[23]*See* Doc. 513, Trial Tr. at 1847:18–1850–13 (Dr. Hersh explaining that "[s]ocial desirability bias is when someone does something in a study because it's either socially desirable outside of the context of the study or socially desirable inside the context of the study," and discussing studies showing an overreporting bias for voter registration and voting); Doc. 515, Trial Tr. at 2074:11–2077:20 (Dr. Barreto describing best practices in survey research and explaining extensive political science literature recognizing over-reporting when a question is worded in such a way that suggests a particular answer that people socially desire, especially those dealing with important "underlying documents"); *see also* Ex. 102 ¶25–26 (explaining with citations that "lengthy academic literature on registration and voting has noted that people substantially over-report registration and turnout, and that considerable caution should be drawn from survey data that purport to measure registration based on self-reports of survey respondents as to their registration status.").

[24]*Id.* (quoting *Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 522 (10th Cir. 1987)).

[25]*Id.*

expert Dr. Matthew Barreto, that the survey relies on flawed methodology and is thus unreliable and untrustworthy for several reasons.

The Court finds Dr. Barreto credible and qualified to discuss accepted survey methodology.[26] He explained the myriad flaws with the McFerron Survey that render it inadmissible under Rule 702, *Daubert*, and the rule against hearsay. First, the McFerron Survey does not contain a large enough sample for reliable estimates about individuals who might be burdened by the DPOC requirement. The survey targeted eligible Kansas voters generally, rather than the pool of individuals who are subject to the DPOC requirement: eligible Kansas voters who are not yet registered to vote. The McFerron Survey contained a sample of only 65 individuals who were not yet registered to vote.[27] This is substantially less than the sample size of 300–500 people that Mr. McFerron himself testified would be necessary for reliable statistical results at the statewide level.

Second, the sample of 500 Kansas adults in the McFerron Survey was not a representative sample of the entire eligible voting population. The "most important and single first principle" one considers in a survey is whether the survey sample is representative of the population as a whole.[28] But the McFerron Survey did not look at respondents' educational

---

[26]Dr. Barreto is a Professor of Political Science in Chicano Studies at the University of California, Los Angeles. He has taught several classes on research methodology and survey methodologies, as well as classes on statistical analysis. He has authored four books and about 60 articles and book chapters—all of which were subject to peer review. He is also the co-founder of the research and polling firm Latino Decisions. He has testified extensively as an expert witness in the areas of survey research, specifically as it applies to voting rights issues. *See* Ex. 137.

[27]This flaw also severely limits the probative value of the McFerron Survey. The DPOC law became effective on January 1, 2013. K.S.A. § 25-2309(u) (repealed 2016). A person already registered to vote on the Act's effective date is not required to submit evidence of citizenship. *Id.* § 25-2309(n). Defendant later promulgated K.A.R. § 7-23-14(c), which provides that "[a] registered voter who has previously provided sufficient evidence of United States citizenship with a voter registration application in this state shall not be required to resubmit evidence of United States citizenship with any subsequent voter registration application." Therefore, the burden at issue in this case is not on Kansans who are already registered to vote, but on those who were not registered before January 1, 2013.

[28]Doc. 515, Trial Tr. at 2057:12–2058:1.

attainment, household income categories, and homeownership or renter status to ensure

representativeness.  Moreover, as Mr. McFerron admitted during his testimony, surveys typically

use weights to achieve a representative sample, yet he relied on a quota-based approach.  He

acknowledged that academic literature for decades has discredited quotas, but believes that

criticism is outdated because it was based on the prevalent use of landlines to conduct surveys,

which does not pose a concern today.  He could provide no citation to authority that contradicted

Dr. Barreto's strongly-cited opinion that generally accepted survey methodology relies on

weighting, and not quotas.  Indeed, the results of Mr. McFerron's survey, which substantially

differ from the Census Bureau data relied on by Dr. Camarota, illustrates the problems with Mr.

McFerron's approach.  For example, Mr. McFerron reported in his survey that 39% of

households had incomes below $50,000, while the Census data shows that this figure is 48%.

Third, the McFerron Survey was only conducted over a three-day period in the evening

hours between a Monday and a Wednesday.  This sampling schedule precluded participation

from individuals who, due to their work schedule, may not have been available during those

limited days and hours.  This practice violated the norms of survey research.

Fourth, when reporting his survey results, Mr. McFerron did not include a response

rate, which makes it impossible to assess the reliability and the generalizability of the data

collected.  As another district court explained, "[n]on-response bias typically becomes a concern

when the response rate falls below eighty percent.  Response rates below that point—even far

below that point—are commonplace and do not necessarily invalidate a survey, but they do

13

require an analysis as to the reasons for the nonresponses and the effect they may have on the results."[29]  Here, Mr. McFerron has provided no response rate to evaluate.

Fifth, the questions on the McFerron Survey about DPOC possession are contaminated by bias because their wording primed respondents to state that they possessed DPOC even if they did not.  Before any questions about possession of DPOC were asked, respondents were asked a series of nine questions prefaced by the following:

> Now I want to read you a short list of documents. Only one of these documents is needed in order to register to vote in Kansas. For each of these, please let me know if you have that document at your home, office, or other location or if someone else keeps the document for you and could get it to you if necessary, or if the document does not exist.[30]

The following nine questions asked about the types of documents that can be used to meet the DPOC requirement (e.g., birth certificates).  The prefatory statement to that series of nine questions, "primed" the respondent that one of the documents on a list he/she would hear was needed to register to vote in Kansas.  Extensive political science research suggests that such priming will lead to overreporting of access to documents.

Respondents were also asked in Question 18: "In 2011 because of evidence that aliens were registering and voting in Kansas elections, the Kansas legislature passed a law requiring that people who register to vote for the first time must prove that they are United States citizens before they can become registered.  Do you support or oppose this law?"[31]  The Court easily finds that this question primed the respondent to answer that they support the law.  Indeed, the

---

[29]*Hostetler v. Johnson Controls, Inc.*, No. 15-CV-226 JD, 2016 WL 3662263, at *13 (N.D. Ind. July 11, 2016) (citing David H. Kaye & David Freeman, Reference Guide on Statistics, in Fed. Judicial Ctr., Reference Manual on Scientific Evidence 211, 285 (3d ed. 2011)) (citation and footnote omitted).

[30]Ex. 863 at 3.

[31]*Id.* at 6.

Defendant himself drafted this loaded question and demanded that Mr. McFerron include it. Mr. McFerron "had reservations about" the question, so much so that he decided to place it toward the end of the survey so that it would not impact the earlier questions.

For these reasons, the Court finds the McFerron Survey is neither reliable nor trustworthy.

### 3.     Relevance

Finally, even assuming the reliability of Mr. McFerron's methodology, the relevance of the survey is nominal at best. As already discussed, only 65 of the survey's 500 respondents were unregistered voters. Because the law does not apply to registered voters, there is no constitutional burden to assess for these individuals as a matter of law. Setting aside the fact that this percentage of the sample does not match the Census data touted by Defendant's other expert, Dr. Camarota,[32] it is simply not relevant how burdensome the law is on individuals who need not comply with the law because they were registered before the law's effective date.

The survey also failed to ask several relevant questions. The survey's possession questions were compound, so it is impossible to know whether each respondent did not have the particular document addressed in the question, or whether someone else keeps the document for them. Respondents were not asked how long it would take for them to get a copy of their DPOC if they did not personally possess it. Nor were they asked how much it would cost them to obtain a birth certificate or other form of DPOC. Respondents were also not asked whether the name on any document that could have been used to meet the DPOC requirement matches their current name. Mr. McFerron acknowledged that people sometimes change their names, and thus, a

---

[32]Ex. 1140 at 10 (showing a registration rate among Kansans of 67.9% in 2014, compared to McFerron's 83%).

person who answered that they do possess DPOC might still be unable to satisfy the DPOC requirement because of a name mismatch. For these reasons, the Court does not find the McFerron Survey is helpful to the trier of fact.

For all of these reasons, the Court grants Plaintiffs' motion to entirely exclude the McFerron Survey and his expert testimony. He is not qualified to render an expert opinion on the survey's methodology or conclusions. Moreover, the survey is unreliable and untrustworthy because it fails to follow accepted survey methods and practices. Finally, the survey is not helpful to the trier of fact. Even if the Court admitted Mr. McFerron's testimony and report, for the same reasons identified above, the Court would give it little to no weight.

## II.     Findings of Fact

### A.     *Kansas Law Governing Citizenship Eligibility*

Under Kansas law, legally qualified voters must register to be eligible to vote,[33] and only United States citizens over the age of 18 may register to vote.[34] Before January 1, 2013, Kansas voter registration applicants met these eligibility requirements by signing an attestation of eligibility on the registration application. The attestation states: "I swear or affirm that I am a citizen of the United States and a Kansas resident, that I will be 18 years old before the next election, that if convicted of a felony, I have had my civil rights restored, that I have abandoned my former residence and/or other name, and that I have told the truth on this application."[35] Kansans may apply to register to vote in person, by mail, through a voter registration agency, in

---

[33]K.S.A. § 25-2302.

[34]Kansas Constitution art. 5, § 1.

[35]Ex. 80.

conjunction with applying for a Kansas driver's license, or "by delivery to a county election officer to be registered."[36]

Defendant Kansas Secretary of State ("SOS") Kris Kobach does business in and is an elected official of the State of Kansas.  In his capacity as SOS, he is the Chief Election Officer for the State of Kansas.  During his campaign to become SOS, news stories about the problem of noncitizen voting fraud began to increase.  Defendant campaigned on that issue, asserting it was a pervasive problem.  After becoming SOS, he helped craft the SAFE Act, which became law in April 2011.[37] In addition to an attestation of eligibility, the SAFE Act requires that voter registration applicants submit DPOC at the time they apply to register to vote.  The law provides thirteen forms of acceptable documentation:

> (1) The applicant's driver's license or nondriver's identification card issued by the division of vehicles or the equivalent governmental agency of another state within the United States if the agency indicates on the applicant's driver's license or nondriver's identification card that the person has provided satisfactory proof of United States citizenship;
> (2) the applicant's birth certificate that verifies United States citizenship to the satisfaction of the county election officer or SOS;
> (3) pertinent pages of the applicant's United States valid or expired passport identifying the applicant and the applicant's passport number, or presentation to the county election officer of the applicant's United States passport;
> (4) the applicant's United States naturalization documents or the number of the certificate of naturalization.  If only the number of the certificate of naturalization is provided, the applicant shall not be included in the registration rolls until the number of the certificate of naturalization is verified with the United States bureau of citizenship and immigration services by the county election officer or the SOS, pursuant to 8 U.S.C. § 1373(c);
> (5) other documents or methods of proof of United States citizenship issued by the federal government pursuant to the immigration and nationality act of 1952, and amendments thereto;

---

[36] K.S.A. §§ 25-2309(a), -2352(a)(1).

[37] Defendant asked the Court to judicially notice the entire 592-page legislative history of the SAFE Act. The Court agreed to take judicial notice that Exhibit 1209 is the legislative history, but explained that judicially noticing this exhibit does not entail admission of the documents contained therein for the truth of the matter asserted.

(6) the applicant's bureau of Indian affairs card number, tribal treaty card number or tribal enrollment number;
(7) the applicant's consular report of birth abroad of a citizen of the United States of America;
(8) the applicant's certificate of citizenship issued by the United States citizenship and immigration services;
(9) the applicant's certification of report of birth issued by the United States department of state;
(10) the applicant's American Indian card, with KIC classification, issued by the United States department of homeland security;
(11) the applicant's final adoption decree showing the applicant's name and United States birthplace;
(12) the applicant's official United States military record of service showing the applicant's place of birth in the United States; or
(13) an extract from a United States hospital record of birth created at the time of the applicant's birth indicating the applicant's place of birth in the United States.[38]

The DPOC requirement became effective on January 1, 2013.[39]

If an applicant is a United States citizen but unable to provide one of the thirteen forms of identification listed in subsection (l), the statute allows that applicant to submit another form of citizenship documentation by directly contacting the SOS's Office. Although information about the subsection (m) hearing alternative has been available on the SOS's website, it is not publicized to applicants at the time they apply to register to vote. To avail oneself of this option, an applicant must submit a "RCD" form with the SOS's Office, and schedule a hearing. The form requires a declaration under penalty of perjury that the applicant does "not possess any of the documents . . . that may be used for proof of citizenship according to Kansas law."[40] The form also states that a false statement on the affirmation is a severity level 9 nonperson felony.

---

[38]K.S.A. § 25-2309(l).

[39]Id. § 25-2309(u) (repealed 2016).

[40]Ex. 837.

The hearing must be before the State Election Board, which will assess the alternative evidence of citizenship to determine whether it is satisfactory.[41]  The State Election Board is comprised of three high-ranking State officials: the SOS, the Attorney General, and the Lieutenant Governor.[42]  The RCD form states that the Board will give the applicant five days' notice of the date, time, and location of the hearing.  In practice, a hearing may be held with two out of the three members of the Board, and one representative of the third member.  Personal attendance by the applicant is not required.

There is no statute, regulation, or list maintained by the SOS of specific documents that would satisfy the State Election Board.  Bryan Caskey, the Director of Elections at the SOS's Office, testified and Defendant argued that an applicant's own declaration explaining his or her circumstances and why he or she does not possess a proof of citizenship document would satisfy the board.  Five individuals have completed this hearing process since the law became effective, and all had their citizenship approved.[43]

If a voter registration applicant fails to submit the requisite DPOC before the registration deadline in Kansas, that applicant can still submit DPOC to the county election office in person, by mail, or electronically (including by text message) before midnight on the day before an election.[44]

On June 25, 2015, Defendant Kobach promulgated K.A.R. § 7-23-15, which became effective on October 2, 2015.  The regulation applies to registration applications that have been deemed "incomplete" and therefore held "in suspense."  Such applications are "canceled" if they

---

[41]*Id.* § 25-2309(m).

[42]K.S.A. § 25-2203(a).

[43]Ex. 150.   One additional person requested a hearing, but Defendant represented that his office believes that sixth person did not go through with the hearing.  *See* Doc. 510, Trial Tr. at 1236:4–1237:22.

[44]K.A.R. § 7-23-14(b).

do not produce DPOC, or otherwise cure the deficiency in the application, within 90 days of application.  The applicant must submit a new, compliant voter registration application in order to register to vote.

The *Bednasek* case was filed on September 30, 2015, just before K.A.R. § 7-23-15 became effective.  The *Fish* case was filed on February 18, 2016.  On May 17, 2016, this Court issued an extensive Memorandum and Order granting in part the *Fish* Plaintiffs' motion for a preliminary injunction barring enforcement of the Kansas DPOC law until the case could be decided on the merits.[45]  It was effective on June 14, 2016.[46]  The Tenth Circuit affirmed that ruling on October 19, 2016, providing significant guidance on Plaintiffs' preemption claim that § 5 of the NVRA displaces the Kansas DPOC law.[47]  On remand, the Court reopened discovery in *Fish* as to evidence relevant to the Tenth Circuit's guidance.

**B.       *DOV Policies and Procedures***

Driver's license applicants in Kansas must provide proof of lawful presence when they apply for the first time.[48]  As part of this requirement, the Kansas Division of Vehicles ("DOV")

> shall require valid documentary evidence that the applicant: (A) Is a citizen or national of the United States; (B) is an alien lawfully admitted for permanent or temporary residence in the United States; (C) has conditional permanent resident status in the United States; (D) has an approved application for asylum in the United States or has entered into the United States in refugee status; (E) has a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States; (F) has a pending application for asylum in the United States; (G) has a pending or approved application for temporary protected status in the United States; (H) has approved deferred action status; or (I) has a pending application for adjustment of status to that of an alien

---

[45]189 F. Supp. 3d 1107 (D. Kan. 2016).

[46]Doc. 145.

[47]840 F.3d 710 (10th Cir. 2016).

[48]Despite the statutory language, Mr. Caskey testified that proof of lawful presence is not required for renewals.

lawfully admitted for permanent residence in the United States or
conditional permanent resident status in the United States.[49]

The DOV website identifies five documents that purportedly "show your date of birth, identity, and lawful status as a U.S. citizen" when applying for an original Kansas driver's license or non-driver identification card: a certified U.S. birth certificate, an unexpired United States Passport or Passport Card, a U.S. Consular Report of Birth Abroad, a Certificate of Naturalization, and a Certificate of Citizenship. These documents also meet the DPOC requirement for voter registration.[50] In order to renew a Kansas driver's license, the applicant must also provide the DOV with proof of identity (such as an expiring Kansas driver's license), a Social Security number, and proof of Kansas residency.

After reviewing an applicant's documentation, a DOV employee enters the applicant's name and date of birth into the DOV database and takes the applicant's photo as well as captures their signature. Currently, DOV procedure and training provides that driver's license examiners are to scan all documents an applicant provides during a driver's license renewal.[51] If a proof of citizenship document was scanned into the DOV system during a prior transaction and a voter applies to register to vote during a renewal, the DOV is to inform the SOS's Office that such document is on file. The DOV only has documents scanned into the system since 2013.

As part of the driver's license application and renewal processes, the driver's license examiner is to ask each applicant if they want to register to vote. The DOV currently has a policy of not offering voter registration to driver's license applicants who self-identify as noncitizens, such as TDL applicants or driver's license applicants who show a green card to

---

[49]K.S.A. § 8-240(b)(2).

[50]*See* K.S.A. § 25-2309(l)(2), (3), (4), (7), (8).

[51]The record does not indicate when this policy was implemented.

demonstrate lawful presence while applying for a driver's license.  The examiners are trained to enter a "Y" in the appropriate field of the computer interface if a customer answers "yes" to the voter registration question.  The examiner then directs the applicant to read a voter oath located on the counter in front of the applicant and to ask the applicant to read that oath.[52]  Next, the examiner is to ask the applicant if he/she affirms the voter oath.  Applicants are not required to provide a signature after reading the voter oath. The signature occurs during the photo and signature portion of driver's licensing process before the voter registration part of the process begins.

The examiners are to ask applicants who affirm the voter oath a series of questions including whether they are citizens of the United States, whether they will be 18 years of age before the next election, whether they want to register with a political party, and whether they want to provide their telephone numbers.  The examiners are to record the customers' answers to these questions in the computer interface.

Noncitizens who apply for a driver's license may receive a temporary driver's license ("TDL"), the duration of which is tied to the length of time that the documentation they provided to the DOV permits their presence in the United States.  Noncitizen lawful permanent residents who apply for a driver's license receive a standard six-year license.  Lawful permanent residents are not required to provide a lawful presence document when they renew their driver's license. The DOV does not keep statistics on the number of driver's licenses issued to permanent residents.

A voter registration receipt prints automatically when someone applies to register to

---

[52]The exhibit referenced in the parties' stipulation containing the oath was not attached to the stipulation. *See* Doc. 494.

vote at the DOV. DOV procedure requires examiners to provide the applicant with the voter

registration receipt. The receipt is on a small piece of paper that resembles a fast-food receipt,

according to one witness, and it contains the applicant's picture. The following language appears

on the receipt in small font:

> Thank you for your voter registration application. Your
> application will be sent to your county election office for
> processing.
>
> Unless you already submitted to the division of vehicles a
> document proving U.S. citizenship, you need to submit one to your
> county election office before you will be added to the voter
> registration list. Visit www.gotvoterid.com for a list of acceptable
> documents. If you were a registered voter in Kansas before 2013
> and are still registered, you do not need to provide a citizenship
> document.
>
> A notice will be mailed to you when processing is completed. If
> you have questions about your application, please call the county
> election office . . . or call the Kansas SOS . . . .[53]

## C.     *Impact of the DPOC Law on Kansas Applicants*

### 1.     **Administrative Data**

The Kansas Election Voter Information System ("ELVIS") is a statewide voter

registration database, maintained by Defendant; ELVIS assigns a unique identification number to

all voters. Each county election office is responsible for maintaining the voter lists for its

county, so this central database reflects data that is entered by the counties. When a voter

registration application is received by the relevant county election office, a record is created in

the ELVIS database. County election officers have been instructed to enter into ELVIS all voter

registration applications regardless of whether the applicant provided proof of citizenship. When

---

[53]Ex. 825. Mr. Stricker testified emphatically that this exhibit does not resemble the size of the receipt
provided by the DOV.

a person applies for a driver's license or a renewal at the DOV but does not apply to register to vote at that time, an ELVIS file is not created and the SOS is not notified.

ELVIS contains codes for "source of information description," showing how the applicant registered to vote. "MV" is the code recorded in ELVIS to indicate that an applicant has applied to register to vote at the DOV in conjunction with a driver's license application. ELVIS contains status codes, including "A" for Active, "R" for Canceled, and "S" for Suspense. ELVIS contains voter registration reason codes, which explain the reason an applicant is or is not registered to vote. "CITZ" is the code recorded in ELVIS to indicate that an applicant has failed to provide DPOC.

Defendant and county election officers may accept DPOC at a different time or in a different manner than an application for voter registration, as provided in (l), "as long as the applicant's eligibility can be adequately assessed by the SOS or county election officer as required by this section."[54] Under this authority, Defendant has established interagency agreements with two Kansas agencies to verify whether one of the thirteen forms of DPOC listed in § 25-2309(l) may be on file.

First, on January 7, 2014, Defendant and Robert Moser, MD, Secretary of the Kansas Department of Health and Environment ("KDHE"), entered into an Interagency Agreement called the "Birth/Voter Registration Data Link," whereby the KDHE agreed to crosscheck the names of incomplete voter registration applicants with the database of birth certificates and marriage licenses on file with the Kansas Department of Vital Statistics ("OVS"), and provide Defendant with the results. Defendant sends a list of new voter registration applicants on the suspense list to the KDHE on approximately a monthly basis. The agreement makes clear that

---

[54] K.S.A. § 25-2309(t).

"The Kansas OVS maintains records only on Kansas vital events occurring in the State of Kansas.  The voter registration form does not collect State of birth for the voter."[55]  The SOS' Office does not currently check with any agencies outside of Kansas to verify citizenship of voter registration applicants.

