IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, ET AL.,

    Plaintiffs,

    v.

KRIS KOBACH, KANSAS SECRETARY OF STATE,

    Defendant.

Case No. 16-2105-JAR

## MEMORANDUM AND ORDER

On April 18, 2018, this Court issued a Memorandum and Order ("April Order"), granting Plaintiffs' Motion to Enforce Court Orders and for Order to Show Cause Why Defendant Kobach Should Not be Held in Contempt.[1]  The Court assessed Defendant Secretary of State Kris Kobach sanctions in the amount of the reasonable attorneys' fees incurred by Plaintiffs' counsel on the following: drafting their November and December 2017 letters to Defendant that attempted to informally resolve the contempt issues ultimately presented to the Court, participating in a meet-and-confer session in December 2017, drafting their contempt motion and reply in early 2018, and participating in the show cause hearing on March 20, 2018.  Plaintiffs also properly seek the fees they incurred drafting the fee application and reply.  Before the Court is Plaintiffs' Application for Attorneys' Fees and Litigation Expenses in Connection with their Motion for Contempt (Doc. 529).  The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court awards Plaintiffs $26,214.79 in reasonable attorneys' fees and expenses as a sanction for the contempt found by the Court in its April Order.

---

[1]Doc. 520.

## I.     Background

The Court's April Order found Defendant in contempt of the Court's May 17, 2016 preliminary injunction order in two ways. First, Defendant failed to ensure local election authorities sent certificates of registration, otherwise known as registration postcards, to individuals who registered to vote when applying for a Kansas driver's license or using the Federal Form, regardless of whether such registrants submitted documentary proof of citizenship ("DPOC"). Second, until recently, the publicly available County Election Manual continued to advise county election officials that individuals who apply to register to vote through the Kansas Department of Motor Vehicles ("DOV") or using the Federal Form must submit DPOC. The April Order documented the efforts Plaintiffs took to notify Defendant of these violations and resolve them informally.

Up until the show cause hearing on the contempt motion on March 20, 2018, defense counsel insisted that Defendant was not required to send certificates of registration to registrants covered by the Court's preliminary injunction order, and that it need not correct the County Election Manual until a more "permanent" change in the law occurred. Yet, at the contempt hearing, Defendant changed course and (1) claimed he had personally directed his staff to ensure that postcards be sent; (2) claimed that Mr. Bryan Caskey, Director of Elections, had in fact directed the counties to send standard registration postcards, but that the directive was inadvertently superseded by his later instruction about the Court-approved special notices; and (3) promised to immediately send the standard postcards. Also, at the hearing Defendant advised that the County Election Manual had been taken offline, and that he had provided compliant oral and written instructions to the counties that supplemented the manual.

2

As for sanctions, the Court found that there was no need for coercive sanctions because Defendant was now engaged in the process of ensuring that all registrants covered by the preliminary injunction receive registration postcards, and because the County Election Manual is no longer available online, and was updated by Mr. Caskey's subsequent emails and phone calls. However, the Court did impose compensatory sanctions to make Plaintiffs whole for their losses sustained during the lengthy period before Defendant acknowledged the need for compliance and purged the contempt. The Court found that Plaintiffs' actual loss during the almost-five months before Defendant changed his position can be measured by assessing Defendant the reasonable attorneys' fees incurred by Plaintiffs pursuing Defendant's compliance and moving for contempt. The Court directed Plaintiffs to submit an application for attorneys' fees, in compliance with D. Kan. Rule 54.2.

Under District of Kansas Local Rule 54.2(a), a party who moves for attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2) must initiate consultation with the other party. Where the parties cannot come to agreement, the moving party must file a statement of consultation, which includes the date of consultation, the names of those who participated, and the results achieved.[2] Plaintiffs complied with the consultation requirement as evidenced by their Statement of Compliance, filed in conjunction with the fee application.[3] Plaintiffs seek attorneys' fees for nine timekeepers: attorneys and paralegals with both the American Civil Liberties Union ("ACLU") and Dechert, LLP. They attached detailed affidavits and time records in support of their total fee request of $51,646.15.

