**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

STEVEN WAYNE FISH, *et al.*, on behalf )
of themselves and all others similarly )
situated, )
       )
      Plaintiffs, )
       )     Case No. 16-2105-JAR-JPO
v. )
       )
KRIS KOBACH, in his official capacity as )
Secretary of State for the State of Kansas, *et* )
*al.*, )
       )
      Defendants. )
       )

**PLAINTIFFS' RESPONSE TO MOTION TO ENFORCE PROTECTIVE ORDER**
**AND MEMORANDUM IN SUPPORT OF MOTION FOR CLARIFICATION,**
**OR IN THE ALTERNATIVE, MODIFICATION**

     Plaintiffs submit the following in response to Defendant's Motion to Enforce Protective

Order, ECF No. 560, and hereby move for clarification from the Court regarding the status of the

excerpts of the videotaped deposition of Secretary Kobach played at trial (the "Tape"). In

seeking to block Plaintiffs from providing the Tape in response to media requests, Defendant has

misconstrued the record and is wrong on the law. Plaintiffs respectfully request clarification

from the Court so that there is no confusion as to their legal obligations regarding Defendant's

assertions as to the Tape's confidentiality. Plaintiffs' understanding is that the Tape is not

shielded for multiple reasons.

     First, the Tape is not covered by the Protective Order, which does not apply to evidence

introduced at trial under the express terms of the agreement. The Tape was entered into the

record unsealed and played in open court in full view of the public. If Defendant at that time

sought to preserve the Tape's confidentiality, it was incumbent on him to seek to close the courtroom before the Tape was admitted.  He did not; and he therefore no longer has a protectable interest in confidentiality with respect to the Tape.

Second, although the Tape is not a public record on the Court's docket, and thus not retained by the Court, that fact does not prohibit Plaintiffs from disclosing it.  At Defendant's request, the Court confirmed at trial that the Tape would not be maintained as a record in the Court's possession; it would be returned to the parties at close of trial.  But that ruling simply means that *the Court* will not disseminate the Tape if a third-party intervenes to request it.  It does not render the Tape confidential, particularly given that it was played in open court directly thereafter.  Nor does it prejudice Plaintiffs' constitutionally protected right to provide the Tape to the media after it was admitted into evidence and played in public.  Defendant has not attempted to meet the very high standard for restraining disclosure of evidence admitted at a public trial.  His motion should therefore be denied.

## STATEMENT OF FACTS

1.      On March 29, 2016, Judge O'Hara entered a Protective Order intended to govern disclosure of confidential information during discovery in this lawsuit.  ECF No. 55 at 1.  The Protective Order provided that designated categories of information, should not be disclosed publicly but must be restricted to the Court, the parties, the parties' counsel, and their agents.  *Id.* at 3-6.  The Order further stated: "Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing."  *Id.* at 8.

2.      On April 17, 2017, Judge O'Hara granted a motion to compel production of documents responsive to Plaintiffs' discovery request seeking documents and communications related to potential amendments to the National Voter Registration Act.  ECF No. 320 at 1-2.

3.     On May 22, 2017, Plaintiffs filed a motion for sanctions seeking, *inter alia*, to take the deposition of Secretary Kobach regarding issues related to the previously withheld documents. ECF No. 343 at 1-3.  Plaintiffs agreed that the deposition could be subject to "an initial confidentiality designation."  ECF No. 354 at 22.

4.     On May 23, 2017, Judge O'Hara granted Plaintiffs' request to take Secretary Kobach's deposition.  ECF No. 355 at 23.  The Court noted that "[a]s agreed to by plaintiffs, all testimony at the deposition will be subject to the confidentiality provisions of the protective order" but cautioned that "this protection doesn't indicate that the testimony is likely to be sealed if any party later seeks to file it in support of a dispositive motion."  *Id.* at 23-24 & n.82.

5.     A videotape deposition of Secretary Kobach was ultimately taken on August 3, 2017. ECF No. 381.  On the day of the deposition, Defendant raised objections to the videotape format of the deposition.  Judge O'Hara heard argument from the parties and overruled Defendant's objections, permitting the deposition to be videotaped.  ECF No. 361.  Defendant has not filed timely objections to Judge O'Hara's order under Fed. R. Civ. P. 72.

6.     In advance of trial, on January 30, 2018, Plaintiffs designated "portions of the videotaped deposition of Kris Kobach to be used at the trial" as part of their pretrial disclosures.  ECF No. 440.

7.     Defendant filed a motion in limine objecting to the introduction of the Tape on relevancy grounds.  ECF No. 463 at 1.  Defendant offered counter-designations to include in the testimony in case his relevancy objections were overruled.  ECF No. 464.  Defendant did not raise any concerns regarding confidentiality.

8.     At trial, the Court overruled Defendant's motion in limine, concluding that Defendant's deposition testimony was relevant.  ECF No. 503 at 286:22-288:5.

9.      On the second day of trial, Defendant requested that the deposition be read by counsel instead of being played in court.  ECF No. 504 at 315:5-9.  The Court denied the request, ruling "it's a video deposition.  It's going to come in by video."  ECF No. 504 at 319:12-13.

10.     On the fourth day of the trial, Defendant argued that the Tape itself "is not an exhibit, therefore it is not a judicial record that can be publicly available after the trial."  ECF No. 509 at 1193:9-11.  After a colloquy with Defendant, the Court stated that the Tape would be admitted as an exhibit but agreed that it would not be maintained as a judicial record: "the question here now is, does [the Tape] become-- unlike any other exhibit, does it become part of the public docket?  It does not."  ECF No. 509 at 1195:8-10.  Defendant noted that certain portions of the testimony to be played in court still remained under seal on the court docket in connection with the parties' previously filed summary judgment motions.  The Court responded: "But they're no longer under seal. . . . my order *in limine* resolved that.  They're no longer under seal . . . with respect to those portions that plaintiff has designated and you have counter-designated.  I understand you have a continuing objection.  You object to the video at all, but you also counter-designated.  So those portions which I think is what's going to be played are no longer under seal."  ECF No. 509 at 1196:1-11.

11.     The Tape was played in open court with members of the public and the media in attendance.  ECF No. 509 at 1200:24-25; KCUR Letter, attached to Danjuma Decl. as Ex. A; Pro Publica Letter, attached to Danjuma Decl. as Ex. B.

