# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, et al.,      )
                                    )

      Plaintiffs,           )
                                    )

v.                                   )     Case No. 16-2105-JAR-JPO
                                    )

KRIS KOBACH, in his official capacity as  )
Secretary of State for the State of Kansas,  )
                                    )

      Defendant.          )
_____ )

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE PROTECTIVE ORDER AND ENJOIN PLAINTIFFS' COUNSEL FROM DISSEMINATING CONFIDENTIAL VIDEOTAPE

In response to Defendant's motion seeking to enforce the agreed-to protective order, Plaintiffs ignore controlling Supreme Court precedent and argue that although the videotape itself was excluded from the trial record, it nonetheless became "public" when played at trial and is no longer confidential. Their arguments are unsupported by both the record and case law. Further, their efforts to release the videotape of the Secretary's deposition seven months after the trial ended are nothing more than transparent attempts to disparage the Defendant during the last weeks of his gubernatorial campaign.

The Court should not be used as a political pawn, especially in light of the ACLU's recent foray into funding national commercials in which it targets its opponents.[1] For these and other reasons fully supported below, the Court should immediately enforce the agreed-to protective order by enjoining the ACLU from disseminating the videotape to the media.

_____

[1] See Exhibit 1, "In Rare Move, ACLU to Oppose Kavanaugh for Supreme Court."

I.     **The Videotape is Not Public Information Because The Court Excluded It From the Record**

Plaintiffs argue that they, as litigants, have a constitutional right to "disclose evidence admitted at a public trial."  They cite to the Supreme Court case of *Seattle Times Co. v. Rhinehart* in support, however, their reliance on that case is misguided. There, the Court held that a protective order that restricts a litigant from disseminating information he obtained through discovery does not offend the First Amendment. 467 U.S. 20, 37 (1984).  Based on this holding alone, it is clear that the Plaintiffs do not have a constitutional right to disseminate confidential materials they obtained through discovery. However, plaintiffs attempt to use the holding to distinguish it from cases where the materials are later admitted into evidence at trial. Plaintiffs then assert that the videotape was "admitted into evidence" ostensibly placing it beyond the reach of the *Seattle Times* holding.

The fatal flaw in this argument is that the videotape itself was not made part of the trial record in this case.  Although the videotape was admitted into evidence for all of three trial days,[2] it was ordered withdrawn from evidence at the close of trial:

> The Court: All right.  Exhibit 148, the video deposition, is admitted, but it can be—it will be withdrawn at the close of the trial.

The videotape was not just returned to a litigant after trial, it was withdrawn from evidence and the Court expressly stated that the videotape itself was not part of the record:

> The Court: <u>For purposes of the record</u>, the written transcript of this will be part- just like the deposition transcripts are part—you know, the oral depositions transcripts are part of the trial transcript <u>but not the actual tape itself</u>.

> Mr. Danjuma: Understood.

Trial Trans., p. 1202. (Emphasis added).

---

[2] It was admitted at the end of the day on Friday, March 9th. It remained in evidence on March 12th, 13th and 19th. The trial ended on March 19th.

Moreover, the Court expressly ruled that the videotape itself was not "public":

> The Court: [T]he transcript of the deposition will be incorporated into the trial transcript. And if that trial transcript is ever made public, then this transcript would be but not the video itself. Okay. Okay. So Local Rule 32.1 says that if depositions et cetera are to be used at trial, the parties seeking to use them must file the portions to be used at the beginning of trial insofar as their use reasonably can be anticipated, which I think has happened. But the question here now is, does it become—unlike any other exhibit, does it become part of the public record? It does not.

Trial Trans., pp. 1194-95. (Emphasis added).

The Court reached this decision and reiterated it on the record three different times before the videotape was played so that there would be no confusion as to the videotape's status afterwards.[3] When discovery materials become part of the court record, they become public unless the court seals the record.[4] In this case, the actual videotape was never made part of the court record. In its place was a written transcript of the testimony:

> The Court: I tend to agree because—I tend to agree because, as you know, there's a rule against broadcasting and outside of the courthouse testimony. So I agree that the particular testimony that's being presented by video is – while it should be marked as an exhibit, it's not actually made a part of the record.

