IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, *et al.*, on behalf )
of themselves and all others similarly )
situated, )
)
      Plaintiffs, )
) Case No. 16-2105-JAR-JPO
v. )
)
KRIS KOBACH, in his official capacity as )
Secretary of State for the State of Kansas, *et* )
*al.*, )
)
      Defendants. )
)

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLARIFICATION,
OR IN THE ALTERNATIVE, MODIFICATION**

Plaintiffs submit this short reply in support of their motion for clarification, ECF No. 564.[1] Defendant's responsive briefing repeats the same misunderstandings and misinterpretations of the law in his Motion to Enforce Protective Order. ECF No. 561.

*First,* under *Seattle Times Company v. Rhinehart*, Plaintiffs have a First Amendment right to distribute the Tape after it was admitted and played publicly at trial. 467 U.S. 20, 31, 37 (1984) (finding that discovery materials are protected speech and observing that a protective order should be "*limited to the context of pretrial civil discovery* . . . [to avoid] offend[ing] the First Amendment" (emphasis added)); *accord Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984). If, as Defendant mistakenly believes, the Protective Order barred Plaintiffs from disclosing publicly admitted trial evidence, it would not be "limited to the context of pretrial civil

---

[1] This brief cites Defendant's reply memorandum, ECF No. 566, which is incorporated by reference in his simultaneously filed response brief in opposition to Plaintiff's motion for clarification. ECF No. 567 at 1.

1

discovery" and would "offend the First Amendment." *Seattle Times*, 467 U.S. at 37. Instead, the Protective Order explicitly does not apply to trial evidence: "Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing." ECF No. 55 at 8.[2]

Defendant tries to evade this authority by claiming that the Protective Order does not mean what it says or that somehow the Tape "was not 'admitted' into evidence" and "thus it did not need to be sealed." ECF No. 566 at 4-5. It is Defendant who is struggling to "rewrite history" here. *Id*. at 4. The record is clear and beyond dispute that the Tape was admitted into evidence and played publicly in open court. *See* ECF No. 509 at 1200:24-25, 1202:4-10. Defendant concedes that the Tape was not sealed. ECF No. 566 at 4. Thus there is no further confidentiality interest for Defendant to assert. *See* ECF No. 565 at 8-11. The Tape is no longer subject to the Protective Order under the express terms of the agreement and under settled case precedent.

<u>Second</u>, Plaintiffs are asserting *their own right* as a party to distribute trial evidence in their possession—not the media's right to demand a copy of the Tape from the Court. Defendant claims that Plaintiffs "<u>cite to no case to support</u>" their "authority as a 'party' to release the videotape[.]" ECF No. 566 at 8 (emphasis in original). But Plaintiffs have cited numerous cases for this exact proposition. *See e.g.*, *Oklahoma Hosp.*, 748 F.2d at 1424 ("*[P]arties* to litigation have a constitutionally protected right to disseminate information obtained by them through the

---

[2] Defendant incorrectly contends that the Protective Order bars disclosure of the Tape because it remains in effect until all appeals have concluded. *See* ECF No. 566 at 9. As noted *supra*, the Protective Order does not apply to trial evidence. The purpose of the Order remaining in effect post-trial is to maintain confidentiality of discovery materials that were never introduced at trial. *See, e.g.*, *Poliquin v. Garden Way, Inc*., 989 F.2d 527, 535 (1st Cir. 1993) (confidential videotape admitted at trial was no longer subject to protective order but "depositions . . . not admitted into evidence at trial" remained covered by protective order after trial because "it is common to provide . . . for post-trial protection including the return or destruction of protected material"). Indeed, the Protective Order explicitly exempts any "document [that] has been offered into evidence" from needing to be returned or destroyed after appeals have concluded. ECF No. 55 at 8.

