IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEVEN WAYNE FISH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-2105-JAR-JPO |
| | ) | |
| KRIS KOBACH, in his official capacity as Secretary of State for the State of Kansas, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT'S APPLICATION FOR THE ISSUANCE OF A SIMULTANEOUS STAY WITH THE FILING OF THE COURT'S RULING**

In the (hopefully unlikely) event that the Court denies Defendant's Motion to Enforce the Protective Order and Enjoin Plaintiffs from Releasing the Videotape to the Media (Doc. ECF 560), Defendant respectfully requests a short stay of the Court's ruling to allow his office to seek review of the order by the Tenth Circuit.  A temporary stay of any adverse ruling would be warranted here because, if the Court were to deny the motion and declare the videotape to be "public," Defendant expects the videotape to be *immediately* released to the media so that its footage can be used in last-minute political commercials targeting the Defendant personally.  Indeed, the only reason that Plaintiffs are requesting the release of the video is to allow it to be used by partisan organizations and political candidates opposing Secretary Kobach's gubernatorial campaign.  Further, once it is sent out in an "e-blast," neither the Court nor the parties can retract it.  More significantly here, an immediate release of the videotape would effectively prevent appellate review of the order.  In order to avoid having the Court be used as a pawn in Plaintiffs' nakedly partisan tactics – a scenario that can and should be avoided – Defendant requests that any adverse ruling be temporarily stayed while Defendant seeks a stay with the Tenth Circuit.

## I. Legal Standard for Granting a Stay is Easily Met

A stay has the "practical effect of preventing some action before the legality of that action has been conclusively determined." *Nken v. Holder*, 556 U.S. 418, 428 (2009).

> The authority to hold an order in abeyance pending review allows an appellate court to act responsibly. A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review. The choice for a reviewing court should not be between justice on the fly or participation in what may be an "idle ceremony." The ability to grant interim relief is accordingly not simply "[a]n historic procedure for preserving rights during the pendency of an appeal," but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process.

*Id.* at 427 (citations omitted).

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433 (citing *Virginian R. Co. v. United States,* 272 U.S. 658, 672 (1926)). Instead, it is "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 434 (citations omitted). "The traditional stay factors contemplate individualized judgments in each case." *Id.* Those legal principles have been distilled into consideration of four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. *Id.*

Here, an analysis of these four factors strongly supports the Court's grant of a short stay in the event the Court denies enforcement of the previously issued protective order.

**II.     At Least Three Out of Four Criteria Used by This Court Strongly Favors a Stay**

This Court has authority to grant a discretionary stay based on the factors it has consistently used as a guide and which mirror those the Supreme Court identified in *Nken*. "Generally stated, the rule is that the court reviewing the application assesses the movant's chances for success on appeal and weighs the equities between the parties." *Mannell v. Kawasaki Motors Corp.*, No. 89-4258-R, 1991 WL 34214, at *3 (D. Kan. Feb. 22, 1991) (citations omitted). Specifically, the court considers:

1. Whether the movant is likely to prevail on review.

2. Whether the movant has established that absent a stay the movant will suffer irreparable harm.

3. Whether the issuance of a stay will cause substantial harm to the other parties to the proceedings.

4. The public interests implicated by the stay.

*In re Motor Fuel Temperature Sales Practices Litig.,* No. 07-MD-1840-KHV, 2010 WL 3724665, at *1 (D. Kan. Sept. 16, 2010) (citing *Mannell*, 1991 WL 34214, at *3).

Here, Defendant meets the criteria for the granting of a stay because at least three of the four factors overwhelmingly favor Defendant.

First, absent a stay, the Defendant will definitely suffer permanent, irreparable harm. As a candidate for Governor with the election just twenty-one days away, the release of videotape footage will undoubtedly be sliced, diced, and reconstructed by negative campaign mavens who are actively working against Secretary Kobach (including the now openly partisan ACLU, which is behind this request) in the campaign. As Defendant's motion and response clearly explained, the use of a videotaped deposition for non-litigation purposes such as posting ads on social media

or airing commercials has no foundation in the law and is expressly discouraged. *See e.g., U.S. v. McDougal*, 940 F. Supp. 224 (8th Cir. 1996); *Drake v. Benedek Broad. Corp.*, No. CIV.A.99-2227GTV, 2000 WL 156825, at *1–2 (D. Kan. Feb. 9, 2000); *Paisley Park Ent., Inc. v. Uptown Productions*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) and others. Removing the videotape from the protective order seven months after trial would be particularly injurious to Defendant because, unless all 45 minutes will be aired (which has exactly zero chance of happening), whatever snippets are spliced together will be taken entirely out of context. District courts in the Tenth Circuit have repeatedly held that such use of videotaped depositions should be firmly rejected. *See, e.g., Am. Family Mut. Ins. Co. v. Minor*, No. CIVA06CV02288LTBMJW, 2007 WL 4365694, at *1 (D. Colo. Dec. 10, 2007); *Howards v. Reichle*, No. 06-CV-01964-CMA-CBS, 2008 WL 11363652, at *3 (D. Colo. Nov. 25, 2008). Further, should the videotape be released and then used in some way to oppose the Defendant's candidacy, it would cost the Defendant tens of thousands of dollars in new ads and manpower to attempt to respond to whatever assertions are made using cobbled-together deposition soundbites.

