## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEVEN WAYNE FISH, ET AL.,

      Plaintiffs,

      v.                                                    Case No. 16-2105-JAR

KRIS KOBACH, KANSAS SECRETARY OF
STATE,

      Defendant.

## MEMORANDUM AND ORDER

This voting-rights case proceeded to trial earlier this year and is now pending appeal on the merits. Before the Court are the following motions collateral to the Judgment: (1) Defendant Kris Kobach's Motion to Enforce Protective Order (Doc. 560); (2) Plaintiffs' Motion to Clarify, or in the Alternative, for Modification of Trial Order (Doc. 564); and (3) Defendant's Motion for Stay of Execution of Ruling on Defendant's Motion to Enforce Protective Order (Doc. 569). The first two motions are fully briefed and the Court has reviewed the parties' filings.

For the reasons explained more fully below, the Court grants in part both parties' motions seeking clarification and enforcement of the Court's prior orders relating to the videotape of Defendant's August 3, 2017 deposition. The Court finds that the videotape is not part of the judicial record, and that the public's interest in viewing the deposition was satisfied by its publication at trial and by unsealing the transcript. Moreover, because this deposition was never made part of the judicial record, it retains its status as a matter of nonpublic pretrial discovery under the protective order. For both reasons, the Court finds that the video may not be copied and used outside this litigation. Defendant's motion for stay of execution is therefore moot.

## I.      Background

On March 29, 2016, soon after this case was filed, Magistrate Judge James P. O'Hara issued a protective order that was jointly proposed by the parties.[1]  The protective order defines the term "confidential information," and provides protections for materials designated as such. Material designated as confidential may only be viewed by those outside this litigation "upon consent of the producing parties and on such conditions as the parties may agree."[2]  As to confidential information used at trial:

> Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing.  A party that intends to present or that anticipates that another party may present Confidential Information at a hearing or trial must bring that issue to the attention of the court and the other parties without disclosing the Confidential Information.  The court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.[3]

The protective order "remain[s] in effect and continue[s] to be binding after conclusion of the litigation."[4]

On June 23, 2017, Judge O'Hara granted Plaintiffs' request to reopen discovery for a limited deposition of Secretary Kobach.  The deposition was limited in scope to

> non-privileged information and evidence pertaining to the draft amendment and the photographed document.  The deposition will be held . . . in Room 211 of the United States Court House, 500 State Avenue, Kansas City, Kansas.  The undersigned will preside over the deposition and contemporaneously resolve any disputes that arise.  The deposition is limited to sixty minutes of testimony on direct examination.  As agreed to by plaintiffs, all testimony at the deposition will be subject to the confidentiality provisions of

---

[1]Doc. 55.

[2]*Id.* at 6.

[3]*Id.* at 8.

[4]*Id.*

> the protective order (i.e., the deposition will not be open to the public).[5]

Defendant filed a motion for this Court to review Judge O'Hara's decision to allow his deposition, arguing that Tenth Circuit precedent foreclosed the deposition of opposing counsel, and that the deposition was sought solely to embarrass, annoy, or harass him.  This Court denied the motion to review.[6]  As to Defendant's second ground for review, that under Rule 26 the deposition was sought merely to embarrass, annoy, or harass him, this Court found that to the extent Defendant did not waive that argument by not raising it before Judge O'Hara, the safeguards placed on the deposition

> belie any contention that it is being sought to annoy, embarrass or harass.  Judge O'Hara ordered that the deposition will be limited in scope to questions concerning the draft amendment and the photographed document.  He limited the deposition to one hour, and he ruled that the deposition would be subject to the confidentiality provisions of the protective order—it will not be open to the public.[7]

On August 3, 2017, the deposition proceeded in Judge O'Hara's sealed courtroom.  Before the deposition began, Defendant objected to Plaintiffs' use of a videographer, arguing that he had not been provided with prior notice of this method of recording.  Counsel for Defendant argued that excerpts from a prior witness's videotaped deposition had been published on the internet, and they were concerned about the same thing happening with this video.  Judge O'Hara overruled the objection, stating:

> I've not heard any persuasive argument of prejudice here.  I think Secretary Kobach here, as I mentioned, is well dressed.  It's acknowledged that he's a good looking individual.  He's comfortable with speaking in public.  And it just strikes me as a bit odd to think that this particular sort of individual would be harmed

---

[5]Doc. 355 at 23–24 (footnotes omitted).

