IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | |
|---|---|
| STEVEN WAYNE FISH, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SCOTT SCHWAB, in his official capacity )<br>as Secretary of State for the State of )<br>Kansas, )<br>)<br>Defendant. )<br>) | Case No. 16-2105-JAR-JPO |

## MEMORANDUM IN SUPPORT OF FISH PLAINTIFFS'
## MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

Pursuant to 52 U.S.C. § 20510(c), and this Court's Order, Doc. 546,[1] Plaintiffs file this memorandum in support of their request for attorneys' fees and non-taxable costs in connection with this matter. For the reasons that follow, this Court should award Plaintiffs' attorneys' fees and non-taxable expenses in the total of $3,283,807.26, consisting of attorneys' fees in the amount of $2,900,921.43, and non-taxable expenses in the amount of $382,885.83.

This case was necessary to remedy a "mass denial of a fundamental constitutional right," *Fish v. Kobach*, 840 F.3d 710, 755 (10th Cir. 2016), and an "ero[sion of] confidence in the electoral system" caused by the Kansas documentary proof of citizenship (DPOC) requirement.

---

[1] The parties jointly agreed that, because "[t]he final amount of Plaintiffs' fees request will depend on the time spent on the anticipated appeal to the Tenth Circuit and any subsequent proceedings," Plaintiffs' request for all fees associated with this case would be due to this Court "45 days from the date of final resolution of any appeal, including any petition for a writ for certiorari in the U.S. Supreme Court, filed in relation to this action." Doc. 545 ¶¶ 5-6. This Court accordingly ordered that "all fees and related expense issues shall be held in abeyance until all appeals filed in relation to this action have been exhausted," and that Plaintiffs' application "shall be filed within 45 days from the date of final resolution of any appeal, including any petition for a writ of certiorari in the U.S. Supreme Court or decision by the U.S. Supreme Court." Doc. 546.

1

*Fish v. Kobach*, 309 F. Supp. 3d 1048, 1113 (D. Kan. 2018). As this Court is well-aware, that law had denied a total of 31,089 applicants from becoming registered, representing "approximately 12% of the total voter registration applications submitted since the law was implemented" in 2013. *Fish v. Schwab*, 957 F.3d 1105, 1128 (10th Cir. 2020) (internal quotation marks and citations omitted). As Defendant's own expert estimated at trial, the "number of suspended applications that belonged to noncitizens was 'statistically indistinguishable from zero.'" *Id.* at 1134-35. Given the facts, it is difficult to overstate the importance of this case for voting rights and democratic integrity in Kansas.

For the reasons that follow, Plaintiffs respectfully request that their petition be granted in its entirety.

    **I.**    **Computation of the Lodestar**

The general principles governing the award of attorneys' fees are well-settled. First, the number of hours reasonably expended are multiplied by the attorneys' reasonable hourly rates to determine the product or "lodestar" figure. *Hensley, v. Eckerhart*, 461 U.S. 424, 433 (1983). The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotation marks omitted); *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984). In this regard, the Supreme Court stated: "We . . . take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided by [§ 1988] should compensate" for "the work product of an attorney." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). "[T]here is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

### *A. Hours*

Litigating this matter required the investment of a significant number of attorney and paralegal hours. Plaintiffs' attorneys spent 9,678.42 actual hours on this matter (minus time spent on a contempt motion that was subject to a separate fees petition, *see* Doc. 554), in addition to 681.7 hours contributed by paralegals.

The substantial time devoted to this matter is reasonable in light of the length and complexity of these proceedings. Generally speaking, voting rights litigation is quite complex. *See* Doc. 529 at 6 (citing Federal Judicial Center, *2003-2004 District Court Case-Weighting Study*, at 5 tbl.1 (2005), https://www.fjc.gov/sites/default/files/2012/CaseWts0.pdf). This case in particular spanned almost five years, and featured preliminary injunction proceedings; substantial fact and expert discovery, including discovery-related sanctions imposed on Defendant; a seven-day trial featuring 21 witnesses, followed by extensive proposed findings of fact and conclusions of law from the parties, resulting in a 118-page opinion by this court; two appeals to the Tenth Circuit; and briefing on Defendant's petition for a writ of certiorari before the United States Supreme Court.

