IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEVEN WAYNE FISH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-2105-JAR-JPO |
| v. | ) | |
| | ) | |
| SCOTT SCHWAB, in his official | ) | |
| capacity as Secretary of State for | ) | |
| the State of Kansas, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| PARKER BEDNASEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15-9300-JAR-JPO |
| v. | ) | |
| | ) | |
| SCOTT SCHWAB, in his official | ) | |
| capacity as Secretary of State for | ) | |
| the State of Kansas, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND EXPENSES**

Kansas Secretary of State Scott Schwab, substituted in for previous Secretary
of State Kris Kobach, sued in his official capacity, submits this Memorandum in
Opposition to Plaintiffs' Motion for Attorneys' Fees and Expenses.

As other federal courts have stated, NVRA suits are not complex or difficult cases.[1] Attorneys fee awards in some NVRA cases are shown on the Chart attached as Exhibit A hereto. Awards in similar cases is one of the so-called "Johnson factors" to be considered on an attorney fee award.[2] Federal courts have awarded attorneys' fees to the prevailing plaintiffs in the range of $14,000.00 to a high of an **agreed-to** $1.9 million on a case (cited by Plaintiffs) that went up to the U.S. Supreme Court twice and has twice as many filings as does this case and is still less than half what Plaintiffs are seeking to recover here.[3] In fact, the median award on the chart is **$189,223.25**.[4] Plaintiffs' request is approximately **twenty (20) times** the median award in these NVRA cases.

For the Tenth Circuit appeal through the denial of the certiorari petition, Plaintiffs' request **$363,110** in legal fees, expense of $8,091, for a grand total of $371,201. A normal Tenth Circuit appeal would cost a client between **$30,000 and $50,000**; the optional cert petition response might cost $10,000 to $20,000 more.[5] Plaintiffs' request is approximately **eight to ten (10) times** the amount normally charged for a Tenth Circuit appeal.[6]

---

[1] *See, e.g., Scott v. Schedler,* No. 11-926, 2013 WL 5739070, at * 6 (E.D. La. Sept. 20, 2013), report adopted by 2013 WL 5739066 (E.D. La. Oct. 22, 2013), *aff'd in part, vacated in part,* 771 F.3d 831 (5th Cir. Nov. 4, 2014), attached as an Exhibit hereto for the Court's convenience.

[2] *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989).

[3] See Exhibit A hereto. While Plaintiffs' Memorandum cites cases at page 10 as being awards from NVRA cases, only one of them is – *Gonzalez* – which was an agreed-to award; the fee issue was not litigated. The others are inapposite.

[4] *Id.*

[5] Declaration of Jonathan Sternberg, at paras. 4, 6, attached hereto. Even under a more generous estimate offered by Attorney Greg Goheen, Declaration of Greg Goheen, attached, Plaintiffs' request for fees on appeal is still excessive as he notes that 150 hours is the high end, only three attorneys are usually utilized, and the cost should be lower for attorneys who worked as trial counsel.

[6] Sternberg Declaration at para. 4.

Congress intended for a prevailing plaintiff to recover what it actually cost the plaintiff to bring the case, not to provide attorney windfalls.[7]

## I.  Plaintiffs' Grossly Exaggerated Fee Request Should be Denied

Although Courts have used various **descriptions, such as,,** "grossly exaggerated," "grossly excessive," "extravagant," "outrageously excessive," "gluttonously high," "grossly inflated," or "absurd," the principle remains the same: an attorneys' fee request under §1988 that is excessive, is the product of inept recordkeeping, is unsupported or inadequately explained, or where the fee application reflects no good faith effort to exclude excessive, redundant, or otherwise unnecessary hours, the attorneys' fee request may be completely denied as "an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate time records  and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees."[8]

In *Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1254-55 (10th Cir. 1998), the Tenth Circuit recognized that an outrageously excessive fee request was subject to complete denial, stating:

> At least four circuits have held that when a party submits a [Section] 1988 attorney's fee request that is outrageously excessive, the court may respond by awarding no fees at all [citing decisions from the District of Columbia, First, Fourth and Seventh Circuits]. The reason for acting punitively when a party asks for fees that are outrageously excessive is to deter attorneys from

---

[7] Sen. Rep. No. 94-1011, reprinted in 5 USCCAN 5908-14, attached hereto.

[8] *Brown v. Stackler,*612 F.2d 1057, 1059 (7th Cir. 1980); *see Jordan v. Dept. of Justice,* 691 F.2d 514, 518 (D.C. Cir. 1982); *Vocca v. Playboy Hotel,* 686 F.2d 605, 607 (7th Cir. 1982); *see also Hall v. Borough of Roselle,* 747 F.2d 838, 841-42 (3d Cir. 1984) (noting that the courts must rely upon the accuracy of counsel's recordkeeping and counsel's intellectual honesty in these matters); *see, e.g.,* Young v. Smith, 269 F. Supp. 3d 251 (M.D. Pa. 2017) (denying plaintiff's counsel's fee request as grossly exaggerated); *Toussie v. County of Suffolk,* 2012 WL 3860760 (E.D. N.Y. Sept. 6, 2012) (because counsel's request was "grossly excessive," fee request denied in its entirety).

'mak[ing] excessive demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.' [citation omitted].[9]

Here, Plaintiffs' request is "grossly excessive," representing a figure that is 8 to 10 times the cost of a Tenth Circuit appeal (billing over 1200 hours when 100 is usual *on the high end*),[10] and around 20 times more than the median fee award in the NVRA cases depicted on our chart especially when Plaintiffs' counsel claim to be experts (and thus should use fewer hours and fewer attorneys, not more of both).[11]

Plaintiffs' request reflects the kind of sloppy recordkeeping and lack of a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours that justifies total denial of a fee request. Time and the Court's 30-page limit constrain listing them all, but the 500 pages include many examples, as supported by the attached Declaration of Garrett Roe and examination of the time entries themselves:

---

[9] *See also Scham v. District Courts Trying Criminal Cases,* 148 F.3d 554, 557 (5th Cir. 1998) (denial is appropriate on an excessive request because "if the court were required to award a reasonable fee where an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place.") (citation omitted) (abrogation on other grounds stated in *Bailey v. Mississippi,* 407 F.3d 684 (5th Cir. 2005).

[10] *Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir. 1980) (affirming district court's complete denial of fees where the number of hours claimed by plaintiff's attorneys was "simply absurd" and exaggerated "probably on the order of eight times.").

