KeyCite Red Flag - Severe Negative Treatment

**Affirmed in Part, Vacated in Part, Remanded by**   Scott v. Schedler, 5th Cir.(La.),   November 5, 2014

2013 WL 5739070
Only the Westlaw citation is currently available.
United States District Court,
E.D. Louisiana.

Luther SCOTT, Jr. et al.
v.
Tom SCHEDLER et al.

Civil Action No. 11–926.
|
Sept. 20, 2013.

**Attorneys and Law Firms**

Ronald Lawrence Wilson, Law Office of Ron Wilson, New Orleans, LA, Israel David, Jesse Ryan Loffler, Michael B. De Leeuw, Fried, Frank, Harris, Shriver & Jacobson LLP, Natasha Korgaonkar, Ryan P. Haygood, NAACP Legal Defense & Educational Fund, Inc., New York, NY, Michelle Rupp, Niyati Shah, Sarah Brannon, Project Vote, Washington, DC, for Plaintiffs.

Celia R. Cangelosi, Celia R. Cangelosi, Attorney at Law, Baton Rouge, LA, Carey T. Jones, Carey T. Jones, Attorney at Law, Denham Springs, LA, Defendants.

### FINDINGS AND RECOMMENDATION

JOSEPH C. WILKINSON, JR., United States Magistrate Judge.

**\*1** This is an action under the National Voter Registration Act (the "Act"). The presiding district judge's Findings of Fact and Conclusions of Law entered in this matter on January 23, 2013, and currently awaiting determination by the Fifth Circuit Court of Appeal, stated that "[p]laintiffs are entitled to *reasonable* attorneys fees, litigation expenses, and costs.... Accordingly, [p]laintiffs' shall file a Motion to set Attorneys Fees and Costs...." Record Doc. No. 436 at p. 35 (emphasis added).

Thereafter, the motion of plaintiffs, Luther Scott, Jr. and the Louisiana State Conference of the NAACP, to fix attorneys' fees and costs was referred to me to "conduct the necessary proceedings." Record Doc. Nos. 446, 448. Defendants, Bruce Greenstein, in his official capacity as Secretary of the Louisiana Department of Health and Hospitals ("DHH"); [1] Suzy Sonnier, in her official capacity as Secretary of the Louisiana Department of Children and Family Services ("DCFS"); and Tom Schedler, in his official capacity as Louisiana Secretary of State, filed timely opposition memoranda. Record Doc. Nos. 473, 474. Plaintiffs received leave to file a "consolidated reply memorandum" and were prohibited from filing anything further concerning their motion to set attorneys' fees and costs. Record Doc. Nos. 477, 481–82. Defendants were also allowed to file supplemental opposition memoranda in response to plaintiffs' reply memorandum. Record Doc. Nos. 483, 484.

Having reviewed the written submissions of the parties, the record and the applicable law, I find and recommend that plaintiffs' motion should be GRANTED IN PART AND DENIED IN PART. For essentially the following four reasons, I find and recommend that plaintiffs' requested fee must be substantially reduced: (1) The hourly rates sought by plaintiffs' counsel are exorbitant when compared to rates applicable in the appropriate local market. (2) Extreme overstaffing by plaintiffs' counsel resulted in duplication of attorney effort and several lawyers routinely performing tasks that could and should have been performed by one or two. (3) The evidentiary submissions of plaintiffs' counsel establish that prudent billing judgment was not exercised, and the voluntary reductions summarized by plaintiffs' counsel at Record Doc. No. 446–3 at pp. 19–20 are inadequate. (4) The results obtained by plaintiffs in this case were only modestly successful and do not merit recovery in the range of $3 million in fees and costs, as plaintiffs request.

I. *FACTUAL AND PROCEDURAL BACKGROUND*
In their motion, plaintiffs seek $2,894,514.80 in attorney's fees and $141,907.35 in costs. Record Doc. No. 446. The motion is supported by the declarations of plaintiffs' attorneys Dale E. Ho of the NAACP Legal Defense and Educational Fund, Inc. (the "Legal Defense Fund"); local counsel Ronald L. Wilson; Michael de Leeuw of Fried, Frank, Harris, Shriver & Jacobson LLP; and Sarah Brannon of Project Vote, with attached time records [2] and summaries of the expenses for which plaintiffs seek reimbursement. Record Doc. Nos. 446–6 through 446–8 and 446–10 through 446–22. Plaintiffs also submitted declarations from attorneys Adam T. Klein and Ezra D. Rosenberg, who practice at law firms in New York City, and Cyrus Mehri, who practices in Washington, D.C.,

**EXHIBIT B**

regarding the hourly rates sought; and the declaration of Loyola University law professor William P. Quigley. Adam T. Klein declaration, Record Doc. No. 446–4 at p. 4; Ezra D. Rosenberg declaration, Record Doc. No. 446–5 at p. 6; Cyrus Mehri declaration, Record Doc. No. 446–15 at p. 3; William P. Quigley declaration, Record Doc. No. 446–9 at pp. 3–4.

**\*2** In their reply memorandum, plaintiffs reduced their total requested attorney's fees from $2,894,514.80 to $2,826,523.00 or, alternatively, to $1,611,997 if the court applies hourly rates based on the local market, rather than the hourly rates originally requested. Plaintiffs have not reduced the requested amount of expenses. Record Doc. No. 482.

Defendants argue, among other things, that the requested fees and costs are "excessive by local standards;" include "excessive and unreasonable" numbers of hours, lawyers, law firms and staff; display insufficient billing judgment; and reflect "overstaffing, duplication of efforts, excessive time spent on tasks, numerous attorneys attending conferences, hearings and depositions, and similar examples of too many lawyers being involved in work that could have been accomplished by fewer." Record Doc. No. 473 at pp. 1–2. For the following reasons, I find that defendants' objections are well founded and that the amount of awardable fees and costs should be drastically reduced from the amounts sought.

II. *STANDARDS FOR AN AWARD OF ATTORNEY'S FEES*
The lodestar method is routinely used to determine attorney's fee awards in federal civil actions and applies in this case brought under a federal statute. Under the lodestar method,

> [t]he determination of a fees award is a two-step process. First the court calculates the "lodestar[,]" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) [, *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989) ].

*Jimenez v. Wood Cnty.,* 621 F.3d 372, 379–80 (5th Cir.2010) (citations omitted).

"The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting." *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir.1999) (citing *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992); *Shipes v. Trinity Indus.,* 987 F.2d 311, 319–20 (5th Cir.1993)); accord *Perdue v. Kenny A.,* 130 S.Ct. 1662, 1669 (2010).

The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.

**\*3** *Johnson,* 488 F.2d at 717–19.

"[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998) (citation omitted). Three of the *Johnson* factors, complexity of the issues, results obtained and preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount. *Heidtman,* 171 F.3d at 1043 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986); *Shipes,* 987 F.2d at 319–22 & n. 9). After *Johnson* was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent. The *Johnson* factors are taken into account after the court has determined the lodestar amount. *Walker v. U.S. Dep't of Housing &*

*Urban Dev.,* 99 F.3d 761, 772 (5th Cir.1996) (citing *City of Burlington,* 505 U.S. at 567).

