# DECLARATION OF GARRETT ROE

I, Garrett Roe, being of lawful age and duly sworn upon oath, submit this Declaration in accordance with 28 U.S.C. 1746. I have personal knowledge of the facts herein.

1. I am currently employed as General Counsel for Secretary of State Scott Schwab. I represented the Secretary of State in *Fish v. Kobach,* 16-2105, and *Bednasek v. Kobach,* 15-9300 filed separately in the District Court of Kansas and then consolidated. I have knowledge of the district court litigation in both cases as I personally participated in defending the Secretary.  I also reviewed the time sheets Plaintiffs' counsel submitted with their request for attorneys' fees and expenses.

2. During the majority of the district court litigation and initial appeal of the preliminary injunction, the Secretary of State was represented primarily by Secretary of State Kobach and myself. We both had other duties to attend to, in addition to the litigation.  Prior to this litigation, I had primarily been engaged in brief writing.  At times, other attorneys with the Secretary of State assisted with litigation for discrete periods of time, usually having been assigned to specific tasks.  During the summer of 2017, another attorney was hired who also worked on the case through and after trial.  Secretary of State Kobach took nearly all of the depositions, while I sat next to him. Occasionally another attorney would attend a deposition as well.  At trial and

EXHIBIT C

during preparation for trial, for example, we had three attorneys and two assistants, each with specifically assigned tasks to avoid unnecessary duplication of effort, although all three attorneys attended every day of trial. A fourth attorney also sat at in the front row of trial but did not participate in the trial.

3. During the district court proceedings, I had the opportunity to make observations regarding Plaintiffs' conduct of the litigation and staffing. As to the latter, I believe that only one attorney presented at the preliminary injunction hearing for the *Fish* plaintiffs, although several attorneys billed to attend. Additionally, four Bednasek attorneys attended the *Fish* Preliminary Injunction hearing and are billing for that time. On conference calls, generally one attorney from Plaintiffs' side took the lead and spoke. At depositions, normally one attorney took the deposition, while others are billing for listening in or attending (e.g., the Von Spakovsky depositions where three additional attorneys billed for the *Fish* Plaintiffs in addition to the taking attorney.

4. At the trial, the *Fish* Plaintiffs' counsel divided witnesses so that each attorney would have a certain number of witnesses to examine. On many trial days, this resulted in multiple attorneys not examining witnesses yet billing to sit in the courtroom nevertheless. For example, Doug Bonney submitted a bill for sitting through the entire trial; yet he only did a short examination of Plaintiff Wayne Fish. Sophia Lakin billed for all 7 days of trial. Yet, she only examined two witnesses, Marge Ahrens and Lorraine Minnite, both appearing in the first four days of the trial. At least two of the

*Fish* Plaintiffs' attorneys attended the entire trial although they examined no witnesses.

5. For the Bednasek Plaintiffs, Mark Johnson conducted a brief examination of nearly every witness at trial.  The only witness Mr. Johnson put on himself was Parker Bednasek, the plaintiff in that case.  This court's order on consolidating the trial was, in part, to reduce costs.  Yet, Mr. Johnson billed this case as if he was doing an entire seven day trial on his own. No other Bednasek attorney examined a single witness at trial, although Mr. Woods attended and billed for every day, and Mr. Emert attended and billed for multiple days.  Assuming I am reading the billing statements correctly, the only time Mr. Johnson and Mr. Woods are not billing for the entire day of every day of trial, is the sixth day (March 13, 2018), when Mr. Johnson arrived at 3:30 p.m.

6. An attorney in our office prepared a chart showing trial participation.

7. Because of my knowledge of the district court litigation, I was asked to review the time sheets submitted by Plaintiffs' counsel.  I was under time pressure to review the thousands of billing entries submitted. This was an extremely arduous and time-consuming task made more difficult by Plaintiffs' decision to submit the records by timekeeper rather than by task and to not provide electronic versions of the documents.  We asked Plaintiffs' counsel to reformat the records to make it easier to review but we were informed they had "no obligation to format or sort [their] time entries according to [our] preferences."  I eventually was able to get our IT staff to convert some of the records electronically which I then had to manually reformat further to make

them somewhat usable.  The Dechert records would not convert to a format that was usable without manually retyping the entire billing sheet.  The Emert Fagan billing sheets could not be formatted into a usable format given the way they reported their time.

8. Another difficulty was that many time entries are vague, failing to specifically state to what specific task the work was assigned.  In many instances it was not possible to tell what the billed work was for or which portion of the work was billed to which task when multiple entries were included in one billing line.  One example was the use of the term in the billing records, "continue oversee" some task.  The billing statements do not indicate who was being overseen or why.   Yet in multiple places, large blocks of time were included under this entry.

9. In addition to the vagueness of the entries, the time records reflect a lot of duplication of effort between the attorneys with them drafting, revising, reviewing and analyzing each other's work and spending substantial time on meetings with each other, and emailing each other.  Searching through the *Fish* Plaintiffs' billing statements, the term "revise" and "review" were included multiple times by multiple attorneys as they would "review" and/or "revise" each other's work.

10. The *Fish* Plaintiffs' counsel also spent a lot of time on the phone.  It appears that some or all of the attorneys had a "weekly" team call for which they would bill. The *Fish* Plaintiffs also appear to bill for conference calls using multiple attorneys, whether it is a call with opposing counsel or the court.