Second, in May 2016, after the preliminary injunction hearing in the *Fish* case, Defendant implemented an interagency policy for coordinating with the Kansas Department of Revenue ("KDOR") to verify citizenship documents that may have been provided by voter registration applicants when they applied for a Kansas driver's license.  Defendant and the county clerks were given access to a secure internet portal whereby they may check the DOV database for records of any registration applicant on the suspense list to determine if the DOV possesses DPOC for that resident.  Defendant has instructed the counties to check for every applicant on their suspense list to determine whether incomplete voter registration applicants may have provided acceptable DPOC to the DOV when applying for a driver's license.

The SOS's Office has instructed the counties to contact each voter registration applicant on the suspense list at least three times before the 90-day period under K.A.R. § 7-23-15 expires. The notices from Douglas County in evidence at trial list the various acceptable forms of citizenship under § 25-2309(l), and state the applicant can send copies to the county election office by regular mail or e-mail.  The notices do not reference the hearing procedure in § 25-2309(m).[56]

---

[55]Ex. 1027 at 6.

[56]*See, e.g.*, Exs. 859, 860.

According to ELVIS records, as of January 1, 2013, there were 1,762,330 registered voters in Kansas. As of October 2016, there were 1,817,927 registered voters.[57] As of March 28, 2016, before the preliminary injunction was issued requiring Defendant to register to vote applicants suspended or canceled for failure to provide DPOC, there were 14,770 applicants on the suspense list. Of these, 5,655 were motor voter applicants. As of March 28, 2016, 16,319 individuals had their applications canceled under K.A.R. § 7-23-15 due to lack of DPOC.[58] Of these, 11,147 were motor voter applicants. These figures amount to 31,089 total applicants who were denied registration for failure to provide DPOC, 16,802 of whom applied through the DOV.

Professor Michael McDonald testified as an expert witness for Plaintiffs about the composition of the suspense and cancellation lists. Dr. McDonald is an Associate Professor of Political Science at the University of Florida and a leading scholar on American elections, voter registration, and factors affecting voter behavior and turnout.[59] He has received numerous research grants and honors for his academic work. Dr. McDonald has offered expert testimony in numerous election law cases, including cases involving voter registration and the NVRA.[60]

---

[57]This number includes those registered by operation of the Court's May 2016 preliminary injunction. *See* Doc. 495 ¶ 3.

[58]The March 2016 statistics of canceled and suspended registration applicants are the most recent figures disclosed to Plaintiffs in discovery. See Ex. 41, 42, 43, 44. They were also stipulated by the parties in the June 13, 2017 Pretrial Order. Doc. 349. Therefore, the Court excluded Defendant's attempt to introduce new, updated figures into the record at trial.

[59]Ex. 139.

[60]The Court takes judicial notice of the admission of Prof. McDonald's expert testimony in the many cases referenced in his CV. Ex. 139 at 12–13. Defendant pointed the Court to two previous decisions where his testimony was criticized: *Backus v. South Carolina*, 857 F. Supp. 2d 553 (D.S.C. 2012), and *Page v. State Board of Elections*, No. 3:13cv678, 2015 WL 3604029 (E.D. Va. June 5, 2015) (Payne, J., dissenting). The Court took judicial notice of these cases, *see* Exs. 898–99.

In *Backus*, a Voting Rights Act case challenging South Carolina's 2011 redistricting plan, the court determined that Dr. McDonald relied on incomplete information in concluding that race was a predominant factor in the redistricting plan. 857 F. Supp. 2d at 561–63. The court determined that he did not consider all of the race-neutral factors considered by the legislature. Dr. McDonald fully conceded on cross-examination that he did not consider all of these factors, but explained it was impossible for him to do so. Doc. 503, Trial Tr. at 189:15–23.

He has written numerous peer-reviewed books, book chapters, and articles about elections and voter registration.

Dr. McDonald examined data extracts from the ELVIS database to evaluate the individuals whose applications were canceled or suspended for lack of DPOC, and he offered opinions about the effect of the law based on that analysis. He looked at three sources of information: (1) a list of suspended applicants as of September 24, 2015, provided to him by the Plaintiffs; (2) the electronic voter registration file dated December 11, 2015, including the list of suspended applications as of that date, provided by Defendant; and (3) a list of canceled and suspended applicants as of March 31, 2016, disclosed by Defendant.

Dr. McDonald examined the voter registration data and determined that most of the individuals on the suspense list as of September 25, 2015 did not become registered by December 11, 2015. 22,814, or 70.9% of the applicants on the September 2015 list, remained on the December 2015 list. Canceled or suspended applicants represented 12.4% of new voter registrations between January 1, 2013 and December 11, 2015. Dr. McDonald acknowledges that a few of these suspended or canceled applicants may in fact be noncitizens, however given the individual-level data he reviewed, he believes that the majority are eligible citizens.

---

Defendant fails to explain how the criticism in *Backus* is relevant to Dr. McDonald's analysis in this case of the composition of the suspense and cancellation lists under the Kansas DPOC law.

In *Page*, another redistricting case, the dissenting judge found that Dr. McDonald's opinion that race was a predominant factor in the challenged 2012 redistricting was inconsistent with a law review article Dr. McDonald authored before being retained as an expert, in which he opined that protecting incumbents was the primary motivator in the 2012 redistricting. *Page*, 2015 WL 3604029, at *20–22. The dissenting judge also criticized Dr. McDonald's analysis of the racial composition of the populations moved in and out of the district at issue, relied on by the plaintiffs in that case. *Id.* at 31–34. However, the majority found his opinions credible and persuasive, finding the dissent's rejection of Dr. McDonald and endorsement of the Defendant's expert "puzzling" given the disparity in their qualifications. *Id.* at *9 n.16. This dissenting opinion concerning a different type of statistical analysis does not convince the Court Dr. McDonald's testimony lacks credibility in this case.

As of March 31, 2016, the confidential ELVIS data provided to Dr. McDonald pursuant to the protective order in this case showed a total of 30,732 voter registration applications were either held in suspense or canceled due to the DPOC requirement—16,749 applications were canceled, and 13,983 applications were suspended. These 30,732 unregistered applicants represented approximately 12% of the total voter registration applications submitted since the law was implemented in 2013. Of the 30,732 applicants whose applications were, as of March 31, 2016, suspended or canceled due to failure to provide DPOC, approximately 75% were motor-voter applicants.[61] Dr. McDonald opined that these numbers would have increased further before the 2016 presidential election but for the Court's preliminary injunction order, in part because voter registration activity typically increases in the months leading up to a presidential election. Indeed, Mr. Caskey's testimony and Defendant's own statements during the contempt hearing that followed this trial support Dr. McDonald's opinion. They suggested that problems coordinating certificates of registration to those affected by the preliminary injunction were tied to their increased activity and workload associated with the runup to that election.

Dr. McDonald further credibly opined that the DPOC law disproportionately affects the young and those who are not politically affiliated. He testified that 43.2% of motor voter applicants held in suspense or canceled were between the ages of 18–29, and 53.4% of suspended and canceled motor voter applicants were unaffiliated. To be sure, the law only

---

[61]The Court acknowledges that the figures in Dr. McDonald's report are slightly higher than the stipulated figures as of March 28, 2016—three days earlier. The total number of suspended and canceled applicants evaluated by Dr. McDonald was higher by 356 applicants. Neither party elicited testimony about this difference and what might explain it, although it may be explained by the fact that some of the ELVIS records Dr. McDonald reviewed were coded as CITZ but were also underage. Also, he identified several hundred applicants coded with CITZ who had a registration date on or before the end of 2012, before the effective date of the law. Although Defendant challenged the reliability of Prof. McDonald's conclusions drawn from the ELVIS records, he did not challenge the underlying data which was provided by his office to this expert. Further, the Court does not find that this discrepancy had any impact on Dr. McDonald's evaluation of the composition of these lists, nor the Court's ultimate finding that the DPOC law prevented tens of thousands of eligible Kansans from registering to vote.

applies to new voter registration applicants—those registering for the first time in Kansas after January 1, 2013. Those voters tend to be young and unaffiliated with a political party. But that is the point: the fact that the law affects only new applicants means that it disproportionately affects certain demographic groups. Dr. McDonald explained that there is a consensus in social science that barriers to voter registration increase the cost of voting and dissuade individuals from participating in the political process. Moreover, these groups—the young and unaffiliated—already have a lower propensity to participate in the political process and are less inclined to shoulder the costs associated with voter registration. This opinion is borne out by Ms. Marge Ahrens' testimony, discussed infra, which provided examples of how difficult it has been for the Kansas League of Women Voters to help register young voters due to the DPOC law.

### 2. Current Population Survey Data

As described in the Court's *Daubert* ruling, Dr. Camarota disagrees with Dr. McDonald about whether the DPOC law poses a burden on voter registration and voting. He primarily relies on the Census Bureau's Current Population Survey to opine that the burden must be low because voter registration and turnout rates in Kansas increased between 2010 and 2014. The Court has already ruled that Dr. Camarota's qualifications limit his expert opinion to explaining the CPS data; he is not qualified as an expert in voter registration, voting trends, or election issues, so he is not qualified to opine on issues of causation.

Even if Dr. Camarota is deemed qualified, the Court gives little weight to his ultimate opinion for several reasons. Primarily, the Court finds that the best evidence about the DPOC law's burden is the actual data from the suspense and cancellation lists, evaluated by Dr. McDonald. This data demonstrates a concrete burden for thousands of voter registration applicants, many of whom were not registered in time to vote in the 2014 election by operation

29

of the DPOC law.  Because this data was presented to the Court, it need not look at indirect

survey data that is based on sampling, nor must the Court look at how Kansas compares in terms

of Census data to neighboring states.  As Dr. McDonald explained, the individual-level data that

he analyzed is the "gold standard," so there is no need to rely on statistical sampling.  In the

same vein, the Court gives no weight to Dr. Camarota's bare observations about the uptick in

new registration and voter turnout numbers between 2010 and 2014, as shown in the

administrative data.  As the Court discussed in its *Daubert* ruling, Dr. Camarota is not qualified

to opine about this administrative data.  He did not verify this data, as Dr. McDonald did, with

the individual data.  Importantly, Dr. Camarota's observation that the stipulated registration and

turnout numbers are larger in 2014 is not helpful to the trier of fact—the Court has accepted the

parties' stipulations as to these numbers and can glean for itself that the 2014 figures are higher.

For the reasons described below, such a comparison tells the Court little about the impact of the

DPOC law.

Moreover, comparing 2010 and 2014 election data is not a reliable way to measure the

impact of the DPOC law.  To make a valid comparison between the voter registration and

turnout statistics between these two election years, one would have to assume that the only

difference in Kansas between 2010 and 2014 is the DPOC law.  But as Plaintiffs submitted, this

isn't true.  First, the 2014 election in Kansas was highly competitive compared to 2010.  The

Gubernatorial and U.S. Senate races were close elections.  Sam Brownback won the race for

governor by only 3.7 points; the Democratic candidate for U.S. Senate withdrew and

consolidated support behind an independent candidate.  Also, there were several Kansas

Supreme Court justices on the ballot and a strong advertising effort had been made by groups

urging Kansans to vote against retention.  The states with which Dr. Camarota compared,

Oklahoma and Nebraska, did not have similarly competitive races. The competitiveness of these high-profile races could easily account for the increased registration and turnout between 2010 and 2014. Dr. Camarota conceded that he did not take these facts into account when comparing 2010 to 2014, nor when comparing Kansas rates to those of other states. Similarly, he did not control for differences in state laws between 2010 and 2014 that may have explained his observation that Kansas "bucked the national trend" of a decline in voter registration.

Importantly, comparing 2010 and 2014 registration data does not provide a reliable measure of the impact of the DPOC law because there is no way to know when the increased registration occurred—the 2014 data represents an increase from 2010, but the DPOC law did not become effective until January 1, 2013. Dr. Camarota's analysis does not demonstrate when the increased registrations occurred, before or after the law was passed. Similarly, as Dr. McDonald testified, because the DPOC law only applies to new registrants, it makes sense that the law would not have a large impact on the overall registration numbers and turnout rates, as measured by survey data. Most registered voters surveyed in Kansas in 2014 were registered before January 1, 2013, before the law became effective, and were thus exempt from the DPOC requirement.

### 3. Kansas League of Women Voters

Margaret Ahrens, the immediate past co-president of Plaintiff League of Women Voters of Kansas (the "Kansas League") and an advisor and mentor to the current leadership, testified on behalf of the Kansas League. The Kansas League is a nonpartisan, nonprofit volunteer organization that encourages informed and active participation of citizens in government and works to influence public policy through education and advocacy. Founded almost 100 years ago, the Kansas League is active throughout Kansas, with nine local affiliates and more than 800

members. The Kansas League was established to encourage and assist voters to access the vote, register, and "participate in the vote" in an informed manner. As Ms. Ahrens testified, "[t]he biggest passion of the [Kansas L]eague is to engage every possible citizen in the vote."[62]

To accomplish this mission, the Kansas League provides educational resources and holds voter registration drives at various locations including schools, libraries, grocery stores, nursing homes, naturalization ceremonies and community events. The Kansas League also performs studies on a variety of public policy issues to inform membership action and advocacy efforts as well as to educate its members and the public on these issues. The Kansas League assists all prospective voters, but it is particularly committed to engaging individuals who are "underrepresented in the vote," including the first-time voter, the elderly, and individuals with limited resources and time.

Ms. Ahrens was President of the Kansas League from 2015–2017, after the DPOC law became effective. She explained that the Kansas League has opposed the SAFE Act since before its passage because it "saw [the law] as a complex network of hoops and jumps for the average Kansas citizen" that would "create barriers to the vote."[63]

Once it went into effect, the DPOC requirement substantially affected the Kansas League's work in at least three respects. First, the DPOC requirement significantly hampered the Kansas League's voter registration work. Ms. Ahrens described the impact of the DPOC Law on the Kansas League's ability to fulfill its mission as "huge. It was a dead hit. It was absolutely a blow and I found the word shock to be appropriate in thinking about this."[64] When the law came into effect, the Kansas League initially stopped all registration activity in every county but one,

---

[62]Doc. 504, Trial Tr. at 330:12–16.

[63]*Id.* at 337:21–338:7.

[64]*Id.* at 338:16–18.

to protect volunteer members from any liability that could arise from handling or copying applicants' personal documents. The Kansas League leadership spent considerable resources on developing a copying policy to mitigate the risks associated with handling DPOC.

Once the copying policy was in place, the Kansas League re-initiated registration efforts, but the number of individuals the Kansas League could successfully register declined significantly. Ms. Ahrens provided several examples during her testimony. In Wichita, the Kansas League estimated that it helped register 4,000 individuals the year before the DPOC became effective. In 2013, after the law became effective, the Kansas League estimated it registered 400. Ms. Ahrens explained that this decline was because many individuals do not have the necessary documents at hand, or are not willing to provide such documents to League volunteers, to satisfy the DPOC requirement. She estimated that before the law passed, it took the League 3–4 minutes to assist a voter registration applicant, but after the DPOC law, it would take an hour per applicant.

In one registration effort, Kansas League volunteers in Douglas County went to high schools to register voters but returned with such "large numbers of incomplete voter registrations" due to the fact that the students did not have DPOC at hand that the volunteers called the students' families and schools and went back three times "to try to get as many young people registered [as possible]."[65] During another voter registration effort at Washburn University, Kansas League volunteers provided multiple opportunities for students to complete their voter registration applications and to provide DPOC, by maintaining a voter registration table at the university over multiple weeks. Despite this concerted effort, out of approximately

---

[65]*Id.* at 346:19–349:17.

400 students who attempted to register to vote, only about 75 students successfully completed their registration applications.

Second, the DPOC requirement forced the Kansas League to devote substantial resources to assist voters whose applications are in suspense due to the failure to provide DPOC. To reach these suspended voters, the Kansas League purchased from the SOS both the suspense list as well as the full voter file several times. The Kansas League has published the suspense list on the Kansas League website and circulated the list to local newspapers to do the same to notify applicants that their registrations are not complete. Kansas League volunteers also spent considerable time and effort to reach individuals on the suspense list directly to assist them in completing their registration applications. Ms. Ahrens provided the notable example of efforts by Kansas League volunteers in Douglas County who, after unsuccessful attempts to reach individuals on the suspense list by phone and email, visited the residences of 115 people whose voter registration applications were on the suspense list with a mobile copy machine. Of those 115 people, only 30 ultimately registered. At least half of these 30 individuals who completed their registrations did not personally possess or were not able to provide DPOC to the Kansas League volunteers and were unable to complete their registrations immediately onsite. Since the DPOC Law went into effect, the Kansas League has devoted thousands of hours to contacting the tens of thousands of voters on the suspense list and attempting to help them satisfy the DPOC requirement.

Third, the DPOC requirement has forced the Kansas League to spend a considerable amount of member resources—including volunteer time—and money to educate the public about registering under the DPOC law. The Kansas League created thousands of informational trifolds

"to help people understand the changes in the law and how to participate in the vote" that volunteers distributed to community colleges, public libraries, and high schools across the state. The Kansas League had in the past developed written educational materials to assist voters in registering but "not to this extent."[66]  The Kansas League also developed a teaching module and an accompanying instructional video to distribute on its website and to universities, community colleges, vocational and technical schools, and high schools throughout the state in order to educate new voters about how to register to vote under the SAFE Act.

Following the Court's preliminary injunction in this case, the Kansas League again obtained a copy of the suspense list from the SOS.  This list included the names of voters who were registered under court orders, including this Court's preliminary injunction ruling.[67] The SOS refused the Kansas League's request for a list of suspended applicants that did not include voters registered under court orders.[68]  As a result, the Kansas League is no longer able to effectively use the suspense list to inform and reach voters who are unable to vote because their registration applications are on the suspense list because it lacks confidence that the list is accurate.

### 4. Access to DPOC by Suspended and Canceled Applicants

---

[66]*Id.* at 413:3–6; Ex. 13.

[67]This evidence is consistent with other evidence in the record that the SOS's Office continued to treat registered voters under this Court's preliminary injunction order as unregistered and held in suspense.  *See* Doc. 520.

[68]In addition to the Court's order in this case requiring Defendant to register all motor voter registrants who had been deemed incomplete or cancelled for failure to provide DPOC, there is a preliminary injunction in place prohibiting state-specific instructions on the Federal mail-in form that would require an applicant to produce DPOC. *League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016), *rev'g* 195 F. Supp. 80 (D.D.C. 2016).  Also, on September 23, 2016, Shawnee County District Court Judge Larry D. Hendricks ordered Defendant to provide notice to all voters impacted by this Court's preliminary injunction ruling that they would be "deemed registered and qualified to vote for the appropriate local, state, and federal elections for purposes of the November 8, 2016 general election, subject only to further official notice." *Brown v. Kobach*, No. 2016-CV-550, slip op. at 3–4 (Shawnee Cty. Dist. Ct. Sept. 23, 2016).

There was little admissible evidence presented at trial about the rate of DPOC possession by suspended and canceled applicants. As already discussed, the McFerron Survey is inadmissible, but even if admissible, the Court gives its findings no weight due to its many methodological flaws. There is no evidence about how many canceled and suspended applicants in fact lack DPOC, although the Court can reasonably infer from the suspense and cancelation numbers that either (1) these applicants lack *immediate* access to such documents because they were repeatedly notified of the need to produce DPOC in order to register, yet they did not complete the registration process; or (2) these applicants were not well enough informed about the DPOC requirement to locate their DPOC and provide it to the county election office in order to become registered; or (3) these applicants were otherwise unable or unwilling to go through the steps to produce DPOC.

Dr. Jesse Richman estimates that only 2.2% of the applicants on the suspense list lack access to DPOC, based on a survey he conducted of individuals on the suspense list.[69] Yet Dr. Richman's results are not statistically distinguishable from zero, as the margin of error is 2.7%.[70] Furthermore, Dr. Richman concludes that 97.8% of citizens on the suspense list have what he describes as "immediate access" to DPOC, but his estimate includes individuals who do not personally possess DPOC, but have someone who "keeps" such a document for them. Obtaining a document from another person constitutes an additional step in the voter registration process, which increases the costs of voting. As Dr. Richman himself has written in published articles, "electoral rules that increase the costs of voting are expected to diminish voter participation."[71]

---

[69] Ex. 952 at 9.

[70] Ex. 102 at 33 ¶ 74; *see also* Part II.D.3.a.ii, *infra*, for further discussion about Dr. Richman's margin of error calculations.

[71] Doc. 512, Trial Tr. at 1567:24–1570:11.

Although Dr. Richman speculated that it would be relatively easy for a registration applicant to obtain a citizenship document from another person who "keeps" the document for them, his survey provides no support for this conclusory statement. As such, Dr. Richman conceded during his trial testimony that it was an overstatement to say that a respondent has "immediate access" to DPOC when answering yes to his survey question.[72]

Defendant argues that the suspense list is dynamic and constantly in flux, therefore it does not represent the universe of applicants prevented from registering to vote—many are ultimately registered under the State's interagency agreements, or because they later submit DPOC. There are several problems with this argument. First, while the suspense list may be dynamic, the cancelation list (before the preliminary injunction) is not. More than 16,000 voter registration applicants had been canceled under K.A.R. § 7-23-15 at the time of the Court's preliminary injunction. Moreover, at the time of the Court's preliminary injunction, more than 13,000 individuals were on the suspense list. To be sure, the evidence established that some portion of this number may come off the list due to the State's interagency agreement with the DOV, but as of March 2016, the KDHE agreement had been in place for three years. Yet, each time Dr. McDonald took a snapshot of the suspense list between September 2015 and March 2016, the combined number of suspended and canceled applicants represented about 12% of all new voter registration applications. Dr. McDonald found that 22,814, or 70.9% of the applicants on the September 2015 list, remained on the December 2015 list. While that number certainly was lower by March 2016, that is undoubtedly because many of those on the suspense list were canceled under the regulation by that point, given that in December 2015, the 90-day rule had not yet been effective for 90 days. Defendant, by contrast, provided no data about the

---

[72]*Id.* at 1593:4–1594:8.

number of those on the suspense list who have come off because DPOC was ultimately verified, or provided, as opposed to cancellation. The Court finds that the majority of those on the suspense list ultimately did not become registered.