---

[2] D. Kan. Rule 54.2(d).
[3] Doc. 530.

## II. Discussion

### A. Actual Loss

As an initial matter, the Court must address Defendant's argument that attorneys' fees are not an appropriate sanction in this case because there are no "actual losses sustained as a result of [his] contumacy,"[4] given that Plaintiffs' counsel represents Plaintiffs *pro bono*. To be sure, "a direct causal relationship must exist between the amount of damages and the violation of an injunction."[5] The causal connection required is a but-for test: "The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct."[6] The Supreme Court has explained that this

> standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment. The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued.[7]

Defendant interprets this but-for test literally to mean that the complaining party must be liable for the fees incurred due to the misconduct. But that position is contrary to Supreme Court and Tenth Circuit precedent. For example, in *Blum v. Stenson* the Supreme Court considered whether fee awards under 42 U.S.C. § 1988 should vary depending on whether the plaintiff is

---

[4]*O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 810 (2d Cir. 1981)).

[5]*Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1240 (10th Cir. 2018).

[6]*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017).

[7]*Id.*

4

represented by private counsel or a nonprofit legal services organization.[8]  The Court rejected such an approach, finding that Congress intended fee rates to be calculated "according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."[9]  Likewise, in the context of Fed. R. Civ. P. 37 sanctions, the Tenth Circuit held that an

> "attorney fee" arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services.  The payment arrangement for an attorney can vary widely—hourly rate, flat rate, salary, contingency fee, pro bono.  What the client pays or owes the attorney may not accurately reflect the reasonable value of the services.[10]

Under Rule 37, the purpose of "attorney-fee sanctions would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse, as when the fee arrangement is a contingency fee or, as here, a flat rate."[11]  In so holding, the court explained that when interpreting a fee shifting provision, "courts should look to their statutory purposes rather than focusing on the inclusion of a word (*incurred*) that, in ordinary usage, would be read into the statute in any event."[12]

As stated in the Court's April Order, the civil contempt sanction in this case is compensatory, just like the Rule 37 sanction considered by the Tenth Circuit in *Centennial Archaeology*.[13]  That case involved a fixed-fee arrangement in which no attorneys' fees were

---

[8]465 U.S. 886, 893 (1984).

[9]*Id.* at 895 (footnote omitted).

[10]*Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012).

[11]*Id.* at 680.

[12]*Id.* at 682.

[13]*See id.* at 680–82 (explaining that the Rule 37 attorney fee sanctions are designed to deter abuse in forcing a frivolous discovery dispute before the court).

5

technically incurred in the making of the discovery motion at issue, or caused by the failure of the opposing party's compliance with a discovery order.  Nonetheless, the court explained, "we refuse to assume that Centennial believed that extra efforts by its attorney caused by AECOM's violations of rules and orders were worthless. . . .  The fixed fee is irrelevant to the value of the services performed because of AECOM's misconduct."[14]

Under this line of authority, the Court finds that Plaintiffs' counsel's *pro bono* fee arrangement in this case does not reflect the value of the services provided by these attorneys to Plaintiffs in seeking to enforce the Court's preliminary injunction order.  As documented in the Court's April Order, the services provided by Plaintiffs' attorneys were undoubtedly multiplied by Defendant's conduct giving rise to the contempt finding.  Rather than respond to Plaintiffs' initial efforts to informally resolve the compliance issues raised in the motion, defense counsel insisted for months that he need not comply at all.  Almost five months later, Defendant took the position that it had taken the very compliance measures it disclaimed in those letters.  This needless gamesmanship led to another round of letters, a meet-and-confer session, briefing on the motion to compel, and ultimately a three-hour hearing on March 20, 2018.  The Court will award the reasonable value of counsel's services directly caused by Defendant's contemptuous behavior.  Such an award is in keeping with Supreme Court and Tenth Circuit precedent.