12.     The Tape was then publicly admitted into evidence.  The Court noted, "Exhibit 148, the video deposition is admitted, but it can be-- it will be withdrawn at the close of the trial.  And for purposes of the record, the written transcript of this will be part . . . of the trial transcript but not the actual tape itself."  ECF No. 509 at 1202:4-10.

13.     Since the close of trial, Plaintiffs' counsel have received multiple requests from journalists and media entities for copies of the Tape.  Danjuma Decl.; Ex. A, KCUR Letter; Ex. B, Pro Publica Letter; Smith Decl. attached to Danjuma Decl. as Ex. C.  Some members of the media could not attend trial at the evening time when the Tape was played, Danjuma Decl. ¶ 3, while other viewed testimony and state that there is a strong public interest in publishing and reporting on the video testimony as opposed to the transcript of the proceedings.  Ex. A, KCUR Letter; Ex. B, Pro Publica Letter.

14.     On September 10, 2018, Plaintiffs sent a letter to Defendant stating their position that they had a legally protected right to distribute the Tape in response to media requests and requesting that Defendant respond with any objections.  Sept. 10 Letter to Def., attached to Danjuma Decl. as Ex. D.

15.     The parties met and conferred on September 14 and could not reach agreement about the legal status of the Tape.  Plaintiffs advised Defendant that they would likely file a motion to clarify with the Court.  Defendant's Motion to Enforce Protective Order followed later that evening.  ECF No. 560.

16.     Neither Plaintiffs nor Plaintiffs' counsel have distributed or disclosed the Tape, with the exceptions of submitting it to the Court, and playing it during the trial in this case.

## ARGUMENT

### I.     Defendant's Motion to Enforce the Protective Order Should Be Denied Because Plaintiffs Have Not Disclosed the Tape Outside of the Trial.

As explained below, Defendant is incorrect as to whether Plaintiffs may disclose the Tape, which was filed as an exhibit, played in open court, is not under seal, and is not subject to a protective order.  But as a threshold matter, Defendant's motion should be denied because neither Plaintiffs nor their counsel have disclosed the Tape.  Defendant is not entitled to enforce

the Protective Order, because, even assuming *arguendo* that he were correct about the confidential status of the Tape—and, as explained, *infra*, he is not—it is not the case that that Plaintiffs have "ignored . . . the Protective Order in this case" or have "shown blatant disregard for this Court's rulings" regarding the Tape.  ECF No. 561 at 1.

To the contrary, Plaintiffs notified Defendant in advance to determine his position on the Tape's disclosure, and, once Defendant indicated that he objects, stated their intention to seek clarification from the Court as to the Tape's status.  There is no basis for any argument that the Protective Order has been violated.

## II.     Plaintiffs Have a First Amendment Right to Disclose Evidence Admitted at a Public Trial.

Defendant's motion squarely implicates the First Amendment.  "[P]arties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order."  *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984).  The Supreme Court has held that "[i]t is, of course, clear that information obtained through civil discovery . . . would rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984)

As Defendant notes, courts can issue protective orders that restrict parties' dissemination of discovery materials without infringing First Amendment rights.  ECF No. 561 at 4.  But that is if the protective order is limited to *restrictions on pretrial discovery*—not to materials admitted into evidence at trial.  As the Court held in *Seattle Times,* when "a protective order is entered on a showing of good cause as required by Rule 26(c) [and] *is limited to the context of pretrial civil discovery*, . . . it does not offend the First Amendment."  467 U.S. at 37 (emphasis added).  The Court observed that "pretrial depositions and interrogatories . . . were not open to the public at

common law" and "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 33. "Therefore," the Court concluded, "restraints placed on *discovered, but not yet admitted*, information are not a restriction on a traditionally public source of information" and "an order prohibiting dissemination of discovered information *before trial* is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Id.* (emphases added).

The Tape's status is now far beyond "the context of pretrial civil discovery." *Id.* at 37. The Tape was deemed relevant and admissible, ECF No. 503 at 286:22–288:5, admitted into evidence, ECF No. 509 at 1202:4-10, and played publicly in open court during trial, *id.* at 1200:24-25. Trial proceedings are the paradigmatic "traditionally public source of information," *Seattle Times*, 467 U.S. at 33, and the playing of the Tape was, in fact, public. It was not admitted under seal or otherwise shielded from public viewing at trial. Defendant cites various district court decisions where protective orders were entered over a party's objections. ECF No. 561 at 4-6. But these opinions are inapposite because they were all issued in the context of *pretrial discovery*.

*Poliquin v. Garden Way, Inc.*, 989 F.2d 527 (1st Cir. 1993) provides an instructive case on point. In *Poliquin*, the plaintiffs sought to distribute to third-party plaintiffs a videotape deposition which was admitted and played at trial even though it contained information the defendant asserted was "highly confidential and proprietary[.]" *Id.* at 530, 534 (internal quotation marks and citation omitted). *Poliquin* approved the plaintiffs' right to distribute the videotape and held that the applicable standard was "that only the most compelling showing can justify *post-trial restriction on disclosure* of testimony or documents actually introduced at trial."

*Id*. at 533 (emphasis added); *see also id*. (rejecting "good cause" standard for restricting disclosure of discovery material "after it has been introduced at trial").

The same standard applies here. Because Defendant's post-adjudication motion seeks to "prohibit[ Plaintiffs'] dissemination of discovered information" that was admitted and made public at trial, it is precisely "the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Seattle Times*, 467 U.S. at 33.

### III.   The Tape Is No Longer Confidential Nor Subject to the Protective Order.

In contending that the Tape "remains <u>both sealed and confidential</u> under the March 29, 2016 protective order," ECF No. 561 at 3, Defendant has misinterpreted the Order and the record in this case.

<u>*First*</u>, the Tape is no longer governed by the Protective Order because it was introduced at trial. By its express terms, the Protective Order does not cover trial evidence. Subheading 9 provides that, "[n]othing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing." ECF No. 55 at 8. As discussed above, protective orders must be "limited to the context of pretrial civil discovery" to avoid implicating the First Amendment. *Seattle Times*, 467 U.S. at 37.[1] The Protective Order therefore leaves it to the parties to advise the court if they "intend[] to present . . . [or] anticipat[e] that another party may present Confidential Information" and then defers to the Court to "make such orders as are necessary to govern the use of such documents or information at the hearing or trial." ECF No. 55 at 8.