> Ms. Becker: All right. Well, so to clarify, Your Honor, so the videotape itself is not available to be publicly disseminated, whereas the trial transcript that may contain the testimony is the judicial record. Is that my [sic] understanding as well?

> The Court: That's correct.

Trans., p. 1194.

Yet, despite the clear statements made by the Court, Plaintiffs base the entirety of their response on the erroneous premise that the videotape became part of the record. Indeed, littered

---

[3] Notably, the Court did not define the videotape differently based on who happened to possess it—the parties or the court; the videotape is not public in either scenario. Indeed, Plaintiffs do not cite to a single case that supports the assertion that the videotape's content changes based on who possesses it, nor do they cite to the trial transcript for statements by the Court to that effect.

[4] Plaintiff fails to cite even a single case for their proposition that publicly playing a videotape during trial transforms the videotape into a public record.

*ad nauseam* in Plaintiffs' response are misleading and unsupported statements about events at trial including that the videotape was "filed as an exhibit, is not under seal, and is not subject to a protective order" (p. 5); "was admitted publicly and played in open court which extinguishes claims of confidentiality" (p. 9); that "the Court admitted the Tape into the record unsealed" (p. 10); and that "there was no order admitting the Tape under seal because the Defendant never asked for one." (p. 10). Plaintiffs are attempting to rewrite history. As the transcript reflects, Defendant objected *ad nauseam* to the playing of the videotape and confirmed with the Court to the point of its exasperation that the videotape itself would not become a judicial record, and that it would be unavailable to the public:

> Ms. Becker: Thank you, Your Honor. So I just want to clarify, that was U.S. v. McDougal, 103 F.3d 651.
>
> The Court: Okay. You won, you don't need to give me more argument.
>
> Ms. Becker: All right. Well, so to clarify Your Honor, so the videotape itself is not available to be publicly disseminated, whereas the trial transcript that may contain the testimony is the judicial record. Is that my [sic] understanding as well?
>
> The Court: That's correct.

Trial Trans. p. 1194-95.

To argue that the Defendant never asked for the videotape to be sealed is disingenuous because the videotape wasn't entered into the record, thus it did not need to be sealed. Even more disingenuous is Plaintiffs' argument that Defendant could have prevented the alleged publication of the videotape had defense counsel requested that the courtroom be emptied of the press and public, (p. 9).[5]

---

[5] One can only imagine what would have transpired had the Defendant, in front of a courtroom filled to capacity with the press, requested that everyone be ordered to leave prior to the playing of the videotaped deposition.

The record cited above clearly confirms that the videotape was not "admitted" into evidence giving the Plaintiffs a constitutional right to disseminate it. To the contrary, it was withdrawn from evidence at the conclusion of trial, and expressly excluded from the trial record. Regardless, even if the videotape can somehow be considered "public" because it was admitted into evidence before being withdrawn, under *Nixon v. Warner Communications* and its progeny, dissemination of the videotape to the media should not be allowed regardless of whether it was admitted into evidence. 435 U.S. 589 (1978).

**II.** **Even If the Videotape Was Admitted Into Evidence, Dissemination Is Still Prevented Under *Nixon v. Warner Communications* and Its Progeny**

Controlling precedent set in *Nixon* was relied on by the Eighth Circuit in *McDougal*, and followed by the District of Utah in *U.S. v. Mitchell*, 2010 WL 5014444, at *2, 2:08CR125DAK (Dec. 3, 2010). These courts refused to allow confidential information to be publicly disseminated even though such information had been admitted into evidence at trial.