discovery process absent a valid protective order[.]" (emphasis added)).[3] In fact, Plaintiffs have provided cases specifically recognizing a party's right to distribute videotape depositions in scenarios virtually identical to this one. *See, e.g.*, *Poliquin v. Garden Way, Inc*., 989 F.2d 527, 533 (1st Cir. 1993) (permitting party to distribute videotape deposition marked confidential and played at trial);[4] *Larson v. Am. Family Mut. Inc.*, No. 06-cv-01355-PSF-MEH, 2007 WL 622214, at *2 (D. Colo. Feb. 23, 2007) (finding that protective order could not bar party from publishing and using videotape depositions introduced into evidence at trial); *Flaherty v. Seroussi*, 209 F.R.D. 295, 300 (N.D.N.Y. 2001) (finding even in pretrial discovery phase no good cause "precluding the plaintiff from exercising her right to freely publicize the [video] deposition" of public official). These cases are illustrative examples of many others reaching comparable conclusions. *See, e.g.*, *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747 (E.D. Va. 2018) (collecting cases where confidentiality was waived via disclosure of evidence at public trial).

In contrast, Defendant has failed to identify a single case where a court prohibited a *party* from distributing evidence introduced publicly at trial. Plaintiffs are not aware of any case where this has happened. Instead, Defendant relies upon *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), *United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996), and *United States v.*

---

[3] *Seattle Times* is specifically about *litigants'* First Amendment rights to distribute discovery materials pre- versus post-trial. 467 U.S. at 22 ("This case presents the issue whether *parties* to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process." (emphasis added)).

[4] Defendant attempts to distinguish *Poliquin* by arguing that the case concerned "whether the court could enforce a protective order over materials whose confidentiality was claimed for the first time <u>after</u> public disclosure[.]" ECF No. 566 at 11 (emphasis in original). Defendant is mistaken. The First Circuit assumed that the videotape deposition at issue was properly marked confidential in advance of trial because the plaintiffs had failed to raise the issue of waiver of confidentiality with the district court. *See Poliquin*, 989 F.2d at 532 (noting that "[t]he facts are obscure" as to what materials were properly marked confidential and declining to consider the plaintiffs' "fact-bound [waiver] argument").

*Mitchell*, No. 2:08CR125DAK, 2010 WL 5014444 (D. Utah Dec. 3, 2010) which all concern whether media interveners could compel courts to produce copies of tapes played in court. Defendant cites *Nixon* for the general proposition that "the rights of the public 'who never had physical access' to the videotape are no greater than the press's rights to them and vice versa." ECF No. 566 at 6. But that is exactly why these cases are inapposite. Plaintiffs are not invoking the rights of the media or the public; they are asserting their own First Amendment right to distribute publicly admitted trial evidence in their possession.

Therefore, whether a transcript of the Tape satisfies the presumption of public access has no bearing on Plaintiffs' right to distribute the Tape voluntarily.[5] In the public access context, the right to inspect judicial records is balanced against a district court's discretion over maintenance of records on its own case dockets. *See Nixon*, 435 U.S. at 598 ("Every court has supervisory power over its own records and files[.]"). But that analysis does not apply here because the media organizations have requested the Tape from a party—not from the Court. So it is up to the party whether or not to provide it.

<u>Third</u>, Defendant has never offered any reason that could justify restraining distribution of the Tape. Defendant writes that he never requested a closed court session for the Tape to be admitted under seal because "[o]ne can only imagine what would have transpired had the Defendant, in front of a courtroom filled to capacity with the press, requested that everyone be ordered to leave prior to the playing of the videotaped deposition." ECF No. 566 at 4 n.5. This is precisely the point. It is a major aberration to close a courtroom for testimony to be admitted

---

[5] When a media organization has intervened to compel a court to provide a copy of a videotape played at trial, federal courts have divided over whether the tape must be made available for copying. As explained in Plaintiffs' prior brief, the majority of circuits have held that the public has a right to copy the tape while some courts hold that a transcript is sufficient. *See* ECF No. 565 at 14 n.7.