      The second factor that strongly favors Defendant is the complete lack of harm that a short stay would cause the other parties. The underlying lawsuit is currently on appeal and Plaintiffs claim to have no interest in releasing the videotape other than to exercise their constitutional right to do so. Indeed, armed only with third-party media requests that they just happened to receive a few weeks before the gubernatorial election, they have not provided any explanation as to why they waited over seven months before deciding it was time to exercise their alleged rights to release confidential information. (Indeed, it's rather ironic – but also illuminating as to the Plaintiffs' true motives here – that the media themselves never bothered to seek the release of the videotape on their own.) If the Plaintiffs are relying on the media's statements that the Defendant's candidacy

has increased interest in his testimony, such increased interest has already been satisfied by the publication of his testimony in the public domain, which occurred within hours after it was played at trial and that is still online today.  In sum, it is clear that neither the parties themselves—the actual plaintiffs nor their politically-focused counsel at the ACLU – will suffer any harm from the grant of a short stay.

The third factor also favors the Defendant inasmuch as there are no public interests that would be negatively implicated by the grant of a short stay.  Indeed, all of the testimony has already been released to the public.  The only interest at issue, therefore, would be in obtaining the actual videotape.  But no right exists in the physical tape where the testimony was played in open court and the transcripts are publicly available.  *U.S. v. Mitchell*, 2010 WL 5014444, at *2 (D. Utah, Dec. 3, 2010) (refusing under Tenth Circuit law to release the videotape where the public was fully aware of the contents of the videotape via a published transcript).

Although Plaintiffs conveniently attach letters from the media as proof of the public's sudden interest in Secretary Kobach's testimony, none of the media are even reporting on his testimony, despite having had full access to it since March.  What seems beyond cavil here is that the only public interests that could be implicated are those that the media and the ACLU *hope to generate* during the last three weeks of the Secretary's campaign for Governor.

The fourth and final factor is the likelihood of success on the merits.  Defendant believes its position on enforcing the protective order is very strong and fully supported in the previously filed briefs.[1]  However, even if the Court were to side with the Plaintiffs, a stay would still be in order.  The case law hardly *compels* a ruling in favor of the Plaintiffs, and even if the Court decides

---

[1] Rather than re-state all of the arguments here, Defendant incorporates by reference all arguments already before the Court that were raised in both his original motion and his reply to Plaintiffs' response. (Doc. ECF 560, 561, 566).

that the equities tilt in the Plaintiffs' favor, the weight of the other three factors leaves the fulcrum balancing heavily towards granting Defendant the requested stay.

### III. Conclusion

Make no mistake, although the deposition transcript has been publicly available online ever since it was played at trial,[2] the Court's ruling excluding the videotape from the record has remained in place. Without question, were the contrary true, the videotape would have surfaced in the media *months ago*. Nothing has transpired to change the status of the videotape since the close of trial. Plaintiffs' suggestion to the contrary is pure duplicity.

The only thing that has changed – other than Plaintiffs' position – since the close of trial is Secretary Kobach's active campaigning for the office of Kansas Governor. His status as a candidate should not be the impetus to change the status of the excluded videotape. The release of the videotape has nothing to do with this litigation; rather, it is a transparent effort by a nakedly partisan and liberal organization to inject this lawsuit and the State's loss into the gubernatorial campaign. There is simply no legal justification for the videotape's release, especially at this time. If the Court disagrees, however, Defendant respectfully seeks a short stay in order to allow him time to pursue appellate review before the matter becomes moot.

Dated: October 17, 2018                                Respectfully submitted,

/s/ *Sue Becker*
Sue Becker, Kansas Bar No. 27806
KANSAS SECRETARY OF STATE'S OFFICE
120 S.W. 10th Ave.
Topeka, KS 66612
Telephone: (785) 296-4575
Facsimile: (785) 368-8033
Email: sue.becker@ks.gov

*Attorney for Defendant*

---

[2] *See* generally, www.aclu.org/kobach.

6

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify that, on the 17th day of October, 2018, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

        /*s/ Sue Becker*
        Sue Becker
        *Attorney for Defendant Kobach*