[6]Doc. 374.

[7]*Id.* at 13.

> by a videotape deposition, which to be clear just like the transcript
> is subject to the protective order.
>
> Now, moving down field at some point where somebody tries to
> attach that to a deposition—or excuse me, to a motion or other
> filing and seek to have it under seal, that's a separate analysis for
> Judge Robinson to make.  If somebody wants to file a motion to
> lift the designation of confidentiality under the protective order,
> then that's for Judge Robinson unless she kicks it back to me.  But
> it seems to me at—despite the lack of advance notice by the
> plaintiffs, which to be—to be frank could be regarded as
> discourteous, I don't see it as—as improper under the rules and I
> don't think it prejudicial to the defendant.  So the deposition will
> proceed by both videography and stenographic means.[8]

At the summary judgment stage that followed this deposition, Plaintiffs attached to their filings the entire *transcript* of Defendant's deposition,[9] and litigated before the undersigned whether the documents about which Defendant testified in this deposition should be sealed.  The Court granted Plaintiffs' motion to unseal those underlying documents,[10] but the motion to unseal did not address the deposition; the parties brought that issue to the Court's attention in a subsequent "Notice," informing the Court of the parties' intent to try to negotiate unsealing certain excerpts.[11]

Unsurprisingly, the parties were unable to reach agreement on the sealed status of the deposition transcript excerpts, so on October 25, 2017, the Court conducted a telephonic hearing on this issue, and orally ruled that the full transcript attached to Plaintiffs' summary judgment filing should remain sealed.  The Court permitted Plaintiffs to file as unsealed attachments those excerpts cited in their briefs, plus content that provided necessary context.[12]

---

[8]Doc. 398 at 13:8–14:5.

[9]Doc. 396, Ex. DD.

[10]Doc. 405.

[11]Doc. 409.

[12]Doc. 416.

The case proceeded to trial and Plaintiffs designated portions of Defendant's deposition testimony under Fed. R. Civ. P. 32(a)(3); he did not testify live.  Defendant objected to the deposition designations, and any other evidence about the NVRA amendment documents discussed during his deposition, on the basis of relevance under Fed. R. Evid. 401.  Defendant counter-designated a robust amount of that deposition in the event the Court denied his relevance objections, resulting in approximately forty minutes worth of testimony designated in total.  The Court denied Defendant's relevance objections.

On March 7, 2018, defense counsel objected to the videotaped deposition being played in Court, and asked instead to "have the line-page designations read into the record or read by counsel as opposed to having the video played."[13]  Alternatively, counsel suggested the Court review the transcript in chambers.  The Court declined to review deposition designations in camera, explaining a preference for having "the depositions presented live or, you know, read or played or whatever that might be during the trial rather than me taking it under advisement and try to go through" the many objections raised to the deposition testimony.[14]  As to Secretary Kobach's video deposition, the Court ruled that it would come in by video, after Plaintiffs permitted Defendant a period of time to review the version of the video edited by Plaintiffs to include only the designated portions thereof.  The Court explained:

> It's a video deposition. Video depositions are played, they're not
> read.  And there's a reason people take video depositions, it's
> because it allows the trier of fact the opportunity to see the person
> testify live which is better than reading from the pages of a
> deposition.  That's the choice the plaintiffs made and that's the
> medium through which they've—they chose to take Mr. Kobach's
> testimony.  So that's the medium I'm going to allow them to play
> it, through a video.[15]

---

[13]Doc. 504 at 315:7–9.

[14]*Id.* at 317:12–16.

[15]*Id.* at 323:15–24.