Moreover, the number of hours was exacerbated by the Defendant's recalcitrance in litigating this case, and his dilatory conduct in discovery and compliance proceedings, which necessitated substantial motions practices, including a motion for sanctions and two separate motions for contempt, *see infra*. *Cf City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff[s] in response.") (internal quotation marks and citation omitted); *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985) ("While [defendant] is entitled to contest vigorously [plaintiffs'] claims, once it does so it cannot then

complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended."). Defendant unnecessarily multiplied proceedings, and should be assessed for the total attorney time for which Plaintiffs seek fees. By contrast, Plaintiffs' counsel attempted to minimize its hours working on the case. *See* Ho Decl., attached hereto as Ex. A, at ¶ 14. There is no incentive to over-lawyer an issue like this:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

The hours for which Plaintiffs seek fees are as follows:

|  | Hours |
|---|---|
| Neil Steiner | 399.1 |
| Rebecca Waldman | 683.3 |
| Dale Ho | 1,333.3 |
| Doug Bonney | 311.7 |
| Angela Liu | 1,294.52 |
| R. Orion Danjuma | 1,907.6 |
| Sophia Lin Lakin | 1,310.8 |
| Daphne Ha | 541.4 |
| Tharuni Jayaraman | 706.08 |
| Margaret Mortimer | 961.82 |
| Emily Rong Zhang | 228.8 |
| Molly Rugg (paralegal) | 88.2 |
| Lila Carpenter (paralegal) | 593.5 |
| **TOTAL HOURS** | **10,360.12** |

As set forth in the declarations of Mr. Ho and Mr. Steiner, the hours above represent various reductions and exclusions, in an exercise of billing judgment.  *See* Ex. A, Ho Decl. ¶ 14; *See* Ex. B Steiner Decl. ¶ 6.  In recognition of the size of Plaintiffs' trial team, these exclusions include, *inter alia*, two junior associates from Dechert LLP who contributed a total of more than 1,660 hours to the case.  *See* Ex. B Steiner Decl. ¶ 6.  Plaintiffs also exclude work performed by numerous attorneys who each individually worked fewer than 50 hours on the case, particularly on appellate proceedings, including appeal of final judgment before the Tenth Circuit, and briefing in opposition to Defendants' petition for a writ of certiorari before the United States Supreme Court. *See* Ex. A, Ho Decl. ¶ 14.  Several of these timekeepers included some of the most senior and experienced litigators at the ACLU National Office and the ACLU of Kansas.  *See id.*

### B.  Hourly Rates

In setting reasonable attorneys' fees, the general touchstone is whether the rate is in line with those prevailing in the community for comparable services by lawyers of reasonably comparable skill, experience, and reputation.  *See, e.g.*, *Lippoldt v. Cole*, 468 F.3d 1204, 1224-1225 (10th Cir. 2006) (considering the "'prevailing market rate in the relevant community'" in determining what constitutes reasonable rate) (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)).  "The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation." *Id.* (internal quotation marks and citation omitted).  Various factors can justify a departure from market rates, including "[t]he novelty and difficulty of the questions"; "[t]he skill requisite to perform the legal service properly"; "[w]hether the fee is fixed or contingent"; "[t]he amount involved and the results obtained"; and "[t]he experience,

reputation, and ability of the attorneys." *Mkt. Ctr. E. Retail Prop., Inc. v. Barak Lurie, Lurie & Park*, 730 F.3d 1239, 1247 (10th Cir. 2013) (describing the 12 "*Johnson* factors" regarding fee determinations, as set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).

The hourly rates requested for the attorneys and paralegals who performed work on this matter are as follows:

| Attorneys | Rate |
|---|---|
| Neil Steiner, Dale Ho, Doug Bonney, Rebecca Waldman | $500.00 |
| Angela Liu, R. Orion Danjuma | $250.00 |
| Sophia Lin Lakin, Daphne Ha | $240.00 |
| Tharuni Jayaraman, Margaret Mortimer, Emily Rong Zhang | $195.00 |
| Paralegals | $110.00 |

This court previously awarded fees at rates consistent with rates in the local Kansas City market. *See* Doc. 554 at 15. The rates requested by Plaintiffs for their counsel are reasonable and consistent with Kansas City market rates, for the following reasons:

First, the rate of $500 per hour is reasonable for Mr. Steiner, Mr. Ho, Mr. Bonney, and Ms. Waldman. This court previously held that counsel's "specialized knowledge … justif[ies] rates on the high end of the Kansas City market with respect to the partners litigating this matter." Doc. 554 at 15. A rate of $500 per hour is within the range for partners in the Kansas City area. *See* Ex. C, *Missouri Lawyers Weekly* 2019 Billing Rates at 3 (Aug. 2019) (partner rates in Kansas City ranging from $195 to $865, with median of $475)[2]; Ex. D, Hallquist Decl at

---

[2] *Cf. Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1264 (D. Kan. 2017) (finding, for

¶ 5 ($500 is reasonable rate for partners in Kansas City area); Doc. 538-1, 2017 Kansas Bar Association Survey at 17 (partner rates in Kansas ranging from $215 at the 25th percentile to $500 per hour at the 95th percentile).