[11] "A high hourly rate is warranted for someone with extensive experience, particularly because it is expected that experienced practitioners will be more efficient with the use of their time." *Henderson v. Crimmins,* 147 F. Supp. 3d 780, 787 (N.D. Iowa 2015) (citing *Miller v. Dugan,* 764 F.3d 826, 833 (8th Cir. 2014); *see Borrell v. Bloomsburg Univ.,* 207 F. Supp. 3d 454, 514 (M.D. Pa. 2016 ) (excessiveness in time spent in light of attorney's expertise is legitimate reason for reducing fee award; fee applicant cannot demand high hourly rate based on experience and expertise and then run up inordinate hours) (citing *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir. 1983)) (subsequent history omitted); *see, e.g., Scott v. Schedler,* 2013 WL 5739070, at * 7 (since one of Plaintiffs' counsel was an expert in the NVRA, "I cannot accept that plaintiffs reasonably thought it necessary to employ any other attorneys – much less 12 from out-of-state jurisdictions – to handle this matter in addition to Wilson, who probably could have obtained the same result on his own, possibly with the assistance of two associates."). Although WESTLAW shows *Schedler* with a red flag notation, the Magistrate's decision regarding fees was affirmed by the District Judge and not overruled on appeal; the appeal resulted in a further reduction of fees, not an increase.

- Billing for a 28-hour, 21-minute day, billed on 2/12/18, 21 hours and 31 minutes billed on 7/11/18, 16 hours and 10 minutes billed on 10/5/17, and other similar excessive and unexplained entries (*Fish)*;[12]

- Seeking to recover again (double-billing) for sanctions already paid and seeking to recover fees previously denied by the Court;

- Billing for multiple attorneys where only one was doing the work, such as billing for one attorney speaking on the conference call but others listening in, billing for more than one attorney per deposition, billing for several attorneys to attend trial although they did not participate; billing for several attorneys to attend arguments, although only one argued;[13]

- Billing for press interviews and meeting with Democratic Party activists, regulations, other cases, recruitment and other noncompensable activities;

- Seeking to recover from Secretary Schwab for time spent on other defendants, KDOR Secretary Nick Jordan (mentioned more than 132 times in the billing records) and Jamie Schew;

- Billing (and not reducing) where Plaintiffs prevailed on only a single count of their six-Count Complaint (*Fish)*;[14]

---

[12] Inept record keeping is a factor justifying complete denial of a fee request. *Zabkowicz v. West Bend Co.,*789 F.2d 540, 549-50 (7th Cir. 1986).

[13] *See, e.g.,* Schedler,  *at* *7 (time for attorneys attending is not compensable). As just one example, Mark Johnson billed the Secretary for a trip to Salt Lake City, overnight stays and $107 dinner although he was not arguing the appeal.

[14] *See, e.g.,  Lewis v. Kendrick,* 944 F.2d 949, 956-58 (1st Cir. 1991) (finding "special circumstances" warranting denial of fees because of attorney's misconduct including filing an exaggerated fee request that failed to eliminate hours that were unnecessary or expended on several unsuccessful claims); *Fair Housing Council v. Landow,* 999 F. 2d 92, 97 (4th Cir 1993) (plaintiff's fee request outrageously excessive where the time records were inadequate and counsel had failed to make a good faith effort to exclude fees attributable to unsuccessful claims.).

- More than 300 billings for weekly team meetings (Plaintiffs' counsel request fees for 291.51 hours of meetings at a cost of $86,196.90 and 773.91 hours spent on calls or $239,631.40 for calls alone);[15]

- Billing approximately 138.33 hours for a Complaint and an Amended Complaint that added one count alone – a staggering 3 weeks full-time on one 33-page document and then a 40-page document, or $44,142.60 on the Complaint alone (*Fish*);

- Billing for four amended Complaints (*Bednasek*);[16]

- Billing for numerous vague and unexplained entries (e.g., "draft," "review," "revise," "analyze" "continue to oversee," "correspondence," "conference," etc. with insufficient detail to tell what the time entry was for, let alone prove how the time was reasonably necessary in this case);[17]

- Billing for a TRO that was lost and a preliminary injunction that was withdrawn (*Bednasek*);[18]

---

[15] These figures are estimates based upon what could be discerned on time-constrained review of the disorganized 500 pages, an arduous task as discussed in the Declaration of Garrett Roe, attached hereto.
[16] "Fruitless work," excessive, and unproductive time not recoverable. *Mares v. Credit Union,* 801 F.2d 1197, 1203, 1207 (10th Cir. 1986).
[17] *See Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir. 1983) (establishing the requirement of meticulous contemporaneous billing records as a precondition or fees); *see, e.g., Vocca v. Playboy Hotel,* 686 F.2d 605, 607-08 (7th Cir. 1982) (affirming district court complete denial of fees based in part on the inadequacies of the billing records in failing to set forth sufficient information about the work performed, "making it impossible to determine an appropriate fee.").
[18] *Mares,* at 1203, 1207 (affirming denial of recovery for "fruitless work," unnecessary and unproductive efforts); *see, e.g,* Calix v. Ashton Marine, LLC, 14-2430, 2016 WL 4194119, at * 10 (E.D. La. July 14, 2016) report and recommendation adopted, No. CV 14-2430, 2016 WL 4180977 (E.D. La. Aug. 8, 2016) (eliminating hours that were excessive and hours related to unsuccessful and wasteful tasks).

- On the appeal, billing approximately 1202 hours, including one attorney who was also trial counsel billing five weeks of full-time work to reformat arguments made in the district court;

- Billing $154,988.25 (660.94 hours) for *Daubert* and similar motions that Plaintiffs' counsel lost and which were unnecessary in a bench-tried case;

- Billing for time spent preparing, deposing and litigating over an expert that Plaintiffs' counsel did not present at trial (*Bednasek*)

- Billing $22,043.40 (90.37 hours) for an unsuccessful effort to unseal Kris Kobach's deposition so that it could be used for political purposes rather than for the case itself;

- Billing to depose Bryan Caskey multiple times rather than once;

- Billing for unnecessary motions (*e.g.,* a motion to quash upon which Plaintiffs failed, a disfavored motion for default judgment; at least $83,572 (229.49 hours) on wholly unnecessary work related to a class certification motion denied by the Court as unnecessary; and others)

- Billing for background research or reviewing unrelated cases;

- Billing at attorney rates rather than clerical rates for what appears to be nothing more than PACER notices hitting an email inbox or proof-reading;

- Appearing to bill for discovery that was never served (*Bednasek)* and unnecessary discovery;

- Failing to demonstrate that all travel was necessary, and all necessary travel was billed at 50% or lower rate;

- Billing for numerous vague and unexplained entries (e.g., "draft," "review," "revise," "analyze" "continue to oversee," "correspondence," "conference," etc. with insufficient detail to tell what the time entry was for, let alone prove how the time was reasonably necessary in this case).