The lodestar "is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993) (citing *City of Burlington,* 505 U.S. at 562); *accord Perdue,* 130 S.Ct. at 1669, 1673; *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 490 (5th Cir.2012); *Jimenez,* 621 F.3d at 380. Although the party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Wegner v. Std. Ins. Co.,* 129 F.3d 814, 822 (5th Cir.1997); *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 329 (5th Cir.1995) (hereinafter *"LP & L"*).

II. *PLAINTIFFS' APPLICATION FOR ATTORNEY'S FEES*

A. *The Requested Rates and Hours Are Contested and Too High*

The requested number of hours and billing rates requested by plaintiffs as reflected in the evidence have been summarized by plaintiffs as follows:

*Fried, Frank, Harris, Shriver & Jacobson LLP*

| Name | Hours | Requested Rate | Total |
|---|---|---|---|
| Israel David | 58.3 | $650 | $ 30,095.00 |
| Michael de Leeuw | 459.7 | $650 | $ 288,730.00 |
| Erica Sollie | 308.2 | $400 | $ 118,140.00 |
| David Yellin | 389.6 | $280 | $ 107,268.00 |
| Jesse Ryan Loffler | 282.8 | $280 | $ 77,140.00 |
| Michael Deguzman | 18.7 | $200 | $ 3,740.00 |
| Joseph Chan | 12.4 | $180 | $ 2,232.00 |
| Total | 1555.4 | | $ 627,345.00 |
| Total (less 10% voluntary reduction) | | | $ 564,610.50 |

*NAACP Legal Defense & Educational Fund, Inc.*

| Name | Hours | Requested Rate | Total |
|---|---|---|---|
| Ryan Haygood | 185 | $600 | $ 110,000.00 |

| Name | Hours | Requested Rate | Total |
|---|---|---|---|
| **Dale Ho** | 1414.3 | $475 | $ 671,792.50 |
| Natasha Korgaonkar | 922.3 | $350 | $ 322,805.00 |
| Dhiren Patel | 31.5 | $175 | $ 5,512.50 |
| La Tanya Harry | 62.1 | $175 | $ 10,867.50 |
| Joseph Puma | 260 | $175 | $ 45,500.00 |
| Total | 2875.2 | | $1,166,477.50 |
| Total (less 10% voluntary reduction) | | | $1,049,829.80 |

| Name | Hours | *Project Vote* Requested Rate | Total |
|---|---|---|---|
| Sarah Brannon | 702.1 | $600 | $ 394,310.00 |
| Nicole Zeitler | 638.8 | $600 | $ 369,630.00 |
| Niyati Shah | 781.9 | $475 | $ 354,540.00 |
| Michelle Rupp | 560.0 | $280 | $ 151,515.00 |
| Kelly Gerlach | 22.0 | $175 | $ 3,850.00 |
| Total | 2,704.8 | | $1,273,845.00 |
| Total (less 10% voluntary reduction) | | | $1,146,460.00 |

| Name | Hours | *Law Offices of Ron Wilson* Requested Rate | Total |
|---|---|---|---|
| Ron Wilson | 177.2 | $400 | $ 70,880.00 |

| Total | 177.2 | $ 70,880.00 |
|---|---|---|
| Total Requested Fees | | $2,894,514.80 |

**Expenses**

| Counsel | Total Expenses |
|---|---|
| Fried, Frank, Harris, Shriver & Jacobson LLP | $ 49,838.96 |
| NAACP Legal Defense and Education Fund, Inc. | $ 60,939.44 |
| Project Vote | $ 31,128.95 |
| Law Offices of Ron Wilson | N/A |
| Total Requested Expenses | $141,907.35 |

**\*4** Record Doc. No. 446–3 at p. 21. It is the court's responsibility to determine the reasonable number of hours expended and the reasonableness of the rates charged and costs expended.

An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his customary billing rate, the *rate is within the range of prevailing market rates, and* the rate is not contested. *LP & L,* 50 F.3d at 329. In this instance, defendants have contested the requested hourly rates.

"Hourly rates are to be computed according to the prevailing market rates *in the relevant legal market,* not the rates that lions at the bar may command." *Hopwood v. Texas,* 236 F.3d 256, 281 (5th Cir.2000) (quotation omitted) (emphasis added); *accord McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 381 (5th Cir.2011). "The relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits. Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir.2002) (quotation and citations omitted); *accord McClain,* 649 F.3d at 381; *Thompson v. Connick,* 553 F.3d 836, 867–68 (5th Cir.2008), *rev'd on other grounds,* 131 S.Ct. 1350 (2011).

As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded. *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993). Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. *Green v. Admin'rs of Tulane Educ. Fund,* 284 F.3d 642, 662 (5th Cir.2002), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 63–64 (2006) (citing *Walker,* 99 F.3d at 769); *accord Hensley,* 461 U.S. at 433–34. The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." *Walker,* 99 F.3d at 770.

"The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Id.* (reducing fee award by 15% for lack of billing judgment) (citing *Leroy v. City of Houston,* 831 F.2d 576, 586 (5th Cir.1987) (reducing award by 13%)); *see also Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 800 (5th Cir.2006) (10% reduction for vagueness, duplicative work and lack of billing judgment); *Hopwood v. Texas,* 236 F.3d 256, 279 (5th Cir.2000) (25% reduction based on inadequate time entries, duplicative work product and lack of billing judgment); *Coulter v. State of Tenn.,* 805 F.2d 146, 151 (6th Cir.1986) (50% reduction for duplication of effort); *Preston Expl. Co., LP v. GSP, LLC,* No. H–08–3341, 2013 WL 3229678, at \*9 (S.D. Tex. June 25, 2013) ("Courts have reduced fees up to 50% for billing judgment in light of factors such as nature and extent of the work involved, the issues involved,

and the complexity of the work;" reducing hours by 20% because (1) partners performed tasks more suited to associates or paralegals; (2) attorneys and paralegals billed for clerical tasks; (3) attorneys billed regular rates for unproductive travel time; (4) many billing entries are vague; and (5) case was overstaffed with partners who often duplicated each other's efforts) (citing *Saizan,* 448 F.3d at 800; *LP & L,* 50 F.3d at 336; *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC,* No. H–10–1568, 2012 WL 3234203, at *8 (S.D.Tex. Aug. 6, 2012) (50% reduction); *Devices, Inc. v. Sr. Operations, Inc.,* No. 3–08–CV–1264–BD, 2009 WL 5171746, at *1 (N.D.Tex. Dec. 29, 2009) (20% reduction)); *Harkless v. Brunner,* No. 1:06 CV 2284, 2011 WL 2149138, at *2 (N.D.Ohio May 31, 2011) (50% reduction); *Yelton v. PHI Inc.,* No. 09–3144, 2012 WL 3441826, at *8 (E.D.La. Aug. 14, 2012) (50% reduction); *Neles–Jamesbury, Inc. v. Bill's Valves,* 974 F.Supp. 979, 988 & n. 22 (S.D.Tex.1997) (same).