11. Plaintiffs' counsel routinely objected to requests for extension of time which under local protocols are to be agreed to, often necessitating emails, conference calls and written responses that were unnecessary. For example, searching the Dechert attorneys' billing statements with the term "exten," it results in this term being found in billing requests for approximately 20.90 hours totaling $6,783.  Sometimes this term is included with other tasks making it impossible to discern how much time was spent on discussing extensions of time or drafting documents related to those extensions as opposed to other matters.  *See e.g.* Neil Steiner entry on 3/2/16 (including, *inter alia*, "review and revise response to motion for extension"); Rebeca Kahan Waldman entry on 3/2/2016 ("communications regarding extensions of time); Angela M. Liu on 3/2/16 (including, *inter alia*, "review and revise motion for extension of time and discovery deadline emails"), Rebecca Kahan Waldman on 4/22/16 (including, *inter alia*, "revise opposition to motion for extension").  This request also includes time spent drafting their own, unopposed, motions.  *See e.g.* Angela M. Liu on 7/14/16 (including, *inter alia*, "revised request for extension of time"), Rebecca Kahan Waldman on 7/15/16 (including, *inter alia*, "finalize motion for extension of time").

12. Plaintiffs' counsel spent a significant amount of time  attempting to unseal Kris Kobach's deposition testimony, after this court's final judgment.  These attempts appears to be requested for political purposes rather than for purposes of the case itself given that the trial was over and the billing statements indicate contact with the media in attempting to obtain the deposition tape.  For example, it appears, although it cannot be stated with

certainty given the way Plaintiffs' counsel organized their billing, that Orion Danjuma spent over 125 hours attempting to unseal Kris Kobach's deposition after the district court case had ended, including correspondence with the press about the tape. *See e.g.* Orion Danjuma entry on 7/23/2018 ("correspondence on disclosure of Kobach deposition tapes to press and LWV individuals affected by case"). The billing statements indicate that the Dechert attorneys spent at least 13.1 hours totaling over $4,000 on this endeavor as well. *See e.g.* Tharuni A. Jayaraman entry on 9/4/2018. It appears that Dale Ho is also attempting to bill for this. *See e.g.* Dale Ho entry at 9/27/2018. The Fish Plaintiffs' billing statements include a lot of this time in 2018. The term "unseal" itself results in a return of 200 hours, but as noted earlier, it cannot be discerned how much exactly was spent on these efforts.

13. It appears that Dechert counsel has billed for at least 33.5 hours looking for plaintiffs based on what I can discern from the billing statements, which includes two trips to Kansas City. *See e.g.* Angela Liu entries on 2/11/2016 ("Continue to search for and interview plaintiffs."). ACLU attorneys appear to have done this as well. *See e.g.* Sophia Lakin entry on 11/25/2015 ("Draft emails to A Zivarts re client contacts and details & f/up emails re same").

14. Mr. Johnson billed for work in *Brown v. Kobach,* a state court case. He also billed for commenting on a state regulation.

15. The Bednasek Plaintiffs' counsel appear to have billed for time reviewing the ACLU's files, increasing, not decreasing the costs of litigation which was part of the purpose to consolidating these cases. *Bednasek* Plaintiffs' counsel,

Samantha Wenger in particular, seems to have billed six minutes on
numerous occasions for nothing more than PACER notices entering her
inbox. This was despite the fact that it appears that a paralegal with Dentons
was downloading all of the documents off PACER anyway and also billing for
that.

16. Doug Bonney alone has submitted a bill for $142,000 in this case, claiming
320 hours at a high hourly rate.

17. On the Bednasek case, Curtis Woods and Paul Davis did not appear to
contribute much necessary work for the litigation.  According to the time
sheets he submitted, Paul Davis spent time giving press interviews, meeting
with Democratic Party activists, sitting on calls with multiple counsel, and
reviewing documents drafted by other counsel.  Curtis Woods' primary
contributions seemed to be (1) working on the class certification which this
Court determined to be unnecessary, (2) reading nearly every document filed
in the two cases but many times not indicating that he did any work on those
documents beyond reviewing them and occasionally revising them, and (3)
attending the trial and hearings.  Mr. Woods does indicate he did some work
on summary judgment, mostly reviewing and preparing for trial, but as
noted, he examined no witnesses.   Mr. Davis also has entries mentioning
summary judgment but does not appear to do any substantive work.
Similarly, Mark Emert billed for the trial, but I do not recall which witnesses
he examined, if any.

18. Mr. Johnson, Ms. Walrath, and Mr. Wood appear to have prepared for a trial that was moved from June 2017, then duplicated much of that work for the 2018 trial. *See* Dentons entries in late 2016 through Spring 2017.

19. Given the limited time available for the review, the amount of billing entries to be reviewed, that they were kept by timekeeper rather than by task, and the vague nature of the entries, we also employed search terms to try to figure out how much time was being spent on various tasks in the billing sheets that could be converted to accommodate such inquiry. The attached charts reflect these efforts. As just one example, using the search term "Complaint," returns that Fish Plaintiffs' counsel used that term in entries for a total time of 137.9 hours fora cost of approximately $44,000.00. This is not the actual time spent or the amount billed for working on the Complaint and Amended Complaint, it is only the results of a search term. At times the billing sheets referencing work on the Complaint is collapsed into a single entry with other tasks. There are also numerous references to the term "pleadings" which do not demonstrate what documents are being reviewed, revised, or drafted. *See e.g.* Rebecca Kahan Waldman entry on 2/10/2016 (2.40 hours on "Call regarding status of briefs; review draft of pleadings); *Id.* on 2/16/2016 (1.50 hours to "Review drafts of pleadings; correspondence regarding upcoming filings."); 2/17/2016 (2.50 hours to "Revise drafts of pleadings."). The term "pleadings" for Dechert attorneys returns 20.10 hours and totals $7,979.50. It also would not include any entries or research that did not include the term "complaint." If I understand their billing statements correctly, they are seeking what appears to be over 100 hours and likely

between $40,000 and $50,000 to draft a Complaint and add one count, that they lost, to that Complaint.  Again, had they organized and presented the fee request by specific task, the numbers would certainly have been more transparent.  Only Plaintiffs' counsel knows how much time they spent on this task alone.