### 5.    Lay Testimony by Individuals Lacking DPOC

Dr. McDonald's analysis demonstrates that tens of thousands of individuals who applied to register to vote after the DPOC law became effective were held in suspense or canceled for failure to submit DPOC. He further credibly opined that the clear majority of those suspended or canceled are in fact United States citizens. Ms. Ahrens' testimony demonstrates that the DPOC law made the Kansas League's mission of helping register voters difficult, by substantially reducing the number of individuals it could assist in registering to vote, particularly within the groups it targets: first time voters, the elderly, and individuals with limited resources and time. This evidence leads the Court to the conclusion that tens of thousands of eligible citizens were blocked from registration before this Court's preliminary injunction, and that the process of completing the registration process was burdensome for them.

The experiences of several lay witnesses, including the individual Plaintiffs in both cases, illustrate Dr. McDonald's findings and Ms. Ahrens' concerns about the barriers to registration after the DPOC law became effective. Plaintiff Steven Wayne Fish is a U.S. citizen, a resident of Kansas, and over 18 years old. He works the overnight shift at an American Eagle distributor. In August 2014, he applied to register to vote while renewing a Kansas driver's license at the DOV in Lawrence, Kansas. Mr. Fish brought documents to fulfill the Kansas residency requirement for obtaining a driver's license. The driver's license examiner did not inform him that he needed a citizenship document to register to vote; when he left the DOV, he believed he had registered to vote. Subsequently, he received notices in the mail from the Douglas County

election office telling him that he needed to provide DPOC in order to become registered. Those notices listed the 13 acceptable forms of DPOC under the K.S.A. § 25-2309(l). They make no mention of the alternative hearing process under subsection (m).[73] He searched for his birth certificate but could not find it. He attempted to obtain a replacement birth certificate but could not determine how to do so—he was born on a decommissioned Air Force base in Illinois. Mr. Fish was unable to vote in the 2014 general election, and his voter registration application was subsequently canceled for failure to provide DPOC under the 90-day rule.

Later, in May 2016, Mr. Fish's sister located a copy of his birth certificate that had apparently been placed in a safe by Mr. Fish's mother, who passed away in 2013. Although the birth certificate was ultimately located, it took nearly two years to find it. Due to the preliminary injunction in this case, Mr. Fish became registered to vote in June 2016. In September or October 2016, Mr. Fish relocated within Douglas County and changed his address with the DOV in person. At that time, Mr. Fish filled out a second voter registration application and provided his birth certificate. He is now registered to vote based on this October 2016 application, having provided DPOC. He voted in the 2016 general election.

Plaintiff Donna Bucci is a U.S. citizen, a resident of Kansas and over 18 years old. She was born in Baltimore, Maryland. Ms. Bucci has been employed at the Kansas Department of Corrections for the last six years. She is a cook in the prison kitchen on the 3:00 a.m. to 12:00 p.m. shift. She is provided with limited time off, and must provide two-weeks' notice to use it. In 2013, Ms. Bucci applied to register to vote while renewing a Kansas driver's license at the DOV in Sedgwick County, Kansas.[74] The driver's license examiner did not tell Ms. Bucci that

---

[73] Exs. 859, 860.

[74] Ms. Bucci testified that she renewed her driver's license in 2014. The ELVIS records show that she applied in August 2013. Ex. 2.

she needed to provide proof of citizenship, and did not indicate that she lacked any necessary documentation. When she left the DOV, she believed she had registered to vote. Later, she received a notice in the mail informing her that she needed to show a birth certificate or a passport to become registered to vote. It did not include information about how to pursue the hearing process in K.S.A. § 25-2309(m). Ms. Bucci does not possess a copy of her birth certificate or a passport. She cannot afford the cost of a replacement birth certificate from Maryland and she credibly testified that spending money to obtain one would impact whether she could pay rent. Ms. Bucci's voter registration application was canceled for failure to provide DPOC. She could not vote in the 2014 election, but was able to vote in the 2016 election by operation of the preliminary injunction. Ms. Bucci first learned of the alternative hearing procedure when defense counsel informed her of it during her deposition in this case. She testified that it would be hard for her to even participate in a telephonic hearing because she is not allowed to use her cell phone on a work break.

Plaintiff Charles Stricker is a U.S. citizen, a resident of Kansas, and over 18 years old. He was born in Missouri and has lived in Kansas since late 2013, after a period of living in Chicago. Prior to living in Chicago, Mr. Stricker lived in Kansas and was registered to vote in Kansas during that time. He works as a hotel manager in downtown Wichita. Mr. Stricker applied to register to vote while renewing a Kansas driver's license at the Sedgwick County DOV in October 2014. He was told that he had insufficient documentation, and a clerk provided him with a list of documents he needed. Mr. Stricker was attempting to register on the last day of registration before an election, it was so important to him to become registered that he took the day off work to accomplish it. Mr. Stricker rushed home and "grabbed every single document that I could and started shoving them into a file folder to try to get back before the

DMV closed,"[75] including his birth certificate.  He made it back to the DOV in time to complete his application, and recalls telling the clerk that he wanted to register to vote.  The DOV clerk did not tell him that he needed any further documentation to register.  The clerk printed a small receipt for Mr. Stricker and explained to him that it would be his temporary driver's license until he received his license in the mail.  He asked the clerk if there was anything else he needed to do, including whether he needed a voting card.  The clerk told him nothing more was necessary.  He believed that he was registered to vote.

Mr. Stricker attempted to vote in the 2014 midterm election.  He presented his driver's license to the poll worker, but she could not find a record of his registration.  He was given a provisional ballot to fill out at an open table with another voter.  Mr. Stricker testified that he was confused and embarrassed by the experience.  Election day was the first time Mr. Stricker learned that he was not registered to vote.  He testified that he learned about the DPOC law sometime later through a press report and wondered if it could explain why he was not allowed to vote.  He does not recall receiving any notices from Sedgwick County asking him to provide proof of citizenship.

In 2015, Mr. Stricker's voter registration application was canceled in the ELVIS system.  His registration was reinstated by operation of the preliminary injunction on June 22, 2016.  At some point in advance of the November 2016 election, Mr. Stricker attempted to check his registration status online and by calling the Sedgwick County election office.  The person with whom he spoke told him that it was unclear whether he would be able to vote in the upcoming election because there were legal issues that were still up in the air.  When he checked online,

---

[75] Doc. 502, Trial Tr. at 68:20–25.

there was no record of his registration. On October 26, 2016, the Sedgwick County Election Office sent Mr. Stricker a "Notice of Voter Registration Status."[76] It states:

> This notice is to inform you that you have been granted full voter registration status in Kansas and that you are qualified to vote in all official elections in which voters in your precinct are eligible to participate.
>
> According to Kansas Statutes Annotated 25, 2309(l), any person registering to vote for the first time in Kansas on or after January 1, 2013, must provide evidence of United States citizenship along with the registration application in order to be granted full registration status.
>
> Our records indicate that you submitted a voter registration application during the above-mentioned time period, but you did not provide evidence of your U.S. citizenship. We have since received information from the Kansas Department of Health and Environment's Office of Vital Statistics indicating that you have a Kansas birth certificate on file. Based on that determination, your registration status is deemed complete, and we have granted you full voter registration status.[77]

This notice was signed by Tabitha Lehman, the Sedgwick County Election Commissioner. Ms. Lehman testified that, despite Fed. R. Evid. 615 being invoked at the beginning of trial, she read media reports about the trial, including reports of Mr. Stricker's testimony. She testified that ELVIS records indicate Mr. Stricker is active and "fully registered," and that after reviewing his file prior to her testimony, she believes that the notice he received erroneously referenced his Kansas birth certificate, when in fact his citizenship document was in the DOV's database. She testified that in October 2016, just prior to the election, her office had not updated the generic notice sent to applicants whose DPOC was verified by the county to include the DOV database check, a policy that had changed in May 2016. Therefore, between

---

[76]Ex. 838 at 9.

[77]*Id.*

May 2016 when the DOV policy went into effect, and the 2016 election, Sedgwick County—the second largest county in the State—was apparently sending out erroneous and confusing notices to individuals stating that citizenship was confirmed through the department that maintains Kansas birth certificates, when in fact that was not true.

Plaintiff Thomas Boynton is a U.S. citizen, a resident of Kansas, and over 18 years old. He was given a code of "suspense" in ELVIS for failure to provide DPOC. He moved to Kansas for the first time in July 2014 to begin teaching as a professor of English at Wichita State University. In August 2014, Prof. Boynton attempted to register to vote at a DOV in Wichita. He recalls being asked if he would like to register to vote, and responded that he did. Prof. Boynton brought several documents with him that he suspected he might need to obtain a driver's license, including his Illinois birth certificate. He does not recall which documents he specifically showed the clerk, but he produced the documents the clerked requested during the transaction. The DOV clerk did not tell him that he did not have the necessary documentation to register to vote, and when he left the DOV, Prof. Boynton understood he was registered to vote. He went to his polling place in November 2014, but the poll worker told him that his name was not on the rolls and offered him a provisional ballot. He was surprised to learn for the first time that his registration had not been completed at the DOV.

In December 2014 or January 2015, Prof. Boynton received a notice in the mail informing him that he would need to submit DPOC to complete the voter registration process. It did not advise him about the hearing process under K.S.A. § 25-2309(m). Prof. Boynton was frustrated upon receiving this notice, believing that he had registered before the November 2014 election, and understanding that his provisional ballot had not been counted. He was

disappointed and irritated upon learning that his vote did not count. Voting is important to him and he had regularly voted in federal elections up until that point.

Prof. Boynton visited the DOV two times in 2015 to obtain replacement driver's licenses. Both times he declined when the clerk asked him if he wanted to register to vote. He testified that he was dissuaded from registering after his 2014 attempt failed. "I thought to myself, this doesn't seem to be the kind of process that leads to me being successfully registered, so I might as well just save myself the effort and say no this time . . . ."[78]

Prof. Boynton's ELVIS file shows that a certified United States birth certificate was submitted on August 4, 2014, contradicting Mr. Caskey's testimony that Prof. Boynton did not apply to register to vote until November 4, 2014, Election Day. On November 5, 2015, Prof. Boynton's voter registration application was canceled. According to Mr. Caskey, the SOS found a citizenship document through the DOV web portal after access had been granted in 2016. The fact that the web portal located a citizenship document—likely the birth certificate he took to the DOV that day—supports Prof. Boynton's testimony that he in fact applied to register to vote in August 2014. His ELVIS record now shows that he is active based on the citizenship document the SOS office located on June 20, 2016, after this Court issued its preliminary injunction.

Plaintiff Douglas Hutchinson is a U.S. citizen, a resident of Kansas, and over 18 years old. Mr. Hutchinson applied to register to vote while renewing a Kansas driver's license at a Johnson County DOV in 2013. His application was suspended for failure to provide DPOC and it was ultimately canceled on January 27, 2016. He was later registered by operation of this Court's preliminary injunction order. On July 30, 2016, his status changed to active after he

---

[78] Doc. 503, Trial Tr. at 270:7–11.

submitted DPOC at the Johnson County Election Office and is now considered "fully registered."

Plaintiff Parker Blake Bednasek is a United States citizen over the age of 18, who moved to Kansas in August 2014 to attend school at the University of Kansas ("KU"). Plaintiff was born in Oklahoma. His parents, who live in Texas, possess his Oklahoma birth certificate. Prior to moving to Kansas, Mr. Bednasek was registered to vote in Tarrant County, Texas. In the fall of 2015, Mr. Bednasek volunteered with the Kansas Democratic Party. Through this work, he discussed the issue of voter registration, including the DPOC law, with the party's field and political director. He canceled his Texas voter registration on December 3, 2015. On December 4, 2015, Mr. Bednasek applied to register to vote in person at the Douglas County Election Office. He did not provide DPOC for two reasons: (1) he did not physically possess DPOC at the time of application; and (2) he does not agree with the law requiring DPOC. The Douglas County Clerk's Office accepted Plaintiff's application, but deemed it incomplete for failure to submit DPOC. Mr. Bednasek received two or three letters from the Douglas County election office, informing him that he needed to provide his DPOC and advising him that he had been placed on a 90-day waiting list. Plaintiff's voter registration application was canceled on March 4, 2016 under K.A.R. § 7-23-15.

Since the DPOC law was passed, 6 individuals have applied for a hearing under § 25-2309(m) with the State Election Board. One of these individuals, Ms. Jo French, lost her birth certificate after moving several times. She testified about the lengthy and burdensome process of registering to vote without a citizenship document. Ms. French's many encounters with the SOS's office led her to characterize her relationship with former-Deputy SOS Eric Rucker as a friendship. She testified that she hoped her testimony would make Defendant "look good." But her testimony contradicted Defendant's position that the DPOC requirement is not burdensome. As she testified,

Ms. French's first of many hurdles was to pay $8 for the State of Arkansas to search for her birth certificate to prove that it did not exist, even though she already knew did not exist because she had requested it twice before. Second, she had to collect documents with the help of several other people—her baptismal record through an old friend in Arkansas and school records from her old school district in Arkansas. Third, she spoke with Mr. Rucker, who in turn reached out to her friends and cousin to vouch for her citizenship. Fourth, Ms. French relied on a friend to drive her 40 miles to the hearing; it was difficult for her to drive because she had recently had knee replacement surgery.

Ms. French's hearing before the State Election Board lasted 30 to 35 minutes and was attended by Defendant, the Lieutenant Governor, and a representative from the Kansas Attorney General's office. Also present were members of the media. The entire process from application to the date of her hearing took more than five months. After the hearing, Ms. French was interviewed, and stated: "I just thought it was strange that I had to go through this procedure to be able to vote. And any other state, you go in, throw down your driver's license and that gives you the right to vote. So this was totally off the wall for me. . . . I don't look funny. I don't talk funny, I've been here all my life."[79]

The hearing records contain information on the other four individuals who availed themselves of the hearing process. One established citizenship through a hearing and was represented by retained counsel. Another individual, Mr. Dale Weber, stated that he did not possess DPOC and that procuring such a document would be cost-prohibitive. The State Election Board ultimately accepted an affidavit that Mr. Weber executed on his own behalf as proof of his citizenship, attesting that he had been born on a military base and was a U.S. citizen.[80] The State

---

[79]Doc. 511, Trial Tr. at 1421:16–1422:11.

[80]Ex. 150. The State Election Board orders and records from these § 25-2309(m) hearings were produced to Plaintiffs for the first time during trial.

Election Board apparently found that Mr. Weber's mere attestation was sufficient to establish <u>his</u> citizenship.

**D.      *Noncitizen Registration in Kansas Before and After the DPOC Law***

      **1.      Empirical Cases of Noncitizen Registration or Attempted Registration**

Pretrial, Defendant stipulated that it had confirmed instances of 127 noncitizens who either registered to vote, or attempted to register to vote since 1999, based on data collected from Mr. Caskey and Tabitha Lehman, the Sedgwick County Election Officer.  Of the 127 individuals identified by Mr. Caskey and Ms. Lehman, 43 had successfully registered to vote, and 11 have voted.  88 are motor-voter applicants, 25 of whom successfully registered to vote; 5 have voted.

At trial, Mr. Caskey asserted that his office had uncovered 129 instances where noncitizens had registered or attempted to register to vote.  But the documentary evidence does not fully support this testimony.  The underlying ELVIS records reveal that many of these instances are a result of false positive matches, confusion, or administrative error by either the county election office or a driver's license examiner.  At trial, Defendant submitted evidence of: (1) 38 incidents of noncitizen registration or attempted registration in Sedgwick County;[81] (2) 79 possible incidents of noncitizen registration by comparing the voter rolls with the DOV's list of TDL holders;[82] and (3) 3 noncitizens who were found because they stated on juror questionnaires that they were noncitizens.[83]

Ms. Lehman testified about the first category, based on a spreadsheet she helped maintain for several years, reflecting incidents of noncitizen registration in Sedgwick County.  She did not

---

[81]Ex. 1133 (updated January 2018).

[82]<u>Doc. 507</u>, Trial Tr. at 752:23–753:5.

[83]*Id.* at 753:9–755:12. Mr. Caskey testified that his office has received additional unsubstantiated reports of noncitizen registration from members of the public and county election offices, but he could not identify any specific instance of noncitizen registration through such an informal report.

create the spreadsheet; it was created by and is now maintained by the SOS's Office. The spreadsheet was last updated in January 2018, reflecting 38 incidents of noncitizen registration or attempted registrations going back to 1999, 18 of whom successfully registered to vote between 1999 and 2011, 5 of whom voted. The other 13 were on the voter rolls for extended periods of time, but never voted. Between 2013 and November 2016, the spreadsheet reflects 16 noncitizens who attempted to register to vote. And the spreadsheet reflects 4 individuals who are now citizens, but had been held in suspense because they applied to register to vote before becoming naturalized citizens. Because these 4 applied to register after the DPOC law passed, they were registered to vote pursuant to the Court's preliminary injunction order. Most of the individuals on this spreadsheet were discovered during naturalization ceremonies held in Wichita, Kansas, which members of Ms. Lehman's office regularly attend to help register to vote newly-naturalized citizens.

The ELVIS records for many of the individuals on the Lehman spreadsheet demonstrate instances of applicant confusion and administrative error. For example, one individual listed an "A-number" in the field for "Naturalization number (if applicable)" on the voter registration form.[84] Another individual voted four times between 2004 and 2008, but stated that she "was a permanent resident of the U.S. and did not know she wasn't allowed to vote until after 2008 when one of her friends told her she couldn't, she then stopped voting."[85]

The records for several "attempted registrations" on this spreadsheet are in fact instances where a noncitizen applicant did not intend to register to vote. One person Ms. Lehman lists as an attempted registrant on January 1, 2014, indicated to the DOV that she was not a citizen, but

---

[84] Ex. 143 at 29.

[85] Exs. 1133 at 1, 1205.

48

the DOV processed the voter registration application anyway. In fact, Ms. Lehman had an e-mail exchange about this applicant with former election director Brad Bryant, who stated, "I just wish DMV would not register people who they know to be noncitizens."[86] This applicant also wrote to the DOV "Please put in the record that I am not a citizen. I cannot vote." She underlined "am not" and "I cannot vote."[87]

Another applicant indicated to the DOV that she was not a citizen, but the DOV nonetheless processed the application. This applicant "came into the office w/a POC notification letter and stated that her registration was a mistake on the part of the DMV when she renewed her license. She is not a U.S. citizen. She filled out a [c]ancellation form."[88] Another applicant replied in the negative when the DOV clerk asked if she was a United States citizen and produced a "Resident Alien" card, yet the DOV submitted an application, prompting the applicant to request cancellation. There are also two examples of voter registration forms being submitted to the county election office despite the applicants' failure to answer the question, "Are you a citizen of the United States of America" on the form.

Ms. Lehman personally transmitted to Defendant an application that had checked "no" to the citizenship question on the form. Ms. Lehman disingenuously testified that this "would be a case where it would be something anomalous to report up. . . . I think it's a dicey one so I send it on."[89] The Court does not find this testimony credible. Ms. Lehman testified that she is one of four county election commissioners directly appointed by Defendant, and that she reports directly to him. She stated that her office was charged with helping determine instances of

---

[86]Ex. 22.

[87]Ex. 99 at 4.

[88]Ex. 101 at 4; Ex. 1133 at 5.

[89]Doc. 505, Trial Tr. at 529.18–530:22.

noncitizen registration, and that when they "see something they suspect" could be noncitizen registration, her staff reports that to her, and she in turn reports it to Defendant. It appears that Ms. Lehman was either instructed or took it upon herself to pass along to Defendant even noncolorable attempts at noncitizen registration caused by State employee oversight or lack of training, rather than deliberate attempts to register to vote.

For his second category of empirical evidence, Defendant identified 79 instances of purported noncitizen voter registration by comparing a list of TDL holders generated by the DOV, with the voter rolls. Mr. Caskey testified that he compared these lists 4 times, in 2009, 2011, 2016, and 2017. Plaintiffs' expert Eitan Hersh was retained to conduct his own matching analysis of these two lists. Dr. Hersh is an expert in voter registration records and matching analysis. He is a tenured professor of political science at Tufts University, whose academic research is focused on studying large-scale individual databases, such as the ELVIS system, and matching those databases to other sources of individual-level data. The Court finds Dr. Hersh qualified, and that his testimony was credible as to the significance of Mr. Caskey's TDL list matches. Dr. Hersh conducted an extensive and thorough matching analysis, which is fully set forth in his report. He found that of the 79 individuals matched by Mr. Caskey, only 14 successfully registered to vote, and 12 had the "CITZ" code in their ELVIS records at some point, indicating they applied to register to vote and were suspended or canceled for lack of DPOC.[90] Therefore, of these 79 individuals, 26 either successfully registered to vote or were stopped from registering under the DPOC requirement. One of these 26 individuals voted. Nine

---

[90] Ex. 107 at 3 (showing 11 matches in "Active" status, and 3 matches in "inactive" status and 12 matches with the "CITZ" code).

of the 79 individuals successfully registered to vote at a DOV, 1 of whom had a "CITZ" code at some point.[91]

Moreover, as Dr. Hersh testified, Mr. Caskey's TDL matches to the voter file do not necessarily represent cases of noncitizen registration or attempted registration. Even where there are correct matches, as with the 79 individuals identified by both Mr. Caskey and Dr. Hersh, it is possible a person could obtain a TDL and later naturalize prior to registering to vote. Dr. Richman agreed with Dr. Hersh, testifying that a person is not necessarily a noncitizen simply by virtue of appearing in the TDL file. Thus, Defendant has not demonstrated that all 79 individuals matched on the TDL list were noncitizens at the time they registered to vote.

Giving full credit to Mr. Caskey's evidence that 3 noncitizens were discovered to be registered voters through juror questionnaires, and ignoring evidence that several of the Lehman spreadsheet applicants were confused about whether they had the right to register to vote, and/or State employees submitted their applications despite having knowledge that they were noncitizens, the evidence shows that 67 noncitizen individuals registered to vote under the attestation regime, or attempted to register after the DPOC law was passed. Of these, 39 successfully registered to vote despite the attestation requirement,[92] and 28 noncitizens attempted to register to vote after the DPOC law was passed but were thwarted by operation of that law. Extrapolating percentages based on these numbers, the total number of confirmed noncitizens who successfully registered to vote between 1999 and 2013 is .002% of all registered voters in Kansas as of January 1, 2013. Of the estimated 115,500 adult noncitizens in Kansas,[93] .06%

---

[91]*Id.*

[92]Included in this number are the 4 noncitizens listed on the Lehman spreadsheet who apparently registered to vote after the Court's preliminary injunction became effective.