### B. Lodestar Calculation

The parties agree that in determining reasonable attorneys' fees, the starting point is the "lodestar" figure—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[15]  If a party seeks compensation for services of a non-lawyer, such as a

---

[14]*Id.* at 680–81.

[15]*Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

legal assistant, the court must scrutinize the reported hours and suggested rates in the same manner.[16] The party seeking an award of fees has the burden of proving both the number of hours spent and reasonableness of the hourly rates.[17] Once this burden is met, a claimant is entitled to a strong presumption that this lodestar amount reflects a "reasonable" fee.[18]

**1. Reasonable Hours**

Plaintiffs submit declarations from Dale Ho of the ACLU and Neil Steiner of Dechert, LLP, in support of the time spent litigating the contempt motion. Plaintiffs seek fees for the work of nine timekeepers as follows: [19]

| Timekeeper | Hours |
|---|---|
| Neil Steiner | 8.40 |
| Dale Ho | 38.60 |
| Doug Bonney | 8.50 |
| Angela Liu | 5.10 |
| R. Orion Danjuma | 8.90 |
| Sophia Lin Lakin | 14.00 |
| Tharuni Jayaraman | 55.80 |
| Lila Carpenter | 11.30 |
| Dalaney Berman | 8.10 |

---

[16]*Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998).

[17]*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000).

[18]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

[19]The ACLU's time records include specific increments of time rounded to the thousandth decimal. The Court urges the ACLU in the future to submit records rounded to the nearest tenth of an hour. In the Court's experience, this is the standard format used by most billing software, and it allows for a much easier calculation when presented to the Court for reimbursement. It is also the format used by Dechert. The Court will round each of the ACLU timekeepers' requested hours to the nearest tenth of an hour.

| Total | 152.90 |
|---|---|

In order for the applicant to satisfy its burden of proving the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks."[20]  A district court is justified in reducing the reasonable number of hours if the attorney's time records are "sloppy and imprecise" and fail to document adequately how he or she utilized large blocks of time.[21]

Once the court has adequate time records before it, it must determine whether counsel has exercised billing judgment with respect to the number of hours worked and billed.[22]  Billing judgment consists of winnowing hours actually expended down to hours reasonably expended.[23]  Hours that an attorney would not bill to his or her client cannot reasonably be billed to the adverse party.[24]

After examining the specific tasks and whether they are properly chargeable, the Court should look at the hours expended on each task.[25]  This determination requires the Court to consider such factors as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side, and potential duplication of

---

[20]*Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)).

[21]*Case v. Unified Sch. Dist. No. 233 Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)).

[22]*Id.* at 1250.

[23]*Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).

[24]*Case*, 157 F.3d at 1250.

[25]*Id.*

services.[26]  There is no requirement the court identify and justify each disallowed hour or announce what hours are permitted for each legal task.[27]  Rather, "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use."[28]

### a.     Descriptions of Time Expended

When examining the adequacy of an attorney's billing entries, the court is primarily concerned with evaluating the propriety of the fee request based on the specific billing entries.[29]  Defendant challenges Plaintiffs' time records as vague, arguing that several entries are worded too generally to document how they spent large blocks of time.  Without getting into whether the <u>amount</u> of time spent on each task is reasonable, the Court agrees that several timekeepers' descriptions are too vague to determine how the time was spent, particularly since the same descriptions were used for multiple timekeepers.  For example, "draft," "review," "revise," and "edit" are used throughout the records to describe the following timekeepers' work on the contempt briefing without further specific description: Ho, Danjuma, Lakin, Carpenter, Jayaraman, and Liu.  There are also several references to "correspondence," without further explanation.  The Court finds that a general reduction of 10% of the hours claimed by counsel other than Bonney should be imposed to account for the lack of detail in the records.

### b.     Billing Judgment

---

[26]*Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)).

[27]*Id.*

[28]*Id.* (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202–03 (10th Cir. 1986)).