---

[1] To be clear, a protective order may remain in effect post-adjudication in order to restrict dissemination of confidential discovery materials that were never actually admitted at trial. *See* ECF No. 55 at 8 (Protective Order "will remain in effect and continue to be binding after conclusion of the litigation").

_Second_, Plaintiffs identified the Tape in advance of trial but Defendant never sought for it to be admitted under seal in a closed court session.  In January 2018, Plaintiffs designated "portions of the videotaped deposition of Kris Kobach to be used at the trial" as part of their pretrial disclosures.  ECF No. 440.  Defendant subsequently raised a series of objections, beginning with a motion in limine opposing admission of the Tape on the basis of relevance and offered counter-designations in case his relevance objections were overruled.  ECF Nos. 463, 464.  After the Court rejected his motion in limine, Defendant next sought for the transcript to be read by counsel in court rather than played in its original format.  ECF No. 504 at 315:5-9.  The Court denied that request, ruling "it's a video deposition. It's going to come in by video."  _Id._ at 319:12-13.  When the Tape was later played, Defendant argued that the Tape itself "is not an exhibit, therefore it is not a judicial record that can be publicly available after the trial."  ECF No. 509 at 1193:9-11.  Throughout these objections, Defendant never raised the issue of the Tape's confidentiality, asked for it to be admitted under seal, or to close the courtroom to the public.[2]

_Third_, the Tape was admitted publicly and played in open court, which extinguishes Defendant's claim of confidentiality.  ECF No. 509 at 1200:24-25, 1202:4-10.  Federal courts

---

[2] If he had done so, Plaintiffs certainly would have objected as the standard is very high and there is no indication Defendant could have met it.  _See Mike v Dymon, Inc._, No. CIV.A. 95-2405-EEO, 1997 WL 38111, at *1 (D. Kan. Jan. 23, 1997) ("Requests to exclude the public from trial of a case or parts thereof are granted only in extraordinary circumstances."); _see also Holland v. GMAC Mortg. Corp._, No. 03-2666-CM, 2004 WL 1534179, at *2 (D. Kan. June 30, 2004) (rejecting protective order that would have excluded individuals not authorized to view confidential discovery materials from trial or hearing where such materials would be presented); _Publicker Indus., Inc. v. Cohen_, 733 F.2d 1059, 1070 (3d Cir. 1984) ("[T]o limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest."); _Adams v. City of New York_, 993 F. Supp. 2d 306, 314 (E.D.N.Y. 2014) (outlining stringent "four-factor test" in order "to close a courtroom").  The Court never made any findings that Defendant had satisfied these stringent requirements because Defendant never sought a closed court session.

have repeatedly found that the public introduction of evidence at trial removes a party's interest in confidentiality.  "It is well established that the release of information in open court is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 680 (3d Cir. 1988) (internal quotation marks and citation omitted).[3]  In *Littlejohn*, the court held that because exhibits were admitted at trial "absent a seal," the defendant "could no longer have reasonably relied on the confidentiality accorded under the [Protective Order]."  851 F.2d at 681, n.17.

Similarly, in *Benedict v. Hankook Tire Co. Ltd*., the court held, "if no effort is made to prevent dissemination of confidential information at trial, the right to claim that trial materials containing that information should be sealed is waived . . . even if previous sealing or protective orders covered the materials or information at issue."  No. 3:17-CV-109, 2018 WL 3014797, at *11 (E.D. Va. June 15, 2018).  The *Benedict* court found that "[t]he waiver doctrine is clearly implicated" because the defendants "did not ask that the courtroom be closed" nor "that observers be ordered not to reveal what they heard[.]"  *Id*.; *see also id*. at *7 (collecting cases where party waived confidentiality via admission of evidence in open court).

Here, the Court admitted the Tape into the record unsealed.[4]  *See* ECF No. 509 at 1202:4–1.  Members of the public were present and viewed the Tape, including some members

---

[3] *See also Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (noting, in denying motion to seal, that "much of the information [proposed to be sealed] . . . appears to have been disclosed previously in the public probate court proceedings, further undermining [movant's] privacy concerns."); *Flohrs v. Eli Lilly & Co.*, No. 12-2439-SAC, 2013 WL 4773515, at *2 (D. Kan. Sept. 4, 2013) ("Matters already made public 'will not be sealed after the fact absent extraordinary circumstances.'" (citation omitted)).

[4] Even where parties are in full agreement, they cannot consent to the sealing of evidence; the Court must enter an order admitting materials under seal.  *See, e.g.*, ECF No. 60; D. Kan. Rule 5.4.6.  There was no order admitting the Tape under seal because Defendant never asked for one.

of the media who were able to attend trial that evening.  Ex. A, KCUR Letter; Ex. B, Pro Publica Letter.  By not moving to close the courtroom and failing to assert a confidentiality interest in advance, Defendant relinquished any such interest.  "Once [videotape] evidence has become known to the members of the public, including representatives of the press, through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction."  *Appl. of Nat'l Broad. Co.*, 635 F.2d 945, 952 (2d Cir. 1980); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("however confidential [the material] may have been beforehand, subsequent to publication it was confidential no longer. . . . We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again.").  Because the Protective Order expressly does not apply to trial evidence and because the Tape was entered into evidence and publicly played, Plaintiffs "have a constitutionally protected right to disseminate" it.  *Oklahoma Hosp.*, 748 F.2d at 1424.

## IV.   Plaintiffs Have an Independent Right to Distribute the Tape Whether Or Not It Is Retained on the Court's Public Docket.

Defendant's Motion is predicated on a misunderstanding of the scope of the public access cases he relies upon.  The public access cases Defendant cites do not prevent *a party from voluntarily circulating* materials in its possession that were admitted in open court.

---

Indeed, the Court made clear that the Tape was *not* under seal: "THE COURT: *You object to the video at all*, but you also counter-designated.  So those portions which I think is *what's going to be played are no longer under seal*." ECF No. 509 at 1196:9-11 (emphasis added).  If, as Defendant believes, the Court had somehow sealed the Tape *sub silentio*, then the Court would have immediately violated its own (silent) sealing order by permitting the Tape to be played in open court.