In *Nixon v. Warner Communications*, the infamous Watergate audiotapes were played in the courtroom and transcripts were made available to the press and public. 435 U.S. 589, 609 (1978). The audiotapes were admitted into evidence, yet when the press asked for copies, the Court held that the public did not have a right of access to the audiotapes themselves. *Id.* at 610-11. The Court reasoned:

> There simply were no restrictions upon press access to, or publication of any information in the public domain. Indeed, the press—including reporters of the electronic media—was permitted to listen to the tapes and report on what was heard. Reporters also were furnished transcripts of the tapes, which they were free to comment upon and publish. The contents of the tapes were given wide publicity by all elements of the media. There is no question of a truncated flow of information to the public. Thus, the issue presented in this case is not whether the press must be permitted access to public information to which the public generally is guaranteed access, but whether these copies of the White House tapes—to which the public has never had *physical* access—must be made available for copying.

435 U.S. at 609.

The open access given to the general public and to the media in *Nixon* is identical to the access given to the public and media in this case.  Significantly, the Supreme Court held that the rights of the general public are equal to those of the media. *Id.* at 609. This means that the rights of the public "who never had physical access" to the videotape are no greater than the press's rights to them and vice versa.  *Id.* The press cannot get the videotape because the general public cannot.[6] And the litigants cannot give it to them because they are bound by the protective order, as explained *infra*.

Years later, the Eighth Circuit handled a modern-day version of *Nixon* when it considered whether the actual videotape of President Clinton's deposition had to be publicly disseminated upon request. *U.S. v. McDougal*, 940 F. Supp. 224 (8th Cir. 1996). During argument, this Court agreed with the holding of *McDougal*:

> Ms. Becker: The Eighth Circuit has squarely addressed this question, it held, quote, "As a matter of law, the deposition videotape itself is not a judicial record to which the common-law right of public access attaches.  And even if the defendant had moved for the admission of the videotape into evidence, the videotape itself would not necessarily have become a judicial record subject to public review."
>
> The Court: I tend to agree because—I tend to agree because, as you know, there's a rule against broadcasting and –outside of the courthouse testimony.  So I agree that this particular testimony that's being presented by video is—while it should be marked as an exhibit, it's not actually made part of the record.

Trial Trans., pp. 1194.

Notably, the videotape in *McDougal* had been admitted into evidence, yet the Eighth Circuit reiterated that "[t]he Supreme Court has made clear that the Constitution does not provide the press the right under the First Amendment <u>to copy a tape introduced into evidence</u> as long as

---

[6] Indeed, this Court acknowledged that reality in its discussion during trial about the rule against the public recording the trial proceedings.

the Court allows access to the information contained on the tape by other means." *McDougal*, 940 F. Supp. at 226.

Despite Plaintiffs' attempt to dismiss *McDougal* as inapposite by focusing on who would be copying the videotape and who is requesting it, *McDougal* is on point because the press is asking for copies of it—the exact scenario here. The only significance of the fact that they were intervenors and not litigants is if that created a standing problem. The *McDougal* court did not seem to think so when it followed *Nixon* and denied release of the videotape based on the substance of the information, not on who possessed the tape at the time.

More recently, the District of Utah reviewed Tenth Circuit case law to see whether it had addressed the "media's right of access to a video exhibit shown during trial" but found that the holding in *Nixon* had not been disturbed. *U.S. v. Mitchell*, 2010 WL 5014444, at *2, 2:08CR125DAK (Dec. 3, 2010). In *Mitchell*, like in this case, the public was given access to the transcript and it was made available on public websites.[7] *Id.* at *2. The public was fully aware of the contents of the videotape and had access to the video at trial. *Id.* The district court concluded that under Tenth Circuit law, the public had no right to an actual copy of the videotape. *Id.* This case is factually on point with our case and supports the proposition that despite being admitted into evidence at trial, the public has no right to a videotape.

It is significant to note that, regardless of the approach, case law yields only one result.

If Plaintiffs argue that they have a constitutional right to disseminate it based on their physical possession of the videotape (p. 8-10), then the *Seattle Times* holding governs: there is no constitutional right to disseminate confidential materials that are under a protective order.

---

[7] The entire trial transcript, as well as the transcript of Defendant's deposition, were published on the ACLU's website after trial and remain there as of today's date. *See* www.aclu.org/legal-document/kobach, last accessed 10/2/18.