in secret. *See, e.g.*, *Mike v Dymon, Inc.*, Civ. A. No. 95-2405-EEO, 1997 WL 38111, at *1 (D. Kan. Jan. 23, 1997) ("Requests to exclude the public from trial of a case or parts thereof are granted only in extraordinary circumstances."). Defendant apparently acknowledges that he could not have satisfied the very high standards for closing this part of the trial to the public. Indeed, he never identified any interests that would justify nondisclosure or even claimed that the Tape was confidential and should be played outside public view. The Court therefore never made any factual findings in this respect. It cannot be simpler for Defendant to prohibit disclosure of the Tape after the fact than it would have been to seal it in the first place.

Instead, Defendant made a much more modest request: that the Tape not be maintained as a judicial record. ECF No. 509 at 1193:15-17. The Court responded that, consistent with its general practice, all exhibits would be returned to the parties after trial and the Tape would not be retained on the Court's docket. *Id*. at 1194:4-6 (THE COURT: "[E]xhibits in general are returned to the parties at the close of the trial, so I don't know that it's an issue anyway."). In making this request, Defendant may have been confused by the parties' previous dispute over unsealing excerpts of Defendant's deposition at summary judgment. *See* ECF Nos. 369, 385. At summary judgment, the deposition transcripts were filed under seal and the Court evaluated whether they were "judicial records" in order to determine whether they could remain under seal. ECF No. 405 at 7-10. But at trial, the Tape was never sealed at all; it was admitted publicly and played in open court. So whether the Tape is retained by the Court as a judicial record is not relevant to whether Plaintiffs may distribute it.

The bottom line is that Defense counsel did not request at trial what they apparently wanted: an order that the Tape be admitted under seal and played in a closed court session so that it would remain confidential. It is simply too late to try to resurrect confidentiality now: "Once the cat is out of the bag, the ball game is over." *Gambale v. Deutsche Bank AG*, 377 F.3d 133,

144 n.11 (2d Cir. 2004); *see also Benedict*, 323 F. Supp. 3d at 760-61 (publication of evidence at trial extinguishes confidentiality interest "even if previous sealing or protective orders covered the materials or information at issue").  But even if Defendant could turn back the clock, he has done nothing to demonstrate that there are compelling reasons, extraordinary circumstances, or even good cause that would justify a prohibition on Plaintiffs' constitutional right to distribute the Tape.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request clarification that they may produce the Tape in response to media requests.  If Plaintiffs have misinterpreted the Court's trial ruling as to the status of the Tape, Plaintiffs respectfully request that the Court consider altering its initial ruling in light of the arguments and authorities outlined in briefing. *See United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013) (court retains authority to eliminate restrictions on disclosure of evidence).

Dated October 16, 2018.

Respectfully submitted,

/s/ Lauren Bonds
LAUREN BONDS (#27807)
ACLU Foundation of Kansas
6701 W. 64th Street, Suite 210
Overland Park, Kansas 66202
(913) 490-4114
lbonds@aclukansas.org

/s/ R. Orion Danjuma
R. ORION DANJUMA*
DALE E. HO*
SOPHIA LIN LAKIN*
American Civil Liberties Union Foundation, Inc.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2693
odanjuma@aclu.org
dale.ho@aclu.org
slakin@aclu.org

NEIL A. STEINER*
REBECCA KAHAN WALDMAN*
Dechert LLP

ANGELA M. LIU*
Dechert LLP
35 West Wacker Drive

6

1095 Avenue of the Americas
New York, NY 10036-6797
Phone: (212) 698-3500
Fax: (212) 698-3599
neil.steiner@dechert.com
rebecca.waldman@dechert.com

Suite 3400
Chicago, IL 60601-1608
Phone: (312) 646-5800
Fax: (312) 646-5858
angela.liu@dechert.com

*Attorneys for Plaintiffs*

\*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on October 16, 2018, I electronically filed the foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Lauren Bonds
LAUREN BONDS (#27807)

*Attorney for Plaintiffs*