On March 9, before Plaintiff introduced the video of Secretary Kobach's deposition, Defendant's counsel asked that the video not be made publicly available and that it not be made part of the record, given the Court's local rule prohibiting broadcasting of witness testimony in the courtroom,[16] and the Eighth Circuit's holding in *United States v. McDougal*.[17]  The Court agreed:

> I tend to agree because, as you know, there's a rule against broadcasting and—outside of the courthouse testimony.  So I agree that this particular testimony that's being presented by video is—while it should be marked as an exhibit, it's not actually made a part of the—the record.
>
> And it—well, in fact, exhibits in general are returned to the parties at the close of the trial, so I don't know that it's an issue anyway.  But I agree with you, it shouldn't be a public record for purposes of our docket.[18]

Counsel for Defendant next confirmed with the Court that "the videotape itself is not available to be publicly disseminated, whereas the trial transcript that may contain the testimony is the judicial record.  Is that my understanding as well?"[19]  The Court responded, "That's correct."[20]

Next, Defendant's counsel asked if the deposition designations that included excerpts beyond those that were unsealed at summary judgment were still sealed.  The Court explained that because it overruled Defendant's relevance objections to the designated portions of the deposition, the seal was lifted as to those designations and Defendant's counter-designations:

---

[16]D. Kan. R. 83.2.1.

[17]103 F.3d 651 (8th Cir. 1996).

[18]Doc. 509 at 1193:22–1194:8.

[19]*Id.* at 1194:14–18.

[20]*Id.* at 1194:19.

"I'm unsealing those parts that I've ruled upon as designations and counter-designations. And you are not waiving your objection to this being played by countering—by counter-designating. I mean, you're not waiving. Your objection is preserved for the record."[21]

After the tape was played in open court, Plaintiffs' counsel moved for admission of the tape, which was marked as Exhibit 148, "pursuant to the—the Court's prior recommendation."[22] The Court ruled:

> Exhibit 148, the video deposition is admitted, but it can be—it will be withdrawn at the close of the trial. And for purposes of the record, the written transcript of this will be part—just like the deposition transcripts are part—you know, the oral deposition transcripts are part of the trial transcript but not the actual tape itself.[23]

In addition to his status as the Kansas Secretary of State, Defendant is currently the Republican gubernatorial candidate in Kansas in the upcoming election on November 6, 2018. Since the close of trial, Plaintiffs' counsel have understandably received multiple requests from journalists and media entities for copies of the videotape. Some members of the media could not attend trial at the time when the video was played, and while others viewed the video, they seek a copy of the videotape based on the strong public interest in publishing and reporting on the video testimony as opposed to the transcript of the proceedings.

On September 10, 2018, Plaintiffs sent a letter to Defendant stating their position that they had a legally protected right to distribute the videotape in response to media requests, and requesting that Defendant respond with any objections. The parties met and conferred on September 14 and could not reach agreement about the legal status of the videotape. Neither

---

[21]*Id.* at 1196:23–1197:3

[22]*Id.* at 1202:3.

[23]*Id.* at 1202:4–10.

Plaintiffs nor Plaintiffs' counsel have distributed or disclosed the videotape, with the exceptions of submitting it to the Court and playing it during the trial in this case.

## II.     Discussion

There is no issue in this case about whether the transcript of Secretary Kobach's designated deposition testimony at trial is available to the public.  As described above, the transcript of that deposition was deemed confidential under the protective order.  But excerpts of the deposition transcript became part of the judicial record upon attachment to the summary judgment briefs.  And at trial, these more extensive deposition designations and counter-designations were admitted as part of the public record and were not sealed.  The transcript of those designations became part of the record that will go up to the Tenth Circuit on appeal.

The question presented by the pending motions is whether the *videotape* of Secretary Kobach's deposition may be made available by Plaintiffs to parties outside of this litigation without the consent of Secretary Kobach.  To answer this question, Plaintiffs seek clarification of the Court's ruling as to the admission of Exhibit 148 at trial.  Defendant, on the other hand, seeks to enforce the March 29, 2016 protective order, claiming that the videotape itself remains confidential and thus may not be used outside of this litigation.  The Court finds that resolving this question requires it to address two questions: (1) whether the videotape must be made publicly available because it was played at trial and, if not, (2) whether it is otherwise protected from dissemination.