This Court previously approved Plaintiffs' requested rate of $450 for Mr. Steiner, Mr. Ho, and Mr. Bonney in connection with the motion for contempt in this litigation.  See Doc. 554 at 15–16.  For purposes of this request, however, Plaintiffs seek a slightly higher rate of $500 per hour for these timekeepers, as well as for Ms. Waldman who, like Mr. Steiner, is a partner at the law firm Dechert, LLP.  *See* Ex. B, Steiner Decl. at ¶ 15.

This is appropriate for several reasons.  While Plaintiffs sought a rate of $450 per hour for their lead attorneys' work in connection with the motion for contempt, the work that these attorneys performed for purposes of the substantive merits of the case—including preliminary injunction proceedings, trial, and appeal—was substantially more complicated than the work associated with the contempt motion.  This case featured extensive discovery followed by a lengthy and complex trial, conducted over seven days spread across three weeks, and featuring 21 witnesses, of whom nine were experts.  Trial work is generally compensated at a higher rate than other kinds of attorney work.  *Cf.* Doc. 538-1, 2017 Kansas Bar Association Survey at 18 (trial practice rates in Kansas ranging from $225 per hour at the 25th percentile to $550 per hour at the 95th percentile, compared to overall average rate range of $190 at the 25th percentile to $445 at the 95th percentile).  Voting rights litigation, in particular, is highly specialized.  As this Court previously noted, there is "compelling evidence that voting rights litigation is highly specialized, and there are few if any attorneys in Kansas and Missouri who have previously

---

employment litigation before this Court, that "the relevant market is the Kansas City metropolitan area, which includes Missouri and Kansas").

litigated NVRA claims in federal court." Doc. 554 at 15.[3]  Plaintiffs' counsel respectfully submits that their work throughout this litigation, and particularly at trial, was of a high quality and assisted this Court in reaching its final judgment.  *Cf. Fox*, 258 F. Supp. 3d at 1270 (awarding requested rates based on "outstanding quality of Plaintiff's counsel").  And, merely taking into account nothing more than inflation,[4] it would be appropriate for the court to make an upward adjustment from the rate of $450 per hour that it awarded to these attorneys in August 2018.[5]

Second, the rate of $250 per hour is reasonable for Ms. Liu and Mr. Danjuma.  This Court previously approved this rate for Ms. Liu and Mr. Danjuma.  See Doc. 554 at 16.   A rate of $250 per hour is well-within the range for associates in the Kansas City area.  *See* Ex. C, *Missouri Lawyers Weekly* 2019 Billing Rates at 3 (Aug. 2019) (associate rates ranging from $225 to $495, with median of $345); Doc. 538-1, 2017 Kansas Bar Association Survey at 17 (for

---

[3] Referencing a study by the Federal Judicial Center measuring the complexity and time needed to handle matters by district courts, which found that voting rights cases were among the top five most complex cases and were given a weight of 3.86 compared to 1.0 for an "average" case. Federal Judicial Center, *2003-2004 District Court Case-Weighting Study*, at 5 tbl.1 (2005), https://www.fjc.gov/sites/default/files/2012/CaseWts0.pdf (hereinafter, "FJC Case-Weighting Study"). This is a higher score than the FJC has rated employment cases, *see* FJC Case-Weighting Study, at 5 tbl.1, for which this court awarded a rate of $450/hour in 2017; *see Riordan v. ASAP Expert Counseling, LLC.*, No. 16-CV-2011-JAR-TJJ, 2017 WL 2225223, at *2.

[4] *Cf. Bruce v. Colvin*, Civ. Action No. 14-1166-JWL, 2015 WL 7078939, at *4 (D. Kan. Nov. 13, 2015) (Court "used the Bureau of Labor Statistics CPI Inflation Calculator" to calculate appropriate rate for attorney's fees*); Culler v. Massanari*, No. 96-4164-SAC, 2001 WL 1718033, at *2 (D. Kan. Dec. 20, 2001) ("District courts have been determining the cost-of-living adjustment by multiplying the basic EAJA rate by the current consumer price index . . .") (internal quotation marks and citation omitted).