Requesting $4 million for an NVRA case where fee awards have generally been much lower and requesting $317,000 plus expenses for an appeal worth $30,000, along with the billings submitted which show a lack of good faith, is the kind of grossly exaggerated request for which a total denial of the fee is warranted. As Courts have noted, anything less than denial effectively rewards outrageous behavior. Plaintiffs cannot seek from an adversary what they could not bill to a paying client. Plaintiffs' counsel simply could not bill $4 million to any paying client.[19]

## II. If Not Denied In Toto, Significant Reductions Are Required

Plaintiffs bear the burden of establishing both that they are entitled to **every single dollar requested** and that the proposed award is reasonable.[20] Plaintiffs have not met either burden here. In fact through their overbilling, their over-lawyering, and their vague, imprecise and sloppy billing entries, submitting the request by timekeeper rather than by task,[21] Plaintiffs' counsel have attempted to shift the burden to the Defendant and to the Court to engage in the excruciating, time-consuming and nearly impossible exercise of attempting to sort through the

---

[19] *See* Kansas Rule of Professional Conduct 1.5 (a lawyer's fee shall be reasonable).

[20] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986).

[21] Plaintiffs' counsel refused a request to resubmit the time records by task rather than timekeeper, curtly stating they had "no obligation" to do so as per the attached email of Dale Ho.

morass of billing records to try to identify compensable time and sort out what was reasonably expended in this litigation, tiny specks of wheat in the considerable chaff.

Although that is not Defendant's burden or the Court's burden, that is the effect of Plaintiffs' actions. In similar circumstances, where a request was not totally denied, Courts have applied percentage reductions rather than try to weed through the mess. As the Court noted in *Case* where the Plaintiffs "submitted well over a hundred pages in billing entries with several entries per page, 'it is neither practical nor desirable to expect the trial court judge to have reviewed each paper in the massive case file to decide, for example, whether a particular motion could have been done in 9 hours instead of 14.5 hours. Instead, 'a general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use."[22] Similarly in *Mares,*[23] the Circuit noted there is no requirement for the Court to identify each disallowed hour which, given the massive nature of this request, would be impossible.

If the Court takes that approach here, only very large percentage reductions will do, as to do otherwise is to ignore Plaintiffs' failure in their duty to maintain meticulous and clear records,[24] and to exercise good faith and billing judgment to remove duplicative and excessive entries.

### A. Plaintiff's Counsel Has the Burden to Show How Time is Allotted to Specific Tasks and that Billing Judgment was Applied to Reduce Unnecessary Time and Duplication

---

[22] Case, 157 F.3d at 1253 (citing *Mares).*
[23] *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1202 (10th Cir. 1986).
[24] *Fish v. Kobach,* No. 16-2105-JAR, 2018 WL 3647132, * 4 (D. Kan. Aug. 1, 2018).

Plaintiffs have the burden to demonstrate that they are entitled to fees under applicable law.[25] A prevailing party submitting a request for reasonable attorney's fees under 42 U.S.C. § 1988 bears the "burden to prove and establish the reasonableness of each dollar, each hour, above zero."[26] The Court must examine **specific tasks** to determine if they are properly chargeable and then at the hours **expended on each task** to determine if they are reasonable.[27]  In order for the Court to exercise this function, "[c]ounsel for the party claiming the fees has the burden of providing hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[28] Hours should be reduced if the attorneys' time records are "sloppy and imprecise" and fail to document adequately how he or she utilized large blocks of time."[29]  The first step is adequate records showing how each hour claimed was allotted to specific task.[30]  Once adequate records are presented, the Court "must ensure that the winning attorneys have exercised 'billing judgment,' which means "winnowing the hours actually expended down to the hours reasonably expended. Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."[31]

---

[25] *See, e.g., Robinson v. City of Edmond,* 160 F.3d 1275, 1280 (10th Cir. 1998).
[26] *Mares,* 801 F.2d at 1210
[27] *Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir. 1998).
[28] *Id.*
[29] *Id.* (citation omitted).
[30] *Id.*
[31] *Id.*  (citation omitted).

Duplication of services must be eliminated. "'[I]f three attorneys were present at a hearing when one would suffice, compensation should be denied for the excess time.'"[32] The district court may reduce the hours awarded if counsel included "hours that were unnecessary, irrelevant and duplicative."[33] It is for Plaintiff to justify the presence of multiple attorneys for various activities.[34]

In its earlier opinion in this case, the Court noted several of the applicable principles and effectively put Plaintiffs' counsel on notice of the requirements for a fee application.[35]  This Court emphasized that the party seeking fees has the burden of showing that the number of hours spent is reasonable, has the burden to demonstrate that billing judgment to reduce the number of hours actually expended to the number of hours reasonably expended, and cannot shift to the adversary anything that could not be billed to a paying client.[36] The Court stated that one looks to whether the task is chargeable and whether the time spent on the task is reasonable.[37] The Court stated the general rule against awarding fees for duplicative attorney services, noting the principle of only one attorney per task.[38] On Plaintiffs' prior request for fees, the Court noted that many of the billing entries were vague, reflecting such terms as "draft," "review," "revise," "edit," or "correspondence;" noting that the entries were too vague to determine how the time was spent, particularly as multiple time keepers were used, noting that such vague entries should be excluded

---

[32] *Id.*
[33] *Id.*, at 1250 (citation omitted).
[34] *Ramos,* 713 F.2d at 554, n.4.
[35] *Fish v. Kobach,* No. 16-2105-JAR, 2018 WL 3647132 (D. Kan. Aug. 1, 2018).
[36] *Id.,* at * 4.
[37] *Id.*
[38] *Id., at * 6.*

from a fee award.[39] The Court found on the last application submitted in this case, Plaintiffs' fee request included an excessive number of hours billed.[40] The Court acknowledged it was permissible to employ a percentage reduction for a fee award.[41]

In sum, on any fee request, Plaintiff has the burden of eliminating "unreasonably expended" hours, meaning hours that are excessive in relationship to the task performed, hours that are redundant or duplicative because of multiple attorneys working on the same task, and hours spent on noncompensable tasks.[42] This request reflects all three categories of unreasonably expended hours.