**\*5** "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Abrams v. Baylor Coll. of Med.,* 805 F.2d 528, 535 (5th Cir.1986) (quotation omitted); *accord Phila. Indem. Ins. Co. v. SSR Hospitality, Inc.,* 459 F. App'x 308, 317 (5th Cir.2012); *Riley v. City of Jackson,* 99 F.3d 757, 760 (5th Cir.1996). " '[H]ours spent in duplicative activity or spent in the passive role of an observer while other attorneys perform [ ]' is generally not recoverable." *Coleman v. Houston Indep. Sch. Dist.,* 202 F.3d 264, 1999 WL 1131554, at *6 (5th Cir.1999) (quoting *Flowers v. Wiley,* 675 F.2d 704, 705 (5th Cir.1982)); *accord In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 756 (S .D.Tex.2008).

"Moreover, the court need not explicitly calculate the lodestar to make a reasonable award." *No Barriers, Inc. v. Brinker Chili's Texas, Inc.,* 262 F.3d 496, 500–01 (5th Cir.2001) (citing *Von Clark v. Butler,* 916 F.2d 255, 259 (5th Cir.1990); *Wegner,* 129 F.3d at 822–23).

> The fee applicant ... must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So

trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice,* 131 S.Ct. 2205, 2216 (2011). "If the district court has articulated and clearly applied the correct criteria, [the appeals court] will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." *In re High Sulfur Content Gas. Prods. Liab. Litig.,* 517 F.3d 220, 228–29 (5th Cir.2008) (quotations and citations omitted).

As an initial matter, I eliminate and reduce to $0 all fees sought by plaintiffs for a "litigation support" person, Joseph Chan, 12.4 hours at a rate of $180 per hour ($2,232.00), and a "data analyst," Kelly Gerlach, 22 hours at a rate of $175 per hour ($3,850.00). While there is support for this kind of recovery in New York federal courts, *see, e.g., Carco Grp., Inc. v. Maconachy,* No. 05–6038, 2011 WL 2971587, at *6 (E.D.N.Y. July 19, 2011), *aff'd in part, vacated in part on other grounds,* 718 F.3d 72 (2d Cir.2013); *Bd. of Trustees v. Karl Ehmer Delicatessen,* No. 10–CV–3188, 2011 WL 4382862, at *4 (E.D.N.Y. Aug 08, 2011), *report & recommendation adopted,* 2011 WL 4382515 (E.D.N.Y. Sept. 20, 2011), the instant case is proceeding in the Fifth Circuit, where recoverable fees are for attorneys and paralegals only, *Missouri v. Jenkins,* 491 U.S. 274, 288 (1989); *Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir.2001), not for experts or support personnel employed to address technical or non-legal matters. *See id.* (allowing recovery of attorney's fees for paralegal work if the work is legal rather than clerical); *Structural Metals, Inc. v. S & C Elec. Co.,* No. SA–09–CV–984–XR, 2013 WL 3790307, at *8 (W.D.Tex. July 19, 2013) (refusing to award attorney's fees for "highly skilled legal technology specialists who assist[ed] with document production" and "trial services specialist with 16 years of experience in multimedia presentation and litigation consulting"); *Davis v. Rouse,* No. WDQ–08–cv–3106, 2012 WL 3059569, at *4 & n. 4 (D.Md. July 25, 2012) ("delet [ing] all time entries by litigation support analysts, who appear to be administrative professionals and not attorneys or paralegals"). Plaintiffs' attempt to include these non-recoverable amounts in their attorney's fees award is one example of their lack of billing judgment.

**\*6** I find that the requested hourly rates listed above for plaintiffs' attorneys and paralegals are above the high end of

the range of prevailing market rates for lawyers and paralegals with comparable experience in the New Orleans area legal market, and do not reflect prevailing local rates. In addition, they are excessive. For example, 12 of the 13 lawyers and all of the paralegals for whom plaintiffs seek fees practice principally in New York and Washington, D.C., where higher rates than those charged locally generally prevail. Even the $400 per hour rate charged by the only local lawyer employed by plaintiffs is at the high end of rates ordinarily awarded in this court, and then only to lawyers with substantially more experience than all but one of plaintiffs' lawyers, or in complex cases or practice areas in which more novel expertise is necessary than was required in this case.

Instead of the rates sought by plaintiffs, I find that the range of rates listed in the decisions of this court set forth as follows are reasonable in this case. *See Thompson,* 553 F.3d at 868 (approving hourly rates of $202 to $312 for experienced attorneys and $67 to $112 for paralegals as "at the upper range of what was reasonable in the" Eastern District of Louisiana from 2003 to 2007); *Cedotal v. Whitney Nat'l Bank,* No. 94–01397, 2010 WL 5582989, at *13 (E.D.La. Nov. 10, 2010) (Chasez, M.J.), *report & recommendation adopted as modified,*[3] 2011 WL 127157 (E.D.La. Jan. 14, 2011) (Lemmon, J.) (awarding rates of $315 for senior partners, $250 for junior partners and $150 for associates in 15–year–long ERISA litigation, based on current reasonable rate awards in this district); *Ranger Steel Servs., LP v. Orleans Materials & Equip., Co.,* No. 10–112, 2010 WL 3488236, at *1, *3 (E.D.La. Aug. 27, 2010) (Barbier, J.) (rejecting hourly rates of $445 to $475 charged by partner and of $315 to $340 charged by associate in Houston law firm in breach of contract case; awarding the rates charged by New Orleans co-counsel of $360 in 2009 and $395 in 2010 for highly experienced partner's work); *Hebert v. Rodriguez,* No. 08–5240, 2010 WL 2360718, at *2 (E.D. La. June 8, 2010) (Barbier, J.), *aff 'd,* 430 F. App'x 253 (5th Cir.2011) (rejecting requested rate of $350 and awarding $300 per hour to "a seasoned civil rights attorney with over 33 years of experience"); *Braud v.. Transp. Serv. Co.,* No. 05–1898, 2010 WL 3283398, at *15 (E.D.La. Aug. 17, 2010) (Knowles, M.J.) (hourly rates of $200 for attorney with 30 years of experience and $75 for paralegal "are within the low end of the range of the market rate in this area and ... are reasonable"); *Oreck Direct, LLC v. Dyson, Inc.,* No. 07–2744, 2009 WL 1649503, at *4 (E.D. La. June 8, 2009) (Vance, J.) (in case brought under the Lanham Act and Louisiana Unfair Trade Practices Act, rates charged by national law firm of $440–$470 for an associate, and $530 and $765 for two partners, were excessive, when "the top rate for partner-level attorneys [in the New Orleans market] is between $400 and $450 per hour;" awarding a single rate of $400 for all three attorneys "as more in line with local rates for similar services"); *Wells v. Regency Hosp.* Co., No. 07–3775, 2008 WL 5273712, at *3 (E.D.La. Dec. 15, 2008) (Roby, M.J.) (reviewing cases, finding that $115 per hour for paralegal work was excessive and awarding $64 per hour); *Combe v. Life Ins. Co.,* No. 06–8909, 2008 WL 544547, at *3 (E.D.La. Feb. 27, 2008) (Livaudais, J.) (awarding $250 per hour for attorneys who had practiced for more than 20 years in the relevant legal field and $70 per hour for paralegal work).