20. The charted items reflect that Plaintiffs' counsel spent a lot of time litigating about litigating rather than trying to focus on resolving the issue at hand, as per the frequent references in the billing records to "sanction," "compel," "contempt," and "strike."  In total, these terms result in $111,762.20 in fees.  As discussed previously, it is impossible to gauge how much time was actually spent on these tasks in total as the billing statements are not itemized by task.  Counsel could be seeking more or less than this amount.  *Fish* Plaintiffs' counsel should know the exact amount.

21. In these cases, *Fish* Plaintiffs' counsel filed multiple motions for sanctions, to compel, or to strike.  Some were successful and some were not.

   a. Plaintiffs seek recovery on two motions on which this Court already issued awards.   (Dkt #355, Dkt #554).  First, in Docket #355, Magistrate O'Hara acknowledged Plaintiffs' counsel sought attorney's fees but declined to award them when requested.  *See id.* at 1 (acknowledging fees were sought but granting request for sanctions not in the form they seek).  That motion also included Fish Plaintiffs' failed motion to remove confidential designations and for which Plaintiffs now seek compensation as well.  It is unclear from the billing statements how much time Fish Plaintiffs' counsel seeks related to this

motion and corresponding litigation, but a rough estimate appears to be Ho (entries between 4/3/2017 and 5/22/2017 for 10.74 hours ($5,370), Lakin (entries between 12/14/2016 and 6/20/2017 for 11.71 hours) ($2,810.40), Danjuma (entries between 1/22/2017 and 7/12/2017 for 134.57) ($33,642.50), Carpenter (entries between 1/23/2017 and 5/22/2017 for 18.68 hours) ($2,054.80); Dechert attorneys over 116 hours for $31,570.70 (intermittent entries between 12/15/2016 and 6/30/2017).  Again, this is a rough estimate and likely lower than the time Plaintiffs' counsel is seeking given the numerous vague "calls" that also appear throughout these dates.  ACLU Plaintiffs' fee request should be reduced by at least $75,448.40 for this litigation.

b. Additionally, Plaintiffs are seeking to either be compensated a second time or asking for fees they should have asked for, but did not, in their prior contempt motion.   On April 5, 2019, Plaintiffs' counsel filed with this Court a "Notice of Satisfaction of Award of Contempt Fees and Costs" that an agreement on paying the fees associated with that motion had been agreed to and paid.  Dkt. #575.  Plaintiffs' counsel agreed that "this award has been satisfied."  *Id.*  Yet, Plaintiffs' billing statements seem to request some of these fees again, as well as fees that either were or should have been requested as part of that original fee award.  Mr. Ho states that he excluded from his billing 32.76 hours he already sought from this court.  *See* Doc. 581-1, Ex. A, Ho. Decl Again, because the billing is not sorted by task, the best that I was able to do was to compare the dates of his original motion against the dates

10

that appear to match entries in the current motion.  When adding the hours based on the entries, I identified that I believe to be the entries requested in his original motion, Dkt Entry 529-1, p17, but totaling 33.30 hours in this billing statement.  His instant billing statement purports to omit only the same 32.76 hours he originally requested, not the 33.30 hours I calculate based on the billing statements.  If I am reading his billing statement correctly, this is a $270 discrepancy, likely due to the number of decimal points in these billing statements compared to the prior request.  However, Mr. Ho also appears to include entries *after* May 2, 2018 that he included in his prior *Reply* Brief to this Court.  *See* Dkt. No. 539, p. 13 (request for 5.8 hours of work for $2,610 on the Contempt Reply Brief).  That same number of hours is again requested in this billing statement, and does not appear to be omitted from the total, and even requested at the higher $500 rate than he was previously awarded by this Court.  That equates to $2,900 sought in the instant motion in addition to the $270 discrepancy.  *See* Ho entries at 6/5/2018, 6/8/2018.  I would note that Mr. Ho's initial request to this Court did not include an entry for 6/6/2018 like his current submission does, however, the total hours for the two submissions are equal.  Mr. Danjuma appears to include some, but not all, hours previously compensated as well.  *Compare* Danjuma entry at 11/8/2017, 11/9/2017, 12/8/2017 (3.69 hours) ($922) *to* 529-1, p.18.  Mr. Danjuma also appears to request other fees related to the prior motion that he did not previously request.  *See* Danjuma entries

4/18/2018, 5/13/2018-5/22/2018 (8.75 hours) ($2,187.50) (fees related to contempt order and dismissing 10th Circuit appeal of fees grant).  Sophia Lakin seeks time for work on the Reply brief in the prior motion (4.50 hours) ($1,080) and the 10th Circuit motion (0.86 hours) ($206.40) for which she was already compensated by the prior fee award.  *See* Lakin entries at 5/3/2017, 5/22/2017, 6/19/2017, 6/20/2017.  Ms. Lakin also includes multiple entries for "litigation team calls" on the same dates as the prior fee request.  *See e.g.* entries on 11/8/2017, 12/8/2017, 1/3, 2017, 4/25/2018.  Mr. Bonney includes time for which he was previously compensated.  *Compare* Bonney entries 12/8/2017, 1/8/2017, 4/24/2018, 4/25/2018 (2.6 hours for $1,300) *with* Dkt Entry 529-1, pp. 19-21. Finally, Lila Carpenter does not include fees requested in the initial motion, but seeks time spent on the Reply for which Plaintiffs were already compensated.  *See* Carpenter entries at 6/7-2018-6/12/2018 (7.87 hours for $865.70). Dechert attorneys likewise appear to seek compensation for this prior contempt briefing.  The May 7, 2018 submittal to this Court included dates between 9/20/2017 and 3/20/2018.  *See* Dkt. # 529-4, pp 14-16. Several entries on the current timesheets either match the entries on the prior time sheets seem to be time that should have been included on those time sheets.  Rebecca Waldman was editing a letter on 10/2 and 10/3/2017 (1.8 hours for $900), the same dates that Mr. Jayaraman was editing a letter for which he received compensation in the prior motion.  *See* Dkt 529-4, p. 14.  On November 8, 2017 , Angela