[93]*See* Ex. 958 at 28 (citing the American Community Survey's 5-year estimate of the noncitizen population in Kansas).

have successfully registered or attempted to register to vote since 1999.  And, the number of

attempted noncitizen registrations since the DPOC law became effective in 2013 is .09% of the

total number of individuals canceled or suspended as of March 31, 2016, for failure to provide

DPOC.

### 2.    Expert Testimony Regarding Incidents of Noncitizen Registration in Kansas

The Court admitted in part the expert opinion and testimony of Defendant's expert Hans

von Spakovsky in the areas of elections, election administration, and voter fraud.  Mr. von

Spakovsky is a senior legal fellow at The Heritage Foundation, "a think tank whose mission [is

to] formulate and promote conservative public policies."[94]  He is an adjunct, non-tenured

professor at the Law School of George Mason University.  He has never testified as an expert

witness before and has published no peer-reviewed research on any subject.  Notably, Mr. von

Spakovsky could not identify any expert on the subject of noncitizen voter registration.  The

methodology Mr. von Spakovsky utilized in his expert report entailed collecting information on

prosecutions, and various other reports of noncitizens voting and summarizing that information.

Mr. von Spakovsky opined that there is a problem with noncitizen voter registration and

that attestation is not sufficient to prevent noncitizens from registering to vote.  These opinions

are premised on his assertion that any time a noncitizen registers to vote, regardless of that

person's intent, it defrauds the votes of legitimate citizens.  In his view, the numbers of

individuals held in suspense or canceled under the Kansas DPOC law is irrelevant because those

individuals could become fully registered with effort.  Although he could provide no example of

a noncitizen vote affecting the outcome of a close election, he opines that the mere possibility of

---

[94]Doc. 509, Trial Tr. at 1099:25–1100:2.

that happening justifies the DPOC law.[95]  He based his opinions on the summary of noncitizen

voting in his expert report.

The Court gives little weight to Mr. von Spakovsky's opinion and report because they are

premised on several misleading and unsupported examples of noncitizen voter registration,

mostly outside the State of Kansas.  His myriad misleading statements, coupled with his publicly

stated preordained opinions about this subject matter, convinces the Court that Mr. von

Spakovsky testified as an advocate and not as an objective expert witness.

As to Kansas noncitizen registration, Mr. von Spakovsky is aware of only 30 instances of

noncitizen registration or attempted registration provided to him on the Lehman spreadsheet at

the time he prepared his report.  He did nothing to verify this information.  Yet, he opined that

"[c]learly aliens [in Sedgwick County] who applied to register at the DMV were not dissuaded

from falsely asserting U.S. citizenship by the oath requirement."[96]  He later admitted during

cross-examination that he had no personal knowledge as to whether or not any of these

individuals had in fact falsely asserted U.S. citizenship when they became registered to vote and

that he did not examine the facts of these individual cases.  As the Court has already discussed,

several of the individual ELVIS records for those on the Lehman spreadsheet include noncitizens

who disclosed their noncitizen status to the DOV clerk, so his statement that they "were not

dissuaded from falsely asserting U.S. citizenship" is not supported by the record.

Mr. von Spakovsky stated in his report that a local NBC television station in Florida

identified 100 individuals excused from jury duty who were possible noncitizens on the voter

rolls; but on cross-examination, he admitted that he failed to include a follow-up story by the

---

[95]Mr. von Spakovsky proffered evidence of noncitizen registration in Virginia since the time of his last
report.  The Court excluded this evidence because it was not disclosed in a supplemental report before trial.

[96]*Id.* at 1151:10-16; *see also* Ex. 865 at 3.

same NBC station that determined that at least 35 of those 100 individuals had documentation to prove that they were, in fact, U.S. citizens. He claimed that, at the time of his expert report, he was unaware of the NBC follow-up report, and only learned about it at his deposition. Yet after his deposition Mr. von Spakovsky never submitted a supplement or correction to his expert report to acknowledge this omission.

Mr. von Spakovsky also cited a U.S. GAO study for the proposition that the GAO "found that up to 3 percent of the 30,000 individuals called for jury duty from voter registration rolls over a two-year period in just one U.S. district court were not U.S. citizens."[97] On cross-examination, however, he acknowledged that he omitted the following facts: the GAO study contained information on a total of 8 district courts; 4 of the 8 reported that there was not a single-noncitizen who had been called for jury duty; and the 3 remaining district courts reported that less than 1% of those called for jury duty from voter rolls were noncitizens. Therefore, his report misleadingly described only the district court with the highest percentage of people reporting that they were noncitizens, while omitting any mention of the 7 other courts described in the GAO report, including 4 that had no incidents of noncitizens on the rolls.

Mr. von Spakovsky wrote an editorial in 2011, alleging that 50 noncitizens from Somalia voted in an election in Missouri. Yet, nearly one year earlier, the Missouri Court of Appeals issued an opinion, *Royster v. Rizzo*,[98] affirming the trial court's finding that no fraud had taken place in that Missouri election. While he testified that he was not aware of the court opinion at

---

[97]Ex. 865 at 5.

[98]326 S.W.3d 104, 114 (Mo. Ct. App. 2010) ("Royster has failed to demonstrate that the trial court erred in concluding that all of these voters were registered and voted for whom the individual chose without any illegal or fraudulent interference.").

the time he wrote the op-ed, Mr. von Spakovsky admitted that he never published a written retraction of his assertion about Somalian voters illegally participating in that election.

The record is replete with further evidence of Mr. von Spakovsky's bias. Dr. Minnite testified to, and Mr. von Spakovsky's CV demonstrates, his longtime advocacy of voting restrictions. He admitted during his testimony that, at least as early as 2012, he was already an advocate for DPOC requirements like the one at issue in this case. Moreover, as early as 2001, Mr. von Spakovsky was already of the view that the NVRA was "a universal failure," and "was so flawed as to actually undermine our registration system."[99] Mr. von Spakovsky also contributed to Defendant's first campaign for SOS and wrote an email promoting a fundraiser for that campaign. He did not disclose these facts in his report or on direct examination. When Mr. von Spakovsky opined in his report that the incidence of noncitizen registration collected by Ms. Lehman in Sedgwick County is likely just the "tip of the iceberg," he used the exact same phrase employed by Defendant to describe the same 30 incidents of noncitizen registration in Sedgwick County in a press release issued just a few months earlier.[100] Indeed, that phrase has been Defendant's refrain in this case in describing the problem of noncitizen voter registration.

As stated above, the Court gives little weight to Mr. von Spakovsky's opinions. While his lack of academic background is not fatal to his credibility in this matter, the lack of academic rigor in his report, in conjunction with his clear agenda and misleading statements, render his opinions unpersuasive. In contrast, Plaintiffs offered Dr. Lorraine Minnite, an objective expert witness, who provided compelling testimony about Defendant's claims of noncitizen registration. Dr. Minnite is an associate professor at Rutgers University-Camden, a tenured position, where

---

[99]Doc. 509, Trial Tr. at 1118:13–17.

[100]*Compare* Ex. 865 at 3 *with* Ex. 147.

her research focuses on American politics and elections. Dr. Minnite has extensively researched and studied the incidence and effect of voter fraud in American elections. Her published research on the topic spans over a decade and includes her full-length, peer reviewed book, *The Myth of Voter Fraud*, for which Dr. Minnite has received grants and professional distinction, and numerous articles and chapters in edited volumes.[101] This topic has been the focus of her work and research for the past seventeen years. Dr. Minnite has been offered and accepted as an expert on the incidence and effect of voter fraud in numerous cases.[102]

Notably, Dr. Minnite testified that when she began researching the issue of voter fraud, which includes noncitizen voter fraud, she began with a "blank slate" about the conclusions she would ultimately draw from the research. This stands in stark contrast to Mr. von Spakovsky's starting point as an advocate. In forming her opinions on the incidence of voter fraud and noncitizen registration in Kansas, Dr. Minnite relied on numerous quantitative, qualitative and archival sources. These include, among other sources, thousands of news reports, publicly available reports, court opinions, as well as various documents relied on by Defendant as evidence of noncitizen registration, including various iterations of Ms. Lehman's spreadsheet and underlying voter registration records. To evaluate these sources, Dr. Minnite employed a "mixed methods" research approach, in which different data sources are triangulated in order to identify patterns across the sources. This Court found on the record at trial Dr. Minnite's methodology is reliable under *Daubert*.

Although she admits that noncitizen registration and voting does at times occur, Dr. Minnite credibly testified that there is no empirical evidence to support Defendant's claims in

---

[101]Ex. 140.

[102]*See id.* The Court took judicial notice of these cases at trial.

this case that noncitizen registration and voting in Kansas are largescale problems.  Of the nominal number of noncitizens who have registered and voted, many of these cases reflect isolated instances of avoidable administrative errors on the part of government employees and/or misunderstanding on the part of applicants.

This testimony is supported by the ELVIS records underlying the Lehman spreadsheet, discussed *supra*.  Although the ELVIS records at times are less than pellucid, mostly due to the many codes insisted upon by Defendant's office to continue to track individuals registered by operation of law pursuant to this Court's order, Dr. Minnite could comment and interpret them without undergoing training as "an election administrator or DMV clerk."  In fact, both Dr. Minnite and this Court can draw the reasonable inference from an ELVIS record where the applicant replied "No" they were not a United States citizen, that a State employee erroneously completed the voter registration application in the face of clear evidence that the applicant was not qualified.

Dr. Minnite's testimony is further supported by Dr. Hersh's expert testimony. Dr. Hersh explained that the number of purported incidents of noncitizen registration found by Defendant is consistent with the quantity of other low-incidence idiosyncrasies in ELVIS and in voter files more generally, and is suggestive of administrative errors.  For example, 100 individuals in ELVIS have birth dates in the 1800s, indicating that they are older than 118.  And 400 individuals have birth dates after their date of registration, indicating that they registered to vote before they were born.  In a state with 1.8 million registered voters, issues of this magnitude are generally understood as administrative mistakes, rather than as efforts to corrupt the electoral process.  Accidental registrations could have occurred as a result of clerks' administrative errors in inputting handwritten data from paper forms.  Moreover, the very low incidence of voting

among purported noncitizen registrants suggests that those individuals ended up in ELVIS due to accidents, as opposed to intentional unlawful registrations. The voting rate among purported noncitizen registrations on Mr. Caskey's TDL match list is around 1%, whereas the voting rate among registrants in Kansas more generally is around 70%. If these purported noncitizen registrations were intentional, one would expect these individuals to vote more frequently; the fact that they do not suggests that these registrations are the product of administrative mistakes by State employees or by the applicants themselves.

In short, the Court gives more weight to the careful, documented, and nonmisleading testimony of Dr. Minnite and Dr. Hersh on the issue of the significance of noncitizen voter registration in Kansas.

### 3. Statistical Estimates of Noncitizen Registration in Kansas

The remaining category of evidence offered by Defendant to demonstrate the degree of noncitizen registration in Kansas is statistical estimates generated by his expert, Dr. Jesse Richman. The Court admitted Dr. Richman's expert report and testimony, finding him qualified as an expert in the fields of elections, voter registration, survey construction and analysis, and political methodology.

Dr. Richman holds a M.A. and a Ph. D. in Political Science from Carnegie Mellon University. He is an associate professor at Old Dominion University and was the Director of University Social Science Research Center there for 3 years. Dr. Richman teaches research, research design, and advanced statistics, including statistical analysis. His academic research includes, among other topics, voting and participation, and he has published 12 or 13 peer-reviewed articles, several of which involve elections or voting.

Dr. Richman has published one peer-reviewed article on noncitizen registration, in the British journal, *Electoral Studies*. The article was based on data collected through a survey known as the Cooperative Congressional Elections Study ("CCES"), a large online survey concerning American voting behavior. Dr. Richman is not and has never been involved in designing or implementing the CCES. He has published one peer-reviewed paper based on a survey that he designed, and he has never published any peer-reviewed research addressing the accuracy of survey responses for a survey that he designed, or any peer-reviewed research involving his own efforts to compare survey responses to government records to assess the validity of those survey responses. He has never, other than in this case, designed or implemented any survey to measure citizenship rates of survey respondents.

Plaintiffs offered the testimony of their rebuttal expert, Dr. Stephen Ansolabehere to assess Dr. Richman's various statistical estimates. Dr. Ansolabehere is the Frank G. Thompson Chair at Harvard University in the Department of Government. He has been on the board of American National Election Studies for 12 years, which is the longest running political science research project in the country, was the founding director of the Caltech/MIT voting technology project, and has worked for CBS News since 2006 on the election night decision desk that designs the surveys used and the data collection process. He has published a substantial body of peer-reviewed work: 5 books and approximately 80 articles on a variety of topics, including survey research methods, statistics for analyzing large sample data, and for matching large surveys. He has received a variety of research grants. Dr. Ansolabehere has testified in numerous voting rights cases, which all cite to his testimony favorably.[103]

Dr. Ansolabehere is the creator and principal investigator of the CCES, the survey on

---

[103]Ex. 136 at 14–15. The Court took judicial notice of these cases.

which Dr. Richman relied in his *Electoral Studies* article on noncitizen registration. Dr.

Richman considers Dr. Ansolabehere to be knowledgeable about survey research, and believes

that Dr. Ansolabehere has a good reputation as a political scientist among other political

scientists. Indeed, the Court found his testimony and report to be persuasive, consistent,

supportable, and methodologically sound. Dr. Ansolabehere opined that Dr. Richman's various

estimates—collectively and individually—did not provide statistically valid evidence of

noncitizen registration in Kansas. For the following reasons, the Court credits Dr.

Ansolabehere's testimony and finds that Dr. Richman's estimates are not statistically valid.

### a. Estimates of Noncitizen Registration or Attempted Registration in Kansas

Dr. Richman offers four different estimates based on four different data sources of

noncitizen registration or attempted registration in Kansas: (1) 14 Kansas respondents in the

2006–2012 CCES who stated that they were noncitizens, out of which 4 stated that they were

registered to vote,[104] (2) records of approximately 800 newly-naturalized citizens in Sedgwick

County, 8 of whom had records of pre-existing registration applications;[105] (3) a survey of 37

TDL holders, 6 of whom stated that they were registered or had attempted to register to vote;[106]

and (4) 19 survey responses from a group of "incidentally-contacted" noncitizens, 1 of whom

stated that they were registered or had attempted to register to vote.[107] Dr. Richman failed to

provide margins of error with his original report for the first three estimates he discussed, and he

admitted during his testimony that such failure does not conform to peer-review standards for

---

[104]Ex. 952 at 5.

[105]*Id.*

[106]*Id.* at 10.

[107]*Id.* at 11–12. These individuals were incidentally contacted during the January 2017 telephone survey commissioned by the State of Kansas, and conducted by a national polling firm, Issues and Answers. It surveyed the TDL holders referenced in Dr. Richman's third estimate, as well as individuals on the suspense list, and registered voters in Ford, Seward, Finney, and Grant counties.

statistical estimates. Dr. Richman issued a supplemental report that included margin of error calculations, under various alternative methods. Nonetheless, all four of these estimates, taken individually or as a whole, are flawed.

###    i.    CCES Survey Results—4 of 14 respondents

After extrapolating the CCES survey results of 4 out of 14 noncitizen registrations to an estimated noncitizen adult population in Kansas of 114,000, Dr. Richman estimated that 28.5%, or 32,000 noncitizens, were registered to vote, with a confidence interval of between 11.7% and 54.6%.[108] The first problem with Dr. Richman's estimate is that the sample size is too small. As both Dr. Richman and Dr. Ansolabehere testified, estimates based on such small samples have large margins of error, and do not amount to reliable or probative statistical evidence.[109] To be sure, Defendant discounted this estimate in his opening statement due to this flaw.

Second, Dr. Richman failed to demonstrate that the 14 CCES respondents were in fact noncitizens. Dr. Ansolabehere credibly testified, as the creator and principle investigator of that survey, that individuals who are U.S. citizens sometimes mistakenly respond that they are noncitizens, and published a peer reviewed article explaining this error. He explained that while this "citizenship misreporting" error occurred relatively infrequently, the number of errors is large when compared to the number of individuals who identify themselves as noncitizens on the CCES, and thus fatally contaminates any attempt to use the CCES to make statistical estimates about noncitizens. Indeed, Dr. Richman's published findings about noncitizen voting can be

---

[108]Defendant attempted to introduce new extrapolated figures during trial based on a more updated estimate of the noncitizen voting population. The Court excluded this evidence for failure to timely supplement.

[109]*See, e.g.*, *Blackwell v. Strain*, 496 F. App'x 836, 843–44 (10th Cir. 2012) (finding statistical evidence unreliable because sample size of 7 was too small); *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991) (finding sample size of 9 too small to provide reliable statistical results). Dr. Ansolabehere calculated the margin of error on this estimate as plus or minus 27.7%. He testified that a statistician would normally seek a sample size of 1,000 or greater to guarantee a margin of error of plus or minus 3%.

accounted for entirely by citizenship misreporting.  In fact, a group of approximately 200 political scientists signed an open letter criticizing Richman's work on essentially the same grounds.

Third, Dr. Richman's CCES estimate suffers from registration overreporting.  Dr. Hersh testified that social desirability bias sometimes causes individuals to respond to survey questions that they are registered to vote when they are not.  In a peer-reviewed article, Drs. Ansolabehere and Hersh have documented overreporting of registration in the CCES.  Dr. Richman testified that he has no reason to doubt Dr. Ansolabehere's findings on this issue.  In fact, Dr. Ansolabehere explained that registration overreporting in Dr. Richman's survey sample is supported by the survey results— of the 4 respondents in the CCES sample who stated that they were registered to vote, only 1 can be validated to an actual voter file.

Finally, Dr. Richman did not weight the CCES sample to accurately reflect the population of Kansas.  Even though Dr. Richman weighted his national estimates of noncitizen registration using CCES data in his *Electoral Studies* article, among other things, by race and Hispanic ethnicity, he did not conduct any weighting for his estimates of noncitizen registration based on the same underlying data in his expert reports.

For all of these reasons, the Court gives no weight to Dr. Richman's estimate that 32,000 noncitizens registered or attempted to register to vote based on responses to the CCES.

### ii.        Records of Newly-Naturalized Citizens in Sedgwick County—8 of 791

To reach a total estimate based on the Sedgwick County naturalization records, Dr. Richman observed that in that county, "roughly 1 percent of newly naturalized citizens since

January 1 2016 (8/791) turned out to have previously registered to vote while non-citizens."[110] In his supplemental report, Dr. Richman applied 1.01% to the updated statewide estimate of noncitizens in Kansas, estimating that 1,169 noncitizens registered to vote across the state.[111]

This estimate contains the largest sample size of Dr. Richman's various estimates, and therefore should offer the greatest statistical certainty. But as Dr. Ansolabehere explained, his results are not statistically distinguishable from zero, meaning there is so much uncertainty about this estimate that the number could be zero or close to it. "[I]t's just an expression of how much uncertainty there is and whether we accept the hypothesis that this is any more than a—a minimal or de minimus amount of non-citizens in the state attempting or registering to vote."[112]

Dr. Ansolabehere calculated a theoretical margin of error of plus or minus 3.6%, meaning that Dr. Richman's 1% estimate is within the margin of error. Dr. Richman vehemently disagreed with Dr. Ansolabehere's calculation of the theoretical margin of error, which assumed that "the only source of variation in estimates is due to random sampling."[113] He contends that his estimate is within the bounds of several alternative confidence intervals he calculated in the supplemental report, although he claims the "Wilson Score" method is recommended in the field for the types of estimates he utilizes in this case. Dr. Richman also points to the fact that his sample includes confirmed examples of individuals who registered and then re-registered upon naturalization, so to suggest that the true figure is zero or below is plainly erroneous.

But Dr. Ansolabehere explained that he applied a margin of error that uses a "P" of .5 because that is "the standard approach to calculating the standard errors" where, as here, there is

---

[110]Ex. 952 at 5.

[111]Ex. 958 at 28. Dr. Richman also provided a lower confidence boundary of .51%, estimating 576 noncitizen registrations, and an upper confidence boundary of 1.98%, estimating 2,354 noncitizen registrations.

[112]Doc. 513, Trial Tr. at 1835:1–14.

[113]Ex. 102 at 36.

no information about the assumptions of the survey researcher.[114]  Dr. Ansolabehere testified that

is the conventional method used by political scientists.[115]  The "Exact," "Agresti", "Jefferys" and

"Wilson Score" methods used in Dr. Richman's supplemental report "are all under specific

assumptions and there's no reporting of any of the assumptions for the sample data collection, so

I have no reason to believe that those were appropriate methods as opposed to just applying a

bunch of methods that are in a toolbox."[116]  Dr. Richman points to no assumption contained in

his report that would justify a different method.  The Court is more persuaded by Dr.

Ansolabehere's testimony about the appropriate margin of error for Dr. Richman's estimates and

therefore finds that Dr. Richman's estimate based on Sedgwick County data from naturalization

ceremonies is not statistically distinguishable from zero.

Additionally, the estimate of noncitizen registration based on Sedgwick County

naturalization data is not based on a representative sample of noncitizen adults in Kansas.  This

sample includes only newly-naturalized citizens, and categorically excludes undocumented

immigrants and legally present noncitizens who have not naturalized.  Dr. Ansolabehere testified

that noncitizens who naturalize tend to be older, more stable in their living situations and better-

educated than noncitizens who do not.  All of these factors tend to correlate with higher

registration rates.  As a result, an estimate of noncitizens based on naturalized citizens is likely to

overestimate the number of noncitizens who are registered to vote in Kansas.  Dr. Richman

speculated that registration rates among those about to naturalize are likely to be lower than

---

[114]Doc. 513, Trial Tr. at 1873:21–1874:2; 1810:5–1811:10; 1815:6–25 ("I only received—the only information I had was the information in Professor Richman's report.  It told me nothing about what the assumptions of the people who designed the study.  Those assumptions are what informs the margin of error calculation.  So in the absence of that, we used the conventional margin of error calculation.").