[29]*See Crumpacker v. Kan. Dep't of Human Res.*, 474 F.3d 747, 757 (10th Cir. 2007) ("The law does not require the district court to reduce its fee award where it finds no difficulty in evaluating the propriety of an attorney's billing.").

Next, Defendant challenges whether Plaintiffs' counsel exercised billing judgment. As explained, exercising billing judgment requires counsel to winnow its hours from the amount actually expended to those reasonably expended. Ho and Steiner each attest to their use of billing judgment. Ho explains that the ACLU ensured that as much work as possible was performed by qualified attorneys with lower billing rates instead of partners, and by legal support staff and interns instead of attorneys. He further explains that he excluded hours spent by a legal fellow, a legal administrative assistant, and legal interns. He eliminated timekeepers who engaged in "entirely supportive or duplicative work."[30]

Mr. Steiner attests that he limited the Dechert reimbursement request to time spent by the "core team of Dechert attorneys," and does not request time for others who may have participated in tasks related to the contempt motion. And like the ACLU, he ensured that as much work as possible was performed by qualified attorneys with lower billing rates instead of partners. He also ensured that his firm did not bill for redundant or duplicative time.

Given this evidence, the Court finds that these attorneys exercised billing judgment in winnowing their requested hours. The issue of time spent on each task, will be addressed below.

    **c.**    **Hours Expended on Each Task**

    **i.**    **Scope of April Order**

As an initial matter, the Court's April Order provided the scope of attorneys' fees awarded as a sanction for Defendant's contempt: drafting their November and December 2017 letters to Defendant that attempted to informally resolve the contempt issues ultimately presented to the Court, participating in the meet-and-confer session in December 2017, drafting their contempt motion and reply in early 2018, and participating in the show cause hearing on March

---

[30]Doc. 529-1 ¶ 20.

20, 2018. But Plaintiffs' billing records appear to go beyond these items and include time spent investigating Defendant's compliance well before November 2017, and drafting correspondence beyond that awarded by the Court. The Court therefore deducts 10.2 hours from Jayaraman, .3 from Berman, and 1.8 hours from Liu spent on matters that preceded work on the November 2017 letter referenced by the Court in its April Order.

Defendant also challenges the scope of requested time on the basis that Plaintiffs addressed compliance issues in their November and December letters that were not ultimately included in their motion for contempt. The Court agrees. Ho's November 10, 2017 six-page letter to Defendant primarily addressed issues other than those for which Defendant was ultimately held in contempt. Indeed, the County Election Manual issue is addressed in a footnote of that letter.[31] The Court will not award fees for all of counsel's time spent preparing and revising this letter. Instead, the Court reduces the following timekeepers' requested hours spent preparing that letter as follows: 1.5 hours from Ho, 1.5 hour from Danjuma, and 1.4 hour from Lakin. Likewise, Plaintiffs' November 30, 2017 seven-page letter addressed issues beyond those for which the Court ordered compensatory fees. Fees were incurred for only two of the six issues addressed in that letter. The Court therefore reduces the following timekeepers' requested hours spent preparing that letter as follows: 1 hour by Ho, and 4.4 hours by Jayaraman. The Court considers all other time expended on these issues in November or earlier beyond the scope of its compensatory fee award.

### ii.  Duplication of services

Defendant generally challenges the hours sought by Plaintiffs on the basis that they duplicated work. The Tenth Circuit has cautioned that in determining the reasonableness of

---

[31]Doc. 424-7 at 4 n.5.

hours, it should look for the potential duplication of services.[32] "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for excess time."[33]

Defendant specifically contests tasks performed by both the ACLU and Dechert as unreasonable. Steiner and Ho each attest that they excluded time submitted by their organizations for any hours spent on entirely duplicative work. However, the vague descriptions on many of the billing entries makes it difficult to assess whether some of the timekeepers' work was duplicative.[34] For example, at least seven timekeepers reviewed and revised the brief in support of the motion to compel. All ACLU timekeepers and one Dechert timekeeper worked on the reply brief. Several attorneys appeared at the hearing, and several prepared the fee motion and reply. While the Court appreciates that most of the submitted hours were expended by attorneys with lower billing rates, the sheer number of attorneys working on these tasks is excessive. Given this finding, and the Court's careful review of the billing records, the Court imposes a reduction of 10% to the following timekeepers based on duplication of work: Ho, Jayaraman, and Berman.