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) and *United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996) concerned whether media interveners could *force a court* to produce tape recordings played at trial and retained in court custody.  In *Nixon*, media interveners asserted that the district court's failure to provide "immediate access" to the tapes violated the "guarantee of freedom of the press[.]"  435 U.S. at 595, 608.  The Supreme Court concluded that, under the circumstances, the right of public access did not mean that the media could *compel* a court to produce copies of the tapes.  *See id.* at 609 ("[T]he issue presented in this case is not whether the press must be permitted access to public information to which the public generally is guaranteed access, but whether these copies of the White House tapes—to which the public has never had *physical access*—must be made available for copying.").  *McDougal* similarly concluded that media interveners could not require a district court to release videotape testimony of President Clinton that was played, but not admitted, at trial.  103 F.3d at 657.

The parties' current conflict is not a dispute over public access in the vein of *Nixon* and *McDougal*.  Plaintiffs do not contend that the press have been denied access to the trial and do not seek to compel the Court to produce anything.  Unlike the media interveners in *Nixon*, Plaintiffs already have "physical access" to the Tape and are asserting "a constitutionally protected right to disseminate" it after it was admitted and played in open court.  *Nixon*, 435 U.S. at 609 (emphasis omitted); *Oklahoma Hosp.*, 748 F.2d at 1424.  Rather, Defendant is trying to *prohibit* Plaintiffs from distributing an unsealed trial exhibit already in their possession.  That is a very different proposition than the legal issue considered in *McDougal* or *Nixon*.  *See Nixon*, 435 U.S. at 609 (noting that "issue presented" was whether audiotapes "*must be made available for copying*" (emphasis added)).  What Defendant wants is a prior restraint.  *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976) ("[A] prior restraint on publication [is] one of the most

extraordinary remedies known to our jurisprudence.").  Defendant has done nothing to demonstrate that such an extraordinary remedy is justified.

Defendant's misunderstanding of *Nixon* and *McDougal* has caused him to misinterpret the Court's trial rulings about public access.  In support of his request that the Tape "not be made publicly available," counsel for Defendant quoted *McDougal* for the proposition that "the deposition videotape itself is not a judicial record to which the common-law right of public access attaches."  ECF No. 509 at 1193:6-7, 15-17.  The Court stated in response, "exhibits in general are returned to the parties at the close of the trial, so I don't know that it's an issue anyway.  But I agree with you, it shouldn't be a public record *for purposes of our docket*."  *Id*. at 1194:4-8 (emphasis added).[5]  Thus, if a third-party intervener seeks to compel the Court to produce the Tape as in *McDougal*, it will not be available to be disseminated—only the transcripts have been retained as part of the publicly available judicial record.  Likewise, the Tape itself is not publicly "available for examination in the office of the clerk" and it will not be publicly disseminated by "furnish[ing] copies" under D. Kan. Rule 79.1.

This does not mean that the Court entered a broad gag order barring disclosure of the Tape by the parties in perpetuity.  Whether materials are publicly available on a case docket is not equivalent to whether *a party* is precluded from disclosing it.[6]  *Nixon* and *McDougal*[7] ruled

---

[5] Defense counsel further asked, "so the videotape itself is not available to be publicly disseminated, whereas the trial transcript that may contain the testimony is the judicial record."  ECF No. 509 at 1194:15-18.  The Court responded, "That's correct" and summarized: "the question here now is, does [the Tape] become-- *unlike any other exhibit, does it become part of the public docket? It does not*."  *Id*. at 1194:19, 1195:8-10 (emphasis added).  Ultimately, when Plaintiffs moved for admission of the Tape into evidence, the Court stated, "Exhibit 148, the video deposition is admitted, but it . . . will be withdrawn at the close of the trial.  And for purposes of the record, the written transcript of this will be part . . . of the trial transcript but not the actual tape itself."  *Id*. at 1202:4-10.

[6] Plaintiffs may, for instance, distribute the demonstrative slides they used at trial regardless of whether those slides are "judicial records for purposes of" the public docket.

that the press was not entitled to *compel* a court to produce a videotape played at trial.  It does

not follow from these decisions that Defendant is entitled to compel Plaintiff *not to* exercise their

constitutional right to release a videotape admitted and played in open court.  *Oklahoma Hosp.*,

748 F.2d at 1424.

## V.    Defendant Cannot Even Satisfy the Good Cause Standard for a Pretrial Protective Order.

Defendant's Motion should be denied for the independent reason that he has never shown

good cause for a pretrial protective order in the first instance.  Defendant's videotape deposition

was not, of course, among the original categories of confidential information listed in the

---

[7] Defendant has repeatedly relied on *McDougal* in arguing that the Tape should not be deemed a judicial record.  Plaintiffs note that *McDougal*'s application within this Circuit is questionable. *Compare McDougal*, 103 F.3d at 657 ("[T]his court . . . specifically rejected the *strong* presumption standard adopted by some circuits . . . . [including] the Second, Third, Seventh, and District of Columbia Circuits . . . .") *with Mann*, 477 F.3d at 1149 (recognizing "strong presumption in favor of public access to judicial records" in Tenth Circuit).  Decisions within this Circuit and from other federal courts indicate that admitted exhibits are indeed judicial records.  *See United States v. McVeigh*, 918 F. Supp. 1452, 1462 (W.D. Okla. 1996) (noting that "exhibits received at hearings and trials . . . [were] included . . . within the general common law right to inspect and copy public records and documents in *Nixon*") (citing *Nixon*, 435 U.S. at 597-98) *aff'd U.S. v. McVeigh*, 119 F.3d 806, 813 (10th Cir. 1997) (approving district court's ruling that exhibits admitted at suppression hearing were judicial records).

In the specific context of whether a party could disclose videotape depositions under a protective order, a District of Colorado Court held that "[p]laintiff's counsel may, of course, use video depositions that are actually admitted into evidence at trial" in order to teach private seminars "because these portions will be part of the public record."  *Larson v. Am. Family Mut. Inc.*, No. 06-cv-01355-PSF-MEH, 2007 WL 622214, at *2 (D. Colo. Feb. 23, 2007); *see also United States v. Graham*, 257 F.3d 143, 152 n.5 (2d Cir. 2001) (videotapes played at bail hearing then returned to parties were judicial records because "it is common for the parties to retain custody of their own trial exhibits and . . . the tapes became public by virtue of having been played in open court."); *Littlejohn*, 851 F.2d at 681 (exhibits admitted into evidence did not "los[e] their status as judicial records when they were returned to their owner" because "[u]nder Rule 10 of the Federal Rules of Appellate Procedure . . . trial exhibits are a part of the record on appeal and items that were before the district court and then withdrawn by counsel are still considered to be a part of the record on appeal").  Since *McDougal* is already an outlier in tension with Tenth Circuit authority, Defendant should not be permitted to extend the case far beyond its actual holding as he attempts to do here.