If Plaintiffs argue that the videotape is no longer under the protective order because it was "admitted into evidence" and "played publicly" thereby making it non-confidential, (pp. 11-13), then *Nixon* and *McDougal* apply, each of which holds that where the public already has access to the testimony, the public's right of access is met.

If Plaintiffs argue that they have a constitutional <u>right to disseminate it</u> because it is no longer under the protective order, the protective order itself prevents that. The parties are still obliged under the protective order by the express terms of their agreement, discussed in Section III.

If Plaintiffs argue that, despite agreeing to the protective order, their constitutional rights are violated by the enforcement of the protective order, then the holding in *Seattle Times* applies.

In other words, no scenario supports the release of the videotape to the media. And although Plaintiffs blindly assert that they have the authority as a "party" to release the videotape to the press, <u>they cite to no case to support this</u>; instead they liken the dissemination of a confidential videotape that is of "great public interest" to their freedom to disseminate demonstrative power point slides that are not even evidence:

> "Whether materials are publicly available on a case docket is not equivalent to whether a *party* is precluded from disclosing it." (FN 6)

> Footnote 6 states only: "Plaintiffs may, for instance, distribute the demonstrative slides they used at trial regardless of whether those slides are 'judicial records for purposes of' the public docket."

Response, p. 13, FN 6.

Such a weak showing of legal authority highlights the fact that Plaintiffs cannot get around the protective order filed in this case. The protective order still applies because the videotape did not go into the public record. The court cannot disseminate the videotape because it is not in the

public record, and the litigants cannot disseminate the videotape because the protective order restricts them from doing so.

## III.    The Protective Order Covers the Videotaped Deposition and Extends Past Trial

Contrary to Plaintiffs' arguments, the protective order did not end when trial started. The protective order expressly extends past the trial until all appeals are exhausted, as its language clearly states. First, the protective order expressly applies to all confidential information produced or obtained in discovery, <u>including depositions</u>:

> **5. Depositions.** Deposition testimony will be deemed confidential only if designated as such when the deposition is taken or within a reasonable time period after receipt of the deposition transcript. Such designation must be specific as to the portions of the transcript and/or nay exhibits to be protected.

Doc 55, p. 5. Contrary to Plaintiffs' false statement in their response ("Defendant's videotaped deposition was not, of course, among the original categories of confidential information listed in the Protective Order that Judge O'Hara entered for good cause shown under Fed. R. Civ. P. 26(c) (ECF 55 at 2))," the discovery deposition of Defendant was included in the order because it included all discovery depositions.  In addition, before the deposition even took place, Judge O'Hara held that it would be confidential.  After the deposition, extensive briefing was filed over which portions would be "unsealed" which is because it was under the protective order.

Second, with regard to Plaintiffs' argument that the protective order somehow ended at the close of "pretrial discovery," the order itself expressly states within its "four corners" that it applies beyond litigation and through any appeal: "**10. (a) Order remains in effect.** Unless otherwise agreed or ordered, all provisions of this Order will remain in effect and continue to be binding after conclusion of the litigation." Doc. 55, p. 8. Third, the protective order expressly governs and dictates use of confidential information <u>at trial</u>:

**9. "Use of Confidential Documents or Information at Trial or Hearing**. Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or that anticipates that another party may present Confidential Information at a hearing or trial must bring that issue to the attention of the court and the other parties without disclosing the Confidential Information. The court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.

Although Plaintiffs partially quote the first sentence of this paragraph to argue that the entire order has no application at trial, the context of the paragraph and rest of the order indicate that the order continues to protect confidential documents <u>during trial</u> because it outlines the agreed-to procedure for introducing such evidence and then defers to the Court for appropriate orders such as redaction, sealing, etc.  This is exactly what occurred at the trial of this matter.  The parties alerted the Court to the impending use of confidential materials and then the Court ruled on how the evidence was to be used.