Federal courts "recognize a general right to inspect and copy public records and documents, including judicial records and documents."[24]  To the extent the Court's oral ruling at trial that the videotape itself is not a judicial record was unclear, the Court first sets out the basis

---

[24]*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).

for this ruling.  The Eighth Circuit's decision in *United States v. McDougal*, which considered whether President Bill Clinton's videotaped deposition should be made publicly available, is on point.[25]  In that case, an edited videotape of the President's deposition was played in the courtroom for the jury at trial.  The courtroom was open to the public, and the defense had an opportunity to view the edited tape before it was played.  The transcript, but not the video, was admitted into evidence and copies were released to the public.  The media later sought access to the videotape, and the President moved for a protective order asking that the tape itself and any copies be sealed.[26]

The Eighth Circuit affirmed the lower court's ruling denying public access to the videotape.[27]  First, the court found that the common law right of public access to judicial records did not apply because the videotape itself was not a judicial record, even assuming it had been admitted into evidence.[28]  This is because

> the videotape at issue . . . is merely an electronic recording of witness testimony.  Although the public had a right to hear and observe the testimony at the time and in the manner it was delivered . . . in the courtroom, we hold that there was, and is, no additional common law right to obtain, for purposes of copying, the electronic recording of that testimony.[29]

In other words, a deponent's videotaped testimony should be "on equal footing" to a live witness's testimony, for which photography and broadcasting is prohibited.[30]

Second, the court found no First Amendment right of access extended to the videotape. The Court applied the Supreme Court's holding in *Nixon v. Warner Communications, Inc.*,

---

[25]*United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996).

[26]*Id.* at 653–54.

[27]*Id.* at 659–60.

[28]*Id.* at 656.

[29]*Id.* at 657.

[30]*Id.*

which found that the press's First Amendment right of access to the Watergate audiotapes was

adequately protected.[31]   As in *Nixon*, the Eighth Circuit found no First Amendment violation

because the public, including members of the press, was permitted to watch the videotape in

open court, and because the public was furnished with copies of the written transcript.[32]   As the

*Nixon* Court explained,

> The First Amendment generally grants the press no right to
> information about a trial superior to that of the general public.
> "Once beyond the confines of the courthouse, a news-gathering
> agency may publicize, within wide limits, what its representatives
> have heard and seen in the courtroom. But the line is drawn at the
> courthouse door; and within, a reporter's constitutional rights are
> no greater than those of any other member of the public."[33]

Likewise, in this case, the Court ruled that the videotape itself was not part of the judicial

record.  While the Court allowed the exhibit to be marked, and technically admitted Exhibit 148

for purposes of playing it in court, it explained that just like any other deposition, the written

transcript would be the official record, not the videotape.  The fact that the Court did not seal the

videotape does not render it publicly accessible.  As in *McDougal*, the Court allowed the public

an opportunity to view Secretary Kobach's deposition testimony—just like any other witness's

testimony—by coming to the courthouse and watching it live.  As with any other witness, the

method for determining what was said after-the-fact is to read the transcript, which is publicly

available.

Plaintiffs respond that *McDougal* does not apply here because the Court is not called

upon to decide whether the videotape is part of the public docket for which the Court has a duty

to provide access.  Instead, the pending motions ask the Court to decide whether *Plaintiffs* may

---

[31]*Id.* (discussing *Nixon v. Warner Comm'cns, Inc.*, 435 U.S. 589, 609 (1978)).

[32]*Id.* at 659.

[33]*Nixon*, 435 U.S. at 609 (quoting *Estes v. Texas*, 382 U.S. 532, 589 (1965)).

disseminate copies of the videotape to third parties, specifically members of the press.  While it is true that the Court is not called upon to decide a right of access to material in the court record, Plaintiffs nonetheless ask this Court for guidance on their right to copy the videotape for others.[34] The Court strains to see how the public's right of access to judicial records, or the press's First Amendment right of access to trial proceedings, changes depending on whether Plaintiff or the Court possess the material in question.