[5] The CPI indicates that $450 in August 2018 translates to $464.86 in December 2020. *See* U.S. Dep't of Labor, Bureau of Labor Statistics, Databases, Tables, & Calculators by Subject, *CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm (last visited Jan 26, 2021).

attorneys in Kansas with 10 to 14 years of experience, rates ranging from $190 per hour at the 25th percentile, to $400 per hour at the 95th percentile, and a median of $225 per hour).

Third, the rate of $240 per hour is reasonable for Ms. Lin Lakin and Ms. Ha. This Court previously approved this rate for Ms. Lin Lakin. See Doc. 554 at 16. Ms. Ha was a member of the trial team, and graduated from law school in 2012, the same year as Ms. Lakin. *See* Ex. B, Steiner Decl. at ¶ 36. As noted *supra*, a rate of $240 is well-within the range for associates in the Kansas City area. *See* Ex. C, *Missouri Lawyers Weekly* at 3; Doc. 538-1, 2017 Kansas Bar Association Survey at 17 (for attorneys in Kansas with 6 to 9 years of experience, rates ranging from $175 per hour at the 25th percentile, to $345 per hour at the 95th percentile, and a median of $200 per hour).

Fourth, the rate of $195 per hour is reasonable for Ms. Jayaraman, Ms. Mortimer, and Ms. Zhang. This Court previously approved this rate for Ms. Jayaraman, who graduated from law school in 2016. See Doc. 554 at 16-17. Ms. Mortimer and Ms. Zhang also graduated from law school in 2016. *See* Ex. A, Ho Decl. at ¶ 9, Ex. B. Steiner Decl. at ¶ 31. And, as noted, *supra*, the requested rate is well-within the range for associates in the Kansas City area.

Fifth, the rate of $110 per hour is reasonable for time expended by other paralegals in this matter. This Court has already ordered this rate for ACLU paralegals, *see* Doc. 554 at 17.

The lodestar and presumptive attorneys' fee is $3,053,601.00, as set forth in the table below:

|  | Hours | Rate | Total |
|---|---|---|---|
| Neil Steiner | 399.10 | $500.00 | $199,550.00 |
| Rebecca Waldman | 683.30 | $500.00 | $341,650.00 |
| Dale Ho | 1,333.3 | $500.00 | $666,650.00 |
| Doug Bonney | 311.7 | $500.00 | $155,850.00 |

| | | | |
|---|---|---|---|
| Angela Liu | 1,294.52 | $250.00 | $323,630.00 |
| R. Orion Danjuma | 1,907.6 | $250.00 | $476,900.00 |
| Sophia Lin Lakin | 1,310.8 | $240.00 | $314,592.00 |
| Daphne Ha | 541.40 | $240.00 | $129,936.00 |
| Margaret Mortimer | 961.82 | $195.00 | $187,554.90 |
| Tharuni Jayaraman | 706.08 | $195.00 | $137,685.60 |
| Emily Rong Zhang | 228.8 | $195.00 | $44,616.00 |
| Molly Rugg (paralegal) | 88.2 | $110.00 | $9,702.00 |
| Lila Carpenter (paralegal) | 593.5 | $110.00 | $65,285.00 |
| | | Subtotal: | $3,053,601.50 |
| | | Less 5% | - $152,680.08 |
| | | **TOTAL REQUEST** | $2,900,921.43 |

Furthermore, in an exercise of billing judgment, and to address potential duplication in work, Plaintiffs reduce their total attorneys' fees request by 5%, for a total fee request of $2,900,921.43.

This total figure is consistent with what courts have awarded or recommended in other voting rights cases. *See, e.g.*, *NAACP v. East Ramapo Central School Dist.*, 17-cv-08943-CS-JCM, Doc. 671 (S.D.N.Y. Dec. 29, 2020) (Report and Recommendation to award Plaintiffs in voting rights case $4,333,696.33 in fees and costs); *North Carolina NAACP v. McCrory*, No. 13-cv-658, Doc. 508 (M.D.N.C. Dec. 7, 2018) (approving award of $5,922,165.28 in total fees and costs in voting rights case featuring preliminary injunction proceedings, trial, and two appeals); *Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2015 WL 11120966, at *11 (E.D. Wash. June 19, 2015) (in voting rights case, awarding fees totaling $1,521,911.50); *Gonzalez v. State of Arizona*, No. 2:06-cv-01268, Doc. 1143 (D. Ariz. March 31, 2014) (in NVRA challenge to Arizona documentary proof of citizenship law approving award of attorneys' fees, expenses, and costs totaling $1.94 million); *cf. Yumori-Kaku v. City of Santa Clara*, H046105, 2020 WL

7764966, at *12 (Cal. Ct. App. Dec. 30, 2020) (in California Voting Rights Act case, affirming trial court grant of $3.1 million in attorney's fees and costs).