### B. Plaintiffs' Overlawyering Requires an 80% or More Reduction

As this Court previously stated in this very case, Plaintiffs' counsel cannot recover for three lawyers where one would do.[43]  However that is precisely what occurred here. Most of the time, the Secretary of State defended these cases with two attorneys with an additional attorney assisting periodically on specific assigned tasks to avoid duplication of effort; three attorneys and two assistants participated at trial.[44] Here, Plaintiffs are seeking to recover fees for no less than **17** attorneys (not counting paralegals and law students): for *Fish,* **five attorneys for the ACLU alone**, Danjuma, Ho, Lakin, Bonney and Zhang, along with 2 ACLU paralegals; **six attorneys from Dechert**, Steiner, Waldman, Liu, Ha, Mortimer and Jayaraman  and for *Bednasek*, **six attorneys from**

---

[39] *Id.*
[40] Id. *at * 6.*
[41] *Id.,* at * 4.
[42] *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).
[43] *Fish v. Kobach,* at *4; *Schedler,* at * 5 ("If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted. Hours spent in duplicative activity or spent in a passive role of an observer while other attorneys perform is generally not recoverable." (internal quotation marks and citations omitted).
[44] Declaration of Garrett Roe

**two different law firms**, Johnson, Woods, Wenger, Lawrence, Davis and Emert. Plaintiffs have made no showing as to why the services of all of these attorneys was reasonably necessary or what steps were taken to avoid duplication of effort.

In fact, there are many examples of duplication of effort. For example, although only one attorney was taking a deposition, Plaintiffs' counsel billed for other attorneys who listened in or sat in. On the von Spakovsky deposition, four attorneys billed for it although only one asked questions. Although only one attorney generally spoke on a conference call, everyone else billed for it. At the preliminary injunction hearing, only one attorney, Dale Ho, argued, but everyone else billed for it also, also billing for time and travel from out-of-state to attend; the Bednasek attorneys billed to attend (and even to prepare to argue it), although they did not argue and it was not their case. Plaintiffs' billed for a lot of time "preparing," including billing to mock the preliminary injunction hearing twice with between three and then five attorneys in addition to Ho participating in the mock arguments. For the trial, Plaintiffs have billed for the services of many attorneys although only a few actively presented the case and could have presented the case without additional assistance.[45] Plaintiffs' counsel spent a significant amount of time reviewing and revising each other's work. For example, the Dechert lawyers spent $284,500 worth of work editing and revising and another $180,000 went towards drafting, $147,000 on calls, $533,162 on "prepping."

Plaintiffs' counsel have represented themselves as experts in this area of litigation, presumably not needing a phalanx of other lawyers to assist them, advise them, and review their work. As the Court observed in *Scott v. Schedler,* where one of Plaintiffs'

---

[45] See attached chart relating to the trial, attached to Roe Declaration

counsel was an expert, he did not need the services of 12 additional attorneys, particularly out of state attorneys, to assist him.[46] This kind of overlawyering inevitably leads to duplication of services, excessive hours, and grossly excessive bills, as it obviously did here.   As the Circuit recognized in *Ramos   v.   Lamm,*[47] "[t]he   more   lawyers representing  a  side  of  the  litigation,  the  greater  the  likelihood  will  be  for duplication  of  services."

Similarly on appeal, the Office of Attorney General utilized three attorneys, and since they had not been involved in the district court, the OAG attorneys had to spend additional time reviewing the record and familiarizing themselves with the issues to prepare their two briefs, as appellant. In contrast, for their single appellee's brief, Plaintiffs seek fees for no fewer than **17** attorneys from **four different firms** when three lawyers at most were sufficient.[48] Plaintiffs' counsel had already drafted summary judgment briefs at the trial level; they did not need to re-invent the wheel. Seeking $317,000 to at worst reformat and at best entirely rewrite a brief is grossly overlawyering.

**Plaintiffs used 82 percent more attorneys than did Defendant, despite Plaintiffs' counsel's purported status as experts.**   Why? It is an unanswerable question.[49]

While Plaintiffs may hire as many lawyers as they please to act on their behalf, this does not mean that Defendant (or a client) should be required to pay for the

---

[46] *Scott v. Schedler, at * 7;* See also *Ursic v. Bethlehem Mines,*719 F.2d 670, 677 (3d Cir. 1983) (A fee applicant cannot demand a high hourly rate AND run up an inordinate number of hours...."Double-dipping, in any form, cannot be condoned.").

[47] 713 F.2d 546, 554 (10th Cir. 1983) *disapproved of on other grounds, Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 483 U.S. 711 (1987).

[48] Declaration of Greg Goheen.

[49] As just one example, although only Dale Ho argued the matter on appeal, Plaintiffs have billed for Mark Johnson's trip to Salt Lake City, including travel, overnight stays and an expensive dinner ($107), although he did not argue the case, and the pro hac vice fee for Samantha Wenger, who also did not argue the matter.

phalanx of attorneys and all of their duplicative effort.[50] This Court has previously stated there is a presumption that a task can be handled by one attorney absent a showing otherwise.[51]   This is particularly true where, as here, Plaintiffs' counsel purport to be experts in this area, which should require fewer lawyers, not more.[52]

Plaintiffs have not explained why the sheer volume of attorneys from outside of Kansas was necessary.   Plaintiffs have also not explained, given the ACLU's claimed specialty in this area, why the involvement of the array of Chicago and New York lawyers was necessary. Or why so many lawyers were necessary given the purported expertise of Dale Ho, who could have handled this by himself.[53]

Plaintiffs have also have not explained why so many separate "firms" were needed in this litigation, when one would suffice. The use of attorneys from the Chicago and New York Dechert offices as well as the Kansas City office of Dentons, with higher billable rates than many qualified local firms and posing additional travel costs is particularly puzzling. Plaintiffs already had the assistance of Doug Bonney in Overland Park, whom they have advanced as an expert in civil rights, requesting $500 per hour for his services.[54]   In this case the consolidation, which is for the purpose of efficiency, did not achieve that goal, resulting in 17 attorneys working this case on Plaintiffs' side compared to three on Defendant's side. Particularly in *Fish*, where effectively four separate law offices were involved (Chicago, New York Dechert,

---

[50] *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 297 (1st Cir. 2001)(" a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case", noting that the statute was not intended to provide for "full employment" for attorneys).
[51] *Fish v. Kobach* at * 6; *see Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir. 1998).
[52] *See, e.g., Schedler,* at * 7.
[53] *Id.* (reaching a similar conclusion).
[54] Bonney's billing statements show $450 as the applicable rate.