**\*7** The only requested hourly rate included in plaintiffs' submissions that is supported by the evidence and awardable under the foregoing standards is the $400 per hour attributable to Ronald Wilson. This court knows from its own experience that Wilson is among the most experienced and preeminent members of this court's civil rights bar. His reputation is pristine, his knowledge and expertise are deep and wide, and his performance before this court has always been exemplary. I cannot accept that plaintiffs reasonably thought it necessary to employ any other attorneys—much less 12 from out-of-state jurisdictions—to handle this matter in addition to Wilson, who probably could have obtained the same results on his own, possibly with the assistance of two associates. As defendants' own expert opined:

> Wilson ... has extensive experience in handling civil rights and public interest litigation as well as school desegregation, voting rights, police misconduct, prison conditions, separation of church and state, freedom of speech, freedom of association, due process of law and equal protection.... Wilson's thirty plus years of legal experience, in my opinion, support his claim of $400/hour. Mr. Wilson's hourly billing rate of $400 for a lawyer with approximately thirty-seven years of litigation experience should be used by this Court as the "gold standard" for determining the highest possible fee for a lawyer admitted to practice in excess of thirty-five years in this case.

> Affidavit of Michael S. Walsh, Record Doc. No. 473–2 at p. 11. The court accepts this statement, adopts it as its finding and applies it in this matter.

Applying the foregoing standards, I find that the following hourly rates are more appropriate and reasonable, within the range of prevailing market rates for attorneys and paralegals

of comparable skill and experience in litigation of this type in the New Orleans legal market:

| Counsel (by Organization/Firm) | Experience | Awardable Hourly Rate | Hours Sought | Total Amount |
|---|---|---|---|---|
| **Fried, Frank, Harris, Shriver & Jacobson LLP (Home District: Southern District of New York)** | | | | |
| Israel David | 16 years | $250 | 58.3 | $ 14,575.00 |
| Michael de Leeuw | 16 years | $250 | 459.7 | $ 114,925.00 |
| Erica Sollie | 4 years | $175 | 308.2 | $ 53,935.00 |
| David Yellin | 1 year | $150 | 389.6 | $ 58,440.00 |
| Jesse Ryan Loffler | 1 year | $150 | 282.8 | $ 42,420.00 |
| Joseph Chan (Litigation Support) | unknown | $ 0 | 12.4 | $ 0 |
| Michael Deguzman (Paralegal) | unknown | $100 | 18.7 | $ 1,870.00 |
| **NAACP Legal Defense and Educational Fund, Inc. (Home District: Southern District of New York)** | | | | |
| Ryan Haygood | 11 years | $225 | 185.0 | $ 41,625.00 |
| **Dale Ho** | 7 years | $200 | 1,414.3 | $ 282,860.00 |
| Natasha Korgaonkar | 4 years | $175 | 922.3 | $ 161,402.50 |
| La Tanya Harry (Paralegal) | unknown | $100 | 62.1 | $ 6,210.00 |
| Dhiren Patel (Paralegal) | unknown | $100 | 31.5 | $ 3,150.00 |
| Joseph Puma (Paralegal) | unknown | $100 | 260.0 | $ 26,000.00 |
| **Project Vote (Home District: District of the District of Columbia)** | | | | |
| Sarah Brannon | 14 years | $250 | 702.1 | $ 175,525.00 |
| Nicole Kovite Zeitler | 7 years | $200 | 638.8 | $ 127,760.00 |

| Niyati Shah | 8 years | $200 | 781.9 | $ 156,380.00 |
|---|---|---|---|---|
| Michelle Rupp | 2 years | $150 | 560.0 | $ 84,000.00 |
| Kelly Gerlach (Data Analyst) | unknown | $ 0 | 22.0 | $ 0 |

**Law Offices of Ronald Wilson (Home District: Eastern District of Louisiana)**

| Ronald Wilson | 38 years | $400 | 177.2 | $ 70,880.00 |
|---|---|---|---|---|
| TOTAL | | | 17,286.5 | $1,251,077.50 |

**\*8** Next, I must determine the reasonable number of hours that plaintiffs' counsel expended on the litigation. As reflected in the above chart, plaintiffs' evidence indicates that they seek reimbursement for 7,286.5 hours spent on this case, including the hours of their "litigation support" person and "data analyst." As noted above, I find that the 12.4 hours expended by the "litigation support" person and the 22 hours worked by the "data analyst" must be deleted from the calculation. The remaining hours attributable to lawyers and paralegals amount to 7,252.5 hours.

Duplication of effort, gross overstaffing and redundancy of attorney work are rampantly reflected throughout plaintiffs' statements, caused apparently by the dedication of 13 lawyers and four paralegals to work on a matter that could just as easily have been handled by at most three lawyers, particularly when considering the ample—though largely wasted and minimalized—experience of Wilson. Attorneys for the three out-of-state law firms and organizations representing plaintiffs state in their declarations that, if more than two attorneys attended a deposition or court appearance (other than trial), each of the organizations deleted the hours of any attorney in excess of two attorneys. However, because this was done on a per-organization basis, rather than on the basis of the lawsuit as a whole, more than two and as many as six lawyers for plaintiffs routinely attended and billed for their time at depositions [4] and pretrial court appearances.

Additional instances of such excessive attorney effort are too numerous to list in this report. Defendants' opposition memoranda, supported by the affidavits and reports of their experts, do a thorough job of setting them out. Memorandum in opposition of Secretary Greenstein of DHH, and Secretary Sonnier of DCFS, Record Doc. No. 473 at pp. 18–20; Walsh affidavit, Record Doc. No. 473–2 at pp. 6–7; Daniel J. Balhoff affidavit, Record Doc. No. 473–3 at pp. 4–5, ¶ 13, and attached Exhs. B, C and D; memorandum in opposition of Secretary of State Schedler, Record Doc. No. 474 at pp. 1–2, 6; Record Doc. No. 474–5, declaration of Anita M. Zimmer, and manual attachments to her report, Zimmer 5, Zimmer 6 and Zimmer 9; report of Leslie J. Schiff, Record Doc. No. 474–3 at pp. 6–7; Secretary Greenstein and Secretary Sonnier's opposition to plaintiffs' consolidated reply memorandum, Record Doc. No. 483 at pp. 12–14. Among the most egregious examples are: four attorneys were involved in preparing the complaint; five assisted in preparing discovery requests; on different occasions, more than two and as many as seven attorneys participated in "moot court" preparation for oral arguments; seven attorneys attended the court-ordered settlement conference on May 9, 2012, Record Doc. No. 211; the firm of Fried Frank entered the litigation only two months before trial, necessitating many hours of file review, conferences with co-counsel and other work to bring the new lawyers and a paralegal "up to speed" on the case; six attorneys (two from each of the three organizations representing plaintiffs) appeared and billed time for oral argument on September 5, 2012, Record Doc. No. 342; three Fried Frank lawyers billed time for the non-legal, public relations matter of preparing a press release concerning the trial result; [5] and ten lawyers attended and billed for the two and one-half day non-jury trial, at which only 15 witnesses testified, Record Doc. Nos. 415, 416, 417, and 138 exhibits were introduced, with seven of the attorneys actually participating in the trial presentation.