Lieu entered .7 hours ($175) for a weekly conference call and "strategiz[ing] regarding motion to compel and upcoming trial." She did not include this time on the prior fee request. In various entries between 11/13-11/30, Dechert attorneys Ho, Waldman, Mortimer and Liu appear to be seeking reimbursement for time spent on the motion to compel and motions for sanctions that was previously awarded (7 hours for $1,825.50). While this time did not appear on the prior fee request, that may be because Mr. Steiner told this court that he "limited the request for reimbursement to the time spent by the core team of Dechert attorneys . . . and am not seeking reimbursement for time spent by other Dechert attorneys, notably time spent by such other attorneys participating in conference calls . . . and reviewing and editing the papers." Dkt. 529-4, ¶ 20. Plaintiffs' counsel further seeks compensation for the time they spent drafting their fees motion, although they did not include that time on their prior court submissions. *See* entries for Liu, Jayaraman, Waldman, Steiner between 4/25/2018 and 8/1/2018 (19.88 hours for $6,071.98). A conservative estimate is that Plaintiffs' counsel is seeking to recover $17,704.08 which should have been provided for in the settlement agreement, the notice of which was filed on 4/5/2019 with this court, Dkt. #575.

c.  Plaintiffs are attempting to bill for a number of discovery related motions involving former Defendant Secretary Nick Jordan. Mr. Jordan was dismissed from this case and Defendant Schwab should not

be required to pay fees in relationship to those discovery disputes.  *See* Dkt. #201, 202, 212 (order).

    d.   Plaintiffs seek compensation in relation to filing a motion to compel documents involving Tabitha Lehman which they lost.  *See* Dkt #233, 234, 243, 247.  This should not be recoverable.

    e.   Other motions to strike involve litigation before the 10th Circuit and expert witness designations.  Plaintiffs were successful on the 10th Circuit motion to strike and partly, but not wholly, successful on motions to strike involving expert reports.

    f.   Finally, Plaintiffs also improperly seek compensation for the filing a motion to quash deposition notices of their own Plaintiffs.  *See* Dkt. #164.

22. *Fish* Plaintiffs' counsel billed a lot of time related to Revenue Secretary Jordan, who was dismissed by the Court. *Bednasek* Plaintiffs' counsel billed for time spent related to Jamie Shew, whom they dismissed. These are different defendants altogether, and Plaintiffs did not prevail against them. Although it is difficult to tell from the time entries, based on key word searching and reviewing, the best I can approximate is that the following billing is requested regarding Secretary Jordan:  Dechert attorneys between 33.3 and 73.80 hours for $14,125 to $27,325, Dale Ho 2.49 hours for $1,245, Danjuma 19.87 for $4,967.50, Carpenter 1.21 hours for $133.1, Lakin 6.82 hours for $1,636.80, Molly Rugg 2.25 hours for $247.50.  Doug Bonney appears to have billed 112.5 hours involving Secretary Jordan through his motion to dismiss ($56,250 requested).   It is not clear based on the entries

how many more hours were billed in relation to Secretary Jordan.  There are numerous vague entries to which it is possible or likely Plaintiffs' counsel is performing tasks involving former Secretary Jordan.  *See e.g.* Danjuma 3/31/2016 ("Discuss PoC and voter ID case"), 4/1/2016 ("Discuss reply brief with VRP team at lunch"), 4/3/2016 ("Draft reply"); *see* Lakin entry at 4/11/2016 ("review defs' discovery requests") (note that Secretary Jordan served discovery requests on 4/11/2016, *see* Dkt. #87), 4/21/2016 ("review/draft responses to defs' discovery requests") (note Secretary Jordan served requests on 4/21/2016), 4/29/2016 (Review/draft responses to defs' discovery requests & prep production").  Secretary Kobach did not serve much discovery on Plaintiffs.  Thus, nearly all time spent by Plaintiffs' counsel responding to discovery requests would have been in response to requests from Secretary Jordan as evidenced by this Court's docket sheet.  To give an idea using key word searches, the term "discovery" appears in 104.09 hours of Sophia Lakin's billing requests.  Secretary Jordan was dismissed on August 29, 2016.  *See* Dkt. #212.  Prior to that date, the term "discovery" totaled 78.78 hours, or ¾ of the discovery time requested.  Dale Ho includes the term "discovery" in hourly billing statements at 41.69 hours, but prior to August 29, 2016, the number of hours that included the term "discovery" equaled 36.16 hours, nearly the entirety of the time that term was entered. The term "discovery" appears in 474.2 hours worth of billing items equaling $169,246.  Yet, the 296.8 hours for $119,225 of that occurred on August 29, 2016 or prior, approximately 70%.  Only Plaintiffs' counsel would know how

much they spent on discovery and motion litigation with Secretary Jordan as they did not provide that in a way that we could examine it.

23. Some verifiable, noncompensable matters such as conducting interviews with the press and other media contacts (Paul Davis, Angela Lieu, Orion Danjuma and others), for meeting with Democratic Party activists (e.g., Will Lawrence, Paul Davis), and even for cases other than *Fish* or *Bednasek* (e.g., Mark Johnson) appear in the statements. Sophia Lakin and Angela Liu seek to bill the Secretary for Kansas Open Records Act requests.

24. Other matters that seem to not be necessary can also be found in the billing statements.  In *Bednasek,* two of the original Plaintiffs were dismissed (only one survived).  They also billed for their TRO motion, which they lost and billed for work on a preliminary injunction motion, including preparation for oral argument, up to the time they withdrew their motion the same day. They also billed to amended their Complaint four times.  Bednasek Plaintiffs billed for time was spent on a default judgment motion and a motion to strike.