[115]Dr. Richman admitted during cross-examination that he used this method in his peer-reviewed *Electoral Studies* article to calculate a rate of noncitizen registration nationally.  Doc. 512, Trial Tr. at 1610:1–20.

[116]Doc. 513, Trial Tr. at 1874:9–1875:2.

registration rates among other noncitizens, but he acknowledged that he has never done any research that attempts to quantify or compare registration rates among those noncitizens who naturalize and those who do not, and the only authority he cites in support of that proposition is a news interview with a single former Immigration and Customs Enforcement officer.

Dr. Richman did not weight the sample of newly-naturalized citizens to accurately reflect the noncitizen population of Kansas. Even though he weighted his estimates of noncitizen registration in his published research by, among other things, race and Hispanic ethnicity, and he weighted his suspense list survey by age and gender, he did not conduct any weighting for his estimates of noncitizen registration. Dr. Richman did not collect information from the voter registration applications of these individuals that, for example, could have enabled him to weight his sample by age. Finally, Defendant did not establish that this estimate is based on noncitizens who had successfully registered to vote prior to naturalizing. In his initial report in this case, quoting Ms. Lehman, Dr. Richman noted that the 8 identified noncitizen registrants "were already in ELVIS,"[117] but he admitted that individuals who merely attempt to register to vote can be found in ELVIS, even if they never successfully registered.

For these reasons, the Court gives no weight to Dr. Richman's estimate that 1,169 noncitizens registered or attempted to register to vote based on responses to the CCES.

### iii. TDL List Survey—0 or 6 of 37

Extrapolating the TDL list survey results statewide, Dr. Richman estimated in his initial report that 16.5%, or up to 18,000 noncitizens,[118] could be registered to vote. In his opening

---

[117]Ex. 952 at 5.

[118]*Id.* at 10.

statement, Defendant cited this figure of 18,000, and described it as the "best estimate" of noncitizen registration in the State of Kansas. Yet, Dr. Richman ultimately weighted his estimate based on the TDL sample to match the overall noncitizen population in Kansas, which reduced his original estimate to about 13,000 noncitizen registrations. Dr. Richman testified that he considers this weighted estimate to be more reliable than his original 18,000 estimate.

Like the previous two estimates, Dr. Richman's estimate based on the TDL list suffers from flaws that give it little probative value. First, the sample size of 37 is too small to draw credible estimates. Dr. Richman himself admitted that the TDL sample has "a very modest sample size," and that the estimate therefore has "substantial uncertainty."[119] Assuming the validity of Dr. Richman's confidence interval using the Wilson Score method, it is still a large interval of over 20 percentage points. As the Court has already explained, this is too uncertain to produce a reliable estimate of noncitizen registration.

Second, Dr. Richman's estimate of noncitizen registration based on the TDL list survey is attributable entirely to registration overreporting, i.e., individuals who said that they had registered or had attempted to register, but who in fact had done neither. Dr. Hersh looked for the 6 individuals who self-reported being registered to vote or having attempted to register to vote in the ELVIS database, but was unable to find them. This indicates that none of them even attempted to register to vote. Dr. Richman did not conduct a similar analysis, and did not dispute Dr. Hersh's findings in this regard.

Third, as with the newly-naturalized citizen list, Dr. Richman's calculations do not provide information about the number of noncitizens who successfully registered to vote. The

---

[119]Doc. 512, Trial. Tr. at 1640:22–1642:7.

survey instrument he used asked what Dr. Ansolabehere referred to as a "double-barreled" question: did the person register to vote *or* attempt to register to vote.[120]

Finally, Dr. Richman did not provide a response rate for the TDL survey. Although he provided an estimate for the overall response rate for all of the surveys performed by Issues and Answers of 16%, he was unable to provide a response rate for his survey of TDL holders. It is therefore impossible to assess the statistical reliability of the TDL survey. He explained on direct examination that this response rate compares well to the response rate for national polling, but fails to consider whether non-response bias could have affected the results of this survey.[121] Dr. Richman's failure to consider the response rate for the TDL survey and whether it was affected by non-response bias further reduces the value in this estimate of noncitizen registration.

### iv. Incidentally-Contacted Individuals—1 of 19

Finally, as to the 19 incidentally contacted noncitizens from his survey, Dr. Richman estimates that 5.3%, or 6,000 noncitizens, registered or attempted to register to vote, with a confidence level of between .9% and 24.6%.

Again, there are several methodological flaws with this estimate. First, using the conventional method for calculating the margin of error, the estimate is not statistically distinguishable from zero. Second, the sample size is "extremely small," as Dr. Richman conceded in his report,[122] and therefore has low statistical power. Using any of the methods of calculating margins of error that Dr. Richman employs in his supplemental report, the confidence interval for this estimate is more than 20 percentage points, which is too large to form a

---

[120]*See* ex. 109 at 1, qu. 3.

[121]*See supra* note 29 and accompanying text.

[122]Ex. 952 at 12.

probative estimate of noncitizen registration in Kansas.[123]  Third, the estimate is based on the same faulty survey question as the TDL survey, so there is no way to distinguish between a respondent who registered or attempted to register to vote.  And finally, the sample was not weighted to match the noncitizen population in Kansas.  For all of these reasons, the Court agrees with Dr. Richman's assessment in his report that his extrapolation based on this single survey response is "very uncertain."[124]

### v.     Survey of Registered Voters—0 of 576

Included in Dr. Richman's report, but discounted by him during his testimony, are survey results from another component of the Issues and Answers survey.  This survey contacted more than 500 registered voters in 4 Kansas counties: Ford, Finney, Grant, and Seward.  Dr. Richman explained in his report that these counties were selected due to their "large non-citizen populations."[125]  Zero respondents indicated that they were noncitizens, yet Dr. Richman did not calculate an estimate of noncitizen registration based on this particular survey, and gave the results short shrift.  He testified that if he had estimated the rate of noncitizen registration based on this survey, it would be zero.

In his supplemental report, Dr. Richman argued that because this sampling included citizens, "it is inappropriate to include as analogous to the other items," as it "is an estimate of the percentage of 2008 through 2012 voter registrants who are still on the voter rolls and still at the phone number provided when the [sic] registered, and also non-citizens."[126]

---

[123]*See* Ex. 102 at 19–20 ("The margin of error on that estimate is so wide that one can have no confidence that the number of non-citizens in Kansas who are registered to vote is larger than the single case found.").

[124]*Id.*

[125]Ex. 952 at 11.

[126]Ex. 958 at 10.

Given that the Court's task in this matter is to determine the number of noncitizens who successfully registered to vote during the attestation regime, i.e., before 2013, the Court is not persuaded by Dr. Richman's conclusory legal assertion about the relevance of this data. To the contrary, this data appears to be highly relevant to the Court's endeavor. If Defendant's contention is true that substantial numbers of noncitizens registered to vote before the DPOC law was passed, one would expect this number to be higher than zero, particularly given the robust sample size as compared to Dr. Richman's other estimates, and even assuming some level of social desirability bias. These results do not support Dr. Richman's overall opinion, and the Court is not persuaded by his attempt to eliminate it from his analysis.

### vi.    Meta-Analysis

Because Dr. Richman failed to identify a "best estimate" among his myriad calculations, Dr. Ansolabehere performed a "meta-analysis" of Dr. Richman's four estimates along with the results of the registered voters survey, weighting them based on sample size. Assuming all this data is accurate, taken together Dr. Ansolabehere estimates a 1.3% rate of noncitizen registration with a wide margin of error of 7.6%. Given this margin of error, a collective estimate of Dr. Richman's results is not statistically significant—there is so much uncertainty associated with them that "there can be no confidence that the number of non-citizen registration is more than the nominal cases in the sample. It is not possible to reject the hypothesis that the rate of non-citizen registration in the State of Kansas is different from zero."[127] Dr. Richman responded to these calculations in his supplemental report, producing his own meta-analysis for the first time with his own confidence interval calculations, ranging from 1.1% to 1.8%. As already described, the

---

[127] Ex. 102 at 6.

Court was more persuaded by Dr. Ansolabehere's explanation of the appropriate margin of error that applies to Dr. Richman's calculations.

The Court finds Dr. Richman's testimony and report about the methodology and basis for concluding that a statistically significant number of noncitizens have registered to vote in Kansas, are confusing, inconsistent, and methodologically flawed. Most importantly, his refusal to opine as to the accuracy of any one estimate undercuts this Court's ability to determine that any one of his wildly varying estimates is correct. The extrapolations included in his report and testimony range from 0 to 32,000 noncitizen registrations. Given this range of estimates, most of which are based on sample sizes that cannot produce reliable results, this Court finds none of them represents an accurate estimate of the numbers of noncitizens registered to vote in Kansas.

### b. Survey Results

Dr. Richman further testified about his survey of over 1,300 individuals on the suspense list. Seven of these respondents reported that they were noncitizens. After weighting, he estimated that these results demonstrate that .7% of the suspense list are noncitizens, although his report concedes that "given the small sample size, any inference about the precise magnitude of the non-citizen presence on the suspense list is fraught with substantial uncertainty."[128] Beyond Dr. Richman's admission that the sample size renders this estimate substantially uncertain, there are other problems with the estimate. First, although Dr. Richman did not provide a margin of error, Dr. Ansolabehere did, and determined that Dr. Richman's estimate that 0.7% of the people on the suspense list are noncitizens is statistically indistinguishable from zero. Dr. Richman did not dispute Dr. Ansolabehere's finding in this regard. Moreover, taken at face value, the

---

[128]Ex. 952 at 8.

corollary to Dr. Richman's estimate that 0.7% of people on the Suspense List are noncitizens, is that more than 99% of the individuals on the suspense list are United States citizens.

Second, Dr. Richman weighted his sample by various characteristics that, in his view, could correlate with citizenship status, including age, gender, party identification, geographic region, year of registration, and "foreign name," in order to account for differences between the sample and the suspense list. After weighting the sample, he concluded that 117 individuals on the suspense list are noncitizens. Dr. Richman and a graduate student assistant went through the suspense list and determined which names were, in their view, foreign. Neither Dr. Richman nor his assistant had any experience in identifying so-called foreign names. By his own admission, their determinations were subjective and based primarily on whether the name was "anglophone,"[129] meaning originating in the British Isles. Dr. Richman also testified that their work was performed quickly, and that they made many mistakes along the way. A review of their coding revealed inconsistencies; for example, of five individuals with the last name of "Lopez," two were coded as foreign and three were coded as non-foreign. On cross examination, Dr. Richman admitted that he would have coded Carlos Murguia, a United States District Judge sitting in this Court, as foreign.

### E.    Alternative Methods of Enforcing Citizenship Eligibility

The parties presented evidence about several methods of enforcing the State's citizenship eligibility requirement for voter registration, other than the DPOC law.

### 1.    DOV List Comparisons

The DOV has compared the list of individuals on the suspense list to information in the DOV database concerning driver's license holders who presented proof of permanent residency

---

[129] Doc. 512, Trial Tr. at 1595:18–1598:6.

(or "green cards") in the course of applying for a driver's license, and identified possible non-citizens. There is no evidence that the SOS's Office has conducted vigorous follow-up investigations on these individuals to determine if they were still noncitizens at the time they applied to register to vote.

Similarly, as the Court has already found, Defendant's office has compared the TDL list to the ELVIS database four times in the last decade. As of January 30, 2017, Defendant has identified 79 individuals through matching these lists. While showing some false positives, this method has allowed Defendant to identify some noncitizens on the voter rolls.

### 2. DOV Training

Brad Bryant, the former Elections Director for the SOS's Office, testified by deposition that in the mid-1990's into the early 2000's, the DOV believed that under the NVRA it was required to offer voter registration to any driver's license applicant, regardless of citizenship. "[T]here was nobody telling them be careful if somebody is not a citizen."[130] Mr. von Spakovsky testified that after the NVRA was passed, there was a nationwide problem with State motor vehicle offices offering voter registration to noncitizens. He opined that motor vehicle officials did not want their clerks making judgment calls about whether an applicant should be offered the right to register to vote. He testified that several states took the position that voter registration should be offered to every applicant.

Bryant recalls a greater effort in 2010 when Chris Biggs was SOS, to make clear to the DOV that its employees need not offer voter registration forms to noncitizens.[131] The SOS's Office relied primarily on posters sent to each DOV office throughout the State, to clarify that

---

[130] Doc. 493 at 83:12–25.

[131] *Id.* at 85:16–88:7.

noncitizens could not register to vote. Nonetheless, since the time of this effort in 2010, there is evidence that DOV employees sometimes mistakenly offered noncitizens voter registration applications, and that even when applicants denied U.S. citizenship, the application was completed by the clerk, creating an ELVIS file. This evidence included the email between Ms. Lehman and Mr. Bryant lamenting this problem with DOV registration of obvious noncitizens. Since Mr. Caskey has been Elections Director, it has been the SOS's Office's policy that noncitizens should not be offered the opportunity to register to vote at the DOV, yet his office has not drafted a written instruction to DOV clerks to not offer voter registration applications to noncitizens.

Another problem revealed by this record, and confirmed by Mr. Caskey, is that at least for some period the DOV did not accept DPOC offered by applicants if it was unnecessary to fulfill the proof of residency requirement to obtain a driver's license. Mr. Caskey testified, "I'm aware of many cases where a person brought a documentary proof of citizenship document and it was not needed as part of their driver's license application and was not scanned in the system and as part of their voter registration record."[132]

Mr. Caskey testified as follows about the scope of the SOS's role in training DOV staff:

> Our office routinely talks with the Division of Motor Vehicles executive staff as well as their trainers concerning requirements that the Division of Motor Vehicles has to comply with the National Voter Registration Act as it relates to offering the opportunity to register to vote to anyone who conducts a transaction at the Division of Motor Vehicles.
>
> We also periodically review any changes in the state and federal law regarding elections. Previously we have reviewed the training materials that their trainers use. DMV routinely uses kind of a train-a-trainer approach where they have a group of trainers who then train their individual field offices. So we have provided—in

---

[132] Doc. 507, Trial Tr. at 740:3–7.

years past, we provided posters and reviewed their training
materials, you know, over the last 10 to 15 years.[133]

DOV clerks in Kansas receive, on average, no more than 30 minutes of training regarding

motor voter registration laws during their two-day in-classroom training. They were provided

updated training after the SAFE Act became effective in 2013. Between February 2015 and June

2016, the SOS's Office did not provide any new written training materials to the DOV

concerning motor voter registration laws. And Mr. Caskey testified that there have been no

recent changes to DOV training or procedures.

Mr. Caskey is also charged with providing instruction and training to the 105 county

election officials on the rules and regulations governing elections. There is an electronic training

manual maintained by Mr. Caskey that used to be available online. It was last revised in 2012 to

reflect the DPOC law. The office does not update the document as procedures change. Instead,

Mr. Caskey testified that his office provides training to the counties by e-mail and phone, and

that they attend regional and statewide meetings. Mr. Caskey and Defendant insist, however,

that they have no authority to force the counties to comply, and that it is impractical to monitor

whether they are implementing the SOS's policies.

### 3. Department of Homeland Security's Systematic Alien Verification for Entitlements Program

The Systematic Alien Verification for Entitlements ("SAVE") program is overseen by the

United States Department of Homeland Security ("DHS"). In a letter dated August 20, 2012,

DHS notified Kansas that

> States will be able to access SAVE to verify the citizenship status
> of individuals who are registered to vote in that state provided that
> the requesting state has a signed information sharing agreement
> with the Department of Homeland Security and that each state be

---

[133]*Id.* at 881:13–882:3.

able to supply for each individual it seeks to verify (1) a specific
type of unique identifier like an alien number or certificate number
that appears on immigration-related documentation, and (2) a copy
of the immigration-related documentation in question to complete
the verification process.[134]

On this basis, Defendant maintains that "A-numbers" or Alien Verification Numbers ("AVNs")
are required to run SAVE searches, such that this is not a viable option because this information
is not required on the registration application.

But the trial record demonstrates two instances where the SOS's Office has confirmed
noncitizenship status of registrants through DHS: (1) it confirmed noncitizenship of three
individuals who stated they were noncitizens on juror questionnaires in 2017; and (2) it
confirmed noncitizenship of 6 respondents to Dr. Richman's TDL survey.[135]  Moreover, Mr.
Caskey acknowledged in his testimony that other states such as Florida, Virginia, and Colorado
use, or have attempted to use, SAVE for voter registration purposes.  Mr. Caskey has not
contacted any of these states' election officials to learn how they utilized SAVE.

Other agencies in Kansas have access to noncitizen documentation that could be used for
SAVE searches.  For example, DOV collects noncitizen documents when it issues TDLs.  While
the SOS obtains information from the DOV to confirm whether a driver's license applicant has
provided DPOC, it does not obtain A-number information or copies of noncitizen documents
from the DOV.  The SOS has not requested from the Legislature a law that would enable it to
obtain A-number information or copies of noncitizen documents from the DOV, and has not
investigated whether other agencies in Kansas (such as the KDHE) have AVN information that
could be used for SAVE searches.

---

[134]Pretrial Order Stipulation, Doc. 349 ¶ 106.

[135]*See* Ex. 952 at 10.

### 4. Prosecutions

Former Deputy SOS Eric Rucker, an experienced prosecutor, testified by deposition that criminal prosecutions can prevent and deter criminal conduct. Since July 1, 2015, Defendant has had the independent authority to prosecute any person who has committed or attempted to commit any act that constitutes a Kansas elections crime.[136] Since July 1, 2015, the SOS's Office has become aware of multiple instances of noncitizens registering to vote in Kansas. Since obtaining prosecutorial authority over Kansas elections crimes, the SOS has filed zero criminal complaints against a noncitizen for allegedly registering to vote. As of June 20, 2017, Defendant has filed one criminal complaint and obtained one conviction against an individual who actually voted while being a noncitizen.

### 5. Juror Questionnaires

In Kansas, people who are called for jury service are sent jury duty questionnaires that include a question about U.S. citizenship. District Courts send to the SOS's Office on at least a monthly basis the lists of individuals who requested to be excused from jury service based on their claims of noncitizenship. The SOS's Office has compared lists of individuals who answered on their jury questionnaires that they were not citizens with the voter registration roll.

As of March 24, 2017, Defendant identified 3 individuals who were on the voter rolls but who had self-identified as noncitizens on their jury questionnaires. An investigator employed by Defendant provided the full names and dates of birth of the 3 individuals who had self-identified as noncitizens on their jury questionnaires to the DHS via email. After receiving the full names and dates of birth of the 3 individuals who had self-identified as noncitizens on their jury

---

[136]K.S.A. § 25-2435(a).

76

questionnaires from the investigator, DHS responded with an email describing information known to DHS about the immigration and citizenship status of these 3 individuals. The response from DHS was the first time in Mr. Caskey's experience that DHS has aided the SOS, despite seeking assistance in the past. Only noncitizens called for jury duty can be identified by comparing ELVIS records with jury questionnaires.

## III.     Justiciability Challenges

Defendant has challenged Plaintiffs in both cases repeatedly on standing and mootness grounds. Defendant challenges Plaintiff Bednasek's standing because he has access to DPOC yet fails to produce it, and because he is a Texas resident. Defendant asserts that the claims of the individual *Fish* Plaintiffs are moot. The Court has addressed these challenges in detail in prior orders, but briefly addresses them again to the extent they are raised in Defendant's proposed findings of fact and conclusions of law, and addresses the mootness of Mr. Fish's claim sua sponte.

### A.     *Parker Bednasek*

Defendant challenges Bednasek's standing on the basis that he is a Texas, not Kansas, resident, and because he has access to DPOC. The Court has twice addressed and rejected Defendant's standing arguments in prior, lengthy orders.[137] The Court incorporates by reference those rulings, and finds no further evidence presented at trial changes those decisions.

### B.     *William Stricker, III, Thomas Boynton, Douglas Hutchinson, and Steven Wayne Fish*

Defendant challenges the claims asserted by Plaintiffs Stricker, Boynton, and Hutchinson in Case No. 16-2105 on mootness grounds because they have become fully registered while this case has been pending and a favorable decision would not change their status. These challenges

---

[137]Bednasek Docs. 107 at 8–15, 165 at 15–17.

have been raised and rejected. The record shows that all 3 Plaintiffs' voter registration applications were canceled under the DPOC law before they were resurrected by operation of the Court's preliminary injunction order. But for that order, which required Defendant to register motor voter applicants whose applications had been suspended or canceled, these Plaintiffs would have been required to file new applications for registration to become registered.

Mr. Stricker's voter registration application was canceled in the ELVIS system in 2015. His registration was reinstated by operation of the preliminary injunction on June 22, 2016. Only after his registration was reinstated pursuant to the Court's preliminary injunction order did Defendant investigate behind the scenes and locate a citizenship document. Unfortunately for Mr. Stricker, this was well after he was denied the right to vote in the 2014 election.

On November 5, 2015, Prof. Boynton's voter registration application was canceled. According to Mr. Caskey, the SOS's Office later found a citizenship document through the DOV web portal after that access was granted in May 2016, after Prof. Boynton's registration was reinstated by operation of the preliminary injunction. Prof. Boynton's ELVIS file shows that a certified United States birth certificate was found and added on August 4, 2014 notwithstanding the fact that Mr. Caskey testified that Mr. Boynton did not apply to register to vote until November 4, 2014, Election Day.

Plaintiff Hutchinson's 2013 motor voter application was suspended for failure to provide DPOC, and it was ultimately canceled on January 27, 2016. He was registered by operation of this Court's preliminary injunction order. On July 30, 2016, his status changed to active after he submitted DPOC at the Johnson County Election Office and is now considered "fully registered."

But for this lawsuit and the preliminary injunction, these applications would not have been reinstated and they each would have been required to reapply to register to vote. Under these circumstances, the Court finds Defendant has not met his burden of demonstrating mootness for the same reasons explained in the Court's May 4, 2017 Memorandum and Order.[138] Defendant's unilateral enforcement actions of the statute, which have been a moving target since this case's inception, and which were possible due to this Court's Order, do not render these Plaintiffs' claims moot. In fact, this Court previously warned Defendant that if he "continues his pattern of picking off Plaintiffs through targeted back-end verifications in an attempt to avoid reaching the merits of this case, the Court may be inclined to revisit its previous decision denying Plaintiffs' motion for class certification."[139]

There is one exception to the Court's mootness ruling, which this Court addresses sua sponte because it is jurisdictional. "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."[140] Mr. Fish testified that in September or October 2016, he relocated within Douglas County and changed his address with the DOV in person. At that time, Mr. Fish filled out a second voter registration application and provided his birth certificate. He is now registered to vote, having provided DPOC. The evidence demonstrates that Mr. Fish's active registration status is therefore not due to the Court's preliminary injunction, but his voluntary action of reapplying to register to vote at which time he provided DPOC. Unlike the other 3 Plaintiffs, whose applications were canceled but resurrected

---

[138] Doc. 334 at 14–19.