### iii. Hours Spent Drafting Briefs

Defendant challenges the total time spent by Plaintiffs' counsel on drafting, editing, revising, and reviewing the brief in support of Plaintiffs' motion to compel.[35] The Court agrees

---

[32]*Case v. Unified Sch. Dist. No. 233 Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)).

[33]*Id.*

[34]*Compare* Doc. 529-4 at 15 ("edited motion for contempt" by Jayaraman on 1/5/18 and 1/7/18), *with* Doc. 529-1 at 20 ("Reviewed plaintiffs' motion to enforce court orders & for contempt hearing for substance, for, & general compliance with D. Kan. rules" by Bonney on 1/8/18).

[35]The Court assumes that references to "motion to compel" in the billing records refer to the Motion for Contempt ultimately filed on January 8, 2018. Docs. 423–24.

that the hours spent on these tasks was excessive. The original brief on the motion for contempt was 19 pages. Over half of the brief recited the procedural history and a recitation of the correspondence between the parties. The motion did not address a particularly complicated issue of law; it sought to enforce the Court's May 17, 2016 preliminary injunction order and discussed the need to address these issues before judgment is entered in the case. Notwithstanding the relatively straightforward nature of the relief sought, Plaintiffs ask the Court to reimburse them for approximately 65 hours spent drafting, updating, editing, proofreading, revising, and filing the motion and accompanying documents. The Court reduces the following timekeepers' hours to reflect a more reasonable amount of time spent on these tasks: Jayaraman by 20 hours; Berman by 3 hours; and Ho by 10 hours.

### iv. Hours Spent on Other Tasks

The Court has reviewed the billing records and finds that the remaining hours were reasonably expended except as to one task—the show cause hearing on March 20, 2018. Plaintiffs seek reimbursement for six timekeepers' work during the hearing, including two attorneys charging the highest billing rates on Plaintiffs' legal team. The Court declines to award fees for all of this time, particularly since only two attorneys actually participated in that hearing. The Court excludes the time for this hearing sought by Danjuma, Lakin, and Liu. Because Ho and Steiner participated in this hearing, they may each recover fees for the three hours spent at the hearing.[36] Bonney's time is reimbursable because he is local counsel and was thus required to be present.[37] The Court also finds that Carpenter's time should be reimbursed during the court hearing for the necessary legal support work performed during the hearing.

---

[36] The Court thus reduces Steiner's request for five hours spent during the hearing to three, in line with the other timekeepers' requests.

[37] D. Kan. R. 5.4.2(c)(3) (requiring "meaningful participation" by local counsel).

13

### 2. Reasonable Rates

In setting the hourly rate, "the court should establish, from the information provided to it and from its own analysis of the level of performance and skill of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits, calculated as of the time the court awards fees."[38] A reasonable hourly rate comports with rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[39] "Unless the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state lawyer possesses, 'the fee rates of the local area should be applied even when the lawyers seeking fees are from another area.'"[40]

The focus of the inquiry is on the rates of lawyers of comparable skill and experience.[41] A district court abuses its discretion when it ignores the parties' market evidence and sets an attorney hourly rate using the rate it consistently grants.[42] The district court may consider counsel's customary rate, but it is not conclusive evidence.[43] The district court may also consider the quality of representation.[44] If the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[45]

---

[38] *Sussman v. Patterson*, 108 F.3d 1206, 1211 (10th Cir. 1997) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)).

[39] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

[40] *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Ramos*, 713 F.2d at 555).

[41] *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998).