Protective Order that Judge O'Hara entered "[f]or good cause shown under Fed. R. Civ.

P. 26(c)[.]"  ECF No. 55 at 2.  Rather, Plaintiffs consented to "an *initial* confidentiality

designation" in light of concerns Defendant had raised related to deposition logistics and

questions concerning attorney-client privilege.  ECF No. 354 at 22 (emphasis added).  None of

those concerns have materialized and Judge O'Hara himself cautioned that the confidentiality

designation was only provisional: "this protection doesn't indicate that the testimony is likely to

be sealed if any party later seeks to file it in support of a dispositive motion."  ECF No. 355 at

23-24 & n. 82.[8]  As explained *supra*, the Protective Order does not apply at all to trial evidence

under the express terms of the agreement.  But there is even less reason to prohibit disclosure of

the Tape because courts have rejected comparable protective orders even during a case's pretrial

discovery phase.

      In support of his Motion, Defendant has offered cases where protective orders were

entered restricting pretrial access to videotape depositions.  *See* ECF No. 561 at 5-6.  Beyond the

fact that each of these cases were in the pretrial discovery phase, the citations are further

inapposite because the protective orders were warranted because the parties sought to obtain

personal commercial profits by disclosing the tapes.[9]  In contrast to these cases, Plaintiffs are not

---

[8] From the earliest stages of the case, Judge O'Hara has cautioned the parties that material
designated confidential would be unlikely to remain so if deemed relevant.  At the hearing where
the parties initially discussed the Protective Order with the Court, Judge O'Hara stated: "I don't
want anybody on this call laboring under the misimpression that merely because a document has
been stamped as confidential . . . that that will likely entitle that document to be filed under seal
when it's used in a court proceeding. . . . our general operating premise is that anything that is
relevant to a filing with the court is open to the public." ECF No. 46; 3/23/16 Telephonic Status
Conf. Tr. at 90:25-91:12, excerpt attached to Danjuma Decl. as Ex. E.

[9] *See Am. Family Mut. Ins. v. Minor*, No.  06-cv-02288-LTB-MJW, 2007 WL 4365694, at *1 (D.
Colo. Dec. 10, 2007) (video depositions of "private citizens" were "published to the general
public in seminars and on television" for Defendant's "personal commercial gain"); *Drake v.
Benedek Broad. Corp.*, No. CIV.A. 99-2227GTV, 2000 WL 156825, at *1 (D. Kan. Feb. 9,
2000) (pro se plaintiff sought to use videotape deposition to make "documentary . . . advertised

attempting to sell the Tape or publish it for commercial gain.  Plaintiffs seek to provide it freely

in response to multiple requests made by members of the media who either could not attend the

playing of the Tape at trial or who have explained that the Tape would assist their reporting.

Danjuma Decl.  Each of the media representatives has asserted a strong public interest in

accessing and reporting on the Tape in light of Defendant's status as a government official and

public figure.  Ex. A, KCUR Letter; Ex. B, Pro Publica Letter; Ex. C, Smith Decl.

In addition, because Defendant is an elected official, this lawsuit has attracted

substantial—and entirely legitimate—public interest in the video testimony, further outweighing

any good cause for entry of a pretrial order.  Indeed, courts have distinguished the propriety of

protective orders in cases of private commercial gain versus cases involving public officials and

government affairs.  For example, in *Flaherty v. Seroussi*, a district court reviewing the

confidentiality of a mayor's videotape deposition evaluated the *Paisley Park* and *Drake* cases

cited by Defendant and concluded they were "readily distinguishable . . . since both dealt with

efforts to make commercial use of otherwise private deposition testimony."  209 F.R.D. 295, 299

(N.D.N.Y. 2001); *see also Paisley Park*, 54 F. Supp. 2d at 349 n.4 (protective orders in cases "in

which the government itself is a party" should be treated differently because they fall "out[side]

the category of purely private matters").  Because the case involved a public official and

government affairs, the court permitted disclosure of the videotape to the media even though the

"plaintiff's stated purpose in distributing [it was] to publicly embarrass Mayor Seroussi in the

---

for sale at the price of $199.99"); *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d
347, 348 (S.D.N.Y. 1999) (defendant seeking video deposition of recording artist had "created an
entire business based on exploiting [artist's] image and persona to their own economic benefit,"
raising concerns that purpose of videotape was "to generate notoriety for themselves and their
business ventures[.]")

eyes of his constituents." *Flaherty*, 2019 F.R.D. at 300.[10]  "[W]here issues of strong public interest favoring the free dissemination of discovery materials are at play, the normal practice of not according discovery materials the same degree of access as those filed in connection with trial gives way to a presumption of open inspection." *Id.* at 299; *see also Hawley v. Hall*, 131 F.R.D. 578, 585 (D. Nev. 1990) (rejecting sealing of depositions in civil rights case against city officials because "[t]he public interest in the conduct of public officials, elected and appointed, outweighs the minimal harms" caused by embarrassment or exposure to negative media attention).

Thus, even if this case were still in the pretrial phase—and it is far beyond that—Defendant would not satisfy the much more lenient "good cause" standard for entry of a protective order.  Defendant is an elected official.  His deposition includes sworn testimony regarding efforts he took to lobby to weaken federal voting rights law and push documentary proof of citizenship requirements with the President of the United States and other high officials. These are matters of clear public concern and members of the press have highlighted the continuing, strong public interest in the video testimony.  Ex. A, KCUR Letter; Ex. B, Pro Publica Letter; Ex. C, Smith Decl.

## CONCLUSION

For the reasons stated, the Court should deny Defendant's Motion.  There is no basis for enforcing the Protective Order or granting Defendant any relief.  Nonetheless, Plaintiffs submit that it would be in the best interests of all parties if the Court were to clarify its ruling as to the status of the Tape and whether Plaintiffs may produce it in response to media requests.

---

[10] The plaintiff's counsel had even stated to local media that he "relish[ed] the opportunity to question Mr. Seroussi about what happened here" and that he is "going to concentrate [his] efforts on knocking Mayor Seroussi's teeth down his throat."  *Flaherty*, 209 F.R.D. at 298 (internal quotation marks omitted).