This process did not negate the protective order in place, especially when the terms of the order proscribe the procedure for such a scenario. Further, it is clear from the context of the order that the one sentence quoted by Plaintiffs ("Nothing in this Order will be construed to affect the use of any document at trial") is addressing whether the confidential information must remain restricted under the Order during trial or not.  It is not promoting that the parties ignore its existence; rather, it acknowledges its continued application but defers to the court to determine the parameters of admitting protected information at trial. In sum, Plaintiffs' argument that the protective order ceases to operate once a case is "beyond pretrial discovery" is without merit where, as here, the order's express language contemplates its use past trial.

## IV.    The Record Easily Defeats Plaintiffs' Prior Restraint Argument

Finally, Plaintiffs raise a prior restraint argument and cite to *Poliquin v. Garden Way, Inc.* 989 F.2d 527 (1st Cir. 1993) in support.  Plaintiffs' reliance on this case, however, is misplaced

because the facts are in no way similar.  In *Poliquin*, the parties settled midway through trial.  After the settlement, one side requested return of items they claimed were covered by the protective order in place.  *Id.* at 530.  However, "[s]ome of the 214 items had not previously been designated as confidential." *Id.*  Further, many of the items had been admitted into evidence.  *Id.*  The issue was whether the court could enforce a protective order over materials whose confidentiality was claimed for the first time <u>after</u> public disclosure, and whether admitted trial exhibits could later be restricted from disclosure post-trial.  *Id.*  The court held that they could not.

These facts have no relevance to the record in this case.  Here, the videotape deposition was deemed confidential before it took place and remains so even now.  But more importantly, as the Court stated several times, the videotape was not admitted into the court record; it was never made public so there is not a post-trial attempt to retract confidential information from out of the public domain.  Plaintiffs' reliance on this case is attenuated at best.

The other two cases Plaintiffs cite in support of this argument also fail to help them.  One Third Circuit case holds that where "no effort is made to limit" the disclosure of information in open court, a party has waived its right to seek to restrict its future use.  *Littlejohn v. Bic Corp.*, 851 F.2d 673, 680 (3ʳᵈ Cir. 1988).  Curiously, that issue is not present in this case; indeed, Defendant objected to the playing of the videotape at every opportunity.  The other case, *Benedict v. Hankook Tire Co. Ltd.*, is a District of Virginia case holding that a party waives confidentiality of materials where "no effort is made" to prevent dissemination.  2018 WL 3014797, at *11 (E.D. Va. June 15, 2018).  Again, these facts are not before the Court in that Defendant repeatedly made efforts to prevent the playing of the videotape.  Thus, Plaintiffs' prior restraint argument fails for lack of legal support, as well as for the lack of factual support in the record.

## V.      Videotaped Depositions Should Not Be Used in Roles Unrelated to the Court

The ACLU wants to disseminate the videotape just weeks before the gubernatorial election. They have identified no purpose to doing so, and they waited seven months after the trial ended to make this request.  With the election three weeks away, it is clear that the request is wholly unrelated to the litigation.  This very court in *Drake v. Benedek Broad. Corp.*, No. CIV.A.99-2227GTV, 2000 WL 156825, at *1–2 (D. Kan. Feb. 9, 2000), has previously held that releasing a videotape in a scenario, where, as here, a party wants to use it to "further private pursuits," would be an improper use of the courts' processes and unrelated to the role of the court:

> As recognized in *Paisley Park Enterprises, supra,* the Rule's provision for videotaped depositions was not intended to further a party's commercial goals or private pursuits or "to be a vehicle for generating content for broadcast and other media."

*Id.*

In light of the ACLU's public stances taken against the Defendant and its funding of political commercials aimed at its opponents,[8] the dissemination of the videotape to the media and ACLU members would be an improper use of the courts. As noted above, Rule 30(b)(2) "was not intended to be a vehicle for generating content for broadcast and other media." *Paisley Park Ent., Inc. v. Uptown Productions*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999).