Nonetheless, the Court acknowledges that its ruling "unsealing" Secretary Kobach's deposition as to the designations and counter-designations created confusion as to the public's right to access the videotape itself.   The Court's ruling unsealing Secretary Kobach's deposition designations applied to the transcript, not to the videotape.  While it is true that the Court published the videotape in open court, like in *McDougal*, the videotape has never been made publicly accessible otherwise.[35]  Unsealing the transcript did not affect the Court's previous ruling that the videotape was not a judicial record and would not be part of the public docket.

This leaves the question both parties raise: if the videotape is not a judicial record, what are the parties' duties with respect to its confidentiality?  Defendant maintains that the video reverts to its "confidential" designation, and that under the protective order, it may not be produced outside of this litigation.  Plaintiffs maintain that the protective order does not, by its terms, apply to trial material.  Plaintiffs repeatedly refer to the videotape as an admitted exhibit that lost its confidential status upon publication at trial.  But the Court agrees with Defendant that Plaintiffs' characterization of the videotape as trial material is inaccurate.  The protective order

---

[34]Of course, this Court does not possess *any* of the original trial exhibits in this case.  The parties withdrew their exhibits at the end of trial and were tasked with preparing their own record on appeal.

[35]*See McDougal*, 103 F.3d at 659; *see also Apple iPod Antitrust Litig.*, 75 F. Supp. 3d 1271, 1274–75 (N.D. Cal. 2014) (denying request for access to Steve Jobs' deposition videotape because it was played in open court, with advance notice, and transcripts were provided to the public).

states that it does not affect the use of any confidential material at trial.  Instead, the parties are to bring issues surrounding the presentation of confidential information to the Court, and the "court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial."[36]  That is exactly what happened in this instance.  Defense counsel brought the issue to the Court's attention by objecting to the videotape being played, and asked the Court to clarify that it would not be made part of the public record.  The Court ruled that only the transcript would be unsealed and made public.

Although the Court technically admitted Exhibit 148, when read in context, this admission was provisional for purposes of identification and publication.  The trial transcript reflects that Plaintiffs' counsel understood that when moving the exhibit in, he was doing so "pursuant to the—the Court's prior recommendation."[37]  In "admitting" the exhibit, the Court unambiguously ruled that it would not be part of the record on appeal.[38]

Because the videotape of Secretary Kobach's deposition was not part of the judicial record at trial, the presumption in favor of public access does not apply.[39]  Instead, the videotape's pretrial discovery status still applies; it is not a "public component[] of a civil trial."[40]  "A videotaped deposition is, by nature, information that would not otherwise be obtained by opposing counsel, absent this litigation.  It is therefore, appropriate that such

---

[36]Doc. 55 at 8.

[37]Doc. 509 at 1202:3.

[38]The Court notes, however, that under *McDougal*, admission of the video as an exhibit does not dictate a finding that the video is a judicial record that should be publicly available.  *McDougal*, 103 F.3d at 656.

[39]*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *McDougal*, 103 F.3d at 657–58.

[40]*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *see Larson v. Am. Fam. Mut. Ins. Co.*, No. 06-cv-01355-PSF-MEH, 2007 WL 622214, at *1 (D. Colo. Feb. 23, 2007) (granting motion to amend protective order to prohibit the use of video depositions, including after the lawsuit concludes, unless the video deposition is "properly admitted into evidence at trial."); *Springs v. Ally Fin., Inc.*, No. 3:10-CV-311-MOC-DCK, 2014 WL 7778947, at *6–7 (W.D.N.C. Dec. 2, 2014) (issuing protective order after close of case to prohibit use of video deposition that, unlike the transcript, was never admitted and therefore "never lost its status as a 'raw fruit of discovery.'").

information be limited to use in this lawsuit, if the Defendant can establish that other uses will subject the deponent[] to annoyance, harassment, and embarrassment."[41]   Under the stipulated protective order, the videotape of Secretary Kobach's deposition was deemed confidential, subject to any later ruling by the undersigned to unseal it or make it part of the judicial record. The Court permitted the videotape to be broadcast for the limited purpose of trial, and explicitly deemed it not part of the public record in this case.  The protective order, which continues to be binding on the parties, therefore governs disclosure of the deposition videotape.