## II.     Non-Taxable Expenses

The ACLU incurred costs totaling $243,951.65, *see* Ex. A, Ho Decl. at ¶17; while Dechert incurred costs totaling $138,934.18, *see* Ex. B, Steiner Decl. at ¶43.  Plaintiffs therefore request collective non-taxable expenses in the total of $382,885.83.

## III.    Additional Circumstances

Additional considerations warrant awarding Plaintiffs' requested attorney's fees and costs without any reductions.  Put simply, this was not an easy case to litigate.  As noted above, this was a complex matter with extensive discovery and a lengthy trial.  But it also bears emphasis that the conduct of Defendant's predecessor—who represented himself in proceedings before this court and on appeal of the preliminary injunction—unnecessarily multiplied proceedings throughout this litigation, with conduct that triggered, *inter alia*: contempt proceedings on two occasions; discovery sanctions; and repeat violations of the rules of civil procedure throughout trial, which also resulted in sanctions.

This memorandum will not attempt to itemize every instance of such obstruction and misconduct, but simply notes a few instances that unnecessarily prolonged this litigation.

First, as this court is well-aware, Defendant's predecessor had "a history of noncompliance with the preliminary injunction order" in this case, as "[h]e not only willfully failed to comply with the preliminary injunction for five months, but then only partially complied in October 2016 upon the threat of contempt."  *Fish v. Kobach*, 294 F. Supp. 3d 1154,

11

1165 (D. Kan. 2018).  His continued non-compliance with the preliminary injunction in this matter for almost two years triggered a second contempt motion, which this court granted.  *See id.* at 1168 ("[T]he general theme of Defendant's [non-]compliance with the preliminary injunction order—that this Court's order is not 'the law.'").  This court found that, in the course of those proceedings, Defendant's predecessor made "disingenuous[]" arguments, and the court expressly noted that it was "troubled by Defendant's failure to take responsibility for violating this Court's orders, and for failing to ensure compliance over an issue that he explicitly represented to the Court had been accomplished." *Id.* at 1166.  Defendant ultimately did not appeal this court's contempt ruling.

Second, Defendant's predecessor also engaged in pre-trial discovery misconduct.  Specifically, he "misled the Court about the contents of the documents at issue on [a] motion to compel," leading to the imposition of discovery sanctions, which this court affirmed. *Fish v. Kobach*, 267 F. Supp. 3d 1297, 1303 (D. Kan. 2017).

Third, Defendant's predecessor engaged in similar unprofessional conduct throughout trial itself.  As this court noted in its findings of fact and conclusions of law, the trial featured a "repeated and flagrant violations of discovery and disclosure rules," *Fish v. Kobach*, 309 F. Supp. 3d 1048, 1054 (D. Kan. 2018), amounting to a "pattern and practice by Defendant of flaunting disclosure and discovery rules that are designed to prevent prejudice and surprise at trial," with "repeated instances" of "resist[ance to] the Court's rulings" *id.* at 1118–19. Defendant's predecessor repeatedly attempted to "ambush the Plaintiffs and this Court with updated information on the eve of, or during, trial" constituting "straightforward violation[s] of Defendant's ongoing duty to supplement discovery disclosures under Rule 26(e), and under Rule 37(c)(1)" that were "not harmless or substantially justified." *Id.* at 1118. His conduct triggered

repeated "objections throughout trial despite the Court's repeated efforts to educate Defendant about his Rule 26 disclosure obligations," unnecessarily complicating and prolonging the proceedings. *Id.* at 1115.  This court admonished Defendant's predecessor:

> Please read Rule 26 and Rule 37. We've reached these issues time and time and time again and, you know, ad nauseam. You can't, you know, sit down with your expert on the eve of trial and come up with new numbers, come up with new estimates that are going to form the basis of a new opinion.