New York ACLU, Kansas ACLU), duplication was inevitable and occurred as demonstrated by the over 300 team meetings, 291.51 hours of meetings with fees for Plaintiffs' counsel's meetings with each other billed at $86,196.90, 773.91 hours on calls billed at $239,631.40 and 138 hours spent on a Complaint/Amended Complaint, and many billing entries for proofing, editing, reviewing and revising each other's work, over and over again as shown in the attached chart.[55]

A large percentage reduction is how the Court handled a similar request in the NVRA case, *Scott v. Schedler*[56]. In that case, Plaintiffs' counsel, which included Dale Ho, submitted a request for fees in the amount of $2,894.514.80 in fees and $141,907.35 in costs. After examining everything the Magistrate awarded $355,498.38 in fees and $34,251.57 in costs. The District Judge affirmed. After an appeal to the Fifth Circuit, the award was reduced even further reflecting a reduction on an unsuccessful claim. In reviewing the request, the Magistrate found the hourly rates used in the request for fees "exorbitant" compared to applicable local market rates. The Judge found that the huge fee request was the result of **"extreme overstaffing and duplication of attorney effort and several lawyers performing tasks that could have been done by one or two lawyers."** Since Plaintiff's counsel had expertise, the Court questioned why the services of additional lawyers were needed, particularly from out of state. The Judge found that the

---

[55] *See also Mann v. Reynolds,* 46 F.3d 1055, 1061-63 (10th Cir. 1995) (upholding 50% reduction due to time counsel spent consulting with each other).

[56] No. 11-926, 2013 WL 5739070 (Sept. 20, 2013), *recommendation adopted by* 2013 WL 5739066 (E.D. La. Oct. 22, 2013), *aff'd in part, vacated in part, by Scott v. Schedler,* 771 F.3d 831 (5th Cir. 2014). The Fifth Circuit appeal resulted in a further reduction of fees, not an increase.

plaintiffs' counsel had failed to exercise billing judgment. Accordingly, the Judge applied a reduction of 75%.  In regards to costs and expenses,  Plaintiffs' counsel here seek many of the same types of fees that were sought in *Scott*, such as filing *pro hac vice* motions. A 50% reduction was applied in   another NVRA case, ***Harkless v. Brunner.***[57]

While choice of counsel is a personal matter, when those choices lead to higher rates, duplicative efforts, pro hac vice fees and excessive travel costs, it is appropriate for this Court to exclude hours related to "overstaffing, duplication, and excessiveness, or that are otherwise unnecessary."[58] Why the army of out-of-state lawyers was necessary for litigating an NVRA case is unexplained when reviewing the billing statements. The problem with the tangled way Plaintiffs have presented their request is while they may be entitled to a reasonable fee for the services of one lawyer per task, they have utilized 17 attorneys, many of whom seem to spend much of their time reviewing or revising others' work or billing for calls with counsel without explaining why.  The *Fish* request should either be denied in toto, as above given its gross excessiveness or reduced by at least 80%, reflecting the percentage to which Plaintiffs overlawyered this case.

Admittedly in *Bednasek,* fewer lawyers were used than in *Fish*. However, they still utilized twice as many attorneys as did the Secretary of State, billing for **six attorneys from two different law firms**: Johnson, Woods, Wenger, Lawrence, Davis

---

[57] **No. 1:06 CV 2284, 2011 WL 2149138, at \*2 (N.D. Ohio May 31, 2011).**

[58] *Rogers v. Bank of Am., N.A.,*   No. CIV.A. 13-1333-CM, 2014 WL 6632944, at \*3 (D. Kan. Nov. 21, 2014).

**and Emert.** From the billing records, Johnson and Lawrence appeared to be doing most of the work. The additional attorneys (Woods, Wenger, Davis and Emert), did not appear to do any work that was reasonably necessary in this litigation and should be excluded entirely, an approach taken by the district court in *Mares* which was affirmed by the Circuit on appeal.[59] Even as to Johnson and Lawrence, the billing records fail to demonstrate how all of the hours expended were reasonably necessary in this case or why Johnson, as an expert, could not have handled the matter by himself. Defendant suggests at least a 50% reduction in Johnson's and Lawrence's requests.

In *Mares,*[60] the Circuit affirmed the district court's 77% reduction in the requested fees, finding that the time expended was disproportionate to that required, and that the Plaintiffs' counsel and his unnecessary co-counsel had billed for excessive or unproductive time, "fruitless work," and excessive time. The same applies here. Plaintiffs' spent a lot of time reviewing each other's work.[61]

## C.    Plaintiffs' Counsel Failed to Exercise Billing Judgment

Plaintiffs' submissions fail in every manner to exercise billing judgment as is obvious from the size of the request, the vague and duplicative entries and the examples shown above. If Plaintiffs' counsel had exercised billing judgment, as in some of the NVRA cases cited in Exhibit A where counsel reduced their request by at least 10% upfront only to have it further reduced by the Court, Plaintiffs' counsel

---

[59] *Mares v. Credit Union of Raton,* 801 F.2d 1197, 1205-07 (10th Cir. 1986) (affirming disallowance in toto of fees sought for co-counsel as unnecessary).
[60] *Id.,* at 1203-07.
[61] *See Attached "Review," "Revise," "Edit," or "Proof,"* attached to Roe Declaration.

would not be seeking to recover again for the sanctions that were already paid in this case,[62] for 28 hour and 21 minute days, and time spent as to other defendants such as Secretary Jordan as examples. The extremely minimal reductions Plaintiffs' counsel stated they applied (a mere 5% from *Fish* Plaintiffs , and 25% reductions only for time spent on summary judgment from *Bednasek*), are effectively nothing and do not show that Plaintiffs' counsel discharged their considerable burden of winnowing down time actually spent to the time that was *reasonably necessary* for each specific task in this case, *e.g.*, billing up to 138.33 hours for the Complaint and Amended Complaint in *Fish* alone, despite that this is the type of case Plaintiffs' counsel specializes in. A small reduction rewards Plaintiffs' counsel for failing to exercise billing judgment. For example, if a vendor bills a customer $100 for something that should have cost $10, to discount the original inflated bill  by 10% still results in a huge overpayment and a windfall.[63] The reduction must be significant.

For example, courts have applied a fifty (50)% reduction to account where Plaintiffs' counsel fails to demonstrate that sufficient billing judgment was exercised.[64]

---

[62] While Dale Ho eliminated some of his duplicative hours, others did not.  Plaintiffs also seek to recover fees from the contempt that they either failed to assert previously (and hence, waived), or were denied by the Court.

[63] In enacting the Civil  Rights Attorney Fee Award Act of 1976, Congress intended for Plaintiffs to receive their actual costs, not to receive a windfall. Sen. Rep. No. 94-1011, reprinted in 5 USCCAN 5908-14.