Record Doc. No. 473–2, Walsh affidavit at ¶¶ 17(a), (b). Time and time again, numerous lawyers attended and/or participated in questioning and objection-making, frequently in erroneous and disruptive fashion, at depositions where only one should have participated. Local Rule 43.2; *see, e.g.,* Order and Reasons on Motion, Record Doc. No. 285 at pp. 19–22; Defendant's Exh. 1, transcript of Rule 30(b)(6) deposition of NAACP, Record Doc. No. 473–1 at pp. 3–4 (pp. 11–13 and 65 of deposition).

**\*9** There are numerous additional problems with plaintiffs' documentation of their requested fees. Many time entries by numerous attorneys, such as "drafting pleadings," "review file," "review and exchange e-mails," "participate in telephone conference," "research summary judgment" and "prepare correspondence," are too vague to allow for meaningful review. *See Walker,* 99 F.3d at 773 (rejecting fee request that contained "terse listings" such as " 'library research,' 'analyzing documents,' 'reading background documents,' 'phone interviews,' with no further explanation.... [N]o responsible client would accept these records as capable of supporting a bill."); *LP & L,* 50 F.3d at 326 n. 11 (vague entries such as "revise memorandum," "review pleadings," "review documents" and "correspondence" inadequate to support fee request); *Von Clark v. Butler,* 916 F.2d 255, 259 & n. 6 (5th Cir.1990) (criticizing as "scanty and lacking in explanatory detail" entries such as " 'telephone call,' or 'trial preparation,' or 'travel to Beaumont to attend deposition' without any identification whatsoever of the subject matter"). Virtually all of the time entries of Niyati Shah of Project Vote are particularly egregious examples of a complete lack of information necessary to establish the tasks performed and their reasonableness. Record Doc. No. 446–19.

Attorneys with Project Vote have partially redacted information from many of their time entries with no explanation of why they have done so. Some of their time entries say only "attorney work product" followed by a redaction. The most conspicuous offender in this regard is Nicole Kovite Zeitler, who partially redacted almost all of her entries, including apparently the names of people with whom she met or conferred, so that no meaningful information is presented in the entries. Record Doc. No. 446–18.

The vast majority of the contents of the fee statements are not attorney-client privileged in the first instance. "Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is *not* protected by the privilege." *Nguyen v. Excel Corp.,* 197 F.3d 200, 206 (5th Cir.1999) (citations omitted) (emphasis added). "As a general rule, client identity and fee arrangements are not protected as privileged." *In re Grand Jury Subpoena for Attorney Representing Crim. Defendant Reyes–Requena,* 926 F.2d 1423, 1431 (5th Cir.1991) (citations omitted); *accord Vingelli v. United States,* 992 F.2d 449, 452 (2d Cir.1993).

> The attorney-client privilege is construed narrowly, to protect from disclosure only those communications from client to attorney that were intended to remain confidential and made for the purpose of seeking legal advice. Communication between an attorney and client regarding such information as identity of client, terms and conditions of employment, amount of fee, identification of payment by case file name, and the general purpose of the work performed, are not privileged.

**\*10** *In re Ginther,* No. 07–80200–G3–11, 2008 WL 4107487, at \*5 (Bankr.S.D.Tex. Aug. 29, 2008) (citing *United States v. Alexander,* 287 F.3d 811 (9th Cir.2002); *Gomez v. Vernon,* 255 F .3d 1118 (9th Cir.2001); *Howell v. Jones,* 516 F.2d 53 (5th Cir.1975); *United States v. Ponder,* 475 F.2d 37 (5th Cir.1973)) (additional citations omitted); *accord In re Bennitt,* No. 05–00164–BGC, 2010 WL 4622451, at \*6 n. 9 (Bankr.N.D.Ala. Nov. 4, 2010) (citing *United States v. Leventhal,* 961 F.2d 936, 940 (11th Cir.1992); In re Grand Jury Proceedings 88–9(MIA), 899 F.2d 1039, 1043–44 (11th Cir.1990); *Nguyen,* 197 F.3d at 206; *GFI, Inc. v. Franklin Corp.,* 265 F.3d 1268, 1273 (Fed.Cir.2001); *United States v. Legal Servs.,* 249 F.3d 1077, 1081–82 (D.C.Cir.2001); *In re Grand Jury Subpoena,* 204 F.3d 516, 520 (4th Cir.2000); *United States v. Amlani,* 169 F.3d 1189, 1194 (9th Cir.1999); *Clarke v. Am. Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir.1992)). Thus, the redacted client and witness names (if that is what the redactions are) and the general purpose of the work performed are not privileged communications.

Further, as I and other judges in this court have repeatedly held, to the extent that the attorney-client privilege may protect some portions of the invoices, the privilege is waived by seeking reimbursement for attorney's fees. *Hunter v. Copeland,* No. 03–2584, 2004 WL 1161368, at \*5 (E.D.La.

May 24, 2004) (citing *Clarke,* 974 F.2d at 127; *Leach v. Quality Health Serv.,* 162 F.R.D. 499 (E.D.Pa.1995); *United States v. Keystone Sanitation Co.,* 885 F.Supp. 672, 675 (M.D.Pa.1994)); *Monroe's Estate v. Bottle Rock Power Corp.,* No. 03–2682, 2004 WL 737463, at *11 n. 31 (E.D.La. Apr. 2, 2004), aff 'd, 2005 WL 119883 (E.D.La. Jan. 19, 2005); *S. Scrap Mat'l Co. v. Fleming,* No. 01–2554, 2003 WL 21474516, at * 13 n. 40 (E.D. La. June 18, 2003); *In re Central Gulf Lines, Inc.,* No. 97–3829, 2001 WL 30675, at *2 (E.D.La. Jan. 11, 2001); *Tonti Props. v. Sherwin–Williams Co.,* No. 99–892, 2000 WL 506015, at *2 (E.D.La. Apr. 27, 2000); *Newpark Envtl. Servs.,* 2000 WL 136006, at *3–4; *C.J. Calamia Constr. Co. v. Ardco/Traverse Lift* Co., No. 97–2770, 1998 WL 395130, at *2 (E.D.La. July 14, 1998).