25. I observed Emily Zhung had billing entries reflecting that she had worked continuously on this matter for 28 hours and 21 minutes on 2/12/18, 21 hours and 31 minutes billed on 7/11/18, 16 hours and 10 minutes billed on 10/5/17.

26. Although this was a bench trial, *Fish* Plaintiffs spent a lot of time on motions in limine and Daubert-related motions which were only partially granted. Plaintiffs used video depositions where regular depositions would have sufficed. Some of these items are reflected in the attached chart.

27. Plaintiffs deposed Bryan Caskey several times, using as the reason that Mr. Caskey submitted a new declaration.

28. Both Plaintiffs bill for experts they did not use.  Danjuma bills for time spent with an expert never used.  Bednasek spent significant time in litigation, depositions and preparation for Michael Smith who never testified at trial. The Bednasek Plaintiffs appear to have billed for discovery they contemplated but never served.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 15, 2021.

   /s/  GARRETT ROE
Garrett R. Roe

## Trial Participation Chart

| Attorney | Day 1 Mar 6 AM | Day 1 Mar 6 PM | Day 1 Mar 6 Hours | Day 1 Mar 6 Fee | Day 2 Mar 7 AM | Day 2 Mar 7 PM | Day 2 Mar 7 Hours | Day 2 Mar 7 Fee | Day 3 Mar 8 AM | Day 3 Mar 8 PM | Day 3 Mar 8 Hours | Day 3 Mar 8 Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Examined a witness/Presented (Y), Billed but no examination (N), some interaction with court (SI) | | | | | | | | | | | |
| Ho | Y | SI | 8 | $4,000.00 | N | SI | 8 | $4,000.00 | SI | N | 8 | $4,000.00 |
| Bonney | N | N | 8.6 | $4,300.00 | N | Y | 8.3 | $4,150.00 | N | N | 8.3 | $2,075.00 |
| Lakin | N | N | 5.25 | $1,260.00 | Y | N | 9.25 | $2,220.00 | N | N | 8.93 | $2,143.20 |
| Danjuma | Y | Y | 8.37 | $2,092.50 | SI | N | 7.8 | $1,950.00 | N | N | 7.17 | $1,792.50 |
| | | | | | | | | | | | | |
| Steiner | N | SI | 16 | $8,000.00 | N | SI | 16 | $8,000.00 | SI | N | 15 | $7,500.00 |
| Waldman | N | N | 11 | $5,500.00 | N | SI | 12.5 | $6,250.00 | SI | Y | 14.5 | $7,250.00 |
| Liu | Y | N | 14.6 | $3,650.00 | SI | Y | 17.2 | $4,300.00 | Y | N | 17.3 | $4,325.00 |
| Ha | N | Y | 17 | $4,080.00 | N | N | 13.5 | $3,240.00 | N | N | 13.5 | $3,240.00 |
| Mortimer | N | N | 14 | $2,730.00 | N | N | 14 | $2,730.00 | N | N | 12 | $2,340.00 |
| Jayaraman | N | N | 16 | $3,120.00 | N | N | 14 | $2,730.00 | N | N | 16 | $3,120.00 |
| | | | | | | | | | | | | |
| Johnson | Y | Y | 11.5 | $5,750.00 | Y | Y | 8 | $4,000.00 | Y | Y | 8.5 | $4,250.00 |
| Woods | N | N | 9 | $4,500.00 | SI | N | 8 | $4,000.00 | N | N | 8.5 | $4,250.00 |
| Emert | N | N | 7.1 | $2,130.00 | N | N | 7.2 | $2,160.00 | N | N | 6.9 | $2,070.00 |

| | Examined a witness/Presented (Y), Billed but no examination (N), some interaction with court (SI) | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Day 4 Mar 9 AM | Day 4 Mar 9 PM | Day 4 Mar 9 Hours | Day 4 Mar 9 Fee | Day 5 Mar 12 AM | Day 5 Mar 12 PM | Day 5 Mar 12 Hours | Day 5 Mar 12 Fee | Day 6 Mar 13 AM | Day 6 Mar 13 PM | Day 6 Mar 13 Hours |
| Ho | N | Y | 8 | $4,000.00 | SI | Y | 8.25 | $4,125.00 | Y | Y | 9.5 |
| Bonney | N | N | 8.8 | $4,400.00 | N | N | 8.2 | $2,050.00 | N | N | 9.8 |
| Lakin | Y | Y | 9.5 | $2,280.00 | N | N | 9 | $2,160.00 | N | N | 8.33 |
| Danjuma | N | SI | 7.9 | $1,975.00 | N | SI | 7 | $1,750.00 | N | N | 8.72 |
| | | | | | | | | | | | |
| Steiner | SI | N | 12 | $6,000.00 | SI | SI | 13 | $6,500.00 | N | N | 12 |
| Waldman | Y | N | 8.2 | $4,100.00 | N | N | 12 | $6,000.00 | N | N | 7 |
| Liu | N | N | 10.1 | $2,525.00 | Y | Y | 14.3 | $3,575.00 | N | N | 10 |
| Ha | N | N | 16.6 | $3,984.00 | N | Y | 12 | $2,880.00 | N | N | 14.5 |
| Mortimer | N | N | 14 | $2,730.00 | N | N | 11 | $2,145.00 | N | N | 16 |
| Jayaraman | N | N | 10 | $1,950.00 | N | N | 8.5 | $1,657.50 | N | N | 8 |
| | | | | | | | | | | | |
| Johnson | SI | Y | 10 | $5,000.00 | Y | Y | 9.5 | $4,750.00 | N | SI | 2.2 |
| Woods | N | N | 8.5 | $4,250.00 | N | N | 9.5 | $4,750.00 | SI | SI | 9.7 |
| Emert | N | N | 0 | $0.00 | N | N | 7.7 | $2,310.00 | N | N | 0 |