[139] *Id.* at 19.

[140] *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

due to the unilateral efforts of Defendant, Mr. Fish filed a new application in full compliance with the DPOC law while this action was pending. Therefore, although he suffered an injury at the time the Complaint was filed, he no longer suffers an injury that can be redressed in this case and his remaining claim must be dismissed as moot.

## IV. Conclusions of Law in *Fish v. Kobach*, 16-2105

The parties in the *Fish* case went to trial on the only remaining claim in this case—Count 1, which alleges a violation of § 5 of the National Voter Registration Act ("NVRA") based on preemption under the Election Clause in Article 1 of the United States Constitution. Section 5 of the NVRA requires that every application for a driver's license, "shall serve as an application for voter registration with respect to elections for Federal office."[141] Subsection (c)(2)(B)–(C) of § 5 provides:

> (2) The voter registration application portion of an application for a State motor vehicle driver's license—
>
> . . . .
>
> (B) may require only the minimum amount of information necessary to—
>
> (i) prevent duplicate voter registrations; and
> (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process;
>
> (C) shall include a statement that—
>
> (i) states each eligibility requirement (including citizenship);
> (ii) contains an attestation that the applicant meets each such requirement; and
> (iii) requires the signature of the applicant, under penalty of perjury.[142]

---

[141] 52 U.S.C. § 20504(a)(1). The Court refers to the sections of the NVRA as they appear in Pub. Law No. 103-31, 107 Stat. 77, 77–89 (1993), but cites to the codified version of the Act.

[142] *Id.* § 20504(c).

Under the NVRA, Defendant is "responsible for coordination of State responsibilities" under the NVRA.[143]

Shortly after this case was filed, Plaintiffs successfully moved for a preliminary injunction based on their likelihood of success on the merits of their § 5 claim. Defendant appealed, and the Tenth Circuit affirmed, providing detailed guidance on whether the Kansas DPOC law is preempted by § 5's mandate that a motor-voter registration application contain the minimum-amount of information necessary for the state to exercise its eligibility-assessment and registration duties.

In its opinion, the Tenth Circuit set forth the applicable rules of statutory interpretation and preemption under the Elections Clause, interpreted the NVRA's requirements under § 5, and applied that interpretation to the facts as found by this Court in its preliminary injunction order. In the course of its detailed analysis, the Tenth Circuit "rejected Secretary Kobach's readings of the NVRA."[144] As the Court previously explained on summary judgment, under both the law of the case doctrine, and the mandate rule, the Tenth Circuit's opinion with regard to issues of law governs at all subsequent stages of the litigation.[145] The Court therefore proceeds to apply the standards announced by the Tenth Circuit in its October 19, 2016 published opinion in this case to the trial record. The Court once again declines to revisit Defendant's arguments that were resolved by that opinion.[146]

---

[143] 52 U.S.C. § 20509.

[144] *Fish v. Kobach*, 840 F.3d 710, 746 (10th Cir. 2016).

[145] *See, e.g.*, *Dish Network Corp. v. Arrowwood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014).

[146] On June 13, 2018, Defendant submitted a Notice of Supplemental Authority (Doc. 540), pointing the Court to the recently-decided Supreme Court decision, *Husted v. A. Philip Randolph Inst.*, No, 16-980, 2018 WL 2767661 (June 11, 2018). In *Husted*, the Court construed § 8 of the NVRA, which governs the States' ability to remove voters from registration rolls on change-of-residence grounds. *See id.* at * 3–5 (discussing 52 U.S.C. § 20507(b)(c) and (d)).

The Tenth Circuit held that the attestation requirement in § 5(c)(2)(C) presumptively satisfies the minimum-information requirement for motor voter registration in subsection (c)(2)(B).[147] However, this presumption is rebuttable if the state can demonstrate "that the attestation requirement is insufficient for it to carry out its eligibility-assessment and registration duties."[148] The court went on:

> More specifically, in order to rebut the presumption as it relates to the citizenship criterion, we interpret the NVRA as obliging a state to show that "a substantial number of noncitizens have successfully registered" notwithstanding the attestation requirement. In *EAC*, we held that the EAC was not under a nondiscretionary duty to add state-specific DPOC instructions to the Federal Form at two states' behest. We reached this conclusion because "[t]he states have failed to meet their evidentiary burden of proving that they cannot enforce their voter qualifications because a substantial number of noncitizens have successfully registered using the Federal Form." The failure to make such an evidentiary showing was seemingly dispositive there of Secretary Kobach's Qualifications Clause challenge.

> . . .

> This results in the preemption analysis here being quite straightforward: if Kansas fails to rebut this presumption that

---

Defendant argues that the *Husted* decision calls into question the Tenth Circuit's interpretation of § 5 in this case because, like the lower courts in *Husted*, it reads an implicit prohibition into the NVRA that is not permitted by the text. The Court does not read *Husted* so broadly. That decision entails a statutory interpretation of a different section of the NVRA, which construes different language. Absent an on-point ruling that applies to § 5, this Court is bound by the Tenth Circuit's guidance and leaves it to that court to determine whether *Husted* impacts its prior ruling.

Defendant also suggests that the policy arguments advanced by Plaintiffs about less burdensome alternatives to the DPOC law are policy arguments foreclosed by *Husted*. Again, the Court reads *Husted* to deal only with the issue of statutory interpretation of § 8 of the NVRA. The majority rejected the dissents' arguments, which it characterized as "policy disagreement[s]," and stated that the "only question before us" is whether Ohio's law violated federal law, specifically § 8 of the NVRA. The less burdensome alternatives argument in this case, referenced by Defendant, is not a policy justification for rejecting the DPOC law as preempted by § 5 of the NVRA. Instead, it is part of the test formulated by the Tenth Circuit, which only applies if Defendant makes a showing that substantial numbers of noncitizens successfully registered to vote under the attestation regime. This two-part test was formulated as a method of interpreting the minimum-information principle in § 5(c)(2)(B), language not at issue in *Husted*. Again, the Court remains bound by the Tenth Circuit's statutory construction of § 5, and leaves Defendant's challenges to that court to accept or reject.

[147] *Fish*, <u>840 F.3d at 738</u>.

[148] *Id.*

> attends the attestation regime, then DPOC necessarily requires more information than federal law presumes necessary for state officials to meet their eligibility-assessment and registration duties (that is, the attestation requirement).  Consequently, Kansas's DPOC law would be preempted.[149]

In a footnote, the court explained that if a state could show that attestation does not satisfy the minimum-information standard by demonstrating that substantial noncitizens are able to register to vote notwithstanding attestation of citizenship, then this Court would need to consider whether DPOC should be deemed "adequate to satisfy" the minimum-information standard.[150]  This second inquiry would require the state to "show that nothing less than DPOC is sufficient to meet those duties."[151]

In its preliminary injunction order, this Court found that between 2003 and the effective date of the DPOC law, 14 noncitizens had registered or attempted to register to vote in Sedgwick County, Kansas.  The Tenth Circuit found that this number "fall[s] well short of the showing necessary to rebut the presumption that attestation constitutes the minimum amount of information necessary for Kansas to carry out its eligibility-assessment and registration duties."[152]  In addressing this evidence, the court considered and rejected Defendant's argument that "even if one noncitizen successfully registers under the attestation regime, then DPOC is necessary to ensure applicant eligibility."[153]  This is because in adopting the NVRA registration procedures, Congress intended "to ensure that whatever else the states do, 'simple means of

---

[149]*Id.* at 738–39 (quoting and citing *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183 (10th Cir. 2014)).

[150]*Id.* at 738 n.14.

[151]*Id.*

[152]*Id.* at 747.

[153]*Id.* at 747–48.

registering to vote in federal elections will be available.'"[154]  If 1 vote by a noncitizen is too

many, then states would be able to justify even harsher means of verifying citizenship.[155]  The

court explained, "[t]he NVRA does not require the least amount of information necessary to

prevent even a single noncitizen from voting."[156]

After remand, the Court reopened discovery in the *Fish* matter related to the Tenth

Circuit's test.  Defendant was given the opportunity to retain experts and marshal evidence to

meet his burden of demonstrating that "a substantial number of noncitizens have successfully

registered to vote under the attestation requirement" in order to rebut the presumption that

attestation meets the minimum-information requirement of § 5[157] and that nothing less than

DPOC is sufficient to meet his eligibility-assessment and registration duties under the NVRA.

As described below, the Court finds that on the trial record Defendant has failed to make a

sufficient showing on the first inquiry.  Moreover, even if Defendant could demonstrate a

substantial number of noncitizen registrations, he has not demonstrated that nothing less than the

DPOC law is sufficient to enforce the State's citizenship eligibility requirement.

**A.      *Substantial Number of Successful Noncitizen Registrations Under Attestation***

Under the first part of this test, the parties dispute the meaning of "substantial."

Defendant has argued that "substantial" should be interpreted to mean any number that can

change the outcome an election.  Plaintiffs argue that "substantial" must be evaluated in

---

[154]*Id.* at 748 (quoting *Arizona v. Inter Tribal Council of Ariz., Inc. ("ITCA")*, 133 S. Ct. 2247, 2255 (2013)).

[155]*Id.*

[156]*Id.*

[157]*Id.* at 739.  Defendant cites this Court's summary judgment order for the proposition that this is a purely legal question.  *See* Doc. 523 at 52 (citing Doc. 421 at 18).  That is not an accurate recitation of the Court's ruling when read in context.  The Court must decide the meaning of "substantial" as a matter of law under the test formulated by the Tenth Circuit.  However, the Court must determine as the trier of fact whether Defendant's evidence of noncitizen registration meets that definition.

comparison to the number of total registered voters. In its summary judgment order, the Court provided the parties with guidance as to how it would apply the standard. After reviewing the Tenth Circuit's opinion in this case, and the decisions upon which it rested,[158] this Court found that Defendant's showing must go beyond the number of registrations that would impact the outcome of an election to be substantial. Instead, the Court considers the number of noncitizen registrations in relation to the number of registered voters in Kansas as of January 1, 2013, when the DPOC law was passed, and is otherwise guided by legal authority cited with approval by the Tenth Circuit in its October 2016 ruling when determining whether Defendant's evidence meets the threshold of "substantial."[159]

During his opening statement at trial, Defendant invited the Court to adopt a third approach to substantiality he deemed a "functional failure test." Under Defendant's test, the Court would determine whether a reasonable person would find that the attestation requirement failed to perform the function of preventing noncitizens from registering to vote. Defendant offers no explanation about how the Court is to apply this test, nor any authority for using a "reasonable person" test. Moreover, Defendant's proposed approach effectively modifies the Tenth Circuit's test by removing the words "substantial number." The plain meaning of the word "substantial" when describing an amount, means "considerable in quantity; significantly great."[160] By asking this Court to consider whether attestation "functions" a certain way, instead

---

[158]*Fish*, 840 F.3d at 733–39; *ITCA*, 133 S. Ct. at 2259–60; *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1195–96 (10th Cir. 2014) (reviewing Mem. Decision Concerning State Requests to Include Add'l Proof-of-Citizenship Instructions on the National Mail Voter Registration Form, Case No. EAC-2013-0004 (U.S. Election Assistance Comm'n Jan. 17, 2014), attached as Doc. 367-25).

[159]Doc. 421 at 29.

[160]Merriam Webster's Collegiate Dictionary at 1174 (10th ed. 1996).

of quantifying the noncitizens allowed to vote under attestation—a straightforward question—this inquiry runs afoul of the test formulated by the Tenth Circuit.

Defendant makes no mention of his "functional failure test" in his proposed findings of fact and conclusions of law. Instead, he argues for the first time that the Court should look to social security cases construing "substantial" in the context of reviewing administrative law judges' ("ALJ") decisions about whether "substantial gainful activity exists in significant numbers in the national economy," an inquiry relevant to a disability determination under the Social Security Act.[161] The Court does not find this line of cases helpful or relevant in determining the meaning of substantial in this case. First, the social security cases review ALJ decisions to determine if they are supported by substantial evidence in the record, a different standard of review than this Court employs during a civil bench trial.[162] Second, those cases construe the term "significant number," not "substantial number," in an entirely different context, guided by such factors as "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on."[163] Obviously, none of these factors are relevant to the question before the Court in this case. Instead, the Court considers whether Defendant's evidence of noncitizen registration is substantial according to the guidance provided at summary judgment, which relied on cases determining this question in the context of noncitizen voter registration.

For the reasons already explained, the Court finds no credible evidence that a substantial number of noncitizens registered to vote under the attestation regime. The only information

---

[161]*See, e.g.*, *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

[162]*Id.* at 1330.

[163]*Id.*

about Kansas registration rates relied upon by Mr. von Spakovsky was provided to him by Mr. Caskey, and the Court has already evaluated that underlying data in more detail than Mr. von Spakovsky, who simply accepted the numbers as true. His generalized opinions about the rates of noncitizen registration were likewise based on misleading evidence, and largely based on his preconceived beliefs about this issue, which has led to his aggressive public advocacy of stricter proof of citizenship laws. The Court likewise does not find Dr. Richman's opinion as to the numbers of noncitizen registration carry weight given the numerous methodological flaws set forth in the Court's findings of fact.

That leaves Defendant's empirical evidence of noncitizen registration. He has submitted evidence of 129 instances of noncitizen registration or attempted registration since 1999, but looking closely at those records reduces that number to 67 at most. Even these 67 instances are a liberal estimate because it includes attempted registrations after the DPOC law was passed, a larger universe than what the Tenth Circuit asked the Court to evaluate. Only 39 successfully registered to vote. And several of the individual records of those who registered or attempted to register show errors on the part of State employees, and/or confusion on the part of applicants. They do not evidence intentional fraud. As discussed below, in determining whether nothing less than requiring DPOC is sufficient to enforce the citizenship requirement, it matters whether noncitizens are intentional registrants or not.

Moreover, the Court is unable to find empirical evidence that a substantial number of noncitizens successfully registered to vote under the attestation regime. As stated in the Court's findings of fact, there are only 39 confirmed noncitizens who successfully registered to vote between 1999 and 2013 when the DPOC law became effective. This is but .002% of all registered voters in Kansas as of January 1, 2013 (1,762,330). Furthermore, the 67 confirmed

registrations and attempted registrations between 1999 and 2018 amounts to only .004% of

registered voters.[164]  Of the estimated 115,500 adult noncitizens in Kansas,[165] .06% have

successfully registered or attempted to register to vote since 1999.  The number of attempted

noncitizen registrations since the DPOC law became effective is .09% of the total number of

individuals canceled or suspended as of March 31, 2016, for failure to provide DPOC.  The

Court finds none of these numbers are substantial when compared to the total number of

registered voters, the total number of noncitizens in Kansas, or the number of applicants on the

suspense/cancellation list as of March 2016.  They all fall below 1%.  Instead, these numbers

support the opinions of Drs. Minnite, McDonald, and Hersh that while there is evidence of a

small number of noncitizen registrations in Kansas, it is largely explained by administrative

error, confusion, or mistake.

Defendant insists that these numbers are just "the tip of the iceberg."  This trial was his

opportunity to produce credible evidence of that iceberg, but he failed to do so.  The Court will

not rely on extrapolated numbers from tiny sample sizes and otherwise flawed data.  Dr.

Richman's estimates were not only individually flawed and wildly varied, but his refusal to

opine as to the best method of estimating the iceberg renders them all suspect.  Mr. von

Spakovsky's opinions fare no better.  His advocacy led him to cherry pick evidence in support of

his opinion, and he failed to demonstrate knowledge of Kansas noncitizen registration that would

allow him to reliably quantify the iceberg beyond Mr. Caskey and Ms. Lehman's testimony.

While the Court acknowledges that Defendant has limited tools at his disposal to quantify the

statewide numbers of noncitizen registrations, the Court does not assume as Defendant does that

---

[164]The Court's finding would be no different if it fully credited the 129 instances cited by Defendant.

[165]*See* Ex. 958 at 28 (citing the American Community Survey's 5-year estimate of the noncitizen population in Kansas).

this means there must be additional, substantial cases of noncitizen registration.  Instead, the

Court draws the more obvious conclusion that there is no iceberg; only an icicle, largely created

by confusion and administrative error.

### B.      Alternatives to DPOC

Although the Court finds Defendant has not met his burden of showing a substantial

number of successful noncitizen registrations under attestation in Kansas, out of an abundance of

caution it proceeds to consider whether "nothing less than DPOC is sufficient to meet" Kansas's

NVRA eligibility-assessment and registration duties.  The parties presented evidence about the

following alternatives to enforcing the Kansas citizenship requirement: (1) better training of

State employees, particularly at the DOV; (2) list matching; (3) reviewing juror questionnaires;

(4) the SAVE program; and (5) prosecution and enforcement of perjury for false attestations.[166]

The Court begins its analysis of this part of the test by finding that no system for

detecting noncitizen registration is perfect because there is no way to completely eliminate

human error.  The experts for both sides agree on this point.  But the evidence at trial showed

that a greater effort to pursue several of these alternatives, taken together or individually, would

be sufficient to meet Kansas's NVRA duties.  The testimony of Drs. Minnite and Hersh

established that many confirmed instances of noncitizen registration or attempted registration in

Kansas were due to either applicant confusion or mistake, or errors by DOV and county

employees, not intentional voter fraud.  Lack of intent matters not as a means of determining

legal liability, but because it frames the acceptable alternative approaches that would allow

---

[166]There was evidence at trial about the Electronic Verification of Vital Events ("EVVE") program as a possible alternative enforcement mechanism.  Plaintiffs did not pursue this as an acceptable alternative, and the evidence showed that it required information such as the applicant's state of birth, not captured by the voter registration application.

Defendant to better enforce the State's citizenship requirement while imposing a less burdensome process on Kansans who apply to register to vote. If most noncitizen registrations are due to mistake or administrative error, as opposed to intentional fraud, that fact shapes the best method for enforcing the citizenship requirement.

### 1. Training

The evidence made clear that several noncitizens who registered or "attempted" to register, according to Defendant, either did not intend to register to vote or did not understand that they were prohibited from registering to vote. Some applicants told the DOV clerk that they were not citizens, yet the clerk completed a voter registration application. For some period of time prior to 2010, the evidence established that the DOV had been offering voter registration to all applicants as a matter of course, even if the clerk knew that the applicant was a noncitizen. It is not difficult to understand why many noncitizens registered to vote during this period if they were offered a voter registration application notwithstanding their disclosure to the DOV clerk of noncitizen status. These applications are part of the universe forwarded to the county clerks that were flagged as attempted registrations instead of mistakes. There was also evidence of DOV and county clerk error in implementing the DPOC law prior to and after the preliminary injunction order became effective in June 2016. There was evidence that DOV clerks continued to offer voter registration to noncitizens after 2010. And there was evidence that DOV clerks did not accept DPOC presented by driver's license applicants, and therefore applicants were suspended or canceled despite fully complying with the law.

The SOS's Office could make better, more meaningful efforts toward training DOV employees charged with completing motor voter applications. While it is true that an effort was made back in 2010 to train DOV clerks that noncitizens should not be offered voter registration,

Mr. Caskey could not quantify a sustained effort by his office to train these workers not to fill out applications for those who disclose they are noncitizens either by providing evidence of noncitizenship during the application process, or by answering "no" to the question about U.S. citizenship. The evidence suggests a shift in policy around 2010 when the SOS's Office came up with training posters for the DOV on this issue. Yet, the errors identified during Ms. Lehman's testimony involved applications after 2013, suggesting that the problems continued after 2010. Mr. Caskey's testimony provided no indication of how often he or the SOS's Office "talks with" DOV trainers about these policies, nor what "periodically review[ing]" their training materials entails. Although drivers' license clerks received updated training between February 2015 and June 2016, there have been no new written training materials since that time. Despite the interagency agreement between the SOS's Office and the DOV that became effective in May 2016, and the Court's preliminary injunction that became effective in June 2016, the record does not establish that robust, updated training was provided to the DOV. The Court is convinced that a greater effort at training DOV staff would reduce the amount of inadvertent noncitizen registrations. The Court is further convinced that without the burdensome DPOC law to enforce, Mr. Caskey and his staff would have far more resources to devote to this endeavor.

Mr. Caskey testified that there is a training manual for the counties that was last updated in 2012, which used to be available online. Instead of updating the manual, he sends out emails and holds regular conference calls with the counties when items must be updated. Therefore, there is no centralized, updated training manual at the counties' disposal containing policy guidance from the SOS. Instead, the counties apparently must maintain their own index of emails and conference call notes to determine current policy on voter registration under the SAFE Act, the enforcement of which has been a moving target for the last 5 years given the

many changes in internal policy since the law was passed. Since the law was passed, Defendant implemented the cancellation regulation under K.A.R. § 7-23-15, and it has established interagency agreements with the DOV and KDHE. In addition, the preliminary injunction created additional duties for the counties. There is no record of exactly how many updates to the training manual have been implemented through informal emails and phone calls, but the Court can reasonably infer that there have been many. More consistent, centralized training for county clerks would be another less burdensome way to ensure they understand the State's eligibility requirement, and how to ensure to the best of their abilities that noncitizens do not inadvertently end up on the voter rolls.

### 2. DOV List Matching and Juror Questionnaires.

Defendant has relied on list matching between the TDL list and the ELVIS database to produce evidence of some noncitizen registrations in this case. He could certainly continue to compare these lists, and confirm noncitizenship through either the individual records, or through DHS's help, as he has done in previous cases. Moreover, there is evidence that Defendant could compare and investigate those applicants in the DOV database that presented green cards during the driver's license application process, with the ELVIS database.