[42] *Id.* at 1203.

[43] *Id.*; *see also Case v. Unified Sch. Dist. No. 233 Johnson Cty., Kan.*, 157 F.3d 1243, 1255 (10th Cir. 1998); *Ramos*, 713 F.2d at 555.

[44] *See Case*, 157 F.3d at 1257; *Ramos*, 713 F.2d at 555.

[45] *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing *Case*, 157 F.3d at 1257).

Plaintiffs request the following hourly rates for the timekeepers involved with litigating the contempt motion: $450 for Steiner, Ho, and Bonney; $350 for Liu, Danjuma, and Lakin; $275 for Jayaraman; and $110 for paralegals Carpenter and Berman. They claim that these rates are in line with those of attorneys in the Kansas City area with similar skill and experience. They further argue that given their specialized skill in this area of the law, they are entitled to higher rates than those of Kansas attorneys. Defendant challenges the rates suggested by Plaintiffs, which are lower than the Dechert attorneys' customary rates.[46] He argues that these rates are not comparable to attorneys in Kansas with similar skill, experience, and reputation. Defendant offers a Kansas Bar Association ("K.B.A.") survey as evidence that the market rates for similarly skilled attorneys in Kansas City are lower than the requested amounts.[47]

Plaintiffs have submitted compelling evidence that voting rights litigation is highly specialized, and there are few if any attorneys in Kansas and Missouri who have previously litigated NVRA claims in federal court.[48] Given the complexity of such cases, and the risk associated with them, Kansas City area attorneys "are reluctant to accept civil rights and voting rights cases on a contingent-fee basis."[49] For these reasons, Plaintiffs relied on out-of-state counsel with substantial voting rights litigation experience. Specifically, they sought out attorneys with substantial experience litigating cases under the NVRA. Therefore, the Court finds that although this specialized knowledge does not justify awarding out of state rates, it does justify rates on the high end of the Kansas City market with respect to the partners litigating this matter.

---

[46]*See* Doc. 529-4 ¶ 18.

[47]Doc. 538-1.

[48]*See* Doc. 529-3 ¶ 3.

[49]Doc. 529-2 ¶ 6.

The Court has extensively reviewed the evidence submitted by Plaintiffs in support of their rates, and finds as follows.  A rate of $450 per hour is reasonable for Steiner, Ho, and Bonney, given their experience and skill working on complex voting rights litigation throughout the country. Steiner is a partner at Dechert law firm; Ho is the Director of the ACLU Voting Rights Project, a position akin to partner at a private law firm; and Bonney is the former Legal Director of the Kansas ACLU, also a position akin to a law firm partner.  Each of them has more than ten years' experience as an attorney.  Steiner and Ho have substantial experience litigating voting rights matters and cases under the NVRA in particular, and Bonney has substantial general civil rights experience.  Further, although at the uppermost end, these fees are within the KBA survey range of billing rates for general civil trial practice in Kansas, firms with more than 15 attorneys, and equity partners.[50]  The Court finds that a billing rate of $450 for these three attorneys is reasonable under the circumstances of this case given the evidence presented by both parties.

The Court finds that the hourly rate of $350 for Danjuma, Lakin, and Liu, and $275 for Jayaraman must be reduced to more closely reflect the hourly rates of attorneys in the Kansas City market with similar skill and experience.  Liu has approximately nine years' experience, Danjuma has approximately seven years' experience, and Lakin has approximately five years' experience, respectively, as attorneys.  While their credentials are all impressive, they do not have the same specialized experience as the previously-discussed attorneys to justify a rate that exceeds the high end for associates and attorneys with 6-9 years' experience in Kansas.[51]  Instead, the Court finds reasonable an hourly rate of $250 for Liu and Danjuma, and $240 for Lakin.  Jayaraman graduated from law school in 2016, and thus had been in practice a little over one year before working on the

---

[50]Doc. 538-1 at 18.