Finally, if Plaintiffs have misinterpreted the Court's trial ruling as to the status of the Tape, Plaintiffs respectfully request that the Court consider altering its initial ruling in light of the arguments and authorities outlined in detail *supra*. "Once a court orders documents before it sealed, the court continues to have authority to enforce its order sealing those documents, as well as authority to loosen or eliminate any restrictions on the sealed documents." *United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013).

Dated September 28, 2018.

Respectfully submitted,

/s/ Lauren Bonds
LAUREN BONDS (#27807)
ACLU Foundation of Kansas
6701 W. 64th Street, Suite 210
Overland Park, Kansas 66202
(913) 490-4111
lbonds@aclukansas.org

/s/ R. Orion Danjuma
R. ORION DANJUMA*
DALE E. HO*
SOPHIA LIN LAKIN*
American Civil Liberties Union Foundation, Inc.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2693
odanjuma@aclu.org
dale.ho@aclu.org
slakin@aclu.org

NEIL A. STEINER*
REBECCA KAHAN WALDMAN*
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212) 698-3500
Fax: (212) 698-3599
neil.steiner@dechert.com
rebecca.waldman@dechert.com
*Attorneys for Plaintiffs*

ANGELA M. LIU*
Dechert LLP
35 West Wacker Drive
Suite 3400
Chicago, IL 60601-1608
Phone: (312) 646-5800
Fax: (312) 646-5858
angela.liu@dechert.com

*admitted *pro hac vice*

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on September 28, 2018, I electronically filed the foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Lauren Bonds
LAUREN BONDS (#27807)

*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEVEN WAYNE FISH, RALPH ORTIZ, DONNA BUCCI, CHARLES STRICKER, THOMAS J. BOYNTON, DOUGLAS HUTCHINSON, AND THE LEAGUE OF WOMEN VOTERS OF KANSAS on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | Case No. 2:16-cv-02105 |
| Plaintiffs, | ) ) | |
| v. | ) | |
| KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas; and NICK JORDAN, in his official capacity as Secretary of Revenue for the State of Kansas, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## DECLARATION OF ATTORNEY R. ORION DANJUMA IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE PROTECTIVE ORDER

I, R. Orion Danjuma, have personal knowledge of the matters stated in this Declaration and could and would competently testify to these facts.

1.       I am a staff attorney with the American Civil Liberties Union Foundation.  I have been admitted *pro hac vice* to the United States District Court for the District of Kansas and am counsel of record for Plaintiffs Steven Wayne Fish, Donna Bucci, Charles Stricker, Thomas J. Boynton, Douglas Hutchinson and the League of Women Voters of Kansas (collectively, "Plaintiffs").  I have personal knowledge of the subject matter in this Declaration and, if called upon, I would competently testify to the facts set forth below.  I submit this Declaration in

support of Plaintiffs' Motion for Clarification and Brief in Opposition to Defendant's Motion to Enforce Protective Order, filed concurrently herewith.

2.      Designated portions of the videotape deposition of Defendant Secretary Kris Kobach (the "Tape") were played at trial in the above captioned matter during the evening of Friday, March 9, 2018.

3.      Since the close of trial, Plaintiffs' counsel have received multiple requests from media organizations for copies of the Tape.  Some journalists sought a copy of the Tape because they could not attend trial at the evening period when it was played.  Other reporters viewed the Tape in open court and have requested copies in order to assist their reporting.

4.      Some of these media organizations have submitted declarations or sent letters to the Court attesting to the strong public interest in the Tape.

5.      Attached to this Declaration as Exhibit A, is a true and correct copy of a letter sent to the parties and to the Court on September 20, 2018 by Donna Vestal of KCUR/Kansas News Service affiliated with National Public Radio.

6.      Attached to this Declaration as Exhibit B, is a true and correct copy of a letter sent to the parties and to the Court on September 18, 2018 by Jeremy Kutner of Pro Publica, Inc.

7.      Attached to this Declaration as Exhibit C, is a true and correct copy of a declaration dated September 21, 2018 by Sherman Smith of the The Topeka Capital-Journal.

8.      Attached to this Declaration as Exhibit D, is a true and correct copy of Plaintiffs' September 10, 2018 letter to Defendant, indicating that Plaintiffs' counsel intended to produce the Tape in response to media requests and offering Defendant an opportunity to raise any objections.

9.     Attached to this Declaration as Exhibit E, is a true and correct copy of excerpts of the March 23, 2016 telephonic discovery and scheduling conference before Judge O'Hara.

10.     On September 14, 2018, counsel for the parties met and conferred regarding disclosure of the Tape.  The parties agreed that they would not be able to reach agreement regarding the status of the Tape's confidentiality.  Plaintiff's counsel indicated that they would likely file a motion with the Court in order to seek clarification on the Tape's status.  Later that evening Defendant filed a Motion to Enforce Protective Order.  Doc. 560.

11.     Neither Plaintiffs nor Plaintiffs' counsel have distributed or disclosed the Tape, with the exceptions of submitting it to the Court, and playing it during the trial in this case.

12.     To the extent required by Local Rule 37.2, Plaintiffs' counsel has "conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."


I declare under penalty of perjury that the foregoing statements, including all statements in this Declaration, are true and correct.


Executed this 28th day of September, 2018.


/s/ R. Orion Danjuma
R. ORION DANJUMA*
American Civil Liberties Union Foundation, Inc.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 284-7332
odanjuma@aclu.org

*admitted *pro hac vice*

*Attorney for Plaintiffs*

3

EXHIBIT A

Donna Vestal
KCUR/Kansas News Service
4825 Troost, Suite 202
Kansas City, Mo 64110
Sept. 20, 2018

Chief Judge Julie A. Robinson
United States District Court
500 State Avenue
Suite 511 Kansas City, KS 66101

REF: Video of the Fish v. Kobach deposition of Kansas Secretary of State Kris Kobach

Dear Chief Judge Robinson:

In July, while preparing a feature for National Public Radio, we requested from the ACLU a copy of the video of Secretary of State Kris Kobach's August 2017 deposition. The video we are referring to was shown in court during the Fish/Bednasek v. Kobach trial on March 9.

We did not receive it in time for our deadline, but we gave the ACLU a standing request for a copy of it, because our newsroom has a reporter working on a longer-form investigative piece related to Kobach, as well as multiple reporters covering the gubernatorial race.

The ACLU has informed us that it is seeking to fulfill our request. We are writing to explain that we did, in fact, ask for this video and continue to seek a copy. The video is of public interest because it sheds light on the gubernatorial candidate's national aspirations for his policies, as well as his statements under oath about those aspirations.