Here, there is no compelling reason to release the videotape because the entirety of transcript has already been published by the ACLU on its national website and the contents are well-known.  Moreover, the same media who submitted letters to the Court expressing their sudden interest in the contents of the videotape were in attendance at trial and sitting directly behind the Defendant's counsel table. Releasing the videotape seven months after trial and during an appeal, without any purpose, would undermine the role of the Court to "be vigilant to ensure that [its] processes are not used improperly for purposes unrelated to their role." *Id.*  The Court should not

---

[8] The ACLU recently supported and helped produce a commercial in which it broadcast its position against Supreme Court nominee, now Justice Brett Kavanaugh. Exhibit 1.

risk appearing to assist any litigant in private pursuits beyond the litigation. Not releasing it is proper if there is even "some likelihood that Plaintiff intends to use the videotaped deposition of [Defendant] for purposes unrelated to the resolution of this lawsuit and even for some commercial or personal financial gain." *Drake,* 2000 WL 156825, at *1–2.

## CONCLUSION

For all of these reasons, Defendant respectfully requests the Court to immediately enforce the protective order by enjoining Plaintiffs from disseminating the confidential videotape to the media.

Date: October 12, 2018                   Respectfully submitted,

                                        /s/ Sue Becker
                                        Sue Becker, Kansas Bar No. 27806
                                        Garrett Roe, Kansas Bar No. 26867
                                        KANSAS SECRETARY OF STATE'S OFFICE
                                        120 S.W. 10th Ave.
                                        Topeka, KS 66612
                                        Telephone: (785) 296-4575
                                        Facsimile: (785) 368-8033
                                        Email: sue.becker@ks.gov
                                               garrett.roe@ks.gov

                                        *Trial Attorneys for Defendant Kobach*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 12th day of October, 2018, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

                                        /s/ Sue Becker
                                        Sue Becker
                                        *Attorney for Defendant Kobach*

# EXHIBIT 1

DONATE

# IN RARE MOVE, ACLU TO OPPOSE KAVANAUGH FOR SUPREME COURT

SEPTEMBER 29, 2018

NEW YORK — In the wake of Dr. Christine Blasey Ford's sworn testimony of sexual abuse at the hands of Brett Kavanaugh, the American Civil Liberties Union has announced its opposition to his nomination to the U.S. Supreme Court.

As a matter of organizational policy, the ACLU does not support or oppose candidates for political or judicial office. In this instance, the national board held an extraordinary meeting, and has chosen to make an exception to that policy.

"The ACLU's board of directors, deeply concerned by the allegations raised in recent weeks, has made a rare exception to its longstanding policy and voted to oppose the nomination of Brett Kavanaugh to the Supreme Court," said Susan Herman, president of the ACLU.

The ACLU's national board of directors passed a resolution stating:

> "The ACLU opposes the confirmation of Judge Brett Kavanaugh to the Supreme Court. There are credible allegations that Judge Kavanaugh has engaged in serious misconduct that have not been adequately investigated by the Senate. Dr. Christine Blasey Ford's credible testimony, subsequent allegations of sexual misconduct,

Case 2:16-cv-02105-JAR Document 566-1 Filed 10/12/18 Page 3 of 3

the inadequate investigation, and Judge Kavanaugh's testimony at the hearing lead us to doubt Judge Kavanaugh's fitness to serve as an Associate Justice of the Supreme Court.

"This is not a decision taken lightly. We cannot remain silent under these extraordinary circumstances about a lifetime appointment to the highest court of the land. The standard for such an appointment should be high, and the burden is on the nominee. That burden is not met as long as there are unresolved questions regarding the credible allegations of sexual assault."

"As a nonpartisan organization, the ACLU does not oppose Judge Kavanaugh based on predictions about how he would vote as a Justice. We oppose him in light of the credible allegations of sexual assault against him," concluded Herman.

Under its current policy, the ACLU does not take formal positions on judicial nominations. This is the fourth instance in the organization's 98-year history that the ACLU's national board of directors has voted to oppose a nominee to the U.S. Supreme Court. Most recently, the organization did not endorse or oppose the nomination of Associate Justice Neil Gorsuch.

For nearly 100 years, the ACLU has worked in courts, legislatures, and communities to protect the constitutional rights of all people. With a nationwide network of offices and millions of members and supporters, the ACLU takes on the toughest civil liberties fights in pursuit of liberty and justice for all.

## CONTACT INFORMATION