Moreover, the Court finds that any public interest in seeing Secretary Kobach's videotaped testimony, as compared to reading the transcribed version of his testimony, does not outweigh certain countervailing interests in restricting access to the videotape.  First, there is a rule against broadcasting; live witness testimony becomes part of the judicial record by virtue of the official court transcript.[42]  To find that the marking and publication of a video deposition, on its own, determines whether the videotape of a deposition becomes public would create a rule where "the public would have special access to videos that would not even be available to the court of appeals in the appellate record."[43]

Second, the specific circumstances of the videotaped deposition in this case militate against public access.  The Court notes the multiple rulings by Judge O'Hara and the undersigned overruling Defendant's objections to the August 3, 2017 deposition, objections that included the videotaping of the deposition.  Those objections were overruled in large part because of the narrow scope of Judge O'Hara's order, and the fact that the deposition was sealed

---

[41]*Larson*, 2007 WL 622214, at *1.

[42]D. Kan. R. 83.2.1; Fed. R. App. P. 10 (defining record on appeal).

[43]*Apple iPod Antitrust Litig.*, 75 F. Supp. 3d 1271, 1275 (N.D. Cal. 2014); *see also McDougal*, 103 F.3d at 657 ("our holding does not give special treatment to Rule 15 deponents vis-à-vis witnesses who present live in-court testimony but rather puts them on equal footing.").

and marked confidential, pending a later determination by this Court on public access.  The

Court shares the concerns raised by Judge Rogers in the Northern District of California:

> [I]f releases of video depositions routinely occurred, witnesses
> might be reticent to submit voluntarily to video depositions in the
> future, knowing they might one day be publicly broadcast. If
> cameras in courtrooms were not currently prohibited, the argument
> might have less weight. However, given the lack of authority
> approving such a release, the concern is well-taken that under the
> current rules, deponents have no expectation or notice that the
> videos will be disseminated beyond the presentation during trial.[44]

Similarly, the Court is mindful that under Rule 32, a videotaped deposition is not "intended to

further a party's commercial goals or private pursuits or 'to be a vehicle for generating content

for broadcast and other media.'"[45]

And third, the press was given ample access to the trial proceedings in this case,

including the video of Secretary Kobach's deposition.  The Court went to great lengths to ensure

that the credentialed press had access to the courtroom, and created an overflow room with a

closed-caption feed of the courtroom in the event the courtroom was full.  Additionally, the

Court accommodated the press in this case beyond its normal practices by allowing members to

bring electronic devices into the overflow room, and by allowing them to file stories from within

the courthouse.  The public and press knew well in advance that the Court would be playing the

videotaped deposition, and that it would take approximately forty minutes.[46]  The transcript of

the video was unsealed upon designation and remains available to the public and press.  Under

these circumstances, the Court finds that the public's right to access the video was adequately

protected.

---

[44]*Apple iPod Antitrust Litig.*, 75 F. Supp. 3d at 1257.

[45]*Drake v. Benedek Broad. Corp.*, No. 99-2227-GTV, 2000 WL 156825, at *2 (D. Kan. Feb. 9, 2000)
(quoting *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999)).

[46]Although the video broadcast ran past 5:00 p.m. on March 9, 2018, the courthouse was still accessible to
the public despite the late hour.

For the reasons explained, the Court finds that the videotape of Secretary Kobach's deposition is not a public record that may be copied and disseminated outside of this litigation. The public's right to access the videotape was satisfied when it was played in open court at trial; the unsealed transcript of his testimony is also available to the public, just like any other witness. As a result, the videotape retains its status as confidential pretrial material and is governed by the protective order.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Kris Kobach's Motion to Enforce Protective Order (Doc. 560) and Plaintiffs' Motion to Clarify, or in the Alternative, for Modification of Trial Order (Doc. 564) are **granted in part and denied in part**. The Court clarifies its oral rulings at trial to make clear that the videotape of Defendant's deposition was not made part of the public record and is therefore not released from its confidential status under the protective order.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion for Stay of Execution of Ruling on Defendant's Motion to Enforce Protective Order (Doc. 569) is **moot**.

**IT IS SO ORDERED.**

Dated: October 25, 2018

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        CHIEF UNITED STATES DISTRICT JUDGE