Trial Tr. March 12, 2018 at 1477:12-17.  But Defendant's predecessor continued to seek to introduce evidence that had not been properly disclosed to Plaintiffs, and, the following day, this court was forced to admonish Defendant's predecessor again:

> THE COURT: Mr. Kobach, as you know, there have been a number of instances now where I've allowed you to make a proffer; mostly, if not exclusively, in connection with my sustaining objections to—through this witness as well as some others, offering up new evidence supporting new opinions or old opinions that were not disclosed in the expert report or not otherwise disclosed.
>
> And it's Rule 26, of course, that's been the basis for my rulings. I think it would be helpful if you would just articulate under what provision of Rule 26 you think this is permissible. And we can take a ten-minute break or so, if you'd like to.
>
> I do think we need to make a record on this because there's so many questions that have been posed to this witness as well as others that have drawn this objection that it's undiscovered expert testimony, undiscovered evidence, not properly disclosed through initial disclosures or supplemental disclosures under Rule 26.
>
> And I-- you know, I know that, you know, you wanted to make a record through proffer suggesting that you think my rulings excluding this under Rule 26 are wrong, so I do think we ought to have a record of what your basis for that is. So let's take a break for let's say 15 minutes.

Trial Tr. March 13, 2018 at 1678:11 – 1679:11.  Ultimately, this court imposed sanctions, *see* 309 F. Supp. 3d at 1119, which Defendant's predecessor did not appeal.

Defendant's predecessor engaged in other forms of unprofessional conduct as well.  He was frequently unprepared during court appearances, which unnecessarily prolonged proceedings.  To take one example: during the March 20, 2018 contempt hearing, Defendant's

13

predecessor sought to introduce several emails into evidence as exhibits, but became confused as to which of the emails had actually been sent to county elections officials, prompting a delay:

> MR. KOBACH: Your Honor, can we take a five-minute recess so we can find all these different e-mails?
>
> THE COURT: That's fine. Let's be in recess for 10 minutes.
>
> (Recess.)
>
> THE COURT: Let the record reflect we've been on a 20-minute break, the defense counsel is not here. Mr. Caskey is here. We'll wait. I got tired of standing outside the courtroom and waiting. Where is Mr. Kobach?

Tr. of Contempt Hearing, March 20, 2018, at 56:14-24.

Throughout all of this, Plaintiffs' counsel respectfully submits that they "acted professionally throughout this litigation despite the behavior of opposing counsel." *Fox*, 258 F. Supp. 3d at 1270. They therefore request that their petition for fees and costs without any further reductions.

### IV.     Local Rule 54.2

In conformity with Local Rule 54.2, Defendant's counsel has agreed to confer with Plaintiffs counsel on February 8, after which Plaintiffs' counsel will file the requisite certification in accordance with Local Rule 54.2(c)-(d) if necessary. *See* Ex. A, Ho Decl. at ¶¶ 19-20.

### V.     Conclusion

For the foregoing reasons, Plaintiffs request this Court award them a total of $3,283,807.26 consisting of attorneys' fees in the amount of $2,900,921.43, and non-taxable expenses in the amount of $382,885.83.

DATED this 28th day of January, 2021.

Respectfully submitted,

| /s/ Sharon Brett | /s/ Dale E. Ho |
|---|---|
| **SHARON BRETT (#28696)** | DALE HO* |
| American Civil Liberties Union of Kansas | R. ORION DANJUMA* |
| 6701 W 64th St., Suite 210 | SOPHIA LIN LAKIN* |
| Overland Park, KS 66202 | American Civil Liberties Union Foundation, |
| Phone: (913) 490-4100 | 125 Broad St. |
| Fax: (913) 490-4119 | New York, NY 10004 |
| sbrett@aclukansas.org | Phone: (212) 549-2693 |
| | dale.ho@aclu.org |
| | odanjuma@aclu.org |
| | slakin@aclu.org |
| | |
| NEIL A. STEINER* | ANGELA M. LIU* |
| REBECCA KAHAN WALDMAN* | Dechert LLP |
| Dechert LLP | 35 West Wacker Drive |
| 1095 Avenue of the Americas | Suite 3400 |
| New York, NY 10036 | Chicago, Illinois 60601-1608 |
| T: (212) 698-3822 | Phone: (312) 646 5816 |
| F: (212) 698-3599 | Fax: (312) 646 5858 |
| neil.steiner@dechert.com | angela.liu@dechert.com |
| rebecca.waldman@dechert.com | |
| | |
| *Counsel for Plaintiffs* | * admitted *pro hac vice* |

15

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on this 28th day of January, 2021, I electronically filed the foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Dale Ho
DALE HO

*Attorney for Plaintiffs*