[64] *Preston Expl. Co., LP v. GSP, LLC*, No. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) ("Courts have reduced fees up to 50% for billing judgment in light of factors such as nature and extent of the work involved, the issues involved, and the complexity of the work;" reducing hours by 20% because (1) partners performed tasks more suited to associates or paralegals; (2) attorneys and paralegals billed for clerical tasks; (3) attorneys billed regular rates for unproductive travel time; (4) many billing entries are vague; and (5) case was overstaffed with partners who often duplicated each other's efforts) *Harkless v. Brunner*, No. 1:06 CV 2284, 2011 WL 2149138, at *2 (N.D. Ohio May 31, 2011) (50% reduction); *Yelton v. PHI Inc.*, No. 09-3144, 2012 WL 3441826, at *8 (E.D. La. Aug. 14, 2012) (50% reduction); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 988 & n.22 (S.D. Tex. 1997) (same); *see also Jane L. v.

### D. Plaintiffs are Requesting to be Reimbursed at High Hourly Rates

In contradictory fashion given the 17 lawyers involved, Plaintiffs' Counsel asks this Court to reimburse them at high rates, higher than the local market rate for the Kansas City metro area,[65] higher than the rate for *civil rights or analogous litigation*,[66] higher even than the very generous rates previously allowed by this Court in the contempt proceeding. Reasonable prevailing market rate in the Kansas City metro area for the time relevant to this litigation are as follows: Partners ($230 to $385 per hour); Associates ($175-$225 per hour); Paralegals ($100-$155 per hour).[67]  That rate reflecting what Kansas City area attorneys are willing to work for on cases involving the State of Kansas including on civil rights and analogous litigation has remained stable from 2017 through the present.[68] For the appeal, a reasonable hourly rate in this market at the high end for a highly qualified appellate lawyer, often working alone on an appeal, is $425.[69]

Even assuming the Court chooses to adopt the hourly rates it previously found in this case, which it is by no means required to, Plaintiffs' counsel's current request **exceeds even those generous rates**. Plaintiffs' counsel assert several arguments, none of which merits further increasing their already exorbitant request.

Plaintiffs' counsel's first argument is that the case was more complex than the motion for contempt and therefore justifies an even higher rate than that previously

---

*Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995) (sloppy and imprecise time records merited 35% reductions).

[65] Declaration of Dennis D. Depew, at para. 5, attached hereto That lower rates apply is also shown by the rates of the Lawrence firm that participated in Bednasek, billed in the $200 range. *See also* Declaration of Greg Goheen, attached hereto.

[66] *Case*, 157 F.3d at 1255 (citing *Beard v. Teska*, 31 F.3d 942, 955–57 (10th Cir.1994)). The affidavits submitted by Plaintiffs' counsel give the highest rates possible in the Kansas City area for "complex commercial cases," which this is not.  Plaintiffs are not entitled to rates the "lions of the bar" command. *Schedler,* at *7.

[67] Declaration of Dennis D. Depew, at para. 5.

[68] Declaration of Dennis D. Depew.

[69] Declaration of Jonathan Sternberg.

awarded by the Court. Yet as the Court recalls, Plaintiffs' counsel's basis for asking for such a high rate on the contempt motion was, in part, "the complexity of this type of case,"[70] and because the "requested rates are reasonable for complex civil litigation in the Kansas City market" as well as the fact that "voting rights litigation is highly specialized."[71] Thus, Plaintiffs' basis for the hourly rate requested for their fees in the motion for contempt *was* that this is a complex voting rightscase, as opposed to a contempt motion.  In other words, Plaintiffs' counsel were already basing their higher hourly rate on the allegedly "complex" nature of the case.  Plaintiffs' counsel now pretends they did not make that argument previously although they literally use the same language in the current motion that they did in their original motion:  "Voting rights litigation, in particular, is highlight specialized."[72]  While other federal courts considering fee requests in NVRA cases have stated these cases are not complex or particularly difficult,[73] the Court has already given Plaintiffs' counsel the benefit of a higher rate.

Second, Plaintiffs' counsel argue that "trial work is generally compensated at a higher rate than other kinds of attorney work."[74]  However if that were the case, Plaintiffs should be asking for *substantially less money* for the vast majority of their work on this case which was done pre-trial. Under Plaintiffs' counsel's argument, an unduly high hourly rate has been applied to most of the billing that occurred in this case.

Third, Plaintiffs' counsel argues that the fees should be increased "for inflation."[75] This argument is simply an attempt to be paid inflated 2021 rates for work done in 2015-

---

[70] Pls. Mtn. for Fees, Doc. 529, p.2.
[71] Plaintiff's Motion at 6.
[72] Plaintiffs' Fee Motion, at pg 7.

[73] *See, e.g., Schedler*, at * 6.
[74] Plaintiffs' Motion, at 7.
[75] *Id.*, at 8.

2018.  That would not work with a paying client and does not work here.  Also, Plaintiffs' motion for fees on contempt came *after* trial was over, with all of the billed work occurring in the past.  If anything, Plaintiffs' counsel is arguing that 2/3 of the work done in this case should be billed at lower than $450 an hour under their argument about inflation.  This argument is also unsupported by admissible evidence that a significant amount of inflation has existed in legal fees in the Kansas City market in what has been a historically low period of inflation generally.

As just another limited example, Plaintiffs seek $450 an hour for Rebecca Waldman's services (the high end rate), although she is a decade behind Steiner in experience and this was her first voting rights case, and presumably a lower hourly rate should apply.[76]

But again, high hourly rates and Plaintiffs' counsel's argument that they are highly specialized experts are a two-edged sword:  the higher the rate, the lower the number of attorneys who should be needed and the lower the number of hours reasonably expended.  Unfortunately, that is not the case.

### E. Plaintiffs' Counsel Have Charged Excessive Amount of Time for Numerous Tasks

In *Fish* alone and notwithstanding their claimed expertise in this "highly specialized" area of litigation, Plaintiffs' counsel reports an outrageous 138.33 hours between their various firms attributed to the Complaint and Amended Complaint in this case, basically representing working full time for nearly four weeks. Despite their claimed expertise, the Complaint in *Bednasek* was amended no less than four times.

---

[76] https://iclg.com/cdr/people-and-firms/6021-two-litigators-promoted-in-decherts-latest-partnership-round.

There is no plausible reason why national experts should spend almost 138 hours

drafting a Complaint and amending their Complaint in litigation that is of the type

they normally handle and probably represents variation on a form. In *Ramos v.