Because plaintiffs' request for attorney's fees necessarily requires plaintiffs to place the reasonableness of their attorneys' work at issue, they have waived their privilege (if any) as to the invoices. The redactions of the names and subject matters on the Project Vote invoices render the redacted portions of the time entries incomprehensible and preclude the court from making any meaningful review of those entries.

Degree of success obtained is one of several *Johnson* factors subsumed in the lodestar amount to consider in the district court's " 'measured exercise of discretion' " when determining an attorney's fees award. *Roussell v. Brinker Int'l,* 441 F. App'x 222, 234 (5th Cir.2011) (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)).

**\*11** While plaintiffs certainly were the prevailing parties, I conclude that their victory must be characterized only as modest success, which did not require the overblown amount of litigation activity of plaintiffs' counsel. In her Findings of Fact and Conclusions of Law, the presiding district judge repeatedly noted defendants' good faith efforts to comply with the Act both before and after this lawsuit was filed, and defendants' substantial progress toward full compliance with the Act as of the date of the bench trial in October 2012. Record Doc. No. 436 at pp. 20, 26, 27, 29. Judge Milazzo concluded: "Ultimately, this Court finds that because Defendants are only in *substantial compliance,* and not in full compliance, there is *some* potential danger that future violations may occur. As such, a permanent injunction that is *minimal* in breadth is warranted." *Id.* at p. 34 (emphasis added). Based on these findings, it appears that entry of judgment in plaintiffs' favor was at most a means by which the court intends to ensure defendants' continuing efforts to comply with the Act.

After deducting the unrecoverable time attributed to the data analyst and litigation support personnel, I find and recommend that the gross overstaffing by plaintiffs of this case and the duplication and redundancy of attorney work caused by this overstaffing should result in a 75 percent (75%) reduction in the amount of hours reasonably expended on this case. See *Jimenez,* 621 F.3d at 380 (affirming reduction of plaintiffs' fee request by 25 percent to reflect dismissal of one defendant when facts and issues raised by plaintiffs' claims against both defendants were too intertwined to segregate fees, and additional reduction of 20 percent based on *Johnson* factors); *Harkless,* 2011 WL 2149138, at *1, *2 (N.D.Ohio May 31, 2011) (finding, in National Voter Registration Act case staffed by "a six-lawyer core team with 21 attorneys billing for their time," that "50% across-the-board hours reduction for excessive and duplicative hours, travel costs, and questionable billing practices is warranted"); *Neles–Jamesbury,* Inc., 974 F.Supp. at 988 & n. 22 (S.D.Tex.1997) (50% reduction in hours when overstaffing "inevitably resulted in duplication of effort, wasted time, and was inefficient because different individuals had to learn the necessary background of the case"). This 75 percent reduction results in a total lodestar amount of attorney's fees, when the reduced hours are multiplied by the reasonable hourly rates set forth above, of $312,769.37.

After eliminating the other *Johnson* factors that are subsumed in the lodestar or prohibited from consideration, only four factors remain for an adjustment analysis: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. The customary fee appears to be the fee reflected in the billing statements and has already been evaluated and rejected above as excessive in establishing a reasonable hourly rate. The nature and length of the professional relationship between plaintiffs and their attorneys appears substantial as to some and unclear as to others, but it is of minimal importance in this overall context. The case was not undesirable, if properly staffed. Awards in similar cases have already been taken into account above in establishing the hourly rates. Accordingly, I find that the lodestar amount of attorney's fees in the amount of $312,769.37 is reasonable and awardable.

C. *Costs and Litigation Expenses*
**\*12** Plaintiffs seek costs and expenses in the amount of $141,907.35, including about $110,000 for transportation,

lodging, airfare and meals. Although plaintiffs in their reply memorandum reduced some of their attorney's *hours* in response to defendants' objections, they made *no* reductions in the expenses sought.

The Act provides that "the court *may* allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs." 42 U.S.C. § 1973gg–9(c) (emphasis added). The Act thus allows for possible recovery of both "costs," which the courts generally interpret to mean only those costs permitted by 28 U.S.C. § 1920, and "litigation expenses."

In statutory construction, "[t]he word 'may' customarily connotes discretion." *Jama v. Immigr. & Customs Enforcemt.,* 543 U.S. 335, 346 (2005). The permissive "may" in a fee- or cost-shifting statute like Section 1973gg–9(c) indicates that the amount of any award is committed to the court's sound discretion. *Grant v. Chevron Phillips Chem. Co.,* 309 F.3d 864, 875 (5th Cir .2002); *Abshire v. Louisiana,* No. 08–369–C, 2009 WL 50178, at *5 (M.D.La. Jan. 7, 2009), *aff 'd sub nom. Admiral Ins. Co. v. Abshire,* 574 F.3d 267 (5th Cir.2009).

In addition, Rule 54(d)(1) of the Federal Rules of Civil Procedure provides, in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees—should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.,* 133 S.Ct. 1166, 1172 (2013). Even if a federal statute speaks to an award of costs in a particular type of case, "Rule 54(d)(1) independently authorizes district courts to award costs to prevailing parties." *Id.* at 1174 n. 5. Rule 54(d)(1) "does not *require* courts to award costs to prevailing [parties]," but permits the court in the exercise of its discretion to consider the particular circumstances of the case. *Id.* at 1178 n. 9 (emphasis in original). Thus, "a court has discretion to award costs" under Rule 54(d)(1). *Id.* at 1174.

Limiting the discretion of the federal court to award costs under Rule 54(d)(1) is 28 U.S.C. § 1920, under which

> a court may tax the following costs: fees of the clerk and marshal; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and copies of papers necessarily obtained for use in the case; docket fees; compensation of court-appointed experts, interpreters, and special interpretation services. The Supreme Court has indicated that federal *courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary.*

**\*13** *Mota v. Univ. of Tex.,* 261 F.3d 512, 529 (5th Cir.2001) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 444–45 (1987)) (quotation and additional citations omitted) (emphasis added); *accord Gagnon v. United Technisource, Inc.,* 607 F.3d 1036, 1045 (5th Cir.2010). In the instant case, Section 1973gg–9(c) of the Act is a statutory authorization to the contrary.

Plaintiffs have cited no law in support of their expense request, relying solely on Judge Milazzo's determination that "Plaintiffs, as the prevailing party, are granted the recovery of reasonable attorney fees, including litigation expenses, and costs" pursuant to 42 U.S.C. § 1973gg–9(c). Record Doc. No. 436 at p. 34. Defendants in their opposition memoranda argue that any award of costs and expenses should be limited to the costs recoverable under 28 U.S.C. § 1920. Defendants have not cited any decisions that interpret the term "litigation expenses" in the context of the Act or any other federal fee-shifting statute. My own research has not located a decision from any court that analyzes the term as used in the Act.