| Day 6 Mar 13 Fee | | Examined a witness/Presented (Y), Billed but no examination (N), some interaction with court (SI) | | | |
|---|---|---|---|---|---|
| | | Day 7 Mar 19 AM | Day 7 Mar 19 PM | Day 7 Mar 19 Hours | Day 7 Mar 19 Fee |
| 4750 | Ho | SI | Y | 8.5 | $4,250.00 |
| $2,450.00 | Bonney | N | N | 8.6 | $4,300.00 |
| $1,999.20 | Lakin | N | N | 6.5 | $1,560.00 |
| $2,180.00 | Danjuma | N | N | 7 | $1,750.00 |
| | | | | | |
| $6,000.00 | Steiner | Y | Y | 8 | $4,000.00 |
| $3,500.00 | Waldman | N | N | 0 | $0.00 |
| $2,500.00 | Liu | N | N | 8.2 | $2,050.00 |
| $3,480.00 | Ha | N | N | 18.5 | $4,440.00 |
| $3,120.00 | Mortimer | N | N | 11 | $2,145.00 |
| $1,560.00 | Jayaraman | N | N | 11 | $2,145.00 |
| | | | | | |
| $1,100.00 | Johnson | Y | Y | 9.5 | $4,750.00 |
| $4,850.00 | Woods | N | N | 9 | $4,500.00 |
| $0.00 | Emert | N | N | 0 | $0.00 |

### *Time Spent that includes the terms "Review," Revise," "Edit," or "Proof" By Fish Plaintiffs*

Another way that *Fish* Plaintiffs' counsel is overlawyering this case is their seemingly endless amounts of reviewing, revising, editing, and proofing others' work. An example of this over-lawyering can be seen from how they drafted their initial Complaint.  The Complaint is 33 pages long and Mr. Ho claims to be an expert in the field of voting rights litigation.  From December 10, 2015 through December 13, 2015, Mr. Ho spent 17.75 hours "revis[ing]" the complaint, as well as some unknown portion of time "review[ing] lit memo."   He then came back to "revis[ing] the complaint" along with the "pi motion" for 8 hours on February 5, 2016.[1]  Then one week later on 2/12/2016, Mr. Ho spent another 1.0 hours "revis[ing]" the Complaint.  Then on 12/17/16, Mr. Ho spent another 2.61 hours "revis[ing]" the Complaint.  Followed the next day "finaliz[ing]" and "fil[ing]" the complaint, as well as some of that unknown time "discussing expert reports."  In total, in just Mr. Ho's time sheets, he spent an unknown time between 8.66 hours and 23.68 hours "revising" and then "finalizing" and "filing" the original Complaint.  For these actions, Mr. Ho alone is requesting between $4,330 (assuming 0 time spent on February 5, 2016) and $11,840 (assuming 8 hours spent on that date) to file the first document in this case.

But in addition to Mr. Ho's reviewing and revising, over the next two month period, Mr. Steiner, Ms. Waldman, Ms. Liu, Mr. Bonney, Mr. Danjuma,  and Ms. Lakin all took

---

[1] Like the vast majority of the billing from *Fish* counsel, we have no idea how much time was given to which task.

turns "review[ing]" and/or "revis[ing]" the Complaint, in addition to other tasks related

to the Complaint.

- Waldman entries (11.6)
  - 12/14/2015 (1),
  - 12/23/2015[2] (.8),
  - 2/9/2016 (.8)
  - 2/10/2016 (2.40)
  - 2/11/2016 (1.1)
  - 2/12/2016 (2.0)
  - 2/17/2016 (2.50)
  - 2/18/2016 (1.0)
- Liu entries (26.2)
  - 12/14/2015 (.3)
  - 12/21/2015 (.4),
  - 12/21/2015 (3.2)
  - 12/23/2015 (2.0)
  - 1/12/2016 (3.0)[3]
  - 1/28/16 (4.20)[4]
  - 1/29/2016 (1.50)[5]
  - 2/1/2016 (3.20)[6]

  - 2/5/2016 (1.30)
  - 2/8/2016 (.8)
  - 2/17/2016 (4.20)[7]
  - 2/18/2016 (2.10)[8]
- Steiner (4.60)
  - 2/9/2016 (1.30)
  - 2/10/2016 (3.0),
- Bonney (2.0)
  - 1/11/2016 (2.0 hours),

---

[2] It is assumed this "strategy call" is regarding the Complaint based on Ms. Liu's time entry.
[3] Perhaps Ms. Liu could be referencing *Bednasek* complaint, but that would be odd.  The Second Amended Complaint was filed with the court as part of a motion on 12/21/2015 and then ultimately filed on 1/21/2015.  *See Keener* Dkt #s 50, 58.  But if this is not for purposes of the *Fish* case, then Ms. Liu has not necessarily shown how three hours to review pleadings and "documents" in another case was reasonably necessary anyway.  Additionally, had Plaintiffs provided billing statements by task, there would be no question as to which task this was related.
[4] Does not describe how much time is spent on the complaint vs the preliminary injunction and reviewing Kansas election laws
[5] Does not specify preliminary injunction vs complaint
[6] Does not specify PI v Cmpl v Deposition doc memo
[7] Does not indicate time spent on complaint vs class certification briefing or "weekly conference call"
[8] Does not indicate time spent on complaint vs class certification briefing

- Danjuma (5.07)
  - o 1/20/2016, 1/22/2016 (5.07 hours),
- Lakin (3.13)
  - o 1/25/2016, 2/17/2016 (3.13 hours)

Thus, the in addition to Mr. Ho's up to 23.68 hours on the complaint, the other Plaintiffs' counsel billed up to 52.3 billable hours. That equates to as many as 79 billable hours *Fish* Plaintiffs are seeking just on the initial 33 page complaint. That does not include the unbilled time or paralegal time spent editing and researching the document.