Defendant also demonstrated that he can examine juror questionnaires for self-identified noncitizens who are called to jury duty from the voter rolls. Although these methods may generate false positives, as the Court discussed in its findings of fact, they at least offer a less burdensome starting point for investigation and confirmation. Given that Defendant currently uses these alternative means for detecting and addressing noncitizen registration, Defendant has failed to establish that nothing less than a DPOC requirement is sufficient to address the problem of noncitizen registration.

### 3. SAVE Database

Defendant maintains that he cannot rely on the SAVE database to determine noncitizen status of Kansas voter registration applicants, relying on a 2012 letter from DHS requiring A-numbers and a copy of immigration documentation in order to share information with Kansas. Yet, the evidence at trial demonstrated that DHS has confirmed noncitizenship status in the past without this information, and that other states without DPOC laws use SAVE under agreements with DHS. Mr. Caskey admitted that he has not attempted to contact these states to determine how they utilize SAVE, and whether it might be an acceptable alternative to the DPOC law in Kansas. And, it is not clear that the SOS's Office has leveraged information from other state agencies to access the information needed by DHS to confirm citizenship status of voter registration applicants. The Court finds that such an approach would be less burdensome than the DPOC law.

### 4. Prosecutions

Defendant already has prosecutorial authority over Kansas election crimes. Yet, since obtaining this authority, and despite claiming to have located 129 instances of noncitizen registration in Kansas, Defendant has filed zero criminal complaints against noncitizens for registering to vote. To the extent Defendant takes the position that these are all cases that meet the definition of perjury, or otherwise involve fraudulently registering to vote, his own office has taken the position that prosecuting such individuals should act as a deterrent to future registrations by noncitizens. However, as the Court has already found, the evidence at trial demonstrates that many of the 129 cited instances of noncitizen registration were mistakes or the result of administrative error, which may not be prosecutable[167] and which may undermine the

---

[167]It is axiomatic that a person must act with intent in order to be guilty of committing a crime.

deterrent effect of future prosecutions. Given that Defendant has not meaningfully sought to utilize criminal prosecutions, at least when he detects intentional cases of noncitizen registration, he has failed to establish that nothing less than DPOC is sufficient to address the problem of noncitizen registration.

The second prong of the Tenth Circuit's test does not require Defendant to establish that an alternative to DPOC would eliminate noncitizen registration; indeed, all the experts agree that may not be possible given the component of human error involved. The test instead requires that Defendant demonstrate that nothing less than DPOC would be a sufficient alternative. He does not satisfy this test. Several alternatives exist, especially when taken together, that would be sufficient to reduce the nominal amount of noncitizen registration that occurs through an attestation regime. Thus, the Court finds that Defendant has failed to rebut the presumption that the attestation clause meets the minimum information principle in § 5 of the NVRA, and therefore orders judgment in favor of Plaintiffs on this remaining claim.

## V. Conclusions of Law: *Bednasek v. Kobach*

Plaintiff Bednasek claims that the DPOC law unconstitutionally burdens his right to vote under the Fourteenth Amendment.[168] The Supreme Court has made clear that there is no "litmus test" for considering a constitutional challenge to a State's election laws.[169] Instead, the Court is to "first, consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate."[170] Second, the court

---

[168]Plaintiff conceded at the summary judgment oral argument back on March 3, 2017, that his claim arises under the Equal Protection clause, and not the Due Process clause. Bednasek Doc. 162 at 41:19–42:4. The Court therefore need not address Defendant's lengthy closing argument that there is insufficient evidence to support a due process claim in this matter.

[169]*See, e.g., Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 190 (2008); *Burdick v. Takushi*, 504 U.S. 428, 438–39 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

[170]*Anderson*, 460 U.S. at 789.

"must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule."[171]  In considering the State's interest, the Court is to both "determine the legitimacy and strength of each" State interest, and also "consider the extent to which those interests make it necessary to burden the plaintiff's rights."[172]  The Court has explained the balancing test as follows:

> Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights.  Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance."  But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions.[173]

In 2008, the Supreme Court decided *Crawford v. Marion County Election Board*, which considered a challenge to an Indiana law requiring its citizens to present photo identification ("photo-ID") when voting in-person.[174]  Indiana identified the following interests to justify the law's burden on voters: (1) deterring and detecting voter fraud; (2) election modernization; and (3) safeguarding voter confidence.[175]  As to voter fraud, the Court acknowledged no record evidence of in-person voter fraud (the only kind of fraud the statute could address) at any time in Indiana.[176]  However, the Court found that "flagrant examples of such fraud in other parts of the country," "occasional examples [that] have surfaced in recent years" in other places, and

---

[171]*Id.*

[172]*Id.*

[173]*Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992); *Anderson*, 460 U.S. at 788) (citations omitted).

[174]*Crawford*, 553 U.S. at 185.

[175]*Id.* at 191.

[176]*Id.* at 194–95.

"Indiana's own experience with fraudulent voting in the 2003 Democratic primary for East Chicago Mayor" involving the use of absentee ballots, "demonstrate that not only is the risk of voter fraud real but that it could affect the outcome of a close election."[177]  The Court found that the State's interest in preventing voter fraud was legitimate and proper.[178]  The Court also found that the State has an interest in modernizing elections, pointing to the NVRA and the Help America Vote Act ("HAVA"), which "indicate that Congress believes that photo identification is one effective method of establishing a voter's qualification to vote and that the integrity of elections is enhanced through improved technology."[179]  Finally, the Court acknowledged the "independent significance" of the State's interest in public confidence in the integrity of the electoral process.[180]

In considering the burdens imposed by Indiana's photo-ID law, the Supreme Court distinguished between the types of burdens it imposes on voters.  Burdens "arising from life's vagaries," such as a lost or stolen wallet, are not constitutionally significant because "the availability of the right to cast a provisional ballot provides an adequate remedy."[181]  Instead, the Court considered burdens imposed on those who are eligible to vote, but who do not possess a photo ID that complies with Indiana law.  The Court found that the burden on this subgroup was low because Indiana issued free photo-ID cards to these individuals, and: "For most voters who need them, the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote,

---

[177]*Id.* at 195 (footnotes omitted).

[178]*Id.* at 196.

[179]*Id.* at 193.

[180]*Id.* at 197.

[181]*Id.*

or even represent a significant increase over the usual burdens of voting."[182] The Court found

that the evidence demonstrated a heavier burden was placed on elderly persons born outside of

Indiana, persons who have difficulty obtaining a birth certificate required to obtain a photo-ID,

homeless persons, and persons with religious objections to being photographed.[183] However, the

severity of the burden on these groups is "mitigated by the fact that, if eligible, voters without

photo identification may cast provisional ballots that will ultimately be counted. To do so,

however, they must travel to the circuit court clerk's office within 10 days to execute the

required affidavit."[184] The burden would only be a constitutional problem if it was "wholly

unjustified," and even then, the burden on "just a few voters" would be insufficient to facially

invalidate the statute.[185]

In balancing the State's interests against the burden on voters, the Court stressed that

instead of weighing the burden that the law imposes on all voters, the plaintiffs asked the Court

to look at only a narrow group of voters that experienced a special burden.[186] The Court found

that the evidence in the record was insufficient to quantify "either the magnitude of the burden

on this narrow class of voters or the portion of the burden imposed on them that is fully

justified."[187] The petitioners presented no evidence of the number of registered voters lacking a

photo ID, or of the specific burdens felt by the categories of burdened voters identified by the

Court.[188] Moreover, those with difficulty obtaining a photo-ID, such as the elderly, could vote

---

[182]*Id.* at 198 (footnote omitted).

[183]*Id.* at 199.

[184]*Id.*

[185]*Id.* at 199–200.

[186]*Id.* at 200.

[187]*Id.*

[188]*Id.* at 200–03.

absentee without presenting photo-ID. Thus, "on the basis of the record that has been made in this litigation, we cannot conclude that the statute imposes 'excessively burdensome requirements' on any class of voters."[189] The Court declined to invalidate the entire statute on this showing.[190] Given this guidance, the Court proceeds to consider the balancing test as it applies to the evidence in this trial record.

## A. The State's Interests

Defendant submits that the DPOC law furthers the State's legitimate interests in preventing noncitizen registration, maintaining accurate voter rolls of only qualified U.S. citizens, and maintaining confidence in the electoral process. The Court finds that although all 3 are legitimate interests, Defendant failed to produce evidence that they are strong enough to outweigh the tangible and quantifiable burden on eligible voter registration applicants in Kansas who were not registered to vote before January 1, 2013.

The Court has already determined that at most, 67 noncitizens registered or attempted to register in Kansas over the last 19 years. Even looking beyond Kansas, Defendant's evidence of noncitizen registration at trial was weak. Dr. Richman's *Electoral Studies* article concluding that millions of noncitizens registered and voted was credibly dismantled by Dr. Ansolabehere, the architect of the survey upon which Dr. Richman's conclusions were based. He explained that Dr. Richman's findings in that article are based on a flawed data analysis, and over 200 political scientists wrote an open letter criticizing its methodology and conclusion. Similarly, the Court does not fully credit Mr. von Spakovsky's summary of reported incidents of noncitizen registration, given its inclusion of misleading and false assertions. While there is certainly some

---

[189]*Id.* at 202.

[190]*Id.* at 203.

evidence of noncitizen voter registration nationally, the trial evidence did not demonstrate the largescale problem urged by Defendant.

Maintaining accurate voter rolls of only U.S. citizens is again a legitimate State interest, however, for the same reasons already described, evidence that the voter rolls include ineligible citizens is weak. At most, 39 noncitizens have found their way onto the Kansas voter rolls in the last 19 years. And, as Dr. Hersh explained, given the almost 2 million individuals on the Kansas voter rolls, some administrative anomalies are expected. In the case of Kansas, this includes 100 individuals in ELVIS with birth dates in the 1800s, and 400 individuals with birth dates after their date of registration.

Finally, the Court concludes that maintaining confidence in the electoral process has independent significance, as found in *Crawford*.

**B.** **Burdens Imposed by the DPOC Law**

This Court previously denied summary judgment based on genuine issues of material fact as to the burdens imposed by the DPOC law in this case. The Court explained then that unlike the photo-ID cases largely relied on by Defendant that deal with requirements for casting an in-person ballot, the DPOC law is distinguishable because it applies to registration. There is no safety valve such as a provisional ballot that can serve to mitigate the burden on voters.[191] Therefore, unlike the Indiana law in *Crawford*, an eligible Kansas applicant on the suspense or cancellation list does not have the option to fill out a provisional ballot, produce DPOC after the election, and have their ballot counted.

---

[191]*See, e.g., id.* at 199–201; *ACLU of N.M. v. Santillanes*, 546 F.3d 1313, 1323 (10th Cir. 2008); *Frank v. Walker*, 768 F.3d 744, 746 (7th Cir. 2014).

This distinction is illustrated by Mr. Stricker's experience—the burden imposed on him by the DPOC law disenfranchised him in 2014.  He was offered a provisional ballot, but because he was not registered before the election, there was no way for him to cure and have his ballot counted after the election.  The only way to cure a violation of the DPOC law is to submit DPOC before midnight on the day <u>before</u> the election.  Of course, in Mr. Stricker's case, he did not know he was not registered the day before the election because he had provided a birth certificate at the time he applied to register, he told the driver's license clerk he wished to register, he signed the attestation of eligibility, and he was told that there was nothing more he needed to do, including that he did not need a "voting card."  Similarly, Prof. Boynton brought a birth certificate to the DOV when he sought to register to vote, and he too believed that he had registered when he left the DOV.  He learned for the first time that he was not in fact registered when he was offered a provisional ballot in the 2014 general election.  Prof. Boynton was so frustrated by the experience that he declined to register to vote the next 2 times he applied for a driver's license, lamenting that he "might as well save [him]self the effort and say no this time."[192]

The DPOC law's deterrent effect on registration is further supported by Ms. Ahrens's and Dr. McDonald's testimony.  The DPOC requirement fundamentally changed the Kansas League's ability to accomplish its mission of encouraging and assisting citizens in registering to vote and voting.  Ms. Ahrens explained that the law was a "dead hit" on this mission, stopping all its registration efforts until it could conceive of a safe copying policy—previously, the League could assist registrants by having them fill out an application and sign an attestation of eligibility.  Now, they were required to ask for a sensitive, personal document and maintain a

---

[192] Doc. 504, Trial Tr. at 270:10–11.

copy of that document with each registration application.  In 2013 in Wichita, for example, the

Kansas League helped register only 400 individuals, compared to 4000 the year before.  The

Kansas League was also hampered in helping young people register to vote for the first time—

less than one-quarter of all students who tried to register to vote at one Kansas university could

successfully complete their applications due to lack of immediate access to DPOC.

  This testimony supports Dr. McDonald's expert opinion formed after analyzing the

individual ELVIS records for those on the suspense and cancellation lists, that the DPOC law

disproportionately affects the young and unaffiliated.  Dr. McDonald explained that the

consensus in social science is that barriers to voter registration increase the cost of voting and

dissuade individuals from participating in the political process.  Dr. Richman agreed with this

proposition.  And these groups—the young and unaffiliated—already have a lower propensity to

participate in the political process and are less inclined to shoulder the costs associated with

voter registration.  As compared to photo-ID laws, the Kansas DPOC law is an absolute bar to

registration for any applicant lacking access to such DPOC.  And even for those that have access

the additional steps to possess such a document, such as locating it from a family member or

separately obtaining an underlying document, increase the "costs" of voting that Dr. McDonald

testified dissuade individuals from participating in the political process.

  As the Court explained in its summary judgment order, another distinguishing feature

between this case and *Crawford*, is that the number of incomplete and canceled registration

applications for failure to submit DPOC provides concrete evidence of the magnitude of the

harm.  These individuals all sought to register to vote but were blocked by the DPOC

requirement.  This evidence contrasts with the photo-ID cases, where courts were unable to

determine how many people were unable to vote based on the photo-ID requirement, and

therefore found the burden to be speculative.[193]  The administrative data presented in this case,

coupled with the expert opinions of Dr. McDonald, Minnite, and Hersh, all support the

burdensomeness of the law.

Of the tens of thousands of individuals whose voter registration applications have been

suspended or canceled due to lack of DPOC, less than 1% have been confirmed to be

noncitizens.  There is no evidence to suggest that the rest are not U.S. citizens, and thus these

applicants are all eligible to register to vote but have been unable to produce DPOC.  Defendant

argues that any burden imposed by the law only applies to individuals on the list who do not

have access to DPOC, and only a small number of those prevented from registering under the

DPOC law do not either possess DPOC, or have immediate access to it.  He points to Dr.

Richman's estimate that only 2.2% of people on the suspense list lack immediate access to

DPOC.  He also points to the McFerron survey.  As discussed earlier in this opinion, the

McFerron Survey is inadmissible.  And even if it was admissible, it is riddled with so many

methodological errors that the Court would give it no weight.  Likewise, Dr. Richman's estimate

that only 2.2% of the individuals on the suspense list lack DPOC list is flawed for the many

reasons discussed in the findings of fact.   Moreover, that survey tells the Court nothing about

those whose applications were canceled, nor does it provide evidence about the universe of

eligible unregistered Kansas citizens subject to this law.

Defendant argues that the law is easy to comply with, pointing to the ability to submit

DPOC electronically, and the State's attempts to verify citizenship through the KDOR and

KDHE.  Moreover, Defendant argues that the suspense list is dynamic, and that most of the

applicants on the list eventually come off the list either through the State locating a citizenship

---

[193]*See Crawford*, 553 U.S. at 200; *Frank*, 768 F.3d at 748–49.

document, or because the applicant eventually submits a compliant document.  First, there is no

clear evidence about the number of applicants that have been cleared through the KDHE and

KDOR process since it went into effect; Defendant opted not to update discovery requests with

new suspense list figures before trial.[194]  But the suspense list before this Court's preliminary

injunction order is a credible snapshot of the overall burdensomeness of the law—those figures

represent the number of applicants impacted during the first 3 years it was enforced and

subsumes the KDHE policy that was effective long before 2016.  While the Court acknowledges

that the KDOR agreement likely lowers the number of individuals on the suspense list

somewhat, it could not resurrect applications that were canceled before the agreement became

effective.[195]

Ms. Lehman testified that her office received bounce-back notices from about one-third

of the individuals on the suspense list, and surmised that because many of them moved, they

should not be counted.  First, there is no evidence of statewide bounce-back notices on this scale.

Second, even if that rate of notices bounced back, it says nothing about the citizenship status of

the recipients.  Instead, it shows how burdensome the notice process is, and the fact that many of

those impacted by the law are not receiving notice of (1) the fact that they are not registered to

vote, after in at least some cases being told that they were at the time of application; and (2) what

they need to do to cure the problem.  In sum, unlike in the in-person voting photo-ID cases, there

---

[194]The Court notes that this KDOR policy was implemented after the *Fish* case was filed, and appears to be in direct response to the allegations in that case that compliant documents were being submitted at the time of application, but rejected by DOV employees as a matter of course.  The KDOR policy was not yet in place at the time of the preliminary injunction hearing on April 14, 2016.

[195]Instead, Defendant unilaterally cured the applications of previously canceled applicants only after they were resurrected by the preliminary injunction.  But for the Court's order, the applications of Stricker, Boynton, and Hutchinson would have been canceled and they would have been required to reapply for any interagency policy to benefit them.

is evidence here that "substantial numbers of persons eligible to vote have tried" to register but have been unable to do so.[196]

Defendant suggests that the hearing procedure in § 25-2309(m) mitigates the burden imposed by the DPOC law, because if a person lacks the ability to obtain one of the 13 forms of DPOC in the statute, the hearing procedure allows them to submit some alternative proof of citizenship. He claims that this procedure is easy to comply with, but the evidence does not support that statement. First, the hearing procedure in subsection (m) is not explained to applicants when they apply to register, nor to applicants who were suspended for lack of DPOC. Neither the small DOV receipt, nor the example notices sent by the counties, contain any language explaining the hearing option to applicants. None of the named Plaintiffs in either case recall this option being mentioned to them. This explains why only 5 individuals, out of the more than 30,000 individuals on the suspense and cancellation list in March 2016, availed themselves of this option in the 5 years that the law has been in effect.

Second, even for those individuals who were registered after going through the alternative hearing process, their experiences were burdensome. One such individual, Ms. French, testified at trial. Ms. French admitted to a newspaper after the hearing that she "thought it was strange that I had to go through this procedure to be able to vote."[197] Although she whole-heartedly agreed with the law as a policy matter, her experience illustrates the many steps required to comply under this procedure, which took five months to accomplish in the spring and summer of 2016, incidentally during the very timeframe when the *Fish* case was filed and the preliminary injunction in that case was being heard and decided. The Court does not find it to be

---

[196]*Frank*, 768 F.3d at 746–47 (noting lack of evidence of "substantial numbers of persons eligible to vote have tried to get a photo ID but been unable to do so.").

[197]Doc. 511, Trial Tr. at 1421:16–1422:11.

coincidental that Mr. Rucker became Ms. French's "friend" during this time period.  The Court would not normally expect a high-level government official to invest the time and attention Ms. French described during her testimony to help an applicant locate citizenship records and navigate the hearing procedure, much less keep in close personal contact after the process is complete.  Based on this level of individual attention, and the fact that the media was present at the hearing, it appears the State was motivated to help this applicant navigate the system and become registered through the hearing process.[198]  The Court therefore does not find that Ms. French is a typical example of how an applicant would expect to experience this process, assuming the average applicant was aware that this process was available.

The hearing records reveal that another applicant was represented by retained counsel at the hearing, and yet another was required to execute his own affidavit explaining that he had been born on a military base and was therefore a U.S. citizen.[199]  The Court finds that this alternative procedure adds, not subtracts, from the burdensomeness of the law.

The Court determines that the magnitude of potentially disenfranchised voters impacted by the DPOC law and its enforcement scheme cannot be justified by the scant evidence of noncitizen voter fraud before and after the law was passed, by the need to ensure the voter rolls are accurate, or by the State's interest in promoting public confidence in elections.  Unlike in *Crawford*, Plaintiff has presented evidence of the number of voters who were unable to register to vote due to lack of DPOC, and the specific burdens felt by those who lack DPOC.[200]  Also,

---

[198]*See* Ex. 1214 (SOS employees' text messages indicting that "Eric . . . prob has her number saved in his phone.").

[199]Ex. 150.  The State Election Board orders and records from these § 25-2309(m) hearings were produced to Plaintiffs for the first time at trial.

[200]*See Crawford*, 553 U.S. at 203 n.20 (explaining that record evidence that 43,000 Indiana citizens lacked photo-ID "tells us nothing about the number of free photo identification cards issued since then" and that "the record does not provide even a rough estimate of how many indigent voters lack copies of their birth certificates.

there is no mitigating provision comparable to the provisional ballot in Indiana that would cure the failure to register before an election. Given the evidence in the trial record that before the Court's preliminary injunction about 12% of all new voter registration applicants were either suspended or canceled, the Court finds that the burden imposed on Kansans by this law outweighs the state's interest in preventing noncitizen voter fraud, keeping accurate voter rolls, and maintaining confidence in elections. The burden is not just on a "few" voters, but on tens of thousands of voters, many of whom were disenfranchised in 2014. At least one voter, Prof. Boynton, was deterred from registering again after the burdensome process he endured in 2014, a result supported by the testimony of several election experts in this case that increased "costs," or steps to registration, decrease the likelihood of registration and voting. This deterrent effect on young voters is particularly acute.

Moreover, the evidence does not support a fit between the DPOC law and the State's interest in ensuring only qualified citizens are included on the State's voter rolls. The experts agree that several of the nominal cases of noncitizen registrations identified by Defendant can be explained by administrative error and confusion. Indeed, the evidence showed that other far less burdensome methods are available to the State to maintain accurate voter rolls of eligible Kansans by utilizing tools such as matching DOV lists, investigating self-reported noncitizens who are called for jury service, and utilizing the SAVE database. Moreover, better training of DOV staff could help ensure that voter registration applications are not offered to noncitizens.