[51]*Id.* at 17.

motion for contempt, and related tasks.  The Court finds reasonable a rate of $195 given her experience and skill in the Kansas City market.[52]

Finally, Plaintiffs seek an hourly rate of $110 for paralegals Carpenter and Berman.  The Court has reviewed the affidavits submitted with the briefs and the KBA survey and finds this hourly rate to be reasonable.

### 3. Total Lodestar

Based on the findings set forth above, the Court calculates the lodestar as follows:

| Timekeeper | Reasonable Hours | Rate | Total |
|---|---|---|---|
| Neil Steiner | 5.8 | 450 | $2,610 |
| Dale Ho | 20.9 | 450 | $9,405 |
| Doug Bonney | 8.5 | 450 | $3,825 |
| Angela Liu | .3 | 250 | $75 |
| R. Orion Danjuma | 4.0 | 250 | $1,000 |
| Sophia Lin Lakin | 11.3 | 240 | $2,712 |
| Tharuni Jayaraman | 17 | 195 | $3,315 |
| Lila Carpenter | 11.3 | 110 | $1,243 |
| Dalaney Berman | 4.3 | 110 | $473 |
| **Total** | 83.4 | | **$24,658.00** |

---

[52]*Cf. Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1263–69 (D. Kan. 2017) (the undersigned finding rates of $350–400 reasonable for trial attorneys with fifteen and seventeen years of experience in employment case); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1280–81 (D. Kan. 2016) (Judge Lungstrum awarding $325 for lead counsel, $350 for a firm partner, $200 for an associate, and $125 for a paralegal in a disability discrimination case); *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015) (Judge Vratil finding hourly rates of $325 to $425 for experienced attorneys, $180 for attorneys with little to no experience, and $75 for paralegals reasonable in 2015 Kansas City FLSA case);  *Moore v. Amsted Rail Co.*, No. 14-2409, 2015 WL 866958, at *4 (D. Kan. Mar. 2, 2015) (Judge Melgren approving an hourly rate of $295 in a FMLA retaliation and interference case for a senior associate and partner in Kansas City).

### C. Adjustment to the Lodestar

Once the court determines the lodestar, it must then determine whether any upward or downward adjustments should be made to the lodestar "to account for the particularities of the suit and its outcome."[53] In assessing whether adjustments should be made, courts often consider the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney's; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases.[54]

Although these factors may be considered, the court does not need to consider "the factors [] subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[55] The lodestar calculation is meant to be the primary consideration when awarding fees rather than the *Johnson* factors.[56] The Court finds no adjustment to the lodestar is warranted because the factors are either subsumed by the lodestar calculation or neutral.

### D. Expenses

Plaintiffs seek expenses of $2,009.12 for travel and trial support services. For the same reasons described above, the Court finds reasonable the travel expenses associated with Steiner,

---

[53]*Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (citation omitted).

[54]488 F.2d 714, 717–19 (5th Cir. 1974).

[55]*Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("there are a few such circumstances but that these circumstances are indeed 'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been "adequate to attract competent counsel" (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

[56]*Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1103 (10th Cir. 2010) (citing *Perdue v. Kenny A ex rel. Winn,* 559 U.S. 542 (2010)).

Ho, Bonney, and Carpenter for the March 20, 2018 hearing. The travel expenses associated with other attorneys on the trial team are not reasonable. Defendant does not otherwise challenge the expenses in this matter, and the Court finds them to be reasonable. Therefore, the Court awards travel expenses in the amount of $436.79, and trial support services in the amount of $1,220, for a total award of $1,556.79 in expenses.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Application for Attorneys' Fees and Litigation Expenses in Connection with their Motion for Contempt (Doc. 529) is **granted in part and denied in part**.  Plaintiffs are awarded $24,658 in attorneys' fees and $1,556.79 in expenses as a sanction for the contempt found by the Court in its April 2018 Order.

**IT IS SO ORDERED.**

Dated: August 1, 2018

                                            S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            CHIEF UNITED STATES DISTRICT JUDGE