Although at least partial transcripts of the deposition have been made public, the vast majority of our audience receives our news in broadcast form, meaning we are particularly dependent on access to the video to effectively report on statements made during the deposition.

Sincerely,

Donna Vestal, director of content strategy, KCUR 89.3



Exhibit B



Jeremy Kutner
Deputy General Counsel
ProPublica
155 Avenue of the Americas, Fl. 13
New York, NY 10013
(917) 512-0218
jeremy.kutner@propublica.org

September 18, 2018

Hon. Julie A. Robinson
Chief Judge
United States District Court
District of Kansas
500 State Ave., Suite 511
Kansas City, KS 66101

  **Re:** *Fish v. Kobach*, **16-cv-2105-JAR-JPO**

Dear Judge Robinson:

  I represent Pro Publica, Inc. ("ProPublica"), a nonprofit and nonpartisan investigative news organization dedicated to producing journalism in the public interest.  I write for the sole purpose of noting for the Court the strong public interest in the disclosure of copies of certain portions of the videotaped deposition of defendant Kris Kobach in the above-referenced matter that is currently the subject of a motion before this Court.[1]

  As part of its mission, ProPublica regularly reports on important issues affecting the electoral process in general, and voter eligibility in particular.[2]  ProPublica and its reporter, Jessica Huseman,

---

[1] The undersigned notes that he is admitted to practice in the State of New York and before the United States District Courts for the Southern and Eastern Districts of New York, as well as the Second Circuit Court of Appeals, but is not admitted to practice in Kansas or the federal courts there. This letter is not intended as a motion or request for relief; it serves merely to inform the court of the public interest in disclosure.

[2] *See, e.g.* Jessica Huseman, "Election Commission Documents Cast Doubt on Trump's Claims of Voter Fraud," ProPublica (Aug. 3, 2018), *available at*: https://www.propublica.org/article/election-commission-documents-cast-doubt-on-trumps-claims-of-voter-fraud; Jessica Huseman, "How the Case for Voter Fraud Was Tested – and Utterly Failed," ProPublica (June 19, 2018), *available at*:

have written extensively about the above-referenced case in order to present details of urgent importance to the public.  Ms. Huseman has written numerous articles on the subject.

On September 14, 2018, Kobach filed a motion to enforce a protective order (Dkt. No. 560) to prevent any party from disseminating copies of certain portions of Kobach's deposition videotape. The relevant portions of Kobach's deposition were unsealed by court order and subsequently played in open court.  *See* Dkt. No. 560-1 at 5, lines 23-35.  It is unclear, however, whether the videotaped portions themselves are also unsealed.  Ms. Huseman attended the trial in this matter and viewed the tape portions at issue.

Public disclosure of the videotaped portions would directly serve the critical interest of allowing the public to fully understand the evidence before the Court at trial and the basis for this Court's rulings.  More generally, whether and how individuals may register to vote is of fundamental importance to American democracy.  The public, and the media, will benefit immensely with greater access to the full context of Kobach's testimony.  It is not clear how Kobach would suffer any prejudice from disclosure, especially considering the tapes have already been played in open court.

Thank you for your time and consideration.

Respectfully submitted,

Jeremy Kutner

CC:   Sue Becker, Kansas Secretary of State's Office
        Garrett Roe, Kansas Secretary of State's Office
        *Counsel for Defendant Kris Kobach*

        Dale E. Ho
        American Civil Liberties Union Foundation
        *Counsel for Fish Plaintiffs*

---

https://www.propublica.org/article/kris-kobach-voter-fraud-kansas-trial; Ally Levine and Blake Patterson, "How Voting Laws Have Changed Since 2016," ProPublica (June 25, 2018), *available at*: https://projects.propublica.org/graphics/voting-changes-2018.  ProPublica also coordinates a project called Electionland dedicated to coverage of voting issues.  *See* https://projects.propublica.org/graphics/electionland.

EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, RALPH ORTIZ,   )
DONNA BUCCI, CHARLES STRICKER,    )
THOMAS J. BOYNTON, DOUGLAS        )
HUTCHINSON, AND THE LEAGUE OF     )    Case No. 2:16-cv-02105
WOMEN VOTERS OF KANSAS on behalf of )
themselves and all others similarly situated, )
                                  )
    Plaintiffs,           )
                                  )
v.                                )
                                  )
KRIS KOBACH, in his official capacity as )
Secretary of State for the State of Kansas; and )
NICK JORDAN, in his official capacity as )
Secretary of Revenue for the State of Kansas, )
                                  )
    Defendants.           )
                                  )
                                  )
_____ )

### DECLARATION OF SHERMAN SMITH

1.    I, Sherman Smith, have personal knowledge of the matters stated in this Declaration and could and would competently testify to these facts.

2.    I am the managing editor and a state government reporter with The Topeka Capital-Journal.

3.    I attended the trial held in the Fish v. Kobach case between March 6th to March 20th, 2018.

4.    I have requested from Plaintiffs' counsel a copy of the videotape recording played at trial of Secretary Kris Kobach's deposition.

5.    I believe the recording is of public interest as it concerns legislation that affected voter registration drives and participation in elections; Mr. Kobach's interest in transforming

the National Voter Registration Act; and discussion with the president-elect regarding

a position within his administration. These issues have sparked intense public debate,

and Mr. Kobach is a candidate for governor. Voters should have all the information

available when they select a candidate, and the visual evidence of Mr. Kobach's

handling of questions provides depth that can't be realized by reading the transcript.

I declare under penalty of perjury that the foregoing statements, including all statements

in this Declaration, are true and correct.

Executed on September 21, 2018.

Sherman Smith

2

EXHIBIT D

September 10, 2018

**VIA E-MAIL**

Kris Kobach
Secretary of State of the State of Kansas
Memorial Hall, 1st Floor
120 SW 10th Avenue
Topeka, KS 6612-1594

Counsel,



**ACLU**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

National Office
125 Broad Street, 18th floor
New York NY 10004
(212) 549-2500
aclu.org

Plaintiffs in *Fish v. Kobach*, 16-2105-JAR-JPO (D. Kan.) have received requests from third parties, including members of the media, for copies of the video of the August 3, 2017 deposition of Defendant Kobach. We write to advise you that we intend to provide these third parties with copies of the designated portions of the deposition video (the "Tape") that were played at trial and unsealed by the Court on March 6, 2018, Doc 503 at 286:22–287:1; Doc. 509 at 1196:10–11.