Lamm*, the Tenth Circuit stated that a court entertaining a motion for fees should

evaluate the hours spent on each task to determine their reasonableness.[77]  In that

case, the Court observed that, "more than 100 hours were spent drafting the

complaint. While this expenditure of time may have been reasonable, it demands

explanation."[78]  There is no  reasonable explanation that could possibly support that

expenditure of time. This is one example, but an obvious one.

**The Court in *Animal Legal Defense Fund* v. *Kelly,* held that time spent drafting the**

**initial complaint (75 hours between five attorneys) was an excessive amount of time and**

**that the billing practices "belies plaintiffs' assertion that "the attorneys were assigned to**

**allotted roles to maximize efficiency," and that each attorney 'played a discrete, non-**

**duplicative role in the litigation.'"[79] Although it is unclear why experts would take an**

**entire week for the task of a Complaint, in *ACLU v. Barnes,* the Court found that 148**

**hours billed for a Complaint was excessive, finding 40 hours sufficient.[80] In *Henderson,***

**the Court reduced 38 hours for a short and plain Complaint to 6 hours.[81]**

Similarly on appeal, Plaintiffs' counsel billed over 1200 hours for work that at

most takes about 100 hours (on the high end), or even the more generous 150 hour

---

[77] 713 F.2d 546, 554 (10th Cir. 1983).
[78] *Id.*
[79] No. CV 18-2657-KHV, 2020 WL 4000905, at *5 (D. Kan. July 15, 2020).
[80] 168 F.3d 423, 432 (11th Cir. 1991).
[81] 147 F. Supp. 3d at 789.

estimate from Greg Goheen,[82] even for an appellate attorney who was not counsel of record below.[83] Plaintiffs represent to the Court that one attorney alone (Orion Danjuma) spent an amount of time commensurate with five weeks of full-time work on the appeal. There is no reason to believe that expenditure of time was in any way reasonable.

Plaintiffs' counsel seek to recover $154,988.25 for filing Daubert and similar motions in limine/motions to exclude (660.94 hours), motions upon which they were only partially successful and unnecessary since this matter was tried to the bench rather than to jury. This time was wasteful and fruitless and excludable.[84]

Plaintiffs' counsel ask for $83,572 in fees (229.49 hours) relating to their effort to proceed as a class action on which they were unsuccessful as the Court expressly found it was unnecessary. That ruling controls as to these hours and fees.[85]

Plaintiffs are asking for $285,359.25 related to summary judgment, purportedly spending 1148.2 hours on that exercise. They were not successful on their motion and only partially successful in opposing the Secretary's motion.

Plaintiffs spent a lot of time litigating about litigating, researching, setting up or filing motions to compel, sanctions, or things of that ilk, a staggering 403.60 hours at a proposed fee to them of $118,162.20, including motions for contempt they either researched but never filed or motions which were resolved by agreement. Again, there is no showing that this time was reasonably expended in this case or was necessary

---

[82] Declaration of Greg Goheen.
[83] Declaration of Jonathan Sternberg.
[84] *Mares,* at 1203-07.
[85] *Id.*

to the ultimate resolution of the case. To allow these recoveries is to encourage litigants to litigate about the case rather than litigate the case itself.

Plaintiffs' counsel wrote numerous letters and sent numerous emails (copying every attorney on every single one of these emails). There is no showing that all of this correspondence was necessary to this case.

This is by no means an exhaustive list. Other examples are shown on the attached charts and discussed in the Declaration of Garrett Roe.

F. **The Request Includes Non-Compensable Items**

A significant amount of time was spent on background work. "[T]ime spent reading background material designed to familiarize the attorney with the area of the law would normally be absorbed into a firm's overhead and that, therefore, attempting to charge an adversary with time spent conducting background research is presumptively unreasonable."[86] Given their status as experts in this area, no background research should have been necessary.[87]

Plaintiffs seek to recover for time litigating against an entirely different defendant, Revenue Secretary Nick Jordan whom the Court dismissed from this case. Not only did Plaintiffs not prevail as to Jordan, one cannot bill Secretary Schwab for hours spent as to someone else. The same is true with Defendant Shew. Plaintiffs have also billed for cases other than this one, and non-case-related activity.[88]

---

[86] *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1253 (10th Cir. 1998).
[87] *See Kansas Judicial Watch v. Stout*, No. 06-4056-JAR, 2012 WL 1033634, at *8 (D. Kan. Mar. 27, 2012)(finding time spent on background research for firm that holds themselves out as Constitutional law specialists and who had participated in other similar lawsuits was not compensable.)
[88] For example, Plaintiffs have billed for *Brown v. Kobach*—example 9/12/2016 (Danjuma), (Liu—9/27/2016) and Mark Johnson (7/29/2016-3.5 hours for the *Brown* injunction hearing—he was counsel

Time was spent on media matters. That time is non-compensable.[89] "[T]he proper forum for litigation is in the courtroom, not the media."[90] Similarly, time spent on lobbying and political considerations, such as talking with Democratic Party activists or trying to unseal the deposition of Secretary Kobach (90.37 hours on that alone, billed at $22,043.40), is noncompensable.[91]

Time spent downloading documents, organizing or maintaining time and other records.[92] For example, Samantha Wenger billed for every time a document hit her inbox from PACER.

Plaintiffs request that the Court award them a significant sum of attorneys fees, travel and expenses (*e.g.*, two trips by Angela Liu to Kansas City prior to filing the case and about a full week's worth of attorney work), for recruiting potential representatives to bring the lawsuit. Fees incurred prior to recruitment of the Named Plaintiffs "are not appropriately charged to the opposing party" and should be disallowed absent special circumstances, not present here.[93]

---

for Brown). This was a Kansas state court case where fees were not awarded.  But ACLU and Mark Johnson represented Brown in the state court—and Mark Johnson is trying to bill for his time as an attorney litigating that other case.  The bill includes references to the *EAC* case (*League of Women Voters v. Newby*).  Mark Johnson is also trying to bill for a public comment hearing in Topeka which he claims is there "as a result of an injunction in our case." (7/12/2016).  That is false.  The injunction occurred in *Fish*, not *Bednasek*.  Moreover, the regulation has to do with state not federal regulations.  It was not work in this case, and Johnson should not be billing for reviewing the regulation and drafting his comments for it (7/11/2016). Plaintiffs also billed for time spent related to an ethics investigation.

[89] *New Mexico Citizens for Clean Water v. Espanola Mercantile Co.,* 72 F.3d 830, 835 (10th Cir. 1996) (citation omitted); *see, e.g., Jane L. v. Bangerter,* 828 F. Supp. 1544, 1550 (D. Utah 1993), *rev'd and vacated on other grounds,* 61 F.3d 1505 (10th Cir. 1995).