Nonetheless, reasonableness remains the touchstone for an award of either costs or litigation expenses. Whether "expenses are reasonable is committed to the sound discretion of the trial judge," even when recovery is authorized by statute. *Assoc'd Builders & Contractors of La,, Inc. v. Orleans Parish Sch. Bd.,* 919 F.2d 374, 380 (5th Cir.1990). The court will not merely rubber-stamp an expense request, especially one as excessively large as in the instant case. Before the court can tax costs, it must find that the costs were necessarily incurred in the litigation and this finding must be based on "some *proof* of the necessity." *Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir.1994) (citing *Fogleman v. ARAMCO,* 920 F.2d 278, 286 (5th Cir.1991); *Studiengesellschaft Kohle v. Eastman Kodak,* 713 F.2d 128, 133 (5th Cir.1983)) (emphasis added).

When cost-seekers neglect to supply any verification that the costs claimed were "necessarily incurred in the case" and instead state only that the costs were expended "in the preparation and litigation of this case," the district court does not abuse its discretion by denying all costs except filing fees. *Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d 4, 9 (1st Cir.1993); *accord Home Builders Ass'n v. City of Madison,* 191 F.R.D. 515, 517, 518, 519 (N.D.Miss.1999) (citing *Fogleman,* 920 F.2d at 286; *Studiengesellschaft Kohle,* 713 F.2d at 133). "The Court does have discretion to allow unverified costs where it is clear from the nature of the cost that it was necessarily incurred." *Johnson v. Rhode Island,* No. 98–266T, 2000 WL 303305, at * 13 (D.R.I. Mar. 22, 2000) (quotation omitted) (citing *Phetosomphone,* 984 F.2d at 9).

In this case, three of the organizations representing plaintiffs seek an award of their expenses. The Fried Frank firm seeks $49,838.96 in expenses, Record Doc. No. 446–14, which its attorney Michael de Leeuw avers were reasonable and necessary in light of the work performed, results obtained, importance of the case and time demands of the fast-paced litigation. Michael de Leeuw declaration, Record Doc. No. 446–12 at ¶ 13. Fried Frank seeks reimbursement for numerous categories of costs, including charges for telephone conferences; internet use; copies, binding and tabs; meals during in-house meetings and while traveling for depositions and court appearances, including one $80 entry for "drinks with counsel team" on the last day of trial; parking at and local transportation to and from the New York airport; local transportation in New York in connection with working after normal business hours; airfares (including ticket upgrade fees), lodging, taxis and car rentals during out-of-town travel; online legal research and "data research" on the court's electronic filing system; postage, courier service and overnight express deliveries; a trial transcript; "specialty supply purchases;" secretarial overtime; and "litigation support for trial technology." Record Doc. No. 446–14.

 **\*14** Project Vote seeks $31,128.95. Record Doc. No. 446–22. Sarah Brannon declares that this does not include approximately $3,500 in additional expenses for which Project Vote does not have complete documentation. Record Doc. No. 446–16, at ¶ 26. Brannon does *not* make even a boilerplate statement that the expenses sought were either necessarily incurred or reasonable. Project Vote provides only a terse summary of its costs by date and category, which include charges for postage, couriers, airfare, lodging, ground transportation, printing, supplies and unspecified "other expense" and "other professional services."

The Legal Defense Fund seeks $60,939.44, Record Doc. No. 446–8, which Dale Ho declares excludes any request for compensation for meals while its attorneys were traveling, office supplies, in-house printing and some travel expenses, such as parking and tolls. Dale Ho declaration, Record Doc. No. 446–6 at ¶ 34. Ho does *not* state that the expenses sought were necessarily incurred or reasonable. The Legal Defense Fund seeks recovery of costs for process servers, filing of pro hac vice motions, depositions, a transcript of one oral argument, document retrieval in a *different* Eastern District of Louisiana case, internet use, postage, overnight express deliveries, conference calls, document scanning, photocopies, bindings, tabs, electronic file conversions, "blowbacks" (a term that is not defined and with which the court is unfamiliar), airfares, taxi and/or car service to and from the airport in New York, and car rentals in Louisiana. Record Doc. No. 446–8.

I have already found that this litigation was grossly overstaffed, that it was unnecessary to import so many out-of-state attorneys to represent plaintiffs, that plaintiffs did not exercise prudent billing judgment and that the results obtained were only modestly successful. These findings apply equally to plaintiffs' expense requests. In addition, I find that plaintiffs (1) are seriously overreaching in both the type and amount of expenses they seek and (2) have failed to adduce any proof that the vast majority of the expenses incurred were necessary. In light of these findings and based on established law that most of the types of costs sought are not compensable in the context of 28 U.S.C. § 1920, which I use as a guideline in this case, I find that the requested expenses of each of the three law firms are highly unreasonable. The categories of overreaching include the following.

The Fifth Circuit has approved the exclusion of travel expenses when, as here, the district court has found that the out-of-town attorneys' work was duplicative. *Alexander v. City of Jackson,* 456 F. App'x 397, 402 (5th Cir.2011); *see also Univ. of Kan. v. Sinks,* No. 06–2341–JAR, 2009 WL 3191707, at *15 (D.Kan. Sept. 28, 2009) (citing *Quail Creek Petroleum Mgmt. Corp. v. XL Specialty Ins. Co.,* 129 F. App'x 466, 472 (10th Cir.2005); *Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir.1983), *overruled in part on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 483 U.S. 711, 725 (1987)) ("[P]laintiffs failed to make a showing that local counsel could not have reasonably handled

this litigation. Similarly, the Court is unable to make a finding that this is the unusual case where travel expenses for counsel between their offices and the site of the litigation should be reimbursed.").

**\*15** The travel expenses incurred by the attendance of multiple out-of-state attorneys at depositions and court appearances in this case were excessive and unreasonable. I find *no* justification for any meal costs incurred by the attorneys while in Louisiana, or as they even more outrageously request, while working in their own offices. Meal costs would have been incurred regardless of where the attorneys were located. Therefore, I find that all of Fried Frank's meal costs, totaling $4,901.06, should be disallowed. This reduces the total requested amount of expenses from $141,907.35 to $137,006.29.

Although copying costs can be recovered when copies are obtained for use in the case, plaintiffs must show that the *particular* copies were "necessarily obtained for use in the case." *Gagnon v. United Technisource, Inc.,* 607 F.3d 1036, 1045 (5th Cir.2010). Plaintiffs have provided no evidence to show that more than $23,000 in expenditures for photocopying and other forms of duplication in a case that culminated in a two-and-onehalf-day trial with only 138 exhibits were necessarily obtained for use in the case, nor have they produced any evidence that the per-page copying costs were reasonable. *See Johnson v. Big Lots Stores, Inc.,* 639 F.Supp.2d 696, 709 (E.D.La.2009) (Vance, J.) (discounting plaintiffs' cost request by 55 percent for similar reasons).