## Term Incidence Chart

| | Class | | Summary Judgment | | Daubert/Limine/Exclude | | Sanction/Compel/Contempt/Strike | |
|---|---|---|---|---|---|---|---|---|
| | Hours | Bill | Hours | Bill | Hours | Bill | Hours | Bill |
| Lila Carpenter | 0.2 | $22.00 | 104.62 | $11,508.20 | 26.43 | $2,907.30 | 34.05 | $3,745.50 |
| Sophia Lakin | 3.8 | $912.00 | 105.67 | $25,360.80 | 57.45 | $13,788.00 | 17.64 | $4,233.60 |
| Emily Zhang | | | | | 61.66 | $12,023.70 | | |
| Orion Danjuma | 34.2 | $8,550.00 | 293.27 | $73,317.50 | 37.93 | $9,482.50 | 37.2 | $9,300.00 |
| Molly Rugg | 4.5 | $495.00 | | | | | 1.5 | $165.00 |
| Dale Ho | 3.69 | $1,845.00 | 105.47 | $52,735.00 | 52.52 | $26,260.00 | 45.92 | $22,960.00 |
| Dechert Attorneys | 175.2 | $67,798.00 | 536.67 | $121,187.75 | 424.95 | $90,526.75 | 254.58 | $71,358.10 |
| Doug Bonney | 7.9 | $3,950.00 | 2.5 | $1,250.00 | 0 | $0.00 | 12.8 | $6,400.00 |
| Totals: | 229.49 | $83,572.00 | 1148.2 | $285,359.25 | 660.94 | $154,988.25 | 403.69 | $118,162.20 |

| | Department of Revenue | | Unseal | | Complaint | | Cite | | Call | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hours | Bill | Hours | Bill | Hours | Bill | Hours | Bill | Hours | Bill |
| LC | 1.21 | $133.10 | 22.84 | $2,512.40 | 0 | $0.00 | 176.74 | $19,441.40 | 4.12 | $453.20 |
| SL | 5.05 | $1,212.00 | 2.4 | $576.00 | 4.79 | $1,149.60 | 2.05 | $492.00 | 142.73 | $34,255.20 |
| EZ | | | | | | | | | 7.53 | $1,468.35 |
| OD | 8.14 | $2,035.00 | 54.44 | $13,610.00 | 19.04 | $4,760.00 | | | 93.72 | $23,430.00 |
| MR | 2.25 | $247.50 | | | 12.25 | $1,347.50 | 36 | $3,960.00 | 3 | $330.00 |
| DH | 2.49 | $1,245.00 | 8.69 | $4,345.00 | 33.39 | $16,695.00 | 10.69 | $5,345.00 | 63.64 | $31,820.00 |
| Dech | 23.8 | $10,425.00 | 2 | $1,000.00 | 68.5 | $20,100.50 | 29.5 | $5,752.00 | 457.77 | $147,174.65 |
| DB | 5 | $2,500.00 | 0 | $0.00 | 2.5 | $1,250.00 | 0 | $0.00 | 1.4 | $700.00 |
| Total | 47.94 | $17,797.60 | 90.37 | $22,043.40 | 140.47 | $45,302.60 | 254.98 | $34,990.40 | 773.91 | $239,631.40 |

| | Proof | | Edit | | Review | | Revise | | Prep | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hours | Bill | Hours | Bill | Hours | Bill | Hours | Bill | Hours | Bill |
| LC | 83.37 | $9,170.70 | 12.2 | $1,342.00 | 33.54 | $3,689.40 | 0 | $0.00 | 84.73 | $9,320.30 |
| SL | 0 | $0.00 | 31.08 | $7,459.20 | 277.22 | $66,532.80 | 168.58 | $40,459.20 | 17.74 | $4,257.60 |
| EZ | | | | | | | | | 11.7 | $2,281.50 |
| OD | 3.23 | $807.50 | 367.02 | $91,755.00 | 168.5 | $42,125.00 | 200.47 | $50,117.50 | 189.47 | $47,367.50 |
| MR | 21 | $2,310.00 | 4.5 | $20.25 | | | | | 25.75 | $2,832.50 |
| DH | 37.4 | $7,293.00 | 14.86 | $7,430.00 | 77.48 | $38,740.00 | 601.32 | $300,660.00 | 199.37 | $99,685.00 |
| Dech | 37.4 | $7,293.00 | 404.3 | $79,158.00 | 1180.6 | $205,243.50 | 616.02 | $205,243.50 | 1732.3 | $533,162.00 |
| DB | 0 | $0.00 | 1.6 | $800.00 | 101.2 | $50,600.00 | 1.8 | $900.00 | 42.1 | $21,050.00 |
| Total | 182.4 | $26,874.20 | 835.56 | $187,964.45 | 1838.54 | $406,930.70 | 1588.19 | $597,380.20 | 2303.16 | $719,956.40 |

| | Draft | | Meeting/Mtg | | | | | | | |
| | Hours | Bill | Hours | Bill | | | | | | |
| LC | 1.87 | $205.70 | | | | | | | | |
| SL | 498.31 | $119,594.40 | 129.7 | $31,128.00 | | | | | | |
| EZ | 0.88 | $171.60 | 2 | $390.00 | | | | | | |
| OD | 202.99 | $50,747.50 | 17.82 | $4,455.00 | | | | | | |
| MR | 3.5 | $385.00 | | | | | | | | |
| DH | 344.09 | $172,045.00 | 12.27 | $6,135.00 | | | | | | |
| Dech | 729.9 | $180,089.00 | 111.42 | $34,938.90 | | | | | | |
| DB | 17.6 | $8,800.00 | 18.3 | $9,150.00 | | | | | | |
| Total | 1799.14 | $532,038.20 | 291.51 | $86,196.90 | | | | | | |

## Deckard, Connie

| | |
|---|---|
| **From:** | Dale Ho <dho@aclu.org> |
| **Sent:** | Friday, March 5, 2021 5:43 AM |
| **To:** | Parker, Stanley |
| **Cc:** | Johnson, Mark P.; Depew, Dennis; Sophia Lakin; Woods, Curtis E.; Mark Emert; Sharon Brett; Liu, Angela; Willoughby, M J.; Deckard, Connie; Steiner, Neil; Roe, Garrett [KSOS]; Laue, Brant |
| **Subject:** | Re: Fee Issues |

---

**CAUTION:** This email originated from outside of the Office of The Attorney General of Kansas organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

---

Stan,

Thanks for your message.