And while maintaining confidence in the electoral process has independent significance as *Crawford* held, the evidence in this case does not show that the DPOC law furthers this

---

Supposition based on extensive Internet research is not an adequate substitute for admissible evidence subject to cross-examination in constitutional adjudication.").

significant interest.  Instead, the law has acted as a deterrent to registration and voting for substantially more eligible Kansans than it has prevented ineligible voters from registering to vote.  At least one applicant testified that he opted not to apply to register to vote again, despite possessing DPOC, because of the burdensome experience of being held in suspense and prevented from voting in 2014 due to the law.  There has also been evidence of incorrect notices sent to applicants, incorrect information about registration status communicated over the phone by State employees, failure to accept DPOC by State employees, failure to meaningfully inform applicants of their responsibilities under the law, and evolving internal efforts to verify citizenship, that have all caused confusion during the 5 years this law has been effective.  If Kansans who try to register to vote cannot be sure if they are in fact registered, particularly after they have been led to believe they complied with all registration laws, it erodes confidence in the electoral system.  If Kansans receive misinformation from State officials about whether they are registered to vote, it erodes confidence in the electoral system.  If eligible Kansans' votes are not counted despite believing they are registered to vote, it erodes confidence in the electoral system.

In sum, the type of burden and the quality of the evidence in support of that burden is distinguishable from *Crawford*, which the Supreme Court was careful to limit to the record in that case.  Based on this record, the magnitude of the burden on unregistered eligible Kansas voters cannot be justified by the State interests relied on by Defendant.  The evidence at trial demonstrated that those interests, while legitimate, are not furthered by the DPOC law.  Instead, the DPOC law disproportionately impacts duly qualified registration applicants, while only nominally preventing noncitizen voter registration.  It also may have the inadvertent effect of eroding, instead of maintaining, confidence in the electoral system given the confusing, evolving, and inconsistent enforcement of the DPOC laws since 2013.  For all of these reasons, the Court

finds in favor of Plaintiff Bednasek on his § 1983 claim alleging a Fourteenth Amendment violation of his right to vote.

## VI. Remedies

Plaintiffs' requests in both cases for declaratory and injunctive relief is granted. As already stated, K.S.A. § 25-2309(l) and K.A.R. 7-23-15, violate § 5 of the NVRA and infringe on the right to vote under the Fourteenth Amendment. Defendant shall not enforce the DPOC law and accompanying regulation against voter registration applicants in Kansas. As the Court stated in an earlier opinion finding Defendant in contempt, Defendant's well-documented history of avoiding this Court's Orders, and providing confusing notices and information on the State's websites in conjunction with this Court's rulings, warrant specific compliance measures with this injunction as spelled out below.

Defendant argues that Plaintiffs lack standing to seek the specific compliance measures requested by the *Fish* Plaintiffs, and that the NVRA does not require any specific educational materials or ballot types. The Court disagrees. First, these items are part and parcel of registering eligible Kansans to vote, and ensuring that they are not any more confused than necessary by the change in policy. If Defendant takes the position that he is entitled under the NVRA to continue to falsely assert the status of the law on his website, and that he may require registered voters to complete provisional ballots, he is invited to file a brief to the Court, not to exceed ten pages in length, citing authority for this proposition. Moreover, the Court rejects Defendant's standing argument. These measures would not be required but for past enforcement problems necessitated by Defendant's claims of failing to understand the confines of the Court's preliminary injunction order. These specific compliance measures attempt to address Defendant's past complaints that the Court's directives were not specific enough, and to avoid

the need for further compliance directives going forward. They allow Plaintiffs' claims under §

1983 and the NVRA to be fully redressed.

(1)      To the extent he has not already done so, Defendant shall provide all registrants

covered by the permanent injunction with the same information provided to other registrants

(including but not limited to certificates of registration); and must ensure that all elections-

related public education materials (including but not limited to voter-aimed notices and websites,

in all languages in which those documents are available, including English and Spanish) make

clear that voter registration applicants need not provide DPOC in order to become registered to

vote, and need not provide any additional information in order to complete their voter

registration applications.

(2)      Defendant shall instruct all state and county elections officers, and must ensure

that all training and reference materials for elections officials in Kansas (including but not

limited to the SOS's County Elections Manual) make clear, that voter registration applicants

need not provide DPOC in order to be registered to vote, and need not provide any additional

information in order to complete their voter registration applications.

(3)      Defendant shall maintain the "Voter View" website to accurately reflect covered

voters' registration status.

(4)      Defendant shall ensure that, in counties that use paper poll books, the names of all

registrants lacking DPOC appear in the same manner and in the same list as all other registered

voters' names, and that all registrants covered by this Order shall be entitled to vote using

standard ballots rather than provisional ballots at polling places on Election Day or when they

request advance mail-in ballots.

The parties shall meet, confer, and file a joint status report 30 days before the next primary election scheduled in Kansas to verify compliance with the permanent injunction. Following this joint status report, the Court may determine whether modification of its final order is warranted or whether any additional steps may be necessary to ensure that effective relief for covered voters is not denied or otherwise undermined by Defendant.

## VII.    Sanctions

Throughout this opinion, the Court referenced several instances when Defendant failed to disclose evidence under Fed. R. Civ. P. 26(a), or to supplement discovery under Rule 26(e).  In many of these instances, the Court excluded the evidence.  In others, Plaintiffs either withdrew the objection, or the Court allowed the evidence with some limitation.  At least once, Defendant attempted to introduce such evidence despite the Court's ruling excluding it.  These violations led to objections throughout trial despite the Court's repeated efforts to educate Defendant about his Rule 26 disclosure obligations.

The Court's rulings were governed by Fed. R. Civ. P. 37(c)(1), which states that when a party fails to produce information or identify a witness in violation of Rule 26(a) or (e),

> the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[201]

---

[201]Fed. R. Civ. P. 37(c)(1).

In determining whether a failure to disclose is harmless or substantially justified, the Court looks to several factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[202]  The burden to demonstrate that the failure to disclose is harmless or substantially justified is on the party who failed to properly disclose.[203]

There were several violations that justified sanctions under Rule 37(c)(1).  First, the Court issued a pretrial ruling on disclosure issues involving Mr. McFerron and Dr. Richman.[204]  The Court found that Defendant failed to designate Mr. McFerron as an expert witness after determining that his proffered testimony was not admissible lay opinion.  As a sanction for failing to properly disclose him as an expert, the Court required that he testify live, and not by deposition as urged by Defendant.  As for Dr. Richman, Defendant attempted to submit an untimely supplemental report by attaching it to his final witness and exhibit list for trial.  This report contained estimates and extrapolations based on new data that was available to him in July 2017, yet Defendant failed to supplement at that time, and failed to disclose to Plaintiffs that Dr. Richman would be issuing a supplemental report when the parties informally exchanged their expert witness lists in January 2018 to determine whether to file pretrial *Daubert* motions.  As the Court explained in its previous Order, this last-minute attempt at supplementation with new data prevented Plaintiffs' rebuttal experts from evaluating the report and updating their own

---

[202]*Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

[203]*Paliwoda v. Showman*, No. 12-2740-KGS, 2014 WL 3925508, at *5 (D. Kan. Aug. 12, 2014).

[204]Doc. 490.

opinions.  It also prevented Plaintiffs from filing a *Daubert* motion by the deadline challenging the new figures.

At trial, Defendant again attempted to introduce updated extrapolations by Dr. Richman not included in his original or supplemental report.  For example, Defendant tried to introduce a new estimate by Dr. Richman of 3,813 noncitizen registrations in Kansas through a demonstrative exhibit.  Dr. Richman explained that this figure is derived from multiplying 3.3%—the percentage of noncitizens identified in the national 2008 CCES dataset with a voter match file and self-reported registration—by an updated adult noncitizen population estimate for the State of Kansas of 115,500, included in his supplemental report.  Dr. Richman had not previously, in his supplemental report or otherwise, opined that this represented an accurate estimate of noncitizen registration in Kansas.  Dr. Richman attempted to explain the omission from his previous reports by testifying that "this initial report came out just before the source I was getting that number [the noncitizen population in Kansas] from updated.  And so in the supplemental report, partly in response to the prompting of one of the experts for the plaintiffs, I updated the number to the more current census estimate of the number of adult non-citizens in the state of Kansas."[205]

Dr. Richman's explanation for his late-disclosed extrapolation was misleading and conflated Dr. Ansolabehere's criticisms of his national estimates with his Kansas estimates. They are both based on the CCES, but on different datasets.  Page 3 of Dr. Richman's original report, which he pointed the Court to during his testimony, recites the findings of his 2014 *Electoral Studies* article, that 3.3% of noncitizens nationally were registered to vote based on

---

[205] Doc. 511, Trial Tr. at 1455:8–19.

2008 CCES data.[206]  Dr. Richman did not extrapolate this 3.3% figure to Kansas by applying it to

the American Community Survey's estimate of the number of adult noncitizens in Kansas at the

time of his original report (114,000).  Instead, he presented a different extrapolation based on

self-reported noncitizens who resided in Kansas (14) from the 2006 through 2012 CCES.  That

extrapolation was 32,000 noncitizen registrations.

Dr. Ansolabehere's report extensively criticized Dr. Richman's *Electoral Studies* article

and its findings about the national rate of noncitizen registration, including that the CCES is not

representative of the noncitizen population, and that classification error "can completely account

for Dr. Richman's findings."[207]  Dr. Ansolabehere separately criticized Dr. Richman's estimate

that 32,000 noncitizens in Kansas (an estimate abandoned by Defendant during his opening

statement given the small sample size) was flawed, in part because it did not use the 2014 CCES,

which included only 4 respondents who stated they were noncitizens, none of whom had a

matching voter record.  This criticism targeted the CCES sample he used, not the number of

noncitizens in Kansas.

Therefore, it was disingenuous to suggest during his testimony that his new estimate of

3,183 noncitizen registrants in Kansas was merely an updated figure from his original report to

answer Dr. Ansolabehere's criticisms.[208]  Notwithstanding the fact that Dr. Richman had an

---

[206]Ex. 952 at 3.

[207]Ex. 102 ¶ 34.

[208]Defendant argued that the Court allowed this sort of supplementation with Plaintiffs' expert Dr.
McDonald in a demonstrative exhibit.  This is a false equivalency.  Plaintiffs' demonstrative exhibit, which included
a source citation to Dr. McDonald's report, contained the numerical equivalent of a percentage included in Dr.
McDonald's report.  His report stated that 22,814 out of 35,314 applicants who were suspended on September 24,
2016 remained suspended or were canceled on December 11, 2016.  The demonstrative stated "22,814 or 70.9% of
applicants who were suspended on Sep. 24, 2016 remained suspended or were canceled by Dec. 11, 2016." The
Court overruled Defendant's objection to the percentage reference.  Defendant, by contrast, attempts to introduce an
entirely new estimate of noncitizen registration, in addition to the many other estimates that Dr. Richman previously
asserted in his reports.  The Court drew the line at the many figures Dr. Richman already calculated, which

opportunity to answer such criticisms in his supplemental report, he never opined that the appropriate way to estimate noncitizen registration in Kansas would be to multiply 3.3% by the estimated number of adult noncitizens in Kansas. As the Court explained at trial, it is troubled by Dr. Richman's attempt to insert yet another noncitizen registration estimate into the record during the trial that had not been previously disclosed.[209] The Court is even more troubled by his misleading testimony upon closer inspection of the reports post trial.

Second, Defendant failed to disclose documents underlying the subsection (m) hearings that have taken place since the DPOC law was passed. Exhibit 150 was provided to Plaintiffs for the first time during the trial. These records include the RCD forms for 6 applicants, and the State Election Board orders and copies of supporting documentation for 5 registrants, including Ms. French. As the Court found on the record, this late-produced discovery violated Rule 26(a) because Plaintiffs had requested Defendant provide "correspondence between Defendant Kobach and any other person concerning the purpose or implementation of the DPOC. . . . This Request 1 is not intended to include uniform letters sent to individual registration applicants regarding their voter registration applications."[210] Had Defendant properly disclosed these documents to Plaintiffs, they would have been on notice of Ms. French, a witness Defendant convinced the Court to allow as a rebuttal witness mid-trial, despite his failure to disclose her as a witness before trial.[211] Plaintiffs would have also been aware of the identities of the other individuals

---

Plaintiffs' experts had a chance to consider. Defendant's proffered evidence was no mere update, or conversion of a numeral to a percentage; he compares apples to oranges.

[209]Ex. 511, Trial Tr. at 1460:15–1461–6.

[210]Doc. 510, Trial Tr. at 1225:13–22, 1234:7–24.

[211]Defendant disclosed his intention to call Ms. French at the end of the trial day on Friday, March 9. The Court initially granted the request, giving Plaintiffs the weekend to interview her and obtain the documents included in Exhibit 150. After defense counsel rescheduled a weekend interview for Plaintiffs of Ms. French, Plaintiffs spoke with her for the first time the following Monday morning before trial started, a few hours before her testimony. Although Plaintiffs ultimately decided her testimony was more helpful than hurtful and backed off their disclosure objection as to her testimony, Ms. French is another example of a witness that should have been disclosed under

who availed themselves of a subsection (m) hearing who could have potentially held

discoverable information or testified as witnesses at trial.

Third, Defendant attempted to elicit testimony from Mr. von Spakovsky about updated

information and opinions not included in his original report, which he completed in 2016 and

never supplemented.

Fourth, Defendant repeatedly attempted to introduce updated numbers of suspended and

canceled voter registration applicants based on reports that Mr. Caskey generated the weekend

before trial.  These figures had not been disclosed to Plaintiffs during discovery. Defendant first

attempted to introduce these figures during his opening statement in demonstrative exhibits.  The

Court excluded the demonstrative exhibits.  He then tried to elicit the information through Mr.

Caskey.  When that did not work, he asked for the Court to take judicial notice of these figures.

The Court excluded the evidence under Rule 37(c)(1) for failure to supplement discovery under

Rule 26(e), and because different numbers had been stipulated to in the Pretrial Order.  The

Court also found that they were not appropriate facts for judicial notice because they could not

"be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned."[212]  Defendant again attempts to introduce these numbers, despite their exclusion at

trial, into his proposed findings of fact and conclusions of law.[213]

In responding to Plaintiffs' disclosure objections, Defendant was incredulous that the

Court would not allow him to introduce into the record the most recent statistics on canceled and

---

Rule 26(a)(1)(A), because she would have likely had information that Defendant would use to support his defense in this case that the DPOC law, including the hearing procedure, is not burdensome.  Nonetheless, the Court allowed her to testify as a rebuttal witness because Ms. Ahrens had testified at length about the hearing procedure, and was not previously disclosed as a witness expected to testify in detail about that topic.

[212]*See* Fed. R. Evid. 201(b)(2).

[213]*See* Doc. 523 at 36 ¶ 76.

suspended applications.  But these numbers were provided to Plaintiffs for the first time a few days before trial in the form of a demonstrative exhibit.  In fact, Plaintiffs argued that Defendant had not disclosed any updated information about the suspense and cancellation lists after March 2016.  Because they were not previously provided, Plaintiffs had no way to verify their accuracy with the underlying ELVIS records.  And their experts were not provided an opportunity to supplement their opinions based on these new numbers.  Both Drs. McDonald and Hersh relied on the March 2016 records provided to them by Defendant to render their detailed analysis about the contents of the suspense and cancellation lists, and to perform certain list matching.  Had these lists been updated, Plaintiffs could have asked these experts to reevaluate their original reports and supplement them based on the new data.

Because the updated information was provided in a demonstrative exhibit, Defendant suggested that this Court's courtesy rule requiring disclosure of demonstrative exhibits 24 hours in advance of their use should excuse his failure to abide by Rule 26(e)'s duty to supplement discovery.  This argument was and is unavailing.  Because Defendant failed to provide updated figures about the number of DOV applicants suspended or canceled after March 2016, he may not ambush the Plaintiffs and this Court with updated information on the eve of, or during, trial.  This was a straightforward violation of Defendant's ongoing duty to supplement discovery disclosures under Rule 26(e), and under Rule 37(c)(1) this Court finds that the violation was not harmless or substantially justified.  The prejudice described above demonstrates the failure was not harmless.  And, given Mr. Caskey's testimony about the ease of running reports to capture this data, the failure to disclose was not substantially justified.  Indeed, Ms. Ahrens described the Kansas League's ability to purchase the suspense list several times after the DPOC law was passed, as recently as the summer of 2017.  Given this evidence, Defendant's failure to

supplement his March 2016 disclosure about the contents of the suspense and cancelation lists was not substantially justified.

The disclosure violations set forth above document a pattern and practice by Defendant of flouting disclosure and discovery rules that are designed to prevent prejudice and surprise at trial. The Court ruled on each disclosure issue as it arose, but given the repeated instances involved, and the fact that Defendant resisted the Court's rulings by continuing to try to introduce such evidence after exclusion, the Court finds that further sanctions are appropriate under Rule 37(c)(1), which permits, in addition to exclusion of the evidence, "other appropriate sanctions." It is not clear to the Court whether Defendant repeatedly failed to meet his disclosure obligations intentionally or due to his unfamiliarity with the federal rules. Therefore, the Court finds that an additional sanction is appropriate in the form of Continuing Legal Education. Defendant chose to represent his own office in this matter, and as such, had a duty to familiarize himself with the governing rules of procedure, and to ensure as the lead attorney on this case that his discovery obligations were satisfied despite his many duties as a busy public servant. The Court therefore imposes a CLE requirement of 6 hours for the 2018-2019 reporting year **in addition to** any other CLE education required by his law license. These 6 additional hours must pertain to federal or Kansas civil rules of procedure or evidence. Defendant shall file a certification with this Court before the end of the reporting period on June 30, 2019, certifying that this CLE requirement has been met.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Exclude the Testimony and Report of Dr. Steven Camarota (Doc. 429) is **granted in part and denied in part**, and Plaintiffs' Motion to Exclude Patrick McFerron (Doc. 460, Bednasek Doc. 183) is **granted**.

**IT IS FURTHER ORDERED** that in Case No. 16-2105, the Court finds in favor of Plaintiffs Donna Bucci, Charles Stricker, III, Thomas Boynton, and Douglas Hutchinson on their remaining claim under § 5 of the NVRA.  Plaintiff Steven Wayne Fish's remaining claim is dismissed as moot.

**IT IS FURTHER ORDERED** that in Case No. 15-9300, the Court finds in favor of Plaintiff Parker Bednasek on his remaining claim under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** Plaintiffs' requests for declaratory and injunctive relief are granted as set forth in this Order.  **Defendant shall strictly comply** with the directives in this Order meant to enforce the Court's permanent injunction of the DPOC law and K.A.R. § 7-23-15.

**IT IS FURTHER ORDERED** that Defendant shall attend 6 hours **in addition to** any other CLE education required by his law license for the 2018-2019 reporting year.  The additional CLE must pertain to federal or Kansas civil rules of procedure or evidence.  Defendant shall file a certification with this Court before the end of the reporting period on June 30, 2019, certifying that this CLE requirement has been met.  This sanction is imposed under Fed. R. Civ. P. 37(c)(1) for the disclosure violations identified in this Order under Rule 26(a) and (e).

**IT IS SO ORDERED.**

Dated: June 18, 2018

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al.,

                         Plaintiffs,

v.

KRIS KOBACH, KANSAS SECRETARY
OF STATE,

                         Defendant,

CIVIL ACTION

No. 16-2105-JAR

---

## JUDGMENT

This action came before the Court.  The issues have been considered and decisions have been rendered.

The Court has ordered that pursuant to the Memorandum and Order filed and entered on August 29, 2016 (Doc. 211), Defendant Nick Jordan is dismissed; pursuant to the Memorandum and Order filed and entered on May 4, 2017 (Doc. 334), summary judgment is granted in favor of Defendant Kris Kobach on Plaintiffs' 42 U.S.C. § 1983 right to travel claim; pursuant to the Memorandum and Order filed and entered on January 3, 2018 (Doc. 421), summary judgment is granted in favor of Defendant Kris Kobach on Counts 4 and 6.

Pursuant to the Court's Findings of Fact and Conclusions of Law, filed and entered on June 18, 2018, the remaining claim asserted by Plaintiff Steven Wayne Fish is dismissed as moot. Judgment is entered in favor of the remaining Plaintiffs on Count 1.

**IT IS SO ORDERED**.

Dated:  June 18, 2018

s/ Bonnie Wiest

By Deputy Clerk
TIMOTHY M. O'BRIEN
Clerk of the District Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **STEVEN WAYNE FISH, et al.,** | ) | |
| | ) | |
| *Plaintiffs*, | ) | **Case No. 16-2105-JAR-JPO** |
| | ) | |
| v. | ) | |
| | ) | |
| **KRIS KOBACH**, in his official capacity | ) | |
| as Secretary of State for the State | ) | |
| of Kansas. | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| **PARKER BEDNASEK, et al.,** | ) | |
| | ) | |
| *Plaintiffs*, | ) | **Case No. 15-9300-JAR-JPO** |
| | ) | |
| v. | ) | |
| | ) | |
| **KRIS KOBACH**, in his official capacity | ) | |
| as Secretary of State for the State | ) | |
| of Kansas. | ) | |
| | ) | |
| *Defendant.* | ) | |

## <u>NOTICE OF APPEAL</u>

The Office of Attorney General Derek Schmidt, on behalf of Defendant Kris Kobach, in his official capacity as Secretary of State for the State of Kansas, gives notice that it appeals to the United States Court of Appeals for the Tenth Circuit from the District Court's June 18, 2018 Findings of Fact and Conclusions of Law, *see* Case No. 16-2105, ECF Nos. 542 and 543; *and* Case No. 15-9300, ECF Nos. 219 and 220. This appeal concerns the District Court's conclusion that K.S.A. 25-2309(l) and

related regulations contravene federal law and the United States Constitution. *See* Fed. R. App. P. 3(c)(1)(B).

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ Toby Crouse

Derek Schmidt, #17781
  *Attorney General*
Jeffrey A. Chanay, #12056
  *Chief Deputy Attorney General*
Toby Crouse, #20030
  *Solicitor General*
Dwight R. Carswell, #25111
  *Assistant Solicitor General*
Bryan C. Clark, #24717
  *Assistant Solicitor General*

Memorial Building, 2nd Floor
120 SW 10th Ave.
Topeka, KS 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email: jeff.chanay@ag.ks.gov
Email: toby.crouse@ag.ks.gov
Email: dwight.carswell@ag.ks.gov
Email: bryan.clark@ag.ks.gov

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

    I hereby certify that on this July 2, 2018, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Toby Crouse*
ATTORNEY FOR DEFENDANT