Because the Tape was unsealed by the Court, Plaintiffs "have a constitutionally protected right to disseminate" it. *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984).

At trial, counsel for Defendant noted that the Tape itself is not a judicial record—that is, a document or file maintained in the Court's possession. *See* Doc. 509 at 1193:4–21. Plaintiffs do not dispute that characterization but note that whether the Tape is a "judicial record" has no bearing on *Plaintiffs'* right to disseminate unsealed discovery materials in their own possession. The Tape's status as a "judicial record" would only be relevant if a third party asked the *Court* rather than a party to produce the Tape.

The cases cited by Defendant during trial, *see* Doc. 509 at 1193:4–21, and in his Brief on Unsealing Limited Portions of Deposition, Doc. 413, are not to the contrary. In *United States v. McDougal*, 103 F.3d 651, 652 (8th Cir. 1996) and *Apple iPod iTunes Antitrust Litig.*, 75 F. Supp. 3d 1271, 1272 (N.D. Cal. 2014), the relevant court considered whether the material sought to be released was a "judicial record" because third party media companies sought to copy materials in the court's possession rather than seeking them from a party. Nothing in these cases prohibits disclosure of non-confidential or unsealed discovery materials *by a party*.

If you have questions, objections, or would like to discuss this matter further, please contact us by **Friday, September 14, 2018**.

Sincerely,
*Dale E. Ho*
Dale E. Ho, Counsel for *Fish* Plaintiffs

EXHIBIT E

```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF KANSAS
 2
     CODY KEENER, ET AL.,
 3
          Plaintiffs,
 4
       v.                              Docket No. 15-9300
 5
     KRIS W. KOBACH, ET AL.,
 6
          Defendants.
 7   _____    _____
     STEVEN W. FISH, ET AL.,
 8
          Plaintiffs,
 9
                                       Docket No. 16-2105
       v.
10
     KRIS W. KOBACH, ET AL.,
11                                     Kansas City, Kansas
          Defendants.                  Date:  3/23/2016
12   ........................

13      TRANSCRIPT OF DISCOVERY AND SCHEDULING CONFERENCE
               BEFORE THE HONORABLE JAMES P. O'HARA
14         UNITED STATES CHIEF MAGISTRATE COURT JUDGE

15   APPEARANCES:

16   For Case No. 15-9300 Plaintiffs:

17   Mark P. Johnson              Paul Treanor Davis
     Dentons US LLP              William R. Lawrence, IV
18   4520 Main Street            Fagan Emert & Davis, LLC
     Suite 1100                  730 New Hampshire
19   Kansas City, MO             Suite 210
                                 Lawrence, KS 66044
20
     For Case No. 16-2105 Plaintiffs:
21
     Dale E. Ho                   Neil A. Steiner
22   R. Orion Danjuma            Dechert LLP
     American Civil Liberties    1095 Avenue of the
23    Union Foundation            Americas
     125 Broad Street            New York, NY 10036
24   New York, NY 10004

25
```

1   system in case the primary system fails.  But I can't go

2   back to that point in time because we've already

3   overwritten it with a fresher backup.

4          THE COURT:  How often is that done?

5          MR. CASKEY:  I'd have to check.  I would say

6   off the top of my head at least weekly if not more

7   frequently.  I can get an exact answer from that.

8          THE COURT:  Okay.  Okay.  Well, I suspect

9   you may have additional questions that Mr. Ho will have

10  next week on that, but I appreciate the background.

11         One moment, please.  You know, on this protective

12  order, we have set deadlines for that to be negotiated.

13  And I'm -- I'm a glass half full kind of guy, so I'm

14  going to be optimistic you'll get that resolved.  I

15  guess one thing I would ask that everyone be mindful of,

16  as you negotiate the terms of that order, are as

17  follows:

18         First, the basic purpose of entering a protective

19  order is to facilitate, not hinder, discovery.  So it

20  would allow folks who may have legitimate concerns about

21  the sensitivity or confidentiality of certain documents

22  to designate them as confidential and still produce them

23  to the other side under the order mindful that they're

24  not going to be widely disseminated later on.

25         But having said that, I don't want anybody on

1   this call laboring under the misimpression that merely

2   because a document has been stamped as confidential by

3   some lawyer or some overeager paralegal, that that will

4   likely entitle that document to be filed under seal when

5   it's used in a court proceeding.

6          I mean, there -- hopefully all of you are aware

7   of -- and if you haven't, I would urge you to look at

8   cases out of our court, and indeed I think I've issued

9   at least one opinion on this issue -- but, you know, the

10  -- our general operating premise is that anything that

11  is relevant to a filing with the court is open to the

12  public.  The public has a right to see this stuff absent

13  somebody being able to clearly demonstrate why it

14  shouldn't be in public view and why the public's right

15  to know is outweighed.  And, hence, stipulations to seal

16  or conclusionary statements about the need to seal are

17  not going to cut it.  So be mindful of that as you stamp

18  things as confidential and certainly when you seek to

19  submit something to the Court under seal.

20         For example, I've seen some discussion in the

21  written submissions to the effect that certain documents

22  that either Secretary Kobach or Secretary Jordan wants

23  to have treated as confidential are already public

24  record.  You know, so what that would mean is, if

25  somebody still designates that as confidential under our

1    court's standard protective order, any opposing party,

2    if they want to, can challenge it.  And if it turns out

3    that material is indeed public record, the chance of

4    that remaining confidential is low.

5          Now, I would rather not get sidetracked with

6    motion practice about these kind of designations.  So I

7    would urge you to be precise and selective about what

8    you describe as qualifying for confidential treatment

9    categorically in your proposed protective order.  And I

10   would urge you to be similarly selective and exercise

11   good judgment about that which you stamp as confidential

12   so we don't create just opportunities for people to

13   fight with each other later on.

14         Well, counsel, that I believe covers the matters

15   that -- that were bound up in the various submissions

16   that reasonably lend themselves to being decided today.

17   There may be other issues that I've inadvertently

18   skipped over and that one of you think would be

19   productive for us to talk about.

20         But, Mr. Ho, mindful that I'll endeavor to

21   fashion a fairly detailed scheduling order that will get

22   filed early tomorrow, is there anything else that you

23   believe we all ought to talk about today to make sure

24   this case has at least the best chance of moving

25   smoothly from this point?