[90] *New Mexico Citizens for Clean Water, at* 835.

[91] *Daggett v. Kimmelman,* 811 F.2d 793, 801-02 (3d Cir. 1987) (time spent on political matters not compensable).

[92] *See, e.g., Cook v. Block,* 609 F. Supp. 1036, 1041-42 (D.D.C. 1985).

[93] *Case,* 157 F.3d at 1251.

Plaintiffs have billed for a lot of travel, travel which would not have been necessary absent so many out- of- state lawyers. At best, time for even necessary travel is not compensable at the attorney's full hourly rate, but only a reduced rate such as 50%.[94]

Plaintiffs seek to recover again on the contempt matter, the fees for which were already litigated and already paid.

Plaintiffs are seeking to recover time spent on motions to strike/compel/quash that were denied, including one with Tabitha Lehman and one with KDOR Secretary Jordan. Time spent improperly resisting discovery is not compensable.[95] To hold otherwise is contrary to Rule 37 and Rule 1 and rewards this conduct.

## III.    Plaintiffs' Claimed Expenses Are Excessive and Undocumented

Plaintiff's counsel submitted over 400 pages of documents in support of their motions for fees and expenses, but did not submit a single invoice, bill or receipt to support any of the expenses claimed. "The attorneys requesting fees bear the burden of establishing the amount of compensable expenses to which they are entitled."[96] Absent any documentation supporting the amounts claimed, no expenses should be awarded.

There are two separate sources of authority courts use to award out-of- pocket expenses to a prevailing party. Some expenses, such as travel, may be included in the concept of attorney's fees as "incidental and necessary expenses incurred in furnishing

---

[94] *See, e.g., Wirtz v. Kansas Farm Bur. Serv.*, 355 F. Supp. 2d 1190 (D. Kan. 1995).
[95] *See, e.g., NAACP v. Detroit Police Officers Ass'n,* 620 F. Supp. 1173, 1190-91 (E.D. Mich 1985).
[96] *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan*, 157 F.3d 1243, 1257 (10th Cir. 1998) (internal citations omitted).

effective and competent representation." 122 Cong. Rec. H1216 0 (daily ed. Oct. 1, 1976 )
(statement of Rep. Drinan). These expenses are thus authorized by section 1988.

Other costs, such as interpreters' fees and stenographic fees, are incurred by third
parties who are not attorneys for the case. These costs cannot reasonably be considered
attorney's fees, and are instead governed by 28 U.S.C. § 1920, the general costs statute.[97]
Billable expense items must be billed at actual cost, counsel cannot mark them up or
otherwise make a profit on expense items.

As with fee requests, Plaintiffs have the obligation to show their expense
requests are reasonable and recoverable. Where fees are inappropriate for recovery,
related expenses will likewise be unrecoverable. As referenced above, Plaintiffs'
counsel has billed for travel-related expenses for attorneys who were not involved in
presenting at the hearing, oral argument, or trial or taking the deposition. For
example, Mark Johnson's unnecessary trip to Salt Lake City (including travel,
overnight stays, and a $107 dinner), for an oral argument he was not presenting.
Those expenses are not recoverable as the underlying time is not recoverable as it
could not be billed to a paying client.

Where certain entries "throw[] into substantial question the propriety of all
the other" charges, the court may find all of the charges to be disallowed.[98]

Office supplies, books, subscriptions, etc. are ordinary overhead items, not case
specific expenses. Fees for WESTLAW, LEXIS-NEXIS, "computerized research", etc. are

---

[97] *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000).
[98] *Wirtz v. Kansas Farm Bureau Services, Inc*, 355 F.Supp.2d 1190,1209 (D. Kan. 2005)
(discussing travel expenses; disallowing all requests where two were questionable).

also ordinary overhead items and are non-recoverable.[99]  Access to legal research materials is a cost of doing business, not a case specific expense.  Whether they access research materials by maintaining their own library, using a state law library, using Case Maker (provided to members of the Kansas Bar Association at no additional cost) or by using WESTLAW is their choice. Even if these overhead costs were recoverable as case related expenses, Plaintiffs' counsel failed to submit invoices or other documents showing time and charges, that the charges were related to claims upon which Plaintiff prevailed and that they were reasonably necessary.[100]

Plaintiffs filed eleven (11) *pro hac vice* applications during the course of this litigation and now seek to recover those fees. There has been no showing why all of these lawyers were necessary. These fees should be disallowed. [101]

Plaintiffs also seek to recover Tenth Circuit admission fees for several lawyers. Those admission fees are not case specific expenses.  Once admitted, those attorneys are admitted to practice for all purposes.  The fact that they chose to handle the appeal with attorneys not admitted to the Tenth Circuit was their choice. Plaintiffs have sought to recover unnecessary items apparently purchased for convenience such as $18,000.00 for transcription and technical services during the trial. This is noncompensable. Similarly Plaintiffs billed for video depositions where a regular deposition would have sufficed. Without receipts and verification, Defendant cannot respond in more detail.

---

[99] *See* Case, at 1258.
[100] *Id.*
[101] *Kansas Teachers Credit Union v. Mut. Guar. Corp.*, 982 F. Supp. 1445, 1448 (D. Kan. 1997)(disallowing additional *pro hac vice* fees that were unnecessary).

## CONCLUSION

Plaintiffs assert they are entitled to attorneys' fees and expenses that are 10 to 20 times higher than other similar cases. Plaintiffs' request is grossly excessive, the result of too many lawyers, too much duplication, inept and incomprehensible billing entries, too many wasted hours and activities, and too little billing judgment, including billing for 28 hour days, bills already paid for, and work done as to other cases and other defendants. This grossly excessive request may and should be denied *in toto*. Plaintiffs have in no way met their burden of providing that their $4 million request is a reasonable one. While Plaintiffs are entitled to their reasonable costs, they are not entitled to a windfall. Given Plaintiffs' abject failure to meet their burden of showing that the number of hours and rates charged were reasonable in this case, the Court should reduce any award significantly, closer to the NVRA median of $189,000. The expenses should be denied as they are excessive, unexplained and unsupported by documentation as required.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

*/s/ Stanley R. Parker*
Stanley R. Parker, KS #10971
Assistant Attorney General/Trial Counsel
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Ph: (785) 368-8423; Fax:  (785) 291-3767
Email:  stanley.parker@ag.ks.gov
*Attorney for Secretary of State Scott Schwab*

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on March 15, 2020, a copy of the foregoing was filed electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

<u>*/s/ Stanley R. Parker*</u>
Stanley R. Parker, KS #10971