The court does not abuse its discretion by declining to award the costs of photocopies, overnight mail expenses and process server rush fees when the cost-seeking party has failed to meet its burden of proving the reasonableness of those costs. *Alexander,* 456 F. App'x at 402 (citing *Mota,* 261 F.3d at 529). "Telecopy expenses, express delivery charges, and telephone expenses, like postal expenses, are not listed in the statute and represent 'overhead' costs, not litigation costs." *Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.,* 952 F.Supp. 415, 417 (N.D.Tex.1997) (citing 28 U.S.C. § 1920; *El–Fadl v. Central Bank of Jordan,* 163 F.R.D. 389, 390 (D.D.C.1995); *Cody v. Private Agencies Collaborating Together, Inc.,* 911 F.Supp. 1, 6 (D.D.C.1995); *Thomas v. Treasury Mgmt. Ass'n,* 158 F.R.D. 364, 372 (D.Md.1994); *Ezelle v. Bauer Corp.,* 154 F.R.D. 149, 155 (S.D . Miss.1994); *In re The Glacier Bay,* 746 F.Supp. 1379, 1394 (D.Alaska 1990); *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 439 (E.D.Mo.), *aff'd,* 780 F.2d 20 (8th Cir.1985)); *see also Yasui v. Maui Elec. Co.,* 78 F.Supp.2d 1124, 1129, 1130 (D.Haw.1999) (facsimile charges and long distance telephone charges not taxable as costs); *cf. Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1048 (5th Cir.1998) (district court did not abuse its discretion in denying costs of computerized legal research, couriers, postage and copying).

As to computerized legal research, my research indicates that the Fifth Circuit has not yet addressed this issue. "Although [there is] one case in this Circuit in which a district court has awarded online research expenses as costs under § 1920, the overwhelming weight of authority in this and other circuits rejects this view." *Honestech, Inc. v. Sonic Solutions,* 725 F.Supp.2d 573, 581–82 & n. 3 (W.D.Tex.2010) (citing cases), *aff'd,* 430 F. App'x 359 (5th Cir.2011); *accord Ill. Cent. R. Co.,* 2011 WL 283925, at \*6. Many other district courts have ruled that the cost of computerized research on Westlaw, LEXIS or the court's electronic filing system is not recoverable. *E.g., id.; Kraft v. Arden,* No. 07–48–PK, 2009 WL 73869, at \*9 (D.Or. Jan. 8, 2009); *Channell v. Eichelberger,* No. 2:06CV 197–SA, 2008 WL 4683419, at \*3 (N.D.Miss. Oct. 22, 2008); *Sigur v. Emerson Process Mgmt.,* No. 05–1323–A–M2, 2008 WL 1908590, at \*9 & n. 14 (M.D.La. Feb. 21, 2008), *report and recommendation adopted,* 2008 WL 1908588 (M.D.La. Apr. 30, 2008) (citing cases); *Tasakos v. Welliver Mental Prods. Corp.,* No. 04–6205–AA, 2005 WL 627633, at \*2 (D.Or. Mar. 16, 2005); *Mr. & Mrs. S. v. Timberlane Reg'l Sch. Dist.,* No. 03–260, 2004 WL 502614, at \*9 (D.N.H. Mar. 15, 2004). Plaintiffs have provided no authority for their request to recover the costs of computerized research, particularly in this—the 21st—century, when computerized research is the usual means by which lawyers perform a basic work function.

**\*16** Items such as secretarial overtime pay, court runner fees and the cost of office supplies are "nonrecoverable routine office overhead ." *Kuzma v. Internal Revenue Serv.,* 821 F.2d 930, 933 (2d Cir.1987); *accord DCH Auto Grp. (USA) Inc. v. Fit You Best Auto., Inc.,* No. CV–05–2973(NG)(JMA), 2006 WL 279055, at \*5 (E.D.N.Y. Jan. 10, 2006); *Marisol A. ex rel. Forbes v. Guiliani,* 111 F.Supp.2d 381, 390 (S.D.N.Y.2000); *Mary M. v. N. Lawrence Cmty. Sch. Corp .,* 951 F.Supp. 820, 829 (S.D.Ind.), *rev'd on other grounds,* 131 F.2d 1220 (7th Cir.1997) (citing *Bridges v. Eastman Kodak Co.,* No. 91 CIV. 7985(RLC), 1996 WL 47304, at \*15 (S.D.N.Y. Feb. 6, 1996) *aff'd,* 102 F.3d 56 (2d Cir.1996); *In re Media Vision Tech. Secs. Litig.,* 913 F.Supp. 1362, 1371 (N.D.Cal.1996); *Hertz Corp. v. Caulfield,* 796 F.Supp. 225, 230 (E.D.La.1992)).

Plaintiffs have failed to provide any explanation in support of their requests for payment for various vaguely described and undefined "litigation support for trial technology," "blowbacks," "other expense" and "outside professional services ." The lack of explanation or legal authority for such requests warrants disallowing them. *DCH Auto Group (USA) Inc.,* 2006 WL 279055, at *5.

Because the problems with plaintiffs' expense requests are so numerous and egregious, I recommend that, after having deducted $4,901.06 in meal expenses from the requested amount, the remaining $137,006.29 should be reduced by an additional 75 percent, to $34,251.57. Accordingly, I recommend that plaintiffs be awarded only $34,251.57 in recoverable costs and litigation expenses.

*CONCLUSION*

For the foregoing reasons, IT IS RECOMMENDED that defendants, Bruce Greenstein, in his official capacity as Secretary of the Louisiana Department of Health and Hospitals, Suzy Sonnier, in her official capacity as Secretary of the Louisiana Department of Children and Family Services, and Tom Schedler, in his official capacity as Louisiana Secretary of State, pay to plaintiffs, Luther Scott, Jr. and the Louisiana State Conference of the NAACP, $312,769 .37 in reasonable attorney's fees and $34,251.57 in reimbursable expenses, all as reflected above.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[6]

**All Citations**

Slip Copy, 2013 WL 5739070

Footnotes

1    Kathy Kliebert currently serves as the Secretary of the DHH.
2    Plaintiffs' original submission included a summary of Ho's time, but not his itemized time sheets. Plaintiffs explained in their reply memorandum that the itemizations had been inadvertently omitted due to a technical error, and they submitted Ho's itemized time sheets with their reply. Record Doc. No. 482–1, Exh. A to declaration of Jesse Ryan Loffler. The court has considered those records.
3    The magistrate judge's report and recommendation was modified slightly to adjust the hours, but not the hourly rates.
4    After defendants objected to plaintiffs' overstaffing in all phases of this lawsuit, plaintiffs "in an abundance of caution" withdrew their fee requests for the attendance of more than two attorneys at *depositions only.* Plaintiffs' reply memorandum, Record Doc. No. 482 at p. 6; declaration of Natasha M. Korgaonkar, Record Doc. No. 482–2 at ¶ 4 and attached Exh. A. These belated reductions simply confirm the excessive staffing and lack of billing judgment originally exercised.
5    In their reply memorandum, plaintiffs withdrew these time entries. Record Doc. No. 482 at p. 5.
6    *Douglass* referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

**End of Document**                              © 2016 Thomson Reuters. No claim to original U.S. Government Works.