First, thank you for clearly confirming your view that that the "there is simply insufficient time to attempt to informally resolve all issues" prior to your <u>March 15</u> deadline for opposing our motions for attorneys fees.

Second, we have provided all underlying documentation necessary for resolution of this dispute.  We have no obligation to format or sort our time entries according to your preferences.  Moreover, as you know, Local Rule 54.2(f) prohibits discovery in connection with motions for attorney's fees.

Third, we have been willing to meet with you throughout this process.  Indeed, we accepted your offers to confer on three separate dates: on February 8; again on February 26; and again <u>on March 5.</u>  Each time we have done so, however, you have backed out and declined to meet with us.  This hardly seems like good faith.

Nevertheless, we remain willing to confer with you at any time to discuss resolution of this matter without further litigation, if you would provide us with an offer to settle this dispute, which could form the starting point for a meaningful negotiation.  Unless and until you are willing to provide us with such an offer, we see no need confer or to agree to mediation.

Regards,

1

Dale Ho
Director, ACLU Voting Rights Project
125 Broad St., 18th Floor
New York, NY 10004
212-549-2693
dale.ho@aclu.org
@dale_e_ho


On Mar 4, 2021, at 6:13 PM, Parker, Stanley <Stanley.Parker@ag.ks.gov> wrote:

Dale,

Given your filing on Monday stating that you have discharged your obligation to consult with us, it is unclear why you are requesting this meeting.  However, as a show of our continued good faith, we remain willing to participate in a conference call as outlined herein.  We are always willing to talk, notwithstanding Court deadlines.

Our review of the hundreds of pages submitted continues, but is not yet complete. One issue is that you submitted the records by timekeeper rather than by task.  We request that you send the documents resorted by task rather than by timekeeper as soon as possible but no later than Tuesday March 9, 2021.

In a similar vein, you have provided no invoices or receipts supporting your claimed costs.  Please provide those documents as soon as possible but no later than Tuesday March 9, 2021.

Although the review has been difficult and time consuming given the manner in which it was presented, its considerable volume, and the limited time available, we have identified a lot of duplication of effort resulting in an unreasonable number of hours expended per task or for example billing for several attorneys when only one attorney should have billed, such as, for example, in depositions.

Through laborious efforts, we have identified many instances of non-compensable time such as tasks which should not have been billed at all.  Frankly, there is so much that it would be impossible to resolve in a single phone call.  Our deadline to file our response to your submissions is March 15.  Since those submissions total close to 500 pages, it appears there is simply insufficient time to attempt to informally resolve all issues prior to that deadline.

As we previously suggested, we believe the best path forward toward a possible quick resolution of this matter without further litigation is to engage in mediation.  The mediation can be conducted by Zoom or other mutually convenient means.  If you agree, we will file an unopposed motion for mediation.  If you object to mediation, we will so indicate in our motion.

Thanks,
Stan

Stanley R. Parker
Assistant Attorney General/Trial Counsel
Civil Litigation Division
Complex Tort Defense Unit

Office of Kansas Attorney General Derek Schmidt
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Phone: 785-296-2215
Direct: 785-368-8423
Fax: 785-291-3767
stanley.parker@ag.ks.gov
www.ag.ks.gov

*This communication, and any attachments, is private and confidential and for the exclusive use of the intended recipient. The information contained herein as well as any attachments is confidential and privileged under the joint prosecution or investigation privilege, attorney-client privilege, work product privilege, joint defense privilege, or any other applicable privilege or immunity. If you are not the intended recipient and have received this communication in error, please notify the sender immediately and destroy the original message and all copies. Any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this communication is strictly prohibited. Receipt by anyone other than the intended recipient is not a waiver of any protection, privilege, or immunity. Please note also that the Kansas Open Records Act provides that public records, including correspondence to me via e-mail, may be subject to disclosure unless otherwise protected by law.*

**From:** Dale Ho <dho@aclu.org>
**Sent:** Tuesday, March 2, 2021 10:15 AM
**To:** Parker, Stanley <Stanley.Parker@ag.ks.gov>; 'Johnson, Mark P.' <mark.johnson@dentons.com>
**Cc:** Depew, Dennis <Dennis.Depew@ag.ks.gov>; Sophia Lakin <slakin@aclu.org>; Woods, Curtis E. <curtis.woods@dentons.com>; Mark Emert <memert@faganemert.com>; Sharon Brett <sbrett@aclukansas.org>; Liu, Angela <Angela.Liu@dechert.com>; Willoughby, M J. <MJ.Willoughby@ag.ks.gov>; Deckard, Connie <Connie.Deckard@ag.ks.gov>; Steiner, Neil <neil.steiner@dechert.com>; 'Roe, Garrett [KSOS]' <Garrett.Roe@ks.gov>; Laue, Brant <Brant.Laue@ag.ks.gov>
**Subject:** RE: Fee Issues

**CAUTION:** This email originated from outside of the Office of The Attorney General of Kansas organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Stan,

I'm following up on the email below.  You suggested that we confer on Friday, March 5.  As noted previously, we are available on that date at the following times:

- Between 10:30 am and 12:00 pm CT
- after 1 pm CT

Please let us know what time within these windows you are available on Friday.

And as noted, to facilitate the consultation, at least 24 hours before we meet, please provide us with specific objections to our fees applications and an offer to settle this dispute.

Regards,

Dale Ho

3